# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BOARHEAD FARM AGREEMENT
GROUP,                                        :

        Plaintiff,                          :

      v.                                       :

                                               :

ADVANCED ENVIRONMENTAL                Case No. 02-3830
TECHNOLOGY CORPORATION;            :
ASHLAND CHEMICAL COMPANY;             Judge LeGrome Davis
BOARHEAD CORPORATION;              :
CARPENTER TECHNOLOGY
CORPORATION; CROWN METRO,          :
INC.; DIAZ CHEMICAL
CORPORATION; EMHART               :
INDUSTRIES, INC.; ETCHED
CIRCUITS, INC.; fcg, INC.; GLOBE   :
DISPOSAL CO., INC; GLOBE-
WASTECH, INC.; HANDY & HARMAN     :
TUBE COMPANY, INC.; KNOLL, INC.;
MERIT METAL PRODUCTS              :
CORPORATION; NOVARTIS
CORPORATION; NRM INVESTMENT       :
COMPANY;
PLYMOUTH TUBE COMPANY;            :
QUIKLINE DESIGN AND
MANUFACTURING CO.; RAHNS          :
SPECIALTY METALS, INC.; ROHM
AND HAAS COMPANY; SIMON           :
WRECKING CO., INC.; TECHALLOY
CO., INC.; THOMAS & BETTS         :
CORPORATION; UNISYS
CORPORATION; UNITED STATES OF     :
AMERICA DEPARTMENT OF NAVY,

        Defendants.

FILED 8/26/02
4:00p.m
FJM

## AMENDED COMPLAINT

Plaintiff Boarhead Farm Agreement Group, by and through its attorneys, by way of

Complaint against the Defendants hereby states as follows:

## FACTUAL BACKGROUND

1.  Plaintiff seeks contribution from Defendants, including an allocation by the Court of response costs among Plaintiff and Defendants using such equitable factors as the Court determines are appropriate for the response costs that Plaintiff has incurred and the damages that Plaintiff has suffered as a result of releases or threatened releases of one or more hazardous substance as defined by Section 101 (14) of the Comprehensive Environmental Response, Compensation and Liability Act, as amended, ("CERCLA"), 42 U.S.C. § 9601 (14), and Section 103 of the Pennsylvania Hazardous Sites Cleanup Act ("HSCA"), 35 PA. CONS. STAT. § 6020.103 ("Hazardous Substances"), at or from the Boarhead Farm Superfund Site, Lonely Cottage Road, Upper Black Eddy, Bridgeton Township, Bucks County, Pennsylvania (the "Site"). Plaintiff also seeks a declaratory judgment that Defendants are liable to Plaintiff for contribution for any and all response costs that Plaintiff will or may incur and for any and all damages that Plaintiff will or may suffer in the future as a result of releases, threatened releases, or discharges of Hazardous Substances at or from the Site.

2.  Manfred DeRewal ("DeRewal") incorporated Boarhead Corporation in 1969. In addition, DeRewal incorporated and operated DeRewal Chemical Company, Inc. ("DeRewal Chemical"), a hauler of waste materials.

3.  In 1969, Boarhead Corporation purchased the Site. The Site is and was, at all relevant times, a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S. § 9601(9).

4.  From the time of purchase until approximately 1977, the Site was used for, among other things, the disposal of Hazardous Substances.

5.  In the early 1970s, the Bucks County Department of Health (the "DOH"), responding to complaints of dead fish, dead plant life, and other environmental and public health

concerns, investigated the Site.  The DOH noted the following at the Site:  pungent odors; drums

on an open trailer; drums awaiting disposal; empty tanks awaiting removal; a bulldozer burying

old drums; 40 drums filled with solvent; and empty tanker trucks parked at the Site.

      6.  The DOH obtained a search warrant and searched the Site on March 5, 1973.

The DOH documented the following at the Site: improperly stored chemicals; chemicals leaking

from 55-gallon drums; liquid and solid waste on the ground; chemicals leaking into waste pools,

on-Site lagoons, and vats; copper ammonia sulfate; paint solvents; arsenic pentoxide; pesticides;

copper naphtholate; and a cleared area in the northeast section of the Site containing drums.

      7.  In October of 1973, a tank truck discharged approximately 3,000 gallons of

ferrous chloride at the Site, for which Boarhead Corporation was found to be in violation of the

Pennsylvania Clean Streams Law, 35 PA. CONS. STAT. §§ 691.1 *et seq.*

      8.  Soil samples taken from the Site in 1974 revealed the following:  soil pH

levels of 2.9 and the presence of chloride, iron, chromium, copper, zinc, and nickel.

      9.  In September of 1976, a tank truck released approximately 3,000 gallons of

sulfuric acid on the Site, resulting in the evacuation of 34 local residents.

