## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BOARHEAD FARM AGREEMENT GROUP, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 02-3830 |
| | : | |
| ADVANCED ENVIRONMENTAL | : | |
| TECHNOLOGY CORPORATION, ET AL., | : | |
| Defendants. | : | |

## JOINT MOTION OF CERTAIN DEFENDANTS
## TO DISMISS THE AMENDED COMPLAINT
## FOR FAILURE TO STATE A CLAIM

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Eastern District of

Pennsylvania Local Civil Rule 7.1, and Paragraph 2 of the Case Management Order entered by

this Court on January 31, 2003, fourteen named Defendants (collectively referred to as the

"Moving Defendants")[1], respectfully move this Court to dismiss the Amended Complaint filed

by Plaintiff Boarhead Farm Agreement Group ("BFAG") for failure to state a claim on which

relief can be granted.

There are three related grounds for dismissal:

(1)    Plaintiff BFAG lacks associational standing to bring this action to recover alleged

money damages incurred by its individual members;

---

[1]    The Defendants joining in this Motion to Dismiss are:  Advanced Environmental
Technology Corporation, Ashland Inc., designated by Plaintiff as Ashland Chemical
Corporation, Carpenter Technology Corporation, Knoll, Inc., Merit Metal Products
Corporation, Novartis Corporation, NRM Investment Company, Plymouth Tube
Company, Rahns Specialty Metals, Inc., Rohm and Haas Company, Simon Wrecking
Co., Inc., Techalloy Co., Inc., Thomas & Betts Corporation, and Unisys Corporation.

(2)     Under FRCP Rule 17(a), Plaintiff BFAG is not a "real party in interest" entitled to bring this action; and

(3)     Under FRCP Rule 17(b), Plaintiff BFAG lacks capacity to sue for the claims asserted in the Amended Complaint.

The grounds for Moving Defendants' motion are more fully set forth in the accompanying Memorandum of Law.  A proposed Order is attached pursuant to Local Rule 7.1.

Dated:  February 7, 2003                    Respectfully submitted,


                                            *Michael W. Steinberg* (MRD)
                                            Michael W. Steinberg (Bar # 25778)
                                            Patrick D. Conner
                                            MORGAN, LEWIS & BOCKIUS LLP
                                            1111 Pennsylvania Ave., N.W.
                                            Washington, D.C.  20004
                                            202.739.5141
                                            202.739.3001 Facsimile

                                            Michael Dillon (Bar # 43854)
                                            MORGAN LEWIS & BOCKIUS LLP
                                            1701 Market Street
                                            Philadelphia, PA 19103-2921
                                            215.963.4938
                                            215.963.5299 Facsimile

                                            Attorneys for Defendant
                                            Novartis Corporation

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

BOARHEAD FARM AGREEMENT GROUP,  :
                                     :
        Plaintiff,                :
                                       :
v.                                     :        Civil Action No. 02-3830
                                       :
ADVANCED ENVIRONMENTAL       :
TECHNOLOGY CORPORATION, ET AL.,  :
                                       :
        Defendants.           :

**MEMORANDUM OF LAW IN SUPPORT OF**
**JOINT MOTION OF CERTAIN DEFENDANTS**
**TO DISMISS THE AMENDED COMPLAINT**
**FOR FAILURE TO STATE A CLAIM**

The case involves the Boarhead Farms Superfund Site located in Bucks County, Pennsylvania (the "Site"). The sole named Plaintiff in this case is the self-described "Boarhead Farm Agreement Group" (hereinafter "BFAG"), which, as noted in the Amended Complaint, is "an unincorporated association." (Amended Complaint at ¶ 24). In particular, the Amended Complaint asserts claims under the federal Superfund statute (CERCLA) and the Pennsylvania "mini"-Superfund statute (HSCA), for recovery of Site cleanup costs allegedly incurred by the five individual companies that make up BFAG. Id. at ¶ 25.

For three related reasons, the unincorporated association "Boarhead Farm Agreement Group" is an improper party to assert these cost recovery claims, and the Amended Complaint must be dismissed.

First and foremost, BFAG **lacks associational standing** to maintain an action seeking the recovery of money damages allegedly incurred by its individual members. Assertion of the claims in the Amended Complaint necessarily will involve substantial participation by the

individual members of BFAG. Under the United States Supreme Court's holding in Hunt v. Washington State Apple Advertising Comm'n. (1997), and its progeny, that necessary level of participation -- particularly in a case seeking recovery of money damages -- defeats "associational standing" and renders BFAG an improper plaintiff.

Second, BFAG is **not a proper "real party in interest"** under Rule 17(a) of the Federal Rules of Civil Procedure ("FRCP"). Under that rule, only a party possessing the underlying substantive right to relief is a proper plaintiff. Here, because only the constituent members of BFAG have incurred and will incur response costs -- as opposed to the fictitious association "BFAG" -- only those individual companies are "real parties in interest" entitled to assert contribution claims under CERCLA and HSCA.

Third, as an unincorporated association, BFAG also **lacks capacity to sue.** Under Pennsylvania law, which controls, unincorporated associations are not recognized as "legal entities" separate and apart from their constituent members. Given that, Pennsylvania law provides that an unincorporated association may only assert claims in the names of its members, acting as trustees ad litem for the association. Claims asserted solely under the association's fictitious name are improper.

