**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

BOARHEAD FARM AGREEMENT GROUP,   :
                                      :
                Plaintiff,        :
                                        :
            v.                  :         Civil Action No. 02-3830
                                        :
ADVANCED ENVIRONMENTAL       :
TECHNOLOGY CORPORATION, ET AL.,  :
                                        :
              Defendants.     :

**MEMORANDUM IN OPPOSITION TO JOINT MOTION OF CERTAIN**
**DEFENDANTS TO DISMISS THE AMENDED COMPLAINT FOR**
**FAILURE TO STATE A CLAIM**

        Plaintiff Boarhead Farm Agreement Group (the "Boarhead Group") respectfully submits this Memorandum in opposition to the Joint Motion of Certain Defendants to Dismiss the Amended Complaint for Failure to State a Claim (the "Motion").  The Motion should be denied for two reasons.  First, virtually all of the arguments in the Motion rely upon "facts" incorrectly inferred from or in contradiction to the allegations in the Amended Complaint.  Those arguments all fail when the material allegations of the Amended Complaint are accepted as true and all reasonable inferences in a light most favorable to the Plaintiff are drawn from those allegations.  Second, the Defendants' arguments are legally incorrect, even as applied to the "facts" as they suppose them.

<u>**Argument**</u>

**I.**      **The Amended Complaint States A Claim Upon Which Relief Can Be Granted When**
        **Appropriately Read.**

        When standing is challenged on the basis of the pleadings, a court must "accept as true all material allegations of the complaint and ... construe the complaint in favor of the complaining party." *Pennell v. City of San Jose*, 485 U.S. 1, 7 (1988) (*quoting Warth v. Seldin*,

422 U.S. 490, 501 (1975)).  The court must draw all reasonable inferences in a light most

favorable to Plaintiff.  *Pennsylvania Psychiatric Society v. Green Spring Health Services, Inc*.,

280 F.3d 278, 283 (3d. Cir. 2002).  The motion should be granted only if the Court concludes

that Plaintiff will be entitled to no relief under any set of facts consistent with its allegations.  *Id.*

When so read, the Amended Complaint contains allegations sufficient to establish the Boarhead

Group's standing to bring this civil action as well as its compliance with Fed. R. Civ. P. ("Rule")

17(a) and (b).

> The allegations of the Amended Complaint relevant to this Motion are as follows.

> > *Plaintiff* seeks contribution from Defendants, including an
> > allocation by the Court of response costs among *Plaintiff* and
> > Defendants using such equitable factors as the Court determines
> > are appropriate for the response costs that *Plaintiff* has incurred
> > and the damages that *Plaintiff* has suffered … *Plaintiff* also seeks a
> > declaratory judgment that Defendants are liable to *Plaintiff* for
> > contribution for any and all response costs that *Plaintiff* will or
> > may incur and for any and all damages that *Plaintiff* will or may
> > suffer in the future as a result of releases, threatened releases, or
> > discharges of Hazardous Substances at or from the Site.

Amended Complaint at ¶ 1 (emphasis added).

> The Boarhead Group has incurred these costs both by reimbursing the United

States Environmental Protection Agency ("EPA") for $7 million in alleged response costs

incurred by that agency and by funding and performing remedial actions at the Boarhead Farms

Superfund Site (the "Site").  Amended Complaint at ¶¶ 18 - 19 and 16 - 17.

> Each of the five members of the Agreement Group is a party to two separate

agreements:  One to fund and perform the remediation work that comprises the OU-1 work; and

one to fund and perform the remediation work that comprises the OU-2 work.  Amended

Complaint at ¶¶ 16-17.

"Plaintiff Boarhead Farm Agreement Group, an unincorporated association, is an organization containing entities that have incurred and will in the future incur response costs and have otherwise performed and are performing remedial actions at the Site, and is a person as defined by Section 101(21) of CERCLA, 42 U.S.C. § 9601(21)."  Amended Complaint at ¶ 24.

Each of the Defendants is a person that is liable under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA").  Amended Complaint at ¶¶ 140-45.

