**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

BOARHEAD FARM AGREEMENT GROUP,    :
    :
         Plaintiff,    :
    :
v.    :    Civil Action No. 02-3830
    :
ADVANCED ENVIRONMENTAL    :
TECHNOLOGY CORPORATION, ET AL.,    :
    :
         Defendants.    :

**MEMORANDUM OF LAW
OF CERTAIN DEFENDANTS
IN OPPOSITION TO THE PLAINTIFF'S
MOTION FOR STANDARDIZED DEPOSITION INSTRUCTIONS**

**Introduction**

Regarding the upcoming Phase I depositions, the undersigned Defendants[1] can

certainly agree with the Plaintiff about two basic principles. First, after the Phase I deponents are

put under oath and swear to tell the truth, they should actually do so. Second, however, despite

that obvious shared goal, a "specter of perjury hangs like a cloud over the discovery process in

this matter . . ." (Plaintiff's Memorandum of Law at 10). The Plaintiff's papers readily concede

the source of this ghostly air: "Plaintiff expects that several of the Prior Deponents will

---

[1] This Memorandum of Law is submitted on behalf of fourteen of the Defendants, including
Advanced Environmental Technology, Ashland Chemical Company, Carpenter Technology
Corporation, Emhart Inds., Inc., Knoll, Inc., Merit Metals Products Corp., NRM Investment
Company, Plymouth Tube Company, Quikline Design & Mfg., Rahns Specialty Metals, Inc.,
Rohm and Haas Company, Simon Wrecking Co., Inc., Techalloy Co., Inc., Thomas & Betts,
Corporation, and Unisys Corporation.

significantly alter their prior [sworn] statements . . ." (Plaintiff's Memorandum of Law at 2) (emphasis added).

Although that much is agreed, the Defendants sharply disagree with the Plaintiff as to how truth-telling by the Phase I deponents should be promoted, and the opposite discouraged. The Plaintiff's proposed solution is entirely inappropriate – a preemptory Motion filed with this Court, before any consultation with Defendants, seeking an Order dictating that "exclusive" instructions to be given at the outset of the depositions. These proposed instructions essentially would advise the deponents that: (1) they should tell the truth "today"; but that (2) they should not worry about a perjury prosecution if they lied under oath before, because certain alleged statutes of limitations for perjury have all run their course.

Instead of filing a preemptory motion, the Defendants believe that it would have been far more productive and appropriate for Plaintiffs' counsel to pick up the phone, raise their issue, and see if good faith discussions among counsel could yield an agreed-upon approach. If time permits, counsel for Defendants continue to view that as a preferred approach as compared with motion practice. However, in the event time does not permit, or an agreed-upon resolution cannot be reached, the Defendants' position is that there are many fundamental problems with Plaintiff's Motion, both substantive and procedural. As summarized below, any one of these points merits denial of the relief sought:

(1)     Plaintiff's Motion assumes, without any proof, that the Prior Deponents lied under oath before, but will be telling the truth now, whereas the very opposite assumption is at least as likely, if not far more plausible;

(2)     Plaintiff's Motion is incomplete – it proposes one partisan instruction designed "to diffuse the perjury issue," while ignoring the many other civil and criminal exposures that the Prior Deponents may face in connection with their upcoming testimony. As such, Plaintiff's Motion proposes instructions that would badly mislead the non-party Prior Deponents into thinking that they are "safe" from liability, when that is not at all the case;

(3)     Plaintiff's Motion appears to infringe upon the ethical obligation of Plaintiff's counsel to deal fairly with unrepresented parties, particularly persons like the Prior Deponents whose interests are so clearly adverse to the Plaintiff;

(4)     Plaintiff's Motion improperly asks this Court to place its seal of approval upon an "advisory" legal opinion, regarding hypothetical claims, directed to non-party witnesses. Defendants respectfully submit that the Court would at least step outside its adjudicative role by giving such advice, if not overstep this Court's Article III "case or controversy "jurisdiction;

(5)     Plaintiff's Motion asks this Court to enter an Order prohibiting "any additional discussion or mention of the potential for perjury charges" by defense counsel, which request is nothing less than an extraordinary -- and extraordinarily disfavored -- prior restraint on speech;

(6)     Plaintiff's Motion violates Paragraph 2 of the agreed-upon Case Management Order ("CMO"), which bars all motions "until further Order of the Court"; and

(7)     Plaintiff's Motion also directly violates Rule 26(c) of the Federal Rules of Civil Procedure, and Local Rule 26.1(f), both of which require that discovery motions be accompanied by "a certification of counsel that the parties, after reasonable effort, are unable to resolve the dispute." No such certification accompanies Plaintiff's Motion, because no such effort was made.

