**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BOARHEAD FARM AGREEMENT GROUP,     )<br>                                                              )<br>                       Plaintiff,            )<br>                                                              )<br>           v.                                            )<br>                                                              )<br>ADVANCED ENVIRONMENTAL                )<br>TECHNOLOGY CORPORATION, ET AL.,    )<br>                                                              )<br>                       Defendants.         )<br>_____) | Civil Action No.  02-3830 |

**UNITED STATES' MEMORANDUM IN OPPOSITION TO MEMORANDUM OF LAW
OF CERTAIN DEFENDANTS IN OPPOSITION TO THE
JOINT MOTION BY PLAINTIFF AND THE UNITED STATES NAVY
<u>FOR APPROVAL OF SETTLEMENT AND DISMISSAL</u>**

<u>INTRODUCTION</u>

Defendant United States of America ("United States") and Plaintiff Boarhead Farm

Agreement Group, Inc. ("Plaintiff") have jointly moved the Court to approve and enter the

Settlement Agreement and proposed Order ("Agreement") filed on January 21, 2004.  The

Agreement reflects a settlement that is fair, reasonable, and consistent with the purposes

of the Comprehensive Environmental Response, Compensation and Liability Act of 1980

("CERCLA"), 42 U.S.C. § 9601, <u>et seq.</u>

Certain defendants ("Defendants") have objected to the settlement.  <u>See</u>

Memorandum of Law of Certain Defendants in Opposition to the Joint Motion by Plaintiff

and the United States Navy for Approval of Settlement Agreement and Dismissal ("Def.

Opp. to Jt. Mot.").  In essence, Defendants contend that the settlement could prejudice

them in the event that the Navy has paid less that its fair share of the total obligation.  As a

result, Defendants claim that they are entitled to a full-blown "fairness hearing" as to the

merits of the settlement, and object to the Navy receiving contribution protection under the

settlement.

The United States rejects any suggestion the United States is paying less than its fair share under the proposed settlement. As discussed below, Defendants' fears of potential prejudice are groundless because their own allocated shares in any judgment or future settlement should be based on principles of comparative fault. Under these principles, the non-settlors' liability is reduced by the settling defendants' proportionate share of responsibility for the total obligation, not by the dollar amount of the settlement. Accordingly, it is the Plaintiff, not Defendants, that bears any theoretical risk that the Navy has "underpaid"; Defendants are free to show at trial that Plaintiff settled for too little, and that they should not have pay any of the "difference." Defendants' objections to the Navy receiving contribution protection should also be rejected. As discussed below, the same comparative fault principles provide for contribution protection, and the Navy should be accorded that protection in its settlement.

## **BACKGROUND**

Plaintiff brought this CERCLA contribution action against approximately 25 potentially responsible parties, including the United States Department of the Navy ("Navy"), seeking to recover past and future response costs allegedly incurred or to be incurred in connection with a hazardous waste cleanup at the Boarhead Farm Superfund Site in Bucks County, Pennsylvania. Third Amended Complaint (Sept. 19, 2003). Plaintiff alleges, inter alia, that the Navy disposed of hazardous waste at the Site, and is a liable party under CERCLA section 107(a). Id. ¶¶139, 140, 148 at 19-20.

On February 3, 2003, this Court entered a Case Management Order ("CMO") in this case to govern Phase I of the case. Phase I was for the purpose of "determin[ing] whether

-2-

alternatives to litigation. . . will be acceptable to the parties," and was to "consist of information exchanges concerning Site 'nexus' and the liability, if any, of each of the parties." CMO at 1, and ¶1 at 2. Thereafter, pursuant to the CMO, the parties produced relevant documents, which were placed in a repository so as to be accessible to all the parties. CMO ¶ 3. The parties also conducted depositions of witnesses with knowledge of the operations of the Site, pursuant to CMO paragraph 5. In these depositions, Plaintiff and defendants examined the witnesses with respect to the nature and extent, if any, of the liability, including site "nexus," of defendants, including the Navy. All parties had the opportunity to participate in these depositions. Phase I ended on September 19, 2003. Thereafter, Plaintiff and the United States engaged in settlement negotiations which yielded the Settlement Agreement and Proposed Order filed with the Court on January 21, 2004.

