# EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BOARHEAD FARM AGREEMENT GROUP, :
                                 :
                Plaintiff,       :
                                 :
        v.                       :
                                 :
ADVANCED ENVIRONMENTAL           :
TECHNOLOGY CORPORATION, ET AL.,  :
                                 :
                Defendants.      :

CIVIL ACTION

**FILED** JUN 3 0 2004

NO. 02-3830

## MEMORANDUM ORDER

Presently before the Court is Plaintiff Boarhead Farm Agreement Group's Motion

for Standing Order Regarding Dismissal of Settling Defendants (Dkt. No. 80) and Joint Motion

by Plaintiff Boarhead Farm Agreement Group and Defendant United States for Approval of

Settlement Agreement and Dismissal (Dkt. No. 83). For the reasons that follow, the foregoing

motions are DENIED.

### Background

The instant action was filed under the Comprehensive Environmental Response,

Compensation and Liability Act, as amended, 42 U.S.C. § 9601, *et seq.*, ("CERCLA") and the

Pennsylvania Hazardous Sites Cleanup Act, 35 Pa. Cons. Stat. § 6020.101 *et seq.*, ("HSCA") for

the recovery of costs incurred and to be incurred in response to the release or threatened release

of hazardous substances at the Boarhead Farms Superfund Site (the "Site"). Plaintiff, Boarhead

Farm Agreement Group, ("Plaintiff" or the "Agreement Group") entered into consent decrees

**ENTERED**

1

JUN **3 0** 2004

**CLERK OF COURT**

with the United States Environmental Protection Agency (the "EPA") which obligate Plaintiff to clean-up the Site. Plaintiff filed the instant lawsuit pursuant to CERCLA seeking contribution from other possibly responsible persons ("PRP") for the clean-up costs at the Site.

On June 18, 2002, Plaintiff filed the Complaint against twenty-three Defendants,[1] alleging liability for response costs and contribution under CERCLA and HSCA in connection with the clean-up of the Site. (Dkt. No. 1). On January 21, 2003, the Court entered a Case Management Order that divided the case into two initial phases: (1) exchanging information concerning Site nexus and discovery as to the liability of each party, and (2) meeting and discussing the nature and basis of claims and defenses, as well as discussing possibilities for resolving the case. (Memo in Support of Motion for Standing Order Regarding Dismissal of Settling Defendants at 2-3).

On December 15, 2003, Plaintiff filed a Motion for Standing Order Regarding Dismissal of Settling Defendants requesting that the Court approve a procedure for the entry of orders "barring any future claims against any Defendant that settles in good faith with the Agreement Group." (Memo in Support of Motion for Standing Order Regarding Dismissal of Settling Defendants at 2). Plaintiff seeks approval of the proposed standing order to "establish a simple uniform procedure for Defendants that settle with the Agreement Group to be dismissed from this action and by eliminating the need for briefing the issue anew at the time of every settlement." (Id.). Certain Defendants filed opposition briefs challenging the entry of an order approving Plaintiff's proposed procedure arguing primarily that Plaintiff's request is "purely

---

[1]    Plaintiff subsequently filed three Amended Complaints on August 26, 2002, February 21, 2003, and September 8, 2003. The most recent Amended Complaint contained twenty-six Defendants. (Dkt. Nos. 61, 78).

hypothetical and therefor not ripe for decision . . . [because] [n]o actual settlement or dismissal using the proposed approach has been presented to the Court." (See Memo of Law of Certain Defendants in Opposition to the Plaintiff's Motion for a Standing Order regarding Dismissal of Settling Defendants at 1; see also Memo on Behalf of Defendant Handy & Harman Tube Company, Inc. In Opposition to Plaintiff's Motion for Standing Order 1-3).  Additionally, the certain Defendants oppose the entry of Plaintiff's Order because it would require the Court to conduct a fairness hearing, which they argue is inconsistent with CERCLA's policy of encouraging settlements and the expeditious clean-up of sites.  (Id.).

