IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BOARHEAD FARM
AGREEMENT GROUP,

            Plaintiff,

v.

ADVANCED ENVIRONMENTAL
TECHNOLOGY CORPORATION, et al.,

            Defendants

Civil Action No. 02-CV-3830

## ORDER

AND NOW, this _____ day of _____, 2004, upon consideration of Plaintiff Boarhead Farm Agreements Group's Motion To Overrule Objections And Compel Defendant Ashland Chemical Company To Respond To Plaintiff's Discovery Requests ("Plaintiff's Discovery Requests"), it is hereby ORDERED that Plaintiff's Motion is GRANTED. Defendant Ashland Chemical Company ("Ashland") shall produce the following discovery within 10 days of the entry of this Order:

    1.    Ashland shall provide answers to interrogatories Nos. 1, 2 and 3-5 contained in Plaintiff's Discovery Requests that do not limit the scope of the answer to the Great Meadows Facility only;

    2.    Ashland shall provide answers to all interrogatories and discovery requests to the extent Ashland makes an appropriate inquiry not limited by its objections to Plaintiff's Discovery Requests contained in Objection Nos. 13, 15, 17, 19, 20 of its

Response to Plaintiff's Discovery Requests and its "General Statement;"

3. Ashland shall provide a direct response to Interrogatory No. 1;

4. Ashland shall provide complete answers to Interrogatory Nos. 6-9;

5. Ashland shall provide copies of all documents identified in its responses to interrogatories;

6. Ashland shall provide all documents responsive to Document Request No. 2 in the possession, custody or control of its attorney and former attorneys, including responsive documents pertaining to the suit brought against Ashland by Southland.

_____<br>
LeGrome D. Davis<br>
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BOARHEAD FARM AGREEMENT GROUP,<br><br>      Plaintiff,<br>  v.<br><br>ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, et al.,<br><br>      Defendants | :<br>:<br>:<br>:<br>:<br>:   Civil Action No. 02-CV-3830<br>:<br>:<br>:<br>:<br>: |

**PLAINTIFF BOARHEAD FARM AGREEMENT GROUP'S
MOTION TO OVERRULE OBJECTIONS AND COMPEL
DEFENDANT ASHLAND CHEMICAL COMPANY TO
RESPOND TO PLAINTIFF'S DISCOVERY REQUESTS**

Plaintiff Boarhead Farm Agreement Group ("BFAG") moves this Court, pursuant to Fed. R. Civ. P. 37 (a), to overrule objections of Defendant Ashland Chemical Company ("Ashland") to Interrogatories And Requests For Production Of Documents Of Plaintiff Boarhead Farm Agreement Group Directed To Defendant Ashland Chemical Company ("Plaintiff's Discovery Requests"), and to compel Ashland's responses to certain interrogatories and requests for production of documents contained in Plaintiff's Discovery Requests.

Ashland's objections to Plaintiff's Discovery Requests unjustifiably limit the scope of their responses to Plaintiff's Discovery Requests, rendering their responses incomplete and deficient. Ashland has also failed to answer directly certain interrogatories contained in Plaintiff's Discovery Requests and has failed to produce relevant documents responsive to the document requests contained in Plaintiff's Discovery Requests. Plaintiff's Discovery Requests

are unobjectionable and reasonably calculated to the discovery of admissible evidence. The particular objections, interrogatories and requests for production of documents that are the subject of this motion are set forth in BFAG's exhibits that accompany the Memorandum of Law supporting this motion.

Counsel for BFAG certifies that it has in good faith conferred with counsel for Ashland in an effort to secure the discovery sought by this motion without intervention by this Court, but that such efforts have not been successful.

Accordingly, BFAG moves for an order compelling Ashland to respond to and produce the discovery enumerated in the accompanying proposed form of Order. The bases for BFAG's motion are set forth in BFAG's accompanying Memorandum Of Law In Support Of Its Motion To Overrule Objections And Compel Defendant Ashland Chemical Company To Respond To Plaintiff's Discovery Requests.

BFAG further moves, pursuant to Fed. R. Civ. P. (4)(A), for its reasonable expenses incurred in making this motion.

In accordance with Local Rule 7.1(a), a draft order granting BFAG's motion is attached.

