# EXHIBIT A

1988 WL 125855                                                    Page 11
1988 WL 125855 (D.N.J.), 28 ERC 1813, 19 Envtl. L. Rep. 20,738
(Cite as: 1988 WL 125855 (D.N.J.))

H

United States District Court, D. New Jersey.

The SOUTHLAND CORPORATION, Plaintiff,
v.
ASHLAND OIL, INC., et al., Defendants.

CIV. No. 88-0700.

Nov. 23, 1988.

OPINION

CLARKSON S. FISHER, Senior District Judge.

*1 Plaintiff, the Southland Corporation ("Southland"), moves this court for an order granting reargument and reconsideration of that portion of the court's October 6, 1988, opinion and order which granted summary judgment to defendant, Ashland Oil, Inc. ("Ashland"), on Count Four of Southland's Complaint. Assuming reargument is granted, Southland seeks an order denying Ashland summary judgment on Count Four of the Complaint. For the reasons set forth below, both requests are granted.

On October 3, 1988, oral argument was heard on the parties' cross-motions for summary judgment. Shortly thereafter, the court issued an opinion and order, dated October 6, 1988, which granted summary judgment to Southland on Counts One, Two and Fourteen of its Complaint and summary judgment to Ashland on Count Four of the Complaint. Counts One, Two and Fourteen are based on a statutory cause of action created by §§ 107(a) and 113(f) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"). The Court found that Ashland was statutorily liable to Southland, under CERCLA, for that part of the past and future response costs incurred by Southland in connection with the cleanup of the Great Meadows chemical plant necessitated by the dumping of hazardous and toxic wastes by Ashland during its prior ownership.

In Count Four of its Complaint, however, Southland alleges that Ashland had a separate contractual obligation to indemnify Southland "from and against any and all ... costs, expenses, damages,

losses, obligations, lawsuits, claims, liabilities ... resulting from [Ashland's] ownership, use ... or maintenance ... of the Business ... prior to the Closing," imposed by section 9.01 of the Agreement of Purchase and Sale (the "Agreement"). In its earlier cross-motion, Ashland sought a determination that the Agreement bars any recovery by Southland for breach of contract based on the indemnification provision in the contract. Southland's current motion addresses that part of the court's opinion which granted summary judgment to Ashland, dismissing Count Four of the Complaint.

As noted in the court's previous opinion, section 11.03 of the Agreement placed a two-year limitation, following the Closing Date, on Ashland's affirmative promise to indemnify Southland pursuant to section 9.01. [FN1] The Closing on the purchase and sale of the Great Meadows facility occurred on May 1, 1978. Any claim which arose more than two years after this date was plainly barred by the terms of the Agreement. Southland maintains, however, that it filed a timely notice of claim with Ashland by letter on April 25, 1980. Believing that any cause of action based on a breach of the contract's indemnity provision accrued in 1980, when Ashland rejected Southland's "claim," and was thus time barred under New Jersey's six-year statute of limitation for claims based on contract, N.J.Stat.Ann. § 2A:14-1 (West 1987), the court granted Ashland's motion for partial summary judgment, dismissing Count Four of the Complaint. As a result, the court never reached the issue of whether Southland's April 25, 1980, letter constituted proper notice of a claim encompassed by section 9.01 of the Agreement.

*2 Rule 12I of the General Rules of the United States District Court for the District of New Jersey states, in pertinent part, that the party moving for reconsideration shall submit "a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked." In support of its motion, Southland has submitted sequential Tolling Agreements entered into by the parties which evidence the parties' agreement to toll the running of all applicable statutes of limitations so that settlement negotiations would be facilitated without prejudice to plaintiff's claims. Ashland does not dispute either the existence of these agreements

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

or their legal effect. In light of the new evidence before the court, it now appears that the court's earlier conclusion that the breach-of-contract claim embodied in Count Four of Southland's Complaint was time barred under New Jersey's six-year statute of limitation was erroneous. Southland's motion for reconsideration is thus granted, and the court will now address the merits of Ashland's previous cross-motion for summary judgment on Count Four.

In its motion to dismiss Count Four by way of summary judgment, Ashland presented three separate arguments to the court in support of its contention that the Agreement entered into by the parties barred recovery by Southland on its breach-of-contract claim. Ashland argues that (1) the "as is, where is" clause (section 6.06) in the Agreement supersedes section 9.01 and controls the issue of whether Ashland is obligated to indemnify Southland for these costs, (2) any claim Southland had for cleanup costs fell under the waste-removal provision (section 11.15), which required that any claims for such costs be made before the Settlement Date, and (3) even assuming that section 9.01 provides Southland with a remedy of indemnification for investigation and subsequent cleanup costs, Southland did not make a legitimate claim before the Agreement's cutoff date for indemnification claims. Southland, in opposition, asserts that Ashland's construction of the contract is unsupported by the plain language of the Agreement.

The issues raised by Ashland's motion can be resolved through simple contract interpretation. [FN2] As noted in the court's October 6, 1988, opinion, New Jersey courts have determined that contract interpretation is a question of law for the court. *First Jersey Nat'l Bank v. Dome Petroleum Ltd.,* 723 F.2d 335, 339 (3d Cir.1983), *quoting Trucking Employees of North Jersey Welfare Fund v. Vrablick,* 177 N.J. Super. 142, 148 (App.Div.1980) ("The construction of a written agreement is ordinarily a matter for the court ..."). The court concerns itself only with the objective intent of the parties as manifested in the language of the agreement, in light of the surrounding circumstances. *Dome Petroleum Ltd. v. Employers Mut. Liability Ins. Co.,* 767 F.2d 43, 47 (3d Cir.1985). If the contractual language is clear and unambiguous, summary judgment may be entered "despite the parties' differing views as to what consequences flow from those clauses." *United*

*States v. Bills,* 639 F.Supp. 825, 829 (D.N.J.1986), *modified on other grounds,* 822 F.2d 373 (3d Cir.1987).

*3 Ashland's first contention, that the "as is, where is" clause contained in section 6.06 of the Agreement supersedes section 9.01's indemnification provision, is clearly without merit. Ashland argues that, pursuant to section 6.06, [FN3] Southland purchased the Great Meadows facility on an "as is, where is" basis and that this included risks for third-party liability arising out of the operation of the plant prior to Closing. To reach this conclusion, however, the court would have to completely ignore (as Ashland undoubtedly must) the fact that Ashland undertook an affirmative obligation to indemnify Southland for this liability in section 9.01 of the Agreement. To construe a writing properly, however, the writing must be interpreted as a whole, and its individual terms must be construed in conjunction with the other parts of that writing. *Barco Urban Renewal Corp. v. Housing Auth.,* 674 F.2d 1001, 1009 (3d Cir.1981); *Krosnowski v. Krosnowski,* 22 N.J. 376, 387 (1956). Acceptance of Ashland's interpretation would require the court to reach a result inconsistent with the remaining terms of the Agreement.

Ashland also argues that, to the extent that section 6.06 appears inconsistent with section 9.01, the "as is, where is" clause is the more specific of the two and thus controls this issue. The court notes that sections 6.06 and 9.01 are not necessarily inconsistent with each other; however, to the extent that they can be read as such, well-settled contract law principles require that where there is an inconsistency between a general provision and a more specific provision, the more specific clause will qualify and control the more general clause. *Standard Oil Dev. Co. Employees Union v. Esso Research & Eng'g Co.,* 38 N.J.Super. 106, 117, *sustained on reh'g,* 38 N.J.Super. 293 (App.Div.1955); *Maryland Casualty Co. v. Hansen-Jensen, Inc.,* 15 N.J.Super. 20, 26 (App.Div.1951). While Ashland is correct in its statement of the law, its application of the law to the Agreement in issue is faulty. Of the two provisions, the indemnification clause is the more specific and will control over the general disclaimer of warranty found in section 6.06.

Next, Ashland asserts that the claim made by

Southland for investigation and future cleanup costs fell exclusively under section 11.15 of the Agreement, which provides for removal of wastes from the facility. [FN4]  This argument is equally untenable.  The documents submitted evidence that it has always been Ashland's position that section 11.15 covered only the removal of above-ground drums of waste and did not encompass removal of underground waste material by excavation or correction of groundwater contamination.  *See* Lyon Affidavit ¶¶ 8-10, Attachments 2, 3.  In light of the Lyon Affidavit and the documents submitted in support thereof, the court finds Ashland's new position to the contrary to be one of convenience and remains unpersuaded by it.

Finally, Ashland contends that even if it assumed an independent contractual obligation to indemnify Southland for third-party claims, Southland's failure to submit a claim covered by section 9.01 during the two-year period following the Closing Date precludes Southland from recovering under a breach-of-contract claim.  Southland first contests the application of the two-year survival clause (section 11.03) to Ashland's contractual obligation, under section 9.01, to indemnify Southland, but argues, in the alternative, that even if the promise to indemnify expired two years after Closing, Southland submitted a timely notice of claim pursuant to sections 9.01 and 9.03 of the Agreement on April 25, 1980.

*4 Because the court has already determined that the two-year limitation imposed in section 11.03 applied to claims for indemnification under section 9.01, the only issue which remains to be decided is whether Southland's April 25, 1980, letter to Ashland constitutes a timely notice of a legitimate claim.

In pertinent part, section 9.01 provides:

Seller shall protect, defend ... indemnify, and save and hold harmless Buyer ... from and against any and all ... costs, expenses, damages, losses, obligations, lawsuits, claims, liabilities, fines or penalties ... resulting from Seller's acts, alleged acts, omissions, and alleged omissions before the Closing Date, including in each instance, but not limited to, all costs and expenses of investigating and defending any claim at any time arising and any final judgments, compromises, settlements and court

costs and attorney's fees, whether foreseen or not foreseen incurred by Buyer in connection with, arising out of, resulting from, relating to, or incident to:  (4) the ownership, use, maintenance, or operation of the Assets or the Great Meadows Business, and any action taken or omitted to be taken in connection with or relating thereto, which occurred or arose during or relates to, any period prior to the Closing.

Ashland maintains that the above clause was only intended to cover legal demands against Southland by some "third party" within two years of Closing and argues that the April 25, 1980, letter did not qualify as a claim based on a "legal demand," as it was no more than a notice of speculative injury to Southland based on Southland's belief that the NJDEP might possibly require something more of Southland in the future.

Ashland finds the April 25, 1980, letter defective in two respects.  First, Ashland states that it is not notice of a "third-party" claim as required by the terms of the Agreement.  Second, Ashland maintains that the "claim" against Southland does not qualify as a "legal demand" necessary to trigger indemnification.  The court disagrees.  Southland's notification to Ashland of the New Jersey Department of Environmental Protection's ("NJDEP") demand that a program of well monitoring be instituted at the plant to begin correction of an existinggroundwater-contamination problem constituted valid notice of a claim against Southland which fell within the scope of sections 9.01 and 9.03. [FN5]  As such it is sufficient to defeat Ashland's motion for summary judgment.

In reaching this result, it is unnecessary for the court to determine whether the scope of the indemnification clause is broad enough to encompass other than "third-party" claims.  Even if, as Ashland contends, section 9.01 limits indemnification to "third-party" claims, certainly the NJDEP, as a separate government agency, qualifies for the status of a third party.  Therefore, Ashland's construction of the Agreement with regard to this issue does little to advance its argument.

*5 The question of whether the indemnification clause required that formal "legal demand" be made before the right to indemnification arises is more

troublesome. Ashland cites two cases as authority in support of its contention that it does. Both, however, are easily distinguishable. In *Ultramar America Ltd. v. Dwelle,* No. 87-5731 (9th Cir. May 20, 1988), the court based its findings that the indemnitee was not entitled to indemnification for certain environmental claims on a much narrower indemnification provision. [FN6] The clause in *Ultramar* specified that the types of third-party claims for indemnity that may arise under the Agreement were those "arising out of any suit, action, claim or legal, administrative, arbitration or other proceeding or governmental investigation." Slip op. at 3.

Furthermore, the court found that the assessment costs incurred by the indemnitee in *Ultramar* were part of a state-wide program which required that an environmental assessment be performed at all dump sites in California. The record in *Ultramar* did not indicate that a particular problem existed at the facility in question, and the court found an absence of 3 evidence that the government agency indicated that the indemnitee would be responsible for the investigation costs incurred by the agency or any subsequent cleanup costs. Slip op. at 3-4.

Similarly, in *Jones v. Sun Carriers,* the only event which occurred before the cutoff date for indemnification claims in the parties' agreement was the notification by the Environmental Protection Agency ("EPA") to the indemnitee that its terminal might be dioxin contaminated. [FN7] 856 F.2d 1091, 1093 (8th Cir.1988). The indemnitee was not required to incur investigation costs, and the EPA did not confirm that a problem did exist requiring corrective action by the indemnitee until after the cutoff date in the contract. *Id.* At no time prior to the deadline was a demand made by the EPA that the indemnitee conduct an investigation or that the indemnitee would be responsible for any necessary cleanup costs.

