**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BOARHEAD FARM AGREEMENT GROUP, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 02-3830 |
| | : | |
| ADVANCED ENVIRONMENTAL | : | |
| TECHNOLOGY CORPORATION, et al., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW OF DEFENDANT ASHLAND INC.
IN SUPPORT OF OPPOSITION TO PLAINTIFF'S
MOTION TO OVERRULE OBJECTIONS AND COMPEL RESPONSES
TO PLAINTIFF'S INTERROGATORIES AND DOCUMENT REQUESTS**

Defendant Ashland Inc., designated by Plaintiff as Ashland Chemical Company (hereinafter "Ashland"), by and through its undersigned counsel, submits its within Memorandum of Law in Opposition to Plaintiff's Motion to Overrule Ashland's Objections to Plaintiff's Interrogatories and Document Requests and to Compel More Specific Responses thereto.

## I.    COUNTER STATEMENT OF THE CASE

Despite professing to be seeking the production of information and documents pertinent to the liability aspects of this case relative to Ashland, Plaintiff fails to inform the Court of the most pertinent evidence developed to date with respect to Ashland's alleged wastes and further fails to inform the Court that the relevant information and documents in Ashland's possession and control relative to Ashland's alleged wastes have already been produced to Plaintiff and/or previously obtained by Plaintiff from other sources. Ashland submits that a proper and informed consideration of the issues raised by Plaintiff in its Motion requires an elaboration on the factual and procedural context of this case as it applies to Plaintiff's claims against Ashland.

Although Plaintiff has generally alleged that during the period of January 1969 through December 1977 various Defendants' wastes were transported to and disposed of at the Boarhead Farms, Bucks County site (the "Boarhead Farms Site"), the extensive documents produced and testimony developed in this case demonstrate that the relevant time period with respect to the disposal of Ashland's alleged wastes is limited to no more than an eight (8) month period between August 1976 and April 1977. In or around the summer of 1976, Ashland retained Defendant Advanced Environmental Technology Corporation ("AETC") to arrange for the pick up and disposal of certain chemical wastes from Ashland's Great Meadows, New Jersey Facility. DeRewal Chemical Company ("DCC") was one of the transporters that AETC then retained to pick up and dispose of Ashland's wastes from its Great Meadows Facility. The testimony and documents produced to date also demonstrate that the only Ashland facility from which DCC, as arranged by AETC, picked up and transported wastes was Ashland's Great Meadows specialty organic chemical production plant. There is no evidence, or even any claim that has been advanced by Plaintiff in this case, that any wastes from any other Ashland facility were arranged by AETC to be transported, or were transported, by DCC to the Boarhead Farms Site during the relevant time period or at any other time.

It has also been established that during the eight (8) month time period that DCC picked up and transported wastes from Ashland's Great Meadows facility, DCC (or one of its affiliated companies) owned and operated a chemical processing and disposal facility located on the banks of the Delaware River in the Wissinoming section of the City of Philadelphia (the "Wissinoming Facility"). In early 1977, the EPA, the Pennsylvania DEP and the City of Philadelphia investigated reports of illegal dumping by DCC of bulk wastes from its Wissinoming Facility into the Delaware River. Those agencies' investigations resulted in the arrests of a number of DCC personnel

2

beginning on March 29, 1977, which individuals were charged with, and ultimately convicted of, criminal conduct in connection with the illegal dumping of wastes, including acid wastes from Ashland's Great Meadows, New Jersey facility here at issue into the Delaware River from the Wissinoming Facility. The Wissinoming Facility was then shut down and DCC stopped hauling and disposing of Ashland wastes. DCC was thereafter billed by the City for unpaid sewer charges in connection with its illegal dumping of wastes into the Delaware River from the Wissinoming Facility, which wastes included the very Ashland wastes that Plaintiff is now claiming were dumped at the Boarhead Farms Site! (See 7/5/98 letter, Exh. "A".)

