IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BOARHEAD FARM Agreement Group,  Plaintiff, v. ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, et al., Defendants | Civil Action No. 02-CV-3830 |

## ORDER

AND NOW, this _____ day of _____, 2004, upon consideration of Defendant Advanced Environmental Technology Corporation's Motion To Overrule Objections And To Compel Discovery Responses from Plaintiff, and the opposition thereto, it is hereby ORDERED that Defendant's Motion is DENIED.

_____
Legrome D. Davis, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BOARHEAD FARM
Agreement Group,

          Plaintiff,

v.

ADVANCED ENVIRONMENTAL
TECHNOLOGY CORPORATION, et al.,

          Defendants

Civil Action No. 02-CV-3830

**PLAINTIFF BOARHEAD FARM AGREEMENT GROUP'S MEMORANDUM
OF LAW IN OPPOSITION TO THE MOTION OF AETC TO OVERRULE
OBJECTIONS AND COMPEL DISCOVERY OF RESPONSES FROM PLAINTIFF**

## INTRODUCTION

Plaintiff Boarhead Farm Agreement Group ("Agreement Group") respectfully submits this Memorandum in opposition to Defendant Advanced Environmental Technology Corporation's ("AETC") Motion to Overrule Objections and to Compel Discovery of Responses from Plaintiff ("Motion"). The Motion should be denied primarily because the Agreement Group properly objected to discovery requests that constitute premature and improper contention interrogatories, and that are not requests seeking facts known to the Agreement Group.

This case arises out of the Boarhead Farms Superfund Site in Bucks County, Pennsylvania ("the Site"). From approximately 1969 to 1977, the Site was used as a dumping ground for the disposal of industrial wastes containing hazardous substances within the meaning of Section 101(14) of the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601(14) ("the Waste Materials"). During this time period, the Site was owned by Boarhead Corporation and was used by DeRewal Chemical Company, Inc.

("DCC"). DCC hauled the Waste Materials from industrial entities and disposed of those materials at the Site.

In 1989 the United States Environmental Protection Agency ("EPA") placed the Site on the National Priorities List ("NPL"), 40 C.F.R. Part 300, Appendix B, and subsequently implemented removal and remedial actions at the Site. In the course of its assessment of contamination at the Site, EPA identified dozens of hazardous substances on the Site. The Agreement Group entered into several Administrative Orders on Consent and Consent Decrees whereby it has funded and continues to fund remedial activities at the Site. The Agreement Group has brought the present contribution action against Defendants for costs it has incurred and will incur in connection with the cleanup of the Site.

Ashland Chemical Company ("Ashland") owned and operated a chemical plant in Great Meadows, New Jersey ("the Great Meadows Facility") from 1966 to 1978. The Great Meadows Facility was a "fine" chemical manufacturing plant, specializing in synthetic organic chemicals and hair dye intermediates which it produced in small quantities on a custom-made basis. During the time Ashland owned and operated the Great Meadows Facility, it generated several different hazardous waste streams from its manufacturing processes.

In 1976 AETC entered into an agreement with Ashland wherein AETC agreed to furnish and pay for all material, labor, power, equipment, transportation and all other items necessary to remove and dispose of some of Ashland's hazardous waste streams, including a blend of sulfuric and nitric acids. Separately, AETC entered into an agreement with DCC wherein DCC agreed to haul and dispose of the Ashland waste streams. DCC had no separate agreement with Ashland. Consistent with these two agreements, and as established by both business records and deposition testimony, Ashland consigned its waste streams to AETC and

paid AETC for removing those waste streams, and AETC paid DCC for hauling and disposing of those waste streams. DCC removed the Ashland Waste Streams from the Great Meadows Facility beginning in August, 1976 and continuing through early 1977 when DCC's waste disposal business ended.

Representatives of Ashland and AETC met with Manfred DeRewal of DCC at the Site in September of 1976, at which meeting Mr. DeRewal stated that DCC was neutralizing Ashland's acid wastes in Philadelphia and then dumping those wastes down the sewer, and that DCC planned on disposing of the acid wastes there at the Site. Manfred DeRewal also stated that he had been fined on several occasions by the Pennsylvania Department of Environmental Resources (now the Department of Environmental Protection) for pollution. Ashland nevertheless continued to use AETC to remove its waste streams and AETC continued to use DCC to haul and dispose of those wastes.

Also in 1977 AETC entered into an agreement with Diaz Chemical Corporation ("Diaz") to remove and dispose of Diaz's nitrating acid wastes, and entered into a separate agreement with DCC wherein DCC agreed to haul and dispose of the Diaz waste streams. DCC had no separate agreement with Diaz. Consistent with these two agreements, and as established by both business records and deposition testimony, Diaz consigned its waste acids to AETC and paid AETC for removing those waste acids, and AETC paid DCC for hauling and disposing of those acids. This relationship began in January, 1977 and continued through approximately April, 1977.

