**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BOARHEAD FARM AGREEMENT GROUP, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 02-3830 |
| | : | |
| ADVANCED ENVIRONMENTAL | : | |
| TECHNOLOGY CORPORATION, ET AL., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW OF DEFENDANT ASHLAND INC.**
**IN SUPPORT OF ITS MOTION TO STRIKE PLAINTIFF'S**
**UNTIMELY AND IMPROPER OBJECTIONS TO**
**ASHLAND'S INTERROGATORIES AND DOCUMENT REQUESTS,**
**FIRST SETS, AND TO PRODUCE MORE SPECIFIC RESPONSES THERETO**

Defendant Ashland Inc., designated by Plaintiff as Ashland Chemical Company (hereinafter "Ashland"), by and through its undersigned counsel, submits its within Memorandum of Law in Support of its Motion to Strike Plaintiff's Objections to Ashland's Interrogatories and Document Requests, First Sets, and to compel more specific responses thereto.

I.    **STATEMENT OF THE CASE**

In its Complaint, Plaintiff has generally alleged that over a nine (9) year period from January 1969 through December 1977, hazardous wastes from Ashland and the many other defendants named in Plaintiff's Complaint and in its three Amended Complaints were transported to and disposed of at the Boarhead Farm, Bucks County site (the "Boarhead Farm Site"). Extensive documents produced and testimony developed in this case to date demonstrate that the relevant time period with respect to the disposal of Ashland's alleged wastes is no more than an eight (8) month

period between August 1976 and April 1977. A summary of the allegations made by Plaintiff against Ashland and a highlighting of the evidence adduced to date through discovery pertinent to Plaintiff's claims against Ashland is appropriate to an understanding of the propriety of the information sought by Ashland but which Plaintiff has avoided providing.

In or around the summer of 1976, Ashland was solicited by Defendant Advanced Environmental Technology Corporation ("AETC") for the transportation and disposal of certain chemical wastes generated at Ashland's Great Meadows, New Jersey Facility. Discussions between Ashland and AETC led to an arrangement with AETC for the disposal of certain Ashland wastes from Ashland's Great Meadow's Facility. DeRewal Chemical Company ("DCC") was a transporter that AETC thereafter retained to pick up and dispose of certain of Ashland's Great Meadows' wastes. The testimony and documents produced to date also demonstrate that the only Ashland facility from which DCC, as contracted by AETC, picked up and transported wastes was Ashland's Great Meadows specialty organic chemicals production plant. There has been absolutely no evidence produced to date, nor even any claim made by Plaintiff, that wastes from any Ashland facility other than the Great Meadows plant were arranged by AETC to be transported and disposed of, or were transported and disposed of, by DCC during the relevant time period or at any other time.

It has also been established that during the eight (8) month time period that DCC picked up and transported wastes from Ashland's Great Meadows facility, DCC (or one of its affiliated companies) owned and operated a chemical processing and disposal facility located on the banks of the Delaware River in the Wissinoming section of the City of Philadelphia (the "Wissinoming Facility"). In early 1977, the EPA, the Pennsylvania DEP, and the City of Philadelphia investigated reports of illegal dumping by DCC of bulk wastes from its Wissinoming Facility into the Delaware River. Those agencies' investigations resulted in the arrests of a number of DCC personnel

beginning on March 29, 1977. These individuals were convicted of criminal conduct in connection with the illegal dumping of wastes, including acid wastes from Ashland's Great Meadows facility, into the Delaware River. The Wissinoming Facility was then shut down, whereupon DCC stopped hauling and disposing of Ashland's wastes. DCC was thereafter billed by the City for unpaid sewer charges associated with its illegal dumping of wastes into the Delaware River from the Wissinoming Facility. **These wastes included the very Ashland wastes that Plaintiff has now alleged were dumped at the Boarhead Farm Site.**

Thereafter, the EPA began investigating charges of illegal waste dumping activity at the Boarhead Farm Site. Sworn testimony was taken by deposition in connection with the EPA's investigation. In responding to questions relating to DCC's disposal of wastes from Ashland's Great Meadows facility, all of the testifying Boarhead/DCC personnel, including DCC's truck drivers, testified at that time that all of the waste products picked up by DCC from the Great Meadows facility were transported to and disposed of at DCC's Wissinoming Facility and that <u>none</u> of those waste products were transported to or dumped at the Boarhead Farm Site. Ashland fully cooperated with the EPA and all other government investigators, including the Philadelphia District Attorney's office, and provided all information and documents requested with respect to its waste disposal activities and its associations with DCC, the Wissinoming Facility and the Boarhead Farm Site. The EPA and the DEP apparently concluded, based on its extensive investigation, that there was no basis for pursuing any claims against Ashland with respect to the cleanup of the Boarhead Farm Site as the evidence disclosed that any and all chemical wastes from Ashland's Great Meadows facility handled by DCC were disposed of at the Wissinoming Facility and not at the Boarhead Farm Site.

