# EXHIBIT "D"

LAW OFFICES
# BALLARD SPAHR ANDREWS & INGERSOLL, LLP
A PENNSYLVANIA LIMITED LIABILITY PARTNERSHIP
PLAZA 1000 - SUITE 500
MAIN STREET
VOORHEES, NEW JERSEY 08043-4636
856-761-3400
FAX: 856-761-1020
LAWYERS@BALLARDSPAHR.COM

BALTIMORE, MD
DENVER, CO
PHILADELPHIA, PA
SALT LAKE CITY, UT
WASHINGTON, DC
WILMINGTON, DE

PARTNER RESPONSIBLE FOR
VOORHEES, NJ PRACTICE
BENJAMIN A. LEVIN

GLENN A. HARRIS
DIRECT DIAL: 856-761-3440
PERSONAL FAX: 856-761-9001
E-MAIL: HARRISG@BALLARDSPAHR.COM

November 18, 2004

**Via E-mail**

Richard C. Biedrzycki, Esquire
Phelan, Pettit & Biedrzycki
The North American Building
Suite 1600
121 South Broad Street
Philadelphia, PA  19107

   *Re:*    *Boarhead Farm Litigation*

Dear Mr. Biedrzycki:

        This letter is in response to your letter dated November 12, 2004.  The thrust of your letter seems to be that, having asked in multiple discovery requests for "everything," Ashland is now dissatisfied that Plaintiff agreed to produce "everything" in response.  The second thrust appears to be that Ashland is unhappy that Plaintiff answered the precise request made, and not the request that Ashland intended to make.  Nevertheless, this letter is a good faith attempt to respond to Ashland's various complaints about Plaintiff's discovery responses.

        With respect to Interrogatory No. 1, that Interrogatory seeks detailed information about "each shipment of hazardous substances Plaintiff contends" was generated or transported to and disposed of at the Site.  Plaintiff has formed no "contentions" as to any specific shipments of Ashland hazardous substances.  Nevertheless, Ashland is well aware of the evidentiary basis concerning Ashland's transactions with AETC and AETC's transactions with DCC.  Indeed, Ashland is itself in possession of that information.  Ashland is also in possession of the transcripts of the depositions taken of each of the witnesses to date in this matter.  The Document Repository contains the entire Administrative Record prepared by EPA up to issuance of the ROD.  The documents in that Administrative Record, including, but not limited to, the RI/FS and the ROD identify a multitude of hazardous substances and other substances that were present in one or more media at the Site.  Ashland is also aware that drums or drum fragments bearing

Richard C. Biedrzycki, Esquire
November 18, 2004
Page 2

Ashland Chemical labels were excavated at the Site as part of the OU-2 activities. These proofs collectively serve as the factual basis for Plaintiff's allegation that Ashland is a person liable under Section 107(a).

With respect to Interrogatory No. 2, the language of this Interrogatory is unintelligible. If, as you state in your letter, Ashland is seeking "the identity of the hazardous substances to be cleaned up as directed by EPA," then Ashland is asking Plaintiff to explain EPA's decision-making process for each of the many actions EPA has taken at the Site. EPA's decision-making process leading up to and including the issuance of the ROD is set forth in the Administrative Record compiled by EPA and in the ROD itself. Plaintiff believes that a complete copy of that Administrative Record is available in the Document Repository. With respect specifically to the response actions that Plaintiff is taking that are "directed by the EPA", the ROD sets forth EPA's "decision" in that respect. The ROD is, of course, based on the RI/FS, and upon other documents in the Administrative Record.

