# EXHIBIT A

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF PENNSYLVANIA

BOARHEAD FARM AGREEMENT GROUP,          :
                                        :
              Plaintiff,                 :          CIVIL ACTION
                                        :
       v.                               :          NO. 02-3830
                                        :
ADVANCED ENVIRONMENTAL                   :
TECHNOLOGY CORPORATION, ET. AL.          :
                                        :
                                        :
              Defendants.                :

## INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS OF PLAINTIFF BOARHEAD FARM AGREEMENT GROUP DIRECTED TO DEFENDANT CARPENTER TECHNOLOGY CORP.

Pursuant to Federal Rules of Civil Procedure 33 and 34, Plaintiff Boarhead Farm

Agreement Group ("Plaintiff"), by its undersigned counsel, hereby propounds these

Interrogatories And Requests For Production Of Documents ("the Interrogatories') of Plaintiff

Boarhead Farm Agreement Group Directed To Defendant Carpenter Technology Corp.

("Carpenter").


I.    **DEFINITIONS**

1.     The term "you," "your," or "your company," shall mean the addressee of the

Interrogatories, the addressee's officers, managers, employees, trustees, successors, assigns and

agents as well as any and all predecessor entities of the addressee entity including any entity

purchased by the addressee and any division, group, subsidiary or section of the addressee entity.

2.     The term "facility" or "facilities" shall mean, unless the context of the request

indicates otherwise, any plants, factories, warehouses, retail stores, laboratories, or other

operations conducted by you.

3.    The term "the Site" shall mean the Boarhead Farms Superfund Site, which is located in Bridgeton Township, Bucks County, Pennsylvania.

4.    The term "hazardous substance" shall have the same definition as that contained in Section 101(14) of CERCLA and the New Jersey Spill Compensation and Control Act and includes any mixtures of such hazardous substances with any other substances, including petroleum products.

5.    The term "materials" shall mean all substances that have been generated, treated, stored, or disposed of or otherwise handled by respondent, including but not limited to all hazardous substances, pollutants and contaminants, hazardous waste, solid waste, liquid waste, volatile organic chemicals, polychlorinated bi-phenyls, metals, asbestos, sludges, paint, paint thinners, medical wastes, caustics, and acids.

6.    The term "identify" means, with respect to a natural person, to set forth, to the extent known, the person's name, present or last known business address and business telephone number, and present or last known job title, position or business.

7.    The term "identify" means, with respect to a corporation, partnership, business trust or other association or business entity (including a sole proprietorship) to set forth, to the extent known, its full name, present or last known address, legal form (e.g. corporation, partnership, etc.), organization, if any, and a brief description of its business.

8.    The term "identify" means, with respect to a document, to provide, to the extent known, the type of document; the general subject matter; the date of the document; author(s); addressee(s); and recipient(s).

9.    The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a).

10.     The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Interrogatories any information which might otherwise be construed to be outside its scope.

11.     The term "waste" means any garbage, refuse, trash, scrap, sludge from a waste treatment plant (including sewage sludge), water supply treatment plant and air pollution control facility, and any other discarded material including but not limited to solid material, liquid material, semisolid material, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from residential, domestic and community activities.

12.     The term "waste stream" means the total volume of materials, including waste materials or residue, off-specification products, by-products, or disposed-of final products, created by a process or activity rather than the amount of hazardous constituents within a volume of material.

13.     The term "person" or "entity" includes but is not limited to an individual, partnership, corporation, other business association, governmental (including municipal) entity or agency or any other entity.

14.     The term "customer" or "customers" shall mean all persons (a) for and/or from whom you picked up or collected, caused to be picked up or collected, or arranged for pickup or collection of a waste for transport and/or disposal, (b) that provided any waste to you for transport to disposal or treatment facilities or sites, and/or (c) whose waste you transported or arranged for transport to disposal or treatment facilities.

15.     The terms "disposal," "arranged for," "transport," and "transporter" shall have the meanings of those terms under the federal Comprehensive Environmental Response, Compensation and Liability Act and Pennsylvania Hazardous Sites Cleanup Act.

16.    The term "employees" shall mean all of your and your potential predecessors' present and former employees, shareholders, officers, managers, trustees, successors, assigns, contractors, and agents.

