## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BOARHEAD FARM
AGREEMENT GROUP,

              Plaintiff,

      v.

ADVANCED ENVIRONMENTAL
TECHNOLOGY CORPORATION, et al.,

              Defendants

Civil Action No. 02-CV-3830

## ORDER

AND NOW, this _____ day of _____, 2005, upon

consideration of Plaintiff Boarhead Farm Agreements Group's Motion To Compel Documents

and for Sanctions ("Plaintiff's Motion to Compel"), it is hereby ORDERED that Plaintiff's

Motion is GRANTED.  Defendant Ashland Chemical Company ("Ashland") shall produce the

deposition transcripts of Arthur Curley and William Olasin at issue in Plaintiff's Motion to

Compel within 10 days of the entry of this Order.

Ashland shall also pay to Plaintiff the costs, including attorneys' fees, Plaintiff

has incurred in bringing Plaintiff's Motion to Compel and Plaintiff Boarhead Farm Agreement

Group's Motion to Overrule Objections and Compel Defendant Ashland Chemical Company to

Respond to Plaintiff's Discovery Requests, within 10 days of receipt of documentation reflecting

such costs.

_____
LeGrome D. Davis
United States District Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BOARHEAD FARM
AGREEMENT GROUP,

                    Plaintiff,

       v.

ADVANCED ENVIRONMENTAL
TECHNOLOGY CORPORATION, et al.,

               Defendants

:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 02-CV-3830

## PLAINTIFF BOARHEAD FARM AGREEMENT GROUP'S
## MOTION TO COMPEL DOCUMENTS AND FOR SANCTIONS

Plaintiff Boarhead Farm Agreement Group ("BFAG") moves this Court, pursuant to Fed. R. Civ. P. 37 (a), to compel Defendant Ashland Chemical Company ("Ashland") to produce relevant documents in Ashland's possession which Ashland identified as such in its response to Interrogatories And Requests For Production Of Documents Of Plaintiff Boarhead Farm Agreement Group Directed To Defendant Ashland Chemical Company ("Plaintiff's Discovery Requests"). In addition, BFAG requests that this Court order Ashland to pay the costs BFAG has incurred in bringing the present Motion to Compel and the costs BFAG incurred in bringing its original Motion to Overrule Objections and Compel Defendant Ashland Chemical Company to Respond to Plaintiff's Discovery Requests ("the Original Motion to Compel").

Ashland has failed to produce relevant documents in its possession that are both responsive to the document requests contained in Plaintiff's Discovery Requests and within the scope of the supplemental production required of Ashland by this Court's Order of January 10, 2005.

Counsel for BFAG certifies that it has in good faith conferred with counsel for Ashland in an effort to secure the discovery sought by this motion without intervention by this Court, but that such efforts have not been successful.

Accordingly, BFAG moves for an order compelling Ashland to produce the discovery enumerated in the accompanying proposed form of Order. The bases for this motion are set forth in BFAG's accompanying Memorandum Of Law In Support Of Plaintiff Boarhead Farm Agreement Group's Motion to Compel Documents and for Sanctions.

BFAG further moves, pursuant to Fed. R. Civ. P. 37(a)(4), for the costs it has incurred in making this motion and the Original Motion to Compel.

In accordance with Local Rule 7.1(a), a draft order granting BFAG's motion is attached.

Respectfully Submitted,

Dated: March 4, 2005                    By:    _____
                                               Glenn A. Harris, Esquire
                                               Monique M. Mooney, Esquire
                                               BALLARD SPAHR ANDREWS &
                                                     INGERSOLL, LLP
                                               1735 Market Street, 51st Floor
                                               Philadelphia, PA 19103-7599
                                               (215) 665-8500

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BOARHEAD FARM
AGREEMENT GROUP,

           Plaintiff,

      v.

ADVANCED ENVIRONMENTAL
TECHNOLOGY CORPORATION, et al.,

           Defendants

Civil Action No. 02-CV-3830

---

### PLAINTIFF BOARHEAD FARM AGREEMENT GROUP'S
### MEMORANDUM OF LAW IN SUPPORT OF ITS
### MOTION TO COMPEL DOCUMENTS AND FOR SANCTIONS

## I.    INTRODUCTION

BFAG submits Plaintiff Boarhead Farm Agreement Group's Motion To Compel

Documents And For Sanctions ("the Present Motion") to compel Ashland to produce relevant,

discoverable documents in Ashland's possession, the production of which Ashland has

conditioned on BFAG's fulfillment of numerous, arbitrary requirements for which Ashland has

offered neither legal nor factual justification. BFAG has gone to great lengths to avoid having to

petition this Court to compel Ashland's compliance with what is, by any account, a

straightforward discovery obligation. Although BFAG had no legal obligation to do so, BFAG

has already attempted to obtain from third parties these relevant documents which are both

responsive to discovery propounded previously by BFAG and within the scope of the

supplemental production this Court ordered in its Order of January 10, 2005. Ashland has

caused needless delay and expense to BFAG and prejudiced BFAG by withholding from BFAG

documents within Ashland's possession to which BFAG is entitled. Accordingly, in addition to

the immediate production of these documents, BFAG also requests that the Court grant BFAG
the costs it has incurred in submitting the Present Motion and the Original Motion to Compel
which the Court granted in its Order of January 10, 2005.

