# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BOARHEAD FARM AGREEMENT GROUP, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 02-3830 |
| | : | |
| ADVANCED ENVIRONMENTAL | : | |
| TECHNOLOGY CORPORATION, et al., | : | |
| | : | |
| Defendants | : | |

### ANSWERS AND OBJECTIONS OF DEFENDANT ASHLAND INC. TO PLAINTIFF'S INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS OF PLAINTIFF BOARHEAD FARM AGREEMENT GROUP

Defendant Ashland Inc., designated by Plaintiff as Ashland Chemical Company (hereinafter "Ashland"), by and through its undersigned counsel, hereby responds to Plaintiff's Interrogatories and Request for Production of Documents directed to Ashland.

Ashland's specific objections to each of Plaintiff's Interrogatories are in addition to the general limitations and objections set forth in the following General Objections and General Statement, which limitations and objections form a part of the response to each and every Interrogatory. These General Objections are not waived, limited, or restricted by any of the more specific responses or objections to any particular Interrogatory.

## GENERAL OBJECTIONS

1.    Defendant objects to Plaintiff's Definitions, Instructions, and Discovery Requests to the extent that they seek information prepared in anticipation of litigation or in preparation for trial or are protected by the attorney-client privilege, the attorney work product doctrine, the joint defense privilege or other applicable privileges and immunities, or seek conclusions as to the legal significance or meaning of a term or phrase which is not properly the subject of discovery.

2.    Defendant objects to each and every one of Plaintiff's Discovery Requests to the extent that each seeks information that is not relevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence. Defendant expressly reserves the right to object to the introduction into evidence at trial, or upon the record at any stage of this litigation, of information or documents subject to any objection contained herein which have been produced inadvertently. By responding to these Discovery Requests, Defendant does not concede the relevance or admissibility of the information requested nor do they adopt Plaintiff's legal characterizations of terms and words used herein.

3.    Defendant objects to Plaintiff's Discovery Requests to the extent that they are overly broad, vague, ambiguous, unduly burdensome, duplicative and/or seek information which is irrelevant or inadmissible, including evidence of subsequent remedial measures, and/or are not reasonably calculated to lead to the discovery of admissible evidence, and/or seek information not identified with reasonable particularity.

4.    Defendant objects to Plaintiff's Discovery Requests to the extent that they seek information already known to Plaintiff, or seek documents equally accessible to Plaintiff or already in Plaintiff's possession, custody or control, or to the extent that they are related to or require the production or identification of documents, writings, records, or publications in the public domain since such information is equally available to Plaintiff.

5.    Defendant objects to Plaintiff's Discovery Requests to the extent that they seek confidential, proprietary, trade secret, financial or commercially sensitive business information.

6.    Defendant objects to these Discovery Requests to the extent they seek to discover "all" information, documents, identification of individuals or entities, or other materials or information as overly broad, unduly burdensome, onerous, vexatious, unreasonably cumulative and duplicative, not susceptible to reasonable limitation and unduly vague and ambiguous.

7.    Defendant objects to Plaintiff's Discovery Requests to the extent that they seek information beyond the permissible scope of discovery.

8.    Defendant reserves the right to produce additional information and documents and to assert additional objections if and when additional information or documents become available.

9.    Defendant will respond to Plaintiff's Discovery Requests subject to, without intending to waive, and expressly reserving, any objections as to competency, relevancy, materiality, privilege and admissibility of any information and documents produced herein.

2

10.     Defendant objects to the Definitions and Instructions set forth by Plaintiff and to any of Plaintiff's Discovery Requests to the extent that they seek to alter or exceed the scope of the obligations placed on Defendant by the applicable Rules of Court, applicable law, or orders of this Court, including any obligations Defendant may have to supplement or amend its answers.

11.     Defendant objects to Plaintiff's instructions as being unduly burdensome and onerous, overly broad and all-inclusive and as requiring Defendant to undertake an unreasonable investigation.

12.     Defendant objects to Plaintiff's definition of the term "document" to the extent that it seeks to include information or material protected by the attorney-client privilege, the work product doctrine, the joint defense privilege, confidential commercial information or information made confidential by law or which reflects trade secrets.  In addition, Defendant objects to the definition as overly broad and unduly burdensome to the extent that it seeks to include any material not prepared and maintained by Ashland in the ordinary course of business.

13.     Defendant objects to the definition of "Defendant," "you," and "your" to the extent that Plaintiff seeks information as to any acts, omissions or knowledge of any person or entity other than Defendant Ashland Inc. as overly broad, unduly burdensome, oppressive, irrelevant, outside the permissible scope of discovery and as requiring Defendant to undertake an unreasonable investigation.   Responses will be provided for and by Ashland Inc. only and will be based upon information known and reasonably available to Ashland.

14.     Defendant objects to Plaintiff's definition of the terms "facility" and "facilities" to the extent that Plaintiff seeks information relative to any Ashland facility other than the Great Meadows, New Jersey facility, the only facility from which Ashland wastes are alleged to have been transported to the Boarhead Farms Site.

15.     Defendant objects to the definition of the terms "materials" and "waste stream" to the extent that such term is meant to include substances other than non-solid waste materials allegedly transported from Ashland's Great Meadows, New Jersey facility to the Boarhead Farms Site.

16.     Defendant objects to the definition of the term "hazardous substance" as inclusive of any definition of that term under the New Jersey Spill Compensation and Control Act as overbroad, irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence insofar as there is no allegation made by Plaintiff pursuant to that Act.

17.     Defendant objects to the definition of the term "employees" to the extent that Plaintiff seeks information as to any person or persons other than persons who were employed by Ashland during the relevant time period as being overly broad, unduly burdensome, oppressive, irrelevant, outside the scope of permissible discovery and as requiring Defendant to undertake an unreasonable investigation.

18.    Defendant objects to the definition of the term "Geographic Area" as overly broad, unduly burdensome, oppressive, irrelevant, outside the permissible scope of discovery and as requiring Defendant to undertake an unreasonable investigation. Defendant's answers shall be limited to its Great Meadows, New Jersey facility and the Boarhead Farms and Philadelphia facilities owned and/or operated by the Boarhead Corporation, DeRewal Chemical Company and/or Environmental Chemical Control, the only facilities from which and to which Ashland's hazardous wastes were allegedly transported.

19.    Ashland objects to these Discovery Requests to the extent that they seek information or documents relating to periods of time that are not at issue as to Ashland, i.e., time periods other than August, 1976 through March, 1977 during which DeRewal Chemical Company allegedly transported wastes from Ashland's Great Meadows, N.J. facility. To the extent that Plaintiff's Discovery Requests seek information relative to other periods of time, they are overbroad, burdensome, onerous, irrelevant, vexatious and not reasonably calculated to lead to the discovery of material and admissible evidence.

20.    Defendant objects to each Discovery Request as improper and premature in that Plaintiff's Third Amended Complaint does not comply with the basic requirements of the Federal Rules of Civil Procedure regarding pleadings and does not provide Ashland with any notice as to what wastes of Ashland are alleged to have been disposed of at the Boarhead Farms Site, from what plant(s) such wastes are alleged to have come, or on what date(s) any transporters are alleged to have deposited any of Ashland's wastes at the Boarhead Farms Site. Defendant further objects in that Plaintiff's initial disclosures totally fail to cure these defects or to provide a sufficient nexus between Ashland and the Boarhead Farms Site, thereby making all of Plaintiff's Discovery Requests an improper fishing expedition.

21.    Defendant objects to each Discovery Request to the extent that it is duplicative and unreasonably cumulative of prior discovery and disclosures, including Court-ordered nexus discovery, and thus such Discovery Requests are unduly burdensome, oppressive and will cause unnecessary and undue burden and expense to Defendant.

22.    Defendant objects to these Discovery Requests to the extent that they seek information regarding events, transactions or communication having no known nexus to the Boarhead Farms Site and/or DeRewal Chemical Company and thus are on their face irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

23.    To the extent that the information requested could be more readily obtained during the depositions of individuals whose depositions have already been or are expected to be scheduled, Defendant objects to Plaintiff's Discovery Requests as unduly burdensome, redundant and harassing.

24.    Defendant objects to each Discovery Request on the grounds of vagueness and over-breadth to the extent that Plaintiff has not provided definitions of key operative terms or phrases and has otherwise failed to delineate the scope or meaning of each Discovery Request to elicit relevant discoverable information or documents, all of which Discovery Requests would therefore require Defendant to guess as to the information and/or documents sought.

25. Defendant objects to each Discovery Request to the extent that it assumes that any of the allegations set forth in the Third Amended Complaint are true.

26. Ashland reserves the right to seek a Protective Order regarding any additional information and/or documents sought by Plaintiff and not produced herewith.

27. Ashland will respond to Plaintiff's Discovery Requests subject to, without intending to waive, and expressly reserving, any objections as to competency, relevancy, materiality, privilege and admissibility of any information and documents produced herein.

28. Ashland hereby incorporates by reference these General Objections into each specific response to Plaintiff's Discovery Requests.

29. By responding to these Discovery Requests, Ashland does not waive and, in fact, preserves its objections to personal and subject matter jurisdiction over it in this action and its defenses to said action, including any which have been or may be raised by way of Motion or Answer.

30. Defendant objects to any request for information or documents to the extent that it seeks the disclosure of attorney work product and/or the mental impressions, conclusions, strategy, opinions, legal research or legal theories of Ashland's counsel or other representatives of Ashland concerning this lawsuit which is privileged and protected from discovery.

31. Ashland objects to any Discovery Request seeking information or documents "regarding," "referring" or "relating to" any entity or subject matter on the grounds that such request does not specify with reasonable particularity the information and documents sought.

## GENERAL STATEMENT

Ashland has made reasonably due and diligent efforts to research documents and data and to discuss with known current employees the subject matter of the present lawsuit. Further, Ashland and its attorneys have not completed their discovery and investigation in preparation for trial, nor have they concluded their analyses of information gathered to date. These responses, therefore, are based upon information presently available to Ashland and its attorneys and specifically known to the individuals who are preparing these responses.

The within responses are made without prejudice to the rights of Ashland to produce evidence at the time of trial. Ashland will update and supplement its answers as required by the Federal Rules of Civil Procedure if additional information becomes available.

## RESPONSES TO INTERROGATORIES AND
## REQUESTS FOR PRODUCTION OF DOCUMENTS

### INTERROGATORY NO. 1

Is it alleged in any document, including without limitation any document filed with the

court or served on you in connection with the Case, or do you believe, have reason to believe, or

surmise that:

### ANSWER:

Objection. To the extent that this Discovery Request seeks information as to documents and/or select portions of the contents, terms and/or conditions purportedly set forth in any such documents which have not been attached as exhibits to this Discovery Request or otherwise specifically identified in a manner sufficient to enable Defendant to determine to which documents Plaintiff may be referring, it is objected to as unduly vague, speculative, irrelevant, overbroad, unduly burdensome, oppressive, immaterial and not reasonably calculated to lead to the discovery of admissible evidence. By way of further objection, to the extent that this Discovery Request seeks information regarding certain contents, terms and/or conditions purportedly set forth in a document, such document, being in writing, speaks for itself and the characterizations, paraphrasing and selection of certain terms and conditions thereof by Plaintiff is improper and objectionable. By way of further objection, this Discovery Request improperly seeks information as to one or matters which constitute attorney work product which is privileged and protected from discovery, including legal analyses, opinions or conclusions rather than statements or opinions of fact or the application of law to fact. Without waiving its objections, and subject thereto, Ashland answers as follows:

(a)    Any direct shipments of materials were sent to the Site from any of your facilities?

**Without waiving its objections, and subject thereto, Ashland has no information that any direct shipments were sent to the Boarhead Farms Site from its Great Meadows, New Jersey facility or from any of its other facilities during the relevant time period.**

(b)    Any indirect shipments of materials were sent to the Site from any of your

facilities?

**Without waiving its objections, and subject thereto, Ashland has no information that any indirect shipments were sent to the Boarhead Farms Site from its Great Meadows, New Jersey facility or from any of its other facilities during the relevant time period.**

(c)    Any direct or-indirect shipments of materials were transported from any of your

facilities by a Transporter?

Objection. Ashland objects to this Interrogatory as irrelevant and immaterial and as
requiring Ashland to conduct an unreasonable investigation and to incur undue and
unnecessary expense insofar as it seeks information regarding shipments from any Ashland
facility other than its Great Meadows, New Jersey facility to any facilities other than the
Boarhead Farms Site. Without waiving its objections, and subject thereto, Ashland states
that it has no information that any direct or indirect shipments of wastes were transported
from its Great Meadows, New Jersey facility to the Boarhead Farms Site by any
Transporter. However, AETC and/or DeRewal Chemical Company, as well as other
Transporters, hauled waste from Ashland's Great Meadows facility in Great Meadows,
New Jersey during various times during the mid to late 1970s time period. Ashland has no
evidence that DeRewal Chemical Company hauled or otherwise handled any waste from
Ashland's Great Meadows facility prior to August of 1976 or after April of 1977.

(d)    Any direct or indirect shipments of materials were transported to the Site from any

of your facilities by a transporter not listed in the definition of "Transporter?"

See above Answer to Interrogatory no. 1(c).

(e)    There were other direct or indirect shipments of materials to the Site from any of

your facilities which were not previously identified?

Without waiving its objections, and subject thereto, Ashland has no information that
any Ashland materials were transported to the Site from its Great Meadows, New Jersey
facility or from any of its other facilities.

(f)    You, or any of your facilities, ever had any direct dealings with the Site or any

person affiliated with the Site? If so, identify the persons involved, whether any contract or other

documents exist and whether your company selected the Site as a disposal facility.

Ashland objects to the term "direct dealings with the Site or any person affiliated
with the Site" as unduly vague and ambiguous and as thereby requiring Ashland to conduct
an unreasonable investigation and to guess as to the meaning and scope of the information
sought by Plaintiff.

Without waiving its objections, and subject thereto, Ashland has no information or
knowledge that it generated, transported or arranged for the transportation of any
hazardous waste from any of its facilities to the Boarhead Site. Furthermore, one or more

7

employees of Ashland, primarily Arthur T. Curley, did have meetings and conversations with representatives of DeRewal Chemical Company and/or its related companies, including Environmental Chemical Control Company, during the relevant time period relating to the transportation, treatment and disposal of certain spent acid wastes from Ashland's Great Meadows facility to Environmental Chemical Control Company's facility in Philadelphia known as the "Wissinoming facility." These meetings included discussions regarding an accidental spill of acid waste at the Boarhead Farms Site, which acid waste Manfred DeRewal informed Ashland came from Ciba-Geigy, not Ashland. Information concerning such "dealings" is set forth in the documents previously produced by Ashland as part of its initial disclosures and/or its 104(e) responses. Ashland did not select the Boarhead Farms Site as a disposal facility for any Ashland wastes and therefore Ashland has no contracts or other documents relative thereto. Also, insofar as Ashland is not aware of any allegations or information that any wastes from Ashland's Great Meadows facility were transported, directly or indirectly, to the Wissinoming facility by any transporters other than AETC and/or DeRewal Chemical Company, Ashland further objects to this Interrogatory insofar as it seeks information as to any other transporters of Ashland's wastes as irrelevant, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

If you have answered "yes" to any of the above questions, identify the facility and the transporters or Transporters and all documents that refer to, relate to, support or contradict your response to this interrogatory and its subparts.

ANSWER:

See above Answers and Objections to subpart "(f)" of this Interrogatory.

INTERROGATORY NO. 2

Identify every other facility owned, leased or operated by you, alone or in conjunction or joint venture with any other person, in the Geographical Area at any time during the Relevant Time Period, including:

(a)    The name and address of each such facility;

(b)    The time period(s) that you owned, leased or operated such facility;

(c)    Your predecessor at each such facility;

(d)    Your successor at each such facility;

(e)    A complete description of the types of manufacturing, storage and disposal activities that occurred at each such facility, including a description of the waste stream(s) generated at each facility;

(f)    A complete description of how the waste stream(s) generated at each such facility were disposed of, including the arrangements made for disposal of the waste; the identity of any transporter(s) or Transporter(s) used to haul the waste; and the ultimate disposition of the waste.

