IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| BOARHEAD FARM AGREEMENT GROUP, | : | |
| | : | |
| | : | Civil Action No. 02-CV-3830 |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER

AND NOW, this _____ day of _____, 2005, upon

consideration of Plaintiff Boarhead Farm Agreements Group's Motion To Amend Third

Amended Complaint, it is hereby ORDERED that Plaintiff's Motion is GRANTED. Plaintiff's

Fourth Amended Complaint is hereby deemed filed and relates back to the date of the filing of

the original Complaint.

 

                        _____
                        Honorable Legrome D. Davis
                        United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BOARHEAD FARM
AGREEMENT GROUP,       :

           Plaintiff,     :       Civil Action No. 02-CV-3830

      v.              :

ADVANCED ENVIRONMENTAL
TECHNOLOGY CORPORATION, et al.,    :

           Defendants.    :

## MOTION FOR LEAVE TO AMEND THIRD AMENDED COMPLAINT

         Plaintiff Boarhead Farm Agreement Group moves this Court, pursuant to Fed. R.

Civ. P. 15(a), for leave to amend its Third Amended Complaint. For the reasons set forth in the

accompanying memorandum of law, Plaintiff's motion should be granted, and Plaintiff's Fourth

Amended Complaint should be deemed filed and should relate back to the date of the filing of

the original Complaint.

                          Respectfully Submitted,

                          Ballard Spahr Andrews & Ingersoll, LLP

Dated: March 11, 2005         By:        /s/ Glenn A. Harris
                                 Glenn A. Harris, Esquire
                                 Brian G. Glass, Esquire
                                 1735 Market Street, 51st Floor
                                 Philadelphia, PA 19103-7599
                                 (215) 665-8500

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| BOARHEAD FARM<br>AGREEMENT GROUP,<br><br>Plaintiff,<br><br>v.<br><br>ADVANCED ENVIRONMENTAL<br>TECHNOLOGY CORPORATION, et al.,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Civil Action No. 02-CV-3830 |

## MEMORANDUM IN SUPPORT OF
## MOTION FOR LEAVE TO AMEND THIRD AMENDED COMPLAINT

Plaintiff Boarhead Farm Agreement Group ("Agreement Group") moves this

Court, pursuant to Fed. R. Civ. P. 15(a), for leave to amend its Third Amended Complaint in

response to the recent opinion of the United States Supreme Court in *Cooper Industries, Inc. v.*

*Aviall Services, Inc.*, 125 S. Ct. 577 (2004). The Agreement Group's proposed pleading, a copy

of which is attached to this memorandum, more explicitly reflects the arrangements under which

the members of the Agreement Group have undertaken to remediate the Boarhead Farms site

("the Site") and adds those individual members to the caption as named parties.

Specifically, the Third Amended Complaint asserts claims in the name of the

Agreement Group. Prior to the decision in *Cooper Industries*, defendants stipulated that the

Third Amended Complaint states a claim for relief under section 113(f) of the Comprehensive

Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9613(f), in

return for the agreement of the members of the Agreement Group to act as parties to this case for

purposes of discovery. Stipulation filed March 18, 2003. The Agreement Group styled its

CERCLA claim as one for contribution under section 113(f)(1). *Cooper Industries* requires a claim by the government (or another private party) under section 107(a) or section 106 of CERCLA, 42 U.S.C. §§ 9606, 9607(a), to precede a contribution action under section 113(f)(1). The government did bring section 106 and 107(a) claims against members of the Agreement Group in conjunction with the lodging and entry of two Consent Decrees. The proposed Fourth Amended Complaint makes explicit the section 106 and 107(a) actions against members of the Agreement Group and formalizes the individual members' status as plaintiffs in this case.

Moreover, the Third Amended Complaint, following binding precedent of our court of appeals, asserted only a claim under section 113(f)(1) of CERCLA. In *New Castle County v. Halliburton NUS Corp.*, 111 F.3d 1116 (3d Cir. 1997), the court of appeals held that parties who were potentially responsible under CERCLA to clean up a contaminated site could not bring a contribution claim under section 107(a), but instead were relegated to a contribution action under section 113(f)(1). The Supreme Court remanded *Cooper Industries* for an examination of that very point, suggesting that the lower courts should reconsider holdings like *New Castle County*. Accordingly, the Fourth Amended Complaint proposes to assert claims under section 107(a), 42 U.S.C. § 9607(a), and also under section 113(f)(3), 42 U.S.C. § 9613(f)(3), an entirely new claim upon which the Supreme Court focused when other courts previously had not.

Nothing in the proposed pleading alters the fundamental nature of this civil action and will not in any way delay the progress of the action. The Agreement Group seeks no more than an equitable allocation of the costs of cleaning up the Boarhead Farms site among the Agreement Group and the defendants. The minor alterations in the pleading proposed by this motion seek only to assure that no vagaries of pleading impede that equitable result. For the

following reasons, Plaintiff's motion should be granted, and Plaintiff's Fourth Amended
Complaint should be deemed filed and should relate back to the date of the filing of the original
Complaint.

### Statement of Facts

The United States Supreme Court in *Cooper Industries* held that a corporation
that had conducted an environmental remediation of its own property could not sue the former
owner of that property under section 113(f)(1) of CERCLA to recover its cleanup costs because
the plaintiff had not been first sued by the United States or a state prior to bringing the action.
*Cooper Industries*, 125 S. Ct. at 584. Plaintiff Cooper Industries, Inc. ("Cooper") sold property
in 1981 to Aviall Services, Inc. ("Aviall"); Aviall later discovered environmental contamination
on the property. *Id.* at 582. Aviall spent approximately $5 million remediating the
environmental contamination. Aviall then brought a civil action against Cooper seeking
recovery of Cooper's equitable share of Aviall's response costs. *Id.* Aviall's original complaint
asserted a claim for cost recovery under CERCLA section 107(a), a separate claim for
contribution under CERCLA section 113(f)(1), and state law claims. *Id.* Aviall later amended
its complaint to eliminate the section 107(a) claim in response to an opinion of the United States
Court of Appeals for the Fifth Circuit holding that potentially responsible parties (such as Aviall)
could not bring a section 107 claim for joint and several liability. *Id. (citing Geraghty & Miller,
Inc. v. Conoco, Inc.,* 234 F.3d 917 (5th Cir. 2000), *cert. denied,* 533 U.S. 950 (2001)).

Cooper moved for summary judgment, arguing that Aviall could not state a claim
under CERCLA section 113(f)(1) because Aviall had not been sued under CERCLA section 106
or section 107(a). *Id.* at 582. The district court agreed and dismissed Aviall's federal claim; a
divided panel of the Court of Appeals for the Fifth Circuit affirmed; and an *en banc* panel

reversed by a divided vote. The United States Supreme Court thereafter granted *certiorari*. *Id*.

at 582-83.

      The United States Supreme Court based its decision on the language of CERCLA

§ 113(f)(1):

> Any person may seek contribution from any other person who is
> liable or potentially liable under section 9607(a) of this title, during
> or following any civil action under section 9606 of this title or
> under section 9607(a) of this title.

42 U.S.C. § 9613(f)(1). The Court held that the words "during or following" could be read only

to mean that a section 113(f)(1) contribution claim could be brought only after an underlying

section 106 or section 107(a) civil action.[1]  *Cooper Industries* at 583-84. The Court rejected

Aviall's argument that the "during or following" language did not apply to it because of the last

sentence of section 113(f)(1), the saving clause. The Court held instead that the saving clause

neither established a separate cause of action for a private party nor expanded section 113(f)(1)

to authorize contribution actions not brought "during or following" a section 106 or section

107(a) civil action.[2]  *Id*. at 584.

      The Court held that Aviall could not assert a section 113(f)(1) claim because it

was undisputed that Aviall had never been subject to a civil action under section 106 or section

---

[1]    In so holding, the Court stated "§ 113 provides two express avenues for contribution: §
113(f)(1)("during or following" 'specified civil actions' and § 113(f)(3)(B) (after an
administrative or judicially approved settlement that resolves liability to the United States
or a State"). *Id*. at 584. The Court thus concluded that to assert a contribution claim
under § 113(f) a party must satisfy the conditions of either section 113 (f)(1) or section
113(f)(3)(B). *Id*.

[2]    The saving clause provides: "Nothing in this subsection shall diminish the right of any
person to bring an action for contribution in the absence of a civil action under section
9606 of this title or section 9607 of this title." 42 U.S.C. § 9613(f)(1).

107(a). *Id.* at 584. The Court did not, however, grant summary judgment against Aviall. The Court instead remanded the matter to the district court for full consideration of two other issues. First, the Supreme Court directed the district court to consider whether Aviall was entitled to bring a claim under section 107 and, if so, whether Aviall had waived such a claim when it amended its pleading and withdrew that claim. Second, the Court directed the district court to consider whether Aviall had a judicially implied right to contribution under section 107 that survived the enactment of section 113 in 1986. *Id.* at 586. Because section 107 does not require that a claim be brought only "during or following" a section 106 or section 107 action, the Court recognized that Aviall might be entitled to maintain a private party CERCLA claim against Cooper if it could proceed under section 107.[3]

　　　　Several courts of appeals have held that a private party that is itself a potentially responsible party may not pursue a section 107(a) action against other potentially responsible parties for joint and several liability. *See, e.g., New Castle County v. Halliburton NUS Corp.,* 111 F.3d 1116, 1120-24 (3rd Cir. 1997). The Supreme Court instructed the district court to consider whether those decisions were correct, noting that another related issue was whether Aviall could seek recovery of the share of its clean-up costs fairly chargeable to Cooper through a section 107 cost recovery action for some form of liability other than *joint and several,* for

---

[3]　　　Section 107(a) provides, in relevant part, that four specific "classes" of persons are liable for:

　　　(A)　　All costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;

　　　(B)　　Any other necessary costs of response incurred by any other person consistent with the national contingency plan; . . .

42 U.S.C. § 9607(a)(1-4)(A), (B).

example, contribution. *Cooper Industries* at 585. Second, the Court remanded for a full

consideration of the question whether there is any judicially implied right of contribution under

section 107(a) that survived the passage of Section 113. *Id.* at 586. Aviall could proceed with its

lawsuit if such a claim existed and were not waived. Indeed, two of the Justices dissented,

opining that the Court's decision in *Key Tronic Corp. v. United States*, 511 U.S. 809 (1994), had

already held that section 107(a)(4)(B) *does* provide a cause of action for potentially responsible

persons to seek recovery of clean-up costs and that that claim could have been endorsed without

a remand. *Cooper Industries* at 586-87 (Ginsburg, J. and Stevens, J. dissenting).

