# EXHIBIT "A"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BOARHEAD FARM AGREEMENT      :
GROUP,      :
            Plaintiff,      :     CIVIL ACTION
     :
      v.      :     NO. 02-3830
     :
ADVANCED ENVIRONMENTAL      :
TECHNOLOGY CORPORATION, et al.,      :
     :
            Defendants.      :

## ORDER

**AND NOW**, this        day of             , 200   , upon consideration of

the Motion of Defendant Ashland Inc. to Strike Plaintiff's Objections to Ashland's Interrogatories

and Document Requests, First Sets, and to compel more specific responses thereto, it is hereby

**ORDERED** that Ashland's Motion is **GRANTED** as follows:

1.      Plaintiff's objections to Ashland's Interrogatories and Document Requests, First Sets,

are hereby **STRICKEN**;

2.      Within ten (10) days from the date of this Order, Plaintiff shall serve full and

complete more specific answers, sworn to by and on behalf of each of the members of the Plaintiff

association, to Interrogatory Nos. 1-5, 7-9, 11-16 and 18, not limited by any objections except as to

claims of privilege as provided in paragraph 4 hereof;

3.      Plaintiff shall serve more specific responses to Ashland's Document Request Nos. 1,

5-8, 10-12 and 15-17, not limited by any objections except as to claims of privilege as provided in

paragraph 4 hereof;

4.      In the event that Plaintiff withholds any information or documents pursuant to a claim

of privilege, Plaintiff shall provide a privilege log identifying the specific information and documents withheld, the date of each document withheld, the identity of the maker(s) and all intended and actual recipient(s) of such information and documents being withheld, and a statement of the nature of each privilege asserted and the bases therefore sufficient to enable a determination to be made as to whether a privilege applies;

5.    As to any references by Plaintiff in its more specific answers and responses to be served pursuant to this Order that are intended to constitute Plaintiff's answer to a specific Interrogatory or Document Request, Plaintiff shall specifically identify each document which Plaintiff believes contains the particular information specifically requested in Ashland's Interrogatories or that represents a document responsive to Ashland's requests for production and Plaintiff shall provide a designation of the Bates number or other designation of each such document that will enable Ashland to readily identify and locate each designated document;

6.    Furthermore, with respect to Ashland's Interrogatory No. 2, Plaintiff's more specific amended answers shall provide the information requested as to all hazardous substances that, to Plaintiff's knowledge or information and belief, the Environmental Protection Agency has directed be cleaned up at the Boarhead Farm Site and as to all hazardous substances that the Plaintiff association and/or its members have agreed to clean up at the Site;

7.    Plaintiff's more specific answers to Interrogatory Nos. 3, 4, 5, 8, 9 and 14 shall include the information requested as to all past and estimated future response costs;

8.    Plaintiff's more specific answers to Interrogatory Nos. 11, 12 and 13 shall set forth the information requested as to all response costs and attorney's fees;

9.    Plaintiff's more specific answers to Ashland's Interrogatories shall specifically indicate that such more specific answers are being provided on behalf of the Plaintiff and all

individual members of the Plaintiff association, which answers shall be attested by and on behalf of each member of the Plaintiff association; and

10.    Any and all references to deposition testimony in Plaintiff's more specific answers and responses shall specifically identify the name of the deponent, the name and docket number of the proceeding in which such testimony was given, the date(s) of each deposition and the identity of the court reporter before whom the deposition was taken.

BY THE COURT:

_____
Legrome D. Davis, U.S.D.J.

G:\DATA\1357-29\Disc\Order(ContRogs).wpd

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BOARHEAD FARM AGREEMENT GROUP,  :
               :
        Plaintiff,  :
               :
    v.          :  Civil Action No. 02-3830
               :
ADVANCED ENVIRONMENTAL   :
TECHNOLOGY CORPORATION, et al., :
               :
        Defendants. :

## MOTION OF DEFENDANT ASHLAND INC. TO STRIKE
## PLAINTIFF'S UNTIMELY AND IMPROPER OBJECTIONS TO
## ASHLAND'S INTERROGATORIES AND DOCUMENT REQUESTS,
## FIRST SETS, AND TO COMPEL MORE SPECIFIC RESPONSES THERETO

Defendant Ashland Inc., designated by Plaintiff as Ashland Chemical Company (hereinafter "Ashland"), by and through its undersigned counsel, hereby files this motion to strike Plaintiff's objections to Ashland's First Sets of Interrogatories and Document Requests, and to provide more specific responses thereto.

For the reasons set forth herein and in the attached Memorandum of Law in support of its Motion, Ashland respectfully requests that the Court grant Ashland's Motion.

Plaintiff's responses to Ashland's discovery requests violate several bright-line discovery rules. First, Plaintiff interposes bogus objections to what Plaintiff characterizes as "contention" interrogatories, and in doing so incorrectly invokes B. Braun Medical v. Abbot Laboratories, 55 F.R.D. 525, 527 (E.D.Pa. 1994), for support. B. Braun, however, actually supports Ashland's position that Plaintiff's objections are inappropriate here because, as to the matters forming the

subject matter of Ashland's purported "contention" interrogatories, Ashland's interrogatories simply seek information presumably in Plaintiff's possession <u>at the time it filed its Complaints against Ashland and the other defendants</u>. In any event, in contrast with <u>B. Braun</u>, as to the matters covered by Ashland's discovery requests, this litigation is in the latter stages of discovery. Moreover, Plaintiff BFAG served its own contention interrogatories on Ashland, which Ashland fully answered. Plaintiff's objection, therefore, runs afoul of <u>B. Braun</u>. In any event, Plaintiff's objections, asserted in an untimely manner, have been waived.

Second, Plaintiff has coyly avoided its obligation to specifically respond to Ashland's discreet interrogatories and document requests by summarily directing Ashland to <u>all</u> of the thousands and thousands of documents forming a massive document repository without identifying the particular documents among this mass of documents that are specifically responsive to Ashland's interrogatories and document requests at issue. This constitutes a blatant violation of Fed. R. Civ. P. 33(d) and the cases interpreting that Rule.

Third, Plaintiff objects to several interrogatories and document production requests that are patently unobjectionable, to which discovery requests Plaintiff must be directed to produce complete and attested answers.

Fourth, Plaintiff's "answers" to Ashland's interrogatories were unsworn, in violation of Fed. R. Civ. P. 33(b)(1).

Ashland, as herein certified by its undersigned counsel, has made a "good faith" effort to confer with Plaintiff's counsel to attempt to amicably resolve these discovery issues by addressing the inadequacy and impropriety of Plaintiff's responses in detail and in writing. Counsel for Plaintiff

2

served a somewhat pedantic letter response thereto, further evidencing Plaintiff's desire to completely avoid providing meaningful responses to the bulk of Ashland's discovery requests, including those seeking the facts and evidence supportive of Plaintiff's bare allegations against Ashland. The undersigned counsel for Ashland forwarded another letter to Plaintiff's counsel, dated December 15, 2004, in a further good faith attempt to resolve this discovery dispute, to which letter Plaintiff's counsel has not yet responded. Plaintiff's failure and refusal to provide meaningful responses to most of Ashland's discovery requests deprives Ashland of the discovery necessary to enable it to properly and fully defend itself in this litigation.

Accordingly, Defendant Ashland Inc. respectfully requests that this Honorable Court enter the attached proposed Order granting Ashland's Motion and further requests that the Court direct Plaintiff to reimburse Ashland for the reasonable costs and expenses incurred by it in the preparation and filing of its within Motion.

*Richard C. Biedrzycki*
RICHARD C. BIEDRZYCKI, ESQUIRE
Attorney I.D. No. 30604
PHELAN, PETTIT & BIEDRZYCKI
121 South Broad Street
Suite 1600
Philadelphia, PA 19107
(215) 546-0500

Counsel for Defendant Ashland Inc., designated by Plaintiff as Ashland Chemical Company

Date:    December 20, 2004

G:\DATA\1357-29\Disc\MotionStrikeContRogs.wpd

3

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BOARHEAD FARM AGREEMENT GROUP,     :
                                                 :
               Plaintiff,       :
                                                 :
        v.                           :       Civil Action No. 02-3830
                                                 :
ADVANCED ENVIRONMENTAL              :
TECHNOLOGY CORPORATION, ET AL.,       :
                                                 :
               Defendants.     :

**MEMORANDUM OF LAW OF DEFENDANT ASHLAND INC.
IN SUPPORT OF ITS MOTION TO STRIKE PLAINTIFF'S
UNTIMELY AND IMPROPER OBJECTIONS TO
ASHLAND'S INTERROGATORIES AND DOCUMENT REQUESTS,
FIRST SETS, AND TO PRODUCE MORE SPECIFIC RESPONSES THERETO**

Defendant Ashland Inc., designated by Plaintiff as Ashland Chemical Company (hereinafter "Ashland"), by and through its undersigned counsel, submits its within Memorandum of Law in Support of its Motion to Strike Plaintiff's Objections to Ashland's Interrogatories and Document Requests, First Sets, and to compel more specific responses thereto.

## I.    STATEMENT OF THE CASE

In its Complaint, Plaintiff has generally alleged that over a nine (9) year period from January 1969 through December 1977, hazardous wastes from Ashland and the many other defendants named in Plaintiff's Complaint and in its three Amended Complaints were transported to and disposed of at the Boarhead Farm, Bucks County site (the "Boarhead Farm Site"). Extensive documents produced and testimony developed in this case to date demonstrate that the relevant time period with respect to the disposal of Ashland's alleged wastes is no more than an eight (8) month

period between August 1976 and April 1977. A summary of the allegations made by Plaintiff against Ashland and a highlighting of the evidence adduced to date through discovery pertinent to Plaintiff's claims against Ashland is appropriate to an understanding of the propriety of the information sought by Ashland but which Plaintiff has avoided providing.

In or around the summer of 1976, Ashland was solicited by Defendant Advanced Environmental Technology Corporation ("AETC") for the transportation and disposal of certain chemical wastes generated at Ashland's Great Meadows, New Jersey Facility. Discussions between Ashland and AETC led to an arrangement with AETC for the disposal of certain Ashland wastes from Ashland's Great Meadow's Facility. DeRewal Chemical Company ("DCC") was a transporter that AETC thereafter retained to pick up and dispose of certain of Ashland's Great Meadows' wastes. The testimony and documents produced to date also demonstrate that the only Ashland facility from which DCC, as contracted by AETC, picked up and transported wastes was Ashland's Great Meadows specialty organic chemicals production plant. There has been absolutely no evidence produced to date, nor even any claim made by Plaintiff, that wastes from any Ashland facility other than the Great Meadows plant were arranged by AETC to be transported and disposed of, or were transported and disposed of, by DCC during the relevant time period or at any other time.

