# EXHIBIT "C"

# PHELAN, PETTIT & BIEDRZYCKI

### ATTORNEYS AT LAW

JOHN M. PHELAN
RICHARD C. BIEDRZYCKI
JEFFREY L. PETTIT
CHRISTOPHER H. JONES*
RICHARD E. STABINSKI††
JOHN W. PHELAN*
BRENT A. COSSROW*

SUITE 1600
THE NORTH AMERICAN BLDG.
121 SOUTH BROAD STREET
PHILADELPHIA, PA 19107

_____

TELEPHONE (215) 546-0500
FACSIMILE (215) 546-9444

\* ALSO ADMITTED TO NJ BAR
†† ALSO ADMITTED TO IL BAR

November 12, 2004

**VIA FACSIMILE AND FIRST CLASS MAIL**
Glenn M. Harris, Esquire
Ballard, Spahr, Andrews & Ingersoll, LLP
Plaza 1000 - Suite 500
Main Street
Voorhees, NJ 08043-4636

> **RE:    Boarhead Farm Agreement Group v.**
> **Advanced Environmental Technology Corporation, et al.**
> **U.S.D.C., E.D.Pa., Civil Action No. 02-3850**

Dear Mr. Harris:

We are writing in a good faith attempt to resolve a discovery dispute pertaining to Plaintiff's answers and objections to Ashland's Interrogatories and Document Requests in the above matter. Barring an amicable resolution of such dispute, it is our intention to move for an order striking Plaintiff's objections and compelling more specific answers and responses to Ashland's Interrogatories and Document Requests.

For the record, we take issue with all of Plaintiff's objections to Ashland's Interrogatories and Document Requests, each of which is specifically tailored to seeking information relevant and material to the Plaintiff's allegations against Ashland in this case. In an effort to amicably resolve this discovery dispute, we will highlight hereinafter some of our principal concerns with Plaintiff's responses that we would ask you to consider and advise us whether you will be withdrawing your objections and amending and supplementing Plaintiff's responses to Ashland's written discovery requests.

## I.    Interrogatories

### 1.    Plaintiff's Objections to Purportedly "Premature" Contention Interrogatories

You have asserted an identical objection to each of the Interrogatory Nos. 1, 2 (a)-(f), 3-7 and 17, objecting as to each interrogatory "insofar as it constitutes a contention interrogatory that calls for the Plaintiff to articulate theories of its case not fully developed and, as such, is premature."

PHELAN, PETTIT & BIEDRZYCKI
Glenn M. Harris, Esquire
November 11, 2004
Page 2

This objection to these interrogatories is clearly improper. As these interrogatories reflect, Ashland does not seek to have Plaintiff make final decisions as to whether it will make certain contentions in this case or to articulate theories that Plaintiff has not yet fully developed. Rather, the interrogatories relate to specific allegations made by Plaintiff in its Third Amended Complaint. Plaintiff has sued our client and in doing so has made specific allegations against Ashland and others. Clearly, Ashland is entitled to know the factual bases for Plaintiff's previously made allegations. No discovery could be more relevant and appropriate than this.

Furthermore, Ashland's discovery requests do not require Plaintiff to go out and develop or discover new facts of which it is presently unaware, but rather to disclose only facts and evidence that it currently possesses supporting its very own allegations. The interrogatories in question are not open-ended. Ashland is entitled to the information sought to enable it to further understand and investigate the factual bases of Plaintiff's claims against it to enable Ashland to effectively pursue further investigation and discovery, as necessary, within the time parameters set by the Court. Furthermore, these interrogatories have not been interposed in the early stages of this litigation, but only after extensive nexus and other discovery has already taken place and after Plaintiff has had ample time to gather evidence pertaining to its claims. The interrogatories are specifically tailored to the Plaintiff's allegations and are not overbroad, general or unduly burdensome. As such, Ashland's Interrogatories and Document Requests are clearly distinguishable from those which the Court did not require be answered in the <u>Braun Medical</u> case that you cite in Plaintiff's responses to Ashland's Interrogatories. Moreover, we refer you to Plaintiff's own interrogatories addressed to all defendants in this case which include "contention" interrogatories. We specifically refer you to Plaintiff's "contention" Interrogatory No. 10 addressed to Ashland, to which interrogatory Ashland provided a full and complete response, in stark contrast to Plaintiff's responses to Ashland's interrogatories seeking the factual bases for specific averments made by Plaintiff in its Complaint.

Accordingly, we request that Plaintiff withdraw of its objections based on Plaintiff's mischaracterization of Ashland's Interrogatories and Document Requests as premature contention interrogatories and serve full and complete responses thereto.

## 2.     Designation of Documents in Lieu of Answers to Interrogatories

Plaintiff has avoided providing any information in response to most of Ashland's Interrogatories while attempting to make it appear that it has answered a number of those interrogatories by making general references to documents in the Boarhead Document Repository and/or documents located at Pitney Hardin in Florham Park, New Jersey. Such responses are insufficient.

Apparently, Plaintiff is attempting to invoke the procedure described in Fed.R.Civ.P. 33(d) by referring to records in lieu of providing specific information in response to Ashland's interrogatories. However, as the Rule specifically provides, such a response must be set forth in sufficient detail to permit the interrogating party to locate and identify the specific records from which the answer to the interrogatory may be ascertained. The Advisory Committee to the Rule

PHELAN, PETTIT & BIEDRZYCKI
Glenn M. Harris, Esquire
November 11, 2004
Page 3

specifically noted that an interrogatory response that merely directs a party to a mass of records is an abuse of the option provided by Rule 33(d) to designate specific records in lieu of formal answers. In fact, such an attempted referral to a mass of records may result in the preclusion of evidence at trial by the party making such a mass document referral. See In Re Fine Paper Antitrust Litigation, 685 F.2d 810 (3rd Cir. 1982).

Accordingly, we request that Plaintiff provide more specific detailed responses to Ashland's interrogatories by providing the information sought therein. If Plaintiff chooses to respond to any interrogatories by referring to documents in which the answer can be obtained, Plaintiff should designate the specific documents, including a designation of the Bates numbers thereof, in which the specific information sought by each interrogatory can be found.

3.    **Specific Interrogatories**

In addition to Ashland's request that Plaintiff withdraw its above-referenced objections based on purportedly premature contention interrogatories and that Plaintiff provide amended and supplemental responses to each interrogatory or specifically designate the particular documents in which the information requested can be found, Ashland further requests that the Plaintiff withdraw its other objections and more specifically respond to the following interrogatories:

a.    **Interrogatory No. 2**

Ashland disagrees with Plaintiff's objection that this interrogatory is somehow vague and ambiguous. In its response, Plaintiff states that the "EPA did not direct the ROD to clean up any hazardous substance." This statement by Plaintiff is confusing as it is quite clear that what this interrogatory seeks is the identity of the hazardous substances to be cleaned up as directed by the EPA. This interrogatory seeks no more than details of what Plaintiff has alleged in its Complaint. To the extent that Plaintiff believes that this interrogatory is overly burdensome because records from which this information can be obtained are publicly available, then all that Plaintiff needs to do is to designate the specific documents which it submits are publicly available and which contain the information sought by the interrogatory. Ashland is entitled to know the specific documents to which Plaintiff refers as purportedly containing the information sought in this interrogatory so that it can reasonably attempt to obtain and review them. A mass document referral does not provide Ashland with such an opportunity.

With respect to Plaintiff's objection to the information requested in subpart (i) of this Interrogatory seeking the identity of persons with information or knowledge regarding the transportation and arrangement of hazardous substances as purportedly seeking privileged information, clearly this subpart does not require the disclosure of any privileged information. Ashland is unquestionably entitled to know the identity of all individuals that Plaintiff, including its attorneys, believe have relevant information and knowledge. If Plaintiff does not withdraw this objection, we would ask that it submit a privilege log for the information and documents not being

produced, including a summary of the particular bases for its claim of privilege.

      **b.**     **Interrogatory Nos. 3, 4, 5, 8, 9 and 14**

      Without waiving its right to seek full and complete answers to these interrogatories to the extent that they seek an itemization of future response costs, insofar as plaintiff is professedly only seeking a determination of each defendant's equitable share of future response costs, at this time Ashland will accept a supplemental answer which sets forth the equitable share of each party that Plaintiff presently believes is appropriate, including the share of each settling and non-settling defendant and of each member of the Plaintiff group, along with the factual bases for such apportionment. With regard to the schedules of costs and invoices referenced in Plaintiff's answers to these interrogatories, we would again ask that you specifically designate the particular documents among the mass of records in the Repository which contain the information Plaintiff believes is responsive to this interrogatory.

      **c.**     **Interrogatory Nos. 11, 12 and 13**

      Ashland requests that Plaintiff specifically provide the information sought by setting forth the dollar amounts of the response costs and attorney's fees claimed by Plaintiff. At a minimum, Plaintiff must make reference to the specific documents in the Repository or at Pitney Hardin in which the information requested in these interrogatories can be found.

      **d.**     **Interrogatory Nos. 15, 16 and 18**

      Plaintiff seems to overlook the fact that these interrogatories seek responses on behalf of <u>each BFAG member</u>. Plaintiff has responded to these interrogatories as though they merely sought responses on behalf of the Boarhead Farm Agreement Group only, which they clearly do not. Accordingly, we must insist that plaintiff provide amended and supplemental responses to these interrogatories on behalf of each BFAG member. Furthermore, Ashland takes issue with Plaintiff's evasive response that it has "no independent knowledge" of any of its own hazardous substances disposed of at the Boarhead Farms Site. This interrogatory does not limit the information sought to information of which Plaintiff and the members thereof have only "independent knowledge." Rather, this interrogatory seeks <u>all</u> information possessed by each member of the BFAG group. Quite obviously, the BFAG members would not have entered into a clean up agreement with the EPA without having such information. Furthermore, Ashland fails to see how these interrogatories are "vague" as asserted by you in Plaintiff's response to these interrogatories insofar as they seek, quite simply, information as to each disposal site of the wastes of each BFAG member during the relevant time period.

PHELAN, PETTIT & BIEDRZYCKI
Glenn M. Harris, Esquire
November 11, 2004
Page 5

## II.    Document Requests

### 1.    Designation of Mass Records

For the reasons set forth in Paragraph I.2. above, Ashland objects to Plaintiff's attempt to respond to its discovery requests by making general reference to a mass of documents such as the documents in the Repository and/or at Pitney Hardin. Accordingly, we must request that for each document request, Plaintiff amend its responses by designating the specific documents, including a designation of the Bates numbers thereof, which are responsive to each of Ashland's document requests. Certainly, Plaintiff cannot expect Ashland to sift through many hundreds of boxes and files containing tens of thousands of records to try to locate what may be just a handful of documents responsive to any particular document requests, and then guess as to which documents Plaintiff believes are responsive to Ashland's document requests. We trust that you will supplement and amend Plaintiff's responses accordingly.

### 2.    Specific Document Requests

In addition to Ashland's request that Plaintiff withdraw its general objections to Ashland's document requests and in addition to Ashland's above request that Plaintiff provide amended and supplemental responses to each document request by specifically designating the responsive documents, Ashland further requests that Plaintiff withdraw its other objections and more specifically respond to the following document requests:

#### a.    Request No. 1

Other than transcripts of depositions specifically noticed and taken in this case, we would request that you itemize the deposition transcripts referred to in Plaintiff's response by the name of the deponent, the date of each deposition, and the case name, court and docket number of the case. With respect to Plaintiff's reference in its response to potentially privileged documents, we request that Plaintiff specifically identify all such documents and set forth the bases for each claim of privilege sufficient to enable Ashland to evaluate whether a privilege may apply and to pursue a court ruling thereon, if necessary.

