# EXHIBIT "C"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BOARHEAD FARM
AGREEMENT GROUP,

              Plaintiff,

    v.

ADVANCED ENVIRONMENTAL
TECHNOLOGY CORPORATION, et al.,

              Defendants.

:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION
NO. 02-3830

**ORDER**

AND NOW, this _____ day of _____, 2005, upon consideration
of Plaintiff Boarhead Farm Agreements Group's Motion for Entry of a Protective Order and any
response thereto, it is hereby ORDERED that:

    1.      Plaintiff's Motion For Entry of a Protective Order is granted;

    2.      Defendants are precluded from deposing a corporate designee of the
Boarhead Farm Agreement Group with respect to the matters in the March 9, 2005 Notice of
Deposition;

    3.      Defendants are prohibited from the further deposition of Agere with
respect to the matters included in the Third Amended Notice of Deposition; and

    4.      SPS had no obligation to respond at the SPS Rule 30(b)(6) deposition to
lines of questioning concerning the Agreement Group's "contentions."

              BY THE COURT:

              _____

              Legrome D. Davis, J.

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| BOARHEAD FARM AGREEMENT GROUP, | : | |
| Plaintiff, | : | |
| v. | : | |
| ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, et al., | : | CIVIL ACTION NO. 02-3830 |
| Defendants. | : | |

## PLAINTIFF BOARHEAD FARM AGREEMENT GROUP'S MOTION FOR ENTRY OF A PROTECTIVE ORDER

Plaintiff Boarhead Farm Agreement Group ("Plaintiff"), by and through its undersigned attorneys, brings this motion pursuant to Federal Rule of Civil Procedure 26(c), for entry of a protective order that precludes Defendants from deposing a corporate designee of the Boarhead Farm Agreement Group, the deposition of whom Defendants have noticed pursuant to Rule 30(b)(6); precludes the Defendants from the further deposition of Agere with respect to the matters included in the Third Amended Notice of Deposition; and rules that SPS had no obligation to respond at the SPS Rule 30(b)(6) deposition to lines of questioning concerning the Agreement Group's "contentions." The grounds for this Motion are more fully set forth in accompanying Memorandum of Law.

WHEREFORE, Plaintiff Boarhead Farm Agreement Group respectfully requests that this Court grant its Motion for Protective Order and enter the attached proposed form of Order and any further relief deemed just and appropriate by this Court.

Respectfully submitted,

BALLARD SPAHR ANDREWS & INGERSOLL, LLP

Dated:  March 16, 2005

_____

Glenn A. Harris, Esquire
Anne K. Heidel, Esquire
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
(215) 665-8500

Attorneys for Plaintiff Boarhead Farm
Agreement Group

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BOARHEAD FARM<br>AGREEMENT GROUP,<br><br>Plaintiff,<br><br>v.<br><br>ADVANCED ENVIRONMENTAL<br>TECHNOLOGY CORPORATION, et al.,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br>NO. 02-3830 |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF BOARHEAD FARM AGREEMENT GROUP'S
## MOTION FOR ENTRY OF A PROTECTIVE ORDER

## I.    INTRODUCTION

Plaintiff Boarhead Farm Agreement Group ("the Agreement Group") seeks a

Protective Order that precludes Defendants from deposing a corporate designee of the Boarhead

Farm Agreement Group as set forth in a March 9, 2005 Notice of Deposition pursuant to Federal

Rule of Civil Procedure 30(b)(6). Plaintiff also respectfully requests that the Court preclude

further deposition of Agere by Defendants with respect to the matters included in the Third

Amended Notice of Deposition and order that SPS had no obligation to respond at the SPS Rule

30(b)(6) deposition to the lines of questioning concerning the Agreement Group's "contentions."

## II.    STATEMENT OF FACTS

On January 25, 2005 this Court denied the Motion to Overrule Objections and

Compel Discovery of Defendant Advanced Environmental Technology Corp. ("AETC"), "in

order to protect Plaintiff from being forced to articulate theories of their case not yet fully developed." January 25, 2005 Order ("the Order") at 3. A copy of the Order is attached hereto as Exhibit A. AETC's contention discovery essentially sought to learn the Agreement Group's "contentions" as to what equitable shares of liability for the Agreement Group's response costs should be attributed to AETC and to certain other defendants, and sought as well the Agreement Group's legal analysis of the discovery then taken that was possibly relevant to any such contentions. AETC's discovery also sought to learn the Agreement Group's "contention" with respect to certain "orphan shares" and how those orphan shares might affect the liability of AETC. A copy of the Agreement Group's response to AETC's discovery is attached as Exhibit B.

The Agreement Group had argued in opposition to AETC's motion that fact discovery was ongoing, that possibly relevant case law was developing, that expert opinion testimony most likely would be relevant to any "contentions" the Agreement Group might ultimately form, that the discovery sought not facts but Plaintiff's current view as to how this Court will ultimately at trial allocate liability among the parties to this action, that the Agreement Group had not and could not then form any such contentions, and that, therefore, AETC's contention discovery was at best premature.

Any fair reading of the Order, then, is that the Agreement Group can not be forced to state any "contentions" as to any party's equitable share, its legal analysis of the facts and law potentially relevant to how this Court might at trial allocate such shares, how "orphan shares" might be allocated at trial, or otherwise reveal its attorney work product.

Just fifteen days after entry of the Order, on February 9, 2005, Techalloy attempted to elicit answers to the very same types of questions from the designee of SPS

Technologies, LLC ("SPS") at a previously-noticed Rule 30(b)(6) deposition. Counsel for the Agreement Group objected to this line of questioning, noting that the Agreement Group did not understand such subject matters to be included within the scope of the Rule 30(b)(6) notice of deposition and that the witness had not, therefore, been prepared to respond to such questions on behalf of SPS. Counsel also objected that such questioning was expressly prohibited by this Court's January 25, 2005 Order, and that Techalloy was prohibited from trying to obtain through the Rule 30(b)(6) deposition process the very information that this Court had already ruled the Agreement Group did not have to provide. The witness ultimately refused to answer any such questions.

Later that same day, Handy & Harman Tube Company ("Handy & Harman"), whose counsel had attended the deposition of SPS, served by telecopy a "Third Amended Notice of Deposition" for Agreement Group member Agere Systems, Inc. ("Agere") purporting to add two new categories of matters on which the deposition of Agere was to proceed. The two new topics asked for information with respect to amounts Agere had recovered from settlements in this matter, insurance proceeds, or from anywhere else, and asked the same types of contention and legal analysis questions concerning the liability of each of the defendants. Handy & Harman had initially noticed the Agere deposition for February 10, 2005, the (then) last date for completion of fact discovery pursuant to Case Management Order No. 6. Agere had designated a particular witness to testify with respect to the three categories of matters sought in that initial notice (Ms. Santarelli) and was prepared for the deposition to take place as noticed. The date for the deposition was adjourned until February 22, 2005 for convenience after this Court entered Case Management Order No. 7 extending the date for completion of fact discovery to March 18,

2005. A copy of Handy & Harman's February 9, 2005 letter and enclosed Third Amended Notice of Deposition is attached hereto as Exhibit C.

The Agreement Group timely objected to this attempt to amend the notice for Agere's deposition on the grounds that Agere had just received the Amended Notice, that Agere had not designated Ms. Santarelli (or anyone else) to testify on its behalf with respect to the new topics, and that it would not designate Ms. Santarelli for those topics in any event. The Agreement Group also objected that the information sought concerning settlement monies and other "proceeds" possibly received by Agere was objectionable as irrelevant in light of this Court's prior ruling that the Uniform Comparative Fault Act applies to settlements in this matter.[1]  It further objected that the category seeking the Agreement Group's "contentions" with respect to the amounts and types of wastes that were disposed of at the Site were in derogation of the Order. Handy & Harman and the Agreement Group each agreed that the Agere deposition would go forward on the initially-noticed three topics only (which it did), with both parties reserving the right to argue the propriety of the two new categories of information added by the Third Amended Notice.

The Defendants made their third attempt to circumventing this Court's January 20, 2005 Order when Techalloy sent by telecopy late in the day on March 9, 2005 a new Rule 30(b)(6) notice, this time of the Agreement Group itself, and again seeking the answers to the same types of contention questions and legal analysis, including the Agreement Group's beliefs concerning: The equitable shares of each Agreement Group member, each non-settled defendant, each settled defendant, and anyone else in the world that the Agreement Group

---

[1]    This Court ruled on June 30, 2004 that "the UCFA governs in determining the extent to which the non-settling defendants' liability should be offset by any settlement agreements." June 30, 2004 Memorandum Order at 8. The amounts received in those settlements are thus not relevant to any issue at trial.

