**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

BOARHEAD FARM AGREEMENT GROUP,

Plaintiff,

v.

ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, et al.,

Defendants

Civil Action No. 02-CV-3830

**ORDER**

AND NOW, this ________ day of ____________________, 2005, upon consideration of Motion Of Defendant Ashland Inc. For Extension Of The Fact Discovery Period ("Defendant's Motion"), and Plaintiff Boarhead Farm Agreement Group's Memorandum Of Law In Opposition To Motion Of Defendant Ashland Inc. For Extension Of The Fact Discovery Period, it is hereby ORDERED that Defendant's Motion is DENIED.

______________________________
Legrome D. Davis, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BOARHEAD FARM AGREEMENT GROUP,

Plaintiff,

v.

ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, et al.,

Defendants

Civil Action No. 02-CV-3830

**PLAINTIFF BOARHEAD FARM AGREEMENT GROUP'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION OF DEFENDANT ASHLAND INC. FOR EXTENSION OF THE FACT DISCOVERY PERIOD**

## INTRODUCTION

Plaintiff Boarhead Farm Agreement Group ("Agreement Group") respectfully submits this Memorandum Of Law In Opposition To Motion Of Defendant Ashland, Inc. For Extension Of The Fact Discovery Period ("Ashland's Motion for Extension of Fact Discovery") and accompanying Memorandum Of Law Of Defendant Ashland Inc. In Support Of Its Motion For Extension Of The Fact Discovery Period ("Ashland Brief"). Ashland's Motion for Extension of Fact Discovery adds nothing to the argument set forth in the similar Motion To Compel Responses To Interrogatories And For Extension Of Fact Discovery Period Of Techalloy/RSM ("Techalloy's Motion to Compel"). Ashland's Motion should be denied for the same reasons that Techalloy's Motion to Compel should be denied, as set forth in Plaintiff Boarhead Farm Agreement Group's Memorandum Of Law In Opposition To Motion To Compel Responses To Interrogatories And For Extension Of Fact Discovery Period Of Techalloy Co.,

Inc. ("the Agreement Group's Response to Techalloy's Motion to Compel") (a copy of which is attached hereto at Exhibit A).

Ashland's only "argument" is the conclusory statement that it has been "unable to determine what additional fact discovery [it] may need to take to properly assess Plaintiff's claims and to pursue or prepare [its] defenses."[1] Ashland Brief at 4. Ashland fails to reference a single "defense" concerning which it needs discovery or a single reason why being supposedly unable to "assess" the Agreement Group's claims had any effect on Ashland's decision not to take fact discovery.[2] It is important to note that the Ashland Brief is devoid of any suggestion as to what, *exactly*, the discovery is that it has refused so far to conduct or, for that matter, *exactly* what discovery it *might* conduct if and when it receives responses to its contention discovery.[3] It is thus impossible to imagine why Ashland thinks that it would, ultimately, need "a period of at least ninety (90) days" following receipt of answers to conduct its unspecified discovery. Ashland Brief at 6.

Moreover, in making this argument, Ashland admits that it has intentionally refrained from taking *any fact discovery* because it couldn't figure out what discovery it should take without first having the Agreement Group's responses to its written contention discovery.

---

1 Ashland's bald statements that the discovery responses it seeks are "crucial," "critical," or that it is without such information to "properly assess Plaintiff's claims and [prepare its] defenses" is not an argument at all. Ashland Brief at 4-6.

2 Each of the parties has available to it all of the documents produced in the action and all of the deposition testimony taken. Each therefore has everything it needs to "assess" its own case or the case of anyone else.

3 This phase of the litigation was focused on what wastes were removed from the individual facilities of each of the parties by DeRewal Chemical Company, the quantities of those wastes, and the characteristics of those wastes. What fact discovery concerning these issues, then, did Ashland consciously decide not to take?

Ashland makes this argument now despite having joined with the other defendants in asking first the Agreement Group and then this Court to permit *two* prior extensions of fact discovery. In neither instance did Ashland or any of the other defendants represent to the Agreement Group or to this Court that the requested extensions were conditioned upon, or in any way related to, a withdrawal of the Agreement Group's objections to their contention discovery. To the contrary, the only justification that was articulated to the Agreement Group and to this Court to substantiate any such extension was that there were then depositions "in the process of being scheduled and completed," and that such discovery could not be completed without the requested extension. *See* Letter dated February 1, 2005 addressed to this Court on behalf of all defendants, a copy of which is attached at Exhibit B. Thus, Ashland must have intended the Agreement Group and this Court to assume the requests for extensions were being made based upon Ashland's good faith belief that all necessary discovery could be completed in the requested time periods. Had the Agreement Group believed otherwise, or had it known the defendants had no intention of conducting fact discovery during those extended periods, it would have not consented to the first request and would have opposed the second.

A fair reading of Ashland's position is that Ashland will continue to take no fact discovery whatsoever in *any general extension* of fact discovery, and will first start to *think* about what fact discovery it *might* want to take *only* if and when this Court first requires the Agreement Group to answer the defendants' contention discovery. For the reasons in the Agreement Group's Response to Techalloy's Motion to Compel, this proposition should be rejected out of hand.

**Conclusion**

For all of these reasons, and in the interests of justice, the Boarhead Farm Agreement Group respectfully requests that Ashland's Motion for Extension of Fact Discovery be denied.

