EXHIBIT C

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
REGION III

01 SEP 27 PM 3: 13

REGIO... ......G CLERK
EPA, R......... ..., ..LA, PA

| | |
|---|---|
| IN THE MATTER OF | : |
| | : |
| BOARHEAD FARMS | : |
| SUPERFUND SITE | : |
| | : |
| | : |
| CYTEC INDUSTRIES INC., | : |
| FORD MOTOR COMPANY, | : |
| SPS TECHNOLOGIES, INC., | : |
| TI GROUP AUTOMOTIVE SYSTEMS | : |
| CORPORATION | : |
| | : |
| **Respondents** | : |
| | : |
| **Proceeding Under Sections 106** | : |
| **and 122(a) of the Comprehensive** | : |
| **Environmental Response, Compen-** | : |
| **sation, and Liability Act of** | : |
| **1980, as amended, 42 U.S.C.** | : |
| **§§ 9606 and 9622(a).** | : |
| | : |

I hereby certify that the
within is a true and correct copy
of the original
filed in this matter.

Attorney for

EPA Docket No. III-2001-0010DC

## ADMINISTRATIVE ORDER ON CONSENT FOR
## REMEDIAL DESIGN

   The Parties to this Administrative Order on Consent ("Consent Order"), Cytec Industries Inc.;
Ford Motor Company; SPS Technologies, Inc.; and TI Group Automotive Systems Corporation
["Respondents"] and the United States Environmental Protection Agency ("EPA"), have agreed
to the entry of this Consent Order, and the Respondents agree to undertake all actions required
by this Consent Order pursuant to the terms and conditions of this Consent Order, including any
attachments hereto.

## I. GENERAL PROVISIONS

1.1   This Consent Order is issued pursuant to the authority vested in the President of the
      United States by Sections 106 and 122(a) of the Comprehensive Environmental
      Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42
      U.S.C. §§ 9606 and 9622(a); delegated to the Administrator of EPA by Executive Order

BSAI052826

No. 12580 (52 Fed. Reg. 2926 (January 29, 1987)); and further delegated to the Regional Administrators of EPA by EPA Delegation Nos. 14-14-A and 14-14-C.

1.2    The Respondents consent to and will not contest EPA jurisdiction to issue and/or enforce this Consent Order.

1.3    On November 18, 1998, EPA issued a Record of Decision ("ROD") selecting remedial action for implementation at the Boarhead Farms Superfund Site in Bucks County, Pennsylvania ("Site"). All findings, conclusions and determinations supporting the legal requirements for issuance of this Consent Order under Section 106 of CERCLA, 42 U.S.C. § 9606, are set forth in the ROD. Issuance of this Consent Order is practicable and in the public interest within the meaning of Section 122(a) of CERCLA, 42 U.S.C. § 9622(a).

1.4    The actions required by this Consent Order are necessary to protect the public health and welfare and the environment.

1.5    All activities undertaken by Respondents pursuant to this Consent Order shall be performed in accordance with the requirements of all applicable Federal and State laws and regulations. Respondents must also comply with all applicable or relevant and appropriate requirements of all Federal and State environmental laws as set forth in the ROD. EPA has determined that activities conducted pursuant to this Consent Order and approved by EPA shall be considered to be consistent with the National Oil and Hazardous Substances Pollution Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP").

1.6    Respondents are jointly and severally responsible for carrying out all actions required by this Consent Order. In the event of the failure of one or more of the Respondents to implement the requirements of this Consent Order, the remaining Respondent(s) shall complete all such requirements.

## II. STATEMENT OF PURPOSE

2.1    In entering into this Consent Order, the common objective of EPA and the Respondents is to expedite commencement and performance of Remedial Design, as defined in Paragraph 4, Section IV (Definitions) of the proposed consent decree appended hereto as Attachment 1 ("Consent Decree"), in accordance with the requirements of this Consent Order and the Consent Decree and to enter into an agreement that is legally binding upon all Parties until the Consent Decree is entered or in the event the Consent Decree is not

entered pursuant to Paragraph 105, Section XXVII (Effective Date) of the Consent Decree.

2.2    In an effort to simplify this Consent Order, the Parties have agreed that certain obligations of this Consent Order shall be expressed by reference to provisions of the Consent Decree. Each referenced provision of the Consent Decree, including each provision of the Consent Decree referenced therein, shall be incorporated herein by reference and shall be effective as if set forth in this Consent Order in its entirety. For those provisions, and solely for purposes of this Consent Order, the following definitions apply except as otherwise provided in this Consent Order:

(a)    The term "Settling Defendants" when used in the Consent Decree shall mean Respondents;

(b)    The term "Consent Decree" when used in the Consent Decree shall mean this Consent Order;

(c)    The term "Parties" when used in the Consent Decree shall mean Respondents and EPA;

(d)    All references to the date of lodging or entry of the Consent Decree shall mean the effective date of this Consent Order;

(e)    All references to Section XIX (Dispute Resolution) of the Consent Decree shall mean Section XV (Dispute Resolution) of this Consent Order.

2.3    Except as provided herein, all terms shall be defined in the manner set forth in Paragraph 4, Section IV (Definitions) of the Consent Decree.

## III. EFFECTIVE DATE AND TERMINATION

3.1    The effective date of this Consent Order shall be the third business day following the date on which EPA forwards a fully executed true and correct copy of this Consent Order to Respondents via overnight delivery.

3.2    This Consent Order shall terminate:

(a)    at the time the Consent Decree is entered by the Court pursuant to Section XXVII (Effective Date) of the Consent Decree;

BSAI052828

(b) at the time the Court denies the United States' petition to enter the Consent Decree; or

(c) at the time the United States withdraws or withholds its consent from the Consent Decree because comments submitted during the public comment period established pursuant to Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7, disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate; whichever is earlier.

3.3 Should this Consent Order be terminated under Section 3.2(b) or (c) above, such termination shall not affect Section VIII (Access), Section XV (Dispute Resolution), Section XIX (Retention of Records) and Section XVII (Covenants by Respondents) of this Consent Order.

## IV. PARTIES BOUND

4.1 This Consent Order shall apply to and be binding upon EPA and upon Respondents and their successors and assigns. Any change in ownership or corporate status of a Respondent, including, but not limited to, any transfer of assets or real or personal property, shall in no way alter Respondents' responsibilities under this Consent Order.

4.2 Paragraph 3, Section III (Parties Bound) of the Consent Decree is incorporated herein by reference.

## V. NOTICE TO THE COMMONWEALTH

5.1 Notice of issuance of this Consent Order has been given to the Commonwealth of Pennsylvania, pursuant to Section 106 of CERCLA, 42 U.S.C. § 9606(a).

## VI. WORK TO BE PERFORMED

6.1 The following Consent Decree provisions are incorporated herein by reference:

(a) Paragraph 8, Section V (General Provisions)

(b) Paragraph 10, Section VI (Performance of the Work by Settling Defendants)

BSAI052829

5

    (c)    Paragraph 11 a., b. and c., Section VI (Performance of the Work by Settling Defendants)

    (d)    Paragraph 14, Section VI (Performance of the Work by Settling Defendants), except that modifications under such paragraph can only be required for remedial design activities.

    (e)    Paragraph 15, Section VI (Performance of the Work by Settling Defendants)

    (f)  Paragraph 85, Section XXI (Covenants Not to Sue by Plaintiff)

## VII.  QUALITY ASSURANCE

7.1    Section VIII (Quality Assurance, Sampling and Data Analysis) of the Consent Decree is incorporated herein by reference.

## VIII.  ACCESS

8.1    Paragraphs 26(a) and (b) and 27(a) and (b) of Section IX (Access and Institutional Controls) of the Consent Decree are incorporated herein by reference.

