**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BOARHEAD FARM AGREEMENT GROUP, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 02-3830 |
| | : | |
| ADVANCED ENVIRONMENTAL | : | |
| TECHNOLOGY CORPORATION, ET AL., | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS' MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF BFAG'S MOTION TO AMEND,
TOGETHER WITH
DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff Boarhead Farm Agreement Group ("BFAG") has filed a Motion to Amend seeking permission to file a Fourth Amended Complaint. According to BFAG, the purpose behind its request is merely to correct "the form" of its pleading in response to the United States Supreme Court's recent decision in Cooper Industries v. Aviall Services. To do so, BFAG's Fourth Amended Complaint proposes to: (1) add the five individual members of BFAG as new party plaintiffs asserting new contribution claims under Section 113 of CERCLA; (2) allege a new "implied" contribution cause of action under Section 107(a) of CERCLA; and (3) make "minor alterations" to certain factual allegations contained in the pleading. Almost as an afterthought, a footnote on the last page of BFAG's motion requests that all of these new and amended claims be deemed to "relate back" to the July, 2002 filing date of BFAG's original Complaint.

BFAG's Motion to Amend should be denied. Further, the actual impact of the Supreme Court's decision in Cooper Industries is much broader and much more straightforward than BFAG suggests. Simply put, the cross-moving Defendants[1] are entitled to entry of summary judgment as to BFAG's federal CERCLA claims, and BFAG's sole remaining claim under state law should be dismissed without prejudice.

The reasons are straightforward. First, under Cooper Industries, BFAG's existing contribution claims under Section 113 of CERCLA are invalid as a matter of law. Second, BFAG's request to "add" individual BFAG members to the caption for the purpose of asserting new Section 113 contribution claims should be denied as futile, because all such claims are barred by the applicable three (3) year CERCLA statute of limitations. Third, BFAG's alternative request to assert a new "implied" contribution claim under Section 107(a) of CERCLA also should be denied as futile, because binding Third Circuit precedent rejects such a claim. Finally, with all federal CERCLA claims dismissed, there is no reason under 28 U.S.C. § 1367(c)(3) for this Court to exercise continuing supplemental jurisdiction over BFAG's only remaining pendent claim, a statutory claim under Pennsylvania's "mini"-Superfund law.

## STATEMENT OF FACTS

The facts material to this response and cross-motion are all undisputed. They are largely procedural, and are all contained in the pleadings and related filings previously made by the parties in the case.

---

[1]   This Memorandum of Law and Cross-Motion for Summary Judgment is submitted on behalf of Defendants Advanced Environmental Technology Corp., Ashland Inc., Carpenter Technology Corporation, Flexible Circuits, Merit Metals Products Corp., Rahns Specialty Metals, Inc., Techalloy Company, Inc., and Thomas & Betts Corporation.

On June 18, 2002, the original Complaint in this action was filed by plaintiff Boarhead Farm Agreement Group ("BFAG"), followed by a substantially similar Amended Complaint filed on August 26, 2002.  A true and correct copy of the Amended Complaint (hereinafter referred to as the "original Complaint"), is attached hereto as Exhibit A.

Pursuant to Fed. R. Civ. P. 10(a), the caption to the original Complaint named BFAG as the only plaintiff.  Paragraph 24 of the original Complaint described BFAG as "an unincorporated association," consisting of five member companies or "entities."  Consistent with that approach, the original Complaint was signed by only one law firm (Ballard Spahr Andrews & Ingersoll, LLP), which was described as "Attorney for Plaintiff Boarhead Farm Agreement Group."

Of particular importance here, Paragraph 24 of the original Complaint averred that it was the individual member "entities" of BFAG "that have incurred and will in the future incur response costs and have otherwise performed and are performing remedial actions at the Site."  Thus, although the original contribution Complaint was filed solely in the name of BFAG, a fair reading of Paragraph 24 suggested that only the individual member companies, and not the named plaintiff BFAG, had in fact incurred the environmental "response costs" at issue.

In response to the original Complaint, a group of Defendants (including all of the Defendants joining in this submittal) filed a Motion to Dismiss under Rule 12(b)(6).  The thrust of the February 7, 2003 Motion to Dismiss was that the named plaintiff BFAG lacked procedural and substantive standing to assert contribution claims under Section 113 of CERCLA.  In particular, because it is well-established that the actual incurrence of "response costs" is a necessary element of any plaintiff's claim for contribution under Section 113 of CERCLA, the motion argued that BFAG's original Complaint lacked the necessary allegations that plaintiff

BFAG itself, as opposed to its individual member companies, had incurred any recoverable "response costs." A true and correct copy of the Defendants' Motion to Dismiss is attached hereto as Exhibit B.

