IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BOARHEAD FARM
AGREEMENT GROUP,

                      Plaintiff,

     v.

ADVANCED ENVIRONMENTAL
TECHNOLOGY CORPORATION, et al.,

                    Defendants.

Civil Action No. 02-CV-3830

**ORDER**

AND NOW, this _____ day of _____, 2005, it is hereby

ORDERED that Defendants' Cross-Motions for Summary Judgment are DENIED.


_____
Legrome D. Davis
United States District Judge

## TABLE OF CONTENTS

Page

I.    *Leave to Amend Should Be Granted and the Claims Relate Back Under Rule 15(c).* .................................................................................................... 7

    A.    *Adding the names of the Agreement Group members to the caption of the complaint is not a "futile" amendment because it merely formalizes the ongoing participation of the Agreement Group members in the litigation.* ............ 7

        1.    *The proposed amendment relates back under Rule 15(c).* .......................... 7

            a.    *Rule 15(c)(2) and not (c)(3), which relates only to amendments adding new defendants, applies to the proposed amendments, and the proposed amendments comply with Rule 15(c)(2), because the claims arise out of the same conduct, transaction, or occurrence set forth in the original pleading.* .................................................................. 8

            b.    *The proposed amendments comply with Rule 15(c)(3) because the defendants had notice and will suffer no prejudice, and because the mistake requirement is satisfied.* ....... 12

        2.    *The proposed amended complaint is timely because the motion for leave to amend was filed prior to March 14, 2005.* .................................. 17

        3.    *The proposed amendment is not futile even though it adds Agere and TI to the caption of the complaint.* .................................................... 20

    B.    *Adding a claim under section 107(a) of CERCLA is not a "futile" amendment because of the uncertainty in the law created by Cooper Industries.* ............................................................................................... 21

    C.    *The proposed amendment moots the cross-motions for summary judgment because those motions are made solely with respect to the Third Amended Complaint.* ............................................................................................. 26

II.    *Defendants' Cross-Motions for Summary Judgment Should Be Denied Even Without the Proposed Amendment because the Agreement Group's Existing Claims are not Precluded by Cooper Industries.* ............................................. 27

III.    *This Court Should Retain Jurisdiction Over the HSCA Claim because All Fact Discovery Has Been Completed on that Claim.* ............................................. 31

# TABLE OF AUTHORITIES

## CASES

*Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d 761 (7th Cir. 1994) ....................................24

*Allen v. National R.R. Passenger Corp.*, Civ. A. No. 03-CV-3497, 2004 U.S.
Dist. LEXIS 24846 (E.D. Pa. Dec. 7, 2004) ...................................8, 12, 13, 14, 15, 16

*Blanchard v. Edgemark Finance Corp.*, No. 94-C-1890, 2000 U.S. Dist. LEXIS
7157 (N.D. Ill. May 22, 2000) ...................................................................................10

*Chladek v. Sterns Transportation Company*, 427 F. Supp. 270 (E.D. Pa. 1977) ..............19

*Cooper Industries, Inc. v. Aviall Services, Inc.*, 125 S. Ct. 577 (2004) ..................... *passim*

*Corbin v. Blankenburg*, 39 F.3d 650 (6th Cir. 1994)........................................................10

*E.I. du Pont de Nemours & Co. v. United States*, 297 F. Supp. 2d 740 (D.N.J.
2003) ...............................................................................................................23, 24

*General Motor Corp. v. United States*, Civ. A. No. 01-CV-2201 (D.N.J. Mar. 2,
2005) .......................................................................................................................24

*Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277 (3d Cir. 1993) ....................33

*Holland v. United States*, 62 Fed. Cl. 395 (2004)............................................................10

*Mauro v. S. New England Telecomms., Inc.*, 208 F.3d 384 (2d Cir. 2000) ......................34

*Mayes v. AT & T Information Systems, Inc.*, 867 F.2d 1172 (8th Cir. 1989) ..............17, 18

*Metropolitan Water Reclamation District of Greater Chicago v. Lake River
Corp.*, No. 03 C 0754 (N.D. Ill. Apr. 12, 2005)..........................................................24

*Moore v. Indiana*, 999 F.2d 1125 (7th Cir. 1993)............................................................18

*Morris v. Dillard Department Stores, Inc.*, 277 F.3d 743 (5th Cir. 2001).........................34

*N.B.A. Credit Union, Inc. v. Hargrove*, 846 F. Supp. 387 (E.D. Pa. 1994)......................34

*Nelson v. County of Allegheny*, 60 F.3d 1010 (3d Cir. 1995)....................................11, 12

*New Castle County v. Haliburton NUS Corp.*, 111 F.3d 1111 (3d Cir. 1997) ........6, 22, 23

*Olech v. Village of Willowbrook*, 138 F. Supp. 2d 1036 (N.D. Ill. 2000) ........................15

*In re One Meridian Plaza Fire Litigation*, Civ. A. No. 91-2171, 1993 U.S. Dist.
    LEXIS 11126 (E.D. Pa. Aug. 12, 1993) ................................................17, 18

*In re Reading Co.*, 115 F.3d 1111 (3d Cir. 1997).....................................6, 22, 23

*Schach v. Ford Motor Co.*, 210 F.R.D. 522 (M.D. Pa. 2002)...........................................19

*Schiavone v. Fortune*, 477 U.S. 21 (1986)............................................................9

*Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996) ................................................27

*Silva v. City of Chicago*, No. 94-C-7228, 1996 U.S. Dist. LEXIS 13714 (N.D. Ill.
    Sept. 16, 1996) ...........................................................................10

*SmithKline Beecham Corp. v. Geneva Pharmaceuticals, Inc.*, 287 F. Supp. 2d 576
    (E.D. Pa. 2002)..............................................................................7

*Taylor v. First of America Bank-Wayne*, 973 F.2d 1284 (6th Cir. 1992) .........................34

*Van Harken v. City of Chicago*, 103 F.3d 1346 (7th Cir. 1997)........................................34

*Vine St. LLC v. Keeling*, Case No. 6:03-CV-223, 2005 U.S. Dist. LEXIS 4653
    (E.D. Tx. Mar. 24, 2005) ...................................................................24

*Walker v. Armco Steel Corp.*, 446 U.S. 740 (1980)...........................................................19

## STATUTES

28 U.S.C. § 1367.......................................................................................28

42 U.S.C. §§ 9606, 9607, 9613 ...................................................... *passim*

35 P.S. § 6020.705(b) ...............................................................................35

35 Pa. Cons. Stat. §§ 6020.010 *et. seq.* ........................................................6, 31

## RULES

Fed. R. Civ. P. 3 .........................................................................................19

Fed. R. Civ. P. 12.................................................................................7, 19

Fed. R. Civ. P. 15.............................................................................. *passim*

Fed. R. Civ. P. 17 .................................................................................................. 11

Fed. R. Civ. P. 56 ............................................................................................ 19, 20

## MISCELLANEOUS

Ira M. Gottlieb, *The March Hare, Mad Hatter and Alice Return to Superfund: the Implications of Cooper Industries, Inc. v. Aviall Services, Inc.*, 36 Trends 4 (2005) ................................................................................................ 16

Wright, Miller & Kane, *Federal Practice & Procedure* (2d ed. 1990) ..................... 11, 13

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BOARHEAD FARM
AGREEMENT GROUP,

               Plaintiff,

     v.

ADVANCED ENVIRONMENTAL
TECHNOLOGY CORPORATION, et al.,

               Defendants.

Civil Action No. 02-CV-3830

## MEMORANDUM IN OPPOSITION TO DEFENDANTS' CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Boarhead Farm Agreement Group ("Agreement Group") respectfully submits this memorandum in opposition to the cross-motions for summary judgment of most of the defendants ("Moving Defendants")[1] and of Handy & Harman Tube Company, Inc. ("Handy & Harmon"). The defendants' cross-motions for summary judgment are based solely on the Agreement Group's current pleading, the Third Amended Complaint. Pending before the Court is the Agreement Group's motion for leave to file a Fourth Amended Complaint that would add the names of the individual Agreement Group members to the caption and add a claim on behalf of all plaintiffs under section 107(a) of CERCLA. If this Court grants the Agreement Group's pending motion for leave to file the proposed Fourth Amended Complaint the defendants'

---

[1] The Moving Defendants are: Advanced Environmental Technology Corp., Ashland Inc., Carpenter Technology Corporation, Flexible Circuits, Merit Metals Products Corp., Rahns Specialty Metals, Inc., Techalloy Company, Inc., and Thomas & Betts Corporation.

motions must be denied as moot. The Agreement Group's motion should therefore be decided prior to or in conjunction with defendants' cross-motions.

