TRENDS

ABA SECTION OF ENVIRONMENT, ENERGY, AND RESOURCES NEWSLETTER

March/April 2005
Volume 36, Number 4

# The March Hare, Mad Hatter and Alice return to Superfund: the implications of *Cooper Industries Inc. v. Aviall Services Inc.*

By Ira M. Gottlieb

"Then you should say what you mean," the March Hare went on. "I do," Alice hastily replied; "at least – at least I mean what I say – that's the same thing, you know." "Not the same thing a bit!" said the Hatter. "Why you might just as well say that 'I see what I eat' is the same thing as 'I eat what I see!' " "You might just as well say," added the March Hare, "that 'I like what I get' is the same thing as 'I get what I like!' "

When considering the implications of the Supreme Court's *Cooper Industries Inc. v. Aviall Services Inc.* opinion, 543 U.S.___, 125 S.Ct. 577 (2004), the March Hare's and Mad Hatter's admonition to Alice demonstrate why a literal reading of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA) § 113(f) may displace two decades of Superfund reality and practice by concluding that the statute "means what it says" without taking into account Superfund's landscape and history.

With the following words the Supreme Court turned the Superfund world upside down:

> Section 113(f)(1) [of CERCLA] specifies that a party may obtain contribution "during or following any civil action" under CERCLA § 106 or § 107(a). The issue we must decide is whether a private party who has not been sued under § 106 or § 107(a) may nevertheless obtain contribution under § 113(f)(1) from other liable parties. *We hold that it may not.*

125 S.Ct. at 580 (emphasis added).

The Court further explained that "SARA also created a separate express right of contribution [pursuant to] § 113(f)(3)(B) for '[a] person who has resolved its liability to the United States or a state for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement.' In short, after SARA, CERCLA provided for a right to cost recovery in certain circumstances, §107(a) and separate rights to contribution in other circumstances, §§ 113(f)(1), 113(f)(3)(B)." *Id.* at 581-82.

### Questions raised

The Court's landmark opinion raises myriad issues (some thought to be previously resolved) that lower courts and Superfund lawyers will consider for many years to come.

Among these questions are: (1) Do potentially responsible persons (PRPs) have a direct cause of action under CERCLA § 107 against other persons?, (2) Are "other persons" sued by private parties under CERCLA § 107 jointly and severally liable and is there an implied right to seek contribution? (3) Do CERCLA § 106 Unilateral Administrative Orders (UAOs) constitute "civil actions?" (4) How will the Environmental Protection Agency (EPA) and the Department of Justice (DOJ) respond to the Court's opinion?, (5) For purposes of CERCLA § 113(f)(3)(B), what constitutes a "settlement"?, (6) What mechanisms are left to pursue federal PRPs? and (7) How will the states react and will there be curative federal legislation?

Many more questions will arise as issues are analyzed and practical circumstances create live laboratories for application of the Court's opinion.

### The facts and history of *Aviall*

In 1981, Aviall Services (Aviall) acquired facilities in Texas from Cooper Industries (Cooper). Subsequently, following a directive letter from the Texas Natural Resources Commission, Aviall began remedial activities at the sites. Neither Texas nor EPA brought a civil action or issued orders against Aviall, nor did any of the parties enter a settlement regarding the sites.

In 1997, Aviall filed a cost recovery and contribution action against Cooper under CERCLA §§ 107 and 113. Both parties moved for summary judgment. Cooper argued that Aviall's contribution claim should be dismissed because under CERCLA § 113(f) Aviall was not the subject of a civil action by the government and was not cleaning up the sites as a result of a settlement. Cooper further asserted that Aviall was not an innocent party and therefore had no right to make a claim under CERCLA § 107.

The district court agreed with Cooper's CERCLA § 113(f) argument and dismissed Aviall's contribution claim. *Aviall Services Inc. v. Cooper Industries,* 2000 W.L. 31730 (N.D. Tex. 2000). A divided panel of the Fifth Circuit upheld the district court's ruling, 263 F.3d 134 (5th Cir. 2001), but *en banc* reversed and reinstated Aviall's contribution claim holding that its action was not precluded by the "during or following" phrase in CERCLA § 113(f)(1). 312 F.3d 667, *en banc* (5th Cir. 2002). The Supreme Court granted certiorari.124 S.Ct. 981 (2004).

The high court held that the plain terms of CERCLA § 113(f) do not permit contribution actions without the prerequisite existence of a CERCLA §§ 106 or 107 action or an administrative or judicially approved settlement. 125 S.Ct. at 580. Writing for the Court, Justice Thomas observed that the statute states that "[a]ny person *may* seek contribution . . . *during or following* any civil action . . . "

(Continued on page 14)



♻ Printed on recycled paper

Continued from page 1

## Aviall Services

under certain sections of CERCLA and that "[t]he natural meaning of this sentence is that contribution may only be sought subject to specified conditions, namely, 'during or following' a specified civil action." *Id.* at 583 (emphasis in original).

In the wake of the Supreme Court's holding, PRPs are confronted with a very different Superfund world than the one that existed previously.

