## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BOARHEAD FARM AGREEMENT GROUP, :
                                 :
            Plaintiff,            :
                                 :
    v.                           :    Civil Action No. 02-3830
                                 :
ADVANCED ENVIRONMENTAL           :
TECHNOLOGY CORPORATION, ET AL.,  :
                                 :
            Defendants.          :

## REPLY BRIEF IN SUPPORT OF
## DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiff Boarhead Farm Agreement Group ("BFAG") has submitted a very lengthy Memorandum in Opposition to the moving Defendants' Cross-Motion for Summary Judgment (the "Opposition Memorandum"). With an overall cry of "Just not fair!" constantly ringing in the background, BFAG tosses out one desperate argument after another seeking to avoid dismissal of its case. BFAG's arguments range from hyper-technical rule interpretations, to suggestions that this Court ignore binding Third Circuit precedent, to allegedly relevant "policy" considerations.

BFAG's lengthy submission necessitates this reply, which addresses below each of BFAG's encyclopedia of arguments. The short answer is that all of the Plaintiff's positions lack merit and should be rejected, and the case as a whole should be dismissed.

## ARGUMENT

**I.**     **Pursuant to <u>Cooper Industries</u>, BFAG's Existing and Proposed
Section 113(f) Contribution Claims are Invalid as a Matter of Law.**

The Defendants' Cross-Motion set forth a straightforward reason why BFAG is not,

under any circumstances, a proper Section 113(f) contribution plaintiff, as confirmed by the

Supreme Court's decision in <u>Cooper Industries Inc. v. Aviall Services, Inc.</u>, 125 S. Ct. 577 (U.S.

2004).  Simply put, BFAG has never been subject to the necessary predicate civil action under

either Section 106 or 107(a) of CERCLA.  That fact bars BFAG's Section 113(f) contribution

claims, both it its existing Third Amended Complaint, and in BFAG's proposed Fourth Amended

Complaint.[1]

BFAG's Opposition Memorandum offers two "legal" arguments plus one "policy"

argument why the <u>Cooper Industries</u> case allegedly is distinguishable and not controlling, and

therefore why BFAG's Section 113(f) contribution claims should nonetheless be allowed to

proceed (Opp. Memo. at pp. 27-31).  All three arguments lack merit.

BFAG's first legal argument is that the universe of persons entitled to assert Section

113(f) contribution claims is **_not_** limited to those persons actually targeted in an underlying

Section 106 or 107(a) action.  Instead, pointing to "any person" language appearing in CERCLA

Section 113(f), BFAG argues that once a Section 106 or 107(a) claim has been asserted against

**_somebody_**, then the proverbial flood gates open, and **_any person in the world_** may assert a

Section 113(f) claim, regardless of whether the purported contribution plaintiff has itself been

sued in any underlying action (Opp. Memo. at pp. 27-29).

---

[1]   It also bars all proposed Section 113(f) contribution claims by BFAG member Agere, as well
as TI's proposed Section 113(f) contribution claims with respect to OU-1 costs.  The moving
Defendants join the motion and arguments in that regard advanced by co-defendant Handy &
Harman.

BFAG's argument lacks merit because it runs directly counter to the Supreme Court's holding in Cooper Industries.  An expressed reason why the Supreme Court rejected plaintiff Aviall's contribution claim was because ***Aviall*** had not been subjected to a Section 106 or 107(a) claim:  "Section 113(f)(1), 100 Stat. 1647, authorizes contribution claims only "during or following" a civil action under § 106 or § 107(a), and it is undisputed that ***Aviall*** has never been subject to such an action."  Cooper Industries, 125 S. Ct. at 584 (emphasis added).  Pointedly, the Supreme Court did not see any need in its above analysis to refute BFAG's proposed argument by writing, " . . . and it is undisputed that ***nobody*** has been subject to such an action."

BFAG's first argument also is refuted by a very rapidly growing body of unanimous case law.  Since the Cooper Industries opinion issued in December, 2004, so far one Court of Appeals and eight District Courts have had occasion to rule upon the validity of Section 113(f) contribution claims brought by parties who, like BFAG, have ***not*** been subject to an underlying Section 106 or 107(a) claim.  In every single case, the Courts have dismissed such claims.  The exact same result should obtain here.  See Syms v. Olin Corp., 2005 U.S. App. LEXIS 8885 (2d Cir. May 18, 2005); AMW Materials Testing, Inc. v. Town of Babylon, 348 F. Supp. 2d 4 (E.D. N.Y. Dec. 20, 2004); Elementis Chemicals, Inc. v. T.H. Agricultural and Nutrition, LLC, 2005 U.S. Dist. LEXIS 1404 (S.D. N.Y. Jan. 31, 2005); Mercury Mall Associates, Inc. v. Nick's Market, Inc., 2005 U.S. Dist. LEXIS 8004 (E.D. Va. Feb. 28, 2005); Pharmacia Corp. v. Clayton Chemical Acquisition LLC, 2005 U.S. Dist. LEXIS 5286 (S.D. Ill. Mar. 8, 2005); City of Waukesha v. Viacom Int'l. Inc., 362 F. Supp. 2d 1025 (E.D. Wis. Mar. 23, 2005); Vine St. LLC v. Keeling, 2005 U.S. Dist. LEXIS 4653 (E.D. Tex. Mar. 24, 2005); Metropolitan Water Reclamation Dist. of Greater Chicago v. Lake River Corp., 365 F. Supp. 2d 913 (N.D. Ill. Apr.

12, 2005); W.R. Grace & Co. v. Zotos Int'l., Inc., 2005 U.S. Dist. LEXIS 8755 (W.D. N.Y. May 3, 2005).

BFAG's second legal argument is that Cooper Industries involved what Plaintiff terms a "sole plaintiff" (Aviall Services, Inc., a corporation), whereas BFAG is a collection of members (an unincorporated association).  BFAG then argues that because "most" of BFAG's members have been subject to an underlying Section 106 or 107(a) civil action, Cooper Industries is distinguishable and BFAG remains a proper plaintiff to assert Section 113(f) contribution claims (Opp. Mem. at p. 29).