      10. In 1984, the United States Environmental Protection Agency ("USEPA")

performed a Site inspection. On March 31, 1989, the USEPA placed the Site on the National

Priorities List (the "NPL"), 40 C.F.R Part 300, Appendix B, a national list of hazardous waste

sites which the USEPA has determined may pose a threat to health, welfare, and the

environment. The NPL was established under the National Contingency Plan (the "NCP"), 40

C.F.R. Part 300, as required by Section 105(a) of CERCLA, 42 U.S.C. § 9605(a).

11. The USEPA has conducted three CERCLA removal actions at the Site. In connection with these removal actions, the USEPA located and removed from the Site 2,600 drums and contaminated soil. Contaminated groundwater is being treated at an on-site treatment facility.

12. Under an administrative consent order, USEPA Docket Number: III-92-66-DC, General Ceramics, Inc., performed a fourth removal action to address the presence of radioactive waste at the Site.

13. The USEPA completed a Remedial Investigation and Feasibility Study for the Site in July 1997.

14. On or about November 18, 1998, the USEPA issued a Record of Decision (the "ROD") selecting a remedial action for the Site. The Commonwealth of Pennsylvania concurred in this remedy selection.

15. Subsequent to the issuance of the ROD, the USEPA determined to implement the remedial action described in the ROD in two operable units ("OUs"). The USEPA determined that, in general, OU-1 would address groundwater extraction, metal precipitation, and air stripping; the installation of additional monitoring wells; the implementation of institutional controls and monitoring for OU-1; residential water treatment; and phytoremediation. The USEPA determined that, in general, OU-2 would address soil aeration and the treatment of volatile organic compound hot spots; the excavation and off-site disposal of buried drums; and the implementation of institutional controls and monitoring for OU-2.

16. Although denying that they are liable parties under Section 107 of CERCLA, 42 U.S.C. § 9607, Cytec Industries Inc., Ford Motor Company, and SPS Technologies, Inc. are parties to both an Administrative Order on Consent for Remedial Design, USEPA Docket No.

III-2000-002-DC, entered in February 2000 (the "OU-1 AOC") and a Consent Decree entered by this Court on or about September 28, 2000 (the "OU-1 Consent Decree") obligating them to perform the OU-1 remedial design and remedial action (the "OU-1 RD/RA") at the Site. Agere Systems Inc., Cytec Industries Inc., Ford Motor Company, SPS Technologies, Inc., and TI Group Automotive Systems LLC are parties to an agreement to fund and perform the OU-1 RD/RA (the "OU-1 Agreement").

17. Although denying that they are liable parties under Section 107 of CERCLA, 42 U.S.C. § 9607, Cytec Industries Inc., Ford Motor Company, SPS Technologies, Inc., and TI Group Automotive Systems LLC are signatories to an Administrative Order on Consent for Remedial Design, EPA Docket No. III – 2001 – 0010 – DC, effective October 17, 2001 (the "OU-2 AOC") and a Consent Decree (the "OU-2 Consent Decree") entered by this Court on March 14, 2002 obligating them to perform the OU-2 remedial design and remedial action at the Site (the "OU-2 RD/RA") and reimburse the USEPA both for $7,000,000 in response costs incurred and accounted for prior to July 2000 and for an as yet undetermined amount of response costs incurred subsequent to July 2000. Agere Systems Inc., along with Cytec Industries Inc., Ford Motor Company, SPS Technologies, Inc., and TI Group Automotive Systems LLC, are parties to an agreement to fund and perform the OU-2 RD/RA (the "OU-2 Agreement").

18. Plaintiff has incurred costs and damages, including attorneys fees, in the course of performing the requirements of the OU-1 and OU-2 AOCs and Consent Decrees. These costs constitute necessary costs of response, as defined in Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), incurred consistently with the NCP, within the meaning of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a) (collectively, the "Response Costs"). Plaintiff incurred the Response Costs because of releases or threatened releases of Hazardous Substances at or from

the Site.  The Response Costs incurred by Plaintiff are also reasonable and necessary or appropriate costs consistent with Section 702(a)(3) of HSCA, 35 PA. CONS. STAT. § 6020.703(a)(3).

19. Plaintiff anticipates that it will be required to incur additional necessary costs of response, consistent with the NCP, and to reimburse the USEPA for its administrative and oversight costs in the future ("Future Response Costs") in connection with the Site.

## JURISDICTION AND VENUE

20. This action arises under Section 113 of CERCLA, 42 U.S.C. § 9613, and Section 702(a)(3) of HSCA, 35 PA. CONS. STAT. § 6020.702(a)(3).