Accordingly, the Court should dismiss the Amended Complaint unless the named plaintiff "BFAG" is promptly replaced by the five member companies, which are the **only** proper plaintiffs in this cost recovery action.

# STATEMENT OF FACTS[2]

### A.    BFAG's Members and Their Obligations

BFAG is an unincorporated association of five companies.  (Amended Complaint at ¶ 24).  Each  of these five companies is situated somewhat differently with regard to the prior administrative and judicial proceedings regarding the Boarhead Farm Superfund Site ("the Site").

Three of BFAG's five members -- Cytec Industries Inc. ("Cytec"), Ford Motor Company ("Ford"), and SPS Technologies, Inc. ("SPS") -- are parties to two Administrative Orders and two Consent Decrees that obligate them to perform remedial design and remedial action in connection with pollutants discovered at the Site (Amended Complaint at ¶¶ 16-17).  Another BFAG member, TI Group Automotive Systems ("TI Systems"), is a party to the second Administrative Order and Consent Decree, but is not a party to the first.  Instead, TI Systems is party to private agreements with the other four BFAG companies that obligates it to fund and perform the remedial action at the Site.  (Id.).  The remaining BFAG member, Agere Systems, Inc. ("Agere") is not a party to <u>any</u> of the EPA Administrative Orders or Consent Decrees, but, like TI Systems, is a party to the private agreements with the other four BFAG companies that obligates it to fund and perform the remedial action at the Site.  (Id.).[3]

In addition to other obligations imposed by the EPA Administrative Orders and Consent Decrees, four of the BFAG members (Cytec, Ford, SPS, and TI Systems), are obligated to

---

[2]    The facts recited here are from BFAG's Amended Complaint and are taken as true only for purposes of this motion.

[3]    Thus, at least one BFAG member (Agere), is not a party to any EPA settlements, and therefore possesses no "contribution protection" defenses.  <u>See</u> 42 U.S.C. § 9613(f)(2)

reimburse the USEPA for $7 million for response costs incurred as of July 2000, as well as an undetermined amount of response costs incurred after that date. (Amended Complaint at ¶ 17). It is unclear from the Amended Complaint whether Agere, the fifth member of BFAG, also became responsible for this response cost reimbursement obligation through the private agreements. (Id.).

What is clear, however, is that BFAG itself, the only named plaintiff, is not a party to any of the EPA Administrative Orders or EPA Consent Decrees, and is not obligated to fund or perform any remedial action at the Site. Instead, the EPA Administrative Orders, EPA Consent Decrees, and the private agreements imposed funding and performance obligations solely on the individual members of BFAG. (Id.).

Put another way, nowhere in the Amended Complaint does BFAG, the sole named Plaintiff, allege that it is a party to any of the EPA Administrative Orders or EPA Consent Decrees. Nonetheless, as the sole named Plaintiff in this case, BFAG seeks to recover in the Amended Complaint the cleanup costs allegedly incurred by its members.

**B.     BFAG's Claim for Contribution**

Although not a party to any of the EPA Administrative Orders, EPA Consent Decrees, or the private agreements that imposed liability for response costs on its members, BFAG claims that it is entitled to sue on their behalf and seeks, among other things, to recover the $7+ million in response costs incurred or owed by at least some of those members. (Amended Complaint at Prayer for Relief Count I, ¶ (a)). Specifically, BFAG pleads for contribution from each Defendant and for damages as follows:

---

and 35 P.S. § 6020.705(c)(2). Another BFAG member (TI Systems), was not a signatory to the "contribution protection" provisions of the first EPA Consent Decree.

> ***Plaintiff demands judgment in its favor against each of the Defendants,*** ...
> adjudging, decreeing, and declaring that Defendants are liable . . . ***for***
> ***contribution*** to Plaintiff for Response Costs incurred thus far in connection with
> the Site ***and awarding damages to Plaintiff in that amount*** and for Future
> Response Costs to be incurred by Plaintiff in connection with the Site, together
> with interest thereon;

(Id.) (emphasis added); see also Amended Complaint at Prayer for Relief Counts II-III, ¶ (a)

(same request for HSCA Count). Notably, BFAG seeks damages for "Response Costs incurred

thus far" without limitation – a clear attempt to recover damages incurred by its members in

performing the requirements of the EPA Administrative Orders and Consent Decrees.

As is evident from the Prayer for Relief, the only damages that BFAG seeks – recovery

of a portion of the response costs incurred by its members -- are dependent upon a <u>contribution</u>

allocation. (Amended Complaint at Prayer for Relief Count I, ¶ (a)) (requesting contribution for

response costs and an award of damages "in that amount"). On this point, BFAG seeks relief

from the Court "allocating responsibility for the Response Costs and Future Response Costs

among Plaintiff and Defendants  . . ., using such equitable factors as the Court determines are

appropriate." (Amended Complaint at Prayer for Relief Count I, ¶ (b)); see also Amended

Complaint at Prayer for Relief Count III, ¶ (b) (same under HSCA Count). Based upon the

allegations of the Amended Complaint, however, only BFAG's members, and not BFAG itself,

have incurred response costs and will be liable for additional response costs in the future.

(Amended Complaint at ¶¶ 16-17). Thus, the Court will only be able to perform the contribution

allocation that BFAG requests by looking at the *individual* costs incurred and the Site

responsibility of *each* of BFAG's individual members.