The Amended Complaint seeks a judgment "in favor of Plaintiff against each of the Defendants … Adjudging, decreeing, and declaring that Defendants are liable pursuant to Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), for contribution *to Plaintiff* for Response Costs incurred thus far in connection with the Site and awarding damages *to Plaintiff* in that amount and for Future Response Costs to be *incurred by Plaintiff* in connection with the Site, together with interest thereon; … [and] Allocating responsibility for the Response Costs and Future Response Costs *among Plaintiff and Defendants* pursuant to Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), using such equitable factors as the Court determines are appropriate."  Amended Complaint at ¶ 146(a)(b)(emphasis added).[1]

It can and should easily be inferred from these allegations, from the multitude of allegations throughout the Amended Complaint that "Plaintiff" has incurred and will incur costs of response, and from the face of the Amended Complaint itself (listing a sole plaintiff) that the

---

[1]     Plaintiff's claims in Count II for a declaratory judgment under CERCLA and in Count III under the Pennsylvania Hazardous Sites Clean-Up Act ("HSCA") similarly are based upon the general allegations that Plaintiff has incurred and will in the future incur the costs of remediating the Site, that Defendants are liable under applicable laws for those costs, and that Plaintiff is entitled to contribution from the Defendants.

five companies comprising the Boarhead Group joined together in a collective endeavor to: undertake remedial activities at the Site; reimburse the EPA for EPA's past alleged response costs; and retain this firm to bring an action on behalf of the Boarhead Group *as a group* for an allocation by the Court of those costs as between Plaintiff, *as a group*, and each of the Defendants individually using such equitable factors as the Court determines are appropriate.[2] The allegations of the Amended Complaint thus establish the Boarhead Group's standing to bring claims in its own name as well as its compliance with Rule 17(a) and (b).

Defendants' motion is premised upon their conclusion that only the individual members of the Boarhead Group, and not the Boarhead Group itself as an entity, have incurred response and other costs that may be recovered from the defendants. Brief at 2. When the allegations of the Amended Complaint are read as they must be read for the purposes of this Rule 12(b)(6) Motion, though, Defendants' underlying premise evaporates and its standing and Rule 17 arguments collapse.[3]

The Amended Complaint fairly read alleges that the Boarhead Group has standing to pursue its CERCLA claims. Standing is a prudential doctrine that encompasses "'several

---

[2]    Paragraph 24 of the Amended Complaint is reasonably read to allege that the entities comprising the Agreement Group have "incurred and will in the future incur response costs" in conjunction with their membership in and obligations to the Agreement Group. That is, each of the five member companies did nothing more than contribute funds to the Agreement Group, and the Agreement Group in turn made payments to the EPA and to the various vendors retained by the Agreement Group to perform remedial activities at the Site.

[3]    The Defendants repeatedly argue that the Boarhead Group itself is not a party to any administrative order or consent decree wherein the Boarhead Group is "obligated" to fund or perform any remedial action at the Site. Brief at 3. The statute, however, says that any person may seek contribution for response costs paid by it or to be paid by it. The statute does not require that persons seeking contribution for response costs first enter into administrative orders or consent decrees.

judicially self-imposed limits on the exercise of federal jurisdiction.'" *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc*, 517 U.S. 544, 551 (1996)(*quoting Allen v. Wright*, 468 U.S. 737, 751 (1984)).  Standing supplements the requirements in Article III of the Constitution limiting the federal judicial power to "Cases" or "Controversies," whereby a plaintiff must show "(1) an injury in fact, (2) a causal relationship between the injury and the challenged conduct, and (3) a likelihood that the injury will be redressed by a favorable decision."  *Id*. at 551.  The Boarhead Group has alleged that it, and not just its individual members, has paid and will in the future pay response and other costs in cleaning up the Site, that Defendants are liable under CERCLA for such costs, and that Plaintiff is entitled to contribution from the Defendants.  These allegations satisfy each of the Article III and standing requirements. The Defendants' "associational standing" argument is thus irrelevant.

        The Defendants' argument that the Boarhead Group is not a "real party in interest" under Rule 17(a) fails for the same reason.  CERCLA expressly provides that an "association" is a person that may bring a claim for contribution.[4]  Because the Boarhead Group alleges that it has paid and will in the future pay response costs, it is a person entitled to seek contribution.  It is thus a "real party in interest" under Rule 17(a).[5]

---

[4]      CERCLA defines "person" to mean "an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, United States Government, State, municipality, commission, political subdivision of a State, or any interstate body." 42 U.S.C. § 9601(21).