These arguments aside, however, and as noted above, the Defendants remain very mindful of the Court's expressed desire that counsel for the parties collectively attempt to reach solutions, before burdening the Court with unnecessary motions. Indeed, although the relevant rules to that effect were inexplicably ignored by Plaintiff's counsel, both FRCP Rule 26(c) and Local Rule 26.1 plainly require no less.

Accordingly, as Exhibit A hereto, the Defendants propose to Plaintiff -- for discussion purposes -- a form of standard deposition instructions/warnings that the Defendants submit is even-handed, and would be appropriate to give to all of the Phase I deponents at the outset of their upcoming depositions. We express our commitment to engage in good faith discussions with Plaintiff's counsel regarding the potential for fashioning a standardized deposition instruction along these lines that is mutually-agreeable to all parties.

If such discussions bear fruit, the Defendants expect that counsel jointly will submit to the Court a proposed standardized deposition instruction, presumably in the form of a Stipulation, for review and entry as the Court may deem appropriate.

However, in the event counsel cannot reach such an agreement, the Plaintiff's Motion should be denied in full, based upon any one of the fundamental problems outlined above, and discussed further below.

## ARGUMENT

1.    **Conceding that Truth-telling by Key Witnesses Will be a Major Issue, Plaintiff's Motion Nonetheless Rests Upon an Entirely Faulty Premise.**

Plaintiff's entire Motion and request for relief stands on a fundamentally one-sided, and therefore improper and unfair premise – it assumes that the Prior Deponents lied the first time they gave testimony under oath, but have since "seen the light" and will now be telling the truth. The problem with that viewpoint, of course, is that it is <u>at least</u> as likely that the Prior Deponents told the truth before, but have since found a different kind of religion, and are now prepared to do the opposite.

Who is right? And perhaps even more important for present purposes, how is the court to know? Currently, without any evidentiary record, there is no basis to tell. In fact, even with a fully-developed evidentiary record, there may never be a certain answer. Taking the Plaintiff's Motion at its word, however, there is at least one sure "truth" at the moment, and that is that the Prior Deponents are the kind of witnesses who will tell two different stories, on two different occasions, both of them freely sworn under oath.

That being the case, there is certainly no basis for the Court to adopt the "lied then, but going to tell the truth now" viewpoint upon which the Plaintiff's Motion and its proposed instruction are premised. The highly partisan instruction proposed by Plaintiff's Motion should not be sanctioned by the Court.

2.    **Plaintiff's Proposed Instruction is Incomplete, and Therefore Misleading**

The proposed instruction in Plaintiff's Motion also is incomplete – it proposes only one biased piece of advice, admittedly designed "to diffuse the perjury issue," while ignoring the many, many other civil and criminal exposures faced by the Prior Deponents in connection with their upcoming testimony. If Phase I non-party witnesses are to be given any warnings, they should at least be given balanced and complete warnings.

For example, it would be appropriate to caution the Prior Deponents that whichever day of sworn testimony they ultimately claim is their truthful one, a reviewing prosecutor ultimately may not agree, and certainly will not be bound but such a self-interested, and therefore suspect, claim  Put another way, the potential for perjury charges is real and present, irrespective of what the witness thinks.

Similarly, before answering any questions, all of the Phase I non-party witnesses would be wise to think carefully about a range of legal exposures, including not just potential liability for "perjury," but also the potential for personal liability under CERCLA as "owner/operators," "transporters," and/or persons who "arranged" for the disposal of hazardous substances. See generally 42 U.S.C. § 9607(a).