Under the Agreement, the United States will pay $100,000 to Plaintiff as the United States' share of response costs related to the site. The Agreement contains mutual releases and covenants not to sue for both Plaintiff and the United States, as well as certain corresponding reservations, and provides for dismissal of all cross-claims against the United States. The Agreement is contingent upon Court approval and extension of contribution protection pursuant to applicable provisions of common law, for "Matters Addressed"[1] in the Agreement. The proposed Order approving the Agreement provides that the Court: (1) finds that the Agreement is "fair and reasonable, both procedurally and substantively, consistent with applicable law, in good faith, and in the public interest;" (2) orders that the United States is entitled to contribution protection; (3) dismisses with

---

[1]    Matters Addressed is defined in paragraph 1g of the Agreement.

prejudice all claims against the United States in this action; and (4) enters final judgment.

Order at 1.

## **ARGUMENT**

### I.    THE SETTLEMENT SATISFIES THE APPLICABLE
###       CRITERIA AND SHOULD BE APPROVED BY THE COURT

There are three principal inquiries for court approval of private CERCLA

settlements:  (1) procedural fairness; (2) substantive fairness; and (3) consistency with

CERCLA.  In Re Tutu Water Wells CERCLA Litigation, 326 F.3d 201, 207 (3d Cir. 2003)

cert. denied sub nom. Gal v. Plaskett, 124 S.Ct. 472 (U.S. Nov. 3, 2003); United States v.

SEPTA, 235 F.3d 817, 823 (3d Cir. 2000).  See Mavigliano v. McDowell, No. 93C7216,

1995 WL 704391 (N.D. Ill. Nov. 28, 1995).  As explained below, the proposed settlement

agreement between Plaintiff and the United States easily satisfies these criteria.

Moreover, as discussed more fully infra, there is no prejudice to defendants because,

under the proportionate share rule as articulated in the Uniform Comparative Fault Act

("UCFA"), Plaintiff, not non-settling defendants, bears the risk that any settlement is for

less that the defendant settlor's equitable share.  Non-settling defendants are responsible

only for their equitable share of liability.

### A.    The Settlement Is Procedurally Fair

Courts evaluate procedural fairness by considering the openness and candor of the

bargaining process. Tutu Water Wells, 326 F.3d at 207 (citing United States v Cannons

Eng'g., 899 F.2d 79, 86 (1st Cir. 1990)); United States v. Atlas Minerals & Chemicals, Inc.,

851 F. Supp. 639, 653 (E.D. Pa. 1994).  In making this evaluation, courts ask whether a

settlement "was negotiated at arm's length among experienced counsel," and whether the

negotiations were conducted in good faith.  Tutu Water Wells, id.; United States v. Nicolet,

-4-

Inc., No. Civ. A 85-3060, 1989 WL 95555 at *4 (E.D. Pa. Aug. 15, 1989).

There can be no question that the settlement is procedurally fair, and, indeed, defendants do not contend that the process was unfair.  The United States and Plaintiff are both represented by experienced and capable environmental law attorneys.  The agreement was the product of extensive months long arms-length negotiations between the Parties.  These negotiations resulted in an Agreement which is consistent with innumerable other settlements the United States has entered into in CERCLA actions, and at the same time is also reasonably tailored to address the facts and circumstances unique to Plaintiff's claims against the United States.

The fairness of the settlement process is further demonstrated by the fact that, as noted above, documentary evidence regarding the alleged liability of defendants in this litigation (including the federal defendant) was available to all parties in a document repository.  See CMO ¶3B(1)(2) (2/3/03).  Additionally, as also noted above, all parties had the opportunity to participate in the depositions of site witnesses (the only depositions taken herein) which addressed the nature and extent of the alleged liability of the defendants in this litigation.  See id. ¶5.  Thus, all parties had full and fair access to relevant information which served as the primary basis for the negotiations and settlement herein.