Also pending is a Joint Motion by Plaintiff Boarhead Farm Agreement Group and Defendant United States for Approval of Settlement Agreement and Dismissal, wherein Plaintiff and the United States seek a finding that the proposed settlement is: (1) entered into in good faith, (2) reached at arms length, and (3) a "fair and equitable compromise of claims, which were vigorously contested."  The settlement also requests that the United States receive contribution protection "pursuant to section 113(f) of CERCLA, 42 U.S.C. §9613(f), the Uniform Comparative Fault Act, and any other applicable provision of federal or state law, whether by statute or common law extinguishing the United States' liability to persons not a party to this Agreement . . . [and] [a]ny rights the Parties may have to obtain contribution or otherwise recover costs or damages from persons not party to this Agreement are preserved"; and "all claims against the United States in this Action, whether alleged in the complaint or as a cross-claim or third-party claim, or otherwise, shall be dismissed with prejudice."  (See Boarhead Farms Superfund Site Settlement Agreement and Consent Order).

The non-settling defendants object to the Court's approving the settlement.  Their

objections present the Court with two issues: First, whether the settling defendants are relieved of liability for contribution claims as to matters covered by the Settlement Agreement. Second, whether, and to what extent, that liability of the non-settling defendants will be offset by any settlement agreements.[2]

<u>Private Party Settlements and Contribution Rights</u>

CERCLA expressly provides that parties who settle with the *United States or any State* are free from claims of contribution:

> A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially liable persons unless its terms so provides, but reduces the potential liability of the other by the amount of the settlement.

42 U.S.C. § 9613(f)(2).

The text of CERCLA, however, is silent as to whether claims for contribution are barred when private parties settle with other private parties. Nevertheless, federal courts have long recognized a strong interest in promoting settlement, particularly in complex matters such as CERCLA claims. <u>See</u> <u>Allied Corp. v. Acme Solvent Reclaiming, Inc.</u>, 771 F.Supp.219, 222 (N.D. Ill. 1990) (citing <u>Metropolitan Housing Dev. Corp. v. Arlington Heights</u>, 616 F.2d 1006, 1013 (7th Cir. 1980)). Significantly, CERCLA grants courts broad powers to allocate clean-up costs using "such equitable factors as the Court determines are appropriate." 42 U.S.C. §

---

[2]    Defendants' bases for objecting to the Court's approval of Plaintiff's Motion for Standing Order and Plaintiff's Motion for Approval and Dismissal are substantially the same. Therefore, the Court will not engage in a separate analysis with respect to the Standing Order. The Court notes, however, that the proposed standing order is essentially a case management order, which may be entered at the Court's discretion.

4

9613(f)(1); see also Barton Solvents, Inc. v. Southwest Petro-Chem, Inc., 834 F.Supp. 342, 346

(D. Kas. 1993). Congress intended for this provision to foster settlements and "to provide PRPs

[potentially liable persons] a measure of finality in return for their willingness to settle." United

States v. SCA Services of Indiana, Inc., 827 F.Supp. 526, 530 (N.D. Ind. 1993) (citing United

States v. Cannons Engineering Corp., 899 F.2d 79, 92 (1st Cir. 1990)). To this end, barring cross-

claims and contribution claims brings a measure of finality making settlements more desirable.

Allied Corp., 771 F.Supp. at 222. As one court noted: "It is hard to imagine that any defendant

in a CERCLA action would be willing to settle if, after the settlement, it would remain open to

contribution claims from other defendants." Id.

       Essentially, a settling defendant "buys a peace" from the plaintiff as it is (i) relieved

of liability to co-defendants, and (ii) dismissed from the litigation. Edward Hines Lumber Co. v.

Vulcan Materials Co., No. 85-1142, 1987 WL 27368 (N.D.Ill. Dec. 4, 1987). It is clear that

courts have authority to dismiss settling parties from CERCLA actions, and to bar cross-claims

and contribution claims against those settling partes. Because we agree that "the degree to which

a bar on contribution cross-claims will facilitate settlements outweighs the prejudice of such a bar

on non-settling defendants," Allied Corp., 771 F.Supp. at 222, and it is within our authority to do

so, we hold that, in the instant action, the settling parties may be dismissed pursuant to a

settlement agreement with protection from future cross-claims and contribution claims by non-

settling parties. See e.g. Lyncott v. Chemical Waste Management, Inc., 690 F.Supp. 1409