Respectfully Submitted,

Dated: October 8, 2004        By: _____
                                  Glenn A. Harris, Esquire
                                  Monique M. Mooney, Esquire
                                  BALLARD SPAHR ANDREWS &
                                      INGERSOLL, LLP
                                  1735 Market Street, 51st Floor
                                  Philadelphia, PA 19103-7599
                                  (215) 665-8500

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BOARHEAD FARM AGREEMENT GROUP,<br><br>    Plaintiff,<br> v.<br>ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, et al.,<br><br>    Defendants | Civil Action No. 02-CV-3830 |

**PLAINTIFF BOARHEAD FARM AGREEMENT GROUP'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO OVERRULE OBJECTIONS AND COMPEL
DEFENDANT ASHLAND CHEMICAL COMPANY TO
RESPOND TO PLAINTIFF'S DISCOVERY REQUESTS**

I. **INTRODUCTION**

This case arises out of the Boarhead Farm Superfund Site in Bucks County, Pennsylvania ("Boarhead Farm Site"). From approximately 1969 to 1977, the Boarhead Farm Site was used as a dumping ground for the disposal of industrial wastes containing hazardous substances within the meaning of Section 101(14) of the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601(14) ("the Waste Materials"). During this time period, the Boarhead Farm Site was owned by Boarhead Corporation and used by DeRewal Chemical Company, Inc. ("DCC"). DCC hauled the Waste Materials from its industrial customers and disposed of it at the Boarhead Farm Site. Defendant Ashland Chemical Company's ("Ashland") waste was disposed of at the Boarhead Farm Site.

In 1989, the U.S. Environmental Protection Agency ("EPA") placed the Boarhead Farm Site on the National Priorities List ("NPL"), 40 C.F.R. Part 300, Appendix B, and

subsequently implemented removal and remedial actions at the Boarhead Farm Site. In the course of its assessment of contamination at the Boarhead Farm Site, EPA identified dozens of hazardous substances on the site. BFAG entered into several Admininstrative Orders on Consent and Consent Decrees whereby it has funded and continues to fund remedial activities at the Boarhead Farm Site. BFAG has brought the present contribution action against Defendants for costs it has incurred and will incur in connection with the cleanup of the Boarhead Farm Site.

Ashland owned and operated a chemical plant in Great Meadows, New Jersey ("the Great Meadows Facility") from 1966 to 1978, at which time it sold the Great Meadows Facility to the Southland Corporation ("Southland"). The Great Meadows Facility was a "fine" chemical manufacturing plant, specializing in synthetic organic chemicals and hair dye intermediates which it produced in small quantities on a custom-made basis. During the time Ashland owned and operated the Great Meadows Facility, it generated several different hazardous waste streams from its manufacturing processes ("the Ashland Waste Streams").

Evidence produced in this case and in connection with prior EPA enforcement actions substantiate BFAG's contention that the Ashland Waste Streams were disposed of at the Boarhead Farm Site. Ashland disposed of the Ashland Waste Streams by contracting with third parties for off-site disposal and by disposing of waste itself on the grounds of the Great Meadows Facility. Defendant Advanced Environmental Technology Corporation ("AETC") was one of the third parties with whom Ashland contracted for the disposal of the Ashland Waste Streams. AETC, in turn, contracted with DCC to pick up and remove the Ashland Waste Streams from the Great Meadows Facility. DCC removed the Ashland Waste Streams from the Great Meadows Facility beginning in August, 1976 and continuing through early 1977 when DCC's waste

disposal business ended. Drivers for DCC have testified that they disposed of the Ashland Waste Streams at the Boarhead Farm Site.

BFAG has recently learned that Southland sued Ashland in the 1980's for contribution in connection with the cleanup of the Great Meadows Facility, which was contaminated by hazardous substances in the Ashland Waste Streams dumped on the site. *See Southland Corp. v. Ashland Oil, Inc., et al.*, 696 F. Supp. 994 (D.N.J. 1988) (attached hereto at Exhibit A). A number of reports pertaining to environmental conditions at the site were generated in connection with the cleanup of the Great Meadows Facility, including at least one report Ashland itself submitted to EPA.