In contrast, the language of the indemnification clause in the instant case is far broader. It does not limit Ashland's obligation to indemnify Southland to claims arising out of lawsuits, actions or other governmental proceedings. Instead, under the terms of section 9.01, Ashland is obligated to indemnify Southland "from and against any and all direct or indirect costs, expenses, damages, losses, obligations, lawsuits, claims, liabilities, fines, or

penalties ... including, but not limited to all costs and expenses of investigating and defending any claim at any time arising and any final judgment, compromises, settlements and court costs." The language of section 9.01 clearly does not restrict Ashland's indemnification obligation to claims arising out of formal lawsuits or governmental proceedings. Moreover, the NJDEP's mandate that Southland begin drilling wells to monitor groundwater contamination qualifies as a "legal" demand.

*6 There is nothing in the record which indicates that the investigation which the NJDEP required Southland to make was part of a routine state-wide program. Instead, the letter from the NJDEP to Ashland, dated October 19, 1977, just months before the sale of the plant, supports Southland's position that the well monitoring was required by the NJDEP because of a particular groundwater-contamination problem known to exist at the Great Meadows facility. *See* Plaintiff's Exh. 44. This liability for investigation costs incurred by Southland because of Ashland's "ownership, use, maintenance, or operation of ... the Great Meadows Business" is sufficient evidence of a third-party claim necessary to defeat Ashland's motion to dismiss Count Four in its entirety by way of summary judgment. [FN8]

Accordingly, for the reasons set forth above, Southland's motion for reargument is granted and, upon reconsideration, Ashland's motion for summary judgment dismissing Count Four is denied. An order accompanies this opinion. No costs.

FN1. Section 11.03 states:
All of the representations, warranties, promises and agreements shall survive the Closing for a period of two (2) years ... regardless of what investigations the parties may have made before the Closing.

FN2. A contract for indemnity is interpreted in accordance with the rules governing the construction of contracts. *Ramos v. Browning Ferris Indus., Inc.,* 103 N.J. 177, 191 (1986).

FN3. Section 6.06 provides:
THE ASSETS ARE SOLD ON AN "AS IS, WHERE IS" BASIS WITHOUT WARRANTY OR GUARANTEE AS TO QUALITY, CHARACTER, PERFORMANCE OR CONDITION, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OR

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1988 WL 125855
(Cite as: 1988 WL 125855, *6 (D.N.J.))

GUARANTEE OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

FN4. Section 11.15 provides:
On or before the Settlement Date, Buyer shall notify Seller of any waste material which, by bid from an independent third party shall cost $5000. or more to remove from the Premises, and Seller, within a reasonable time thereafter, shall remove same from the Premises at Seller's expense.

FN5. Section 9.03, in part, requires that:
Promptly after any claim shall arise, or after any party has actual knowledge of the facts constituting the basis for any claim, for which either party shall be entitled to indemnification hereunder, such party shall notify the other party. Such notice shall specify all facts giving rise to such indemnification and the amount or estimate of the liability therefrom.

FN6. The court notes that the *Ultramar* opinion, relied on by Ashland in this regard, is an unpublished decision, which does not have precedential value.

FN7. In fact, the letter from the EPA stated "To date, we have not investigated your property and therefore have no indication that any problem in fact exists there." In the present suit, the NJDEP was acting on a specific contamination problem at the Great Meadows plant the existence of which they already had established through prior sampling.

FN8. The court notes, however, that there is insufficient evidence in the record to support a factual finding that the NJDEP made a claim against Southland for the costs of any remedial action required by the investigation, during the two-year period following the Closing Date. If Southland is to prevail at trial on a theory of contractual liability for these cleanup costs, some factual showing must be made that the NJDEP informed Southland, prior to the expiration of the indemnification period, that it would be held responsible for these costs.

1988 WL 125855 (D.N.J.), 28 ERC 1813, 19 Envtl. L. Rep. 20,738

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## IN THE EASTERN DISTRICT OF PENNSYLVANIA

BOARHEAD FARM AGREEMENT GROUP,   :
                                 :

           Plaintiff,          :        CIVIL ACTION
                                 :

            v.             :        NO. 02-3830
                                 :

ADVANCED ENVIRONMENTAL       :
TECHNOLOGY CORPORATION, ET. AL.   :
                                 :

           Defendants.       :

### INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS OF PLAINTIFF BOARHEAD FARM AGREEMENT GROUP DIRECTED TO DEFENDANT ASHLAND CHEMICAL COMPANY

Pursuant to Federal Rules of Civil Procedure 33 and 34, Plaintiff Boarhead Farm Agreement Group ("Plaintiff"), by its undersigned counsel, hereby propounds on Defendant Ashland Chemical Company ("Ashland") these Interrogatories And Requests For Production Of Documents Of Plaintiff Boarhead Farm Agreement Group Directed To Defendant Ashland Chemical Company ("the Interrogatories").

## I.   DEFINITIONS

1.    The term "you," "your," or "your company," shall mean the addressee of the Interrogatories, the addressee's officers, managers, employees, trustees, successors, assigns and agents as well as any and all predecessor entities of the addressee entity including any entity purchased by the addressee and any division, group, subsidiary or section of the addressee entity.

2.    The term "facility" or "facilities" shall mean, unless the context of the request indicates otherwise, any plants, factories, warehouses, retail stores, laboratories, or other operations conducted by you.

3.    The term "the Site" shall mean the Boarhead Farms Superfund Site, which is located in Bridgeton Township, Bucks County, Pennsylvania.

4.    The term "hazardous substance" shall have the same definition as that contained in Section 101(14) of CERCLA and the New Jersey Spill Compensation and Control Act and includes any mixtures of such hazardous substances with any other substances, including petroleum products.

5.    The term "materials" shall mean all substances that have been generated, treated, stored, or disposed of or otherwise handled by respondent, including but not limited to all hazardous substances, pollutants and contaminants, hazardous waste, solid waste, liquid waste, volatile organic chemicals, polychlorinated bi-phenyls, metals, asbestos, sludges, paint, paint thinners, medical wastes, caustics, and acids.

6.    The term "identify" means, with respect to a natural person, to set forth, to the extent known, the person's name, present or last known business address and business telephone number, and present or last known job title, position or business.

7.    The term "identify" means, with respect to a corporation, partnership, business trust or other association or business entity (including a sole proprietorship) to set forth, to the extent known, its full name, present or last known address, legal form (e.g. corporation, partnership, etc.), organization, if any, and a brief description of its business.

8.    The term "identify" means, with respect to a document, to provide, to the extent known, the type of document; the general subject matter; the date of the document; author(s); addressee(s); and recipient(s).

9.    The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a).

10.    The terms "and" and "or" shall be construed either disjunctively or conjunctively as  necessary to bring within the scope of the Interrogatories any information which might otherwise be construed to be outside its scope.

11.    The term "waste" means any garbage, refuse, trash, scrap, sludge from a waste treatment plant (including sewage sludge), water supply treatment plant and air pollution control facility, and any other discarded material including but not limited to solid material, liquid material, semisolid material, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from residential, domestic and community activities.

12.    The term "waste stream" means the total volume of materials, including waste materials or residue, off-specification products, by-products, or disposed-of final products, created by a process or activity rather than the amount of hazardous constituents within a volume of material.

13.    The term "person" or "entity" includes but is not limited to an individual, partnership, corporation, other business association, governmental (including municipal) entity or agency or any other entity.

14.    The term "customer" or "customers" shall mean all persons (a) for and/or from whom you picked up or collected, caused to be picked up or collected, or arranged for pickup or collection of a waste for transport and/or disposal, (b) that provided any waste to you for transport to disposal or treatment facilities or sites, and/or (c) whose waste you transported or arranged for transport to disposal or treatment facilities.

15.    The terms "disposal," "arranged for," "transport," and "transporter" shall have the meanings of those terms under the federal Comprehensive Environmental Response, Compensation and Liability Act and Pennsylvania Hazardous Sites Cleanup Act.

16.     The term "employees" shall mean all of your present and former employees, shareholders, officers, managers, trustees, successors, assigns, contractors, and agents.

17.     The term "Transporter" shall mean any of the following persons or entities: Manfred DeRewal, Sr.; Bruce DeRewal; Manfred DeRewal, Jr.; Jeffrey Shaak; John Barsum; Richard Minthorn; Kenneth Gross; John Shuman; Joseph Sienkowski; Karen Bean; John Bean; Linda Cochran; Alex Imich; Marvin Jonas; Danny Rufe; DeRewal Chemical Co.; Boarhead Corporation; Environmental Chemical Control, Inc.; Revere Chemical Company; Revere Chemical Transport Company; Echo, Inc.; Marvin Jonas, Inc.; Jonas Waste Removal; Advanced Environmental Technology Corporation; Envirotech Co.; and/or any transporter that the party has reason to believe may have used the Site (collectively the "Transporters").

18.     The term "Relevant Time Period" means January 1, 1969 through and including December 31, 1977.

19.     The term "Case" shall mean <u>Boarhead Farm Agreement Group v. Advanced Environmental Technology Corporation, et al.</u>, Civil No. 02-3830 (E.D. Pa., filed June 18, 2002).

20.     The term "Great Meadows Facility" shall mean the facility operated by Ashland in Great Meadows, New Jersey during the Relevant Time Period.

21.     The term "Geographical Area" shall mean New York, New Jersey and Pennsylvania.

## II.    INSTRUCTIONS

1.     The singular includes the plural; the plural includes the singular. The masculine gender includes the feminine and neuter genders; and the neuter gender includes the masculine and feminine genders. "Each" shall be construed to include "every" and "every" shall be construed to include "each". "Any" shall be construed to include "all" and "all" shall be

construed to include "any". The use of a verb in any tense shall be construed as the use of the verb in a past or present tense, whenever necessary to bring within the scope of the Interrogatories all responses which might otherwise be construed to be outside its scope.

2.    Each interrogatory and request for production is a continuing one. If, after serving an answer to an interrogatory or a request for production, you obtain or become aware of any further information pertaining to such interrogatory or request for production, you are required to serve upon the attorneys for all parties an amended answer setting forth any and all such information.

3.    Identify any and all documents for which you claim any privilege and state with specificity the nature of the privilege.

## III.    **INTERROGATORIES**

INTERROGATORY NO. 1

Is it alleged in any document, including without limitation any document filed with the court or served on you in connection with the Case, or do you believe, have reason to believe, or surmise that:

(a)    Any direct shipments of materials were sent to the Site from any of your facilities?

(b)    Any indirect shipments of materials were sent to the Site from any of your facilities?

(c)    Any direct or indirect shipments of materials were transported from any of your facilities by a Transporter?

(d)    Any direct or indirect shipments of materials were transported to the Site from any of your facilities by a transporter not listed in the definition of "Transporter?"

(e)    There were other direct or indirect shipments of materials to the Site from any of your facilities which were not previously identified?

(f)    You, or any of your facilities, ever had any direct dealings with the Site or any person affiliated with the Site? If so, identify the persons involved, whether any contract or other documents exist and whether your company selected the Site as a disposal facility.

If you have answered "yes" to any of the above questions, identify the facility and the transporters or Transporters and all documents that refer to, relate to, support or contradict your response to this interrogatory and its subparts.


INTERROGATORY NO. 2

Identify every other facility owned, leased or operated by you, alone or in conjunction or joint venture with any other person, in the Geographical Area at any time during the Relevant Time Period, including:

(a)    The name and address of each such facility;

(b)    The time period(s) that you owned, leased or operated such facility;

(c)    Your predecessor at each such facility;

(d)    Your successor at each such facility;

(e)    A complete description of the types of manufacturing, storage and disposal activities that occurred at each such facility, including a description of the waste stream(s) generated at each facility;

(f)    A complete description of how the waste stream(s) generated at each such facility were disposed of, including the arrangements made for disposal of the waste; the identity

of any transporter(s) or Transporter(s) used to haul the waste; and the ultimate disposition of the waste.

INTERROGATORY NO. 3

With respect to the Great Meadows Facility and every other facility identified in response to Interrogatory No. 1 above, identify the following:

      (a)     Address;

      (b)     Distance of facility from the Site;

      (c)     Years you owned or operated the facility;

      (d)     Your predecessor at the facility;

      (e)     Your successor at the facility;

      (f)     Years your immediate predecessor and immediate successor owned or operated the facility;

      (g)     A complete description of the types of manufacturing, storage and disposal activities which occurred at the facility, including a description of each waste stream generated at the facility;

      (h)     Copies of all Federal, State and local permits that relate to any waste stream described above;

      (i)     The names of person(s) presently or formerly employed by you who have the most knowledge about the subject matter of the Interrogatories, and state the time period of employment and the positions held;

      (j)     The total number of employees at each facility during the relevant time period and a description of any personnel changes during the relevant time period;

(k)     Any documents, including without limitation, photographs, paintings, drawings, sketches, models and reproductions, that depict or purport to depict the exterior of the facility; and

(l)     All documents that refer to, relate to, support or contradict your response to this interrogatory and its subparts.