Thereafter, the EPA began investigating charges of illegal waste dumping activity at the Boarhead Farms Site. Sworn testimony was taken by deposition in connection with the EPA's investigation. In responding to questions relating to DCC's disposal of wastes from Ashland's Great Meadows facility, all of the testifying Boarhead/DCC personnel, including DCC's truck drivers, testified at that time that all of the waste products picked up by DCC from the Great Meadows facility were transported to and disposed of at the DCC Wissinoming Facility and that none of those waste products were transported to or dumped at the Boarhead Farms Site. Ashland cooperated with the EPA and provided all information and documents requested with respect to its waste disposal activities and its association with DCC and with the Wissinoming Facility and the Boarhead Farms Site. The EPA and the DEP apparently concluded, based on its extensive investigation, that there was no basis for pursuing any claims against Ashland with respect to the Boarhead Farms Site.

Despite the government's conclusion, the extensive document production prior to and during the course of Plaintiff's within contribution action, and the extensive testimony developed prior to the filing of this action reflecting that no wastes from any Ashland facility were disposed of at the Boarhead Farms Site, Plaintiff produced for deposition in this case many of the same former

3

Boarhead/DCC employees who had testified earlier, including those who had previously given testimony exonerating Ashland from any association with the Boarhead Farms Site. Three of those witnesses -- former DCC truck drivers -- gave deposition testimony in 2003 in this case contradicting their earlier testimony with respect to, *inter alia*, the disposal of Ashland wastes and testified that they suddenly now "recalled" that some of the loads of acids picked up by them from Ashland's Great Meadows facility were transported to and dumped at the Boarhead Farms Site, acknowledging, however, that the great majority of those wastes were disposed of at DCC's Wissinoming Facility. The drivers' altered testimony as to the disposal of some Ashland wastes at the Boarhead Farms Site was not, however, supported by any documents or by testimony of any independent witnesses. This altered testimony of three convicted felons appears to be the sum essence of Plaintiff's claims against Ashland. Their testimony did not change, however, as to the fact that the only Ashland facility from which DCC picked up wastes was the Great Meadows facility or as to the fact that the time period during which such wastes were picked up from that facility was limited to the period of late 1976 to early 1977.

In silent recognition of the fact that it has no basis for pursuing any claims against Ashland other than the altered testimony of these convicted felons, which testimony flies in the face of the extensive testimony and documents completely emasculating such claims, Plaintiff has now set off on a huge fishing expedition seemingly designed to harass Ashland and to cause it to incur substantial, undue and unnecessary burden and expense by trying to force it to further respond to Interrogatories and Document Requests covering matters wholly irrelevant and immaterial to this litigation, including extensive information on other Ashland facilities fortuitously located within the

4

entirety of the states of New York, New Jersey and Pennsylvania.[1]  More particularly, in addition to the identification of all those other Ashland facilities, Plaintiff now claims entitlement to extensive detailed information and documents pertaining to the operations of all such other Ashland facilities, including the chemicals used, handled and processed and waste streams generated thereat and the chemical compositions thereof.  Plaintiff seeks such discovery without limiting its requests to information regarding chemicals or wastes of the type here at issue or to the disposal and transportation thereof by DCC to the Boarhead Farms Site or to any other facility owned and operated by DCC or any of its affiliated companies.

Plaintiff has also failed to inform the Court that Ashland made an extensive disclosure at the outset of this case, including the production of over four hundred (400) documents and the identification of more than twenty-three (23) present and former employees of Ashland who might have some information or knowledge of relevance to this lawsuit.  The documents produced by Ashland included waste disposal ledgers, correspondence, bills of lading, invoices, sales orders, waste disposal memoranda, monthly reports of disposal activities, chemical laboratory analyses and responses that Ashland had served in connection with another illegal dumping case, USA v. Davis, which also involved the disposal of wastes from the Ashland Great Meadows facility to a dump site in Rhode Island but having no relation to the Boarhead Farms Site or DCC.  The materials produced to Plaintiff also included memoranda of meetings that Ashland personnel had with DCC/Boarhead Farms personnel during the relevant time period.  Ashland's document production also included its