AETC has in its possession and has produced in this action documents establishing the above facts. Ashland and Diaz produced similar documents in the 1990s to EPA (as did AETC) in response to EPA Requests for Information pursuant to CERCLA. All of these

documents have been in the Document Repository established pursuant to the Case Management Order entered herein in February 2003.

In contrast, the only documents and information in the possession of the Agreement Group with respect to AETC are: Documents gathered by the Agreement Group from the EPA and other governmental sources; documents produced by AETC, Ashland, and Diaz either to EPA or in this litigation; and the testimony of witnesses taken herein. The Agreement Group consists solely of industrial companies whose waste was allegedly disposed of at the Site; those companies have no personal or special knowledge about DCC's historic operations or about AETC's, Ashland's, or Diaz's dealings with DCC.

Moreover, the initial Case Management Order herein created a Document Repository available to all parties. CMO at 3. Plaintiff was required to, and did, place in the Repository certain categories of documents in the possession, custody, or control of Plaintiff or of its members, including, *inter alia*, "any other non-privileged documents that refer to, relate to, or reflect upon the liability of any Defendant in connection with the Site." AETC has been free to, and in fact has, visited the Document Repository and had access to whatever documents in the Repository it has wished to see.

Thus, AETC's claim in the Motion that its discovery requests are "focused on understanding the factual basis for the claims asserted by BFAG in its amended complaint" is disingenuous. AETC Brief at 1. Instead, AETC's requests primarily either ask the Agreement Group to characterize the known facts in a way perceived by AETC to be favorable to it, or otherwise constitute contention interrogatories that are premature. The Agreement Group's objections to those requests are perfectly proper.

## ARGUMENT

The Agreement Group's Third Amended Complaint ("Complaint") alleges that AETC "arranged with DeRewal Chemical Company for the disposal of Hazardous Substances from Defendants Ashland Chemical Company and Diaz Chemical Corporation," and that AETC is a "person who by contract, agreement or otherwise, arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment of Hazardous Substances owned or possessed by AETC or by another party or entity, at the Site." Complaint at ¶¶ 31, 148. These allegations track the relevant liability language in CERCLA. Plaintiff's response to Interrogatory No. 1 identifies the persons with knowledge of the facts upon which those allegations are based as well as all documents that support and/or relate to those allegations, based upon information known to Plaintiff at that time. Of course, the Agreement Group has been diligently taking discovery of AETC, Ashland, and Diaz, and will supplement its response to this interrogatory as appropriate. The Agreement Group's response thus includes all the underlying facts relevant to the Agreement Group's claim that AETC is liable under Section 107 of CERCLA.

AETC does not suggest in its Motion that this response is in any way deficient. Instead, AETC argues that the Agreement Group's response to interrogatory numbers 2-4 and 6 are deficient. Those interrogatories, however, do not seek facts, rather they attempt to force the Agreement Group to make detailed legal contentions that apply the known facts to AETC's view of the applicable law.

Interrogatory No. 2 states: "If plaintiff alleges that AETC is an "arranger" under CERCLA, set forth with particularity the factual basis for that allegation and identify all persons with knowledge of those facts, and identify all documents that support and/or relate to that

allegation." The word "arranger" does not appear in CERCLA. CERCLA provides that liable persons include "any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances...." 42 U.S.C. § 9607(a)(3). Plaintiff informed AETC in writing on September 29, 2004 that it understands the statutory language quoted in the Complaint to be the CERCLA requirements for "arranger" liability, and that Plaintiff's response to Interrogatory No. 2, referring to its response to Interrogatory No. 1, was thus appropriate. Plaintiff also suggested that, if AETC meant something else by "arranger," AETC should let Plaintiff know so that the question could be discussed further. In any event, there can be no question that AETC fully understands the facts upon which the Agreement Group intends to rely to prove that AETC is liable under CERCLA.

Interrogatory Nos. 3, 4, and 6 similarly seek no new facts, but instead ask specific contention questions. Each begins with the phrase "If plaintiff alleges that AETC" and they finish respectively with "owned the materials and/or hazardous substances," "possessed the materials and/or hazardous substances," and "controlled the disposal process by which materials and/or hazardous substances that were allegedly transported from the Ashland Facility and the Diaz Facility to the Site [sic]." In each case the Agreement Group objected that the interrogatory was a contention interrogatory calling for Plaintiff to articulate theories of its case not yet fully developed and that it was, as such, premature. This objection was proper.