Despite the government's implicit exoneration of Ashland with respect to the Boarhead Farm Site, as supported by the extensive document production occurring prior to and during the course of Plaintiff's within contribution action and the testimony developed at the EPA's instance prior to the filing of this action establishing the absence of any proof that wastes from any Ashland facility were disposed of at the Boarhead Farm Site, counsel for Plaintiff in this case arranged for the taking of the depositions of many of the same former DCC employees who had testified earlier, including those who had previously given testimony exonerating Ashland from any association with the Site. Three of those witnesses -- former DCC truck drivers -- gave deposition testimony in 2003 in this case contradicting their earlier testimony with respect to, *inter alia*, the disposal of Ashland wastes and testified that they suddenly now "recalled" that some of the loads of acid waste picked up by them from Ashland's Great Meadows facility were transported to and disposed of at the Boarhead Farm Site, acknowledging, however, that the great majority of those wastes were disposed of at DCC's Wissinoming Facility.

The drivers' altered testimony as to the alleged disposal of some of Ashland's acid waste at the Boarhead Farm Site is not supported by <u>any</u> documents that Ashland has seen or by testimony or statements of <u>any</u> independent witnesses of which Ashland is aware.  Plaintiff recently tried to elicit such testimony at depositions taken by Plaintiff's counsel of the principals of AETC, Robert Landmesser and John Leuzarder, as well as of the Ashland Great Meadows Facility plant manager, Arthur Curley.  Plaintiff's efforts were completely unsuccessful as those witnesses, through their personal observations and otherwise, corroborated that Ashland's wastes, to their knowledge, went only to DCC's Wissinoming Facility.  The recently altered, uncorroborated testimony of three former DCC drivers -- all convicted felons -- appears to form the crux of Plaintiff's claims against Ashland. Their testimony did not change, however, as to the fact that the only Ashland facility from which

4

DCC picked up wastes was the Great Meadows facility or the fact that the time period during which such wastes were picked up from that facility was limited to the period of late 1976 to early 1977.

In silent recognition of the fact that it has no basis for pursuing any claims against Ashland other than the recently altered testimony of these convicted felons, which testimony flies in the face of the extensive testimony and documents exonerating Ashland and its wastes with respect to the Boarhead Farm Site, Plaintiff's litigation strategy as to Ashland seems to now involve stonewalling discovery, in violation of the Rules of Civil Procedure, hoping that Ashland will simply rest on its laurels. Ashland, quite understandably, will not do so.

Specifically, Plaintiff has untimely objected to Ashland's First Sets of Interrogatories (Exh. "A") and Document Requests (Exh. "B"), has professed to "answer" other interrogatories by simply directing Ashland to the Boarhead Document Repository, and has balked at what Plaintiff incorrectly attempts to characterize as "overbroad" interrogatories which, in fact, are very narrowly tailored to seek particular information limited to the core issues involving Plaintiff's claims against Ashland. Each of these tactics employed by Plaintiff is improper and violates the letter and spirit of the Rules of Civil Procedure. Moreover, in contrast to Ashland which has, where appropriate, provided extensive discovery responses to all proper interrogatories and document requests propounded by Plaintiff, Plaintiff has failed to reciprocate as evidenced by its refusal to furnish any useful information in response to most of Ashland's discreet discovery requests, which requests will be discussed seriatim hereinafter. Ashland, by its undersigned counsel's letters dated November 12, 2004 (Exh. "C") and December 15, 2004 (Exh. "G"), has attempted, in good faith, to amicably resolve this discovery dispute. However, as reflected in its counsel's letter response of November 18, 2004 (Exh. "D"), Plaintiff remains quite inflexible in its positions and thus court intervention, unfortunately, cannot be avoided to resolve the dispute over Plaintiff's improper and inadequate responses to Ashland's written discovery requests.

## II.      PARTICULAR DISPUTED INTERROGATORIES AND DOCUMENT REQUESTS

**Interrogatories**

### A.      Plaintiff's Objection to Ashland's Purported "Contention" Interrogatories As Premature is Improper as Well as Untimely and Must Be Stricken as a Matter of Law.

Plaintiff has asserted an identical objection to each of the Interrogatory Nos. 1, 2 (a)-(f), 3-7 and 17, objecting to each of these interrogatories "insofar as it constitutes a contention interrogatory that calls for the Plaintiff to articulate theories of its case not yet fully developed and, as such, is premature." See Plaintiffs' Objections to Interrogatory Nos. 1, 2 (a)-(f), 3-7 (Exh. "A"). The Plaintiff's objection, in addition to being waived along with all of Plaintiff's other objections as untimely made,[1] is based on B. Braun Medical Inc. v. Abbott Laboratories, 155 F.R.D. 525, 527 (E.D. Pa. 1994). This objection is improper for several reasons.