This Interrogatory and its subparts are additionally confusing because they repeatedly refer to "each Hazardous Substance." Persons are liable under CERCLA if they meet one of the statutory definitions in Section 107(a) and there has been "a release, or a threatened release which causes the incurrence or response costs, of a hazardous substance . . . ." Any such person is responsible for "necessary costs of response . . . consistent with the national contingency plan." Consistent therewith, Plaintiff's Third Amended Complaint alleges that there were releases or threatened releases of one or more hazardous substances at or from the Site, and that Plaintiff has incurred and will continue to incur in the future necessary costs of response that were and will be incurred consistently with the NCP. Complaint at ¶¶ 1, 23-24. Plaintiff's Complaint does not allege any list of specific hazardous substances that the EPA "directed" be cleaned up, nor does it allege, as each such hazardous substance, who generated that substance, who transported and disposed of it at the Site, who arranged for such transportation, or any of the other subsets of information sought in this Interrogatory. Whether or not Plaintiff will at some point in the future "contend" that any particular person or entity generated each and every hazardous substance identified by EPA as present in one or more media at the Site remains to be seen. Plaintiff's objection that Interrogatory No. 2(i) seeks information protected by the attorney-client and/or common interest privileges and/or the work-product doctrine is appropriate because this interrogatory subset seeks the identity of persons that "have information" about the subject matter of the subset, it is not limited to persons with personal knowledge. Thus, I personally have "information" about the subject matter because, *inter alia*, I sat through all of the Site Witness depositions taken in this matter.

With respect to Interrogatory Nos. 3, 4, 5, 8, 9 and 14, I read your letter as continuing to seek some form of statement by Plaintiff concerning the "equitable share of each party that Plaintiff presently believes is appropriate." None of these Interrogatories, however, asks for such a statement, and none be read to do so. Moreover, the Court in this matter will determine at trial "equitable shares" by "using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f)(1). Factual discovery is not yet complete. Expert discovery

Richard C. Biedrzycki, Esquire
November 18, 2004
Page 3

has not yet begun. Plaintiff has not "presently" formed a belief as to the any person's equitable
share, and believes it would be grossly premature to do so before factual and expert discovery is
completed. With respect to the schedules of costs and invoices, you were provided on
September 15, 2004 by e-mail with tables tracking in great detail each dollar spent by Plaintiff in
the performance of work pursuant to the two Consent Decrees, and copies of those tables along
with complete invoice packages supporting those tables are available for inspection and copying
in the Document Repository. On September 28, 2004, also by e-mail, you were provided with
trust ledgers from the Pitney Hardin Kipp & Szuch accounts with respect to response costs
payments. The files backing up those ledgers are available at Pitney Hardin Kipp & Szuch for
inspection and copying. If you would like to review any of these schedules or the underlying
invoice packages, simply call Michelle New in Philadelphia and she will make them available to
you.

        With respect to Interrogatory Nos. 11, 12 and 13, your letter asks that Plaintiff set
forth "the dollar amounts of the Response Costs and attorney's fees claimed by Plaintiff."
Plaintiff's Response Costs incurred to date are reflected in the de maximis tables previously
produced reflecting response actions undertaken by Plaintiff pursuant to the Consent Decrees.
Those costs continue every month. Plaintiff's Response Costs also include payments made to
date and that will continue to made directly to EPA reimbursing EPA for EPA's Past Response
Costs, Interim Response Costs, and Future Response Costs, as those terms are defined in the
Consent Decrees. Copies of the invoices from EPA and payments made by Plaintiff with respect
to those invoices are available for inspection and copying in the Document Repository. With
respect to attorney's fees, Plaintiff does not now seek recovery of attorney's fees paid to PHKS.
Plaintiff will make available for inspection and copying records concerning attorney's fees paid
to Montgomery McCracken Walker & Rhoads for which Plaintiff is seeking recovery. Any of
the records discussed in this paragraph are available by simply calling Ms. New.

        With respect to Interrogatory Nos. 15, 16, and 18, Plaintiff does not understand
why Ashland believes that Plaintiff has "overlooked" the language in those Interrogatories that
refer to "each member" of the BFAG. Please explain the basis of Ashland's belief. Moreover,
with respect to your statement that the Interrogatories are not vague, and that they "seek, quite
simply, information as to each disposal site of the waste of each BFAG member during the
relevant time period" please explain which language in which of the enumerated Interrogatories
seeks such information. Plaintiff does not, and cannot, read any of those Interrogatories to seek
such information.