17.    The term "Transporter" shall mean any of the following persons or entities: Manfred DeRewal, Sr.; Bruce DeRewal; Manfred DeRewal, Jr.; Jeffrey Shaak; John Barsum; Richard Minthorn; Kenneth Gross; John Shuman; Joseph Sienkowski; Karen Bean; John Bean; Linda Cochran; Alex Imich; Marvin Jonas; Danny Rufe; DeRewal Chemical Co.; Boarhead Corporation; Environmental Chemical Control, Inc.; Revere Chemical Company; Revere Chemical Transport Company; Echo, Inc.; Marvin Jonas, Inc.; Jonas Waste Removal; Advanced Environmental Technology Corporation; Envirotech Co.; and/or any transporter that the party has reason to believe may have used the Site (collectively the "Transporters").

18.    The term "Relevant Time Period" means January 1, 1969 through and including December 31, 1977.

19.    The term "Case" shall mean Boarhead Farm Agreement Group v. Advanced Environmental Technology Corporation, et al., Civil No. 02-3830 (E.D. Pa., filed June 18, 2002).

20.    The term "Reading Facility" shall mean your facility in Reading, Pennsylvania.

21.    The term "Geographical Area" shall mean New York, New Jersey and Pennsylvania.

## II.    INSTRUCTIONS

1.    The singular includes the plural; the plural includes the singular. The masculine gender includes the feminine and neuter genders; and the neuter gender includes the masculine and feminine genders. "Each" shall be construed to include "every" and "every" shall be construed to include "each". "Any" shall be construed to include "all" and "all" shall be

construed to include "any". The use of a verb in any tense shall be construed as the use of the verb in a past or present tense, whenever necessary to bring within the scope of the Interrogatories all responses which might otherwise be construed to be outside its scope.

2.      Each interrogatory and request for production is a continuing one. If, after serving an answer to an interrogatory or a request for production, you obtain or become aware of any further information pertaining to such interrogatory or request for production, you are required to serve upon the attorneys for all parties an amended answer setting forth any and all such information.

3.      Identify any and all documents for which you claim any privilege and state with specificity the nature of the privilege.

## III.   **INTERROGATORIES**

### INTERROGATORY NO. 1

Is it alleged in any document, including without limitation any document filed with the court or served on you in connection with the Case, or do you believe, have reason to believe, or surmise that:

(a)      Any direct shipments of materials were sent to the Site from any of your facilities?

(b)      Any indirect shipments of materials were sent to the Site from any of your facilities?

(c)      Any direct or indirect shipments of materials were transported from any of your facilities by a Transporter?

(d)     Any direct or indirect shipments of materials were transported to the Site from any of your facilities by a transporter not listed in the definition of "Transporter?"

(e)     There were other direct or indirect shipments of materials to the Site from any of your facilities which were not previously identified?

(f)     You, or any of your facilities, ever had any direct dealings with the Site or any person affiliated with the Site? If so, identify the persons involved, whether any contract or other documents exist and whether your company selected the Site as a disposal facility.

If you have answered "yes" to any of the above questions, identify the facility and the transporters or Transporters and all documents that refer to, relate to, support or contradict your response to this interrogatory and its subparts.

<u>INTERROGATORY NO. 2</u>

Identify every other facility owned, leased or operated by you, alone or in conjunction or joint venture with any other person, in the Geographical Area at any time during the Relevant Time Period, including:

(a)     The name and address of each such facility;

(b)     The time period(s) that you owned, leased or operated such facility;

(c)     Your predecessor(s) at each such facility;

(d)     Your successor(s) at each such facility;

(e)     A complete description of the types of manufacturing, storage and disposal activities that occurred at each such facility, including a description of the waste stream(s) generated at each facility;

(f)     A complete description of how the waste stream(s) generated at each such facility were disposed of, including the arrangements made for disposal of the waste; the identity of any transporter(s) or Transporter(s) used to haul the waste; and the ultimate disposition of the waste.