The chain of events which has culminated in the Present Motion are as follows.
On June 21, 2004, BFAG served Ashland with Interrogatories And Requests For Production of
Documents Of Plaintiff Boarhead Farm Agreement Group Directed To Defendant Ashland
Chemical Company ("Plaintiff's Discovery Requests") (a true and correct copy of Plaintiff's
Discovery Requests is attached hereto at Exhibit A).  On July 26, 2004, Ashland submitted to
BFAG Answers And Objections Of Defendant Ashland Inc. To Plaintiff's Interrogatories And
Request For Production Of Documents Of Plaintiff Boarhead Farm Agreement Group ("the
Ashland Discovery Response") (a true and correct copy of the Ashland Discovery Response is
attached hereto at Exhibit B).  Interrogatory No. 3(l) of Plaintiff's Discovery Requests asks
Ashland to identify all documents that refer to, relate to, support or contradict Ashland's
response to that interrogatory.  See Exhibit A at 8.  Document Request No. 1 of Plaintiff's
Discovery Requests asks Ashland to produce all documents requested to be identified in any
interrogatory.  See Exhibit A at 19.  In its response to Interrogatory No. 1, Ashland identifies the
deposition testimony of two former Ashland employees, Mr. Arthur Curley and Mr. William
Olasin, who were deposed in connection with prior litigation ("the Deposition Transcripts").
Although Ashland identified the Deposition Transcripts in response to Interrogatory No. 3(l) of
Plaintiff's Discovery Requests, Ashland failed to produce copies of the Deposition Transcripts
with the Ashland Discovery Response.

On October 8, 2004, BFAG filed Plaintiff Boarhead Farm Agreement Group's
Motion To Overrule Objections And Compel Defendant Ashland Chemical Company To

Respond To Plaintiff's Discovery Requests ("the Original Motion to Compel") (a true and correct copy of the Original Motion to Compel is attached hereto at Exhibit C). On November 5, 2004, Ashland filed Answer Of Defendant Ashland, Inc. To Motion Of Plaintiff Boarhead Farm Agreement Group To Overrule Objections And Compel Responses To Plaintiff's Discovery Requests ("the Ashland Response") (a true and correct copy of the Ashland Response is attached hereto at Exhibit D). On January 10, 2005, this Court granted Plaintiff's Original Motion to Compel and entered an Order requiring Ashland to amend the Ashland Discovery Response and produce enumerated supplemental discovery to BFAG by January 24, 2005 ("the January 10[th] Order") (a true and correct copy of the January 10th Order is attached hereto at Exhibit E). The January 10th Order required Ashland, *inter alia,* to "provide more complete answers to Interrogatory Nos. 1-5. See Exhibit E at 3. On January 28, 2005, Ashland sent to BFAG Supplemental Answers Of Defendant Ashland, Inc. To Plaintiff's Interrogatories And Requests For Production Of Documents Of Plaintiff Boarhead Farm Agreement Group ("the Ashland Supplemental Interrogatory Response") (a true and correct copy of the Ashland Supplemental Interrogatory Response is attached hereto at Exhibit F). On January 31, 2005, Ashland produced additional documents pursuant to the January 10[th] Order ("the Ashland Supplemental Document Production"). The Ashland Supplemental Document Production did not include the Deposition Transcripts. Rather, in its supplemental response to Interrogatory Nos. 1-5 of Plaintiff's Discovery Request, Ashland states that it will provide to BFAG, upon request, "the identities of the court reporters from whom copies of the depositions of the former Ashland employees referenced in Ashland's prior answer to Interrogatory No. 3(l) can be obtained...." See Exhibit F at 3.

Upon receipt of Ashland's Supplemental Document Production on January 31, 2005, counsel for BFAG telephoned counsel for Ashland in an attempt to obtain the Deposition Transcripts. Counsel for Ashland informed counsel for BFAG that, although Ashland was in possession of the Deposition Transcripts, Ashland would not agree to produce its copies of the Deposition Transcripts because counsel for Ashland had "marked up" the Deposition Transcripts with notes which constituted attorney work product. Instead, counsel for Ashland informed counsel for BFAG that if BFAG wanted the Deposition Transcripts, BFAG would have to obtain the transcripts itself by contacting directly the court reporter who created the Deposition Transcripts. On January 31, 2005, Ashland provided BFAG with the relevant contact information to obtain the Deposition Transcripts from the court reporter on its own (a true and correct copy of Ashland's letter to BFAG with the contact information is attached hereto at Exhibit G). Between February 4, 2005 and February 10, 2005, in an effort to expedite obtaining the documents and avoiding any further delay,[1] counsel for BFAG contacted the court reporter identified by Ashland and attempted to obtain copies of the Deposition Transcripts. The court reporter informed counsel for BFAG that both of the Deposition Transcripts had been purged from its archives and could not be made available. See Affidavit of Anne Heidel, Esquire attached hereto at Exhibit H.

Subsequently, BFAG notified Ashland of the impossibility of obtaining the Deposition Transcripts through the means provided by Ashland and reiterated its request that Ashland produce the copies of the Deposition Transcripts in Ashland's possession. See BFAG's

---

[1]    BFAG had previously attempted to obtain the Deposition Transcript of Mr. Arthur Curley from Ashland prior to taking Mr. Curley's deposition in this matter. Ashland refused to produce its copy of Mr. Arthur Curley's transcript at that time. Consequently, BFAG was forced to take Mr. Curley's deposition without prior review of his former indisputably relevant testimony.

Letter of February 16, 2005 Addressed to Ashland attached hereto at Exhibit I.  Having indulged

Ashland's legally unfounded demand that BFAG obtain for itself relevant, responsive documents

admittedly in Ashland's own possession, BFAG naturally assumed that redacted copies of the

Deposition Transcripts would be immediately forthcoming from Ashland.  However, on

February 24, 2005, BFAG received a letter from Ashland ("the February 24th Letter") in which

Ashland not only refuses to produce to BFAG copies of the Deposition Transcripts in its

possession, but, astonishingly, demands that BFAG provide the following materials before

Ashland will even "consider" whether or not to produce the Deposition Transcripts at all,

including:

- letters from the court reporter BFAG contacted verifying that the requested Deposition Transcripts are actually unavailable;

- "express authorization" from the court reporter allowing Ashland to produce to BFAG copies of the Deposition Transcripts;

- a "waiver and release" from the court reporter of any liability for production of the Deposition Transcripts;

- a "hold harmless and indemnity" from the law firm representing BFAG protecting Ashland and the law firm representing Ashland from any liability arising from production of the Deposition Transcripts.