**ANSWER:**

Objection.  Ashland objects to this Interrogatory and each of its subparts on the grounds set forth in Ashland's General Objections, particularly Ashland's objection to the definition and scope of the term "Geographical Area."  Without waiving its objections, and subject thereto, Ashland states that unless and until there have been any allegations, supported by credible evidence, that any waste from any facility of Ashland other than the Great Meadows facility was transported to the Site, Ashland objects to this Interrogatory as overly broad, unduly burdensome, harassing, requiring Ashland to conduct an unreasonable investigation and to incur undue and unnecessary expense and as not reasonably calculated to lead to the discovery of admissible evidence.  As set forth above, Ashland has and will provide relevant information and documents pertaining to wastes transported by DeRewal Chemical Company from Ashland's Great Meadows, New Jersey facility applicable to the relevant time period.


INTERROGATORY NO. 3

With respect to the Great Meadows Facility and every other facility identified in response to Interrogatory No. 1 above, identify the following:

**ANSWER:**

Objection.  Ashland objects to this Interrogatory insofar as it seeks information regarding any facility of Ashland other than its Great Meadows, New Jersey facility for the reasons set forth in its above response to Interrogatory no. 2 which is incorporated herein

9

by reference.

Without waiving its objections, and subject thereto, and limited to Ashland's Great Meadows, New Jersey facility, Ashland answers as follows:

(a)    Address;

Ashland Chemical Company
Alphono Road
Great Meadows, NJ

(b)    Distance of facility from the Site;

Unknown.

(c)    Years you owned or operated the facility;

Owned and operated by Ashland from 1966 to May 1, 1978.

(d)    Your predecessor at the facility;

The facility was acquired from Fisher Chemical Company in December 1966. Gamma Chemical Corporation, a subsidiary of Fisher Chemical Company, was located at Great Meadows, NJ.

(e)    Your successor at the facility;

Ashland sold the facility to The Southland Corporation on May 1, 1978.

(f)    Years your immediate predecessor and immediate successor owned or operated the facility;

Exact dates are unknown as to when Fisher Chemical was at the Great Meadows location, but it is believed to have been there since sometime in 1949 or 1950.

(g)    A complete description of the types of manufacturing, storage and disposal activities which occurred at the facility, including a description of each waste stream generated at the facility;

The Great Meadows facility was a fine chemicals, special order batch process plant producing various specialty organic chemicals, including those used in the manufacture of pharmaceuticals, 8-Hydroxyquinolines, synthetic hair dyes and

10

intermediates for chemical and pharmaceutical companies. Upon information, it is believed that the processes in building #6 began by mixing nitrating acid with Para-chloro-benzo-tri-flouride. After that step, di-nitration took place. The acids were then separated from the product and partly diluted. The acids were then put into a waste tank and made ready for disposal. Previously produced monthly reports show products and shipments.

With respect to the waste stream generated at the Great Meadows facility during the relevant period of time, Ashland is unaware of any documents which show analyses of waste materials. Based on its review of documents previously produced, it is believed that the wastes generated during the relevant time period were comprised of spent mixed acids, CDN waste water, dye waste water, phthalide waste water, solvent wastes and solid wastes. It is believed that beginning in 1959 through the early 1970s, no waste was shipped off-site. Based on information currently in Ashland's possession, it is believed that waste water generated at the Great Meadows facility would have contained: (1) salts; (2) nitrating acid (comprised of a combination of sulfuric and nitric acid as well as other ingredients); and/or (3) solvent waste such as isopropyl alcohol, methyl alcohol, toluene, benzene and xylene, most of which solvent waste would have been recovered on-site. In addition, solid waste, included clothing, gloves and coveralls covered with the aftermath of the grinding operations from formaldehyde resins, was shipped to the Great Meadows plant by another Ashland plant. In addition, the acid waste may have included zinc waste.

(h)    Copies of all Federal, State and local permits that relate to any waste stream described above;

No permits have been located.

(i)    The names of person(s) presently or formerly employed by you who have the most knowledge about the subject matter of the Interrogatories, and state the time period of employment and the positions held;

Arthur T. Curley was the facility manager at Great Meadows from 1974 until the facility was sold in 1978. His last known address is 17 Far View Road, Great Meadows, NJ. The manager from 1966 to 1972 was Merv Goss, who is deceased. From 1972-1974 Michael Robin was Plant Manager. His last known address is Scotch Pines, NJ.

(j)    The total number of employees at each facility during the relevant time period and a description of any personnel changes during the relevant time period;

Objection.  See General Objections.  By way of further objection, this Discovery Request improperly seeks information as to a matter which is wholly irrelevant to the subject matter of this litigation and is not reasonably calculated to lead to the

11

discovery of admissible evidence and is, therefore, overbroad, unduly burdensome, oppressive and immaterial and would require Defendant to conduct an unreasonable investigation and to incur undue burden and expense in responding thereto.

(k)    Any documents, including without limitation, photographs, paintings, drawings, sketches, models and reproductions, that depict or purport to depict the exterior of the facility; and

**Ashland has located no such documents in its possession or control.**

(l)    All documents that refer to, relate to, support or contradict your response to this interrogatory and its subparts.

**See documents produced by Ashland in connection with its initial disclosures. Ashland's responses are also supported by the depositions of former Ashland employees Arthur T. Curley and William C. Olasin taken in other litigation, and documents and testimony generated and developed by the EPA in connection with its investigation of DeRewal Chemical Company's/Boarhead Corporation's ownership and operation of the Wissinoming facility and Boarhead Farms Site.**

INTERROGATORY NO. 4

With respect to the Great Meadows Facility and every other facility identified in response to Interrogatory No. 1 above identify the person(s) responsible for the following positions, including the time period(s) during which the position was held:

ANSWER:

**Objection. To the extent that Plaintiff seeks information regarding any Ashland facilities other than the Great Meadows, New Jersey facility, see Ashland's above objections to Interrogatory no. 2. By way of further objection, this Discovery Request is overbroad, unduly vague, speculative, irrelevant, unduly burdensome, oppressive, immaterial and not reasonably calculated to lead to the discovery of admissible evidence insofar as it fails to identify the precise date(s) or time period(s) as to the information sought and Defendant, therefore, has not been provided with information sufficient to enable it, despite reasonable inquiry, to respond.**

12

Without waiving its objections, and subject thereto, Ashland answers as follows:

(a)     Plant management;

**See Ashland's above Answer to Interrogatory no. 3(i).**

(b)     Production management;

**Plant manager; see Ashland's above response to Interrogatory no. 4(a).**

(c)     Purchasing;

**Richard A. DeWalk, office manager.**

(d)     Waste treatment, storage or disposal;

**Plant manager; see Ashland's above response to Interrogatory no. 4(a).**

(e)     Maintenance;

**Unknown.**

(f)     Hiring waste disposal services;

**Arthur T. Curley, plant manager, was generally in charge of this activity.**

(g)     Accounting, including without limitation accounts payable and accounts receivable;

**Richard A. DeWalk.**

(h)     Security;

**Unknown.**

(i)     Environmental affairs or environmental management; and

**Ralph Fisher, then located in Columbus, Ohio and/or Ken Schumacher, 63 Maplewood Avenue, Bogota, New Jersey, were in charge of environmental affairs.**

(j)     Worker Safety.

**J.J. (Jack) Kaltanbach, 5132 Highland Meadow, Hillard, OH.**

Identify all documents that refer to, relate to, support or contradict your response to this interrogatory and its subparts.

**See documents previously produced in connection with Ashland's initial disclosures and its 104(e) responses.**

INTERROGATORY NO. 5

With respect to the Great Meadows Facility and every other facility identified in response to Interrogatory No. 1 above, identify any persons other than those identified in response to Interrogatory No. 4, who have, could have or could have had knowledge relating to the waste streams identified in response to Interrogatory No. 3(g), and state the position(s) they held and the time period(s) during which the position was held. Identify all documents that refer to, relate to, support or contradict your response to this interrogatory.

**ANSWER:**

Objection. To the extent that this Interrogatory seeks information relative to any facility other than Ashland's Great Meadows, New Jersey facility, see above objections to Interrogatory no. 2. Without waiving its objections, and subject thereto, and limited to former employees of the Great Meadows, New Jersey facility, Defendant answers as follows:

1. Rudy Mitsuka, 145 Nazys Hill Road, Bangor, PA/Chemical Operator
2. John Cardell, address unknown/plant employee
3. Robert T. Olsen, 300 Country Lane, Eastham, MA/Chemist
4. Bernard Novisky, Box 85, Allamuchy, NJ/Chemical Operator
5. William Hoboken, 85511 Wedelia Court, Port St. Lucie, FL/Plant Manager from 1962-1965 before ASH acquired Great Meadows
6. Charles Kwartler, deceased
7. Kenneth Schumacher, 63 Maplewood Ave., Bogota, NJ/Environmental Engineer
8. John Minott, W. Orange Road, Delaware, OH
9. Jake Young, could not locate
10. Jack Kaltanbach, 5132 Highland Meadow, Hillard, Ohio
11. Mike Robin, Scotch Pines, NJ

14

INTERROGATORY NO. 6

With respect to the waste stream from the Great Meadows Facility and with respect to each waste stream referenced above in your response to interrogatory number 3(g) which you believe, have reason to believe or surmise was sent directly or indirectly to the Site or which is referenced in any document relating to the Site or which was handled by a Transporter, unless you can demonstrate that such waste stream handled by such Transporter was, in its entirety, taken directly to a site or sites other than the Site, state or provide a good faith estimate of:

ANSWER:

**As Ashland does not believe or have reason to believe or surmise that any wastes from its Great Meadows, New Jersey facility or from any other Ashland facility were sent, directly or indirectly, to the Site, this Interrogatory is not applicable.**

(a)    A complete description of the process creating the waste stream, noting any changes in the process that occurred during the Relevant Time Period and the points in the process where the waste stream was generated, and including, without limitation, the raw materials used and byproducts or off-spec material generated in the process that produced the waste stream and, if the composition of the raw material is not clearly identifiable from its name, provide material safety data sheets or equivalent documentation;

(b)    The specific source, nature, formulation and constituents of each waste stream, including, without limitation, any constituent that, based on its mishandling, may have become part of a waste stream, the physical state of the waste stream (e.g., liquid, gas, solid, semi-solid), the chemical content of the waste stream and the chemical, generic, trade, brand or other name for the waste. If you contend that a constituent evaporated or was neutralized, the basis for this contention must be explained in full;

15

(c)     The amount of each waste stream produced per year during the Relevant Time Period;

(d)     The receptacle used to collect each waste stream including: (1) a description of the receptacle, including without limitation each bin, box, drum, dumpster, tank, sump, catch basin, reactor, tanker, pipe, pit, ditch, roll off, bag, barrel and lagoon; (2) the size of each receptacle; (3) the supplier of each receptacle (i.e., your company, or another person); (4) the location of each receptacle; and (5) the frequency at which each receptacle was emptied;

(e)     The equipment used to remove the waste from each receptacle including: (1) a description of the type of equipment; (2) the amount of waste the equipment removed or could remove; and (3) whether any equipment used to remove each waste stream was owned or operated by the facility or another person, and, if owned or operated by another person, the identity of that person.

Identify all documents that refer to, relate to, support or contradict your response to this interrogatory and its subparts.

INTERROGATORY NO. 7

With respect to the waste stream from the Great Meadows Facility and with respect to each waste stream referenced in your response to Interrogatory No. 6, identify:

ANSWER:

**Not applicable; see above Answer to Interrogatory no. 6. By way of further response, with respect to waste streams generated by Ashland's Great Meadows, New Jersey facility, see waste ledger sheets, monthly reports and other documents previously produced with Ashland's initial disclosures and its 104(e) responses. Other than as set forth in the documents produced and in the prior testimony referenced in Ashland's above answer to Interrogatory no. 3(I), Ashland has no information or documents responsive to these Interrogatories.**

(a)     All entities who removed the contents of each receptacle identified in response to Interrogatory No. 6(d) above;

(b)     The time period(s) during which such entity removed the contents of each receptacle identified in response to Interrogatory No. 6(d) above;

(c)     The monthly and annual amount of the waste stream collected and how you calculated such amounts (e.g., if your waste was compacted, indicate when compaction began and ended and what compaction ratio was used or, if the density of the material was used to compute the amount, explain the density of the materials or, for liquids, the weight and density of liquids);

(d)     The location that you or any entity identified in response to Interrogatory No. 7(a) disposed of the waste stream or purported to dispose of the waste stream;

(e)     The price charged by any entity (other than yourself) identified in response to Interrogatory No. 7(a) for each drum, gallon, cubic yard, ton, pickup, etc. for each waste stream removed by the entity;

(f)     The source of the information set forth in response to Interrogatory No. 7 subparts (a)-(e) above;

(g)     Any process flow diagrams relating to each waste stream, including diagrams relating to any on-site process waste treatment facilities, that are in your possession, custody or control;

(h)     Any piping and instrumentation diagrams relating to each waste stream that are in your possession, custody or control;

(i)     Any sewer maps relating to each waste stream that are in your possession, custody or control;

(j)    Any site diagrams, maps or aerial photographs that are in your possession, custody or control; and

(k)    Any other documents that are in your possession, custody or control that relate to the constituents, volume, and/or treatment, storage or disposal of each waste stream and/or any documents that relate to any entity identified in response to question 7(a) above and/or any Transporter.

INTERROGATORY NO. 8

With respect to the waste stream from the Great Meadows Facility and with respect to each waste stream described in response to Interrogatory No. 6, describe in complete detail any tests or analyses that were performed on the waste stream including:

ANSWER:

**Not applicable; see above Answer to Interrogatory no. 6. By way of further response, with respect to waste streams from Ashland's Great Meadows, New Jersey facility during the relevant period of time, Ashland has no information or documents relating to any tests or analyses that may have been performed on the waste streams from that facility.**

(a)    the nature of the tests or analyses performed;

(b)    the date upon which such tests or analyses were performed;

(c)    the identity of the person(s) who performed such tests or analyses; and

(d)    the findings and conclusions of the tests and analyses.

Identify any such tests and analyses or, if the tests and analyses are unavailable, provide a good faith estimate of the chemical composition of the waste stream.

INTERROGATORY NO. 9 -

Account for the disposal of the waste stream from the Great Meadows Facility and for the

disposal of each waste stream set forth in response to Interrogatory No. 3(g).

**ANSWER:**

See Ashland's waste ledger sheets, monthly reports and other documents produced
with Ashland's initial disclosures and its 104(e) responses. By way of further response,
insofar as Ashland does not believe or have reason to believe that any waste from its Great
Meadows, New Jersey facility was taken, directly or indirectly to the Boarhead Farms Site,
this Interrogatory is inapplicable. As reflected in the documents produced, Ashland
believes that all wastes from its Great Meadows, New Jersey facility that were transported
by DeRewal Chemical Company were transported to DeRewal's Wissinoming facility in
Philadelphia for handling, treatment and disposal and not to the Boarhead Farms Site.

(a)    If it is alleged in any document relating to the Site, including, without limitation,

any document filed with the court or served on you in connection with the Case, or if you believe,

have reason to believe, or surmise, that the waste was taken directly or indirectly to the Site, or

that such waste was handled by a Transporter, state or provide a good faith estimate of:

    (1)    the date of each shipment and/or disposal;

    (2)    the volume or weight of each shipment; and

    (3)    the frequency of the disposal of each waste stream.

(b)    If you contend that any waste stream was taken directly or indirectly to a site or

sites other than the Site, state:

    (1)    the general location of the other site;

    (2)    the year(s) of disposal at the other site;

    (3)    the frequency of the disposal of each waste stream at the other site; and

    (4)    all facts upon which you base your contention.

19

Identify all documents that refer to, relate to, support or contradict your response to this interrogatory and its subparts.

## INTERROGATORY NO.10

In answering Interrogatory No. 1 above, if you take the position that materials were directly or indirectly taken from any of your facilities but that you do not have any belief, reason to believe or surmise that such materials were transported to the Site, set forth all facts upon which you base that position and identify all documents that refer to, relate to, support or contradict your position.

**ANSWER:**

See documents previously produced with Ashland's initial disclosures and its 104(e) responses, including Ashland's waste disposal ledgers, none of which indicate that any wastes from Ashland's Great Meadows facility were disposed of at the Boarhead Farms Site. Furthermore, Arthur T. Curley, former plant manager of Ashland's Great Meadows facility, and William Charles Olasin have previously testified in other CERCLA actions that, to the best of their information and knowledge and based upon their review of all available documents and records, no wastes from Ashland's Great Meadows, New Jersey facility were transported to and/or disposed of at the Boarhead Farms Site. In addition, see testimony of principals and employees of DeRewal Chemical Company, Environmental Chemical Control, Inc. and Boarhead Corporation in this case and in the administrative proceedings instituted by the United States Environmental Protection Agency, copies of the transcripts of which are believed to be in Plaintiff's possession.