     *Cooper Industries*, therefore, should be read to hold: (a) that a private party claim

for contribution may be brought under section 113(f) if the conditions of section 113 (f)(1) or

Section 113(f)(3)(B) are satisfied; (b) a private person *may* be able to bring a claim for either

cost recovery or contribution under section 107(a) in the absence of either of those conditions;

and (c) a private party *may* be able to bring a cause of action for contribution as an implied right

of action (rather than pursuant to section 113(f)).

     The facts in this action are very different from those in *Cooper Industries*. The

Boarhead Farms site ("the Site") became a Superfund site when it was listed on the National

Priorities List in 1989.[4]  EPA thereafter conducted a Remedial Investigation and Feasibility

Study ("RI/FS"), in which it investigated the nature and extent of contamination at the Site,

considered whether any of that contamination posed a risk to human health or the environment,

and considered various remediation technologies that might be feasible to address any such

_____

[4]   The Environmental Protection Agency ("EPA") adds facilities to the National Priorities
List by rulemaking when it has determined that those facilities pose significant risks to
human health or the environment. *See* 42 U.S.C. § 9605; 40 C.F.R. §§ 300.420, 425.

contamination. EPA then determined which remediation technologies should be implemented, memorializing its decision in its 1998 Record of Decision ("ROD"). EPA also conducted three removal actions, relatively short-term remediation tasks to address what EPA considered to be immediate threats to human health and the environment,[5] EPA thereafter issued both "General Notice" letters and "Special Notice" letters[6] to a number of persons (including several of the defendants), in which EPA alleged that those persons were responsible or potentially responsible for cleaning up the Site.

Three members of the Agreement Group, SPS Technologies, Inc. ("SPS"), Ford Motor Company ("Ford"), and Cytec Industries ("Cytec") (on behalf of American Cyanamid Company) reached a settlement with EPA in or about February 2000 under which those entities agreed to undertake Operable Unit 1 ("OU-1") of the remedy. They agreed to continue the operation and maintenance of the groundwater recovery and treatment system until the "performance standards" in the ROD are achieved.[7] In 2000, the United States filed a complaint in this Court under section 107 of CERCLA and simultaneously lodged a Consent Decree

---

[5]     For example, EPA installed a groundwater collection system designed to capture contaminated groundwater and constructed an on-site treatment plant in which the contaminated groundwater from the collection system was treated before it was discharged to the surface waters on the Site. These response actions were designed to prevent the further migration of contaminated groundwater and to remove certain contaminants from that groundwater.

[6]     General Notice letters merely notify the recipient generally of its potential responsibility for the site. Special Notice letters demand a specific action. *See* 42 U.S.C. § 9622; Interim Guidance on Negotiation Letters, Negotiations, and Information Exchange (Oct. 19, 1987), *reprinted*, 53 Fed. Reg. 5298 (Feb. 23, 1988).

[7]     The ROD sets forth certain performance standards, achievement of which will, in EPA's view, remediate the Site to acceptable levels of contamination.

executed by SPS, Ford, and Cytec disposing of the government's claims. This Court entered the Consent Decree on or about September 28, 2000.

SPS, Ford, and Cytec had for some time been cooperating with each other and with certain other entities potentially responsible under CERCLA for Site response costs in the joint defense and potential settlement of EPA's claims. SPS, Ford, and Cytec entered into an agreement with Agere Systems, Inc. ("Agere"), NRM Investments, Inc. ("NRM"), TI Group Automotive Systems LLC ("TI"), and Worthington Industries, Inc. ("Worthington") wherein those entities agreed to collectively fund and perform the OU-1 work. Those entities have been doing so by contributing to an OU-1 group account, collectively hiring contractors to perform the OU-1 work, and paying the contractors from the group account. The contributions have been made on the basis of an interim allocation among those companies. The interim allocation is non-binding, and those entities have agreed to reach a final allocation of their shares separate and apart from this action.

SPS, Ford, Cytec, and TI reached a second settlement with EPA in or about October of 2001 wherein those entities agreed to perform Operable Unit 2 of the remedy by designing and implementing certain remedial actions and by reimbursing EPA approximately $7,000,000 in response costs alleged to have been incurred by EPA (as well as certain of EPA's future response costs to be incurred after July, 2000). As before, in 2001 the United States filed a civil action under section 107 of CERCLA, a Consent Decree was lodged with and entered by this Court, and those four entities entered into an agreement with Agere pursuant to which the five entities have collectively funded and performed the OU-2 work.

SPS, Ford, Cytec, TI, and Agere thereafter agreed to jointly pursue other entities that they believed were responsible for Site response costs, first by asking those entities to

voluntarily join with them in funding the OU-1 and OU-2 work and, when that proved unsuccessful, by filing this civil action collectively as the Agreement Group. The Agreement Group's initial Complaint (and all subsequent amendments to that Complaint) alleged a cause of action under section 113(f)(1) of CERCLA seeking contribution from the Defendants, a claim under section 113(g)(2) of CERCLA seeking an additional declaratory judgment that the Defendants are liable for all future response costs as those costs are incurred, and a claim for contribution for past and future response costs under the Pennsylvania Hazardous Sites Cleanup Act ("HSCA"). The Agreement Group chose to bring the claim collectively as the Agreement Group, alleging that the Agreement Group is an unincorporated association comprised of Agere, Cytec, Ford, SPS and TI.

### Discussion

The Agreement Group seeks through this motion to amend the *form* of the claims stated in its Third Amended Complaint in light of the *Cooper Industries* opinion, not to alter the *substance* of those claims. Nothing in the proposed pleading will change the essential relief sought from the Defendants – the recovery by the Agreement Group members collectively of the equitable shares attributable to the Defendants of the past and future response costs paid from the OU-1 and OU-2 accounts, which accounts were funded by the individual members of the Agreement Group.

A motion for leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The United States Supreme Court has cautioned that "this mandate is to be heeded," and has held that leave to amend under Rule 15 should be denied only in certain limited circumstances:

> In the absence of any apparent or declared reason – such as undue
> delay, bad faith or dilatory motive on the part of the movant,

> repeated failure to cure deficiencies by amendments previously
> allowed, undue prejudice to the opposing party by virtue of
> allowance of the amendment, futility of amendment, etc. – the
> leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Grayson v. Mayview State Hosp.*, 293 F.3d

103, 108 (3d Cir. 2002); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997);

*Bell v. Allstate Ins. Co.*, No. 03-4482, 2004 U.S. Dist. LEXIS 4438, at *2 (E.D. Pa. Feb. 17,

2004). One of the circumstances under which courts have granted a motion for leave to amend a

complaint is an intervening change in applicable law. *See United States v. Almodovar*, Nos. 01-

1378 and 01-1501, 2002 U.S. App. LEXIS 14337, at *6 (3d Cir. July 16, 2002); *see also*

*Vanguard Sav. & Loan Ass'n v. Banks*, No. 93-4627, 1995 U.S. Dist. LEXIS 8799, at *6 (E.D.

Pa. June 27, 1995).

        *Cooper Industries* has created substantial uncertainty with respect to private party

CERCLA claims. Many questions remain unanswered about section 113(f) claims, and the

question whether certain private plaintiffs may bring section 107(a) claims (either express or

implied) is undetermined. The proposed pleading is intended to assure that nothing in the form

of the pleading prevents the Agreement Group from recovering from the Defendants whatever

shares this Court ultimately determines are appropriate based upon the *substance* of the

members' actions in settling EPA's claims by agreeing to take over the continued remediation of

the Site and to reimburse EPA for EPA's past response costs. The members of the Agreement

Group should not be denied relief simply because of the *form* of their pleading or the *manner* in

which they have chosen to conduct the remediation activities.

        The proposed pleading makes very limited changes to the allegations in the Third

Amended Complaint to address the issues presented by the Supreme Court's rulings with respect

to section 113(f). First, the proposed pleading adds the individual members of the Agreement

Group to the caption as members of the Agreement Group, and adds allegations to the body of the Complaint concerning the state of incorporation and principal place of business of each Agreement Group member. This change reflects the fact that most of the individual group members were signatories to AOCs and Consent Decrees with the United States and that each of them has contributed funds to both the OU-1 and the OU-2 accounts from which response action contractors were paid and from which EPA was repaid for its alleged past costs. Second, the reference to section 113(f)(1) in the First Count of the Complaint is changed to reference simply section 113(f). The proposed Amendment thus clarifies that the Agreement Group is seeking contribution under all applicable portions of section 113.[8] Third, textual changes were made in paragraphs 18, 19, 21, and 22 to more accurately reflect the precise details of the Agreement Group's activities.

The proposed pleading also asserts a new claim under section 107(a) to address the uncertainty reflected in *Cooper Industries* with respect to whether such a claim may be asserted by a potentially responsible party. The Agreement Group did not initially assert such a claim based upon the holding of the United States Court of Appeals for the Third Circuit in *New Castle County* that potentially responsible parties cannot bring a section 107 claim for joint and several liability. *New Castle County,* 11 F.3d 1116. The Supreme Court in *Cooper Industries* noted that it has not yet decided whether a potentially responsible party may bring *some* type of claim under section 107(a), while noting that the courts of appeal have uniformly ruled that a section 107 claim may not be brought for joint and several liability under those circumstances. Because the decision in *New Castle County* is now in question, the Agreement Group believes it

---

[8]      The *Cooper Industries* opinion can be read to hold that CERCLA section 113(f)(2)(B) creates a *separate* contribution cause of action.

is prudent to assert such a claim in the event that the United States Supreme Court ultimately decides that such a claim is available. The United States District Court for the District of New Jersey on March 2, 2005 permitted just such an amendment. *General Motors Corp. v. United States*, No. 01-CV-2201 (D.M.C.) (D.N.J. March 2, 2005). The court noted that *E.I. du Pont de Nemours & Company v. United States*, 297 F. Supp. 2d 740 (D.N.J. 2003)), in which the district court had dismissed plaintiff's section 113(f) claims because there had been no preceding § 106 or § 107(a) action, is now on appeal to the United States Court of Appeals for the Third Circuit, and that the Third Circuit can be expected to determine the availability or non-availability of an implied right to contribution under § 107(a) in deciding that appeal. A copy of the slip opinion is enclosed.