It has also been established that during the eight (8) month time period that DCC picked up and transported wastes from Ashland's Great Meadows facility, DCC (or one of its affiliated companies) owned and operated a chemical processing and disposal facility located on the banks of the Delaware River in the Wissinoming section of the City of Philadelphia (the "Wissinoming Facility"). In early 1977, the EPA, the Pennsylvania DEP, and the City of Philadelphia investigated reports of illegal dumping by DCC of bulk wastes from its Wissinoming Facility into the Delaware River. Those agencies' investigations resulted in the arrests of a number of DCC personnel

2

beginning on March 29, 1977. These individuals were convicted of criminal conduct in connection with the illegal dumping of wastes, including acid wastes from Ashland's Great Meadows facility, into the Delaware River. The Wissinoming Facility was then shut down, whereupon DCC stopped hauling and disposing of Ashland's wastes. DCC was thereafter billed by the City for unpaid sewer charges associated with its illegal dumping of wastes into the Delaware River from the Wissinoming Facility. **These wastes included the very Ashland wastes that Plaintiff has now alleged were dumped at the Boarhead Farm Site.**

Thereafter, the EPA began investigating charges of illegal waste dumping activity at the Boarhead Farm Site. Sworn testimony was taken by deposition in connection with the EPA's investigation. In responding to questions relating to DCC's disposal of wastes from Ashland's Great Meadows facility, all of the testifying Boarhead/DCC personnel, including DCC's truck drivers, testified at that time that all of the waste products picked up by DCC from the Great Meadows facility were transported to and disposed of at DCC's Wissinoming Facility and that <u>none</u> of those waste products were transported to or dumped at the Boarhead Farm Site. Ashland fully cooperated with the EPA and all other government investigators, including the Philadelphia District Attorney's office, and provided all information and documents requested with respect to its waste disposal activities and its associations with DCC, the Wissinoming Facility and the Boarhead Farm Site. The EPA and the DEP apparently concluded, based on its extensive investigation, that there was no basis for pursuing any claims against Ashland with respect to the cleanup of the Boarhead Farm Site as the evidence disclosed that any and all chemical wastes from Ashland's Great Meadows facility handled by DCC were disposed of at the Wissinoming Facility and not at the Boarhead Farm Site.

Despite the government's implicit exoneration of Ashland with respect to the Boarhead Farm Site, as supported by the extensive document production occurring prior to and during the course of Plaintiff's within contribution action and the testimony developed at the EPA's instance prior to the filing of this action establishing the absence of any proof that wastes from any Ashland facility were disposed of at the Boarhead Farm Site, counsel for Plaintiff in this case arranged for the taking of the depositions of many of the same former DCC employees who had testified earlier, including those who had previously given testimony exonerating Ashland from any association with the Site. Three of those witnesses -- former DCC truck drivers -- gave deposition testimony in 2003 in this case contradicting their earlier testimony with respect to, *inter alia*, the disposal of Ashland wastes and testified that they suddenly now "recalled" that some of the loads of acid waste picked up by them from Ashland's Great Meadows facility were transported to and disposed of at the Boarhead Farm Site, acknowledging, however, that the great majority of those wastes were disposed of at DCC's Wissinoming Facility.

The drivers' altered testimony as to the alleged disposal of some of Ashland's acid waste at the Boarhead Farm Site is not supported by <u>any</u> documents that Ashland has seen or by testimony or statements of <u>any</u> independent witnesses of which Ashland is aware. Plaintiff recently tried to elicit such testimony at depositions taken by Plaintiff's counsel of the principals of AETC, Robert Landmesser and John Leuzarder, as well as of the Ashland Great Meadows Facility plant manager, Arthur Curley. Plaintiff's efforts were completely unsuccessful as those witnesses, through their personal observations and otherwise, corroborated that Ashland's wastes, to their knowledge, went only to DCC's Wissinoming Facility. The recently altered, uncorroborated testimony of three former DCC drivers -- all convicted felons -- appears to form the crux of Plaintiff's claims against Ashland. Their testimony did not change, however, as to the fact that the only Ashland facility from which

4

DCC picked up wastes was the Great Meadows facility or the fact that the time period during which such wastes were picked up from that facility was limited to the period of late 1976 to early 1977.

In silent recognition of the fact that it has no basis for pursuing any claims against Ashland other than the recently altered testimony of these convicted felons, which testimony flies in the face of the extensive testimony and documents exonerating Ashland and its wastes with respect to the Boarhead Farm Site, Plaintiff's litigation strategy as to Ashland seems to now involve stonewalling discovery, in violation of the Rules of Civil Procedure, hoping that Ashland will simply rest on its laurels. Ashland, quite understandably, will not do so.

Specifically, Plaintiff has untimely objected to Ashland's First Sets of Interrogatories (Exh. "A") and Document Requests (Exh. "B"), has professed to "answer" other interrogatories by simply directing Ashland to the Boarhead Document Repository, and has balked at what Plaintiff incorrectly attempts to characterize as "overbroad" interrogatories which, in fact, are very narrowly tailored to seek particular information limited to the core issues involving Plaintiff's claims against Ashland. Each of these tactics employed by Plaintiff is improper and violates the letter and spirit of the Rules of Civil Procedure. Moreover, in contrast to Ashland which has, where appropriate, provided extensive discovery responses to all proper interrogatories and document requests propounded by Plaintiff, Plaintiff has failed to reciprocate as evidenced by its refusal to furnish any useful information in response to most of Ashland's discreet discovery requests, which requests will be discussed seriatim hereinafter. Ashland, by its undersigned counsel's letters dated November 12, 2004 (Exh. "C") and December 15, 2004 (Exh. "G"), has attempted, in good faith, to amicably resolve this discovery dispute. However, as reflected in its counsel's letter response of November 18, 2004 (Exh. "D"), Plaintiff remains quite inflexible in its positions and thus court intervention, unfortunately, cannot be avoided to resolve the dispute over Plaintiff's improper and inadequate responses to Ashland's written discovery requests.

## II.    PARTICULAR DISPUTED INTERROGATORIES AND DOCUMENT REQUESTS

### Interrogatories

**A.    Plaintiff's Objection to Ashland's Purported "Contention" Interrogatories As Premature is Improper as Well as Untimely and Must Be Stricken as a Matter of Law.**

Plaintiff has asserted an identical objection to each of the Interrogatory Nos. 1, 2 (a)-(f), 3-7 and 17, objecting to each of these interrogatories "insofar as it constitutes a contention interrogatory that calls for the Plaintiff to articulate theories of its case not yet fully developed and, as such, is premature." See Plaintiffs' Objections to Interrogatory Nos. 1, 2 (a)-(f), 3-7 (Exh. "A"). The Plaintiff's objection, in addition to being waived along with all of Plaintiff's other objections as untimely made,[1] is based on B. Braun Medical Inc. v. Abbott Laboratories, 155 F.R.D. 525, 527 (E.D. Pa. 1994). This objection is improper for several reasons.

First, Plaintiff misunderstands B. Braun which, ironically, actually highlights the impropriety of Plaintiff's objections here.   In B. Braun, the court held that objections to "contention" interrogatories may be appropriate where:

(1)    the contention interrogatory is overly broad or burdensome;

(2)    the litigation is in its early stages, with little or no discovery completed; and

(3)    answering the contention interrogatory would force the respondent to articulate theories of its case not yet fully developed.

**None of these conditions are present here.**  Ashland's interrogatories have not been

---

[1]    Plaintiff's responses, including any appropriate objections, to Ashland's interrogatories and document requests were due on August 15, 2004. Plaintiff served its responses on September 14, 2004, one month late.  No extension of time for Plaintiff to serve objections thereto was timely requested or agreed upon. Thus, all of Plaintiff's objections, in addition to being improper and unsupportable, are untimely and hence void. Fed. R. Civ. P. 33(b)(4). See also, Shepard v. General Motors Corp., 42 F.R.D. 425 (D.N.H. 1967); Cowie v. Continental Oil Co., 28 F.R.D. 384 (S.D.N.Y. 1961).

propounded in the early stages of this litigation, but only after extensive nexus and liability discovery, including multiple depositions, has already taken place and after Plaintiff has had ample opportunity to gather evidence pertaining to its claims.  Furthermore, Ashland's discovery requests do not require Plaintiff to go out and develop or discover new facts of which it is presently unaware, but rather to disclose facts and evidence that it currently possesses and that it relies upon in support of its very own allegations.  Ashland's interrogatories are specifically tailored to these allegations and are not overbroad, general, unduly burdensome or open-ended.  Ashland is entitled to the information sought to enable it to further understand and investigate the factual bases of Plaintiff's claims against it to enable Ashland to effectively pursue further investigation and discovery, as necessary, within the time parameters set by the Court.  As such, Ashland's Interrogatories and Document Requests are clearly distinguishable from those which the Court did not require be answered in B. Braun.

As the disputed interrogatories reflect, Ashland does not seek to have Plaintiff make final decisions as to whether it will make certain contentions in this case or to articulate theories that Plaintiff has not yet had sufficient opportunity to develop.  Rather, the interrogatories mostly relate to specific allegations made by Plaintiff in its Third Amended Complaint.  Plaintiff has sued Ashland and in doing so has made specific allegations against it as well as against other Defendants.  Clearly, Ashland is entitled to know the factual bases for Plaintiff's allegations against it.  No discovery could be more relevant or appropriate.

Plaintiff's contention that what Plaintiff characterizes as "contention" interrogatories are premature did not stop the Plaintiff from serving its own contention interrogatories on Ashland. See, e.g., Plaintiff's "contention" Interrogatory No. 10 addressed to Ashland (Exh. "E"), to which interrogatory Ashland provided a full and complete response, in stark contrast to Plaintiff's

responses to Ashland's interrogatories seeking the factual bases for the specific averments made by Plaintiff in its most recent Amended Complaint. Clearly, Plaintiff's untimely objections to Ashland's so-called "contention" interrogatories based on their purported prematurity is improper and must be stricken.[2]

**B.    General Designation of Voluminous Non-Specific Documents in Lieu of Answers to Interrogatories**

Plaintiff has avoided providing any meaningful information in response to most of Ashland's Interrogatories while attempting to make it appear that it has answered a number of those interrogatories by making general references to voluminous documents in the Boarhead Document Repository and/or documents located at the Pitney Hardin firm in Florham Park, New Jersey. Such responses are insufficient in that such practice of global designation of voluminous documents in lieu of tailored responses is specifically prohibited by the Rules.