#### b.    Request No. 5

To the extent that Plaintiff has or will be producing documents in response to other defendants' interrogatories and document requests, Ashland requests no more than that Plaintiff produce copies of such documents or make them available for inspection by Ashland's counsel or, alternatively, make specific reference to the particular documents in the Repository, at Pitney Hardin or at any other accessible location sufficient to enable us to readily locate and review the particular responsive documents.

PHELAN, PETTIT & BIEDRZYCKI
Glenn M. Harris, Esquire
November 11, 2004
Page 6

      c.      **Document Request Nos. 6, 7 and 8**

      We are mystified at how the phrase "investigation files and other documents" is vague, confusing or ambiguous as asserted by Plaintiff in its responses to these requests. We further challenge Plaintiff's objection that these requests are "overly broad and burdensome." Furthermore, this document request does not, as Plaintiff asserts, seek the production of attorney work product but only documents not prepared by Plaintiff's counsel in anticipation of litigation or in preparation for trial. Clearly, documents created by others as well as deposition transcripts of persons unaffiliated with the Plaintiff cannot constitute attorney work product as you assert. Furthermore, to the extent that Plaintiff refers to EPA investigation documents in its response, we again request that you provide a specific designation of the particular responsive documents that are purportedly contained within the mass of documents in the Repository and/or at Pitney Hardin.

      Finally, Plaintiff states in its response that "non-privileged documents are available for inspection and copying upon reasonable notice." We request that you make such specifically designated documents available to Ashland.

      d.      **Request No. 9**

      Based on Plaintiff's response, we will assume that there are no Releases or Settlement Agreements in existence other than those placed by Plaintiff into the Document Repository. We request, however, that you provide the specific Bates numbers of those Releases and Settlement Agreements.

      e.      **Request No. 10**

      With respect to this request seeking documents embodying or referring to communications between Plaintiff, the members of BFAG and the relevant government agencies and others, this request is specifically limited to documents involving communications that relate to the presence and clean up of hazardous substances at the Boarhead Farms Site. We fail to see how this request is "vague, confusing and ambiguous" or "overly broad and burdensome" as asserted by Plaintiff in its response. The documents requested are clearly relevant and this request is reasonably calculated to lead to the discovery of admissible evidence.

      To the extent that Plaintiff is withholding the production of documents under a claim of privilege, we again request that Plaintiff identify such documents and the bases for its claim of privilege relative thereto.

      f.      **Request No. 11**

      We disagree that this Request is in any way vague, confusing, ambiguous, overly broad or unduly burdensome. Plaintiff should be readily able to identify and produce, or specifically designate, all "agreements entered into by BFAG relating to the clean up of the Site." To the extent

PHELAN, PETTIT & BIEDRZYCKI
Glenn M. Harris, Esquire
November 11, 2004
Page 7

that Plaintiff is withholding any responsive documents subject to a claim of privilege, we request that Plaintiff identify such withheld documents and specifically set forth the bases for its privilege claims.

g.    **Request No. 12**

Ashland disagrees that this request is in any way vague, confusing or ambiguous as asserted by Plaintiff in its Response. This request is clearly directed to documents that designate or refer to BFAG, including its members, as Potentially Responsible Parties with respect to the Boarhead Farms Site. Obviously, had the BFAG members not been so designated, they would not have entered into an agreement with EPA to clean up the Site.

h.    **Request No. 15**

We do not see how Plaintiff can assert that this Request, which seeks all documents relating to the presence of Ashland waste materials at the Boarhead Farms Site, is "unintelligible" or overly broad and burdensome as asserted by Plaintiff in its response. This request seeks documents going to the very heart of Plaintiff's claims and allegations against Ashland in this case. Also, to the extent that Plaintiff is withholding any documents from production pursuant to a claim of privilege, we again request that you identify all such documents being withheld and state the bases for Plaintiff's assertion of privilege so that we can evaluate such assertion and present the matter to the court for a ruling, if necessary.

i.    **Request Nos. 16 and 17**

These requests are specifically limited to seeking the same types of documents sought in Ashland's request no. 15, but with respect to waste materials deposited at the Boarhead Farms Site that were generated, transported or disposed of by entities or persons other than Ashland including, but not limited to, members of BFAG and the other co-defendants. Accordingly, our comments as set forth above with respect to Ashland's Document Request No. 15 are likewise applicable here.

Particularly given the fact that the discovery deadline for this discovery phase is rapidly approaching, we must request that we hear from you no later than Thursday, November 18, 2004 with regard to the potential amicable resolution of these matters. If we do not hear from you, we will assume that you do not wish to reconsider Plaintiff's answers and responses and that the issues addressed herein cannot be resolved absent a presentation of the disputed matters to the court by way of motion. Also until these issues are resolved, we would object to Plaintiff's pursuit of any further discovery from Ashland.

PHELAN, PETTIT & BIEDRZYCKI
Glenn M. Harris, Esquire
November 11, 2004
Page 8

We look forward to the courtesy of a prompt response.

Very truly yours,

Richard C. Biedrzycki

RCB/vic

cc:    Monique M. Mooney, Esquire
       Thomas Sabino, Esquire
       Lynn Wright, Esquire
       Melissa E. Flax, Esquire
       Stephen P. Chawaga, Esquire
       Edward Fackenthal, Esquire
       Andrew P. Foster, Esquire
       Seth v.d.H. Cooley, Esquire

G:\DATA\1357-29\Ltr\GMH-010.wpd

# EXHIBIT "D"

LAW OFFICES

# BALLARD SPAHR ANDREWS & INGERSOLL, LLP

A PENNSYLVANIA LIMITED LIABILITY PARTNERSHIP
PLAZA 1000 - SUITE 500
MAIN STREET
VOORHEES, NEW JERSEY 08043-4636
856-761-3400
FAX: 856-761-1020
LAWYERS@BALLARDSPAHR.COM

BALTIMORE, MD
DENVER, CO
PHILADELPHIA, PA
SALT LAKE CITY, UT
WASHINGTON, DC
WILMINGTON, DE

PARTNER RESPONSIBLE FOR
VOORHEES, NJ PRACTICE
BENJAMIN A. LEVIN

GLENN A. HARRIS
DIRECT DIAL: 856-761-3440
PERSONAL FAX: 856-761-9001
E-MAIL: HARRISG@BALLARDSPAHR.COM

November 18, 2004

**Via E-mail**

Richard C. Biedrzycki, Esquire
Phelan, Pettit & Biedrzycki
The North American Building
Suite 1600
121 South Broad Street
Philadelphia, PA 19107

　　　　　　　*Re:*　*Boarhead Farm Litigation*

Dear Mr. Biedrzycki:

　　　　　　　This letter is in response to your letter dated November 12, 2004. The thrust of your letter seems to be that, having asked in multiple discovery requests for "everything," Ashland is now dissatisfied that Plaintiff agreed to produce "everything" in response. The second thrust appears to be that Ashland is unhappy that Plaintiff answered the precise request made, and not the request that Ashland intended to make. Nevertheless, this letter is a good faith attempt to respond to Ashland's various complaints about Plaintiff's discovery responses.

　　　　　　　With respect to Interrogatory No. 1, that Interrogatory seeks detailed information about "each shipment of hazardous substances Plaintiff contends" was generated or transported to and disposed of at the Site. Plaintiff has formed no "contentions" as to any specific shipments of Ashland hazardous substances. Nevertheless, Ashland is well aware of the evidentiary basis concerning Ashland's transactions with AETC and AETC's transactions with DCC. Indeed, Ashland is itself in possession of that information. Ashland is also in possession of the transcripts of the depositions taken of each of the witnesses to date in this matter. The Document Repository contains the entire Administrative Record prepared by EPA up to issuance of the ROD. The documents in that Administrative Record, including, but not limited to, the RI/FS and the ROD identify a multitude of hazardous substances and other substances that were present in one or more media at the Site. Ashland is also aware that drums or drum fragments bearing

Richard C. Biedrzycki, Esquire
November 18, 2004
Page 2

Ashland Chemical labels were excavated at the Site as part of the OU-2 activities. These proofs collectively serve as the factual basis for Plaintiff's allegation that Ashland is a person liable under Section 107(a).

   With respect to Interrogatory No. 2, the language of this Interrogatory is unintelligible. If, as you state in your letter, Ashland is seeking "the identity of the hazardous substances to be cleaned up as directed by EPA," then Ashland is asking Plaintiff to explain EPA's decision-making process for each of the many actions EPA has taken at the Site. EPA's decision-making process leading up to and including the issuance of the ROD is set forth in the Administrative Record compiled by EPA and in the ROD itself. Plaintiff believes that a complete copy of that Administrative Record is available in the Document Repository. With respect specifically to the response actions that Plaintiff is taking that are "directed by the EPA", the ROD sets forth EPA's "decision" in that respect. The ROD is, of course, based on the RI/FS, and upon other documents in the Administrative Record.

   This Interrogatory and its subparts are additionally confusing because they repeatedly refer to "each Hazardous Substance." Persons are liable under CERCLA if they meet one of the statutory definitions in Section 107(a) and there has been "a release, or a threatened release which causes the incurrence or response costs, of a hazardous substance . . . ." Any such person is responsible for "necessary costs of response . . . consistent with the national contingency plan." Consistent therewith, Plaintiff's Third Amended Complaint alleges that there were releases or threatened releases of one or more hazardous substances at or from the Site, and that Plaintiff has incurred and will continue to incur in the future necessary costs of response that were and will be incurred consistently with the NCP. Complaint at ¶¶ 1, 23-24. Plaintiff's Complaint does not allege any list of specific hazardous substances that the EPA "directed" be cleaned up, nor does it allege, as each such hazardous substance, who generated that substance, who transported and disposed of it at the Site, who arranged for such transportation, or any of the other subsets of information sought in this Interrogatory. Whether or not Plaintiff will·at some point in the future "contend" that any particular person or entity generated each and every hazardous substance identified by EPA as present in one or more media at the Site remains to be seen. Plaintiff's objection that Interrogatory No. 2(i) seeks information protected by the attorney-client and/or common interest privileges and/or the work-product doctrine is appropriate because this interrogatory subset seeks the identity of persons that "have information" about the subject matter of the subset, it is not limited to persons with personal knowledge. Thus, I personally have "information" about the subject matter because, *inter alia*, I sat through all of the Site Witness depositions taken in this matter.

   With respect to Interrogatory Nos. 3, 4, 5, 8, 9 and 14, I read your letter as continuing to seek some form of statement by Plaintiff concerning the "equitable share of each party that Plaintiff presently believes is appropriate." None of these Interrogatories, however, asks for such a statement, and none be read to do so. Moreover, the Court in this matter will determine at trial "equitable shares" by "using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f)(1). Factual discovery is not yet complete. Expert discovery

Richard C. Biedrzycki, Esquire
November 18, 2004
Page 3

has not yet begun. Plaintiff has not "presently" formed a belief as to the any person's equitable
share, and believes it would be grossly premature to do so before factual and expert discovery is
completed. With respect to the schedules of costs and invoices, you were provided on
September 15, 2004 by e-mail with tables tracking in great detail each dollar spent by Plaintiff in
the performance of work pursuant to the two Consent Decrees, and copies of those tables along
with complete invoice packages supporting those tables are available for inspection and copying
in the Document Repository. On September 28, 2004, also by e-mail, you were provided with
trust ledgers from the Pitney Hardin Kipp & Szuch accounts with respect to response costs
payments. The files backing up those ledgers are available at Pitney Hardin Kipp & Szuch for
inspection and copying. If you would like to review any of these schedules or the underlying
invoice packages, simply call Michelle New in Philadelphia and she will make them available to
you.