"believes" is a liable party under CERCLA; the volumes of wastes generated by each such entity and disposed of at the Boarhead Farms site; and the types and amounts of hazardous substances contained in that waste. A copy of the Rule 30(b)(6) notice of deposition is attached hereto as Exhibit D. The Agreement Group responded by letter of March 11, 2005 objecting to the Rule 30(b)(6) notice on several grounds, including that it sought contention discovery prohibited by this Court's January 25, 2005 Order (and that Techalloy's attempt to circumvent that order with the Rule 30(b)(6) notice was improper), and additionally that the notice failed to provide "reasonable notice" as required by Fed. R. Civ. P. 30(b)(1). A copy of the March 11, 2005 letter is attached, as is Techalloy's March 12, 2005 letter in response thereto, as Exhibit E.

The Agreement Group now seeks an Order from this Court prohibiting the Rule 30(b)(6) deposition of the Agreement Group, prohibiting the further deposition of Agere with respect to the matters included in the Third Amended Notice of Deposition, and ruling that SPS had no obligation to respond at the SPS Rule 30(b)(6) deposition to the lines of questioning at issue here.[2]

## III.    ARGUMENT

Federal Rule of Civil Procedure 26(b)(1) provides that "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Fed. R. Civ. P. 26(b)(1). Under Fed. R. Civ. P. 26(c), however, a district court may, upon motion by a party:

---

[2]    The Defendants are relentlessly attempting to force the Agreement Group to commit to a statement of what each party's equitable share "is," and to respond to related contention discovery elsewhere as well. Techalloy has filed a Motion to Compel Responses to Interrogatories and For Extension of Fact Discovery Period challenging the Agreement Group's objections to such questions. The Agreement Group's response is due March 24.

> [F]or good cause shown . . . make any order which justice requires to
> protect a party or person from annoyance, embarrassment, oppression, or
> undue burden or expense, including one or more of the following: (1) that
> the disclosure or discovery not be had;

Fed R. Civ. P. 26(c). There is good cause for the entry of a protective order under Rule 26(c)

because Defendants have noticed the deposition of a corporate designee of the Agreement Group

pursuant to Rule 30(b)(6) in an attempt to circumvent this Court's Order of January 25, 2005, an

Order meant to protect the Agreement Group from just such discovery. There is also good cause

for entry of a protective order because Defendants failed to provide reasonable notice of the

proposed Rule 30(b)(6) deposition of the Agreement Group. Furthermore, a protective order

should be entered because the areas of inquiry that Defendants seek to explore through the Rule

30(b)(6) deposition are inappropriate to direct toward a corporate designee.

By filing this Motion for Entry of a Protective Order, Plaintiff asserts that a

designee of the Agreement Group is not obligated to attend the 30(b)(6) deposition noticed by

Defendants for March 18, 2005. See Fed. R. Civ. P. 37(d) (stating that the failure of a person

designated to attend a deposition pursuant to Rule 30(b)(6) "may not be excused on the ground

that the discovery sought is objectionable unless the party failing to act has a pending motion for

a protective order as provided by Rule 26(c).") (emphasis added).


A.    The Contention Discovery Sought Through the Rule 30(b)(6) Process
      Violates this Court's January 25, 2005 Order.


The Defendants have repeatedly tried to circumvent this Court's January 25, 2005

ruling by use of the Rule 30(b)(6) process. Nothing in the fifteen days between that ruling and

the SPS 30(b)(6) deposition could possibly have negated that ruling. Fact discovery was (and is)

still open, the expert phase has not even begun, and there was no reason to believe that the

Agreement Group had any greater ability (or desire) to form the type of "contentions" it had not and could not yet form. Techalloy quite simply tried to side step the ruling and force SPS (and thereby the Agreement Group) to respond *at a live deposition* with respect to the same types of information this Court ruled was premature. Similarly, Handy & Harman's attempt *later that day* to force the Agreement Group (this time through Agere) to respond via a corporate designee at an oral deposition to the same types of questions prohibited by the January 25, 2005 Order flew in the face of that ruling. Techalloy's March 9, 2005 Rule 30(b)(6) notice of the Agreement Group attempting to force that same testimony was improper for the same reasons.

Quite simply, the defendants cannot be permitted to back door the January 25, 2005 ruling by pretending that ruling applied only to written discovery. To do so would be an abuse of the Rule 30(b)(6) process. Rule 33(c)'s stricture that "the court may order that [an interrogatory seeking opinion or contention that relates to fact or the application of law to fact] need not be answered until after designated discovery has been completed or until a pre-trial conference or other later time" is based on fundamental fairness and sound case management principles. Fed. R. Civ. P. 33(c). Those same principles must apply to other forms of discovery, including requests for production and Rule 30(b)(6) depositions. If parties could obtain the same information through other discovery channels, the provisions of Rule 33(c) would be meaningless.

The Agreement Group respectfully requests that this Court enter an Order prohibiting the Rule 30(b)(6) deposition of the Agreement Group and the continued Rule 30(b)(6) deposition of Agere, and ruling that the attempted questioning of the SPS Rule 30(b)(6) designee on these topics was improper.

B.    <u>Defendants' Notice of Deposition of a Designee of the Boarhead Farm
Agreement Group Pursuant to Rule 30(b)(6) Failed to Provide Plaintiff
with Reasonable Notice.</u>

In addition to the fact that Defendants are seeking to depose a designee of the

Agreement Group in an attempt to circumvent the Order, the Defendants failed to provide

Plaintiff with reasonable notice of that deposition.  Defendants have had seven months to take

whatever fact depositions they considered necessary.  The Court's Case Management Order No.

5 provided for fact depositions between August 16, 2004 and January 10, 2005.  The Court

extended this deadline to February 10, 2005 in Case Management Order No. 6.  The Defendants

asked for and received a further extension, until March 18, 2005 to complete this discovery.

Defendants have taken only two depositions since discovery was extended by this Court for the

second time, at Defendants' request, to allow fact discovery to continue between February 11,

2005 and March 18, 2005.  The first of such depositions was solely related to defendant

Techalloy's liability.  The second deposition was a Rule 30(b)(6) deposition of a member of the

Boarhead Farm Agreement Group, a deposition that was set to be taken in the *prior* discovery

period and was adjourned for convenience once the Court extended discovery until March 18,

2005.  Because Defendants have done virtually no discovery in the five extra weeks of fact

discovery for which they asked, and because of the very nature of the deposition sought of the

Agreement Group, they are completely unjustified in giving the Plaintiff approximately one

week's notice of a deposition listed for the last day of the extended discovery period.

There is no precise definition of what constitutes "reasonable" notice of a

deposition as required by Rule 30(b)(1); instead, courts have reviewed reasonableness on a case-

by-case basis.  Many courts have found that a few days' notice is only reasonable where there are

circumstances that justify a need for haste.  <u>See, e.g.</u>, <u>Stover v. Universal Moulded Products</u>

Corp., 11 F.R.D. 90 (D.C. Pa. 1950) (holding that notice was unreasonable where deposition was scheduled 2 days after receipt of mailed notice and party showed no special need for haste); Natural Organics, Inc. v. Proteins Plus, Inc., 724 F. Supp. 50 (D.C.N.Y. 1989) (holding that one day's notice was reasonable where the need for a brief phone deposition was sudden and unexpected). In Birdine v. City of Coatesville, (Civ. A. No. 03-5569) 2004 WL 2786151 (E.D. Pa. Aug. 20, 2004), one week before the close of discovery, counsel for the plaintiff sent notice of two depositions scheduled on the last day of the discovery period. When the defendant objected, the plaintiff filed a motion to compel the depositions and extend discovery. The Court denied that motion, finding that plaintiff's counsel had failed to give reasonable notice of the depositions and had failed to show good cause for extending discovery again where he had known for months that these witnesses "might have material information but he failed to depose them until the final week of discovery." Birdine at *1.

In this case, Defendants have been trying for months to force the Agreement Group to commit to factual and legal positions the Agreement Group neither has formulated nor could have yet formulated even if the Agreement Group wanted to do so. Techalloy and Handy & Harman tried unsuccessfully to do so through Rule 30(b)(6) depositions of SPS and Agere weeks ago. Techalloy has not just "discovered" the existence of a new fact witness, or just thought up an entire new line of discovery, in the last few days that might possibly explain waiting until the third-time close of fact discovery before noticing the Agreement Group's deposition.