Respectfully Submitted,

Ballard Spahr Andrews & Ingersoll, LLP
A Pennsylvania Limited Liability Partnership

Dated: April 4, 2005

By: ______________________

Glenn A. Harris, Esquire
Monique M. Mooney, Esquire
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
(215) 665-8500

**CERTIFICATE OF SERVICE**

I hereby certify that, on April 4, 2005, Plaintiff Boarhead Farm Agreement Group's Memorandum Of Law In Opposition To Motion Of Defendant Ashland Inc. For Extension Of The Fact Discovery Period was filed electronically and is available for viewing and downloading from the Electronic Case Filing System of the United States District Court for the Eastern District of Pennsylvania. In addition, true and correct copies of the foregoing were served by first-class mail, postage prepaid upon the following:

Thomas W. Sabino, Esquire
Wolff & Samson, PC
The Offices at Crystal Lake
One Boland Drive
West Orange, NJ 070529

Robert M. Morris, Esquire
Morris & Adelman, P.C.
1920 Chestnut Street
P.O. Box 30477
Philadelphia, PA 19103
*Advanced Environmental Technology Corp.*

Melissa Flax, Esquire
Carella, Byrne, Bain, Gilfillian, Cecchi,
Stewart & Olstein, P.C.
Five Becker Farm Road
Roseland, New Jersey 07068-1739
*Handy & Harman Tube Company*

Lynn Wright, Esquire
Edwards & Angell, LLP
750 Lexington Avenue
New York, New York 10022-1200
*Carpenter Technology Corporation*

Seth v.d.H. Cooley, Esquire
Duane Morris LLP
Suite 4200, One Liberty Place
Philadelphia, PA 19103-7396
*Flexible Circuits & Etched Circuits*

*-and-*

A. Nicole Friant, Esquire
Duane Morris LLP
One Liberty Place
Suite 4200
Philadelphia, PA 19103-7396

Stephen P. Chawaga, Esquire
Monteverde, McAlee & Hurd
One Penn Center at Suburban Station
Suite 1500
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103-1815
*Merit Metals Products Corp.*

Andrew P. Foster, Esquire
Drinker, Biddle & Reath, LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996
*Rahns Specialty Metals, Inc.*
*Techalloy Co., Inc.*
*Thomas & Betts Corporation*
*Unisys Corporation*

*and*

Adina Marie Bingham, Esquire
Drinker Biddle & Reath LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996

Edward Fackenthal, Esquire
Law Office of Edward Fackenthal
One Montgomery Plaza
Suite 209
Norristown, PA 19401
*NRM Investment Co.*

Richard C. Biedrzycki, Esquire
Phelan, Pettit & Biedrzycki
The North American Building
Suite 1600
121 South Broad Street
Philadelphia, PA 19107
*Ashland, Inc.*

Date: April 4, 2005

Monique M. Mooney
Attorney for Plaintiff

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BOARHEAD FARM AGREEMENT GROUP,

Plaintiff,

v.

ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, et al.,

Defendants

Civil Action No. 02-CV-3830

**PLAINTIFF BOARHEAD FARM AGREEMENT GROUP'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO COMPEL RESPONSES TO INTERROGATORIES AND FOR EXTENSION OF FACT DISCOVERY PERIOD OF TECHALLOY CO., INC.**

## INTRODUCTION

Techalloy contends that the Agreement Group's failure to provide substantive responses to Techalloy's contention interrogatories has put Techalloy on the "horns of a dilemma" as to whether or not to proceed with discovery which it may later find to have been "unnecessary." *See* Memorandum of Law in Support of Techalloy/RSM's Motion to Compel Responses to Interrogatories and for Extension of Fact Discovery Period (*hereinafter* "Techalloy Brief") at 2.[1] According to Techalloy, the preparation of its defense in this case is, and apparently always has been, entirely dependent upon the substance of the Agreement Group's responses to two of its discovery requests, Interrogatory Nos. 3 and 4, which ask the Agreement Group to "state its position" as to how the Agreement Group would apportion the equitable

[1] Unless indicated otherwise, all documents referenced herein are appended as Exhibits to the Motion to Compel Responses to Interrogatories and for Extension of Fact Discovery Period of Techalloy Co., Inc.

shares of response costs at the Boarhead Farm Site ("Site") among the various parties in this case. *See* Interrogatories (First Set) of Defendant Techalloy Company, Inc. Directed to Plaintiff Boarhead Farm Agreement Group (*hereinafter* "Techalloy Interrogatories") at 3-5. According to Techalloy, requiring it to engage in its own fact discovery to discover the facts that are potentially relevant to the apportionment of the various parties' equitable shares is "inefficient and unfair" because Techalloy *may* agree with the Agreement Group's determination of the same, thus precluding the need for Techalloy to conduct its own discovery. *Id.* at 9.

Essentially, Techalloy argues that it would be much more convenient for it to not take discovery of the former parties with which the Agreement Group has settled and which have been dismissed from this action ("the Settled Parties"), of the Agreement Group, of the remaining Defendants, and of anyone else in the world who it thinks might be liable for a share of the Agreement Group's response costs, if the Agreement Group would just posit an "equitable share" of liability for each of these entities that was acceptable to Techalloy, thereby making it "unnecessary" for Techalloy to actually put on a case at trial with respect to the Settled Parties, the Agreement Group, etc. If, though, as Techalloy says, it is *for any reason* unhappy with any such admissions by the Agreement Group, then Techalloy wants to then do just what it should have done all along – take whatever discovery Techalloy feels it might need to prove at trial the equitable share of each Settled Party, each member of the Agreement Group, each remaining Defendant, etc.

Worse yet, Techalloy waited to file this motion until only days before the twice-extended close of fact discovery. Techalloy did so despite the Agreement Group's objection on September 14, 2004 (in response to written discovery from various Defendants) that it was not required to respond to the type of "contention" interrogatories at issue in Techalloy's present

Motion (even if the Agreement Group is otherwise obligated to do so) because such discovery was premature, despite the Agreement Group's restatement and further explanation of those objections in opposition to discovery motions by Advanced Environmental Technology Corp. ("AETC") and Ashland, Inc. seeking to overturn those objections, and despite this Court's January 25, 2005 denial of AETC's motion, squarely stating that such discovery is premature.