8.2    If any access or agreements required by Paragraph 27(a) and (b) of this Consent Order are not obtained within forty-five (45) days of the effective date of this Consent Order, Respondents shall promptly notify EPA in writing, and shall include in that notification a summary of the steps (including requests and responses thereto) that Respondents have taken to attempt to obtain such access or agreements. EPA may, as it deems appropriate, assist Settling Defendants in obtaining such access or agreements.

## IX.  REPORTING REQUIREMENTS

9.1    Section X (Reporting Requirements) of the Consent Decree is incorporated herein by reference.

BSAI052830

## X. EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS

10.1    Section XI (EPA Approval of Plans and other Submissions) of the Consent Decree is incorporated herein by reference.

## XI. PROJECT COORDINATORS

11.1    Section XII (Project Coordinators) of the Consent Decree is incorporated herein by reference.

## XII. EMERGENCY RESPONSE

12.1    Section XV (Emergency Response) of the Consent Decree is incorporated herein by reference.

## XIII. INDEMNIFICATION

13.1    Paragraphs 58 and 59, Section XVII (Indemnification and Insurance) of the Consent Decree are incorporated herein by reference.

## XIV. FORCE MAJEURE

14.1    Section XVIII (Force Majeure) of the Consent Decree is incorporated herein by reference.

## XV. DISPUTE RESOLUTION

15.1    For purposes of this Section XV (Dispute Resolution), the term "United States" as used in Section XIX (Dispute Resolution) of the Consent Decree shall mean EPA.

15.2    The following Consent Decree provisions are incorporated herein by reference:

    (a)    Paragraph 65, Section XIX (Dispute Resolution)

    (b)    Paragraph 66, Section XIX (Dispute Resolution)

BSAI052831

(c)    Paragraph 67.a. and b., Section XIX (Dispute Resolution)

(d)    Paragraph 67.c., Section XIX (Dispute Resolution) (first sentence only)

(e)    Paragraph 68, Section XIX (Dispute Resolution)

(f)    Paragraph 68.a., Section XIX (Dispute Resolution)

(g)    Paragraph 68.b., Section XIX (Dispute Resolution) (first sentence only)

(h)    Paragraph 68.d., Section XIX (Dispute Resolution) (first sentence only)

(i)    Paragraph 69, Section XIX (Dispute Resolution)

(j)    Paragraph 69.a., Section XIX (Dispute Resolution) (first sentence only). EPA's decision shall be binding on Respondents. Respondents shall bear the burden of coming forward with evidence and the burden of persuasion.

(k)    Paragraph 70, Section XIX (Dispute Resolution), except that the phrase "as provided in Paragraph 79" in the second sentence shall be omitted.

## XVI.  STIPULATED PENALTIES

16.1    Paragraphs 71-78 and 80-81, Section XX (Stipulated Penalties) of the Consent Decree are incorporated herein by reference, except that the situation referred to in subsection (3) of paragraph 75 shall not apply under this Consent Order.

16.2    Stipulated penalties shall continue to accrue during any dispute resolution period. In the event Respondents do not prevail upon resolution of a dispute, Respondents shall pay all stipulated penalties owed within thirty (30) days of receipt of EPA's decision regarding the dispute. These penalties shall include all penalties which accrued prior to and during the period of dispute. Stipulated penalties shall not be owed or collectible for the matter, or that portion of the matter, in dispute to the extent Respondents prevail.

## XVII.  COVENANTS BY RESPONDENTS

17.1    Section XXII (Covenants by Settling Defendants) of the Consent Decree is incorporated herein by reference.

BSAI052832

# XVIII. ACCESS TO INFORMATION

18.1    Section XXIV (Access to Information) of the Consent Decree is incorporated herein by reference.

# XIX. RETENTION OF RECORDS

19.1    Section XXV (Retention of Records) of the Consent Decree is incorporated herein by reference.

# XX. NOTICES AND SUBMISSIONS

20.1    Section XXVI (Notices and Submissions) of the Consent Decree is incorporated herein by reference.

# XXI. COMMUNITY RELATIONS

21.1    Section XXX (Community Relations) of the Consent Decree is incorporated herein by reference.

# XXII. MODIFICATION

22.1    Paragraph 109, Section XXXI (Modification) of the Consent Decree is incorporated herein by reference.

22.2    No modifications shall be made to the provisions of this Consent Order without written notification to, and approval of, the Parties.

22.3    Modifications to the Remedial Design Work Plan may be made by mutual agreement of the EPA and Respondents' Project Coordinators. Any such modifications must be in writing and signed first by the Respondents' Project Coordinator and then by the EPA Project Coordinator. The effective date of the modification shall be the date on which the

BSAI052833

## XX. NOTICES AND SUBMISSIONS

20.1    Section XXVI (Notices and Submissions) of the Consent Decree is incorporated herein by reference.

## XXI. COMMUNITY RELATIONS

21.1    Section XXX (Community Relations) of the Consent Decree is incorporated herein by reference.

## XXII. MODIFICATION

22.1    Paragraph 109, Section XXXI (Modification) of the Consent Decree is incorporated herein by reference.

22.2    No modifications shall be made to the provisions of this Consent Order without written notification to, and approval of, the Parties.

22.3    Modifications to the Remedial Design Work Plan may be made by mutual agreement of the EPA and Respondents' Project Coordinators. Any such modifications must be in writing and signed first by the Respondents' Project Coordinator and then by the EPA Project Coordinator. The effective date of the modification shall be the date on which the modification is signed by the EPA Project Coordinator.

**IT IS SO AGREED AND ORDERED.**


_____          SEP 2 7 2001
Thomas C. Voltaggio                        _____
Acting Regional Administrator              Date
EPA Region III

BSAI052834

Boarhead Farms Superfund Site Administrative Order on Consent for Remedial Design
EPA Docket No. III-2001-0010DC

10

## FOR THE RESPONDENTS:

The undersigned hereby certifies that [he/she] is authorized to execute this Consent Order on behalf of the Respondent for which [he/she] has signed and to bind said Respondent to the terms and conditions of this Consent Order.

[Respondent]  AYTEC INDUSTRIES INC

[Name]  E. Bachman

[Title]  VP

3/29/2001
Date

BSAI052835

## FOR THE RESPONDENTS:

The undersigned hereby certifies that [he/she] is authorized to execute this Consent Order on behalf of the Respondent for which [he/she] has signed and to bind said Respondent to the terms and conditions of this Consent Order.


MAR 2 3 2001

[Respondent]    FORD MOTOR COMPANY
[Name]          Thomas DeZure
[Title]         Assistant Secretary

Date

BSAI052836

## FOR THE RESPONDENTS:

The undersigned hereby certifies that [he/she] is authorized to execute this Consent Order on behalf of the Respondent for which [he/she] has signed and to bind said Respondent to the terms and conditions of this Consent Order.


[Respondent]    SPS Technologies, Inc.    March 28, 2001
[Name]          James D. Dee              Date
[Title]         Vice President

BSAI052837

*Boarhead Farms Superfund Site Administrative Order on Consent for Remedial Design*
*EPA Docket No. III-2001-0010DC*　　　　　　　　　　　　　　　　　　　　　*10*

## FOR THE RESPONDENTS:

The undersigned hereby certifies that [he/she] is authorized to execute this Consent Order on behalf of the Respondent for which [he/she] has signed and to bind said Respondent to the terms and conditions of this Consent Order.