BFAG responded to the Defendants' Motion to Dismiss on February 21, 2003 with an opposing Memorandum of Law, and also by filing as of right a Second Amended Complaint. True and correct copies of BFAG's opposing Memorandum of Law and Second Amended Complaint are attached hereto, respectively, as Exhibit C and Exhibit D. (BFAG later filed a substantially similar Third Amended Complaint, a true and correct copy of which is attached hereto as Exhibit E).

BFAG's Memorandum of Law and its Second Amended Complaint addressed the substance of the Defendants' Motion to Dismiss by alleging that, in fact, it was BFAG itself, and not the individual members of BFAG, that actually had incurred CERCLA "response costs." The language BFAG used in those sworn averments is important here. Thus, as to the so-called Operable Unit 1 or "OU-1" costs, BFAG's Second Amended Complaint averred:

> 18. The Boarhead Group members have agreed to collectively fund and perform the OU-1 RD/RA and have entered into an agreement with two other entities (the "OU-1 Group Agreement") whereby the parties to that agreement ("the OU-1 Parties") agreed to collectively fund and perform the OU-1 RD/RA. ***The Boarhead Group*** and the two other entities collectively, ***and not any of the OU-1 Parties individually, has taken to date and will in the future take the activities necessary to perform the OU-1 RD/RA. Specifically, the activities necessary for performance of the OU-1 RD/RA have been undertaken on behalf of the Boarhead Group (and the two other entities) by contractors hired by and paid by them. Those contractors were not hired by or paid by any of the OU-1 Parties individually, nor did they do any of the OU-1 RD/RA work on behalf of any of the OU-1 Parties individually.***

See Second Amended Complaint (Exhibit D) at ¶ 18 (emphases added).

Similarly, as to the Operable Unit 2 or "OU-2" work, BFAG's Second Amended Complaint contained parallel new averments that it was <u>BFAG itself</u>, and <u>not</u> any of the individual members, that had paid for all "response costs":

> 21. The Boarhead Group members have agreed to collectively fund and perform the OU-2 RD/RA. ***The Boarhead Group, <u>and not any of the Boarhead Group members individually</u>, has taken to date and will in the future take the activities necessary to perform the OU-2 RD/RA. Specifically, the activities necessary for performance of the OU-2 RD/RA have been undertaken on behalf of the Boarhead Group by contractors hired by and paid by the Boarhead Group. <u>Those contractors were not hired by or paid by any of the Boarhead Group members individually, nor did they do any of the OU-2 RD/RA work on behalf of any of the Boarhead Group members individually.</u>***

<u>See</u> Second Amended Complaint (<u>Exhibit D</u>) at ¶ 21 (emphases added).

BFAG's opposing Memorandum of Law reinforced the sworn position staked out by the above averments of the Second Amended Complaint. Thus, BFAG's Memorandum of Law asserted: (1) "that '***Plaintiff***' has incurred and will incur costs of response" (<u>Exhibit C</u>. at 3, emphasis added); (2) that it was ***BFAG***, and ***not*** the individual members, that actually "made payments to the EPA and to the various vendors retained by the Agreement Group to perform remedial activities at the Site" (<u>Id</u>. at n.2); and (3) that "[b]ecause the Boarhead Group alleges that ***it has paid*** and will in the future pay response costs, ***it*** is a person entitled to seek contribution" (<u>Id</u>. at 5, emphases added).

Finally, explaining the central purpose behind the new averments made in its Second Amended Complaint, BFAG's February, 2003 Memorandum of Law unequivocally stated:

> "To eliminate ***any doubt whatsoever*** concerning the Boarhead Group's allegations in the Amended Complaint, the Boarhead Group has, concurrent with this response, filed and served a Second Amended Complaint ("Complaint"), alleging with more specificity the facts concerning ***<u>its</u> incurrence of response costs at the Site.***"

<u>Id</u>. at n.7 (emphases added).

- 5 -

As so modified, BFAG's Second Amended Complaint unequivocally maintained that *it* was the proper contribution plaintiff, and *not* any of the BFAG members individually, because *its* actual incurrence of "response costs" satisfied the necessary predicate for asserting Section 113 contribution claims under the statute.

At the time, the Defendants were understandably skeptical regarding the apparent complete factual about-face between BFAG's original Complaint (which alleged in Paragraph 24 that the individual members had incurred the necessary "response costs"), versus BFAG's Second Amended Complaint (which alleged that BFAG itself, and not the individual members, had incurred the "response costs"). However, when taken as true (as Rule 12 jurisprudence requires), the Defendants had to acknowledge that the new averments of the Second Amended Complaint were sufficient to establish BFAG's "standing" in its own right as a plaintiff entitled to assert Section 113 contribution claims. Accordingly, in a carefully-worded Stipulation (specifically incorporating the "when taken as true" concept), the Defendants agreed to withdraw their Motion to Dismiss. A true and correct copy of the March 18, 2003 Stipulation is attached hereto as Exhibit F.