Leave should be given for the Fourth Amended Complaint, and the amendment should relate back to the date of the original complaint, because nothing in the proposed pleading alters the fundamental nature of this action. The defendants have had full notice of the nature and specifics of the claims and will not be prejudiced by the proposed amendment. There is not now nor has there ever been any dispute about the identity of the five companies comprising the Agreement Group. Nor is the essential nature of the claims in this action altered.

Briefly and simply, the United States pursued the members of the Agreement Group, seeking to recover the government's past and future costs of remediating the Boarhead Farms Superfund Site ("the Site"). The members put money into a trust account (subject to reallocation), collectively agreed to clean up the Site, hired contractors to do the work, and used the money in the trust account to pay the contractors and the United States. The members then collectively retained this firm to pursue other liable parties to recover each of those liable parties' equitable shares of the money paid into the pot by the members, and from the pot to the contractors and the United States. The "Agreement Group" is simply the vehicle through which the members chose in concert to meet collectively their individual obligations to clean up the Site, and thus has not interests distinct from those of its members. Nevertheless, the defendants would have this Court treat whatever distinction there may be between the "Agreement Group" and its members as outcome determinative of at least the CERCLA claims brought against them.

Significantly, at the time of filing the original complaint, and indeed up to the date of the Supreme Court's decision in *Cooper Industries v. Aviall,* there was no legal requirement or suggestion that the individual members of the Agreement Group need be included in the caption

of the Complaint.  Each defendant understood the Agreement Group to represent merely the collective interests of the group members.  As *Cooper Industries* changed the CERCLA private party litigation landscape and raised many new currently unanswered questions, the Agreement Group desires to avoid all doubt as to its pleading and has taken the conservative approach of seeking to amend the complaint to include formally each group member as a named plaintiff.

Defendants attempt to characterize the members of the Agreement Group as "new plaintiffs" bringing "new claims," as if the members are total strangers to the litigation bringing claims wholly unrelated to CERCLA or to recovery of response costs related to the Site.  This is absurd.  Nothing could be farther from the truth.  This action is and always has been about the recovery by the members of the Agreement Group from the defendants of the defendants' fair shares of the response costs collectively incurred and collectively to be incurred by the members.  The questions regarding what each of the members paid in response costs by contributing to the Agreement Group "pot," and what the facts are with regard to each member's relationship, if any, to the Site, have been at issue since the day the initial complaint was filed and has been the subject of lengthy discovery.

Defendants have had full access to all facts concerning members of the Agreement Group since the inception of this litigation.  This Court will recall that the initial case management order ("CMO") was submitted for approval by plaintiff and each of the initial defendants, following negotiations among the parties over the exact language of the order.  That CMO provides, in relevant part, that the Agreement Group must provide, in lieu of Rule 26(a)(1) initial disclosures, certain categories of documents "in the possession, custody, or control of … Plaintiff *or its members*," CMO at ¶ 3(B)(2), and information with respect to facilities of the Agreement Group members, *id.* at ¶ 3(b)(3).  All of the parties clearly understood that these

provisions were critical precisely because each member of the Agreement Group effectively is, and has been, part of the litigation.

      *Four days after entry of the CMO* the defendants filed their first "form over substance" motion, a motion to dismiss on the basis that the Agreement Group was not itself the real party in interest (and otherwise was not a proper plaintiff) entitled to bring the claims. The Agreement Group responded that the defendants were ignoring the underlying fact that the members of the Agreement Group had decided to act collectively to remediate the Site and collectively to pursue recovery of their costs, and that the motion therefore should be denied. *See* Memorandum in Opposition to Joint Motion of Certain Defendants to Dismiss the Amended Complaint for Failure to State a Claim at 3-5. Nevertheless, to avoid litigating the motion, the Agreement Group also negotiated a consensual resolution with all of the defendants, which resolution was premised upon a second unequivocal statement that the liability, if any, of each of the members of the Agreement Group was an integral part of the action, and that, accordingly, the defendants would not be hindered in any way from pursuing discovery relevant to any such liability. The Stipulation submitted to and entered by this Court expressly provides that notices of deposition, interrogatory responses, requests for production, and requests for admissions served upon the Agreement Group must be responded to as if the members of the Agreement Group are parties. *See* March 17, 2003 Stipulation at ¶¶ 2-5.

      Almost three years of litigation later, the defendants have taken whatever relevant discovery they wanted of the Agreement Group concerning the nexus, if any, of waste from the Agreement Group members' facilities to the Site and of the costs incurred to remediate the Site. Through initial disclosures, written discovery, requests for admissions, and depositions of member employees and former employees, and of the members themselves through Rule

30(B)(6), the defendants have completed fact discovery against the individual members of the

Agreement Group.  Pending before this Court now are multiple discovery motions in which the

defendants have repeatedly argued that the quantity and nature of the waste from each

Agreement Group member's facilities that was allegedly deposited at the Site and the equitable

share of liability that should be attributed to each Agreement Group member are issues that go to

the "heart" of this litigation.  *See, e.g.,* Memorandum of Law in Support of Techalloy/RSM's

Motion to Compel Responses to Interrogatories and for Extension of Fact Discovery Period at 4-

5.

The defendants' suggestion that they are entitled to completely escape CERCLA

liability because the names of the Agreement Group members have not been listed in the caption

of the complaints (but only in the text of the pleadings) is truly form over substance.  The

Agreement Group's CERCLA claims are and always have been for contribution, an equitable

remedy.  There is nothing equitable about letting liable parties get off scot-free because of such a

vagary of pleading.

## ARGUMENT

Moving Defendants' cross-motion for summary judgment is premised on the

assumption that this Court will deny the Agreement Group's motion for leave to amend its

compliant, such that the sole plaintiff remains the Agreement Group.  Moving Defendants then

argue, based on an oversimplified reading of *Cooper Industries, Inc. v. Aviall Services, Inc.*, 125

S. Ct. 577 (2004), that the "Agreement Group," as sole plaintiff, cannot assert CERCLA claims.

The sole reason advanced for why leave to amend should not be granted, however, is that the

proposed amendment is "futile."  Moving Defendants' Brief at 10.  Adding the names of the

Agreement Group members is futile, they say, because the statute of limitations has run on such

claims.  *Id.* at 10-11.  The Agreement Group's proposed section 107(a) claim is futile, they say,

because such a claim is barred by *New Castle County v. Haliburton NUS Corp.*, 111 F.3d 1111

(3d Cir. 1997) and *In re Reading Co.*, 115 F.3d 1111 (3d Cir. 1997). Moving Defendants make

no argument whatsoever that they are entitled to summary judgment on the Agreement Group's

proposed Fourth Amended Complaint. Thus, leave granted by this Court to file that proposed

pleading renders Moving Defendants' motion for summary judgment on the Third Amended

Complaint moot.[2]

Thoughtful consideration of the Supreme Court's opinion in *Cooper Industries*

knocks out the linchpin of defendant's cross-motion for summary judgment. Both the Moving

Defendants and Handy & Harmon argue that because the entity the "Agreement Group" has not

been a party to a civil action under Section 106 or 107(a) and has never, as an entity, entered into

any administrative or judicially approved settlements, the Agreement Group's existing Section

113 claims are barred by *Cooper Industries*. *See* Moving Defendants Brief at 9-10; Handy &

Harmon Brief at 17. The *Cooper Industries* opinion does not so hold, and the facts at issue here

are significantly different from the facts in *Cooper Industries*. The Agreement Group's claims

were brought "following" two CERCLA civil actions concerning the Site to which most of the

group members were parties. The Agreement Group is not precluded from bringing its existing

Section 113 claim by *Cooper Industries*, or by any other authority.

Finally, the defendants assert with absolutely no analysis whatsoever that the

Agreement Group's state law claims under Pennsylvania's Hazardous Sites Cleanup Act, 35 Pa.

Cons. Stat. §§ 6020.010 *et. seq.* ("HSCA") should be dismissed, as the Court's jurisdiction over

those claims is supplemental. All of the facts and most of the law relevant to a resolution of the

---

[2]    Handy & Harmon's cross-motion could be read to express opinions about the viability of
the proposed Fourth Amended Complaint on other grounds. Those arguments are
addressed in Section I(A)(3) *supra*.

HSCA claims are identical to the facts and law pertaining to the Agreement Group's CERCLA claims. Factual discovery on all of those claims is complete, and, with expert discovery, those claims will be ready for trial. There is absolutely no reason why this Court should decline jurisdiction over those claims and force the parties to begin the litigation anew in state court.