### Aviall's implications

PRPs must now assess contribution claims to determine whether they are brought "during or following a civil action" or following an "administrative or judicially approved settlement." Plaintiff PRPs will need to evaluate whether they have properly asserted or should assert CERCLA § 107 claims. Conversely, defendant PRPs will need to assess whether to move to dismiss contribution claims.

The Supreme Court observed that the viability of CERCLA § 107 claims "may depend in part on the relationship between §§ 107 and 113. That relationship is a significant issue in its own right." 125 S.Ct. at 585. Thus, the Court concluded that Aviall's "§ 107 claim and the preliminary waiver question merit full consideration by the courts below." *Id.* Although the Court commented that prior opinions found no private cause of action under CERCLA § 107, the Court "left open" this question, as well as the related issues of implied contribution rights and joint and several liability between private parties under § 107. *Id.* at 586.

In the past, direct private causes of action have been rejected by a majority of circuit courts. Nonetheless, in view of the *Aviall* opinion, circuit courts may reverse direction and permit private party CERCLA § 107 actions. How the Fifth Circuit treats and resolves these issues may start a new chapter in Superfund litigation.

In another interesting twist, the U.S. solicitor general, who represents all agencies and departments of the federal government, including EPA, argued in favor of Cooper's position. Although the Court did not address contribution actions against federal PRPs, the implications of its decision on claims against federal PRPs are hard to miss. The federal government is a PRP at as many as 60,000 contaminated sites. *See* amicus curiae brief of Superfund Settlements Project, et al., at 17 (citing Superfund Reauthorization Hearings Before the Subcommittee on Water Resources and the Environment, 104th Cong., 1st Sess. 828, 834 (1995) and Federal Facilities Group, Improving Federal Facilities Cleanup at 17 (Oct. 1995)).

Estimates of total federal PRP liabilities range from $230 billion to $380 billion. *Id.* (citing Federal Facilities Group, Improving Federal Facilities Cleanup at 17 (Oct. 1995)). If federal PRPs are shielded from CERCLA § 113(f) contribution actions, other PRPs may have to pick up the tab for the government's share of cleanup costs at these sites. That may give federal PRPs a free ride and shift their liability onto the backs of the private sector.

### Civil actions, settlements and UAOs

The Court's ruling raises thorny issues concerning what constitutes "civil actions" and "settlements" that trigger contribution rights. Conceivably, the Court's ruling may lead to more litigation and less cooperation by PRPs who need to ensure that their contribution rights are protected or it may lead to greater cooperation between the government and PRPs toward the very same end; *i.e.*, to secure contribution rights.

It is hard to imagine that either EPA or DOJ welcome the prospect of growth in their civil dockets, particularly in cases where PRPs are otherwise willing to cooperate, but now, out of necessity, those same PRPs may await civil actions to ensure that their contribution rights are not adversely affected. Inasmuch as EPA and DOJ face resource issues, both may feel pressure to work with PRPs to resolve a full spectrum of issues and to enter consent decrees (CDs) or administrative orders on consent that achieve comprehensive global settlements, rather than leaving PRPs with no choice but to litigate to protect their contribution rights.

Another issue left unresolved by the Court's opinion is whether a CERCLA § 106 UAO constitutes a "civil action." Thus, PRPs and the government are left to struggle with the question of whether compliance with a UAO will be enough to permit PRPs to seek contribution against other "persons" not named in the order.

Oddly, in cases where PRPs fail to comply with UAOs and a government enforcement action follows, recalcitrant PRPs may be in a better position to protect their contribution rights than compliant PRPs whose very actions to avoid litigation and penalties may jeopardize their contribution claims. Certainly, such an outcome would be contrary to longstanding public policy to encourage cooperation and timely cleanups. Nonetheless, this is a plausible scenario in the topsy-turvy post-*Aviall* world.

UAOs do not usually require comprehensive response actions. Therefore, even if PRPs comply with UAOs and a UAO amounts to a civil action, compliance may be insufficient to protect contribution rights for further response actions. For example, if EPA issues a UAO for a removal action, compliance with such a UAO may be insufficient to cover contribution rights for the cost of further response actions.

> The Court's ruling raises thorny issues concerning what constitutes "civil actions" and "settlements" that trigger contribution rights.

The question of what is a "civil action" and what is a "settlement" will undoubtedly affect Superfund negotiations and litigation. PRPs and the government will need to sort through many issues and either globally settle or litigate them if PRPs' contribution claims are to be fully protected. Ironically, the government may now have more incentive to settle and enter CDs, while certain PRPs may find it necessary to litigate to safeguard contribution claims.

Finally, while some may seek a legislative solution thorough an amendment to CERCLA, given current Congressional priorities, such as tort reform and judicial nominations, such a legislative fix may be a long time in the making, if it occurs at all, leaving the states as possible battlegrounds for contribution and other cost recovery efforts.

---

*Ira M. Gottlieb is a partner with McCarter & English, LLP. This publication is not intended to provide legal advice. The views expressed in this article are those of its author and not McCarter & English, LLP, or its clients.*