Again, the holding in Cooper Industries directly refutes BFAG's position.  BFAG here, like Aviall Services there, *is* the "sole plaintiff" in this case and *it* has never been subject to an underlying Section 106 or 107(a) claim.  *It* is therefore not a proper Section 113(f) plaintiff.  If BFAG's view were adopted instead, then parties not statutorily qualified to assert Section 113(f) contribution claims could easily sidestep the law as elucidated in Cooper Industries by joining together with one or more qualified persons to create some kind of fictional entity (corporation, partnership, trust, association, etc.), which would then be used as a "vehicle" to assert otherwise invalid contribution claims.  In point of fact, that is exactly what BFAG is attempting here, with its member Agere (who admittedly has not been sued in any underlying Section 106 or 107(a) action), constituting the perfect example.

In its final effort to sidestep Cooper Industries, BFAG resorts to a "policy" argument, asserting that barring BFAG from asserting a Section 113(f) contribution claim under these circumstances would frustrate CERCLA's aim of "promoting settlements" (Opp. Mem. at pp. 29-31).  That argument is completely off-the-mark.  First and foremost, whether it would be good "policy" to amend Section 113(f) to provide parties situated like BFAG with a contribution

remedy is solely a matter for Congressional debate and determination.  As one District Court

recently observed in rejecting similar post-<u>Cooper Industries</u> "policy" arguments, "this Court

lacks the authority to imply a cause of action where one does not exist simply to satisfy a policy

concern."  <u>Mercury Mall Associates</u>, <u>supra</u>, 2005 U.S. Dist. LEXIS 8004 at *16; <u>see also</u> <u>W.R.</u>

<u>Grace & Co. v. Zotos Int'l., Inc.</u>, <u>supra</u>, at *26 ("Grace suggests that [dismissal of its Section

113(f) contribution action] weakens the Congressional intent of encouraging private party

settlements and cleanups.  However, CERCLA's language as to the availability of contribution is

clear, and it is not this Court's role to substitute its judgment for that of Congress with regard to

the effectiveness of CERCLA's contribution provisions.").

Further, while as a general matter "promoting settlements" is certainly a worthwhile goal,

one could engage in a robust debate as to whether allowing a party standing in BFAG's shoes to

assert a Section 113(f) claim would, in fact, promote or hinder such a CERCLA "policy."  <u>See</u>

<u>generally</u>, Reynolds & Hsiao, <u>The Right of Contribution Under CERCLA After Cooper</u>

<u>Industries v. Aviall Services</u>, 18 Tulane Environmental Law Journal 339 (Summer 2005)

(arguing why strict application of the Supreme Court's decision in <u>Cooper Industries</u> enhances

the overall policy objectives of CERCLA, including the promotion of settlements).  Like

BFAG's self-interested view that the Defendants should be presumed liable, its similarly self-

interested view on "policy" is in no sense a valid reason for this Court to fashion a remedy not

created by Congress, and therefore not appearing in the text of the governing statute.

Thus, all three of Plaintiff BFAG's Section 113(f) counter-arguments are unavailing, and

under a straightforward application of statutory language and <u>Cooper Industries</u>, BFAG's

existing Section 113(f) contribution claims must be dismissed, and its proposed Section 113(f)

contribution claims must be rejected as well.

**II.    The Proposed New Section 113(f) Contribution Claims to be
       Asserted by BFAG's Members are Barred by the Applicable
       <u>Three-Year Limitations Period Established by CERCLA.</u>**

It is undisputed that under the limitations period established in CERCLA Section

113(g)(3), "[n]o action for contribution . . . may be commenced more than 3 years after . . .

entry of a judicially approved settlement with respect to such costs or damages."  It also is

undisputed that the OU-1 and OU-2 settlements related to the Boarhead Farm Site were

judicially approved on September 28, 2000 and March 14, 2002 respectively, in both cases more

than 3 years ago.  <u>See</u> Third Amended Complaint at ¶¶ 17, 20.  Thus, as BFAG (or more

accurately, its members) clearly recognize, unless:  (i) the members' proposed new Section

113(f) contribution claims are allowed to "relate back" to the filing of BFAG's original

Complaint; or (ii) unless CERCLA's 3-year limitations period is somehow "tolled," it

necessarily follows that the members' proposed new Section 113(f) contribution claims are time-

barred.

In an effort to satisfy one or both of these necessary conditions, BFAG's Opposition

Memorandum advances two "relation back" arguments, and one "tolling" argument.  None carry

the day.

First, BFAG argues that the more lenient FRCP Rule 15(c)(2) applies here, not Rule

15(c)(3), and therefore no predicate showing of "mistake" is even necessary for the "relation

back" doctrine to apply (Opp. Mem. at pp. 8-12).  As alleged support for its position, BFAG

pulls out all the stops, espousing a hyper-technical textual reading of Rule 15(c), referring to

Advisory Committee notes, citing to two Illinois District Court cases, proffering dicta in a 10-

year old Sixth Circuit opinion, and attempting to distinguish the Third Circuit's opinion in

<u>Nelson v. County of Allegheny</u>, 60 F.3d 1010, 1014 (3d Cir. 1995).

The short answer to all of BFAG's spilled ink is that here, in the Third Circuit, <u>Nelson</u> and other binding authorities require use of Rule 15(c)(3) analysis whenever a Motion to Amend involves the proposed addition of new party plaintiffs.  <u>Nelson</u>, 60 F.3d 1010; <u>see also</u> <u>Garvin v. City of Philadelphia</u>, 354 F.3d 215, 222 (3d Cir. 2003); <u>Heinglein v. Colt Indust. Operating Corp.</u>, 91 Fed. Appx. 762, 765 (3d Cir. 2004) (specifically rejecting as "not the law in this Circuit" any argument that the Second Circuit's alternative use of Rule 15(c)(2) should apply, and reaffirming that Third Circuit precedent requires that "all *three* conditions specified in Rule 15(c )(3) must be satisfied").