21. This Court has jurisdiction over the subject matter of this action pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9313(b), 28 U.S.C. §§ 1331 and 1367.  This Court has supplemental jurisdiction over the state claims based on 28 U.S.C. § 1367.

22.    This Court has authority to enter a declaratory judgment regarding the rights and liabilities of the parties pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, and Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2).

23.    Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) and Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), because the releases or threatened release of Hazardous Substances, wastes, pollutants, and contaminants alleged herein occurred and the claims set forth herein arose in the Eastern District of Pennsylvania.

## PARTIES

A.    The Plaintiff

24. Plaintiff Boarhead Farm Agreement Group, an unincorporated association, is an organization containing entities that have incurred and will in the future incur response costs and have otherwise performed and are performing remedial actions at the Site, and is a person as defined by Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

25. The Boarhead Farm Agreement Group consists of:  Agere Systems Inc.; Cytec Industries Inc.; Ford Motor Company; SPS Technologies, Inc.; and TI Group Automotive Systems LLC.

B.    The Defendants

### Defendant Advanced Environmental Technology Corporation

26. Defendant Advanced Environmental Technology Corporation ("AETC") is a New Jersey corporation with a principal place of business in Flanders, New Jersey.

27. AETC arranged with DeRewel Chemical for the disposal of Hazardous Substances from Defendants Ashland Chemical Company ("Ashland") and Diaz Chemical Corporation ("Diaz").

28. AETC transported Hazardous Substances to the Site for disposal, having selected the Site for that purpose.

### Defendant Ashland Chemical Company

29. Defendant Ashland is a Kentucky corporation with a principal place of business in Russell, Kentucky.

30. Ashland used AETC and DeRewal Chemical to remove industrial wastes from its Pennsylvania plant.

31. Ashland's waste was disposed of at the Site.

32. Ashland's waste contained the following Hazardous Substances: sulfuric acid; and nitric acid.

## Defendant Boarhead Corporation

33. Defendant Boarhead Corporation is a Pennsylvania corporation with a principal place of business in Revere, Pennsylvania. Boarhead Corporation is the current owner of the Site and was the owner and operator of the Site at the time of the disposal of Hazardous Substances. In addition, Boarhead Corporation selected the Site for the disposal of Hazardous Substances and transported Hazardous Substances to the Site.

## Defendant Carpenter Technology Corporation

34. Defendant Carpenter Technology Corporation ("Carpenter Technology") is a Delaware corporation with a principal place of business in Reading, Pennsylvania.

35. Carpenter Technology used DeRewal Chemical for the removal of waste hydrochloric acid pickling solution from its Reading, Pennsylvania plant.

36. Carpenter Technology's waste was disposed of at the Site.

37. Carpenter Technology's waste contained the following Hazardous Substances: hydrochloric acid.

## Defendants Crown Metro, Inc. and Emhart Industries, Inc.

38. Defendant Crown Metro, Inc. ("Crown") is a South Carolina corporation with a principal place of business in Greenville, South Carolina.

39. Defendant Emhart Industries, Inc. ("Emhart") is a Connecticut corporation with a registered office in Hartford, Connecticut.

40. USM Corporation ("USM"), formerly a New Jersey corporation, doing business as Bostik South, Inc., used DeRewal Chemical for the removal of waste nitric acid from its Greenville, South Carolina plant.

41. USM's waste was disposed of at the Site.

42. USM's waste contained the following Hazardous Substances: sulfuric acid and nitric acid.

43. Emhart is a successor-in-interest to USM through the merger of USM into Emhart.

44. In or about 1980 USM sold the Bostik South, Inc. business, including the Greenville, South Carolina plant, to Bengal Corporation.

45. Bengal Corporation thereafter continued the operation of the Bostik South, Inc. business without change from the way the business was operated while its shares were owned by USM.

46. Bengal thereafter changed its name to Crown.

47. Crown is a successor-in-interest to Emhart with respect to liability arising from the Greenville, South Carolina plant.

## Defendant Diaz Chemical Corporation

48. Defendant Diaz is a New York corporation with a principal place of business in Holley, New York.

49. Diaz used AETC and DeRewal Chemical to remove industrial wastes from its Holley, New York, plant.

50. Diaz's waste was disposed of at the Site.

51. Diaz's waste contained the following Hazardous Substances: sulfuric acid; nitric acid; and chloronitrobenzotrifluoride derivatives.

## Defendant Etched Circuits, Inc.

52. Defendant Etched Circuits, Inc. ("Etched Circuits") is a New Jersey corporation with a principal place of business in Warminster, Pennsylvania.