## ARGUMENT

### I.     BFAG Lacks Associational Standing.

First and foremost, BFAG's claims are precluded because settled principles of associational standing prevent companies from suing in the name of an unincorporated group -- rather than in their own names -- where their individual participation is required in the action. This is particularly so where the relief sought, as is sought here, is the recovery of money damages allegedly incurred by each of the association's individual members, not by the association.

Under the controlling three-part test articulated by the Supreme Court, an association may only pursue claims as a representative of its members if it demonstrates that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) **neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.**" *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977) (emphasis added). BFAG cannot satisfy the highlighted third prong of this test. The extensive participation of each of its members is required for the equitable allocation that is necessary for a determination of damages in an action for contribution.

### A.     BFAG's Claims Require the Individual Participation of Each BFAG Member.

The very nature of the equitable allocation that is performed in contribution actions -- assigning responsibility for damages -- requires that each member of BFAG participate in this action. BFAG has alleged that defendants are liable under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a). (Amended Complaint at ¶ 130). Section 113(f), in turn, allows a party to seek contribution "from any other person who is liable or potentially liable under section 9607(a) of

this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title." 42 U.S.C. § 9613(f)(1). Courts have interpreted section 107(a) as creating a party's right to contribution and section 113 as providing the appropriate vehicle for recovering on that right. *See New Castle County v. Halliburton NUS Corp.*, 111 F.3d 1116, 1122 (3d Cir. 1997).

The Third Circuit has interpreted "contribution" in this context as a "standard legal term that refers to a claim 'by and between jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make.'" *New Castle County v. Halliburton NUS Corp.*, 111 F.3d 1116, 1121 (3d Cir. 1997) (quoting *United Technologies Corp. v. Browning-Ferris Indus., Inc.*, 33 F.3d 96 (1st Cir. 1994)). A principal purpose of section 113(f)'s contribution provision is to "clarify and confirm the right of a person held jointly and severally liable under CERCLA to seek contribution from other potentially liable parties, when the person believes that it has assumed a share of the cleanup or cost that may be greater than its equitable share under the circumstances." *Id.* at 1122 (quoting H.R. Rep. No. 99-253(I), at 79 (1985), *reprinted in* 1986 U.S.C.C.A.N. 2835, 2861); *United States v. Colo. & E. R.R. Co.*, 50 F.3d 1530, 1535 (10th Cir. 1995) (same). "In other words, while a potentially responsible person should not be permitted to recover all of its costs from another potentially responsible person, the person should be able to recoup that portion of its expenditures which exceeds its fair share of the overall liability." *New Castle*, 111 F.3d at 1122.

Thus, as a prerequisite to the contribution relief BFAG seeks, this Court will first need to determine: (1) the allocable shares of the overall liability attributable to each of BFAG's members; and (2) the amount of recoverable response costs incurred by each of BFAG's members. That is because each BFAG company is entitled to recover no more than what it has

paid in excess of its equitable pro rata share of the total liability. *Id.*; *United Technologies*, 33 F.3d at 100 (construing CERCLA contribution provisions as allowing a non-innocent party "only to seek recoupment of that portion of his expenditures which exceeds his pro rata share of the overall liability"); *Pinal Creek Group v. Newmont Mining Corp.*, 118 F.3d 1298, 1301, 1306 (9th Cir. 1997) (stating that "a PRP's contribution liability will correspond to that party's equitable share of the total liability and will not be joint and several" and holding plaintiff responsible for its equitable share of total cleanup costs).

Even assuming, arguendo, that BFAG could properly be allocated a "collective" equitable share of liability, even that hypothetical share could only be fully and accurately determined through a detailed inquiry into each of its members' individual involvement in the contamination at the Site. Because BFAG – an unincorporated association constituting nothing more than a fictional name – obviously did not contribute to the contamination, and is not even alleged to be legally responsible for it through the Administrative Orders and Consent Decrees, its liability can only be measured by a hypothetical aggregating of its members' individual shares of responsibility.

In determining the proper allocation of response costs, section 113(f) of CERCLA explains that "the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f)(1) (emphasis added). BFAG specifically requests that this Court make this equitable allocation. (Amended Complaint at Prayer for Relief Count I ,¶ (b); Count III, ¶ (b)). The allocation of response costs "is a type of decision particularly suited to case-by-case determination." *Envtl. Transp. Sys., Inc. v. ENSCO, Inc.*, 969 F.2d 503, 509 (7th Cir. 1992). Federal courts repeatedly stress that courts may consider "any factors appropriate to balance the equities in the totality of the circumstances." *Envtl.*

*Transp.*, 969 F.2d at 509; *Am. Color & Chem. Corp. v. Tenneco Polymers, Inc.*, 918 F. Supp. 945, 959 (D.S.C. 1995). The party seeking to allocate costs has the burden of proving that allocation is appropriate for a particular case. *Envtl. Transp.*, 969 F.2d at 508; *Am. Color*, 918 F. Supp. at 959.