[5]      The Boarhead Group notes the mistake made by Defendants in their statement that "the substantive right to assert a <u>contribution</u> claim belongs solely to a party who has incurred recoverable response costs, and who is further able to prove: (1) that the target defendants also are liable parties under the statute; and (2) that the contribution plaintiff has paid more than its fair share under an "equitable factors" analysis, and therefore is entitled to recover from the defendants."  Brief at 15 (emphasis in original).  Plaintiffs under both

(continued...)

Defendants' arguments under Rule 17(b) fail for the same reason. Whether or not an unincorporated association has the capacity to sue or be sued under Pennsylvania law, such an entity may sue or be sued "for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States." Rule 17(b). The Amended Complaint, fairly read, alleges that the Boarhead Group has brought this civil action precisely to enforce its rights under CERCLA.[6]

In summary, when the material allegations of the Amended Complaint are accepted as true and all reasonable inferences are drawn from those allegations, it must be concluded that the Amended Complaint alleges that the Boarhead Group itself has paid and will in the future pay costs of response to clean up environmental contamination at the Site. The Boarhead Group thus has standing to pursue those claims, is a real party in interest under Rule 17(a), and has the capacity to sue under Rule 17(b). The Amended Complaint thus states a claim upon which relief can be granted, and the Defendants' motion should be denied.[7]

_____

(...continued)

CERCLA and HSCA (and under any other cause of action) have a right to *assert* claims whether or not they ultimately *prove* those claims at trial.

[6]    The Boarhead Group having standing and capacity to bring its CERCLA claims, it is entitled to join its state law HSCA claim pursuant to this Court's supplemental jurisdiction. 28 U.S.C. § 1367.

[7]    To eliminate any doubt whatsoever concerning the Boarhead Group's allegations in the Amended Compliant, the Boarhead Group has, concurrent with this response, filed and served a Second Amended Complaint ("Complaint") alleging with more specificity the facts concerning its incurrence of response costs at the Site. Nothing in the Complaint is in contradiction to the factual allegations in the Amended Complaint or the reasonable inferences that can be drawn from that pleading. The Boarhead Group has the right to amend its complaint at any time during Phase I. Case Management Order at ¶ 2.

**II.    Even When Read As Defendants Suggest, The Amended Complaint States A Claim Upon Which Relief Can Be Granted.**

Even if, as Defendants suggest, only the members of the Boarhead Group, and not the Boarhead Group itself, have incurred response costs and in the future will be liable for additional response costs, circumstances completely contrary to a fair reading of the Amended Complaint, the Boarhead Group would nevertheless be a proper plaintiff.  Courts have routinely found that groups of companies engaged in CERCLA cleanups, such as the Boarhead Group here, have standing to bring precisely the types of claims at issue in this civil action.  Indeed, Defendants have relied upon two such opinions.

In *Kalamazoo River Study Group v. Rockwell International Corp.*, 274 F.3d 1043 (6th Cir. 2001), the sole plaintiff was an unincorporated association of four companies, in all respects identical to the Boarhead Group.  Three of the companies had entered into an administrative order by consent with EPA to conduct a remedial investigation and feasibility study at a Superfund site.  274 F.3d at 1046.  Thereafter, a fourth company agreed with those three to share the costs of the remedial investigation and feasibility study, forming the Kalamazoo River Study Group.  *Id.*  Those parties thereafter, in the name of the group, collectively brought a CERCLA contribution action against several other entities allegedly responsible for site cleanup costs.  *Id.*  The district court tried liability, making detailed findings of fact and conclusions of law, and the United States Court of Appeals for the Sixth Circuit affirmed.  *Id.* at 1049-50.