As a third example, the Prior Deponents also may wish to obtain legal advice regarding EPA's information gathering authorities, and associated civil penalty provisions. If the Plaintiff's viewpoint is correct, and the upcoming depositions indicate that the Prior Deponents

lied in their earlier sworn testimony, then such non-compliance with EPA's information requests may expose the deponents to enormous personal liability. See e.g., 42 U.S.C §9604(e)(5)(B) (providing for up to $25,000 per day in penalties for each day of such non-compliance).[2]

Beyond these examples, the Prior Deponents face a tangle of other potential civil and criminal risks associated with giving testimony in this matter, including without limitation, potential liability for business torts arising out of the giving of untruthful statements, conspiracy charges, potential tax evasion problems or controlled substance charges (should they be asked about such things under oath), and so on and so forth. This list is in no sense meant to be comprehensive. However, it is apparent from just these examples that these witnesses have some very hard thinking to do. They also have very good reason to seek legal advice on various subjects including, at the very least, advice regarding the potential advantages and/or disadvantages to them of electing to "take" the Fifth Amendment.

3.    **Implicating the Rules of Professional Conduct, the Plaintiff's Proposed Instruction Proposes to Give Legal Advice to the Non-Party Witnesses**

As far as the Defendants are aware, the non-party Prior Deponents are unrepresented. Further, given the proposed core subject of their testimony (whether and to what extent hazardous substances generated and/or transported by any of the Plaintiff or Defendant parties were disposed at the Boarhead Farm Superfund Site, and the witnesses' involvement with

---

[2] This is not just a hypothetical concern. When originally subpoenaed for their depositions by EPA, the Prior Deponents were specifically advised of their obligation to tell the truth, and the potential consequences of non-compliance. See Sample Subpoena attached here as Exhibit B (commanding the witnesses, in capital letters, "TO TESTIFY THEN AND THERE UNDER OATH, GIVE ORAL AND TRUTHFUL RESPONSES," and warning that "FAILURE TO COMPLY WITH THIS SUBPOENA MAY SUBJECT YOU TO A CIVIL ENFORCEMENT ACTION.").

same), there is evident adversity between each of the parties (Plaintiff and Defendant alike), and

the proposed deponents.[3]

Under these circumstances, Rule 4.3(b) of the Rules of Professional Conduct

gives very clear guidance:

> "During the course of a lawyer's representation of a client, a lawyer
> shall not give advice to a person who is not represented by a lawyer,
> other than the advice to secure counsel, if the interests of such person
> are or have a reasonable probability of being in conflict with the
> interests of the lawyer's client."

In short, the only "advice" that any of the counsel involved in this case should give to

unrepresented non-parties, such as the Prior Deponents, is "Get your own lawyer."

On its face, however, the standardized deposition instruction proposed in

Plaintiff's Motion goes beyond this ethical constraint, and instead plainly purports to give

selected legal advice ("You cannot be prosecuted for having committed perjury more than five

years ago"). Putting aside whether that highly-simplified advice is right, or indeed even comes

close to capturing the relevant complexities of perjury law,[4] the important point for present

---

[3]   As noted above, the Phase I non-party witnesses may face potential Superfund liability under
42 U.S.C. § 9607(a). As such, each of them may be subject to contribution claims brought by
the Plaintiff and/or the Defendants under 42 U.S.C. § 9613(f).

[4]   It takes counsel for Plaintiff at least four (4) pages in their Memorandum of Law to argue their
central point that the Prior Deponents will be "safe" from perjury charges stemming from past
assumed lies made under oath. (Plaintiff's Memorandum of Law at 5-9.) That discussion is
obviously incomplete, and raises as many questions as it purports to answer. For example, the
Plaintiff discusses Pennsylvania and federal perjury law, but the testimony at issue was given in
at least two other states, New Jersey and Texas. The issues of "knowing" statements and the
necessary "materiality" of statements are referenced, but not explored. As to when and under
what circumstances any applicable statutes of limitations begin to run, the Plaintiff is necessarily
reduced to a summary: "The statute of limitations generally begins to run after every element of
the given offense is committed." (Id. at 6; emphasis added). Prosecutorial burdens of proof, and
the complexities of later vs. earlier statements, are squeezed into one page (Id. at 8-9). All of this
discussion, however, only begins to scratch the relevant surfaces. See, e.g. Richard H.
Underwood, *Perjury! The Charges and the Defenses*, 36 Duq. L. Rev. 715 (1998).

purposes is that it clearly purports to be "advice." It is one thing to give a routine deposition instruction advising a witness that for the sake of transcript clarity they need to "verbalize" their answers, rather than nodding their head. It is quite another thing to give a one-sentence legal opinion purporting to summarize a complex area of law, particularly to someone who is not your client, and who may face significant personal consequences should they elect to rely (rightly or wrongly), upon your unsolicited legal advice.