        B.    The Settlement Is Substantively Fair

"Substantive fairness requires that the terms of the consent decree are based on 'comparative fault' and apportion liability 'according to rational estimates of the harm each party has caused.'"  Tutu Water Wells, 326 F.3d at 207, quoting SEPTA, 235 F.3d at 823.  "As long as the measure of comparative fault on which the settlement terms are based is

not 'arbitrary, capricious, and devoid of a rational basis,' the district court should uphold it."

Tutu Water Wells, id.; SEPTA, 235 F.3d at 824.

The Agreement reflects a fair and appropriate apportionment to the United States. The payment amount[2] is based upon consideration of information relating to the Navy's alleged contribution of waste to the site contained in documents produced to the repository and in deposition testimony and upon litigation risks. Thus, there is a rational basis for the allocation to the United States, and there is no claim, nor is there any basis for a claim, to the contrary by any defendant.

    C.    The Settlement Is Consistent With CERCLA

The settlement is consistent with CERCLA's purposes, and defendants do not claim otherwise. The overarching goal of CERCLA is the cleanup of hazardous waste sites. Tutu Water Wells 326 F.3d at 206. CERCLA is "designed to facilitate the prompt cleanup of hazardous dumpsites by providing a means of financing . . . private responses. . . ." Nicolet, Inc., 1989 WL 95555 at *5. There is a general public policy in favor of settlement to reduce costs to litigants and burdens on the courts, particularly in CERCLA cases. D.R. v. East Brunswick Bd. of Ed., 109 F.3d 896, 901 (3d Cir. 1997); United States v. Davis, 261 F.3d 1, 27 (1st Cir. 2001). The settlement furthers these goals because it provides for reimbursement of a portion of Plaintiff's response costs, and at the same time avoids

---

[2]     The Court is not even required to evaluate the settlement amount and the manner in which the amount was calculated in order to approve the settlement. Edward Hines Lumber Co. v. Vulcan Materials Co., No. 85C1142, 1987 WL 27368, at *3 (N.D. Ill. Dec. 4. 1987). Such an analysis is unnecessary because, as discussed infra, under the UCFA proportionate share rule, even if a settling defendant has "underpaid," the claimant, not the non-settling defendants, bears that risk. Non-settlors' liability is reduced by the settling defendant's proportionate share of the total obligation, not by the dollar amount of the settlement.

protracted litigation between the parties to the settlement, thus preserving judicial resources.

In sum, for the foregoing reasons, the settlement is procedurally and substantively fair, and consistent with the purposes of CERCLA.

**II.    THE NON-SETTLING DEFENDANTS WILL NOT BE PREJUDICED BY THE SETTLEMENT BECAUSE THE PROPORTIONATE SHARE RULE APPLIES IN THIS CASE**

All of Defendants' objections to the settlement stem from their concern that the Court's approval of the settlement would "transfer the risk of potentially bad settlements to the non-settling defendants." Def. Opp. to Jt. Mot. at 3.  Defendants' concerns are not justified, because, as discussed below, in private CERCLA settlements the non-settlors' fair share of the remaining response costs should be determined by applying the proportionate share rule as embodied in the UCFA.  Under the UCFA, any risk of an unfair settlement is borne by the plaintiff, not the non-settling defendants, whose respective shares of the remaining costs are determined by comparative fault principles.  For the same reasons, no "fairness hearing" is necessary or appropriate in private CERCLA settlements such as this.

A.    <u>The Method for Apportioning Liability Costs Among Non-Settlors in Private CERCLA Actions Is Governed By Federal Common Law.</u>

In the Superfund Amendments Reauthorization Act of 1986, Pub. L. No. 99-499, 100 Stat. 1613 (1986), Congress amended CERCLA and, <u>inter</u> <u>alia</u>, specified the manner in which liability is to be apportioned where a person has resolved its liability to the United States or a State.  CERCLA section 113(f)(2) provides that such a settlement "does not discharge any of the other potentially liable persons unless its terms so provide, but it

reduces the potential liability of the others by the amount of the settlement."  42 U.S.C. §

9613(f)(2).  Under this statutory pro tanto approach, the liability to the government of non-

settling parties is reduced by the dollar amount paid by the settlors to the government.

The purpose of the pro tanto approach in section 113(f)(2) is to ensure that the

government obtains complete relief, and that liable parties, not the public, pay the full cost

of cleanups.