(E.D.Pa. 1988); U.S. v. S.C.A. Services of Indiana, Inc., 827 F. Supp. 526 (N.D.Ind. 1993);

Comerica Bank– Detroit v. Allen Industries, Inc., 769 F. Supp. 1408 (E.D.Mich. 1991); American

Cyanamid Co. v. King Industries, Inc., 814 F. Supp. 215 (D.R.I. 1993); and U.S. v. Western

Processing Co., Inc., 756 F. Supp. 1424 (W.D.Wash. 1990).[3]

<u>Reduction of the Non-Settlors' Liability</u>

Next, the Court must address the extent to which the non-settling defendants' liability

should be offset by any settlement agreement. A review of reported cases involving private party

CERCLA settlements shows that nearly all courts addressing the issue of reducing non-settling

parties' liability have applied the approach set forth in the Uniform Comparative Fault Act

("UCFA") as opposed to that of the Uniform Contribution Among Tortfeasors Act ("UCATA").

For the reasons that follow, we agree.[4]

"The UFCA expressly provides for application of comparative fault, and would reduce the

Non-Settlors' liability by the amount of the Settlors' equitable share of the obligation." <u>Barton</u>

<u>Solvents</u>, 834 F. Supp. at 348; <u>see also Lyncott Corp.</u>, 690 F.Supp. at 1418. This means that the

liability of the Non-Settlors is determined without regard to the dollar amounts of previous

settlements. <u>Allied Corp.</u> 771 F. Supp. at 223. Specifically, section 6 of the UFCA provides:

> A release, covenant not to sue, or similar agreement entered into by a claimant and
> a person liable discharges that person from all liability for contribution, but it does
> not discharge any other persons liable upon the same claim unless it so provides.
> However, the claim of the releasing person against other persons is reduced by the
> amount of the released person's equitable share of the obligation ...

Some courts have applied the UCATA approach, where the liability of non-settling

---

[3]    The Court notes, however, that both the UCATA and the UCFA expressly provide
contribution protection to all settlers.

[4]    Plaintiff argues that the Court need not decide this issue at this time; however, the
Court determines that indeed we must decide this issue in conjunction with the Joint Motion by
Plaintiff Boarhead Farm Agreement Group and Defendant United States for Approval of
Settlement Agreement and Dismissal in order to properly resolve the motion.

defendants is reduced by the greater of the amount stipulated by the release or covenant or the

amount of the consideration paid for it.  UCATA §§ 4, 12 U.L.A. (1975); see also Allied Corp.,

771 F.Supp. at 223.

    In Hillsborough County v. A & E Road Oiling Service, Inc., 853 F. Supp. 1402, 1408-09

(M.D. Fla. 1994), the court considered the strengths and of the two approaches.  Specifically, the

court found four significant advantages to the UCFA over the UCATA:

> (1) [The UCFA] provides for equitable apportionment of responsibility, and where
> there is a partial settlement, the judgment is reduced by the proportionate fault of
> the settling defendant who is then discharged;
>
> (2) complex partial settlements involving multiple parties, claims or theories are
> more easily resolved (without the imprecision of allocation prior to trial by the
> court under the pro tanto [UCATA] theory);
>
> (3) the need for a good faith hearing is eliminated as the proportionate credit is not based
> on the amount of the settlement;
>
> (4) total settlement is encouraged after partial settlement as a culpable nonsettlor cannot
> escape responsibility when a settling defendant pays more than his fair share and cannot
> gamble on a jury verdict in view of a guaranteed credit. This serves also to deter wrongful
> conduct.

Id., 853 F.Supp. at 1408 (citing United States v. Western Processing Co., 756 F. Supp. 1424,

1430 (W.D. Wash. 1990)).

    As to the disadvantages, the Court noted:

> (1) [R]ecovery of the exact amount of the total damages set by the trier of fact is
> entirely fortuitous when there has been partial settlement, as the nonsettlors pay
> only their fair share regardless of the amount of settlements paid;
>
> (2) this can lead to impairment of a claimant's willingness to settle because of the
> uncertainty of the amount to be credited for the settlements; and
>
> (3) at trial, a plaintiff must not only advocate his freedom from fault, but also convince the
> trier of fact of the settlor['s] minimal fault. In complex cases the plaintiff may not have

access to information that the settling defendant would have had, and a distortion could result from the settlor not defending his own interest.