On June 21, 2004, BFAG served Ashland with Interrogatories And Requests For Production Of Documents Of Plaintiff Boarhead Farm Agreement Group Directed To Defendant Ashland Chemical Company ("Plaintiff's Discovery Requests") (a true and correct copy of Plaintiff's Discovery Requests is attached hereto at Exhibit B). Plaintiff's Discovery Requests are designed primarily to determine two things: 1) the constituents of the Ashland Waste Streams; and 2) the amount of the Ashland Waste Streams removed by DCC. To that end, Plaintiff's Discovery Requests contain interrogatories and requests for production of documents that are tailored to elicit information in Ashland's possession concerning its waste streams, disposal practices, manufacturing operations, facilities and contacts with persons affiliated with the Boarhead Farm Site.

On July 26, 2004, Ashland submitted to BFAG Answers And Objections Of Defendant Ashland Inc. To Plaintiff's Interrogatories And Request For Production Of Documents Of Plaintiff Boarhead Farm Agreement Group ("the Ashland Response") (a true and correct copy of the Ashland Response is attached hereto at Exhibit C). The Ashland Response

contains thirty-one "General Objections" and a "General Statement," in addition to lengthy and detailed specific objections prefacing nearly every one of Ashland's responses to individual interrogatories and document requests. The Ashland Response is deficient for a number of reasons. Certain of Ashland's objections unjustifiably and inappropriately limit the scope of Ashland's responses to particular interrogatories and render such responses incomplete and deficient. Ashland simply declined to answer other of BFAG's interrogatories. Finally, Ashland provided no documents in response to the document requests contained in Plaintiff's Discovery Requests, although it identifies responsive documents in several of its interrogatory responses. Furthermore, to the extent any of the reports or other documents generated in connection with the cleanup of the Great Meadows Facility or Southland's suit against Ashland refer or relate to the Ashland Waste Streams, these documents should have been provided to BFAG in response to its document requests.

On September 3, 2004, BFAG sent a letter to counsel for Ashland detailing the deficiencies in the Ashland Response and requesting that Ashland provide full and complete responses to Plaintiff's Discovery Requests ("the Deficiency Letter") (a true and correct copy of the Deficiency Letter is attached hereto as Exhibit D). To date, Ashland has failed to respond to the Deficiency Letter.

## II. ARGUMENT

Under Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery on any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party...." Fed. R. Civ. P. 26(b)(1). In this case, BFAG seeks contribution from the defendants for the costs it has incurred cleaning up dozens of different hazardous substances at the Boarhead Farm Site. In order to equitably apportion each

company's share of liability at the Boarhead Farm Site, each company's nexus to the Boarhead Farm Site must be established, including the type and amount of each company's waste disposed of at the Boarhead Farm Site. Clearly, discovery requests designed to elicit information about the constituents of the Ashland Waste Streams, the manufacturing processes from which they were generated, and Ashland's disposal practices are "relevant to the subject matter involved" in this action. Id. However, Ashland has asserted spurious objections, failed to answer and failed to provide relevant documents in response to discovery requests relating to these very matters.

A. **Ashland's objections to Plaintiff's Discovery Requests are spurious and unjustifiably and unfairly limit the scope of its responses.**

The Ashland Response is deficient insofar as Ashland has unjustifiably and unfairly limited the scope of its responses to Plaintiff's Discovery Requests. In Definition No. 21 of Plaintiff's Discovery Request, BFAG defines the term "Geographical Area" to include New York, New Jersey and Pennsylvania, the areas serviced by DCC. Definition No. 18 of the Ashland Response objects to BFAG's definition of "Geographical Area" and states that it will answer Plaintiff's Discovery Request with respect to the Great Meadows Facility only. Insofar as Ashland acknowledges that DCC transported the Ashland Waste Streams (see, e.g., Ashland's responses to Interrogatory Nos. 9 and 10 of Plaintiff's Discovery Request), interrogatories that seek to ascertain whether Ashland had any other facilities in the Geographical Area serviced by DCC during the time period that the Boarhead Farm Site was used as a disposal site, and that seek information regarding operations at, and waste streams generated by, any such facilities, are reasonably calculated to lead to the discovery of admissible evidence because they bear on the amount and constituents of the Ashland Waste Streams that DCC actually or may have deposited on the Boarhead Farm Site. *See Fort Washington Resources, Inc. v. Tannen*, 153 F.R.D. 78, 79 (E.D. Pa. 1994) (stating the rule that, in the discovery context, "[r]elevant matter encompasses