INTERROGATORY NO. 4

With respect to the Great Meadows Facility and every other facility identified in response to Interrogatory No. 1 above identify the person(s) responsible for the following positions, including the time period(s) during which the position was held:

(a)     Plant management;

(b)     Production management;

(c)     Purchasing;

(d)     Waste treatment, storage or disposal;

(e)     Maintenance;

(f)     Hiring waste disposal services;

(g)     Accounting, including without limitation accounts payable and accounts receivable;

(h)     Security;

(i)     Environmental affairs or environmental management; and

(j)     Worker Safety.

Identify all documents that refer to, relate to, support or contradict your response to this interrogatory and its subparts.

INTERROGATORY NO. 5

With respect to the Great Meadows Facility and every other facility identified in response to Interrogatory No. 1 above, identify any persons other than those identified in response to Interrogatory No. 4, who have, could have or could have had knowledge relating to the waste streams identified in response to Interrogatory No. 3(g), and state the position(s) they held and the time period(s) during which the position was held.  Identify all documents that refer to, relate to, support or contradict your response to this interrogatory.

INTERROGATORY NO. 6

With respect to the waste stream from the Great Meadows Facility and with respect to each waste stream referenced above in your response to interrogatory number 3(g) which you believe, have reason to believe or surmise was sent directly or indirectly to the Site or which is referenced in any document relating to the Site or which was handled by a Transporter, unless you can demonstrate that such waste stream handled by such Transporter was, in its entirety, taken directly to a site or sites other than the Site, state or provide a good faith estimate of:

        (a)     A complete description of the process creating the waste stream, noting any changes in the process that occurred during the Relevant Time Period and the points in the process where the waste stream was generated, and including, without limitation, the raw materials used and byproducts or off-spec material generated in the process that produced the waste stream and, if the composition of the raw material is not clearly identifiable from its name, provide material safety data sheets or equivalent documentation;

        (b)     The specific source, nature, formulation and constituents of each waste stream, including, without limitation, any constituent that, based on its mishandling, may have become part of a waste stream, the physical state of the waste stream (e.g., liquid, gas, solid,

semi-solid), the chemical content of the waste stream and the chemical, generic, trade, brand or other name for the waste.  If you contend that a constituent evaporated or was neutralized, the basis for this contention must be explained in full;

(c)     The amount of each waste stream produced per year during the Relevant Time Period;

(d)     The receptacle used to collect each waste stream including:  (1 ) a description of the receptacle, including without limitation each bin, box, drum, dumpster, tank, sump, catch basin, reactor, tanker, pipe, pit, ditch, roll off, bag, barrel and lagoon; (2)  the size of each receptacle; (3) the supplier of each receptacle (i.e., your company, or another person); (4) the location of each receptacle; and (5) the frequency at which each receptacle was emptied;

(e)     The equipment used to remove the waste from each receptacle including: (1) a description of the type of equipment; (2) the amount of waste the equipment removed or could remove; and (3) whether any equipment used to remove each waste stream was owned or operated by the facility or another person, and, if owned or operated by another person, the identity of that person.

Identify all documents that refer to, relate to, support or contradict your response to this interrogatory and its subparts.

## INTERROGATORY NO. 7

With respect to the waste stream from the Great Meadows Facility and with respect to each waste stream referenced in your response to Interrogatory No. 6, identify:

(a)     All entities who removed the contents of each receptacle identified in response to Interrogatory No. 6(d) above;

(b)    The time period(s) during which such entity removed the contents of each receptacle identified in response to Interrogatory No. 6(d) above;

(c)    The monthly and annual amount of the waste stream collected and how you calculated such amounts (e.g., if your waste was compacted, indicate when compaction began and ended and what compaction ratio was used or, if the density of the material was used to compute the amount, explain the density of the materials or, for liquids, the weight and density of liquids);

(d)    The location that you or any entity identified in response to Interrogatory No. 7(a) disposed of the waste stream or purported to dispose of the waste stream;

(e)    The price charged by any entity (other than yourself) identified in response to Interrogatory No. 7(a) for each drum, gallon, cubic yard, ton, pickup, etc. for each waste stream removed by the entity;

(f)    The source of the information set forth in response to Interrogatory No. 7 subparts (a)-(e) above;

(g)    Any process flow diagrams relating to each waste stream, including diagrams relating to any on-site process waste treatment facilities, that are in your possession, custody or control;

(h)    Any piping and instrumentation diagrams relating to each waste stream that are in your possession, custody or control;

(i)    Any sewer maps relating to each waste stream that are in your possession, custody or control;

(j)    Any site diagrams, maps or aerial photographs that are in your possession, custody or control; and

(k)    Any other documents that are in your possession, custody or control that relate to the constituents, volume, and/or treatment, storage or disposal of each waste stream and/or any documents that relate to any entity identified in response to question 7(a) above and/or any Transporter.

## INTERROGATORY NO. 8

With respect to the waste stream from the Great Meadows Facility and with respect to each waste stream described in response to Interrogatory No. 6, describe in complete detail any tests or analyses that were performed on the waste stream including:

(a)    the nature of the tests or analyses performed;

(b)    the date upon which such tests or analyses were performed;

(c)    the identity of the person(s) who performed such tests or analyses; and

(d)    the findings and conclusions of the tests and analyses.

Identify any such tests and analyses or, if the tests and analyses are unavailable, provide a good faith estimate of the chemical composition of the waste stream.

## INTERROGATORY NO. 9

Account for the disposal of the waste stream from the Great Meadows Facility and for the disposal of each waste stream set forth in response to Interrogatory No. 3(g).

(a)    If it is alleged in any document relating to the Site, including, without limitation, any document filed with the court or served on you in connection with the Case, or if you believe, have reason to believe, or surmise, that the waste was taken directly or indirectly to the Site, or that such waste was handled by a Transporter, state or provide a good faith estimate of:

  (1)  the date of each shipment and/or disposal;

  (2)  the volume or weight of each shipment; and

  (3)  the frequency of the disposal of each waste stream.

 (b)  If you contend that any waste stream was taken directly or indirectly to a site or sites other than the Site, state:

  (1)  the general location of the other site;

  (2)  the year(s) of disposal at the other site;

  (3)  the frequency of the disposal of each waste stream at the other site; and

  (4)  all facts upon which you base your contention.

Identify all documents that refer to, relate to, support or contradict your response to this interrogatory and its subparts.

## INTERROGATORY NO. 10

In answering Interrogatory No. 1 above, if you take the position that materials were directly or indirectly taken from any of your facilities but that you do not have any belief, reason to believe or surmise that such materials were transported to the Site, set forth all facts upon which you base that position and identify all documents that refer to, relate to, support or contradict your position.

## INTERROGATORY NO. 11

If it is alleged in any document relating to the Site, including without limitation any document filed with the court or served on you in connection with the Case, or if you believe, have reason to believe, or surmise, that a party will contend that you or a related entity is a

successor to an entity potentially liable at the Site, set forth all facts and theories upon which you

contend that you and/or the related entity are not a successor and provide:

      (a)    your views on the applicable federal and state law;

      (b)    what cases you are relying upon primarily that support your position;

      (c)    the facts relevant to the eight factor analysis used for the substantial

continuity of enterprise doctrine;

      (d)    your knowledge regarding the existence of environmental liabilities of the

alleged predecessor at the time of the pertinent transaction;

      (e)    whether the alleged predecessor survived;

      (f)    what consideration was given to the alleged predecessor;

      (g)    a copy of the relevant contracts involved;

      (h)    information on whether use of the Site continued after the pertinent

transaction;

      (i)    how the alleged successor advised the customers of the alleged

predecessor of the transaction and of the alleged successor's status;

      (j)    what liabilities, if any, were assumed; and

      (k)    any other information that you deem pertinent to the issue of successor

liability.

## INTERROGATORY NO. 12

Were any solvents used in connection with the operation and/or maintenance of

equipment or machinery or the buildings at the Great Meadows Facility or other facilities

identified in response to Interrogatory No. 1 above?  If so, state or provide a good faith estimate

of:

(a)    how any such materials were disposed of during the Relevant Time

Period, including a description of on-site accumulation and transporters utilized;

(b)    where any such materials were ultimately disposed of or were purportedly

disposed of during the Relevant Time Period; and

(c)    the monthly and annual volume of the waste stream comprised of such

materials during the Relevant Time Period.

Identify all documents that refer to, relate to, support or contradict your response to this

interrogatory and its subparts.


INTERROGATORY NO. 13

If the Great Meadows Facility or any other facilities identified in response to

Interrogatory No. 1 contained one or more laboratories during the Relevant Time Period,

identify:

(a)    any chemicals or other materials used or stored therein during the

Relevant Time Period;

(b)    the types of containers any such chemicals or other materials were shipped

in during the Relevant Time Period;

(c)    how and where these containers were disposed of or were purportedly

disposed of during the Relevant Time Period;

(d)    the type and quantity of wastes generated by the laboratory during the

Relevant Time Period; and

(e)    how and where such wastes were disposed of or were purportedly

disposed of during the Relevant Time Period.

INTERROGATORY NO. 14

If the Great Meadows Facility or other facilities identified in response to Interrogatory No. 1 conducted building maintenance, including without limitation repair of fixtures, buildings, heating and ventilation systems, furnaces, incinerators, tanks, plumbing or electrical systems, provide a description of any such activities and identify the following:

(a)    the type and quantity of wastes generated as a result of such activities during the relevant time period; and

(b)    how and where such wastes were disposed of or were purportedly disposed of during the Relevant Time Period.

INTERROGATORY NO. 15

If the Great Meadows Facility or other facilities identified in response to Interrogatory No. 1 incinerated any of its wastes, identify the following:

(a)    the type and quantity of wastes that were incinerated during the Relevant Time Period;

(b)    the location where waste was incinerated during the Relevant Time Period;

(c)    any protocol or instructions regarding which wastes were to be incinerated; and

(d)    the person(s) who performed any such incineration during the Relevant Time Period.

INTERROGATORY NO. 16

If automotive maintenance and/or repair work occurred at the Great Meadows Facility or other facilities identified in response to Interrogatory No. 1 above, describe such activities and identify the following with respect to such activities:

      (a)     the type and quantity of wastes generated in connection with such activities during the Relevant Time Period; and

      (b)     how and where such wastes were disposed of or were purportedly disposed of during the Relevant Time Period.

## INTERROGATORY NO. 17

Describe your record retention policy. If you contend that any documents relating to the Site, other than those identified or described in responses to the previous interrogatories, are no longer available, explain your reasons for this lack of documents and include the specific date that any documents were destroyed or lost. The following documents shall be specifically provided for the Great Meadows Facility and every other facility identified in response to Interrogatory No. 1 above: Annual Business Reports, Industrial Waste Survey responses, Annual Waste Generating Plant Reports, Eckhardt Report Waste Disposal Site Survey responses, Waste Collector or Hauler Annual Certification Applications/Registration Statements, Accounts Payable and bills of lading as they relate to waste treatment, storage, transportation and disposal.

## INTERROGATORY NO. 18

Describe all contacts and/or communications that occurred between you and Advanced Environmental Technology Corporation ("AETC"), or any employee, representative or agent of AETC, including, without limitation, the date, location, reason for and substance of any such

contact and/or communication, and identify, with respect to each such contact and/or communication:

      (a)    the persons involved; and

      (b)    all documents that refer to, relate to, support or contradict your response to this interrogatory and its subparts.

## INTERROGATORY NO. 19

Describe the actions you took to perform a diligent investigation to respond to the Interrogatories and to make your good faith estimates and statements, and identify:

      (a)    All persons interviewed with a brief summary of all information you obtained during the interview;

      (b)    All persons who may or should have knowledge that could be used to answer any of the Interrogatories but who were not interviewed and state the reason that no interview was conducted;

      (c)    All categories of documents reviewed in responding to this interrogatory and its subparts;

      (d)    All documents which may be relevant to answering this interrogatory and its subparts but which were not reviewed and state the reason that the documents were not available; and

      (e)    Any person interviewed whose knowledge is inconsistent with that of the other person(s) interviewed and state the inconsistency and explain why information from this person was accepted, rejected or modified in light of information from other sources, and identify such other sources.

## IV.    DOCUMENT REQUESTS

1.   All documents requested to be identified in the Interrogatories.

2.   All other documents referring or relating to wastes from the Great Meadows Facility or from any other facility which were sent or which you believe, have reason to believe or surmise may have been sent directly or indirectly to the Site.