---

[1]    Based on its preliminary investigation conducted in response to Plaintiff's within Motion, Ashland presently believes that it had up to, or possibly more than, twenty-one (21) facilities throughout Pennsylvania, New York and New Jersey that conducted chemical operations during at least some portion of the Relevant Time Period.  Many of those facilities are believed to have been either sold or closed since the 1970s.

extensive January 11, 1996 104(e) response to the EPA's Request for Information regarding alleged dumping activities at the Boarhead Farms Site. All of this extensive documentation reflects that, at all relevant times, Ashland understood that all wastes to be picked up by DCC, as arranged by AETC, were to be picked up at Ashland's Great Meadows facility only and were to be transported to and processed at the DCC Wissinoming facility only, which facility, as stated above, was at all times open and operating during the entire time that DCC was picking up and hauling wastes from Ashland's Great Meadows facility.

In its Answers to Plaintiff's Interrogatories, Ashland has expressly stated, subject to general objections, that it has no information regarding any direct or indirect shipments from its Great Meadows facility or from any other Ashland facility to the Boarhead Farms Site during the relevant time period. This response was not limited only to the hauling of wastes from Great Meadows by DCC but by any other transporter. Ashland respectfully submits that it has provided all relevant information to the Plaintiff and that Plaintiff's disappointment at not being able to establish a nexus between Ashland wastes and the Boarhead Farms Site has improperly led it to attempt to embark on a fishing expedition at Ashland's expense. Ashland respectfully submits that there is no good faith basis or reason for the additional discovery that Plaintiff seeks, that the discovery sought is completely irrelevant and immaterial to the issues in this case, and that any potential relevance such discovery might have is far outweighed by the undue and extreme burden and expense that would be imposed on Ashland in attempting to provide the discovery sought. Further discussion with respect to particular Interrogatories and Document Requests for which Plaintiff seeks more information than that already provided by Ashland and to certain objections to Plaintiff's discovery requests challenged by Plaintiff appears seriatim below.

6

## II.    DISPUTED INTERROGATORIES AND DOCUMENT REQUESTS

### A.    Interrogatory Nos. 1-5

#### 1.    Ashland Properly Limited Its Responses To The Great Meadows Facility

In addition to seeking detailed information concerning the chemicals, operations and waste disposal activities at Ashland's Great Meadows facility, Plaintiff seeks to have Ashland provide detailed information on each and every facility owned or operated by Ashland within the states of Pennsylvania, New York and New Jersey. Plaintiff gives no indication as to how or why such detailed information regarding facilities other than Great Meadows facility and operations conducted threat almost thirty (30) years ago could possibly be relevant to this case or could in any way reasonably lead to the discovery of admissible evidence. In its supporting Memorandum, Plaintiff does no better than to vaguely postulate that information concerning operations and waste streams at other Ashland facilities might somehow "bear on" the amount and constituents of Ashland waste streams that "may have" been deposited on the Boarhead Farms Site. Plaintiff also hypothesizes that information concerning operations at other Ashland facilities "could shed light" on operations at facilities such as Great Meadows that were serviced by DCC. Tellingly, however, Plaintiff offers not one bit of explanation as to how such information could possibly "bear on" or "shed light on" any claims or defenses as to Ashland, which claims, as noted above, involve only the off-site disposal of wastes from Ashland's Great Meadows facility which were picked up and transported by DCC during a limited eight (8) month period from August 1976 to March 1977.

Ashland submits that Plaintiff cannot be permitted to engage in such a virtually unlimited fishing expedition which would undoubtedly be extremely burdensome and expensive to Ashland in having to provide such extensive information and documents sought by Plaintiff for each and