It is well settled that interrogatories seeking to learn a party's legal contentions should be postponed until discovery has progressed to a point where the responding party fully

understands the underlying facts and the application of those facts to potentially applicable law. *See B. Braun Medical, Inc. v. Abbott Laboratories*, 155 F.R.D. 525, 527 (E.D. Pa. 1994). The whole purpose of this phase of the litigation is to take discovery of the parties themselves and other non-parties who might have information about the parties. The Agreement Group is just now completing the depositions of AETC's former principals, of former Ashland employees, and of former Diaz employees. The only depositions taken prior to this phase were of former employees of DCC. The Agreement Group is gathering significant testimonial evidence concerning AETC's business dealings with Ashland and with Diaz as well as AETC's interactions with DCC.

Important legal precedents concerning liability under Section 9607(a)(3) are developing as well. The United States Court of Appeals for the First Circuit only a few months ago considered directly the meaning of the phrase "owned or possessed by such person, by any other party or entity" as it pertains to a party like AETC who claims to be a mere "broker" for hazardous waste disposal. *American Cyanamid et al., v. Capuano, et al.*, No. 03-2143 August 18, 2004. The *American Cyanamid* court held a "broker" liable under Section 9607(a)(3) even though the "broker" did not take physical possession of the waste before arranging to have it disposed of by another company.[1]

---

[1] AETC's suggestion that *Morton International v. A.E. Staley Manufacturing, et al.*, 343 F.3d 699 (3d. Cir. 2003) applies to this question is misplaced. *Morton* had nothing to do with whether a "broker" can be liable under CERCLA. Instead, *Morton* dealt with the situation where the defendant contracted with the owner of a processing facility to convert a raw material into a finished product, and was allegedly aware that the conversion process inevitably resulted in the release of hazardous waste. 343 F.3d at 680. The Third Circuit had to determine whether the defendant was liable under CERCLA even though this contract was not on its face and "an arrangement for disposal or treatment . . . of hazardous substances." 42 U.S.C. § 9607(a)(3). Those facts have nothing to do with the facts here, such that *Morton* is inapplicable.

The point here is *not* that this Court should now decide whether AETC is liable under CERCLA because it entered into arrangements for the disposal of Ashland's and Diaz's wastes with those companies and then entered into separate arrangements for the disposal of those wastes with DCC. The point is that AETC is well aware all of (indeed, in possession of) all of the facts concerning these arrangements, and it is simply too early in the litigation to require the Agreement Group to draw specific legal conclusions (or conclusions of mixed fact and law) based upon incomplete evidence. Simply stated, the Agreement Group contends that AETC's conduct makes AETC liable under Section 9607 of CERCLA. It is premature to require the Agreement Group to decide whether it will argue at trial that AETC must have "owned or possessed" the Ashland and Diaz waste to be liable[2] or, if so, whether AETC actually possessed the waste, legally possessed the waste, constructively possessed the waste, or otherwise possessed the waste within the meaning of Section 9607.

Interrogatory No. 7 is a pure contention interrogatory. It begins with "If you contend that AETC has responsibility under CERCLA for Diaz's allocable share of liability in this Case ...." The Agreement Group's actual contention is that AETC is liable under CERCLA because it arranged for the disposal of Diaz's waste, and because that waste was disposed of at the Site. Complaint at ¶¶ 31 and 148. Plaintiff thus alleges that AETC's equitable share of liability must reflect that waste. To the extent this interrogatory asks whether Plaintiff contends that Diaz, as distinguished from AETC, has some separate equitable share of liability, then the interrogatory is premature for the reasons discussed above.

---

[2] At least one court has held that Section 9607 contains no such requirement. *United States v. Mottolo*, 629 F. Supp. 56, 60 (D.N.H. 1984).

Interrogatory No. 6 is vague and confusing in part because the sentence is grammatically incomplete. There is no reference in the sentence indicating to what AETC is referring when it states "by which." It is also a contention interrogatory requiring Plaintiff to "allege" things before fact discovery is complete.

AETC asks that the Agreement Group's responses that objections to Interrogatory Nos. 9-13 be overruled and other responses compelled. This request should be denied because AETC did not prior to filing the Motion raise the alleged deficiencies with Plaintiff, and did not ask the Plaintiff to supplement or amend its response. Indeed, both AETC's September 22, 2004 and October 7, 2004 letters apparently accept the fact that these are pure contention interrogatories and simply note that Plaintiff is obligated to inform AETC if and when it has fully developed its theories as into the contentions questioned in those interrogatories. Interrogatories 9-13 are pure contention interrogatories.