First, Plaintiff misunderstands B. Braun which, ironically, actually highlights the impropriety of Plaintiff's objections here. In B. Braun, the court held that objections to "contention" interrogatories may be appropriate where:

(1)      the contention interrogatory is overly broad or burdensome;

(2)      the litigation is in its early stages, with little or no discovery completed; and

(3)      answering the contention interrogatory would force the respondent to articulate theories of its case not yet fully developed.

**None of these conditions are present here.** Ashland's interrogatories have not been

---

[1]      Plaintiff's responses, including any appropriate objections, to Ashland's interrogatories and document requests were due on August 15, 2004. Plaintiff served its responses on September 14, 2004, one month late. No extension of time for Plaintiff to serve objections thereto was timely requested or agreed upon. Thus, all of Plaintiff's objections, in addition to being improper and unsupportable, are untimely and hence void. Fed. R. Civ. P. 33(b)(4). See also, Shepard v. General Motors Corp., 42 F.R.D. 425 (D.N.H. 1967); Cowie v. Continental Oil Co., 28 F.R.D. 384 (S.D.N.Y. 1961).

6

propounded in the early stages of this litigation, but only after extensive nexus and liability discovery, including multiple depositions, has already taken place and after Plaintiff has had ample opportunity to gather evidence pertaining to its claims. Furthermore, Ashland's discovery requests do not require Plaintiff to go out and develop or discover new facts of which it is presently unaware, but rather to disclose facts and evidence that it currently possesses and that it relies upon in support of its very own allegations. Ashland's interrogatories are specifically tailored to these allegations and are not overbroad, general, unduly burdensome or open-ended. Ashland is entitled to the information sought to enable it to further understand and investigate the factual bases of Plaintiff's claims against it to enable Ashland to effectively pursue further investigation and discovery, as necessary, within the time parameters set by the Court. As such, Ashland's Interrogatories and Document Requests are clearly distinguishable from those which the Court did not require be answered in B. Braun.

As the disputed interrogatories reflect, Ashland does not seek to have Plaintiff make final decisions as to whether it will make certain contentions in this case or to articulate theories that Plaintiff has not yet had sufficient opportunity to develop. Rather, the interrogatories mostly relate to specific allegations made by Plaintiff in its Third Amended Complaint. Plaintiff has sued Ashland and in doing so has made specific allegations against it as well as against other Defendants. Clearly, Ashland is entitled to know the factual bases for Plaintiff's allegations against it. No discovery could be more relevant or appropriate.

Plaintiff's contention that what Plaintiff characterizes as "contention" interrogatories are premature did not stop the Plaintiff from serving its own contention interrogatories on Ashland. See, e.g., Plaintiff's "contention" Interrogatory No. 10 addressed to Ashland (Exh. "E"), to which interrogatory Ashland provided a full and complete response, in stark contrast to Plaintiff's

7

responses to Ashland's interrogatories seeking the factual bases for the specific averments made by Plaintiff in its most recent Amended Complaint. Clearly, Plaintiff's untimely objections to Ashland's so-called "contention" interrogatories based on their purported prematurity is improper and must be stricken.[2]

## B.    General Designation of Voluminous Non-Specific Documents in Lieu of Answers to Interrogatories

Plaintiff has avoided providing any meaningful information in response to most of Ashland's Interrogatories while attempting to make it appear that it has answered a number of those interrogatories by making general references to voluminous documents in the Boarhead Document Repository and/or documents located at the Pitney Hardin firm in Florham Park, New Jersey. Such responses are insufficient in that such practice of global designation of voluminous documents in lieu of tailored responses is specifically prohibited by the Rules.

Plaintiff cannot properly seek to invoke Fed. R. Civ. P. 33(d) in support of its responses to Ashland's discovery through global references to a massive volume of documents. Rule 33(d) permits a party to respond to interrogatories by referring to specific records containing the specific information sought. However, as the Rule specifically provides, such a response must be set forth in sufficient detail to permit the interrogating party to readily locate and identify the specific records from which the answer to the interrogatory may be ascertained. The Advisory Committee to the Rule specifically noted that an interrogatory response, such as those untimely propounded by

---

[2]       Furthermore, in order to afford Plaintiff even more time to attempt to develop factual support for its claims against Ashland, Ashland has refrained from filing its within motion while Plaintiff was pursuing depositions of AETC and Ashland personnel, which depositions were taken on November 22, November 29, December 6 and December 9, 2004. Thus, Plaintiff no longer has any arguable basis for further delaying its responses to Ashland's purported "contention" interrogatories and document requests on the ground of their purported prematurity.