        With respect to Document Request No. 5, each response by Plaintiff to discovery
served by other parties has been provided to Ashland. Documents made available by Plaintiff for
inspection and copying in response to any such discovery requests were identified in those
responses and will be made available to Ashland as well.

        With respect to Document Request Nos. 6, 7 and 8, your letter does not explain
what Ashland meant by the phrase "investigation files and other documents" but simply says the
phrase is not vague or ambiguous. Please explain exactly what types of "files and other

VH_DOCS_A #172407 v1

Richard C. Biedrzycki, Esquire
November 18, 2004
Page 4

documents" you believe these requests involve, and Plaintiff will reconsider its vagueness objection. EPA's "investigation documents" are included in the Administrative Record in the Document Repository, because that is one of the elements of EPA Administrative Records. It is not Plaintiff's burden to go through EPA's Administrative Record to determine which elements of the Administrative Record constitute "investigation files and other documents." Moreover, Plaintiff strongly disagrees with the suggestion in your letter that pages from deposition transcript of persons unaffiliated with Plaintiff and documents created by others do not constitute attorney work product when combined by an attorney into discreet files specific to particular defendants or other persons. It is the very decision to include some or all of a particular transcript or document in such a file that constitutes attorney work product. As stated in Plaintiff's objection, any such documents, transcripts, or portions thereof that might be contained in files created and maintained by Plaintiff in anticipation of or as part of this litigation are privileged even though the documents and transcripts themselves may not be. In any event, any such documents and transcripts or portions thereof so assembled have been produced in their entirety as part of this litigation.

With respect to Document Request No. 9, you have been provided by e-mail with copies of settlement agreements entered into to date with Defendants in this litigation. Additional copies of those documents are available by simply phoning Ms. New. You have been provided with two settlement agreements with the United States (on behalf of the Navy), both of which have been filed with the Court in conjunction with Motions to approve those settlements. The Document Repository contains two Administrative Consent Orders and two Consent Decrees that constitute settlements between the Plaintiffs and EPA. Those documents are available by phone call to Ms. New.

With respect to Document Request No. 10, almost any communication by anyone in the world and having to do with the Boarhead Farm Site could be a communication "relating to the presence of and clean-up of hazardous substances at the Site." It is thus very unclear exactly what "communications" Ashland is seeking by this request. In any event, Plaintiff has made available in the Document Repository all reports and correspondence by it to USEPA and PADEP or from those agencies to Plaintiff. They can be immediately identified on the index to the Document Repository.

With respect to Document Request No. 11, the phrase "documents embodying, evidencing, referring or relating to any and all agreements entered by BFAG relating to the clean-up of the Site" could be read to refer to the two Administrative Consent Orders, the two Consent Decrees, the various agreements of the OU-1 and OU-2 Groups, contracts between Plaintiff and the various Site contractors, and every single piece of paper reporting on, dealing with, or otherwise discussing the clean-up work, including each and every invoice, cover letter, payment check, cover letters thereto, etc. The request is thus, vague, confusing, ambiguous, overbroad, and unduly burdensome.

Richard C. Biedrzycki, Esquire
November 18, 2004
Page 5

With respect to Document Request No. 12, please identify what categories of documents Ashland believes would be documents that "designate or refer to BFAG, including its members, as Potentially Responsible Parties."

With respect to Document Request Nos. 15-17, explaining that Ashland believes that the documents sought in this Request "go to the very heart of Plaintiff's claims and allegations," does not clarify what types of documents Ashland is seeking. Please identify by category or otherwise what type of documents Ashland believes would be responsive to Request Nos. 15-17.

Finally, I do not understand the second to last sentence in your letter. Plaintiff fully intends to pursue discovery from or relating to Ashland, including the relief sought in our Motion to Compel and any and all depositions we wish to take relevant to Ashland. Indeed, Ashland was granted an extension of time to respond to that Motion at least in part because of your representation that at least one purpose for the extension of time was so that Ashland and Plaintiff could try to amicably resolve the deficiencies in the Ashland discovery responses identified in the Motion. The one and only communication from you that could be characterized as such an attempt is one in which you asked that the Motion with withdrawn in return for nothing whatsoever further from Ashland in terms of either information or document production.