INTERROGATORY NO. 3

With respect to the Reading Facility and every other facility identified in response to Interrogatory No. 1 above, identify the following:

(a)     Address;

(b)     Distance of facility from the Site;

(c)     Years you owned or operated the facility;

(d)     Your predecessor at the facility;

(e)     Your successor at the facility;

(f)     Years your immediate predecessor and immediate successor owned or operated the facility;

(g)     A complete description of the types of manufacturing, storage and disposal activities which occurred at the facility, including a description of each waste stream generated at the facility;

(h)     Copies of all Federal, State and local permits or other documents that relate to or describe in any way any waste stream described above;

(i)     The names of person(s) presently or formerly employed by you who have the most knowledge about the subject matter of the Interrogatories, and state the time period of employment and the positions held

(j)     The names of person(s) presently or formerly employed at the facility familiar with operations at the facility that produced "pickle liquor;

(k)     The total number of employees at each facility during the relevant time period and a description of any personnel changes during the relevant time period;

(l)     Any documents, including without limitation, photographs, paintings, drawings, sketches, models and reproductions, that depict or purport to depict the exterior of the facility; and

(m)     All documents that refer to, relate to, support or contradict your response to this interrogatory and its subparts.

<u>INTERROGATORY NO. 4</u>

With respect to the Reading Facility and every other facility identified in response to Interrogatory No. 1 above identify the person(s) responsible for the following positions, including the time period(s) during which the position was held:

(a)     Plant management;

(b)     Production management;

(c)     Purchasing;

(d)     Waste treatment, storage or disposal;

(e)     Maintenance;

(f)     Hiring waste disposal services;

(g)     Accounting, including without limitation accounts payable and accounts receivable;

(h)     Security;

(i)     Environmental affairs or environmental management; and

(j)    Worker Safety.

Identify all documents that refer to, relate to, support or contradict your response to this interrogatory and its subparts.

INTERROGATORY NO. 5

With respect to the Reading Facility and every other facility identified in response to Interrogatory No. 1 above, identify any persons other than those identified in response to Interrogatory No. 4, who have, could have or could have had knowledge relating to the waste streams identified in response to Interrogatory No. 3(g), and state the position(s) they held and the time period(s) during which the position was held. Identify all documents that refer to, relate to, support or contradict your response to this interrogatory.

INTERROGATORY NO. 6

With respect to the waste stream from the Reading Facility and with respect to each waste stream referenced above in your response to interrogatory number 3(g) which you believe, have reason to believe or surmise was sent directly or indirectly to the Site or which is referenced in any document relating to the Site or which was handled by a Transporter, unless you can demonstrate that such waste stream handled by such Transporter was, in its entirety, taken directly to a site or sites other than the Site, state or provide a good faith estimate of:

(a)    A complete description of the process creating the waste stream, noting any changes in the process that occurred during the Relevant Time Period and the points in the process where the waste stream was generated, and including, without limitation, the raw materials used and byproducts or off-spec material generated in the process that produced the

waste stream and, if the composition of the raw material is not clearly identifiable from its name, provide material safety data sheets or equivalent documentation;

(b)     A complete description of the process that generated "pickle liquor," removed by DeRewal Chemical Company including what types of steel or other metals pickled, or otherwise processed at the Reading Facility, the size and capacity of the pickling or metal cleaning or processing operation, the volume and type of materials generated by these operations, including, but not limited to, the waste products of these operations, and any known or suspected constituents contained within the waste products, including but not limited to pickle liquor, hydrochloric or other acids, and any chlorinated solvents including, but not limited to TCE, TCA, Perc or DCE;

(c)     The specific source, nature, formulation and constituents of each waste stream, including, without limitation, any constituent that, based on its mishandling, may have become part of a waste stream, the physical state of the waste stream (e.g., liquid, gas, solid, semi-solid), the chemical content of the waste stream and the chemical, generic, trade, brand or other name for the waste. If you contend that a constituent evaporated or was neutralized, the basis for this contention must be explained in full;

(d)     The amount of each waste stream produced per year during the Relevant Time Period;

(e)     The receptacle used to collect each waste stream including: (1) a description of the receptacle, including without limitation each bin, box, drum, dumpster, tank, sump, catch basin, reactor, tanker, pipe, pit, ditch, roll off, bag, barrel and lagoon; (2) the size of each receptacle; (3) the supplier of each receptacle (i.e., your company, or another person); (4) the location of each receptacle; and (5) the frequency at which each receptacle was emptied;

(f)    The equipment used to remove the waste from each receptacle including: (1) a description of the type of equipment; (2) the amount of waste the equipment removed or could remove; and (3) whether any equipment used to remove each waste stream was owned or operated by the facility or another person, and, if owned or operated by another person, the identity of that person.