    (A true and correct copy of the February 24th Letter is attached hereto as Exhibit J).

In the February 24th Letter, Ashland also takes the novel legal position that, because the copies of

the Deposition Transcripts it possesses were previously "marked up" by Ashland's counsel, the

Deposition Transcripts constitute attorney work product "in their entirety."  See Exhibit J.  Even

more astonishingly, the February 24th Letter implies that Ashland *has not yet even attempted to*

*ascertain whether or not it possesses a "clean" copy of the Deposition Transcripts.*  See Exhibit

J.

BFAG was willing to indulge, to a limited extent, Ashland's attempts to evade its discovery obligations in order to avoid involving the Court in this matter. However, enough is enough. Ashland's outrageous demands and its continued evasion of its discovery obligations cannot be permitted.

## II.    ARGUMENT

Rule 34 governs the production of documents and allows any party to request the production of documents from any other party. Fed. R. Civ. P. 34(a). The scope of discovery permissible under Rule 34 is defined by Rule 26. See Fed. R. Civ. P. 26(b)(1). Under Rule 26, "[p]arties may obtain discovery on any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party..." Id.

In the present instance, Ashland does not dispute the relevance of the Deposition Transcripts to BFAG's claims in this case. Ashland itself identified the Deposition Transcripts in its answer to Interrogatory No. 3(l) of Plaintiff's Discovery Requests and directed BFAG to the Deposition Transcripts in Ashland's Supplemental Interrogatory Response. See Exhibit B at 12, Exhibit F at 3.

Ashland has articulated no factual or legal justification for any of the extraordinary positions it has taken with respect to its production of the Deposition Transcripts, including: failing to determine whether it even possesses "clean" copies of the Deposition Transcripts; summarily shifting the burden of production of the Deposition Transcripts from itself to BFAG; its assertion that the "marked up" Deposition Transcripts in its possession constitute attorney work product in their entirety because they contain an attorney's notes; and conditioning production of relevant, responsive discovery on the receipt of "authorizations" and

"waivers of liability." Notwithstanding Ashland's failure to provide any fact or law to substantiate its positions, BFAG will address each of them in turn.

Under Rule 26(g), Ashland had an obligation to make a "reasonable inquiry" to determine information known to it and documents within its possession, custody or control in response to Plaintiff's Discovery Requests. Fed. R. Civ. P. 26(g). To the extent that Ashland failed to ascertain whether "clean" copies of the Deposition Transcripts were within its possession, custody or control, Ashland failed to fulfill its discovery obligations under the Federal Rules. Ashland's failure to undertake the necessary inquiry for "clean" copies of the Deposition Transcripts is particularly troubling in light of its unwillingness to make available the Deposition Transcripts it does possess and its tasking BFAG with obtaining phantom "clean" copies of the documents, thereby allowing BFAG to expend needlessly its own resources fulfilling Ashland's own discovery obligations. Ashland had no legal right to require BFAG to seek from the court reporter "clean" copies of the Deposition Transcripts. See Fort Washington Resources, Inc. v. Tannen, 153 F.R.D. 78, 79 (E.D. Pa. 1994) (ordering defendant to produce relevant documents regardless of their existence in possession of a third party). Ashland has the legal obligation to produce to BFAG relevant documents which are within its possession, responsive to Plaintiff's Discovery Requests, and within the scope of the supplemental discovery this Court ordered Ashland to produce in the January 10th Order. See Fed. R. Civ. P. 34; Fort Washington Resources, Inc., 153 F.R.D. at 79 (holding that once the party seeking the discovery has proven the documents relevant they are then discoverable from the opposing party). The fact that the court reporter may have possessed "clean" copies of the Deposition Transcripts (which it, in fact, did not) did not shift the burden of obtaining these documents from Ashland to BFAG, who undertook to obtain the Deposition Transcripts from the court reporter for no other reason

than to expedite this discovery and prevent further prejudice and delay. See Fort Washington

Resources, Inc., 153 F.R.D. at 79 (holding that it is not a bar to the discovery of relevant material

that the requested material is obtainable from another source). Notwithstanding Ashland's

attempts to shift to BFAG the burden of production in this case, that burden remains with

Ashland. See id.

BFAG is aware of no legal precedent which would support Ashland's demands

for "authorizations" and "waivers of liability" prior to its "consideration" of the production of

relevant discoverable documents. Nor does Ashland offer any factual justification for these

demands. In the context of discovery, deposition transcripts are no different than any other

discoverable document and no special safeguards attach automatically to their production. See,

e.g., Biben v. Card, 119 F.R.D. 421, 428 (W.D. Mo. 1987) (granting defendants' motion to

compel transcripts of testimony given before the SEC where such transcripts contained

statements concerning the action or its subject matter previously made by a party to the action);

see also Jobin v. Resolution Trust Corp., 156 B.R. 834, 838 (D. Colo. 1993) (denying motion to

quash subpoena seeking deposition transcripts since they could lead to the discovery of relevant

evidence). Consequently, BFAG is under no compulsion to indulge the unreasonable demands

set forth in the February 24th Letter before Ashland's obligation to produce the Deposition

Transcripts is triggered. BFAG is legally entitled to the immediate and unconditioned

production of the Deposition Transcripts in Ashland's possession.