By way of further response, all evidence adduced in this action indicates that any and all wastes from Ashland's Great Meadows, New Jersey facility transported by DeRewal Chemical Company were transported to DeRewal's Wissinoming facility in Philadelphia and not to any other facility, including the Boarhead Farms Site, during the period of August 1976 through at least March 1977. During that entire time period, the evidence to date has disclosed that the Wissinoming facility had the necessary equipment and was fully operational for the storage, treatment, neutralization and disposal of acid wastes of the type transported by AETC/DeRewal from Ashland's Great Meadows, New Jersey facility. No such equipment was available and/or operational at the Boarhead Farms Site. Furthermore, documents produced by AETC reflect that sewer charges by the City of Philadelphia were incurred by DeRewal during the relevant period for the disposal at the Wissinoming facility of Ashland's spent acid waste transported by DeRewal. Relatedly,

20

Ashland thereafter entered into a settlement and release with the City of Philadelphia and the Pennsylvania Department of Environmental Protection in 1980 relative to the alleged improper disposal of Ashland's alleged spent acid waste by DeRewal at the Wissinoming facility during the relevant time period. Furthermore, former employees of DeRewal have testified in this action that no Ashland acid or other wastes were hauled by DeRewal after the Wissinoming facility was shut down in or around March of 1997, further indicating that the Boarhead Farms Site was not used as a disposal facility for Ashland waste streams. Furthermore, Ashland's waste ledgers and shipping records indicate that shortly after the closing of the Wissinoming facility in or about March of 1977, AETC did very little hauling of wastes from Ashland's Great Meadows facility and that the wastes that it did haul went to other facilities reflected in said records including, but not limited to, Modern Transport and All County Environmental.

Furthermore, as reflected in the documents previously produced, Mr. Curley personally observed the neutralization of Ashland's spent acid wastes from its Great Meadows facility being conducted at the Wissinoming facility and further personally observed a tank wagon of Ashland's spent acid waste from its Great Meadows facility en route therefrom to the Wissinoming facility. Furthermore, Manfred DeRewal informed Mr. Curley that Ashland's spent acid wastes that were not neutralized at the Wissinoming facility were resold to other parties by DeRewal for ore extraction and agricultural purposes, and that the spent acid that was neutralized was then deposited into the sewer system at the Wissinoming facility, a process that had been observed by Mr. Curley. Furthermore, the drivers of tank trucks hauling spent acid wastes from Ashland's Great Meadows facility have testified that they hauled such wastes during the period of time that the Wissinoming facility was operational and that they did not pick up any wastes from the Great Meadows facility other than spent acid. Furthermore, Plaintiff has not produced any documents or other credible evidence, other than highly suspect and equivocal testimony of certain drivers formerly employed by DeRewal, reflecting that any waste streams from Ashland's Great Meadows facility were transported to and disposed of at the Boarhead Farms Site.

See also Ashland's above answer to Interrogatory no. 1(f). Ashland reserves the right to supplement its Answer to this Interrogatory as its investigation and discovery are continuing.

INTERROGATORY NO. 11

If it is alleged in any document relating to the Site, including without limitation any document filed with the court or served on you in connection with the Case, or if you believe, have reason to believe, or surmise, that a party will contend that you or a related entity is a successor to an entity potentially liable at the Site, set forth all facts and theories upon which you

contend that you and/or the related entity are not a successor and provide:

ANSWER:

Objection. See General Objections. By way of further objection, to the extent that this Discovery Request seeks information as to a document and/or select portions of the contents, terms and/or conditions purportedly set forth in any such document which has not been attached as an exhibit to this Discovery Request or otherwise specifically identified, such Discovery Request has not been properly identified by Plaintiff sufficient to enable Defendant to determine to which specific document the Discovery Request is referring and is therefore objected to as unduly vague, speculative, irrelevant, overbroad, unduly burdensome, oppressive, immaterial and not reasonably calculated to lead to the discovery of admissible evidence. By way of further objection, this Request improperly seeks information and/or documents which would require the disclosure of the opinion(s) of experts rather than a statement or opinion of fact or the application of law to fact and is, therefore, outside the scope of permissible expert discovery. Moreover, insofar as Defendant has not decided whom it intends to call as expert witnesses at trial, this Discovery Request is premature. In addition, this Discovery Request improperly seeks information which is not within the personal knowledge of Defendant and/or is not within its possession or control or available to it upon reasonable inquiry but seeks information as to one or more matters within the exclusive possession and/or control of other persons or entities to whom this request should properly be addressed and, therefore, despite reasonable inquiry, Defendant is without information or knowledge sufficient to enable it to respond to this request.

Without waiving its objections, and subject thereto, Defendants states that it has no information that any party will so contend and therefore this Interrogatory is not applicable.

    (a)     your views on the applicable federal and state law;

    (b)     what cases you are relying upon primarily that support your position;

    (c)     the facts relevant to the eight factor analysis used for the substantial continuity of enterprise doctrine;

    (d)     your knowledge regarding the existence of environmental liabilities of the alleged predecessor at the time of the pertinent transaction;

    (e)     whether the alleged predecessor survived;

    (f)     what consideration was given to the alleged predecessor;

    (g)     a copy of the relevant contracts involved;

(h)    information on whether use of the Site continued after the pertinent transaction;

(i)    how the alleged successor advised the customers of the alleged predecessor of the transaction and of the alleged successor's status;

(j)    what liabilities, if any, were assumed; and

(k)    any other information that you deem pertinent to the issue of successor liability.

INTERROGATORY NO.12

Were any solvents used in connection with the operation and/or maintenance of equipment or machinery or the buildings at the Great Meadows Facility or other facilities identified in response to Interrogatory No. 1 above? If so, state or provide a good faith estimate of:

ANSWER:

Objection. To the extent that Plaintiff is seeking information regarding any facilities other than Ashland's Great Meadows, New Jersey facility, see Ashland's above objections to Interrogatory no. 2. By way of further objection, this Discovery Request improperly seeks information as to a matter which is wholly irrelevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence and is, therefore, overbroad, unduly burdensome, oppressive and immaterial and would require Defendant to conduct an unreasonable investigation and to incur undue burden and expense in responding thereto. By way of further objection, this Discovery Request is overbroad, unduly vague, speculative, irrelevant, unduly burdensome, oppressive, immaterial and not reasonably calculated to lead to the discovery of admissible evidence insofar as it fails to identify the precise date(s) or time period(s) as to the information sought and Defendant, therefore, has not been provided with information sufficient to enable it, despite reasonable inquiry, to respond.

Without waiving its objections, and subject thereto, Ashland states that it has not located any information or documents responsive to this Interrogatory.

(a)    how any such materials were disposed of during the Relevant Time Period, including a description of on-site accumulation and transporters utilized;

(b)    where any such materials were ultimately disposed of or were purportedly disposed of during the Relevant Time Period; and

(c)    the monthly and annual volume of the waste stream comprised of such materials during the Relevant Time Period.

Identify all documents that refer to, relate to, support or contradict your response to this interrogatory and its subparts.

## INTERROGATORY NO. 13

If the Great Meadows Facility or any other facilities identified in response to Interrogatory No. 1 contained one or more laboratories during the Relevant Time Period, identify:

(a)    any chemicals or other materials used or stored therein during the Relevant Time Period;

(b)    the types of containers any such chemicals or other materials were shipped in during the Relevant Time Period;

(c)    how and where these containers were disposed of or were purportedly disposed of during the Relevant Time Period;

(d)    the type and quantity of wastes generated by the laboratory during the Relevant Time Period; and

(e)    how and where such wastes were disposed of or were purportedly disposed of during the Relevant Time Period.

**ANSWER:**

**Objection. To the extent that Plaintiff is seeking information regarding any facilities other than Ashland's Great Meadows, New Jersey facility, see Ashland's above objections to**

24

Interrogatory no. 2. By way of further objection, this Discovery Request improperly seeks information as to a matter which is wholly irrelevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence and is, therefore, overbroad, unduly burdensome, oppressive and immaterial and would require Defendant to conduct an unreasonable investigation and to incur undue burden and expense in responding thereto. By way of further objection, this Discovery Request is overbroad, unduly vague, speculative, irrelevant, unduly burdensome, oppressive, immaterial and not reasonably calculated to lead to the discovery of admissible evidence insofar as it fails to identify the precise date(s) or time period(s) as to the information sought and Defendant, therefore, has not been provided with information sufficient to enable it, despite reasonable inquiry, to respond.

Without waiving its objections, and subject thereto, and limited to Ashland's Great Meadows, New Jersey facility, Ashland states that it is aware of the existence of a laboratory at that facility. The only laboratory employees at that facility that Ashland can identify based on secondhand information are Robert T. Olsen, Graham Hughes, Rudy Mitsuka, and James Tichich, although Ashland cannot be sure that each of these individuals worked in the laboratory prior to the sale of the Great Meadows facility to Southland in 1978. Ashland has provided and is providing all information and documents in its possession or control relative to wastes allegedly transported by DeRewal from Ashland's Great Meadows, New Jersey facility during the relevant time period.

INTERROGATORY NO. 14

If the Great Meadows Facility or other facilities identified in response to Interrogatory No. 1 conducted building maintenance, including without limitation repair of fixtures, buildings, heating and ventilation systems, furnaces, incinerators, tanks, plumbing or electrical systems, provide a description of any such activities and identify the following:

(a)    the type and quantity of wastes generated as a result of such activities during the relevant time period; and

(b)    how and where such wastes were disposed of or were purportedly disposed of during the Relevant Time Period.

ANSWER:

Objection. To the extent that Plaintiff is seeking information regarding any facilities other than Ashland's Great Meadows, New Jersey facility, see Ashland's above objections to Interrogatory no. 2. By way of further objection, this Discovery Request improperly seeks

information as to a matter that is wholly irrelevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence and is, therefore, overbroad, unduly burdensome, oppressive and immaterial and would require Defendant to conduct an unreasonable investigation and to incur undue burden and expense in responding thereto. By way of further objection, this Discovery Request is overbroad, unduly vague, speculative, irrelevant, unduly burdensome, oppressive, immaterial and not reasonably calculated to lead to the discovery of admissible evidence insofar as it fails to identify the precise date(s) or time period(s) as to the information sought and Defendant, therefore, has not been provided with information sufficient to enable it, despite reasonable inquiry, to respond.

## INTERROGATORY NO.15

If the Great Meadows Facility or other facilities identified in response to Interrogatory No. 1 incinerated any of its wastes, identify the following:

    (a)    the type and quantity of wastes that were incinerated during the Relevant Time Period;

    (b)    the location where waste was incinerated during the Relevant Time Period;

    (c)    any protocol or instructions regarding which wastes were to be incinerated; and

    (d)    the person(s) who performed any such incineration during the Relevant Time Period.

**ANSWER:**

Objection. To the extent that Plaintiff is seeking information relative to any Ashland facilities other than Ashland's Great Meadows, New Jersey facility, see Ashland's above objections to Interrogatory no. 2. Without waiving its objections, and subject thereto and limited to Ashland's Great Meadows, New Jersey facility, Ashland has no information responsive to these Interrogatories.

## INTERROGATORY NO. 16

If automotive maintenance and/or repair work occurred at the Great Meadows Facility or

other facilities identified in response to Interrogatory No. 1 above, describe such activities and identify the following with respect to such activities:

(a)     the type and quantity of wastes generated in connection with such activities during the Relevant Time Period; and

(b)     how and where such wastes were disposed of or were purportedly disposed of during the Relevant Time Period.

**ANSWER:**

Objection.  To the extent that Plaintiff is seeking information relative to any Ashland facilities other than Ashland's Great Meadows, New Jersey facility, see Ashland's above objections to Interrogatory no. 2.  Without waiving its objections, and subject thereto and limited to Ashland's Great Meadows, New Jersey facility, Ashland has no information responsive to these Interrogatories.

INTERROGATORY NO. 17

Describe your record retention policy. If you contend that any documents relating to the Site, other than those identified or described in responses to the previous interrogatories, are no longer available, explain your reasons for this lack of documents and include the specific date that any documents were destroyed or lost. The following documents shall be specifically provided for the Great Meadows Facility and every other facility identified in response to Interrogatory No. 1 above: Annual Business Reports, Industrial Waste Survey responses, Annual Waste Generating Plant Reports, Eckhardt Report Waste Disposal Site Survey responses, Waste Collector or Hauler Annual Certification Applications/Registration Statements, Accounts Payable and bills of lading as they relate to waste treatment, storage, transportation and disposal.

**ANSWER:**

Ashland sold its Great Meadows, New Jersey facility in 1978 and all documents and

records were transferred to the purchaser, Southland Corporation, with the sale of the facility. All records pertinent to the Great Meadows, New Jersey facility that are in Ashland's possession or control and that have been produced in this action were obtained from other litigation-related files.

INTERROGATORY NO. 18

Describe all contacts and/or communications that occurred between you and Advanced Environmental Technology Corporation ("AETC"), or any employee, representative or agent of AETC, including, without limitation, the date, location, reason for and substance of any such contact and/or communication, and identify, with respect to each such contact and/or communication:

(a)     the persons involved; and

(b)     all documents that refer to, relate to, support or contradict your response to this interrogatory and its subparts.

**ANSWER:**

See Ashland's above answer to Interrogatory no. 10 and documents previously produced with Ashland's initial disclosures.

INTERROGATORY NO. 19

Describe the actions you took to perform a diligent investigation to respond to the Interrogatories and to make your good faith estimates and statements, and identify:

(a)     All persons interviewed with a brief summary of all information you obtained during the interview;

(b)     All persons who may or should have knowledge that could be used to answer any

28

of the Interrogatories but who were not interviewed and state the reason that no interview was conducted;

(c)     All categories of documents reviewed in responding to this interrogatory and its subparts;

(d)     All documents which may be relevant to answering this interrogatory and its subparts but which were not reviewed and state the reason that the documents were not available; and

(e)     Any person interviewed whose knowledge is inconsistent with that of the other person(s) interviewed and state the inconsistency and explain why information from this person was accepted, rejected or modified in light of information from other sources, and identify such other sources.

**ANSWER:**

Ashland collected and reviewed all documents in its possession or control relative to its former Great Meadows, New Jersey facility as well as transcripts and excerpts of depositions from other litigation pertaining to that facility as well as interviews of former and/or current employees and relevant waste ledger sheets, monthly reports, transporter information, shipping information and vendor payment records. See documents previously produced in connection with Ashland's initial disclosures and its 104(e) responses. Privileged and protected documents, including notes of interviews and deposition summaries, digests and excerpts thereof as well as notations and memoranda of counsel, retain their privileged and protected status which is not waived by their review in connection with the preparation of these answers.

IV.    **DOCUMENT REQUESTS**

1.    All documents requested to be identified in the Interrogatories.

**RESPONSE:**

See Ashland's above answers and objections to Plaintiff's Interrogatories and documents produced in connection with Ashland's initial disclosures.

2.    All other documents referring or relating to wastes from the Great Meadows Facility or from any other facility which were sent or which you believe, have reason to believe or surmise may have been sent directly or indirectly to the Site.

**RESPONSE:**

As Ashland does not believe or have reason to believe that any waste from its Great Meadows, New Jersey facility or any other facility was sent, directly or indirectly, to the Boarhead Farms Site during any part of the relevant time period, this Request is not applicable. By way of further response, see Ashland's above answers and objections to Plaintiff's Interrogatories and documents previously produced in connection Ashland's initial disclosures and its 104(e) responses.