None of these proposed changes will affect either the progress of this litigation or this Court's ultimate decision making at trial.[9]

The liability, if any, of the individual Agreement Group members has been an integral part of this litigation since its inception, and the operative facts concerning the settlements with EPA and the funding of those settlements were known by all parties long ago. The initial Case Management Order required each member of the Agreement Group to make Initial Disclosures identical to those made by the other parties. The Stipulation that resolved the Defendants' early Motion to Dismiss the Agreement Group's Complaint (on the basis that the

---

[9]     A few changes to allegations were made based upon the Agreement Group's analysis of discovery to date, including removal of the allegations that defendant Advanced Environmental Technology Corp. transported hazardous substances to the Site and that defendant Boarhead Corporation was an operator of the Site, and by identifying Ashland Inc.'s Great Meadows, New Jersey plant as the facility from which Advanced Environmental Technology Corp. and DeRewal Chemical Company removed wastes containing hazardous substances. The exact names of five Defendants were changed based upon the answers of those Defendants. Finally, a few typographical errors were corrected.

"Agreement Group" did not have standing to bring its claims) contains certain agreements by the Agreement Group that collectively treat the individual members of the Agreement Group as parties to the litigation for discovery purposes. The Defendants questioned the Site Witnesses[10] about the individual group members and their facilities at depositions during the initial phase of litigation. Responses to written discovery requests served on the Agreement Group have been responded to (and where appropriate verified) with respect to group members' facilities, and individual group member fact and Rule 30(b)(6) witnesses have been produced for deposition.

The end result of this litigation will remain unchanged whether it is decided under section 113(f) or under section 107(a) because the Agreement Group does not believe that a section 107(a) claim would give it an entitlement to any form of relief different from the relief sought in its current pleading — the recovery from the Defendants of the share of the Agreement Group's past and future response costs that this Court determines is equitable. The primary rationale of those courts of appeal that have forbidden a potentially responsible party from bringing a section 107 claim is that such a person should not be entitled to joint and several liability when it is itself a liable party. The Agreement Group believes that a court is not restricted to holding section 107 defendants jointly and severally liable, but may instead apportion liability equitably.[11] Moreover, each of the Defendants here has asserted a

---

[10]    The Site witnesses are former employees of DeRewal Chemical Company who were deposed in Phase I of this action.

[11]    Indeed, it is well settled that even the United States may recover under section 107(a) only the shares *severally* attributable to each defendant (and is not entitled to hold each defendant jointly and severally liable) in those circumstances where defendants can show that either the harm to the environment or the costs of remediation are divisible on some rational basis. *See, e.g. United States v. Alcan Aluminum Corp.*, 964 F.2d 252, 268-69 (3rd Cir. 1992).

counterclaim against the Agreement Group for contribution under CERCLA, such that this Court

would, at a trial, equitably allocate liability among the liable parties before the Court.[12]

### Conclusion

Because a recent change in the law has made it prudent for the Agreement Group

to amend its complaint, and because none of the reasons for denying leave to amend are present

here, the Agreement Group's motion should be granted.  The claims asserted in the proposed

amended pleading arise out of the same conduct, transaction, or occurrence set forth in the

original pleading, so that the amended pleading should relate back to the date of the original

pleading.[13]  In sum, the Agreement Group should be permitted to file its proposed Fourth

Amended Complaint so that the current form of its pleading does not unfairly affect its

fundamental right to recover from the Defendants those Defendants' equitable shares of the costs

of remediating the Site.  For all of the foregoing reasons, and in the interest of justice, Plaintiff

---

[12]    The Agreement Group respectfully requests that this Court not now consider whether the
Agreement Group is entitled to maintain a section 107 claim.  Because the presence of
the claim will not affect the progress of the litigation or prejudice any of the Defendants,
the appropriate time to consider that question is after the trial as part of findings of fact
and conclusions of law.  This way the trial record will be protected regardless how the
Supreme Court ultimately decides this issue.

[13]    An amendment of a pleading relates back to the date of the original pleading when the
claim asserted in the amended pleading arose out of the "conduct, transaction, or
occurrence" set forth or attempted to be set forth in the original pleading.  Fed. R. Civ. P.
15(c)(2); *see also Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 309-10 (3d Cir. 2004);
*Pennington v. British Airways*, 275 F. Supp. 2d 601, 606-07 (E.D. Pa. 2003).

Boarhead Farm Agreement Group respectfully requests that it be given leave to file the proposed

Fourth Amended Complaint.

                                      Respectfully Submitted,

                                        Ballard Spahr Andrews & Ingersoll, LLP


Dated:        March 11, 2005        By:            /s/ Glenn A. Harris       
                                                       Glenn A. Harris, Esquire
                                                     Brian G. Glass, Esquire
                                                     1735 Market Street, 51st Floor
                                                     Philadelphia, PA 19103-7599
                                                       (215) 665-8500

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BOARHEAD FARM AGREEMENT
GROUP, and its members, AGERE
SYSTEMS, INC., CYTEC INDUSTRIES
INC., FORD MOTOR COMPANY, SPS
TECHNOLOGIES, LLC, AND TI GROUP
AUTOMOTIVE SYSTEMS LLC,

          Plaintiffs,

          v.

ADVANCED ENVIRONMENTAL
TECHNOLOGY CORP.; ASHLAND,
INC., BOARHEAD CORPORATION;
CARPENTER TECHNOLOGY
CORPORATION; CROWN METRO,
INC.; DIAZ CHEMICAL
CORPORATION; EMHART
INDUSTRIES, INC.; ETCHED
CIRCUITS, INC.; fcg, INC.; GLOBE
DISPOSAL CO., INC; GLOBE-
WASTECH, INC.; HANDY & HARMAN
TUBE COMPANY; KNOLL, INC.;
KNOLL INTERNATIONAL, INC.;
MERIT METAL PRODUCTS CORP.;
NOVARTIS CORPORATION; NRM
INVESTMENT COMPANY;
PLYMOUTH TUBE COMPANY;
QUIKLINE DESIGN AND
MANUFACTURING CO.; RAHNS
SPECIALTY METALS, INC.; ROHM
AND HAAS COMPANY; SIMON
WRECKING CO., INC.; TECHALLOY
COMPANY, INC.; THOMAS & BETTS
CORPORATION; UNISYS
CORPORATION; UNITED STATES OF
AMERICA DEPARTMENT OF NAVY,

          Defendants.

CIVIL ACTION

NO. 02-CV-3830

Judge Legrome D. Davis

## FOURTH AMENDED COMPLAINT

Plaintiffs Boarhead Farm Agreement Group and its members Agere Systems, Inc.

("Agere"), Cytec Industries Inc. ("Cytec") , Ford Motor Company ("Ford"), SPS Technologies,

LLC (as successor to SPS Technologies, Inc.) ("SPS") and TI Group Automotive Systems, LLC

("TI"), by and through their attorneys, by way of Complaint against the Defendants hereby state

as follows:

## FACTUAL BACKGROUND

1.  Plaintiffs seek contribution from Defendants, including an allocation by the

Court of response costs as between Plaintiffs and Defendants using such equitable factors as the

Court determines are appropriate, for the response costs that Plaintiffs have incurred and the

damages that Plaintiffs have suffered as a result of releases or threatened releases of one or more

hazardous substance as defined by Section 101 (14) of the Comprehensive Environmental

Response, Compensation and Liability Act, as amended, ("CERCLA"), 42 U.S.C. § 9601 (14),

and Section 103 of the Pennsylvania Hazardous Sites Cleanup Act ("HSCA"), 35 PA. CONS.

STAT. § 6020.103 ("Hazardous Substances"), at or from the Boarhead Farms Superfund Site,

Lonely Cottage Road, Upper Black Eddy, Bridgeton Township, Bucks County, Pennsylvania

(the "Site"). Plaintiffs also seek a declaratory judgment that Defendants are liable to Plaintiffs

for contribution for any and all response costs that Plaintiffs will or may incur and for any and all

damages that Plaintiffs will or may suffer in the future as a result of releases, threatened releases,

or discharges of Hazardous Substances at or from the Site.

2.  Manfred DeRewal ("DeRewal") incorporated Boarhead Corporation in 1969.

In addition, DeRewal incorporated and operated DeRewal Chemical Company, Inc. ("DeRewal

Chemical"), a hauler of waste materials.

3. In 1969, Boarhead Corporation purchased the Site. The Site is and was, at all relevant times, a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S. § 9601(9).

4. From the time of purchase until approximately 1977, the Site was used for, among other things, the disposal of Hazardous Substances.

5. In the early 1970s, the Bucks County Department of Health (the "DOH"), responding to complaints of dead fish, dead plant life, and other environmental and public health concerns, investigated the Site. The DOH noted the following at the Site: pungent odors; drums on an open trailer; drums awaiting disposal; empty tanks awaiting removal; a bulldozer burying old drums; 40 drums filled with solvent; and empty tanker trucks parked at the Site.

6. The DOH obtained a search warrant and searched the Site on March 5, 1973. The DOH documented the following at the Site: improperly stored chemicals; chemicals leaking from 55-gallon drums; liquid and solid waste on the ground; chemicals leaking into waste pools, on-Site lagoons, and vats; copper ammonia sulfate; paint solvents; arsenic pentoxide; pesticides; copper naphtholate; and a cleared area in the northeast section of the Site containing drums.

7. In October of 1973, a tank truck discharged approximately 3,000 gallons of ferrous chloride at the Site, for which Boarhead Corporation was found to be in violation of the Pennsylvania Clean Streams Law, 35 PA. CONS. STAT. §§ 691.1 et seq.

8. Soil samples taken from the Site in 1974 revealed the following: soil pH levels of 2.9 and the presence of chloride, iron, chromium, copper, zinc, and nickel.

9. In September of 1976, a tank truck released approximately 3,000 gallons of sulfuric acid on the Site, resulting in the evacuation of 34 local residents.

10. In 1984, the United States Environmental Protection Agency ("USEPA") performed a Site inspection. On March 31, 1989, the USEPA placed the Site on the National Priorities List (the "NPL"), 40 C.F.R Part 300, Appendix B, a national list of hazardous waste sites that the USEPA has determined may pose a threat to health, welfare, and the environment. The NPL was established under the National Contingency Plan (the "NCP"), 40 C.F.R. Part 300, as required by Section 105(a) of CERCLA, 42 U.S.C. § 9605(a).