Plaintiff cannot properly seek to invoke Fed. R. Civ. P. 33(d) in support of its responses to Ashland's discovery through global references to a massive volume of documents. Rule 33(d) permits a party to respond to interrogatories by referring to specific records containing the specific information sought. However, as the Rule specifically provides, such a response must be set forth in sufficient detail to permit the interrogating party to readily locate and identify the specific records from which the answer to the interrogatory may be ascertained. The Advisory Committee to the Rule specifically noted that an interrogatory response, such as those untimely propounded by

---

[2]    Furthermore, in order to afford Plaintiff even more time to attempt to develop factual support for its claims against Ashland, Ashland has refrained from filing its within motion while Plaintiff was pursuing depositions of AETC and Ashland personnel, which depositions were taken on November 22, November 29, December 6 and December 9, 2004. Thus, Plaintiff no longer has any arguable basis for further delaying its responses to Ashland's purported "contention" interrogatories and document requests on the ground of their purported prematurity.

Plaintiff here, that merely directs a party to a mass of records is an abuse of the option provided by Rule 33(d) to designate specific records in lieu of formal answers. In fact, such an attempted referral to a mass of records may result in the preclusion of evidence at trial by the party making such a mass document referral. See In Re Fine Paper Antitrust Litigation, 685 F.2d 810 (3rd Cir. 1982).

Accordingly, this Court must compel the Plaintiff to provide more specific detailed responses to Ashland's interrogatories by providing the specific information sought therein. If the information sought by Ashland is contained in specific discreet documents and Plaintiff wishes to designate those documents as constituting its answer in lieu of a narrative response, Plaintiff must specifically identify, designate and produce the particular documents, including a designation of any Bates numbers stamped thereon, in which the specific information sought by each interrogatory can be readily found.

### C.    Specific Interrogatories (Exh. "A")

In addition to striking the Plaintiff's objections to purportedly premature contention interrogatories and ordering the Plaintiff to comply with Rule 33(d), Ashland further requests the Court to strike the Plaintiff's other groundless objections and order Plaintiff to more specifically respond, under oath,[3] to certain of Ashland's interrogatories as follows:

### 1.    Interrogatory No. 1

Ashland's Interrogatory no. 1 seeks, quite simply, the factual basis upon which it was sued by the Plaintiff insofar as it requests Plaintiff to identify all shipments of hazardous wastes from Ashland that Plaintiff contends were disposed of at the Boarhead Farm Site along with the identification of documents relating to such shipments. Subject to its improper and dilatory

---

[3]    Plaintiff's "answers" to Ashland's interrogatories were unsworn, in violation of Fed. R. Civ. P. 33(b)(1).

"prematurity" objection addressed above, Plaintiff responded that the information regarding Ashland wastes removed by DCC from Ashland is set forth in the Ashland, AETC and Southland document production contained in the Boarhead Document Repository. In its November 18, 2004 letter response (Exh. "D") to Ashland's counsel's November 12, 2004 letter (Exh. "C") seeking more specific answers by Plaintiff to certain of Ashland's interrogatories, Plaintiff's counsel stated that "Ashland is well aware of the evidentiary basis concerning Ashland's transactions with AETC and AETC's transactions with DCC. Indeed, Ashland is in itself in possession of that information. . . ." Plaintiff's counsel goes on to generally refer to the entire administrative record of the EPA proceedings relating to the Boarhead Farm Site. Moreover, Plaintiff's counsel makes a statement that "Ashland is also aware that drums or drum fragments bearing Ashland Chemical labels were excavated at the Site of part of the OU-2 activities."

First, statements of this nature by Plaintiff's counsel in purported answer to an interrogatory should have been set forth by Plaintiff in its answer to Ashland's Interrogatory. They were not. Second, as set forth above, if Plaintiff chooses to respond to an interrogatory by designating documents, it must make <u>specific</u> reference to the <u>particular</u> documents that contain the <u>specific</u> information requested in each specific interrogatory. Plaintiff's evasive response to this interrogatory can only leave Ashland guessing as to what facts, documents and other evidence Plaintiff may have to support the very core averments that it has made in its Complaint and Amended Complaints that hazardous wastes from an Ashland facility were disposed of at the Boarhead Farm Site. As stated above, Ashland has no information or knowledge of any alleged disposal of its wastes at the Boarhead Farm Site other than the challenged uncorroborated and unsubstantiated recently altered testimony of three DCC truck drivers whose recently altered testimony is at total variance with their prior sworn testimony that none of Ashland's wastes went

to the Boarhead Farm Site. Ashland asks no more than that Plaintiff provide the factual basis for its claims, other than such compromised testimony of these three drivers. If Plaintiff is not aware of any such other evidence, it should simply so state in a formal written response to Ashland's interrogatory, which response Plaintiff always has the right to supplement or amend should it obtain or acquire additional information rendering its present response incomplete or inaccurate.[4]

### 2.    Interrogatory No. 2

In its Third Amended Complaint (Exh. "F"), Plaintiff alleges in paragraph 14 thereof that "on or about November 18, 1998, the USEPA issued a Record of Decision (the "ROD") selecting a remedial action for the Site." Thereafter, as Ashland reads paragraphs 15 through 24 of Plaintiff's pleading, Plaintiff alleges, in summary, that its members agreed to fund and conduct the Remedial Action Plan described in the ROD, to incur costs associated therewith and to reimburse the EPA for costs it incurred in connection with the cleanup of the Site. It is for such alleged response costs that Plaintiff seeks recovery in this action. Yet Plaintiff has objected to Interrogatory No. 2 requesting Plaintiff to simply identify and provide limited additional information relevant to the hazardous substances, including, inter alia, the generators, transporters and arrangers for the disposal thereof, which the EPA, in its ROD, directed be cleaned up and which Plaintiff has agreed to clean up. Plaintiff's untimely objection that this interrogatory is somehow vague and ambiguous is as wrong as it is cynical. In its response, Plaintiff states that the "EPA did not direct the ROD to clean up any

---

[4]    In his letter (Exh. "D"), Plaintiff's counsel also makes reference to certain unidentified drums purportedly bearing Ashland labels that were purportedly unearthed at the Site. In addition to any information Plaintiff is aware of as to Ashland bulk wastes, Ashland is also entitled to a full and complete response to its interrogatory with respect to such alleged drums and any purported wastes that Plaintiff might be contending leaked or were spilled therefrom. Ashland cannot be expected to accept a terse, fact-deprived, one sentence comment by Plaintiff's counsel in a letter in lieu of a specific response to Ashland's interrogatory.

11

hazardous substance." It is quite clear that what this interrogatory seeks, as clarified by Ashland's counsel in his letter of November 12, 2004 (Exh. "C"), is the identity of the particular hazardous substances to be cleaned up as directed by the EPA. This interrogatory seeks no more than the factual flesh behind what Plaintiff has alleged in its Complaint.

Nothing can be more relevant to the claims and defenses at issue in this action than the information herein sought by Ashland in this Interrogatory. To the extent that Plaintiff believes that this Interrogatory is overly burdensome because records from which this information can be obtained are publicly available, then all that Plaintiff needs to do is to more specifically designate the particular documents which it contends are publicly available and which purportedly contain the discreet information sought by the Interrogatory so that Ashland can readily identify, obtain and review those documents. Ashland is entitled to know the specific documents responsive to its Interrogatory which Plaintiff appears to contend are somewhere among a mass of documents only generally referenced by Plaintiff in its clearly deficient response. Such mass document referral such as that made by Plaintiff here, in addition to violating Rule 33(d), does not provide Ashland with an adequate roadmap to enable it to find the specific information to which it is entitled.

With respect to Plaintiff's objection to the information requested in subpart (i) of this Interrogatory seeking the identity of persons with information or knowledge regarding the transportation and arrangement of hazardous substances as purportedly seeking privileged information, clearly this subpart does not require the disclosure of any potentially privileged information. Ashland is unquestionably entitled to know the identity of all individuals that Plaintiff, including its attorneys, believe have relevant information and knowledge. Alternatively, Ashland asks the Court to order Plaintiff to submit a privilege log for any information and documents not being produced by it, including a summary of the particular bases for any claim of privilege, so that

12

Ashland can determine the propriety of such privilege claims and seek appropriate relief, if necessary.

### 3.    Interrogatory Nos. 3, 4, 5, 8, 9 and 14

Through these interrogatories, Ashland seeks to have Plaintiff produce an itemization of past and currently existing estimates of future, response costs and the identification of the substances being remediated for which such costs have been and are being incurred. Such information is indisputably relevant. Moreover, information as to Plaintiff's future response costs is equally relevant insofar as Plaintiff is professedly seeking, inter alia, a determination in this action of each defendant's equitable share of such future response costs. As to such future costs, Ashland has informed Plaintiff's counsel that it would be willing to accept, at this time, a supplemental answer which sets forth the equitable shares of each party that Plaintiff presently believes is appropriate, including the shares of each settling and non-settling defendant and of each member of the Plaintiff group, along with a statement of the factual bases for such apportionment (see Exh. "C"). Plaintiff is apparently unwilling to accept Ashland's proposed resolution, and thereafter Ashland submits that it is immediately entitled to the cost information requested, the relevance of which cannot be disputed as it is such costs for which Plaintiff is seeking contribution from the defendants in this action.

Relatedly, with regard to certain schedules of costs and invoices, as referenced in Plaintiff's answers to these interrogatories, and other materials as referenced in Plaintiff's counsel's letter (Exh. "D"), Plaintiff must specifically designate the particular documents among the mass of records in the Document Repository which contain the information Plaintiff believes is responsive to this Interrogatory and to which Plaintiff makes reference. This should be easy to do, yet Plaintiff

remains inexplicably intransigent.[5]

### 4.    Interrogatory Nos. 11, 12 and 13

Ashland requests that Plaintiff specifically provide the information sought by setting forth the dollar amounts of the response costs and attorney's fees claimed by Plaintiff in this action. At a minimum, Plaintiff must make reference to the specific documents in the Repository, at Pitney Hardin or elsewhere, in which the information requested by these unquestionably proper Interrogatories can be found. While Plaintiff's counsel makes reference in his letter (Exh. "D") to the availability of certain records purportedly responsive to these Interrogatories, such response should be set forth formally in sworn answers.