With respect to Interrogatory Nos. 11, 12 and 13, your letter asks that Plaintiff set
forth "the dollar amounts of the Response Costs and attorney's fees claimed by Plaintiff."
Plaintiff's Response Costs incurred to date are reflected in the de maximis tables previously
produced reflecting response actions undertaken by Plaintiff pursuant to the Consent Decrees.
Those costs continue every month. Plaintiff's Response Costs also include payments made to
date and that will continue to made directly to EPA reimbursing EPA for EPA's Past Response
Costs, Interim Response Costs, and Future Response Costs, as those terms are defined in the
Consent Decrees. Copies of the invoices from EPA and payments made by Plaintiff with respect
to those invoices are available for inspection and copying in the Document Repository. With
respect to attorney's fees, Plaintiff does not now seek recovery of attorney's fees paid to PHKS.
Plaintiff will make available for inspection and copying records concerning attorney's fees paid
to Montgomery McCracken Walker & Rhoads for which Plaintiff is seeking recovery. Any of
the records discussed in this paragraph are available by simply calling Ms. New.

With respect to Interrogatory Nos. 15, 16, and 18, Plaintiff does not understand
why Ashland believes that Plaintiff has "overlooked" the language in those Interrogatories that
refer to "each member" of the BFAG. Please explain the basis of Ashland's belief. Moreover,
with respect to your statement that the Interrogatories are not vague, and that they "seek, quite
simply, information as to each disposal site of the waste of each BFAG member during the
relevant time period" please explain which language in which of the enumerated Interrogatories
seeks such information. Plaintiff does not, and cannot, read any of those Interrogatories to seek
such information.

With respect to Document Request No. 5, each response by Plaintiff to discovery
served by other parties has been provided to Ashland. Documents made available by Plaintiff for
inspection and copying in response to any such discovery requests were identified in those
responses and will be made available to Ashland as well.

With respect to Document Request Nos. 6, 7 and 8, your letter does not explain
what Ashland meant by the phrase "investigation files and other documents" but simply says the
phrase is not vague or ambiguous. Please explain exactly what types of "files and other

Richard C. Biedrzycki, Esquire
November 18, 2004
Page 4

documents" you believe these requests involve, and Plaintiff will reconsider its vagueness
objection. EPA's "investigation documents" are included in the Administrative Record in the
Document Repository, because that is one of the elements of EPA Administrative Records. It is
not Plaintiff's burden to go through EPA's Administrative Record to determine which elements
of the Administrative Record constitute "investigation files and other documents." Moreover,
Plaintiff strongly disagrees with the suggestion in your letter that pages from deposition
transcript of persons unaffiliated with Plaintiff and documents created by others do not constitute
attorney work product when combined by an attorney into discreet files specific to particular
defendants or other persons. It is the very decision to include some or all of a particular
transcript or document in such a file that constitutes attorney work product. As stated in
Plaintiff's objection, any such documents, transcripts, or portions thereof that might be contained
in files created and maintained by Plaintiff in anticipation of or as part of this litigation are
privileged even though the documents and transcripts themselves may not be. In any event, any
such documents and transcripts or portions thereof so assembled have been produced in their
entirety as part of this litigation.

    With respect to Document Request No. 9, you have been provided by e-mail with
copies of settlement agreements entered into to date with Defendants in this litigation.
Additional copies of those documents are available by simply phoning Ms. New. You have been
provided with two settlement agreements with the United States (on behalf of the Navy), both of
which have been filed with the Court in conjunction with Motions to approve those settlements.
The Document Repository contains two Administrative Consent Orders and two Consent
Decrees that constitute settlements between the Plaintiffs and EPA. Those documents are
available by phone call to Ms. New.

    With respect to Document Request No. 10, almost any communication by anyone
in the world and having to do with the Boarhead Farm Site could be a communication "relating
to the presence of and clean-up of hazardous substances at the Site." It is thus very unclear
exactly what "communications" Ashland is seeking by this request. In any event, Plaintiff has
made available in the Document Repository all reports and correspondence by it to USEPA and
PADEP or from those agencies to Plaintiff. They can be immediately identified on the index to
the Document Repository.

    With respect to Document Request No. 11, the phrase "documents embodying,
evidencing, referring or relating to any and all agreements entered by BFAG relating to the
clean-up of the Site" could be read to refer to the two Administrative Consent Orders, the two
Consent Decrees, the various agreements of the OU-1 and OU-2 Groups, contracts between
Plaintiff and the various Site contractors, and every single piece of paper reporting on, dealing
with, or otherwise discussing the clean-up work, including each and every invoice, cover letter,
payment check, cover letters thereto, etc. The request is thus, vague, confusing, ambiguous,
overbroad, and unduly burdensome.

Richard C. Biedrzycki, Esquire
November 18, 2004
Page 5

       With respect to Document Request No. 12, please identify what categories of documents Ashland believes would be documents that "designate or refer to BFAG, including its members, as Potentially Responsible Parties."

       With respect to Document Request Nos. 15-17, explaining that Ashland believes that the documents sought in this Request "go to the very heart of Plaintiff's claims and allegations," does not clarify what types of documents Ashland is seeking. Please identify by category or otherwise what type of documents Ashland believes would be responsive to Request Nos. 15-17.

       Finally, I do not understand the second to last sentence in your letter. Plaintiff fully intends to pursue discovery from or relating to Ashland, including the relief sought in our Motion to Compel and any and all depositions we wish to take relevant to Ashland. Indeed, Ashland was granted an extension of time to respond to that Motion at least in part because of your representation that at least one purpose for the extension of time was so that Ashland and Plaintiff could try to amicably resolve the deficiencies in the Ashland discovery responses identified in the Motion. The one and only communication from you that could be characterized as such an attempt is one in which you asked that the Motion with withdrawn in return for nothing whatsoever further from Ashland in terms of either information or document production.

                    Very truly yours,

                    Glenn A. Harris

GAH/dmn
cc:    Counsel on Attached List

Richard C. Biedrzycki, Esquire
November 18, 2004
Page 6

## *Boarhead Farm Defendants' Service List*

Thomas W. Sabino, Esquire
Wolff & Samson, PC
The Offices at Crystal Lake
One Boland Drive
West Orange, New Jersey 07052
Phone: 973-325-1500
Fax: 973-325-1501
e-mail: tsabino@wolffsamson.com

*-and-*

Robert M. Morris, Esquire
Morris & Adelman, P.C.
1920 Chestnut Street
P.O. Box 30477
Philadelphia, PA 19103
Phone: 215-568-5621
Fax: 215-568-3253
e-mail: rmmorris@morrisadelman.com
*Advanced Environmental Technology Corp.*


Melissa Flax, Esquire
Carella, Byrne, Bain, Gilfillian, Cecchi,
        Stewart & Olstein, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068-1739
Phone: 973-994-1700
Fax: 973-994-1744
e-mail: mflax@carellabyrne.com
*Handy & Harman Tube Company*


Lynn Wright, Esquire
Edwards & Angell, LLP
750 Lexington Avenue
New York, New York 10022-1200
Phone: 212-308-4411
Fax: 212-308-4844


VH_DOCS_A #172407 v1

Richard C. Biedrzycki, Esquire
November 18, 2004
Page 7


e-mail: lwright@ealaw.com
*Carpenter Technology Corporation*


Seth v.d.H. Cooley, Esquire
Duane Morris LLP
Suite 4200, One Liberty Place
Philadelphia, PA  19103-7396
Phone:  215-979-1000
Fax:  215-979-1020
e-mail:  secooley@duanemorris.com
*Flexible Circuits & Etched Circuits*

*-and-*

A. Nicole Friant, Esquire
Duane Morris LLP
One Liberty Place
Suite 4200
Philadelphia, PA  19103-7396
Phone:  215-979-1818
Fax:  215-979-1020
e-mail:  anfriant@duanemorris.com


Stephen P. Chawaga, Esquire
Monteverde, McAlee & Hurd
One Penn Center at Suburban Station
Suite 1500
1617 John F. Kennedy Boulevard
Philadelphia, PA  19103-1815
Phone:  215-557-2900
Fax:  215-557-2990
e-mail:  schawaga@monteverde.com
*Merit Metals Products Corp.*


Andrew P. Foster, Esquire
Drinker, Biddle & Reath, LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA  19103-6996
Phone:  215-998-2700

Richard C. Biedrzycki, Esquire
November 18, 2004
Page 8


Fax: 215-988-2757
e-mail: Andrew.foster@dbr.com
*Rahns Specialty Metals, Inc.*
*Techalloy Co., Inc.*
*Thomas & Betts Corporation*

         -and-

Adina Marie Bingham, Esquire
Drinker Biddle & Reath LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA  19103-6996
Phone:  215-988-2700
Fax:  215-988-2757
e-mail:  Adina.Bingham@dbr.com


Edward Fackenthal, Esquire
Law Office of Edward Fackenthal
One Montgomery Plaza
Suite 209
Norristown, PA  19401
Phone: (610) 279-3370
Fax:  (610) 279-0696
*NRM Investment Co.*
e-mail:  edwardfackenthal@cs.com


Richard C. Biedrzycki, Esquire
Phelan, Pettit & Biedrzycki
The North American Building
Suite 1600
121 South Broad Street
Philadelphia, PA  19107
Phone:  215-546-0500
Fax:  215-546-9444
e-mail:  rbiedrzycki@pp-b.com
*Ashland, Inc.*

# EXHIBIT "E"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BOARHEAD FARM AGREEMENT GROUP,  :

                 Plaintiff,  :

             v.  :         Civil Action No. 02-3830

ADVANCED ENVIRONMENTAL  :
TECHNOLOGY CORPORATION, et al.,  :

            Defendants  :

## ANSWERS AND OBJECTIONS OF DEFENDANT ASHLAND INC. TO PLAINTIFF'S INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS OF PLAINTIFF BOARHEAD FARM AGREEMENT GROUP

Defendant Ashland Inc., designated by Plaintiff as Ashland Chemical Company (hereinafter "Ashland"), by and through its undersigned counsel, hereby responds to Plaintiff's Interrogatories and Request for Production of Documents directed to Ashland.

Ashland's specific objections to each of Plaintiff's Interrogatories are in addition to the general limitations and objections set forth in the following General Objections and General Statement, which limitations and objections form a part of the response to each and every Interrogatory. These General Objections are not waived, limited, or restricted by any of the more specific responses or objections to any particular Interrogatory.

Identify all documents that refer to, relate to, support or contradict your response to this interrogatory and its subparts.

## INTERROGATORY NO.10

In answering Interrogatory No. 1 above, if you take the position that materials were directly or indirectly taken from any of your facilities but that you do not have any belief, reason to believe or surmise that such materials were transported to the Site, set forth all facts upon which you base that position and identify all documents that refer to, relate to, support or contradict your position.