Equally significant, preparing a Rule 30(b)(6) witness to answer what would likely be thousands of unpredictable and varying questions that might be included in the three categories of information sought in the notice would be a prodigious undertaking. Essentially,

the deposition notice asks the Agreement Group to set forth its factual and legal analysis of every line of testimony taken herein, every document produced in discovery (tens of thousands of documents), and every reported opinion potentially relevant to CERCLA contribution law. It would be simply impossible for the Agreement Group to prepare a designee to convey such knowledge in the six business days provided for in the notice. Techalloy frankly could not have expected otherwise.

Techalloy's notice of the deposition of a designee for the Agreement Group for the last day of an already twice-extended fact discovery period and with only six working days before the scheduled date (even if fax receipt of the notices is effective) is not "reasonable notice." The Court should accordingly order that Defendants are precluded from conducting the noticed deposition.

C.     The Areas of Inquiry that Defendants Seek to Explore Through Rule 30(b)(6) Depositions are Inappropriate.

Even if this Court were to require the Agreement Group at some later time to provide the contention information sought in Defendants' Rule 30(b)(6) notice of the Agreement Group (and of Agere and SPS in those Rule 30(b)(6) depositions), the Rule 30(b)(6) process is inappropriate for such discovery. Courts have held that Rule 30(b)(6) is not an appropriate tool for discovering a party's legal conclusions and case analysis. See, e.g., Smithkline Beecham Corp. v. Apotex, No. , 2004 WL 739959, at *3 (E.D. Pa. March 23, 2004) (denying, in part, defendant's motion to compel where defendant had sought to ask plaintiff's 30(b)(6) designee at a deposition to take a legal position with respect to certain statements because it "would be very difficult for a non-attorney witness to answer such questions at a deposition."); McCormick-Morgan, Inc. v. Teldyne Industries, Inc., 134 F.R.D. 275, 286-87 (N.D. Cal. 1991), rev'd on

other grounds, 765 F. Supp. 611 (N.D. Cal. 1991) (noting that court was concerned about asking a non-lawyer witness at a 30(b)(6) deposition questions that required complex judgments about how the law would treat the facts of that case).

The deposition notice to the Agreement Group here (and the Third Amended Notice to Agere and attempts to question the SPS Rule 30(b)(6) designee) are inappropriate in light of these principles. Defendants intend to pose questions that a non-lawyer should not be expected to answer. For example, one area of questioning in the notice to the Agreement Group calls for the deponent to outline the Plaintiff's entire case based on a review of discovery conducted to date. Such questions are completely inappropriate to pose to a non-lawyer designee, who, even with reasonable notice, cannot be expected to analyze months' of discovery for purposes of articulating legal conclusions about the Plaintiff's claims.

Moreover, Defendants intend to pose complicated legal questions that are inappropriate for an oral deposition of almost *any* witness. A litigant should not be obligated to produce a live witness to testify about complicated legal arguments involving the application of multiple statutes and considerable case law to facts obtained over months of discovery. Even a witness familiar with this litigation and with some legal training should not be expected to answer questions such as: "The share of liability for past and future Site response costs that Plaintiff BFAG asserts should be borne be each of the following entities: . . . ." March 9, 2005 Notice at 3.

This Court should accordingly grant the Agreement Group's Motion and protect it and its members from being deposed with respect to such "contention" matters.

IV.    **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court grant its

Motion for Protective Order and enter the attached proposed form of Order and any further relief

deemed just and appropriate by this Court.

Respectfully submitted,

Dated:  March 16, 2005

BALLARD SPAHR ANDREWS & INGERSOLL, LLP

_____

Glenn A. Harris, Esquire
Anne K. Heidel, Esquire
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
(215) 665-8500

Attorneys for Plaintiff
Boarhead Farm Agreement Group

## <u>CERTIFICATION PURSUANT TO LOCAL RULE OF CIVIL PROCEDURE 26.1(f)</u>

Counsel for Plaintiff certifies that they have conferred with Defendants' counsel in a good faith attempt to narrow or resolve the issues raised in this Motion prior its filing, but were unable to reach agreement on the issues discussed above.

Dated: March 16, 2005

                         /s/ Anne K. Heidel
                         Anne K. Heidel

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 16, 2005, Plaintiff's Motion for Entry of a

Protective Order was filed electronically and is available for viewing and downloading from the

Electronic Case Filing System of the United States District Court for the Eastern District of

Pennsylvania.  In addition, where electronic notice was not applicable, copies were served to the

following via U.S. Mail and fax:

> Melissa Flax, Esquire
> Carella, Byrne, Bain, Gilfillian, Cecchi, Stewart, & Olstein, P.C.
> 5 Becker Farm Road
> Roseland, NJ 07068-1739
> *Counsel for Handy & Harman Tube Company*


                              /s/ Anne K. Heidel
                              Anne K. Heidel

# *Exhibit A*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BOARHEAD FARM AGREEMENT :
GROUP, :
            Plaintiff, :   CIVIL ACTION
             :
            v. :   NO. 02-3830
             :
ADVANCED ENVIRONMENTAL :
TECHNOLOGY CORPORATION, :
et al., :
            Defendants. :

## ORDER

AND NOW, this  25th  day of January 2005, upon consideration of Defendant

Advanced Environmental Technology Corporation's ("AETC") Motion to Overrule Objections and

Compel Plaintiff Boarhead Farm Agreement Group to Respond to AETC's Discovery Requests

(Doc. No. 123), filed December 1, 2004, and Boarhead Farm Agreement Group's ("BFAG")

Response (Doc. No. 124), filed December 16, 2004, is it is hereby ORDERED as follows.

According to AETC, its connection to the instant contribution claim for costs

associated with the cleanup of the Boarhead Farms Superfund Site ("the Site") is that it "was a

broker who acted as the go-between between DeRewal Chemical [("DCC")] and Defendants

Ashland Chemical and Diaz Chemical." (Def.'s Mot. at 2 n.1.)  DCC allegedly transported and

disposed of hazardous substances produced by Ashland and Diaz at the Site.

In the motion presently before the Court, AETC seeks information related to (i)

whether BFAG alleges that AETC is an "arranger" under CERCLA and BFAG's factual bases

therefor, (ii) whether BFAG contends that AETC is responsible for Diaz Chemical's allocable

1

share of liability, (iii) the amount of hazardous waste allegedly generated by Ashland and Diaz, as well as the portion of response costs for which Ashland, Diaz and AETC are allegedly responsible, (iv) whether BFAG agrees that DCC secretly disposed of hazardous substances at the Site, and (v) identification of any declarations against interest or admissions made by any party to the litigation in order to help it determine the factual basis the of the suit against it. In its Response, BFAG objects to these inquiries on the grounds that (i) the responses it supplied are appropriate, and (ii) that Defendant's interrogatories are premature "contention interrogatories" calling for Plaintiff to articulate theories of its case not yet fully developed.

Under Rule 26 of the Federal Rules of Civil Procedures, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Fed. R. Civ. P. 26(b)(1). However, the court may defer contention interrogatories until a later stage of discovery. B. Braun Medical Inc. v. Abbott Laboratories, et al., 155 F.R.D. 525, 527 (E.D. Pa. 1994). "The party serving contention interrogatories bears the burden of proving how an earlier response assists the goals of discovery." Id.

In its response, Plaintiff states that all of the relevant documents in its possession have been made available to Defendant AETC (Pl.'s Response at 4), that it has fully stated the basis for its action against AETC (Pl.'s Response at 5), and that it will supplement its response to the interrogatory as appropriate (Pl.'s Response at 5). Plaintiff avers that the theories of its case are not yet fully developed and, as such, the contention interrogatories are premature. (Pl.'s

---

[1] "Contention interrogatories ask a party: to state what it contends; to state whether it makes a specified contention; to state all the facts upon which it bases a contention; to take a position, and explain or defend that position, with respect to how the law applies to facts; or to state the legal or theoretical basis for a contention." B. Braun Medical Inc. v. Abbott Laboratories, et al., 155 F.R.D. 525, 527 (E.D. Pa. 1994) (citations omitted).