Furthermore, Techalloy's argument regarding the need for the Agreement Group to answer Techalloy's contention interrogatories at this procedural juncture or, indeed, at any time, is premised upon a fundamental misunderstanding of the nature of this contribution action under CERCLA and is Techalloy's disingenuous attempt to further delay trial of this case. The Agreement Group is not required to provide substantive responses to Interrogatory Nos. 3 and 4 because these interrogatories are improper and seek discovery that is not relevant to the claims or defenses of any party in this case. Even if Interrogatory Nos. 3 and 4 were appropriate discovery requests to which the Agreement Group was obligated to respond, the Agreement Group would be unable to do so until a later procedural juncture.

Techalloy's Motion seeking an extension of fact discovery if and when it receives responses to Interrogatory Nos. 3 and 4, and separately seeking further responses to Interrogatory Nos. 1, 2, and 7, should be denied.

## ARGUMENT

1. Interrogatory Nos. 3 and 4 are improper interrogatories that request discovery not relevant to the claims or defenses of any party in this case.

Interrogatory Nos. 3 and 4 ask the Agreement Group to "state its position" as to what "equitable share" of site response costs and liability the Agreement Group apportions or would apportion to: Techalloy; each settled defendant; each party to this case; and any other person or entity liable at the Site. Techalloy Interrogatories at 3-5. The Agreement Group

properly objected to both of these interrogatories by asserting that they constitute premature contention interrogatories that call for the Agreement Group to articulate theories of its case not yet fully developed, citing to *B. Braun Medical, Inc. v. Abbott Laboratories*, 155 F.R.D. 525 (E.D. Pa. 1994). *See* Objections and Responses of Boarhead Farm Agreement Group to Interrogatories (First Set) of Defendant Techalloy Company, Inc. (*hereinafter* "Agreement Group Response"). Indeed, such contention interrogatories seek information that is not relevant to the claims or defenses of any party in this case.

Techalloy concedes that Interrogatory Nos. 3 and 4 are "contention interrogatories." Techalloy Brief at 4. Contention interrogatories are addressed at Rule 33 (c) which states:

> **(c) Scope; Use at Trial.** Interrogatories may relate to any matters which can be inquired into under Rule 26(b)(1), and the answers may be used to the extent permitted by the rules of evidence.
>
> An interrogatory *otherwise proper* is not necessarily objectionable merely because an answer to the interrogatory involves an opinion or contention that relates to fact or the application of law to fact, but the court may order that such an interrogatory need not be answered until after designated discovery has been completed *or until a pre-trial conference or other later time.*

Fed. R. Civ. P. 33(c) (*italics added*). While Rule 33 permits a party to seek discovery by means of contention interrogatories, it also expressly restricts the use of this means of discovery by requiring that a contention interrogatory be "otherwise proper" and allowing a court to postpone the time at which the responding party need answer such interrogatories. *See id.*; In *In re Convergent Technologies Securities Litigation*, the court addressed the inquiry to be undertaken in determining whether an interrogatory is "otherwise proper" under Rule 33, holding that:

> [A] court can determine whether any given interrogatory is "otherwise proper" only after considering, among other things,

> whether it is interposed for any improper purpose, and whether it is 'unreasonable or unduly burdensome or expensive, given the needs of the case, the amount in controversy, and the importance of the issues at stake in the litigation.'

*In re Convergent Technologies Securities Litigation*, 108 F.R.D. 328, 333 (N.D. Cal. 1985) (*citing* Fed. R. Civ. P. 26(g)).

In the present case, Interrogatory Nos. 3 and 4, which seek to discover the equitable shares that the Agreement Group would apportion to each party, are neither relevant to the claim or defense of any party in this case, nor are they "otherwise proper" contention interrogatories meriting a substantive response. How the Agreement Group would apportion any party's equitable share of liability in this case has no bearing whatsoever on the Agreement Group's contribution claim against Techalloy or any other party in this case. It is well-settled that the elements for a claim of contribution under CERCLA are: (1) that the defendant is a potentially responsible party; (2) that hazardous substances were disposed of at a "facility"; (3) that there has been a "release" or "threatened" release of hazardous substances from the facility into the environment; and (4) that the release or threatened release has required or will require the plaintiff to incur "response costs." *New Jersey Turnpike Authority v. PPG Industries, Inc., et al.*, 197 F.3d 96, 103-04 (3rd Cir. 1999). *See also California v. Campbell, et al.*, 319 F.3d 1161 (9th Cir. 2003); *Crofton Ventures Limited Partnership v. G&H Partnership, et al.*, 258 F.3d 292 (4th Cir. 2001); *Geraghty and Miller, Inc. v. Conoco Inc., et al.*, 234 F.3d 917 (5th Cir. 2001). Once the contribution plaintiff demonstrates these elements of its claim, the court "may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f)(1). At most, a contribution plaintiff must demonstrate at trial "that apportionment is *feasible*." *New Jersey Turnpike Authority*, 197 F.3d at 104 n.7 (*emphasis added*). There is simply no requirement that a CERCLA contribution plaintiff form prior to trial,

or even advocate at trial, a belief, opinion, or contention as to each party's equitable share of plaintiff's response costs.

Consistent with this well-established law, the Agreement Group alleges in the Third Amended Complaint that it has incurred and will continue to incur response costs at the Site for which the Agreement Group is not liable and for which Techalloy and the other defendants are liable. *See* Third Amended Complaint, ¶ ¶ 1, 17, 20. The Third Amended Complaint also seeks an allocation *by the Court* of the response costs between the parties in this action using such equitable factors *as the Court* determines are appropriate. *See* Third Amended Complaint, Counts I and II. It is the Court under CERCLA, not the parties themselves, who determines equitable shares of liability using the factors *it* finds appropriate.[2] *See New Jersey Turnpike Authority*, 197 F.3d at 103-04.