**March 29, 2001**

**[Respondent]**　TI GROUP AUTOMOTIVE SYSTEMS ^Date
　　　　　　　　　　　　　　　　　　　CORPORATION
**[Name]**　　　Joseph Macneil
**[Title]**　　　Vice President, Finance

BSAI052838

**P.B.T**



D462

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CYTEC INDUSTRIES, INC., | ) |
| FORD MOTOR COMPANY, | ) |
| SPS TECHNOLOGIES, INC. | ) |
| and | ) |
| TI AUTOMOTIVE SYSTEMS CORP. | ) |
| | ) |
| Defendants. | ) |
| | ) |

ENTERED
MAR 1 2 2002
CLERK OF COURT

CIVIL ACTION NO. 01cv6109

FILED
MAR 19 2002
By_____ MICHAEL E. KUNZ, Clerk
Dep. Clerk

<u>CONSENT DECREE</u>

90-11-2-06036/2

BSAI052839



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br>v.<br><br>CYTEC INDUSTRIES INC.,<br>FORD MOTOR COMPANY,<br>SPS TECHNOLOGIES, INC.,<br>TI GROUP AUTOMOTIVE SYSTEMS<br>CORPORATION<br><br>Defendants. | )<br>)<br>)  Civil Action No. O1CV6109<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## CONSENT DECREE

## TABLE OF CONTENTS

I.      BACKGROUND ............................................................................................... 1

II.     JURISDICTION ............................................................................................... 5

III.    PARTIES BOUND ............................................................................................ 6

IV.     DEFINITIONS .................................................................................................. 7

V.      GENERAL PROVISIONS ............................................................................... 14

VI.     PERFORMANCE OF THE WORK BY SETTLING DEFENDANTS ............ 17

VII.    REMEDY REVIEW ........................................................................................ 27

VIII.   QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS ................ 29

IX.     ACCESS AND INSTITUTIONAL CONTROLS ............................................ 32

X.      REPORTING REQUIREMENTS ................................................................... 38

XI.     EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS ............................ 40

XII.    PROJECT COORDINATORS ............................................................... 43

XIII.   ASSURANCE OF ABILITY TO COMPLETE WORK .................................. 45

XIV.    CERTIFICATION OF COMPLETION ..................................................... 47

XV.     EMERGENCY RESPONSE ................................................................. 51

XVI.    PAYMENTS FOR RESPONSE COSTS ................................................... 52

XVII.   INDEMNIFICATION AND INSURANCE ................................................ 57

XVIII.  FORCE MAJEURE .......................................................................... 60

XIX.    DISPUTE RESOLUTION ................................................................... 62

XX.     STIPULATED PENALTIES ................................................................ 67

XXI.    COVENANTS NOT TO SUE BY PLAINTIFF .......................................... 72

XXII.   COVENANTS BY SETTLING DEFENDANTS .......................................... 76

XXIII.  EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION ...................... 78

XXIV.   ACCESS TO INFORMATION ............................................................. 80

XXV.    RETENTION OF RECORDS ............................................................... 82

XXVI.   NOTICES AND SUBMISSIONS .......................................................... 84

XXVII.  EFFECTIVE DATE .......................................................................... 85

XXVIII. RETENTION OF JURISDICTION ........................................................ 86

XXIX.   APPENDICES ................................................................................ 86

XXX.    COMMUNITY RELATIONS ............................................................... 86

XXXI.   MODIFICATION ............................................................................ 87

XXXII.  LODGING AND OPPORTUNITY FOR PUBLIC COMMENT ........................ 88

XXXIII. SIGNATORIES/SERVICE .................................................................. 89

BSAI052841

<u>iii</u>

XXXIV. <u>RELATIONSHIP BETWEEN CONSENT ORDER AND CONSENT DECREE</u> ............... 89

XXXV. <u>FINAL JUDGMENT</u> .................................................................................................. 90

BSAI052842

1
*United States v. Cytec Industries Inc., et al.*
*Remedial Design/Remedial Action Consent Decree*

## CONSENT DECREE

## I. BACKGROUND

A. The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606 and 9607.

B. The United States in its complaint seeks, inter alia: (1) reimbursement of costs incurred by EPA and the Department of Justice for response actions at the Boarhead Farms Superfund Site ("Site," as defined below) in Upper Black Eddy, Bridgeton Township, Bucks County, Pennsylvania, together with accrued interest; and (2) performance of studies and response work by the defendants at the Site consistent with the National Oil and Hazardous Substances Pollution Contingency Plan 40 C.F.R. Part 300 (as amended) ("NCP").

C. In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA initially notified the Commonwealth of Pennsylvania (the "State" or "the Commonwealth") on December 30, 1997 of negotiations with potentially responsible parties ("PRPs") regarding the implementation of the remedial design and remedial action ("RD/RA") for the Site, and EPA provided the State with an opportunity to participate in such negotiations and be a party to the Consent Decree. The State declined to participate at that time. EPA subsequently entered into a Consent Decree with three PRPs for the Boarhead Farms Superfund Site ("Site" or "Boarhead Site") for a portion of the RD/RA work on April 13, 2000. That

BSAI052843

2
United States v. Cytec Industries Inc., et al.
Remedial Design/Remedial Action Consent Decree

Consent Decree (hereinafter referred to as the "OU-1 Consent Decree") was entered by the United States District Court for the Eastern District of Pennsylvania on September 28, 2000. EPA contacted the State again on August 21, 2000 to notify it of further negotiations with PRPs for implementation of the remaining RD/RA work at the Site and to provide the State with an opportunity to participate in such negotiations and be a party to this Consent Decree. The State declined the opportunity to be a party to this Consent Decree on September 25, 2000.

   D.   In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA notified the United States Department of the Interior on August 24, 1992 and January 31, 1997, and the National Oceanic and Atmospheric Administration ("NOAA") on August 24, 1992, of negotiations with potentially responsible parties regarding the release of hazardous substances that may have resulted in injury to the natural resources under Federal trusteeship and encouraged the trustee(s) to participate in the negotiation of this Consent Decree.

   E.   The defendants that have entered into this Consent Decree ("Settling Defendants") do not admit any liability to the Plaintiff arising out of the transactions or occurrences alleged in the complaint, nor do they acknowledge that the release or threatened release of hazardous substances at or from the Site constitutes an imminent or substantial endangerment to the public health or welfare or the environment.

   F.   Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on March 31, 1989, 54 Fed. Reg. 13296.

BSAI052844

3
United States v. Cytec Industries Inc., et al.
Remedial Design/Remedial Action Consent Decree

G. In response to a release or a substantial threat of a release of a hazardous substance(s) at or from the Site, EPA commenced on December 5, 1989, a Remedial Investigation and Feasibility Study ("RI/FS") for the Site pursuant to 40 C.F.R. § 300.430.

H. EPA completed an Ecological Risk Assessment in September 1995. The Baseline Risk Human Health Risk Assessment was also completed in September 1995. Based on these documents and the Remedial Investigation ("RI"), a Feasibility Study ("FS") was prepared in July 1997, describing the remedial action objectives and comparing cleanup alternatives for the Site.

I. Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the FS and of the proposed plan for remedial action on January 5, 1998, in a major local newspaper of general circulation. EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action. A copy of the transcript of the public meeting is available to the public as part of the administrative record upon which the Regional Administrator based the selection of the response action.

J. The decision by EPA on the remedial action to be implemented at the Site is embodied in a final Record of Decision ("ROD"), executed on November 18, 1998, on which the State has given its concurrence. The ROD includes EPA's explanation for any significant differences between the final plan and the proposed plan as well as a responsiveness summary to the public comments. Notice of the final plan was published in accordance with Section 117(b) of CERCLA, 42 U.S.C. Section 9617(b).

K. Subsequent to the issuance of the ROD, EPA determined to implement the remedial design ("RD") and remedial action ("RA") described in the ROD in two operable units ("OUs"). OU-1 (as defined below), in general, will address Remedy Components 3, 4, 5, 6, and 7 outlined in the ROD Declaration (Appendix A). These include:

> Remedy Component 3- Groundwater Extraction, Metals Precipitation, and Air Stripping
> Remedy Component 4- Installation of Additional Monitoring Wells
> Remedy Component 5- Institutional Controls and Monitoring for OU-1
> Remedy Component 6- Residential Water Treatment
> Remedy Component 7- Phytoremediation

OU-2, in general, will address Remedy Components 1, 2, and 5 outlined in the ROD Declaration (Appendix A) and any other work described in the ROD that was not required by the OU-1 Consent Decree. These include:

> Remedy Component 1- Soil Aeration and Treatment of VOC Hot Spots
> Remedy Component 2- Excavation and Offsite Disposal of Buried Drums
> Remedy Component 5- Institutional Controls and Monitoring for OU-2

L. Under the terms of this Consent Decree, the Settling Defendants will assume responsibility for the performance of a portion of the RD and all of the RA for all OU-2 Activities (together, the "Work"), as defined below.