In the roughly two (2) years since the Defendants' Motion to Dismiss and the resulting March 18, 2003 Stipulation, extensive discovery, mediation efforts, and other litigation activities have taken place.

On December 13, 2004, the United States Supreme Court issued its opinion in Cooper Industries, Inc. v. Aviall Services, 125 S. Ct. 577 (U.S. 2004). In a nutshell, the Cooper Industries decision holds that a plaintiff may only maintain a contribution claim under Section 113 of CERCLA during or after an underlying civil action brought against it under Sections 106

or 107(a) of the statute, or after resolving its liability to the United States or a State, in whole or in part, in an administrative or judicially approved settlement.  Id., 125 S. Ct. at 581-82.

Several months later, plaintiff BFAG apparently realized that under the direct holding in Cooper Industries, it is not a proper plaintiff to assert Section 113 contribution claims (because only certain individual members of BFAG, and not BFAG itself, have been subject to underlying civil actions under Section 107(a) and have entered into settlements with the United States.  See Third Amended Complaint (Exhibit E) at ¶¶ 17, 20.  Consequently, BFAG filed the instant Motion to Amend, attaching a proposed Fourth Amended Complaint, a true and correct copy of which is attached hereto as Exhibit G.

 BFAG's Motion to Amend concedes that the purpose of the Fourth Amended Complaint is to try to preserve BFAG's pending contribution claims in the face of the Cooper Industries case.  In its zeal to do so, however, BFAG has sworn to averments in the proposed Fourth Amended Complaint that are diametrically inconsistent with the sworn averments contained in BFAG's prior Complaints.

Thus, in its second complete about-face, the Fourth Amended Complaint proposes to aver that it was *the individual members*, and *not* BFAG itself, which incurred recoverable "response costs" in connection with the Site.  That critical change is necessary, of  course, because under the holding in Cooper Industries, BFAG is not a proper contribution plaintiff, and claims by individual BFAG members who were targeted in the underlying Section 107(a) actions and settlements must be added if the case is to be preserved.  The problem, of course, is that this critical change is facially inconsistent with the sworn averments of BFAG's existing Complaint.

This about-face is best evidenced by examining the various ~~strikeouts~~ and **additions** shown in the below "redline," which compares the text of Paragraph 18 of the Second Amended

Complaint (quoted above at p. 4), with the text of Paragraph 18 of BFAG's proposed Fourth

Amended Complaint:

> 18.   The Boarhead Group members have agreed to collectively fund and
> perform the OU-1 RD/RA and have entered into an agreement with two
> other entities (the "OU-1 Group Agreement") whereby the parties to that
> agreement ("the OU-1 Parties") agreed to collectively fund and perform the
> OU-1 RD/RA. ~~The Boarhead Group and the two other entities collectively,~~
> ~~and not any of the OU-1 Parties individually, has taken to date and will in~~
> ~~the future take the activities necessary to perform the OU-1 RD/RA.~~
> ~~Specifically, the~~ <u>Specifically, each of the OU-1 Parties contributes (or has</u>
> <u>contributed) funds to an OU-1 Group trust account ("the OU-1 Trust</u>
> <u>Account").  Such contributions are (or have been) made on the basis of an</u>
> <u>interim allocation among the OU-1 Parties.  The interim allocation does not</u>
> <u>bind any of the OU-1 Parties, and they have agreed to reach a final</u>
> <u>allocation of their shares separate and apart from this action.  The</u> activities
> necessary for performance of the OU-1 RD/RA have been undertaken ~~on~~
> ~~behalf~~ **<u>by the members</u>** of the Boarhead Group (and the two other entities)**<u>,</u>**
> **<u>collectively</u>** by <u>using</u> contractors hired by and paid by them. ~~ Those~~
> ~~contractors were not hired by or paid by any of the OU-1 Parties~~
> ~~individually, nor did they do any of the OU-1 RD/RA work on behalf of any~~
> ~~of the OU-1 Parties individually~~ **<u>collectively</u>**.

<u>See</u> Fourth Amended Complaint (<u>Exhibit G</u>) at ¶ 18. [2]

The above "redline" of Paragraph 18 demonstrates the entirely results-driven, flip-

flopping approach to pleading that BFAG has taken in this case.  The original Complaint was

filed in the name of BFAG only, even though Paragraph 24 of that pleading alleged that it was

<u>the individual members, and not BFAG itself, that had incurred "response costs."</u>  When the

Defendants' Motion to Dismiss pointed out that defect, BFAG performed its first "flip," alleging

in the Second Amended Complaint that in fact it was <u>BFAG itself, and not the individual</u>

<u>members, that had incurred the "response costs"</u> at issue.  Now, faced with sure dismissal under

the <u>Cooper Industries</u> holding, BFAG proposes to compound its first "flip" with a second "flop,"