I.    *Leave to Amend Should Be Granted and the Claims Relate Back Under Rule 15(c).*

The defendants argue that leave to amend should not be given because the proposed amendment is "futile." Neither the addition of the names of the Agreement Group members to the caption of the complaint nor the addition of a claim under Section 107(a) of CERCLA are "futile" amendments.[3]

A.    *Adding the names of the Agreement Group members to the caption of the complaint is not a "futile" amendment because it merely formalizes the ongoing participation of the Agreement Group members in the litigation.*

1.    *The proposed amendment relates back under Rule 15(c).*

The defendants' futility argument hinges upon the assertion that the proposed addition of the names of the Agreement Group members to the complaint does not relate back to the date of the initial complaint under Rule 15(c) and is, they say, therefore time-barred. The proposed amendment does, however, relate back. The proposed changes to the pleading do not add "new plaintiffs" bringing "new claims," but merely formalize the ongoing participation of the Agreement Group members in the litigation.

---

[3]    Futility is analyzed under the same legal sufficiency as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See SmithKline Beecham Corp. v. Geneva Pharm., Inc.*, 287 F. Supp. 2d 576, 580-81 (E.D. Pa. 2002). Under the 12(b)(6) standard, leave to amend should not be denied as futile unless the proposed amended complaint would fail to state a claim upon which relief can be granted. When reviewing a claim of futility, the court assumes the truth of all the complaint's factual allegations. *Id.*

This action has from its inception been an effort to recover from the defendants the equitable shares attributed to those defendants of the monies contributed by the members of the Agreement Group to the OU-1 and OU-2 trust accounts, from which accounts the contractors who have been and are now performing the environmental remediation of the Site (and the United States) have been and will be paid. The defendants have known for over two years what work has been and is being done at the Site, which contractors are doing what aspects of that work, from which accounts those contractors have been paid, and from where the money came to fund those accounts. The defendants have known since virtually the day the initial complaint was filed the names of the five companies that are members of the Agreement Group and which facilities of those members did business with DeRewal Chemical Company (or otherwise have an alleged nexus to the Site). Nothing in the proposed amended complaint would make this anything other than a contribution action, and there are no additional companies or company facilities that would affect in any way the liability of the Agreement Group, which liability is nothing more than the sum of the liabilities of each of the Agreement Group members. These are just not "new claims" about which "notice" arguments can be made. They are the same claims that the defendants have been defending since the day the initial complaint was filed.

> a.    *Rule 15(c)(2) and not (c)(3), which relates only to amendments adding new defendants, applies to the proposed amendments, and the proposed amendments comply with Rule 15(c)(2), because the claims arise out of the same conduct, transaction, or occurrence set forth in the original pleading.*

Fed. R. Civ. P. 15(c) governs the circumstances under which amendments to pleadings relate back to the date of the original pleading. "Rule 15(c) strikes a balance between the policy of adjudicating claims on their merits and the policy of avoiding prejudice to defendants by applying with fairness the relevant limitation period." *Allen v. Nat'l R.R. Passenger Corp.*, Civ. A. No. 03-CV-3497, 2004 U.S. Dist. LEXIS 24846, at *20 (E.D. Pa. Dec.

7, 2004) (Davis, J.). The "linchpin" of Rule 15(c) is, accordingly, notice of the circumstances to which the amendment relates. *Schiavone v. Fortune*, 477 U.S. 21, 31 (1986). Thus, Rule 15(c)(2) permits relation back where the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. Fed. R. Civ. P. 15(c)(2). All claims asserted in the amended pleading arise out of the same conduct, transaction, or occurrence set forth in the original pleading. Defendants concede this point.

Rule 15(c)(3) does not control the proposed amendment. The text of Rule 15(c)(3) expressly applies only to the naming of additional defendants: "(3) the amendment changes the party or the naming of the party *against whom* a claim is asserted if ... *the party to be brought in by the amendment* (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a *defense* on the merits...." Fed. R. Civ. P. 15(c)(3) (emphasis added). This language cannot be read to apply to anyone other than a newly-added defendant.[4] This plain reading of the Rule is reinforced by the Advisory Committee Notes to the 1966 Amendment adding that language. That note provides, in relevant part: "The

---

[4]     Unlike its counterparts, subsection (c)(3) requires additional inquiry to guarantee notice and the absence of prejudice in one situation and one situation only – where an "amendment changes the party or the naming of the party against whom a claim is asserted." Fed. R. Civ. P. 15(c)(3). This recognizes that a new or newly-named defendant is at a greater risk of being without notice of, and therefore of being prejudiced by, a claim being asserted against it. Accordingly, where an amendment adds or names a new defendant, in addition to requiring that the amendment satisfies the criterion at (c)(2), Rule 15(c) also requires that the party to be brought in by amendment has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party. These extra requirements – the first explicitly and the second implicitly – ensure that new defendants, who may not previously have been aware of the claims being asserted against them, are guaranteed notice and the absence of prejudice. Only in this one unique situation is such additional inquiry required.

relation back of amendments changing plaintiffs *is not expressly treated* in revised Rule 15(c)

since the problem *is generally easier*. Again, the chief consideration of policy is that of the

statute of limitations, and the attitude taken in revised Rule 15(c) toward change of defendants

extends *by analogy* to amendments changing plaintiffs." Advisory Committee Notes to 1966

Amendment to Fed. R. Civ. P. 15(c) (emphasis added). It is quite clear that Rule 15(c)(3) applies

at most "by analogy" and not strictly.[5]

   Several courts have held or suggested that Rule 15(c)(2) properly governs

amendments adding plaintiffs. *See Silva v. City of Chicago*, No. 94-C-7228, 1996 U.S. Dist.

LEXIS 13714, at *18-19 (N.D. Ill. Sept. 16, 1996) (finding that section (c)(3) sets forth

additional requirements that must be met when an amended pleading adds a defendant, but that

Rule 15(c)(2) governs an amendment adding a new *plaintiff*); *Holland v. United States*, 62 Fed.

Cl. 395, 407 (2004) (applying federal claims Rule 15(c)(2) analog, and expressly not applying

Rule 15(c)(3) analog, to an amendment adding a plaintiff rather than a defendant); *Corbin v.*

*Blankenburg*, 39 F.3d 650, 654 (6th Cir. 1994) (stating in *dicta* that Rule 15(c)(2) would have

applied to an amendment naming a new plaintiff where the claim being asserted would not have

changed); *Blanchard v. Edgemark Fin. Corp.*, No. 94-C-1890, 2000 U.S. Dist. LEXIS 7157, at

*20-21 (N.D. Ill. May 22, 2000) (stating in *dicta* that Rule 15(c)(2) may be applied without

reference to Rule 15(c)(3) to an amendment adding new plaintiffs).

---

[5] Accordingly, the drafters believed that the express provisions of Rule 15(c)(3), designed
to address the peculiar and difficult situation in which new *defendants* were being haled
into court late in the game, did not apply strictly to the adding of new *plaintiffs* because
the later situation is "generally easier" with respect to satisfying the underlying purposes
of Rule 15(c). The Note also recognizes that this is especially so where the addition or
change of plaintiffs is a question of who is the real party in interest. *Id.*

The defendants nevertheless argue that *Nelson v. County of Allegheny*, 60 F.3d 1010 (3d Cir. 1995) requires this Court to apply Rule 15(c)(3) and to find a "mistake" before permitting the proposed amendment. *See* Moving Defendants Brief at 12; Handy & Harmon Brief at 9-10. The discussion in *Nelson* about the applicability of Rule 15(c)(3) to amendments adding plaintiffs is not, upon close examination, binding on this Court in this action. The proposed *Nelson* plaintiffs *claimed* that their motion for leave to amend was governed by Rule 15(c)(3) (and not Rule 15(c)(2)), and *no one suggested anything else. See Nelson*, 60 F.3d at 1014. The question whether Rule 15(c)(2) or (c)(3) was the applicable rule was thus not at issue. Whatever the *Nelson* court had to say about the applicability of Rule 15(c)(3) to amendments changing plaintiffs is therefore *obiter dicta*. Moreover, the *Nelson* opinion includes no meaningful discussion about Rule 15(c)(3)'s "mistake" prong, but instead states only that the plaintiffs there "have not demonstrated that [the failure to add parties previously] was due to mistake." *Id.* at 1015. This Court is thus not bound by *Nelson* either to conclude that Rule 15(c)(3) applies to the instant motion by analogy or otherwise, or that relation back may be permitted only if the "mistake" prong of that rule is satisfied.[6]

---

[6]    Further, the *Nelson* opinion recognizes that Rule 15(c)(3)'s multi-pronged test does not apply at all where the change in plaintiffs is nothing more than a real party in interest issue. *See* 60 F.3d at 1015, n.8 ("This is not a case where plaintiffs merely sought to substitute a real party in interest. 'The substitution of such parties after the applicable statute of limitations may have run is not significant when the change is merely formal and in no way alters the known facts and issues on which the action is based.'") (citation omitted). The addition of the individual Agreement Group members is, of course, exactly such a change. Leave accordingly should be given to join the Agreement Group members. Fed. R. Civ. P. 17(a) ("No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed for … joinder .. of, the real party in interest; and such … joinder …shall have the same effect as if the action had been commenced in the name of the real party in interest"). Indeed, this Court could find that the individual members of the Agreement Group are already parties to the action. *See* Wright, Miller & Kane, *Federal Practice &*

(continued...)