The Rule 15(c)(3) approach was recognized and followed by this Honorable Court in its recent opinion in <u>Allen v. Nat'l. R.R. Passenger Corp.</u>, 2004 U.S. Dist. LEXIS 24846 (E.D. Pa. Dec. 7, 2004).  None of BFAG's convoluted arguments provide any basis for this Court suddenly to change its mind, or suddenly to view <u>Nelson</u>, <u>Garvin</u>, <u>Heinglein</u> and other appellate decisions as something other than what they are -- binding Third Circuit precedents.  In short, the Third Circuit and this District Court have consistently applied Rule 15(c)(3) to proposed amendments adding new plaintiffs, and BFAG's various strained discussions (whether the Rule applies by analogy or by strict construction, directly or through Advisory Committee notes), are nothing more than irrelevant distractions.

Second, BFAG argues that even assuming Rule 15(c)(3) does apply, BFAG did in fact make a "mistake in legal judgment or form," thus satisfying the necessary third condition of the Rule (Opp. Mem. at pp. 15-17).  That argument is a double red herring.  In the first place, if BFAG could be said to have made any kind of "mistake" at all (which Defendants refute below), at most it would have been BFAG's ***original*** attempt, in its ***original*** Complaint, to pursue a group contribution claim through BFAG, rather than via individual contribution claims asserted

by the actual persons subjected to the underlying CERCLA liability.  Right at that initial stage,

however, the Defendants filed a Rule 12(b)(6) Motion to Dismiss that could hardly have been

clearer in pointing out that alleged "mistake," and inviting BFAG to fix it.  Instead, BFAG's

remarkable response was to swear up and down, in both a Second Amended Complaint and in its

Opposition Brief, that no, it truly was BFAG, and not the individual members, who had incurred

the predicate response costs at issue, and therefore BFAG truly was the proper "real party in

interest" and the one and only substantively-proper contribution plaintiff.  That deliberate, eyes-

wide-open decision surely "cut off" any assumed *original* mistake by BFAG, and replaced it

with what can only be viewed as a knowing choice, <u>i.e.</u>, a strategic decision bearing all the

hallmarks of a "non-mistake."[2]

     Red herring number two is BFAG's argument that it made any kind of understandable

"mistake" in not foreseeing the outcome of <u>Cooper Industries</u>.  At best that argument constitutes

an after-the-fact excuse made with 20-20 hindsight, and strains credulity.  Thus, Plaintiff claims

to have mistakenly "believed that it could appropriately sue as a group instead of as its individual

members," and that "[t]he Agreement Group simply could not have foreseen the radical change

in CERCLA jurisprudence set forth in <u>Cooper Industries</u>" (Opp. Mem. at p. 16).  In order to

make its purported "mistake" appear reasonable, Plaintiff self-servingly describes <u>Cooper</u>

<u>Industries</u> as "revolutionary" and as a "shocking development." <u>Id.</u>

---

[2]  BFAG's unequivocal prior position regarding *its* "real party in interest" status also estops
Plaintiff's last ditch effort to now argue the opposite, and then use FRCP Rule 17(a) to engineer
yet another results-oriented flip-flop (Opp. Mem. at p. 11 n.6).  In any event, the Third Circuit
has recognized that "relation back" under Rule 17(a) is subject to the very same "mistake"
showing as is required under the parallel Rule 15(a) analysis.  <u>Nelson</u>, 60 F.3d at 1014, n.8.

As discussed above, the Supreme Court held in <u>Cooper Industries</u> that "Section 113(f)(1) . . . authorizes contribution claims only 'during or following' a civil action under § 106 or § 107(a), and it is undisputed that Aviall has never been subject to such an action. Aviall therefore has no § 113(f)(1) claim." <u>Cooper Industries</u>, 125 S. Ct. at 584. That holding did not announce a new rule of law. The Court simply held that Section 113(f) means what it says. <u>Cooper Industries</u> may be many things; however, shocking, revolutionary and unforeseeable it was not.[3]

<u>Cooper Industries'</u> straightforward holding, combined with BFAG's entirely strategic response to the Defendants' Rule 12(b)(6) Motion to Dismiss, knocks out Plaintiff's hindsight argument that its alleged misunderstanding of Section 113(f) was a reasonable "mistake." The Third Circuit and the Advisory Committee to Fed. R. Civ. P. 15 have noted that substitution of parties "was reserved for situations where an 'understandable mistake has been made.' " <u>See Gutierrez v. Johnson & Johnson</u>, 2005 U.S. Dist. LEXIS 6106 at *8 (D. N.J. Apr. 11, 2005) (quoting <u>Nelson v. County of Allegheny</u>, <u>supra</u>, 60 F.3d at 1014). It is hard to see how the "mistake" alleged by the Plaintiff -- namely, Plaintiff's knowing disregard of the clear text in Section 113(f) -- can be characterized as "understandable" when the Supreme Court did nothing more than recognize the obvious -- that Section 113(f) means what it has always said. This is hardly the stuff of an understandable "error in form" which application of Rule 15(c)(3) requires.

---

[3]   As a concrete example of foreseeability, Defendant Techalloy's Thirteenth Affirmative Defense, filed pre-<u>Cooper Industries</u> in July, 2004, asserted in relevant part:

> "Plaintiff's CERCLA contribution claims are barred, in whole or in part, to the extent that they have not been asserted during or following a civil action under Section 9606 or 9607(a) of CERCLA, as is statutorily required under Section 9613(f) of CERCLA."

Plaintiff's argument, if accepted, also would establish an unfortunate precedent. It would permit litigants to ignore clear statutory time limitations with impunity, but then seek to file amended pleadings including previously unfiled claims under the self-serving guise of claiming a "misinterpretation" of an unambiguous statutory requirement. The Supreme Court in Cooper Industries did not purport to clarify an ambiguous statutory provision. The straightforward outcome of Cooper Industries was far more predictable than not, and any failure by Plaintiff to so recognize cannot properly be characterized as an understandable "legal mistake."