53. Etched Circuits, Inc. used DeRewel Chemical to remove industrial waste from its Cherry Hill, New Jersey plant.

54. Etched Circuits' waste was disposed of at the Site.

55. Etched Circuits' waste contained the following Hazardous Substances: copper.

## Defendant fcg, inc.
## (a/k/a Flexible Circuits, Inc.)

56. Defendant fcg, inc. (a/k/a Flexible Circuits, Inc.) ("fcg") is a Pennsylvania corporation with a principal place of business in Warrington, Pennsylvania.

57. Fcg used DeRewal Chemical to remove spent etchings and other industrial waste from its Warrington, Pennsylvania plant.

58. Fcg's waste was disposed of at the Site.

59. Fcg's waste contained the following Hazardous Substances: trichloroethylene; chromium; lead; and carbon tetrachloride.

60. In 1969 fcg became the owner of all outstanding stock of Etched Circuits and thereafter operated the Etched Circuits facility in Cherry Hill, New Jersey. Fcg is thus a person who arranged for the transport, disposal, or treatment of Hazardous Substances from the Etched Circuits facility, which Hazardous Substances were disposed of at the Site.

### Defendants Globe Disposal Co., Inc. and Globe-Wastech, Inc.

61. Defendant Globe Disposal Co., Inc. ("Globe") is a Pennsylvania corporation with a principal place of business in Norristown, Pennsylvania.

62. Defendant Globe-Wastech, Inc. ("Wastech") is a Pennsylvania corporation with a principal place of business in Skippack, Pennsylvania.

63. Globe arranged with DeRewel Chemical for the disposal of Hazardous Substances.

64. Globe transported Hazardous Substances to the Site for disposal, having selected the Site for that purpose.

65. Globe Disposal selected the Site for the disposal of Hazardous Substances.

66. On or about March 1978 the sole shareholder of Globe, Earl T. Kelly, and the sole shareholder of Waste Techniques Corporation ("WTC"), Francis J. Keel, exchanged each of their shares in those companies to Wastech.

67. Wastech thereafter continued the operation of Globe without change from the way Globe operated while its shares were owned by Kelly.

68. Wastech is a successor-in-interest to Globe.

## Defendant Handy & Harman Tube Company, Inc.

69. Defendant Handy & Harman Tube Company, Inc. ("Handy & Harman Tube") is a Delaware corporation with a principal place of business in Norristown, Pennsylvania.

70. Handy & Harman Tube used DeRewal Chemical to remove industrial waste from its Norristown, Pennsylvania facility.

71. Handy & Harman Tube's waste was disposed at the Site.

72. Handy & Harmon Tube's waste contained the following Hazardous Substances: cyanide.

## Defendant Knoll, Inc.

73. Defendant Knoll, Inc. ("Knoll") is a Pennsylvania corporation with a principal place of business in East Greenville, Pennsylvania.

74. Knoll contracted for the disposal of industrial wastes with DeRewal Chemical from its Pennsbury, Pennsylvania Plant.

75. Knoll's wastes were disposed of at the Site.

76. Knoll's waste contained Hazardous Substances.

## Defendant Merit Metal Products Corporation

77. Defendant Merit Metal Products Corporation ("Merit Metal II") is a Pennsylvania corporation with a principal place of business in Warrington, Pennsylvania.

78. Another Pennsylvania corporation also named Merit Metal Products Corporation (Merit Metal I") owned and operated a place of business in Warrington, Pennsylvania from at least 1968 to 1988.

79. Merit Metal I used DeRewal Chemical to remove industrial waste from its Warrington, Pennsylvania facility.

80. Merit Metal I's waste was disposed of at the Site.

81. Merit Metal I's waste contained the following Hazardous Substances: cyanide; arsenic; cadmium; chromium; and selenium.

82. Merit Metal II purchased the assets and business of Merit Metal I in or about July 1988 and thereafter continued the operation of that business without change from the way the business was operated while the business was owned by Merit Metal I.

83. Merit Metal II is liable as a successor-in-interest to Merit Metal I.

### Defendant Novartis Corporation

84. Defendant Novartis Corporation ("Novartis") is a New York corporation with a principal place of business in Tarrytown, New York.

85. Ciba-Geigy Corporation ("Ciba") used DeRewal Chemical for the removal of waste nitric acid and sulphuric acid from its Cranston, Rhode Island facility.

86. Ciba's waste was disposed of at the Site.

87. Ciba's waste contained the following Hazardous Substances:  nitric acid and sulphuric acid.

88. Novartis is the corporate successor to Ciba.

### Defendant NRM Investment Company

89. Defendant NRM Investment Company ("NRMC") is a Pennsylvania corporation with its principal place of business in Rosemont, Pennsylvania.

90. From 1974 to 1978 NRMC, then named National Rolling Mills Co., used DeRewal Chemical to dispose of waste pickle liquor solution from its plant located in Malvern, Pennsylvania (the "NRM Plant").