As an example of the detailed analysis required in making this equitable allocation, several jurisdictions, including this Court, have applied the "Gore Factors," six factors that were proposed by then-Senator Albert Gore as amendments to the joint and several liability portions of CERCLA, in determining the proper apportionment of contribution claims under Section 113(f)(1). *Bethlehem Iron Works, Inc. v. Lewis Indus., Inc.*, 1996 WL 557592, at *71 n.30 (E.D. Pa. 1996). These factors are:

(i)     the ability of the parties to demonstrate that their contribution to a discharge, release or disposal of a hazardous waste can be distinguished;

(ii)    the amount of the hazardous waste involved;

(iii)   the degree of toxicity of the hazardous waste involved;

(iv)   the degree of involvement by the parties in the generation, transportation, treatment, storage, or disposal of the hazardous waste;

(v)    the degree of care exercised by the parties with respect to the hazardous waste concerned, taking into account the characteristics of the hazardous waste; and

(vi)   the degree of cooperation by the parties with the Federal, State, or local officials to prevent any harm to the public health or the environment.[4]

---

[4]   As noted *supra*, BFAG also requests contribution and damages under the provisions of Pennsylvania's Hazardous Sites Cleanup Act ("HSCA"). The provisions of HSCA echo those of CERCLA and include the same kind of equitable allocation found under the federal statute. *See* 35 Pa. Cons. Stat. § 6020.702 (1988); 35 Pa. Cons. Stat. § 6020.705 (1988). Just as is the case under CERCLA, Section 6020.705 of HSCA provides that a court making an equitable allocation for a contribution claim "may use such equitable factors as it deems appropriate." *Id.* Although HSCA differs from CERCLA in that it explicitly provides a list of factors that the court should consider in making an equitable allocation, these factors are substantially similar to the Gore factors that courts have

*Colo. & E. R.R.*, 50 F.3d at 1536 n. 5; *Envtl. Transp.*, 969 F.2d at 508; *Am. Color*, 918 F. Supp. at 959; *Bethlehem Iron Works*, 1996 WL 557592, at *71.  Although courts have emphasized that the Gore factors are not necessarily exclusive or exhaustive of the factors that should be considered in any given case, *id.*, they are indicative of the type of detailed examination that courts routinely apply to claims for contribution.

This type of comprehensive analysis will have to be performed for <u>each</u> individual BFAG member before this Court can apportion BFAG's aggregate share of liability for the response costs.  *See Kalamazoo River Study Group v. Rockwell Int'l Corp.*, 274 F.3d 1043, 1048-49 (6th Cir. 2001) (affirming allocation of zero share of liability to defendant after examining responsibility of each member of plaintiff association).  Indeed, participation of each BFAG member is particularly necessary in this case because each of the members contributed to the problems at the Site in different degrees, at different times in the 1970s, and under different circumstances, and BFAG itself was not in any way involved with the contamination at the site. Due to that fact, BFAG can only fulfill its obligations in this litigation, such as providing sworn answers to written interrogatories, by obtaining and vouching for information from its members.

**B.    Each BFAG Member Is Also Represented By Counsel for BFAG.**

The individual participation of BFAG's members in this action is required for an additional reason:  Counsel for BFAG, an unincorporated association of companies formed

---

applied under CERCLA.  In fact, this Court has observed that "not only are the HSCA factors similar to the Gore factors under CERCLA, but both statutes give the court considerable latitude in determining each party's liability." *Bethlehem Iron Works*, 1996 WL 557592, at *71. This similarity between the statutes led this Court to rule that "the apportionment of liability should be the same under both statutes." *Id.*  Thus, the grounds for dismissing BFAG's CERCLA claims are equally applicable to the HSCA count because both claims require the same participation of BFAG's members to equitably allocate liability.

specifically for proceedings related to the Site, is deemed to also represent as clients <u>each</u> of BFAG's individual members.[5]  Thus, as a matter of professional responsibility, counsel for BFAG <u>must</u> consult with each of the BFAG members on all litigation decisions of consequence and inform them of potential conflicts of interest that might arise during litigation.  In sum, the individual BFAG members' participation is thus required in every phase of litigation, from discovery to settlement negotiations.[6]

The rationale for treating group counsel as counsel for each of the group members in a case such as this was explained in *City of Kalamazoo v. Michigan Disposal Services*, 151 F. Supp. 2d 913 (W.D. Mich. 2001).  A defendant in that case moved to disqualify counsel for plaintiffs in a contribution action where, in previous litigation involving the same site, plaintiffs' counsel had represented a joint defense group of which the defendant had been a member.  The court granted the defendant's motion, holding that plaintiffs' counsel was deemed to have

---

[5]  *See City of Kalamazoo v. Mich. Disposal Serv.*, 151 F. Supp. 2d 913, 918 (W.D. Mich. 2001); *Al-Yusr Townsend & Bottum Co. v. United Mid East Co., Inc.*, No. 95-1168, 1995 WL 592548, at *3-4 (E.D. Pa. Oct. 4, 1995); *cf. Willig, Williams & Davidson v. Walters*, No. Civ. A. 93-0642, 1993 WL 224723, at *3 (E.D. Pa. June 22, 1993) (stating that "where an entity and its individual members share the same interest vis-à-vis a third party in a particular matter or transaction, an attorney retained to protect that interest may owe the members the same professional obligations he owes to the entity" but holding that no such relationship existed in that case).