In *Pinal Creek Group v. Newmont Mining Corp.*, 118 F.3d 1298 (9th Cir. 1997), three mining companies that were engaged in the voluntary cleanup of a hazardous waste site

formed the Pinal Creek Group to coordinate their cleanup efforts and thereafter commence an action under CERCLA Section 107 to recover some or all of its cleanup costs from other potentially responsible parties. 118 F.3d at 1300. The defendants moved to dismiss the claim on the basis that, because the Pinal Group was itself a potentially responsible party under Section 107, the Pinal Group was entitled to assert only a claim for contribution, and not one for joint and several liability. *Id*. at 1300-01. The district court denied the motion but certified its order pursuant to 28 U.S.C. § 1292 (b). *Id*. at 1300. Following a detailed discussion of the facts concerning the Pinal Group and its conduct, and after repeatedly stating that the Pinal Group's claim was only for contribution in an amount to be measured by the amount, if any, that the cleanup costs paid and to be paid by the Pinal Group exceeded the Pinal Group's own equitable share of cleanup costs, the United States Court of Appeals for the Ninth Circuit reversed and remanded. *Id*. at 1305-06.

      Each of the district courts and each of the Circuit Courts of Appeals in these two opinions reached the merits of the parties' claims without any discussion whatsoever concerning the plaintiffs' standing to bring those actions. Each of those courts was obligated to determine that the plaintiff groups had standing prior to reaching the merits.[8] This Court must therefore

---

[8]    Standing to bring a claim in Federal court is rooted in Article III of the Constitution, and thus goes directly to the jurisdiction of a Federal court to hear a matter. *See, e.g*., *Steel Company v. Citizens for a Better Environment*, 523 U.S. 83 (1998). It is therefore well-settled that Federal courts "must decide Article III standing issues, even when not raised by the parties, before turning to the merits" of an action. *Chong v. District Director, Immigration & Naturalization Service*, 264 F.3d 378, 383 (3d. Cir. 2001) (emphasis added) (*citing Steel Company, supra*). *See also*, *Steele v. Blackman*, 236 F.3d 130, 134 n.4 (3d Cir. 2001) ("although neither party argues that Steele's appeal is moot, we are required to raise issues of standing sua sponte if such issues exist").

presume that those courts considered whether each of the plaintiff groups had standing, and concluded that the groups did have standing.

### A.    Standing

Ignoring these opinions, and without citing a single opinion in which a court has found that a group of companies such as the Boarhead Group here lacks standing to bring a CERCLA claim collectively in the name of their group, the Defendants nevertheless argue that the Boarhead Group lacks "associational standing," relying upon *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977).  In *Hunt*, the Supreme Court articulated a three-pronged test concerning circumstances in which an association may pursue claims belonging only to its member: "(1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  432 U.S. at 333.  Neither *Hunt* nor any other opinion cited by the Defendants, however, holds that a group of companies collectively engaged in the environmental cleanup of a Superfund site must meet the "associational standing" test to bring a CERCLA contribution claim.

Even if it did, however, the Boarhead Group would meet that test.  The defendants tacitly concede that the Boarhead Group satisfies the first two prongs of *Hunt*.  Defendants insist instead that the Boarhead Group's claims require the "individual participation" of each Boarhead Group member, thus failing *Hunt's* third prong.  Brief at 6-10.

The Supreme Court has held, however, that the third prong of the *Hunt* test is not grounded in Article III of the Constitution, but is instead a "judicially self-imposed limi[t] on the exercise of federal jurisdiction."  *United Food and Commercial Workers Union Local 757 v.*

*Brown Group, Inc*., 517 U.S. 544, 557 (1996) (*quoting Allen v. Wright*, 468 U.S. 737, 751

(1984).  As noted by the Supreme Court in *United Food*:

> Indeed, the entire doctrine of "representational standing," of which the notion of "associational standing" is only one strand, rests on the premise that in certain circumstances, particular relationships (recognized either by common-law tradition *or by statute*) are sufficient to rebut the background presumption (in the statutory context, about Congress's intent) that litigants may not assert the rights of absent third parties.  Hence the third prong of the associational standing test is best seen as focusing on these matters of administrative convenience and efficiency, not on elements of a case or controversy within the meaning of the Constitution.