      In short, the proposed instruction in Plaintiff's Motion appears to be improper because it includes legal advice to unrepresented persons that Plaintiff's counsel is ethically constrained from giving.

      **4.     Respectfully, it is Also Not the Role of this Honorable Court to Give Legal Advice to the Non-Party Prior Deponents Regarding Perjury or Other Legal Exposures They May Face**

      Quite literally, there are jurisdictional if not Constitutional concerns with the Plaintiff's proposal. Should this Court set instructions to be given to non-party deponents regarding the law of perjury? Given the significant potential consequences to those witnesses, would the Court even be comfortable doing so?

      Article III judges are jurisdictionally limited to deciding cases and controversies. See, e.g., Preiser v. Newkirk, 422 U.S. 395, 401 (1975). They are to avoid issuing an "opinion advising what the law would be upon a hypothetical state of facts." Id.[5] In effect, that is

---

[5] See also, Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 241 (1937) ("It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."); In re Summers, 325 U.S. 561, 567 (1945) ("there must be an actual controversy over an issue, not a desire for an abstract declaration of the law."); NJDEP v. Heldor Industries, Inc., 989 F.2d 702, 706 (3rd Cir. 1993) ("federal courts are without power to decide questions
(continued...)

precisely what the Plaintiff seeks to have this Court do. No one has been charged with perjury in this case. Perjury is not a claim pending before the Court. No party even has offered evidence of perjury. Yet Plaintiff asks the Court to assume up front that the Prior Deponents did, in fact, perjure themselves in a past deposition, and therefore would benefit from an instruction from the Court advising that, under a statute of limitations analysis, any past perjury cannot be held against them.

Plaintiff's proposed standardized instruction asks for an advisory legal opinion from the Court, to be given to non-parties, with regard to hypothetical claims, which claims are not pled or otherwise pending before the Court. Respectfully, the giving of such an advisory opinion would be jurisdictionally improper.

5.    **Plaintiff's Request that the Proposed Instruction be "Exclusive, and that No Other "Mention" be made of Perjury, <u>Would Constitute an Improper Prior Restraint on Speech</u>**

Creating yet another substantive problem, Plaintiff's Motion proposes that its standardized deposition instruction be "exclusive." Plaintiff makes no attempt to hide the bold extent of this extraordinary request:

> "Plaintiff further requests that this Court enter an Order prohibiting any additional discussion or mention of the potential for perjury charges stemming from statements made under oath at the administrative depositions."

(Plaintiff's Memorandum of Law at 10).

---

(..continued)
that cannot affect the right of litigants in the case before them" (citation omitted)); <u>Leibundgut v. Liberty Mutual Fire Insurance Co.</u>, No. 97-3240, 1997 U.S. Dist. LEXIS 18042 at *4 (E.D. Pa. Nov. 6, 1997) ("Article III requires a federal court to decide only an actual case or controversy; a court may not decide abstract or hypothetical questions." (citations omitted)).

Plaintiff's demand that the Court set an "exclusive" instruction on perjury effectively asks this Court to enter an Order constituting a prior restraint on potential speech by Defendants' counsel. If such an Order were entered, Defense counsel would be prospectively restrained from asking all manner of questions that would seem naturally to arise from the announced fact that these witnesses are expected to tell significantly different stories under oath on different days.[6] Apart from the injury this would inflict on the truth-seeking process, and the improper constraint it would put around each lawyer's professional duty to zealously represent his or her clients, it also would run directly afoul of the First Amendment's skeptical view of such powers.