On the other hand, with respect to settlements in private CERCLA actions, CERCLA

is "silent on apportionment methodology." United States v. Western Processing Co., 756 F.

Supp. 1424, 1431 (W.D. Wash. 1990); Barton Solvents, Inc v. Petro-Chem, Inc., 834 F.

Supp. 342, 347 (D. Kan. 1993).  Instead, section 113(f)(1) provides only that "[i]n resolving

contribution claims, the court may allocate response costs among liable parties using such

equitable factors as the court determines are appropriate."  42 U.S.C. § 9613(f)(1).

In the absence of any more explicit statutory direction, issues of allocation are

governed by federal common law.  See, e.g., McDermott, Inc. v. AmClyde, 511 U.S. 202,

207 (1994) (where no statute governs, "'the Judiciary has traditionally taken the lead in

formulating flexible and fair remedies'") (citation omitted).  Likewise, allocation issues in

private CERCLA suits are governed by federal common law.  Mardan Corp. v. C.G.C.

Music, Ltd., 804 F.2d 1454, 1457-60 (9th Cir. 1986); Barton Solvents, Inc., 834 F. Supp. at

348.  State contribution and allocation laws are not applicable.  See, e.g., Comerica Bank-

Detroit v. Allen Industries, Inc., 769 F. Supp. 1408, 1414 (E.D. Mich. 1991) (applying the

UCFA as federal common law, and rejecting a Michigan contribution statute that embodied

the pro tanto rule); Allied Corp. v. Acme Solvent Reclaiming, Inc., 771 F. Supp. 219, 223

(N.D. Ill. 1990) (rejecting application of Illinois' uniform contribution law because "federal

law -- including case law of federal courts -- is controlling" in CERCLA cases).

      B.    <u>The Proportionate Share Approach Embodied In The UCFA Should Be Applied To Apportion Liability Among Non-Settlors In This Matter</u>.

          1.    The Supreme Court in <u>McDermott</u> Has Selected The Proportionate Share Rule.

The Supreme Court has, as a matter of federal common law, adopted the UCFA proportionate credit rule for determining issues of allocation in cases such as this. <u>McDermott</u>, 511 U.S. at 217. Although <u>McDermott</u> concerned claims in an admiralty case, the decision was not premised on considerations unique to admiralty, but instead determined general federal common law in light of a detailed analysis of the respective strengths and weaknesses of the proportionate share rule in the UCFA, and the "<u>pro tanto</u>" credit approach embodied in the Uniform Contribution Among Tortfeasors Act ("UCATA"), which reduces the non-settlors' liability by the dollar amount specified in the settlement. The Court in <u>McDermott</u> concluded that "the proportionate share approach is superior," <u>id.</u> at 217, because of (1) its greater consistency with principles of proportionate fault; (2) the lack of a need for "fairness" hearings on the "good faith" of the settlement;[3] (3) its promotion of settlement; and (4) its promotion of judicial economy. <u>Id.</u> at 212-17. The Court also determined that the proportionate share rule results in more equitable apportionments. <u>Id.</u> at 212-14.

          2.    The Reasoning of the <u>McDermott</u> Decision Is Equally Applicable to Private CERCLA Actions.

Although the Supreme Court's decision in <u>McDermott</u> arose in the admiralty context,

---

[3]    See discussion <u>infra</u> regarding the inappropriateness of "fairness hearings."

its analysis applies equally where, as here, a court must apply federal common law to allocate among non-settlors the credit from a private CERCLA settlement.  As discussed above, the Court in McDermott selected the proportionate share approach in the absence of both statutory "policy guidance" or limits.  Id., at 207.  Thus, the statute was neutral on the issue, leaving the Court free to "take the lead in formulating [a] flexible and fair remed[y]."  Id. (citation omitted).  CERCLA is similarly bereft of statutory limits, and expressly places allocation issues in the courts' discretion: "[i]n resolving [private] contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate."  42 U.S.C. § 9613(f)(1).  This reference to "equitable factors" clearly comports with the proportionate share approach, which provides for allocation based upon each party's proportionate liability.  See New York v. Solvent Chemical Co., Inc., 984 F. Supp. 160, 168 (W.D.N.Y. 1997); Pneumo Abex v. Bessemer and Lake Erie Railroad Co, Inc., 936 F. Supp. 1274, 1278-79 (E.D. Va. 1996). See also L. Boomgaarden & C. Breer, Surveying the Superfund Settlement Dilemma, 27 Land & Water L. Rev. 84, 111-12 (1992).[4]