Id.

This Court is persuaded by the foregoing rationale and concludes that the benefits of the UCFA outweigh its shortcomings. Accordingly, we find that the UCFA governs in determining the extent to which the non-settling defendants' liability should be offset by any settlement agreements. See e.g. Lyncott Corp., 690 F.Supp. 1409, 1428-19 (E.D. Pa. 1988); American Cyanamid Co. v. King Industries, Inc., 814 F.Supp. 215, 219 (D.R.I.1993); Allied Corp. v. Acme Solvent Reclaiming, Inc., 771 F.Supp. 219, 223 (N.D.Ill.1990); Comerica Bank-- Detroit v. Allen Indus., Inc., 769 F.Supp. 1408, 1414 (E.D.Mich.1991); and Edward Hines Lumber Co. v. Vulcan Materials Co., 685 F.Supp. 651 (N.D.Ill.1988), aff'd on other grounds, 861 F.2d 155 (7th Cir. 1988). In my view, the principles of the UCFA are most consistent with CERCLA's goals of fostering settlements, while achieving an equitable apportionment of liability for non-settling parties. American Cyanamid Co, 814 F. Supp. at 218 (citations omitted). Additionally, the UCFA promotes judicial economy because it obviates the need for a good faith hearing because the comparative fault rule is not based upon the amount of the settlement. Id.; see also Lyncott Corp., 690 F.Supp. at 1418 (citing Chemical Waste, 669 F.Supp. at 1292 n.10). Most importantly, because plaintiffs "bear the risk that the potential settling defendants' share of the cleanup costs may be greater than the settlement amount, it is in the best interest of the plaintiffs to obtain a settlement that is closely related to the probable share for which the potential settling defendants would have been responsible." American Cyanamid Co., 814 F. Supp. at 218; see also Lyncott Corp., 690 F.Supp. at 1417 (holding that the UCFA "avoids the inequity that might

8

develop were non-settlors forced to absorb the total cost of shares fo responsibility that are not

allocable to solvent responsible parties.")

The Court further holds that, under the UFCA, settling defendants may not sue non-

settling defendants for contribution *unless* the settlement agreement between Plaintiff and the

settling Defendants extinguishes the liability of the non-settling defendants to Plaintiff. American

Cyanamid Co., 814 F. Supp. at 218 (citing Amland Properties Corp. v. Aluminum Company of

America, 808 F. Supp.1187, 1198 (D. N.J. 1992)).

## Conclusion

For the foregoing reasons, Plaintiff Boarhead Farm Agreement Group's Motion for

Standing Order Regarding Dismissal of Settling Defendants (Dkt. No. 80) and Joint Motion by

Plaintiff Boarhead Farm Agreement Group and Defendant United States for Approval of

Settlement Agreement and Dismissal (Dkt. No. 83) are DENIED without prejudice to Plaintiff's

right to refile a standing order and/or settlement agreements in compliance with this decision.


## ORDER

AND NOW, this 29th day of June, 2004, upon consideration of Plaintiff Boarhead Farm

Agreement Group's Motion for Standing Order Regarding Dismissal of Settling Defendants (Dkt.

No. 80), and the responses thereto, it is hereby ORDERED that Plaintiff's motion is DENIED.

It is further ORDERED that, upon consideration of the Joint Motion by Plaintiff

Boarhead Farm Agreement Group and Defendant United States for Approval of Settlement

Agreement and Dismissal (Dkt. No. 83), and responses thereto, the motion is DENIED.

Additionally, it is ORDERED that Joint Motion by Plaintiff Boarhead Farm Agreement Group

9

and Defendant United States for Approval of Settlement Agreement and Dismissal (Dkt. No. 84)

is DISMISSED as duplicative of Docket Entry 83.

Any future settlement agreements presented to this Court for approval must comply with

the principles set forth in the foregoing Memorandum.

BY THE COURT:

Legrome D. Davis