any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case") (citations omitted); *Transcontinental Fertilizer Co. v. Samsung Company, Ltd.*, 108 F.R.D. 650, 652 (E.D. Pa. 1985) ("[R]elevance is not to be measured by the precise issues framed by the pleadings but by the general relevance to the subject matter and the legal issues present in the case.") (citations omitted). Furthermore, to the extent operations at other Ashland facilities could shed light on operations at the facilities admittedly serviced by DCC, these interrogatories also fall within the scope of permissible discovery. *See id.* Accordingly, by limiting the scope of the Ashland Response to the Great Meadows Facility only, Ashland has unjustifiably and unfairly failed to provide adequate responses to the following interrogatories, to which information Plaintiff is entitled: (a) Interrogatory No. 1 and its subparts request information concerning any Ashland facility that Ashland believes or surmises may have had a nexus to the Boarhead Farm Site. By answering with respect to the Great Meadows Facility only, Ashland has failed to respond fully to this interrogatory; (b) Interrogatory No. 2 and its subparts request information concerning every Ashland facility in the Geographical Area. By answering with respect to the Great Meadows Facility only, Ashland has failed to respond fully to this interrogatory; (c) Interrogatory Nos. 3-5 request information regarding any facilities Ashland has identified in response to Interrogatory No. 1. To the extent Ashland's revised response to Interrogatory No. 1 identifies facilities other than the Great Meadows Facility, Ashland's responses to Interrogatory Nos. 3-5 should be supplemented to incorporate any such newly identified facilities.

Ashland Objection Nos. 15, 19, and 20, fairly read, state that Ashland believes it has no obligation whatsoever to investigate or respond to discovery requests with respect to the Ashland Waste Streams from the Great Meadows Facility, has no obligation to provide any

information whatsoever about that facility outside of an eight month time period in late 1976 and early 1977, and that Plaintiff's Discovery Requests are fatally deficient because they do not provide "notice" as to any specific waste streams relevant to this action. There is substantial testimonial and documentary evidence in this matter that Ashland arranged with AETC for the removal of several different wastes from its Great Meadows facility and that DCC removed substantial amounts of these wastes as part of DCC's agreement with AETC. Any documents or information in Ashland's possession, custody, or control, or information within its corporate knowledge either relevant to the quantities and nature of those wastes or that might lead to the discovery of such relevant evidence, is discoverable. *See Transcontinental Fertilizer Co.*, 108 F.R.D. at 653 ("A corporation must supply information in the hands of its agents and others within its control."). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. All of the information sought in Plaintiffs' Discovery Requests concerning Ashland's Great Meadows Facility, including the various waste streams from that facility, the various processes that created those waste streams, etc., including such information applicable to the facility for several years prior to and several years after the time of the eight month period, is discoverable. *See Fort Washington Resources, Inc.*, 153 F.R.D. at 79; Transcontinental *Fertilizer Co.*, 108 F.R.D. at 652. Ashland's response to each applicable discovery request must be supplemented accordingly and these meritless objections withdrawn.

Ashland Objection Nos. 13 and 17 and its "General Statement," read collectively, state that Ashland has undertaken an investigation only of those persons currently employed by it and a search for documents in its sole possession. Fed. R. Civ. P. 26(g). Ashland has a duty

under Fed. R. Civ. P. 26(g) to make a "reasonable inquiry" to determine information known to it and documents within its possession, custody, or control. With respect to documents, this means that Ashland has a duty to determine whether there are documents in its own possession or in the possession of its attorneys or former attorneys, including those who represented Ashland in Southland's suit against it, who are expected to have possession of responsive documents. *Transcontinental Fertilizer Co.*, 108 F.R.D. at 653 ("A corporation must supply information in the hands of its agents and others within its control."); *Axler v. Scientific Ecology Group, Inc.*, 196 F.R.D. 210, 212 (D. Mass. 2000) (holding, in rejecting plaintiffs' argument that disputed documents did not have to be produced because they were solely in the possession, custody and control of plaintiffs' attorneys, that "a party must produce otherwise discoverable documents that are in his attorneys' possession, custody or control."); *see also, Hickman v. Taylor*, 329 U.S. 495, 504 ("A party clearly cannot refuse to answer interrogatories on the ground that the information sought is solely within the knowledge of his attorney."). Ashland's response gives no indication that Ashland has undertaken the necessary inquiry. In fact, Ashland has failed to produce any documents whatsoever, including documents pertaining to the Southland litigation which undoubtedly exist in its own files or those of its attorneys. Ashland should either withdraw these objections or state in writing the steps it took to conduct its "reasonable inquiry." *See Alexander v. Federal Bureau of Investigation*, 194 F.R.D. 299, 302 (D.D.C. 2000) (rejecting Mrs. Clinton's claim that she need produce only those documents in her possession and ordering her to supplement her discovery responses to explain in detail the search performed and assert whether all documents, including those not in her possession but still within her control, have been produced).