Dated:  June 21, 2004

_____

Glenn A. Harris, Esquire
Attorney No. 51222
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
Plaza 1000, Suite 500, Main Street
Voorhees, NJ 08043
Phone:  (856)761-3400
Attorneys for Plaintiff Boarhead Farm
Agreement Group

## CERTIFICATE OF SERVICE

I, Glenn A. Harris, do hereby certify that on this date I caused a true and correct copy of

the foregoing Interrogatories and Requests for Production of Documents of Plaintiff Boarhead

Farm Agreement Group Directed to Defendant Ashland Chemical Company to be served via first

class mail, postage prepaid, upon the parties on the attached service list.


Dated: June 21, 2004

_____
Glenn A. Harris, Esquire

# EXHIBIT C

LAW OFFICES

# BALLARD SPAHR ANDREWS & INGERSOLL, LLP

1735 MARKET STREET, 51st FLOOR
PHILADELPHIA, PENNSYLVANIA 19103-7599
215-665-8500
FAX: 215-864-8999
WWW.BALLARDSPAHR.COM

BALTIMORE, MD
DENVER, CO
SALT LAKE CITY, UT
VOORHEES, NJ
WASHINGTON, DC

MONIQUE M. MOONEY
DIRECT DIAL: 215-864-8189
PERSONAL FAX: 215-864-9266
MOONEY@BALLARDSPAHR.COM

September 3, 2004

**By Facsimile and U.S. Mail**

Richard C. Biedrzycki, Esquire
Phelan, Pettit & Biedrzycki
121 South Broad Street
Suite 1600
Philadelphia, PA 19107

> Re:   Boarhead Farm Agreement Group v. Advanced Environmental
> Technology Corporation, et al., No. 02-3830

Dear Richard:

This letter concerns deficiencies we have identified in Ashland Chemical Company's ("Ashland") Answers and Objections of Defendant Ashland Inc. to Plaintiff's Interrogatories and Request for Production of Documents of Plaintiff Boarhead Farm Agreement Group ("Ashland Response").

## Objections

The Ashland Response is deficient insofar as Ashland has unjustifiably and unfairly limited the scope of its responses to Interrogatories and Requests for Production of Documents of Plaintiff Boarhead Farm Agreement Group Directed to Defendant Ashland Chemical Company ("Plaintiff's Discovery Request") to the Ashland facility located in Great Meadows, New Jersey ("Great Meadows Facility").

In Definition No. 21 of Plaintiff's Discovery Request, Plaintiff Boarhead Farm Agreement Group ("BFAG") defines the term "Geographical Area" to include New York, New Jersey and Pennsylvania, the areas serviced by DeRewal Chemical Company ("DCC"). Definition No. 18 of the Ashland Response objects to Plaintiff's definition of "Geographical Area" and states that it will answer Plaintiff's Discovery Request with respect to the Great Meadows Facility only. Insofar as Ashland acknowledges that DCC transported Ashland waste (*see, e.g.,* Ashland's responses to Interrogatory Nos. 9 and 10 of Plaintiff's Discovery Request), interrogatories that seek to ascertain whether Ashland had any other facilities in the

PHL_A #1915564 v2

Richard C. Biedrzycki, Esquire
September 3, 2004
Page 2

Geographical Area serviced by DCC during the Relevant Time Period, and that seek information regarding operations at, and waste streams generated by, any such facilities, are reasonably calculated to lead to the discovery of admissible evidence. Furthermore, to the extent operations at other Ashland facilities could shed light on operations at the facilities admittedly serviced by DCC, these interrogatories fall within the scope of permissible discovery. Accordingly, by limiting the scope of the Ashland Response to the Great Meadows Facility only, Ashland has unjustifiably and unfairly failed to provide adequate responses to the following interrogatories, to which information Plaintiff is entitled: (a) Interrogatory No. 1 and its subparts request information concerning any Ashland facility that Ashland believes or surmises may have had a nexus to the Boarhead Farms Site ("Site"). By answering with respect to the Great Meadows Facility only, Ashland has failed to respond fully to this interrogatory; (b) Interrogatory No. 2 and its subparts request information concerning every Ashland facility in the Geographical Area. By answering with respect to the Great Meadows Facility only, Ashland has failed to respond fully to this interrogatory; (c) Interrogatory Nos. 3-5 request information regarding any facilities Ashland has identified in response to Interrogatory No. 1. To the extent Ashland's revised response to Interrogatory No. 1 identifies facilities other than the Great Meadows Facility, Ashland's responses to Interrogatory Nos. 3-5 should be supplemented to incorporate any such newly identified facilities.

Ashland Objection Nos. 13 and 17 and its "general statement" read collectively state that Ashland has undertaken an investigation only of those persons currently employed by it and a search for documents in its sole possession. Ashland has a duty under Fed. R. Civ. P. 26(g) to make a "reasonable inquiry" to determine information known to it and documents within its possession, custody, or control. With respect to documents, this means that Ashland has a duty to determine whether there are documents in its own possession or in the possession of its attorneys or former attorneys, any of which are expected to have possession of responsive documents. Ashland's response gives no indication that Ashland has done so. Ashland should either withdraw these objections or state in writing the steps it took to conduct its "reasonable inquiry."

Ashland Objection Nos. 15, 19, and 20 fairly read state that Ashland believes it has no obligation whatsoever to investigate or respond to discovery requests with respect to the waste streams from the Great Meadows Facility, has no obligation to provide any information whatsoever about that facility outside of the eight month time period in late 1976 and early 1977, and that plaintiff's discovery request are fatally deficient because they do not provide "notice" as to any specific waste streams relevant to this action. There is substantial testimonial and documentary evidence in this matter that Ashland arranged with AETC for the removal of several different wastes from its Great Meadows facility and that DCC removed substantial amounts of these wastes as part of DCC's agreement with AETC. Any documents or information in Ashland's possession, custody, or control, or information within its corporate knowledge either relevant to the quantities and nature of those wastes or that might lead to the discovery of such relevant evidence, is discoverable. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. All of the



Richard C. Biedrzycki, Esquire
September 3, 2004
Page 3

information sought in Plaintiffs' Discovery Request concerning Ashland's Great Meadows
Facility, including the various waste streams from that facility, the various processes that created
those waste streams, etc., including such information applicable to the facility for several years
prior to and several years after the time of the eight month period, is discoverable. Ashland's
response to each applicable discovery request must be supplemented accordingly and these
meritless objections withdrawn.

### Interrogatories

Ashland's response to Interrogatory No. 1 is also deficient because it fails to
answer directly the questions posed. Interrogatory No. 1 asks Ashland to state whether any
document alleges or whether Ashland believes, has reason to believe, or surmises that its
materials were sent to the Site or transported by a Transporter, or any of its facilities had dealings
with the Site. Insofar as Ashland knows, beyond a doubt, that DCC transported waste from its
Great Meadows Facility, the direct answer to this interrogatory is "Yes." However, rather than
respond directly to these queries, Ashland couches its answer in terms of whether it "has
information" concerning the question at issue, thereby unfairly limiting the scope of its response
to Interrogatory No. 1.

Ashland states, in response to Interrogatory No. 6, that the interrogatory is
inapplicable since Ashland "does not believe or have reason to believe or surmise that any
wastes from its Great Meadows, New Jersey facility or from any other Ashland facility were
sent...to the Site." This response is deficient and contradicted by Ashland's own responses to
other interrogatories. Interrogatory No. 6 asks Ashland for detailed information "with respect to
the waste stream **from the Great Meadows Facility...or which was handled by a
Transporter...**" As described above, Ashland admits that DCC transported its waste stream
from the Great Meadows Facility during the Relevant Time Period. Therefore, Interrogatory No.
6 is applicable and is reasonably calculated to lead to the discovery of admissible evidence.
Accordingly, Plaintiff is entitled to a substantive response to Interrogatory No. 6 and its subparts.

Collectively, Interrogatories 6-9 seek information pertaining to waste streams
generated at Ashland facilities, at least one of which, the Great Meadows Facility, Ashland
admits DCC serviced. Pursuant to the same reasoning outlined above with respect to
Interrogatory No. 6, Interrogatory Nos. 7, 8, and 9 are also applicable to Ashland and reasonably
calculated to lead to the discovery of admissible evidence. Therefore, to the extent Interrogatory
Nos. 7-9 pertain to the Great Meadows Facility and/or are premised on the information Ashland
provides in response to Interrogatory No. 6, Plaintiff requests that Ashland provide substantive
responses to these interrogatories as well.

### Document Requests

Document Request No. 1 asks Ashland to provide all documents requested to be
identified in the Interrogatories. Although Ashland identifies documents in response to a number
of different interrogatories, Ashland provided no documents in connection with the Ashland

Richard C. Biedrzycki, Esquire
September 3, 2004
Page 4

Response.  Plaintiff is entitled to all documents Ashland identified in response to the interrogatories including, but not limited to, the following:

In response to Interrogatory No. 10, Ashland refers to a number of different categories of documents, including testimony of Arthur Curley and William Charles Olasin in another CERCLA action.  Plaintiff requests that Ashland provide copies of this former testimony and all other documents referenced in its response to Interrogatory No. 10.

In response to Interrogatory No. 13, Ashland states that it "has provided and is providing all information and documents in its possession or control" regarding wastes DCC transported from the Great Meadows Facility during the Relevant Time Period.  Insofar as Ashland failed to append any documents to the Ashland Response, Plaintiffs request that Ashland admit that it has provided no new documents in response to Plaintiff's Discovery Request.  Notwithstanding this, BFAG is entitled to all documents identified in Ashland's amended responses to Plaintiff's Discovery Request, including, but not limited to, all documents concerning waste streams generated at the Great Meadows Facility and any other facility Ashland subsequently identifies.

I will await your prompt response.

Very truly yours,

Menique Mooney, Enquire

cc:     Attorneys on Attached List

Thomas W. Sabino, Esquire
Wolff & Samson, PC
280 Corporate Center
5 Becker Farm Road
Roseland, New Jersey  07068-1776

-and-

Robert M. Morris, Esquire
Morris & Adelman, P.C.
1920 Chestnut Street
P.O. Box 30477
Philadelphia, PA  19103
*Advanced Environmental Technology Corp.*

Melissa Flax, Esquire
Carella, Byrne, Bain, Gilfillian, Cecchi,
Stewart & Olstein, P.C.
5 Becker Farm Road
Roseland, New Jersey  07068-1739
*Handy & Harman Tube Company*

Lynn Wright, Esquire
Edwards & Angell, LLP
750 Lexington Avenue
New York, New York  10022-1200
*Carpenter Technology Corporation*

Seth v.d.H. Cooley, Esquire
Duane Morris LLP
Suite 4200, One Liberty Place
Philadelphia, PA  19103-7396
*Flexible Circuits & Etched Circuits*

-and-

A. Nicole Friant, Esquire
Duane Morris LLP
One Liberty Place
Suite 4200
Philadelphia, PA  19103-7396

Stephen P. Chawaga, Esquire
Monteverde, McAlee & Hurd
One Penn Center at Suburban Station
Suite 1500
1617 John F. Kennedy Boulevard
Philadelphia, PA  19103-1815
*Merit Metals Products Corp.*

Andrew P. Foster, Esquire
Drinker, Biddle & Reath, LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA  19103-6996
*Rahns Specialty Metals, Inc.
Techalloy Co., Inc. & Thomas & Betts
Corporation*

Adina Marie Dziuk, Esquire
Drinker Biddle & Reath LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA  19103-6996

Edward Fackenthal, Esquire
Henderson, Weitherill, O'Hey & Horsey
Suite 902 - One Montgomery Plaza
P.O. Box 751
Norristown, PA  19404
Stephen P. Chawaga, Esquire

# EXHIBIT D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BOARHEAD FARM AGREEMENT GROUP, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 02-3830 |
| | : | |
| ADVANCED ENVIRONMENTAL | : | |
| TECHNOLOGY CORPORATION, et al., | : | |
| | : | |
| Defendants | : | |

### ANSWERS AND OBJECTIONS OF DEFENDANT ASHLAND INC. TO PLAINTIFF'S INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS OF PLAINTIFF BOARHEAD FARM AGREEMENT GROUP

Defendant Ashland Inc., designated by Plaintiff as Ashland Chemical Company (hereinafter "Ashland"), by and through its undersigned counsel, hereby responds to Plaintiff's Interrogatories and Request for Production of Documents directed to Ashland.

Ashland's specific objections to each of Plaintiff's Interrogatories are in addition to the general limitations and objections set forth in the following General Objections and General Statement, which limitations and objections form a part of the response to each and every Interrogatory. These General Objections are not waived, limited, or restricted by any of the more specific responses or objections to any particular Interrogatory.