7

every facility it owned or operated within a three (3) state area almost thirty (30) years ago. A review of the information being sought by Plaintiff as to each of these facilities demonstrates the extreme burdensomeness of the tasks which Plaintiff seeks to have Ashland undertake for no articulated reason other than that the information sought as to Ashland's other facilities might possibly "bear on" or "shed light on" the alleged disposal of certain wastes from Ashland's Great Meadows plant at the Boarhead Farms Site. For example, Interrogatory No. 1(c) seeks to have Ashland investigate and provide information on any direct or indirect shipments from <u>any</u> Ashland facility by <u>any</u> transporter. Plaintiff's Interrogatory No. 2 asks Ashland to identify every facility other than the Great Meadows facility owned, leased and/or operated by Ashland in the three (3) state area and, for each such plant, to provide the location of the plant, the time period during which Ashland owned, leased or operated it, the identity of the prior and subsequent owners and operators of the plant, to provide a detailed description of the manufacturing, storage and disposal activities at the plant, to identify and describe all waste streams at each such plant, to provide detailed information on the disposal of all waste streams from each such plant, and to identify each and every transporter used to haul the wastes from each such other plant and the destination of such disposed wastes. Plaintiff's Interrogatory 3 seeks further information regarding such other Ashland facilities within the three (3) state area, including the distance of each such other facility from the Boarhead Farms Site, the identity of all permits Ashland possessed relative to the waste streams from each such other Ashland facility, the identity of all individuals with knowledge of such waste streams, the total number of employees at each facility, a description of any and all personnel changes at each facility, and all photographs and other documents depicting the exteriors of each such other facility. In addition, in Interrogatory No. 4, Plaintiff seeks the identity of all Ashland personnel holding

various specified positions at those other Ashland facilities almost thirty (30) years ago, including plant managers, production managers, purchasing managers, persons responsible for waste treatment, storage and disposal, plant maintenance, the retention of waste disposal services, accountants, security personnel, environmental affairs managers and worker safety personnel. In Interrogatory No. 5, Plaintiff asks Ashland to also identify, for each other Ashland facility in the three (3) state area, all persons with knowledge of the waste streams generated at each of those other facilities.

It is difficult to discern how any of the information sought by Plaintiff could yield any useful information relative to any claims or defenses in this case which, as to Ashland, involve very specific types of wastes transported from Ashland's Great Meadows facility by DCC during an eight (8) month period from late 1976 through early 1977. Therefore, one could be expected to reasonably conclude that Plaintiff's ulterior motive is to enlist the Court's help in forcing Ashland to engage in a burdensome and expensive fishing expedition with little, if any, hope that such investigation would turn up any information of potential relevance to this case. Ashland is confident that the Court will flatly reject Plaintiff's unconscionable attempt to seek discovery the only discernable purpose of which appears to be to burden, harass and annoy Ashland. As a review of its Answers to Plaintiff's Interrogatories reflects, Ashland has provided responses to each and every one of Plaintiff's Interrogatories and subparts thereof with respect to the Great Meadows facility and the transportation and disposal of wastes therefrom by DCC during the relevant time period. It should not be overlooked that Plaintiff does not assert any dissatisfaction with Ashland's responses with respect to its Great Meadows facility.

Ashland submits that in the unlikely event that any credible evidence turns up in this case indicating that wastes from any particular Ashland facility other than its Great Meadows facility may have been transported by DCC during the relevant time period or transported by any transporter to the Boarhead Farms Site, information of the type Plaintiff seeks in these Interrogatories could, at such point, become relevant as to those other Ashland facilities. However, the extensive discovery and document production in this case to date makes it abundantly clear that the only relevant facilities are the Great Meadows, Boarhead Farms and Wissinoming Facilities and that DCC is the only relevant transporter. Otherwise, as stated by Ashland in its Answers to Plaintiff's Interrogatory No. 1, "Ashland has no information that any [direct or indirect] shipments were sent to the Boarhead Farms Site from its Great Meadows, New Jersey facility or from any of its other facilities during the relevant time period." As further stated by Ashland in its Answer to Interrogatory No. 1, Ashland has no information that any shipments of Ashland wastes were transported to the Boarhead Farms Site by <u>any</u> transporter. Ashland further stated in its Answer to Interrogatory No. 1 that it has no information that any Ashland materials were transported to the Boarhead Farms Site from its Great Meadows facility "or from any of its other facilities."