Interrogatories Nos. 9 and 10 ask Plaintiff to reach factual and legal conclusions concerning the exact amount of wastes from Diaz and Ashland that were disposed of at the Site and to "include in your answer the precise nature of those hazardous substances and the days of each shipment that equal the total you allege." Plaintiff objected that these were premature contention interrogatories and noted that expert opinion testimony may be relevant in responding to the interrogatory.[5] Plaintiff also referred AETC to the depositions taken in this case and to the nexus files for each of the entities produced long ago to the Document Repository. As discussed above, fact discovery is not yet completed. Plaintiff is continuing to learn information relevant to the findings of fact that this Court will make at trial concerning the quantities and types of wastes from Ashland and Diaz that were disposed of at the Site. AETC knows exactly what each

---

[5] The next phase of this litigation will involve experts.

of the witnesses deposed to date has said concerning AETC, Ashland, and Diaz, and knows about all of the documents in the Document Repository relevant to those entities. Plaintiff isn't "hiding" any facts from AETC. The reality is that these interrogatories want nothing more than for Plaintiff to state now, before fact discovery is completed and before expert discovery has even begun, what it thinks this Court will conclude at the trial. These requests are improper at this time.

    Interrogatories Nos. 11-13 ask Plaintiff to state for AETC, Diaz, and Ashland respectively what share of liability Plaintiff alleges each entity has and to "set forth with particularity the precise rationale for your answer identifying all documents, facts, numbers, expenses, damages, etc. utilizing and calculating (each entities') alleged share of Response Costs." For the same reasons, Interrogatory Nos. 11-13 seek not facts but Plaintiff's current view as to how this Court will ultimately at trial allocate liability among the parties to this action. Section 9613 of CERCLA provides: "In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f)(1). Quite simply, the Agreement Group has no intention of forming an opinion as to any party's equitable share until it knows all of the facts concerning each party's waste streams, its relationship with DCC (or whatever other waste disposal company it dealt with), its relationship to the Site, and a myriad of other facts that this Court may conclude are "equitable factors" to be considered in allocating response costs. Any such conclusions will also be dependent upon the expert opinion testimony ultimately offered by the parties, legal rulings made by this Court, and other information and analysis that has not been gathered or considered at this point in the litigation. These contention interrogatories are premature.

Interrogatory No. 14 is vague and confusing. Plaintiff asked AETC in Plaintiff's September 27, 2004 letter to explain what AETC meant by "secretly and surreptitiously," and, more important, "secret" from whom. There are many individuals identified in the discovery to date who were aware at the time that DCC was disposing of waste at the Site. Indeed, Mr. DeRewal stated in his September 1976 meeting with AETC and Ashland that it was his intention to dispose of Ashland's waste at the Site. Moreover, this is at best a contention interrogatory; in actuality it is a request for admissions disguised as an interrogatory.[4]

Interrogatory No. 16 is not only a contention interrogatory but it is grossly overbroad. The interrogatory literally begins "If you contend." Plaintiff's response, which will not be repeated in this Brief, pointed out the gross overbreadth of this request, and Plaintiff's September 27, 2004 letter pointed out that Plaintiff has no obligation now to examine each line of deposition testimony, each sentence in each response to an EPA 104(e) request, and each document provided to EPA with such requests to determine whether any statements contained therein are either admissions or statements against interest under the Federal Rules of Evidence. AETC in its Brief highlights the impropriety of this request, stating: "What Plaintiff *considers* an admission or declaration against interest is critical *evidence*." AETC Brief at 10 (emphasis added). Plaintiff's current view of which of the hundreds (perhaps thousands) of statements in deposition testimony and in documents produced to the EPA and in this action constitute

---

[4] AETC's suggestion that the "fraud" may have been committed on it, AETC Brief at 9, is preposterous. AETC's principals admitted to an Assistant District Attorney for the City of Philadelphia that Mr. DeRewal told them that he needed to create an essentially fictitious company, Environmental Chemical Control, the name of which could be used by AETC in its arrangements with Ashland, because Mr. DeRewal had previous business dealings with Ashland and he believed that Ashland would not do business with AETC if it knew that AETC was dealing with DCC. Mr. DeRewal has testified in this action that he told the principals of AETC that he was dumping wastes from AETC's customers at the Site.

"admissions" or "declarations against interest" under the Federal Rules of Evidence is not evidence at all – it is nothing more than an argument Plaintiff may make at trial concerning the admissibility of particular testimony or documentary evidence. That evidence is in AETC's possession.

## CONCLUSION

In summary, AETC's discovery requests constitute premature and/or improper contention interrogatories. It is unfair and inappropriate for the Agreement Group to respond to such discovery requests before all of the factual and expert evidence is fully adduced in this litigation. For all of the reasons set forth above, and in the interest of justice, the Agreement Group respectfully requests that this Court deny AETC's Motion.

Respectfully Submitted,

Dated: December 16, 2004      By: _____
Glenn A. Harris, Esquire
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
A Pennsylvania Limited Liability Partnership
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
(215) 665-8500