Plaintiff here, that merely directs a party to a mass of records is an abuse of the option provided by Rule 33(d) to designate specific records in lieu of formal answers. In fact, such an attempted referral to a mass of records may result in the preclusion of evidence at trial by the party making such a mass document referral. See In Re Fine Paper Antitrust Litigation, 685 F.2d 810 (3rd Cir. 1982).

Accordingly, this Court must compel the Plaintiff to provide more specific detailed responses to Ashland's interrogatories by providing the specific information sought therein. If the information sought by Ashland is contained in specific discreet documents and Plaintiff wishes to designate those documents as constituting its answer in lieu of a narrative response, Plaintiff must specifically identify, designate and produce the particular documents, including a designation of any Bates numbers stamped thereon, in which the specific information sought by each interrogatory can be readily found.

### C.    Specific Interrogatories  (Exh. "A")

In addition to striking the Plaintiff's objections to purportedly premature contention interrogatories and ordering the Plaintiff to comply with Rule 33(d), Ashland further requests the Court to strike the Plaintiff's other groundless objections and order Plaintiff to more specifically respond, under oath,[3] to certain of Ashland's interrogatories as follows:

### 1.    Interrogatory No. 1

Ashland's Interrogatory no. 1 seeks, quite simply, the factual basis upon which it was sued by the Plaintiff insofar as it requests Plaintiff to identify all shipments of hazardous wastes from Ashland that Plaintiff contends were disposed of at the Boarhead Farm Site along with the identification of documents relating to such shipments. Subject to its improper and dilatory

---

[3]    Plaintiff's "answers" to Ashland's interrogatories were unsworn, in violation of Fed. R. Civ. P. 33(b)(1).

"prematurity" objection addressed above, Plaintiff responded that the information regarding Ashland wastes removed by DCC from Ashland is set forth in the Ashland, AETC and Southland document production contained in the Boarhead Document Repository. In its November 18, 2004 letter response (Exh. "D") to Ashland's counsel's November 12, 2004 letter (Exh. "C") seeking more specific answers by Plaintiff to certain of Ashland's interrogatories, Plaintiff's counsel stated that "Ashland is well aware of the evidentiary basis concerning Ashland's transactions with AETC and AETC's transactions with DCC. Indeed, Ashland is in itself in possession of that information. . . ." Plaintiff's counsel goes on to generally refer to the entire administrative record of the EPA proceedings relating to the Boarhead Farm Site. Moreover, Plaintiff's counsel makes a statement that "Ashland is also aware that drums or drum fragments bearing Ashland Chemical labels were excavated at the Site of part of the OU-2 activities."

First, statements of this nature by Plaintiff's counsel in purported answer to an interrogatory should have been set forth by Plaintiff in its answer to Ashland's Interrogatory. They were not. Second, as set forth above, if Plaintiff chooses to respond to an interrogatory by designating documents, it must make <u>specific</u> reference to the <u>particular</u> documents that contain the <u>specific</u> information requested in each specific interrogatory. Plaintiff's evasive response to this interrogatory can only leave Ashland guessing as to what facts, documents and other evidence Plaintiff may have to support the very core averments that it has made in its Complaint and Amended Complaints that hazardous wastes from an Ashland facility were disposed of at the Boarhead Farm Site. As stated above, Ashland has no information or knowledge of any alleged disposal of its wastes at the Boarhead Farm Site other than the challenged uncorroborated and unsubstantiated recently altered testimony of three DCC truck drivers whose recently altered testimony is at total variance with their prior sworn testimony that none of Ashland's wastes went

to the Boarhead Farm Site. Ashland asks no more than that Plaintiff provide the factual basis for its claims, other than such compromised testimony of these three drivers. If Plaintiff is not aware of any such other evidence, it should simply so state in a formal written response to Ashland's interrogatory, which response Plaintiff always has the right to supplement or amend should it obtain or acquire additional information rendering its present response incomplete or inaccurate.[4]

**2.      Interrogatory No. 2**

In its Third Amended Complaint (Exh. "F"), Plaintiff alleges in paragraph 14 thereof that "on or about November 18, 1998, the USEPA issued a Record of Decision (the "ROD") selecting a remedial action for the Site." Thereafter, as Ashland reads paragraphs 15 through 24 of Plaintiff's pleading, Plaintiff alleges, in summary, that its members agreed to fund and conduct the Remedial Action Plan described in the ROD, to incur costs associated therewith and to reimburse the EPA for costs it incurred in connection with the cleanup of the Site. It is for such alleged response costs that Plaintiff seeks recovery in this action. Yet Plaintiff has objected to Interrogatory No. 2 requesting Plaintiff to simply identify and provide limited additional information relevant to the hazardous substances, including, inter alia, the generators, transporters and arrangers for the disposal thereof, which the EPA, in its ROD, directed be cleaned up and which Plaintiff has agreed to clean up. Plaintiff's untimely objection that this interrogatory is somehow vague and ambiguous is as wrong as it is cynical. In its response, Plaintiff states that the "EPA did not direct the ROD to clean up any