Very truly yours,

Glenn A. Harris

GAH/dmn
cc:    Counsel on Attached List

VH_DOCS_A #172407 v1

Richard C. Biedrzycki, Esquire
November 18, 2004
Page 6

## *Boarhead Farm Defendants' Service List*

Thomas W. Sabino, Esquire
Wolff & Samson, PC
The Offices at Crystal Lake
One Boland Drive
West Orange, New Jersey  07052
Phone:  973-325-1500
Fax:  973-325-1501
e-mail:  tsabino@wolffsamson.com

*-and-*

Robert M. Morris, Esquire
Morris & Adelman, P.C.
1920 Chestnut Street
P.O. Box 30477
Philadelphia, PA  19103
Phone:  215-568-5621
Fax:  215-568-3253
e-mail:  rmmorris@morrisadelman.com
*Advanced Environmental Technology Corp.*


Melissa Flax, Esquire
Carella, Byrne, Bain, Gilfillian, Cecchi,
        Stewart & Olstein, P.C.
5 Becker Farm Road
Roseland, New Jersey  07068-1739
Phone:  973-994-1700
Fax:  973-994-1744
e-mail:  mflax@carellabyrne.com
*Handy & Harman Tube Company*


Lynn Wright, Esquire
Edwards & Angell, LLP
750 Lexington Avenue
New York, New York  10022-1200
Phone:  212-308-4411
Fax:  212-308-4844

VH_DOCS_A #172407 v1

Richard C. Biedrzycki, Esquire
November 18, 2004
Page 7


e-mail: lwright@ealaw.com
*Carpenter Technology Corporation*


Seth v.d.H. Cooley, Esquire
Duane Morris LLP
Suite 4200, One Liberty Place
Philadelphia, PA 19103-7396
Phone: 215-979-1000
Fax: 215-979-1020
e-mail: secooley@duanemorris.com
*Flexible Circuits & Etched Circuits*

-and-

A. Nicole Friant, Esquire
Duane Morris LLP
One Liberty Place
Suite 4200
Philadelphia, PA 19103-7396
Phone: 215-979-1818
Fax: 215-979-1020
e-mail: anfriant@duanemorris.com


Stephen P. Chawaga, Esquire
Monteverde, McAlee & Hurd
One Penn Center at Suburban Station
Suite 1500
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103-1815
Phone: 215-557-2900
Fax: 215-557-2990
e-mail: schawaga@monteverde.com
*Merit Metals Products Corp.*


Andrew P. Foster, Esquire
Drinker, Biddle & Reath, LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996
Phone: 215-998-2700


VH_DOCS_A #172407 v1

Richard C. Biedrzycki, Esquire
November 18, 2004
Page 8


Fax: 215-988-2757
e-mail: Andrew.foster@dbr.com
*Rahns Specialty Metals, Inc.*
*Techalloy Co., Inc.*
*Thomas & Betts Corporation*

        -and-

Adina Marie Bingham, Esquire
Drinker Biddle & Reath LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA  19103-6996
Phone:  215-988-2700
Fax:  215-988-2757
e-mail:  Adina.Bingham@dbr.com


Edward Fackenthal, Esquire
Law Office of Edward Fackenthal
One Montgomery Plaza
Suite 209
Norristown, PA  19401
Phone: (610) 279-3370
Fax:  (610) 279-0696
*NRM Investment Co.*
e-mail:  edwardfackenthal@cs.com


Richard C. Biedrzycki, Esquire
Phelan, Pettit & Biedrzycki
The North American Building
Suite 1600
121 South Broad Street
Philadelphia, PA  19107
Phone:  215-546-0500
Fax:  215-546-9444
e-mail:  rbiedrzycki@pp-b.com
*Ashland, Inc.*


VH_DOCS_A #172407 v1