Identify all documents that refer to, relate to, support or contradict your response to this interrogatory and its subparts.

INTERROGATORY NO. 7

With respect to each waste stream from the Reading Facility and with respect to each waste stream referenced in your response to Interrogatory No. 6, identify:

(a)    All entities who removed the contents of each receptacle identified in response to Interrogatory No. 6(d) above;

(b)    The time period(s) during which such entity removed the contents of each receptacle identified in response to Interrogatory No. 6(d) above;

(c)    The monthly and annual amount of the waste stream collected and how you calculated such amounts (e.g., if your waste was compacted, indicate when compaction began and ended and what compaction ratio was used or, if the density of the material was used to compute the amount, explain the density of the materials or, for liquids, the weight and density of liquids);

(d)    The location that you or any entity identified in response to Interrogatory No. 7(a) disposed of the waste stream or purported to dispose of the waste stream;

(e)  The price charged by any entity (other than yourself) identified in response to Interrogatory No. 7(a) for each drum, gallon, cubic yard, ton, pickup, etc. for each waste stream removed by the entity;

(f)  The source of the information set forth in response to Interrogatory No. 7 subparts (a)-(e) above;

(g)  Any process flow diagrams relating to each waste stream, including diagrams relating to any on-site process waste treatment facilities, that are in your possession, custody or control;

(h)  Any piping and instrumentation diagrams relating to each waste stream that are in your possession, custody or control;

(i)  Any sewer maps relating to each waste stream that are in your possession, custody or control;

(j)  Any site diagrams, maps or aerial photographs that are in your possession, custody or control; and

(k)  Any other documents that are in your possession, custody or control that relate to the constituents, volume, and/or treatment, storage or disposal of each waste stream and/or any documents that relate to any entity identified in response to question 7(a) above and/or any Transporter.

<u>INTERROGATORY NO. 8</u>

With respect to each waste stream from the Reading Facility and with respect to each waste stream described in response to Interrogatory No. 6, describe in complete detail any tests or analyses that were performed on the waste stream including:

(a)  the nature of the tests or analyses performed;

(b)    the date upon which such tests or analyses were performed;

(c)    the identity of the person(s) who performed such tests or analyses; and

(d)    the findings and conclusions of the tests and analyses.

Identify any such tests and analyses or, if the tests and analyses are unavailable, provide a good faith estimate of the chemical composition of the waste stream.

## INTERROGATORY NO. 9

Account for the disposal of each waste stream from the Reading Facility and for the disposal of each waste stream set forth in response to Interrogatory No. 3(g).

(a)    If it is alleged in any document relating to the Site, including, without limitation, any document filed with the court or served on you in connection with the Case, or if you believe, have reason to believe, or surmise, that the waste was taken directly or indirectly to the Site, or that such waste was handled by a Transporter, state or provide a good faith estimate of:

(1)    the date of each shipment and/or disposal;

(2)    the volume or weight of each shipment; and

(3)    the frequency of the disposal of each waste stream.

(b)    If you contend that any waste stream was taken directly or indirectly to a site or sites other than the Site, state:

(1)    the general location of the other site;

(2)    the year(s) of disposal at the other site;

(3)    the frequency of the disposal of each waste stream at the other site; and

(4)    all facts upon which you base your contention.

Identify all documents that refer to, relate to, support or contradict your response to this interrogatory and its subparts.

## INTERROGATORY NO. 10

In answering Interrogatory No. 1 above, if you take the position that materials were directly or indirectly taken from the Reading Facility or from other facilities but that you do not have any belief, reason to believe or surmise that such materials were transported to the Site, set forth all facts upon which you base that position and identify all documents that refer to, relate to, support or contradict your position.