Ashland's contention in the February 24th Letter that, because the Deposition

Transcripts have been "marked up" by an attorney they now constitute attorney work product "in

their entirety" is entirely spurious. Even assuming that the notes contained in the "marked up"

Deposition Transcripts do constitute attorney work product, this fact alone does not render them

privileged in their entirety and insulate them from discovery altogether. Bogosian v. Gulf Oil
Corp., 738 F.2d 587, 595 (3rd Cir. 1984) (holding that where the same document contains both
facts and protected attorney work product, the adversary party is still entitled to discovery of the
facts). The Third Circuit has held that, where a document contains both discoverable facts and
legal theories of an attorney, the party requesting the discovery is entitled to discovery of the
facts, and the party in possession of the document must redact the document to protect the
privileged material while still disclosing the facts in full. See id. ("Where such combinations [of
work product and discoverable facts] exist, it will be necessary to redact the document so that
full disclosure is made of facts presented..., while protection is accorded the [work product]);
see also Russo v. Cabot Corp., No. CIV.A.01-2614, 2001 WL 34371702, at *5 (E.D. Pa. Oct. 26,
2001) (requiring production of documents defendants asserted were privileged but allowing
defendants to redact the notations of attorneys or company officials or their agents). The
Deposition Transcripts contain testimony relevant to BFAG's claims in this case. Accordingly,
BFAG is entitled to discovery of the Deposition Transcripts and, to the extent the Deposition
Transcripts contain attorney work product, it is Ashland's responsibility to redact the transcripts
accordingly.[2] It is decidedly not BFAG's responsibility to satisfy a host of conditions arbitrarily
imposed by Ashland before Ashland will "consider" producing these relevant documents.

---

[2]    The sole purpose of redaction is to prevent the disclosure of privileged information while
allowing full disclosure of discoverable facts. BFAG cannot imagine that whatever notes
are contained in the Deposition Transcripts are written in such a way that it would be
impossible for Ashland to obscure the privileged work product while leaving the
transcripts themselves intact. If Ashland contends otherwise, BFAG requests this Court
to undertake an *in camera* inspection of the Deposition Transcripts for the purpose of
ascertaining whether such a redaction is possible. See Bogosian, 738 F.2d 587 at 595
(holding that in those instances where public policy requires protection of portions of a
document, *in camera* inspection by the trial court is unavoidable).

Finally, this Court should sanction Ashland for the excessive delay, needless expense and prejudice its brazen attempts to evade its discovery obligations have caused BFAG by ordering Ashland to pay the costs BFAG has incurred in bringing the Present Motion and the Original Motion to Compel.

## III.    <u>CONCLUSION</u>

For the reasons set forth above, BFAG respectfully requests that this Court compel Ashland to produce the Deposition Transcripts.  In addition, BFAG requests, pursuant to Fed. R. Civ. P. 37(a)(4) that the Court award BFAG its costs, including attorney's fees, associated with bringing this motion.

Respectfully Submitted,

Dated:  March 4, 2005                    By: _____

Glenn A. Harris, Esquire
Monique M. Mooney, Esquire
BALLARD SPAHR ANDREWS &
        INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
(215) 665-8500

## CERTIFICATE OF SERVICE

I hereby certify that, on March 4, 2005, Plaintiff Boarhead Farm Agreement

Group's Motion to Compel and for Sanctions was filed electronically and is available for

viewing and downloading from the Electronic Case Filing System of the United States District

Court for the Eastern District of Pennsylvania. In addition, a true and correct copy of the

foregoing was served by first-class mail, postage prepaid upon the following:

Thomas W. Sabino, Esquire
Wolff & Samson, PC
The Offices at Crystal Lake
One Boland Drive
West Orange, NJ 070529

Robert M. Morris, Esquire
Morris & Adelman, P.C.
1920 Chestnut Street
P.O. Box 30477
Philadelphia, PA  19103
*Advanced Environmental Technology Corp.*

Melissa Flax, Esquire
Carella, Byrne, Bain, Gilfillian, Cecchi,
Stewart & Olstein, P.C.
Five Becker Farm Road
Roseland, New Jersey  07068-1739
*Handy & Harman Tube Company*

Lynn Wright, Esquire
Edwards & Angell, LLP
750 Lexington Avenue
New York, New York  10022-1200
*Carpenter Technology Corporation*

Seth v.d.H. Cooley, Esquire
Duane Morris LLP
Suite 4200, One Liberty Place
Philadelphia, PA  19103-7396
*Flexible Circuits & Etched Circuits*

*-and-*

A. Nicole Friant, Esquire
Duane Morris LLP
One Liberty Place
Suite 4200
Philadelphia, PA  19103-7396


Stephen P. Chawaga, Esquire
Monteverde, McAlee & Hurd
One Penn Center at Suburban Station
Suite 1500
1617 John F. Kennedy Boulevard
Philadelphia, PA  19103-1815
*Merit Metals Products Corp.*


Andrew P. Foster, Esquire
Drinker, Biddle & Reath, LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA  19103-6996
*Rahns Specialty Metals, Inc.*
*Techalloy Co., Inc.*
*Thomas & Betts Corporation*
*Unisys Corporation*

        *and*

Adina Marie Bingham, Esquire
Drinker Biddle & Reath LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA  19103-6996


Edward Fackenthal, Esquire
Law Office of Edward Fackenthal
One Montgomery Plaza
Suite 209
Norristown, PA  19401
*NRM Investment Co.*

Richard C. Biedrzycki, Esquire
Phelan, Pettit & Biedrzycki
The North American Building
Suite 1600
121 South Broad Street
Philadelphia, PA  19107
*Ashland, Inc.*