RICHARD C. BIEDRZYCKI, ESQUIRE
Attorney I.D. No. 30604
PHELAN, PETTIT & BIEDRZYCKI
121 South Broad Street
Suite 1600
Philadelphia, PA 19107
(215) 546-0500

Counsel for Ashland Inc., designated by Plaintiff as Ashland Chemical Company

Date:___July 26, 2004___

## VERIFICATION

STATE OF OHIO            )
                        )
COUNTY OF FRANKLIN       )

Robin Lampkin-Isabel, being first duly sworn, deposes and says: THAT I am an Attorney for Ashland Inc.; that I have read the foregoing Answers and Objections of Defendant Ashland Inc. to Plaintiff's Interrogatories and Request for Production of Documents; that I verify the foregoing Answers and Objections for and on behalf of said defendant, and that I am duly authorized to do so; that certain of the matters stated in the foregoing are not within the personal knowledge of this deponent and that the facts stated in said Answers and Objections have been assembled by authorized employees of the said defendant and the deponent is informed by said employees that the facts stated in said Answers and Objections are true and correct.

_____
Robin Lampkin-Isabel

SUBSCRIBED and sworn to before me this __26th__ day of __July__, 2004.

_____
Notary Public



JOYCE C. DERINGER
NOTARY PUBLIC, STATE OF OHIO
MY COMMISSION EXPIRES OCTOBER 24, 2005

## CERTIFICATE OF SERVICE

I, Richard C. Biedrzycki, Esquire, hereby certify that on this 26th of July, 2004, I caused a true and correct copy of the foregoing Answers and Objections of Defendant Ashland Inc. to Plaintiff's Interrogatories and Request for Production of Documents of Plaintiff Boarhead Farm Agreement Group to be served by first class mail, postage prepaid, on all interested counsel of record addressed as follows:

### Counsel for Plaintiff:

Monique M. Mooney, Esquire
Glenn A. Harris, Esquire
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street
51st Floor
Philadelphia, PA 19103

### Counsel for Defendants:

*Advanced Environmental Technology Corporation*
Thomas Sabino, Esquire
Wolff & Samson PC
The Offices at Crystal Lake
One Boland Drive
West Orange, NJ 07052

*Carpenter Technology Corporation*
Lynn Wright, Esquire
Edwards & Angell
750 Lexington Avenue
New York, NY 10022

*Handy & Harman Tube Company*
Melissa E. Flax, Esquire
Carella, Byrne, Bain, Gilfillan,
        Cecchi, Stewart & Olstein, P.C.
5 Becker Farm Road
Roseland, NJ 07068-1739

*Merit Metals Products Corp.*
Stephen P. Chawaga, Esquire
Monteverde, Mcalee & Hurd
One Penn Center
Suite 1500
1617 JFK Boulevard
Philadelphia, PA 19103-1815

*NRM Investment Co.*
Edward Fackenthal, Esquire
Law Office of Edward Fackanthal
One Montgomery Plaza
Suite 209
Norristown, PA 19401

*Rahns Specialty Metals, Inc.*
*Techalloy Co., Inc.*
*Thomas & Betts Corporation*
Andrew P. Foster, Esquire
Adina M. Dziuk, Esquire
Drinker, Biddle & Reath, LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996

*Flexible Circuits & Etched Circuits*
Seth v.d.H. Cooley, Esquire
A. Nicole Friant, Esquire
Duane Morris LLP
Suite 4200, One Liberty Place
Philadelphia, PA 19103-7396


RICHARD C. BIEDRZYCKI

Date:   July 26, 2004

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BOARHEAD FARM
AGREEMENT GROUP,

                Plaintiff,

       v.

ADVANCED ENVIRONMENTAL
TECHNOLOGY CORPORATION, et al.,

             Defendants

Civil Action No. 02-CV-3830

## PLAINTIFF BOARHEAD FARM AGREEMENT GROUP'S MOTION TO OVERRULE OBJECTIONS AND COMPEL DEFENDANT ASHLAND CHEMICAL COMPANY TO RESPOND TO PLAINTIFF'S DISCOVERY REQUESTS

Plaintiff Boarhead Farm Agreement Group ("BFAG") moves this Court, pursuant to Fed. R. Civ. P. 37 (a), to overrule objections of Defendant Ashland Chemical Company ("Ashland") to Interrogatories And Requests For Production Of Documents Of Plaintiff Boarhead Farm Agreement Group Directed To Defendant Ashland Chemical Company ("Plaintiff's Discovery Requests"), and to compel Ashland's responses to certain interrogatories and requests for production of documents contained in Plaintiff's Discovery Requests.

Ashland's objections to Plaintiff's Discovery Requests unjustifiably limit the scope of their responses to Plaintiff's Discovery Requests, rendering their responses incomplete and deficient. Ashland has also failed to answer directly certain interrogatories contained in Plaintiff's Discovery Requests and has failed to produce relevant documents responsive to the document requests contained in Plaintiff's Discovery Requests. Plaintiff's Discovery Requests

are unobjectionable and reasonably calculated to the discovery of admissible evidence. The particular objections, interrogatories and requests for production of documents that are the subject of this motion are set forth in BFAG's exhibits that accompany the Memorandum of Law supporting this motion.

Counsel for BFAG certifies that it has in good faith conferred with counsel for Ashland in an effort to secure the discovery sought by this motion without intervention by this Court, but that such efforts have not been successful.

Accordingly, BFAG moves for an order compelling Ashland to respond to and produce the discovery enumerated in the accompanying proposed form of Order. The bases for BFAG's motion are set forth in BFAG's accompanying Memorandum Of Law In Support Of Its Motion To Overrule Objections And Compel Defendant Ashland Chemical Company To Respond To Plaintiff's Discovery Requests.

BFAG further moves, pursuant to Fed. R. Civ. P. (4)(A), for its reasonable expenses incurred in making this motion.

In accordance with Local Rule 7.1(a), a draft order granting BFAG's motion is attached.

Respectfully Submitted,

Dated:  October 8, 2004          By:  _____

Glenn A. Harris, Esquire
Monique M. Mooney, Esquire
BALLARD SPAHR ANDREWS &
    INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
(215) 665-8500

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BOARHEAD FARM
AGREEMENT GROUP,

             Plaintiff,

    v.

ADVANCED ENVIRONMENTAL
TECHNOLOGY CORPORATION, et al.,

           Defendants

Civil Action No. 02-CV-3830

### PLAINTIFF BOARHEAD FARM AGREEMENT GROUP'S
### MEMORANDUM OF LAW IN SUPPORT OF ITS
### MOTION TO OVERRULE OBJECTIONS AND COMPEL
### DEFENDANT ASHLAND CHEMICAL COMPANY TO
### RESPOND TO PLAINTIFF'S DISCOVERY REQUESTS

## I.    INTRODUCTION

       This case arises out of the Boarhead Farm Superfund Site in Bucks County, Pennsylvania ("Boarhead Farm Site"). From approximately 1969 to 1977, the Boarhead Farm Site was used as a dumping ground for the disposal of industrial wastes containing hazardous substances within the meaning of Section 101(14) of the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601(14) ("the Waste Materials"). During this time period, the Boarhead Farm Site was owned by Boarhead Corporation and used by DeRewal Chemical Company, Inc. ("DCC"). DCC hauled the Waste Materials from its industrial customers and disposed of it at the Boarhead Farm Site. Defendant Ashland Chemical Company's ("Ashland") waste was disposed of at the Boarhead Farm Site.

       In 1989, the U.S. Environmental Protection Agency ("EPA") placed the Boarhead Farm Site on the National Priorities List ("NPL"), 40 C.F.R. Part 300, Appendix B, and

subsequently implemented removal and remedial actions at the Boarhead Farm Site. In the course of its assessment of contamination at the Boarhead Farm Site, EPA identified dozens of hazardous substances on the site. BFAG entered into several Admininstrative Orders on Consent and Consent Decrees whereby it has funded and continues to fund remedial activities at the Boarhead Farm Site. BFAG has brought the present contribution action against Defendants for costs it has incurred and will incur in connection with the cleanup of the Boarhead Farm Site.

Ashland owned and operated a chemical plant in Great Meadows, New Jersey ("the Great Meadows Facility") from 1966 to 1978, at which time it sold the Great Meadows Facility to the Southland Corporation ("Southland"). The Great Meadows Facility was a "fine" chemical manufacturing plant, specializing in synthetic organic chemicals and hair dye intermediates which it produced in small quantities on a custom-made basis. During the time Ashland owned and operated the Great Meadows Facility, it generated several different hazardous waste streams from its manufacturing processes ("the Ashland Waste Streams").

Evidence produced in this case and in connection with prior EPA enforcement actions substantiate BFAG's contention that the Ashland Waste Streams were disposed of at the Boarhead Farm Site. Ashland disposed of the Ashland Waste Streams by contracting with third parties for off-site disposal and by disposing of waste itself on the grounds of the Great Meadows Facility. Defendant Advanced Environmental Technology Corporation ("AETC") was one of the third parties with whom Ashland contracted for the disposal of the Ashland Waste Streams. AETC, in turn, contracted with DCC to pick up and remove the Ashland Waste Streams from the Great Meadows Facility. DCC removed the Ashland Waste Streams from the Great Meadows Facility beginning in August, 1976 and continuing through early 1977 when DCC's waste

disposal business ended. Drivers for DCC have testified that they disposed of the Ashland Waste Streams at the Boarhead Farm Site.

BFAG has recently learned that Southland sued Ashland in the 1980's for contribution in connection with the cleanup of the Great Meadows Facility, which was contaminated by hazardous substances in the Ashland Waste Streams dumped on the site. *See Southland Corp. v. Ashland Oil, Inc., et al.*, 696 F. Supp. 994 (D.N.J. 1988) (attached hereto at Exhibit A). A number of reports pertaining to environmental conditions at the site were generated in connection with the cleanup of the Great Meadows Facility, including at least one report Ashland itself submitted to EPA.

On June 21, 2004, BFAG served Ashland with Interrogatories And Requests For Production Of Documents Of Plaintiff Boarhead Farm Agreement Group Directed To Defendant Ashland Chemical Company ("Plaintiff's Discovery Requests") (a true and correct copy of Plaintiff's Discovery Requests is attached hereto at Exhibit B). Plaintiff's Discovery Requests are designed primarily to determine two things: 1) the constituents of the Ashland Waste Streams; and 2) the amount of the Ashland Waste Streams removed by DCC. To that end, Plaintiff's Discovery Requests contain interrogatories and requests for production of documents that are tailored to elicit information in Ashland's possession concerning its waste streams, disposal practices, manufacturing operations, facilities and contacts with persons affiliated with the Boarhead Farm Site.

On July 26, 2004, Ashland submitted to BFAG Answers And Objections Of Defendant Ashland Inc. To Plaintiff's Interrogatories And Request For Production Of Documents Of Plaintiff Boarhead Farm Agreement Group ("the Ashland Response") (a true and correct copy of the Ashland Response is attached hereto at Exhibit C). The Ashland Response

contains thirty-one "General Objections" and a "General Statement," in addition to lengthy and detailed specific objections prefacing nearly every one of Ashland's responses to individual interrogatories and document requests. The Ashland Response is deficient for a number of reasons. Certain of Ashland's objections unjustifiably and inappropriately limit the scope of Ashland's responses to particular interrogatories and render such responses incomplete and deficient. Ashland simply declined to answer other of BFAG's interrogatories. Finally, Ashland provided no documents in response to the document requests contained in Plaintiff's Discovery Requests, although it identifies responsive documents in several of its interrogatory responses. Furthermore, to the extent any of the reports or other documents generated in connection with the cleanup of the Great Meadows Facility or Southland's suit against Ashland refer or relate to the Ashland Waste Streams, these documents should have been provided to BFAG in response to its document requests.

On September 3, 2004, BFAG sent a letter to counsel for Ashland detailing the deficiencies in the Ashland Response and requesting that Ashland provide full and complete responses to Plaintiff's Discovery Requests ("the Deficiency Letter") (a true and correct copy of the Deficiency Letter is attached hereto as Exhibit D). To date, Ashland has failed to respond to the Deficiency Letter.

## II.    ARGUMENT

Under Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery on any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party...." Fed. R. Civ. P. 26(b)(1). In this case, BFAG seeks contribution from the defendants for the costs it has incurred cleaning up dozens of different hazardous substances at the Boarhead Farm Site. In order to equitably apportion each

company's share of liability at the Boarhead Farm Site, each company's nexus to the Boarhead

Farm Site must be established, including the type and amount of each company's waste disposed

of at the Boarhead Farm Site. Clearly, discovery requests designed to elicit information about

the constituents of the Ashland Waste Streams, the manufacturing processes from which they

were generated, and Ashland's disposal practices are "relevant to the subject matter involved" in

this action. Id. However, Ashland has asserted spurious objections, failed to answer and failed

to provide relevant documents in response to discovery requests relating to these very matters.

### A.    Ashland's objections to Plaintiff's Discovery Requests are spurious and unjustifiably and unfairly limit the scope of its responses.

The Ashland Response is deficient insofar as Ashland has unjustifiably and

unfairly limited the scope of its responses to Plaintiff's Discovery Requests. In Definition No.

21 of Plaintiff's Discovery Request, BFAG defines the term "Geographical Area" to include

New York, New Jersey and Pennsylvania, the areas serviced by DCC. Definition No. 18 of the

Ashland Response objects to BFAG's definition of "Geographical Area" and states that it will

answer Plaintiff's Discovery Request with respect to the Great Meadows Facility only. Insofar

as Ashland acknowledges that DCC transported the Ashland Waste Streams (see, e.g., Ashland's

responses to Interrogatory Nos. 9 and 10 of Plaintiff's Discovery Request), interrogatories that

seek to ascertain whether Ashland had any other facilities in the Geographical Area serviced by

DCC during the time period that the Boarhead Farm Site was used as a disposal site, and that

seek information regarding operations at, and waste streams generated by, any such facilities, are

reasonably calculated to lead to the discovery of admissible evidence because they bear on the

amount and constituents of the Ashland Waste Streams that DCC actually or may have deposited

on the Boarhead Farm Site. See Fort Washington Resources, Inc. v. Tannen, 153 F.R.D. 78, 79

(E.D. Pa. 1994) (stating the rule that, in the discovery context, "[r]elevant matter encompasses

any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case") (citations omitted); *Transcontinental Fertilizer Co. v. Samsung Company, Ltd.*, 108 F.R.D. 650, 652 (E.D. Pa. 1985) ("[R]elevance is not to be measured by the precise issues framed by the pleadings but by the general relevance to the subject matter and the legal issues present in the case.") (citations omitted). Furthermore, to the extent operations at other Ashland facilities could shed light on operations at the facilities admittedly serviced by DCC, these interrogatories also fall within the scope of permissible discovery. *See id.* Accordingly, by limiting the scope of the Ashland Response to the Great Meadows Facility only, Ashland has unjustifiably and unfairly failed to provide adequate responses to the following interrogatories, to which information Plaintiff is entitled: (a) Interrogatory No. 1 and its subparts request information concerning any Ashland facility that Ashland believes or surmises may have had a nexus to the Boarhead Farm Site. By answering with respect to the Great Meadows Facility only, Ashland has failed to respond fully to this interrogatory; (b) Interrogatory No. 2 and its subparts request information concerning every Ashland facility in the Geographical Area. By answering with respect to the Great Meadows Facility only, Ashland has failed to respond fully to this interrogatory; (c) Interrogatory Nos. 3-5 request information regarding any facilities Ashland has identified in response to Interrogatory No. 1. To the extent Ashland's revised response to Interrogatory No. 1 identifies facilities other than the Great Meadows Facility, Ashland's responses to Interrogatory Nos. 3-5 should be supplemented to incorporate any such newly identified facilities.

Ashland Objection Nos. 15, 19, and 20, fairly read, state that Ashland believes it has no obligation whatsoever to investigate or respond to discovery requests with respect to the Ashland Waste Streams from the Great Meadows Facility, has no obligation to provide any

information whatsoever about that facility outside of an eight month time period in late 1976 and early 1977, and that Plaintiff's Discovery Requests are fatally deficient because they do not provide "notice" as to any specific waste streams relevant to this action. There is substantial testimonial and documentary evidence in this matter that Ashland arranged with AETC for the removal of several different wastes from its Great Meadows facility and that DCC removed substantial amounts of these wastes as part of DCC's agreement with AETC. Any documents or information in Ashland's possession, custody, or control, or information within its corporate knowledge either relevant to the quantities and nature of those wastes or that might lead to the discovery of such relevant evidence, is discoverable. *See Transcontinental Fertilizer Co.*, 108 F.R.D. at 653 ("A corporation must supply information in the hands of its agents and others within its control."). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. All of the information sought in Plaintiffs' Discovery Requests concerning Ashland's Great Meadows Facility, including the various waste streams from that facility, the various processes that created those waste streams, etc., including such information applicable to the facility for several years prior to and several years after the time of the eight month period, is discoverable. *See Fort Washington Resources, Inc.*, 153 F.R.D. at 79; Transcontinental *Fertilizer Co.*, 108 F.R.D. at 652. Ashland's response to each applicable discovery request must be supplemented accordingly and these meritless objections withdrawn.