11. The USEPA has conducted three CERCLA removal actions at the Site. In connection with these removal actions, the USEPA located and removed from the Site 2,600 drums as well as contaminated soil. Contaminated groundwater is being treated at an on-site treatment facility.

12. Under an administrative consent order, USEPA Docket Number: III-92-66-DC, General Ceramics, Inc., performed a fourth removal action to address the presence of radioactive waste at the Site.

13. The USEPA completed a Remedial Investigation and Feasibility Study for the Site in July 1997.

14. On or about November 18, 1998, the USEPA issued a Record of Decision (the "ROD") selecting a remedial action for the Site. The Commonwealth of Pennsylvania concurred in this remedy selection.

15. Subsequent to the issuance of the ROD, the USEPA determined to implement the remedial action described in the ROD in two operable units ("OUs"). The USEPA determined that, in general, OU-1 would address: groundwater extraction, metal precipitation, and air stripping; the installation of additional monitoring wells; the implementation of institutional controls and monitoring for OU-1; residential water treatment; and

phytoremediation. The USEPA determined that, in general, OU-2 would address: soil aeration and the treatment of volatile organic compound hot spots; the excavation and off-site disposal of buried drums; and the implementation of institutional controls and monitoring for OU-2.

16. Plaintiff Boarhead Farm Agreement Group is an unincorporated association comprised of Agere, Cytec, Ford, SPS, and TI. Those companies have agreed collectively to undertake the cleanup work comprising OU-1 and OU-2, to otherwise collectively resolve the claims of EPA related to the Site, and to seek collectively contribution from the Defendants in this civil action. The members of the Boarhead Farm Agreement Group have agreed that they will, at some future time, and not in this civil action, reach a final allocation among themselves applicable to all costs associated with group activities, including the costs of the cleanup work comprising OU-1 and OU-2.

17. Although denying that they are liable parties under Section 107 of CERCLA, 42 U.S.C. § 9607, Cytec Industries Inc., Ford Motor Company, and SPS Technologies, Inc. are parties to both an Administrative Order on Consent for Remedial Design, USEPA Docket No. III-2000-002-DC, entered in February 2000 (the "OU-1 AOC") and a Consent Decree entered by this Court on or about September 28, 2000 (the "OU-1 Consent Decree") obligating them to perform the OU-1 remedial design and remedial action (the "OU-1 RD/RA") at the Site.

18. The Boarhead Group members have agreed to collectively fund and perform the OU-1 RD/RA and have entered into an agreement with two other entities (the "OU-1 Group Agreement") whereby the parties to that agreement ("the OU-1 Parties") agreed to collectively fund and perform the OU-1 RD/RA. Specifically, each of the OU-1 Parties contributes (or has contributed) funds to an OU-1 Group trust account ("the OU-1 Trust Account"). Such contributions are (or have been) made on the basis of an interim allocation among the OU-1

Parties. The interim allocation does not bind any of the OU-1 Parties, and they have agreed to reach a final allocation of their shares separate and apart from this action. The activities necessary for performance of the OU-1 RD/RA have been undertaken by the members of the Boarhead Group (and the two other entities), collectively by using contractors hired by and paid by them collectively.

19. Costs related to activities to perform the OU-1 RD/RA have been paid for and will in the future be paid for from the OU-1 Trust Account.

20. Although denying that they are liable parties under Section 107 of CERCLA, 42 U.S.C. § 9607, Cytec, Ford, SPS, and TI are signatories to an Administrative Order on Consent for Remedial Design, EPA Docket No. III - 2001 - 0010 - DC, effective October 17, 2001 (the "OU-2 AOC") and a Consent Decree (the "OU-2 Consent Decree") entered by this Court on March 14, 2002 obligating them to perform the OU-2 remedial design and remedial action (the "OU-2 RD/RA") at the Site and to reimburse the USEPA both for $7,000,000 in response costs incurred and accounted for prior to July 2000 and for an as yet undetermined amount of response costs incurred subsequent to July 2000.

21. The Boarhead Group members have and will in the future collectively fund and perform the OU-2 RD/RA. Specifically, the Boarhead Group members contribute funds to an OU-2 Group trust account ("the OU-2 Trust Account"). Such contributions are made on the basis of an interim allocation among the Boarhead Group. The interim allocation does not bind any of the Boarhead Group members, and they have agreed to reach a final allocation of their shares separate and apart from this action. The activities necessary for performance of the OU-2 RD/RA have been undertaken by the members of the Boarhead Group collectively by using contractors hired by and paid by them collectively.

22. All costs of the activities to perform the OU-2 RD/RA and to perform the other requirements of the OU-2 Consent Decree have been paid for and will in the future be paid for from the OU-2 Trust Account.

23. Plaintiffs have incurred costs and damages, including attorneys fees, in the course of collectively performing the requirements of the OU-1 and OU-2 AOCs and Consent Decrees. These costs constitute necessary costs of response, as defined in Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), incurred consistently with the NCP, within the meaning of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a) (collectively, the "Response Costs"). Releases or threatened releases of Hazardous Substances at or from the Site have caused Plaintiffs to incur Response Costs. The Response Costs incurred by Plaintiffs are also reasonable and necessary or appropriate costs consistent with Section 702(a)(3) of HSCA, 35 PA. CONS. STAT. § 6020.703(a)(3).

24. Plaintiffs anticipate that they will incur additional necessary costs of response, consistent with the NCP, and will reimburse the USEPA for its administrative and oversight costs in the future ("Future Response Costs") in connection with the Site.

## JURISDICTION AND VENUE

25. This action arises under Section 107 of CERCLA, 42 U.S.C. § 9607, Section 113 of CERCLA, 42 U.S.C. § 9613, and Section 702(a)(3) of HSCA, 35 PA. CONS. STAT. § 6020.702(a)(3).

26. This Court has jurisdiction over the subject matter of this action pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9313(b), 28 U.S.C. §§ 1331 and 1367. This Court has supplemental jurisdiction over the state claims based on 28 U.S.C. § 1367.

27. This Court has authority to enter a declaratory judgment regarding the rights and liabilities of the parties pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, and Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2).

28. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) and Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), because the releases or threatened release of Hazardous Substances, wastes, pollutants, and contaminants alleged herein occurred and the claims set forth herein arose in the Eastern District of Pennsylvania.

## PARTIES

A.    The Plaintiffs

29. Plaintiffs Boarhead Farm Agreement Group, Agere, Cytec, Ford, SPS, and TI are persons as defined by Section 101(21) of CERCLA, 42 U.S.C. § 9601(21). Agere is a Delaware corporation with a principal place of business in Allentown, Pennsylvania. Cytec is a Delaware corporation with a principal place of business in West Paterson, New Jersey. Ford is a Delaware corporation with a principal place of business in Dearborn, Michigan. SPS is a Pennsylvania limited liability corporation with a principal place of business in Jenkintown, Pennsylvania. TI is a Delaware limited liability company with a principal place of business in Warren, Michigan.

B.    The Defendants

### Defendant Advanced Environmental Technology Corp.

30. Defendant Advanced Environmental Technology Corp. ("AETC") is a New Jersey corporation with a principal place of business in Flanders, New Jersey.

31. AETC arranged with DeRewal Chemical for the disposal of Hazardous Substances from Defendants Ashland Inc. ("Ashland") and Diaz Chemical Corporation ("Diaz"), which Hazardous Substances were disposed of at the Site.

### Defendant Ashland Inc.

32. Defendant Ashland is a Kentucky corporation with a principal place of business in Russell, Kentucky.

33. Ashland used AETC and DeRewal Chemical to remove industrial wastes from its Great Meadows, New Jersey plant.

34. Ashland's waste was disposed of at the Site.

35. Ashland's waste contained Hazardous Substances.

### Defendant Boarhead Corporation

36. Defendant Boarhead Corporation is a Pennsylvania corporation with a principal place of business in Revere, Pennsylvania. Boarhead Corporation is the current owner of the Site and was the owner of the Site at the time of the disposal of Hazardous Substances.

### Defendant Carpenter Technology Corporation

37. Defendant Carpenter Technology Corporation ("Carpenter Technology") is a Delaware corporation with a principal place of business in Reading, Pennsylvania.

38. Carpenter Technology used DeRewal Chemical for the removal of waste pickling solution from its Reading, Pennsylvania plant.

39. Carpenter Technology's waste was disposed of at the Site.

40. Carpenter Technology's waste contained Hazardous Substances.

## Defendants Crown Metro, Inc. and Emhart Industries, Inc.

41. Defendant Crown Metro, Inc. ("Crown") is a South Carolina corporation with a principal place of business in Greenville, South Carolina.

42. Defendant Emhart Industries, Inc. ("Emhart") is a Connecticut corporation with a registered office in Hartford, Connecticut.

43. USM Corporation ("USM"), formerly a New Jersey corporation, doing business as Bostik South, Inc., used DeRewal Chemical for the removal of waste acid from its Greenville, South Carolina plant.

44. USM's waste was disposed of at the Site.

45. USM's waste contained Hazardous Substances.

46. Emhart is a successor-in-interest to USM through the merger of USM into Emhart.

47. In or about 1980 USM sold the Bostik South, Inc. business, including the Greenville, South Carolina plant, to Bengal Corporation.

48. Bengal Corporation thereafter continued the operation of the Bostik South, Inc. business without change from the way the business was operated while the business was owned by USM.

49. Bengal thereafter changed its name to Crown.

50. Crown is a successor-in-interest to Emhart with respect to liability arising from the Greenville, South Carolina plant.

### Defendant Diaz Chemical Corporation

51. Defendant Diaz is a New York corporation with a principal place of business in Holley, New York.

52. Diaz used AETC and DeRewal Chemical to remove industrial wastes from its Holley, New York, plant.

53. Diaz's waste was disposed of at the Site.

54. Diaz's waste contained Hazardous Substances.

### Defendant Etched Circuits, Inc.

55. Defendant Etched Circuits, Inc. ("Etched Circuits") is a New Jersey corporation with a principal place of business in Warminster, Pennsylvania.