### 5.    Interrogatory Nos. 15, 16 and 18

Plaintiff seems to overlook the fact that these interrogatories seek responses on behalf of each BFAG member. Plaintiff has responded to these interrogatories as though they merely sought responses on behalf of the fictional entity that the Plaintiff group members have dubbed, for purposes of this action, the "Boarhead Farm Agreement Group." At a minimum, it is unclear whether Plaintiff's responses are identical for each member of the Plaintiff "group", and Plaintiff's counsel's letter (Exh. "D") has done nothing to clarify Plaintiff's responses. Accordingly, Ashland respectfully requests that Plaintiff be ordered to provide amended and supplemental responses to these interrogatories on behalf of each BFAG member, not just on behalf of the Plaintiff association, and to specifically state that it is doing so.

Furthermore, Ashland takes issue with Plaintiff's evasive response that it has "no independent

---

[5]    In his November 18, 2004 letter (Exh. "D"), Plaintiff's counsel refers specifically to his two earlier e-mailed documents as at least partially responsive to these interrogatories. If these documents represent Plaintiff's answer to these Interrogatories, Plaintiff should so state by way of a formal sworn answer and not by way of an informal unsworn letter.

14

knowledge" of any of its own hazardous substances disposed of at the Boarhead Farm Site. These interrogatories do not limit the information sought to information of which Plaintiff or the members thereof have "independent knowledge." Rather, this interrogatory seeks <u>all</u> information possessed by Plaintiff, including that of each member of the BFAG group and their respective representatives. Moreover, it is inconceivable that the BFAG members would have entered into a cleanup agreement with the EPA without being presented with, or without having independently obtained, such information. Plaintiff would not be in court seeking contribution from the Defendants had the Plaintiff members not agreed to clean up the Boarhead Farm Site, which agreement could only have come about by the Plaintiff members' recognition, based on factual information possessed by them and of which Ashland herein seeks the disclosure, that their hazardous wastes found their way to the Boarhead Farm Site. Furthermore, these Interrogatories are not "vague" as baldly asserted by Plaintiff in its responses to these Interrogatories which seek, *inter alia*, information as to each disposal site of the wastes of each BFAG member during the relevant time period (Interrogatory No. 15). Ashland respectfully submits that Plaintiff's responses to these Interrogatories are wholly inadequate and that Plaintiff should be ordered to provide full and meaningful responses thereto.

### Document Requests

### A.    Designation of Mass Records

For the reasons set forth in Paragraph II.B. above, Ashland objects to Plaintiff's attempt to respond to Ashland's discovery requests by making general references to a mass of documents such as the documents in the Repository and/or located at a remote location in Linden, New Jersey, <u>i.e.</u> at the offices of the New Jersey law firm of Pitney Hardin Kipp and Szuch. This practice abuses Rule 33(d) and violates <u>In Re Fine Paper Antitrust Litigation</u>, <u>supra</u>. Accordingly, Ashland submits

15

that this Court should order the Plaintiff to amend and supplement its responses by designating the specific documents, including a designation of the Bates numbers thereof, which are responsive to each of Ashland's document requests. Certainly, Plaintiff cannot seriously expect Ashland to be required to sift through many hundreds of boxes and files containing tens of thousands of records to try to locate what may be just a handful of documents responsive to particular discreet document requests, and then guess as to which documents Plaintiff believes are responsive to Ashland's document requests.

B.     **Specific Document Requests (Exh. "B")**

In addition to Ashland's request that the Court strike Plaintiff's untimely general objections to Ashland's document requests and that it direct Plaintiff to serve amended and supplemental responses by specifically designating the particular documents responsive to each request, Ashland further requests that the Court strike Plaintiff's other untimely objections and order the Plaintiff to more specifically respond to the following document requests:

1.     **Request No. 1**

This request seeks the production of statements relative to matters addressed in Plaintiff's pleadings. In its response, Plaintiff makes only a general reference to unidentified privileged documents and refers to unidentified documents created by others, who are also not identified, and undefined deposition transcripts. This response is clearly inadequate. The Plaintiff should be directed to specifically identify all responsive documents and, as to depositions, itemize the deposition transcripts referred to in Plaintiff's response by the name of the deponent, the date of each deposition, and the case name, court and docket number thereof. With respect to Plaintiff's reference in its response to potentially privileged documents, Plaintiff must specifically identify all such documents and set forth the bases for each claim of privilege sufficient to enable Ashland to

16

evaluate whether a privilege may apply and to pursue a court ruling thereon, if necessary.

      2.     **Request No. 5**

To the extent that Plaintiff has or will be producing documents in response to other

defendants' interrogatories and document requests, Ashland requests no more than that Plaintiff so

state by way of a formal response to this request, followed by the production of such documents or

making them available for inspection by Ashland's counsel. Plaintiff should be directed to make

specific reference to the particular responsive documents among those in the Boarhead Document

Repository, among the Pitney Hardin documents, or at any other accessible location sufficient to

enable Ashland to readily identify, locate and review the particular responsive documents.

      3.     **Document Request Nos. 6, 7 and 8**

These requests seek the production of investigation files relating to the generation,

transportation and disposal by Ashland, by Plaintiff and by all others of hazardous substances at the

Boarhead Farm site. Plaintiff's untimely objection that such a common request for the production

of "investigation files" is vague, confusing or ambiguous is patently absurd, as is Plaintiff's objection

that Ashland's requests are "overly broad and burdensome." Furthermore, this document request

does not, as Plaintiff contends, seek the production of attorney work product materials but only

documents not prepared by Plaintiff's counsel in anticipation of litigation or in preparation for trial.

Clearly, documents created by others as well as deposition transcripts of persons unaffiliated with

the Plaintiff cannot constitute attorney work product. Furthermore, to the extent that Plaintiff refers

to EPA investigation documents in its response, Ashland again requests that Plaintiff provide a

specific designation of the particular responsive documents that are purportedly contained within

the mass of documents in the Boarhead Document Repository, at Pitney Hardin or elsewhere. To

the extent that Plaintiff claims a privilege with respect to any otherwise responsive documents, such

claims must be set forth in detail for each document withheld.

### 4.    Request No. 10

With respect to this Request seeking documents embodying or referring to communications between Plaintiff, the members of BFAG, and the relevant government agencies and others, this request is specifically limited to documents involving communications that relate to the presence and clean up of hazardous substances at the Boarhead Farm Site. Again, Plaintiff's claim that this request is "vague, confusing and ambiguous" or "overly broad and burdensome" as asserted by Plaintiff in its response is unfounded. The documents requested are clearly relevant and this request is reasonably calculated to lead to the discovery of admissible evidence.

To the extent that Plaintiff is withholding the production of documents under a claim of privilege, Plaintiff must identify such documents and provide the bases for its claim of privilege relative thereto so that such claim can be evaluated and an appropriate motion be presented, if necessary.

### 5.    Request No. 11

This Request is not in any way vague, confusing, ambiguous, overly broad or unduly burdensome. Plaintiff should be readily able to specifically identify and produce, or specifically designate, all documents relating to "agreements entered into by BFAG relating to the clean up of the Site." To the extent that Plaintiff is withholding any responsive documents subject to a claim of privilege, again, Plaintiff must specifically identify such withheld documents and set forth, in appropriate detail, the bases for its privilege claims.

### 6.    Request No. 12

This request is not in any way vague, confusing or ambiguous as asserted by Plaintiff in its Response. This request is clearly directed to the production of all documents that designate or refer

18

to BFAG, including its members, as Potentially Responsible Parties with respect to the Boarhead Farm Site. Obviously, had the BFAG members not been so designated, they would not have entered into an agreement with EPA to clean up the Site. Plaintiff's counsel's letter of November 18, 2004 (Exh. "D") asking Ashland to identify "what categories of documents" it is seeking is most confusing as Plaintiff well knows that Ashland has not limited its Request to any certain "categories" of documents.

7.    **Request No. 15**

Plaintiff's untimely objection that this Request, which seeks all documents relating to the alleged presence of Ashland's waste materials at the Boarhead Farm Site, is unintelligible, overly broad and burdensome, and completely groundless. This request seeks documents going to the very heart of Plaintiff's claims and allegations against Ashland in this case. Moreover, if Plaintiff contends that certain responsive documents can be found in the Boarhead Document Repository, at Pitney Hardin or elsewhere, the particular responsive documents among the tens of thousands of documents referenced by Plaintiff should be specifically identified so that Ashland is provided a reasonable opportunity to locate and inspect them. Also, to the extent that Plaintiff is withholding any documents from production pursuant to a claim of privilege, Plaintiff must specifically identify all such documents being withheld and state the detailed bases for Plaintiff's assertion of privilege so that Ashland can evaluate such assertion and present the matter to the court for a ruling, if necessary.

8.    **Request Nos. 16 and 17**

These requests are specifically limited to seeking the same types of documents sought in Ashland's request no. 15, but with respect to waste materials deposited at the Boarhead Farm Site that were generated, transported or disposed of by entities or persons other than Ashland including,

19

but not limited to, members of BFAG and the other defendants. Plaintiff's responses are the same as its inadequate responses to Ashland's Document Request No. 15. Accordingly, Ashland's comments as set forth above with respect to its Document Request No. 15 are equally applicable to these Requests and are incorporated herein by reference.

## III.    CONCLUSION

For all of the foregoing reasons, Defendant Ashland Inc. respectfully requests that this Court enter the attached proposed Order granting Ashland's Motion to Strike Plaintiff's Untimely and Improper Objections to Ashland's Interrogatories and Document Requests and to Compel Plaintiff to Produce More Specific Responses thereto.

Respectfully submitted,

*Richard C. Biedrzycki*
RICHARD C. BIEDRZYCKI, ESQUIRE
Attorney I.D. No. 30604
PHELAN, PETTIT & BIEDRZYCKI
121 South Broad Street
Suite 1600
Philadelphia, PA 19107
(215) 546-0500

Counsel for Defendant Ashland Inc.,
designated by Plaintiff as
Ashland Chemical Company

Date:    December 20, 2004

G:\DATA\1357-29\Disc\MoLMotionStrikeContRogs.wpd

20

# EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BOARHEAD FARM
AGREEMENT GROUP,

                 Plaintiff,

      v.