ANSWER:

See documents previously produced with Ashland's initial disclosures and its 104(e) responses, including Ashland's waste disposal ledgers, none of which indicate that any wastes from Ashland's Great Meadows facility were disposed of at the Boarhead Farms Site. Furthermore, Arthur T. Curley, former plant manager of Ashland's Great Meadows facility, and William Charles Olasin have previously testified in other CERCLA actions that, to the best of their information and knowledge and based upon their review of all available documents and records, no wastes from Ashland's Great Meadows, New Jersey facility were transported to and/or disposed of at the Boarhead Farms Site. In addition, see testimony of principals and employees of DeRewal Chemical Company, Environmental Chemical Control, Inc. and Boarhead Corporation in this case and in the administrative proceedings instituted by the United States Environmental Protection Agency, copies of the transcripts of which are believed to be in Plaintiff's possession.

By way of further response, all evidence adduced in this action indicates that any and all wastes from Ashland's Great Meadows, New Jersey facility transported by DeRewal Chemical Company were transported to DeRewal's Wissinoming facility in Philadelphia and not to any other facility, including the Boarhead Farms Site, during the period of August 1976 through at least March 1977. During that entire time period, the evidence to date has disclosed that the Wissinoming facility had the necessary equipment and was fully operational for the storage, treatment, neutralization and disposal of acid wastes of the type transported by AETC/DeRewal from Ashland's Great Meadows, New Jersey facility. No such equipment was available and/or operational at the Boarhead Farms Site. Furthermore, documents produced by AETC reflect that sewer charges by the City of Philadelphia were incurred by DeRewal during the relevant period for the disposal at the Wissinoming facility of Ashland's spent acid waste transported by DeRewal. Relatedly,

Ashland thereafter entered into a settlement and release with the City of Philadelphia and the Pennsylvania Department of Environmental Protection in 1980 relative to the alleged improper disposal of Ashland's alleged spent acid waste by DeRewal at the Wissinoming facility during the relevant time period. Furthermore, former employees of DeRewal have testified in this action that no Ashland acid or other wastes were hauled by DeRewal after the Wissinoming facility was shut down in or around March of 1997, further indicating that the Boarhead Farms Site was not used as a disposal facility for Ashland waste streams. Furthermore, Ashland's waste ledgers and shipping records indicate that shortly after the closing of the Wissinoming facility in or about March of 1977, AETC did very little hauling of wastes from Ashland's Great Meadows facility and that the wastes that it did haul went to other facilities reflected in said records including, but not limited to, Modern Transport and All County Environmental.

Furthermore, as reflected in the documents previously produced, Mr. Curley personally observed the neutralization of Ashland's spent acid wastes from its Great Meadows facility being conducted at the Wissinoming facility and further personally observed a tank wagon of Ashland's spent acid waste from its Great Meadows facility en route therefrom to the Wissinoming facility. Furthermore, Manfred DeRewal informed Mr. Curley that Ashland's spent acid wastes that were not neutralized at the Wissinoming facility were resold to other parties by DeRewal for ore extraction and agricultural purposes, and that the spent acid that was neutralized was then deposited into the sewer system at the Wissinoming facility, a process that had been observed by Mr. Curley. Furthermore, the drivers of tank trucks hauling spent acid wastes from Ashland's Great Meadows facility have testified that they hauled such wastes during the period of time that the Wissinoming facility was operational and that they did not pick up any wastes from the Great Meadows facility other than spent acid. Furthermore, Plaintiff has not produced any documents or other credible evidence, other than highly suspect and equivocal testimony of certain drivers formerly employed by DeRewal, reflecting that any waste streams from Ashland's Great Meadows facility were transported to and disposed of at the Boarhead Farms Site.

See also Ashland's above answer to Interrogatory no. 1(f). Ashland reserves the right to supplement its Answer to this Interrogatory as its investigation and discovery are continuing.

INTERROGATORY NO. 11

If it is alleged in any document relating to the Site, including without limitation any document filed with the court or served on you in connection with the Case, or if you believe, have reason to believe, or surmise, that a party will contend that you or a related entity is a successor to an entity potentially liable at the Site, set forth all facts and theories upon which you

IV.    **DOCUMENT REQUESTS**

1.    All documents requested to be identified in the Interrogatories.

RESPONSE:

   **See Ashland's above answers and objections to Plaintiff's Interrogatories and documents produced in connection with Ashland's initial disclosures.**

2.    All other documents referring or relating to wastes from the Great Meadows Facility or from any other facility which were sent or which you believe, have reason to believe or surmise may have been sent directly or indirectly to the Site.

RESPONSE:

   As Ashland does not believe or have reason to believe that any waste from its Great Meadows, New Jersey facility or any other facility was sent, directly or indirectly, to the Boarhead Farms Site during any part of the relevant time period, this Request is not applicable. By way of further response, see Ashland's above answers and objections to Plaintiff's Interrogatories and documents previously produced in connection Ashland's initial disclosures and its 104(e) responses.

RICHARD C. BIEDRZYCKI, ESQUIRE
Attorney I.D. No. 30604
PHELAN, PETTIT & BIEDRZYCKI
121 South Broad Street
Suite 1600
Philadelphia, PA 19107
(215) 546-0500

Counsel for Ashland Inc., designated by Plaintiff as Ashland Chemical Company

Date:____July 26, 2004____

G:\DATA\1357-29\DiscAns-Rogs-BFAG.wpd

30

# EXHIBIT "F"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BOARHEAD FARM AGREEMENT      :
GROUP,

         :

         Plaintiff,

         :

     v.

         :

ADVANCED ENVIRONMENTAL      :     Civil Action
TECHNOLOGY CORPORATION;
ASHLAND CHEMICAL COMPANY;     :     02-CV-3830
BOARHEAD CORPORATION;
CARPENTER TECHNOLOGY      :     Judge Legrome D. Davis
CORPORATION; CROWN METRO,
INC.; DIAZ CHEMICAL      :
CORPORATION; EMHART
INDUSTRIES, INC.; ETCHED      :
CIRCUITS, INC.; fcg, INC.; GLOBE
DISPOSAL CO., INC; GLOBE-      :
WASTECH, INC.; HANDY & HARMAN
TUBE COMPANY, INC.; KNOLL, INC.;     :
KNOLL INTERNATIONAL, INC.;
MERIT METAL PRODUCTS      :
CORPORATION; NOVARTIS
CORPORATION; NRM INVESTMENT     :
COMPANY;
PLYMOUTH TUBE COMPANY;      :
QUIKLINE DESIGN AND
MANUFACTURING CO.; RAHNS      :
SPECIALTY METALS, INC.; ROHM
AND HAAS COMPANY; SIMON      :
WRECKING CO., INC.; TECHALLOY
CO., INC.; THOMAS & BETTS      :
CORPORATION; UNISYS
CORPORATION; UNITED STATES OF     :
AMERICA DEPARTMENT OF NAVY,

         :

         Defendants.      :

## THIRD AMENDED COMPLAINT

     Plaintiff Boarhead Farm Agreement Group, by and through its attorneys, by way of

Complaint against the Defendants hereby states as follows:

## FACTUAL BACKGROUND

1.  Plaintiff seeks contribution from Defendants, including an allocation by the Court of response costs as between Plaintiff and Defendants using such equitable factors as the Court determines are appropriate, for the response costs that Plaintiff has incurred and the damages that Plaintiff has suffered as a result of releases or threatened releases of one or more hazardous substance as defined by Section 101 (14) of the Comprehensive Environmental Response, Compensation and Liability Act, as amended, ("CERCLA"), 42 U.S.C. § 9601 (14), and Section 103 of the Pennsylvania Hazardous Sites Cleanup Act ("HSCA"), 35 PA. CONS. STAT. § 6020.103 ("Hazardous Substances"), at or from the Boarhead Farms Superfund Site, Lonely Cottage Road, Upper Black Eddy, Bridgeton Township, Bucks County, Pennsylvania (the "Site").  Plaintiff also seeks a declaratory judgment that Defendants are liable to Plaintiff for contribution for any and all response costs that Plaintiff will or may incur and for any and all damages that Plaintiff will or may suffer in the future as a result of releases, threatened releases, or discharges of Hazardous Substances at or from the Site.

2.  Manfred DeRewal ("DeRewal") incorporated Boarhead Corporation in 1969. In addition, DeRewal incorporated and operated DeRewal Chemical Company, Inc. ("DeRewal Chemical"), a hauler of waste materials.

3.  In 1969, Boarhead Corporation purchased the Site.  The Site is and was, at all relevant times, a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S. § 9601(9).

4.  From the time of purchase until approximately 1977, the Site was used for, among other things, the disposal of Hazardous Substances.

5.  In the early 1970s, the Bucks County Department of Health (the "DOH"), responding to complaints of dead fish, dead plant life, and other environmental and public health

concerns, investigated the Site. The DOH noted the following at the Site: pungent odors; drums on an open trailer; drums awaiting disposal; empty tanks awaiting removal; a bulldozer burying old drums; 40 drums filled with solvent; and empty tanker trucks parked at the Site.

6. The DOH obtained a search warrant and searched the Site on March 5, 1973. The DOH documented the following at the Site: improperly stored chemicals; chemicals leaking from 55-gallon drums; liquid and solid waste on the ground; chemicals leaking into waste pools, on-Site lagoons, and vats; copper ammonia sulfate; paint solvents; arsenic pentoxide; pesticides; copper naphtholate; and a cleared area in the northeast section of the Site containing drums.

7. In October of 1973, a tank truck discharged approximately 3,000 gallons of ferrous chloride at the Site, for which Boarhead Corporation was found to be in violation of the Pennsylvania Clean Streams Law, 35 PA. CONS. STAT. §§ 691.1 *et seq.*

8. Soil samples taken from the Site in 1974 revealed the following: soil pH levels of 2.9 and the presence of chloride, iron, chromium, copper, zinc, and nickel.

9. In September of 1976, a tank truck released approximately 3,000 gallons of sulfuric acid on the Site, resulting in the evacuation of 34 local residents.

10. In 1984, the United States Environmental Protection Agency ("USEPA") performed a Site inspection. On March 31, 1989, the USEPA placed the Site on the National Priorities List (the "NPL"), 40 C.F.R Part 300, Appendix B, a national list of hazardous waste sites that the USEPA has determined may pose a threat to health, welfare, and the environment. The NPL was established under the National Contingency Plan (the "NCP"), 40 C.F.R. Part 300, as required by Section 105(a) of CERCLA, 42 U.S.C. § 9605(a).

11. The USEPA has conducted three CERCLA removal actions at the Site. In connection with these removal actions, the USEPA located and removed from the Site 2,600 drums as well as contaminated soil. Contaminated groundwater is being treated at an on-site treatment facility.

12. Under an administrative consent order, USEPA Docket Number: III-92-66-DC, General Ceramics, Inc., performed a fourth removal action to address the presence of radioactive waste at the Site.

13. The USEPA completed a Remedial Investigation and Feasibility Study for the Site in July 1997.

14. On or about November 18, 1998, the USEPA issued a Record of Decision (the "ROD") selecting a remedial action for the Site. The Commonwealth of Pennsylvania concurred in this remedy selection.

15. Subsequent to the issuance of the ROD, the USEPA determined to implement the remedial action described in the ROD in two operable units ("OUs"). The USEPA determined that, in general, OU-1 would address: groundwater extraction, metal precipitation, and air stripping; the installation of additional monitoring wells; the implementation of institutional controls and monitoring for OU-1; residential water treatment; and phytoremediation. The USEPA determined that, in general, OU-2 would address: soil aeration and the treatment of volatile organic compound hot spots; the excavation and off-site disposal of buried drums; and the implementation of institutional controls and monitoring for OU-2.