2

Response at 6.) In its motion, Defendant AETC has not made a showing that early answers "'will contribute meaningfully to clarifying the issues in the case, narrowing the scope of the dispute, or setting up early settlement discussions, or that such answers are likely to expose a substantial bases for a motion under Rule 11 or Rule 56.'" Id. (quoting In re Convergent Technologies Secs. Litig., 108 F.R.D. 328, 340-41 (N.D. Cal. 1985)).

Therefore, because Defendant AETC has not met its burden and in order to prevent Plaintiff from being forced to articulate theories of their case not yet fully developed, Defendant's Motion to Compel (Doc. No. 123) is DENIED.

BY THE COURT:

/s/
Legrome D. Davis, J.

*Exhibit B*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BOARHEAD FARM AGREEMENT GROUP,    :

              Plaintiff,       :        CIVIL ACTION

               v.          :        NO. 02-3830

ADVANCED ENVIRONMENTAL      :
TECHNOLOGY CORPORATION, ET. AL.   

            Defendants.     :

---

## OBJECTIONS AND RESPONSES OF PLAINTIFF
## BOARHEAD FARM AGREEMENT GROUP TO ADVANCED
## ENVIRONMENTAL TECHNOLOGY CORPORATION'S INITIAL
## SET OF INTERROGATORIES AND DOCUMENT DEMANDS TO PLAINTIFF

Plaintiff Boarhead Farm Agreement Group ("Plaintiff"), by its undersigned

attorney, objects and responds to Advanced Environmental Technology Corporation's Initial Set

of Interrogatories and Document Demands to Plaintiff ("Initial Interrogatories"), as follows:

### I.    GENERAL OBJECTIONS

1.    Plaintiff objects to each interrogatory to the extent that it seeks information not in

Plaintiff's possession, custody or control.

2.    Plaintiff objects to each interrogatory to the extent that it seeks information already in

the possession, custody or control of AETC.

3.    Plaintiff objects to each interrogatory to the extent that it seeks information which is

publicly available and, thus, to which AETC has the same access as Plaintiff.

4.    Plaintiff objects to each interrogatory to the extent that it seeks information protected

by the attorney-client privilege or any other applicable privilege.  Any inadvertent disclosure of

privileged information shall not constitute a waiver of the attorney-client or any other applicable privilege.

5. Plaintiff objects to each interrogatory to the extent that it seeks the discovery of the mental impressions, conclusions, opinions or legal theories of its attorneys or other representatives. Any inadvertent disclosure of work product shall not constitute a waiver of any work product protection.

6. Plaintiff objects to each interrogatory to the extent that it is unlimited in time or scope.

7. Plaintiff objects to each interrogatory to the extent that it is unduly burdensome or designed to be harassing.

8. Plaintiff objects to each interrogatory to the extent that it is vague or ambiguous.

## II.    INTERROGATORIES AND RESPONSES

Subject to and without waiving the foregoing General Objections, Plaintiff makes the following responses to the Initial Interrogatories:

1. Set forth with particularity the factual basis for Plaintiff's allegation in paragraph 31 of the Complaint that AETC "arranged with DeRewal Chemical for the disposal of Hazardous Substances from Defendants Ashland Chemical Company and Diaz Chemical Corporation," and identify all persons with knowledge of those facts, and identify all documents that support and/or relate to that allegation.

RESPONSE: Plaintiff further objects to this interrogatory insofar as it constitutes a contention interrogatory that calls for the Plaintiff to articulate theories of its case not yet fully developed and, as such, is premature. *See B. Braun Medical, Inc. v. Abbott Laboratories*, 155 F.R.D. 525, 527 (E.D. Pa. 1994). Subject to and without waiving the foregoing objection, Plaintiff responds that the factual bases for its claims against AETC in the Complaint, and the identities of the persons with knowledge of those facts, are contained in the documents comprising the nexus files for AETC, Ashland Chemical

Company ("Ashland") and Diaz Chemical Corporation ("Diaz") located in the Boarhead

Document Repository at the Offices of Ballard Spahr Andrews & Ingersoll, LLP, 1735

Market Street, Philadelphia, PA 19103, and refers AETC to the same. By way of further

response, Plaintiff refers AETC to the deposition testimony that has been elicited in this

case including, but not limited to, the following testimony: the May 7, 2003 deposition

testimony of Manfred DeRewal, Sr., 170:16-185:15; the May 8, 2003 deposition testimony

of Manfred DeRewal, Sr., 260:22-266:25; the May 9, 2003 deposition testimony of Manfred

DeRewal, Sr., 496:15-500:5, 528:16-534:17; the May 15, 2003 deposition testimony of Linda

Cochran, 74:2-76:15, 80:20-81:21, 89:11-90:15; and all of the other deposition testimony

concerning DCC's disposal of waste at the Site.  Together, the above-referenced documents

and testimony establish that AETC entered into separate contracts with Ashland and Diaz

for the removal and disposal of wastes from those companies, and that, pursuant to those

contracts, Ashland and Diaz consigned their wastes to AETC for removal and disposal.

AETC separately contracted with DeRewal Chemical Company ("DCC") for DCC to haul

and dispose of the Ashland and Diaz wastes.  As evidenced by the above-referenced

documents, including, but not limited to, the shipping documents and invoices from AETC

to Ashland and Diaz, and from DCC to AETC, there were no contractual relationships

between DCC and Ashland or DCC and Diaz.  By way of further response, David F.

Michelman, Esquire, 2207 Chestnut St., Philadelphia, PA 19103, (215) 557-9440 and

Thomas Healey, City of Philadelphia, (215) 592-6233, have knowledge of the creation of the

July 5, 1978 letter to Manfred DeRewal from the Philadelphia Water Department alleging

DCC disposal of wastes at the Wissinoming Industrial Park.

2.  If Plaintiff alleges that AETC is an "arranger" under CERCLA, set forth with particularity the factual basis for that allegation and identify all persons with knowledge of those facts, and identify all documents that support and/or relate to that allegation.

**RESPONSE:** Plaintiff incorporates by reference its response to Interrogatory No. 1.

3.  If Plaintiff alleges that AETC owned the materials and/or hazardous substances that were allegedly transported from the Ashland Facility and the Diaz Facility to the Site, set forth with particularity the factual basis for that allegation and identify all persons with knowledge of those facts, and identify all documents that support and/or relate to that allegation.

**RESPONSE:** Plaintiff incorporates by reference its response to Interrogatory No. 1.

4.  If Plaintiff alleges that AETC possessed the materials and/or hazardous substances that were allegedly transported from the Ashland Facility and the Diaz Facility to the Site, set forth with particularity the factual basis for that allegation and identify all persons with knowledge of those facts, and identify all documents that support and/or relate to that allegation.

**RESPONSE:** Plaintiff incorporates by reference its response to Interrogatory No. 1.

5.  If Plaintiff alleges that AETC transported materials and/or hazardous substances that were allegedly transported from the Ashland Facility and the Diaz Facility to the Site, set forth with particularity the factual basis for that allegation and identify all persons with knowledge of those facts, and identify all documents that support and/or relate to that allegation. .

**RESPONSE:** Plaintiff further objects to the use of the phrase "AETC transported materials and/or hazardous substances that were allegedly transported from the Ashland Facility and the Diaz Facility to the Site" as vague and ambiguous. Subject to and without waiving the foregoing objection, Plaintiff does not allege that trucks owned by AETC conveyed materials and/or hazardous substances to the Site, but rather that AETC arranged for DCC to haul hazardous waste from facilities owned by Ashland and Diaz, and entered into separate contractual relationships with DCC and Ashland and Diaz, respectively, for that purpose. By way of further response, Plaintiff incorporates by reference its response to Interrogatory No. 1.

6.  If Plaintiff alleges that AETC controlled the disposal process by which materials and/or hazardous substances that were allegedly transported from the Ashland Facility and the Diaz Facility to the Site, set forth with particularity the factual basis for that allegation and

identify all persons with knowledge of those facts, and identify all documents that support and/or relate to that allegation.

**RESPONSE:** Plaintiff further objects to the phrase "controlled the disposal process by which materials and/or hazardous substances that were allegedly transported from the Ashland Facility and the Diaz Facility to the Site" as vague and ambiguous.

7. If you contend that AETC has responsibility under CERCLA for Diaz's allocable share of liability in this Case (whatever that is determined to eventually be), set forth with particularity the factual basis for that contention, and identify all persons with knowledge of those facts and identify all documents that support and/or relate to that contention.