Courts making allocation decisions have identified a myriad of factors that influence their determination of such equitable shares, including the volume of waste disposed of at the Site, the type of waste, the knowledge of the persons involved in the creation or disposal of the waste, the level of cooperation (or non-cooperation) with EPA, the effect the waste might have had on other wastes deposited at the Site, etc. *Id.* At trial, the parties in this case will present to the Court the facts and evidence each party thinks the Court should consider in making its equitable share allocations.

The Agreement Group may choose to advocate at trial what this Court *should* determine each party's equitable shares should be. Its burden at trial, though, is only to put on evidence from which *this Court* can make such a determination, and to otherwise prove its

---

2 Section 9613 of CERCLA provides: "In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f)(1).

entitlement to a judgment against the defendants. *New Jersey Turnpike Authority*, 197 F.3d at 103-104. Therefore, Interrogatory Nos. 3 and 4, which seek *the Agreement Group's* determination of the parties' equitable shares of liability, are neither relevant to the claim or defense of any party in this case nor are they reasonably calculated to lead to the discovery of admissible evidence. They are thus improper. *See* Fed. R. Civ. P. 33(c) ("Interrogatories may relate to any matters which can be inquired into under Rule 26(b)(1)…"). Furthermore, insofar as the information these interrogatories seek to discover has no relevance to any claim or defense in this case, these interrogatories are "unduly burdensome…given the needs of the case," and thus are not "otherwise proper" contention interrogatories meriting a substantive response at all. *See id.*; *In re Convergent Technologies Securities Litigation*, 108 F.R.D. at 333.

2. Interrogatory Nos. 3 and 4 are premature.

Even if this Court determines that Interrogatory Nos. 3 and 4 are "otherwise proper" contention interrogatories meriting a substantive response, it would be impossible for the Agreement Group to provide such a response at this point in the case. Interrogatory Nos. 3 and 4 seek not facts but the Agreement Group's current view as to how this Court will ultimately at trial allocate liability among the parties to this action. The Agreement Group cannot form an opinion as to any party's equitable share until it knows all of the facts concerning each party's waste streams, its relationship with DeRewal Chemical Company ("DCC") (or whatever other waste company it dealt with), its relationship to the Site, and a myriad of other facts that this Court may conclude are "equitable factors" to be considered in allocating response costs. Although the discovery deadline set by this Court will soon expire, in addition to the facts and evidence elicited in this case thus far, the Agreement Group's determination of each party's equitable share of liability would also be dependent upon the expert testimony ultimately offered

by the parties, legal rulings made by this Court, and other information and analysis that has not been gathered or considered at this point in the litigation.

By way of example only, the Agreement Group now anticipates offering two types of expert opinion testimony at trial with respect to some or all of the remaining defendants' waste streams. Such testimony may go to issues relevant, indeed necessary, to a determination of the "equitable shares" of liability each party should bear in this case. *See, e.g., State of New York v. Solvent Chemical Co.*, 214 F.R.D. 106, 110 (W.D.N.Y. 2003) (noting, in CERCLA contribution action governed by UCFA, that the assignment of the equitable shares of liability of the non-settling defendants "will be a matter of expert testimony"). First, expert opinion testimony may be offered with respect to the precise types and concentrations of hazardous substances in a defendant's waste stream. Such testimony may be based upon the defendant's manufacturing process that created a specific waste stream, the raw materials used in that process, the manner in which the resulting wastes were handled, etc. Second, expert opinion testimony may be offered concerning the toxicity of a defendant's waste stream including, perhaps, what effects such waste might have on human health or the environment or on the response actions taken and resulting response costs incurred by the Agreement Group at the Site.[3]

---

3 The opinions Techalloy cites for the proposition that Plaintiff's "position" on allocation of "equitable shares" is not a proper subject for expert opinion are inapposite. *See* Techalloy Brief at n.2. The courts in those opinions disallowed expert testimony purporting to posit the equitable factors that those courts should consider, as well as recommend an overall allocation scheme based upon the application of those equitable factors by the expert to the "facts" as the party offering the testimony saw them. The courts in the cited opinions reasoned that such experts were usurping the court's ultimate role in a CERCLA contribution action, that of "allocat[ing] response costs among liable parties using such equitable factors as the court determines are appropriate." CERCLA section 113(f)(1). In contrast, the experts Plaintiff describes here would render opinions on ultimate facts, such as the hazardous constituents in a party's wastes, the relative

(continued...)

The Agreement Group has not yet retained experts to offer such opinions, or to offer the many other types of opinions that might be relevant to the "equitable factors" that this Court ultimately "determines are appropriate" in allocating response costs among the liable parties. 42 U.S.C. § 9613(f)(1). Thus, the Agreement Group literally has not formed any belief as to the equitable shares that *this Court* should ultimately allocate to liable parties or to any of the other "contention" questions to which Techalloy now seeks answers. Nor could the Agreement Group respond to these contention interrogatories at this procedural juncture even if it wanted to.