M. Based on the information presently available to EPA, EPA believes that the Work will be properly and promptly conducted by the Settling Defendants if conducted in accordance with the requirements of this Consent Decree and its appendices.

BSAI052846

N. Solely for the purposes of Section 113(j) of CERCLA, the Remedial Action selected by the ROD and the Work to be performed by the Settling Defendants shall constitute a response action taken or ordered by the President.

O. The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II. JURISDICTION

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b). This Court also has personal jurisdiction over the Settling Defendants. Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District. The Settling Defendants shall not challenge the terms of this Consent Decree, and the Settling Defendants shall not challenge this Court's jurisdiction to enter and enforce this Consent Decree.

6
*United States v. Cytec Industries Inc., et al.*
*Remedial Design/Remedial Action Consent Decree*

## III. PARTIES BOUND

2. This Consent Decree applies to and is binding upon the United States and upon Settling Defendants and their successors and assigns. Any change in ownership or corporate status or other legal status of a Settling Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Settling Defendant's responsibilities under this Consent Decree.

3. Settling Defendants shall provide a copy of this Consent Decree to each contractor hired to perform the Work (as defined below) required by this Consent Decree and to each person representing any Settling Defendant with respect to the Site or the Work and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree. Settling Defendants or their contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree. Settling Defendants shall nonetheless be responsible for ensuring that their contractors and subcontractors perform the Work contemplated herein in accordance with this Consent Decree. With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with the Settling Defendants within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

7
*United States v. Cytec Industries Inc., et al.*
*Remedial Design/Remedial Action Consent Decree*

## IV. DEFINITIONS

4. Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply:

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601 et seq.

"Consent Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXIX). In the event of conflict between this Decree and any appendix, this Decree shall control.

"OU-1 Consent Decree" shall mean the consent decree and all appendices attached thereto entered by the United States District Court for the Eastern District of Pennsylvania on September 28, 2000. The OU-1 Consent Decree provides for implementation of OU-1 Activities.

"Day" shall mean a calendar day unless expressly stated to be a working day. "Working day" shall mean a day other than a Saturday, Sunday, or Federal holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next working day.

"Duly Authorized Representative" shall mean a person set forth or designated in accordance with the procedures set forth in 40 C.F.R. § 270.11(b).

8
*United States v. Cytec Industries Inc., et al.*
*Remedial Design/Remedial Action Consent Decree*

"EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

"Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States incurs in reviewing or developing plans, reports and other items pursuant to this Consent Decree, verifying the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Sections VII, IX (including, but not limited to, attorneys fees and any monies paid to secure access and/or to secure or implement institutional controls including the amount of just compensation), XV, and Paragraph 87 of Section XXI. Future Response Costs shall also include all Interim Response Costs, and all Interest on the Past Response Costs that has accrued pursuant to 42 U.S.C. § 9607(a) during the period from the lodging of this Consent Decree to the date of entry of this Consent Decree.

"Interim Response Costs" shall mean all costs, including direct and indirect costs, (a) paid by the United States in connection with the Site between July 31, 2000 and the effective date of this Consent Decree, or (b) incurred prior to the effective date of this Consent Decree but paid after that date.

"Interest" shall mean interest at the rate specified for interest on investments of the Hazardous Substance Superfund established under Subchapter A of Chapter 98 of Title 26 of the U.S. Code, compounded on October 1 of each year, in accordance with 42 U.S.C. § 9607(a).

9
*United States v. Cytec Industries Inc., et al.*
*Remedial Design/Remedial Action Consent Decree*

"Municipal Sewage Sludge" shall mean any solid, semi-solid, or liquid residue removed during the treatment of municipal waste water or domestic sewage, and may include residue removed, all or in part, during the treatment of wastewater from manufacturing or processing operations, provided that such residue has essentially the same characteristics as residue removed during the treatment of domestic sewage.

"Municipal Solid Waste" shall mean household waste and solid waste collected from non-residential sources that is essentially the same as household waste. While the composition of such wastes may vary considerably, municipal solid waste generally is composed of large volumes of non-hazardous substances (e.g., yard waste, food waste, glass, and aluminum) and can contain small amounts of other wastes as typically may be accepted in RCRA Subtitle D landfills.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"Operation and Maintenance" or "O & M" shall mean all activities required to maintain the effectiveness of the Remedial Action as required under the Operation and Maintenance Plan approved or developed by EPA pursuant to this Consent Decree.

"OU-1" or "OU-1 Activities" shall mean all of those activities described in the ROD that address Remedy Components 3, 4, 5, 6, and 7 outlined in the ROD Declaration (Appendix A).

10
*United States v. Cytec Industries Inc., et al.*
*Remedial Design/Remedial Action Consent Decree*

These include, but are not limited to:

Remedy Component 3- Groundwater Extraction, Metals Precipitation, and Air Stripping
Remedy Component 4- Installation of Additional Monitoring Wells
Remedy Component 5- Institutional Controls and Monitoring for OU-1
Remedy Component 6- Residential Water Treatment
Remedy Component 7- Phytoremediation

"OU-2" or "OU-2 Activities" shall mean those activities described in the ROD that address Remedy Components 1, 2, and 5 as described in the ROD Declaration (Appendix A), and any other work described in the ROD that was not addressed by the OU-1 Consent Decree.  OU-2 or OU-2 Activities include, but are not limited to:

Remedy Component 1- Soil Aeration and Treatment of VOC Hot Spots
Remedy Component 2- Excavation and Offsite Disposal of Buried Drums
Remedy Component 5- Institutional Controls and Monitoring for OU-2

"Oversight Costs" shall mean that portion of Future Response Costs incurred by EPA in monitoring and supervising the Settling Defendants' performance of the Work to determine whether such performance is consistent with the requirements of this Consent Decree, including costs incurred in reviewing plans, reports and other documents submitted pursuant to this Consent Decree, as well as costs incurred in overseeing implementation of the Work; however, Oversight Costs do not include, inter alia: (1) the costs of action by EPA to investigate, evaluate or monitor a release, threat of release, or a danger posed by such release or threat of release; (2) the costs of litigation or other enforcement activities; (3) the costs of determining the need for or taking direct response action by EPA to conduct a removal or remedial action at the Site, including but not limited to, the cost of activities by EPA pursuant to Section VII (Remedy

BSAI052852

Review) and Section XV (Emergency Response) of this Consent Decree; (4) the costs of

undertaking the periodic review set forth in Section VII (Remedy Review) or otherwise

determining whether or to what extent the Work has reduced the release or threat of release at

the Site; (5) the cost of enforcing the terms of this Consent Decree, including all costs incurred

in connection with Dispute Resolution pursuant to Section XIX (Dispute Resolution); (6) the

costs of securing access under Section IX (Access and Institutional Controls); and (7) the cost of

actions taken pursuant to Section VI (Performance of the Work by Settling Defendants),

Paragraph 14 of this Consent Decree.

"Owner, Operator, as Lessee of Residential Property" shall mean a person who owns,

operates, manages, or leases Residential Property and who uses or allows the use of the

Residential Property exclusively for residential purposes.

"PADEP" shall mean the Pennsylvania Department of Environmental Protection and any

predecessor or successor departments or agencies of the State.

"Paragraph" shall mean a portion of this Consent Decree identified by an arabic numeral or

an upper case letter.