---

[2]   Parallel changes appear in Paragraph 21 of BFAG's proposed Fourth Amended Complaint
addressing the OU-2 "response costs."

returning once again to its original sworn allegation that <u>the individual members, and not BFAG itself, actually incurred the relevant "response costs."</u>

The Argument section below sets forth the proper legal ramifications of the <u>Cooper Industries</u> decision, and of BFAG's flip-flopping ways, namely:  (1)  BFAG's existing Section 113 contribution claims in the Third Amended Complaint are invalid as a matter of law under <u>Cooper Industries</u>, and the Defendants are entitled to entry of summary judgment on those claims; (2) BFAG's request to "add" individual BFAG members to the caption for the purpose of asserting new Section 113 contribution claims should be denied as futile, because all such claims are barred by the applicable three (3) year statute of limitations in CERCLA; (3) BFAG's alternative request to assert a new "implied" contribution claim under Section 107(a) of CERCLA also should be denied as futile, because such a claim is invalid as a matter of law under binding Third Circuit precedent; and (4) the Court should exercise its discretion under 28 U.S.C. § 1367(c)(3) to dismiss without prejudice BFAG's only remaining pendent claim which arises solely under state law.

## <u>ARGUMENT</u>

**I.      Pursuant to <u>Cooper Industries</u>, BFAG's Existing Section 113 Contribution Claims are Invalid as a Matter of Law, and the <u>Defendants are Entitled to Entry of Summary Judgment.</u>**

BFAG's existing Third Amended Complaint asserts federal contribution claims against the defendants under Section 113 of CERCLA (Counts I and II), together with a pendent state contribution claim under HSCA, Pennsylvania's "mini-Superfund" statute (Count III).  <u>See generally</u> Third Amended Complaint (<u>Exhibit E</u>).

As noted above, in December, 2004 the United States Supreme Court held in the <u>Cooper Industries</u> case that a plaintiff may *only* maintain a contribution claim under Section 113 of

CERCLA during or after an underlying civil action against it under Sections 106 or 107(a) of the statute, or after resolving its liability to the United States or a state, in whole or in part, in an administrative or judicially approved settlement.  Cooper Industries, 125 S. Ct. at 581-82.  As plainly set forth in the Third Amended Complaint, it is undisputed that no civil action under Section 106 or 107(a) has ever been asserted against BFAG, nor has it entered into any administrative or judicially approved settlements with the government.  See Third Amended Complaint at ¶¶ 17, 20.  It necessarily follows that BFAG's existing contribution claims under Section 113 of CERCLA lack statutory authority, and are invalid as a matter of law.

Under Rule 56(b) of the Federal Rules of Civil Procedure, the Defendants are entitled to entry of summary judgment in their favor with respect to BFAG's Section 113 contribution claims.

**II.    BFAG's Attempt to "Add" the Individual Members as New Plaintiffs to Assert New Section 113 <u>Contribution Claims is Futile, and Should be Rejected</u>.**

In its first attempt to avoid <u>Cooper Industries</u>, BFAG's Motion to Amend proposes to "add" all five individual BFAG members as new plaintiffs in order assert their own Section 113 contribution claims.  BFAG's thinking is that because EPA asserted CERCLA Section 107(a) cost recovery claims against at least some of those individual companies (albeit, as discussed below, not all of them), they (as opposed to BFAG), do meet the necessary statutory predicate under <u>Cooper Industries</u> for asserting Section 113 contribution claims.

However, BFAG's attempt to "add" five new plaintiffs to assert new Section 113 contribution claims should be denied as futile because the proposed new claims are barred by CERCLA's applicable 3-year statute of limitations.

Specifically, the statute of limitations period set out in CERCLA Section 113(g)(3) governs contribution claims, and in relevant part provides:

> No action for contribution for any response costs or damages may be commenced more than 3 years after . . . entry of a judicially approved settlement with respect to such costs or damages.

42 U.S.C. § 9613(g)(3).  As averred in both the existing Third Amended Complaint, and in the proposed Fourth Amended Complaint, EPA's OU-1 settlement with BFAG members Cytec, Ford, and SPS was entered on September 28, 2000, and EPA's OU-2 settlement with BFAG members Cytec, Ford, SPS, and TI was entered on March 14, 2002.  See, e.g., Third Amended Complaint (Exhibit E) at ¶¶ 17, 20.  Three years after the first settlement was September 28, 2003, and three years after the second settlement was March 14, 2005.  As no Section 113 contribution claims were asserted by Cytec, Ford, SPS, or TI before those cut-off dates, the proposed new claims are explicitly barred by the applicable three (3) year CERCLA statute of limitations.