The proposed amendment complies with Rule 15(c)(2), the applicable rule. It relates back under that rule, is therefore not barred by the statute of limitations, and should therefore be permitted, mooting the defendants' cross-motions for summary judgment.

> b.    *The proposed amendments comply with Rule 15(c)(3) because the defendants had notice and will suffer no prejudice, and because the mistake requirement is satisfied.*

Even if this Court felt that it needed to consider *Nelson*, *Nelson* should be read at most for the proposition that Rule 15(c)(3) applies to changed plaintiff situations only by analogy, a fact conceded by the *Nelson* court. *See* 60 F.3d at 1014, n.7. As this Court has cautioned, in performing an analysis not contemplated by the literal language of Rule 15(c)(3) it is vital to keep in mind the purpose of the Rule, which is to "prevent parties against whom claims are made from taking unjust advantage of otherwise inconsequential pleading errors to sustain a limitations defense." *See Allen*, 2004 U.S. Dist. LEXIS 24846, at *22 (citing Advisory Committee Notes to 1991 Amendment to Fed. R. Civ. P. 15(c)). The key to such an analysis is on the defendant's "notice" of the new claims. *See id.* at *23 (citing *Schiavone*, 477 U.S. at 31). The underlying purpose of the early amendments to Rule 15(c) – "to preserve legitimate suits despite such mistakes of law at the pleading stage," *id.* at *33-34 (*citing Soto v. Brooklyn Corr. Facility*, 80 F.3d 34, 36 (2d Cir. 1996)) – therefore counsels in favor of permitting the amendments here to relate back to the filing of the original complaint. Such a finding is consistent with the text and purpose of Rule 15(c)(3), as it would "prevent the dismissal of claims due to an 'otherwise inconsequential pleading error.'" *Id.* at *39 (citing Advisory Committee Note to 1991 Amendment to Fed. R. Civ. P. 15(c)).

---

(...continued)
      *Procedure* § 1321 at 388-94 (2d ed. 1990) [hereinafter "Wright & Miller"] ("the caption is not determinative as to the identity of the parties to the action").

Defendants' concession that they had notice of the "new claims," *see* Moving Defendants' Brief at 12, all but concedes as well that they will not be prejudiced by the proposed addition of the names of the Agreement Group members to the caption of the complaint. The language of Rule 15(c)(3) makes clear that "prejudice" within the meaning of the rule is "dependent upon, rather than independent of, the notice requirement." *Allen,* 2004 U.S. Dist. LEXIS 24846, at *26-27; Fed. R. Civ. P. 15(c)(3) ("the party to be brought in by amendment (A) has received *such* notice of the institution of the action *that* the party will not be prejudiced in maintaining a defense on the merits") (emphasis added). Thus, the prejudice referenced by Rule 15(c)(3) refers to "those strategic hardships imposed by the unreasonable passage of time upon a defendant's *ability* to present an effective defense." *Id.* at 27-28 (emphasis added). As the leading commentator on the Federal Rules of Civil Procedure has stated: "As long as a defendant is fully apprised of a claim arising from specified conduct and has prepared to defend the action, his ability to protect himself will not be prejudicially affected if a new plaintiff is added, and he should not be permitted to invoke a limitations defense." Wright & Miller, § 1501 at 154-55.

The only argument Moving Defendants make concerning "prejudice" is that the decision of the Agreement Group members to bring the action collectively as the "Agreement Group" has affected how the defendants have taken discovery to date, and that the proposed amendments would change how they would take discovery going forward. *See* Defendants' Brief at 12-13. Hardy & Harman does not even attempt to argue prejudice. The purported "need" to take new or additional discovery, however, does not effect defendants' *ability* to defend themselves, only the *amount* of discovery they may need to do so. Defendants can only establish prejudice by showing instead that they *cannot now* take any such discovery because the

case is stale, such that witnesses and documents are no longer available.  In those situations where truly new plaintiffs bring truly new claims defendants will, by necessity, be required to conduct additional and different discovery and will be subjected to greater liability as well.[7]  The "need" to take further discovery thus cannot be "prejudice" for the purposes of Rule 15(c)(3). *Allen,* 2004 U.S. Dist. LEXIS 24846, at 27-28.

Moreover, the defendants *have taken discovery* of the Agreement Group members.  The Agreement Group has made initial disclosures with respect to its individual members, has responded to interrogatories and requests for production concerning information and documents in the possession, custody, or control of the members, and has produced for deposition current and former employees of the members as well as Rule 30(b)(6) witnesses to testify *on behalf of the members*.  The defendants have been free to take whatever discovery of the individual members of the Agreement Group they have wanted to take.[8]  There is no reason why defendants need any additional or different discovery.  The liability, if any, of the individual members of the Agreement Group has been an integral part of this litigation since the day the complaint was filed.  Adding the Agreement Group members as formal plaintiffs makes their potential liability no more relevant.  Indeed, in various pending discovery motions the defendants insist that the facts concerning the nexus of the Agreement Group members to the Site, and the

---

[7]    For the same reason the cost of further discovery motion practice, if any, cannot create "prejudice."

[8]    Moving Defendants' assertion that they have been "stonewalled" in their discovery efforts, Moving Defendants' Brief at 12, seems to suggest that the Agreement Group has somehow withheld relevant documents or witnesses with relevant knowledge.  This is not true.  The pending discovery motions relate to contention discovery, not fact discovery.  If this Court believes that adding the names of the Agreement Group members to the caption of the complaint actually creates the need for different discovery, it can simply give the defendants additional time to conduct such specific discovery, such that they will not be prejudiced.

shares of liability that should be attributed to that nexus are "critical" to defendants' defense of this Action.[9]  Similarly, which Agreement Group members put which dollars into which accounts for payment of Site response costs has always been relevant.[10]

Defendants' real Rule 15(c)(3) argument is that the changes in the proposed amendment are not being made because of a "mistake."  As this Court has noted, however, it is well-settled that a "mistake" within the meaning of Rule 15(c)(3)(B) includes erroneous judgments of law and fact. *See Allen*, 2004 U.S. Dist. LEXIS 24846, at *31-32 (*citing Dalicandro v. Legalgard Inc.*, Civ. A. No. 99-3778, 2002 U.S. Dist. LEXIS 25443, at *6 (E.D. Pa. Jan. 24, 2003); *Advanced Power Systems, Inc. v. Hi-Tech Systems, Inc.*, 801 F. Supp. 1450, 1457 (E.D. Pa. 1992); *Kinnally v. Bell of Pa.,* 748 F. Supp. 1136, 1142 (E.D. Pa. 1990)).  The "mistake" element ensures the existing defendant's awareness that a new party, and potentially a new claim, might be added to the case and that plaintiff intended to add new parties at the time of the filing of the original complaint, rather than pursuing a deliberate strategy of piecemeal litigation. *See id.* at *31 (*citing Advanced Power Systems, Inc.*, 801 F. Supp. at 1457).  In applying the "mistake" requirement, courts focus on the reasons for the plaintiff's delay either in entering, or bringing a new defendant into, the litigation. *See id.* (*citing Nelson*, 60 F.3d at

---

[9]     Some or all of the Moving Defendants filed or joined in discovery motions that are *sub judice* in which they assert that they have *consciously chosen not to take further discovery of the Agreement Group members* during the last two extensions of fact discovery because the Agreement Group has not responded to contention discovery designed to illicit just such facts and legal conclusions.  It is ironic that they now claim they will somehow have to take this very discovery only if the amendment is permitted.

[10]    Moving defendants' suggestion that additional discovery will be required concerning communications between and among the Agreement Group members would now be necessary, Moving Defendants' Brief at 12-13, is devoid of any explanation of why the proposed change makes such communications any more or less privileged than are those communications with only the Agreement Group itself as plaintiff.  There are no such reasons.  The defendants have been free to explore this issue for almost three years.