Thus, as the Third Circuit "'made clear in Nelson . . . although the relation-back rule ameliorates the effect of statutes of limitations,' when there has been no mistake, late-filing plaintiffs cannot 'take advantage of the rule to perform an end-run around the statute of limitations that bars their claims' " Nelson, 60 F.3d at 1015 (quoted in Heinglein v. Colt Indust., supra, 91 Fed. App. at 765). That is exactly what the Plaintiff is trying to do here, which this Court should not allow. Plaintiff here did not "mistakenly" fail to join the individual BFAG members as plaintiffs. Instead, it chose not to do so in the face of the Defendants' Rule 12(b)(6) Motion to Dismiss by deliberately asserting (and inconsistently averring) that BFAG -- and ***not*** the individual group members -- was the only proper contribution Plaintiff. Plaintiff's very loud silence when invited to explain its documented flip-flops on this issue can only be construed as an implied admission that what Plaintiff did here was to make a deliberate choice, not an understandable mistake.

Notably, ***not one sentence*** in BFAG's entire 36-page Opposition Memorandum even attempts to account to this Court for the eyebrow-raising flip-flops contained in BFAG's succession of sworn pleadings. BFAG's silence speaks volumes. The Plaintiff's decision to file and continue this case through the fictional vehicle of BFAG was at all times grounded in a

- 10 -

calculated, eyes-wide-open, legal strategy, never more so than when BFAG was responding to

the Defendants' earlier Rule 12(b)(6) Motion to Dismiss.  Now, out of necessity, BFAG and its

members propose to fall on the only remaining available sword, claiming that they really just

made "a mistake" in legal judgment and form, rather than a deliberate strategic choice.  BFAG

has made lots of things in this case -- most notably, flip-flopping factual averments as the need

arose -- but a bona fide "mistake" is certainly not one of them.

Finally, in a backup "tolling" argument, BFAG argues that at least the members' OU-2

response cost contribution claims are not time-barred.  In particular, BFAG points out that it filed

its Motion to Amend (but not its proposed Fourth Amended Complaint), on March 11, 2005, just

three days before expiration of the 3-year CERCLA limitations deadline related to the March 14,

2002 OU-2 settlement.  Citing to federal common law, BFAG then argues that its Motion to

Amend acted to "toll" the 3-year CERCLA limitations period applicable to OU-2 response costs

(Opp. Mem. at pp. 17-19).

Plaintiff's contention incorrectly assumes, however, that the 3-year time limitation

governing the assertion of Section 113(f) contribution claims (contained in Section 113(g)(3) of

CERCLA), is in the nature of a statute of limitations which is capable of being tolled.  Analysis

shows that Plaintiff's assumption is mistaken.  Plaintiff overlooks the critical difference between

statutes of limitations and jurisdictional time limitations and, in effect, improperly asks this

Court to re-write CERCLA's express statutory provisions to insert a non-existent "tolling"

provision unintended by Congress.

Federal courts expressly recognize that not all statutory time limitation periods operate as

statutes of limitations, and that instead some time limitation periods are "jurisdictional" limits

that cannot be modified by tolling.  See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d

1380, 1387 (3d Cir. 1994). To determine whether a specific time limitation is a statute of limitations or a jurisdictional bar, courts consider the language of the statute first. <u>Miller v. New Jersey State Dept. of Corrections</u>, 145 F.3d 616, 617-18 (3d Cir. 1998). If that does not provide clear guidance, then Courts further consider Congressional intent as expressed in the overall structure of the statute at issue. <u>Houghton v. Ins. Crime Prevention Inst.</u>, 795 F.2d 322, 325 (3d Cir. 1986).

Consistent with these statutory construction principles, and specifically in the context of CERCLA actions, the Supreme Court held in <u>Cooper Industries</u> that where the terms of Section 113(f) of CERCLA are clear, there is no need "to consult the purpose of CERCLA at all." <u>Cooper Industries</u>, 125 S. Ct. at 584. This principle directly applies here, in that the time limitations language contained in Section 113(g)(3) explicitly provides that: **"No action for contribution for any response costs or damages may be commenced more than three years after . . . entry of a judicially approved settlement with respect to such costs or damages"** 42 U.S.C. § 9613(g)(3) (emphasis added). This unequivocal language -- **"No action . . . may be commenced"** -- expresses clear Congressional intent to bar putative plaintiffs from bringing contribution claims more than three years after the applicable triggering event, and to preclude expansion of that concrete limitation period through tolling. There is no ambiguity.

The language of Section 113(g)(3) is characteristic of a jurisdictional statute of repose in that the events which trigger its set limitation period are discrete and independent, and are not presented in terms of any "accrual" of a cause of action. Notably absent are the words "statute of limitations," which nowhere appear in Section 113(g)(3). Moreover, the plain language of Section 113(g)(3) is consistent with other statutes of repose and jurisdictional provisions. As the

Tenth Circuit explained in <u>Alexander v. Beech Aircraft Corp.</u>, 952 F.2d 1215, 1218 n. 2 (10th Cir. 1991):

> A statute of repose typically bars the right to bring an action after the lapse of a specified period, unrelated to the time when the claim accrued. The bar instead is tied to an independent event, such as delivery of the product to a purchaser in the stream of commerce for a products liability statute.

<u>See also</u> <u>Specialty Restaurants Corp. v. Bucher</u>, 967 F.2d 1179, 1182 (8th Cir. 1992) ("[a] statute of repose bars plaintiffs from bringing suits after a specified number of years after the occurrence of a particular event without regard to the date of accrual of the cause of action."); <u>Eddings v. Volkswagenwerk, A.G.</u>, 835 F.2d 1369, 1371 n. 2 (11th Cir. 1988).

The classification of Section 113(g)(3) as setting forth a limitation of repose is strongly supported by <u>Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson</u>, 501 U.S. 350, 363 (1991), in which the Supreme Court held that the time limitation period for asserting Section 10(b) claims under the 1934 Securities Exchange Act is a statute of repose that is "fundamentally inconsistent" with tolling. The limitation period there, 15 U.S.C. § 77(m), is strikingly similar to Section 113(g)(3) of CERCLA. Section 77(m) states that **"[n]o action shall be maintained to enforce any liability created under section 77k or 77l (2) of this title . . ."** (emphasis added). This is virtually identical to the language of Section 113(g)(3) of CERCLA: Compare "***[n]o action for contribution . . . may be commenced***" (Section 113(g)(3)) with "***[n]o action shall be maintained . . .***" (Section 77(m)). Each provision uses mandatory terms. Each is a jurisdictional limit. Neither can be tolled. The Plaintiff's suggestion to the contrary is mistaken.