91. Waste from the NRM Plant was disposed of at the Site.

92. The NRM Plant waste contained the follow Hazardous Substances: hydrochloric acid.

93. NRMC is a party to the OU-1 Agreement.

## Defendant Plymouth Tube Company

94. Defendant Plymouth Tube Company ("Plymouth Tube") is a Michigan corporation with a principal place of business in Warrenville, Illinois.

95. Plymouth Tube used DeRewal Chemical to dispose of waste pickling solution from its Ellwood Ivins facility in Horsham, Pennsylvania.

96. Plymouth Tube's waste was disposed of at the Site.

97. Plymouth Tube's waste pickling solution contained the following Hazardous Substances: hydrofluoric acid and nitric acid.

## Defendant Quikline Design and Manufacturing Co.

98. Defendant Quikline Design and Manufacturing Co. ("Quikline Design") is a New Jersey corporation with a principal place of business in Gloucester City, New Jersey.

99. Quikline Design used DeRewal Chemical to dispose of waste chromic acid from Quikline Design's Cherry Hill, New Jersey facility.

100.    Quikline Design's waste was disposed of at the Site.

101.    Quikline Design's waste contained the following Hazardous Substances: chromic acid.

## Defendant Rahns Specialty Metals, Inc.

102.    Defendant Rahns Specialty Metals, Inc. ("Rahns") is a Pennsylvania corporation with a principal place of business in Collegeville, Pennsylvania.

103.    In 1991 Rahns acquired the property, premises, and environmental liability associated with Techalloy Co., Inc.'s Rahns, Pennsylvania facility.

104.    Thereafter Rahns continued to operate the Techalloy Rahns facility in substantially the same manner in which that facility was operated by Techalloy and otherwise continued the business of Techalloy.

105.    Rahns is a successor-in-interest to Techalloy.

## Rohm and Haas Company

106.    Rohm and Haas Company ("Rohm") is a Pennsylvania Corporation with a principal place of business in Philadelphia, Pennsylvania.

107.    Rohm arranged with a Marvin Jonas business to remove waste from its facilities in the Philadelphia area.

108.    Rohm's waste was disposed of at the Site.

109.    Rohm's waste contained the following Hazardous Substances: dichloroethyl ether.

## Defendant Simon Wrecking Co., Inc.

110.    Defendant Simon Wrecking Co., Inc. ("Simon Wrecking") is a Pennsylvania corporation with a principal place of business in Williamsport, Pennsylvania.

111.    Simon Wrecking used DeRewel Chemical to remove sulfuric nitrate from Simon Wrecking's Williamsport facility.

112.    Simon Wrecking's waste was disposed of at the Site.

113.    Simon Wrecking's waste contained the following Hazardous Substances: sulfuric nitrate.

### Defendant Techalloy Co., Inc.

114.    Defendant Techalloy Co., Inc. ("Techalloy") is a Pennsylvania corporation with a principal place of business in Mahway, New Jersey.

115.    Techalloy Co., Inc. ("Techalloy") used DeRewal Chemical to remove spent acids from Techalloy's Rahns, Pennsylvania facility.

116.    Techalloy's waste was disposed of at the Site.

117.    Techalloy's waste contained the following Hazardous Substances: potassium permanganate; sulfuric acid; nitric acid; and sodium hydroxide.

### Defendant Thomas & Betts Corporation

118.    Defendant Thomas & Betts Corporation ("Thomas & Betts") is a Tennessee corporation with a principal place of business in Memphis, Tennessee.

119.    Thomas & Betts used DeRewel Chemical to remove phosphoric acid from Thomas & Betts's facility in Ivyland, Pennsylvania.

120.    Wastes from Thomas & Betts's Ivyland facility was disposed of at the Site.

121. Wastes from Thomas & Betts's Ivyland facility contained the following Hazardous Substances: phosphoric acid.

122. Ansley Electronics Corporation ("Ansley") used DeRewel Chemical to remove chromic acid from its New Hope and Perkasie, Pennsylvania facilities.

123. Wastes from Ansley's New Hope and Perkasie facilities were disposed of at the Site.

124. Wastes from Ansley's New Hope and Perkasie facilities contained the following Hazardous Substances: chromic acid.

125. Ansley was merged into Thomas & Betts in or about January 1, 1984.

126. Thomas & Betts is a successor-in-interest to Ansley.

### Defendant Unisys Corporation

127. Defendant Unisys Corporation ("Unisys") is a Delaware corporation with a principal place of business in Blue Bell, Pennsylvania.

128. Sperry Corporation ("Sperry") used DeRewal Chemical to remove wastes from Sperry's Blue Bell, Pennsylvania, Utica, New York, and other facilities.