[6]  *See, e.g., Int'l Longshoremen's Assoc., Local Union 1332 v. Int'l Longshoremen's Assoc.*, 909 F. Supp. 287, (E.D. Pa. 1995)(noting that "[a]ttorneys must consult with their clients about potential conflicts of interest and must disclose the facts and circumstances surrounding the conflicts to such an extent that the clients appreciate the significance of the conflict"); 42 Pa. Cons. Stat. Ann. Rule of Professional Conduct 1.2 (1988) ("A lawyer shall abide by a client's decisions concerning the objectives of representation, . . . , and shall consult with the client as to the means by which they are to be pursued.  A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter.").

11

represented <u>each</u> member of the joint defense group individually when it undertook representation of the group. *Id.*

Crucial to the court's reasoning was the fact that the joint defense group had been formed "solely within the confines of the West KL litigation and had no existence or purpose apart from the litigation;" in these circumstances, the Court found that the joint defense group "was really nothing more than the sum of its parts – the individual members." *Id.* Thus, the Court noted, "it is illogical to conclude that [counsel] represented the joint defense group and not the constituent defendants in the group." *Id.*

Likewise, in this case, BFAG exists solely in relation to this litigation and has no other separate existence. In addition, BFAG and its members "share the same interest vis-à-vis a third party" in this action (albeit having simultaneous adversity *inter se* for allocation purposes), a fact deemed important by this Court in finding an attorney-client relationship between counsel for an association and its members. *See Willig*, No. Civ. A. 93-0642, 1993 WL 224723, at *3. Therefore, where BFAG is literally "nothing more than the sum of its parts" as it purports to pursue its members' claims against Moving Defendants in this contribution action, counsel for BFAG is deemed to represent <u>each</u> of the BFAG members, a fact that will obviously require their individual participation in every phase of this action.

## C.    BFAG Lacks Associational Standing.

The extensive individual member participation required by the contribution issues common to both the CERCLA and HSCA Counts of the Complaint -- and also by the joint representation of BFAG and its members -- dooms BFAG's claims under the Supreme Court's associational standing test, particularly where BFAG is seeking damages. In construing the third prong of the associational standing test, the Third Circuit has noted that damages claims brought

by associations such as BFAG on behalf of their members *rarely* pass the Supreme Court's test for associational standing: "[D]amages claims usually require significant individual participation, which fatally undercuts a request for associational standing. . . . '[A]n association's action for damages running solely to its members would be barred for want of the association's standing to sue.'" *Pa. Psychiatric Soc'y v. Green Spring Health Serv.*, 280 F.3d 278, 284 (3d Cir. 2002) (quoting *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 546 (1996)); *see also Air Transp. Assoc. of Am. v. Reno*, 80 F.3d 477, 483-84 (D.C. Cir. 1996).

BFAG's claims here are no exception to the strong presumption against standing where an association attempts to bring individualized damages claims on behalf of its members. Indeed, as discussed above, BFAG's claims for damages are dependent upon a detailed and fact-intensive equitable allocation analysis, which requires individualized proof from each of BFAG's members to determine even a hypothetical BFAG share of responsibility. *See New Castle*, 111 F.3d at 1122. Individualized proof of each of the BFAG members' damages will be a necessity in this case, especially because not all of the members are parties to all of the EPA Administrative Orders and Consent Decrees, and not all contributed to the contamination at the Site in the same manner and to the same degree. Where such individualized proof of damages is required from the members of an association, courts consistently reject an association's attempt to bring claims in its name on behalf of its members.. *See Air Transport Assoc. of Am. v. Reno*, 80 F.3d 477, 483-84 (D.C. Cir. 1996) ("Under the circumstances of this case, we find that individualized proof would definitely be required, and thus we find that the ATA lacks standing to obtain monetary relief."); *Sanner v. Bd. of Trade*, 62 F.3d 918, 923 (7th Cir. 1995) ("Such a suit would apparently require the calculation of damages for each of the individual farmers. In

light of this factor, allowing the AAM to proceed on behalf of the individual farmers would run afoul of *Hunt*'s third prong, which states that individual members participate in the lawsuit."); *Rent Stabilization Assoc. v. Dinkins*, 5 F.3d 591, 596-97 (2d Cir. 1992) (affirming dismissal for lack of associational standing where "in our case it is impossible to discern the identity of the aggrieved parties without delving into individual circumstances" and the primary issue depended "on a variety of financial and other information unique to each landlord").

The impropriety of allowing BFAG to bring claims on behalf of its members is signaled not only by its claim for damages, but also by the individualized proof required for the equitable allocation that is a prerequisite for assessing damages in a contribution action. As the Second Circuit in *Dinkins* reminded, the associational standing test includes analysis of the individual participation required for each *claim* asserted, not simply the *relief* requested. *Dinkins*, 5 F.3d at 596 (quoting *Hunt*, 432 U.S. at 343). Thus, even if BFAG attempts to characterize its lawsuit as one not for damages but for equitable relief to determine the relative responsibilities of the parties, the argument would fail because it is the claim for contribution (and the request for equitable allocation of responsibility) that requires the individual participation of the BFAG members. In light of this deficiency and the representation of the individual members by BFAG's counsel, settled principles of associational standing require that the Amended Complaint be dismissed, unless promptly amended to name only BFAG's individual members as plaintiffs in this action.

## II. BFAG is Not a "Real Party in Interest" Under FRCP Rule 17(a).

In addition to lacking associational standing, BFAG also is not a "real party in interest" under Rule 17(a) of the Federal Rules of Civil Procedure ("FRCP"). In relevant part, FRCP Rule 17(a) requires that "[e]very action shall be prosecuted in the name of the real party in interest."