517 U.S. at 557 (emphasis added).  CERCLA expressly provides that an "association" is a

"person" entitled to bring a CERCLA contribution action, satisfying this requirement because it

is one such "certain circumstance."  Moreover, the reasons for the third prong are to promote

adversarial intensity, guard "against the hazard of litigating a case to the damages stage only to

find the plaintiff lacking detailed records or the evidence necessary to show the harm with

sufficient specificity," and to hedge "against any risk that the damages recovered by the

association will fail to find their way into the pockets of the members on whose behalf injury is

claimed."  *Id*. at 556.

There can be no doubt that the relationship between the Boarhead Group and its

members, even if that relationship was as characterized by the Defendants, would be sufficient to

rebut the background presumption that litigants may not assert the rights of absent third parties.

The Defendants insist that the Boarhead Group is "nothing more than a fictional name" created

by the five member companies for the specific purpose of bringing this civil action.  Brief at 8,

10-11.  If that were the case, there would be no doubt that the Boarhead Group as plaintiff would

possess the "adversarial intensity" of each of its five members, would have available all of the

records and evidence necessary to show the harm suffered by those members, and would ensure

that any damages recovered by it would inure directly to the benefit of those members (whether

by placing the recovery into a group account to be used for Site cleanup costs or by distributing

the recovery directly to each of the members).  All of the purposes of the third prong of *Hunt*

would thus be satisfied.

Any concerns of administrative convenience and efficiency associated with

*Hunt's* third prong would be satisfied as well even if the Boarhead Group was bringing only the

claims of its five members.  Each member's individual claim would be inextricably related,

because each member would be seen as paying a specific amount of the entire costs that have

been paid and will in the future be paid to clean up the Site.  The essential element of such

claims would be the total amount of such costs for which the Defendants are liable.  The proofs

of those costs consist of invoices from and payments to the contractors performing the cleanup

(and to the United States for its past response costs), and it matters not whether those invoices

were issued to the Boarhead Group or to the individual group members.  No individual group

member would have proofs concerning other or different types of costs.

The Supreme Court has held that a nonprofit corporation consisting of consortium

of private clubs has associational standing to bring claims on behalf of those clubs, even where

those clubs were in turn nothing more than associations asserting the claims of their members.

*New York State Club Association, Inc. v. City of New York*, 487 U.S. 1, 8-11 (1988).  In so doing,

the Supreme Court noted that there was a "complete identity between the interests of the

consortium and those of its member associations," and that "the necessary proofs could be

presented 'in a group context.'"  487 U.S at 10 (*quoting Hunt*, 432 U.S. at 344).

Similarly, the fact that proofs at trial will be presented concerning the nexus of

each group member's relationship, if any, to the Site from which this Court could determine the

Boarhead Group's collective share of liability as compared to each Defendant's share[9] does not violate the third prong of *Hunt*. The United States Court of Appeals for the Third Circuit has held that the need for some individual participation does not necessarily bar associational standing under the third prong of the *Hunt* test, even where the plaintiff association was a nonprofit corporation generally representing hundreds of members throughout the Commonwealth. *Pennsylvania Psychiatric Society v. Green Spring Health Services, Inc.*, 280 F.3d 278, 283 (3d. Cir. 2002). The Third Circuit specifically concluded that participation by members of the plaintiff association in providing discovery and trial testimony by their officers and employees would not itself be a ground for denying associational standing. 280 F.3d at 285. It reversed the district court's dismissal of plaintiff's complaint under Rule 12(b)(6) and remanded for a detailed examination by the district court of whether the third prong of *Hunt* was satisfied. *Id.* at 294.

Indeed, the district court in *Kalamazoo River Study Group* admitted into evidence and considered precisely the kinds of proofs the Defendants contend cannot be presented here. At trial of liability only, the court heard evidence and made findings of fact and conclusions of law concerning the contaminants that were released by each of the companies comprising the Kalamazoo River Study Group as compared to the contaminants released by each of the defendants. 274 F.3d at 1047-48.

The Defendants grouse about the Boarhead Group's supposed avoidance of discovery obligations by suing in the name of the group. Brief at 18. Just as in *Kalamazoo River*

---

[9]     The Defendants' suggestion (without citation to any authority) that the allocable share of each Boarhead Group member must be compared to the allocable share of each Defendant, Brief at 7-8, is an incorrect statement of the law that this Court need not consider in this motion.