Indeed, prior restraints are the most skeptically viewed limitation on speech and are highly disfavored and to be avoided wherever possible. See Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 559 (1976) ("The thread running through all these cases is that prior restraints on speech ... are the most serious and least tolerable infringement on First Amendment rights.... A prior restraint...has an immediate and irreversible sanction. If it can be said that a threat of criminal or civil sanctions after publication 'chills' speech, prior restraint 'freezes' it at least for the time." (citations omitted).)

While counsel for the parties can, by voluntary agreement, decide that certain instructions and warnings, and not others, are appropriate to give at the outset of the upcoming Phase I depositions, it would be completely inappropriate for the Court to prohibit "any

---

[6] Under Rules 607, 608, and 609 of the Federal Rule of Evidence, evidence relating to the truthful or untruthful character of a witness generally is generally admissible, consistent with the overall principle that "[t]he credibility of a witness may be attacked by any party...." Fed. R. Evid. 607.

additional discussion or mention" by counsel of a topic such as truth-telling, which is so obviously relevant to this litigation.

### 6.   The Case Management Order Bars Plaintiff's Motion

Though very present and real, in truth the Court need not reach any of these grand Constitutional questions. Several much simpler tools are close at hand.

First, Paragraph 2 of the Case Management Order (CMO) governing this case -- which CMO was just recently crafted and endorsed by the Plaintiff and the Defendants -- plainly bars all motions "until further Order of the Court":

> "No . . . motions (other than motions for admission pro hac vice) . . . shall be served by any party until further Order of the Court, except [certain Rule 12 Motions]. All other Motions are deferred until completion of Phase 1 and shall be addressed in a subsequent Case Management Order."

The ink is barely dry on this recently-entered Order. Surely it is fresh in the mind of Plaintiff's counsel. Defendants are at a complete loss as to why it has been ignored.

### 7.   Plaintiff's Motion Also Violates Both the Letter and Spirit of FRCP Rule 26(c) and Local Rule 26.1

Two other simple tools for addressing Plaintiff's Motion, which fit two other direct violations, are similarly close at hand. First, under FRCP Rule 26(c) which governs this discovery dispute, all motions must be "accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." To state the obvious, Plaintiff's Motion is not accompanied by any such certification. That was not just an oversight. In point of fact, Plaintiff's counsel did not make <u>any</u> attempt to confer with counsel for Defendants about a possible standardized deposition

instruction before filing the instant Motion. Failure to make the required certification under Rule 26(c) can, and should, justify denial of the Motion at issue.[7]

Second, dovetailing with FRCP Rule 26(c), the parallel local rule provides, "No motion or other application pursuant to the Federal Rules of Civil Procedure governing discovery or pursuant to this rule shall be made unless it contains a certification of counsel that the parties, after reasonable effort, are unable to resolve the dispute." See Local Rule 26.1(f). Local Rule 26.1(f), "is not merely a formalistic requirement developed by this court to increase the volume of each discovery motion filed. It was intended to reduce the unnecessary burden on the court and added expense to the parties caused by the expectation that the court would interject itself in minor pretrial skirmishes." See Crown Cork & Seal Company v. Chemed Corp., 101 F.R.D. 105, 106 (E.D. Pa. 1984) (decided under former Local Rule 24(f), which was identical to current Local Rule 26.1(f)).

Failure to attach the required certification under Local Rule 26.1(f) is sufficient grounds to dismiss a discovery motion.[8] Thus, not only is Plaintiff's motion procedurally deficient under Federal Rule of Civil Procedure 26(c), it is procedurally deficient under Local Rule 26.1(f) as well.

---

[7]  Rosen v. Tabby, No. 95-CV-2968, 1996 U.S. Dist. LEXIS 16245 at *4 (E.D. Pa. Oct. 29, 1996) (noting failure to show attempt to confer as one of the reasons for denying a motion for protective order).

[8] See Bittinger v. Owens-Corning Fiberglass Corp., No. 85-6108, 1986 U.S. Dist. LEXIS 16631 at *3 (E.D. Pa. Dec. 11, 1986); Taffinger v. Bethlehem Steel Corp., No. 00-4668, 2001 U.S. Dist. LEXIS 17051 (E.D. Pa. Oct. 24, 2001); Transamerica Insurance Co. v. Thomas M. Durkin & Sons, Inc., No. 90-0968, 1991 U.S. Dist. LEXIS 3676 at *4 n.4 (E.D. Pa. Mar. 26, 1991) (denying the motion on the merits, but noting that a lack of certification was sufficient grounds for denial).