Importantly, the Third Circuit Court of Appeals has endorsed and applied the proportionate share approach adopted in McDermott.  Eichenholtz v. Brennan, 53 F.3d 478, 487 and n.16 at 487 (3d Cir. 1995).[5]  And, the Supreme Court's decision in McDermott is consistent with the law applied in the overwhelming majority of private CERCLA cases.  In deciding allocation issues among private parties, "the vast majority of

---

[4]    Among the equitable factors courts can consider in apportioning CERCLA liability among non-settlors is the proportion of waste each party caused to be released.

[5]    Eichenholtz was a securities fraud case.

-10-

courts . . . have employed the UCFA. . . ."  Hillsborough County v. A & E Road Oiling

Service, Inc., 853 F. Supp. 1402, 1410 (M.D. Fla. 1994); Foamseal, Inc. v. Dow Chemical

Co., Inc., 991 F. Supp. 883, 886 (E.D. Mich. 1998) (a "'growing chorus'" of federal courts

have applied the UCFA when dealing with private CERCLA settlements).  See Solvent

Chemical Co., 984 F. Supp. at 168; Pneumo Abex, 936 F. Supp. at 1278-79; Barton

Solvents, Inc., 834 F. Supp. at 349; American Cyanimid Co. v. King Industries, Inc., 814 F.

Supp. 215, 219 (D. R.I. 1993); Comerica Bank-Detroit, 769 F. Supp. at 1414; Western

Processing Co., 756 F. Supp. at 1433; Lyncott Corp. v. Chemical Waste Management,

Inc., 690 F. Supp. 1409, 1418-19 (E.D. Pa. 1988) (rejecting UCATA and applying UCFA to

determine issues of allocation under CERCLA); see also Atlantic Richfield Co. v. Current

Controls, Inc., No. 93-CV-0950,1996 WL 528601 *13 (W.D.N.Y. Sept. 6, 1996).[6]

In opting for the proportionate share approach, these courts weighed the same

---

[6]     A small minority of courts have applied the pro tanto rule in private CERCLA
actions.  See Azco Nobel Coatings, Inc. v. Aigner Corp., 197 F. 3d 302, 305-08 (7th Cir.
1999); Atlantic Richfield Co. v. American Airlines, 836 F. Supp. 763, 774-75 (N.D. Okla.
1993); and City & County of Denver v. Adolph Coors Co., 829 F. Supp. 340 (D. Colo.
1993).  The Azco court applied the pro tanto standard applicable to settlements in cost
recovery suits brought by federal and state governments under CERCLA section
113(f)(2), to private settlements that are subject to CERCLA §113(f)(1).  The court
misconstrued the application of UCFA in reasoning that application of the proportionate
share rule could result in plaintiffs' recoveries in excess of incurred costs, and in
disproportionate liability for non-settling defendants, but that the pro tanto approach
would yield a more equitable result.

        As an initial matter, Congress could have expressly incorporated the pro tanto
approach into section 113(f)(1), but it did not.  Rather, Congress elected to adopt the
pro tanto approach only in section 113(f)(2), which is limited to settlements with
governments.  Congress did so in order "that the threat of disproportionate liability
would encourage parties to settle early with the United States and discourage dilatory
behavior."  Cannons, 899 F. 2d at 89, 91; United States v. Grand Rapids Mich., 166 F.
Supp. 2d 1213, 1222 (W.D. Mich. 2000).  Plainly, such concerns are not present in a
contribution action under section 113(f)(1), where a plaintiff that has resolved its liability
to the United States or a State is seeking contribution from other potentially responsible
parties.  Moreover, as the Supreme Court and the vast majority of lower courts have
concluded, application of the proportionate share rule is "superior" and provides more
equitable results.   McDermott, 511 U.S. at 217; see also discussion supra.