### B. Ashland's response to Interrogatory No. 1 is deficient because it fails to provide a direct response to the question posed.

Ashland's response to Interrogatory No. 1 is also deficient because it fails to answer directly the questions posed. Interrogatory No. 1 asks Ashland to state whether any document alleges or whether Ashland believes, has reason to believe, or surmises that its materials were sent to the Boarhead Farm Site or transported by a Transporter, or any of its facilities had dealings with the Boarhead Farm Site. Insofar as Ashland knows, beyond a doubt, that DCC transported waste from its Great Meadows Facility, the direct answer to this interrogatory is "Yes." However, rather than respond directly to these queries, Ashland couches its answer in terms of whether it "has information" concerning the question at issue. This response does not answer the query directly and is, therefore, deficient. A party cannot plead ignorance to information that is from sources within its control. *Transcontinental Fertilizer Co.*, 108 F.R.D. at 652 (rejecting defendant's interrogatory response that it "has no knowledge of the information requested in the interrogatory," as incomplete and unresponsive and ordering defendant to provide a sworn answer indicating a lack of knowledge and no means of obtaining the requested information). Therefore, BFAG is entitled to a response that directly addresses the question posed. *See id.*

### C. Ashland's unjustifiably failed to answer Interrogatory Nos. 6-9.

Ashland simply failed to answer Interrogatory Nos. six through nine. Ashland states, in response to Interrogatory No. 6, that the interrogatory is inapplicable since Ashland "does not believe or have reason to believe or surmise that any wastes from its Great Meadows, New Jersey facility or from any other Ashland facility were sent...to the Site." This response is deficient and contradicted by Ashland's own responses to other interrogatories. Interrogatory No. 6 asks Ashland for detailed information "with respect to the waste stream **from the Great**

**Meadows Facility...or which was handled by a Transporter..."** As described above, Ashland admits that DCC transported its waste stream from the Great Meadows Facility during the Relevant Time Period (defined in Plaintiff's Discovery Requests as January 1, 1969 to December 31, 1977). Because Interrogatory No. 6 seeks information that will shed light on the types and amounts of the Ashland Waste Streams present at the Boarhead Farm Site, Interrogatory No. 6 is applicable and is reasonably calculated to lead to the discovery of admissible evidence. Accordingly, Plaintiff is entitled to a substantive response to Interrogatory No. 6 and its subparts. *See Transcontinental Fertilizer Co.*, 108 F.R.D. at 652 ("Answers to interrogatories must be complete, explicit and responsive.").

Collectively, Interrogatories 6-9 seek information pertaining to waste streams generated at Ashland facilities, at least one of which, the Great Meadows Facility, Ashland admits DCC serviced. Pursuant to the same reasoning outlined above with respect to Interrogatory No. 6, Interrogatory Nos. 7, 8, and 9 are also applicable to Ashland and reasonably calculated to lead to the discovery of admissible evidence. Therefore, to the extent Interrogatory Nos. 7-9 pertain to the Great Meadows Facility and/or are premised on the information Ashland provides in response to Interrogatory No. 6, Ashland must provide substantive responses to these interrogatories as well. *See id.*

### D. Ashland unjustifiably failed to produce documents it identifies in its responses to interrogatories.

Document Request No. 1 asks Ashland to provide all documents requested to be identified in the Interrogatories. Although Ashland identifies documents in response to a number of different interrogatories, Ashland provided no documents in connection with the Ashland Response. Rule 34 requires a party to produce relevant documents in the party's possession, custody or control. Fed. R. Civ. P. 34(a). Documents that Ashland has identified in response to

an interrogatory are clearly relevant. Therefore, BFAG is entitled to all documents Ashland identified in response to the interrogatories including, but not limited to, the following:

- The different categories of documents Ashland refers to in response to Interrogatory No. 10, including the testimony of Arthur Curley and William Charles Olasin in another CERCLA action.