## GENERAL OBJECTIONS

1.    Defendant objects to Plaintiff's Definitions, Instructions, and Discovery Requests to the extent that they seek information prepared in anticipation of litigation or in preparation for trial or are protected by the attorney-client privilege, the attorney work product doctrine, the joint defense privilege or other applicable privileges and immunities, or seek conclusions as to the legal significance or meaning of a term or phrase which is not properly the subject of discovery.

2.    Defendant objects to each and every one of Plaintiff's Discovery Requests to the extent that each seeks information that is not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence. Defendant expressly reserves the right to object to the introduction into evidence at trial, or upon the record at any stage of this litigation, of information or documents subject to any objection contained herein which have been produced inadvertently. By responding to these Discovery Requests, Defendant does not concede the relevance or admissibility of the information requested nor do they adopt Plaintiff's legal characterizations of terms and words used herein.

3.    Defendant objects to Plaintiff's Discovery Requests to the extent that they are overly broad, vague, ambiguous, unduly burdensome, duplicative and/or seek information which is irrelevant or inadmissible, including evidence of subsequent remedial measures, and/or are not reasonably calculated to lead to the discovery of admissible evidence, and/or seek information not identified with reasonable particularity.

4.    Defendant objects to Plaintiff's Discovery Requests to the extent that they seek information already known to Plaintiff, or seek documents equally accessible to Plaintiff or already in Plaintiff's possession, custody or control, or to the extent that they are related to or require the production or identification of documents, writings, records, or publications in the public domain since such information is equally available to Plaintiff.

5.    Defendant objects to Plaintiff's Discovery Requests to the extent that they seek confidential, proprietary, trade secret, financial or commercially sensitive business information.

6.    Defendant objects to these Discovery Requests to the extent they seek to discover "all" information, documents, identification of individuals or entities, or other materials or information as overly broad, unduly burdensome, onerous, vexatious, unreasonably cumulative and duplicative, not susceptible to reasonable limitation and unduly vague and ambiguous.

7.    Defendant objects to Plaintiff's Discovery Requests to the extent that they seek information beyond the permissible scope of discovery.

8.    Defendant reserves the right to produce additional information and documents and to assert additional objections if and when additional information or documents become available.

9.    Defendant will respond to Plaintiff's Discovery Requests subject to, without intending to waive, and expressly reserving, any objections as to competency, relevancy, materiality, privilege and admissibility of any information and documents produced herein.

2

10.     Defendant objects to the Definitions and Instructions set forth by Plaintiff and to any of Plaintiff's Discovery Requests to the extent that they seek to alter or exceed the scope of the obligations placed on Defendant by the applicable Rules of Court, applicable law, or orders of this Court, including any obligations Defendant may have to supplement or amend its answers.

11.     Defendant objects to Plaintiff's instructions as being unduly burdensome and onerous, overly broad and all-inclusive and as requiring Defendant to undertake an unreasonable investigation.

12.     Defendant objects to Plaintiff's definition of the term "document" to the extent that it seeks to include information or material protected by the attorney-client privilege, the work product doctrine, the joint defense privilege, confidential commercial information or information made confidential by law or which reflects trade secrets.  In addition, Defendant objects to the definition as overly broad and unduly burdensome to the extent that it seeks to include any material not prepared and maintained by Ashland in the ordinary course of business.

13.     Defendant objects to the definition of "Defendant," "you," and "your" to the extent that Plaintiff seeks information as to any acts, omissions or knowledge of any person or entity other than Defendant Ashland Inc. as overly broad, unduly burdensome, oppressive, irrelevant, outside the permissible scope of discovery and as requiring Defendant to undertake an unreasonable investigation.  Responses will be provided for and by Ashland Inc. only and will be based upon information known and reasonably available to Ashland.

14.     Defendant objects to Plaintiff's definition of the terms "facility" and "facilities" to the extent that Plaintiff seeks information relative to any Ashland facility other than the Great Meadows, New Jersey facility, the only facility from which Ashland wastes are alleged to have been transported to the Boarhead Farms Site.

15.     Defendant objects to the definition of the terms "materials" and "waste stream" to the extent that such term is meant to include substances other than non-solid waste materials allegedly transported from Ashland's Great Meadows, New Jersey facility to the Boarhead Farms Site.

16.     Defendant objects to the definition of the term "hazardous substance" as inclusive of any definition of that term under the New Jersey Spill Compensation and Control Act as overbroad, irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence insofar as there is no allegation made by Plaintiff pursuant to that Act.

17.     Defendant objects to the definition of the term "employees" to the extent that Plaintiff seeks information as to any person or persons other than persons who were employed by Ashland during the relevant time period as being overly broad, unduly burdensome, oppressive, irrelevant, outside the scope of permissible discovery and as requiring Defendant to undertake an unreasonable investigation.

3

18.     Defendant objects to the definition of the term "Geographic Area" as overly broad, unduly burdensome, oppressive, irrelevant, outside the permissible scope of discovery and as requiring Defendant to undertake an unreasonable investigation.  Defendant's answers shall be limited to its Great Meadows, New Jersey facility and the Boarhead Farms and Philadelphia facilities owned and/or operated by the Boarhead Corporation, DeRewal Chemical Company and/or Environmental Chemical Control, the only facilities from which and to which Ashland's hazardous wastes were allegedly transported.

19.     Ashland objects to these Discovery Requests to the extent that they seek information or documents relating to periods of time that are not at issue as to Ashland, i.e., time periods other than August, 1976 through March, 1977 during which DeRewal Chemical Company allegedly transported wastes from Ashland's Great Meadows, N.J. facility.  To the extent that Plaintiff's Discovery Requests seek information relative to other periods of time, they are overbroad, burdensome, onerous, irrelevant, vexatious and not reasonably calculated to lead to the discovery of material and admissible evidence.

20.     Defendant objects to each Discovery Request as improper and premature in that Plaintiff's Third Amended Complaint does not comply with the basic requirements of the Federal Rules of Civil Procedure regarding pleadings and does not provide Ashland with any notice as to what wastes of Ashland are alleged to have been disposed of at the Boarhead Farms Site, from what plant(s) such wastes are alleged to have come, or on what date(s) any transporters are alleged to have deposited any of Ashland's wastes at the Boarhead Farms Site.  Defendant further objects in that Plaintiff's initial disclosures totally fail to cure these defects or to provide a sufficient nexus between Ashland and the Boarhead Farms Site, thereby making all of Plaintiff's Discovery Requests an improper fishing expedition.

21.     Defendant objects to each Discovery Request to the extent that it is duplicative and unreasonably cumulative of prior discovery and disclosures, including Court-ordered nexus discovery, and thus such Discovery Requests are unduly burdensome, oppressive and will cause unnecessary and undue burden and expense to Defendant.

22.     Defendant objects to these Discovery Requests to the extent that they seek information regarding events, transactions or communication having no known nexus to the Boarhead Farms Site and/or DeRewal Chemical Company and thus are on their face irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

23.     To the extent that the information requested could be more readily obtained during the depositions of individuals whose depositions have already been or are expected to be scheduled, Defendant objects to Plaintiff's Discovery Requests as unduly burdensome, redundant and harassing.

24.     Defendant objects to each Discovery Request on the grounds of vagueness and over-breadth to the extent that Plaintiff has not provided definitions of key operative terms or phrases and has otherwise failed to delineate the scope or meaning of each Discovery Request to elicit relevant discoverable information or documents, all of which Discovery Requests would therefore require Defendant to guess as to the information and/or documents sought.

4

25.    Defendant objects to each Discovery Request to the extent that it assumes that any of the allegations set forth in the Third Amended Complaint are true.

26.    Ashland reserves the right to seek a Protective Order regarding any additional information and/or documents sought by Plaintiff and not produced herewith.

27.    Ashland will respond to Plaintiff's Discovery Requests subject to, without intending to waive, and expressly reserving, any objections as to competency, relevancy, materiality, privilege and admissibility of any information and documents produced herein.

28.    Ashland hereby incorporates by reference these General Objections into each specific response to Plaintiff's Discovery Requests.

29.    By responding to these Discovery Requests, Ashland does not waive and, in fact, preserves its objections to personal and subject matter jurisdiction over it in this action and its defenses to said action, including any which have been or may be raised by way of Motion or Answer.

30.    Defendant objects to any request for information or documents to the extent that it seeks the disclosure of attorney work product and/or the mental impressions, conclusions, strategy, opinions, legal research or legal theories of Ashland's counsel or other representatives of Ashland concerning this lawsuit which is privileged and protected from discovery.

31.    Ashland objects to any Discovery Request seeking information or documents "regarding," "referring" or "relating to" any entity or subject matter on the grounds that such request does not specify with reasonable particularity the information and documents sought.

## GENERAL STATEMENT

Ashland has made reasonably due and diligent efforts to research documents and data and to discuss with known current employees the subject matter of the present lawsuit. Further, Ashland and its attorneys have not completed their discovery and investigation in preparation for trial, nor have they concluded their analyses of information gathered to date. These responses, therefore, are based upon information presently available to Ashland and its attorneys and specifically known to the individuals who are preparing these responses.

The within responses are made without prejudice to the rights of Ashland to produce evidence at the time of trial. Ashland will update and supplement its answers as required by the Federal Rules of Civil Procedure if additional information becomes available.

## RESPONSES TO INTERROGATORIES AND
## REQUESTS FOR PRODUCTION OF DOCUMENTS

### INTERROGATORY NO. 1

Is it alleged in any document, including without limitation any document filed with the court or served on you in connection with the Case, or do you believe, have reason to believe, or surmise that:

**ANSWER:**

Objection. To the extent that this Discovery Request seeks information as to documents and/or select portions of the contents, terms and/or conditions purportedly set forth in any such documents which have not been attached as exhibits to this Discovery Request or otherwise specifically identified in a manner sufficient to enable Defendant to determine to which documents Plaintiff may be referring, it is objected to as unduly vague, speculative, irrelevant, overbroad, unduly burdensome, oppressive, immaterial and not reasonably calculated to lead to the discovery of admissible evidence. By way of further objection, to the extent that this Discovery Request seeks information regarding certain contents, terms and/or conditions purportedly set forth in a document, such document, being in writing, speaks for itself and the characterizations, paraphrasing and selection of certain terms and conditions thereof by Plaintiff is improper and objectionable. By way of further objection, this Discovery Request improperly seeks information as to one or matters which constitute attorney work product which is privileged and protected from discovery, including legal analyses, opinions or conclusions rather than statements or opinions of fact or the application of law to fact. Without waiving its objections, and subject thereto, Ashland answers as follows:

(a)    Any direct shipments of materials were sent to the Site from any of your facilities?

**Without waiving its objections, and subject thereto, Ashland has no information that any direct shipments were sent to the Boarhead Farms Site from its Great Meadows, New Jersey facility or from any of its other facilities during the relevant time period.**

(b)    Any indirect shipments of materials were sent to the Site from any of your facilities?

**Without waiving its objections, and subject thereto, Ashland has no information that any indirect shipments were sent to the Boarhead Farms Site from its Great Meadows, New Jersey facility or from any of its other facilities during the relevant time period.**

(c)    Any direct or indirect shipments of materials were transported from any of your

facilities by a Transporter?

**Objection. Ashland objects to this Interrogatory as irrelevant and immaterial and as requiring Ashland to conduct an unreasonable investigation and to incur undue and unnecessary expense insofar as it seeks information regarding shipments from any Ashland facility other than its Great Meadows, New Jersey facility to any facilities other than the Boarhead Farms Site. Without waiving its objections, and subject thereto, Ashland states that it has no information that any direct or indirect shipments of wastes were transported from its Great Meadows, New Jersey facility to the Boarhead Farms Site by any Transporter. However, AETC and/or DeRewal Chemical Company, as well as other Transporters, hauled waste from Ashland's Great Meadows facility in Great Meadows, New Jersey during various times during the mid to late 1970s time period. Ashland has no evidence that DeRewal Chemical Company hauled or otherwise handled any waste from Ashland's Great Meadows facility prior to August of 1976 or after April of 1977.**

(d)    Any direct or indirect shipments of materials were transported to the Site from any

of your facilities by a transporter not listed in the definition of "Transporter?"

**See above Answer to Interrogatory no. 1(c).**

(e)    There were other direct or indirect shipments of materials to the Site from any of

your facilities which were not previously identified?

**Without waiving its objections, and subject thereto, Ashland has no information that any Ashland materials were transported to the Site from its Great Meadows, New Jersey facility or from any of its other facilities.**

(f)    You, or any of your facilities, ever had any direct dealings with the Site or any

person affiliated with the Site? If so, identify the persons involved, whether any contract or other

documents exist and whether your company selected the Site as a disposal facility.