As noted above, the only factual basis Plaintiff appears to rely on to support a claim that Ashland wastes were transported to the Boarhead Farms Site was equivocal and contradictory testimony given at Plaintiff's instance by three (3) former truck drivers of DCC, all of whom are convicted felons who changed their earlier testimony exonerating Ashland with respect to the Boarhead Farms Site. Regardless of whether the most recent testimony or the prior testimony of those drivers is true, none of those drivers testified that they hauled any Ashland wastes from any facility other than the Great Meadows facility. Ashland respectfully submits that the scope of the

discovery Plaintiff seeks from Ashland must be limited to relevant matters, i.e. wastes generated by Ashland's Great Meadows facility transported therefrom by DCC. Accordingly, Ashland respectfully submits that its objections to the clearly improper scope of the additional information Plaintiff seeks must be sustained and Plaintiff's Motion must be denied.

### 2.    Ashland Has Fully Responded To Interrogatory No. 1

Plaintiff seems to take issue with the completeness of Ashland's response to Interrogatory No. 1 with respect to Ashland's Great Meadows facility. Interrogatory No. 1, phrased in a most curious fashion, inquires as follows:

> Is it alleged in any document, including without limitation any document filed with the court or served on you in connection with the Case, or do you believe, have reason to believe, or surmise that:

First, Ashland is at a loss to understand the potential relevance, let alone discoverability, of what Ashland might "believe" or "have reason to believe or surmise" with respect to this case. Ashland properly objected to the phraseology used by Plaintiff insofar as Plaintiff apparently seeks to have Ashland disclose its mental thoughts and evaluations concerning this case which clearly constitute privileged and nondiscoverable work product. Nevertheless, subject to its objections, Ashland fully answered each and every subpart of this Interrogatory, stating that it had no information regarding shipments of any waste materials to the Boarhead Farms Site from its Great Meadows facility, from any other Ashland facility, or by any transporter.

Accordingly, Ashland respectfully submits that it has fully and properly responded to each and every one of Plaintiff's requests for information set forth in the subparts of this Interrogatory and that to the extent that Plaintiff seeks to delve into Ashland's "corporate mind" regarding its mental thoughts and processes, Plaintiff is attempting to go where it is forbidden to go.

11

B.    __Interrogatory Nos. 6-9__

Plaintiff asks the Court to order Ashland to provide complete answers to Interrogatory Nos. 6 through 9.    Again, Ashland submits that it has fully and completely responded to these Interrogatories, limited to the Great Meadows facility and to the relevant time period.  Interrogatory No. 6 asks Ashland to provide detailed information relative to every waste stream that Ashland might "believe, have reason to believe or surmise was sent directly or indirectly to the [Boarhead Farms] Site."  Ashland properly and fully responded to this Interrogatory as follows:

> As Ashland does not believe or have reason to believe or surmise that any wastes from its Great Meadows, New Jersey facility or from any other Ashland facility were sent, directly or indirectly, to the Site, this Interrogatory is not applicable.

Ashland is at a loss to understand why this Answer is not fully, completely and directly responsive to this Interrogatory which asks for information regarding waste streams which Ashland might believe were directly or indirectly sent to the Boarhead Farms Site.  Since Ashland has no such belief, but in fact believes the contrary to be true, further responses were not required.

Interrogatory No. 7 asks for extensive information regarding "each waste stream referenced in your response to Interrogatory No. 6."  Since Ashland did not have any information to provide concerning any such waste streams sent to the Boarhead Farms Site in its response to Interrogatory No. 6, it therefore had no information to provide in response to Interrogatory No. 7.  Nevertheless, Ashland did provide a full and complete response with respect to waste streams generated by its Great Meadows, New Jersey facility and referred Plaintiff to extensive documents and disclosures previously produced by Ashland.  Ashland further directly responded that it had no other responsive information or documents.

Interrogatory No. 8 seeks yet more information concerning waste streams that Ashland may have described in response to Interrogatory No. 6. Again, since no such waste streams were described or required to be described in response to Interrogatory No. 6, Ashland has no additional information responsive to Interrogatory No. 8. Nevertheless, again Ashland went on to provide a substantive response with respect to its Great Meadows facility, stating that it has no information or documents relating to any tests on or analyses of its waste streams coming from the Great Meadows facility, the particular information requested in this Interrogatory.