---

[4]      In his letter (Exh. "D"), Plaintiff's counsel also makes reference to certain unidentified drums purportedly bearing Ashland labels that were purportedly unearthed at the Site. In addition to any information Plaintiff is aware of as to Ashland bulk wastes, Ashland is also entitled to a full and complete response to its interrogatory with respect to such alleged drums and any purported wastes that Plaintiff might be contending leaked or were spilled therefrom. Ashland cannot be expected to accept a terse, fact-deprived, one sentence comment by Plaintiff's counsel in a letter in lieu of a specific response to Ashland's interrogatory.

hazardous substance."  It is quite clear that what this interrogatory seeks, as clarified by Ashland's counsel in his letter of November 12, 2004 (Exh. "C"), is the identity of the particular hazardous substances to be cleaned up as directed by the EPA.  This interrogatory seeks no more than the factual flesh behind what Plaintiff has alleged in its Complaint.

Nothing can be more relevant to the claims and defenses at issue in this action than the information herein sought by Ashland in this Interrogatory.  To the extent that Plaintiff believes that this Interrogatory is overly burdensome because records from which this information can be obtained are publicly available, then all that Plaintiff needs to do is to more specifically designate the particular documents which it contends are publicly available and which purportedly contain the discreet information sought by the Interrogatory so that Ashland can readily identify, obtain and review those documents.  Ashland is entitled to know the specific documents responsive to its Interrogatory which Plaintiff appears to contend are somewhere among a mass of documents only generally referenced by Plaintiff in its clearly deficient response.  Such mass document referral such as that made by Plaintiff here, in addition to violating Rule 33(d), does not provide Ashland with an adequate roadmap to enable it to find the specific information to which it is entitled.

With respect to Plaintiff's objection to the information requested in subpart (i) of this Interrogatory seeking the identity of persons with information or knowledge regarding the transportation and arrangement of hazardous substances as purportedly seeking privileged information, clearly this subpart does not require the disclosure of any potentially privileged information.  Ashland is unquestionably entitled to know the identity of all individuals that Plaintiff, including its attorneys, believe have relevant information and knowledge.  Alternatively, Ashland asks the Court to order Plaintiff to submit a privilege log for any information and documents not being produced by it, including a summary of the particular bases for any claim of privilege, so that

12

Ashland can determine the propriety of such privilege claims and seek appropriate relief, if necessary.

**3.**    **Interrogatory Nos. 3, 4, 5, 8, 9 and 14**

Through these interrogatories, Ashland seeks to have Plaintiff produce an itemization of past and currently existing estimates of future, response costs and the identification of the substances being remediated for which such costs have been and are being incurred.  Such information is indisputably relevant.  Moreover, information as to Plaintiff's future response costs is equally relevant insofar as Plaintiff is professedly seeking, inter alia,  a determination in this action of each defendant's equitable share of such future response costs.  As to such future costs, Ashland has informed Plaintiff's counsel that it would be willing to accept, at this time, a supplemental answer which sets forth the equitable shares of each party that Plaintiff presently believes is appropriate, including the shares of each settling and non-settling defendant and of each member of the Plaintiff group, along with a statement of the factual bases for such apportionment (see Exh. "C").  Plaintiff is apparently unwilling to accept Ashland's proposed resolution, and thereafter Ashland submits that it is immediately entitled to the cost information requested, the relevance of which cannot be disputed as it is such costs for which Plaintiff is seeking contribution from the defendants in this action.

Relatedly, with regard to certain schedules of costs and invoices, as referenced in Plaintiff's answers to these interrogatories, and other materials as referenced in Plaintiff's counsel's letter (Exh. "D"), Plaintiff must specifically designate the particular documents among the mass of records in the Document Repository which contain the information Plaintiff believes is responsive to this Interrogatory and to which Plaintiff makes reference.  This should be easy to do, yet Plaintiff

remains inexplicably intransigent.[5]

  4.  **Interrogatory Nos. 11, 12 and 13**

  Ashland requests that Plaintiff specifically provide the information sought by setting forth the dollar amounts of the response costs and attorney's fees claimed by Plaintiff in this action. At a minimum, Plaintiff must make reference to the specific documents in the Repository, at Pitney Hardin or elsewhere, in which the information requested by these unquestionably proper Interrogatories can be found. While Plaintiff's counsel makes reference in his letter (Exh. "D") to the availability of certain records purportedly responsive to these Interrogatories, such response should be set forth formally in sworn answers.