## INTERROGATORY NO. 11

If it is alleged in any document relating to the Site, including without limitation any document filed with the court or served on you in connection with the Case, or if you believe, have reason to believe, or surmise, that a party will contend that you or a related entity is a successor to an entity potentially liable at the Site, set forth all facts and theories upon which you contend that you and/or the related entity are not a successor and provide:

(a)     your views on the applicable federal and state law;

(b)     what cases you are relying upon primarily that support your position;

(c)     the facts relevant to the eight factor analysis used for the substantial continuity of enterprise doctrine;

(d)     your knowledge regarding the existence of environmental liabilities of the alleged predecessor at the time of the pertinent transaction;

(e)     whether the alleged predecessor survived;

(f)     what consideration was given to the alleged predecessor;

(g)    a copy of the relevant contracts involved;

(h)    information on whether use of the Site continued after the pertinent transaction;

(i)    how the alleged successor advised the customers of the alleged predecessor of the transaction and of the alleged successor's status;

(j)    what liabilities, if any, were assumed; and

(k)    any other information that you deem pertinent to the issue of successor liability.

INTERROGATORY NO. 12

Were any solvents used in connection with the operation and/or maintenance of equipment or machinery or the buildings at the Reading Facility or other facilities identified in response to Interrogatory No. 1 above?  If so, state or provide a good faith estimate of:

(a)    how any such materials were disposed of during the Relevant Time Period, including a description of on-site accumulation and transporters utilized;

(b)    where any such materials were ultimately disposed of or were purportedly disposed of during the Relevant Time Period; and

(c)    the monthly and annual volume of the waste stream comprised of such materials during the Relevant Time Period.

Identify all documents that refer to, relate to, support or contradict your response to this interrogatory and its subparts.

INTERROGATORY NO. 13

If the Reading Facility or other facilities identified in response to Interrogatory No. 1 contained one or more laboratories during the Relevant Time Period, identify:

(a)     any chemicals or other materials used or stored therein during the Relevant Time Period;

(b)     the types of containers any such chemicals or other materials were shipped in during the Relevant Time Period;

(c)     how and where these containers were disposed of or were purportedly disposed of during the Relevant Time Period;

(d)     the type and quantity of wastes generated by the laboratory during the Relevant Time Period; and

(e)     how and where such wastes were disposed of or were purportedly disposed of during the Relevant Time Period.

INTERROGATORY NO. 14

If the Reading Facility or other facilities identified in response to Interrogatory No. 1 conducted building maintenance, including without limitation repair of fixtures, buildings, heating and ventilation systems, furnaces, incinerators, tanks, plumbing or electrical systems, provide a description of any such activities and identify the following:

     (a)     the type and quantity of wastes generated as a result of such activities during the relevant time period; and

     (b)     how and where such wastes were disposed of or were purportedly disposed of during the Relevant Time Period.

INTERROGATORY NO. 15

If the Reading Facility or other facilities identified in response to Interrogatory No. 1 incinerated any of its wastes, identify the following:

     (a)     the type and quantity of wastes that were incinerated during the Relevant Time Period;

     (b)     the location where waste was incinerated during the Relevant Time Period;

     (c)     any protocol or instructions regarding which wastes were to be incinerated; and

     (d)     the person(s) who performed any such incineration during the Relevant Time Period.

INTERROGATORY NO. 16

If automotive maintenance and/or repair work occurred at the Reading Facility or any of the facilities identified in response to Interrogatory No. 1 above, describe such activities and identify the following with respect to such activities:

(a)    the type and quantity of wastes generated in connection with such activities during the Relevant Time Period; and

(b)    how and where such wastes were disposed of or were purportedly disposed of during the Relevant Time Period.

INTERROGATORY NO. 17

Describe your record retention policy. If you contend that any documents relating to the Site, other than those identified or described in responses to the previous interrogatories, are no longer available, explain your reasons for this lack of documents and include the specific date that any documents were destroyed or lost. The following documents shall be specifically provided for the Reading Facility and every other facility identified in response to Interrogatory No. 1 above: Annual Business Reports, Industrial Waste Survey responses, Annual Waste Generating Plant Reports, Eckhardt Report Waste Disposal Site Survey responses, Waste Collector or Hauler Annual Certification Applications/Registration Statements, Accounts Payable and bills of lading as they relate to waste treatment, storage, transportation and disposal.