Date:  March 4, 2005

_____
Monique M. Mooney
Attorney for Plaintiff

# EXHIBIT A




## UNITED STATES DISTRICT COURT
## IN THE EASTERN DISTRICT OF PENNSYLVANIA

BOARHEAD FARM AGREEMENT GROUP,          :

           Plaintiff,          :          CIVIL ACTION

        v.          :          NO. 02-3830

ADVANCED ENVIRONMENTAL          :
TECHNOLOGY CORPORATION, ET. AL.          :

         Defendants.          :

### INTERROGATORIES AND REQUESTS FOR PRODUCTION
### OF DOCUMENTS OF PLAINTIFF BOARHEAD FARM AGREEMENT
### GROUP DIRECTED TO DEFENDANT ASHLAND CHEMICAL COMPANY

Pursuant to Federal Rules of Civil Procedure 33 and 34, Plaintiff Boarhead Farm

Agreement Group ("Plaintiff"), by its undersigned counsel, hereby propounds on Defendant

Ashland Chemical Company ("Ashland") these Interrogatories And Requests For Production Of

Documents Of Plaintiff Boarhead Farm Agreement Group Directed To Defendant Ashland

Chemical Company ("the Interrogatories").


### I.    DEFINITIONS

1.    The term "you," "your," or "your company," shall mean the addressee of the

Interrogatories, the addressee's officers, managers, employees, trustees, successors, assigns and

agents as well as any and all predecessor entities of the addressee entity including any entity

purchased by the addressee and any division, group, subsidiary or section of the addressee entity.

2.    The term "facility" or "facilities" shall mean, unless the context of the request

indicates otherwise, any plants, factories, warehouses, retail stores, laboratories, or other

operations conducted by you.

3.    The term "the Site" shall mean the Boarhead Farms Superfund Site, which is located in Bridgeton Township, Bucks County, Pennsylvania.

4.    The term "hazardous substance" shall have the same definition as that contained in Section 101(14) of CERCLA and the New Jersey Spill Compensation and Control Act and includes any mixtures of such hazardous substances with any other substances, including petroleum products.

5.    The term "materials" shall mean all substances that have been generated, treated, stored, or disposed of or otherwise handled by respondent, including but not limited to all hazardous substances, pollutants and contaminants, hazardous waste, solid waste, liquid waste, volatile organic chemicals, polychlorinated bi-phenyls, metals, asbestos, sludges, paint, paint thinners, medical wastes, caustics, and acids.

6.    The term "identify" means, with respect to a natural person, to set forth, to the extent known, the person's name, present or last known business address and business telephone number, and present or last known job title, position or business.

7.    The term "identify" means, with respect to a corporation, partnership, business trust or other association or business entity (including a sole proprietorship) to set forth, to the extent known, its full name, present or last known address, legal form (e.g. corporation, partnership, etc.), organization, if any, and a brief description of its business.

8.    The term "identify" means, with respect to a document, to provide, to the extent known, the type of document; the general subject matter; the date of the document; author(s); addressee(s); and recipient(s).

9.    The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a).



10.    The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Interrogatories any information which might otherwise be construed to be outside its scope.

11.    The term "waste" means any garbage, refuse, trash, scrap, sludge from a waste treatment plant (including sewage sludge), water supply treatment plant and air pollution control facility, and any other discarded material including but not limited to solid material, liquid material, semisolid material, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from residential, domestic and community activities.

12.    The term "waste stream" means the total volume of materials, including waste materials or residue, off-specification products, by-products, or disposed-of final products, created by a process or activity rather than the amount of hazardous constituents within a volume of material.

13.    The term "person" or "entity" includes but is not limited to an individual, partnership, corporation, other business association, governmental (including municipal) entity or agency or any other entity.

14.    The term "customer" or "customers" shall mean all persons (a) for and/or from whom you picked up or collected, caused to be picked up or collected, or arranged for pickup or collection of a waste for transport and/or disposal, (b) that provided any waste to you for transport to disposal or treatment facilities or sites, and/or (c) whose waste you transported or arranged for transport to disposal or treatment facilities.

15.    The terms "disposal," "arranged for," "transport," and "transporter" shall have the meanings of those terms under the federal Comprehensive Environmental Response, Compensation and Liability Act and Pennsylvania Hazardous Sites Cleanup Act.

16.    The term "employees" shall mean all of your present and former employees, shareholders, officers, managers, trustees, successors, assigns, contractors, and agents.

17.    The term "Transporter" shall mean any of the following persons or entities: Manfred DeRewal, Sr.; Bruce DeRewal; Manfred DeRewal, Jr.; Jeffrey Shaak; John Barsum; Richard Minthorn; Kenneth Gross; John Shuman; Joseph Sienkowski; Karen Bean; John Bean; Linda Cochran; Alex Imich; Marvin Jonas; Danny Rufe; DeRewal Chemical Co.; Boarhead Corporation; Environmental Chemical Control, Inc.; Revere Chemical Company; Revere Chemical Transport Company; Echo, Inc.; Marvin Jonas, Inc.; Jonas Waste Removal; Advanced Environmental Technology Corporation; Envirotech Co.; and/or any transporter that the party has reason to believe may have used the Site (collectively the "Transporters").

18.    The term "Relevant Time Period" means January 1, 1969 through and including December 31, 1977.

19.    The term "Case" shall mean <u>Boarhead Farm Agreement Group v. Advanced Environmental Technology Corporation, et al.</u>, Civil No. 02-3830 (E.D. Pa., filed June 18, 2002).

20.    The term "Great Meadows Facility" shall mean the facility operated by Ashland in Great Meadows, New Jersey during the Relevant Time Period.