Ashland Objection Nos. 13 and 17 and its "General Statement," read collectively, state that Ashland has undertaken an investigation only of those persons currently employed by it and a search for documents in its sole possession. Fed. R. Civ. P. 26(g). Ashland has a duty

under Fed. R. Civ. P. 26(g) to make a "reasonable inquiry" to determine information known to it

and documents within its possession, custody, or control. With respect to documents, this means

that Ashland has a duty to determine whether there are documents in its own possession or in the

possession of its attorneys or former attorneys, including those who represented Ashland in

Southland's suit against it, who are expected to have possession of responsive documents.

*Transcontinental Fertilizer Co.,* 108 F.R.D. at 653 ("A corporation must supply information in

the hands of its agents and others within its control."); *Axler v. Scientific Ecology Group, Inc.,*

196 F.R.D. 210, 212 (D. Mass. 2000) (holding, in rejecting plaintiffs' argument that disputed

documents did not have to be produced because they were solely in the possession, custody and

control of plaintiffs' attorneys, that "a party must produce otherwise discoverable documents that

are in his attorneys' possession, custody or control."); *see also, Hickman v. Taylor,* 329 U.S. 495,

504 ("A party clearly cannot refuse to answer interrogatories on the ground that the information

sought is solely within the knowledge of his attorney."). Ashland's response gives no indication

that Ashland has undertaken the necessary inquiry. In fact, Ashland has failed to produce any

documents whatsoever, including documents pertaining to the Southland litigation which

undoubtedly exist in its own files or those of its attorneys. Ashland should either withdraw these

objections or state in writing the steps it took to conduct its "reasonable inquiry." *See Alexander*

*v. Federal Bureau of Investigation,* 194 F.R.D. 299, 302 (D.D.C. 2000) (rejecting Mrs. Clinton's

claim that she need produce only those documents in her possession and ordering her to

supplement her discovery responses to explain in detail the search performed and assert whether

all documents, including those not in her possession but still within her control, have been

produced).

**B.**   **Ashland's response to Interrogatory No. 1 is deficient because it fails to provide a direct response to the question posed.**

Ashland's response to Interrogatory No. 1 is also deficient because it fails to

answer directly the questions posed. Interrogatory No. 1 asks Ashland to state whether any

document alleges or whether Ashland believes, has reason to believe, or surmises that its

materials were sent to the Boarhead Farm Site or transported by a Transporter, or any of its

facilities had dealings with the Boarhead Farm Site. Insofar as Ashland knows, beyond a doubt,

that DCC transported waste from its Great Meadows Facility, the direct answer to this

interrogatory is "Yes." However, rather than respond directly to these queries, Ashland couches

its answer in terms of whether it "has information" concerning the question at issue. This

response does not answer the query directly and is, therefore, deficient. A party cannot plead

ignorance to information that is from sources within its control. *Transcontinental Fertilizer Co.*,

108 F.R.D. at 652 (rejecting defendant's interrogatory response that it "has no knowledge of the

information requested in the interrogatory," as incomplete and unresponsive and ordering

defendant to provide a sworn answer indicating a lack of knowledge and no means of obtaining

the requested information). Therefore, BFAG is entitled to a response that directly addresses the

question posed. *See id.*

**C.**   **Ashland's unjustifiably failed to answer Interrogatory Nos. 6-9.**

Ashland simply failed to answer Interrogatory Nos. six through nine. Ashland

states, in response to Interrogatory No. 6, that the interrogatory is inapplicable since Ashland

"does not believe or have reason to believe or surmise that any wastes from its Great Meadows,

New Jersey facility or from any other Ashland facility were sent...to the Site." This response is

deficient and contradicted by Ashland's own responses to other interrogatories. Interrogatory

No. 6 asks Ashland for detailed information "with respect to the waste stream **from the Great**

Meadows Facility...or which was handled by a Transporter..." As described above,

Ashland admits that DCC transported its waste stream from the Great Meadows Facility during

the Relevant Time Period (defined in Plaintiff's Discovery Requests as January 1, 1969 to

December 31, 1977). Because Interrogatory No. 6 seeks information that will shed light on the

types and amounts of the Ashland Waste Streams present at the Boarhead Farm Site,

Interrogatory No. 6 is applicable and is reasonably calculated to lead to the discovery of

admissible evidence. Accordingly, Plaintiff is entitled to a substantive response to Interrogatory

No. 6 and its subparts. *See Transcontinental Fertilizer Co.,* 108 F.R.D. at 652 ("Answers to

interrogatories must be complete, explicit and responsive.").

    Collectively, Interrogatories 6-9 seek information pertaining to waste streams

generated at Ashland facilities, at least one of which, the Great Meadows Facility, Ashland

admits DCC serviced. Pursuant to the same reasoning outlined above with respect to

Interrogatory No. 6, Interrogatory Nos. 7, 8, and 9 are also applicable to Ashland and reasonably

calculated to lead to the discovery of admissible evidence. Therefore, to the extent Interrogatory

Nos. 7-9 pertain to the Great Meadows Facility and/or are premised on the information Ashland

provides in response to Interrogatory No. 6, Ashland must provide substantive responses to these

interrogatories as well. *See id.*

### D.  Ashland unjustifiably failed to produce documents it identifies in its responses to interrogatories.

    Document Request No. 1 asks Ashland to provide all documents requested to be

identified in the Interrogatories. Although Ashland identifies documents in response to a number

of different interrogatories, Ashland provided no documents in connection with the Ashland

Response. Rule 34 requires a party to produce relevant documents in the party's possession,

custody or control. Fed. R. Civ. P. 34(a). Documents that Ashland has identified in response to

an interrogatory are clearly relevant. Therefore, BFAG is entitled to all documents Ashland

identified in response to the interrogatories including, but not limited to, the following:

- The different categories of documents Ashland refers to in response to Interrogatory No. 10, including the testimony of Arthur Curley and William Charles Olasin in another CERCLA action.

- The documents referenced in Ashland's statement in response to Interrogatory No. 13 that it "has provided and is providing all information and documents in its possession or control" regarding wastes DCC transported from the Great Meadows Facility during the Relevant Time Period.

- All of the documents identified in Ashland's amended responses to Plaintiff's Discovery Requests, including, but not limited to, all documents concerning waste streams generated at the Great Meadows Facility and any other facility Ashland subsequently identifies.

Document Request No. 2 asks for copies of all documents that have not already

been produced that refer or relate to Ashland waste from the Great Meadows Facility or any

other Ashland facility which may have been sent to the Site. Ashland failed to produce any

documents in response to this document request and states that the request is inapplicable since

Ashland has no reason to believe any waste belonging to it was sent to the Boarhead Farm Site.

As explained above, Ashland's response is disingenuous. Former drivers for DCC have testified

that they disposed of the Ashland Waste Streams on the Boarhead Farm Site and Ashland itself

admits that DCC transported its wastes. To the extent Ashland's objection to Document Request

No. 2 is overruled, Ashland must provide all document in its possession, custody or control

pertaining to the specified waste streams. *See* Fed. R. Civ. P. 34(a). Documents pertaining to

the specified waste streams in the possession, custody or control of Ashland's attorneys or

former attorneys, including any such documents generated in connection with Southland's suit

against Ashland, also fall within the scope of Document Request No. 2. Accordingly, Ashland

must produce copies of these documents. *See Fort Washington Resources, Inc.*, 153 F.R.D. at 79

(holding that it is not a bar to the discovery of relevant material that the requested material is obtainable from another source); *Alexander*, 194 F.R.D. at 301 (holding that the test to determine "control" for purposes of discovery requests under Fed. R. Civ. P. 34(a) is whether the party upon whom the request was served has the "legal right to obtain documents on demand").

## III.    CONCLUSION

For the reasons set forth above, BFAG respectfully requests that this Court compel Ashland to respond to Plaintiff's Discovery Requests. In addition, BFAG requests, pursuant to Fed. R. Civ. P. 37(a)(4) that the Court award BFAG its costs, including attorney's fees, associated with bringing this motion.

Respectfully Submitted,

Dated: October 8, 2004

By: _____
Glenn A. Harris, Esquire
Monique M. Mooney, Esquire
BALLARD SPAHR ANDREWS &
INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
(215) 665-8500



## CERTIFICATE OF SERVICE

I hereby certify that, on October 8, 2004, Plaintiff Boarhead Farm Agreement Group's Motion to Overrule Objections and Compel Defendant Ashland Chemical Company to Resopnd to Plaintiff's Discovery Requests was filed electronically and is available for viewing and downloading from the Electronic Case Filing System of the United States District Court for the Eastern District of Pennsylvania. In addition, a true and correct copy of the foregoing was served by first-class mail, postage prepaid upon the following:

Thomas W. Sabino, Esquire
Wolff & Samson, PC
280 Corporate Center
5 Becker Farm Road
Roseland, New Jersey 07068-1776


Robert M. Morris, Esquire
Morris & Adelman, P.C.
1920 Chestnut Street
P.O. Box 30477
Philadelphia, PA 19103
*Advanced Environmental Technology Corp.*


Melissa Flax, Esquire
Carella, Byrne, Bain, Gilfillian, Cecchi,
Stewart & Olstein, P.C.
SIX Becker Farm Road
Roseland, New Jersey 07068-1739
*Handy & Harman Tube Company*


Stephen P. Chawaga, Esquire
Monteverde, McAlee & Hurd
One Penn Center at Suburban Station
Suite 1500
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103-1815
*Merit Metals Products Corp.*

Andrew P. Foster, Esquire
Drinker, Biddle & Reath, LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996
*Rahns Specialty Metals, Inc.*
*Techalloy Co., Inc.*
*Thomas & Betts Corporation*
*Unisys Corporation*

Edward Fackenthal, Esquire
Henderson, Weitherill, O'Hey & Horsey
Suite 902 - One Montgomery Plaza
P.O. Box 751
Norristown, PA 19404

Date: October 8, 2004

Monique M. Mooney, Esquire
Attorney for Plaintiff

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BOARHEAD FARM AGREEMENT GROUP,          :
                                        :
                     Plaintiff,         :
                                        :
          v.                            :          Civil Action No. 02-3830
                                        :
ADVANCED ENVIRONMENTAL                  :
TECHNOLOGY CORPORATION, et al.,         :
                                        :
                     Defendants.        :

ANSWER OF DEFENDANT ASHLAND INC. TO MOTION OF PLAINTIFF
BOARHEAD FARM AGREEMENT GROUP TO OVERRULE OBJECTIONS
AND COMPEL RESPONSES TO PLAINTIFF'S DISCOVERY REQUESTS

          Defendant Ashland Inc., designated by Plaintiff as Ashland Chemical Company (hereinafter

"Ashland"), by and through its undersigned counsel, hereby answers the Motion of Plaintiff

Boarhead Farm Agreement Group to Overrule Ashland's Objections to Plaintiff's Interrogatories and

Document Requests and to Compel Responses thereto.

          For the reasons set forth in the attached Memorandum of Law in support of its opposition to

Plaintiff's Motion, Ashland respectfully submits that Plaintiff's Motion should be denied.

          Contrary to Plaintiff's contentions, Ashland served full and complete Responses to Plaintiff's

Interrogatories and Document Requests properly limited to the relevant Ashland facility and limited

to the time period during which Ashland wastes were allegedly transported to the Boarhead Farms

Site.  The further discovery that Plaintiff seeks from Ashland as set forth in Plaintiff's Motion is

clearly overbroad, unduly burdensome, irrelevant, not reasonably calculated to lead to the discovery

of admissible evidence and appears to be primarily designed to harass and annoy Ashland,

particularly insofar as Plaintiff seeks to require Ashland to provide extensive detailed information

concerning numerous present and former Ashland facilities located anywhere within the borders of

the states of Pennsylvania, New Jersey and New York almost thirty (30) years ago, notwithstanding

the fact that none of those other facilities has been shown to be, or even claimed to have been, the

source of any hazardous wastes allegedly deposited at the Boarhead Farms Site.

Accordingly, Defendant Ashland Inc. respectfully requests that this Honorable Court enter

the attached proposed Order denying Plaintiff's Motion and further requests that the Court direct

Plaintiff to reimburse Ashland for the reasonable costs and expenses incurred by it in responding to

Plaintiff's Motion.[1]


*Richard C. Biedrzycki*
_____
RICHARD C. BIEDRZYCKI, ESQUIRE
Attorney I.D. No. 30604
PHELAN, PETTIT & BIEDRZYCKI
121 South Broad Street
Suite 1600
Philadelphia, PA 19107
(215) 546-0500

Counsel for Defendant Ashland Inc.,
designated by Plaintiff as Ashland Chemical
Company

Date:    November 5, 2004

_____

[1]    In their Motion, Plaintiff's counsel states that "counsel for BFAG certifies that it has in good faith conferred with counsel for Ashland in an effort to secure the discovery sought by this Motion without intervention by this Court, but that such efforts have not been successful." At no time did Plaintiff's counsel call or otherwise "confer in good faith" with Ashland's counsel with respect to the potential amicable resolution of this discovery dispute. Plaintiff's counsel merely forwarded a letter to the undersigned outlining purported deficiencies in Ashland's discovery responses (see 9/3/04 letter attached as Exh. "C" to Plaintiff's Motion). Ashland submits that such letter falls far short of the "good faith effort" that Plaintiff, as the moving party, was required to make under the Rules.

2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BOARHEAD FARM AGREEMENT GROUP,  :
                                                          :
                                    Plaintiff,            :
                                                          :
        v.                                                :        Civil Action No. 02-3830
                                                          :
ADVANCED ENVIRONMENTAL                    :
TECHNOLOGY CORPORATION, et al.,           :
                                                          :
                                    Defendants.   :

MEMORANDUM OF LAW OF DEFENDANT ASHLAND INC.
IN SUPPORT OF OPPOSITION TO PLAINTIFF'S
MOTION TO OVERRULE OBJECTIONS AND COMPEL RESPONSES
TO PLAINTIFF'S INTERROGATORIES AND DOCUMENT REQUESTS

Defendant Ashland Inc., designated by Plaintiff as Ashland Chemical Company (hereinafter

"Ashland"), by and through its undersigned counsel, submits its within Memorandum of Law in

Opposition to Plaintiff's Motion to Overrule Ashland's Objections to Plaintiff's Interrogatories and

Document Requests and to Compel More Specific Responses thereto.

I.      **COUNTER STATEMENT OF THE CASE**

        Despite professing to be seeking the production of information and documents pertinent to

the liability aspects of this case relative to Ashland, Plaintiff fails to inform the Court of the most

pertinent evidence developed to date with respect to Ashland's alleged wastes and further fails to

inform the Court that the relevant information and documents in Ashland's possession and control

relative to Ashland's alleged wastes have already been produced to Plaintiff and/or previously

obtained by Plaintiff from other sources. Ashland submits that a proper and informed consideration

of the issues raised by Plaintiff in its Motion requires an elaboration on the factual and procedural

context of this case as it applies to Plaintiff's claims against Ashland.

Although Plaintiff has generally alleged that during the period of January 1969 through December 1977 various Defendants' wastes were transported to and disposed of at the Boarhead Farms, Bucks County site (the "Boarhead Farms Site"), the extensive documents produced and testimony developed in this case demonstrate that the relevant time period with respect to the disposal of Ashland's alleged wastes is limited to no more than an eight (8) month period between August 1976 and April 1977. In or around the summer of 1976, Ashland retained Defendant Advanced Environmental Technology Corporation ("AETC") to arrange for the pick up and disposal of certain chemical wastes from Ashland's Great Meadows, New Jersey Facility. DeRewal Chemical Company ("DCC") was one of the transporters that AETC then retained to pick up and dispose of Ashland's wastes from its Great Meadows Facility. The testimony and documents produced to date also demonstrate that the only Ashland facility from which DCC, as arranged by AETC, picked up and transported wastes was Ashland's Great Meadows specialty organic chemical production plant. There is no evidence, or even any claim that has been advanced by Plaintiff in this case, that any wastes from any other Ashland facility were arranged by AETC to be transported, or were transported, by DCC to the Boarhead Farms Site during the relevant time period or at any other time.