56. Etched Circuits, Inc. used DeRewal Chemical to remove industrial waste from its Cherry Hill, New Jersey plant.

57. Etched Circuits' waste was disposed of at the Site.

58. Etched Circuits' waste contained Hazardous Substances.

### Defendant fcg, inc.
### (a/k/a Flexible Circuits, Inc.)

59. Defendant fcg, inc. (a/k/a Flexible Circuits, Inc.) ("fcg") is a Pennsylvania corporation with a principal place of business in Warrington, Pennsylvania.

60. Fcg used DeRewal Chemical to remove spent etchings and other industrial waste from its Warrington, Pennsylvania plant.

61. Fcg's waste was disposed of at the Site.

62. Fcg's waste contained Hazardous Substances.

63. In 1969 feg became the owner of all outstanding stock of Etched Circuits and thereafter operated the Etched Circuits facility in Cherry Hill, New Jersey. Feg is thus a person who arranged for the transport, disposal, or treatment of Hazardous Substances from the Etched Circuits facility, which Hazardous Substances were disposed of at the Site.

### Defendants Globe Disposal Co., Inc. and Globe-Wastech, Inc.

64. Defendant Globe Disposal Co., Inc. ("Globe") is a Pennsylvania corporation with a principal place of business in Norristown, Pennsylvania.

65. Defendant Globe-Wastech, Inc. ("Wastech") is a Pennsylvania corporation with a principal place of business in Skippack, Pennsylvania.

66. Globe arranged with DeRewal Chemical for the disposal of Hazardous Substances.

67. Globe transported Hazardous Substances to the Site for disposal, having selected the Site for that purpose.

68. Globe Disposal selected the Site for the disposal of Hazardous Substances.

69. On or about March 1978 the sole shareholder of Globe, Earl T. Kelly, and the sole shareholder of Waste Techniques Corporation ("WTC"), Francis J. Keel, exchanged each of their shares in those companies to Wastech.

70. Wastech thereafter continued the operation of Globe without change from the way Globe operated while its shares were owned by Kelly.

71. Wastech is a successor-in-interest to Globe.

**Defendant Handy & Harman Tube Company**

72. Defendant Handy & Harman Tube Company ("Handy & Harman Tube") is a Delaware corporation with a principal place of business in Norristown, Pennsylvania.

73. Handy & Harman Tube used DeRewal Chemical to remove industrial waste from its Norristown, Pennsylvania facility.

74. Handy & Harman Tube's waste was disposed at the Site.

75. Handy & Harmon Tube's waste contained Hazardous Substances.

**Defendants Knoll International, Inc. and Knoll, Inc.**

76. Defendant Knoll International, Inc. ("Knoll International") is a Delaware corporation with a principal place of business in New York, New York.

77. Art Metal-Knoll Corporation ("Knoll") contracted for the disposal of industrial wastes with DeRewal Chemical from its East Greenville, Pennsylvania facility.

78. Knoll's wastes were disposed of at the Site.

79. Knoll's waste contained Hazardous Substances

80. Knoll International is the successor-in-interest to Knoll through the merger of Knoll into Knoll International.

81. In or about 1990 the business of Knoll International, including the East Greenville facility, was sold to Westinghouse Acquisition Corporation ("Westinghouse"), a Delaware corporation.

82. Westinghouse thereafter continued the operation of the Knoll International business without change from the way the business was operated while it was owned by Knoll International.

83. Westinghouse was merged into Knoll North America, Inc., which was merged into Knoll, Inc., which was merged into T.K.G. Acquisition Corp. T.K.G. Acquisition Corp. was immediately thereafter renamed Knoll, Inc. ("Knoll, Inc.")

84. Defendant Knoll, Inc. is a Delaware corporation with its principal place of business in East Greenville, Pennsylvania and is a successor-in-interest to Knoll International with respect to liability arising from the East Greenville facility.

### Defendant Merit Metal Products Corp.

85. Defendant Merit Metal Products Corp. ("Merit Metal II") is a Pennsylvania corporation with a principal place of business in Warrington, Pennsylvania.

86. Another Pennsylvania corporation also named Merit Metal Products Corporation (Merit Metal I") owned and operated a place of business in Warrington, Pennsylvania from at least 1968 to 1988.

87. Merit Metal I used DeRewal Chemical to remove industrial waste from its Warrington, Pennsylvania facility.

88. Merit Metal I's waste was disposed of at the Site.

89. Merit Metal I's waste contained Hazardous Substances.

90. Merit Metal II purchased the assets and business of Merit Metal I in or about July 1988 and thereafter continued the operation of that business without change from the way the business was operated while the business was owned by Merit Metal I.

91. Merit Metal II is liable as a successor-in-interest to Merit Metal I.

**Defendant Novartis Corporation**

92. Defendant Novartis Corporation ("Novartis") is a New York corporation with a principal place of business in Tarrytown, New York.

93. Ciba-Geigy Corporation ("Ciba") used DeRewal Chemical for the removal of waste nitric acid and sulphuric acid from its Cranston, Rhode Island facility.

94. Ciba's waste was disposed of at the Site.

95. Ciba's waste contained Hazardous Substances.

96. Novartis is the corporate successor to Ciba.

**Defendant NRM Investment Company**

97. Defendant NRM Investment Company ("NRMC") is a Pennsylvania corporation with its principal place of business in Rosemont, Pennsylvania.

98. From 1974 to 1978 NRMC, then named National Rolling Mills Co., used DeRewal Chemical to dispose of waste pickle liquor solution from its plant located in Malvern, Pennsylvania (the "NRM Plant").

99. Waste from the NRM Plant was disposed of at the Site.

100.    The NRM Plant waste contained Hazardous Substances.

101.    NRMC is a party to the OU-1 Agreement.

**Defendant Plymouth Tube Company**

102.    Defendant Plymouth Tube Company ("Plymouth Tube") is a Michigan corporation with a principal place of business in Warrenville, Illinois.

103.   Plymouth Tube used DeRewal Chemical to dispose of waste pickling solution from its Ellwood Ivins facility in Horsham, Pennsylvania.

104.   Plymouth Tube's waste was disposed of at the Site.

105.   Plymouth Tube's waste pickling solution contained Hazardous Substances.

## Defendant Quikline Design and Manufacturing Co.

106.   Defendant Quikline Design and Manufacturing Co. ("Quikline Design") is a New Jersey corporation with a principal place of business in Gloucester City, New Jersey.

107.   Quikline Design used DeRewal Chemical to dispose of industrial waste from Quikline Design's Cherry Hill, New Jersey facility.

108.   Quikline Design's waste was disposed of at the Site.

109.   Quikline Design's waste contained Hazardous Substances.

## Defendant Rahns Specialty Metals, Inc.

110.   Defendant Rahns Specialty Metals, Inc. ("Rahns") is a Pennsylvania corporation with a principal place of business in Collegeville, Pennsylvania.

111.   In 1991 Rahns acquired the property, premises, and environmental liability associated with Techalloy Company, Inc.'s ("Techalloy") Rahns, Pennsylvania facility.

112.   Thereafter Rahns continued to operate the Techalloy Rahns facility in substantially the same manner in which that facility was operated by Techalloy and otherwise continued the business of Techalloy.

113.   Rahns is a successor-in-interest to Techalloy.

**Rohm and Haas Company**

114.    Rohm and Haas Company ("Rohm") is a Pennsylvania Corporation with a principal place of business in Philadelphia, Pennsylvania.

115.    Rohm arranged with a Marvin Jonas business to remove waste from its facilities in the Philadelphia area.

116.    Rohm's waste was disposed of at the Site.

117.    Rohm's waste contained Hazardous Substances.

**Defendant Simon Wrecking Co., Inc.**

118.    Defendant Simon Wrecking Co., Inc. ("Simon Wrecking") is a Pennsylvania corporation with a principal place of business in Williamsport, Pennsylvania.

119.    Simon Wrecking used DeRewal Chemical to remove industrial waste from Simon Wrecking's Williamsport facility.

120.    Simon Wrecking's waste was disposed of at the Site.

121.    Simon Wrecking's waste contained Hazardous Substances.

**Defendant Techalloy Company, Inc.**

122.    Defendant Techalloy is a Pennsylvania corporation with a principal place of business in Mahway, New Jersey.

123.    Techalloy used DeRewal Chemical to remove spent acids from Techalloy's Rahns, Pennsylvania facility.

124.    Techalloy's waste was disposed of at the Site.

125.    Techalloy's waste contained Hazardous Substances.

**Defendant Thomas & Betts Corporation**

126.    Defendant Thomas & Betts Corporation ("Thomas & Betts") is a Tennessee corporation with a principal place of business in Memphis, Tennessee.

127.    Ansley Electronics Corporation ("Ansley") used DeRewal Chemical to remove industrial waste from its New Hope and Perkasie, Pennsylvania facilities.

128.    Wastes from Ansley's New Hope and Perkasie facilities were disposed of at the Site.

129.    Wastes from Ansley's New Hope and Perkasie facilities contained Hazardous Substances.

130.    Ansley was merged into Thomas & Betts in or about January 1, 1984.

131.    Thomas & Betts is a successor-in-interest to Ansley.

**Defendant Unisys Corporation**

132.    Defendant Unisys Corporation ("Unisys") is a Delaware corporation with a principal place of business in Blue Bell, Pennsylvania.

133.    Sperry Corporation ("Sperry") used DeRewal Chemical to remove wastes from Sperry's Blue Bell, Pennsylvania, Utica, New York, and other facilities.

134.    Sperry's waste was disposed of at the Site.

135.    Sperry's waste contained Hazardous Substances.

136.    Sperry was merged into Burroughs Corporation. Burroughs Corporation thereafter changed its name to Unisys Corporation.

137.    Unisys is a successor-in-interest to Sperry.

**Defendant United States of America Department of Navy**

138.    Defendant the United States of America, Department of Navy is an instrumentality of the United States Government with a base in Willow Grove, Pennsylvania.

139.    The Department of Navy, through the Naval Air Development Center, Warminster, Pennsylvania, used DeRewal Chemical to remove industrial waste.

140.    The Department of Navy's waste was disposed of at the Site.

141.    The Department of Navy's waste contained Hazardous Substances.

## COUNT I

### (CERCLA Section 113(f)(1) Contribution)

142.    The allegations made in paragraphs 1 through 141 are incorporated by reference as if set forth here in full.

143.    Pursuant to Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), any person may seek contribution from any other person who is liable or potentially liable under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

144.    Plaintiffs are "persons" within the meaning of Sections 101(21) and 113(f)(1) of CERCLA, 42 U.S.C. §§ 9601(21) and 9613(f)(1).