ADVANCED ENVIRONMENTAL
TECHNOLOGY CORPORATION, et al.,


                Defendants

:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 02-CV-3830

## OBJECTIONS AND RESPONSES OF PLAINTIFF BOARHEAD FARM AGREEMENT GROUP TO FIRST SET OF INTERROGATORIES OF DEFENDANT ASHLAND INC., DESIGNATED BY PLAINTIFF AS ASHLAND CHEMICAL COMPANY, ADDRESSED TO PLAINTIFF

Plaintiff Boarhead Farm Agreement Group ("Plaintiff"), by its undersigned

attorney, objects and responds to the First Set of Interrogatories of Defendant Ashland, Inc.,

Designated by Plaintiff as Ashland Chemical Company, Addressed to Plaintiff ("First Set of

Interrogatories"), as follows:

I.    **GENERAL OBJECTIONS**

    1.  Plaintiff objects to each interrogatory to the extent that it seeks information not in

Plaintiff's possession, custody or control.

    2.  Plaintiff objects to each interrogatory to the extent that it seeks information already in

the possession, custody or control of Ashland Chemical Company ("Ashland").

    3.  Plaintiff objects to each interrogatory to the extent that it seeks information which is

publicly available and, thus, to which Ashland has the same access as Plaintiff.

4. Plaintiff objects to each interrogatory to the extent that it seeks information protected by the attorney-client privilege or any other applicable privilege. Any inadvertent disclosure of privileged information shall not constitute a waiver of the attorney-client or any other applicable privilege.

5. Plaintiff objects to each interrogatory to the extent that it seeks the discovery of the mental impressions, conclusions, opinions or legal theories of its attorneys or other representatives. Any inadvertent disclosure of work product shall not constitute a waiver of any work product protection.

6. Plaintiff objects to each interrogatory to the extent that it is unlimited in time or scope.

7. Plaintiff objects to each interrogatory to the extent that it is unduly burdensome or designed to be harassing.

8. Plaintiff objects to each interrogatory to the extent that it is vague or ambiguous.

## II.    INTERROGATORIES AND RESPONSES

Subject to and without waiving the foregoing General Objections, Plaintiff makes the following responses to the First Set of Interrogatories:

1.    Identify each shipment of Hazardous Substances Plaintiff contends was generated and/or transported to and disposed of at the Site by or on behalf of Ashland and, for each such shipment, provide the following:

      a.    the precise nature of each type of Hazardous Substance;

      b.    the date of each shipment;

      c.    the location and the identity of the owner and operator of each Ashland facility from which each shipment was transported to and disposed of at the Site;

      d.    the identity of the transporter of each shipment;

e.     the identity of each arranger, if any, of each shipment;

f.     the identity and employer of the driver of the transport vehicle;

g.     the volume of each type of Hazardous Substances transported to and
       disposed of at the Site;

h.     the type and identity of each tank wagon, drum, vessel or other container
       in which each Hazardous Substance was transported to and disposed of at
       the Site;

i.     the manner in which each Hazardous Substance was disposed of at the Site
       and the exact location at the Site at which each was disposed;

j.     the identity of all persons believed by Plaintiff to have information or
       knowledge about the transportation to and disposal of each Hazardous
       Substance at the Site;

k.     the identity of any and all documents evidencing, referring or relating to
       each shipment;

l.     for each party whom Plaintiff has identified as an arranger in response to
       Interrogatory no. l(e) above:

       (i)     the date(s) on which each such arranger agreed to and/or did
               arrange for the transportation and disposal of each shipment at the
               Site;

       (ii)    the exact nature and type of each Hazardous Substance which each
               such entity arranged to be transported and/or disposed of at the
               Site;

       (iii)   the identity of any and all documents evidencing, referring or
               relating to each such arrangement; and

       (iv)    any and all documents evidencing, referring or relating to the
               transportation to and disposal of each Hazardous Substance at the
               Site as arranged by each such arranger.

**RESPONSE:** Plaintiff further objects to this interrogatory insofar as it constitutes a

contention interrogatory that calls for the Plaintiff to articulate theories of its case not yet

fully developed and, as such, is premature. *See B. Braun Medical, Inc. v. Abbott*

*Laboratories,* 155 F.R.D. 525, 527 (E.D. Pa. 1994). Subject to and without waiving the

foregoing objection, Plaintiff responds that information concerning the Ashland waste

containing Hazardous Substances that DCC removed from Ashland, including information

concerning some or all of the information requested in the subparts to this interrogatory, is

reflected in the Ashland/AETC and Southland documents located in the Boarhead

Document Repository at the offices of Ballard Spahr Andrews & Ingersoll, LLP, 1735

Market Street, Philadelphia, PA 19103 ("the Boarhead Document Repository").

    2.    Identify with specificity each type of Hazardous Substance which the EPA's ROD

referred to in K 14 of Plaintiff's Third Amended Complaint was specifically directed by the EPA

to be cleaned up and, for each type of Hazardous Substance:

RESPONSE: Plaintiff further objects to Interrogatory No. 2 as vague and ambiguous

insofar as EPA did not direct the ROD to clean up any Hazardous Substance. Plaintiff

further objects to Interrogatory No. 2 as unduly burdensome insofar as it requires Plaintiff

to conduct a search of publicly available documents that are equally as accessible to

Ashland as to Plaintiff, and refers Ashland to the same. Plaintiff further objects that the

EPA's ROD is a document that, as such, speaks for itself.

    a.    identify each person or entity that Plaintiff contends generated each
        Hazardous Substance;

RESPONSE: Plaintiff objects to this interrogatory insofar as it constitutes a contention

interrogatory that calls for the Plaintiff to articulate theories of its case not yet fully

developed and, as such, is premature. *See B. Braun Medical, Inc. v. Abbott Laboratories,*

155 F.R.D. 525, 527 (E.D. Pa. 1994).

    b.    identify each person or entity that Plaintiff contends transported to and
        disposed of each Hazardous Substance at the Site;

RESPONSE: Plaintiff objects to this interrogatory insofar as it constitutes a contention

interrogatory that calls for the Plaintiff to articulate theories of its case not yet fully

developed and, as such, is premature. *See B. Braun Medical, Inc. v. Abbott Laboratories,*

155 F.R.D. 525, 527 (E.D. Pa. 1994).

      c.    the identity of each person or entity that Plaintiff contends arranged for the transportation to and disposal of each Hazardous Substance at the Site;

RESPONSE: Plaintiff objects to this interrogatory insofar as it constitutes a contention

interrogatory that calls for the Plaintiff to articulate theories of its case not yet fully

developed and, as such, is premature. *See B. Braun Medical, Inc. v. Abbott Laboratories,*

155 F.R.D. 525, 527 (E.D. Pa. 1994).

      d.    the date(s) Plaintiff contends or believes each Hazardous Substance was transported to and disposed of at the Site;

RESPONSE: Plaintiff objects to this interrogatory insofar as it constitutes a contention

interrogatory that calls for the Plaintiff to articulate theories of its case not yet fully

developed and, as such, is premature. *See B. Braun Medical, Inc. v. Abbott Laboratories,*

155 F.R.D. 525, 527 (E.D. Pa. 1994).

      e.    the volume of the Hazardous Substance Plaintiff contends was transported to and disposed of at the Site on each occasion;

RESPONSE: Plaintiff objects to this interrogatory insofar as it constitutes a contention

interrogatory that calls for the Plaintiff to articulate theories of its case not yet fully

developed and, as such, is premature. *See B. Braun Medical, Inc. v. Abbott Laboratories,*

155 F.R.D. 525, 527 (E.D. Pa. 1994).

      f.    the identity of all documents evidencing, referring or relating to the EPA's directive that each type of Hazardous Substance be cleaned up from the Site;

RESPONSE: Plaintiff incorporates by reference its response to Interrogatory No. 2.

      g.    the identity of all documents evidencing, referring or relating to the transportation to and disposal of each shipment of Hazardous Substances to the Site;

**RESPONSE:** Plaintiff further objects to this interrogatory as overly broad and unduly burdensome insofar as it requests Plaintiff to identify all of the specified documents pertaining to "each shipment" of Hazardous Substances to the Site.

> h.    the identity of all documents evidencing, referring or relating to the arrangement by any person or entity for the shipment of each Hazardous Substance to the Site; and

**RESPONSE:** Plaintiff further objects to this interrogatory as overly broad and unduly burdensome. Without waiving any such objections, documents reflecting the arrangement for shipment of Hazardous Substances to the Site are located in the Boarhead Document Repository at the Offices of Ballard Spahr Andrews & Ingersoll, LLP, 1735 Market Street, Philadelphia, PA 19103. By way of further response, such documents may be included in documents located at Pitney Hardin, 200 Campus Drive, Florham Park, New Jersey 07932. Such non-privileged documents are available for inspection and copying upon reasonable notice.

> i.    the identity of all persons believed by Plaintiff to have information or knowledge about the transportation and disposal, or arrangement for the transportation and disposal, of each Hazardous Substance to the Site and provide a summary of the information or knowledge each such person is believed to possess.

**RESPONSE:** Plaintiff further objects that this request seeks information protected by the attorney-client and/or common interest privileges and/or the work product doctrine. By way of further objection, this request is overly broad and burdensome. Without waiving any such objections, Plaintiff directs Ashland to the documents concerning Site response activities located in the Boarhead Document Repository at the offices of Ballard Spahr Andrews & Ingersoll, LLP, 1735 Market Street, Philadelphia, PA 19103. By way of further response, such documents may be included in documents located at Pitney Hardin, 200 Campus Drive, Florham Park, New Jersey 07932. Such non-privileged documents are

available for inspection and copying upon reasonable notice. By way of further response,

Kenneth Gross, a mechanic for various DeRewal entities who may have such knowledge,

lives at 53 Byers Road, Ottsville, PA 18944 and has a phone number of 610-847-5717. By

way of further response, John Coleman, an Echo worker at the Revere facility who may

have such knowledge, lives at 2555 Keiser Rd., Quakertown, PA 18951 and has a phone

number of 215-536-2029. By way of further response, David F. Michelman, Esquire, 2207

Chestnut St., Philadelphia, PA 19103, (215) 557-9440 and Thomas Healey, City of

Philadelphia, (215) 592-6233 have knowledge of the creation of the July 5, 1978 letter to

Manfred DeRewal from the Philadelphia Water Department alleging DCC disposal of

wastes at the Wissinoming Industrial Park.