16. Plaintiff Boarhead Farm Agreement Group is an unincorporated association comprised of Agere Systems Inc.; Cytec Industries Inc.; Ford Motor Company; SPS Technologies, Inc.; and TI Group Automotive Systems LLC whereby those companies have

agreed collectively to undertake the cleanup work comprising OU-1 and OU-2, to otherwise resolve the claims of EPA related to the Site, and to seek contribution from the Defendants in this civil action. The members of the Boarhead Farm Agreement Group have agreed that they will, at some future time, and not in this civil action, reach a final allocation among themselves applicable to all costs associated with group activities, including the costs of the cleanup work comprising OU-1 and OU-2.

17. Although denying that they are liable parties under Section 107 of CERCLA, 42 U.S.C. § 9607, Cytec Industries Inc., Ford Motor Company, and SPS Technologies, Inc. are parties to both an Administrative Order on Consent for Remedial Design, USEPA Docket No. III-2000-002-DC, entered in February 2000 (the "OU-1 AOC") and a Consent Decree entered by this Court on or about September 28, 2000 (the "OU-1 Consent Decree") obligating them to perform the OU-1 remedial design and remedial action (the "OU-1 RD/RA") at the Site.

18. The Boarhead Group members have agreed to collectively fund and perform the OU-1 RD/RA and have entered into an agreement with two other entities (the "OU-1 Group Agreement") whereby the parties to that agreement ("the OU-1 Parties") agreed to collectively fund and perform the OU-1 RD/RA. The Boarhead Group and the two other entities collectively, and not any of the OU-1 Parties individually, has taken to date and will in the future take the activities necessary to perform the OU-1 RD/RA. Specifically, the activities necessary for performance of the OU-1 RD/RA have been undertaken on behalf of the Boarhead Group (and the two other entities) by contractors hired by and paid by them. Those contractors were not hired by or paid by any of the OU-1 Parties individually, nor did they do any of the OU-1 RD/RA work on behalf of any of the OU-1 Parties individually.

19. The OU-1 Group Agreement obligates each of the OU-1 Parties to contribute funds to an OU-1 Group trust account ("the OU-1 Trust Account") in amounts collectively sufficient to pay for the performance by the OU-1 Group of the OU-1 RD/RA. Such contributions are made on the basis of an interim allocation among the OU-1 Parties. All costs of the activities to perform the OU-1 RD/RA have been paid for and will in the future be paid for from the OU-1 Trust Account.

20. Although denying that they are liable parties under Section 107 of CERCLA, 42 U.S.C. § 9607, Cytec Industries Inc., Ford Motor Company, SPS Technologies, Inc., and TI Group Automotive Systems LLC are signatories to an Administrative Order on Consent for Remedial Design, EPA Docket No. III – 2001 – 0010 – DC, effective October 17, 2001 (the "OU-2 AOC") and a Consent Decree (the "OU-2 Consent Decree") entered by this Court on March 14, 2002 obligating them to perform the OU-2 remedial design and remedial action (the "OU-2 RD/RA") at the Site and to reimburse the USEPA both for $7,000,000 in response costs incurred and accounted for prior to July 2000 and for an as yet undetermined amount of response costs incurred subsequent to July 2000.

21. The Boarhead Group members have agreed to collectively fund and perform the OU-2 RD/RA. The Boarhead Group, and not any of the Boarhead Group members individually, has taken to date and will in the future take the activities necessary to perform the OU-2 RD/RA. Specifically, the activities necessary for performance of the OU-2 RD/RA have been undertaken on behalf of the Boarhead Group by contractors hired by and paid by the Boarhead Group. Those contractors were not hired by or paid by any of the Boarhead Group members individually, nor did they do any of the OU-2 RD/RA work on behalf of any of the Boarhead Group members individually.

22. The Boarhead Group members contribute funds to an OU-2 Group trust account ("the OU-2 Trust Account") in amounts collectively sufficient to pay for the performance by the Boarhead Group of the OU-2 RD/RA. Such contributions are made on the basis of an interim allocation among the Boarhead Group. All costs of the activities to perform the OU-2 RD/RA and to perform the other requirements of the OU-2 Consent Decree have been paid for and will in the future be paid for from the OU-2 Trust Account.

23. Plaintiff has incurred costs and damages, including attorneys fees, in the course of performing the requirements of the OU-1 and OU-2 AOCs and Consent Decrees. These costs constitute necessary costs of response, as defined in Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), incurred consistently with the NCP, within the meaning of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a) (collectively, the "Response Costs"). Plaintiff incurred the Response Costs because of releases or threatened releases of Hazardous Substances at or from the Site. The Response Costs incurred by Plaintiff are also reasonable and necessary or appropriate costs consistent with Section 702(a)(3) of HSCA, 35 PA. CONS. STAT. § 6020.703(a)(3).

24. Plaintiff anticipates that it will incur additional necessary costs of response, consistent with the NCP, and will reimburse the USEPA for its administrative and oversight costs in the future ("Future Response Costs") in connection with the Site.

### JURISDICTION AND VENUE

25. This action arises under Section 113 of CERCLA, 42 U.S.C. § 9613, and Section 702(a)(3) of HSCA, 35 PA. CONS. STAT. § 6020.702(a)(3).

26. This Court has jurisdiction over the subject matter of this action pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9313(b), 28 U.S.C. §§ 1331 and 1367. This Court has supplemental jurisdiction over the state claims based on 28 U.S.C. § 1367.

27.     This Court has authority to enter a declaratory judgment regarding the rights and liabilities of the parties pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, and Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2).

28.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) and Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), because the releases or threatened release of Hazardous Substances, wastes, pollutants, and contaminants alleged herein occurred and the claims set forth herein arose in the Eastern District of Pennsylvania.

## PARTIES

A.     The Plaintiff

29. Plaintiff Boarhead Farm Agreement Group is a person as defined by Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

B.     The Defendants

### Defendant Advanced Environmental Technology Corporation

30. Defendant Advanced Environmental Technology Corporation ("AETC") is a New Jersey corporation with a principal place of business in Flanders, New Jersey.

31. AETC arranged with DeRewel Chemical for the disposal of Hazardous Substances from Defendants Ashland Chemical Company ("Ashland") and Diaz Chemical Corporation ("Diaz").

32. AETC transported Hazardous Substances to the Site for disposal, having selected the Site for that purpose.

### Defendant Ashland Chemical Company

33. Defendant Ashland is a Kentucky corporation with a principal place of business in Russell, Kentucky.

34. Ashland used AETC and DeRewal Chemical to remove industrial wastes from its Pennsylvania plant.

35. Ashland's waste was disposed of at the Site.

36. Ashland's waste contained Hazardous Substances.

### Defendant Boarhead Corporation

37. Defendant Boarhead Corporation is a Pennsylvania corporation with a principal place of business in Revere, Pennsylvania. Boarhead Corporation is the current owner of the Site and was the owner and operator of the Site at the time of the disposal of Hazardous Substances.

### Defendant Carpenter Technology Corporation

38. Defendant Carpenter Technology Corporation ("Carpenter Technology") is a Delaware corporation with a principal place of business in Reading, Pennsylvania.

39. Carpenter Technology used DeRewal Chemical for the removal of waste pickling solution from its Reading, Pennsylvania plant.

40. Carpenter Technology's waste was disposed of at the Site.

41. Carpenter Technology's waste contained Hazardous Substances.

### Defendants Crown Metro, Inc. and Emhart Industries, Inc.

42. Defendant Crown Metro, Inc. ("Crown") is a South Carolina corporation with a principal place of business in Greenville, South Carolina.

43. Defendant Emhart Industries, Inc. ("Emhart") is a Connecticut corporation with a registered office in Hartford, Connecticut.

44. USM Corporation ("USM"), formerly a New Jersey corporation, doing business as Bostik South, Inc., used DeRewal Chemical for the removal of waste acid from its Greenville, South Carolina plant.

45. USM's waste was disposed of at the Site.

46. USM's waste contained Hazardous Substances.

47. Emhart is a successor-in-interest to USM through the merger of USM into Emhart.

48. In or about 1980 USM sold the Bostik South, Inc. business, including the Greenville, South Carolina plant, to Bengal Corporation.

49. Bengal Corporation thereafter continued the operation of the Bostik South, Inc. business without change from the way the business was operated while the business was owned by USM.

50. Bengal thereafter changed its name to Crown.

51. Crown is a successor-in-interest to Emhart with respect to liability arising from the Greenville, South Carolina plant.

## Defendant Diaz Chemical Corporation

52. Defendant Diaz is a New York corporation with a principal place of business in Holley, New York.

53. Diaz used AETC and DeRewal Chemical to remove industrial wastes from its Holley, New York, plant.

54. Diaz's waste was disposed of at the Site.

55. Diaz's waste contained Hazardous Substances.

### Defendant Etched Circuits, Inc.

56. Defendant Etched Circuits, Inc. ("Etched Circuits") is a New Jersey corporation with a principal place of business in Warminster, Pennsylvania.

57. Etched Circuits, Inc. used DeRewel Chemical to remove industrial waste from its Cherry Hill, New Jersey plant.

58. Etched Circuits' waste was disposed of at the Site.

59. Etched Circuits' waste contained Hazardous Substances.

### Defendant fcg, inc.
### (a/k/a Flexible Circuits, Inc.)

60. Defendant fcg, inc. (a/k/a Flexible Circuits, Inc.) ("fcg") is a Pennsylvania corporation with a principal place of business in Warrington, Pennsylvania.

61. Fcg used DeRewal Chemical to remove spent etchings and other industrial waste from its Warrington, Pennsylvania plant.

62. Fcg's waste was disposed of at the Site.

63. Fcg's waste contained Hazardous Substances.

64. In 1969 fcg became the owner of all outstanding stock of Etched Circuits and thereafter operated the Etched Circuits facility in Cherry Hill, New Jersey. Fcg is thus a person

who arranged for the transport, disposal, or treatment of Hazardous Substances from the Etched

Circuits facility, which Hazardous Substances were disposed of at the Site.

### Defendants Globe Disposal Co., Inc. and Globe-Wastech, Inc.

65. Defendant Globe Disposal Co., Inc. ("Globe") is a Pennsylvania corporation

with a principal place of business in Norristown, Pennsylvania.

66. Defendant Globe-Wastech, Inc. ("Wastech") is a Pennsylvania corporation

with a principal place of business in Skippack, Pennsylvania.

67. Globe arranged with DeRewel Chemical for the disposal of Hazardous

Substances.

68. Globe transported Hazardous Substances to the Site for disposal, having

selected the Site for that purpose.

69. Globe Disposal selected the Site for the disposal of Hazardous Substances.

70. On or about March 1978 the sole shareholder of Globe, Earl T. Kelly, and the

sole shareholder of Waste Techniques Corporation ("WTC"), Francis J. Keel, exchanged each of

their shares in those companies to Wastech.

71. Wastech thereafter continued the operation of Globe without change from the

way Globe operated while its shares were owned by Kelly.

72. Wastech is a successor-in-interest to Globe.

### Defendant Handy & Harman Tube Company, Inc.

73. Defendant Handy & Harman Tube Company, Inc. ("Handy & Harman Tube")

is a Delaware corporation with a principal place of business in Norristown, Pennsylvania.