**RESPONSE:** Plaintiff incorporates by reference its response to Interrogatory No. 1.

8. Set forth in detail the investigation Plaintiff undertook, if any, to ascertain whether Diaz is a viable entity and/or has assets to satisfy any judgment that may be entered against Diaz in this Case, and identify all persons with knowledge of those facts and identify all documents that support and/or relate to that investigation.

**RESPONSE:** Plaintiff further objects to Interrogatory No. 8 as seeking information that constitutes attorney work product prepared in anticipation of litigation. By way of further answer, Plaintiff performed internet-based research through PACER to determine that Diaz filed for protection under chapter 7 of the United States Bankruptcy Code and to ascertain the identity of the Chapter 7 Trustee. Plaintiff then contacted the Chapter 7 Trustee, John Ring, Esquire, who informed Plaintiff that the U.S. Environmental Protection Agency holds a $10,000,000 administrative claim over and above millions of dollars of unsecured claims against Diaz. The Trustee indicated that there would be no distribution.

9. Identify the total amount of hazardous substance that Plaintiff alleges was generated by Diaz that was eventually disposed of at the Site, and include in your answer the precise nature of those hazardous substances and the dates of each shipment that equal the total you allege.

**RESPONSE:** Plaintiff further objects to this interrogatory insofar as it constitutes a contention interrogatory that calls for the Plaintiff to articulate theories of its case not yet

fully developed and, as such, is premature. *See B.Braun Medical, Inc. v. Abbott Laboratories*, 155 F.R.D. 525, 527 (E.D. Pa. 1994). Subject to and without waiving the foregoing objection, Plaintiff responds that the opinion of an expert may be relevant in responding to this interrogatory and that, at this time, Plaintiff has not yet identified any expert witnesses whom it expects to call at trial. By way of further answer, Plaintiff refers AETC to the deposition testimony of Manfred DeRewal, Sr., Bruce DeRewal, Linda Cochran, John Barsum, Jeffrey Shaak, Karen Porter and June Stephens elicited in this case; all of the other deposition testimony concerning DCC's disposal of waste at the Site; and the other documents comprising the nexus files for Diaz located in the Boarhead Document Repository at the offices of Ballard Spahr Andrews & Ingersoll, LLP, 1735 Market Street, Philadelphia, PA 19103.

    10. Identify the total amount of hazardous substances the Plaintiff alleges was generated by Ashland that was eventually disposed of at the Site, and include in your answer the precise nature of those hazardous substances and the dates of each shipment that equal the total you allege.

RESPONSE: Plaintiff further objects to this interrogatory insofar as it constitutes a contention interrogatory that calls for the Plaintiff to articulate theories of its case not yet fully developed and, as such, is premature. *See B.Braun Medical, Inc. v. Abbott Laboratories*, 155 F.R.D. 525, 527 (E.D. Pa. 1994). Subject to and without waiving the foregoing objection, Plaintiff responds that this interrogatory calls for the opinion of an expert and that, at this time, Plaintiff has not yet identified any expert witnesses whom it expects to call at trial. By way of further answer, Plaintiff refers AETC to the deposition testimony of Manfred DeRewal, Sr., Bruce DeRewal, Linda Cochran, John Barsum, Jeffrey Shaak, Karen Porter and June Stephens elicited in this case; all of the other deposition testimony concerning DCC's disposal of waste at the Site; and the other

documents comprising the nexus files for Ashland located in the Boarhead Document

Repository at the offices of Ballard Spahr Andrews & Ingersoll, LLP, 1735 Market Street,

Philadelphia, PA 19103.

11. What share of the Response Costs does Plaintiff allege AETC is responsible for, and
set forth with particularity the precise rationale for your answer by identifying all documents,
facts, numbers, expenses, damages, etc. utilized in calculating AETC's alleged share of
Response Costs.

RESPONSE: Plaintiff further objects to this interrogatory insofar as it constitutes a

contention interrogatory that calls for the Plaintiff to articulate theories of its case not yet

fully developed and, as such, is premature. *See B.Braun Medical, Inc. v. Abbott*

*Laboratories*, 155 F.R.D. 525, 527 (E.D. Pa. 1994).

12. What share of the Response Costs does Plaintiff allege Diaz is responsible for, and set
forth with particularity the precise rationale for your answer by identifying all documents, facts,
numbers, expenses, damages, etc, utilized in calculating Diaz's alleged share of Response Costs.

RESPONSE: Plaintiff further objects to this interrogatory insofar as it constitutes a

contention interrogatory that calls for the Plaintiff to articulate theories of its case not yet

fully developed and, as such, is premature. *See B.Braun Medical, Inc. v. Abbott*

*Laboratories*, 155 F.R.D. 525, 527 (E.D. Pa. 1994).

13. What share of the Response Costs does Plaintiff allege Ashland is responsible for,
and set forth with particularity the precise rationale for your answer by identifying all
documents, facts, numbers, expenses, damages, etc. utilized in calculating Ashland's alleged
share of Response Costs.

RESPONSE: Plaintiff further objects to this interrogatory insofar as it constitutes a

contention interrogatory that calls for the Plaintiff to articulate theories of its case not yet

fully developed and, as such, is premature. *See B.Braun Medical, Inc. v. Abbott*

*Laboratories*, 155 F.R.D. 525, 527 (E.D. Pa. 1994).

14. Does Plaintiff agree or disagree that DeRewal Chemical Company secretly and
surreptitiously disposed of hazardous substances at the Site? If you disagree, set forth with

particularity the factual basis for that disagreement and identify all persons with knowledge of those facts, and identify all documents that support and/or relate to that disagreement.

RESPONSE: Plaintiff further objects to the phrase "secretly and surreptitiously" as vague and ambiguous and objects to this interrogatory insofar as it constitutes a contention interrogatory that calls for the Plaintiff to articulate theories of its case not yet fully developed and, as such, is premature. *See B.Braun Medical, Inc. v. Abbott Laboratories*, 155 F.R.D. 525, 527 (E.D. Pa. 1994). By way of further response, Plaintiff agrees that DeRewal Chemical Company disposed of hazardous substances at the Site.

15. Does Plaintiff contend that the July 5, 1978 letter (and attachment) from the City of Philadelphia (Exhibit D18, marked on May 15, 2003) does not accurately reflect the sewer surcharges referenced therein? If you do so contend, set forth with particularity the factual basis for that contention and identify all persons with knowledge of those facts, and identify all documents that support and/or relate to that contention.

RESPONSE: Plaintiff further objects to this interrogatory insofar as it constitutes a contention interrogatory that calls for the Plaintiff to articulate theories of its case not yet fully developed and, as such, is premature. *See B.Braun Medical, Inc. v. Abbott Laboratories*, 155 F.R.D. 525, 527 (E.D. Pa. 1994). Plaintiff further objects to the phrase "accurately reflect" as vague and ambiguous. Subject to and without waiving said objection, Plaintiff responds that, if this interrogatory is asking whether the Plaintiff contends that the information concerning the volumes and location and method of disposal of the wastes enumerated in the July 5, 1978 letter and attachment from the City of Philadelphia is correct, Plaintiff does not so contend. At the time the above-described letter was written, the City of Philadelphia lacked, and has not since obtained, a factual basis for the assumptions concerning volumes and location and method of disposal set forth in the above-described documents. In addition, the deposition testimony of, *inter alia*, Manfred DeRewal Sr. contradicts the assumptions set forth in these documents. Additional

:

individuals with knowledge of facts pertaining to these documents include David

Michelman, Esquire, 2207 Chestnut St., Philadelphia, PA 19103 (215) 557-9440, and

Thomas Healy, City of Philadelphia (215) 592-6233. By way of further response, Plaintiff

refers AETC to the documents comprising the nexus files for AETC, Ashland and Diaz

located in the Boarhead Document Repository at the offices of Ballard Spahr Andrews &

Ingersoll, LLP, 1735 Market Street, Philadelphia, PA 19103.

16. If you contend that any party to this Case has, at any time, made any declaration
against interest or admissions, state:

        (a)    The name and address of the person making said declaration against
              interest or admission;

        (b)    The name and address of the person to whom it was made;

        (c)    The nature of the declaration against interest or admission, in detail;

        (d)    If in writing, attach a copy hereto;

        (e)    The name and addresses of all persons present when the declaration
              against interest or admission was made.