Insofar as it is only the Court's determination of the parties "equitable shares" of liability that is relevant in this case and the fact that, even if the Agreement were so inclined, it would be impossible for the Agreement Group to provide reasonably informed answers to Interrogatory Nos. 3 and 4 at this point in the case, answers to these interrogatories do not "contribute meaningfully to clarifying the issues in the case, narrowing the scope of the dispute, ...setting up early settlement discussions, or...expose a substantial basis for a motion under Rule 11 or Rule 56." *B. Braun Medical, Inc.*, 155 F.R.D. at 527. Accordingly, Techalloy has failed to meet its burden of proving how compelling the Agreement Group to respond to Interrogatory Nos. 3 and 4 at this time "assists the goals of discovery" and, for this reason, its Motion should be denied.[4] *Id.*

---

(...continued)

"toxicity" of those wastes, etc., which facts would likely aid this Court in allocating the parties' equitable shares. The opinions cited by Techalloy specifically recognize the propriety of such expert opinion. *See American Special Risk Insurance v. City of Centerline*, 2002 U.S. Dist. LEXIS 12343 at *29 (E.D. Mich.); *New York v. Westwood-Squibb Pharmaceutical Co.*, 2001 U.S. Dist. LEXIS 11765 at *30.

4 Interrogatory No. 4 focuses on how the Agreement Group thinks this Court will consider at trial potential "orphan shares." Most courts have found the treatment of "orphan

(continued...)

3. An extension of the current discovery deadline is unwarranted insofar as the conduct of Techalloy's discovery does not hinge on the Agreement Group's answers to Techalloy's improper and premature contention interrogatories.

Techalloy's assertion that it was somehow prevented from conducting discovery over the past seven months by the Agreement Group's failure to answer its premature and improper contention interrogatories is ludicrous. If, as Techalloy contends, the conduct of its discovery hinged upon the Agreement Group's answers to Interrogatory Nos. 3 and 4, Techalloy's failure to file its Motion immediately after receiving the Agreement Group's Interrogatory Responses is inexplicable. Furthermore, the only justification that Techalloy articulated to the Agreement Group and this Court to substantiate its prior request for a five-week extension of the fact discovery deadline was the completion of pending or then being scheduled, depositions. *See* Letter dated February 1, 2005 (*hereinafter* "the February 1 Letter") attached hereto at Exhibit A. Techalloy in no way suggested or even hinted as justification for this five-week extension that its ability to conduct discovery was dependent upon the Agreement Group's response to the discovery requests of Techalloy or any other Defendant in this matter. To the contrary, the February 1 Letter indicates that Techalloy and the other Defendants were, in fact, proceeding with discovery and contemplated completion of discovery by March 18, 2005. The combined effect of the timing of Techalloy's present motion, less than two weeks prior to the close of fact discovery, Techalloy's pattern of seriatim requests for extensions of the discovery deadline, and Techalloy's sudden "revelation" that the conduct of its discovery is

(...continued)

shares" to be simply another equitable factor for the Court's consideration. *United States v. Helen Kramer, et al.*, 953 F. Supp. 592 (D.N.J. 1997). How this Court resolves this question has nothing to do with whether the Defendants should have conducted fact discovery in the seven months they have had to do so.

dependent upon the Agreement Group's responses to certain of its contention interrogatories, suggests that Techalloy's true motivation in this instance is to further delay trial of this case.

The question of each party's liability has been the central issue in this case since the date the Complaint was filed. Since this Court's determination in its Order of June 30, 2004 that the Uniform Comparative Fault Act ("UCFA") governs the extent, if any, to which the liability of the non-settling defendants in this case should be offset by any settlement agreements, the burden of proving that the Settled Parties are liable and the equitable shares properly allocated to them shifted to Techalloy and the other Defendants. The Agreement Group asserts in the Third Amended Complaint that it has no liability for response costs at the Site; it is Techalloy's burden to prove otherwise. Nevertheless, Techalloy has waited until the close of the twice-extended fact discovery period to file this Motion and assert the "unfairness" of its discovery obligations rather than conduct the discovery it may want to meet its burdens of proof at trial.

Rule 26 does not distinguish between "necessary" and "unnecessary" discovery. That is a determination each litigant must make on its own. The Agreement Group has worked diligently during the past seven months to discover the facts and evidence upon which it will rely to establish its cases against the defendants. In retrospect, some of the discovery the Agreement Group took during this period may now appear to be "unnecessary" and, undoubtedly, even more of this discovery will turn out to have been "unnecessary" once the parties put on their proofs at trial. Such inefficiencies are part and parcel of the discovery process that are borne equally by all litigants in a matter. Techalloy has posited no cogent reason why it should be afforded special status in this regard and be exempted from conducting discovery during the same time period and with the same inherent uncertainties regarding the "necessity" of its discovery that the

other parties in this matter have borne. Not only is it not "unfair" for Techalloy to be situated similarly with respect to its discovery obligations as the other parties in this matter, it would be unfair to those other parties who have conducted their discovery in the time period allotted by this Court without the benefit of a "preview" of what other parties' litigation positions will be at trial for Techalloy to be afforded a special advantage in this regard. Thus, the fact that Techalloy would save some time and money if the Agreement Group were to concede to apportionments of "equitable shares" of liability which were agreeable to Techalloy is not sufficient reason to require the Agreement Group to make such apportionments prematurely.

Regardless of how the Agreement Group may ultimately request that the Court apportion equitable shares of liability in this case, Techalloy's burden of presenting facts and evidence to the Court in support of its own allocation of equitable shares remains unchanged. Techalloy has known since at least September 14, 2004 of the Agreement Group's position with respect to the prematurity of contention interrogatories calling for a statement of equitable shares of liability.[5] Thus, by choosing not to engage in fact discovery to meet its own burden of proof with respect to "equitable share" allocation during the discovery period set by this Court in the hopes that the Agreement Group would do some of this work for Techalloy by apportioning liability in a way agreeable to Techalloy, Techalloy took a calculated risk that it would lose its opportunity to conduct discovery. Techalloy now seeks to have the Court extricate it from the uncomfortable position in which its misguided calculations have landed it. That Techalloy