"Parties" shall mean the United States and the Settling Defendants.

"Past Response Costs" shall mean all costs, including, but not limited to, direct and indirect

costs, that the United States paid at or in connection with the Site through July 31, 2000, plus

Interest on all such costs which has accrued pursuant to 42 U.S.C. § 9607(a) through such date.

"Performance Standards" shall mean the cleanup standards and other measures of

achievement for all OU-2 Activities as defined herein and as set forth in Section X.A, B and D

12
United States v. Cytec Industries Inc., et al.
Remedial Design/Remedial Action Consent Decree

of the ROD (as defined below), those for all OU-2 Activities set forth on pages 33-39 of the

ROD and those that are developed by the Settling Defendants and approved by EPA in writing

during Remedial Design.

"Plaintiff" shall mean the United States.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 et seq.

(also known as the Resource Conservation and Recovery Act).

"Record of Decision" or "ROD" shall mean the EPA Record of Decision relating to the Site

signed on November 18, 1998 by the Regional Administrator, EPA Region III, or his/her

delegate, and all attachments thereto. The ROD is attached as Appendix A.

"Remedial Action" or "RA" shall mean those activities, except for Remedial Design and

Operation and Maintenance, to be undertaken by the Settling Defendants to implement all OU-2

activities as defined herein, in accordance with the final Remedial Design and Remedial Action

Work Plans and other plans approved by EPA.

"Remedial Action Work Plan" shall mean the document developed pursuant to Paragraph

11 of this Consent Decree and approved by EPA, and any amendments thereto.

"Remedial Design" or "RD" shall mean those activities to be undertaken by the Settling

Defendants to develop the final plans and specifications for the Remedial Action with respect to

all OU-2 activities as defined herein pursuant to the Remedial Design Work Plan and other plans

approved by EPA.

"Remedial Design Work Plan" shall mean those documents developed pursuant to

Paragraph 11 of this Consent Decree and approved by EPA, and any amendments thereto.

BSAI052854

13
United States v. Cytec Industries Inc., et al.
Remedial Design/Remedial Action Consent Decree

"Residential Property" shall mean single or multi-family residences, including accessory land, buildings, or improvements incidental to such dwellings, which are exclusively for residential use.

"Response Costs" shall mean Future Response Costs, Interim Response Costs and Past Response Costs.

"Section" shall mean a portion of this Consent Decree identified by a roman numeral.

"Settling Defendants" shall mean Cytec Industries Inc., Ford Motor Company, SPS Technologies, Inc. and TI Group Automotive Systems Corporation.

"Site" shall mean the Boarhead Farms Superfund Site, encompassing approximately 120 acres, located on Lonely Cottage Road in Upper Black Eddy, Bridgeton Township, Bucks County, Pennsylvania, and depicted in the ROD. A map of the Site is attached hereto as Appendix D.

"Small Business" shall mean any business entity that employs no more than 100 individuals and is a "small business concern" as defined under the Small Business Act (15 U.S.C. §§ 631 et seq.).

"Small Nonprofit Organization" shall mean any organization that does not distribute any part of its income or profit to its members, directors, or officers, employs no more than 100 paid individuals at the involved chapter, office, or department, and was recognized as a nonprofit organization under Section 501(c)(3) of the Internal Revenue Code of 1986.

"State" or "Commonwealth" shall mean the Commonwealth of Pennsylvania.

BSAI052855

14
United States v. Cytec Industries Inc., et al.
Remedial Design/Remedial Action Consent Decree

"Supervising Contractor" shall mean the principal contractor retained by the Settling

Defendants to supervise and direct the implementation of the Work under this Consent Decree.

"United States" shall mean the United States of America, including its agencies,

departments, and instrumentalities.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of

CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33), 42

U.S.C. § 9601(33); and (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C.

§ 6903(27).

"Work" shall mean all activities Settling Defendants are required to perform under this

Consent Decree to perform the RD and RA for all OU-2 Activities, except those required by

Section XXV (Retention of Records).

## V. GENERAL PROVISIONS

### 5. Objectives of the Parties

The objectives of the Parties in entering into this Consent Decree are to protect public health

or welfare and the environment at the Site by the design and implementation of response actions

at the Site by the Settling Defendants, to reimburse response costs of the Plaintiff, and to resolve

the claims of Plaintiff against Settling Defendants as provided in this Consent Decree. Except

for the purposes of implementing and enforcing the terms of this Consent Decree, the execution

by the Settling Defendants of this Consent Decree is not an admission by them of liability with

respect to any issue dealt with in this Consent Decree nor is it an admission or denial of the

allegations set forth in the Complaint filed by the Plaintiff herein. This Consent Decree shall not be admissible as evidence in any proceeding other than one to enforce terms of this Consent Decree.

    6. <u>Commitments by Settling Defendants</u>

    a. Settling Defendants shall finance and perform the Work as specified in Section VI of this Consent Decree. Settling Defendants shall also reimburse the United States for Past Response Costs and Future Response Costs as provided in this Consent Decree.

    b. The obligations of Settling Defendants to finance and perform the Work and to pay amounts owed the United States under this Consent Decree are joint and several. In the event of the insolvency or other failure of any one or more Settling Defendants to implement the requirements of this Consent Decree, the remaining Settling Defendants shall complete all such requirements.

    c. In the event that any of the Settling Defendants files for bankruptcy or is placed involuntarily in bankruptcy proceedings, such Settling Defendant shall notify the United States within three (3) days of such filing.

    7. <u>Compliance With Applicable Law</u>

    All activities undertaken by Settling Defendants pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations. Settling Defendants must also comply with all applicable or relevant and appropriate requirements of all Federal and state environmental laws as set forth in the ROD.

16
United States v. Cytec Industries Inc., et al.
Remedial Design/Remedial Action Consent Decree

The activities conducted pursuant to this Consent Decree, if approved by EPA, shall be considered to be consistent with the NCP.

8. Permits

a. As provided in Section 121(e) of CERCLA and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work). Where any portion of the Work that is not on-site requires a federal or state permit or approval, Settling Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

b. The Settling Defendants may seek relief under the provisions of Section XVIII (Force Majeure) of this Consent Decree for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit required for the Work.

c. This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal, state or local statute, regulation, or ordinance.

9. [omitted]

BSAI052858

17
United States v. Cytec Industries Inc., et al.
Remedial Design/Remedial Action Consent Decree

## VI. PERFORMANCE OF THE WORK BY SETTLING DEFENDANTS

10. Selection of Contractors.

a. Supervising Contractor.

i. All aspects of the Work to be performed by Settling Defendants pursuant to Sections VI (Performance of the Work by Settling Defendants), VII (Remedy Review), VIII (Quality Assurance, Sampling, and Data Analysis), and XV (Emergency Response) of this Consent Decree shall be under the direction and supervision of the Supervising Contractor, the selection of which shall be subject to acceptance or disapproval by EPA, after a reasonable opportunity for review and comment by the State. With the written approval of EPA, the Supervising Contractor may be the same as the Project Coordinator designated by the Settling Defendants pursuant to Paragraph 43 of Section XII (Project Coordinators). Within ten (10) days after the lodging of this Consent Decree, Settling Defendants shall notify EPA in writing of the name, title, and qualifications of any contractor proposed to be the Supervising Contractor. EPA will issue a notice of disapproval or an authorization for the Settling Defendants to proceed. If at any time thereafter, Settling Defendants propose to change a Supervising Contractor, Settling Defendants shall give such notice to EPA and must obtain an authorization to proceed from EPA, after a reasonable opportunity for review and comment by the State, before the new Supervising Contractor performs, directs, or supervises any Work under this Consent Decree.

ii. If EPA disapproves the selection of a proposed Supervising Contractor, EPA will notify Settling Defendants in writing. In such event, Settling Defendants shall submit to EPA a list of at least three contractors, including the qualifications of each contractor, that

BSAI052859

would be acceptable to them within thirty (30) days of receipt of EPA's notice of disapproval of the Settling Defendants' selection of a contractor.  EPA will provide written notice of the names of any contractor(s) whose selection it disapproves and an authorization for the Settling Defendants to proceed with respect to any of the other contractors.  Settling Defendants may select any contractor whose selection was not disapproved and shall notify EPA of the name of the contractor selected within twenty-one (21) days of EPA's authorization for the Settling Defendants to proceed.

        iii.  If EPA fails to provide written notice of its authorization for the Settling Defendants to proceed, or written notice of disapproval as provided in this Paragraph and this failure prevents the Settling Defendants from meeting one or more deadlines in a plan approved by the EPA pursuant to this Consent Decree, Settling Defendants may seek relief under the provisions of Section XVIII (Force Majeure) of this Consent Decree.

    b.  Other Contractors and Subcontractors.