In an obvious attempt at trying to avoid that result, BFAG included its "afterthought" footnote requesting that all of the new Section 113 claims to be asserted by the individual BFAG members be deemed to "relate back" to the filing of BFAG's original Complaint pursuant to Fed. R. Civ. P. 15(c)(2).  However, it is Rule 15(c)(3), not Rule 15(c)(2), which governs the application of relation back to new claims by new plaintiffs, and an examination of the relevant Rule 15(c)(3) case law (a discussion which is noticeably absent from BFAG's Motion to Amend), demonstrates that BFAG's "relation back" request is not appropriate under these circumstances, and should be rejected.

Under Rule 15(c)(3), an amended pleading involving the proposed addition of a new plaintiff only "relates back" to the date of the original pleading if all three prongs of a three-part

test are met:  (1) the new plaintiff's claims must arise out of the conduct, transaction, or occurrence set forth in the original pleading; (2) the opposing party must have received timely notice of the new plaintiff's claims and not have been prejudiced in maintaining its defenses; and (3) the defendant must have known or should have known that, but for "a mistake" concerning the identify of the proper plaintiff, the proposed claims by the new plaintiff would have been brought.  See Fed. R. Civ. P. 15(c )(3); see also Nelson v. County of Allegheny, 60 F.3d 1010, 1014 (3d Cir. 1995); Allen v. National Railroad Passenger Corp., No. 03-CV-3497, 2004 U.S. Dist. LEXIS 24846, at *22-23 (E.D. Pa. Dec. 9, 2004) (J. Davis).[3]

The Defendants concede that prong (1) is satisfied here, as is the initial "notice" aspect of prong (2).  However, the Defendants will be prejudiced under the second part of prong (2) if the new proposed plaintiffs are allowed to assert claims under Section 113 of CERCLA.  For example, the Defendants will be prejudiced by the need to conduct further discovery regarding the proposed individual plaintiffs.  To date, the umbrella entity BFAG has consistently stonewalled the Defendants' discovery efforts (as evidenced by the many Motions to Compel currently pending before the Court), and obtaining similar discovery from the individual members is likely to give rise to further expensive and time-consuming disputes.  Further, the Defendants also will be prejudiced because however suspect BFAG's various "about-face" factual allegations have been, the particular facts surrounding all of the different versions of those allegations will need to be explored.

In addition, to date many communications between and among the individual members of BFAG have not been produced in discovery, apparently under a "joint defense" privilege theory.

---

[3]    As noted above, BFAG's citation to Rule 15(c)(2) is inapposite.  Similarly, neither of the cases BFAG cites in its "afterthought" footnote involved the proposed addition of new claims by new plaintiffs, and therefore those decisions also are inapposite.

However, the proposed assertion of individual Section 113 contribution claims lays bare what the Defendants have been asserting throughout this case -- that there is direct <u>adversity</u> of interest in this CERCLA equitable allocation proceeding between and among the various BFAG members. To date, the Defendants have not been in a position to challenge the asserted "joint defense" privilege given the artificial use of BFAG as a single, undivided umbrella plaintiff. If amendment is allowed, more time-consuming discovery on this issue will necessarily ensue.

Putting these prejudices aside, the real crux of why the proposed Section 113 contribution claims by the new individual plaintiffs should not "relate back" is because the necessary "mistake" showing under prong (3) of the applicable test is completely missing. As first set forth in the <u>Nelson</u> opinion (the leading Third Circuit case involving the application of "relation back" to new plaintiffs), no "mistake" is present where the proposed new plaintiff had "ample time" in which to file its claims, and was "aware" of its right to bring the claims, but nevertheless deliberately choose not to file the claims at issue. <u>Nelson</u>, 60 F. 3d at 1015; <u>accord</u> <u>Henglein v. Colt Industries</u>, 91 Fed. Appx. 762, 765 (3d Cir. Feb. 26, 2004) (no "mistake" where proposed new plaintiffs "knew" about their potential claims, but "sat on their rights" waiting for the lawsuit to progress); <u>Garvin v. City of Philadelphia</u>, 354 F.3d 215, 222 (3d Cir. 2003) (in context of amendment to add new defendants, no "mistake" where plaintiff was "aware" of the identity of the proposed new parties when original complaint was filed, but "simply chose not to sue them at that time").

Most instructive is this Court's recent opinion in <u>Allen v. National Railroad Passenger Corp.</u>, No. 03-CV-3497, 2004 U.S. Dist. LEXIS 24846 (E.D. Pa. Dec. 9, 2004) (J. Davis). In <u>Allen</u>, a defendant employer moved for summary judgment against certain additional employees who filed a racial discrimination complaint under Title VII of the Civil Rights Act of 1964.

Unlike the "et al" complaint filed by the original *pro se* plaintiff, the later-filed complaint specifically naming the additional plaintiffs employees was filed after the applicable 90-day limitations period had passed.  The Court nonetheless denied the employer's statute of limitations motion, holding that under Rule 15(c), the later-filed complaint of the additional employees should be deemed to "relate back" to the filing date of the original complaint, because the original *pro se* plaintiff's use of an "et al" caption had involved a "technical, unintended" legal mistake.  Id. at *35.