1014); *but see Olech v. Village of Willowbrook*, 138 F. Supp. 2d 1036, 1044 (N.D. Ill. 2000) ("a focus on the plaintiff's motivations is not the focus mandated by Rule 15(c), which seeks not to punish a plaintiff for his or her tardiness but instead seeks to ensure that adding a party plaintiff after the expiration of the statute of limitations does not violate essential fairness to the defendants already in the case").

This Court can easily find that the Agreement Group made a "mistake" in legal judgment and form within the meaning of Rule 15(c)(3). This Court has noted that "'courts have typically resisted a narrow reading of the mistake element and allowed the addition of responsible individual defendants when plaintiff simply made an error in legal judgment or form . . . '" *See Allen*, 2004 U.S. Dist. LEXIS 24846, at *31-32 (*citing Advanced Power Systems, Inc.*, 801 F. Supp. at 1457). At the time it filed its complaint, the Agreement Group believed that it could appropriately sue as a group instead of as its individual members. There are many reported decisions by Courts of Appeal where CERCLA claims brought in the name of a collective plaintiff were adjudicated without so much as a question raised concerning that form. The Agreement Group simply could not have foreseen the radical change in CERCLA jurisprudence set forth in *Cooper Industries*. *See* Ira Gottlieb *The March Hare Mad Hatter and Alice Returned to Superfund: the implications of Cooper Industries Inc. v. Aviall Services Inc.*, 36 Trends 4 (2005) ("[*Cooper Industries*] may displace two decades of Superfund reality and practice by concluding that the statute 'means what it says' without taking into account Superfund's landscape and history period").[11] Perhaps as a measure of the revolutionary impact of the *Cooper Industries* case, over forty-six amici briefs were filed with the Supreme Court by various industrial concerns, state governments and professional associations in support of the

---

[11]     A copy of this article is attached hereto.

losing Respondent, or in support of the status quo. In contrast, only one party, the United States

Department of Justice, filed an amicus brief in support of the prevailing Petitioner. Any

deficiency in the Third Amended Complaint was created by this shocking development, not by

any attempt by the Agreement Group or its members to "sit on their rights," intentionally confuse

the facts, or trick the defendants. Nor is this a case in which the individual plaintiffs were

pursuing "some deliberate strategy of piecemeal litigation." The individual plaintiffs banded

together and sued as a group because they believed that was the most appropriate way to clean

up the Site and to pursue their claims. If that is now not so, then the belief turns out to have been

mistaken. Even if this Court believes it may only permit the proposed amendment if there has

been a "mistake," it should find the mistake element present here. Rule 15(c)(3) would thus be

satisfied, and the proposed amendments would relate back to the filing of the original complaint.

    2.    *The proposed amended complaint is timely because the motion for leave to amend was filed prior to March 14, 2005.*

Even if the proposed amendments do not relate back, those amendments are

timely. The statute of limitations period began following execution of the Consent Decree for

OU-2 on March 14, 2002 and ended on March 14, 2005. Plaintiff filed its Motion To Amend the

Third Amended Complaint by adding the section 113 claims on behalf of the individual plaintiffs

on March 11, 2005. The proposed Fourth Amended Complaint, if permitted, would be timely

based upon those facts.

The majority of federal courts, including courts in this Circuit and in this District,

have held that a motion to amend the complaint tolls the statute of limitations. *See Mayes v. AT

& T Information Systems, Inc.*, 867 F.2d 1172, 1172-73 (8th Cir. 1989) ("Under the Federal rule,

the filing of a motion to amend the complaint . . . when accompanied by a copy of the amended

complaint, has long been held sufficient to stop the running of the Statute of Limitations."); *see*

*also In re One Meridian Plaza Fire Litigation*, Civ. A. No. 91-2171, 1993 U.S. Dist. LEXIS

11126 (E.D. Pa. Aug. 12, 1993). In *Mayes*, the plaintiff filed a motion to amend her complaint

by adding a defendant to her claim under the National Labor Relations Act. The defendants

argued that although the motion was filed within the statute of limitations, the amended

complaint was not filed until the court granted plaintiff's motion—after the statute had run. In

holding that the plaintiff's claim was timely commenced, the court stated:

> A number of courts have addressed the situation where the petition
> for leave to amend the complaint has been filed prior to expiration
> of the statute of limitations, while the entry of the court order and
> the filing of the amended complaint have occurred after the
> limitations period has expired. In such cases, the amended
> complaint is deemed filed within the limitations period. *See
> Rademaker v. E.D. Flynn Export Co.*, 17 F.2d 15, 17 (5th Cir.
> 1927); *Longo v. Pennsylvania Elec. Co.*, 618 F. Supp. 87, 89
> (W.D. Pa. 1985), *aff'd*, 856 F.2d 183 (3d Cir. 1988); *Eaton Corp.
> v. Appliance Valves Co.*, 634 F. Supp. 974, 982-83 (N.D. Ind.
> 1984), *aff'd on other grounds*, 790 F.2d 874 (Fed. Cir. 1986);
> *Gloster v. Pennsylvania R.R.*, 214 F. Supp. 207, 208 (W.D. Pa.
> 1963).

*Mayes*, 867 F.2d at 1173. The Seventh Circuit has explained that the rationale behind federal

courts' general acceptance of a motion for leave to amend for purposes of commencing a claim

within the statute of limitations stems from the fact that "a party has no control over when a court

renders its decision regarding the proposed amended complaint." *Moore v. Indiana*, 999 F.2d

1125, 1131 (7th Cir. 1993). The *Moore* court also noted that a motion for leave to amend, where

the moving party attaches a copy of the proposed amended pleading, provides sufficient notice to

the other parties of the substance of the amendments. *See id.*

   This court has jurisdiction in this case on federal question grounds; therefore,

federal law regarding statutes of limitation applies. Consistent with the rationale discussed in

*Moore*, the defendants were given timely notice of the amendments proposed by the plaintiff's

Fourth Amended Complaint, as a copy of that pleading was attached to plaintiff's March

11, 2005 motion. Furthermore, the defendants can hardly argue that they were prejudiced by the timing of any amendments bringing section 113 claims on behalf of the new individual plaintiffs, as these amendments do not alter the substance of those claims. In accordance with prevailing federal law, the plaintiff's motion to amend satisfied the statute of limitations such that the "new claims" were timely filed.[12]

The proposed addition of the individual members of the Agreement Group as plaintiffs is timely. That proposed amendment is, therefore, not futile, such that leave to amend should be "freely given." Fed. R. Civ. P. 15(a). The defendants' cross-motions for summary judgment should therefore be denied.[13]

---

[12]    The opinion cited by Handy & Harman (see Handy & Harman Memorandum at 8, n.4) for the proposition that the filing of a motion to amend does not toll the statute of limitations, *Chladek v. Sterns Transportation Company*, 427 F. Supp. 270 (E.D. Pa. 1977), is inapposite. The only court that has cited *Chladek* found that the decision was "obsolete." *See Schach v. Ford Motor Co.*, 210 F.R.D. 522, 524-25 (M.D. Pa. 2002). In *Chladek*, a personal injury action based upon federal diversity jurisdiction, the court had used Fed. R. Civ. P. 3, rather than the Pennsylvania Rules of Civil Procedure, to determine when an action was commenced for purposes of calculating whether a claim was added within the statute of limitations. Three years after the *Chladek* decision, the United States Supreme Court held that in federal diversity actions Federal Rule of Civil Procedure 3 does not affect the operation of state statutes of limitation. *See Walker v. Armco Steel Corp.*, 446 U.S. 740 (1980).

[13]    Moving Defendants and Handy & Harman each note that there have been two Consent Decrees in this Action, the earlier of which was entered on September 28, 2000. Neither brief, however, contains any discussion of the legal significance, if any, of the entry of the earlier Consent Decree, and both cross-motion are for full, not partial, summary judgment. The Agreement Group respectfully suggests that this question need not and should not be decided in the context of these motions. The proposed addition of the Agreement Group members is not wholly futile because the statute of limitations has not run on at least the claims relating to OU-2. Leave to file the proposed pleading is thus appropriate. Any or all of the defendants will have the right to seek dismissal of some *portion* of the claims made in the Fourth Amended Complaint pursuant to either Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 56, as appropriate. This Court would have the opportunity to fully consider whatever arguments defendants may make in such motions, and would be able to do so in the context of the new pleading.