The limitation periods in statutes of repose are "jurisdictional" in nature in that they are not subject to extension by virtue of equitable considerations such as the discovery rule or the equitable tolling doctrine. See <u>Lampf</u>, <u>supra</u>, 501 U.S. at 363 (finding that the period of repose

- 13 -

contemplated by the limitation period in question was "fundamentally inconsistent" with tolling); see also Cada v. Baxter Healthcare Corp., 920 F.2d 446, 451 (7th Cir. 1990), cert. denied, 501 U.S. 1261 (1991) ("neither tolling doctrine applies to statutes of repose . . . . [T]heir very purpose is to set an outer limit unaffected by what the plaintiff knows. Neither applies to a jurisdictional statute of limitations") (citations omitted).

Alternatively, if the plain "may not commence" language that Congress used in CERCLA is not deemed clear enough, then this Court need look no further than the structure of provisions immediately surrounding Section 113(g)(3) to confirm that Congress did not intend for the 3-year limitation on contribution claims to be capable of tolling. The Third Circuit has quoted the Supreme Court's view that where Congress has enunciated an exception to a general prohibition in a time limitation provision, "additional exceptions are not to be implied in the absence of evidence of a contrary legislative intent." Houghton, supra, 795 F.2d at 325) (quoting Andrus v. Glover Construction Co., 446 U.S. 608, 616-17 (1980)). To determine legislative intent in the Houghton case, the Third Circuit analyzed other provisions of the same statute, and concluded:

> If we construe the statute as permitting us to imply a discovery exception to circumstances other than the one which Congress explicitly set forth, we would be rendering superfluous the discovery exception which Congress did set forth. This we may not do. **The Supreme Court has stated that where Congress has enunciated an exception to a general prohibition, 'additional exceptions are not to be implied in the absence of evidence of a contrary legislative intent.'**

Id. (emphasis added).

In sharp contrast to Section 113(g)(3), other provisions of CERCLA also expressly authorize the application of equitable principles to other limitation periods contained therein. For example, Section 113(g)(1)(A) provides a statutory "discovery" rule for natural resource

damage claims, requiring that such claims be asserted within three years after "[t]he date of discovery of the loss and its connection with the release in question."  42 U.S.C.A. § 9613(g)(1)(A).  Section 113(g)(6), expressly tolls the contribution limitation periods in actions brought by minors and incompetents.  42 U.S.C.A. § 9613(g)(6).  Similarly, Section 309(b)(4)(A) expressly sets forth another statutory "discovery" rule in connection with the limitation periods for personal injury and property damage actions, providing that such limitation periods begin to run on the date "the plaintiff knew (or reasonably should have known) that the personal injury or property damages . . . were caused or contributed to by the hazardous substance or pollutant or contaminant concerned."  42 U.S.C. § 9658(b)(4)(A).

These contrasting provisions demonstrate that Congress obviously knew how, when, and where to include in CERCLA tolling provisions that it intended should apply, some of which are found literally on the same page, i.e., within other subsections of Section 113 itself.  The contrasting absence of any tolling provision in Section 113(g)(3), coupled with the fact that Section 113(g)(3) is expressed in mandatory terms possessing all of the characteristics of a statute of repose, leads to the conclusion that Congress did not intend for any kind of tolling doctrine to be available to extend the mandatory time limitation period for bringing Section 113(f) contribution claims.[4]  Plaintiff's advocacy to the contrary -- without any discussion or support -- lacks merit.  In short, this Court ought not to accept Plaintiff's argument because it would effectively re-write Section 113(g)(3) and create by implication a tolling exception that Congress expressly chose not to insert into CERCLA.

---

[4]  Under the above analysis, application of any "relation back" concept under FRCP Rule 15(c)(3) also is inappropriate, affording yet another reason why BFAG's Rule 15(c)(3) arguments are unavailing.

**III.    The Attempted Assertion of "Implied"
Contribution Claims under Section 107(a) of
<u>CERCLA is Futile and Should be Rejected.</u>**

In addition to express contribution claims under Section 113(f), BFAG and its members

also seek to assert new "implied" contribution claim under Section 107(a) of CERCLA.

However, as previously set forth in the Defendants' Cross-Motion, binding Third Circuit cases

hold that Section 113(f) is the ***only*** proper avenue under CERCLA for asserting contribution

claims, and therefore no "implied" contribution claims under Section 107(a) are available.  <u>See</u>

<u>New Castle County v. Halliburton NUS Corp.</u>, 111 F.3d 1116, 1121 (3d Cir. 1997) (holding in

relevant part that PRPs may not assert contribution claims under Section 107(a)); <u>see also</u> <u>In re</u>

<u>Reading, Co.</u>, 115 F.3d 1111, 1120 (3d Cir. 1997) (holding that Congress' 1986 creation of

Section 113(f) replaced any prior judicially created right to contribution under Section 107(a)).

In an Appellee's Brief recently filed before the Third Circuit (copy included here as

<u>Attachment A</u>), the United States itself forcefully argues exactly that same position, explicating

at great length why no "implied" right of contribution whatsoever exists under CERCLA Section

107(a).  <u>See</u> <u>Attachment A</u> at pp. 24-50.  To avoid unnecessary repetition, the Defendants

incorporate herein by reference the United States' cogent analysis in that regard.

BFAG's Opposition Memorandum nonetheless attempts to make several arguments why

BFAG and its members should be allowed to pursue "implied" contribution claims under Section

107(a).  First, BFAG argues that following the decision in <u>Cooper Industries</u>, "there is good

reason to question the validity of the <u>New Castle County</u> and <u>In re Reading</u> opinions" (Opp.