129. Sperry's waste was disposed of at the Site.

130. Sperry's waste contained the following Hazardous Substances: waste petroleum distillate.

131. Sperry Corporation was merged into Burroughs Corporation. Burroughs Corporation thereafter changed its name to Unisys Corporation.

132. Unisys is a successor-in-interest to Sperry.

## Defendant United States of America Department of Navy

133.    Defendant the United States of America, Department of Navy is an instrumentality of the United States Government with a base in Willow Grove, Pennsylvania.

134.    The Department of Navy, through the Naval Air Development Center, Warminster, Pennsylvania, used DeRewal Chemical to remove industrial waste.

135.    The Department of Navy's waste was disposed of at the Site.

136.    Upon information and belief the Department of Navy's waste contained Hazardous Substances.

## COUNT I

### (CERCLA Section 113(f) Contribution)

137.    The allegations made in paragraphs 1 through 124 are incorporated by reference as if set forth here in full.

138.    Pursuant to Section 113(f) of CERCLA, 42 U.S.C. § 9613(f), any person may seek contribution from any other person who is liable or potentially liable under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

139.    Plaintiff is a "person" within the meaning of Sections 101(21) and 113(f)(1) of CERCLA, 42 U.S.C. §§ 9601(21) and 9613(f)(1).

140.    Each Defendant is a "person" within the meaning of Sections 101(21) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(21) and 9607(a).

141.    Defendants Advanced Environmental Technology Corporation, Globe Disposal Co., Inc., and Globe-Wastech, Inc. (the "Transporter Defendants") are persons who accepted Hazardous Substances for transport to the Site, having selected the Site as the disposal

or treatment facility to which such Hazardous Substances would be transported, or as successors-in-interest to such persons, and are liable pursuant to Section 107(a)(4) of CERCLA, 42 U.S.C. § 9607(a)(4).

142.    Defendants AETC, Ashland, Carpenter Technology, Crown, Diaz; Emhart, fcg, Globe, Globe-Wastech, Inc. Handy & Harman Tube, Knoll, Merit Metal, Novartis, NRMC, Plymouth Tube, Quikline Design, Techalloy, Rahns, Rohm, Simon Wrecking, Thomas & Betts, Unisys, and the United States of America Department of Navy (collectively, the "Generator/Arranger Defendants") are persons who by contract, agreement or otherwise, arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment of Hazardous Substances owned or possessed by them or by another party or entity, at the Site, or as successors-in-interest to such persons and are liable under Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

143.    The total amount of the wastes transported to the Site by each of the transporter Defendants was greater than 110 gallons of liquid or greater than 200 pounds of solid materials.  None of such wastes were municipal solid waste as defined by CERCLA § 107.

144.    The total amount of the wastes for which the Generator/Arranger Defendants arranged and that were disposed of at the Site was greater than 110 gallons of liquid or greater than 200 pounds of solid materials.  None of such wastes were municipal solid waste as defined by CERCLA § 107.

145.    Defendant Boarhead Corporation is liable under Sections 107(a)(1) and 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(1), 42 U.S.C. § 9607(a)(2) as the current owner of the Site, as the owner of the Site at the time of the disposal of Hazardous Substances, and as a person who operated the Site at the time of the disposal of Hazardous Substances.

146.    Pursuant to Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1),

Plaintiff is entitled to contribution from Defendants for Response Costs incurred and for Future

Response Costs to be incurred by Plaintiff in connection with the Site and to an allocation by the

Court of the Response Costs and Future Responses Costs among Plaintiff and Defendants using

such equitable factors as the Court determines are appropriate.

WHEREFORE Plaintiff demands judgment in its favor against each of the Defendants, as

follows:

(a)    Adjudging, decreeing, and declaring that Defendants are liable

pursuant to Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), for contribution to Plaintiff

for Response Costs incurred thus far in connection with the Site and awarding damages to

Plaintiff in that amount and for Future Response Costs to be incurred by Plaintiff in connection

with the Site, together with interest thereon;

(b)    Allocating responsibility for the Response Costs and Future

Response Costs among Plaintiff and Defendants pursuant to Section 113(f)(1) of CERCLA, 42

U.S.C. § 9613(f)(1), using such equitable factors as the Court determines are appropriate;

(c)    Ordering Defendants to provide contribution to Plaintiff for

Response Costs related to the Site incurred to date and for all Future Response Costs to be

incurred in connection with the Site, together with interest thereon, computed in accordance with

Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

(d)    Ordering Defendants to pay Plaintiff its costs of this action,

including reasonable attorneys fees; and

(e)    Granting Plaintiff such other, further, and different relief as the

Court may deem just and appropriate.