The "real party in interest" concept is similar to principles of standing, and requires that an "action must be brought by the person who, according to the governing substantive law, is entitled to enforce the right." Wright, Miller & Kane, Federal Practice and Procedure, Civil 3d § 1543 at p. 334 (1990).

To determine if the "real party in interest" requirement is satisfied, "the court must look to the substantive law creating the right being sued upon to see if the action has been instituted by the party possessing the substantive right to relief." Id. at § 1544, at p. 340. Here, it is undisputed that the two substantive laws underlying all of the counts asserted in the Amended Complaint are CERCLA and HSCA. In particular, under section 113(f)(1) of CERCLA, BFAG seeks contribution from the Defendants for response costs allegedly incurred by BFAG's constituent members. (Amended Complaint at ¶ 146 and following Prayer for Relief). Similarly, under section 702(a)(3) of HSCA, the Pennsylvania "mini-Superfund" statute, BFAG seeks contribution from the Defendants for response costs allegedly incurred by BFAG's constituent members. (Amended Complaint at ¶ 159 and following Prayer for Relief).

Under both CERCLA and HSCA, the substantive right to assert a contribution claim belongs solely to a party who has incurred recoverable response costs, and who is further able to prove: (1) that the target defendants also are liable parties under the statutes; and (2) that the contribution plaintiff has paid more than its fair share under an "equitable factors" analysis, and therefore is entitled to recover from the defendants. In the absence of a party actually incurring recoverable response costs, a cause of action for contribution under either CERCLA or HSCA never arises.

It necessarily follows that the fictitious association "BFAG" is not a proper "real party in interest," as contrasted with its constituent members. Only BFAG's constituent members

allegedly have incurred response costs, and therefore only those members possess a substantive

contribution right to relief. As summarized by Wright, Miller & Kane, "an association is not the

appropriate party for bringing suit to assert the personal rights of its members." Id. at § 1552, at

p. 314. That succinct conclusion exactly applies here.

## III.    BFAG Lacks Capacity to Sue in its Own Name.

Finally, under a "capacity to sue" analysis, the individual companies attempt to sue under

the collective name "BFAG" is improper. The Amended Complaint confirms that BFAG is an

"unincorporated association." (Amended Complaint at ¶ 24). Under the plain language of FRCP

Rule 17(b), an unincorporated association's capacity to sue is determined "by the law of the state

in which the district court is held," in this case the law of Pennsylvania.

Under Pennsylvania law, an unincorporated association is not recognized as a legal entity

separate and apart from its individual members. Krumbine v. Lebanon County Tax Claims

Bureau, 663 A.2d 158 (Pa. 1995). Consistent with that substantive principle, an unincorporated

association is not permitted to sue in its own name under Pennsylvania law. Instead, the only

way in which an unincorporated association is permitted to sue under Pennsylvania law is in the

name of the individual members, as trustees ad litem acting for the association. See Pa. R. Civ.

Proc. 2152. Claims asserted solely under the association's fictitious name are per se improper.

See Pa. Std. Practice § 111.6 ("An action prosecuted by an unincorporated association must be

prosecuted in the name of a member of members thereof as trustees ad litem for the association

…").

Although that should conclude the matter, BFAG can be expected to argue that an

exception in FRCP Rule 17(b) applies here, namely that an unincorporated association is

nonetheless permitted to file suit in its own name -- even where the relevant state law bars that

approach -- where the claim at issue is "for the purpose of enforcing for . . . **it** a substantive right existing under the . . . laws of the United States." FRCP Rule 17(b) (emphasis added).[2]

However, that exception is unavailing here for two reasons. First, it has no potential application whatsoever to the HSCA claims asserted by BFAG in Count III of the Amended Complaint, which under any interpretation are not an attempt to assert "a substantive right existing under the laws of the United States." The HSCA count is a state law claim only, not a federal claim.

Second, the exception also should have no application to the CERCLA claims, because the exception would apply only to a substantive federal right belonging to BFAG, the "**it**" emphasized in the section of FRCP Rule 17(b) quoted above. Here, as set forth in the prior "real party in interest" discussion, the substantive federal right belongs solely to the constituent members, not to BFAG, and therefore the federal claim exception is likewise unavailable to BFAG.

## CONCLUSION

The relief requested here by the Moving Defendants is more than form over substance. The five individual companies that make up BFAG share an identity of interest in only one sense – they obligated themselves by various contracts to fund and perform the overall cleanup remedy at the Site. However, as to who will bear how much of the cleanup costs -- the only subject of this lawsuit -- the individual members of BFAG are as adverse to each other as they are to each of the Defendants. The improper attempt to designate a single party (BFAG) as Plaintiff, rather

---

[2]    See Local 4076, United Steelworkers v. United Steelworkers, AFL-CIO, 327 F. Supp. 1400, 1402-03 (W.D. Pa. 1971) (holding that FRCP Rule 17(b) and Pa. R. Civ. Proc. 2152 taken together denied capacity to sue to unincorporated association, but that employee claims under federal labor law triggered Rule 17(b) exception).

than each of its five constituent companies suing as individual plaintiffs, seeks to paper over this fundamental adversity.