*Study Group, supra*, though, there is simply no reason why requests for admissions, interrogatories, requests for production, and notices of deposition cannot be addressed to and responded to by the Boarhead Group concerning information, documents, and witnesses of its members.  Indeed, the Case Management Order governing this phase of the litigation requires the group to do so.  The Boarhead Group is obligated to produce to the Document Repository "documents in the possession, custody, or control of Plaintiff or of its members."  CMO at ¶ 3(B)(1).  The Boarhead Group must also serve on the Repository the identical types of documents and information "in the possession, custody, or control … of Plaintiff or its members" that each Defendant must serve.  CMO at ¶¶ 3(B)(2) and (3).[10]

       The relationship of the Boarhead Group to its members is simply of an entirely different dimension than the relationships between the associations and the members of those associations in *Hunt* and the other opinions cited by the Defendants.  The Boarhead Group is not a loosely-defined trade association, advertising council, or medical society created to generally represent its members in a multitude of circumstances and for a multitude of reasons.  It is precisely that type of generalized relationship between such associations and their members that prompted the careful inquiries into standing in *Hunt* and in the *Hunt* line of cases.  *Hunt* and the other cases cited by Defendants are simply inapposite.

---

[10]    The Defendants' threat that they must add the individual Boarhead Group members as third-party defendants "for contribution or other potential claims" ignores the fact that the Amended Complaint seeks contribution *from* each Defendant as measured by the equitable share of that Defendant as compared to the equitable share of the Boarhead Group, just as in *Kalamazoo River Study Group, supra*.  As the Boarhead Group's equitable share will ultimately be based upon the nexus of each member of the group to the Site (and on other equitable factors), there is simply no reason for the Defendants to make contribution or other claims against individual Boarhead Group members.  It would not be proper to do so.

The Defendants' argument that counsel for the Boarhead Group also represents each member of the group individually is preposterous.  First, the Amended Complaint states clearly and unequivocally that Ballard Spahr Andrews & Ingersoll, LLP ("BSAI") represents the Boarhead Group.  Amended Complaint at 1 ("Plaintiff Boarhead Farm Agreement Group, by and through its attorneys, by way of Complaint against the Defendants hereby states as follows"); Amended Complaint at 24 ("Ballard Spahr Andrews & Ingersoll, LLP … Attorney for Plaintiff Boarhead Farm Agreement Group").  It is nowhere even remotely suggested in the Amended Complaint that BSAI represents the individual group members in this matter.[11]

Defendants nevertheless argue that any counsel for any entity with members is "deemed" to represent as clients each of the entity's members.  Brief at 10-11.  Just as with all other allegations in a complaint subject to challenge pursuant to Rule 12(b)(6), a court must "accept as true all material allegations of the complaint and ... construe the complaint in favor of the complaining party."  *Pennell*, 485 U.S. at 7.  It is also well-settled that a court must, in determining whether an attorney-client relationship exists, make a "'realistic assessment of all aspects of [a putative] relationship … depend[ing] on the facts and circumstance of each case."  *Milner v. Anders, et al*., 2001 WL 637394, 5 (D. Del. 2001).  *See also, Essex Chemical Corp. v.*

---

[11]    The Second Amended Complaint expressly alleges that the Boarhead Farm's members "have agreed collectively … to seek contribution from the Defendants in this civil action."  Complaint at ¶ 16.  It also alleges that the Boarhead Group seeks "an allocation by the Court of response costs as between Plaintiff and Defendants."  Complaint at ¶ 1, 16 ("The members of the Boarhead Farm Agreement Group have agreed that they will, at some future time, and not in this civil action, reach a final allocation among themselves").  The Boarhead Group has specifically not asked this Court to determine the equitable shares of the five group members *inter se*, but only to determine the equitable shares of each Defendant as compared to the share of the Boarhead Group.  The members of the group thus have no claims against each other by which they are adverse and for which they need separate counsel.