## Conclusion

It is troubling enough that by filing the instant Motion before consulting with counsel for the Defendants, counsel for Plaintiff has seemingly thumbed their noses at the CMO, FRCP Rule 26(c), and Local Rule 26.1(f). Further concern is raised by various unfounded accusations, couched in decidedly strident language, that pepper the Plaintiff's moving papers. In particular, without any supporting evidence, counsel for Plaintiff directly charge and/or indirectly insinuate, that defense counsel have "threaten[ed] to make the upcoming depositions extremely contentious" (Plaintiff's Motion at ¶ 7; Memorandum of Law at 2), plan to "raise the pressure a notch" using "tactics" designed to "intimidate the witnesses" (Id. at 3), and may act in a way designed "to silence potential witnesses through coercion or intimidation") (Id. at 5, fn. 2).

Those are serious charges. They also are unfounded and unbecoming.

                    *              *              *

Defendants have proposed what they consider to be a balanced set of warnings to be given to the Phase I non-party witnesses, a copy of which is attached here as Exhibit A. As noted above, counsel for the Defendants will commence good faith discussions with Plaintiff's counsel in an effort to reach an agreement as to a mutually-agreeable approach. If time permits, and if successful, counsel for the Defendants are prepared to jointly present the stipulated fruits of that agreement to the Court for its consideration and approval as the Court may deem appropriate.

However, absent such an agreement, the Plaintiff's Motion is both substantively and procedurally flawed for the reasons set forth above, and should be denied.

Respectfully submitted,

March 10, 2003

_____

Andrew P. Foster
Adina Dziuk
DRINKER BIDDLE & REATH LLP
One Logan Square
18th and Cherry Streets
Philadelphia, PA  19103

Counsel for Rahns Specialty Metals, Inc.,
Techalloy Co., Inc., Thomas & Betts
Corporation, and Unisys Corporation

## CERTIFICATE OF SERVICE

I Adina M. Dziuk, hereby certify that on this 10th day of March, 2003, caused a

true and correct copy of the foregoing **Memorandum of Law of Certain Defendants In**

**Opposition To The Plaintiff's Motion for Standardized Deposition Instructions** to be served

as indicate below:

## VIA HAND DELIVERY:

**Counsel for Boarhead Farm Agreement Group**
Glenn A. Harris, Esquire
Ballard Spahr Andrews &
  Ingersoll, LLP
Plaza 1000 – Suite 500
Main Street
Voorhees, NJ  08043=4636
(856) 761-3440
(856) 761-9001 (Fax)
harrusg@ballardspahr.com

Monique M. Mooney, Esquire
Ballard Spahr Andrews &
  Ingersoll, LLP
1735 Market Street – 51st Flr.
Philadelphia, PA  19103-7599
(215) 864-8189
(215) 864-9266 (Fax)
mooney@ballardspahr.com

## BY FIRST-CLASSMAIL, POSTAGE PREPAID:

**Counsel for Advanced Environmental Technology**
John M. Simon, Esquire
Thomas Sabino, Esquire
Diana L. Buongiorno, Esquire
Wolff & Samson
5 Becker Farm Road
Roseland, NJ  07068-1776
(973) 740-0500
(973) 436-4440 (Fax)
tsabino@wolffsamson.com

Robert M. Morris, Esquire
Morris & Adelman, P.C.
P.O. Box 30477
1920 Chestnut Street – 3rd Fl.
Philadelphia, PA  19103-8477

(215) 568-5621
mail@morrisadelman.com


**Counsel for Ashland Chemical Company**
Richard C. Biedrzycki, Esquire
David M. Doto, Esquire
Phelan, Pettit & Biedrzycki
Suite 1600
The North American Bldg.
121 South Broad Street
Philadelphia, PA 19107
(215) 546-0500
(215) 546-9444 (Fax)
ddoto@pp-b.com