factors that the Supreme Court considered in McDermott: equity in apportionment,
promotion of settlements, and judicial economy.  See Eichenholtz, 52 F.3d at 487
(proportionate share rule encourages settlement and furthers the goal of equity in
apportioning liability); Lyncott Corp., 690 F. Supp. at 1418 (UCFA proportionate share rule
avoids inequity to non-settlors, and unlike UCATA, does not require a fairness hearing).
See, e.g., Hillsborough County, 853 F. Supp. at 1408 ( the UCFA's significant advantages
include equitable apportionment of responsibility, encouragement of settlement, and
elimination of the need for fairness hearings); American Cyanimid Co., 814 F. Supp. at 218
(the UCFA "advance[s] CERCLA's policy of encouraging settlements, while achieving an
equitable apportionment of liability for the non-settling parties"); Comerica Bank-Detroit,
769 F. Supp. at 1414 (UCFA does not "hang the non-settlors out to dry" if the settlor pays
too little).

      In light of the Supreme Court's decision in McDermott and its chorus of supporting
CERCLA decisions, this Court should apply the proportionate share rule here.

      3.      No Fairness Hearings Are Necessary or Appropriate for the
              Court to Approve Private CERCLA Settlements

       Defendants' claim that the Court cannot approve the Navy's settlement without "an
extended hearing closely resembling a bench trial on the full merits." Def. Opp. to Jt. Mot.
at 2.  This is incorrect.  As discussed above, under the UCFA non-settlors' share of the
remaining cleanup costs are not determined by the amount of the settlement, but rather by
their own proportionate share of liability.  For this reason, no fairness hearing at all is
appropriate for a court to approve settlements in such cases.

      Courts have repeatedly held that fairness hearings are not appropriate in the

context of private party settlements.[7]  See, e.g., McDermott, 511 U.S. at 217 (no need for

any hearing on the fairness of the settlement).  By eliminating the need for fairness

hearings the UCFA conserves judicial resources without prejudicing any party.  See

Hillsborough County, 853 F. Supp. at 1409-10; Lyncott Corp., id.  See also Acme Fill Corp

v. Althin CD Medical, Inc., No. C91-4268, 1995 WL 822664 *8, *11 (N.D. Cal. Nov. 2,

1995); Western Processing Co., 756 F. Supp. at 1431 (one of the advantages of following

the UCFA is that "the need for a good faith hearing is eliminated as the proportionate credit

is not based on the amount of the settlement"); Barton Solvents, 834 F. Supp. at 349

("UCFA approach . . . does not require a fairness hearing"); Comerica Bank-Detroit,769 F.

Supp. at 1414 (UCFA "negates the need for an evidentiary hearing to determine the

fairness and good faith of the settlement).  No fairness hearing is necessary because, as

discussed, under the proportionate share approach, even if the settling defendant has

"underpaid," the claimant assumes that risk, and the non-settling defendants are free to

show at trial that the settling defendant has paid less than its fair share, and that therefore

the non-settling defendants should not pay any of the "difference."  Neuberger v. Shapiro,

110 F. Supp. 2d 373, 382 (E.D. Pa. 2000) ("[p]laintiffs' bear the risk of an improvident

settlement, not the non-settling defendants") (citing Eichenholtz, 52 F.3d at 487.

　　　　Because Plaintiff, not the non-settling defendants, bears the risk that the settling

---

[7]　　　　Defendants suggest that, rather than follow the UCFA approach, the Court
should apply a "newer approach" with respect to the issue of fairness hearings.  Def.
Opp. to Pltf's Mot. at 10-11.  Not only is defendants' suggestion contrary to decisions of
the majority of courts (see supra), but also two of the cases upon which Defendants rely
premise their conclusions on the UCFA.  See Tosco v. Koch Industries, Inc., 216 F.3d
886, 897 (10th Cir. 2000); Stearns & Foster Bedding Co. v. Franklin Holding Corp., 947
F. Supp. 790, 813 (D.N.J. 1996).   This court should reject Defendants' suggestion, and
instead should follow the widely accepted UCFA rule.

party's proportionate share of the cleanup costs may be greater than the settlement amount, not only is a fairness hearing not required under the UCFA, but also there is no need for a fairness hearing in order for the Court to approve the settlement.