- The documents referenced in Ashland's statement in response to Interrogatory No. 13 that it "has provided and is providing all information and documents in its possession or control" regarding wastes DCC transported from the Great Meadows Facility during the Relevant Time Period.

- All of the documents identified in Ashland's amended responses to Plaintiff's Discovery Requests, including, but not limited to, all documents concerning waste streams generated at the Great Meadows Facility and any other facility Ashland subsequently identifies.

Document Request No. 2 asks for copies of all documents that have not already been produced that refer or relate to Ashland waste from the Great Meadows Facility or any other Ashland facility which may have been sent to the Site. Ashland failed to produce any documents in response to this document request and states that the request is inapplicable since Ashland has no reason to believe any waste belonging to it was sent to the Boarhead Farm Site. As explained above, Ashland's response is disingenuous. Former drivers for DCC have testified that they disposed of the Ashland Waste Streams on the Boarhead Farm Site and Ashland itself admits that DCC transported its wastes. To the extent Ashland's objection to Document Request No. 2 is overruled, Ashland must provide all document in its possession, custody or control pertaining to the specified waste streams. *See* Fed. R. Civ. P. 34(a). Documents pertaining to the specified waste streams in the possession, custody or control of Ashland's attorneys or former attorneys, including any such documents generated in connection with Southland's suit against Ashland, also fall within the scope of Document Request No. 2. Accordingly, Ashland must produce copies of these documents. *See Fort Washington Resources, Inc.*, 153 F.R.D. at 79

(holding that it is not a bar to the discovery of relevant material that the requested material is obtainable from another source); *Alexander*, 194 F.R.D. at 301 (holding that the test to determine "control" for purposes of discovery requests under Fed. R. Civ. P. 34(a) is whether the party upon whom the request was served has the "legal right to obtain documents on demand").

### III.   CONCLUSION

For the reasons set forth above, BFAG respectfully requests that this Court compel Ashland to respond to Plaintiff's Discovery Requests. In addition, BFAG requests, pursuant to Fed. R. Civ. P. 37(a)(4) that the Court award BFAG its costs, including attorney's fees, associated with bringing this motion.

Respectfully Submitted,

Dated: October 8, 2004

By: _____
Glenn A. Harris, Esquire
Monique M. Mooney, Esquire
BALLARD SPAHR ANDREWS &
    INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
(215) 665-8500

## CERTIFICATE OF SERVICE

I hereby certify that, on October 8, 2004, Plaintiff Boarhead Farm Agreement Group's Motion to Overrule Objections and Compel Defendant Ashland Chemical Company to Resopnd to Plaintiff's Discovery Requests was filed electronically and is available for viewing and downloading from the Electronic Case Filing System of the United States District Court for the Eastern District of Pennsylvania. In addition, a true and correct copy of the foregoing was served by first-class mail, postage prepaid upon the following:

> Thomas W. Sabino, Esquire
> Wolff & Samson, PC
> 280 Corporate Center
> 5 Becker Farm Road
> Roseland, New Jersey 07068-1776
>
> Robert M. Morris, Esquire
> Morris & Adelman, P.C.
> 1920 Chestnut Street
> P.O. Box 30477
> Philadelphia, PA 19103
> *Advanced Environmental Technology Corp.*
>
> Melissa Flax, Esquire
> Carella, Byrne, Bain, Gilfillian, Cecchi,
> Stewart & Olstein, P.C.
> Six Becker Farm Road
> Roseland, New Jersey 07068-1739
> *Handy & Harman Tube Company*
>
> Stephen P. Chawaga, Esquire
> Monteverde, McAlee & Hurd
> One Penn Center at Suburban Station
> Suite 1500
> 1617 John F. Kennedy Boulevard
> Philadelphia, PA 19103-1815
> *Merit Metals Products Corp.*

Andrew P. Foster, Esquire
Drinker, Biddle & Reath, LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA  19103-6996
*Rahns Specialty Metals, Inc.*
*Techalloy Co., Inc.*
*Thomas & Betts Corporation*
*Unisys Corporation*

Edward Fackenthal, Esquire
Henderson, Weitherill, O'Hey & Horsey
Suite 902 - One Montgomery Plaza
P.O. Box 751
Norristown, PA  19404

Date:  October 8, 2004

_____
Monique M. Mooney, Esquire
Attorney for Plaintiff