**Ashland objects to the term "direct dealings with the Site or any person affiliated with the Site" as unduly vague and ambiguous and as thereby requiring Ashland to conduct an unreasonable investigation and to guess as to the meaning and scope of the information sought by Plaintiff.**

**Without waiving its objections, and subject thereto, Ashland has no information or knowledge that it generated, transported or arranged for the transportation of any hazardous waste from any of its facilities to the Boarhead Site. Furthermore, one or more**

7

employees of Ashland, primarily Arthur T. Curley, did have meetings and conversations with representatives of DeRewal Chemical Company and/or its related companies, including Environmental Chemical Control Company, during the relevant time period relating to the transportation, treatment and disposal of certain spent acid wastes from Ashland's Great Meadows facility to Environmental Chemical Control Company's facility in Philadelphia known as the "Wissinoming facility." These meetings included discussions regarding an accidental spill of acid waste at the Boarhead Farms Site, which acid waste Manfred DeRewal informed Ashland came from Ciba-Geigy, not Ashland. Information concerning such "dealings" is set forth in the documents previously produced by Ashland as part of its initial disclosures and/or its 104(e) responses. Ashland did not select the Boarhead Farms Site as a disposal facility for any Ashland wastes and therefore Ashland has no contracts or other documents relative thereto. Also, insofar as Ashland is not aware of any allegations or information that any wastes from Ashland's Great Meadows facility were transported, directly or indirectly, to the Wissinoming facility by any transporters other than AETC and/or DeRewal Chemical Company, Ashland further objects to this Interrogatory insofar as it seeks information as to any other transporters of Ashland's wastes as irrelevant, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

If you have answered "yes" to any of the above questions, identify the facility and the transporters or Transporters and all documents that refer to, relate to, support or contradict your response to this interrogatory and its subparts.

ANSWER:

See above Answers and Objections to subpart "(f)" of this Interrogatory.

INTERROGATORY NO. 2

Identify every other facility owned, leased or operated by you, alone or in conjunction or joint venture with any other person, in the Geographical Area at any time during the Relevant Time Period, including:

(a)    The name and address of each such facility;

(b)    The time period(s) that you owned, leased or operated such facility;

(c)    Your predecessor at each such facility;

(d)    Your successor at each such facility;

(e)    A complete description of the types of manufacturing, storage and disposal

activities that occurred at each such facility, including a description of the waste stream(s)

generated at each facility;

(f)    A complete description of how the waste stream(s) generated at each such facility

were disposed of, including the arrangements made for disposal of the waste; the identity of any

transporter(s) or Transporter(s) used to haul the waste; and the ultimate disposition of the waste.

**ANSWER:**

**Objection. Ashland objects to this Interrogatory and each of its subparts on the grounds set forth in Ashland's General Objections, particularly Ashland's objection to the definition and scope of the term "Geographical Area." Without waiving its objections, and subject thereto, Ashland states that unless and until there have been any allegations, supported by credible evidence, that any waste from any facility of Ashland other than the Great Meadows facility was transported to the Site, Ashland objects to this Interrogatory as overly broad, unduly burdensome, harassing, requiring Ashland to conduct an unreasonable investigation and to incur undue and unnecessary expense and as not reasonably calculated to lead to the discovery of admissible evidence. As set forth above, Ashland has and will provide relevant information and documents pertaining to wastes transported by DeRewal Chemical Company from Ashland's Great Meadows, New Jersey facility applicable to the relevant time period.**

INTERROGATORY NO. 3

With respect to the Great Meadows Facility and every other facility identified in response

to Interrogatory No. 1 above, identify the following:

**ANSWER:**

**Objection. Ashland objects to this Interrogatory insofar as it seeks information regarding any facility of Ashland other than its Great Meadows, New Jersey facility for the reasons set forth in its above response to Interrogatory no. 2 which is incorporated herein**

9

by reference.

Without waiving its objections, and subject thereto, and limited to Ashland's Great Meadows, New Jersey facility, Ashland answers as follows:

(a)    Address;

**Ashland Chemical Company**
**Alphono Road**
**Great Meadows, NJ**

(b)    Distance of facility from the Site;

**Unknown.**

(c)    Years you owned or operated the facility;

**Owned and operated by Ashland from 1966 to May 1, 1978.**

(d)    Your predecessor at the facility;

**The facility was acquired from Fisher Chemical Company in December 1966. Gamma Chemical Corporation, a subsidiary of Fisher Chemical Company, was located at Great Meadows, NJ.**

(e)    Your successor at the facility;

**Ashland sold the facility to The Southland Corporation on May 1, 1978.**

(f)    Years your immediate predecessor and immediate successor owned or operated the facility;

**Exact dates are unknown as to when Fisher Chemical was at the Great Meadows location, but it is believed to have been there since sometime in 1949 or 1950.**

(g)    A complete description of the types of manufacturing, storage and disposal activities which occurred at the facility, including a description of each waste stream generated at the facility;

**The Great Meadows facility was a fine chemicals, special order batch process plant producing various specialty organic chemicals, including those used in the manufacture of pharmaceuticals, 8-Hydroxyquinolines, synthetic hair dyes and**

10

intermediates for chemical and pharmaceutical companies. Upon information, it is believed that the processes in building #6 began by mixing nitrating acid with Para-chloro-benzo-tri-flouride. After that step, di-nitration took place. The acids were then separated from the product and partly diluted. The acids were then put into a waste tank and made ready for disposal. Previously produced monthly reports show products and shipments.

With respect to the waste stream generated at the Great Meadows facility during the relevant period of time, Ashland is unaware of any documents which show analyses of waste materials. Based on its review of documents previously produced, it is believed that the wastes generated during the relevant time period were comprised of spent mixed acids, CDN waste water, dye waste water, phthalide waste water, solvent wastes and solid wastes. It is believed that beginning in 1959 through the early 1970s, no waste was shipped off-site. Based on information currently in Ashland's possession, it is believed that waste water generated at the Great Meadows facility would have contained: (1) salts; (2) nitrating acid (comprised of a combination of sulfuric and nitric acid as well as other ingredients); and/or (3) solvent waste such as isopropyl alcohol, methyl alcohol, toluene, benzene and xylene, most of which solvent waste would have been recovered on-site. In addition, solid waste, included clothing, gloves and coveralls covered with the aftermath of the grinding operations from formaldehyde resins, was shipped to the Great Meadows plant by another Ashland plant. In addition, the acid waste may have included zinc waste.

(h)     Copies of all Federal, State and local permits that relate to any waste stream described above;

**No permits have been located.**

(i)     The names of person(s) presently or formerly employed by you who have the most knowledge about the subject matter of the Interrogatories, and state the time period of employment and the positions held;

Arthur T. Curley was the facility manager at Great Meadows from 1974 until the facility was sold in 1978. His last known address is 17 Far View Road, Great Meadows, NJ. The manager from 1966 to 1972 was Merv Goss, who is deceased. From 1972-1974 Michael Robin was Plant Manager. His last known address is Scotch Pines, NJ.

(j)     The total number of employees at each facility during the relevant time period and a description of any personnel changes during the relevant time period;

**Objection. See General Objections. By way of further objection, this Discovery Request improperly seeks information as to a matter which is wholly irrelevant to the subject matter of this litigation and is not reasonably calculated to lead to the**

11

discovery of admissible evidence and is, therefore, overbroad, unduly burdensome, oppressive and immaterial and would require Defendant to conduct an unreasonable investigation and to incur undue burden and expense in responding thereto.

(k)    Any documents, including without limitation, photographs, paintings, drawings, sketches, models and reproductions, that depict or purport to depict the exterior of the facility; and

       **Ashland has located no such documents in its possession or control.**

(l)    All documents that refer to, relate to, support or contradict your response to this interrogatory and its subparts.

       **See documents produced by Ashland in connection with its initial disclosures. Ashland's responses are also supported by the depositions of former Ashland employees Arthur T. Curley and William C. Olasin taken in other litigation, and documents and testimony generated and developed by the EPA in connection with its investigation of DeRewal Chemical Company's/Boarhead Corporation's ownership and operation of the Wissinoming facility and Boarhead Farms Site.**

INTERROGATORY NO. 4

With respect to the Great Meadows Facility and every other facility identified in response to Interrogatory No. 1 above identify the person(s) responsible for the following positions, including the time period(s) during which the position was held:

ANSWER:

    **Objection.  To the extent that Plaintiff seeks information regarding any Ashland facilities other than the Great Meadows, New Jersey facility, see Ashland's above objections to Interrogatory no. 2.  By way of further objection, this Discovery Request is overbroad, unduly vague, speculative, irrelevant, unduly burdensome, oppressive, immaterial and not reasonably calculated to lead to the discovery of admissible evidence insofar as it fails to identify the precise date(s) or time period(s) as to the information sought and Defendant, therefore, has not been provided with information sufficient to enable it, despite reasonable inquiry, to respond.**

Without waiving its objections, and subject thereto, Ashland answers as follows:

(a)    Plant management;

      **See Ashland's above Answer to Interrogatory no. 3(i).**

(b)    Production management;

      **Plant manager; see Ashland's above response to Interrogatory no. 4(a).**

(c)    Purchasing;

      **Richard A. DeWalk, office manager.**

(d)    Waste treatment, storage or disposal;

      **Plant manager; see Ashland's above response to Interrogatory no. 4(a).**

(e)    Maintenance;

      **Unknown.**

(f)    Hiring waste disposal services;

      **Arthur T. Curley, plant manager, was generally in charge of this activity.**

(g)    Accounting, including without limitation accounts payable and accounts receivable;

      **Richard A. DeWalk.**

(h)    Security;

      **Unknown.**

(i)    Environmental affairs or environmental management; and

      **Ralph Fisher, then located in Columbus, Ohio and/or Ken Schumacher, 63 Maplewood Avenue, Bogota, New Jersey, were in charge of environmental affairs.**

(j)    Worker Safety.

      **J.J. (Jack) Kaltanbach, 5132 Highland Meadow, Hillard, OH.**

Identify all documents that refer to, relate to, support or contradict your response to this interrogatory and its subparts.

**See documents previously produced in connection with Ashland's initial disclosures and its 104(e) responses.**

## INTERROGATORY NO. 5

With respect to the Great Meadows Facility and every other facility identified in response to Interrogatory No. 1 above, identify any persons other than those identified in response to Interrogatory No. 4, who have, could have or could have had knowledge relating to the waste streams identified in response to Interrogatory No. 3(g), and state the position(s) they held and the time period(s) during which the position was held. Identify all documents that refer to, relate to, support or contradict your response to this interrogatory.

**ANSWER:**

Objection. To the extent that this Interrogatory seeks information relative to any facility other than Ashland's Great Meadows, New Jersey facility, see above objections to Interrogatory no. 2. Without waiving its objections, and subject thereto, and limited to former employees of the Great Meadows, New Jersey facility, Defendant answers as follows:

1. Rudy Mitsuka, 145 Nazys Hill Road, Bangor, PA/Chemical Operator
2. John Cardell, address unknown/plant employee
3. Robert T. Olsen, 300 Country Lane, Eastham, MA/Chemist
4. Bernard Novisky, Box 85, Allamuchy, NJ/Chemical Operator
5. William Hoboken, 85511 Wedelia Court, Port St. Lucie, FL/Plant Manager from 1962-1965 before ASH acquired Great Meadows
6. Charles Kwartler, deceased
7. Kenneth Schumacher, 63 Maplewood Ave., Bogota, NJ/Environmental Engineer
8. John Minott, W. Orange Road, Delaware, OH
9. Jake Young, could not locate
10. Jack Kaltanbach, 5132 Highland Meadow, Hillard, Ohio
11. Mike Robin, Scotch Pines, NJ

14

INTERROGATORY NO. 6

    With respect to the waste stream from the Great Meadows Facility and with respect to each waste stream referenced above in your response to interrogatory number 3(g) which you believe, have reason to believe or surmise was sent directly or indirectly to the Site or which is referenced in any document relating to the Site or which was handled by a Transporter, unless you can demonstrate that such waste stream handled by such Transporter was, in its entirety, taken directly to a site or sites other than the Site, state or provide a good faith estimate of:

ANSWER:

    **As Ashland does not believe or have reason to believe or surmise that any wastes from its Great Meadows, New Jersey facility or from any other Ashland facility were sent, directly or indirectly, to the Site, this Interrogatory is not applicable.**

    (a)    A complete description of the process creating the waste stream, noting any changes in the process that occurred during the Relevant Time Period and the points in the process where the waste stream was generated, and including, without limitation, the raw materials used and byproducts or off-spec material generated in the process that produced the waste stream and, if the composition of the raw material is not clearly identifiable from its name, provide material safety data sheets or equivalent documentation;

    (b)    The specific source, nature, formulation and constituents of each waste stream, including, without limitation, any constituent that, based on its mishandling, may have become part of a waste stream, the physical state of the waste stream (e.g., liquid, gas, solid, semi-solid), the chemical content of the waste stream and the chemical, generic, trade, brand or other name for the waste. If you contend that a constituent evaporated or was neutralized, the basis for this contention must be explained in full;

15

(c)    The amount of each waste stream produced per year during the Relevant Time Period;

(d)    The receptacle used to collect each waste stream including: (1) a description of the receptacle, including without limitation each bin, box, drum, dumpster, tank, sump, catch basin, reactor, tanker, pipe, pit, ditch, roll off, bag, barrel and lagoon; (2) the size of each receptacle; (3) the supplier of each receptacle (i.e., your company, or another person); (4) the location of each receptacle; and (5) the frequency at which each receptacle was emptied;

(e)    The equipment used to remove the waste from each receptacle including: (1) a description of the type of equipment; (2) the amount of waste the equipment removed or could remove; and (3) whether any equipment used to remove each waste stream was owned or operated by the facility or another person, and, if owned or operated by another person, the identity of that person.