Finally, Interrogatory No. 9 requests Ashland to "account for the disposal of the waste stream from the Great Meadows facility" and for waste streams previously set forth in response to a preceding Interrogatory relating to waste streams from Ashland facilities other than the Great Meadows facility. Ashland fully and directly responded to this Interrogatory by referring Plaintiff to the extensive documents it previously produced and specifically gave an "account" of the disposal of the waste streams from Ashland's Great Meadows facility in stating that "all wastes from its Great Meadows, New Jersey facility that were transported by DeRewal Chemical Company were transported to DeRewal's Wissinoming facility in Philadelphia for handling, treatment and disposal and not to the Boarhead Farms Site." The extensive documentation produced by Plaintiff provides all of the information in Ashland's possession regarding the disposal of Ashland's waste streams from the Great Meadows facility. Ashland cannot provide more information than what it has already produced.

## C.    Ashland's General Objections To Plaintiff's Interrogatories and Document Requests

### 1.    General Objection No. 18

Plaintiff makes another attempt to have Ashland respond to its Interrogatories with respect

to facilities other than Ashland's Great Meadows, New Jersey facility by asking the Court to strike Ashland's General Objection No. 18 which objects to Plaintiff's definition of "Geographic Area" as inclusive of facilities other than Ashland's Great Meadows facility.  Ashland has already presented, and incorporates herein, its above arguments with respect to Plaintiff's improper request to have Ashland incur undue and unnecessary burden and expense in seeking and producing information as to facilities having no discernable relationship to this case generally or to Plaintiff's claims as against Ashland specifically.  Again, Ashland submits that its objections to the overbreadth of the discovery sought by Plaintiff are clearly appropriate and that its objections thereto should be sustained.

## 2.    General Objection Nos. 15, 19 and 20

Curiously, Plaintiff argues that by its General Objection Nos. 15, 19 and 20 Ashland purportedly "believes" that it is not obligated to respond to Plaintiff's Interrogatories and Document Requests with respect to waste streams from Ashland's Great Meadows facility.  Plaintiff's statement is incorrect, as evidenced by the extent and detail to which Ashland has responded to each and every one of Plaintiff's Interrogatories and Document Requests with respect to Ashland's Great Meadows facility.  While Plaintiff takes issue with Ashland's limitation of its responses to the Great Meadows facility and to the relevant eight (8) month period of time during which DCC transported Ashland wastes therefrom, the simple fact is that the generation of wastes from the Great Meadows facility during that period of time constitutes the only proper and relevant scope of discovery which, Ashland submits, Plaintiff may seek.  Again, nowhere does Plaintiff even attempt to support its bare statement that discovery beyond this duly limited scope "may shed light on" Ashland's wastes and the transportation thereof by DCC to the Boarhead Farms Site.  Thus, Ashland respectfully submits that its General Objection Nos. 15, 19 and 20 are quite appropriate, that it has fully and completely

14

responded to Plaintiff's discovery requests properly limited to the Great Meadows facility during the relevant time period, and that its objections should be sustained.

### 3.    General Objection Nos. 13, 17 and "General Statement"

Plaintiff patronizingly appears to be trying to lecture Ashland with regard to its obligation to make "reasonable inquiry" in responding to discovery requests. Ashland is well aware of its obligations in this regard and has dutifully responded to each and every one of Plaintiff's proper discovery requests, which is more than can be said of Plaintiff's responses to Ashland's discovery requests, a copy of which responses are attached hereto as Exh. "B".[2] In contrast to Ashland's discovery responses, Plaintiff has artfully dodged providing any substantive information in response to Ashland's discovery requests and has failed and refused to provide any facts supporting its contentions against Ashland with respect to the alleged dumping of Ashland wastes at the Boarhead Farms Site. Simply stated, Plaintiff refuses to acknowledge that other than the altered testimony of three (3) convicted former DCC employees, the credible and overwhelming evidence adduced in this case to date clearly demonstrates that no wastes from any Ashland facility were transported to or dumped at the Boarhead Farms Site. Further in contrast to Plaintiff's condescending statements with respect to Ashland's duty to make "reasonable inquiry," Ashland submits that had Plaintiff exercised its own duty to make such reasonable inquiries it would never had brought this action against Ashland.