  5.  **Interrogatory Nos. 15, 16 and 18**

  Plaintiff seems to overlook the fact that these interrogatories seek responses on behalf of each BFAG member. Plaintiff has responded to these interrogatories as though they merely sought responses on behalf of the fictional entity that the Plaintiff group members have dubbed, for purposes of this action, the "Boarhead Farm Agreement Group." At a minimum, it is unclear whether Plaintiff's responses are identical for each member of the Plaintiff "group", and Plaintiff's counsel's letter (Exh. "D") has done nothing to clarify Plaintiff's responses. Accordingly, Ashland respectfully requests that Plaintiff be ordered to provide amended and supplemental responses to these interrogatories on behalf of each BFAG member, not just on behalf of the Plaintiff association, and to specifically state that it is doing so.

  Furthermore, Ashland takes issue with Plaintiff's evasive response that it has "no independent

---

[5]  In his November 18, 2004 letter (Exh. "D"), Plaintiff's counsel refers specifically to his two earlier e-mailed documents as at least partially responsive to these interrogatories. If these documents represent Plaintiff's answer to these Interrogatories, Plaintiff should so state by way of a formal sworn answer and not by way of an informal unsworn letter.

knowledge" of any of its own hazardous substances disposed of at the Boarhead Farm Site. These interrogatories do not limit the information sought to information of which Plaintiff or the members thereof have "independent knowledge." Rather, this interrogatory seeks <u>all</u> information possessed by Plaintiff, including that of each member of the BFAG group and their respective representatives. Moreover, it is inconceivable that the BFAG members would have entered into a cleanup agreement with the EPA without being presented with, or without having independently obtained, such information. Plaintiff would not be in court seeking contribution from the Defendants had the Plaintiff members not agreed to clean up the Boarhead Farm Site, which agreement could only have come about by the Plaintiff members' recognition, based on factual information possessed by them and of which Ashland herein seeks the disclosure, that their hazardous wastes found their way to the Boarhead Farm Site. Furthermore, these Interrogatories are not "vague" as baldly asserted by Plaintiff in its responses to these Interrogatories which seek, *inter alia*, information as to each disposal site of the wastes of each BFAG member during the relevant time period (Interrogatory No. 15). Ashland respectfully submits that Plaintiff's responses to these Interrogatories are wholly inadequate and that Plaintiff should be ordered to provide full and meaningful responses thereto.

### Document Requests

#### A.     Designation of Mass Records

For the reasons set forth in Paragraph II.B. above, Ashland objects to Plaintiff's attempt to respond to Ashland's discovery requests by making general references to a mass of documents such as the documents in the Repository and/or located at a remote location in Linden, New Jersey, <u>i.e.</u> at the offices of the New Jersey law firm of Pitney Hardin Kipp and Szuch. This practice abuses Rule 33(d) and violates <u>In Re Fine Paper Antitrust Litigation</u>, <u>supra</u>. Accordingly, Ashland submits

that this Court should order the Plaintiff to amend and supplement its responses by designating the specific documents, including a designation of the Bates numbers thereof, which are responsive to each of Ashland's document requests.  Certainly, Plaintiff cannot seriously expect Ashland to be required to sift through many hundreds of boxes and files containing tens of thousands of records to try to locate what may be just a handful of documents responsive to particular discreet document requests, and then guess as to which documents Plaintiff believes are responsive to Ashland's document requests.

    **B.**    <u>**Specific Document Requests**</u> **(Exh. "B")**

    In addition to Ashland's request that the Court strike Plaintiff's untimely general objections to Ashland's document requests and that it direct Plaintiff to serve amended and supplemental responses by specifically designating the particular documents responsive to each request, Ashland further requests that the Court strike Plaintiff's other untimely objections and  order the Plaintiff to more specifically respond to the following document requests:

    **1.**    <u>**Request No. 1**</u>

    This request seeks the production of <u>statements</u> relative to matters addressed in Plaintiff's pleadings.  In its response, Plaintiff makes only a general reference to unidentified privileged documents and refers to unidentified documents created by others, who are also not identified, and undefined deposition transcripts.  This response is clearly inadequate.  The Plaintiff should be directed to specifically identify all responsive documents and, as to depositions, itemize the deposition transcripts referred to in Plaintiff's response by the name of the deponent, the date of each deposition, and the case name, court and docket number thereof.  With respect to Plaintiff's reference in its response to potentially privileged documents, Plaintiff must specifically identify all such documents and set forth the bases for each claim of privilege sufficient to enable Ashland to

evaluate whether a privilege may apply and to pursue a court ruling thereon, if necessary.