INTERROGATORY NO. 18

Describe the actions you took to perform a diligent investigation to respond to the Interrogatories and to make your good faith estimates and statements, and identify:

(a)     All persons interviewed with a brief summary of all information you obtained during the interview;

(b)     All persons who may or should have knowledge that could be used to answer any of the Interrogatories but who were not interviewed and state the reason that no interview was conducted;

(c)     All categories of documents reviewed in responding to this interrogatory and its subparts;

(d)     All documents which may be relevant to answering this interrogatory and its subparts but which were not reviewed and state the reason that the documents were not available; and

(e)     Any person interviewed whose knowledge is inconsistent with that of the other person(s) interviewed and state the inconsistency and explain why information from this person was accepted, rejected or modified in light of information from other sources, and identify such other sources.

## IV.    DOCUMENT REQUESTS

1.    All documents requested to be identified in the Interrogatories.


2.    All other documents referring or relating to wastes from the Reading Facility or from

any other facility which were sent or which you believe, have reason to believe or surmise may

have been sent directly or indirectly to the Site.


Dated: June 21, 2004

_____

Glenn A. Harris, Esquire
Attorney No. 51222
BALLARD SPAHR ANDREWS &  INGERSOLL, LLP
Plaza 1000, Suite 500, Main Street
Voorhees, NJ 08043
Phone: (856)761-3400

Attorneys for Plaintiff Boarhead Farms Agreement Group

## CERTIFICATE OF SERVICE

I, Glenn A. Harris, do hereby certify that on this date I caused a true and correct copy of the foregoing Interrogatories and Requests for Production of Documents of Plaintiff Boarhead Farm Agreement Group Directed to Defendant Carpenter Technology Corporation to be served via first class mail, postage prepaid, upon the parties on the attached service list.

Dated: June 21, 2004

_____
Glenn A. Harris, Esquire

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BOARHEAD FARM
AGREEMENT GROUP,

                    Plaintiff,

        v.

ADVANCED ENVIRONMENTAL
TECHNOLOGY CORPORATION, et al.,

                    Defendants

Civil Action No. 02-CV-3830

## ORDER

AND NOW, this _____ day of _____, 2004, upon

consideration of Plaintiff Boarhead Farm Agreements Group's Motion To Compel Defendant

Carpenter Technology Corporation To Respond To Plaintiff's Discovery Requests, it is hereby

ORDERED that Plaintiff's Motion is GRANTED. Defendant Carpenter Technology

Corporation shall provide answers to interrogatories and produce the documents identified in

Plaintiff's Discovery Requests within 10 days of the entry of this Order

_____
Legrome D. Davis
United States District Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BOARHEAD FARM
AGREEMENT GROUP,

     Plaintiff,

  v.

ADVANCED ENVIRONMENTAL
TECHNOLOGY CORPORATION, et al.,

     Defendants

:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 02-CV-3830

## PLAINTIFF BOARHEAD FARM AGREEMENT GROUP'S
## MOTION TO COMPEL DEFENDANT CARPENTER TECHNOLOGY CORPORATION
## TO RESPOND TO PLAINTIFF'S DISCOVERY REQUESTS

   Plaintiff Boarhead Farm Agreement Group ("BFAG") moves this Court, pursuant to Fed. R. Civ. P. 37(a), to compel Defendant Carpenter Technology Corporation ("Carpenter") to respond to Interrogatories And Requests For Production Of Documents Of Plaintiff Boarhead Farm Agreement Group Directed To Defendant Carpenter Technology Corp. ("Plaintiff's Discovery Requests"). Carpenter has failed to respond to Plaintiff's Discovery Requests. Plaintiff's Discovery Requests, consisting of eighteen interrogatories and related requests for documents, are unobjectionable and reasonably calculated to lead to the discovery of admissible evidence. The bases for BFAG's motion are set forth in the accompanying Memorandum Of Law In Support Of Its Motion To Compel Defendant Carpenter Technology Corporation To Respond To Plaintiff's Discovery Requests. A copy of Plaintiff's Discovery Requests is attached as an exhibit to the Memorandum of Law.

Counsel for BFAG certifies that it has in good faith conferred with counsel for Carpenter in an effort to secure the discovery sought by this motion without intervention by this Court, but that such efforts have not been successful.  Accordingly, BFAG moves for an order compelling Carpenter to respond to and produce the discovery enumerated in the accompanying proposed form of Order.  BFAG further moves, pursuant to Fed. R. Civ. P. 37(a)(4)(A), for its reasonable expenses incurred in making this motion.