21.    The term "Geographical Area" shall mean New York, New Jersey and Pennsylvania.

## II.    INSTRUCTIONS

1.    The singular includes the plural; the plural includes the singular. The masculine gender includes the feminine and neuter genders; and the neuter gender includes the masculine and feminine genders. "Each" shall be construed to include "every" and "every" shall be construed to include "each". "Any" shall be construed to include "all" and "all" shall be



construed to include "any". The use of a verb in any tense shall be construed as the use of the verb in a past or present tense, whenever necessary to bring within the scope of the Interrogatories all responses which might otherwise be construed to be outside its scope.

2.      Each interrogatory and request for production is a continuing one. If, after serving an answer to an interrogatory or a request for production, you obtain or become aware of any further information pertaining to such interrogatory or request for production, you are required to serve upon the attorneys for all parties an amended answer setting forth any and all such information.

3.      Identify any and all documents for which you claim any privilege and state with specificity the nature of the privilege.

## III.    <u>INTERROGATORIES</u>

<u>INTERROGATORY NO. 1</u>

Is it alleged in any document, including without limitation any document filed with the court or served on you in connection with the Case, or do you believe, have reason to believe, or surmise that:

(a)      Any direct shipments of materials were sent to the Site from any of your facilities?

(b)      Any indirect shipments of materials were sent to the Site from any of your facilities?

(c)      Any direct or indirect shipments of materials were transported from any of your facilities by a Transporter?

(d)     Any direct or indirect shipments of materials were transported to the Site from any of your facilities by a transporter not listed in the definition of "Transporter?"

(e)     There were other direct or indirect shipments of materials to the Site from any of your facilities which were not previously identified?

(f)     You, or any of your facilities, ever had any direct dealings with the Site or any person affiliated with the Site? If so, identify the persons involved, whether any contract or other documents exist and whether your company selected the Site as a disposal facility.

If you have answered "yes" to any of the above questions, identify the facility and the transporters or Transporters and all documents that refer to, relate to, support or contradict your response to this interrogatory and its subparts.

INTERROGATORY NO. 2

Identify every other facility owned, leased or operated by you, alone or in conjunction or joint venture with any other person, in the Geographical Area at any time during the Relevant Time Period, including:

(a)     The name and address of each such facility;

(b)     The time period(s) that you owned, leased or operated such facility;

(c)     Your predecessor at each such facility;

(d)     Your successor at each such facility;

(e)     A complete description of the types of manufacturing, storage and disposal activities that occurred at each such facility, including a description of the waste stream(s) generated at each facility;

(f)     A complete description of how the waste stream(s) generated at each such facility were disposed of, including the arrangements made for disposal of the waste; the identity

of any transporter(s) or Transporter(s) used to haul the waste; and the ultimate disposition of the waste.

## INTERROGATORY NO. 3

With respect to the Great Meadows Facility and every other facility identified in response to Interrogatory No. 1 above, identify the following:

        (a)     Address;

        (b)     Distance of facility from the Site;

        (c)     Years you owned or operated the facility;

        (d)     Your predecessor at the facility;

        (e)     Your successor at the facility;

        (f)     Years your immediate predecessor and immediate successor owned or operated the facility;

        (g)     A complete description of the types of manufacturing, storage and disposal activities which occurred at the facility, including a description of each waste stream generated at the facility;

        (h)     Copies of all Federal, State and local permits that relate to any waste stream described above;

        (i)     The names of person(s) presently or formerly employed by you who have the most knowledge about the subject matter of the Interrogatories, and state the time period of employment and the positions held;

        (j)     The total number of employees at each facility during the relevant time period and a description of any personnel changes during the relevant time period;

(k)    Any documents, including without limitation, photographs, paintings, drawings, sketches, models and reproductions, that depict or purport to depict the exterior of the facility; and

(l)    All documents that refer to, relate to, support or contradict your response to this interrogatory and its subparts.

INTERROGATORY NO. 4

With respect to the Great Meadows Facility and every other facility identified in response to Interrogatory No. 1 above identify the person(s) responsible for the following positions, including the time period(s) during which the position was held:

(a)    Plant management;

(b)    Production management;

(c)    Purchasing;

(d)    Waste treatment, storage or disposal;

(e)    Maintenance;

(f)    Hiring waste disposal services;

(g)    Accounting, including without limitation accounts payable and accounts receivable;

(h)    Security;

(i)    Environmental affairs or environmental management; and

(j)    Worker Safety.

Identify all documents that refer to, relate to, support or contradict your response to this interrogatory and its subparts.



INTERROGATORY NO. 5

With respect to the Great Meadows Facility and every other facility identified in response to Interrogatory No. 1 above, identify any persons other than those identified in response to Interrogatory No. 4, who have, could have or could have had knowledge relating to the waste streams identified in response to Interrogatory No. 3(g), and state the position(s) they held and the time period(s) during which the position was held. Identify all documents that refer to, relate to, support or contradict your response to this interrogatory.

INTERROGATORY NO. 6

With respect to the waste stream from the Great Meadows Facility and with respect to each waste stream referenced above in your response to interrogatory number 3(g) which you believe, have reason to believe or surmise was sent directly or indirectly to the Site or which is referenced in any document relating to the Site or which was handled by a Transporter, unless you can demonstrate that such waste stream handled by such Transporter was, in its entirety, taken directly to a site or sites other than the Site, state or provide a good faith estimate of:

(a)    A complete description of the process creating the waste stream, noting any changes in the process that occurred during the Relevant Time Period and the points in the process where the waste stream was generated, and including, without limitation, the raw materials used and byproducts or off-spec material generated in the process that produced the waste stream and, if the composition of the raw material is not clearly identifiable from its name, provide material safety data sheets or equivalent documentation;