It has also been established that during the eight (8) month time period that DCC picked up and transported wastes from Ashland's Great Meadows facility, DCC (or one of its affiliated companies) owned and operated a chemical processing and disposal facility located on the banks of the Delaware River in the Wissinoming section of the City of Philadelphia (the "Wissinoming Facility"). In early 1977, the EPA, the Pennsylvania DEP and the City of Philadelphia investigated reports of illegal dumping by DCC of bulk wastes from its Wissinoming Facility into the Delaware River. Those agencies' investigations resulted in the arrests of a number of DCC personnel

2

beginning on March 29, 1977, which individuals were charged with, and ultimately convicted of, criminal conduct in connection with the illegal dumping of wastes, including acid wastes from Ashland's Great Meadows, New Jersey facility here at issue into the Delaware River from the Wissinoming Facility. The Wissinoming Facility was then shut down and DCC stopped hauling and disposing of Ashland wastes. DCC was thereafter billed by the City for unpaid sewer charges in connection with its illegal dumping of wastes into the Delaware River from the Wissinoming Facility, which wastes included the very Ashland wastes that Plaintiff is now claiming were dumped at the Boarhead Farms Site! (See 7/5/98 letter, Exh. "A".)

Thereafter, the EPA began investigating charges of illegal waste dumping activity at the Boarhead Farms Site. Sworn testimony was taken by deposition in connection with the EPA's investigation. In responding to questions relating to DCC's disposal of wastes from Ashland's Great Meadows facility, all of the testifying Boarhead/DCC personnel, including DCC's truck drivers, testified at that time that all of the waste products picked up by DCC from the Great Meadows facility were transported to and disposed of at the DCC Wissinoming Facility and that none of those waste products were transported to or dumped at the Boarhead Farms Site. Ashland cooperated with the EPA and provided all information and documents requested with respect to its waste disposal activities and its association with DCC and with the Wissinoming Facility and the Boarhead Farms Site. The EPA and the DEP apparently concluded, based on its extensive investigation, that there was no basis for pursuing any claims against Ashland with respect to the Boarhead Farms Site.

Despite the government's conclusion, the extensive document production prior to and during the course of Plaintiff's within contribution action, and the extensive testimony developed prior to the filing of this action reflecting that no wastes from any Ashland facility were disposed of at the Boarhead Farms Site, Plaintiff produced for deposition in this case many of the same former

3

Boarhead/DCC employees who had testified earlier, including those who had previously given testimony exonerating Ashland from any association with the Boarhead Farms Site. Three of those witnesses -- former DCC truck drivers -- gave deposition testimony in 2003 in this case contradicting their earlier testimony with respect to, *inter alia*, the disposal of Ashland wastes and testified that they suddenly now "recalled" that some of the loads of acids picked up by them from Ashland's Great Meadows facility were transported to and dumped at the Boarhead Farms Site, acknowledging, however, that the great majority of those wastes were disposed of at DCC's Wissinoming Facility. The drivers' altered testimony as to the disposal of some Ashland wastes at the Boarhead Farms Site was not, however, supported by any documents or by testimony of any independent witnesses. This altered testimony of three convicted felons appears to be the sum essence of Plaintiff's claims against Ashland. Their testimony did not change, however, as to the fact that the only Ashland facility from which DCC picked up wastes was the Great Meadows facility or as to the fact that the time period during which such wastes were picked up from that facility was limited to the period of late 1976 to early 1977.

In silent recognition of the fact that it has no basis for pursuing any claims against Ashland other than the altered testimony of these convicted felons, which testimony flies in the face of the extensive testimony and documents completely emasculating such claims, Plaintiff has now set off on a huge fishing expedition seemingly designed to harass Ashland and to cause it to incur substantial, undue and unnecessary burden and expense by trying to force it to further respond to Interrogatories and Document Requests covering matters wholly irrelevant and immaterial to this litigation, including extensive information on other Ashland facilities fortuitously located within the

4

entirety of the states of New York, New Jersey and Pennsylvania.[1]  More particularly, in addition to the identification of all those other Ashland facilities, Plaintiff now claims entitlement to extensive detailed information and documents pertaining to the operations of all such other Ashland facilities, including the chemicals used, handled and processed and waste streams generated thereat and the chemical compositions thereof.  Plaintiff seeks such discovery without limiting its requests to information regarding chemicals or wastes of the type here at issue or to the disposal and transportation thereof by DCC to the Boarhead Farms Site or to any other facility owned and operated by DCC or any of its affiliated companies.

Plaintiff has also failed to inform the Court that Ashland made an extensive disclosure at the outset of this case, including the production of over four hundred (400) documents and the identification of more than twenty-three (23) present and former employees of Ashland who might have some information or knowledge of relevance to this lawsuit.  The documents produced by Ashland included waste disposal ledgers, correspondence, bills of lading, invoices, sales orders, waste disposal memoranda, monthly reports of disposal activities, chemical laboratory analyses and responses that Ashland had served in connection with another illegal dumping case, USA v. Davis, which also involved the disposal of wastes from the Ashland Great Meadows facility to a dump site in Rhode Island but having no relation to the Boarhead Farms Site or DCC.  The materials produced to Plaintiff also included memoranda of meetings that Ashland personnel had with DCC/Boarhead Farms personnel during the relevant time period.  Ashland's document production also included its

---

[1]    Based on its preliminary investigation conducted in response to Plaintiff's within Motion, Ashland presently believes that it had up to, or possibly more than, twenty-one (21) facilities throughout Pennsylvania, New York and New Jersey that conducted chemical operations during at least some portion of the Relevant Time Period.  Many of those facilities are believed to have been either sold or closed since the 1970s.

extensive January 11, 1996 104(e) response to the EPA's Request for Information regarding alleged dumping activities at the Boarhead Farms Site. All of this extensive documentation reflects that, at all relevant times, Ashland understood that all wastes to be picked up by DCC, as arranged by AETC, were to be picked up at Ashland's Great Meadows facility only and were to be transported to and processed at the DCC Wissinoming facility only, which facility, as stated above, was at all times open and operating during the entire time that DCC was picking up and hauling wastes from Ashland's Great Meadows facility.

In its Answers to Plaintiff's Interrogatories, Ashland has expressly stated, subject to general objections, that it has no information regarding any direct or indirect shipments from its Great Meadows facility or from any other Ashland facility to the Boarhead Farms Site during the relevant time period. This response was not limited only to the hauling of wastes from Great Meadows by DCC but by any other transporter. Ashland respectfully submits that it has provided all relevant information to the Plaintiff and that Plaintiff's disappointment at not being able to establish a nexus between Ashland wastes and the Boarhead Farms Site has improperly led it to attempt to embark on a fishing expedition at Ashland's expense. Ashland respectfully submits that there is no good faith basis or reason for the additional discovery that Plaintiff seeks, that the discovery sought is completely irrelevant and immaterial to the issues in this case, and that any potential relevance such discovery might have is far outweighed by the undue and extreme burden and expense that would be imposed on Ashland in attempting to provide the discovery sought. Further discussion with respect to particular Interrogatories and Document Requests for which Plaintiff seeks more information than that already provided by Ashland and to certain objections to Plaintiff's discovery requests challenged by Plaintiff appears seriatim below.

6

## II.   DISPUTED INTERROGATORIES AND DOCUMENT REQUESTS

### A.   Interrogatory Nos. 1-5

#### 1.   Ashland Properly Limited Its Responses To The Great Meadows Facility

In addition to seeking detailed information concerning the chemicals, operations and waste disposal activities at Ashland's Great Meadows facility, Plaintiff seeks to have Ashland provide detailed information on each and every facility owned or operated by Ashland within the states of Pennsylvania, New York and New Jersey. Plaintiff gives no indication as to how or why such detailed information regarding facilities other than Great Meadows facility and operations conducted thereat almost thirty (30) years ago could possibly be relevant to this case or could in any way reasonably lead to the discovery of admissible evidence. In its supporting Memorandum, Plaintiff does no better than to vaguely postulate that information concerning operations and waste streams at other Ashland facilities might somehow "bear on" the amount and constituents of Ashland waste streams that "may have" been deposited on the Boarhead Farms Site. Plaintiff also hypothesizes that information concerning operations at other Ashland facilities "could shed light" on operations at facilities such as Great Meadows that were serviced by DCC. Tellingly, however, Plaintiff offers not one bit of explanation as to how such information could possibly "bear on" or "shed light on" any claims or defenses as to Ashland, which claims, as noted above, involve only the off-site disposal of wastes from Ashland's Great Meadows facility which were picked up and transported by DCC during a limited eight (8) month period from August 1976 to March 1977.

Ashland submits that Plaintiff cannot be permitted to engage in such a virtually unlimited fishing expedition which would undoubtedly be extremely burdensome and expensive to Ashland in having to provide such extensive information and documents sought by Plaintiff for each and

every facility it owned or operated within a three (3) state area almost thirty (30) years ago. A

review of the information being sought by Plaintiff as to each of these facilities demonstrates the

extreme burdensomeness of the tasks which Plaintiff seeks to have Ashland undertake for no

articulated reason other than that the information sought as to Ashland's other facilities might

possibly "bear on" or "shed light on" the alleged disposal of certain wastes from Ashland's Great

Meadows plant at the Boarhead Farms Site. For example, Interrogatory No. 1(c) seeks to have

Ashland investigate and provide information on any direct or indirect shipments from <u>any</u> Ashland

facility by <u>any</u> transporter. Plaintiff's Interrogatory No. 2 asks Ashland to identify every facility

other than the Great Meadows facility owned, leased and/or operated by Ashland in the three (3)

state area and, for each such plant, to provide the location of the plant, the time period during which

Ashland owned, leased or operated it, the identity of the prior and subsequent owners and operators

of the plant, to provide a detailed description of the manufacturing, storage and disposal activities

at the plant, to identify and describe all waste streams at each such plant, to provide detailed

information on the disposal of all waste streams from each such plant, and to identify each and every

transporter used to haul the wastes from each such other plant and the destination of such disposed

wastes. Plaintiff's Interrogatory 3 seeks further information regarding such other Ashland facilities

within the three (3) state area, including the distance of each such other facility from the Boarhead

Farms Site, the identity of all permits Ashland possessed relative to the waste streams from each

such other Ashland facility, the identity of all individuals with knowledge of such waste streams,

the total number of employees at each facility, a description of any and all personnel changes at each

facility, and all photographs and other documents depicting the exteriors of each such other facility.

In addition, in Interrogatory No. 4, Plaintiff seeks the identity of all Ashland personnel holding

8

various specified positions at those other Ashland facilities almost thirty (30) years ago, including plant managers, production managers, purchasing managers, persons responsible for waste treatment, storage and disposal, plant maintenance, the retention of waste disposal services, accountants, security personnel, environmental affairs managers and worker safety personnel. In Interrogatory No. 5, Plaintiff asks Ashland to also identify, for each other Ashland facility in the three (3) state area, all persons with knowledge of the waste streams generated at each of those other facilities.

It is difficult to discern how any of the information sought by Plaintiff could yield any useful information relative to any claims or defenses in this case which, as to Ashland, involve very specific types of wastes transported from Ashland's Great Meadows facility by DCC during an eight (8) month period from late 1976 through early 1977. Therefore, one could be expected to reasonably conclude that Plaintiff's ulterior motive is to enlist the Court's help in forcing Ashland to engage in a burdensome and expensive fishing expedition with little, if any, hope that such investigation would turn up any information of potential relevance to this case. Ashland is confident that the Court will flatly reject Plaintiff's unconscionable attempt to seek discovery the only discernable purpose of which appears to be to burden, harass and annoy Ashland. As a review of its Answers to Plaintiff's Interrogatories reflects, Ashland has provided responses to each and every one of Plaintiff's Interrogatories and subparts thereof with respect to the Great Meadows facility and the transportation and disposal of wastes therefrom by DCC during the relevant time period. It should not be overlooked that Plaintiff does not assert any dissatisfaction with Ashland's responses with respect to its Great Meadows facility.

9

Ashland submits that in the unlikely event that any credible evidence turns up in this case indicating that wastes from any particular Ashland facility other than its Great Meadows facility may have been transported by DCC during the relevant time period or transported by any transporter to the Boarhead Farms Site, information of the type Plaintiff seeks in these Interrogatories could, at such point, become relevant as to those other Ashland facilities.  However, the extensive discovery and document production in this case to date makes it abundantly clear that the only relevant facilities are the Great Meadows, Boarhead Farms and Wissinoming Facilities and that DCC is the only relevant transporter.  Otherwise, as stated by Ashland in its Answers to Plaintiff's Interrogatory No. 1, "Ashland has no information that any [direct or indirect] shipments were sent to the Boarhead Farms Site from its Great Meadows, New Jersey facility or from any of its other facilities during the relevant time period."  As further stated by Ashland in its Answer to Interrogatory No. 1, Ashland has no information that any shipments of Ashland wastes were transported to the Boarhead Farms Site by any transporter.  Ashland further stated in its Answer to Interrogatory No. 1 that it has no information that any Ashland materials were transported to the Boarhead Farms Site from its Great Meadows facility "or from any of its other facilities."

As noted above, the only factual basis Plaintiff appears to rely on to support a claim that Ashland wastes were transported to the Boarhead Farms Site was equivocal and contradictory testimony given at Plaintiff's instance by three (3) former truck drivers of DCC, all of whom are convicted felons who changed their earlier testimony exonerating Ashland with respect to the Boarhead Farms Site.  Regardless of whether the most recent testimony or the prior testimony of those drivers is true, none of those drivers testified that they hauled any Ashland wastes from any facility other than the Great Meadows facility.  Ashland respectfully submits that the scope of the

10

discovery Plaintiff seeks from Ashland must be limited to relevant matters, i.e. wastes generated by

Ashland's Great Meadows facility transported therefrom by DCC.    Accordingly, Ashland

respectfully submits that its objections to the clearly improper scope of the additional information

Plaintiff seeks must be sustained and Plaintiff's Motion must be denied.

### 2.    Ashland Has Fully Responded To Interrogatory No. 1

Plaintiff seems to take issue with the completeness of Ashland's response to Interrogatory

No. 1 with respect to Ashland's Great Meadows facility.    Interrogatory No. 1, phrased in a most

curious fashion, inquires as follows:

> Is it alleged in any document, including without limitation any
> document filed with the court or served on you in connection with the
> Case, or do you believe, have reason to believe, or surmise that:

First, Ashland is at a loss to understand the potential relevance, let alone discoverability, of

what Ashland might "believe" or "have reason to believe or surmise" with respect to this case.

Ashland properly objected to the phraseology used by Plaintiff insofar as Plaintiff apparently seeks

to have Ashland disclose its mental thoughts and evaluations concerning this case which clearly

constitute privileged and nondiscoverable work product.    Nevertheless, subject to its objections,

Ashland fully answered each and every subpart of this Interrogatory, stating that it had no

information regarding shipments of any waste materials to the Boarhead Farms Site from its Great

Meadows facility, from any other Ashland facility, or by any transporter.

Accordingly, Ashland respectfully submits that it has fully and properly responded to each

and every one of Plaintiff's requests for information set forth in the subparts of this Interrogatory

and that to the extent that Plaintiff seeks to delve into Ashland's "corporate mind" regarding its

mental thoughts and processes, Plaintiff is attempting to go where it is forbidden to go.

11




**B.     Interrogatory Nos. 6-9**

Plaintiff asks the Court to order Ashland to provide complete answers to Interrogatory Nos.

6 through 9.  Again, Ashland submits that it has fully and completely responded to these

Interrogatories, limited to the Great Meadows facility and to the relevant time period.  Interrogatory

No. 6 asks Ashland to provide detailed information relative to every waste stream that Ashland

might "believe, have reason to believe or surmise was sent directly or indirectly to the [Boarhead

Farms] Site."  Ashland properly and fully responded to this Interrogatory as follows:

> As Ashland does not believe or have reason to believe or surmise that
> any wastes from its Great Meadows, New Jersey facility or from any
> other Ashland facility were sent, directly or indirectly, to the Site,
> this Interrogatory is not applicable.

Ashland is at a loss to understand why this Answer is not fully, completely and directly responsive

to this Interrogatory which asks for information regarding waste streams which Ashland might

believe were directly or indirectly sent to the Boarhead Farms Site.  Since Ashland has no such

belief, but in fact believes the contrary to be true, further responses were not required.