145.    Each Defendant is a "person" within the meaning of Sections 101(21) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(21) and 9607(a).

146.    Defendants Globe Disposal Co., Inc., and Globe-Wastech, Inc. (the "Transporter Defendants") are persons who accepted Hazardous Substances for transport to the Site, having selected the Site as the disposal or treatment facility to which such Hazardous

Substances would be transported, or are successors-in-interest to such persons, and are liable pursuant to Section 107(a)(4) of CERCLA, 42 U.S.C. § 9607(a)(4).

147.    Defendants AETC, Ashland, Carpenter Technology, Crown, Diaz, Emhart, fcg, Globe, Globe-Wastech, Inc. Handy & Harman Tube, Knoll, Knoll International, Merit Metal, Novartis, NRMC, Plymouth Tube, Quikline Design, Techalloy, Rahns, Rohm, Simon Wrecking, Thomas & Betts, Unisys, and the United States of America Department of Navy (collectively, the "Generator/Arranger Defendants") are persons who by contract, agreement or otherwise, arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment of Hazardous Substances owned or possessed by them or by another party or entity, at the Site, or are successors-in-interest to such persons and are liable under Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

148.    The total amount of the wastes transported to the Site by each of the Transporter Defendants was greater than 110 gallons of liquid or greater than 200 pounds of solid materials.  None of such wastes were municipal solid waste as defined by CERCLA § 107.

149.    The total amount of the wastes for which the Generator/Arranger Defendants arranged and that were disposed of at the Site was greater than 110 gallons of liquid or greater than 200 pounds of solid materials.  None of such wastes were municipal solid waste as defined by CERCLA § 107.

150.    Defendant Boarhead Corporation is liable under Sections 107(a)(1) and 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(1), 42 U.S.C. § 9607(a)(2) as the current owner of the Site and as the owner of the Site at the time of the disposal of Hazardous Substances.

151.    Pursuant to Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), Plaintiffs are entitled to contribution from Defendants for Response Costs incurred and for

Future Response Costs to be incurred by Plaintiffs in connection with the Site and to an allocation by the Court of the Response Costs and Future Responses Costs as between Plaintiffs and Defendants using such equitable factors as the Court determines are appropriate.

WHEREFORE Plaintiffs demand judgment in their favor against each of the Defendants, as follows:

(a)     Adjudging, decreeing, and declaring that Defendants are liable pursuant to Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), for contribution to Plaintiffs for Response Costs incurred thus far in connection with the Site and awarding damages to Plaintiffs in that amount and for Future Response Costs to be incurred by Plaintiffs in connection with the Site, together with interest thereon;

(b)     Allocating responsibility for the Response Costs and Future Response Costs as between Plaintiffs and Defendants pursuant to Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), using such equitable factors as the Court determines are appropriate;

(c)     Ordering Defendants to provide contribution to Plaintiffs for Response Costs related to the Site incurred to date and for all Future Response Costs to be incurred in connection with the Site, together with interest thereon, computed in accordance with Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

(d)     Ordering Defendants to pay Plaintiffs their costs of this action, including reasonable attorneys fees; and

(e)     Granting Plaintiffs such other, further, and different relief as the Court may deem just and appropriate.

## COUNT II

### (CERCLA Section 113(f)(3)(B)

152.   The allegations made in paragraphs 1 through 151 are incorporated by reference as if set forth here in full.

153.   Pursuant to Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B), any person may seek contribution from any other person who is not a party to a settlement under section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2).

154.   Pursuant to Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B), Plaintiffs are entitled to contribution from Defendants for Response Costs incurred and for Future Response Costs to be incurred by Plaintiffs in connection with the Site and to an allocation by the Court of the Response Costs and Future Responses Costs as between Plaintiffs and Defendants using such equitable factors as the Court determines are appropriate.

WHEREFORE Plaintiffs demand judgment in their favor against each of the Defendants, as follows:

(a)   Adjudging, decreeing, and declaring that Defendants are liable pursuant to Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B), for contribution to Plaintiffs for Response Costs incurred thus far in connection with the Site and awarding damages to Plaintiffs in that amount and for Future Response Costs to be incurred by Plaintiffs in connection with the Site, together with interest thereon;

(b)   Allocating responsibility for the Response Costs and Future Response Costs as between Plaintiffs and Defendants pursuant to Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B), using such equitable factors as the Court determines are appropriate;

(c)     Ordering Defendants to provide contribution to Plaintiffs for Response Costs related to the Site incurred to date and for all Future Response Costs to be incurred in connection with the Site, together with interest thereon, computed in accordance with Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

(d)     Ordering Defendants to pay Plaintiffs their costs of this action, including reasonable attorneys fees; and

(e)     Granting Plaintiffs such other, further, and different relief as the Court may deem just and appropriate.

## COUNT III

### (CERCLA Section 107(a))

155.    The allegations made in paragraphs 1 through 161 are incorporated by reference as if set forth here in full.

156.    Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), plaintiffs are entitled to contribution from Defendants for Response Costs incurred and for Future Response Costs to be incurred by plaintiffs in connection with the Site and to an allocation by the Court of the Response Costs and Future Response Costs as between Plaintiffs and Defendants using such equitable factors as the Court determines are appropriate.

WHEREFORE Plaintiffs demand judgment in their favor against each of the Defendants, as follows:

(a)     Adjudging, decreeing, and declaring that Defendants are liable pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for contribution to Plaintiffs for Response Costs incurred thus far in connection with the Site and awarding damages to Plaintiffs

in that amount and for Future Response Costs to be incurred by Plaintiffs in connection with the Site, together with interest thereon;

(b)     Allocating responsibility for the Response Costs and Future Response Costs as between Plaintiffs and Defendants pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), using such equitable factors as the Court determines are appropriate;

(c)     Ordering Defendants to provide contribution to Plaintiffs for Response Costs related to the Site incurred to date and for all Future Response Costs to be incurred in connection with the Site, together with interest thereon, computed in accordance with Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

(d)     Ordering Defendants to pay Plaintiffs their costs of this action, including reasonable attorneys fees; and

(e)     Granting Plaintiffs such other, further, and different relief as the Court may deem just and appropriate.

## COUNT III

### (CERCLA Section 113(g)(2) Declaratory Judgment)

157.    The allegations made in paragraphs 1 through 163 are incorporated by reference as if set forth here in full.

158.    A controversy exists between Plaintiffs and Defendants insofar as Plaintiffs contend, and Defendants deny, that Defendants are liable under CERCLA for contribution for all necessary costs of response incurred and to be incurred by Plaintiffs in connection with any response actions taken by Plaintiffs at the Site.

159. Pursuant to CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2), Plaintiffs request entry of a declaratory judgment that holds Defendants liable for all necessary costs of response incurred and to be incurred in connection with any response action taken by Plaintiffs at the Site, which judgment shall be binding in any subsequent action to recover further response costs or damages.

WHEREFORE, Plaintiffs demand judgment in their favor against each of the Defendants, as follows:

(a) Entering a declaratory judgment on liability pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), in favor of Plaintiffs and against Defendants, adjudging, decreeing, and declaring that Defendants are liable to Plaintiffs for all Future Response Costs consistent with the NCP that Plaintiffs may incur and for all damages that Plaintiffs may suffer at or with respect to the Site, together with interest thereon, which judgment will be binding in any subsequent action or actions brought by Plaintiffs against Defendants to recover Future Response Costs or damages.

## COUNT IV

**(Cost Recovery Under the Pennsylvania Hazardous Sites Cleanup Act)**

160. The allegations made in paragraphs 1 through 166 are incorporated by reference as if set forth here in full.

161. There has been a "release" at the Site within the meaning of Section 103 of HSCA, 35 PA. CONS. STAT. § 6020.103.

162. Each Defendant is a "person" within the meaning of Section 103 of HSCA, 35 PA. CONS. STAT. § 6020.103.

163.    Plaintiffs are "persons" as defined by Section 103 of HSCA, 35 PA. CONS. STAT. § 6020.103.

164.    Each Defendant is a person who has allowed a release and thereby caused a public nuisance pursuant to Section 1101 of HSCA, 35 PA. CONS. STAT. § 6020.1101.

165.    Plaintiffs have incurred "reasonable and necessary or appropriate costs" responding to the release and threatened release of Hazardous Substances at the Site pursuant to Section 702 of HSCA, 35 PA. CONS. STAT. § 6020.702(a)(3).

166.    The Transporter Defendants are persons who accepted Hazardous Substances for transport to the Site, having selected the Site as the disposal or treatment facility to which such Hazardous Substances would be transported, or are successors-in-interest to such persons, and are liable to Plaintiffs pursuant to Sections 701(a)(3) and 702(a)(3) of HSCA, 35 PA. CONS. STAT. §§ 6020.701(a)(3), 6020.702(a)(3).

167.    The Generator/Arranger Defendants are persons who by contract, agreement or otherwise, arranged for disposal or treatment, or transport for disposal or treatment of Hazardous Substances owned or possessed by them or by another party or entity, at the Site, or are successors-in-interest to such persons, and are liable to Plaintiffs pursuant to Sections 701(a)(2) and 702(a)(3) of HSCA, 35 PA. CONS. STAT. §§ 6020.701(a)(2), 6020.702(a)(3).

168.    Defendant Boarhead Corporation is liable to Plaintiff pursuant to Sections 701(a)(1) and 702(a)(3) of HSCA, 35 PA. CONS. STAT. §§ 6020.701(a)(1), 6020.70(a)(3), as a person who owns now the Site and owned the Site at the time a Hazardous Substance was placed or came to be located on the Site and during the time of a release or threatened release.

169.    Pursuant to Sections 701, 702(a)(3) and 1101 of HSCA, 35 PA. CONS. STAT. §§ 6020.701, 6020.702(a)(3), 6020.1101, Plaintiffs are entitled to contribution from Defendants for Response Costs incurred and for Future Response Costs to be incurred by Plaintiffs in connection with the Site and to an allocation by the Court of the Response Costs and Future Responses Costs as between Plaintiffs and Defendants using such equitable factors as the Court determines are appropriate.