      3.     Set forth with particularity and itemize the response costs allegedly incurred by

Plaintiff for OU-1 activities as a result of the alleged releases of Hazardous Substances from the

Site and, with respect to such costs:

      a.     set forth the exact amount and/or percentage of the Hazardous Substances
transported to and disposed of, or arranged to be transported to and
disposed of, at the Site by each Defendant, each member of BFAG, and
each other person or entity;

      b.     set forth with particularity Plaintiffs estimate of the response costs it
contends it will or probably will incur in the future as a result of alleged
releases of Hazardous Substances disposed of at the Site and identify any and all
documents evidencing, referring or relating to such estimated response costs;

      c.     the identity of all documents evidencing, referring or relating to such
response costs; and

      d.     the identity of all witnesses believed by Plaintiff to have information or
knowledge relating to such response costs and set forth a summary of the
information or knowledge each is believed to possess.

RESPONSE: Plaintiff further objects that, with respect to future response costs, it is

seeking a declaration of each defendant's equitable share of all necessary costs of response

as incurred in the future by it consistent with the national contingency plan, and not a

money judgment for any estimate of such costs.  To the extent this interrogatory seeks

plaintiff's current estimates of such costs or information and documents related to such

estimates, it seeks information that is neither relevant nor will lead to the discovery of

admissible evidence.  By way of further objection, this interrogatory constitutes a

contention interrogatory that calls for the Plaintiff to articulate theories of its case not yet

fully developed and, as such, is premature.  *See B. Braun Medical, Inc. v. Abbott*

*Laboratories,* 155 F.R.D. 525, 527 (E.D. Pa. 1994).  Without waiving any such objections,

pursuant to Fed. R. Civ. P. 33(d), the information sought in this interrogatory about

response costs incurred to date by Plaintiff can be derived or ascertained from schedules of

such costs and invoices reflected on those schedules, all of which are located in the

Boarhead Document Repository at the Offices of Ballard Spahr Andrews & Ingersoll, LLP,

1735 Market Street, Philadelphia, PA 19103.

     4.    Set forth with particularity and itemize the response costs allegedly incurred by

Plaintiff for OU-2 activities as a result of the alleged releases of Hazardous Substances from the

Site and, with respect to such costs:

          a.    set forth the exact amount and/or percentage of the Hazardous Substances
transported to and disposed of, or arranged to be transported to and
disposed of, at the Site by each Defendant, each member of BFAG, and
each other person or entity;

          b.    set forth with particularity Plaintiffs estimate of the response costs it
contends it will or probably will incur in the future as a result of alleged
releases of Hazardous Substances disposed of at the Site and identify any and all
documents evidencing, referring or relating to such estimated response costs;

          c.    the identity of all documents evidencing, referring or relating to such
response costs; and

      d.      the identity of all witnesses believed by Plaintiff to have information or knowledge relating to such response costs and set forth a summary of the information or knowledge each is believed to possess.

**RESPONSE:** *See* response to Interrogatory No. 3.

     5.     Set forth with particularity and itemize the response costs allegedly incurred by Plaintiff for threatened releases or discharges of Hazardous Substances at the Site and state the amount of such costs which Plaintiff contends were incurred as a result of the transportation to and disposal of, or the arrangement for transportation to and disposal of, Hazardous Substances at the Site by each Defendant, each member of BFAG, and each other person or entity.

**RESPONSE:** *See* response to Interrogatory No. 3.

     6.     Does Plaintiff contend that Ashland had prior knowledge that Hazardous Substances generated by it would be transported to and disposed of at the Site and, if so, state:

      a.      all facts upon which Plaintiff relies in support of such contention;

      b.      the identity of all documents upon which Plaintiff relies in support of such contention; and

      c.      the identity of all persons believed to have information or knowledge relating to any such knowledge Plaintiff contends Ashland possessed.

**RESPONSE: Plaintiff objects to this interrogatory insofar as it constitutes a contention interrogatory that calls for the Plaintiff to articulate theories of its case not yet fully developed and, as such, is premature.** *See B. Braun Medical, Inc. v. Abbott Laboratories,* **155 F.R.D. 525, 527 (E.D. Pa. 1994).**

     7.     Does Plaintiff contend that response costs were or will be incurred by it as the result of metals in the groundwater or soil at the Site and, if so, state:

      a.      the exact nature and type of such metals;

      b.      the identity of the generator of each metal or Hazardous Substance containing such metals;

    c.     the identity of the generator of such substances;

    d.     the identity of the transporter(s) of such substances;

    e.     the identity of any arrangers for the transportation to and disposal of such metals or Hazardous Substances containing such metals at the Site; and

    f.     for each such generator, transporter and arranger, the date and volume of the metals and Hazardous Substances containing metals transported to and disposed of at the Site and the identity of any and all documents evidencing, referring or relating to each such shipment.

**RESPONSE:** Plaintiff objects to this interrogatory insofar as it constitutes a contention interrogatory that calls for the Plaintiff to articulate theories of its case not yet fully developed and, as such, is premature. *See B. Braun Medical, Inc. v. Abbott Laboratories,* 155 F.R.D. 525, 527 (E.D. Pa. 1994). Without waiving any such objections, *see* the ROD and other EPA documents located in the Document Repository with respect to Site response activities.

    8.    For the OU-1 activities as alleged in Plaintiffs Third Amended Complaint identify the exact nature, type, amount and source of the Hazardous Substances that have been and/or are being remediated by such activities and the response costs incurred to date by Plaintiff in performing OU-1 activities and the estimated response costs to be incurred by Plaintiff for the operation and performance of OU-1 activities and describe with particularity the clean up work accomplished and expected to be accomplished by such OU-1 activities.

**RESPONSE:** Plaintiff further objects that, with respect to future response costs, it is seeking a declaration of each defendant's equitable share of all necessary costs of response as incurred in the future by it consistent with the national contingency plan, and not a money judgment for any estimate of such costs. To the extent this interrogatory seeks plaintiff's current estimates of such costs or information and documents related to such estimates, it seeks information that is neither relevant nor will lead to the discovery of

admissible evidence. Without waiving any such objections, pursuant to Fed. R. Civ. P. 33(d), the information sought in this interrogatory about response costs incurred to date by Plaintiff can be derived or ascertained from schedules of such costs and invoices reflected on those schedules, all of which are located in the Boarhead Document Repository at the Offices of Ballard Spahr Andrews & Ingersoll, LLP, 1735 Market Street, Philadelphia, PA 19103. By way of further response, *see* the ROD and other EPA documents located in the Document Repository with respect to Site response activities.

9.      For the OU-2 activities as alleged in Plaintiffs Third Amended Complaint, identify the exact nature, type, amount and source of the Hazardous Substances that have been and/or are being remediated by such activities and the response costs incurred to date by Plaintiff in performing OU-2 activities and the estimated response costs to be incurred by Plaintiff for the operation and performance of OU-2 activities and describe with particularity the clean up work accomplished and expected to be accomplished by such OU-2 activities.

RESPONSE: *See* response to Interrogatory No. 8.

10.      Identify each contractor hired, retained and/or paid by Plaintiff to perform clean up work for which Plaintiff seeks contribution from the Defendants and, for each such contractor, identify:

      a.      each contract or agreement pursuant to which Plaintiff hired, retained and/or paid the contractor;

      b.      the nature and scope of the work agreed to be performed by each contractor;

      c.      the nature and scope of the work actually performed by each contractor;

      d.      the amount of billings by each contractor for such work and the amounts paid by Plaintiff to each contractor;

      e.      the estimated amount of the bills Plaintiff expects each such contractor will generate for work completed or to be performed by each such contractor;

f.    the identity of any and all documents evidencing, referring or relating to each such contract or agreement, all such work and all such past and future billings; and

g.    the identity of any and all documents evidencing, referring or relating to all work performed by the contractor and the contractor's billings therefor.

RESPONSE: Plaintiff further objects that this request is overly broad and unduly burdensome. Without waiving any such objections, pursuant to Fed. R. Civ. P. 33(d), the information sought in this interrogatory can be derived or ascertained from documents concerning Site response costs and activities located in the Boarhead Document Repository at the Offices of Ballard Spahr Andrews & Ingersoll, LLP, 1735 Market Street, Philadelphia, PA 19103. By way of further response, such documents may be included in documents located at Pitney Hardin, 200 Campus Drive, Florham Park, New Jersey 07932. Such non-privileged documents are available for inspection and copying upon reasonable notice.

11.    Set forth an itemization of the response costs allegedly incurred by EPA prior to July 2000 as alleged in ¶20 of Plaintiffs Third Amended Complaint and identify all documents evidencing, referring or relating to such response costs.

RESPONSE: Plaintiff further objects that this request is overly broad and unduly burdensome. Without waiving any such objections, pursuant to Fed. R. Civ. P. 33(d), the information sought in this interrogatory can be derived or ascertained from documents concerning EPA's alleged response costs located in the Boarhead Document Repository at the Offices of Ballard Spahr Andrews & Ingersoll, LLP, 1735 Market Street, Philadelphia, PA 19103. By way of further response, such documents may be included in documents located at Pitney Hardin, 200 Campus Drive, Florham Park, New Jersey 07932. Such non-privileged documents are available for inspection and copying upon reasonable notice.

12.    Set forth an itemization of the response costs allegedly incurred by EPA in and subsequent to July 2000 as alleged in ¶20 of Plaintiffs Third Amended Complaint and identify all documents evidencing, referring or relating to such response costs.

RESPONSE: *See* response to Interrogatory No. 11.

13.    Set forth with particularity the attorney's fees allegedly incurred by Plaintiff in the course of performance of the alleged OU-1 and OU-2 activities and the Consent Decrees as alleged in ¶23 of Plaintiffs Third Amended Complaint and identify any and ail documents evidencing, referring or relating to such alleged fees incurred by Plaintiff.

RESPONSE: **Plaintiff further objects that this request is overly broad and unduly burdensome. Without waiving any such objections, invoices reflecting such attorney's fees are located in the Boarhead Document Repository at the Offices of Ballard Spahr Andrews & Ingersoll, LLP, 1735 Market Street, Philadelphia, PA 19103. By way of further response, such documents may be included in documents located at Pitney Hardin, 200 Campus Drive, Florham Park, New Jersey 07932. Such non-privileged documents are available for inspection and copying upon reasonable notice.**

14.    Set forth with particularity Plaintiffs estimate of additional response costs it believes it will incur as alleged in ¶24 of Plaintiff s Third Amended Complaint and:

    a.    identify each witness with information or knowledge pertaining to such
         estimated additional response costs; and

    b.    identify any and all documents evidencing, referring or relating to such
         additional response costs.