74. Handy & Harman Tube used DeRewal Chemical to remove industrial waste from its Norristown, Pennsylvania facility.

75. Handy & Harman Tube's waste was disposed at the Site.

76. Handy & Harmon Tube's waste contained Hazardous Substances.

### Defendants Knoll International, Inc. and Knoll, Inc.

77. Defendant Knoll International, Inc. ("Knoll International") is a Delaware corporation with a principal place of business in New York, New York.

78. Art Metal-Knoll Corporation ("Knoll") contracted for the disposal of industrial wastes with DeRewal Chemical from its East Greenville, Pennsylvania facility.

79. Knoll's wastes were disposed of at the Site.

80. Knoll's waste contained Hazardous Substances

81. Knoll International is the successor-in-interest to Knoll through the merger of Knoll into Knoll International.

82. In or about 1990 the business of Knoll International, including the East Greenville facility, was sold to Westinghouse Acquisition Corporation ("Westinghouse"), a Delaware corporation.

83. Westinghouse thereafter continued the operation of the Knoll International business without change from the way the business was operated while it was owned by Knoll International.

84. Westinghouse was merged into Knoll North America, Inc., which was merged into Knoll, Inc., which was merged into T.K.G. Acquisition Corp. T.K.G. Acquisition Corp. was immediately thereafter renamed Knoll, Inc. ("Knoll, Inc.")

85. Defendant Knoll, Inc. is a Delaware corporation with its principal place of business in East Greenville, Pennsylvania and is a successor-in-interest to Knoll International with respect to liability arising from the East Greenville facility.

### Defendant Merit Metal Products Corporation

86. Defendant Merit Metal Products Corporation ("Merit Metal II") is a Pennsylvania corporation with a principal place of business in Warrington, Pennsylvania.

87. Another Pennsylvania corporation also named Merit Metal Products Corporation (Merit Metal I") owned and operated a place of business in Warrington, Pennsylvania from at least 1968 to 1988.

88. Merit Metal I used DeRewal Chemical to remove industrial waste from its Warrington, Pennsylvania facility.

89. Merit Metal I's waste was disposed of at the Site.

90. Merit Metal I's waste contained Hazardous Substances.

91. Merit Metal II purchased the assets and business of Merit Metal I in or about July 1988 and thereafter continued the operation of that business without change from the way the business was operated while the business was owned by Merit Metal I.

92. Merit Metal II is liable as a successor-in-interest to Merit Metal I.

### Defendant Novartis Corporation

93. Defendant Novartis Corporation ("Novartis") is a New York corporation with a principal place of business in Tarrytown, New York.

94. Ciba-Geigy Corporation ("Ciba") used DeRewal Chemical for the removal of waste nitric acid and sulphuric acid from its Cranston, Rhode Island facility.

95. Ciba's waste was disposed of at the Site.

96. Ciba's waste contained Hazardous Substances.

97. Novartis is the corporate successor to Ciba.

## Defendant NRM Investment Company

98. Defendant NRM Investment Company ("NRMC") is a Pennsylvania corporation with its principal place of business in Rosemont, Pennsylvania.

99. From 1974 to 1978 NRMC, then named National Rolling Mills Co., used DeRewal Chemical to dispose of waste pickle liquor solution from its plant located in Malvern, Pennsylvania (the "NRM Plant").

100.    Waste from the NRM Plant was disposed of at the Site.

101.    The NRM Plant waste contained Hazardous Substances.

102.    NRMC is a party to the OU-1 Agreement.

## Defendant Plymouth Tube Company

103.    Defendant Plymouth Tube Company ("Plymouth Tube") is a Michigan corporation with a principal place of business in Warrenville, Illinois.

104.    Plymouth Tube used DeRewal Chemical to dispose of waste pickling solution from its Ellwood Ivins facility in Horsham, Pennsylvania.

105.    Plymouth Tube's waste was disposed of at the Site.

106.    Plymouth Tube's waste pickling solution contained Hazardous Substances.

## Defendant Quikline Design and Manufacturing Co.

107.    Defendant Quikline Design and Manufacturing Co. ("Quikline Design") is a New Jersey corporation with a principal place of business in Gloucester City, New Jersey.

108.    Quikline Design used DeRewal Chemical to dispose of industrial waste from Quikline Design's Cherry Hill, New Jersey facility.

109.    Quikline Design's waste was disposed of at the Site.

110.    Quikline Design's waste contained Hazardous Substances.

## Defendant Rahns Specialty Metals, Inc.

111.    Defendant Rahns Specialty Metals, Inc. ("Rahns") is a Pennsylvania corporation with a principal place of business in Collegeville, Pennsylvania.

112.    In 1991 Rahns acquired the property, premises, and environmental liability associated with Techalloy Co., Inc.'s ("Techalloy") Rahns, Pennsylvania facility.

113.    Thereafter Rahns continued to operate the Techalloy Rahns facility in substantially the same manner in which that facility was operated by Techalloy and otherwise continued the business of Techalloy.

114.    Rahns is a successor-in-interest to Techalloy.

## Rohm and Haas Company

115.    Rohm and Haas Company ("Rohm") is a Pennsylvania Corporation with a principal place of business in Philadelphia, Pennsylvania.

116.    Rohm arranged with a Marvin Jonas business to remove waste from its facilities in the Philadelphia area.

117.    Rohm's waste was disposed of at the Site.

118.    Rohm's waste contained Hazardous Substances.

### Defendant Simon Wrecking Co., Inc.

119.    Defendant Simon Wrecking Co., Inc. ("Simon Wrecking") is a
Pennsylvania corporation with a principal place of business in Williamsport, Pennsylvania.

120.    Simon Wrecking used DeRewel Chemical to remove industrial waste from
Simon Wrecking's Williamsport facility.

121.    Simon Wrecking's waste was disposed of at the Site.

122.    Simon Wrecking's waste contained Hazardous Substances.

### Defendant Techalloy Co., Inc.

123.    Defendant Techalloy is a Pennsylvania corporation with a principal place
of business in Mahway, New Jersey.

124.    Techalloy used DeRewal Chemical to remove spent acids from
Techalloy's Rahns, Pennsylvania facility.

125.    Techalloy's waste was disposed of at the Site.

126.    Techalloy's waste contained Hazardous Substances.

### Defendant Thomas & Betts Corporation

127.    Defendant Thomas & Betts Corporation ("Thomas & Betts") is a
Tennessee corporation with a principal place of business in Memphis, Tennessee.

128.    Ansley Electronics Corporation ("Ansley") used DeRewel Chemical to
remove industrial waste from its New Hope and Perkasie, Pennsylvania facilities.

129.    Wastes from Ansley's New Hope and Perkasie facilities were disposed of at the Site.

130.    Wastes from Ansley's New Hope and Perkasie facilities contained Hazardous Substances.

131.    Ansley was merged into Thomas & Betts in or about January 1, 1984.

132.    Thomas & Betts is a successor-in-interest to Ansley.

## Defendant Unisys Corporation

133.    Defendant Unisys Corporation ("Unisys") is a Delaware corporation with a principal place of business in Blue Bell, Pennsylvania.

134.    Sperry Corporation ("Sperry") used DeRewal Chemical to remove wastes from Sperry's Blue Bell, Pennsylvania, Utica, New York, and other facilities.

135.    Sperry's waste was disposed of at the Site.

136.    Sperry's waste contained Hazardous Substances.

137.    Sperry was merged into Burroughs Corporation. Burroughs Corporation thereafter changed its name to Unisys Corporation.

138.    Unisys is a successor-in-interest to Sperry.

## Defendant United States of America Department of Navy

139.    Defendant the United States of America, Department of Navy is an instrumentality of the United States Government with a base in Willow Grove, Pennsylvania.

140.    The Department of Navy, through the Naval Air Development Center, Warminster, Pennsylvania, used DeRewal Chemical to remove industrial waste.

141.    The Department of Navy's waste was disposed of at the Site.

142.    The Department of Navy's waste contained Hazardous Substances.

## COUNT I

### (CERCLA Section 113(f) Contribution)

143.    The allegations made in paragraphs 1 through 142 are incorporated by reference as if set forth here in full.

144.    Pursuant to Section 113(f) of CERCLA, 42 U.S.C. § 9613(f), any person may seek contribution from any other person who is liable or potentially liable under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

145.    Plaintiff is a "person" within the meaning of Sections 101(21) and 113(f)(1) of CERCLA, 42 U.S.C. §§ 9601(21) and 9613(f)(1).

146.    Each Defendant is a "person" within the meaning of Sections 101(21) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(21) and 9607(a).

147.    Defendants Advanced Environmental Technology Corporation, Globe Disposal Co., Inc., and Globe-Wastech, Inc. (the "Transporter Defendants") are persons who accepted Hazardous Substances for transport to the Site, having selected the Site as the disposal or treatment facility to which such Hazardous Substances would be transported, or are successors-in-interest to such persons, and are liable pursuant to Section 107(a)(4) of CERCLA, 42 U.S.C. § 9607(a)(4).

148.    Defendants AETC, Ashland, Carpenter Technology, Crown, Diaz; Emhart, fcg, Globe, Globe-Wastech, Inc. Handy & Harman Tube, Knoll, Knoll International, Merit Metal, Novartis, NRMC, Plymouth Tube, Quikline Design, Techalloy, Rahns, Rohm,

Simon Wrecking, Thomas & Betts, Unisys, and the United States of America Department of Navy (collectively, the "Generator/Arranger Defendants") are persons who by contract, agreement or otherwise, arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment of Hazardous Substances owned or possessed by them or by another party or entity, at the Site, or are successors-in-interest to such persons and are liable under Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

149.    The total amount of the wastes transported to the Site by each of the Transporter Defendants was greater than 110 gallons of liquid or greater than 200 pounds of solid materials. None of such wastes were municipal solid waste as defined by CERCLA § 107.

150.    The total amount of the wastes for which the Generator/Arranger Defendants arranged and that were disposed of at the Site was greater than 110 gallons of liquid or greater than 200 pounds of solid materials. None of such wastes were municipal solid waste as defined by CERCLA § 107.

151.    Defendant Boarhead Corporation is liable under Sections 107(a)(1) and 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(1), 42 U.S.C. § 9607(a)(2) as the current owner of the Site, as the owner of the Site at the time of the disposal of Hazardous Substances, and as a person who operated the Site at the time of the disposal of Hazardous Substances.

152.    Pursuant to Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), Plaintiff is entitled to contribution from Defendants for Response Costs incurred and for Future Response Costs to be incurred by Plaintiff in connection with the Site and to an allocation by the Court of the Response Costs and Future Responses Costs as between Plaintiff and Defendants using such equitable factors as the Court determines are appropriate.

WHEREFORE Plaintiff demands judgment in its favor against each of the Defendants, as follows:

(a)     Adjudging, decreeing, and declaring that Defendants are liable pursuant to Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), for contribution to Plaintiff for Response Costs incurred thus far in connection with the Site and awarding damages to Plaintiff in that amount and for Future Response Costs to be incurred by Plaintiff in connection with the Site, together with interest thereon;

(b)     Allocating responsibility for the Response Costs and Future Response Costs as between Plaintiff and Defendants pursuant to Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), using such equitable factors as the Court determines are appropriate;

(c)     Ordering Defendants to provide contribution to Plaintiff for Response Costs related to the Site incurred to date and for all Future Response Costs to be incurred in connection with the Site, together with interest thereon, computed in accordance with Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

(d)     Ordering Defendants to pay Plaintiff its costs of this action, including reasonable attorneys fees; and

(e)     Granting Plaintiff such other, further, and different relief as the Court may deem just and appropriate.