**RESPONSE:** Plaintiff responds that defendants have made declarations against interest

and admissions in various forums including in their pleadings, in response to discovery

propounded in connection with this case, and in documents filed with governmental

agencies as public records and which are equally as accessible to defendants as they are to

Plaintiff. By way of further answer, Plaintiff refers AETC to the documents comprising

the nexus files for the defendants in this case located in the Boarhead Document Repository

at the Offices of Ballard Spahr Andrews & Ingersoll, LLP, 1735 Market Street,

Philadelphia, PA 19103 and the deposition testimony of Manfred DeRewal, Sr., Bruce

DeRewal, Linda Cochran, John Barsum, Jeffrey Shaak, Karen Porter and June Stephens

elicited in this case.

17. If you have in your possession, custody, or control any statements, whether written or oral, relevant to the subject matter of this Case from any individual, who is not a party to this Case, state:

    (a)    The name and address of the person making said statement;

    (b)    The name and address of the person to whom it was made;

    (c)    The nature of the statement, in detail;

    (d)    If in writing, attach a copy hereto;

    (e)    The name and addresses of all persons present when the statement was made.

**RESPONSE:** Plaintiff responds that all discoverable non-party statements relevant to the subject matter of this case in Plaintiff's possession are contained in the files comprising the Boarhead Document Repository located at the offices of Ballard Spahr Andrews & Ingersoll, LLP, 1735 Market Street, Philadelphia, PA 19103 and the deposition testimony of Bruce DeRewal, Linda Cochran, John Barsum, Jeffrey Shaak, Karen Porter and June Stephens elicited in this case.

18. Identify all persons (including their last known address and telephone number) who you will or may call to testify at trial, together with a statement of the general subject matter of their testimony.

**RESPONSE:** Plaintiff responds that, at this time, it has not yet identified the witnesses whom it expects to call at trial. Plaintiffs will identify the witnesses it expects to call at trial and will supplement its response to this interrogatory in accordance with the rules of this Court at an appropriate time.

19. Identify by name, current address, and telephone number any and all persons or entities who have performed environmental consulting, investigatory, or remedial activities for or on behalf of You with regard to the Site.

    (a)    Identify, with specificity, said environmental consulting, investigatory, or remedial activities.

    (b)    Attach a copy of all documents identified in the answer to subsection (a) above.

RESPONSE: Plaintiff further objects that a request to "attach" copies of documents is not

permitted by Rule 33. By way of further objection, this request is overly broad and unduly

burdensome. By way of further objection, the word "investigatory" is vague, confusing,

and ambiguous. Without waiving any such objections, Pursuant to Fed. R. Civ. P. 33(d),

the information sought in this interrogatory can be derived or ascertained from documents

concerning Site response costs and activities located in the Boarhead Document Repository

at the Offices of Ballard Spahr Andrews & Ingersoll, LLP, 1735 Market Street,

Philadelphia, PA 19103. By way of further response, such documents may be included in

documents located at Pitney Hardin, 200 Campus Drive, Florham Park, New Jersey 07932.

Such non-privileged documents are available for inspection and copying upon reasonable

notice.

## DOCUMENT REQUESTS

20. All documents whose identity was requested in the above initial Interrogatories.

RESPONSE: Plaintiff refers AETC to its responses to the Initial Interrogatories.

21. Any and all documents not located in the document repository that relate to AETC's
alleged liability in this Case.

RESPONSE: Plaintiff responds that all discoverable documents in its possession, custody

and/or control relating to AETC's liability in this case are located in the Boarhead

Document Repository at the offices of Ballard Spahr Andrews & Ingersoll, LLP, 1735

Market Street, Philadelphia, PA 19103. By way of further response, such documents may

be included in documents located at Pitney Hardin, 200 Campus Drive, Florham Park, New

Jersey 07932. Such non-privileged documents are available for inspection and copying

upon reasonable notice.

22. Any and all documents not located in the document repository that Plaintiff will use at trial to establish AETC's liability in this Case.

**RESPONSE: Plaintiff further objects to this document request insofar as it calls for the**

Plaintiff to articulate theories of its case not yet fully developed and, as such, is premature.

*See B.Braun Medical, Inc. v. Abbott Laboratories*, 155 F.R.D. 525, 527 (E.D. Pa. 1994).

Subject to and without waiving the foregoing objection, Plaintiff responds that it has not

yet identified the discoverable documents it will use at trial to establish AETC's liability in

this Case. Plaintiff will identify the documents not contained in the Boarhead Document

Repository that it will use at trial to establish AETC's liability in this Case and will

supplement its response to this interrogatory in accordance with the rules of this Court at

an appropriate time. By way of further response, to the best of Plaintiff's present

knowledge and belief, all documents that Plaintiff will use at trial to establish AETC's

liability are contained in the files comprising the Boarhead Document Repository located at

the offices of Ballard Spahr Andrews & Ingersoll, LLP, 1735 Market Street, Philadelphia,

PA 19103.

AS TO OBJECTIONS

Dated: September 14, 2004

_____
Glenn Harris, Esquire
Attorney I.D. No. 51222
BALLARD SPAHR ANDREWS &
INGERSOLL, LLP
Plaza 1000
Suite 500
Voorhees, NJ 08043-4636

*Exhibit C*

10-Feb-2005  11:52am  From-                                                  T-078  P.002/006  F-536

# CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI, STEWART & OLSTEIN, P.C.

## COUNSELLORS AT LAW

5 BECKER FARM ROAD
ROSELAND, N.J. 07068-1739
PHONE (973) 994-1700
FAX (973) 994-1744
www.carellabyrne.com

February 9, 2005

*Via Facsimile Only*
Glenn A. Harris, Esq.
Ballard Spahr Andrews & Ingersoll, LLP
Plaza 1000 – Suite 500
Main Street
Voorhees, New Jersey 08043-4636

RE:   **Boarhead Farm Agreement Group v. Advanced**
      **Environmental Technology Corporation, et al.**
      Case No. 02-03830 (LDD)
      Our File No. 300580-21
      Your File No. 892241

Dear Glenn:

    Enclosed please find a Third Amended Notice for Deposition for Agere's designated representative Marianne Santarelli. The deposition is noticed for February 22, 2005 commencing at 10:00 a.m. at Agere's Allentown office.

                    Very truly yours,

                    CARELLA, BYRNE, BAIN, GILFILLAN,
                    CECCHI, STEWART & OLSTEIN

                    MELISSA E. FLAX

MEF
Enclosure
Cc:   All Counsel (w/enclosure) (via facsimile only)

MELISSA E. FLAX [MF4060]
CARELLA, BYRNE, BAIN, GILFILLAN,
CECCHI, STEWART & OLSTEIN
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700
Attorneys for Defendant,
Handy & Harman Tube Company, Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BOARHEAD FARM AGREEMENT GROUP, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| v. | : | 02-cv-3830 (LDD) |
| ADVANCED ENVIRONMENTAL | : | |
| TECHNOLOGY CORPORATION, et al., | : | |
| Defendants. | : | |

### THIRD AMENDED NOTICE OF DEPOSITION

TO:    Glenn A. Harris, Esq.
       Ballard Spahr Andrews & Ingersoll, LLP
       Plaza 1000 – Suite 500
       Main Street
       Voorhees, New Jersey 08043-4636
       Attorneys for Plaintiff

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 30, deposition upon oral examination of the below deponent(s) will be taken before a notary public or some other officer authorized by law to administer oaths and take depositions, at the offices of Agere, 1110 American Parkway NE, Allentown, Pennsylvania, on February 22, 2005 commencing at 10:00 a.m. This examination is to be conducted from day to day or upon such adjourned date(s) as may be agreed upon until concluded.

0-Feb-2005  11:52am    From-                                                    T-976   P 004/005   F-555

Plaintiff Boarhead Farm Agreement Group member Agere by Marianne Santarelli, its representative designated pursuant to Fed. R. Civ. P. 30(b)(6), shall be examined with respect to matters relevant to the within action including, but not limited to, the following:

A.  **With respect to the Pennsylvania Facility located at 555 Union Boulevard, Allentown, Pennsylvania 18103:**

1.  The manufacturing operations, including materials used in any process, conducted at the Pennsylvania Facility for the period of 1970 through 1977.

2.  The volume and type of raw material purchased for use in the manufacturing operations of the Pennsylvania Facility for the period of 1970 through 1977.

3.  The waste streams created at the Pennsylvania Facility for the period of 1970 through 1977.

4.  The identity of current and/or former employees with knowledge regarding the waste streams (including all by-products) created at the Pennsylvania Facility for the period of 1970 through 1977.