---

5 The Agreement Group has stated in its objections to written discovery from various defendants the Agreement Group's position that it is not required to provide substantive responses to the type of contention interrogatories at issue in this Motion because such discovery is premature. The Agreement Group restated and further explained these objections in opposition to discovery motions by defendants AETC and Ashland, Inc. seeking to overturn these objections.

chose, unreasonably, to wait for the Agreement Group to preview its litigation position regarding apportionments of equitable shares of liability before Techalloy conducted its own discovery does not justify extending the fact discovery period in this case. Techalloy must live with the results of the strategy it employed.[6]

Furthermore, the proffered basis for Techalloy's request for yet another extension of the fact discovery deadline in this case[7] is highly suspect given Techalloy's inexcusable torpor during the past five weeks, the most recent extension of the discovery period granted by this Court. In that five-week time period, which the Defendants in this case requested for the *express purpose* of completing their discovery, Techalloy took only one deposition, and that deposition related solely to Techalloy's own liability. The only other deposition taken by *any* Defendant during the same time period was a Rule 30(b)(6) deposition of a member of the Agreement Group, and that deposition had been originally scheduled to be taken during the *prior* discovery period and was only postponed for reasons of convenience. Now Techalloy petitions this Court for yet another extension of the discovery deadline commencing sometime after the Agreement Group responds to Techalloy's contention interrogatories, yet provides no inkling as to the type or amount of discovery it intends to do then that would justify such an extension (other than whatever discovery Techalloy deems "necessary" based on the substance of the Agreement Group's responses). Techalloy's squandering of this Court's most recent extension of the discovery deadline, and its failure to offer any hint as to what discovery it would conduct were

---

6 The Agreement Group notes that Techalloy's Motion seeks only an extension of discovery *after* the Agreement Group responds to its contention discovery. Techalloy has not asked for yet another general extension of fact discovery.

7 The fact discovery deadline was originally January 10, 2005. This deadline was extended twice, the first time for thirty days and, most recently, for an additional five-week period that ended on March 18, 2005.

the Court to grant yet another extension of the discovery deadline, strongly suggests that Techalloy's latest request for an extension of the discovery period is nothing more than a stall tactic.

Even if the Court were to grant Techalloy the discovery extension it requests, i.e., ninety days to conduct unfettered fact discovery after the Agreement Group has responded to Techalloy's contention interrogatories regarding "equitable share" allocation, the necessary consequence of such a staggered discovery scheme is an endless cycle of self-perpetuating discovery. As explained above, even if the Agreement Group were inclined to do so, at this point in the case it could not answer Techalloy's contention interrogatories calling for statements of the Agreement Group's "position" on each party's "equitable share" of liability because, among other things, the Agreement Group would need the input of experts it has not yet retained to formulate reasonably informed responses. Assuming, for purposes of this argument only, that the Agreement Group did respond to Techalloy's contention interrogatories at the end of the expert discovery period, under Techalloy's proposal the normal procedural progression of the case would grind to a halt and a new round of fact discovery would commence. During this period Techalloy and the other Defendants presumably would direct their discovery toward disproving the Agreement Group's contentions regarding "equitable share" allocation by eliciting further information as to the volumes and types of hazardous wastes upon which each party's "equitable share" of liability might be based. Any new information elicited during this period would then have to be incorporated into the opinions of the Agreement Group's experts, which would, in turn, change the Agreement Group's view of each party's "equitable share" of liability, spawning a new round of fact discovery by Techalloy and the other Defendants, etc., etc. When taken to its logical conclusion, the staggered discovery scheme Techalloy proposes is

both infeasible and inefficient, illustrating the fundamental flaw in Techalloy's insistence that it should not have to take fact discovery it might ultimately conclude was "unnecessary."

4. The Agreement Group provided a sufficiently detailed and definite response to Interrogatory No. 1.

Techalloy's Interrogatory No. 1 references the Agreement Group's allegation that waste from Techalloy was disposed of at the Site and asks for "all facts" that support that contention, the identity of all persons with relevant knowledge and a summary of "the subjects and extent of each person's knowledge," and the identity of all documents that support the allegation. The Agreement Group provided a detailed response, identifying the known documents specifically referencing transactions between Techalloy and DCC. The response additionally referenced Site Witness deposition testimony concerning Techalloy specifically, and generally referenced "all other deposition testimony concerning DCC's disposal of waste at the Site." Agreement Group Response at 2-3.

Techalloy complains that the Agreement Group's response is "open-ended," such that Techalloy is limited in preparing its defenses. Techalloy Brief at 12. Techalloy's argument ignores the simple fact that the Agreement Group's only knowledge of what wastes DCC picked up from Techalloy and where those wastes were dumped come from the documents the Agreement Group obtained from EPA and other governmental sources, from documents produced by Techalloy in this action, and from the testimony of the Site Witnesses and of Techalloy employees and/or former employees taken herein. The Agreement Group has no independent knowledge of facts sought in Interrogatory No. 1. All such documents are in the Document Repository and the transcripts of all such depositions are in Techalloy's possession.[8]

---

[8] The initial Case Management Order herein created a Document Repository available to all parties. CMO at 3. Plaintiff was required to, and did, place in the Repository certain

(continued...)