       The Settling Defendants shall submit to EPA for acceptance by EPA the names and qualifications of any additional contractors and subcontractors they propose to use to satisfy any requirement of this Consent Decree before such contractor or subcontractor performs any Work.  If EPA does not respond with a notice accepting or disapproving the proposal for additional contractors and subcontractors within fourteen (14) days of receipt by EPA of Settling Defendants' selections, the proposal for additional contractors and subcontractors shall be deemed accepted.  In the event EPA disapproves the selection of any of any proposed contractor or subcontractor, Settling Defendants shall submit to EPA a list of at least three (3) contractors

19
United States v. Cytec Industries Inc., et al.
Remedial Design/Remedial Action Consent Decree

or subcontractors, including the qualifications of each, that would be acceptable to them within

ten (10) days of receipt of EPA's notice. EPA will provide written notice of the names of any

contractor(s) or subcontractor(s) whose selection it disapproves and an authorization for the

Settling Defendants to proceed with respect to any of the other contractors or subcontractors.

Settling Defendants may select any contractor or subcontractor from that list and shall notify

EPA of the name of the contractor or subcontractor selected within twenty-one (21) days of

EPA's written notice.

    11.  Remedial Design/Remedial Action.

        a.  Within thirty (30) days after EPA's issuance of an authorization for the Settling

Defendants to proceed pursuant to Paragraph 10, Settling Defendants shall submit to EPA a

work plan for the design of the Remedial Action at the Site ("Remedial Design Work Plan" or

"RD Work Plan"). The RD Work Plan shall be prepared by the individual(s) and/or entity(ies)

responsible for completion of the Remedial Design, except to the extent such persons have been

disapproved by EPA. The Remedial Design Work Plan shall complete the design, begun by

EPA, of the remedy set forth in the ROD with respect to all OU-2 Activities and for achievement

of the Performance Standards and other requirements for all OU-2 Activities set forth in the

ROD and this Consent Decree. In addition, the design shall reference all of the activities

necessary to implement OU-1 Activities set forth in the ROD and the OU-1 Consent Decree.

Upon its approval by EPA, the Remedial Design Work Plan shall be incorporated into and

become enforceable under this Consent Decree. The Settling Defendants shall also submit to

EPA and the State, at the time the Remedial Design Work plan is submitted, a Health and Safety

20
United States v. Cytec Industries Inc., et al.
Remedial Design/Remedial Action Consent Decree

Plan for field design activities which conforms to the applicable Occupational Safety and Health Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.

  b. The Remedial Design Work Plan shall include plans, schedules, and methodologies for implementation of all remedial design and pre-design tasks for all OU-2 Activities and shall, unless EPA agrees otherwise in writing, include, at a minimum:

   1. a Site Management Plan;

   2. plans and schedules for the preparation and submission of a pre-final design submittal which shall be submitted at approximately 90% of the design effort and shall address all of EPA's comments to the intermediate design, and, at a minimum, additionally include:

    a. a preliminary Operation & Maintenance Plan;

    b. a preliminary Construction Quality Assurance Plan ("CQAP"), which shall detail the approach to quality assurance during construction activities at the Site, shall specify a quality assurance official ("QA Official"), independent of the Supervising Contractor, to conduct a quality assurance program during the construction phase of the project);

    c. a preliminary Remedial Action decontamination plan;

    d. a draft final Remedial Action schedule;

    e. a draft final Remedial Action contingency plan; and

    f. a draft final Remedial Action HASP for EPA acceptance.

BSAI052862

21
United States v. Cytec Industries Inc., et al.
Remedial Design/Remedial Action Consent Decree

3.  plans and schedules for the preparation and submission of a final design

submittal which shall be submitted at 100% of the design effort and shall

address all of EPA's comments to the pre-final design, and, at a minimum,

additionally include:

a.  a final Remedial Action schedule;

b.  a final Remedial Action contingency plan;

c.  a final Remedial Action HASP for EPA acceptance;

d.  a final Remedial Action waste management plan;

e.  a preliminary Remedial Action decontamination plan and a

schedule for the submission of the final Remedial Action

decontamination plan;

f.  a final Design Criteria Report;

g.  a final Remedial Action Sampling and Analysis Plan (directed

at measuring progress towards meeting the Performance

Standards);

h.  a final Basis of Design Report;

i.  final Drawings and Specifications;

j.  a revised Operation & Maintenance Plan and a schedule for

submission of the final Operation & Maintenance Plan;

k.  a final Construction Quality Assurance Plan;

l.  a final Remedial Action decontamination plan; and

BSAI052863

    m. a final project delivery strategy.

   4. a Remedial Design schedule.

  c. Upon approval of the Remedial Design Work Plan by EPA, after a reasonable opportunity for review and comment by the State, and submittal of the Health and Safety Plan for all field activities to EPA and the State, Settling Defendants shall implement the Remedial Design Work Plan in accordance with the schedules and methodologies contained therein. The Settling Defendants shall submit to EPA all plans, submittals, and other deliverables required under the approved Remedial Design Work Plan in accordance with the approved schedule therein for review and approval pursuant to Section XI (EPA Approval of Plans and Other Submissions). Unless otherwise directed by EPA, Settling Defendants shall not commence further Remedial Design field activities at the Site prior to approval of the Remedial Design Work Plan.

  d. Upon approval, approval with conditions, or modification by EPA, as provided in Section XI (EPA Approval of Plans and Other Submissions), of all components of the final design submittal, the final design submittal shall serve as the Remedial Action Work Plan and shall be enforceable under this Consent Decree. The Settling Defendants shall implement the activities required under the Remedial Action Work Plan in accordance with the schedules and methodologies contained therein.

  e. The Settling Defendants shall submit all plans, submittals, or other deliverables required under the Remedial Action Work Plan in accordance with the approved schedule for review and approval pursuant to Section XI (EPA Approval of Plans and Other Submissions).

23
United States v. Cytec Industries Inc., et al.
Remedial Design/Remedial Action Consent Decree

Unless otherwise directed by EPA or required under the Remedial Design Work Plan, the

Settling Defendants shall not commence physical activities at the Site prior to the date for

commencement set forth in the approved schedule in the Remedial Action Work Plan.

   12. Construction Manager. Following EPA approval, approval with conditions, or

modification by EPA, as provided in Section XI (EPA Approval of Plans and Other

Submissions), of all components of the final design submittal, and prior to commencement of

any on-Site Work under the Remedial Action Work Plan, the Settling Defendants shall submit to

EPA the name and qualifications of a Construction Manager to be present at the Site during

construction to ensure that the Work is performed in accordance with the approved Remedial

Action Work Plan. The Construction Manager shall be familiar with all aspects of the Remedial

Design approved by EPA. EPA retains the right to disapprove the use of any Construction

Manager proposed by Settling Defendants. In the event EPA disapproves the use of any

proposed Construction Manager, Settling Defendants shall submit to EPA a list of at least three

replacements, including the qualifications of each, who would be acceptable to them within ten

(10) days of receipt of EPA's notice. EPA will provide written notice of the names of any

replacements whose use it would accept. Settling Defendants may select any replacement from

the EPA notice and shall notify EPA of the name of the replacement selected within five (5) days

of EPA's written notice. Settling Defendants shall ensure that the Construction Manager

performs on-Site inspections as necessary to ensure compliance with the approved Remedial

Action Work Plan and that the results of such inspections are promptly provided to Settling

BSAI052865

24
United States v. Cytec Industries Inc., et al.
Remedial Design/Remedial Action Consent Decree

Defendants, EPA, and the State. The Construction Manager may act as the QA Official. The Construction Manager may be an employee of the Supervising Contractor.