The situation in the present case is diametrically opposite from that in the Allen case.  There, a *pro se* plaintiff made an honest "legal mistake" largely relating to procedure.  Here, no "mistake" was involved at all.  Instead, a group of highly-sophisticated companies represented by highly-competent and experienced Superfund counsel made a deliberate, strategic, and substantive decision to file (and then continue) their CERCLA contribution lawsuit in the name of a fictitious unincorporated association, rather than in their own names.

That BFAG's approach was a knowing and deliberate strategic choice, rather than an unintended "legal mistake," is demonstrated by BFAG's response to the Defendant's February, 2003 Motion to Dismiss.  The Defendants' Motion to Dismiss could hardly have been clearer in asserting that BFAG was not a proper contribution plaintiff, based upon the averments contained in the original Complaint, because only the individual BFAG members had apparently incurred the predicate statutory "response costs."  In response, the individual BFAG members could have elected to file a new, and at that early stage, timely complaint.  Instead, apparently intent upon defeating the Defendants' Motion to Dismiss by establishing the "standing" of their fictitious front BFAG, the individual members instead chose the strategic course of filing a Second Amended Complaint.  That pleading  knowingly and deliberately averred that it was BFAG

itself, and not the individual members, who in fact had incurred the recoverable "response costs" at issue.

Under these circumstances, BFAG cannot make the necessary showing under the third prong of the Nelson test and Rule 15(c) that any kind of "mistake" occurred which would justify application of the relation back doctrine.  The individual BFAG members have at all times been "aware" of their right to assert contribution claims under Section 113 of CERCLA.  However, instead of doing so, they deliberately chose to create an unincorporated association, and then elected to pursue CERCLA contribution claims by and through that entity.

Even after the Defendants' Motion to Dismiss provided clear notice that such approach was improper, BFAG and its members refused to change tactics.  Indeed, quite to the contrary, they re-committed themselves to their strategy of using the BFAG entity as a front, supporting that maneuver with sworn (albeit suspect) allegations that it was BFAG itself, and not the individual members, which had incurred the "response costs" at issue.  Counsel for BFAG and the individual members evidently perceived certain strategic advantages in that approach.  However, litigation swords often bear two edges, and not infrequently cut both ways.  The use of BFAG as the named Plaintiff in this case was a deliberate, calculated, strategic choice -- in short, the very opposite of a "mistake."

As a consequence, "relation back" does not apply to the proposed new Section 113 contribution claims by the individual BFAG members.  It follows that those claims are futile because they are directly barred by CERCLA's applicable three (3) year statute of limitations.  Accordingly, BFAG's Motion to Amend to add new parties and assert new Section 113 contribution claims should be denied.

**III.    BFAG's Attempt to Aver a New "Implied"
Contribution Claim under Section 107(a) of
CERCLA also is Futile and Should be Rejected.**

In its second effort to avoid the application of Cooper Industries, BFAG's Fourth

Amended Complaint proposes to add a brand new "implied" contribution claim under Section

107(a) of CERCLA.  As primary support, BFAG points to the United States Supreme Court's

remand of the Cooper Industries case which allows the Northern Texas District Court to

consider, in the first instance, whether such an "implied" contribution claim even exists under

Section 107(a).  See Motion to Amend at 5; see also Cooper Industries, 125 S. Ct. at 586.  BFAG

claims that the Supreme Court's remand has thrown "in question" binding Third Circuit

precedent holding that potentially responsible parties ("PRPs") like BFAG and its members are

not entitled to assert contribution claims under Section 107(a).  Motion to Amend at 11.  BFAG

therefore considers it "prudent to assert such a claim in the event that the United States Supreme

Court ultimately decides that such is available."  Id.  at 12.

As further support, BFAG attaches a recent "not for publication" opinion from the

District Court of New Jersey which allowed such an amendment under allegedly similar

circumstances.  Finally, in the oddest of footnotes, BFAG "respectfully requests that this Court

not now consider whether the Agreement Group is entitled to maintain a section 107 claim."  See

Motion to Dismiss at 14, n.12.  BFAG's argument is that "the presence of the [Section 107]

claim will not affect the progress of the litigation or prejudice any of the Defendants," and

therefore instead of addressing the issue now, the Court should wait until "after the trial" and

then consider the issue.  Id.