3.     *The proposed amendment is not futile even though it adds Agere and TI to the caption of the complaint.*

Handy & Harman alone argues that the proposed amendment should be denied as futile because section 113 claims by Agere and section 113 claims by TI with respect to OU-1 costs would be barred by *Cooper Industries*. *See* Handy & Harman Brief at 15-16. Handy & Harmon's argument fails for the same reasons as its assertions against the Agreement Group in the Agreement Group's collective capacity. As set forth in Section II, *supra*, nothing in the *Cooper Industries* opinion would require the dismissal of the proposed Agere and TI claims, *given that these claims are brought "during or following" two civil actions concerning the Site, and in conjunction with* claims by the other Agreement Group members and by the Agreement Group itself.

Moreover, this question need not and should not be decided in the context of these motions. The only question here is whether this Court should give leave for the filing of the proposed Fourth Amended Complaint. Even if Handy & Harman was correct in its argument about TI and Agere, which would be vehemently denied by the Agreement Group, the proposed amendment would not be wholly futile, and therefore should be permitted. Handy & Harman will have the right to move for *partial* judgment in response to the Fourth Amended Complaint or for *partial* summary judgment pursuant to Fed. R. Civ. P. 56.[14] This Court will then be able to consider any such arguments based upon a complete understanding of the facts and after full briefing by the parties.

---

[14]     Summary judgment cannot be entered against individual claims by TI or Agere now because those claims will not have been formally asserted until the Court approves the Fourth Amended Complaint.

To cite just one example of how any other consideration of this question is premature, Handy & Harmon erroneously assumes that TI cannot recover any costs relating to "OU-1" because TI was not a signatory to the OU-1 Consent Decree. *See* Handy & Harmon Brief at 15. This is both factually and legally incorrect. The OU-2 Consent Decree (Exhibit "C" to Handy & Harmon motion), at ¶ 54, required TI and the other signatories to pay to the EPA $7,000,000 of EPA's "Past Response Costs." "Past Response Costs" were defined at ¶ 4 (emphasis added) as "*all* costs including but not limited to, direct and indirect costs that the United States paid *at or in connection with the Site* through July 31, 2000." The Consent Decree makes no distinction between nor places any limitation on OU-1 or OU-2 costs. Indeed, as the OU-1 remedy was constructed by EPA in 1997, and was operated by EPA until May 2000, TI reimbursed EPA for OU-1 costs. Finally, in the Complaint filed by the United States against the OU-2 signatories, the United States stated unequivocally that the signatories were liable under Sections 106 and 107 for the *Site*, not just for OU-2.

In sum, the addition of the names of the Agreement Group members to the caption of the proposed Fourth Amended Complaint is not "futile." That amendment should be permitted and the defendants' motions for summary judgment should be denied as moot.

B.      *Adding a claim under section 107(a) of CERCLA is not a "futile" amendment because of the uncertainty in the law created by* Cooper Industries.

The Supreme Court in *Cooper Industries* raised a number of questions regarding the circumstances under which a potentially responsible party may bring a CERCLA section 107 claim. These questions include whether a private party that is itself a potentially responsible party may pursue a section 107(a) action against other potentially responsible parties for joint and several liability, whether such a party may pursue a section 107 cost recovery action for some form of liability other than joint and several (*e.g.*, contribution), and whether there is any

judicially implied right of contribution under section 107(a) that survived the passage of section 113. Responding to the uncertainty created by *Cooper Industries*, the Agreement Group has moved to amend its complaint to add a section 107 claim.

Defendants oppose such an amendment on the basis of futility. In support of their futility argument, Defendants note that the Third Circuit has already addressed some of the questions raised by the *Cooper Industries* decision, and direct this Court to *New Castle County*, 111 F.3d at 1116 and *In re Reading*, 115 F.3d at 1111. This argument is premised on the incorrect assumption that the proposed claim seeks to hold them jointly and severally liable to the Agreement Group.

Initially, it is most important to note that defendants' arguments here directly contradict the arguments they make with respect to the Agreement Group's proposed addition of the names of its members to the caption of the complaint. Simply stated, the defendants argue that there is such a distinction between the members collectively as the "Agreement Group" and the members individually that the members are "new parties" asserting "new claims." The defendants then argue that the "Agreement Group" was neither a party to a section 106 or 107 action nor a "person who has resolved its liability to the United States" such that the "Agreement Group" cannot bring a section 113 claim under *Cooper Industries*. If there is such a distinction between the Agreement Group and its members, then the "Agreement Group" *is not a potentially responsible party under CERCLA*, and is therefore entitled to bring a section 107(a) claim.

That is, the Agreement Group wrote the checks to pay the contractors for the response actions at the Site. It therefore "incurred" those response costs. It did not, however, own or operate the Site, arrange for the disposal of hazardous substances that were disposed of at the Site, or transport substances to the Site for disposal. The Agreement Group is thus not a

"person" liable under section 107(a). Neither is the Agreement Group otherwise "responsible" for those response costs by, for example, signing a Consent Decree or other settlement agreement with EPA. The Agreement Group is thus not a "potentially responsible party" within the meaning of either *New Castle County* or *In re Reading*, and therefore qualifies as "any other person" entitled to recover "any other necessary costs of response" pursuant to section 107(a).

The point of this discussion is not so much to convince this Court that the Agreement Group, with or without the addition of the names of its members to the caption of the complaint, is entitled to bring a section 107(a) claim, but to highlight the absurdity of defendants' fundamental argument that whatever theoretical distinction there may be between the Agreement Group and its members should be outcome determinative of all possible CERCLA claims that have been or could be brought in this action by the Agreement Group, by its individual members, or by both together.

Moreover, there is good reason to question the validity of the *New Castle County* and *In re Reading* opinions. Those opinions predate by almost a decade the Supreme Court's decision in *Cooper Industries*. The Third Circuit now has an opportunity to reexamine these opinions in light of *Cooper Industries*. In *E.I. du Pont de Nemours & Co. v. United States*, 297 F. Supp. 2d 740 (D.N.J. 2003), the District of New Jersey held that no action for contribution may be brought under section 113(f) in the absence of a preceding section 106 or 107(a) action based on *Reading*. *Dupont* is now on appeal, so that the Third Circuit will be required to reconsider *Reading*.

Indeed, in the wake of *Cooper Industries*, some courts are already allowing potentially responsible parties to assert section 107 claims, including the Fifth Circuit in *Cooper Industries* itself. On remand from the Supreme Court, an En Banc Court for the Fifth Circuit in

*Cooper Industries* permitted an amendment seeking to add a section 107 claim, remanding the case to the district court with instructions to permit the plaintiff to amend its complaint to assert, free of any challenges of waiver or forfeiture but without prejudice to the defendant's other defenses, whatever statutory claims it was urging in light of the Supreme Court's decision. *See, also, Vine St. LLC v. Keeling*, Case No. 6:03-CV-223, 2005 U.S. Dist. LEXIS 4653 (E.D. Tx. Mar. 24, 2005) (finding as a matter of law a potentially responsible party seeking contribution for costs incurred in a voluntary cleanup able to state a claim pursuant to section 107(a)); *Metro. Water Reclamation Dist. of Greater Chicago v. Lake River Corp.*, No. 03 C 0754 (N.D. Ill. Apr. 12, 2005). In *Lake River*, the court allowed a claim made by a potentially responsible party to go forward on the basis of an implied right to contribution. In spite of strong precedent in the Seventh Circuit holding that contribution actions by and between potentially responsible parties are governed by section 113(f), *see Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d 761 (7th Cir. 1994), the *Lake River* court found that the Water Reclamation District, a potentially responsible party who voluntarily undertook cleanup efforts, could seek contribution from other responsible parties under section 107(a). A copy of this slip opinion is enclosed.

As previously briefed, another court in the Third Circuit has already granted leave to amend a complaint to add a section 107 claim on the basis of the *Cooper Industries* decision and the *DuPont* appeal. In *General Motor Corp. v. United States*, Civ. A. No. 01-CV-2201 (D.N.J. Mar. 2, 2005), the District of New Jersey, the very district that decided the *DuPont* case now on appeal, permitted an amendment seeking to add a section 107 claim. While giving serious consideration to concerns regarding futility, the court found that there was "simply not any harm in permitting the amendment until further instruction from the Court of Appeals in this complex area of federal law." Slip op. at 9-10, attached to the Memorandum in Support of

Motion for Leave to Amend Third Amended Complaint. The *General Motors* court also based its ruling on the fact that the party opposing amendment had not offered any prejudice to it resulting from the amendment adding the section 107 claim. Defendants here attempt to argue that they would be prejudiced by such an amendment. Defendants assert that the proposed fourth amended complaint containing a new section 107(a) claim might subject them to joint and several liability, that such liability would likely lead them to assert their own section 113 contribution claims, against Agere and TI, against other potentially responsible parties via third-party claims, and even possibly against each other as protective cross-claims, and that defendants would be prejudiced by the resulting additional pleading, related motion practice, and follow-up discovery. These arguments are entirely without merit.