Mem. at p. 23).  However, quite to the contrary, there is no good reason whatsoever for this

District Court to "question the validity" of those binding Third Circuit authorities.  The Supreme

Court expressly declined to overrule or modify any of the existing Court of Appeals decisions

which previously rejected the assertion of "implied" Section 107(a) contribution claims,

including specifically the Third Circuit's opinion in New Castle County.  See Cooper Industries,

125 S. Ct. at 584-86.  If anything, the Supreme Court in dicta quite pointedly "telegraphed" its

view that pre-SARA cases finding such an "implied" contribution right in CERCLA's text were

"*debatable* in light of two decisions of this Court that refused to recognize implied or common-

law rights to contribution in other federal statutes."  Id. at 587 (emphasis added); see also Brief

of Appellee United States (Attachment A), at pp. 28-29.

Further, not only is there no "good reason" for this Court to question the continuing

validity of New Castle County and In re Reading, there also is no appropriate jurisprudential

basis to do so.  Respectfully, unless and until the Third Circuit alters these precedents, this Court

is bound to follow them.  For that very reason, the District Court in Elementis Chemicals

recently rejected the exact same argument that BFAG advances here.  There, as here, the plaintiff

argued that the Supreme Court's Cooper Industries opinion "call[ed] into question" an otherwise

binding Second Circuit case (Bedford Affiliates) which had denied the availability of Section

107(a) claims.  The District Court appropriately disagreed:

> "The problem with this assertion is that the Supreme Court in Cooper
> Industries explicitly "withheld judgment" regarding . . . whether a PRP
> such as Aviall 'may pursue a § 107 cost recovery action for some form of
> liability other than joint and several,' 125 S. Ct. at 585, and 'declined to
> decide' whether a PRP such as Aviall 'has an implied right of contribution
> under § 107,' 125 S. Ct. at 586.  It would be inappropriate for this Court to
> contradict the Supreme Court and declare that the Supreme Court had
> effectively done something which it specifically said it had not done --
> namely, overruled Bedford Affiliates."

Elementis Chemicals, 2005 U.S. Dist. LEXIS 1404 at *32-33.  Joining its counterpart in the

Second Circuit, two District Courts in the Fourth and Seventh Circuits recently reached the exact

same conclusion, for the exact same reasons.  See Mercury Mall Associates, 2005 U.S. Dist.

- 17 -

LEXIS at *24-28 (rejecting plaintiff's plea to recognize an "implied" right of contribution claim under CERCLA Section 107(a) because the District Court was bound by the Fourth Circuit's contrary holding in Pneumo Abex, which the Supreme Court specifically declined to re-consider in its Cooper Industries opinion); City of Waukesha, 2005 U.S. Dist. LEXIS at *7-8 (rejecting proposed amendment to add "implied" contribution claim under Section 107(a) because such an amendment would be futile in light of binding Seventh Circuit cases to the contrary). See also, Brief of Appellee United States (Attachment A), at pp. 18-19 (arguing that existing Court of Appeals decisions rejecting "implied" contribution rights under Section 107(a) "are not overruled and remain binding precedent").

BFAG does correctly note that several District Courts since Cooper Industries have allowed plaintiffs to at least allege Section 107(a) contribution claims, citing to a "not for publication" opinion in General Motor Corp. v. United States, Civ. A. No. 01-CV-2201 (D. N.J. Mar. 2, 2005), an opinion from a Fifth Circuit district court (Vine St. LLC v. Keeling, 2005 U.S. Dist. LEXIS 4653 (E.D. Tex. Mar. 24, 2005);) and an opinion from a Seventh Circuit district court (Metropolitan Water Reclamation Dist. of Greater Chicago v. Lake River Corp., 365 F. Supp. 2d 413 (N.D. Ill. Apr. 12, 2005)). An additional post-Cooper Industries opinion from a second Fifth Circuit district court (not cited by BFAG), also has allowed assertion of a Section 107(a) claim. Pharmacia Corp. v. Clayton Chemical, 2005 U.S. Dist LEXIS 5286 (S.D. Ill. Mar. 8, 2005).

The short answer to these four citations is "So what?" None of those cases offer a persuasive reason why this Court should, or could, disregard the Third Circuit's binding decisions in New Castle County and In re Reading. In sharp contrast with the situation at hand here, the Vine Street case turned upon that District Court's conclusion that "[t]he Fifth Circuit

has <u>not</u> directly addressed the issue of precisely who may bring a claim under Section 107(a)."

<u>Vine Street</u>, 2005 U.S. Dist. LEXIS 4653 at *19-20 (emphasis added). That conclusion directly

distinguishes it from the situation before this Court. Similarly, the permissive outcome of the

two cases from the Illinois District Courts appears to stem from the same logic -- that the

assertion of such "implied" contribution claims is at least "not forestalled" by existing Seventh

Circuit precedent. <u>See</u>, <u>e.g.</u>, <u>Metropolitan Water Reclamation Dist. of Greater Chicago</u>, 2005

U.S. Dist. LEXIS at *7-8. Thus, all of the non-Third Circuit authorities are distinguishable as

involving appellate jurisdictions where the Section 107(a) question settled here remains unsettled

there.[5]

The last two arguments under which BFAG and its members seek to assert "implied"

Section 107(a) claims are even farther wide of the mark. First, BFAG and its members argue

that they will be "prejudiced" without such a remedy. As noted at the outset, that perspective is

entirely self-interested and unproven. More important, it is irrelevant. If there is no "implied"

contribution right under the text of Section 107(a) and binding Third Circuit cases, then there is

---

[5]  As previously noted (<u>see</u> Brief in Support of Defendants' Cross-Motion at n.4), the New Jersey District Court in <u>General Motors Corp.</u> inconsistently allowed an amendment by a PRP to add a Section 107(a) claim, despite the District Court's recognition that such a claim "would be futile under controlling Third Circuit law." <u>General Motors Corp.</u> slip op. at 9. With all due respect, that decision was in error. Further, it appears that Judge Cavanaugh adopted that "wait and see" position because he thought that the outcome of the current appeal before the Third Circuit (the <u>Du Pont</u> case) **might** address CERCLA Section 107(a) issues. However, it is just as likely that the Court of Appeals **will not** address such issues, choosing instead to remand the case, exactly the course of action urged by the Appellee United States. <u>See</u> Brief of Appellee United States (<u>Attachment A</u>), at pp. 16-24. If the Third Circuit agrees with the United States, then a remand without any guidance regarding Section 107(a) will occur. Such an outcome would match the prudent approach recently taken by the Second Circuit under nearly identical circumstances. <u>See</u> <u>Syms v. Olin Corporation</u>, <u>supra</u>, 2005 U.S. App. LEXIS 8885 at *29 (declining to reconsider the Second Circuit's prior Section 107(a) holding in <u>Bedford Affiliates</u> and remanding instead).