## COUNT II

### (CERCLA Section 113(g)(2) Declaratory Judgment)

147.    The allegations made in paragraphs 1 through 146 are incorporated by reference as if set forth here in full.

148.    A controversy exists between Plaintiff and Defendants insofar as Plaintiff contends, and Defendants deny, that Defendants are liable under CERCLA for contribution for all necessary costs of response incurred and to be incurred by Plaintiff in connection with any response actions taken by Plaintiff at the Site.

149.    Pursuant to CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2), Plaintiff requests entry of a declaratory judgment that holds Defendants liable for all necessary costs of response incurred and to be incurred in connection with any response action taken by Plaintiff at the Site, which judgment shall be binding in any subsequent action to recover further response costs or damages.

WHEREFORE Plaintiff demands judgment in its favor against all of the Defendants, as follows:

(a)    Entering a declaratory judgment on liability pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), in favor of Plaintiff and against Defendants, adjudging, decreeing, and declaring that Defendants are liable to Plaintiff for all Future Response Costs consistent with the NCP that Plaintiff may incur and for all damages that Plaintiff may suffer at or with respect to the Site, together with interest thereon, which judgment will be binding in any subsequent action or actions brought by Plaintiff against Defendants to recover Future Response Costs or damages.

## COUNT III
### (Cost Recovery Under the Pennsylvania Hazardous Sites Cleanup Act)

150.    The allegations made in paragraphs 1 through 149 are incorporated by reference as if set forth here in full.

151.    There has been a "release" at the Site within the meaning of Section 103 of HSCA, 35 PA. CONS. STAT. § 6020.103.

152.    Each Defendant is a "person" within the meaning of Section 103 of HSCA, 35 PA. CONS. STAT. § 6020.103.

153.    Plaintiff is a "person" as defined by Section 103 of HSCA, 35 PA. CONS. STAT. § 6020.103.

154.    Each Defendant is a person who has allowed a release and thereby caused a public nuisance pursuant to Section 1101 of HSCA, 35 PA. CONS. STAT. § 6020.1101.

155.    Plaintiff has incurred "reasonable and necessary or appropriate costs" responding to the release and threatened release of Hazardous Substances at the Site pursuant to Section 702 of HSCA, 35 PA. CONS. STAT. § 6020.702(a)(3).

156.    The Transporter Defendants are persons who accepted Hazardous Substances for transport to the Site, having selected the Site as the disposal or treatment facility to which such Hazardous Substances would be transported and are liable to Plaintiff under Sections 701(a)(3) and 702(a)(3) of HSCA, 35 PA. CONS. STAT. §§ 6020.701(a)(3), 6020.702(a)(3).

157.    The Generator/Arranger Defendants are each a person who by contract, agreement or otherwise, arranged for disposal or treatment, or transport for disposal or treatment of Hazardous Substances owned or possessed by them or by another party or entity, at the Site

and are liable to Plaintiff under Sections 701(a)(2) and 702(a)(3) of HSCA, 35 PA. CONS. STAT. §§ 6020.701(a)(2), 6020.702(a)(3).

158.    Defendant Boarhead Corporation is liable to Plaintiff under Sections 701(a)(1) and 702(a)(3) of HSCA, 35 PA. CONS. STAT. §§ 6020.701(a)(1), 6020.70(a)(3), as a person who owns, owned and/or operated the Site at the time a Hazardous Substance was placed or came to be located on the Site and during the time of a release or threatened release.

159.    Pursuant to Sections 701, 702(a)(3) and 1101 of HSCA, 35 PA. CONS. STAT. §§ 6020.701, 6020.702(a)(3), 6020.1101, Plaintiff is entitled to contribution from Defendants for Response Costs incurred and for Future Response Costs to be incurred by Plaintiff in connection with the Site and to an allocation by the Court of the Response Costs and Future Responses Costs among Plaintiff and Defendants using such equitable factors as the Court determines are appropriate.

WHEREFORE Plaintiff demands judgment in its favor against each of the Defendants, as follows:

(a)    Adjudging, decreeing, and declaring that Defendants are liable pursuant to Section 702(a)(3) of HSCA, 35 PA. CONS. STAT. § 6020.702(a)(3), for contribution to Plaintiff for Response Costs incurred thus far in connection with the Site and awarding damages to Plaintiff in that amount and for Future Response Costs to be incurred by Plaintiff in connection with the Site, together with interest thereon.

(b)    Allocating responsibility for the Response Costs and Future Response Costs among Plaintiff and Defendants using such equitable factors as the Court determines are appropriate;

(c)     Ordering Defendants to provide contribution to Plaintiff for Response Costs related to the Site incurred to date and for all Future Response Costs to be incurred in connection with the Site, together with interest thereon, computed in accordance with Section 702(b) of HSCA, 35 Pa. Cons. Stat. § 6020.702(b).