BFAG's individual members also seek improper advantages by filing as a group entity, particularly with respect to discovery matters. By attempting to hide behind the façade of a single associational plaintiff, the member companies of BFAG seek to impose individual discovery burdens on each of the defendants in this case, while avoiding those burdens themselves. The defendants would be stripped of the normal tools available to obtain discovery from parties, such as requests for admissions, and would be forced to use subpoenas to discover documents and summon witnesses from the individual members. Presumably BFAG's members also will seek to maximize the assertion of attorney-client, work product, and/or "joint defense" privileges, even though as to the matters at issue here, their interests are directly adverse. They also may be seeking a perceived "burden of proof" advantage, by forcing the defendants to sue the constituent members of BFAG as third-party defendants for contribution or other potential claims.

The bottom line is that _each_ of the constituent members of BFAG is in fact asserting its own contribution claims in this case, but to do so legitimately, _each_ of those individual companies must prove that _it_ incurred response costs, must prove that the specific amount _it_ incurred was more than _its_ fair share, and must prove that _it_ is entitled to recover a portion of those costs from any defendants proven liable. Those are fundamentally individual claims requiring extensive individual participation by each BFAG company as a party.

For all of the above and foregoing reasons, Moving Defendants respectfully request that this Court dismiss BFAG's Complaint, unless BFAG promptly amends its pleading to substitute its individual members as the plaintiffs in this action.

Respectfully submitted,

*Michael W. Steinberg* (MRD)

Michael W. Steinberg (Bar # 25778)
Patrick D. Conner
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., N.W.
Washington, D.C.  20004
202.739.5141
202.739.3001 Facsimile

Michael Dillon (Bar # 43854)
MORGAN LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103-2921
215.963.4938
215.963.5299 Facsimile

Attorneys for Defendant
Novartis Corporation

Dated: February 7, 2003

## CERTIFICATE OF SERVICE

I hereby certify that I have, this 7th day of February, 2003, served the foregoing **JOINT MOTION OF CERTAIN DEFENDANTS TO DISMISS THE AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**, and proposed **ORDER** and **MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION OF CERTAIN DEFENDANTS TO DISMISS THE AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**, by causing a copy of same to be delivered by hand to:

Monique M. Mooney, Esquire
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street
51st Floor
Philadelphia, PA 19103
Phone: 215.864.8189
Fax:    215.864.9266
mooney@ballardspahr.com

with an additional courtesy copy delivered by first class mail to:

Glenn A. Harris, Esquire
Ballard Spahr Andrews & Ingersoll, LLP
Plaza 1000 – Suite 500
Main Street
Voorhees, NJ 08043-4636
Phone: 856.761.3440
Fax:    856.761.9001
harrisg@ballardspahr.com

and delivered by first class mail to all counsel of record:

**Counsel for Defendants:**

*Advanced Environmental Technology Corporation*
John M. Simon, Esquire
Thomas Sabino, Esquire
Diana L. Buongiorno, Esquire
Wolff & Samson
5 Becker Farm Road
Roseland, NJ 07068-1776
Phone:  973.740.0500
Fax:    973.436.4440
tsabino@wolffsamson.com

Robert M. Morris, Esquire
Morris & Adelman, P.C.
P.O. Box 30477
1920 Chestnut Street
3rd Floor
Philadelphia, PA 19103
Phone: 215.568.5621
mail@morrisadelman.com

**Ashland, Inc.**
Richard C. Biedrzycki, Esquire
David M. Doto, Esquire
Phelan, Pettit & Biedrzycki
121 South Board Street
Suite 1600
Philadelphia, PA 19107
Phone: 215.546.0500

**Carpenter Technology Corporation**
David A. Christiansen, Esquire
Associate General Counsel & Assistant Secretary
Legal Department
Carpenter Technology Corporation
1047 North Park Road
Wyomissing, PA 19610
Phone:  610.208.2000
Fax:      610.208.3068
dchristiansen@cartech.com

Lynn Wright, Esquire
Edwards & Angell
750 Lexington Avenue
New York, NY 10022
Phone: 212.756.0215
Fax:      888.325.9169
lwright@ealaw.com

**Diaz Chemical Corp.**
Ronald J. Reid, III
Manager, Health/Safety/Environment
Diaz Chemical Corp.
40 Jackson Street
Holley, NY 14470-1156
Phone:  716.638.6321
Fax:      716.638.8356
reid@diazche.com

**Emhart Corporation**
Jerome C. Muys, Jr., Esquire
Laura A. Ford, Esquire
Swidler Berlin Shereff Friedman LLP
3000 K Street, N.W., Suite 300
Washington, D.C. 20007
Phone:  202.424.7500
Fax:      202.424.7643
jcmuys@swidlaw.com

**Etched Circuits, Inc. & Fcg, Inc.**
Harry C. Barbin, Esquire
Barbin & O'Connell
608 Huntington Pike
Rockledge, PA 19046-4490
Phone:  215.379.1638
Fax:      215.663.8906
hcb@barbin-oconnell.com

**Handy & Harman Tube Company**
G. Glennon Troublefield, Esquire
Melissa Flax, Esquire
Carella, Byrne, Bain, Gilfillian,
       Cecchi, Steward & Olstein, P.C.
6 Becker Farm Road, 3rd Floor
Roseland, NJ 07068-1739
Phone: 973.994.1700
Fax:    973.994.1744
mflax@carellabyrne.com