*Hartford Accident and Indemnity Co., et al.*, 993 F. Supp. 241, 253 (D.N.J. 1998)("implied attorney-client relationship requires more than subjective belief that person with whom an individual is dealing has become his lawyer; rather, belief must be objectively reasonable under the totality of the circumstances").  This Court, when resolving this motion, simply cannot "deem" that BSAI represents the Boarhead Group's individual members.[12]

### B.    Rule 17

Just as with the standing question, even if, as Defendants suggest, only the members of the Boarhead Group, and not the Boarhead Group itself, have incurred response costs and in the future will be liable for additional response costs, circumstances completely contrary to a fair reading of the Amended Complaint, the Boarhead Group would nevertheless comply with Rule 17.

The modern function of Rule 17(a) "is simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata."  Rule 17(a) Advisory Committee Note to 1966 Amendment.  It is thus not surprising that the *Kalamazoo River Study Group* and *Pinal Creek Group* courts made no mention of Rule 17(a) in deciding the merits of those cases.  If it was true that the Boarhead Group was asserting only the rights of its members, this Court would ultimately determine the amount of contribution owed by each Defendant to the Boarhead Group on behalf of those members.  As discussed above, such a decision would entail findings of fact and conclusions of law about the nexus of each member of the Boarhead Group to the Site as

---

[12]    The Defendants' claim that the Boarhead Group is trying to paper over the supposed "direct adversity" of its members ignores the fact that the Boarhead Group is not seeking in this civil action any judicial determination of the equitable shares of those members *inter se*.  There is no adversity among the Boarhead Group members in this litigation.

well as about the nexus of each Defendant.  It would be simply beyond belief that another court would allow the Boarhead Group members to individually bring a different or later action to recover the costs at issue here.[13]

The Defendants' Rule 17(b) argument that the Boarhead Group would, if it was suing only to enforce rights of its members under CERCLA, lack "capacity to sue," Brief at 16-17, has been firmly rejected by this Court.  *Action Alliance for Senior Citizens of Greater Philadelphia, et al v. Shapp, et al.*, 400 F. Supp. 1208, 1212 (E.D. Pa. 1976).  In *Action Alliance* Judge Huyett held that Rule 17(b)'s language "except (1) that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States" means that such an association has capacity to sue where the rights it is asserting of its members are federal rights.  400 F. Supp. at 1212.  Judge Huyett relied both upon the language of Rule 17(b) itself and upon opinions of the United States Courts of Appeals for the Fourth and Seventh Circuits in reading Rule 17(b) in this fashion.  *Id.* (*citing Council No. 34, American Federation of State, County, and Municipal Employees, AFL-CIO v. Ogilvie*, 465 F.2d 221 (7th Cir. 1972) and *Alston v. School Board City of Norfolk*, 112 F.2d 992 (4th Cir.), *cert. denied*, 311 U.S. 693 (1940)).  The Defendants here

---

[13]    Moreover, Rule 17(a) provides:  "No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest."  Rule 17(a).  If the Boarhead Group was asserting only the causes of action of its members, then those members would be entitled to a reasonable time to ratify the Boarhead Group's action here before the Amended Complaint could be dismissed.

suggest exactly the narrow reading of Rule 17(b) that was rejected in *Action Alliance* and the opinions cited therein.  The claims at issue here are CERCLA claims that the Boarhead Group would therefore have the capacity to assert even if those claims belonged solely to its members.

C.    **Summary**

In sum, even if, as Defendants suggest, only the members of the Boarhead Group, and not the Boarhead Group itself, have incurred response costs and in the future will be liable for additional response costs, circumstances completely contrary to a fair reading of the Amended Complaint, the Boarhead Group would nevertheless have standing to bring this action and would be able to do so pursuant to Rule 17.

### Conclusion

For all the foregoing reasons, and in the interests of justice, the Joint Motion of Certain Defendants to Dismiss the Amended Complaint for Failure to State a Claim should be denied.

BALLARD SPAHR ANDREWS & INGERSOLL, LLP

Dated:    February 21, 2003    By: _____

Brian G. Glass, Esquire (#89405)
Glenn A. Harris, Esquire (#51222)
Plaza 1000, Suite 500, Main Street
Voorhees, New Jersey  08043
Phone:  (856) 761-3400

Attorney for Plaintiff Boarhead Farm
Agreement Group