**Counsel for Carpenter Technology Corporation**
David A. Christiansen, Esquire
Associate General Counsel &
   Assistant Secretary – Legal Department
Carpenter Technology Corporation
1047 North Park Road
Wyomissing, PA 19610
(610) 208-2000
(610) 208-3068 (Fax)
dchristiansen@carteh.com

Lynn Wright, Esquire
Edwards & Angell
750 Lexington Avenue
New York, NY 10022
(212) 756-0215
(888) 325-9169 (Fax)
lwright@ealaw.com

**Counsel for Crown Metro, Inc.**
Knox L. Haynsworth, III, Esquire
Brown, Massey, Evans, McLeod &
   Haynsworth, PA
106 Williams Street
P.O. Box 2464
Greenville, SC 29602
(864) 271-7424
(864) 271-3192 (Fax)
knoxhaynsworth@bmemhlaw.com

**Counsel for Diaz Chemical Corp.**
Ronald J. Reid, III
Manager, Health/Safety/Environment
Diaz Chemical Corp.
40 Jackson Street

Holley, NY 14470-1156
(716) 638-6321
(716) 638-8356 (Fax)
reid@diazche.com

**Counsel for Emhart Inds., Inc.**
Jerome C. Muys, Jr., Esquire
Laura A. Ford, Esquire
Swidler Berlin Shereff Friedman LLP
3000 "K" St., N.W. – Suite 300
Washington, DC  20007
(202) 424-7500
(202) 424-7643 (Fax)
jcmuys@swidlaw.com

**Counsel for Etched Circuits, Inc. & FCG, Inc.**
Seth v.d.H. Cooley, Esquire
Duane Morris LLP
Suite 4200, One Liberty Place
Philadelphia, PA  19103-7396
(215) 979-1000
(215) 979-1020 (Fax)
secoley@duanemorris.com

**Counsel for Handy & Harman Tube Co.**
G. Glennon Troublefield, Esquire
Melissa E. Flax, Esquire
Carella, Byrne, Bain, Gilfillan, Cecchi,
  Stewart & Olstein
6 Becker Farm Road – 3rd Fl.
Roseland, NJ  07068-1739
(973) 994-1700
(973) 994-1744 (Fax)
mflax@carellabyrne.com

**Counsel for Knoll, Inc.**
Richard H. Friedman, Esquire
Scott A. Gould, Esquire
McNees Wallace & Nurick, LLC
100 Pine Street
P.O. Box 1166
Harrisburg, PA  17108-1166
(717) 237-5469
(717) 237-5300 (Fax)
rfriedman@mwn.com

**Counsel for Merit Metals Products Corp.**
Stephen P. Chawaga, Esquire
Monteverde, McAlee & Hurd
One Penn Center at Suburban Station
1617 John F. Kennedy Blvd.

Suite 1500
Philadelphia, PA  19103-1815
(215) 557-2950
(215) 557-2990/2991
schawaga@monteverde.com

**Counsel for Novartis Corporation**
Michael W. Steinberg, Esquire
Michael Dillon, Esquire
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004
(202) 739-3000
(202) 739-3001 (Fax)
msteinberg@morganlewis.com

**Counsel for NRM Investment Company**
Edward Fackenthal, Esquire
Henderson, Wetherill, O'Hey & Horshey
P.O. Box 751
Suite 902
One Montgomery Plaza
Norristown, PA  19404
(610) 279-3370
(610) 279-0696 (Fax)
edwardfackenthal@cs.com

**Counsel for Plymouth Tube Company**
Steven J. Lemon, Esquire
Jones, Lemon Graham & Clancy
223 East State Street
P.O. Box 805
Geneva, IL  60134
(630) 208-0805
(630) 208-4651 (Fax)
stevenl@joneslemon.com

**Counsel for Quikline Design & Mfg.**
Sanford F. Schmidt, Esquire
Schmidt & Tomlinson Law Offices
29 Union Street
Medford, NJ  08055
(609) 714-0600
(609) 714-0610 (Fax)
lawschmidt@erols.com

**Counsel for Rohm and Haas Company**
Jennifer Berke Levin, Esquire
Rohm & Haas Co.
100 Independence Mall West
Philadelphia, PA  19106-2399
(215) 592-6838