### III.    SETTLING PARTIES IN THIS CASE, SUCH AS THE NAVY, ARE ENTITLED TO CONTRIBUTION PROTECTION

Defendants question the statutory and common law basis for granting contribution protection to the Navy.  Def. Op. to Jt. Mot. at 3-4.  As discussed below, settling parties in private CERCLA actions, such as the Navy in this case, are entitled to contribution protection which applies pursuant to federal common law, CERCLA section 113(f)(1).

As noted above, federal law controls in determining the effect of settlements in CERCLA cases, and because CERCLA is silent on contribution protection for private settlements, contribution in actions arising under CERCLA are governed by the principles of federal common law.  Mardan  Corp., 804 F.2d at 1457-60; Barton Solvents, 831 F. Supp. at 348; Allied Corp., 771 F. Supp. at 223.  Federal common law principles clearly authorizes courts to grant contribution protection for private settlements in actions brought under CERCLA section 113(f)(1), such as this one.

In Boca Grande Club, Inc. v. Florida Power & Light, 511 U.S. 222 (1994), the Supreme Court held that in an action against several alleged joint tortfeasors under general maritime law, the plaintiff's settlement with one defendant barred a claim for contribution brought by non-settling defendants against the settling defendant.  The Supreme Court based its decision in Boca Grande on its holding in McDermott.  There, in the course of considering how a partial settlement should affect the liability of non-settling defendants, the Court analyzed three American Law Institute "credit rules," one of which

-14-

would have preserved a right of contribution against the settling defendant. The Court

flatly rejected that rule as "clearly inferior" because it "discourages settlement and leads to

unnecessary ancillary litigation."

> [The rule] with right of contribution against the settling
> defendant . . . discourages settlement, because settlement can
> only disadvantage the settling defendant. If a defendant
> makes a favorable settlement, in which it pays less than the
> amount a court later determines is its share of liability, the
> other defendant . . . can sue the settling defendant for
> contribution. The settling defendant thereby loses the benefit
> of its favorable settlement. In addition, the claim for
> contribution burdens the courts with additional litigation. The
> plaintiff can mitigate the adverse effect on settlement by
> promising to indemnify the settling defendant against
> contribution . . . . This indemnity, while removing the
> disincentive to settlement, adds yet another potential burden
> on the courts, an indemnity action between the settling
> defendant and plaintiff.

McDermott, 511 U.S. at 211-212. For these and other reasons, see supra, the Court

adopted the proportionate share credit rule, "under which actions for contribution against

settling defendants are neither necessary nor permitted." Boca Grande, 511 U.S. at 222.

The Third Circuit Court of Appeals has clearly supported contribution protection in

similar circumstances, noting that promoting settlements

> is favored by the federal courts. However, in multiparty litigation, settlement
> may be difficult. Defendants, who are willing to settle, 'buy little peace
> through settlement unless they are assured that they will be protected
> against co-defendants' efforts to shift their losses through cross-claims for
> indemnity, contribution, and other causes related to the underlying litigation.'
> * * * In cases involving multiple defendants, [allowing not-settling defendants
> to maintain contribution claims against settling defendants] inhibits partial
> settlement.
>
> Therefore, in order to encourage settlement in these [multidefendant] cases,
> modern settlements increasingly incorporate settlement bar orders into
> partial settlements. 'In essence, a bar order constitutes a final discharge of
> all obligations of the settling defendants and bars any further litigation of
> claims made by non-settling defendants.' * * *
>
> A settlement contribution bar is designed to encourage settlements.

Eichenholtz, 52 F.3d at 486 (citations omitted).  See also Foamseal, 991 F. Supp. at 886-87; Acme Fill, 1995 WL 822664 at *2; Barton Solvents, 834 F. Supp. at 346;  Comerica Bank-Detroit, 769 F. Supp. at 1415 (contribution protection advances CERCLA's policy of encouraging settlements).

Although CERCLA does not expressly provide for contribution protection in private settlements, that authority lies in CERCLA section 113(f)(1), which provides that "[i]n resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate."  42 U.S.C. § 9613(f)(1).  Id.