Identify all documents that refer to, relate to, support or contradict your response to this interrogatory and its subparts.

INTERROGATORY NO. 7

With respect to the waste stream from the Great Meadows Facility and with respect to each waste stream referenced in your response to Interrogatory No. 6, identify:

ANSWER:

**Not applicable; see above Answer to Interrogatory no. 6. By way of further response, with respect to waste streams generated by Ashland's Great Meadows, New Jersey facility, see waste ledger sheets, monthly reports and other documents previously produced with Ashland's initial disclosures and its 104(e) responses. Other than as set forth in the documents produced and in the prior testimony referenced in Ashland's above answer to Interrogatory no. 3(l), Ashland has no information or documents responsive to these Interrogatories.**

(a)     All entities who removed the contents of each receptacle identified in response to Interrogatory No. 6(d) above;

(b)     The time period(s) during which such entity removed the contents of each receptacle identified in response to Interrogatory No. 6(d) above;

(c)     The monthly and annual amount of the waste stream collected and how you calculated such amounts (e.g., if your waste was compacted, indicate when compaction began and ended and what compaction ratio was used or, if the density of the material was used to compute the amount, explain the density of the materials or, for liquids, the weight and density of liquids);

(d)     The location that you or any entity identified in response to Interrogatory No. 7(a) disposed of the waste stream or purported to dispose of the waste stream;

(e)     The price charged by any entity (other than yourself) identified in response to Interrogatory No. 7(a) for each drum, gallon, cubic yard, ton, pickup, etc. for each waste stream removed by the entity;

(f)     The source of the information set forth in response to Interrogatory No. 7 subparts (a)-(e) above;

(g)     Any process flow diagrams relating to each waste stream, including diagrams relating to any on-site process waste treatment facilities, that are in your possession, custody or control;

(h)     Any piping and instrumentation diagrams relating to each waste stream that are in your possession, custody or control;

(i)     Any sewer maps relating to each waste stream that are in your possession, custody or control;

(j)      Any site diagrams, maps or aerial photographs that are in your possession, custody or control; and

(k)      Any other documents that are in your possession, custody or control that relate to the constituents, volume, and/or treatment, storage or disposal of each waste stream and/or any documents that relate to any entity identified in response to question 7(a) above and/or any Transporter.


## INTERROGATORY NO. 8

With respect to the waste stream from the Great Meadows Facility and with respect to each waste stream described in response to Interrogatory No. 6, describe in complete detail any tests or analyses that were performed on the waste stream including:

**ANSWER:**

**Not applicable; see above Answer to Interrogatory no. 6.  By way of further response, with respect to waste streams from Ashland's Great Meadows, New Jersey facility during the relevant period of time, Ashland has no information or documents relating to any tests or analyses that may have been performed on the waste streams from that facility.**

(a)      the nature of the tests or analyses performed;

(b)      the date upon which such tests or analyses were performed;

(c)      the identity of the person(s) who performed such tests or analyses; and

(d)      the findings and conclusions of the tests and analyses.


Identify any such tests and analyses or, if the tests and analyses are unavailable, provide a good faith estimate of the chemical composition of the waste stream.

INTERROGATORY NO. 9 -

Account for the disposal of the waste stream from the Great Meadows Facility and for the disposal of each waste stream set forth in response to Interrogatory No. 3(g).

**ANSWER:**

**See Ashland's waste ledger sheets, monthly reports and other documents produced with Ashland's initial disclosures and its 104(e) responses. By way of further response, insofar as Ashland does not believe or have reason to believe that any waste from its Great Meadows, New Jersey facility was taken, directly or indirectly to the Boarhead Farms Site, this Interrogatory is inapplicable. As reflected in the documents produced, Ashland believes that all wastes from its Great Meadows, New Jersey facility that were transported by DeRewal Chemical Company were transported to DeRewal's Wissinoming facility in Philadelphia for handling, treatment and disposal and not to the Boarhead Farms Site.**

(a)    If it is alleged in any document relating to the Site, including, without limitation, any document filed with the court or served on you in connection with the Case, or if you believe, have reason to believe, or surmise, that the waste was taken directly or indirectly to the Site, or that such waste was handled by a Transporter, state or provide a good faith estimate of:

(1)    the date of each shipment and/or disposal;

(2)    the volume or weight of each shipment; and

(3)    the frequency of the disposal of each waste stream.

(b)    If you contend that any waste stream was taken directly or indirectly to a site or sites other than the Site, state:

(1)    the general location of the other site;

(2)    the year(s) of disposal at the other site;

(3)    the frequency of the disposal of each waste stream at the other site; and

(4)    all facts upon which you base your contention.

19

Identify all documents that refer to, relate to, support or contradict your response to this interrogatory and its subparts.


INTERROGATORY NO.10

In answering Interrogatory No. 1 above, if you take the position that materials were directly or indirectly taken from any of your facilities but that you do not have any belief, reason to believe or surmise that such materials were transported to the Site, set forth all facts upon which you base that position and identify all documents that refer to, relate to, support or contradict your position.

ANSWER:

See documents previously produced with Ashland's initial disclosures and its 104(e) responses, including Ashland's waste disposal ledgers, none of which indicate that any wastes from Ashland's Great Meadows facility were disposed of at the Boarhead Farms Site. Furthermore, Arthur T. Curley, former plant manager of Ashland's Great Meadows facility, and William Charles Olasin have previously testified in other CERCLA actions that, to the best of their information and knowledge and based upon their review of all available documents and records, no wastes from Ashland's Great Meadows, New Jersey facility were transported to and/or disposed of at the Boarhead Farms Site. In addition, see testimony of principals and employees of DeRewal Chemical Company, Environmental Chemical Control, Inc. and Boarhead Corporation in this case and in the administrative proceedings instituted by the United States Environmental Protection Agency, copies of the transcripts of which are believed to be in Plaintiff's possession.

By way of further response, all evidence adduced in this action indicates that any and all wastes from Ashland's Great Meadows, New Jersey facility transported by DeRewal Chemical Company were transported to DeRewal's Wissinoming facility in Philadelphia and not to any other facility, including the Boarhead Farms Site, during the period of August 1976 through at least March 1977. During that entire time period, the evidence to date has disclosed that the Wissinoming facility had the necessary equipment and was fully operational for the storage, treatment, neutralization and disposal of acid wastes of the type transported by AETC/DeRewal from Ashland's Great Meadows, New Jersey facility. No such equipment was available and/or operational at the Boarhead Farms Site. Furthermore, documents produced by AETC reflect that sewer charges by the City of Philadelphia were incurred by DeRewal during the relevant period for the disposal at the Wissinoming facility of Ashland's spent acid waste transported by DeRewal. Relatedly,

20

Ashland thereafter entered into a settlement and release with the City of Philadelphia and the Pennsylvania Department of Environmental Protection in 1980 relative to the alleged improper disposal of Ashland's alleged spent acid waste by DeRewal at the Wissinoming facility during the relevant time period. Furthermore, former employees of DeRewal have testified in this action that no Ashland acid or other wastes were hauled by DeRewal after the Wissinoming facility was shut down in or around March of 1997, further indicating that the Boarhead Farms Site was not used as a disposal facility for Ashland waste streams. Furthermore, Ashland's waste ledgers and shipping records indicate that shortly after the closing of the Wissinoming facility in or about March of 1977, AETC did very little hauling of wastes from Ashland's Great Meadows facility and that the wastes that it did haul went to other facilities reflected in said records including, but not limited to, Modern Transport and All County Environmental.

Furthermore, as reflected in the documents previously produced, Mr. Curley personally observed the neutralization of Ashland's spent acid wastes from its Great Meadows facility being conducted at the Wissinoming facility and further personally observed a tank wagon of Ashland's spent acid waste from its Great Meadows facility en route therefrom to the Wissinoming facility. Furthermore, Manfred DeRewal informed Mr. Curley that Ashland's spent acid wastes that were not neutralized at the Wissinoming facility were resold to other parties by DeRewal for ore extraction and agricultural purposes, and that the spent acid that was neutralized was then deposited into the sewer system at the Wissinoming facility, a process that had been observed by Mr. Curley. Furthermore, the drivers of tank trucks hauling spent acid wastes from Ashland's Great Meadows facility have testified that they hauled such wastes during the period of time that the Wissinoming facility was operational and that they did not pick up any wastes from the Great Meadows facility other than spent acid. Furthermore, Plaintiff has not produced any documents or other credible evidence, other than highly suspect and equivocal testimony of certain drivers formerly employed by DeRewal, reflecting that any waste streams from Ashland's Great Meadows facility were transported to and disposed of at the Boarhead Farms Site.

See also Ashland's above answer to Interrogatory no. 1(f). Ashland reserves the right to supplement its Answer to this Interrogatory as its investigation and discovery are continuing.


INTERROGATORY NO. 11

If it is alleged in any document relating to the Site, including without limitation any

document filed with the court or served on you in connection with the Case, or if you believe,

have reason to believe, or surmise, that a party will contend that you or a related entity is a

successor to an entity potentially liable at the Site, set forth all facts and theories upon which you

contend that you and/or the related entity are not a successor and provide:

**ANSWER:**

Objection. See General Objections. By way of further objection, to the extent that this Discovery Request seeks information as to a document and/or select portions of the contents, terms and/or conditions purportedly set forth in any such document which has not been attached as an exhibit to this Discovery Request or otherwise specifically identified, such Discovery Request has not been properly identified by Plaintiff sufficient to enable Defendant to determine to which specific document the Discovery Request is referring and is therefore objected to as unduly vague, speculative, irrelevant, overbroad, unduly burdensome, oppressive, immaterial and not reasonably calculated to lead to the discovery of admissible evidence. By way of further objection, this Request improperly seeks information and/or documents which would require the disclosure of the opinion(s) of experts rather than a statement or opinion of fact or the application of law to fact and is, therefore, outside the scope of permissible expert discovery. Moreover, insofar as Defendant has not decided whom it intends to call as expert witnesses at trial, this Discovery Request is premature. In addition, this Discovery Request improperly seeks information which is not within the personal knowledge of Defendant and/or is not within its possession or control or available to it upon reasonable inquiry but seeks information as to one or more matters within the exclusive possession and/or control of other persons or entities to whom this request should properly be addressed and, therefore, despite reasonable inquiry, Defendant is without information or knowledge sufficient to enable it to respond to this request.

Without waiving its objections, and subject thereto, Defendants states that it has no information that any party will so contend and therefore this Interrogatory is not applicable.

(a)    your views on the applicable federal and state law;

(b)    what cases you are relying upon primarily that support your position;

(c)    the facts relevant to the eight factor analysis used for the substantial continuity of enterprise doctrine;

(d)    your knowledge regarding the existence of environmental liabilities of the alleged predecessor at the time of the pertinent transaction;

(e)    whether the alleged predecessor survived;

(f)    what consideration was given to the alleged predecessor;

(g)    a copy of the relevant contracts involved;

(h)    information on whether use of the Site continued after the pertinent transaction;

(i)    how the alleged successor advised the customers of the alleged predecessor of the transaction and of the alleged successor's status;

(j)    what liabilities, if any, were assumed; and

(k)    any other information that you deem pertinent to the issue of successor liability.

INTERROGATORY NO.12

Were any solvents used in connection with the operation and/or maintenance of equipment or machinery or the buildings at the Great Meadows Facility or other facilities identified in response to Interrogatory No. 1 above? If so, state or provide a good faith estimate of:

ANSWER:

Objection. To the extent that Plaintiff is seeking information regarding any facilities other than Ashland's Great Meadows, New Jersey facility, see Ashland's above objections to Interrogatory no. 2. By way of further objection, this Discovery Request improperly seeks information as to a matter which is wholly irrelevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence and is, therefore, overbroad, unduly burdensome, oppressive and immaterial and would require Defendant to conduct an unreasonable investigation and to incur undue burden and expense in responding thereto. By way of further objection, this Discovery Request is overbroad, unduly vague, speculative, irrelevant, unduly burdensome, oppressive, immaterial and not reasonably calculated to lead to the discovery of admissible evidence insofar as it fails to identify the precise date(s) or time period(s) as to the information sought and Defendant, therefore, has not been provided with information sufficient to enable it, despite reasonable inquiry, to respond.