In any event, Ashland's responses to Plaintiff's Interrogatories and Document Requests would be no different regardless of its assertions of General Objection Nos. 13 and 17 and thus there

---

[2]    For example, in response to Ashland's Interrogatory No. 1 asking Plaintiff to identify each hazardous substance of Ashland that Plaintiff contends was disposed of at the Boarhead Farms Site and to provide the details of each shipment thereof, Plaintiff objected to this most pertinent Interrogatory as premature.

is no basis for the striking of any of Ashland's Objections to the improper scope of the discovery sought from Ashland by Plaintiff in this action.

### D.    <u>Document Request No. 1</u>

Plaintiff is apparently not satisfied with Ashland's Response to Plaintiff's Request for Production No. 1 which requests the production of all documents that Ashland identified in response to Plaintiff's Interrogatories.  The short response to Plaintiff's contention in this regard is that Ashland has, in fact, produced all of the documents referenced by it in its Answers to Plaintiff's Interrogatories, with the exception of transcripts of deposition testimony of two (2) former Ashland employees, Arthur Curley and William Olasin, taken in connection with other litigation involving, in part, the Great Meadows facility.  Presumably, Plaintiff has copies of those transcripts.  If not, transcripts would presumably be available from the court reporter whose identity, if not known to Plaintiff, can be provided upon request.  To date, Plaintiff has made no such request.

Plaintiff's other contentions with regard to Ashland's response to Request No. 1 appear, again, to be addressed to Ashland's limitation of its discovery responses to its Great Meadows facility and all wastes generated therefrom during the relevant time period.  For the reasons set forth above, Ashland respectfully submits that to search for and provide the information and documents sought as to other Ashland facilities in a three (3) state area would require Ashland to undertake a herculean task to provide information and materials having little, if any, discernable potential relevance to this case.  Ashland's Responses to Plaintiff's Interrogatories, including Interrogatory Nos. 10 and 13, reflect that Ashland has provided full and complete responses and has produced all relevant documents pertaining to its Great Meadows, New Jersey facility.  As Ashland previously submitted, unless and until Plaintiff has presented any credible, material evidence indicating that wastes from any other Ashland facilities may have been transported to the Boarhead Farms Site

during the relevant time period, Plaintiff should not be entitled to compel Ashland incur the great burden and expense of conducting a deep sea fishing expedition in which Plaintiff seeks to have Ashland charter the boat and hire the crew.

### E.   Document Request No. 2

Quite simply, Plaintiff's Document Request No. 2 seeks to compel Ashland to produce documents that it does not have.  In summary, this Request seeks documents relating to wastes from any Ashland facility which Ashland believes or has reason to believe or surmise may have been sent directly or indirectly to the Boarhead Farms Site.  Again, Ashland has made it clear in its Answers to Interrogatories and throughout this litigation that is has no basis for believing that any wastes generated by the Great Meadows facility or from any other Ashland facility were transported to the Boarhead Farms Site.  For Ashland to respond to this Document Request would require it to reverse course and effectively admit that its wastes went to the Boarhead Farms Site, a fact which Ashland believes to be untrue.

Plaintiff states in its Brief that Ashland's response is "disingenuous."  Such unseemly baseless assault on Ashland's and its counsel's integrity again reflects no more than Plaintiff's obvious desperation in having to deal with the reality that it has no credible basis for contending, as it does, that Ashland, directly or indirectly, transported any wastes from any Ashland facility to the Boarhead Farms Site or that any such wastes otherwise found their way onto that Site.  Ashland has made full disclosure of all relevant information and documents which, unfortunately for Plaintiff, dramatically demonstrate the complete absence of any basis for Plaintiff's claims against Ashland.  Accordingly, Ashland respectfully submits that Plaintiff's Motion to Compel Ashland to provide what it does not have and which Ashland does not even believe may exist should be summarily denied.