> **2.    Request No. 5**

To the extent that Plaintiff has or will be producing documents in response to other defendants' interrogatories and document requests, Ashland requests no more than that Plaintiff so state by way of a formal response to this request, followed by the production of such documents or making them available for inspection by Ashland's counsel. Plaintiff should be directed to make specific reference to the particular responsive documents among those in the Boarhead Document Repository, among the Pitney Hardin documents, or at any other accessible location sufficient to enable Ashland to readily identify, locate and review the particular responsive documents.

> **3.    Document Request Nos. 6, 7 and 8**

These requests seek the production of investigation files relating to the generation, transportation and disposal by Ashland, by Plaintiff and by all others of hazardous substances at the Boarhead Farm site.  Plaintiff's untimely objection that such a common request for the production of "investigation files" is vague, confusing or ambiguous is patently absurd, as is Plaintiff's objection that Ashland's requests are "overly broad and burdensome."  Furthermore, this document request does not, as Plaintiff contends, seek the production of attorney work product materials but only documents not prepared by Plaintiff's counsel in anticipation of litigation or in preparation for trial.  Clearly, documents created by others as well as deposition transcripts of persons unaffiliated with the Plaintiff cannot constitute attorney work product.  Furthermore, to the extent that Plaintiff refers to EPA investigation documents in its response, Ashland again requests that Plaintiff provide a specific designation of the particular responsive documents that are purportedly contained within the mass of documents in the Boarhead Document Repository, at Pitney Hardin or elsewhere.  To the extent that Plaintiff claims a privilege with respect to any otherwise responsive documents, such

claims must be set forth in detail for each document withheld.

### 4.    Request No. 10

With respect to this Request seeking documents embodying or referring to communications between Plaintiff, the members of BFAG, and the relevant government agencies and others, this request is specifically limited to documents involving communications that relate to the presence and clean up of hazardous substances at the Boarhead Farm Site.  Again, Plaintiff's claim that this request is "vague, confusing and ambiguous" or "overly broad and burdensome" as asserted by Plaintiff in its response is unfounded.  The documents requested are clearly relevant and this request is reasonably calculated to lead to the discovery of admissible evidence.

To the extent that Plaintiff is withholding the production of documents under a claim of privilege, Plaintiff must identify such documents and provide the bases for its claim of privilege relative thereto so that such claim can be evaluated and an appropriate motion be presented, if necessary.

### 5.    Request No. 11

This Request is not in any way vague, confusing, ambiguous, overly broad or unduly burdensome.  Plaintiff should be readily able to specifically identify and produce, or specifically designate, all documents relating to "agreements entered into by BFAG relating to the clean up of the Site."  To the extent that Plaintiff is withholding any responsive documents subject to a claim of privilege, again, Plaintiff must specifically identify such withheld documents and set forth, in appropriate detail, the bases for its privilege claims.

### 6.    Request No. 12

This request is not in any way vague, confusing or ambiguous as asserted by Plaintiff in its Response.  This request is clearly directed to the production of all documents that designate or refer

to BFAG, including its members, as Potentially Responsible Parties with respect to the Boarhead Farm Site. Obviously, had the BFAG members not been so designated, they would not have entered into an agreement with EPA to clean up the Site. Plaintiff's counsel's letter of November 18, 2004 (Exh. "D") asking Ashland to identify "what categories of documents" it is seeking is most confusing as Plaintiff well knows that Ashland has not limited its Request to any certain "categories" of documents.

### 7.     Request No. 15

Plaintiff's untimely objection that this Request, which seeks all documents relating to the alleged presence of Ashland's waste materials at the Boarhead Farm Site, is unintelligible, overly broad and burdensome, and completely groundless. This request seeks documents going to the very heart of Plaintiff's claims and allegations against Ashland in this case. Moreover, if Plaintiff contends that certain responsive documents can be found in the Boarhead Document Repository, at Pitney Hardin or elsewhere, the particular responsive documents among the tens of thousands of documents referenced by Plaintiff should be specifically identified so that Ashland is provided a reasonable opportunity to locate and inspect them. Also, to the extent that Plaintiff is withholding any documents from production pursuant to a claim of privilege, Plaintiff must specifically identify all such documents being withheld and state the detailed bases for Plaintiff's assertion of privilege so that Ashland can evaluate such assertion and present the matter to the court for a ruling, if necessary.