Respectfully Submitted,

Dated:  October 22, 2004

By:  _____

Glenn A. Harris, Esquire
Monique Mooney, Esquire
Anne K. Heidel, Esquire
BALLARD SPAHR ANDREWS &
    INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
(215) 665-8500

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| BOARHEAD FARM AGREEMENT GROUP, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 02-CV-3830 |
| ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, et al., | : | |
| | : | |
| Defendants | : | |

**PLAINTIFF BOARHEAD FARM AGREEMENT GROUP'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO COMPEL DEFENDANT CARPENTER TECHNOLOGY CORPORATION
TO RESPOND TO PLAINTIFF'S DISCOVERY REQUESTS**

## I.    INTRODUCTION

This case concerns the Boarhead Farm Superfund Site in Bucks County, Pennsylvania ("Boarhead Farm Site"). From approximately 1969 to 1977, this site was used as an area to dispose of industrial wastes, including hazardous substances within the meaning of Section 101(14) of the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601(14). The DeRewal Chemical Company, Inc. ("DCC") hauled waste from several of its industrial customers, including Carpenter Technology Corporation, and disposed of it at the Boarhead Farm Site during this time period.

In 1989, the U.S. Environmental Protection Agency ("EPA") placed the Boarhead Farm Site on the National Priorities List ("NPL"), 40 C.F.R. Part 300, Appendix B, and implemented removal and remedial actions there. In its contamination assessment, EPA identified dozens of hazardous substances on the site. During the relevant time period, the

Boarhead Farm Site was owned by the Boarhead Corporation.  The members of BFAG entered into several Administrative Orders on Consent and Consent Decrees whereby it has funded and continues to fund remedial activities at the Boarhead Farm Site.  BFAG has brought the present contribution action against Defendants for costs it has incurred and will incur in connection with the cleanup of the Boarhead Farm Site.  Evidence produced in this case and in connection with prior EPA enforcement actions supports BFAG's contention that Carpenter contracted with DCC to haul and dispose of Carpenter's industrial waste at the Boarhead Farm Site.

On June 21, 2004, BFAG served Carpenter with Interrogatories And Requests For Production Of Documents Of Plaintiff Boarhead Farm Agreement Group Directed To Defendant Carpenter Technology Corp. ("Plaintiff's Discovery Requests") (a true and correct copy of Plaintiff's Discovery Requests is attached hereto at Exhibit A).  Plaintiff's Discovery Requests are designed primarily to determine the constituents and amount of Carpenter's waste that was removed by DCC.  More specifically, the Interrogatories seek to elicit information in Carpenter's possession concerning its waste streams, disposal practices, manufacturing operations, facilities, and contacts with persons affiliated with the Boarhead Farm Site.  The documents requested in Plaintiff's Discovery Requests are those documents requested to be identified in the Interrogatories as well as documents relating to wastes from Carpenter's facility in Reading, Pennsylvania, or other facilities, that were removed by DCC from that facility.

BFAG sent a letter to counsel for Carpenter on September 3, 2004 requesting that Carpenter provide full and complete responses to Plaintiff's Discovery Requests (a true and correct copy of this letter is attached hereto as Exhibit B) and has sent emails and had telephone conversations with such Counsel.  Carpenter has failed to submit to BFAG any answers to

interrogatories or documents requested pursuant to Plaintiff's Discovery Requests, which was served on Carpenter approximately four months ago.

## II.    ARGUMENT

In order to equitably apportion each company's share of liability at the Boarhead Farm Site, each company's nexus to the Boarhead Farm Site must be established, including the type and amount of each company's waste disposed of at the Boarhead Farm Site. Under Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Fed. R. Civ. P. 26(b)(1). Plaintiff's Discovery Requests are designed to elicit information about Carpenter's nexus to the Boarhead Farm Site, particularly the constituents and amount of waste from Carpenter that was disposed of at that site. The discovery requests are clearly relevant to plaintiff's claims in this case and therefore within the bounds of Rule 26(b)(1). The documents requested in Plaintiff's Discovery Requests are also within the bounds of Federal Rule of Civil Procedure 34(a), which requires a party to produce relevant documents in the party's possession, custody, or control. Carpenter has neither objected to Plaintiff's Discovery Requests nor responded in any way to those requests in the four months since Plaintiff served its Discovery Requests on Carpenter.