(b)    The specific source, nature, formulation and constituents of each waste stream, including, without limitation, any constituent that, based on its mishandling, may have become part of a waste stream, the physical state of the waste stream (e.g., liquid, gas, solid,



semi-solid), the chemical content of the waste stream and the chemical, generic, trade, brand or

other name for the waste.  If you contend that a constituent evaporated or was neutralized, the

basis for this contention must be explained in full;

      (c)    The amount of each waste stream produced per year during the Relevant

Time Period;

      (d)    The receptacle used to collect each waste stream including:  (1 ) a

description of the receptacle, including without limitation each bin, box, drum, dumpster, tank,

sump, catch basin, reactor, tanker, pipe, pit, ditch, roll off, bag, barrel and lagoon; (2)  the size of

each receptacle; (3) the supplier of each receptacle (i.e., your company, or another person); (4)

the location of each receptacle; and (5) the frequency at which each receptacle was emptied;

      (e)    The equipment used to remove the waste from each receptacle including:

(1) a description of the type of equipment; (2) the amount of waste the equipment removed or

could remove; and (3) whether any equipment used to remove each waste stream was owned or

operated by the facility or another person, and, if owned or operated by another person, the

identity of that person.

    Identify all documents that refer to, relate to, support or contradict your response to this

interrogatory and its subparts.


INTERROGATORY NO. 7

    With respect to the waste stream from the Great Meadows Facility and with respect to

each waste stream referenced in your response to Interrogatory No. 6, identify:

      (a)    All entities who removed the contents of each receptacle identified in

response to Interrogatory No. 6(d) above;

(b)    The time period(s) during which such entity removed the contents of each receptacle identified in response to Interrogatory No. 6(d) above;

(c)    The monthly and annual amount of the waste stream collected and how you calculated such amounts (e.g., if your waste was compacted, indicate when compaction began and ended and what compaction ratio was used or, if the density of the material was used to compute the amount, explain the density of the materials or, for liquids, the weight and density of liquids);

(d)    The location that you or any entity identified in response to Interrogatory No. 7(a) disposed of the waste stream or purported to dispose of the waste stream;

(e)    The price charged by any entity (other than yourself) identified in response to Interrogatory No. 7(a) for each drum, gallon, cubic yard, ton, pickup, etc. for each waste stream removed by the entity;

(f)    The source of the information set forth in response to Interrogatory No. 7 subparts (a)-(e) above;

(g)    Any process flow diagrams relating to each waste stream, including diagrams relating to any on-site process waste treatment facilities, that are in your possession, custody or control;

(h)    Any piping and instrumentation diagrams relating to each waste stream that are in your possession, custody or control;

(i)    Any sewer maps relating to each waste stream that are in your possession, custody or control;

(j)    Any site diagrams, maps or aerial photographs that are in your possession, custody or control; and



(k)     Any other documents that are in your possession, custody or control that relate to the constituents, volume, and/or treatment, storage or disposal of each waste stream and/or any documents that relate to any entity identified in response to question 7(a) above and/or any Transporter.


## INTERROGATORY NO. 8

With respect to the waste stream from the Great Meadows Facility and with respect to each waste stream described in response to Interrogatory No. 6, describe in complete detail any tests or analyses that were performed on the waste stream including:

(a)     the nature of the tests or analyses performed;

(b)     the date upon which such tests or analyses were performed;

(c)     the identity of the person(s) who performed such tests or analyses; and

(d)     the findings and conclusions of the tests and analyses.

Identify any such tests and analyses or, if the tests and analyses are unavailable, provide a good faith estimate of the chemical composition of the waste stream.


## INTERROGATORY NO. 9

Account for the disposal of the waste stream from the Great Meadows Facility and for the disposal of each waste stream set forth in response to Interrogatory No. 3(g).

(a)     If it is alleged in any document relating to the Site, including, without limitation, any document filed with the court or served on you in connection with the Case, or if you believe, have reason to believe, or surmise, that the waste was taken directly or indirectly to the Site, or that such waste was handled by a Transporter, state or provide a good faith estimate of:

(1)   the date of each shipment and/or disposal;

(2)   the volume or weight of each shipment; and

(3)   the frequency of the disposal of each waste stream.

(b)   If you contend that any waste stream was taken directly or indirectly to a site or sites other than the Site, state:

(1)   the general location of the other site;

(2)   the year(s) of disposal at the other site;

(3)   the frequency of the disposal of each waste stream at the other site; and

(4)   all facts upon which you base your contention.

Identify all documents that refer to, relate to, support or contradict your response to this interrogatory and its subparts.

## INTERROGATORY NO. 10

In answering Interrogatory No. 1 above, if you take the position that materials were directly or indirectly taken from any of your facilities but that you do not have any belief, reason to believe or surmise that such materials were transported to the Site, set forth all facts upon which you base that position and identify all documents that refer to, relate to, support or contradict your position.

## INTERROGATORY NO. 11

If it is alleged in any document relating to the Site, including without limitation any document filed with the court or served on you in connection with the Case, or if you believe, have reason to believe, or surmise, that a party will contend that you or a related entity is a





successor to an entity potentially liable at the Site, set forth all facts and theories upon which you contend that you and/or the related entity are not a successor and provide:

      (a)     your views on the applicable federal and state law;

      (b)     what cases you are relying upon primarily that support your position;

      (c)     the facts relevant to the eight factor analysis used for the substantial continuity of enterprise doctrine;

      (d)     your knowledge regarding the existence of environmental liabilities of the alleged predecessor at the time of the pertinent transaction;

      (e)     whether the alleged predecessor survived;

      (f)     what consideration was given to the alleged predecessor;

      (g)     a copy of the relevant contracts involved;

      (h)     information on whether use of the Site continued after the pertinent transaction;

      (i)     how the alleged successor advised the customers of the alleged predecessor of the transaction and of the alleged successor's status;

      (j)     what liabilities, if any, were assumed; and

      (k)     any other information that you deem pertinent to the issue of successor liability.