Interrogatory No. 7 asks for extensive information regarding "each waste stream referenced

in your response to Interrogatory No. 6."  Since Ashland did not have any information to provide

concerning any such waste streams sent to the Boarhead Farms Site in its response to Interrogatory

No. 6, it therefore had no information to provide in response to Interrogatory No. 7.  Nevertheless,

Ashland did provide a full and complete response with respect to waste streams generated by its

Great Meadows, New Jersey facility and referred Plaintiff to extensive documents and disclosures

previously produced by Ashland.  Ashland further directly responded that it had no other responsive

information or documents.

Interrogatory No. 8 seeks yet more information concerning waste streams that Ashland may have described in response to Interrogatory No. 6. Again, since no such waste streams were described or required to be described in response to Interrogatory No. 6, Ashland has no additional information responsive to Interrogatory No. 8. Nevertheless, again Ashland went on to provide a substantive response with respect to its Great Meadows facility, stating that it has no information or documents relating to any tests on or analyses of its waste streams coming from the Great Meadows facility, the particular information requested in this Interrogatory.

Finally, Interrogatory No. 9 requests Ashland to "account for the disposal of the waste stream from the Great Meadows facility" and for waste streams previously set forth in response to a preceding Interrogatory relating to waste streams from Ashland facilities other than the Great Meadows facility. Ashland fully and directly responded to this Interrogatory by referring Plaintiff to the extensive documents it previously produced and specifically gave an "account" of the disposal of the waste streams from Ashland's Great Meadows facility in stating that "all wastes from its Great Meadows, New Jersey facility that were transported by DeRewal Chemical Company were transported to DeRewal's Wissinoming facility in Philadelphia for handling, treatment and disposal and not to the Boarhead Farms Site." The extensive documentation produced by Plaintiff provides all of the information in Ashland's possession regarding the disposal of Ashland's waste streams from the Great Meadows facility. Ashland cannot provide more information than what it has already produced.

C.    **Ashland's General Objections To Plaintiff's Interrogatories and Document Requests**

1.    **General Objection No. 18**

Plaintiff makes another attempt to have Ashland respond to its Interrogatories with respect

13



to facilities other than Ashland's Great Meadows, New Jersey facility by asking the Court to strike Ashland's General Objection No. 18 which objects to Plaintiff's definition of "Geographic Area" as inclusive of facilities other than Ashland's Great Meadows facility. Ashland has already presented, and incorporates herein, its above arguments with respect to Plaintiff's improper request to have Ashland incur undue and unnecessary burden and expense in seeking and producing information as to facilities having no discernable relationship to this case generally or to Plaintiff's claims as against Ashland specifically. Again, Ashland submits that its objections to the overbreadth of the discovery sought by Plaintiff are clearly appropriate and that its objections thereto should be sustained.

### 2.     General Objection Nos. 15, 19 and 20

Curiously, Plaintiff argues that by its General Objection Nos. 15, 19 and 20 Ashland purportedly "believes" that it is not obligated to respond to Plaintiff's Interrogatories and Document Requests with respect to waste streams from Ashland's Great Meadows facility. Plaintiff's statement is incorrect, as evidenced by the extent and detail to which Ashland has responded to each and every one of Plaintiff's Interrogatories and Document Requests with respect to Ashland's Great Meadows facility. While Plaintiff takes issue with Ashland's limitation of its responses to the Great Meadows facility and to the relevant eight (8) month period of time during which DCC transported Ashland wastes therefrom, the simple fact is that the generation of wastes from the Great Meadows facility during that period of time constitutes the only proper and relevant scope of discovery which, Ashland submits, Plaintiff may seek. Again, nowhere does Plaintiff even attempt to support its bare statement that discovery beyond this duly limited scope "may shed light on" Ashland's wastes and the transportation thereof by DCC to the Boarhead Farms Site. Thus, Ashland respectfully submits that its General Objection Nos. 15, 19 and 20 are quite appropriate, that it has fully and completely

responded to Plaintiff's discovery requests properly limited to the Great Meadows facility during the relevant time period, and that its objections should be sustained.

### 3.    General Objection Nos. 13, 17 and "General Statement"

Plaintiff patronizingly appears to be trying to lecture Ashland with regard to its obligation to make "reasonable inquiry" in responding to discovery requests. Ashland is well aware of its obligations in this regard and has dutifully responded to each and every one of Plaintiff's proper discovery requests, which is more than can be said of Plaintiff's responses to Ashland's discovery requests, a copy of which responses are attached hereto as Exh. "B".[2] In contrast to Ashland's discovery responses, Plaintiff has artfully dodged providing any substantive information in response to Ashland's discovery requests and has failed and refused to provide any facts supporting its contentions against Ashland with respect to the alleged dumping of Ashland wastes at the Boarhead Farms Site. Simply stated, Plaintiff refuses to acknowledge that other than the altered testimony of three (3) convicted former DCC employees, the credible and overwhelming evidence adduced in this case to date clearly demonstrates that no wastes from any Ashland facility were transported to or dumped at the Boarhead Farms Site. Further in contrast to Plaintiff's condescending statements with respect to Ashland's duty to make "reasonable inquiry," Ashland submits that had Plaintiff exercised its own duty to make such reasonable inquiries it would never had brought this action against Ashland.

In any event, Ashland's responses to Plaintiff's Interrogatories and Document Requests would be no different regardless of its assertions of General Objection Nos. 13 and 17 and thus there

---

[2]    For example, in response to Ashland's Interrogatory No. 1 asking Plaintiff to identify each hazardous substance of Ashland that Plaintiff contends was disposed of at the Boarhead Farms Site and to provide the details of each shipment thereof, Plaintiff objected to this most pertinent Interrogatory as premature.

is no basis for the striking of any of Ashland's Objections to the improper scope of the discovery sought from Ashland by Plaintiff in this action.

### D.    <u>Document Request No. 1</u>

Plaintiff is apparently not satisfied with Ashland's Response to Plaintiff's Request for Production No. 1 which requests the production of all documents that Ashland identified in response to Plaintiff's Interrogatories. The short response to Plaintiff's contention in this regard is that Ashland has, in fact, produced all of the documents referenced by it in its Answers to Plaintiff's Interrogatories, with the exception of transcripts of deposition testimony of two (2) former Ashland employees, Arthur Curley and William Olasin, taken in connection with other litigation involving, in part, the Great Meadows facility. Presumably, Plaintiff has copies of those transcripts. If not, transcripts would presumably be available from the court reporter whose identity, if not known to Plaintiff, can be provided upon request. To date, Plaintiff has made no such request.

Plaintiff's other contentions with regard to Ashland's response to Request No. 1 appear, again, to be addressed to Ashland's limitation of its discovery responses to its Great Meadows facility and all wastes generated therefrom during the relevant time period. For the reasons set forth above, Ashland respectfully submits that to search for and provide the information and documents sought as to other Ashland facilities in a three (3) state area would require Ashland to undertake a herculean task to provide information and materials having little, if any, discernable potential relevance to this case. Ashland's Responses to Plaintiff's Interrogatories, including Interrogatory Nos. 10 and 13, reflect that Ashland has provided full and complete responses and has produced all relevant documents pertaining to its Great Meadows, New Jersey facility. As Ashland previously submitted, unless and until Plaintiff has presented any credible, material evidence indicating that wastes from any other Ashland facilities may have been transported to the Boarhead Farms Site

16

during the relevant time period, Plaintiff should not be entitled to compel Ashland incur the great burden and expense of conducting a deep sea fishing expedition in which Plaintiff seeks to have Ashland charter the boat and hire the crew.

E.    **Document Request No. 2**

Quite simply, Plaintiff's Document Request No. 2 seeks to compel Ashland to produce documents that it does not have. In summary, this Request seeks documents relating to wastes from any Ashland facility which Ashland believes or has reason to believe or surmise may have been sent directly or indirectly to the Boarhead Farms Site. Again, Ashland has made it clear in its Answers to Interrogatories and throughout this litigation that is has no basis for believing that any wastes generated by the Great Meadows facility or from any other Ashland facility were transported to the Boarhead Farms Site. For Ashland to respond to this Document Request would require it to reverse course and effectively admit that its wastes went to the Boarhead Farms Site, a fact which Ashland believes to be untrue.

Plaintiff states in its Brief that Ashland's response is "disingenuous." Such unseemly baseless assault on Ashland's and its counsel's integrity again reflects no more than Plaintiff's obvious desperation in having to deal with the reality that it has no credible basis for contending, as it does, that Ashland, directly or indirectly, transported any wastes from any Ashland facility to the Boarhead Farms Site or that any such wastes otherwise found their way onto that Site. Ashland has made full disclosure of all relevant information and documents which, unfortunately for Plaintiff, dramatically demonstrate the complete absence of any basis for Plaintiff's claims against Ashland. Accordingly, Ashland respectfully submits that Plaintiff's Motion to Compel Ashland to provide what it does not have and which Ashland does not even believe may exist should be summarily denied.

17

## III.    CONCLUSION

For all of the foregoing reasons, Defendant Ashland Inc. respectfully submits that Plaintiff's

Motion to Overrule Ashland's Objections and to Compel Responses to Plaintiff's Interrogatories

and Document Requests should be denied.

Respectfully submitted,

*Richard C. Biedrzycki*

RICHARD C. BIEDRZYCKI, ESQUIRE
Attorney I.D. No. 30604
PHELAN, PETTIT & BIEDRZYCKI
121 South Broad Street
Suite 1600
Philadelphia, PA 19107
(215) 546-0500

Counsel for Defendant Ashland Inc.,
designated by Plaintiff as Ashland Chemical
Company

Date:    November 5, 2004

18

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BOARHEAD FARM AGREEMENT                :
GROUP,                                 :
          Plaintiff,              :    CIVIL ACTION
                          :
          v.                       :    NO. 02-3830
                          :
ADVANCED ENVIRONMENTAL                 :
TECHNOLOGY CORPORATION,                 :
et al.,                                :
          Defendants.             :

## ORDER

AND NOW, this    10th    day of January 2005, upon consideration of Plaintiff

Boarhead Farm Agreement Group's ("BFAG") Motion to Overrule Objections and Compel

Defendant Ashland to Respond to Discovery Requests (Doc. No. 111), filed October 8, 2004, and

Ashland Chemical Company's ("Ashland") Response (Doc. No. 119), filed November 5, 2004, is

it is hereby ORDERED as follows.

BFAG seeks information related to Ashland's present and former facilities in

Pennsylvania, New Jersey, and New York from 1969 through 1977 ("the Relevant Time Period,"

specifically 1/1/1969 through 12/31/1977), the period of the operation of the Boarhead Farms

Superfund Site in Bucks County, Pennsylvania ("the Site"), in order to help it determine the

constituents of Ashland's waste stream and how much waste might have been deposited by

Ashland, directly or indirectly, on the Site. Ashland asserts that its only possible connection to

the Site is through its former Great Meadows, New Jersey facility ("Great Meadows") during an

eight month period between August 1976 and April 1977 via its relationship with DeRewal

1

Chemical Company ("DCC"), which may have disposed of Ashland waste from Great Meadows at the Site during that period. As a result, Ashland has confined its interrogatory responses to that facility and time period.

Under Rule 26 of the Federal Rules of Civil Procedures, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Fed. R. Civ. P. 26(b)(1). However, the court may limit discovery where "the burden or expense of the proposed discovery outweighs its likely benefit . . ." Fed. R. Civ. P. 26(b)(2)(iii).

Here, it is clear that evidence exists that indicates that DCC disposed of waste at the Site, some of which may been Ashland waste. Logically, then, any and all relationships between Ashland and DCC during the Relevant Time Period are relevant to Plaintiff's claims. Therefore, it is hereby ORDERED that Ashland conduct a reasonable investigation, including but not limited to documents in its sole possession, to identify and disclose the existence and nature of any relationship between any of its facilities and DCC during the Relevant Time Period. Conversely, because there is no indication that transporters other than DCC disposed of Ashland wastes at the Site, Ashland need not provide waste stream and other facility information for those facilities with no ties to DCC. Ashland shall amend its interrogatory responses in accordance with the foregoing.

Further, with regard to the Great Meadows facility specifically, there is some evidence that waste from that location was disposed of at the Site. This raises a reasonable possibility that waste from Great Meadows may have been disposed of at the Site outside of the eight month period wherein Plaintiff avers waste was removed by DCC. Therefore, it is hereby

2

ORDERED that Ashland respond to Plaintiff's interrogatories with regard to Great Meadows for the entire Relevant Time Period, regardless of the identity of the Transporter. Ashland shall amend its interrogatory responses in accordance with the foregoing.

Further, Defendant Ashland shall produce the following discovery within 14 days of the entry of this Order:

1.  Ashland shall provide more complete answers to Interrogatory Nos. 1–5, limiting its answers to the Relevant Time Period. With regard to facilities other than Great Meadows, further limiting its answers to those facilities where DCC or a DCC–controlled entity acted as a transporter during the Relevant Time Period. For the Great Meadows facility, Ashland shall not limit the scope of its answer to the August 1976–April 1977 period.

2.  Ashland shall provide more complete answers to Interrogatory Nos. 6, 7, and 8 limiting its answer to (1) waste streams for which DCC was a Transporter, regardless of whether Ashland is aware of any connection to the Site, during the Relevant Time Period, as well as (2) any waste streams that may have any connection to the Site during the Relevant Time Period, regardless of the identity of the Transporter.

3.  Ashland shall provide more complete answers to Interrogatory Nos. 9–19, taking into consideration the guidelines set forth above.

BY THE COURT:

_____/s/_____

Legrome D. Davis, J.

3

# EXHIBIT F

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BOARHEAD FARM AGREEMENT GROUP,   :
                                            :

                     Plaintiff,      :

                                            :

            v.                    :     Civil Action No. 02-3830

                                            :

ADVANCED ENVIRONMENTAL        :
TECHNOLOGY CORPORATION, et al.,    :

                                            :

                   Defendants   :

## SUPPLEMENTAL ANSWERS OF DEFENDANT ASHLAND INC. TO PLAINTIFF'S INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS OF PLAINTIFF BOARHEAD FARM AGREEMENT GROUP

Defendant Ashland Inc., designated by Plaintiff as Ashland Chemical Company (hereinafter "Ashland"), by and through its undersigned counsel, in compliance with the Court's Order of January 10, 2005 determining Plaintiff's Motion to Overrule Objections and Compel Defendant Ashland to Respond to Discovery Requests, hereby supplements its prior responses to Plaintiff's Interrogatories and Request for Production of Documents directed to Ashland.

Except as supplemented and/or amended hereinafter, Ashland incorporates herein by reference each of its Answers and Objections to Plaintiff's Interrogatories and Document Requests served on July 26, 2004 including, but not limited to, Ashland's General Objections and General Statement set forth therein.

1-28

## GENERAL STATEMENT

In compliance with the Court's aforementioned Order of January 10, 2005, Ashland has conducted a further reasonable investigation to determine whether it has any information or documents indicative of the transportation of wastes by DeRewal Chemical Company ("DeRewel") or any DeRewal-controlled company from any Ashland facilities located in the states of New York, New Jersey and Pennsylvania from 1969 through 1977. Following such investigation, Ashland has no information or documents indicating that any wastes were transported by DeRewal or any DeRewal-controlled company during that time period from any Ashland facility in the three state area other than from Ashland's Great Meadows, New Jersey facility. Accordingly, in accordance with the Court's Order, Ashland is not required to provide any of the information requested by Plaintiff as to any of its facilities other than Ashland's Great Meadows, New Jersey facility.

With respect to the information requested in Plaintiff's Interrogatories that relates to Ashland's Great Meadows facility, except as supplemented or amended below, Ashland's previous answers to Plaintiff's Interrogatories and Document Requests are complete as to the 1969-1977 time period.