WHEREFORE Plaintiffs demand judgment in their favor against each of the Defendants, as follows:

(a)    Adjudging, decreeing, and declaring that Defendants are liable pursuant to Section 702(a)(3) of HSCA, 35 PA. CONS. STAT. § 6020.702(a)(3), for contribution to Plaintiffs for Response Costs incurred thus far in connection with the Site and awarding damages to Plaintiffs in that amount and for Future Response Costs to be incurred by Plaintiffs in connection with the Site, together with interest thereon.

(b)    Allocating responsibility for the Response Costs and Future Response Costs as between Plaintiffs and Defendants using such equitable factors as the Court determines are appropriate;

(c)    Ordering Defendants to provide contribution to Plaintiffs for Response Costs related to the Site incurred to date and for all Future Response Costs to be incurred in connection with the Site, together with interest thereon, computed in accordance with Section 702(b) of HSCA, 35 PA. CONS. STAT. § 6020.702(b).

(d)    Ordering Defendants to pay Plaintiffs their costs of this action, including reasonable attorneys fees; and

(c)      Granting Plaintiffs such other, further, and different relief as the

Court may deem just and appropriate.

Ballard Spahr Andrews & Ingersoll, LLP


By: _____

   Glenn A. Harris, Esquire (#51222)
   Plaza 1000, Suite 500, Main Street
   Voorhees, New Jersey  08043
   Phone:  (856) 761-3400

Attorneys for Plaintiffs Boarhead Farm Agreement
Group and its members Agere Systems, Inc., Cytec
Industries Inc., Ford Motor Company, SPS
Technologies, LLC and TI Group Automotive
Systems, LLC

Dated:  March 11, 2005

NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| GENERAL MOTORS CORP., | : | Hon. Dennis M. Cavanaugh |
| Plaintiff, | : | |
| v. | : | **OPINION** |
| UNITED STATES OF AMERICA, et al, | : | Civil Action No. 01-CV-2201 (DMC) |
| Defendants. | : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Defendants the United States of America, et al, ("the Government"), for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) and upon motion by Plaintiff General Motors Corp. ("Plaintiff") to amend its Complaint pursuant to Fed.R.Civ.P. 15(a). The Court heard oral argument on these matters on February 28, 2005. After carefully considering the submissions and arguments of the parties and based upon the following, it is the finding of this Court that the Government's motion is **denied** and Plaintiff's motion is **granted**.

## I. BACKGROUND

GMC filed this lawsuit against the Government on May 7, 2001, seeking contribution from the Government under §113(f) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §9613(f). Section 113(f) allows persons who have undertaken efforts to clean up properties contaminated by hazardous

substances to seek contribution from other parties liable under CERCLA.  Section 113(f)(1)[1]
specifies that a party may seek contribution "during or following any civil action" under
CERCLA §106 or §107(a).

CERCLA §104 provides that the Government may cleanup contaminated areas itself, and
§106 provides that it may compel any responsible parties to perform the cleanup.  In either case,
§107 allows the Government to recover its costs.  Section 107(a) lists four classes of potentially
responsible persons ("PRPs") which shall be liable for "all costs of removal or remedial action
incurred by the United States Government." §107(a)(4)(A).  Private parties who are not PRPs
and voluntarily perform cleanup of contaminated areas also may recover costs from PRPs under
§107(a)(4)(B).  However, many Circuits are divided over the question of whether a PRP that has
voluntarily incurred response costs but is not subject to suit may bring a §107(a)(4)(B) action
against other PRPs.  In the Third Circuit, §107(a)(4)(B) cost recovery actions by PRPs are
prohibited. New Castle County v. Halliburton NUS Corp., 111 F.3d 1116, 1121 (3d Cir.1997).

GMC's claim here arises out of cleanup costs it incurred at fifteen industrial sites in
various states. (See Compl. at ¶¶ 2, 4, 19-57, 71.)  GMC alleges that the Government owned,
operated, or disposed of hazardous substances at these sites, thus rendering the Government
partly responsible under CERCLA for the costs of cleaning up these sites. (See Id. at ¶¶ 3, 12-18,
58-60, 69-70.)  The Government contends that to date, no party has taken any action against

---

[1] The statute reads, in relevant part: "Any person may seek contribution from any other person who is liable
or potentially liable under section 9607(a) of this title, during or following any civil action under such section 9606
of this title or under section 9607(a) of this title....Nothing in this subsection shall diminish the right of any
person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section
9607 of this title."

GMC under §106 or §107(a) with respect to these sites.[2] (See Gov't Br. in Supp. of Mot. for J. on Pleadings at 9.) Since the filing of the Complaint, GMC and the Government have reached several partial settlement agreements resulting in dismissal of the claims relating to all but two of the sites at issue. However, in March 2004, the Government took the position that it was not liable to GMC for contribution under §113(f)(1) of CERCLA, as GMC's suit had not been instituted "during or following any civil action under" §106 or §107(a). 42 U.S.C. §9613(f)(1).

The Government's change in stance on its liability coincided with the proceeding of similar litigations around the country about the scope of §113(f)(1). A number of Courts of Appeals split on the question of whether a PRP such as GMC, which has incurred cleanup costs, is permitted to sue another PRP for contribution under §113(f)(1) in the absence of an action under §106 or §107(a). On January 9, 2004, the U.S. Supreme Court granted certiorari to a Fifth Circuit case, Cooper Industries, Inc. v. Aviall Services, Inc., to resolve the issue. Accordingly, the Government submitted a motion for judgment on the pleadings on June 4, 2004, contending that GMC was not entitled to relief under §113(f)(1) since no action had been taken under §106 or §107(a). (See Gov't Br. in Supp. at 9.) The Government also sought a stay of this action pending the determination of the Supreme Court in Aviall, which GMC opposed. No stay was entered, and no action was taken by this Court on the Government's motion for judgment on the pleadings.

On December 13, 2004, the Supreme Court issued its decision in Cooper Industries, Inc,

---

[2] At oral argument, GMC for the first time asserted that a §107(a) action had been instituted against it by the Environmental Protection Agency seeking response costs incurred at one of the sites at issue, Willow Run. To the extent that such an action exists to meet the requirements of §113(f)(1), GMC's suit here with respect to Willow Run would not be barred by Aviall (discussed in greater detail below). As neither party has briefed nor raised this issue before, the Court makes no findings with respect to the accuracy of GMC's claim. However, GMC will be permitted to amend its Complaint to allege the existence of a §107 action as a prerequisite to its §113(f)(1) claim.

v. Aviall Services, Inc., determining that a party was not entitled to bring a contribution action under §113(f)(1) if it has not been the target of a §106 or §107(a) action. 125 S.Ct. 577, 584 (2004). The decision by the Supreme Court is seemingly dispositive of the issue included in the Government's motion for judgment on the pleadings, though GMC has refused to concede that point. GMC promptly moved to amend the Complaint on December 16, 2004, so as to bring its action under CERCLA §107(a)(4)(B).

## II. DISCUSSION

### A. Government's Motion for Judgment on the Pleadings

#### 1. Standard of Review – Rule 12(c)

A motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) is treated under the same standard as a motion to dismiss under Fed.R.Civ.P. 12(b)(6). Fields v. Schaffer, 2005 WL 78928, *1 (E.D.Pa.2005). A 12(c) motion will only be granted where the moving party has established that no material issue of fact remains to be resolved, and that the movant is entitled to judgment as a matter of law. See Institute for Scientific Info., Inc. v. Gordon and Breach, Science Publishers, Inc., 931 F.2d 1002, 1005 (3d Cir.1991). In making such a determination, a court must view the facts and inferences to be drawn from the pleadings in the light most favorable to the non-moving party. Fields, 2005 WL 78928 at *1.

#### 2. GMC's Claims under CERCLA § 113(f)

The Government correctly contends that the recent Aviall holding explicitly resolves that a contribution action under §113(f)(1) may not be brought in the absence of a previous or pending §106 or §107(a) action. Aviall, 125 S.Ct. 577, 584 (2004) ("section 113(f)(1) authorizes

contribution claims only 'during or following' a civil action under §106 or §107(a), and it is undisputed that [Plaintiff] has never been subject to such an action. [Plaintiff] therefore has no §113(f)(1) claim"). Consequently, the Complaint against the Government filed by GMC under §113(f)(1) fails to state a claim as it alleges no previous action taken against it under §106 or §107(a). The Government is entitled to judgment as a matter of law on the basis of GMC's original pleadings.

However, due to the intervening interpretation of the Supreme Court, effectively eliminating GMC's claim under §113(f)(1), this Court should examine whether GMC's proposed amendment may preserve its cause of action. See Flaherty v. United Engineers & Constructors, Inc., 213 F.Supp. 835, 838 -839 (D.C.Pa.1961) (permitting amendment where it "was offered within eighteen months after a substantial change in the interpretation of the [relevant statute] was effected by [a higher court's] decision") System Federation No. 152, Ry. Emp. Dept. AFL-CIO v. Pennsylvania R. Co., 272 F.Supp. 971, 974 (D.C.N.Y.1967) (granting leave to amend even though motion not filed until six months after Supreme Court's decision; delay not excessive, in view of the liberality to permit amendment of pleadings, "particularly for the purpose of interposing an intervening change in the law"). Here, GMC filed its motion to amend within four days of the intervening change in the interpretation of CERCLA, well within the time permitted in the Flaherty and System Federation No. 152 cases cited above.

**B. GMC's Motion to Amend the Complaint**

    **1. Standard of Review – Rule 15(a)**

    A motion to amend a complaint is governed by Fed.R.Civ.P. 15(a). Leave to amend

should be "freely given when justice so requires." Courts within the Third Circuit apply a very liberal standard in considering whether to grant leave to amend a complaint. Dole v. Arco Chem. Co., 921 F.2d 484 (3d Cir.1990). However, a court may deny a plaintiff leave based on factors including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962). Here, the Government opposes GMC's proposed amendment on the grounds that it is futile and untimely, but has not offered any prejudice it will suffer if GMC were to amend. (See Gov't Br. in Opp'n to Mot. to Amend at 2.)

Futility is analyzed under the same standard of legal sufficiency as a motion to dismiss under Fed.R.Civ.P. 12(b)(6). SmithKline Beecham Corp. v. Geneva Pharmaceuticals, Inc., 287 F.Supp.2d 576, 580-581 (E.D.Pa.2002). Under the 12(b)(6) standard, leave to amend should not be denied as futile unless the proposed amended complaint would fail to state a claim upon which relief can be granted. When reviewing a claim of futility, the court assumes the truth of all the complaint's factual allegations. Id.