RESPONSE: **Plaintiff further objects that, with respect to future response costs, it is seeking a declaration of each defendant's equitable share of all necessary costs of response as incurred in the future by it consistent with the national contingency plan, and not a money judgment for any estimate of such costs. To the extent this interrogatory seeks**

plaintiff's current estimates of such costs or information and documents related to such

estimates, it seeks information that is neither relevant nor will lead to the discovery of

admissible evidence.

    15.    For each member of the Boarhead Farms Agreement Group:

    a.    identify all Hazardous Substances generated, transported or disposed of by such member at the Site;

    b.    the volume of Hazardous Substances generated, transported or disposed of by each member at the Site;

    c.    the dates of each shipment of each member's Hazardous Substances disposed of at the Site;

    d.    the identity of each transporter of each shipment of each member's Hazardous Substances disposed of at the Site;

    e.    identify any and all documents evidencing, referring or relating to the generation of, transportation to and disposal of each member's Hazardous Substance at the Site;

    f.    identify all persons or entities, if any, that arranged for the transportation to and disposal of each member's Hazardous Substance at the Site and the date and volume of each such Hazardous Substance disposed of at the Site as arranged by each such entity;

    g.    the identity and location of each facility of each member at which each Hazardous Substance disposed of at the Site was generated;

    h.    for the period starting one year before the earliest shipment of each member's Hazardous Substance to the Site and ending one year after the last such shipment, identify all other facilities at which Hazardous Substances generated or transported by each member was disposed of, other than the Boarhead Site; and

    i.    the identity of each witness believed to have information or knowledge of the matters addressed in the previous subparts of this Interrogatory and a summary of the information or knowledge each is believed to possess.

RESPONSE: **Plaintiff objects that it has no independent knowledge of any Hazardous**

**Substances generated, transported or disposed of by it at the Site. By way of further**

**objection, the phrase "identify all other facilities at which Hazardous Substances generated**

or transported by each member was disposed of, other than the Boarhead Site" is vague, confusing, ambiguous and unintelligible.

16.    Identify all agreements and contracts evidencing, referring or relating to each and every arrangement for the transportation to and disposal of each BFAG member's Hazardous Substances at the Site.

RESPONSE: Plaintiff objects that it did not arrange for the transportation to and disposal of Hazardous Substances at the Site.

17.    Identify all agreements and contracts evidencing, referring or relating to each and every arrangement by Ashland for the transportation to and disposal of Hazardous Substances at the Site as alleged in 1148 of Plaintiff's Third Amended Complaint.

RESPONSE : Plaintiff incorporates by reference its response to Interrogatory No. 1. By way of further answer, all agreements and contracts evidencing, referring or relating to each and every arrangement by Ashland for the transportation to and disposal of Hazardous Substances at the Site in Plaintiff's possession, custody or control are contained in the nexus files for Ashland and AETC in the Boarhead Document Repository.

18.    Set forth and identify with particularity all information and documents supporting Plaintiffs contention that it and/or its members is, are, or were Potentially Responsible Parties responsible for or liable to the EPA and/or PADEP for response costs arising out of the release of Hazardous Substances at the Site.

**RESPONSE:** Plaintiff objects that the phrase "it and/or its members is, are, or were

Potentially Responsible Parties responsible for or liable to the EPA and/or PADEP for

response costs arising out of the release of Hazardous Substances at the Site" is vague,

confusing, and ambiguous. Without waiving any such objections, *see* the two Consent

Decrees and Administrative Consent Orders located in the Boarhead Document Repository

at the offices of Ballard Spahr Andrews & Ingersoll, LLP, 1735 Market Street,

Philadelphia, PA 19103. By way of further response, the members of BFAG have orally

agreed collectively to undertake the cleanup work comprising OU-1 and OU-2.


                                        AS TO OBJECTIONS


Dated: 09/14/04                         _____
                                        Glenn Harris, Esquire
                                        Attorney I.D. No. 51222
                                        BALLARD SPAHR ANDREWS &
                                        INGERSOLL, LLP
                                        Plaza 1000
                                        Suite 500
                                        Voorhees, NJ 08043-4636

# EXHIBIT "B"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| BOARHEAD FARM AGREEMENT GROUP, | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 02-CV-3830 |
| | : | |
| ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, et al., | : | |
| | : | |
| | : | |
| Defendants | : | |

OBJECTIONS AND RESPONSES OF PLAINTIFF
BOARHEAD FARM AGREEMENT GROUP TO
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
OF DEFENDANT ASHLAND INC., DESIGNATED BY PLAINTIFF
AS ASHLAND CHEMICAL COMPANY, DIRECTED TO PLAINTIFF

Plaintiff Boarhead Farm Agreement Group ("Plaintiff"), by its undersigned

attorney, objects and responds to the First Request for Production of Documents of Defendant

Ashland Inc., Designated by Plaintiff as Ashland Chemical Company, Directed to Plaintiff

("Document Requests"), as follows:

I.    GENERAL OBJECTIONS

1. Plaintiff objects to each document request to the extent that it seeks information not in

Plaintiff's possession, custody or control.

2. Plaintiff objects to each document request to the extent that it seeks information

already in the possession, custody or control of Ashland Chemical Company ("Ashland").

3. Plaintiff objects to each document request to the extent that it seeks information

which is publicly available and, thus, to which Ashland has the same access as Plaintiff.

4.   Plaintiff objects to each document request to the extent that it seeks information protected by the attorney-client privilege or any other applicable privilege.  Any inadvertent disclosure of privileged information shall not constitute a waiver of the attorney-client or any other applicable privilege.

5.   Plaintiff objects to each document request to the extent that it seeks the discovery of the mental impressions, conclusions, opinions or legal theories of its attorneys or other representatives.  Any inadvertent disclosure of work product shall not constitute a waiver of any work product protection.

6.   Plaintiff objects to each document request to the extent that it is unlimited in time or scope.

7.   Plaintiff objects to each document request to the extent that it is unduly burdensome or designed to be harassing.

8.   Plaintiff objects to each document request to the extent that it is vague or ambiguous.

II.    **DOCUMENT REQUESTS**

Subject to and without waiving the foregoing General Objections, Plaintiff makes the following responses to the Document Requests:

1.   All statements, signed or unsigned, including transcriptions of any recorded statements concerning this action, from all witnesses and persons with information or knowledge relating to the facts alleged in Plaintiffs Third Amended Complaint, including, but not limited to, any statements from the Plaintiff, the other parties herein and/or their respective agents.

**RESPONSE**: **Plaintiff further objects that the only non-privileged responsive documents are documents created by others and deposition transcripts of persons unaffiliated with Plaintiff.  Without waiving any such objections, Plaintiff refers Ashland to the documents**

located in the Boarhead Document Repository at the Offices of Ballard Spahr Andrews & Ingersoll, LLP, 1735 Market Street, Philadelphia, PA 19103. By way of further response, such documents may be included in documents located at Pitney Hardin, 200 Campus Drive, Florham Park, New Jersey 07932. Such non-privileged documents are available for inspection and copying upon reasonable notice.

    2.  All documents that evidence, relate or refer to any response costs, losses and expenses allegedly incurred or sustained by Plaintiff as a result of the release(s) as alleged in Plaintiffs Third Amended Complaint.

RESPONSE: By way of further objection, this request is overly broad and unduly burdensome. Without waiving any such objections, documents reflecting response costs incurred by Plaintiff and invoices reflecting recoverable attorneys fees are located in the Boarhead Document Repository at the Offices of Ballard Spahr Andrews & Ingersoll, LLP, 1735 Market Street, Philadelphia, PA 19103. By way of further response, such documents may be included in documents located at Pitney Hardin, 200 Campus Drive, Florham Park, New Jersey 07932. Such non-privileged documents are available for inspection and copying upon reasonable notice.

    3.  All documents that evidence, relate or refer to any future response costs, losses and expenses that Plaintiff believes it will incur or sustain as a result of the release(s) as alleged in Plaintiffs Third Amended Complaint.

RESPONSE: Plaintiff further objects that, with respect to future response costs, it is seeking a declaration of each defendant's equitable share of all necessary costs of response as incurred in the future by it consistent with the national contingency plan, and not a money judgment for any estimate of such costs. To the extent this request seeks plaintiff's current estimates of such costs or information and documents related to such estimates, it seeks information that is neither relevant nor will lead to the discovery of admissible evidence. Without waiving any such objections, documents reflecting response actions

taken and response costs incurred by Plaintiff are located in the Boarhead Document

Repository at the Offices of Ballard Spahr Andrews & Ingersoll, LLP, 1735 Market Street,

Philadelphia, PA 19103. By way of further response, such documents may be included in

documents located at Pitney Hardin, 200 Campus Drive, Florham Park, New Jersey 07932.

Such non-privileged documents are available for inspection and copying upon reasonable

notice.

    4. All documents used, consulted, referred to, identified or requested to be identified by
Plaintiff in its Answers to Ashland's First Set of Interrogatories Addressed to Plaintiff.

RESPONSE: Without waiving any such objections, Plaintiff refers Ashland to the

documents located in the Boarhead Document Repository at the Offices of Ballard Spahr

Andrews & Ingersoll, LLP, 1735 Market Street, Philadelphia, PA 19103. By way of further

response, such documents may be included in documents located at Pitney Hardin, 200

Campus Drive, Florham Park, New Jersey 07932. Such non-privileged documents are

available for inspection and copying upon reasonable notice.

    5. Any and all documents used, consulted, referred to, identified or requested to be
identified by Plaintiff in answer to any and all other Defendants' Interrogatories addressed to
Plaintiff in this action.

RESPONSE: Plaintiff further objects to this document request as overly broad and unduly

burdensome.

    6. Any and all investigation files and other documents in Plaintiffs possession or control
concerning the alleged generation, transportation and/or disposal by Ashland of Hazardous
Substances at the Site.