## COUNT II

### (CERCLA Section 113(g)(2) Declaratory Judgment)

153.    The allegations made in paragraphs 1 through 152 are incorporated by reference as if set forth here in full.

154.    A controversy exists between Plaintiff and Defendants insofar as Plaintiff contends, and Defendants deny, that Defendants are liable under CERCLA for contribution for all necessary costs of response incurred and to be incurred by Plaintiff in connection with any response actions taken by Plaintiff at the Site.

155.    Pursuant to CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2), Plaintiff requests entry of a declaratory judgment that holds Defendants liable for all necessary costs of response incurred and to be incurred in connection with any response action taken by Plaintiff at the Site, which judgment shall be binding in any subsequent action to recover further response costs or damages.

WHEREFORE Plaintiff demands judgment in its favor against each of the Defendants, as follows:

(a)    Entering a declaratory judgment on liability pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), in favor of Plaintiff and against Defendants, adjudging, decreeing, and declaring that Defendants are liable to Plaintiff for all Future Response Costs consistent with the NCP that Plaintiff may incur and for all damages that Plaintiff may suffer at or with respect to the Site, together with interest thereon, which judgment will be binding in any subsequent action or actions brought by Plaintiff against Defendants to recover Future Response Costs or damages.

## COUNT III

### (Cost Recovery Under the Pennsylvania Hazardous Sites Cleanup Act)

156.    The allegations made in paragraphs 1 through 155 are incorporated by reference as if set forth here in full.

VH_DOCS_A #118840 v1                                    22

157.    There has been a "release" at the Site within the meaning of Section 103 of HSCA, 35 PA. CONS. STAT. § 6020.103.

158.    Each Defendant is a "person" within the meaning of Section 103 of HSCA, 35 PA. CONS. STAT. § 6020.103.

159.    Plaintiff is a "person" as defined by Section 103 of HSCA, 35 PA. CONS. STAT. § 6020.103.

160.    Each Defendant is a person who has allowed a release and thereby caused a public nuisance pursuant to Section 1101 of HSCA, 35 PA. CONS. STAT. § 6020.1101.

161.    Plaintiff has incurred "reasonable and necessary or appropriate costs" responding to the release and threatened release of Hazardous Substances at the Site pursuant to Section 702 of HSCA, 35 PA. CONS. STAT. § 6020.702(a)(3).

162.    The Transporter Defendants are persons who accepted Hazardous Substances for transport to the Site, having selected the Site as the disposal or treatment facility to which such Hazardous Substances would be transported, or are successors-in-interest to such persons, and are liable to Plaintiff pursuant to Sections 701(a)(3) and 702(a)(3) of HSCA, 35 PA. CONS. STAT. §§ 6020.701(a)(3), 6020.702(a)(3).

163.    The Generator/Arranger Defendants are persons who by contract, agreement or otherwise, arranged for disposal or treatment, or transport for disposal or treatment of Hazardous Substances owned or possessed by them or by another party or entity, at the Site, or are successors-in-interest to such persons, and are liable to Plaintiff pursuant to Sections 701(a)(2) and 702(a)(3) of HSCA, 35 PA. CONS. STAT. §§ 6020.701(a)(2), 6020.702(a)(3).

164.    Defendant Boarhead Corporation is liable to Plaintiff pursuant to Sections 701(a)(1) and 702(a)(3) of HSCA, 35 PA. CONS. STAT. §§ 6020.701(a)(1), 6020.70(a)(3), as a person who owns, owned and/or operated the Site at the time a Hazardous Substance was placed or came to be located on the Site and during the time of a release or threatened release.

165.    Pursuant to Sections 701, 702(a)(3) and 1101 of HSCA, 35 PA. CONS. STAT. §§ 6020.701, 6020.702(a)(3), 6020.1101, Plaintiff is entitled to contribution from Defendants for Response Costs incurred and for Future Response Costs to be incurred by Plaintiff in connection with the Site and to an allocation by the Court of the Response Costs and Future Responses Costs as between Plaintiff and Defendants using such equitable factors as the Court determines are appropriate.

WHEREFORE Plaintiff demands judgment in its favor against each of the Defendants, as follows:

(a)    Adjudging, decreeing, and declaring that Defendants are liable pursuant to Section 702(a)(3) of HSCA, 35 PA. CONS. STAT. § 6020.702(a)(3), for contribution to Plaintiff for Response Costs incurred thus far in connection with the Site and awarding damages to Plaintiff in that amount and for Future Response Costs to be incurred by Plaintiff in connection with the Site, together with interest thereon.

(b)    Allocating responsibility for the Response Costs and Future Response Costs as between Plaintiff and Defendants using such equitable factors as the Court determines are appropriate;

(c)    Ordering Defendants to provide contribution to Plaintiff for Response Costs related to the Site incurred to date and for all Future Response Costs to be

incurred in connection with the Site, together with interest thereon, computed in accordance with

Section 702(b) of HSCA, 35 PA. CONS. STAT. § 6020.702(b).

       (d)    Ordering Defendants to pay Plaintiff its costs of this action,

including reasonable attorneys fees; and

       (e)    Granting Plaintiff such other, further, and different relief as the

Court may deem just and appropriate.

Ballard Spahr Andrews & Ingersoll, LLP

Dated: September 18, 2003        By: _____
                Brian G. Glass, Esquire (#89405)
                Glenn A. Harris, Esquire (#51222)
                Plaza 1000, Suite 500, Main Street
                Voorhees, New Jersey 08043
                Phone: (856) 761-3400

                Attorneys for Plaintiff Boarhead Farm
                Agreement Group

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a true and correct copy of the foregoing Third Amended Complaint to be served by postage prepaid first class mail to all counsel of record this 19th day of September, 2003.

Dated:  September 19, 2003

_____
Brian Glass

# EXHIBIT "G"

# PHELAN, PETTIT & BIEDRZYCKI
## ATTORNEYS AT LAW

JOHN M. PHELAN
RICHARD C. BIEDRZYCKI
JEFFREY L. PETTIT
CHRISTOPHER H. JONES*
RICHARD E. STABINSKI††
JOHN W. PHELAN*
BRENT A. COSSROW*

\* ALSO ADMITTED TO NJ BAR
†† ALSO ADMITTED TO IL BAR

SUITE 1600
THE NORTH AMERICAN BLDG.
121 SOUTH BROAD STREET
PHILADELPHIA, PA 19107

TELEPHONE (215) 546-0500
FACSIMILE (215) 546-9444

December 15, 2004

<u>**VIA FACSIMILE AND FIRST CLASS MAIL**</u>
Glenn M. Harris, Esquire
Ballard, Spahr, Andrews & Ingersoll, LLP
Plaza 1000 - Suite 500
Main Street
Voorhees, NJ 08043-4636

      **RE:**    **Boarhead Farm Agreement Group v.**
           **Advanced Environmental Technology Corporation, et al.**
           <u>**U.S.D.C., E.D.Pa., Civil Action No. 02-3850**</u>

Dear Mr. Harris:

      We are writing once again in a further good faith attempt to resolve a discovery dispute pertaining to Plaintiff's Answers and Objections to Ashland's Interrogatories and Document Requests in the above-referenced matter. We are in receipt of your November 18, 2004 response to our letter of November 12, 2004 that outlined Ashland's positions and suggestions with respect to Plaintiff's responses to those interrogatories and document requests. Although we take issue with Plaintiff's objections to certain of the interrogatories that Plaintiff has labeled as "contention interrogatories" based on the purported prematurity thereof, given the fact that Plaintiff has now taken numerous depositions in this case, including depositions of representatives of Ashland and AETC, we believe that Plaintiff's objection on prematurity grounds now has no possible merit. Thus, we would ask that Plaintiff serve supplemental and amended responses to such interrogatories based on information that the Plaintiff currently possesses.

      As you know, we also take issue with Plaintiff making global designations of documents in the Boarhead Repository and at the Pitney Hardin firm in lieu of narrative responses to certain of Ashland's discovery requests. We continue to believe such responses to be insufficient and improper under the Rules. Thus, we would request that if Plaintiff wishes to respond to interrogatories and document requests by incorporating documents, the specific documents responsive to each discovery request must be identified with particularity, including Bates numbers or other identifying features thereof, to enable Ashland to readily identify, locate and review such documents without having to

PHELAN, PETTIT & BIEDRZYCKI
Glenn M. Harris, Esquire
December 15, 2004
Page 2

conduct a week-long review of tens of thousands of documents, which review would, in any event, still undoubtedly leave Ashland guessing as to which of those many documents Plaintiff believes are the ones responsive to Ashland's interrogatories requesting discreet responses to requests for particularized information.

With respect to Plaintiff's objections generally, we continue to believe that those objections are inappropriate as well as untimely. Thus, we would ask that you reconsider Plaintiff's objections by withdrawing them and furnishing answers to Ashland's interrogatories that are not subject to any such objections.

With respect to Plaintiff's substantive responses and specific objections to certain interrogatories and document requests, which responses we continue to believe are deficient, we have the following additional comments in response to your stated positions and inquiries as set forth in your November 18, 2004 letter:

**Interrogatories**

**Int. No. 1**

In your letter, you make reference to the entirety of the Administrative Record in certain related administrative proceedings, to unidentified transcripts of unknown deponents, and to drums and drum fragments purportedly bearing Ashland Chemical labels. Such statements should be set forth in Plaintiff's answer to this interrogatory, not in a letter which does not constitute a response. I also note that Plaintiff's answers were not sworn as required under the Rules. As stated above, we would also ask that any documents designated by Plaintiff in lieu of a narrative response to a discovery request be identified with particularity. We would also ask that Plaintiff make specific reference to the depositions Plaintiff is incorporating as part of its answer, including the dates thereof, the deponents, and the case in which such depositions were taken.

**Int. No. 2**

Ashland is not, as you suggest, seeking discovery that should more properly be addressed to another party, namely, the EPA. Ashland is simply seeking information that Plaintiff has, from any source, as to what particular hazardous substances, according to Plaintiff's information and belief, the EPA has directed be cleaned up from the Boarhead Farm Site, which clean up the Plaintiff has admittedly agreed to perform. Again, if Plaintiff wishes to incorporate specific documents in lieu of specific information sought in this interrogatory, Ashland's position is that Plaintiff should be required to identify the specific documents containing the specific information sought in the interrogatory. It is of no moment that, as stated in your letter, Plaintiff's Complaint "does not allege any list of specific hazardous substances that the EPA 'directed' be cleaned up, nor does it allege as each such hazardous substance, who generated that substance, who transported and disposed of it at the Site, who arranged for such transportation or any of the other subsets of information sought

PHELAN, PETTIT & BIEDRZYCKI
Glenn M. Harris, Esquire
December 15, 2004
Page 3

in this interrogatory." Clearly, the information sought in this interrogatory constitutes a significant part of the Plaintiff's required proofs in this case and as to which Ashland is entitled to obtain discovery. While we understand that Plaintiff may not have formulated it's final "contentions" with regard to waste identification, Ashland seeks no more than to which it is entitled, i.e., information that Plaintiff currently possesses. Finally, you can rest assured that we are not seeking the disclosure of Plaintiff's counsel's strategies or other work product, as suggested in your letter, but only specific information as to the waste streams at issue.