5.  The waste disposal practices including any laboratory testing and/or analysis that may have been performed, at the Pennsylvania Facility for the period of 1970 through 1977.

6.  The identity of current and/or former employees with knowledge regarding the waste disposal practices, including any laboratory testing and/or analysis that may have been performed, at the Pennsylvania Facility for the period of 1970 through 1977.

7.  The relationship between Manfred DeRewal, Sr., his employees and his business(es) and the Pennsylvania Facility for the period of 1970 through 1977.

2

8. The relationship between Marvin Jonas and his business(es) and the Pennsylvania Facility for the period of 1970 through 1977.

9. The relationship between the Boarhead Farm site and the Pennsylvania Facility for the period of 1970 through 1977.

B. With respect to the North Carolina Works facility located at Lexington Road, Winston-Salem, North Carolina:

1. The manufacturing operations, including materials used in any process, conducted at the North Carolina Works facility for the period of 1970 through 1977.

2. The volume and type of raw material purchased for use in the manufacturing operations of the North Carolina Works facility for the period of 1970 through 1977.

3. The waste streams created at the North Carolina Works facility for the period of 1970 through 1977.

4. The identity of current and/or former employees with knowledge regarding the waste streams (including all by-products) created at the North Carolina Works facility for the period of 1970 through 1977.

5. The waste disposal practices, including any laboratory testing and/or analysis that may have been performed, at the North Carolina Works facility for the period of 1970 through 1977.

6. The identity of current and/or former employees with knowledge regarding the waste disposal practices including any laboratory testing and/or analysis that may have been performed, at the North Carolina Works facility for the period of 1970 through 1977.

3

    7.  The relationship between Manfred DeRewal, Sr., his employees and his business(es) and the North Carolina Works facility for the period of 1970 through 1977.

    8.  The relationship between Marvin Jonas and his business(es) and the North Carolina Works facility for the period of 1970 through 1977.

    9.  The relationship between the Boarhead Farm site and the North Carolina Works facility for the period of 1970 through 1977.

C.  With respect to costs expended by Agere in connection with the investigation and/or remediation of the Boarhead Farm Superfund Site:

    1.  The money that Agere has expended in connection with the investigation and/or remediation of the Boarhead Farm Superfund Site.

D.  With respect to any money recovered by Agere that was expended in connection with the investigation and/or remediation of the Boarhead Farm Superfund Site:

    1.  Any and all money recovered by Agere from any source whatsoever including, but not limited to, insurance proceeds, settlements, etc.

E.  With respect to the claims against each of the defendants in this action:

    1.  The basis for the filing of the complaint against each of the defendants.

    2.  The volume and type(s) of waste alleged to have come from each of the defendants and disposed of at the Boarhead Farm Superfund Site.

Dated: February 9, 2005

CARELLA, BYRNE, BAIN, GILFILLAN,
CECCHI, STEWART & OLSTEIN

By: _____

MELISSA E. FLAX [MF4060]

4

10-Feb-2005  11:52am  From-                                    T-876  P.001/006  F-650

**CARELLA, BYRNE, BAIN, GILFILLAN**
**CECCHI, STEWART & OLSTEIN**
6 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700
(973) 994-1744 (FAX)

OPERATOR: _____

TIME COMPLETED: _____

EXT. NO.: _____

DATE:    February 9, 2005

OUR FILE NO.:  300580-21

| NAME | FIRM | FAX NO. |
|------|------|---------|
| Glenn A. Harris, Esq. | Ballard, Spahr, Andrews & Ingersoll | (856) 761-9001 |
| Monique M. Mooney, Esq. | Ballard, Spahr, Andrews & Ingersoll | (215) 864-9266 |
| Thomas W. Sabino, Esq. | Wolff & Samson | (973) 740-1407 |
| Robert M. Morris, Esq. | Morris & Adelman, P.C. | (215) 568-3253 |
| Richard C. Biertzycki, Esq. | Phelan, Pettit & Biedrzycki | (215) 546-9444 |
| Lynn Wright, Esq. | Edwards & Angell | (888) 325-9169 |
| Stephen P. Chawaga, Esq. | Monteverde, McAlee & Hurd | (215) 343-2075 |
| Edward Fackenthal, Esq. | Henderson Weitherill, O'Hey | (610) 279-0696 |
| Andrew P. Foster, Esq. | Drinker, Biddle & Reath, LLP | (215) 988-2757 |
| Seth v.d.H. Cooley | Duane Morris LLP | (215) 979-1020 |

FROM:    Melissa E. Flax, Esq.      **Total Pages Including Transmittal Sheet:**    6

COMMENTS: _____

IF YOU HAVE ANY PROBLEMS WITH THIS TRANSMISSION, OR DO NOT RECEIVE
THE NUMBER OF PAGES NOTED, PLEASE CONTACT THE FAX OPERATOR AT (973)
994-1700 (EXT. 211)

CONFIDENTIALITY NOTE:  The documents accompanying this telecopy transmission
contain information from the law firm of Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart &
Olstein, which is confidential and/or legally privileged.  The information contained in this
facsimile is intended only for the use of the individual named above and others who have been
specifically authorized to receive it.  If the one receiving it is not the intended recipient, you are
hereby notified that any dissemination, distribution or copy of this communication is strictly
prohibited.  If you have received this telecopy in error, please notify us by telephone immediately
so that we can arrange for the return of the original documents to us at once.  Thank you.

The original of this document will be sent by:

☐    Ordinary Mail          ☐    Overnight Mail
☐    Messenger              ☒    This will be the only form of
                                 delivery of this Document

# *Exhibit D*

DRINKER BIDDLE & REATH LLP
Andrew P. Foster, Esq.
Adina D. Bingham, Esq.
One Logan Square                              Attorneys for Defendants
18th and Cherry Streets                       Techalloy Co., Inc.,
Philadelphia, PA 19103                        Rahns Specialty Metals, Inc.,
(215) 988-2696                                Thomas & Betts Corp.

---

UNITED STATES DISTRICT COURT
FOR THE EASTER DISTRICT OF PENNSYLVANIA

BOARHEAD FARM AGREEMENT GROUP,    :
                                  :
            Plaintiff             :
                                  :        CIVIL ACTION
                      v.          :        No. 02-3830
                                  :
ADVANCED ENVIRONMENTAL            :
TECHNOLOGY CORPORATION et al.,    :
                                  :
            Defendants            :

## NOTICE OF DEPOSITION

TO:    Glenn Harris, Esq.
       Ballard Spahr Andrews & Ingersoll, LLP
       Plaza 1000 - Suite 500
       Main Street
       Vorhees, NJ 08043-4636
       Attorneys for Plaintiff

       PLEASE TAKE NOTICE that pursuant to Fed. R. Civ. P. 30, the deposition

upon oral examination of the Rule 30(b)(6) witness identified below will be taken before a

notary public or some other officer authorized by law to administer oaths and take depositions, at

the offices of Drinker Biddle & Reath LLP, One Logan Square, 18th and Cherry Streets,
Philadelphia, PA 19103 on March 18, 2005 beginning at 9:00 a.m., or at such other date and time
as may be scheduled by agreement of the parties.  This examination is to be conducted from day
to day or upon such adjourned date(s) as may be agreed upon until concluded.

The deponent will be Plaintiff Boarhead Farm Group Agreement (on behalf of
itself and its members), by its representative or representatives designated pursuant to Fed. R.
Civ. Pro. 30(b)(6) with regard to the following matters:

1.    The volume of waste generated by each of the following entities that was
disposed at the Boarhead Farm Superfund Site (the "Site"):

  A.    Each non-settled Defendant;

  B.    Each settled Defendant;

  C.    Each BFAG member;

  D.    Every other entity or person that BFAG believes is a liable party under
    CERCLA or HSCA with respect to the Site.

2.    The types and amounts of hazardous substances contained in waste
generated by each of the following entities that was disposed at the Site:

  A.    Each non-settled Defendant;

  B.    Each settled Defendant;

  C.    Each BFAG member;

  D.    Every other entity or person that BFAG believes is a liable party under
    CERCLA or HSCA with respect to the Site.

3.     The share of liability for past and future Site response costs that Plaintiff

BFAG asserts should be borne by each of the following entities:

A.     Each non-settled Defendant;

B.     Each settled Defendant;

C.     Each BFAG member;

D.     Every other entity or person that BFAG believes is a liable party under

CERCLA or HSCA with respect to the Site.