Techalloy's interrogatory is thus seeking not the "facts," or the documents and witnesses potentially relevant to those facts; Techalloy has all of that. Instead, Techalloy is asking the Agreement Group to give Techalloy its legal analysis of a defined scope of documents and deposition transcripts.[9]

Worse, Techalloy appears to want the Agreement Group to cite to transcript testimony by line and page numbers. The Agreement Group would have no obligation to provide such detailed work product even in a pre-trial order. The Agreement Group has identified the witnesses whose testimony may be relevant to the facts concerning Techalloy, witnesses that were either non-parties or were current or former Techalloy employees. Techalloy attended all of those depositions, has the transcripts, and knows full well the extent of each witnesses' testimony.[10]

(...continued)

categories of documents in the possession, custody, or control of Plaintiff or of its members, including, *inter alia*, "any other non-privileged documents that refer to, relate to, or reflect upon the liability of any Defendant in connection with the Site." CMO at 4. The factual bases of Plaintiff's case against Techalloy are contained in the documents pertaining to Techalloy that are present in the Document Repository. The CMO also required the Agreement Group to place into the Repository "documents signed or created by EPA or PADEP, or submitted by or on behalf of Plaintiff or its members to either of those agencies, relating to investigations of the Site or the selection or implementation of response actions at the Site." CMO at 4.

9 Indeed, Techalloy's recent answers to new Agreement Group written discovery seeking, *inter alia*, the identity of "each person, other than a person deposed in Phase I of this action, with any knowledge relevant to where any such waste was ultimately disposed," state: "RSM/Techalloy is not aware of any person, other than a person deposed in Phase I of this action, with any knowledge regarding the ultimate disposal location of any waste removed by a Transporter from RSM/Techalloy's facility."

10 Techalloy does not and could not argue that the Agreement Group's objection to this interrogatory has prevented it from conducting fact discovery. This argument thus has nothing to do with Techalloy's request for an extension of such discovery only if and when this Court orders the Agreement Group to respond to contention interrogatory Nos. 3 and 4.

Techalloy's motion to compel a further response to its Interrogatory No. 1 should be denied.

5. Interrogatory No. 2 is a premature contention interrogatory.

Techalloy Interrogatory No. 2 asks the Agreement Group if it contends that "Techalloy knew that DeRewal Chemical's handling of Techalloy's waste would result in the release of hazardous substances, or that Techalloy controlled DeRewal Chemical's handling or disposal of Techalloy's waste" and, if so, to state the facts that support such contentions, and identify persons with knowledge of those facts and documents supporting such contentions. Techalloy Interrogatories at 3. The Agreement Group objected that this was a premature contention interrogatory. Agreement Group Response at 4.

This Court has already sustained the Agreement Group's objection to a virtually identical interrogatory by Defendant Advanced Environmental Technology Corp. ("AETC"). *See* January 25, 2005 Order attached hereto at Exhibit B. Techalloy is once again trying to get a different ruling from the one this Court has already made. AETC's Interrogatory Nos. 2-4 and 6 collectively asked the Agreement Group if it contended that AETC was an "arranger," and if it "owned," "possessed," or "controlled" the hazardous substances DCC picked up from Ashland and Diaz (the companies whose waste AETC arranged to dispose of). The Agreement Group noted that the "facts," witnesses, and documents concerning DCC's relationship with AETC and AETC's relationships with Ashland and Diaz were well known to AETC and that what AETC was really trying to do was force the Agreement Group to articulate unformed, largely legal theories of its case.[11] This Court agreed, denying AETC's motion "in order to prevent Plaintiff

---

[11] The Agreement Group also noted that AETC's suggestion that *Morton International v. A.E. Staley Manufacturing, et al.*, 343 F.3d 699 (3d. Cir. 2003) applied to its discovery requests was misplaced. *Morton* had nothing to do with whether a "broker" can be liable (continued...)

from being forced to articulate theories of their case not yet fully developed." January 25, 2005 Order at 3.

Just as with AETC, Techalloy knows the "facts." It needs no further discovery to learn what its own witnesses have said in deposition or what has been said by the Site Witnesses. The Agreement Group has alleged in its Third Amended Complaint that Techalloy is a person who "by contract, agreement or otherwise, arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment of Hazardous Substances owned or possessed by [Techalloy] or by another party or entity, at the Site." Third Amended Complaint at ¶ 148 (*quoting* section 107 (a)(3)). There is no mystery about the facts supporting that allegation.[12] Techalloy's motion to compel a further response to its Interrogatory No. 2 should be denied.

6. Amounts of payments by third parties offsetting the Agreement Group's damages at the Site are not discoverable by Techalloy under UCFA and other applicable law.

Techalloy's Interrogatory No. 7 asks the Agreement Group to detail any money it received from anyone in the world "that directly or indirectly has or will reduce your net 'out of

(...continued)
under CERCLA. Instead, *Morton* dealt with the situation where the defendant contracted with the owner of a processing facility to convert a raw material into a finished product, and was allegedly aware that the conversion process inevitably resulted in the release of hazardous waste. 343 F.3d at 680. The Third Circuit had to determine whether the defendant was liable under CERCLA even though this contract was not on its face "an arrangement for disposal or treatment . . . of hazardous substances." 42 U.S.C. § 9607(a)(3). Those facts had nothing to do with the AETC facts and they have nothing to do with a situation like Techalloy's here, where Techalloy admittedly hired DCC to remove and dispose of its hazardous wastes.

12 Techalloy does not and could not argue that the Agreement Group's objection to this interrogatory has prevented it from conducting fact discovery. This argument thus has nothing to do with Techalloy's request for an extension of such discovery only if and when this Court orders the Agreement Group to respond to contention interrogatories No. 3 and 4.

pocket' costs or damages related to the Boarhead Farms Site." *See* Techalloy Interrogatories at 6. The Agreement Group objected that the above-quoted phrase was vague, confusing, and ambiguous, and that the information apparently sought, including the amounts of settlement payments with the Settled Parties and recoveries the Agreement Group members may have received from insurance carriers, is information that is neither relevant nor that would lead to the discovery of admissible evidence. *See* Agreement Group Response at 7.