13. The Settling Defendants shall continue to implement the Remedial Action and O & M for all OU-2 Activities until the Performance Standards for all OU-2 Activities are achieved and for so long thereafter as is otherwise required under this Consent Decree.

14. Modification of the Work.

a. If EPA determines, or agrees in writing, that modification of the Work is necessary to achieve and maintain the Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD with respect to all OU-2 Activities, EPA may (1) require that such modification be incorporated into the Remedial Design Work Plan, Remedial Action Work Plan, Operation and Maintenance Plan, and/or any other plan relating to such Work, and/or (2) require that Settling Defendants submit a plan for EPA approval which incorporates such modification to the Work and implement such approved plan. Provided, however, that a modification may be required pursuant to this Paragraph only to the extent that it is consistent with the scope of the remedy selected in the ROD with respect to all OU-2 Activities.

b. For the purposes of this Paragraph 14 and Paragraphs 50 and 51 only, the "scope of the remedy selected in the ROD" means OU-2 Activities which include the following:

(1) Soil Aeration and Treatment of VOC Hot Spots: Mechanical aeration (or low temperature desorption) of soil hot spot areas to remove high levels of

BSAI052866

VOCs (primarily TCE and benzene) in a temporary onsite treatment building

equipped with carbon (or equivalent VOC treatment type media) filters;

(2) Excavation and Offsite Disposal of Buried Drums: Excavation,

overpacking, staging, characterization, and appropriate offsite disposal of

buried drums or other containers from magnetic anomaly areas at the Site to

reduce the potential for continued migration of contaminants to the soil and

groundwater as well as to reduce exposure risk; and

(3) Institutional controls and monitoring: Implementation of institutional

controls and other measures to protect the integrity of the remedial action

components to insure the continued protectiveness of the remedy.

c. If Settling Defendants object to any modification determined by EPA to be

necessary pursuant to this Paragraph, they may seek dispute resolution pursuant to Section XIX

(Dispute Resolution), Paragraph 68 (Record Review). The Remedial Design Work Plan,

Remedial Action Work Plan, Operation and Maintenance Plan, and/or related work plans shall

be modified in accordance with final resolution of the dispute.

d. Settling Defendants shall implement any work required by any modifications

incorporated in the Remedial Design Work Plan, Remedial Action Work Plan, Operation and

Maintenance Plan, and/or in work plans developed in accordance with this Paragraph.

e. Nothing in this Paragraph shall be construed to limit EPA's authority to require

performance of further response actions as otherwise provided in this Consent Decree.

BSAI052867

26
United States v. Cytec Industries Inc., et al.
Remedial Design/Remedial Action Consent Decree

f. Within thirty (30) days after lodging of this Consent Decree, EPA and the Settling Defendants' Project Coordinator shall meet to discuss the oversight activities that EPA intends to perform during the next year. At that time, EPA may evaluate the Site for reduced oversight in accordance with OSWER Directive 9200.4-15, "Reducing Oversight at Superfund Sites with Cooperative and Capable Parties," dated July 31, 1996; provided that the decision by EPA to reduce or not to reduce oversight activities, or to increase oversight activities, shall be in EPA's sole unreviewable discretion. Thereafter, EPA and the Settling Defendants' Project Coordinator shall meet annually to discuss the oversight activities that the EPA intends to perform during the next year.

15. Settling Defendants acknowledge and agree that nothing in this Consent Decree or the Remedial Design or Remedial Action Work Plans constitutes a warranty or representation of any kind by Plaintiff that compliance with the work requirements set forth in the Work Plans will achieve the Performance Standards.

16. Settling Defendants shall, prior to any off-Site shipment of Waste Material from the Site to an out-of-state waste management facility, provide written notification to the appropriate state environmental official in the receiving facility's state and to the EPA Project Coordinator of such shipment of Waste Material. However, this notification requirement shall not apply to any off-Site shipments when the total volume of all such shipments will not exceed ten (10) cubic yards.

a. The Settling Defendants shall include in the written notification the following information, where available:

BSAI052868

1. the name and location of the facility to which the Waste Material are to be shipped;

2. the type and quantity of the Waste Material to be shipped;

3. the expected schedule for the shipment of the Waste Material; and

4. the method of transportation.

The Settling Defendants shall notify the state in which the planned receiving facility is located of major changes in the shipment plan, such as a decision to ship the Waste Material to another facility within the same state, or to a facility in another state.

b. The identity of the receiving facility and state will be determined by the Settling Defendants following the award of the contract for Remedial Action construction. The Settling Defendants shall provide the information required by Paragraph 16.a as soon as practicable after the award of the contract but in no case less than seven (7) days before the Waste Material is actually shipped.

## VII. REMEDY REVIEW

17. Periodic Review. Settling Defendants shall conduct any studies and investigations as requested by EPA, in order to permit EPA to conduct reviews of whether the Remedial Action is protective of human health and the environment, at least every five (5) years as required by Section 121(c) of CERCLA and any applicable regulations.

BSAI052869

18. <u>EPA Selection of Further Response Actions</u>. If EPA determines, at any time, that the Remedial Action is not protective of human health and the environment, EPA may select further response actions for the Site in accordance with the requirements of CERCLA and the NCP.

19. <u>Opportunity To Comment</u>. Settling Defendants and, if required by Sections 113(k)(2) or 117 of CERCLA, the public will be provided with an opportunity to comment on any further response actions proposed by EPA as a result of the review conducted pursuant to Section 121(c) of CERCLA and to submit written comments for the record during the comment period.

20. <u>Settling Defendants' Obligation To Perform Further Response Actions</u>. If EPA selects further response actions for the Site, the Settling Defendants shall undertake such further response actions to the extent that the reopener conditions in Paragraph 83 or Paragraph 84 (United States' reservations of liability based on unknown conditions or new information) are satisfied. If EPA requires Settling Defendants to undertake such further actions pursuant to this Paragraph, Settling Defendants may invoke the procedures set forth in Section XIX (Dispute Resolution) to dispute (1) EPA's determination that the reopener conditions of Paragraph 83 or Paragraph 84 of Section XXI (Covenants Not To Sue by Plaintiff) are satisfied, (2) EPA's determination that the Remedial Action is not protective of human health and the environment, or (3) EPA's selection of the further response actions. Disputes pertaining to whether the Remedial Action is protective or to EPA's selection of further response actions shall be resolved pursuant to Paragraph 68 (Record Review).

21. <u>Submissions of Plans</u>. If Settling Defendants are required to perform the further response actions pursuant to Paragraph 20, they shall submit a plan for such work to EPA for

RSAI052870

approval in accordance with the procedures set forth in Section VI (Performance of the Work by

Settling Defendants) and shall implement the plan approved by EPA in accordance with the

provisions of this Decree.