The new "implied" contribution claim under Section 107(a) proposed in BFAG's Fourth

Amended Complaint is futile, and therefore BFAG's underlying Motion to Amend should be

denied. The claim is futile because regardless of the United States Supreme Court's remand of the <u>Cooper Industries</u> case to a Northern Texas District Court, this Court nonetheless remains bound to follow existing Third Circuit law. And as regards that law, there is no "uncertainty" whatsoever. The Third Circuit clearly has held that Section 113(f) is the <u>only</u> available avenue under CERCLA for the assertion of contribution claims, and that PRPs such as BFAG and its members may <u>not</u> assert such claims under the guise of Section 107(a) of CERCLA. <u>See New Castle County v. Halliburton NUS Corp.</u>, 111 F.3d 1116, 1121 (3d Cir. 1997) (holding that PRPs may not assert cost recovery or contribution claims under Section 107(a)); <u>see also</u> <u>In re Reading, Co.</u>, 115 F.3d 1111, 1120 (3d Cir. 1997) (holding that Congress' 1986 creation of Section 113(f) replaced any prior judicially created right to contribution under Section 107(a)).

With all due respect, unless and until the Third Circuit alters these precedents, this Court is bound to follow the Third Circuit's holdings. It that regard, this case is critically unlike the <u>Almadovar</u> and <u>Vanguard</u> cases that BFAG cites in its Motion to Amend as alleged support. Unlike here, both of those cases did involve changes in binding Third Circuit precedent, which in turn naturally impacted decisions by the lower District Courts. <u>See</u> Motion to Amend at 10, citing <u>United States v. Almodovar</u>, Nos. 01-1378 and 01-1510, 2002 U.S. App. LEXIS 14337 (3d Cir. July 16, 2002) and <u>Vanguard Sav. & Loan Ass'n v. Banks</u>, No. 93-4627, 1995 U.S. Dist. LEXIS 8799 (E.D. Pa. June 27 1995). Here, the Third Circuit's controlling holding in <u>New Castle</u> and <u>In re Reading</u> remain entirely unchanged. Indeed, the Supreme Court explicitly stated in <u>Cooper Industries</u> that it was not considering the correctness of <u>New Castle</u> or the numerous similar holdings from the other Courts of Appeal. <u>See</u> <u>Cooper Industries</u>, 125 S. Ct. at 584-86.

The above analysis renders it unnecessary to reach BFAG's odd request that the Court allow BFAG to add an "implied" contribution claim under Section 107(a), but then defer

deciding, until after trial, "whether the Agreement Group is entitled to maintain a section 107 claim." See Motion to Dismiss at 14, n.12. It is worth noting, however, that BFAG is flatly incorrect in suggesting to the Court that "the presence of the [Section 107] claim will not affect the progress of the litigation or prejudice any of the Defendants." Id. To the contrary, were a Fourth Amended Complaint containing a new Section 107(a) claim allowed, the possibility that the Defendants might face joint and several liability very likely would lead them to assert their own Section 113 contribution claims, including against BFAG members Agere and TI (who lack in whole or in part any "contribution protection" under 42 U.S.C. § 9613(f)), against other potentially responsible parties via third-party claims, and even possibly against each other as protective cross-claims. Additional pleading, related motion practice, and a new round of follow-up discovery all would likely ensue. It would be prejudicial to the Defendants to undergo more time-consuming and expensive litigation merely to deal with a meritless claim that binding Third Circuit precedent states is not available.

Thus, in this case, BFAG's request to amend its complaint to assert an "implied" contribution claim under Section 107(a) of CERCLA is futile, because the Third Circuit's binding decisions in New Castle and In re Reading do not allow such a claim.[4] In other words, were such an amendment allowed, the new Section 107(a) claims would immediately be subject to entry of summary judgment in favor of the Defendants under binding precedent. The proposed claims simply fail, as a matter of law, to state a claim upon which relief can be granted.

---

[4] As to the "not for publication" opinion from the District Court of New Jersey submitted by BFAG, it inconsistently allowed an amendment by a PRP to add a Section 107(a) claim, despite the Court's recognition that such a claim "would be futile under controlling Third Circuit law." General Motors Corp. v. United States, No. 01-CV-2201, slip op. at 9 (D.N.J. March 2, 2005). With all due respect, that decision was in error.

IV     **BFAG's Remaining Pendent Claim under State Law**
       **Should be Dismissed Pursuant to 28 U.S.C. § 1367(c)(3).**

Upon dismissal of BFAG's existing federal claims under Section 113 of CERCLA, there is no reason for this Court to exercise continuing jurisdiction over BFAG's only remaining cause of action, a pendent state contribution claim under Pennsylvania's "mini-Superfund" statute.  See 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction when original jurisdiction claims have been dismissed).  Indeed, because the Pennsylvania state courts have not yet had occasion to consider analogous limiting language under the parallel state statute, there is every reason for this Court not to assert supplemental jurisdiction.  See 28 U.S.C. § 1367(c)(1) (one reason a district court may decline to exercise supplemental jurisdiction is because "the claim raises a novel . . . issue of State law"); see also Sections 701, 702(a)(3) and 1101 of HSCA, 35 Pa. Cons. Stat. §§ 6020.701, 6020.702(a)(3), and 6020.1101.