First, defendants' arguments ignore the fact that the Agreement Group is expressly *not* bringing a claim for joint and several liability. Nowhere in Count III (CERCLA Section 107(a))[15] of the proposed amended complaint is such relief requested. Rather, Count III uses the language of contribution, and requests the same relief sought in every other prior pleading, that is, recovery from the defendants of the share of the Agreement Group's past and future response costs that this Court determines is equitable. The words "joint and several" are very intentionally nowhere to be found. The Agreement Group further represented in its Memorandum in Support of Motion for Leave to Amend Third Amended Complaint that it was not seeking joint and several liability from defendants. The defendants appear to have ignored this representation (and the proposed pleading) in order to create out of thin air their prejudice argument.

---

[15]    The proposed amended complaint contains two claims labeled Count III, a typographical error.

Second, defendants have already asserted their own section 113 contribution claims against each other as cross-claims, and, if this Court were to allow the amendment adding the individual group members as plaintiffs, defendants will also have asserted their own section 113 contribution counterclaims against the members of the Agreement Group. *See* Fifth Case Management Order, ¶ 1 ("Answers shall be deemed to raise cross-claims or counterclaims for contribution pursuant to CERCLA"). Defendants' arguments that an amendment adding a section 107 claim would force them to assert these already-asserted claims is utterly preposterous.

The Agreement Group is not asking this Court to go as far as courts went in *Vine St.* and *Lake River*. By its motion, the Agreement Group does not ask this Court to conclude that there is a viable cause of action under section 107 sufficient to survive motions to dismiss or for summary judgment. All the Agreement Group asks is that this Court permit amendment so that the Agreement Group may preserve for appeal any 107 claim the Supreme Court may ultimately determine is available. The Agreement Group does not want to be said to have waived that claim by not having asserted it in its complaint. For all of these reasons, this Court should allow the Agreement Group to amend its complaint to assert a section 107 claim.

C.   *The proposed amendment moots the cross-motions for summary judgment because those motions are made solely with respect to the Third Amended Complaint.*

The Moving Defendants and Handy & Harman claim entitlement to summary judgment only on the Agreement Group's current pleading.[16] Indeed, defendants tacitly concede that the addition of the Agreement Group members as plaintiffs would satisfy (and that addition

---

[16]   Handy & Harmon's argument concerning the "futility" of adding TI and Agere to the caption of the complaint does not seek judgment against TI or Agere on those proposed claims.

of the Section 107(a) claim, may ultimately satisfy) the requirements of CERCLA as newly-formulated in *Cooper Industries*. For all of the reasons set forth above, this Court should grant leave for the proposed amendment and hold that the amendment relates back. Defendants' motions for summary judgment will therefore be moot.

II.     *Defendants' Cross-Motions for Summary Judgment Should Be Denied Even Without the Proposed Amendment because the Agreement Group's Existing Claims are not Precluded by* Cooper Industries.

The defendants are not entitled to summary judgment even if leave to amend is denied, because the Agreement Group is not precluded from bringing its existing section 113 claim by the *Cooper Industries* opinion.

It is most important to read *Cooper Industries* in light of the basic principles of *stare decisis*. The principle of *stare decisis* provides that when a court "has laid down a principle of law as applicable to a certain state of facts, it will adhere to that principle, and apply it to all future cases, where facts are substantially the same." Black's Law Dictionary 1261 (5th ed. 1979). A court thus is bound only by the result reached by a superior court based upon the unique facts in that action and, at most, those portions of the opinion necessary to that result. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 66-67 (1996). Those portions of an opinion that do not embody the resolution or determination of the court, but instead go beyond the facts before that court are *obiter dicta* and are not binding in subsequent cases. *Id.; see also* Black's Law Dictionary, 408 (5th ed. 1979).

Plaintiff Aviall was a sole plaintiff seeking to recover response costs, arising out of a site that had never been the subject of a civil action. The Court held that Aviall could not assert section 113(f) claims because it did not comply with the following language:

> *Any person* may seek contribution from any other person who is
> liable or potentially liable under section 9607(a) of this title, during

> or following *any civil action* under section 9606 of this title or
> under section 9607(a) of this title.

42 U.S.C. § 9613(f)(1) (emphasis added); *see Cooper Industries*, 125 S. Ct. at 583. Because

Aviall was the only plaintiff, and because there had been no civil action whatsoever concerning

the subject site, the Supreme Court was not required to (and did not) discuss exactly what the

words "any person" and "during or following any civil action" might mean where a section

113(f) claim was brought after there *had been* a civil action relating to a site, or where such a

claim was brought by multiple plaintiffs, or by an unincorporated association of persons, some or

all of which *had been* parties to a civil action relating to a site. Indeed, the opinion is very

careful to state that the applicable language means that "contribution may only be sought subject

to the specified conditions, namely, 'during or following' a specified civil action," *id.* at 583, and

to note that questions raised by factual circumstances not before it remain open. *Id.* at 584, n. 5.

Nothing in *Cooper Industries*, then, resolves whether a section 113(f) claim may be maintained

in such circumstances. Stated another way, the Supreme Court *did not* hold that the person filing

a section 113(f) complaint had *itself* to have been a party to the civil action brought during or

prior to the filing of such complaint.

Indeed, section 113(f)(1) strongly suggests that a section 113(f) plaintiff *need not*

have been a party to such a prior action. Section 113(f)(1) uses the words "*any person* may seek

contribution ... during or following *any civil action*." 42 U.S.C. § 9613(f)(1) (emphasis added).

In sharp contrast, the alternative "contribution" provision in section 113 provides: "*A person*

who has resolved *its* liability to the United States ... in an administrative or judicially approved

settlement may seek contribution from any person who is not a party to *a settlement* referred to

in paragraph (2)." 42 U.S.C. § 9613(f)(B)(3) (emphasis added). The precise language in section

113(f)(B)(3) shows that Congress was quite capable of saying that only the person who had

entered into a specific settlement resolving that person's liability could bring an action. It must be inferred from Congress's use in section 113(f)(1) of the non-restrictive words "any person" and "any civil action" that persons *other than* the parties to the preceding civil action (as well as parties to the action) *are* entitled to bring a 113(f)(1) claim. The relevant language would otherwise need to be: "*A person* may seek contribution … during or following *a civil action* under section 9606 of this title or under section 9607(a) of this title *to which such person has been a party*."

The unincorporated association "the Agreement Group" is "any person" bringing a Section 113(f) claim to recover in contribution for response costs incurred at the Boarhead Farms Site "during or following" two civil actions concerning just such response costs. The Agreement Group's existing pleading thus satisfies the literal language of Section 113(f)(1). It is important to note that the *Cooper Industries* opinion was driven by the "clear meaning of the text." *Cooper Industries*, 125 S. Ct. at 584.

The Agreement Group's existing claims are not barred by *Cooper Industries* for another reason. Once again, the "Agreement Group" is simply the name used by the Agreement Group members to collectively remediate the Site and to collectively pursue their claims against the defendants here. The interests of the members are central to the liability and claims of the Agreement Group. Four of the five members *were parties* to at least one civil action concerning the Site that preceded the filing of this action. Thus, not only was this litigation initiated "during or following" a civil action relating to the Site, it was brought following such an action to which most of the Agreement Group members were parties. Nothing in *Cooper Industries* requires this Court to hold that the "Agreement Group" does not satisfy Section 113(f)(1) under those circumstances.

Finally, any reading of section 113(f) that would prohibit the members of the Agreement Group from doing just what they did here when faced with claims by the United States would be directly contrary to the fundamental CERCLA policy of fostering settlements among potentially responsible parties so that the United States, the PRPs themselves, and the court system are spared the costs of protracted and expensive litigation, and so that, instead, contaminated sites get cleaned up faster. Literally dozens of courts, including this Court in this action, have "long recognized a strong interest in promoting settlement, particularly in complex matters such as CERCLA claims." *Memorandum Order*, June 30, 2004, at 4. Section 113(f) itself was intended by Congress "to foster settlements." *Id.* at 5.