- 19 -

no such right, and any complaint about perceived "prejudice" belongs in Washington before Congress, not in Philadelphia before this Court.

Second, BFAG and its members argue that leave to amend to add a Section 107(a) "implied" contribution claim should be granted specifically so that those parties may "preserve [the issue] for appeal," and not "be said to have waived that claim by not having asserted it in its complaint" (Opp. Mem. at p. 26). This final argument is entirely specious. The issue is as equally well preserved for appeal by the denial of BFAG's Motion to Amend, as it is by the granting of BFAG's Motion to Amend.

IV.    **BFAG's Remaining Pendent Claim under State Law**
       **Should be Dismissed Pursuant to 28 U.S.C. § 1367(c).**

Last, BFAG argues that even if this Court dismisses its federal CERCLA claims, its remaining contribution claims under the Pennsylvania Hazardous Sites Cleanup Act, 35 Pa. Cons. Stat. §§6020.101 et seq. ("HSCA") should not be dismissed. BFAG argues that under the federal supplemental jurisdiction statute, 28 U.S.C. §§ 1367(c)(1) and (3), such dismissal would be unfair to the litigants and would not serve judicial economy, and also would be inappropriate because no "novel" issues are presented by BFAG's state HSCA claim.

As discussed below, BFAG is clearly wrong. On the first two issues, BFAG offers no Third Circuit support for its position except for one case, which is wholly inapposite to the facts of this case. As to whether any "novel" issues of law exist under HSCA, there could be many, and the Pennsylvania courts ought to be given the liberty to decide in the first instance how state HSCA contribution provisions should be interpreted and applied.

Under 28 U.S.C. §1367, a District Court may exercise its discretion to decline to retain supplemental jurisdiction over a state claim when all federal claims have been dismissed. The

decision on whether to dismiss is left to the sound discretion of the District Court, subject to review by the Appellate Court under an abuse of discretion standard.  Annulli v. Panikkar, 200 F. 3d 189 (3d Cir. 1999).  Unless there are issues of judicial economy, convenience and fairness to the litigants, the District Court should *not* retain jurisdiction because, *inter alia,* a plaintiff has no right to pendant jurisdiction.  United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). Significantly, even when the above factors are present, the District Court should decline to exercise pendant jurisdiction if there are "novel" issues of state law.  Id

Recently, in Angeloni v. The Diocese of Scranton, 2005 U.S. App. LEXIS 4536 (3d Cir. Mar. 17, 2005), the Third Circuit held that:

> Pendant jurisdiction is a doctrine of discretion, not of plaintiff's right (citations omitted) . . .  And as we have stated, **when a federal claim can be, or has been, dismissed on summary judgment, "the Court should ordinarily refrain from exercising [supplemental] jurisdiction in the absence of extraordinary circumstances"** Tully v. Mott Supermarkets, Inc. 540 F.2d 187, 196, (3d Cir. 1976); see also Univ. of Md. v. Peat, Marwick, Main & Co., 96 F.2d 1534, 1540 (3d Cir. 1993).

Id at *4 (emphasis added).  Similarly, in Lucas v. Township of Bethel, 2005 U.S. App. LEXIS 8584 (3d Cir. May 12, 1005), the Third Circuit observed that when original jurisdiction claims are dismissed before trial, the District Court *must* decline to exercise jurisdiction over pendant state claims unless there is *an affirmative justification* for doing so.

BFAG has failed to provide any credible affirmative justification supporting this Court's retention of jurisdiction upon dismissal of BFAG's federal claims.  BFAG first argues that the parties have spent over two years "completing" fact discovery.  To the contrary, fact discovery is *not* completed and the Defendants strongly disagree with BFAG's characterization of the procedural status of this case.  There are numerous motions pending before this Court requesting

- 21 -

discovery extensions and other related relief because BFAG has failed, *inter alia*, fully to answer discovery directed to it regarding many issues.  Most specifically, despite purporting to be a contribution plaintiff bearing the usual burden of proof, BFAG continues to refuse to state what it believes each party's allocated share of response costs should be and the factual basis for its contentions.

Because BFAG bears the burden of proof under CERCLA in any kind of contribution action, this information is critical.  Further, despite footnote 18 on page 35 of BFAG's Opposition Memorandum (asserting that HSCA places the burden on all parties to determine how liability should be allocated), BFAG still has the initial burden to show that it has paid more than its allocated fair share.  35 Pa. Stat. 6020.705(c)(3).  Thus, contrary to BFAG's self-serving position, fact discovery in this matter is far from over.

Notwithstanding our disagreement with respect to the procedural status of this case, BFAG's argument, when reduced to its bare elements, is simply that roughly two years of fact discovery has taken place and judicial economy and fairness suggest that this Court should retain supplemental jurisdiction over the remaining state claim.  BFAG relies on <u>Growth Horizons, Inc. v. Delaware County</u>, 983 F.2d 1277, 1284-85 (3d Cir. 1993), to support its contention that it is unfair to dismiss state claims under 28 U.S.C. 1367(c) when such dismissal occurs "late" in the action (Opp. Mem. at p. 33).  BFAG's reliance on <u>Horizon</u> is misplaced, however, because dismissal of the state claims there did not occur until ***after*** trial.  That is clearly distinguishable from the instant case.  Here, not only is fact discovery not complete, no expert discovery has occurred, substantive motions for summary judgment lay far in the future, and an actual trial date remains somewhere well over the horizon.  Under these circumstances, the <u>Horizon</u> case is not instructive in this matter at all.