(d)     Ordering Defendants to pay Plaintiff its costs of this action, including reasonable attorneys fees; and

(e)     Granting Plaintiff such other, further, and different relief as the Court may deem just and appropriate.

Respectfully submitted,

Ballard Spahr Andrews & Ingersoll, LLP

Dated:     August 26, 2002          By: _____

Glenn A. Harris, Esquire (#51222)
Plaza 1000, Suite 500, Main Street
Voorhees, New Jersey  08043
Phone:  (856) 761-3400

Attorney for Plaintiff Boarhead Farm
Agreement Group

## CERTIFICATE OF SERVICE

I hereby certify that, on August 26, 2002, a true and correct copy of the Amended

Complaint was served by first class mail, postage prepaid, upon:

Pamela Esterman, Esquire
Sive Paget & Riesel
460 Park Avenue
New York, NY  10022

David A. Christiansen, Esquire
Associate General Counsel
Carpenter Technology Corporation
1047 North Park Road
Wyomissing, PA  19610

Melissa Flax, Esquire
Carella, Byrne, Bain, Gilfillian, Cecchi,
Stewart & Olstein, P.C.
Six Becker Farm Road
Roseland, NJ 07068-1739

Rachel Deming, Esquire
Environmental Remediation Counsel
Ciba Specialty Chemicals Corp.
P.O. Box 2005
Tarrytown, NY  10591-9005

Michael W. Steinberg, Esquire
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004

Harry Barbin, Esquire
Barbin & O'Connell
608 Huntington Pike
Rockledge, PA  19046-4490

Mr. Ronald J. Reid, III
Manager, Health/Safety/Environment
Diaz Chemical Corp.
40 Jackson Street
Holley, NY  14470-1156

Steven J. Lemon, Esquire
Jones, Lemon, Graham & Chaney
28 North Bennett Street, Suite A
P.O. Box 805
Geneva, IL  60134-0805

Mr. Daniel L. Williams
Vice President – Finance
Flexible Circuits
202 Valley Road
Warrington, PA  18976-2580

Andrew P. Foster, Esquire
Drinker, Biddle & Reath LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA  19103-6996

Stephen P. Chawaga, Esquire
Monteverde, McAlee, Fitzpatrick,
  Tanker & Hurd
One Penn Center at Suburban Station
Suite 1500
1617 John F. Kennedy Boulevard
Philadelphia, PA  19103-1815

Michael Geiger, Esquire
Assistant General Counsel
Thomas & Betts Corporation
8155 Thomas & Betts Boulevard
Memphis, TN  38125

Sandford F. Schmidt, Esquire
Law Offices of Schmidt & Tomlinson
29 Union Street
Medford, NJ 08055

Robin Lampkin-Isabel, Esquire
Senior Litigation Counsel
Ashland, Inc.
5200 Blazer Parkway
Dublin, OH 43017

Karen A. Mignone, Esquire
McGovern, Noel & Benik, Inc.
159 Millburn Avenue
2nd Floor
Millburn, NJ 07041

Jennifer Berke-Levin, Esquire
Rohm and Haas Company
100 Independence Mall West
Philadelphia, PA 19106-2349

David T. Noble, Esquire
Assistant General Counsel
Environment, Health & Safety
Unisys Corporation
Township Line & Union Meeting Roads
P.O. Box 500
Blue Bell, PA 19424-0001

Edward Fackenthal, Esquire
Henderson, Weitherill, O'Hey &
Horsey
902 One Montgomery Plaza
P.O. Box 751
Norristown, PA 19404

Jerome C. Muys, Esquire
Swidler Berlin Shereff Friedman, LLP
3000 K Street N.W., Suite 300
Washington, D.C. 20007

Richard Friedman, Esquire
McNees, Wallace & Nurick, LLC
P.O. Box 1166
100 Pine Street
Harrisburg, PA 17108-1166

Mr. Samuel Simon
Simon Wrecking Co., Inc.
c/o Simon Resources
P.O. Box 3275
Williamsport, PA 17701

United States of America, Department
of Navy
Judith Keith, Esquire
U.S. Department of Justice
Environmental & Natural Resources
Division
Environmental Defense Section
P.O. Box 23986
Washington, DC 20026-3986

Mr. David Simon
P.O. Box 230
Stevenson, MD 21153-0230

Boarhead Corporation
Lonely Cottage Drive
Upper Black Eddy
Bridgeton Township, PA 18972

Globe-Wastech, Inc.
Lucon Road
Skippack, PA 19474


Dated: August 26, 2002                    _____
                                          Glenn A. Harris