**Knoll, Inc.**
Richard Friedman, Esquire
McNees, Wallace & Nurick, LLC
P.O. Box 1166
100 Pine Street
Harrisburg, PA 17108-1166
Phone: 717.237.5469
Fax:    717.237.5300
rfriedman@mwn.com

**Merit Metals Products Corp.**
Stephen P. Chawaga, Esquire
Monteverde, Mcalee & Hurd
One Penn Center
Suite 1500
1617 JFK Boulevard
Philadelphia, PA 19103-1815
Phone: 215.557.2900
Fax:    215.557.2990
schawaga@monteverde.com

**Novartis Corp.**
Michael W. Steinberg, Esquire
Michael Dillon, Esquire
Morgan Lewis & Bockius LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Phone: 202.739.3000
Fax:    202.739.3001
msteinberg@morganlewis.com

**NRM Investment Co.**
Edward Fackenthal, Esquire
Henderson, Weitherill, O'hey & Horsey
902 One Montgomery Plaza
P.O. Box 751
Norristown, PA 19404
Phone: 610.279.3370
Fax:    610.219.0696
edwardfacenthal@cs.com

**Plymouth Tube Company**
Steven J. Lemon, Esquire
Jones, Lemon, Graham & Chaney
28 North Bennett Street, Suite A
P.O. Box 805
Geneva, IL 60134-0805
Phone:  630.208.0805
Fax:     630.208.4651
stevenl@joneslemon.com

**Quickline Design**
Sanford F. Schmidt, Esquire
Law Offices of Schmidt & Tomlinson
29 Union Street
Medford, NJ 08055
Phone:  609.714.0600
Fax:     609.714.0610
lawschmidt@erols.com

*Rahns Specialty Metals, Inc.*
*Techalloy Co., Inc.*
*Thomas & Betts Corporation*
*Unisys Corporation*
Andrew P. Foster, Esquire
Drinker, Biddle & Reath, LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996
Phone: 215.998.2700
Fax:    215.988.2757
andrew.foster@dbr.com

*Rohm and Haas Company*
Jennifer Berke Levin, Esquire
Rohm and Haas Company
100 Independence Mall West
Philadelphia, PA 19106-2349
Phone: 215.592.6838
Fax:    215.592.3227
jlevin@rohmhaas.com

*Simon Wrecking Co., Inc.*
Sharon Oras Morgan, Esquire
Mattlemen Weinroth & Miller
Land Title Building, Suite 2226
Broad & Chestnut Streets
Philadelphia, PA 19110
Phone: 215.923.2225
Fax:    215.567.4151
smorgan@mwm-law.com

*United States of America, Department of Navy*
Judith Keith, Esquire
U.S. Department of Justice
Environmental & Natural Resources Division
P.O. Box 23986
Washington, D.C. 20026-3986
Phone: 202.514.3747
Fax:    202.514.8865
judith.keith@usdoj.com

Michael R. Dillon

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

BOARHEAD FARM AGREEMENT GROUP,   :
               :
       Plaintiff,     :
               :
v.              :   Civil Action No. 02-3830
               :
ADVANCED ENVIRONMENTAL    :
TECHNOLOGY CORPORATION, ET AL.,  :
               :
       Defendants.   :

## ORDER

  Upon consideration of the Joint Motion of Certain Defendants to Dismiss the Complaint for Failure to State a Claim, and the papers submitted in opposition thereto, and the record herein, the Court finds that the Motion should be granted.

  Accordingly, it is  hereby **ORDERED, ADJUDGED, AND DECREED** this _____ day of _____, 2003, as follows:

- The Joint Motion of Certain Defendants to Dismiss the Complaint for Failure to State a Claim shall be, and hereby is, **GRANTED**;

- Plaintiff Boarhead Farm Agreement Group ("BFAG") shall amend its complaint within 10 days to substitute its individual members as the only plaintiffs in this action; and

- If Plaintiff BFAG fails to amend its complaint within 10 days as required by this Order, then BFAG's Complaint against Defendants Advanced Environmental Technology Corporation, Ashland Chemical Corporation, Carpenter Technology Corporation, Knoll, Inc., Merit Metal Products Corporation, Novartis Corporation, NRM Investment Company, Plymouth Tube Company, Rahns

Specialty Metals, Inc., Rohm and Haas Company, Simon Wrecking Co., Inc., Techalloy Co., Inc., Thomas & Betts Corporation, and Unisys Corporation shall be **DISMISSED WITH PREJUDICE.**

_____
Judge Legrome D. Davis
United States District Court for the
Eastern District of Pennsylvania

Copies to:

Michael W. Steinberg (Bar # 25778)
Patrick D. Conner
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., N.W.
Washington, D.C.  20004
202.739.5141
202.739.3001 Facsimile

Michael Dillon (Bar # 43854)
MORGAN LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103-2921
215.963.4938
215.963.5299 Facsimile

Attorneys for Defendant
NOVARTIS Corporation

Glenn A. Harris
Ballard, Spahr, Andrews & Ingersoll, LLP
Plaza 1000, Suite 500, Main Street
Voorhees, New Jersey  08043
856.761.3400

Attorneys for Plaintiff
BOARHEAD FARM AGREEMENT GROUP