(215) 592-3227
jlevin@rohmhaas,com

**Counsel for Simon Wrecking Co., Inc.**
Sharon Oras Morgan, Esquire
Mattleman Weinroth & Miller P.C.
401 Route 70 East, Suite 100
Cherry Hill, NJ  08034
(856) 429-5507
(856) 429-9036 (Fax)
smorgan@mwm-law.com

**United States of America, Department of Navy**
D. Judith Keith, Esquire
U.S. Department of Justice
Environmental & Natural Resources
Defense Section
P.O. Box 23986
Washington, DC  20026-3986
(202) 514-3747
(202) 514-8865 (Fax)
judith.keith@usdoj.com

_____
Adina M. Dziuk

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

BOARHEAD FARM AGREEMENT GROUP,    :
                                   :
          Plaintiff,    :
                                   :
v.    :    Civil Action No. 02-3830
                                   :
ADVANCED ENVIRONMENTAL    :
TECHNOLOGY CORPORATION, ET AL.,    :
                                   :
          Defendants.    :

**ORDER**

AND NOW, this _____ day of _____, 2003, upon consideration of

Plaintiff's Motion for Standardized Deposition Instruction and Defendants' response thereto, it is

hereby ORDERED that Plaintiff's Motion for Standardized Deposition Instructions is DENIED.


                                                _____
                                                Legrome D. Davis, U.S.D.J.

Dated: _____

**Defendants' Proposed Standardized Deposition Instructions/Warnings**

1. You have just taken a sworn oath to tell the truth. Your obligation to tell the truth is just as great as if we were sitting in a courtroom and the Judge were listening to your testimony. Your duty as a sworn witness is to tell the whole truth to the best of your memory and ability.

2. The Plaintiff and Defendant parties to this lawsuit, represented by the attorneys you see in the room, have agreed that it is important to advise and warn you that if you do not tell the truth, you could potentially be exposed to civil or criminal liability related to perjury.

3. The Plaintiff and Defendant parties, and their counsel, also have agreed that it is important to advise and warn you that your interests could potentially be adverse to those of the Plaintiff and each of the Defendants.

4. For example, depending on your testimony, you could potentially be exposed to liability under the Superfund law as a Site owner/operator, a transporter, or person who arranged for the disposal of hazardous substances, in which case you potentially could face liability for any necessary clean-up of the Boarhead Farm Superfund Site.

5. Similarly, depending on your testimony, you could potentially be exposed to other areas of civil or criminal liability.

6. For the reasons outlined above, the Plaintiff and Defendant parties, and their counsel, have agreed that it is important to advise and warn you that you have a right to seek your own attorney if you have any questions or concerns about your potential exposure to civil or criminal liability in connection with giving testimony under oath regarding the Boarhead Farm Superfund Site.

7. It is important for you to understand that the lawyers in this room do not represent you, and therefore cannot give you any legal advice. However, we can advise you, and do advise you, that you should seek independent legal advice from your own lawyer if you have any questions or concerns about whether and how to answer any questions you may be asked under oath.

8. The Plaintiff and Defendant parties, and their counsel, also have agreed that it is important to advise you that you may wish to consult with your own lawyer regarding your potential rights under the Fifth Amendment to the Constitution to refuse to answer questions where doing so may incriminate you.

9. With these instructions and warnings in mind, and before proceeding with the deposition, please answer the following questions:

A.  Do you understand that you have sworn an oath to tell the truth at this deposition and therefore are under a legal obligation to tell the truth to the best of your memory and ability?

_____ (Yes)                              _____ (No)


B.  Do you understand that any failure to tell the truth when under oath at this deposition may expose you to potential civil or criminal liability?

_____ (Yes)                              _____ (No)


C.  Do you understand that you have a right to obtain and consult with independent legal counsel before proceeding with this deposition?

_____ (Yes)                              _____ (No)


D.  Do you understand that you have a right under the Fifth Amendment to the Constitution to refuse to answer questions that may incriminate you?

_____ (Yes)                              _____ (No)


E.  With each of these instructions and warnings in mind, are you prepared to proceed with this deposition and truthfully answer questions put to you under oath to the best of your ability?


Dated: _____                 _____
                                            Witness