With the aim of promoting CERCLA settlements, courts throughout the country have granted contribution protection in private CERCLA actions based on the courts' equitable powers under section 113(f)(1), and tort principles embodied in the Uniform Comparative Fault Act and the Uniform Contribution Among Tortfeasors Act.  See, e.g., Lyncott Corp., 690 F. Supp. at 1418; Foamseal, 991 F. Supp. at 886; Acme Fill, 1995 WL 822664 passim; Barton Solvents, Inc., 834 F. Supp. at 346; Western Processing Co., 756 F. Supp. 1424, 1429 (W.D. Wash. 1990); American Cyanimid Co., 814 F. Supp. at 217; Comerica Bank-Detroit, 769 F. Supp. at 1415; Edward Hines Lumber Co. v. Vulcan Materials Co., 685 F. Supp. 651, 658 (N.D. Ill. 1987), aff'd, 861 F.2d 155 (7th Cir. 1988).

Thus, although CERCLA does not expressly authorize contribution protection in the context of private settlements the federal common law clearly authorizes such protection. Accordingly, the United States is entitled to contribution protection, as provided in the proposed Order.

## IV.    THE NAVY, AS A SETTLOR, IS ENTITLED TO PRESERVE ITS RIGHT TO

### CONTRIBUTION

Defendants contend that they would be prejudiced by the Agreement because it would preserve "[a]ny rights the Parties may have to obtain contribution or otherwise recover costs or damages from persons not a party to this Agreement . . . ."  Agreement ¶3.a.  Defendants contend that it would be "lopsided" for the Agreement to extinguish their contribution claims against the Navy, while preserving the Navy's contribution rights against them.  Def. Opp. to Jt. Mot. at 4.

At the outset, we note that the United States typically includes the contested provision in settling private CERCLA contribution claims of this kind as a protective matter, in the event that new evidence is discovered that suggests that the United States paid more than its fair share in a settlement.  However, the United States has rarely, if ever, exercised this reserved right to seek contribution after settling, since the United States seeks to pay its fair share and no more.  Consequently, the United States does not envision seeking contribution in this case absent unusual circumstances, such as the discovery of new evidence or new parties that markedly change the basis for settlement.

In any event, Defendants misapprehend the distinction between contribution claims of settlors and non-settlors in this context.  In the unlikely event that a settling party later concludes that it has paid more than its share, the settlor may seek to recover in contribution the amount that it overpaid from the non-settlors.  This comports with the nature of a contribution claim, which is intended to make whole a party that has paid in excess of its fair share.  By contrast, non-settlors do not have contribution rights against the settlor because the plaintiff's claim against them has been reduced by the greater of the settlement payment or the settlor's proportionate share of liability.  Therefore, if non-

settlors believe that a settling defendant has "underpaid," then their recourse would be to show at trial that the plaintiff failed to recover from the settlor the appropriate amount for the settlor's share of liability.  As discussed <u>supra</u>, if they are successful, the non-settlors' share of the judgement is reduced, and <u>the plaintiff</u> must absorb the loss.  See <u>Neuberger v. Shapiro</u> 110 F. Supp. 2d at 382 (plaintiffs, not non-settling defendants, bear the risk of an imprudent settlement) (citing <u>Eichenholtz</u>, 52 F.3d at 487).  In this way, as the Third Circuit Court of Appeals explained, settlors buy their peace, "assured that they will be protected against co-defendants' efforts to shift their losses through cross-claims for . . . contribution," (<u>Eichenholtz</u>, 52 F.3d at 486), while non-settlors' interests are also protected because a plaintiff bears the risk that it has settled for too little. <u>Id.</u>, at 487.

Accordingly, while it is highly unlikely that the Navy would seek contribution, it is entitled to reserve the right to do so in the Agreement.

**<u>CONCLUSION</u>**

For the reasons discussed above, the Court should approve the Settlement Agreement as provided in the proposed Order.

Respectfully submitted,

THOMAS L. SANSONETTI
Assistant Attorney General
Environment & Natural Resources Division


_____
D. Judith Keith
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
P.O. Box 23986
Washington, D.C.  20026-3986
(202) 514-3747