Without waiving its objections, and subject thereto, Ashland states that it has not located any information or documents responsive to this Interrogatory.

(a)    how any such materials were disposed of during the Relevant Time Period, including a description of on-site accumulation and transporters utilized;

23

(b)    where any such materials were ultimately disposed of or were purportedly disposed of during the Relevant Time Period; and

(c)    the monthly and annual volume of the waste stream comprised of such materials during the Relevant Time Period.

Identify all documents that refer to, relate to, support or contradict your response to this interrogatory and its subparts.

.

## INTERROGATORY NO. 13

If the Great Meadows Facility or any other facilities identified in response to Interrogatory No. 1 contained one or more laboratories during the Relevant Time Period, identify:

(a)    any chemicals or other materials used or stored therein during the Relevant Time Period;

(b)    the types of containers any such chemicals or other materials were shipped in during the Relevant Time Period;

(c)    how and where these containers were disposed of or were purportedly disposed of during the Relevant Time Period;

(d)    the type and quantity of wastes generated by the laboratory during the Relevant Time Period; and

(e)    how and where such wastes were disposed of or were purportedly disposed of during the Relevant Time Period.

**ANSWER:**

**Objection. To the extent that Plaintiff is seeking information regarding any facilities other than Ashland's Great Meadows, New Jersey facility, see Ashland's above objections to**



Interrogatory no. 2. By way of further objection, this Discovery Request improperly seeks information as to a matter which is wholly irrelevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence and is, therefore, overbroad, unduly burdensome, oppressive and immaterial and would require Defendant to conduct an unreasonable investigation and to incur undue burden and expense in responding thereto. By way of further objection, this Discovery Request is overbroad, unduly vague, speculative, irrelevant, unduly burdensome, oppressive, immaterial and not reasonably calculated to lead to the discovery of admissible evidence insofar as it fails to identify the precise date(s) or time period(s) as to the information sought and Defendant, therefore, has not been provided with information sufficient to enable it, despite reasonable inquiry, to respond.

Without waiving its objections, and subject thereto, and limited to Ashland's Great Meadows, New Jersey facility, Ashland states that it is aware of the existence of a laboratory at that facility. The only laboratory employees at that facility that Ashland can identify based on secondhand information are Robert T. Olsen, Graham Hughes, Rudy Mitsuka, and James Tichich, although Ashland cannot be sure that each of these individuals worked in the laboratory prior to the sale of the Great Meadows facility to Southland in 1978. Ashland has provided and is providing all information and documents in its possession or control relative to wastes allegedly transported by DeRewal from Ashland's Great Meadows, New Jersey facility during the relevant time period.

INTERROGATORY NO. 14

If the Great Meadows Facility or other facilities identified in response to Interrogatory No. 1 conducted building maintenance, including without limitation repair of fixtures, buildings, heating and ventilation systems, furnaces, incinerators, tanks, plumbing or electrical systems, provide a description of any such activities and identify the following:

(a)     the type and quantity of wastes generated as a result of such activities during the relevant time period; and

(b)     how and where such wastes were disposed of or were purportedly disposed of during the Relevant Time Period.

ANSWER:

Objection. To the extent that Plaintiff is seeking information regarding any facilities other than Ashland's Great Meadows, New Jersey facility, see Ashland's above objections to Interrogatory no. 2. By way of further objection, this Discovery Request improperly seeks



information as to a matter that is wholly irrelevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence and is, therefore, overbroad, unduly burdensome, oppressive and immaterial and would require Defendant to conduct an unreasonable investigation and to incur undue burden and expense in responding thereto. By way of further objection, this Discovery Request is overbroad, unduly vague, speculative, irrelevant, unduly burdensome, oppressive, immaterial and not reasonably calculated to lead to the discovery of admissible evidence insofar as it fails to identify the precise date(s) or time period(s) as to the information sought and Defendant, therefore, has not been provided with information sufficient to enable it, despite reasonable inquiry, to respond.

INTERROGATORY NO.15

If the Great Meadows Facility or other facilities identified in response to Interrogatory No. 1 incinerated any of its wastes, identify the following:

(a)    the type and quantity of wastes that were incinerated during the Relevant Time Period;

(b)    the location where waste was incinerated during the Relevant Time Period;

(c)    any protocol or instructions regarding which wastes were to be incinerated; and

(d)    the person(s) who performed any such incineration during the Relevant Time Period.

ANSWER:

Objection. To the extent that Plaintiff is seeking information relative to any Ashland facilities other than Ashland's Great Meadows, New Jersey facility, see Ashland's above objections to Interrogatory no. 2. Without waiving its objections, and subject thereto and limited to Ashland's Great Meadows, New Jersey facility, Ashland has no information responsive to these Interrogatories.

INTERROGATORY NO. 16

If automotive maintenance and/or repair work occurred at the Great Meadows Facility or

other facilities identified in response to Interrogatory No. 1 above, describe such activities and identify the following with respect to such activities:

(a)    the type and quantity of wastes generated in connection with such activities during the Relevant Time Period; and

(b)    how and where such wastes were disposed of or were purportedly disposed of during the Relevant Time Period.

**ANSWER:**

**Objection.  To the extent that Plaintiff is seeking information relative to any Ashland facilities other than Ashland's Great Meadows, New Jersey facility, see Ashland's above objections to Interrogatory no. 2.  Without waiving its objections, and subject thereto and limited to Ashland's Great Meadows, New Jersey facility, Ashland has no information responsive to these Interrogatories.**

INTERROGATORY NO. 17

Describe your record retention policy. If you contend that any documents relating to the Site, other than those identified or described in responses to the previous interrogatories, are no longer available, explain your reasons for this lack of documents and include the specific date that any documents were destroyed or lost. The following documents shall be specifically provided for the Great Meadows Facility and every other facility identified in response to Interrogatory No. 1 above: Annual Business Reports, Industrial Waste Survey responses, Annual Waste Generating Plant Reports, Eckhardt Report Waste Disposal Site Survey responses, Waste Collector or Hauler Annual Certification Applications/Registration Statements, Accounts Payable and bills of lading as they relate to waste treatment, storage, transportation and disposal.

**ANSWER:**

**Ashland sold its Great Meadows, New Jersey facility in 1978 and all documents and**

27

records were transferred to the purchaser, Southland Corporation, with the sale of the facility. All records pertinent to the Great Meadows, New Jersey facility that are in Ashland's possession or control and that have been produced in this action were obtained from other litigation-related files.


INTERROGATORY NO. 18

Describe all contacts and/or communications that occurred between you and Advanced Environmental Technology Corporation ("AETC"), or any employee, representative or agent of AETC, including, without limitation, the date, location, reason for and substance of any such contact and/or communication, and identify, with respect to each such contact and/or communication:

    (a)    the persons involved; and

    (b)    all documents that refer to, relate to, support or contradict your response to this interrogatory and its subparts.

ANSWER:

See Ashland's above answer to Interrogatory no. 10 and documents previously produced with Ashland's initial disclosures.


INTERROGATORY NO. 19

Describe the actions you took to perform a diligent investigation to respond to the Interrogatories and to make your good faith estimates and statements, and identify:

    (a)    All persons interviewed with a brief summary of all information you obtained during the interview;

    (b)    All persons who may or should have knowledge that could be used to answer any

of the Interrogatories but who were not interviewed and state the reason that no interview was conducted;

(c)    All categories of documents reviewed in responding to this interrogatory and its subparts;

(d)    All documents which may be relevant to answering this interrogatory and its subparts but which were not reviewed and state the reason that the documents were not available; and

(e)    Any person interviewed whose knowledge is inconsistent with that of the other person(s) interviewed and state the inconsistency and explain why information from this person was accepted, rejected or modified in light of information from other sources, and identify such other sources.

**ANSWER:**

Ashland collected and reviewed all documents in its possession or control relative to its former Great Meadows, New Jersey facility as well as transcripts and excerpts of depositions from other litigation pertaining to that facility as well as interviews of former and/or current employees and relevant waste ledger sheets, monthly reports, transporter information, shipping information and vendor payment records. See documents previously produced in connection with Ashland's initial disclosures and its 104(e) responses. Privileged and protected documents, including notes of interviews and deposition summaries, digests and excerpts thereof as well as notations and memoranda of counsel, retain their privileged and protected status which is not waived by their review in connection with the preparation of these answers.

IV.    **DOCUMENT REQUESTS**

1.    All documents requested to be identified in the Interrogatories.

**RESPONSE:**

**See Ashland's above answers and objections to Plaintiff's Interrogatories and documents produced in connection with Ashland's initial disclosures.**

2.    All other documents referring or relating to wastes from the Great Meadows Facility or from any other facility which were sent or which you believe, have reason to believe or surmise may have been sent directly or indirectly to the Site.

**RESPONSE:**

**As Ashland does not believe or have reason to believe that any waste from its Great Meadows, New Jersey facility or any other facility was sent, directly or indirectly, to the Boarhead Farms Site during any part of the relevant time period, this Request is not applicable.  By way of further response, see Ashland's above answers and objections to Plaintiff's Interrogatories and documents previously produced in connection Ashland's initial disclosures and its 104(e) responses.**

RICHARD C. BIEDRZYCKI, ESQUIRE
Attorney I.D. No. 30604
PHELAN, PETTIT & BIEDRZYCKI
121 South Broad Street
Suite 1600
Philadelphia, PA 19107
(215) 546-0500

Counsel for Ashland Inc., designated by
Plaintiff as Ashland Chemical Company

Date:____July 26, 2004____

G:\DATA\1357-29\Disc\Ans-Rogs-BFAG.wpd

30

**VERIFICATION**

STATE OF OHIO )
)
COUNTY OF FRANKLIN )

Robin Lampkin-Isabel, being first duly sworn, deposes and says: THAT I am an

Attorney for Ashland Inc.; that I have read the foregoing Answers and Objections of

Defendant Ashland Inc. to Plaintiff's Interrogatories and Request for Production of

Documents; that I verify the foregoing Answers and Objections for and on behalf of said

defendant, and that I am duly authorized to do so; that certain of the matters stated in

the foregoing are not within the personal knowledge of this deponent and that the facts

stated in said Answers and Objections have been assembled by authorized employees

of the said defendant and the deponent is informed by said employees that the facts

stated in said Answers and Objections are true and correct.

_Robin Lampkin-Isabel_
Robin Lampkin-Isabel

SUBSCRIBED and sworn to before me this ___26th___ day of ___July___, 2004.

_Joyce C. Deringer_
Notary Public



JOYCE C. DERINGER
NOTARY PUBLIC, STATE OF OHIO
MY COMMISSION EXPIRES OCTOBER 24, 2005

## CERTIFICATE OF SERVICE

I, Richard C. Biedrzycki, Esquire, hereby certify that on this 26th of July, 2004, I caused a true and correct copy of the foregoing Answers and Objections of Defendant Ashland Inc. to Plaintiff's Interrogatories and Request for Production of Documents of Plaintiff Boarhead Farm Agreement Group to be served by first class mail, postage prepaid, on all interested counsel of record addressed as follows:

**Counsel for Plaintiff:**

Monique M. Mooney, Esquire
Glenn A. Harris, Esquire
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street
51st Floor
Philadelphia, PA 19103

**Counsel for Defendants:**

*Advanced Environmental Technology Corporation*
Thomas Sabino, Esquire
Wolff & Samson PC
The Offices at Crystal Lake
One Boland Drive
West Orange, NJ 07052

*Carpenter Technology Corporation*
Lynn Wright, Esquire
Edwards & Angell
750 Lexington Avenue
New York, NY 10022

*Handy & Harman Tube Company*
Melissa E. Flax, Esquire
Carella, Byrne, Bain, Gilfillan,
        Cecchi, Stewart & Olstein, P.C.
5 Becker Farm Road
Roseland, NJ 07068-1739

*Merit Metals Products Corp.*
Stephen P. Chawaga, Esquire
Monteverde, Mcalee & Hurd
One Penn Center
Suite 1500
1617 JFK Boulevard
Philadelphia, PA 19103-1815

*NRM Investment Co.*
Edward Fackenthal, Esquire
Law Office of Edward Fackanthal
One Montgomery Plaza
Suite 209
Norristown, PA 19401

*Rahns Specialty Metals, Inc.*
*Techalloy Co., Inc.*
*Thomas & Betts Corporation*
Andrew P. Foster, Esquire
Adina M. Dziuk, Esquire
Drinker, Biddle & Reath, LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996

*Flexible Circuits & Etched Circuits*
Seth v.d.H. Cooley, Esquire
A. Nicole Friant, Esquire
Duane Morris LLP
Suite 4200, One Liberty Place
Philadelphia, PA 19103-7396



RICHARD C. BIEDRZYCKI

Date:  July 26, 2004