**III.** **CONCLUSION**

For all of the foregoing reasons, Defendant Ashland Inc. respectfully submits that Plaintiff's Motion to Overrule Ashland's Objections and to Compel Responses to Plaintiff's Interrogatories and Document Requests should be denied.

Respectfully submitted,

*Richard C. Biedrzycki*

RICHARD C. BIEDRZYCKI, ESQUIRE
Attorney I.D. No. 30604
PHELAN, PETTIT & BIEDRZYCKI
121 South Broad Street
Suite 1600
Philadelphia, PA 19107
(215) 546-0500

Counsel for Defendant Ashland Inc., designated by Plaintiff as Ashland Chemical Company

Date:    November 5, 2004

18

## CERTIFICATE OF SERVICE

I, Richard C. Biedrzycki, Esquire, hereby certify that on this 5th of November, 2004, I caused a true and correct copy of the foregoing Memorandum of Law of Defendant Ashland Inc. in Support of Opposition to Plaintiff's Motion to Overrule Objections and Compel Responses to Plaintiff's Interrogatories and Document Requests, to be served by first class mail on all counsel of record addressed as follows:

**COUNSEL FOR PLAINTIFF**:

Glenn A. Harris, Esquire
Ballard Spahr Andrews & Ingersoll, LLP
Plaza 1000 - Suite 500
Main Street
Voorhees, NJ 08043-4636
e-mail:  harrisg@ballardspahr.com

Monique M. Mooney, Esquire
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street
51st Floor
Philadelphia, PA 19103
e-mail:  mooney@ballardspahr.com

**COUNSEL FOR DEFENDANTS**:

*Advanced Environmental Technology Corporation*
Thomas Sabino, Esquire
Wolff & Samson PC
The Offices at Crystal Lake
One Boland Drive
West Orange, NJ 07052
Phone:  973-325-1500
Fax:  973-325-1501
tsabino@wolffsamson.com

*Carpenter Technology Corporation*
Lynn Wright, Esquire
Edwards & Angell
750 Lexington Avenue
New York, NY 10022
Phone: (212) 756-0215
Fax: (888) 325-9169
lwright@ealaw.com

**Handy & Harman Tube Company**
Melissa E. Flax, Esquire
Carella, Byrne, Bain, Gilfillan,
      Cecchi, Stewart & Olstein, P.C.
5 Becker Farm Road
Roseland, NJ 07068-1739
Phone: (973) 994-1700
Fax: (973) 994-1744
mflax@carellabyrne.com

**Merit Metals Products Corp.**
Stephen P. Chawaga, Esquire
Monteverde, Mcalee & Hurd
One Penn Center
Suite 1500
1617 JFK Boulevard
Philadelphia, PA 19103-1815
Phone: (215) 557-2900
Fax: (215) 557-2990
schawaga@monteverde.com

**NRM Investment Co.**
Edward Fackenthal, Esquire
Law Office of Edward Fackanthal
One Montgomery Plaza
Suite 209
Norristown, PA 19401
Phone: (610) 279-3370
Fax: (610) 279-0696
edwardfackenthal@cs.com

**Rahns Specialty Metals, Inc.**
**Techalloy Co., Inc.**
**Thomas & Betts Corporation**
Andrew P. Foster, Esquire
Adina M. Dziuk, Esquire
Drinker, Biddle & Reath, LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996
Phone: (215) 988-2700
Fax: (215) 988-2757
andrew.foster@dbr.com
Adina.Bingham@dbr.com

***Flexible Circuits***
Seth v.d.H. Cooley, Esquire
A. Nicole Friant, Esquire
Duane Morris LLP
Suite 4200, One Liberty Place
Philadelphia, PA 19103-7396
Telephone: 215-979-1000
Fax: 215-979-1020
scooley@duanemorris.com
anfriant@duanemorris.com


_Richard C. Biedrzycki_
RICHARD C. BIEDRZYCKI

Date:   November 5, 2004