### 8.     Request Nos. 16 and 17

These requests are specifically limited to seeking the same types of documents sought in Ashland's request no. 15, but with respect to waste materials deposited at the Boarhead Farm Site that were generated, transported or disposed of by entities or persons other than Ashland including,

19

but not limited to, members of BFAG and the other defendants.  Plaintiff's responses are the same as its inadequate responses to Ashland's Document Request No. 15.  Accordingly, Ashland's comments as set forth above with respect to its Document Request No. 15 are equally applicable to these Requests and are incorporated herein by reference.

## III.    <u>CONCLUSION</u>

For all of the foregoing reasons, Defendant Ashland Inc. respectfully requests that this Court enter the attached proposed Order granting Ashland's Motion to Strike Plaintiff's Untimely and Improper Objections to Ashland's Interrogatories and Document Requests and to Compel Plaintiff to Produce More Specific Responses thereto.

Respectfully submitted,

*Richard C. Biedrzycki*

RICHARD C. BIEDRZYCKI, ESQUIRE
Attorney I.D. No. 30604
PHELAN, PETTIT & BIEDRZYCKI
121 South Broad Street
Suite 1600
Philadelphia, PA 19107
(215) 546-0500

Counsel for Defendant Ashland Inc.,
designated by Plaintiff as
Ashland Chemical Company

Date:    December 20, 2004

G:\DATA\1357-29\Disc\MoI.MotionStrikeContRogs.wpd

20

## CERTIFICATE OF SERVICE

I, Richard C. Biedrzycki, Esquire, hereby certify that on this 20th of December, 2004, I caused true and correct copies of the foregoing Motion, Proposed Order and Memorandum of Law of Defendant Ashland Inc. in Support of its Motion to Overrule Plaintiff's Untimely and Improper Objections and to Compel More Specific Responses to Plaintiff's Interrogatories and Document Requests, First Sets, to be served by hand delivery on Monique M. Mooney, Esquire, counsel of record for Plaintiff, and by first class mail, postage prepaid, on all other counsel of record, at the following addresses:

**COUNSEL FOR PLAINTIFF**:

Glenn A. Harris, Esquire
Ballard Spahr Andrews & Ingersoll, LLP
Plaza 1000 - Suite 500
Main Street
Voorhees, NJ 08043-4636
e-mail:  harrisg@ballardspahr.com

Monique M. Mooney, Esquire
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street
51st Floor
Philadelphia, PA 19103
e-mail:  mooney@ballardspahr.com

**COUNSEL FOR DEFENDANTS**:

***Advanced Environmental Technology Corporation***
Thomas Sabino, Esquire
Wolff & Samson PC
The Offices at Crystal Lake
One Boland Drive
West Orange, NJ 07052
Phone:  973-325-1500
Fax:  973-325-1501
tsabino@wolffsamson.com

***Carpenter Technology Corporation***
Lynn Wright, Esquire
Edwards & Angell
750 Lexington Avenue
New York, NY 10022
Phone: (212) 756-0215
Fax: (888) 325-9169
lwright@ealaw.com

***Handy & Harman Tube Company***
Melissa E. Flax, Esquire
Carella, Byrne, Bain, Gilfillan,
        Cecchi, Stewart & Olstein, P.C.
5 Becker Farm Road
Roseland, NJ 07068-1739
Phone: (973) 994-1700
Fax: (973) 994-1744
mflax@carellabyrne.com

***Merit Metals Products Corp.***
Stephen P. Chawaga, Esquire
Monteverde, Mcalee & Hurd
One Penn Center
Suite 1500
1617 JFK Boulevard
Philadelphia, PA 19103-1815
Phone: (215) 557-2900
Fax: (215) 557-2990
schawaga@monteverde.com

***NRM Investment Co.***
Edward Fackenthal, Esquire
Law Office of Edward Fackanthal
One Montgomery Plaza
Suite 209
Norristown, PA 19401
Phone: (610) 279-3370
Fax: (610) 279-0696
edwardfackenthal@cs.com

***Rahns Specialty Metals, Inc.***
***Techalloy Co., Inc.***
***Thomas & Betts Corporation***
Andrew P. Foster, Esquire
Adina M. Dziuk, Esquire
Drinker, Biddle & Reath, LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996
Phone: (215) 988-2700
Fax: (215) 988-2757
andrew.foster@dbr.com
Adina.Bingham@dbr.com

*Flexible Circuits*
Seth v.d.H. Cooley, Esquire
A. Nicole Friant, Esquire
Duane Morris LLP
Suite 4200, One Liberty Place
Philadelphia, PA 19103-7396
Telephone: 215-979-1000
Fax: 215-979-1020
scooley@duanemorris.com
anfriant@duanemorris.com


*Richard C. Biedrzycki*
RICHARD C. BIEDRZYCKI

Date:   December 20, 2004

G:\DATA\1357-29\Disc\MoLMotionStrikeContRogs.wpd

23