## III.    CONCLUSION

For the reasons set forth above, BFAG respectfully requests that this Court compel Carpenter to respond to Plaintiff's Discovery Requests. In addition, BFAG requests,

pursuant to Fed. R. Civ. P. 37(a)(4)(A) that the Court award BFAG its costs, including attorney's fees, associated with bringing this motion.

Respectfully Submitted,

Dated:  October 22, 2004          By:  _____

Glenn A. Harris, Esquire
Monique Mooney, Esquire
Anne K. Heidel, Esquire
BALLARD SPAHR ANDREWS &
        INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
(215) 665-8500

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BOARHEAD FARM AGREEMENT      :
GROUP,                                       :
                    Plaintiff,              :      CIVIL ACTION
                                             :
            v.                               :      NO. 02-3830
                                             :
ADVANCED ENVIRONMENTAL        :
TECHNOLOGY CORPORATION,       :
ET. AL.                                      :
                    Defendants.        :

## ORDER

        AND NOW, this  21st  day of January 2005, upon consideration of Plaintiff

Boarhead Farm Agreement Group's Motion to Compel Defendant Carpenter Technology

Corporation to Respond to Plaintiff's Discovery Requests (Doc. No. 113) filed October 22, 2004,

it is hereby ORDERED that Plaintiff's Motions is GRANTED as unopposed.


                                                BY THE COURT:


                                                /s/_____
                                                Legrome D. Davis, J.

# EXHIBIT D

**Harris, Glenn A. (VH)**

| | |
|---|---|
| **From:** | lwright@EdwardsAngell.com |
| **Sent:** | Wednesday, February 16, 2005 12:04 PM |
| **To:** | Harris, Glenn A. (VH) |
| **Subject:** | Re: Boarhead - Carpenter discovery responses |

You will be getting both sets of responses by President's Day. Have you had any luck with identifying the location of the individuals that we discussed last week at Ford's 30(b)(6) deposition.

Regards,
Lynn

---

"Harris, Glenn A. (VH)" <HarrisG@ballardspahr.com>

02/16/2005 11:22 AM

**To:** "Lynn Wright (E-mail)" <lwright@ealaw.com>
**cc:**
**Subject:** Boarhead - Carpenter discovery responses

Lynn,

The Order granting the Agreement Group's motion to compel was entered 1/25/05. The proposed order submitted with the motion (and reflecting the relief requested) states that Carpenter is to provide answers to interrogatories and produce the documents identified in the discovery requests within 10 days of entry of the Order.

Those responses and documents were thus due on 2/8/05. Is Carpenter going to comply with the Order?

Regards,

Glenn

Glenn A. Harris
Ballard Spahr Andrews & Ingersoll, LLP
856-761-3440
harrisg@ballardspahr.com

Boston, Ft. Lauderdale, Hartford, New York, Providence, Short Hills NJ, Stamford, West Palm Beach, Wilmington, London (Representative office)

CONFIDENTIALITY NOTICE

This e-mail message from Edwards & Angell, LLP is intended only for the individual or entity to which it is addressed. This e-mail may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this e-mail by accident, please notify the sender immediately and destroy this e-mail and all copies of it.

2/25/2005

**Harris, Glenn A. (VH)**

| | |
|---|---|
| **From:** | Harris, Glenn A. (VH) |
| **Sent:** | Wednesday, February 16, 2005 11:23 AM |
| **To:** | Lynn Wright (E-mail) |
| **Subject:** | Boarhead - Carpenter discovery responses |

Lynn,

The Order granting the Agreement Group's motion to compel was entered 1/25/05. The proposed order submitted with the motion (and reflecting the relief requested) states that Carpenter is to provide answers to interrogatories and produce the documents identified in the discovery requests within 10 days of entry of the Order.

Those responses and documents were thus due on 2/8/05. Is Carpenter going to comply with the Order?

Regards,

Glenn

Glenn A. Harris
Ballard Spahr Andrews & Ingersoll, LLP
856-761-3440
harrisg@ballardspahr.com

1