## INTERROGATORY NO. 12

Were any solvents used in connection with the operation and/or maintenance of equipment or machinery or the buildings at the Great Meadows Facility or other facilities identified in response to Interrogatory No. 1 above? If so, state or provide a good faith estimate of:

(a)    how any such materials were disposed of during the Relevant Time Period, including a description of on-site accumulation and transporters utilized;

(b)    where any such materials were ultimately disposed of or were purportedly disposed of during the Relevant Time Period; and

(c)    the monthly and annual volume of the waste stream comprised of such materials during the Relevant Time Period.

Identify all documents that refer to, relate to, support or contradict your response to this interrogatory and its subparts.

INTERROGATORY NO. 13

If the Great Meadows Facility or any other facilities identified in response to Interrogatory No. 1 contained one or more laboratories during the Relevant Time Period, identify:

(a)    any chemicals or other materials used or stored therein during the Relevant Time Period;

(b)    the types of containers any such chemicals or other materials were shipped in during the Relevant Time Period;

(c)    how and where these containers were disposed of or were purportedly disposed of during the Relevant Time Period;

(d)    the type and quantity of wastes generated by the laboratory during the Relevant Time Period; and

(e)    how and where such wastes were disposed of or were purportedly disposed of during the Relevant Time Period.



## INTERROGATORY NO. 14

If the Great Meadows Facility or other facilities identified in response to Interrogatory No. 1 conducted building maintenance, including without limitation repair of fixtures, buildings, heating and ventilation systems, furnaces, incinerators, tanks, plumbing or electrical systems, provide a description of any such activities and identify the following:

      (a)    the type and quantity of wastes generated as a result of such activities during the relevant time period; and

      (b)    how and where such wastes were disposed of or were purportedly disposed of during the Relevant Time Period.

## INTERROGATORY NO. 15

If the Great Meadows Facility or other facilities identified in response to Interrogatory No. 1 incinerated any of its wastes, identify the following:

      (a)    the type and quantity of wastes that were incinerated during the Relevant Time Period;

      (b)    the location where waste was incinerated during the Relevant Time Period;

      (c)    any protocol or instructions regarding which wastes were to be incinerated; and

      (d)    the person(s) who performed any such incineration during the Relevant Time Period.

## INTERROGATORY NO. 16



If automotive maintenance and/or repair work occurred at the Great Meadows Facility or other facilities identified in response to Interrogatory No. 1 above, describe such activities and identify the following with respect to such activities:

       (a)    the type and quantity of wastes generated in connection with such activities during the Relevant Time Period; and

       (b)    how and where such wastes were disposed of or were purportedly disposed of during the Relevant Time Period.

## INTERROGATORY NO. 17

Describe your record retention policy. If you contend that any documents relating to the Site, other than those identified or described in responses to the previous interrogatories, are no longer available, explain your reasons for this lack of documents and include the specific date that any documents were destroyed or lost. The following documents shall be specifically provided for the Great Meadows Facility and every other facility identified in response to Interrogatory No. 1 above: Annual Business Reports, Industrial Waste Survey responses, Annual Waste Generating Plant Reports, Eckhardt Report Waste Disposal Site Survey responses, Waste Collector or Hauler Annual Certification Applications/Registration Statements, Accounts Payable and bills of lading as they relate to waste treatment, storage, transportation and disposal.

## INTERROGATORY NO. 18

Describe all contacts and/or communications that occurred between you and Advanced Environmental Technology Corporation ("AETC"), or any employee, representative or agent of AETC, including, without limitation, the date, location, reason for and substance of any such




contact and/or communication, and identify, with respect to each such contact and/or communication:

        (a)     the persons involved; and

        (b)     all documents that refer to, relate to, support or contradict your response to this interrogatory and its subparts.

## INTERROGATORY NO. 19

Describe the actions you took to perform a diligent investigation to respond to the Interrogatories and to make your good faith estimates and statements, and identify:

        (a)     All persons interviewed with a brief summary of all information you obtained during the interview;

        (b)     All persons who may or should have knowledge that could be used to answer any of the Interrogatories but who were not interviewed and state the reason that no interview was conducted;

        (c)     All categories of documents reviewed in responding to this interrogatory and its subparts;

        (d)     All documents which may be relevant to answering this interrogatory and its subparts but which were not reviewed and state the reason that the documents were not available; and

        (e)     Any person interviewed whose knowledge is inconsistent with that of the other person(s) interviewed and state the inconsistency and explain why information from this person was accepted, rejected or modified in light of information from other sources, and identify such other sources.

## IV.  DOCUMENT REQUESTS

1.  All documents requested to be identified in the Interrogatories.

2.  All other documents referring or relating to wastes from the Great Meadows Facility or from any other facility which were sent or which you believe, have reason to believe or surmise may have been sent directly or indirectly to the Site.

Dated: June 21, 2004 .

_____

Glenn A. Harris, Esquire
Attorney No. 51222
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
Plaza 1000, Suite 500, Main Street
Voorhees, NJ 08043
Phone: (856)761-3400
Attorneys for Plaintiff Boarhead Farm
Agreement Group

## CERTIFICATE OF SERVICE

I, Glenn A. Harris, do hereby certify that on this date I caused a true and correct copy of

the foregoing Interrogatories and Requests for Production of Documents of Plaintiff Boarhead

Farm Agreement Group Directed to Defendant Ashland Chemical Company to be served via first

class mail, postage prepaid, upon the parties on the attached service list.


Dated: June 21, 2004

_____
Glenn A. Harris, Esquire