2



## SUPPLEMENTAL RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

INTERROGATORY NOS. 1-5

**ANSWER:**

Upon further investigation and review of the discovery to date in this action, Ashland continues to believe that no direct or indirect shipments of wastes were sent to the Boarhead Farms Site from its Great Meadows, New Jersey facility, or from any other Ashland facility, during the 1969-1977 time period. With respect to the disposal of wastes from Ashland's Great Meadows facility during that time period, the only information that Ashland has responsive to these interrogatories is set forth in its prior discovery responses, including Ashland's self-executing disclosures, testimony given by way of deposition in this action, discovery produced by other parties to this litigation, and the additional documents being produced by Ashland herewith and submitted to the Document Repository, which additional documents include, but are not limited to, information as to the transportation and disposal of wastes during the period of 1969-1977 from Ashland's Great Meadows facility by companies other than DeRewal-related companies and disposed of at facilities not owned or operated by any DeRewal-related companies. Furthermore, the identities of the court reporters from whom copies of the depositions of former Ashland employees referenced in Ashland's prior answer to interrogatory no. 3(l) can be obtained will be provided upon request if Plaintiff does not already have such information.

INTERROGATORY NOS. 6-8

**ANSWER:**

See above supplemental response to interrogatory nos. 1-5.

3

## INTERROGATORY NOS. 9-16

**ANSWER:**

See above supplemental response to interrogatory nos. 1-8. Ashland has no further information responsive to these interrogatories other than information that may be contained in the additional documents being produced by Ashland herewith and submitted to the Document Repository.

## INTERROGATORY NO. 19

**ANSWER:**

In addition to the investigation previously conducted by Ashland, Ashland and its attorneys have again reviewed all documents that have previously been produced and documents not previously produced and have reviewed the relevant deposition testimony taken in this action and in related lawsuits and proceedings. Such investigation has included a search for any information or documents relating to any transportation of wastes by DeRewal-related companies from any Ashland facilities within the states of New York, New Jersey and Pennsylvania during the 1969-1977 time period, including information and documents relating to the transportation of any wastes from Ashland's Great Meadows, New Jersey facility. Such investigation has demonstrated, in conformity with the deposition testimony given by principals and employees of DeRewal in this litigation and in related proceedings, including, but not limited to, testimony by Manfred DeRewal, Sr., Manfred DeRewal, Jr., Bruce J. DeRewal, John Barsum and Jeffrey Shaak, that any Ashland-generated waste streams that were transported by DeRewal-related companies were limited to wastes transported from Ashland's Great Meadows, New Jersey facility. With respect to the transportation of wastes from Ashland's Great Meadows facility during the 1969-1977 time period, the only additional information that Ashland has responsive to Plaintiff's interrogatories that has not been previously produced or disclosed is information that may be contained in additional documents being produced by Ashland herewith and submitted to the Document Repository.

RICHARD C. BIEDRZYCKI, ESQUIRE
Attorney I.D. No. 30604
PHELAN, PETTIT & BIEDRZYCKI
121 South Broad Street
Suite 1600
Philadelphia, PA 19107
(215) 546-0500

Counsel for Ashland Inc., designated by Plaintiff as Ashland Chemical Company

Date:   January 28, 2005

G:\DATA\1357-29\Disc\Supp-Ans-Rogs-BFAG.wpd

4

## VERIFICATION

STATE OF OHIO

COUNTY OF FRANKLIN

 Robin Lampkin-Isabel, being first duly sworn, deposes and says: that I am an attorney for

Ashland, Inc.; that I have read the foregoing Supplemental Answers and Objections of Defendant

Ashland Inc. to Plaintiff's Interrogatories and Requests for Production of Documents; that I

verify the foregoing supplemental answers and objections for and on behalf of said defendant

and that I am duly authorized to do so; that certain of the matters stated in the foregoing are not

within the personal knowledge of this deponent and that the facts stated in said supplemental

answers and objections have been assembled by authorized employees of the said defendant and

the deponent is informed by said employees that the facts stated in said answers and objections

are true and correct.


_____
Robin Lampkin-Isabel


Subscribed and sworn to

before me this __28th__

day of __January__, 2005.



Notary Public


**JOYCE C. DERINGER**
NOTARY PUBLIC, STATE OF OHIO
MY COMMISSION EXPIRES OCTOBER 24, 2005

6

 

## CERTIFICATE OF SERVICE

I, Richard C. Biedrzycki, Esquire, hereby certify that on this 28th of January, 2005, I caused a true and correct copy of the foregoing Supplemental Answers and Objections of Defendant Ashland Inc. to Plaintiff's Interrogatories and Request for Production of Documents of Plaintiff Boarhead Farm Agreement Group to be served by first class mail, postage prepaid, on all interested counsel of record addressed as follows:

### COUNSEL FOR PLAINTIFF:

Glenn A. Harris, Esquire
Ballard Spahr Andrews & Ingersoll, LLP
Plaza 1000 - Suite 500
Main Street
Voorhees, NJ 08043-4636
e-mail: harrisg@ballardspahr.com

Monique M. Mooney, Esquire
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street
51st Floor
Philadelphia, PA 19103
e-mail: mooney@ballardspahr.com

### COUNSEL FOR DEFENDANTS:

*Advanced Environmental Technology Corporation*
Thomas Sabino, Esquire
Wolff & Samson PC
The Offices at Crystal Lake
One Boland Drive
West Orange, NJ 07052
Phone: 973-325-1500
Fax: 973-325-1501
tsabino@wolffsamson.com

*Carpenter Technology Corporation*
Lynn Wright, Esquire
Edwards & Angell
750 Lexington Avenue
New York, NY 10022
Phone: (212) 756-0215
Fax: (888) 325-9169
lwright@ealaw.com



**Handy & Harman Tube Company**
Melissa E. Flax, Esquire
Carella, Byrne, Bain, Gilfillan,
        Cecchi, Stewart & Olstein, P.C.
5 Becker Farm Road
Roseland, NJ 07068-1739
Phone: (973) 994-1700
Fax: (973) 994-1744
mflax@carellabyrne.com

**Merit Metals Products Corp.**
Stephen P. Chawaga, Esquire
Monteverde, Mcalee & Hurd
One Penn Center
Suite 1500
1617 JFK Boulevard
Philadelphia, PA 19103-1815
Phone: (215) 557-2900
Fax: (215) 557-2990
schawaga@monteverde.com

**NRM Investment Co.**
Edward Fackenthal, Esquire
Law Office of Edward Fackanthal
One Montgomery Plaza
Suite 209
Norristown, PA 19401
Phone: (610) 279-3370
Fax: (610) 279-0696
edwardfackenthal@cs.com

**Rahns Specialty Metals, Inc.**
**Techalloy Co., Inc.**
**Thomas & Betts Corporation**
Andrew P. Foster, Esquire
Adina M. Dziuk, Esquire
Drinker, Biddle & Reath, LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996
Phone: (215) 988-2700
Fax: (215) 988-2757
andrew.foster@dbr.com
Adina.Bingham@dbr.com

***Flexible Circuits***
Seth v.d.H. Cooley, Esquire
A. Nicole Friant, Esquire
Duane Morris LLP
Suite 4200, One Liberty Place
Philadelphia, PA 19103-7396
Telephone: 215-979-1000
Fax: 215-979-1020
scooley@duanemorris.com
anfriant@duanemorris.com

RICHARD C. BIEDRZYCKI

Date:  January 28, 2005

# EXHIBIT G

# PHELAN, PETTIT & BIEDRZYCKI
### ATTORNEYS AT LAW

JOHN M. PHELAN
RICHARD C. BIEDRZYCKI
JEFFREY L. PETTIT
CHRISTOPHER H. JONES*
RICHARD E. STABINSKI††
JOHN W. PHELAN*
BRENT A. COSSROW*

* ALSO ADMITTED TO NJ BAR
†† ALSO ADMITTED TO IL BAR

SUITE 1600
THE NORTH AMERICAN BLDG.
121 SOUTH BROAD STREET
PHILADELPHIA, PA 19107

TELEPHONE (215) 546-0500
FACSIMILE (215) 546-9444

January 31, 2005

**VIA FACSIMILE**
Monique Mooney, Esquire
Ballard, Spahr, Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103

> RE:    **Boarhead Farm Agreement Group v.**
> **Advanced Environmental Technology Corporation, et al.**
> **U.S.D.C., E.D.Pa. Civil Action No. 02-3850**

Dear Monique:

Per your telephone request this morning, the Court Reporting Service for the depositions taken of Arthur T. Curley, Jr. and William C. Olasin in other litigation was Cunningham Services located at 100 Park Avenue, Suite 1600, New York, NY 10012, (800) 842-4486. These gentlemen's respective depositions were taken in the following cases on the following dates:

1.    **Arthur T. Curley, Jr.:** U.S.A. v. William M. Davis, et al., C.A. No. 90-048/P, U.S.D.C., D.R.I., 8/21/96. The Court Reporter was Dianna Slodowitz, RPR, LSR;

2.    **William C. Olasin:** Rohm & Haas Company v. American Cyanamid Co., C.A. No. 95-1864 and 99-1891, U.S.D.C. (D.NJ.), 5/14/01. The Court Reporter was Jenny C. Ebner, RPR, LSR.

Very truly yours,

Richard C. Biedrzycki

RCB/kdh

cc:    All Counsel of Record
G:\DATA\1357-29\Ltr\MM-011.wpd

# EXHIBIT H

## AFFIDAVIT OF ANNE HEIDEL, ESQUIRE

I, Anne Heidel, Esquire, hereby depose and say the following:

1.    On February 4, 2005, I contacted Cunningham Services by telephone and requested copies of the transcripts of the deposition testimony of Arthur Curley in U.S.A. v. Williams Davis (Aug. 21, 1996) and William Olasin in Rohm & Haas Co. v. American Cyanamid Co. (May 14, 2001).

2.    The representative with whom I spoke at Cunningham Services informed me that she would request a search of Cunningham's storage vault for copies of these transcripts and, if the transcripts were still in storage, Cunningham could reproduce them for me for a fee.

3.    On February 8, 2005, I contacted Cunningham Services and was informed that the transcript of the deposition testimony of Arthur Curley had been purged from their archives and could not be made available.

4.    On February 10, 2005 a representative of Cunningham Services telephoned me and informed me that the transcript of the deposition testimony of William Olasin had also been purged from their archives and could not be made available.

Dated: 3/4/05

_Ann K. Heidel_
Anne Heidel, Esquire

Sworn to and subscribed
before me this 4 day of
March , 2005.

_Keren Noble_

NOTARY
KAREN NOBLE, Notary Public
City of Philadelphia, Phila. Co.
My Commission Expires

# EXHIBIT I

LAW OFFICES

# BALLARD SPAHR ANDREWS & INGERSOLL, LLP

1735 MARKET STREET, 51st FLOOR
PHILADELPHIA, PENNSYLVANIA 19103-7599
215-665-8500
FAX: 215-864-8999
WWW.BALLARDSPAHR.COM

BALTIMORE, MD
DENVER, CO
SALT LAKE CITY, UT
VOORHEES, NJ
WASHINGTON, DC

MONIQUE M. MOONEY
DIRECT DIAL: 215-864-8189
PERSONAL FAX: 215-864-9266
MOONEY@BALLARDSPAHR.COM

February 16, 2005

**By Facsimile and U.S. Mail**

Richard C. Biedrzycki, Esquire
Phelan, Pettit & Biedrzycki
121 South Broad Street
Suite 1600
Philadelphia, PA 19107

Re:    Boarhead Farm Agreement Group v. Advanced Environmental
Technology Corporation, et al., No. 02-3830

Dear Richard:

I am writing in response to your letter of January 31, 2005 regarding the deposition transcripts of Arthur Curley and William Olasin. We have contacted the court reporters Ashland identified and have been informed that both of these transcripts have been purged from the archives of the respective court reporters and cannot be produced. Accordingly, Plaintiff requests that Ashland produce as soon as possible, but by no later than February 23, 2005, the copies of these transcripts that you have indicated are in Ashland's possession.

Thank you for your prompt attention to this matter.

Very truly yours,

Monique Mooney

Enclosure
cc:    Attorneys on Attached List (all via facsimile)

Thomas W. Sabino, Esquire
Wolff & Samson, PC
The Office at Crystal Lake
One Boland Drive
West Orange, New Jersey  07052

-and-

Robert M. Morris, Esquire
Morris & Adelman, P.C.
1920 Chestnut Street
P.O. Box 30477
Philadelphia, PA  19103
*Advanced Environmental Technology Corp.*

Melissa Flax, Esquire
Carella, Byrne, Bain, Gilfillian, Cecchi,
Stewart & Olstein, P.C.
5 Becker Farm Road
Roseland, New Jersey  07068-1739
*Handy & Harman Tube Company*

Lynn Wright, Esquire
Edwards & Angell, LLP
750 Lexington Avenue
New York, New York  10022-1200
*Carpenter Technology Corporation*

Seth v.d.H. Cooley, Esquire
Suite 4200, One Liberty Place
Philadelphia, PA  19103-7396
*Flexible Circuits & Etched Circuits*
-and-
A. Nicole Friant, Esquire
Duane Morris LLP
One Liberty Place
Suite 4200
Philadelphia, PA  19103-7396

Stephen P. Chawaga, Esquire
Monteverde, McAlee & Hurd
One Penn Center at Suburban Station
Suite 1500
1617 John F. Kennedy Boulevard
Philadelphia, PA  19103-1815
*Merit Metals Products Corp.*

Andrew P. Foster, Esquire
Drinker, Biddle & Reath, LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA  19103-6996
*Rahns Specialty Metals, Inc.*
*Techalloy Co., Inc. & Thomas & Betts*
*Corporation*

Adina Marie Dziuk, Esquire
Drinker Biddle & Reath LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA  19103-6996

Edward Fackenthal, Esquire
The Law Office of Edward Fackenthal
Suite 209 - One Montgomery Plaza
Norristown, PA  19401

Richard Biedrzycki, Esquire
Phelan, Pettit & Biedrzycki
121 South Broad Street
Suite 1600
Philadelphia, PA  19107

# EXHIBIT J

# PHELAN, PETTIT & BIEDRZYCKI
### ATTORNEYS AT LAW

JOHN M. PHELAN
RICHARD C. BIEDRZYCKI
JEFFREY L. PETTIT
CHRISTOPHER H. JONES*
RICHARD E. STABINSKI††
JOHN W. PHELAN*
BRENT A. COSSROW*

* ALSO ADMITTED TO NJ BAR
†† ALSO ADMITTED TO IL BAR

SUITE 1800
THE NORTH AMERICAN BLDG.
121 SOUTH BROAD STREET
PHILADELPHIA, PA 19107

TELEPHONE (215) 546-0500
FACSIMILE (215) 546-9444

February 24, 2005

**VIA FACSIMILE**
Monique Mooney, Esquire
Ballard, Spahr, Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA   19103

        RE:    **Boarhead Farm Agreement Group v.**
               **Advanced Environmental Technology Corporation, et al.**
               **U.S.D.C., E.D.Pa. Civil Action No. 02-3850**

Dear Monique:

        We are in receipt of your letter of February 16, 2005 requesting the production of our copies of the deposition transcripts of Arthur Curley and William Olasin. In your letter, you state that the court reporters have informed you that both of the requested transcripts had been purged from their respective archives and cannot be produced. We would appreciate your providing us with letters from the court reporters so stating and further providing us with express authorization from the reporters allowing us to produce to you copies of the requested transcripts, along with a waiver and release by the court reporters of any liability for such production. We would also appreciate your providing us with a hold harmless and indemnity from your firm protecting our client and our firm from any liability arising from such production.

        Furthermore, as we previously advised, our copy of the transcript of the deposition of Mr. Curley has been previously marked up by Ashland's counsel in connection with other litigation and therefore our copy of the transcript constitutes attorney work product in its entirety. Notwithstanding the privileged nature of the transcript, if Ashland cannot locate a "clean" copy of the transcript, we will consider producing a redacted copy upon our receipt of the letters as requested hereinabove along with your agreement to pay for all copying and mailing costs associated with the production of the requested redacted transcripts.

                     Very truly yours,

                     Richard C. Biedrzycki

RCB/kcm

PHELAN, PETTIT & BIEDRZYCKI
Monique Mooney, Esquire
February 24, 2005
Page 2


cc:    Glenn M. Harris, Esquire (via e-mail)
       Thomas Sabino, Esquire (via e-mail)
       Lynn Wright, Esquire (via e-mail)
       Melissa E. Flax, Esquire (via e-mail)
       Stephen P. Chawaga, Esquire (via e-mail)
       Edward Fackenthal, Esquire (via e-mail)
       Andrew P. Foster, Esquire (via e-mail)
       Seth v.d.H. Cooley, Esquire (via e-mail)

G:\DATA\1357-39\Ltr\MM-013.wpd