When determining whether undue delay has occurred, a court must examine a delay in the proceedings, not a delay in amending the pleadings. See, e.g., Boileau v. Bethlehem Steel Corp., 730 F.2d 929, 939 (3d Cir.1984). In the Third Circuit, unexcused delay unaccompanied by real detriment to the defendant or the judiciary does not constitute undue delay. Wausau Underwriters Ins. Co. v. Shisler, 190 F.R.D. 341, 343 (E.D.Pa.1999) (citing Cornell & Co., Inc. v. Occupational Safety & Health Review Comm'n, 573 F.2d 820, 823 (3d Cir.1978)). However, at

some point, the delay will become "undue," placing an unwarranted burden on the court, or will become "prejudicial," placing an unfair burden on the opposing party. Adams v. Gould, Inc., 739 F.2d 858, 868 (3d Cir.1984).

The Government has not alleged any prejudice it will suffer. Similarly, the Court can see no detriment to itself caused by permitting an amendment. As such, the only ground for denying GMC leave to amend is the alleged futility of GMC's new claims under §107(a).

### 2. GMC's Possible Claims under CERCLA § 107(a)

GMC asserts that the Supreme Court in Aviall left open two possible theories of the Government's liability under §107(a). First, Aviall suggests that an action for recovery of costs under §107(a)(4)(B) is still available to a party unable to meet the procedural requirements of §113(f)(1). 125 S.Ct. at 584-85. However, GMC concedes that the Third Circuit Court of Appeals has already precluded that course of action for a PRP. New Castle County, 111 F.3d at 1120.

Second, GMC argues that the Court specifically left open the question whether an implied right of contribution exists under §107 for PRPs. Aviall, 125 S.Ct. at 586 ("we decline to decide whether Aviall has an implied right to contribution under §107"). Within this District, that question has been decided in the negative. See E.I. DuPont DeNemours & Co. v. U.S.A., 297 F.Supp. 740 at 746-47 (2003) (Martini, J.).[3] DuPont, though decided before Aviall, reached essentially the same conclusion – no action for contribution may be brought under §113(f) in the absence of a preceding §106 or §107(a) action. DuPont based its holding on a decision by

_____

[3] DuPont is currently on appeal before the Third Circuit, though the matter has not yet been fully briefed or argued.

the Third Circuit, In re Reading, 115 F.3d 1111 (3d Cir.1997), which presented a similar, though not identical, question. Reading involved a PRP that had already been sued under §107(a) and was attempting to assert causes of action for contribution against another PRP under both §107(a)(4)(B) and §113(f). The Third Circuit, in denying the claim under §107(a)(4)(B), held that Congress' creation of §113(f) replaced any judicially created right to contribution under §107(a)(4)(B).[4] Reading, 115 F.3d at 1120.

Here, GMC argues that this Court should limit Reading to its specific facts – namely, a case where a §107(a) action has already been filed – and find that a party who has not been sued under §106 or §107(a) may still seek relief under the judicially created right to contribution. (See Pl. Rep. Br. in Supp. of Mot. to Amend at 4.) GMC contends that, because Reading is distinguishable, and the Aviall majority decided not to reach the question of whether an implied right to contribution survives the enactment of §113, it is appropriate for this Court to hold open the possibility that such a right still exists. (See id.) The Government counters that Reading expressed unequivocally that §113 is the sole means for seeking contribution open to a PRP, and this Court is bound by that holding. Reading, 115 F.3d at 1120.

While GMC's contention that Reading is distinguishable from the facts of the instant case may be correct in concept, in practice it appears to be a distinction without a difference. Additionally, though Aviall did refrain from deciding the issue at hand here, the Supreme Court specifically noted that it "has visited the subject of implied rights of contribution before" and

---

[4] Congress enacted §113 in 1986, in response to the creation by several federal courts of an implied right to contribution under §107.

cited two cases refusing to recognize implied or common law rights to contribution in other federal statutes. Aviall, 125 S.Ct. at 586 (see Texas Industries, Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 638-647 (1981) (finding no implied or common law right to contribution in the Sherman Act or the Clayton Act); Northwest Airlines, Inc. v. Transport Workers, 451 U.S. 77, 90-99 (1981) (finding no implied or common law right to contribution in Equal Pay Act or Title VII of Civil Rights Act)). Consequently, however tempted this Court might be to offer its own interpretation to the growing body of CERCLA case law, the above factors counsel it against such a course. Ample reasons exist to conclude that granting GMC leave to amend its Complaint to assert a contribution claim under §107(a)(4)(B) would be futile under controlling Third Circuit law.

However, the DuPont decision is currently on appeal, providing the Third Circuit with a chance to reexamine existing CERCLA precedent in light of Aviall and to clarify the reach of the Reading holding. As such, and in consideration of the fact that the Government has not offered any prejudice to it resulting from an amendment, this Court determines that GMC may amend its complaint to assert a claim under CERCLA §107(a)(4)(B), or to allege the existence of a previous or pending §106 or §107(a) claim against it which would satisfy the requirements of §113(f)(1). To the extent that the Third Circuit takes the opportunity presented by the DuPont appeal to make clear the availability or non-availability of an implied right to contribution, the Government may proceed accordingly with any motions respecting the amended Complaint. The Court notes that it is not concluding that GMC in fact has a viable cause of action under §107(a)(4)(B) sufficient to survive a motion to dismiss; instead, the Court finds there is simply

not any harm in permitting the amendment until further instruction from the Court of Appeals in this complex area of federal law. Finally, as the Court has granted GMC leave to amend its Complaint, the Government's motion for judgment on the pleadings accordingly should be denied as moot.

### CONCLUSION

For the reasons stated, it is the finding of this Court that Plaintiff's motion to amend the Complaint is **granted**. Also, the Government's motion for judgment on the pleadings is **denied** as moot. An appropriate Order accompanies this Opinion.

Dennis M. Cavanaugh, U.S.D.J.

Date:       March 2, 2005
Original:   Clerk's Office
Copies:     All Counsel of Record
            The Honorable Mark Falk, U.S.M.J.
            File

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BOARHEAD FARM AGREEMENT :
GROUP, :
                    Plaintiff, :          CIVIL ACTION
                              :
        v.                    :          NO. 02-3830
                              :
ADVANCED ENVIRONMENTAL :
TECHNOLOGY CORPORATION, :
ET. AL. :
                              :
                    Defendants. :

## CERTIFICATION OF SERVICE

**Dawn M. Neukirch**, of full age, certifies as follows:

1.     I am employed by the law firm of Ballard Spahr Andrews & Ingersoll,

LLP, as a legal secretary.

2.     On this date, I caused one copy of Plaintiff Boarhead Farm Agreement

Group's Motion to Amend Third Amended Complaint and supporting documents in the above-

captioned matter to be served via electronically upon the following:

ALL DEFENDANTS ON ATTACHED SERVICE LIST

and via first class U.S. mail upon:

Melissa Flax, Esquire
Carella, Byrne, Bain, Gilfillian, Cecchi,
Stewart & Olstein, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068-1739
Phone: 973-994-1700
Fax: 973-994-1744
e-mail: mflax@carellabyrne.com
*Handy & Harman Tube Company*

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: March 11, 2005                            Dawn M. Neukirch /s/
                                                 Dawn M. Neukirch

## *Bourhead Farm Defendants' Service List*
## *File No. 892241*

Thomas W. Sabino, Esquire
Wolff & Samson, PC
The Offices at Crystal Lake
One Boland Drive
West Orange, New Jersey 07052
Phone: 973-325-1500
Fax: 973-325-1501
e-mail: tsabino@wolffsamson.com

    *-and-*

Robert M. Morris, Esquire
Morris & Adelman, P.C.
1920 Chestnut Street
P.O. Box 30477
Philadelphia, PA 19103
Phone: 215-568-5621
Fax: 215-568-3253
e-mail: rmmorris@morrisadelman.com
*Advanced Environmental Technology Corp.*

Lynn Wright, Esquire
Edwards & Angell, LLP
750 Lexington Avenue
New York, New York 10022-1200
Phone: 212-308-4411
Fax: 212-308-4844
e-mail: lwright@ealaw.com
*Carpenter Technology Corporation*

Seth v.d.H. Cooley, Esquire
Duane Morris LLP
Suite 4200, One Liberty Place
Philadelphia, PA 19103-7396
Phone: 215-979-1000
Fax: 215-979-1020
e-mail: secooley@duanemorris.com
*Flexible Circuits & Etched Circuits*

    *-and-*

A. Nicole Friant, Esquire
Duane Morris LLP
One Liberty Place
Suite 4200
Philadelphia, PA  19103-7396
Phone: 215-979-1818
Fax: 215-979-1020
e-mail: anfriant@duanemorris.com


Stephen P. Chawaga, Esquire
Monteverde, McAlee & Hurd
One Penn Center at Suburban Station
Suite 1500
1617 John F. Kennedy Boulevard
Philadelphia, PA  19103-1815
Phone: 215-557-2900
Fax: 215-557-2990
e-mail: schawaga@monteverde.com
*Merit Metals Products Corp.*


Andrew P. Foster, Esquire
Drinker, Biddle & Reath, LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA  19103-6996
Phone: 215-998-2700
Fax: 215-988-2757
e-mail: Andrew.foster@dbr.com
*Rahns Specialty Metals, Inc.*
*Techalloy Co., Inc.*
*Thomas & Betts Corporation*

       *-and-*

Adina Marie Bingham, Esquire
Drinker Biddle & Reath LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA  19103-6996
Phone: 215-988-2700
Fax: 215-988-2757
e-mail: Adina.Bingham@dbr.com

Edward Fackenthal, Esquire
Law Office of Edward Fackenthal
One Montgomery Plaza
Suite 209
Norristown, PA  19401
Phone: (610) 279-3370
Fax:  (610) 279-0696
*NRM Investment Co.*
e-mail:  edwardfackenthal@cs.com


Richard C. Biedrzycki, Esquire
Phelan, Pettit & Biedrzycki
The North American Building
Suite 1600
121 South Broad Street
Philadelphia, PA  19107
Phone:  215-546-0500
Fax:  215-546-9444
e-mail:  rbiedrzycki@pp-b.com
*Ashland, Inc.*