RESPONSE: Plaintiff further objects that the phrase "investigation files and other

documents" is vague, confusing, and ambiguous. By way of further objection, this request

is overly broad and burdensome. By way of further objection, this request seeks

documents that are protected by the attorney-client and/or common interest privileges

and/or the work product doctrine. By way of further objection, any files assembled by

Plaintiff concerning the alleged generation, transportation and/or disposal by any other

persons or parties of Hazardous Substances at the Site are comprised solely of documents

created by others and deposition transcripts of persons unaffiliated with Plaintiff, and thus

constitute attorney work product. Without waiving any such objections, Plaintiff refers

Ashland to the documents concerning EPA's investigation located in the Boarhead

Document Repository at the offices of Ballard Spahr Andrews & Ingersoll, LLP, 1735

Market Street, Philadelphia, PA 19103. By way of further response, such documents may

be included in documents located at Pitney Hardin, 200 Campus Drive, Florham Park, New

Jersey 07932. Such non-privileged documents are available for inspection and copying

upon reasonable notice.

    7. Any and all investigation files and other documents in Plaintiffs possession or control concerning the alleged generation, transportation and/or disposal by Plaintiff of Hazardous Substances at the Site.

RESPONSE: Plaintiff further objects that the phrase "investigation files and other

documents" is vague, confusing, and ambiguous. By way of further objection, this request

is overly broad and burdensome. By way of further objection, this request seeks

documents that are protected by the attorney-client and/or common interest privileges

and/or the work product doctrine. By way of further objection, any files assembled by

Plaintiff concerning the alleged generation, transportation and/or disposal by any other

persons or parties of Hazardous Substances at the Site are comprised solely of documents

created by others and deposition transcripts of persons unaffiliated with Plaintiff, and thus

constitute attorney work product. Without waiving any such objections, Plaintiff refers

Ashland to the documents concerning EPA's investigation located in the Boarhead

Document Repository at the offices of Ballard Spahr Andrews & Ingersoll, LLP, 1735

Market Street, Philadelphia, PA 19103. By way of further response, such documents may be included in documents located at Pitney Hardin, 200 Campus Drive, Florham Park, New Jersey 07932. Such non-privileged documents are available for inspection and copying upon reasonable notice.

8. Any and all investigation files and other documents in Plaintiffs possession or control concerning the alleged generation, transportation and/or disposal by any other persons or parties of Hazardous Substances at the Site.

RESPONSE: Plaintiff further objects that the phrase "investigation files and other documents" is vague, confusing, and ambiguous. By way of further objection, this request is overly broad and burdensome. By way of further objection, this request seeks documents that are protected by the attorney-client and/or common interest privileges and/or the work product doctrine. By way of further objection, any files assembled by Plaintiff concerning the alleged generation, transportation and/or disposal by any other persons or parties of Hazardous Substances at the Site are comprised solely of documents created by others and deposition transcripts of persons unaffiliated with Plaintiff, and thus constitute attorney work product. Without waiving any such objections, Plaintiff refers Ashland to the documents concerning EPA investigation located in the Boarhead Document Repository at the offices of Ballard Spahr Andrews & Ingersoll, LLP, 1735 Market Street, Philadelphia, PA 19103. By way of further response, such documents may be included in documents located at Pitney Hardin, 200 Campus Drive, Florham Park, New Jersey 07932. Such non-privileged documents are available for inspection and copying upon reasonable notice.

9. All documents including, but not limited to, Releases, that evidence, relate or refer to any settlement agreement to which Plaintiff is a party and which in any way relates to the response costs, losses, damages, expenses and/or claims forming the subject matter of Plaintiffs Third Amended Complaint.

RESPONSE: Plaintiff further objects that this request is vague, confusing, and ambiguous. By way of further objection, this request seeks documents that are neither relevant nor will lead to the discovery of admissible evidence. Without waiving any such objections, *see* copies of executed settlement agreements with the settlement amounts redacted located in the Boarhead Document Repository at the Offices of Ballard Spahr Andrews & Ingersoll, LLP, 1735 Market Street, Philadelphia, PA 19103.

10. All documents that embody, evidence, refer or relate to all communications between BFAG and the USEPA, the PaDEP, the PaDER and/or any other party relating to the presence of and cleanup of Hazardous Substances at the Site.

RESPONSE: Plaintiff further objects that the phrase "relating to the presence of and cleanup of Hazardous Substances at the Site" is vague, confusing, and ambiguous. By way of further objection, this request is overly broad and burdensome. By way of further objection, this request seeks documents that are neither relevant nor will lead to the discovery of admissible evidence. By way of further objection, this request seeks documents that are protected by the attorney-client and/or common interest privileges and/or the work product doctrine. Without waiving any such objections, *see* non-privileged documents reflecting Site response activities and correspondence with USEPA and PADEP, all located in the Boarhead Document Repository at the Offices of Ballard Spahr Andrews & Ingersoll, LLP, 1735 Market Street, Philadelphia, PA 19103. By way of further response, such documents may be included in documents located at Pitney Hardin, 200 Campus Drive, Florham Park, New Jersey 07932. Such non-privileged documents are available for inspection and copying upon reasonable notice.

11. Any and all documents embodying, evidencing, referring or relating to any and all agreements entered into by BFAG relating to the cleanup of the Site.

RESPONSE: Plaintiff further objects that the phrase "relating to cleanup of the Site" is vague, confusing, and ambiguous. By way of further objection, this request seeks documents that are protected by the attorney-client and/or common interest privileges and/or the work product doctrine. By way of further objection, this request is overly broad and unduly burdensome. Without waiving any such objections, *see* agreements between BFAG and remedial action contractors located in the Boarhead Document Repository at the Offices of Ballard Spahr Andrews & Ingersoll, LLP, 1735 Market Street, Philadelphia, PA 19103. By way of further response, such documents may be included in documents located at Pitney Hardin, 200 Campus Drive, Florham Park, New Jersey 07932. Such non-privileged documents are available for inspection and copying upon reasonable notice.

12.    Any and all documents embodying, evidencing, referring or relating to BFAG's status or designation as a Potentially Responsible Party with respect to the presence and/or cleanup of Hazardous Substances at the Site.

RESPONSE: Plaintiff further objects that the phrase "BFAG's status or designation as a Potentially Responsible Party with respect to the presence and/or cleanup of Hazardous Substances at the Site" is vague, confusing, and ambiguous.

13.    Any and all documents embodying, evidencing, referring or relating to the cleanup of the Site.

RESPONSE: Plaintiff further objects that the phrase "relating to cleanup of the Site" is vague, confusing, and ambiguous. By way of further objection, this request is overly broad and burdensome. By way of further objection, this request seeks documents that are protected by the attorney-client and/or common interest privileges and/or the work product doctrine. Without waiving any such objections, *see* documents reflecting Site response actions located in the Boarhead Document Repository at the offices of Ballard Spahr Andrews & Ingersoll, LLP, 1735 Market Street, Philadelphia, PA 19103. By way of

further response, such documents may be included in documents located at Pitney Hardin,

200 Campus Drive, Florham Park, New Jersey 07932. Such non-privileged documents are

available for inspection and copying upon reasonable notice.

14.    Any and all documents embodying, evidencing, referring or relating to all communications and transactions between and among Ashland and any other person or entity relative to the generation, transportation and/or disposal of Hazardous Substances which Plaintiff contends or believes were disposed of at the Site.

RESPONSE: Subject to and without waiving the foregoing General Objections, Plaintiff

responds that all documents in Plaintiff's possession, custody and/or control concerning

communications and transactions between and among Ashland and any other person or

entity relative to the generation, transportation and/or disposal of Hazardous Substances at

the Site are contained in the nexus files for Ashland and AETC located at the Boarhead

Document Repository, and refers Ashland to the same.

15.    Any and all documents, not produced in response to the above Requests, including, but not limited to, reports of laboratory tests and analyses, evidencing, referring or relating to the presence at the Site of Hazardous Substances generated, transported and/or disposed of at the Site by Ashland, by anyone acting on Ashland's behalf, and/or by an arranger.

RESPONSE: Plaintiff further objects that this request is unintelligible. By way of further

objection, this request seeks documents that are protected by the attorney-client and/or

common interest privileges and/or the work product doctrine. By way of further objection,

this request is overly broad and burdensome. Without waiving any such objections,

Plaintiff refers Ashland to the documents concerning Site response activities located in the

Boarhead Document Repository at the offices of Ballard Spahr Andrews & Ingersoll, LLP,

1735 Market Street, Philadelphia, PA 19103. By way of further response, such documents

may be included in documents located at Pitney Hardin, 200 Campus Drive, Florham Park,

New Jersey 07932. Such non-privileged documents are available for inspection and

copying upon reasonable notice.

16.     Any and all documents, not produced in response to the above Requests, including, but not limited to, reports of laboratory tests and analyses, evidencing, referring or relating to the presence at the Site of Hazardous Substances generated, transported and/or disposed of at the Site by Plaintiff, by anyone acting on Plaintiffs behalf, and/or by an arranger.

RESPONSE: Plaintiff further objects that this request is unintelligible. Without waiving any such objections, Plaintiff directs Ashland to the documents concerning Site response activities located in the Boarhead Document Repository at the offices of Ballard Spahr Andrews & Ingersoll, LLP, 1735 Market Street, Philadelphia, PA 19103. By way of further response, such documents may be included in documents located at Pitney Hardin, 200 Campus Drive, Florham Park, New Jersey 07932. Such non-privileged documents are available for inspection and copying upon reasonable notice.

17.     Any and all documents, not produced in response to the above Requests, including, but not limited to, reports of laboratory tests and analyses, evidencing, referring or relating to the presence at the Site of Hazardous Substances generated, transported and/or disposed of at the Site by any other person or entity, by anyone acting on behalf of any such other person or entity, and/or by an arranger.

RESPONSE: Plaintiff further objects that this request is unintelligible. By way of further objection, this request seeks documents that are protected by the attorney-client and/or common interest privileges and/or the work product doctrine. By way of further objection, this request is overly broad and burdensome. Without waiving any such objections, Plaintiff directs Ashland to the documents concerning Site response activities located in the Boarhead Document Repository at the offices of Ballard Spahr Andrews & Ingersoll, LLP, 1735 Market Street, Philadelphia, PA 19103. By way of further response, such documents may be included in documents located at Pitney Hardin, 200 Campus Drive, Florham Park, New Jersey 07932. Such non-privileged documents are available for inspection and copying upon reasonable notice.

Dated: 09/14/04

_____
Glenn Harris, Esquire
Attorney I.D. No. 51222
BALLARD SPAHR ANDREWS &
INGERSOLL, LLP
Plaza 1000
Suite 500
Voorhees, NJ 08043-4636