### Int. Nos. 3, 4, 5, 8, 9 and 14

You apparently misunderstood our offer of compromise in light of your objection to those subparts of these interrogatories seeking an itemization of alleged future remediation costs. While we understand that Ashland's interrogatory did not specifically ask Plaintiff to state a current estimate of the equitable shares of all of the respective parties, we merely suggested that as an alternative to pressing for full and complete answers to these interrogatories seeking a detailed itemization of all past and future response costs. Based on our reading of your letter, it appears that you are not willing to consider our suggested compromise. If so, we therefore must ask that Plaintiff provide the information requested, including a detailed itemization of past and current estimates of future response costs along with the identification of the hazardous substances that have been and are being remediated for which such costs have been and are being incurred by your client members.

While we appreciate the reference in your letter to e-mails of September 15 and 28, 2004, such references should be stated in a formal sworn response to Ashland's Interrogatory if Plaintiff intends the documents enclosed with those e-mails to constitute Plaintiff's response.

### Int. Nos. 11, 12 and 13

While your letter states that Plaintiff's response costs to date are as reflected in the "de maximus tables" previously produced by you, this response should also be set forth in a formal response to this Interrogatory and not in an unsworn letter. We appreciate your offer to make responsive documents available; however, we would ask that the documents requested be specifically referenced in a formal answer to this interrogatory.

### Int. Nos. 15, 16 and 18

Your November 18 letter expresses puzzlement at our concern that Plaintiff's answers to these interrogatories were made by the association known as the Boarhead Farm Agreement Group rather than by the individual members of the Group. Our concern was simply due to the fact that Plaintiff's answers to these interrogatories were presented in the singular tense on behalf of "it" rather than "they". In any event, so that it is clear that Plaintiff's responses to these interrogatories are made on behalf of each member of the Group, we would ask that Plaintiff formally amend its responses to these interrogatories by indicating that Plaintiff's responses are being provided on behalf

PHELAN, PETTIT & BIEDRZYCKI
Glenn M. Harris, Esquire
December 15, 2004
Page 4

of each member of the Plaintiff Group, and that affidavits on behalf of all of the Group member companies accompany Plaintiff's answers.

We also continue to take exception to Plaintiff's response that Plaintiff has "no independent knowledge" of the hazardous substances disposed of at the Boarhead Site. Our discovery request is not limited to information as to which Plaintiff has such "independent knowledge", but seeks information of which Plaintiff, including each group member, is aware from any source.

**Document Requests**

**Request No. 1**

We have set forth our position with respect to Plaintiff's response to Request no. 1 in our letter of November 12, 2004. Your letter of November 18, 2004 does not separately address that Request. In any event, our position as set forth in our earlier letter remains the same.

**Request No. 5**

We would continue to request that Plaintiff make specific reference to the particular documents responsive to this request so that Ashland will have a reasonable opportunity to identify and locate the particular documents requested.

**Request Nos. 6, 7 and 8**

We are troubled by your continuing objection to Ashland's request for copies of "investigation files" as vague and ambiguous. A request for investigatory documents is, as you well know, a standard discovery request and its meaning cannot be seriously questioned. Furthermore, Ashland does not seek the disclosure of Plaintiff's counsel's thought processes or other work product prepared in anticipation of litigation or in preparation for trial. Ashland merely seeks a specific designation of the particular responsive documents purportedly contained within the mass of documents in the Repository and elsewhere. Furthermore, with respect to Plaintiff's assertions that certain of the materials requested are privileged, as with all of Ashland's interrogatories and document requests, we would ask that Plaintiff provide a privilege log identifying any documents and information being withheld and providing a basis for such a claim of privilege so that we can evaluate such a claim and consider taking appropriate action to determine the validity of such claims, if necessary.

**Request No. 10**

As clearly worded, this document request is specifically limited to seeking the production of documents involving communications that relate to the presence and clean up of hazardous substances at the Boarhead Farm Site. So that there is no misunderstanding as to which documents

PHELAN, PETTIT & BIEDRZYCKI
Glenn M. Harris, Esquire
December 15, 2004
Page 5

in the Document Repository are responsive to this request, which documents you state in your letter "can be immediately identified on the Index to the Document Repository," we assume that you would have no difficulty in identifying those particular documents.

### Request No. 11

We take issue with Plaintiff's objection that this Request is any way vague, confusing, ambiguous, overly broad or unduly burdensome. We believe that Plaintiff should be readily able to specifically identify and produce, or specifically designate, all documents relating to "agreements entered into by BFAG relating to the clean up of this Site." Again, we would ask that Plaintiff specifically identify the particular documents subject to this request so that Ashland can readily identify and locate those documents and avoid any confusion as to which of the tens of thousands of documents in the Repository Plaintiff believes are responsive to this request.

### Request No. 12

Your letter seems to assume that Ashland is seeking the production of certain "categories of documents," the identity of which you state you cannot decipher. This discovery request is not so limited and we would again ask that the Plaintiff produce all documents requested, regardless of any categorizations thereof, that specifically relate to BFAG and its members' actual or potential status as PRPs.

### Request Nos. 15, 16 and 17

Again, these requests are not limited to any certain "categories" or "types" of documents. As these requests clearly state, Ashland seeks documents pertaining to waste materials deposited at the Boarhead Farm Site that were generated, transported or disposed of by any and all parties, including Ashland, the co-defendants and the members of BFAG. We trust that this clarifies the documents being requested.

Finally, I will specifically respond to the concluding paragraph of your November 18 letter with regard to my discussions with your office relative to Plaintiff's motion to compel further discovery responses by Ashland. Your letter fails to mention that I, not your office, initiated the call wherein I made a reasonable suggestion to Ms. Mooney that she should consider withdrawing Plaintiff's motion, without prejudice to Plaintiff's right to refile same after Plaintiff completed the taking of then upcoming relevant depositions, including those of representatives of Ashland and AETC, as we believed that the testimony to be provided would eliminate Plaintiff's purported need for much, if not all, of the discovery sought by Plaintiff as stated in its motion. I also offered to provide the identity of the court reporters from whom transcripts of prior depositions of Ashland personnel taken in other cases could be obtained by your office. As I had informed Ms. Mooney, our copy of the transcript of Mr. Curley's prior deposition is indelibly marked with attorney's notes and comments constituting privileged work product. Furthermore, Ms. Mooney ended our

PHELAN, PETTIT & BIEDRZYCKI
Glenn M. Harris, Esquire
December 15, 2004
Page 6

conversation with a promise to consider our suggestions, but nevertheless stated that Plaintiff would not withdraw its motion and that Ashland should proceed to file a formal response thereto which she would read, consider and get back to me if she believed there was a basis for further discussions. Not having heard back from Ms. Mooney or anyone else from your office after Ashland's response to Plaintiff's motion was filed, I have been left to assume that Plaintiff was and is not interested in discussing the potential amicable resolution of Plaintiff's motion. In fact, we never received a call from your office relative to Plaintiff's motion, either before or after it was filed.

Given the status of discovery and the approaching discovery deadline, we unfortunately are not at liberty to wait any longer for the discovery to which Ashland believes it is entitled. Nevertheless, if you are interested in discussing these matters, I would request that you contact me immediately to attempt to work out an amicable resolution of some or all of the disputed matters. However, I am not particularly confident that we will be able to reach a mutually acceptable agreement on the disputed issues, but am willing to try once more. Otherwise, we will proceed forthwith to file an appropriate motion with the Court, while continuing to remain available to further discuss the discovery issues to be addressed therein should you wish to do so.

Thank you in advance for your anticipated courtesy in giving these matters your immediate attention.

Very truly yours,

Richard C. Biedrzycki

RCB/vic

cc:    Monique M. Mooney, Esquire (via facsimile)
       Thomas Sabino, Esquire
       Lynn Wright, Esquire
       Melissa E. Flax, Esquire
       Stephen P. Chawaga, Esquire
       Edward Fackenthal, Esquire
       Andrew P. Foster, Esquire
       Seth v.d.H. Cooley, Esquire

G:\DATA\1357-29\Ltrs\GMH-011.wpd

## CERTIFICATE OF SERVICE

I, Richard C. Biedrzycki, Esquire, hereby certify that on this 20th of December, 2004, I

caused true and correct copies of the foregoing Motion, Proposed Order and Memorandum of Law

of Defendant Ashland Inc. in Support of its Motion to Overrule Plaintiff's Untimely and Improper

Objections and to Compel More Specific Responses to Plaintiff's Interrogatories and Document

Requests, First Sets, to be served by hand delivery on Monique M. Mooney, Esquire, counsel of

record for Plaintiff, and by first class mail, postage prepaid, on all other counsel of record, at the

following addresses:

### COUNSEL FOR PLAINTIFF:

Glenn A. Harris, Esquire
Ballard Spahr Andrews & Ingersoll, LLP
Plaza 1000 - Suite 500
Main Street
Voorhees, NJ 08043-4636
e-mail: harrisg@ballardspahr.com

Monique M. Mooney, Esquire
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street
51st Floor
Philadelphia, PA 19103
e-mail: mooney@ballardspahr.com

### COUNSEL FOR DEFENDANTS:

*Advanced Environmental Technology Corporation*
Thomas Sabino, Esquire
Wolff & Samson PC
The Offices at Crystal Lake
One Boland Drive
West Orange, NJ 07052
Phone: 973-325-1500
Fax: 973-325-1501
tsabino@wolffsamson.com

***Carpenter Technology Corporation***
Lynn Wright, Esquire
Edwards & Angell
750 Lexington Avenue
New York, NY 10022
Phone: (212) 756-0215
Fax: (888) 325-9169
lwright@ealaw.com

***Handy & Harman Tube Company***
Melissa E. Flax, Esquire
Carella, Byrne, Bain, Gilfillan,
        Cecchi, Stewart & Olstein, P.C.
5 Becker Farm Road
Roseland, NJ 07068-1739
Phone: (973) 994-1700
Fax: (973) 994-1744
mflax@carellabyrne.com

***Merit Metals Products Corp.***
Stephen P. Chawaga, Esquire
Monteverde, Mcalee & Hurd
One Penn Center
Suite 1500
1617 JFK Boulevard
Philadelphia, PA 19103-1815
Phone: (215) 557-2900
Fax: (215) 557-2990
schawaga@monteverde.com

***NRM Investment Co.***
Edward Fackenthal, Esquire
Law Office of Edward Fackanthal
One Montgomery Plaza
Suite 209
Norristown, PA 19401
Phone: (610) 279-3370
Fax: (610) 279-0696
edwardfackenthal@cs.com

***Rahns Specialty Metals, Inc.***
***Techalloy Co., Inc.***
***Thomas & Betts Corporation***
Andrew P. Foster, Esquire
Adina M. Dziuk, Esquire
Drinker, Biddle & Reath, LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996
Phone: (215) 988-2700
Fax: (215) 988-2757
andrew.foster@dbr.com
Adina.Bingham@dbr.com

*Flexible Circuits*
Seth v.d.H. Cooley, Esquire
A. Nicole Friant, Esquire
Duane Morris LLP
Suite 4200, One Liberty Place
Philadelphia, PA 19103-7396
Telephone: 215-979-1000
Fax: 215-979-1020
scooley@duanemorris.com
anfriant@duanemorris.com

*Richard C. Biedrzycki*
RICHARD C. BIEDRZYCKI

Date:   December 20, 2004

G:\DATA\1357-29\Disc\MoL\MotionStrikeContRogs.wpd