_____
Andrew P. Foster


Dated: March 9, 2005

*Exhibit E*

LAW OFFICES

# BALLARD SPAHR ANDREWS & INGERSOLL, LLP

A PENNSYLVANIA LIMITED LIABILITY PARTNERSHIP

PLAZA 1000 · SUITE 500
MAIN STREET
VOORHEES, NEW JERSEY 08043-4636
856-761-3400
FAX: 856-761-1020
LAWYERS@BALLARDSPAHR.COM

PHILADELPHIA, PA
BALTIMORE, MD
CAMDEN, NJ
DENVER, CO
SALT LAKE CITY, UT
WASHINGTON, DC

PARTNER RESPONSIBLE FOR
VOORHEES, NJ PRACTICE
BENJAMIN A. LEVIN

GLENN A. HARRIS
DIRECT DIAL: 856-761-3440
PERSONAL FAX: 856-761-9001
HARRIS@BALLARDSPAHR.COM

March 11, 2005

*Via Facsimile and U.S. Mail*

Andrew P. Foster, Esquire
Drinker Biddle & Reath, LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996

Re:    *Boarhead Farms Litigation*

Dear Andy:

This is in response to your March 9, 2005 letter enclosing five notices of deposition. The Agreement Group objects to those notices.

Case Management Order No. 5 provided for 150 days for fact depositions, beginning August 16, 2005 and ending January 10, 2005. CMO No. 6 extended that period for an additional thirty days until February 10, 2005. The Defendants asked for and received a further extension, until March 18, 2005 to complete this discovery. The Defendants have thus had seven months to take whatever fact depositions they considered necessary.

The four notices for depositions of current or former SPS employees do not provide reasonable notice and are therefore objectionable. SPS's nexus, if any, to the Boarhead Farms site has been an issue in this litigation since the day the Complaint was filed. The name of and information concerning these witnesses has been known for many months. There is simply no reason why the depositions requested could not have been completed long ago. It is unreasonable to attempt to schedule them now on the final two days of fact discovery and with only four and five working days before the scheduled dates (even if fax receipt of the notices is effective).

Moreover, I did not receive your letter until late in the day on March 9. Corporate counsel for SPS has been and continues to be out of town until Wednesday of next week. He is further occupied for the balance of next week. It is simply impossible for SPS to determine whether any of these former employees (Mr. Oberholtzer is a current employee) would be

Andrew P. Foster, Esquire
March 11, 2005
Page 2

willing to voluntarily appear to be deposed, for SPS and Agreement Group counsel to interview
them, and to otherwise prepare for the depositions next week. Your clients could not reasonably
expect that these depositions could have been completed in the next few days.

The Rule 30(b)(6) notice addressed to the Agreement Group is objectionable for
the same reasons. The notice is further objectionable because it seeks the very type of contention
discovery to which the Agreement Group has objected, objections that have been sustained by
the Court. A copy of the Order is attached. Your clients cannot obtain through Rule 30(b)(6)
depositions the same discovery the Court has ruled they cannot obtain through written discovery.
It was thus improper for these types of questions to be directed to SPS's Rule 30(b)(6) designee
at that deposition, for another of the Defendants to send a similar deposition notice to Agere, and
for your clients to send this new notice. I request that your clients withdraw this deposition
notice.

Very truly yours,

Glenn A. Harris

GAH/dmn
Enclosure

cc w/encl.:     All Counsel

Andrew P. Foster
215 988 2512
andrew.foster@dbr.com

*Via EMAIL and FAX*

March 12, 2005

Glenn Harris, Esq.
Ballard Spahr Andrews & Ingersoll, LLP
Plaza 1000 — Suite 500
Main Street
Vorhees, NJ 08043-4636

     Re:    *Boarhead Farm Agreement Group v. AETC, et al.*
              *E.D. Pennsylvania Civil Action No. 02-CV-3830*

Dear Glenn:

     Today is Saturday. I just tried (unsuccessfully) to reach you by telephone to see if we could resolve in good faith the objections contained in your letter to me of yesterday, Friday, March 11th, regarding the Notices of Deposition that I FAXed to you on Wednesday, March 9th. I will try to reach you again by telephone on Monday to discuss. In the meantime you are welcome to call me on my cell phone (610-308-5127) at any time. Until we can speak directly, let me try to address your concerns with this letter.

     Regarding all of the depositions scheduled for March 17th and 18th, your letter objects that my March 9th Notices (which provided 8 or 9 days advance notice), did not meet the "reasonable notice" standard required under FRCP Rule 30(b)(1). Respectfully, I do not think that your position comports with the applicable case law.[1] More important, I simply do not think that you are making a fair or helpful objection under the circumstances.

     In particular, several weeks ago I requested that you agree to an extension of the current fact discovery deadline of March 18th, but you declined to agree. In response, I filed a Motion to Compel which is currently pending, and which in part requests such an extension. Given your unwillingness to extend the deadline, I do not see how I had much choice but to schedule the depositions for March 17th and 18th to comply with the current deadline.

---

[1] See Pearl v. Keystone Consolidated Industries, Inc., 884 F.2d 1047, 1052 (7th Cir 1989) (holding 6 days is "reasonable notice"); Jones v. United States, 720 F. Supp. 355, 366 (S.D.N.Y. 1989) (holding 8 days is "reasonable notice").

Glenn Harris, Esq.
March 12, 2005
Page 2


However, recognizing that 8 to 9 days notice is a little tight in practice, both the Notices themselves and my March 9th cover letter specifically offered to work out alternative dates with you that would be mutually-convenient for counsel and the witnesses ("I would be glad to re-schedule them to more convenient dates and times, including dates after the current fact discovery deadline of March 18[th]").

My proposed approach seems very reasonable under the circumstances. As you and I both know, any actual trial date in this matter is many months away. For example, the current Case Management Order does not yet even address such things as expert designation and discovery, summary judgment motion practice, pre-trial filings, and the like, all of which will take considerable time. Given the large window of time we are working with, I think both of us could easily avoid any hardship or prejudice to our clients, or to the witnesses, by agreeing to mutually-convenient dates.

Instead, I read your March 11th letter to be a flat-out objection to having the depositions take place at all. If I am misunderstanding your position, please let me know so that we can discuss appropriate arrangements. If I am not misunderstanding your position, I hereby ask you to reconsider, and suggest that we confer in good faith and attempt to work out mutually-convenient arrangements.

Failing that, and only as an unfortunate last resort, I currently expect to proceed with the depositions, as scheduled, unless you obtain a protective order from the Court under FRCP Rule 26(c). Of course, under that rule, counsel are obligated to confer in good faith and try to resolve the dispute at hand, before inconveniencing the Court with unnecessary motions. That is exactly what I am trying to do, and I therefore request that you attach a copy of this letter to any such motion you may file.

In short, given that any trial date is still far over the horizon, and given our normally excellent working relationship, it would be odd indeed if you and I could not successfully confer and work out the scheduling of a few depositions.

Finally, I need to offer a few specific comments regarding your letter's objections to the Rule 30(b)(6) Notice of Deposition that I directed to Plaintiff BFAG.

First, assuming that you intended to attach to your letter the Court's January 25, 2005 Order regarding AETC's Motion to Compel (a different Order seems to have been attached by mistake), that Order is has nothing to do with, and is not applicable to, the recent Notice of Deposition that I issued.

Glenn Harris, Esq.
March 12, 2005
Page 3

Second, even assuming that the concept of "contention" questions applies to
depositions, as opposed to interrogatories, the arguments set forth in my pending Motion
to Compel explain our position as to why responding to those questions at this time is
appropriate.

Third, the identified deposition subjects are, at least in large part, factual in
nature, and do not involve any "contention" issues or the "application of law to fact."

Fourth, I believe Plaintiff BF AG is required by FRCP Rule 30(b)(6) to designate
an appropriate deponent, and is similarly required by Rule 37(d) to make that deponent
available for deposition.

For these reasons, I decline your request to withdraw the Rule 30(b)(6) deposition
notice. However, as set forth above, I am entirely available to confer with you in good
faith in an attempt to agree upon mutually-convenient deposition arrangements.

Please give me a call at your earliest convenience to discuss these matters.

Very truly yours,

Andrew P. Foster

Andrew P. Foster

cc:    All Counsel (via email only on 9/12/05; hard copy to follow on 9/14/05)