This Court decided, in its Memorandum Order of June 30, 2004, that the UCFA "governs and determines the extent to which the non-settling defendants' liability should be offset by any settlement agreements." *See* Memorandum Order of June 30, 2004 attached hereto at Exhibit C at 8. In so holding, the Court noted: "In my view, the principles of the UCFA are most consistent with CERCLA's goals of fostering settlements, while achieving an equitable apportionment of liability for non-settling parties." *Id.* This holding is the law of the case with respect to the way in which settlements entered into by the Agreement Group affect the liability of the non-settling defendants.

Techalloy argues that it and the other remaining non-settled defendants are entitled to a minimum credit in the amount of the settlement dollars regardless of the equitable shares this Court determines at trial are attributable to the Settled Parties because the Agreement Group cannot be allowed to get a "double recovery." Techalloy Brief at 13. This is directly contrary to UCFA, and is thus nothing more than a request that this Court reconsider its June 30, 2004 Memorandum Order. Until Techalloy files an appropriate motion directly seeking such reconsideration, and unless this Court ultimately changes its UCFA ruling, the dollar amounts of the Agreement Group's settlements with the Settled Parties are irrelevant. *See, e.g., State of New York*, 214 F.R.D. at 110 (holding, in CERCLA contribution action, that non-settling defendants

could not discover amounts of plaintiff's settlements with settling defendants because such amounts were irrelevant in determining non-settling defendants' equitable shares of liability under UCFA).

Worse, Techalloy wants to get the benefit of the dollars collected by the Agreement Group from the Settled Parties *and then cherry pick* at trial any of the settlements where Techalloy thinks that a Settled Party's liability is greater than that represented by the dollar amount of the settlement. Any rule allowing this result would be a gross disincentive to settlements, a key goal of the CERCLA system, and would be directly contrary to either the UCFA approach or to the approach of the Uniform Contribution Among Tortfeasors Act. Finally, as this Court noted in citing *Hillsborough County v. A&E Road Oiling Service, Inc.*, 853 F. Supp. 1402, 1408-09 (N.D. Fla. 1994), overall settlement is actually encouraged by the UCFA approach in situations like this because a culpable non-settlor, like Techalloy, "cannot escape responsibility when a settling defendant pays more than his fair share and cannot gamble on a jury verdict in view of a guaranteed credit. This serves also to deter wrongful conduct." Memorandum Order at 7. Indeed, Techalloy is trying to escape its own liability, arguing that it should pay *less* than its equitable share simply because (theoretically) the Agreement Group has made one or more favorable settlements.

Techalloy also argues that the Agreement Group is not entitled to recover response costs paid by it merely because members of the Agreement Group may have used money obtained from insurers and other indemnitors or, incredibly, from tax deductions. Techalloy cites no authority for this novel proposition, an argument that is nothing more than a brazen attempt by Techalloy to escape its equitable share of liability for the Agreement Group's response costs. Indeed, the long-established "collateral source rule" (wherein a tortfeasor is

liable for plaintiff's entire loss even if plaintiff had the good fortune to insure against that loss) is predicated largely upon the sound policy that a tortfeasor should not escape liability for its conduct simply because, due to the insurance, plaintiff may receive a "double recovery." *See, e.g., Leeper v. United States*, 756 F.2d 300, 303 (3rd Cir. 1985).

## CONCLUSION

The Agreement Group believed that this Court meant what it said when requiring the completion of all fact discovery on or before March 18, 2005. It has accordingly taken the dozens of fact depositions it believes it needed to take in this phase of the litigation. In contrast, Techalloy has taken only two depositions in the past seven months; all of the other defendants combined have initiated only four depositions during that same period. The Agreement Group is most anxious to move to the next phase and get this case ready for trial. The next phase should not be delayed just because Techalloy has been sitting on its hands. Techalloy's Motion should be denied.

Respectfully Submitted,

Dated: March 24, 2005

By: ______________________________

Glenn A Harris, Esquire
Monique M. Mooney, Esquire
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
A Pennsylvania Limited Liability Partnership
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
(215) 665-8500

# EXHIBIT B

DrinkerBiddle&Reath LLP

Andrew P. Foster
215-988-2512
andrew.foster@dbr.com

Law Offices
One Logan Square
18TH and Cherry Streets
Philadelphia, PA
19103-6996

215-988-2700
215-988-2757 fax
www.drinkerbiddle.com

NEW YORK
WASHINGTON
LOS ANGELES
SAN FRANCISCO
PRINCETON
FLORHAM PARK
BERWYN
WILMINGTON

February 1, 2005

***Via Hand Delivery***

The Honorable Legrome D. Davis, U.S.D.J.
United Sates District Court
U.S. Courthouse
601 Market Street
Room 5918
Philadelphia, PA 19106

***Re:*** ***Boarhead Farm Agreement Group v. AETC, et al.***
***E.D. Pa. Civil Action No. 02-CV-3830***

Dear Judge Davis:

On behalf of all Defendants in the above-referenced matter, we are submitting for Your Honor's consideration a proposed Seventh Case Management Order extending the fact discovery period for approximately an additional thirty-five (35) days to March 18, 2005. Although numerous depositions have been taken, a significant number are still in the process of being scheduled and completed, and therefore fact discovery cannot be completed by the current February 10, 2005 deadline. Although the Plaintiff does not join in this request, counsel for Plaintiff has kindly indicated that his client does not oppose this extension request by the Defendants.

Thank you for your consideration of this request.

Respectfully submitted,

Andrew P. Foster

APF:tsw
Enclosure

cc: ***Via E-mail***:
Glenn M. Harris, Esquire
Thomas Sabino, Esquire
Lynn Wright, Esquire
Melissa E. Flax, Esquire
Stephen P. Chawaga, Esquire
Edward Fackenthal, Esquire
Richard C. Biedrzycki, Esquire
Seth v.d.H. Cooley, Esquire

All with enclosure

Established
1849

PHLIT\516712\1