## VIII.  QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS

22.  While conducting all sample collection and analysis activities required by this

Consent Decree, the Settling Defendants shall implement quality assurance, quality control, and

chain of custody procedures in accordance with "EPA Requirements for Quality Assurance

Project Plans for Environmental Data Operation," (US EPA Quality Assurance Management

Staff: August 1994) (EPA QA/R-5); "EPA NEIC Policies and Procedures Manual," (May 1986)

(EPA 330/978-001-R); National Functional Guidelines for Inorganic Data Review (EPA 540/R-

94/013) and Modifications to the National Functional Guidelines for Inorganic Data Review

(EPA Region III: April 1993); National Functional Guidelines for Organic Data Review (EPA

540/R-94/012) and Modifications to the National Functional Guidelines for Organic Data

Review (EPA Region III: September 1994); "Region III Innovative Approaches to Data

Validation," (EPA Region III: September 1994); "Data Quality Objectives Process for

Superfund," (EPA 540/R-93/071: September 1994); and subsequent amendments to such

guidelines upon notification by EPA to Settling Defendants of such amendment.   Amended

guidelines shall apply only to procedures conducted after such notification.  Prior to the

commencement of any monitoring project under this Consent Decree, Settling Defendants shall

submit to EPA for approval, after a reasonable opportunity for review and comment by the State,

a Quality Assurance Project Plan ("QAPP") for the Work that is consistent with the NCP and the

guidance documents cited above. If relevant to the proceeding, the Parties agree that validated

sampling data generated in accordance with the QAPP(s) and reviewed and approved by EPA

shall be admissible as evidence, without objection, in any proceeding under this Decree. Settling

Defendants shall ensure that EPA personnel and its authorized representatives are allowed access

at reasonable times to all laboratories utilized by Settling Defendants in implementing this

Consent Decree. In addition, Settling Defendants shall ensure that such laboratories shall

analyze all samples submitted by EPA pursuant to the QAPP for quality assurance monitoring.

Settling Defendants shall ensure that the laboratories they utilize for the analysis of samples

taken pursuant to this Decree perform all analyses according to accepted EPA methods. Settling

Defendants shall submit to EPA the selected laboratory's(ies') Quality Assurance Program Plan

and their qualifications, which shall include, at a minimum, previous certifications, Performance

Evaluation (PE) results, equipment lists and personnel resumes. Settling Defendants shall ensure

that all field methodologies utilized in collecting samples for subsequent analysis pursuant to

this Decree will be conducted in accordance with the procedures set forth in the QAPP approved

by EPA. At the request of EPA, Settling Defendants shall conduct one or more audits of the

selected laboratory(ies) to verify analytical capability and compliance with the QAPP. Auditors

shall conduct lab audits during the time the laboratory(ies) is analyzing samples collected

pursuant to this Consent Decree. The lab audit shall be conducted according to procedures

available from the QA Branch. Audit reports shall be submitted to the EPA Project Coordinator

within fifteen (15) days of completion of the audit. The Settling Defendants shall report serious

BSAI052872

deficiencies, including all those which adversely impact data quality, reliability or accuracy, and take action to correct such deficiencies within twenty-four (24) hours of the time the Settling Defendants knew or should have known of the deficiency.

23. Upon request, the Settling Defendants shall allow split or duplicate samples to be taken by EPA or their authorized representatives. Settling Defendants shall notify EPA not less than seven (7) working days in advance of any sample collection activity unless shorter notice is agreed to by EPA. In addition, EPA shall have the right to take any additional samples that EPA deems necessary. Upon request, EPA shall allow the Settling Defendants to take split or duplicate samples of any samples it takes as part of the Plaintiff's oversight of the Settling Defendants' implementation of the Work.

24. Settling Defendants shall submit to EPA and the State three (3) copies each as well as one (1) computer format copy of the results of all sampling and/or tests or other data obtained or generated by or on behalf of Settling Defendants with respect to the Site and/or the implementation of this Consent Decree unless EPA agrees otherwise.

25. Notwithstanding any provision of this Consent Decree, the United States hereby retains all of its information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA, and any other applicable statutes or regulations.

BSAI052873

32
*United States v. Cytec Industries Inc., et al.*
*Remedial Design/Remedial Action Consent Decree*

## IX. ACCESS AND INSTITUTIONAL CONTROLS

26. If the Site, or any other property where access and/or land/water use restrictions are needed to implement this Consent Decree, is owned or controlled by any of the Settling Defendants, such Settling Defendants shall:

a. Commencing upon the date of lodging of this Consent Decree, provide the United States and its representatives, including EPA and its contractors, with access at all reasonable times to the Site, or such other property, for the purpose of conducting any activity related to this Consent Decree including, but not limited to:

i. Monitoring the Work;

ii. Verifying any data or information submitted to the United States;

iii. Conducting investigations relating to contamination at or near the Site;

iv. Obtaining samples;

v. Assessing the need for, planning, or implementing additional response actions at or near the Site;

vi. Implementing the Work pursuant to the conditions set forth in Paragraph 87 of this Consent Decree (Work Takeover);

vii. Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendants or their agents, consistent with Section XXIV;

viii. Assessing Settling Defendants' compliance with this Consent Decree; and

33
*United States v. Cytec Industries Inc., et al.*
*Remedial Design/Remedial Action Consent Decree*

ix. Determining whether the Site or other property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this Consent Decree;

b. Commencing on the date of lodging of this Consent Decree, refrain from using the Site, or such other property, in any manner that would interfere with or adversely affect the integrity or protectiveness of the remedial measures to be implemented pursuant to this Consent Decree. Such restrictions include, but are not limited to, measures which shall protect the integrity of the interceptor trench, groundwater treatment system, soil aeration treatment area, phytoremediation area, and previously installed soil cover by, at a minimum, preventing construction, excavation, and regrading activities in such areas except as approved by EPA; and

c. If EPA so requests, execute and record in the Recorder's Office or Registry of Deeds or other appropriate land records office of Bucks County, Commonwealth of Pennsylvania, an easement, running with the land, that (i) grants a right of access for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 26(a) of this Consent Decree, and (ii) grants the right to enforce the land/water use restrictions listed in Paragraph 26(b) of this Consent Decree, or other restrictions that EPA determines are necessary to implement, ensure non-interference with, or ensure the protectiveness of the remedial measures to be performed pursuant to this Consent Decree. Such Settling Defendants shall grant the access rights and the rights to enforce the land/water use restrictions to one or more of the following persons as determined by EPA: (i) the United States, on behalf of EPA, and its representatives, (ii) the State and its representatives, (iii) the other

BSAI052875

Settling Defendants and their representatives ("Grantee Settling Defendants"), and/or (iv) other appropriate grantees. Such Settling Defendants shall, within forty-five (45) days of entry of this Consent Decree, submit to EPA for review and approval with respect to such property:

      i. A draft easement, in substantially the form attached hereto as Appendix B, that is enforceable under the laws of the Commonwealth of Pennsylvania, free and clear of all prior liens and encumbrances (except as approved by EPA), and acceptable under the Attorney General's Title Regulations promulgated pursuant to 40 U.S.C. § 255; and

      ii. a current title commitment or report prepared in accordance with the U.S. Department of Justice "Title Standards 2001, A Guide For The Preparation of Title Evidence In Land Acquisitions by The United States of America" (December 29, 2000) ("Title Standards 2001") (or the Commonwealth of Pennsylvania equivalent thereof).

Within fifteen (15) days of EPA's approval and acceptance of the easement, such Settling Defendants shall update the title search and, if it is determined that nothing has occurred since the effective date of the commitment or report to affect the title adversely, record the easement with the Recorder's Office or Registry of Deeds or other appropriate office of Bucks County. Within thirty (30) days of recording the easement, such Settling Defendants shall provide EPA with final title evidence acceptable under Title Standards 2001 (or the Commonwealth of Pennsylvania equivalent thereof), and a certified copy of the original recorded easement showing the clerk's recording stamps. The Grantee Settling Defendants shall enforce and comply with the terms of the easement if they are the grantees of the easement.

      d. For purposes of subparagraph c of this Paragraph 26 only, Settling Defendants shall not be deemed to "control" the property by virtue of their presence on the property to conduct the Work under this Consent Decree.

BSAI052876