Under these circumstances, it would be appropriate for the Court to exercise its discretion to dismiss without prejudice BFAG's remaining pendent state claim under HSCA.


**CONCLUSION**

The above discussion demonstrates that the cross-moving Defendants are entitled to entry of summary judgment in their favor as to BFAG's existing Section 113 contribution claims, that BFAG's Motion to Amend should be denied as futile, and that dismissal of BFAG's remaining pendent claim is appropriate.  Collectively, these determinations are sufficient to resolve this entire case.  An appropriate form of Order is attached.

Respectfully submitted,

April 4, 2005

Andrew P. Foster
Christopher Guiton
DRINKER BIDDLE & REATH LLP
One Logan Square
18th and Cherry Streets
Philadelphia, PA  19103

Counsel for Rahns Specialty Metals, Inc.,
Techalloy Company, Inc. and Thomas &
Betts Corporation

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

BOARHEAD FARM AGREEMENT GROUP,      :
                                    :
              Plaintiff,            :
                                    :
       v.                           :        Civil Action No. 02-3830
                                    :
ADVANCED ENVIRONMENTAL              :
TECHNOLOGY CORPORATION, ET AL.,     :
                                    :
              Defendants.           :

**<u>ORDER</u>**

AND NOW, this _____ day of _____, 2005, upon consideration of

Plaintiff's Motion to Amend, the Defendants' Memorandum of Law in Opposition to Plaintiff

BFAG's Motion to Amend, Together With Defendants' Cross-Motion for Summary Judgment,

and the Plaintiff's response thereto, it is hereby ORDERED that Plaintiff's Motion to Amend is

DENIED and Defendants' Cross-Motion for Summary Judgment is GRANTED.


_____
Legrome D. Davis, U.S.D.J.

Dated: _____

- 21 -

## <u>CERTIFICATE OF SERVICE</u>

I Andrew P. Foster, hereby certify that on this Fourth day of April, 2005, I caused a true

and correct copy of the foregoing:

### DEFENDANTS' MEMORANDUM OF LAW
### IN OPPOSITION TO PLAINTIFF BFAG'S MOTION TO AMEND,
### TOGETHER WITH
### <u>DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT</u>

to be served as indicated below:

### <u>BY EMAIL and FIRST-CLASS MAIL:</u>

### *Boarhead Farm Agreement Group*

Glenn A. Harris, Esquire
Ballard Spahr Andrews &
 Ingersoll, LLP
Plaza 1000 – Suite 500
Main Street
Voorhees, NJ  08043=4636
(856) 761-3440
(856) 761-9001 (Fax)
harrusg@ballardspahr.com

### *Advanced Environmental Technology Corp.*

Thomas W. Sabino, Esq.
Wolff & Samson
One Boland Drive
West Orange, New Jersey 07052
Phone:  (973) 740-0500
Fax:  (973) 740-1407
Email:  tsabino@wolffsamson.com

### *Ashland, Inc.*

Richard C. Biedrzycki, Esq.
Phelan, Pettit & Biedrzycki
Suite 1600
The North American Building, 121 South Broad Street
Philadelphia, Pennsylvania 19107
Phone:  (215) 546-0500
Fax:  (215) 546-9444
Email:  rbiedrzycki@pp-b.com

## *Carpenter Technology Corporation*

Lynn Wright, Esq.
Edwards & Angell
750 Lexington Avenue
New York, NY 10022
Phone:  212-756-0215
Fax:  888-325-9169
email:  lwright@ealaw.com

## *Flexible Circuits*

A. Nicole Friant, Esq.
Seth Cooley, Esq.
Duane Morris
One Liberty Place
Philadelphia, Pennsylvania  19103-7396
Phone:  (215) 979-1818
Fax:  (215) 979-1020
e-mail:  anfriant@duanemorris.com

## *Handy & Harman Tube Company*

Melissa Flax, Esq.
Carella, Byrne, Bain, Gilfillian, Cecchi,
    Stewart & Olstein, P.C.
Five Becker Farm Road
Roseland, New Jersey  07068-1739
Phone:  973-994-1700
Fax:  973-994-1744
e-mail:  mflax@carellabyrne.com

***Merit Metals Products Corp.***

Stephen P. Chawaga, Esq.
Monteverde, McAlee & Hurd
One Penn Center at Suburban Station
Suite 1500
1617 John F. Kennedy Boulevard
Philadelphia, PA  19103-1815
Phone:  215-557-2900
Fax:  215-557-2990
e-mail:  schawaga@monteverde.com

***NRM Investment Co.***

Edward Fackenthal, Esq.
Henderson, Weitherill, O'Hey & Horsey
902 One Montgomery Plaza
P.O. Box 751
Norristown, PA  19404
Phone:  610-279-3370
Fax:  610-279-0696
e-mail:  edwardfackenthal@cs.com

Andrew P. Foster