CERCLA worked here just as it was supposed to work. EPA targeted a limited number of PRPs, sending them general and special notice letters alleging the liability of the PRPs for Site response costs. First three (OU-1) and then four (OU-2) of the Agreement Group members settled those claims as part of ongoing joint defense efforts among themselves and other PRPs who were actively attempting to resolve the claims of the United States. The Agreement Group members then sought settlements with those PRPs and others that weren't initially targeted by the United States. Two such PRPs (Agere and TI) entered into a settlement for OU-1 and OU-2 costs. Those settlements were, by necessity, percentage settlements subject to later reallocation, based upon the limited extent of knowledge about the Site and about DeRewal Chemical Company's operation of the Site.[17] The three members of the Agreement Group who signed the OU-1 Consent Decree and the four who signed the OU-2 Consent Decree

---

[17]     As is most typical in Superfund matters such as this one, the Agreement Group members have agreed to preliminary and non-binding allocation of shares of responsibility *inter se*, and have agreed to reach a final allocation of those shares at a later time and not in this proceeding.

would not be able to enter into percentage "join the Group" settlements if none of the parties to such settlements (including the newly-settling party) could then pursue recalcitrant PRPs in contribution. Agere and TI are funding the Agreement Group's response costs with real dollars out of their pockets. They would not have entered into those settlements if they thought they had no right of recovery from other PRPs who have paid nothing to clean up the Site.

The same problem exists with respect to potential settlements the Agreement Group may make with one or more of the non-settling defendants here. Inherent in the right to sue under section 113(f) (or otherwise) is the right to settle the litigation on some fair basis. It may be that the liability of a non-settling defendant is so great that the only feasible settlement is one in which that defendant agrees to pay a percentage of all future costs to be incurred by the Agreement Group. Such settlements are very common in Superfund cases. This Court would dramatically reduce its flexibility in approving such settlements (and significantly increase the chance that this action will be tried to judgment) if it were to hold that parties to the OU-1 or OU-2 Consent Decrees could not enter into such settlements without running afoul of *Cooper Industries*.

For all of these reasons, even if this Court denies the Agreement Group's motion for leave to amend its complaint, it should rule that the Agreement Group as sole plaintiff may bring an action under section 113(f) based upon its existing pleading.

III.    *This Court Should Retain Jurisdiction Over the HSCA Claim because All Fact Discovery Has Been Completed on that Claim.*

Defendants argue that, having dismissed the Agreement Group's CERCLA claims, this Court should then dismiss the Agreement Group's state claims asserted under Pennsylvania's Hazardous Sites Cleanup Act, 35 Pa. Cons. Stat. §§ 6020.101 *et seq.* ("HSCA") over which this court has supplemental jurisdiction. This argument is understandably made

without any analysis whatsoever suggesting why this Court should dismiss claims that have been litigated for almost three years and that are, except for expert discovery, ready for trial.

The supplemental jurisdiction statute provides that, where a court dismisses a federal question claim, it may retain jurisdiction over pendent state law claims. *See* 28 U.S.C. § 1367(c) ("The district courts *may* decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction . . . .") (emphasis added). In considering whether to retain jurisdiction over pendent claims where the federal claim has been dismissed, courts should assess three factors: the extent to which retaining jurisdiction over the claims would serve judicial economy; fairness to the litigants; and the degree to which the pendent claims raise novel or unsettled issues of state law. The circumstances of this case strongly support the exercise of this court's discretion in favor of retaining jurisdiction over the pendent state law claims, should the federal CERCLA claims be dismissed.

The parties have spent over two years completing full fact discovery. Tens of thousands of pages of documents have been produced and dozens of witnesses have been deposed, many of them non-parties. The next and remaining phase of pre-trial preparation involves expert witnesses. The matter can then be prepared for trial. The HSCA statute was modeled closely after the CERLCA statute, such that many of HSCA's key provisions are identical or very similar to the CERCLA statute. Because of the similarity of the elements of proof for a contribution claim under HSCA and under CERCLA, the Agreement Group (and, presumably, the defendants) have been preparing their cases under both statutes concurrently, with virtually identical evidence.

Should this court dismiss the CERCLA claims, the resolution of the state law HSCA claims in the federal forum would be much more fair to all parties than remanding these pendent claims to state court. The parties in this federal case could move forward quickly on the state law claim, as fact discovery is completed and the only trial preparation remaining involves expert discovery. In contrast, were the court to decline to retain jurisdiction over the HSCA claims, the parties would have to begin the lengthy process of litigating these claims in state court.

Fairness is plainly the determinant factor here, given the advanced stage of the litigation. In *Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277, 1284-85 (3d Cir. 1993) (*quoting* David D. Siegel, *Practice Commentary*), in reviewing fairness as a factor to consider under § 1367(c), the Third Circuit cited the following commentary, which was appended to the statute: "[I]f the dismissal of the main claim occurs late in the action . . . knocking [the dependent claims] down with a belated rejection of supplemental jurisdiction may not be fair." The Agreement Group, who has expended millions of dollars cleaning up the Boarhead Superfund Site and is seeking to recover costs from responsible parties who chose not to participate voluntarily in the clean-up effort, would principally suffer from this additional delay in resolving liability. Because the resolution of the HSCA claims in this forum rather than state court would pose no hardship for the defendants, the balance of fairness is in favor of the court exercising its discretion to retain jurisdiction of the pendent claims.

In addition to ensuring fairness to the litigants, retaining jurisdiction over the HSCA claims would greatly serve judicial economy. Should this court dismiss the pendent state law claims, the parties would have to re-file and prepare the entire HSCA case for trial in front of another court. Numerous courts have recognized an interest in promoting judicial economy

when considering whether to retain jurisdiction over pendent state law claims. *See, e.g., Mauro v. S. New England Telecomms., Inc.*, 208 F.3d 384, 388 (2d Cir. 2000) ("Declining jurisdiction over the state-law claims in this case would have furthered neither fairness nor judicial efficiency . . . ."); *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 756 n.12 (5th Cir. 2001) ("[T]he district court did not abuse its discretion in deciding the claims on the merits and thus, in the interest of judicial economy, we will decide them rather than dismissing them to be pursued in state court."); *N.B.A. Credit Union, Inc. v. Hargrove*, 846 F. Supp. 387 (E.D. Pa. 1994) (declining to retain jurisdiction over state claim after court found federal claims not viable, based on consideration of judicial economy, convenience and fairness to the litigants).

One important factor affecting judicial economy is the extent to which the parties have already prepared for trial on the state law issues. *See Van Harken v. City of Chicago*, 103 F.3d 1346, 1354 (7th Cir. 1997), *cert. denied*, 520 U.S. 1241 (holding that presumption is in favor of dismissing state claim where federal claim falls out before trial and "there has been almost no discovery or other trial preparation"); *Taylor v. First of America Bank-Wayne*, 973 F.2d 1284, 1288 (6th Cir. 1992) (finding that district court properly retained jurisdiction of state law claims where case had been on federal docket for two years, discovery had been completed, parties had built a voluminous evidentiary record, and "remand could have wasted judicial resources and resulted in additional delay"). In stark contrast to the facts of *Van Harken* and similar those of *Taylor*, the parties in this case have concluded fact discovery and have engaged in significant trial preparation on the state and federal claims over the past two years. This court has become thoroughly familiar with the issues in the case through the pretrial process and motion practice. A state court judge would literally be starting from scratch, and would then have to deal with many of the rulings this Court has already made on identical or at least similar

legal issues. Retaining jurisdiction in order to resolve the HSCA claims in this federal forum would be in the best interests of conserving judicial resources.

Federal courts applying section (c) of the supplemental jurisdiction statute frequently consider whether the remaining state claims raise any novel or unsettled issues of state law. The pendent state law claims in this case do not raise any novel or unsettled issues of Pennsylvania state law. The plaintiffs have asserted a claim for defendants' contribution to response costs under section 702(a)(3) of HSCA. The contribution claim under this section of HSCA is very similar to the federal provisions in CERCLA and therefore the claim does not present any novel issues.[18]

---

[18]    One difference of note is HSCA's provision that, in allocating liability among the liable parties, "[t]he burden is on each party to show how liability should be allocated." 35 P.S. § 6020.705(b). Defendants argue in the various pending discovery motions that the Agreement Group has the burden of proof on allocation, and that they cannot decide what discovery to conduct until they learn the Agreement Group's contentions in that regard.

## CONCLUSION

For all the foregoing reasons, and in the interest of justice, the Agreement Group respectfully requests that this Court permit the filing of the proposed Fourth Amended Complaint, hold that the amended pleading relates back to the date of the initial complaint, and deny the motions for summary judgment of Moving Defendants and Handy & Harman.

Respectfully Submitted,

Ballard Spahr Andrews & Ingersoll, LLP
A Pennsylvania Limited Liability Partnership

Dated:  5 - 2 - 05                    By: _____
                                          Glenn A. Harris, Esquire
                                          Brian G. Glass, Esquire
                                          Anne K. Heidel, Esquire