By contrast, the Third Circuit considered issues very similar to this case in <u>Annulli</u>, where it affirmed the District Court's dismissal of pendant state claims on the eve of trial. Specifically, in <u>Annulli</u>, the plaintiff made arguments almost identical to those advanced by BFAG in this case.  Annulli argued that the pendant state claims in that action should not be dismissed because there had been 2 years of litigation; 15 pages of Court dockets, 1,800 pages of deposition testimony, and 2,800 pages of discovery documents.  The Third Circuit, in affirming the District Court's dismissal decision, observed that while the plaintiff had spent a great deal of time engaged in discovery, he would be able to use that evidence to pursue his state law claims in state court.  As a result, the Third Circuit held that the judicial economy and convenience factors were not an issue.  <u>Annulli</u>, <u>supra</u>, 200 F.3d at 189.  Likewise, on the issue of fairness, the Third Circuit held that plaintiff knowingly risked dismissal of the pendant state claims when he elected to file his suit in federal court and invoked the Court's discretionary supplemental jurisdiction.  The Appellate Court also found that comity generally favors allowing state courts to hear state claims.  For all of the reasons set forth in <u>Annulli</u>, this Court also should exercise its discretion to determine that there are no legitimate fairness or judicial economy issues to justify retaining jurisdiction over BFAG's sole remaining state law claim.

Finally, a number of "novel" questions under Pennsylvania law potentially are presented by BFAG's remaining claim under HSCA.  Currently there are no Pennsylvania opinions addressing how state courts will interpret the impact, if any, of <u>Cooper Industries</u> on the arguably analogous contribution language contained in HSCA.  Further, HSCA contribution remedies may be inconsistent with CERCLA remedies, raising potentially thorny issues of preemption.  It also is unclear whether BFAG and/or any of its members entered into the predicate "administrative or judicially approved settlement with the Pennsylvania Department of Environmental Protection"

required under HSCA.  Finally, HSCA's provisions combined with Pennsylvania procedural

rules may raise their own set of time limitations issues bearing on the timeliness of BFAG's

alleged HSCA claim.

For all these reasons, and consistent with the federal supplemental jurisdiction statute,

Defendants respectfully submit that this Court should exercise its discretion to defer to the

Pennsylvania state courts as to whether and how a HSCA contribution claim may proceed under

these circumstances.  Accordingly, BFAG's sole remaining statutory contribution claim under

HSCA also should be dismissed.

## **CONCLUSION**

The cross-moving Defendants respectfully request entry of summary judgment in their

favor, denial of BFAG's Motion to Amend, and dismissal of BFAG's remaining pendent claim.


Respectfully submitted,


*Andrew P. Foster*

May 31, 2005                                    _____
                                               Andrew P. Foster
                                               DRINKER BIDDLE & REATH LLP
                                               One Logan Square
                                               18th and Cherry Streets
                                               Philadelphia, PA  19103

                                               Counsel for Rahns Specialty Metals, Inc.,
                                               Techalloy Company, Inc. and Thomas &
                                               Betts Corporation (and, for purposes of the
                                               Cross-Motion only, on behalf of moving
                                               Defendants)

## <u>CERTIFICATE OF SERVICE</u>

I Andrew P. Foster, hereby certify that on May 31, 2005, I caused a true and correct copy

of the foregoing:

**REPLY BRIEF IN SUPPORT OF
DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

to be electronically filed through the ECF system and served as indicated below:

**<u>BY EMAIL and FIRST-CLASS MAIL:</u>**

### *Boarhead Farm Agreement Group*

Glenn A. Harris, Esquire
Ballard Spahr Andrews &
 Ingersoll, LLP
Plaza 1000 – Suite 500
Main Street
Voorhees, NJ  08043=4636
(856) 761-3440
(856) 761-9001 (Fax)
harrusg@ballardspahr.com

### *Advanced Environmental Technology Corp.*

Thomas W. Sabino, Esq.
Wolff & Samson
One Boland Drive
West Orange, New Jersey 07052
Phone:  (973) 740-0500
Fax:  (973) 740-1407
Email:  tsabino@wolfffsamson.com

### *Ashland, Inc.*

Richard C. Biedrzycki, Esq.
Phelan, Pettit & Biedrzycki
Suite 1600
The North American Building, 121 South Broad Street
Philadelphia, Pennsylvania 19107
Phone:  (215) 546-0500
Fax:  (215) 546-9444
Email:  rbiedrzycki@pp-b.com

- 25 -

### *Carpenter Technology Corporation*

Lynn Wright, Esq.
Edwards & Angell
750 Lexington Avenue
New York, NY 10022
Phone:  212-756-0215
Fax:  888-325-9169
email:  lwright@ealaw.com

### *Flexible Circuits*

A. Nicole Friant, Esq.
Seth Cooley, Esq.
Duane Morris
One Liberty Place
Philadelphia, Pennsylvania  19103-7396
Phone:  (215) 979-1818
Fax:  (215) 979-1020
e-mail:  anfriant@duanemorris.com

### *Handy & Harman Tube Company*

Melissa Flax, Esq.
Carella, Byrne, Bain, Gilfillian, Cecchi,
    Stewart & Olstein, P.C.
Five Becker Farm Road
Roseland, New Jersey  07068-1739
Phone:  973-994-1700
Fax:  973-994-1744
e-mail:  mflax@carellabyrne.com

***Merit Metals Products Corp.***

Stephen P. Chawaga, Esq.
Monteverde, McAlee & Hurd
One Penn Center at Suburban Station
Suite 1500
1617 John F. Kennedy Boulevard
Philadelphia, PA  19103-1815
Phone:  215-557-2900
Fax:  215-557-2990
e-mail:  schawaga@monteverde.com

***NRM Investment Co.***

Edward Fackenthal, Esq.
Henderson, Weitherill, O'Hey & Horsey
902 One Montgomery Plaza
P.O. Box 751
Norristown, PA  19404
Phone:  610-279-3370
Fax:  610-279-0696
e-mail:  edwardfackenthal@cs.com

*Andrew P. Foster*
Andrew P. Foster