-17-

law exception to the rule that an appellate court will not consider issues not raised

below. Although legal developments culminating in the Supreme Court's decision

may have clarified pre-existing assumptions concerning the prerequisites for a

valid Section 113(f)(1) contribution action, that development simply means that the

district court correctly held that DuPont's Section 113(f) claim is not viable. That

the intervening Supreme Court decision dooms DuPont's claim for contribution

under Section 113(f) does not, however, provide warrant for raising entirely new

claims on appeal. *Cf. United States v. Washington*, 12 F.3d 1128, 1139 (D.C. Cir.

1994) (supervening decision doctrine allows consideration of waived issues when

the supervening decision has changed the law in appellant's favor).

    *Salvation Army* considered a theory that plaintiff had asserted in its

complaint and never withdrawn, yet had largely ignored until a Supreme Court

decision rendered while the case was on appeal provided "direct support" for the

revived theory.  919 F.2d at 185-186, 196. There are critical differences between

that case and this one.[5]  First, although a Section 107(a) claim appeared in

---

[5]    The other cases on which DuPont relies (Br. 20) are also distinguishable.  In
*Empagran S.A. v. F. Hoffman-LaRouche, Ltd.*, 388 F. 3d 337, 339, 345 (D.C. Cir.
2004), the D.C. Circuit decided to consider an alternative theory expressly left
open by the Supreme Court's decision vacating the court of appeals' judgment in
that case because the Supreme Court suggested it would be appropriate for the
court of appeals to decide an open, alternative claim appellants had pled and raised
before the district court and before the court of appeals. *Snaido v. Bank Austria,*

-18-

DuPont's complaint, shortly thereafter DuPont voluntarily dismissed that claim, thus formally removing it from the complaint and case. PA92.

Second, *Cooper* marks no change in the law with respect to the Section 107(a)(4)(B) or federal common law claims that DuPont now seeks to raise for the first time on appeal. *Cooper* did not address the availability of a federal common law claim for contribution at all. Even though the plaintiff in *Cooper* had pled both Section 107 and Section 113 as the basis for contribution, the Supreme Court in *Cooper* expressly declined to take up or decide whether a stand-alone contribution claim under Section 107 is viable because the issue had not been addressed by the courts below, was beyond the question presented, and had not been briefed. 125 S. Ct. at 585-586.[9]

The Supreme Court also expressly declined to consider whether this Court's and the other nine courts of appeals' holdings that a PRP cannot sue another PRP

---

378 F.3d 210, 212-13 (2d Cir. 2004), was also a case on remand from the Supreme Court. Although the Second Circuit considered an alternative theory raised for the first time on remand from the Supreme Court, the court of appeals summarily rejected the alternative claim.

[9] The Supreme Court declined to decide whether the plaintiff had waived any free-standing Section 107 claim, leaving that issue to be decided on remand. 125 S. Ct. at 584-585. Contrary to DuPont's suggestion (Br. 19 n.3), there is no open question of waiver here. DuPont dismissed the Section 107(a) claim it initially pled; it is not even clear whether that claim sought contribution or imposition of joint and several liability.

-19-

for contribution under Section 107(a)(4)(B) are correct. 125 S. Ct. at 585, 586.

Thus, those decisions are not overruled and remain binding precedent. *See*

*Wauksesha v. Viacom International* Inc., __ F. Supp.2d __, 2005 WL 712423 (E.D.

Wis. March 23, 2005); *Elementis Chemicals Inc. v. TH Agriculture and Nutrition,*

LLC, 2005 WL 236488 (S.D. N.Y. Jan. 31, 2005); *AMW Materials Testing, Inc. v.*

*Town of Babylon*, 348 F. Supp.2d 4 (E.D. N.Y. 2004); *cf. Young v. United States,*

394 F.3d 858, 862-863 (10th Cir. 2005) (assuming in <u>dicta</u> that decision remains

binding).[2/]

Moreover, neither the outcome nor the analysis in *Cooper* calls those

decisions into question. Contrary to DuPont's suggestion (Br. 45-49), the appellate

decisions that PRPs may not bring contribution claims under Section 107(a)(4)(B)

did not turn on an assumption that a Section 113(f) contribution claim could be

---

[2/]    But see *General Motors Corp. v. United States*, 2005 WL 548266 (D. N.J.
March 2, 2005) (stating ample reasons exist to conclude that granting leave to
amend complaint to assert a contribution claim under Section 107 would be futile
under controlling law, but allowing amendment because question might be
revisited by the Third Circuit); *Metropolitan Water Reclamation Dist. v. Lake
River* Corp., No. 03C0754 (N.D. Ill. April 12, 2005) (unpublished decision
attached in addendum); *Vine Street v. Keeling*, 2005 WL 675786 (E.D. Tex. March
24, 2005) (holding that PRP can bring a claim against another PRP under Section
107(a) even though it may not state a claim for relief under Section 113(f)). That
decision provides little analysis and the Fifth Circuit is not among the courts of
appeals that have held that a contribution action must be brought under Section
113, not 107; thus, the question appears open in that circuit.

-20-

initiated in the absence of a Section 106 or 107 civil action or a Section

113(f)(3)(B) settlement.  Thus, *Cooper* provides no basis for overruling prior

Circuit precedent.

Finally, DuPont had ample opportunity and reason to raise in the district

court the Section 107(a)(4)(B) and federal common law claims it now advances.

DuPont suggests (Br. 19) that it reasonably abandoned its Section 107(a) claim

because the law in this Circuit was clear that it could maintain a contribution action

under Section 113(f)(1) in the absence of a pending or completed civil action under

Section 106 or 107.  In fact, it was not.  Significantly, before the district court

entered a final appealable judgment in this case, the lower court decisions in

*Cooper* and in this and other cases made it apparent that the viability of DuPont's

Section 113(f) claim was very much in doubt.[8]  In contrast to the current

suggestion that the law was settled that it could bring its action under Section

113(f), DuPont told the district court in the context of asking for a Rule 54(b)

---

[8]    Before the district court entered final judgment in this case, a district court
and panel of the court of appeals had decided in *Cooper* that a claim for
contribution could <u>not</u> be brought under Section 113(f)(1) unless the party seeking
contribution was subject to a pending or prior Section 106 or 107 action; the en
banc court had reversed; and the Supreme Court had granted certiorari. *Aviall
Services, Inc. v. Cooper Industries, Inc.*, 2000 WL 31730 (N.D. Tex. Jan. 31,
2001), aff'd by the panel, 263 F.3d 134 (5th Cir. 2001), rev'd by the en banc court,
312 F.3d 667 (5th Cir. 2002), cert. granted, 540 U.S. 1099 (2004), rev'd, 125 S. Ct.
577 (2004) .

-21-

judgment or for certification under 28 U.S.C. 1292(b) that this case involved a "novel issue" and that "the issue regarding when and under what circumstances a contribution claim lies pursuant to CERCLA Section 113(f) had not been definitively addressed by the Third Circuit." SA66, 70.

DuPont also had reasonable opportunities, that it declined to pursue, to present its new theories for contribution in district court. For example, after the district court issued the interlocutory order in December 2003 correctly interpreting Section 113(f)(1), DuPont could have sought to amend its complaint to advance a different claim or theory of liability. The United States urged that DuPont either amend its complaint or suffer dismissal of its claims with respect to the other 14 sites. SA102; PA231. The United States alternatively suggested that the district court proceedings in this case be stayed pending Supreme Court review in *Cooper*. SA87-88. A stay would have provided the district court an opportunity to consider in the first instance a request to amend the complaint and *Cooper*'s impact on the case.

DuPont did not seek to amend its complaint and affirmatively opposed a stay of proceedings in the district court pending the outcome in *Cooper*. SA 95-96; PA233. Thus, DuPont deliberately chose to forego raising alternative theories and forged ahead with only a Section 113(f) contribution claim.

-22-

C. DuPont's other reasons for urging an exception to the rule against raising

issues for the first time on appeal are not compelling. – DuPont suggests (Br. 15)

that this Court should consider the new claims because they are correct on the

merits.  While "there are circumstances in which a federal appellate court is

justified in resolving an issue not passed on below, as where the proper resolution

is beyond any doubt," *Singleton*, 428 U.S. at 121, this is not one of them.  As

explained in Section II below, DuPont is not correct on the merits.  Moreover, ten

courts of appeals have uniformly held that a private PRP cannot bring a

contribution action against another PRP under Section 107(a)(4)(B).

DuPont also suggests (Br. 17-18) that consideration of its new claims is

appropriate because "implicit" in the district court's "analysis" is an interpretation

that a viable contribution claim preserved by the savings clause of Section

113(f)(1) cannot arise under Section 107(a)(4)(B).  While the district court opinion

discusses the savings clause in Section 113(f)(1) and opines that an action brought

pursuant to that provision would have to meet the traditional common law

understanding of contribution (PA29-38), this discussion is dicta and, in any event,

does not explicitly address a contribution claim brought under Section

107(a)(4)(B).  The rule against raising new claims on appeal "is particularly apt

when dealing with an appeal from a grant of summary judgment, because the

-23-

material facts are not in dispute and the trial judge considers only opposing legal theories." *Tele-Communications, Inc. v. Commissioner*, 104 F.3d 1229, 1232-33 (10th Cir.1997). DuPont cannot circumvent the rule requiring it to raise its arguments in the trial court by suggesting that in granting summary judgment the district court "implicitly" rejected a claim DuPont never raised.

Finally, DuPont argues (Br. 18-19) that this Court should decide its new claims because they involve purely legal issues. While the issues may be purely legal, the effect of their resolution on this case is unclear because DuPont simultaneously argues (Br. 58-59) that it can meet the Section 113(f) prerequisites at unspecified sites. In any event, the general rule requiring issues to be raised in district court, rather than for the first time on appeal, is not limited to factual issues. *E.g.*, *Young*, 394 F.3d at 861 n.2. Moreover, this Court has expressed more willingness to decide the merits of a new legal issue when it is advanced as a basis for affirmance, rather than reversal. *See Altman v. Altman*, 653 F.2d 755, (3d Cir. 1981); *cf. Casson Corp. v. Ingersoll-Rand Co.*, 622 F.2d 672, 680 (3d Cir. 1980) (we "have held on numerous occasions that a trial court should not be reversed on grounds that were never urged or argued in the court below"). [2]

---

[2]    In the only published majority opinion cited by DuPont for this argument (Br. 19), this Court resolved a legal issue that provided an alternative ground for affirmance. *See In re Ben Franklin Hotel Assocs.*, 186 F.3d 301, 306 (3d Cir.

-24-

In sum, there are no exceptional circumstances that justify this Court's consideration of DuPont's claims raised for the first time on appeal.  Accordingly, this Court should not consider the merits of these claims.

II

## A PRP MAY NOT BRING A CONTRIBUTION ACTION AGAINST ANOTHER PRP UNDER SECTION 107(a)(4)(B) OR FEDERAL COMMON LAW THEREBY AVOIDING THE PRECONDITIONS FOR A CONTRIBUTION CLAIM UNDER SECTION 113(f)

A.  Standard of review. – Because DuPont did not raise the Section 107 and federal common law claims below and the district court did not address them, this Court's review of these issues is necessarily plenary.  Statutory interpretation is a question of law reviewed de novo.  *Daniel S. v. Scranton School Dist.*, 230 F.3d 90, 97 (3d Cir. 2000).

B.  Contribution claims may be brought under CERCLA only when the prerequisites set forth in Sections 113(f)(1) or 113(f)(3) are met. – DuPont's claim against the United States is properly characterized as one for contribution and thus within the ambit of Section 113(f).  "[T]he term 'contribution' is a standard legal term that refers to a claim 'by and between jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make.'"

_____

1999).

-25-

*New Castle County*, 111 F.3d at 1121 (quoting *United Techs. Corp.*, 33 F.3d at 99, quoting *Akzo Coatings*, 30 F.3d at 764).[19] This and other courts of appeal have concluded that a CERCLA claim by a PRP against another PRP is necessarily for contribution.   *See New Castle County*, 111 F.3d at 1120; *Matter of Reading*, 115 F.3d at 1121; *Pinal Creek Group*, 118 F.3d at 1303 (and cases cited therein).

"[A] right to contribution [under federal law] may arise in either of two ways: first, through the affirmative creation of a right of action by Congress, either expressly or by clear implication; or, second, through the power of federal courts to fashion a federal common law of contribution." *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 638 (1981).  There is no question that Congress expressly created a right to contribution under CERCLA.  As its plain language indicates, Section 113(f) is concerned with contribution and expressly confirms the existence of such right.  However, Section 113(f) also expressly imposes preconditions that must be satisfied to bring suit under Section 113(f).  The question raised by DuPont is whether Congress created and preserved a contribution remedy under Section 107(a)(4)(B), independent of Section 113(f), that allows a PRP to initiate a contribution action under CERCLA in the absence of

---

[19]    See also *Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp.*, 153 F.3d at 350-351 (looking to traditional concept of contribution); *Colorado & Eastern R.R.*, 50 F.3d at 1536 (citing Restatement (Second) of Torts § 886A (1979)).

-26-

a Section 106 or 107(a) civil action or settlement with a State or federal

government.

CERCLA is properly interpreted to limit a PRP to seeking contribution in

the manner authorized by Section 113(f). Sections 107(a)(1)-(4)(B) and Section

113 should be read in conjunction. See cases cited nn.2, 3 *supra*; see also *King v.*

*St. Vincent's Hosp.*, 502 U.S. 215, 221(1991) (congressional enactments should be

construed in light of the "the cardinal rule that a statute is to be read as a whole").

While Section 107(a)(4)(B)'s reference to "any other person" is broad enough to

render a PRP liable for another PRP's response costs, Section 107(a)(4)(B) does

not describe what form that liability should take. Section 113 addresses the issue

by expressly recognizing a right of contribution and providing the details as to

when and under what circumstances a PRP may initiate and maintain an action in

contribution under CERCLA against another PRP. Thus, as this and nine other

courts of appeals have held, after the addition of Section 113 by SARA, a

CERCLA contribution action is governed by Section 113. *See Matter of Reading*,

115 F.3d at 1118-1121; *New Castle County*, 111 F.3d at 1122; cases cited *supra* at

n.3. As we elaborate below, this interpretation is compelled by principles

governing statutory construction and implication of private remedies, and the

historical background and legislative history leading to Section 113(f)'s enactment.

-27-

1. Section 107(a)(4)(B) does not expressly confer a right to bring a contribution claim independent of Section 113. – DuPont suggests (Br. 25-27) that a right in contribution expressly arises from the language of Section 107(a)(4)(B) providing that an owner, operator, and "any person" [who arranges, accepts, or transports hazardous wastes] "shall be liable" for "any other necessary costs of response incurred by any other person consistent with the national contingency plan." While this language describes liable parties, there is no express mention of contribution. *See Matter of Reading*, 115 F.3d at 1118 (recognizing that Section 107(a)(4)(B) lacks any express mechanism by which one party could recover from another for paying more than its pro rata share of cleanup costs).[1] Congress spoke to the right of contribution in Section 113. Thus, it is only when Section 107(a)(4)(B) and Section 113(f) are read together, that an express right to contribution becomes manifest. *See New Castle County*, 111 F.3d at 1122.

The only authority DuPont cites (Br. 26) in support of the suggestion that Section 107 provides an express right of contribution, independent of Section 113(f), is a dissenting opinion in *Key Tronic Corp. v. United States*, 511 U.S. 809,

_____

[1]    The conclusion that Section 107 does not provide an express right to contribution is confirmed by the 1980 legislative history: Congress considered contribution provisions but rejected them prior to passage of Section 107. See 126 Cong. Rec. 30,909 (Nov. 24, 1980); 126 Cong. Rec. 26,780-26,784 (Sept. 23, 1980).

-28-

822 (1994).<u>12/</u> This is hardly persuasive since the majority in *Key Tronic* stated in

<u>dicta</u> that Section 107 does <u>not</u> expressly provide private parties with a right of

contribution.<u>13/</u>

    2. <u>There is no implied right to a Section 107(a)(4)(B) stand-alone</u>

<u>contribution action</u>. – Alternatively, DuPont contends that Section 107(a)(4)(B)

creates, and the savings clause in Section 113(f)(1) preserves, an implied private

right of contribution that allows it to bring a contribution remedy against another

———————————

<u>12/</u>    Moreover, the dissenting opinion states only that Section 107 expressly creates a "right of action." It does not state it is a right of action for contribution and does not address what limitations or preconditions might govern any contribution action under Section 107.

<u>13/</u>    The majority observed that Section 107

        merely says that "A shall be liable" without revealing *to whom* A is liable. Sections 104 and 106 plainly indicate that the parties described in §107 are liable to the Government. The statute thus expressly identifies the Government as a potential plaintiff and only impliedly identifies private parties as the hypothetical B in §107 litigation. That §107 imposes liability on A for costs incurred "by any other person" *implies* – but does not expressly command – that A may have a claim for contribution against those treated as joint tortfeasors.

511 U.S. at 818 n. 11 (emphasis in original). In *Cooper*, the Supreme Court majority stated that the question of a stand-alone Section 107 contribution action should not be decided on the basis of this dictum and noted that the passage had not classified the right between joint tortfeasors as one for cost recovery or contribution. 125 S. Ct. at 585-586.

-29-

PRP at any time. In *Key Tronic*, 511 U.S. 818, and again in *Cooper*, 125 S. Ct. at 586, the Court called attention to the fact that it had visited the subject of implied rights of contribution before, citing *Texas Industries*, 451 U.S. at 638-647, and *Northwest Airlines, Inc. v. Transport Workers*, 451 U.S. 77, 90-99 (1981). In both instances, the Court declined to find implied rights of contribution. *Cooper* also stated that pre-SARA cases indicating that Section 107 created an implied right of contribution were "debatable" in light of *Texas Industries* and *Northwest Airlines*. 125 S. Ct. at 581.

Ultimately the question here is whether, after enactment of Section 113(f), Congress intended that CERCLA Section 107(a)(4)(B) provide a PRP an implied right to bring a contribution claim when the preconditions for contribution expressly set forth in Section 113(f) are not met. 451 U.S. at 91. Factors relevant to this inquiry are the language of the statute itself, its legislative history, the underlying purpose and structure of the statutory scheme, and the likelihood that Congress intended to supersede or to supplement existing remedies. *Northwest Airlines*, 451 U.S. at 91. These factors compel rejection of DuPont's theory that Section 107(a)(4)(B) provides an implied contribution right that is not subject to the preconditions for contribution prescribed by Section 113(f)(1) and (f)(3)(B).

-30-

a. The text of the statute does not support an implied right of contribution that would allow a contribution action without meeting the express preconditions set forth in Section 113(f)(1) and 113(f)(3)(B). – DuPont argues (Br. 28-29) that the language of Section 107(a)(4)(B) supports the implication of a private right to contribution in the absence of a prior or pending CERCLA civil action or Section 113(f)(3)(B) settlement.   However, the existence of a provision dictating the contours of a contribution remedy, combined with the absence of any express contribution right in Section 107, weighs heavily against the recognition of an implied right of contribution under Section 107(a)(4)(B) that is not subject to the express limitations on contribution provided by Section 113(f).

The Supreme Court has warned against the judicial implication of private rights of action not specifically authorized by Congress.  *See, e.g., Alexander v. Sandoval*, 532 U.S. 275, 287-288 (2001); *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 67 & n.3 (2001); *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283-284 (2002).   The Court has instructed  that "[i]n the absence of strong indicia of a contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate."  *Middlesex County Sewerage Authority v. National Sea Clammers Assoc.*, 453 U.S. 1, 15  (1981).  Similarly, the Court has stated that "where Congress has provided 'elaborate

-31-

enforcement provisions' for remedying the violation of a federal statute, as Congress has done with RCRA and CERCLA, 'it cannot be assumed that Congress intended to authorize by implication additional judicial remedies for private citizens suing under' the statute." *Mehrig v. KFC Western, Inc.*, 516 U.S. 479, 488-89 (1986), quoting *Middlesex County Sewerage Authority*, 516 U.S. at 14-15; *Northwest Airlines*, 451 U.S. at 93-94 (express statutory provisions allowing private enforcement "in certain carefully defined circumstances" and enforcement by the federal government in other circumstances, "strongly evidence[] an intent not to authorize additional remedies"). Finally, it is an "elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Transamerica Mortgage Advisors, Incl v. Lewis*, 444 U.S. 11, 19 (1979); *see also Mehrig*, 516 U.S. at 488; *Northwest Airlines*, 451 U.S. at 95 n. 34. In *Northwest Airlines*, the Court stated that the "'frequently stated principle of statutory construction [] that when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies'" applied with full force to a putative implied right to contribution. 451 U.S. at 94 n.30, quoting *National Railroad Passenger Corp. v. National Assoc. of Railroad Passengers*,

-32-

414 U.S. 453, 458 (1974).[14]  In light of these governing principles, it would be

incorrect to focus on the language of Section 107(a)(4)(B) alone to determine if it

creates an implied contribution right.  *See also Koons Buick v. Bradley*, 125 S. Ct.

460, 466 (2004), quoting *United Sav. Assn. of Tex. v. Timbers of Inwood Forest*

*Associates, Ltd.*, 484 U.S. 365, 371 (1988) ("Statutory construction is a 'holistic

endeavor'").

Even if the language of Section 107(a)(4)(B) were sufficiently broad and

ambiguous to imply a contribution right, the fact that Section 113(f) expressly

addresses and defines the procedural preconditions and parameters for a

contribution remedy strongly evidences that Section 107(a)(4)(B) does not provide

a stand-alone contribution remedy that is not subject to the preconditions on

_____

[14]      In *Northwest Airlines*, the Court stated that the omission of an express right
of contribution in favor of employers is not dispositive if, among other things, the
language of a statute indicates that it was enacted for the special benefit of a class
of which petitioner is a member.  451 U.S. at 91-92.  DuPont asserts (Br. 29) that
Section 107(a)(4)(B) was enacted for the special benefit of parties who are
responsible for creating the hazardous waste dumps and who have incurred costs in
cleaning them up.  However, in *Northwest Airlines*, the Court looked to the
statutes as a whole, rather than isolated provisions, and concluded that neither the
Equal Pay Act or Title VII of the Civil Rights Act were enacted for the benefit of
employers even though some isolated provisions arguably were intended to
provide special protection for them.  451 U.S. at 92-93.  Similarly here, parties
responsible for creating hazardous waste sites who have paid more than their
equitable share are not "members of the class for whose especial benefit"
CERCLA as a whole was enacted.  *Northwest Airlines*, 451 U.S. at 92.

-33-

contribution set forth in Section 113(f). *See Koons Buick*, 125 S. Ct. at 467 ("a provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme"). Thus, even if pre-SARA courts correctly allowed contribution claims based solely on a contribution right implied from Section 107, that implication and result is necessarily altered by SARA's addition of the express contribution remedy. *Cf. U.S. v. Fausto*, 484 U.S. 439, 451-55 (1988) (judicial task of reconciling laws enacted over time necessarily assumes that implications of an earlier statute may be altered by implications of a later statute). Stated differently, after SARA, any right to contribution under CERCLA that can be implied from the language of Section 107(a)(4)(B) is qualified by the express limitations on a contribution remedy set forth in Section 113(f).

Furthermore, DuPont's claim that Section 107(a)(4)(B) provides an independent right to contribution in the absence of a Section 106 or 107 civil action or settlement is untenable because it renders Section 113(f)(1) and Section 113(f)(3)(B) unnecessary and superfluous. *See Hohn v. United States*, 524 U.S. 236, 249 (1998) ("We are reluctant to adopt a construction making another statutory provision superfluous."). DuPont's interpretation produces the absurd result that Congress expressly designated two avenues by which a liable party may seek contribution for cleanup costs under Section 113(f), while at the same time

-34-

allowing a contribution claim to be brought under Section 107 when the preconditions for those avenues are not satisfied.

The savings language in Section 113(f)(1) does not change this result. The savings language does not create a right to contribution; it simply preserves whatever independent rights to contribution, if any, exist outside of CERCLA such as under state law or other statutes.[15] There is no evidence in the legislative history, statutory language, or structure of CERCLA indicating that Congress added the savings clause in Section 113(f)(1) to preserve a version of contribution under Section 107(a)(4)(B) that would permit PRPs to circumvent the express preconditions for seeking contribution under Section 113(f)(1) and 113(f)(3). It would have been pointless for Congress to create an explicitly limited right to contribution under Section 113(f) if, at the same time, the "savings" clause were intended to preserve an all-encompassing "contribution" remedy under the same Act that would allow all persons potentially liable under Section 106 or 107 to bring a contribution action at any time. As the Supreme Court stated in *Cooper*:

---

[15]    In our view, the savings language of Section 113(f)(1) is properly read as generally preserving state contribution remedies except in the case of an actual conflict with the CERCLA scheme. *Cf. Reading,* 115 F.3d at 117 (holding that state contribution remedies that actually conflict with CERCLA are preempted, but stating that CERCLA does not explicitly preempt all state law nor create a comprehensive scheme that leaves no room for state law).

-35-

"There is no reason why Congress would bother to specify conditions under which a person may bring a contribution claim, and at the same time allow contribution actions absent those conditions." 125 S. Ct. at 583.

In sum, when the statutory text is considered as a whole and in light of governing principles, it does not support an interpretation that would allow DuPont to bring a stand-alone, implied right of contribution under Section 107(a)(4)(B) whenever it fails to satisfy the prerequisites for contribution set forth in Section 113(f).

b. The legislative history of SARA shows that Congress intended for Section 113 to govern all contribution actions brought under CERCLA . – Before CERCLA was amended by SARA in 1986, "it was not clear whether a potentially responsible person under section 107 could recover from other potentially responsible persons that portion of its clean-up costs that exceeded its fair share." *New Castle County*, 111 F.3d at 1122. Pre-SARA, district courts were divided on the questions of whether there was an implied right to contribution under CERCLA, the source of such authority, and the timing for such actions.[16]

---

[16]    *See, e.g.*, *United States v. New Castle County*, 642 F. Supp. 1258, 1261-1269 (D. Del. 1986) (no express or implied right to contribution under Section 107, but authority for right under federal common law); *Bulk Distribution Centers, Inc. v. Monsanto Co.*, 589 F. Supp. 1437, 1444 (S.D. Fla. 1984) ("While private cost recovery actions are permissible under CERCLA, courts disagree on when a

-36-

The legislative history of SARA demonstrates that Congress sought to eliminate uncertainty regarding the availability of contribution under CERCLA by squarely addressing the question in newly-enacted Section 113(f).  Congress intended that Section 113(f) clarify and confirm a right to contribution.[17]  The legislative history confirms that Congress meant to permit contribution only when the underlying liability had been or was in the process of being resolved.  For example, the House Report states:

> The section should encourage private party settlements and cleanups. Parties who settle for all or part of a cleanup or its costs, or who pay judgments as a result of litigation, can attempt to recover some portion of their expenses and obligations in contribution litigation from

claimant may commence its lawsuit."); *United States v. Westinghouse Electric Corp.*, 1983 WL 160587 (S.D. Ind. 1983) (no right to contribution); *City of Philadelphia v. Stepan Chemical Co.*, 544 F. Supp. 1135 (E.D. Pa. 1982) (permitting City, the land owner, to pursue claim for response costs against responsible parties under Section 107); *City of New York v. Exxon*, 633 F. Supp. 609, 615 (S.D.N.Y. 1986)(same); cases cited *infra* at 39-40.

[17]  *See* H.R. Rep. No. 99-253(I), at 79 (1985), reprinted in 1986 U.S.C.C.A.N. 2835, 2861 ("This section clarifies and confirms the right of a person held jointly and severally liable under CERCLA to seek contribution from other potentially liable parties, when the person believes that it has assumed a share of the cleanup or cost that may be greater than its equitable share under the circumstances.");  S. Rep. No. 99-11, at 43 (1985) (the bill "clarifies and confirms existing law" by adding a contribution provision); 131 Cong. Rec. 24450 (1985) (statement of Sen. Stafford) (amendment of statute would "remove[] any doubt as to the right of contribution . . . amendment is necessary because the Supreme Court, in recent decisions, has refused to imply a right of contribution under other statutes unless expressly stated").

-37-

parties who were not sued in the enforcement action or who were not parties to the settlement.

H.R. Rep. No. 99-253 (I), reprinted in U.S.C.C.A.N. at 2862.

Based on this background and the legislative history, this Court stated in *Matter of Reading*: "In passing §113(f), Congress acted to codify existing federal common law . . . . Thus, the language of §113(f), permitting contribution, replaced the judicially created right to contribution under §107(a)(4)(B)." 115 F. 3d at 1119. Similarly, in *New Castle County* this Court explained:

> [P]rior to the passage of SARA and section 113, section 107 potentially responsible persons were required to rely upon an uncertain common law right of contribution. It was only upon passage of section 113 that these persons had a clear, statutory right to seek an equitable division of clean-up costs. The history and language of section 113 lend support to our conclusion that it, and not section 107, is the appropriate mechanism for obtaining a fair allocation of responsibility between two or more potentially responsible persons.

111 F.3d at 1122. Other courts of appeals have concurred that the legislative history supports the conclusion that Section 113 qualifies a right to contribution that pre-SARA courts had implied from Section 107, so that the contours and mechanics of any contribution action under CERCLA are governed and regulated by Section 113. *E.g., Pinal Creek Group*, 118 F.3d at 1302. Thus, after SARA, if a PRP cannot bring a CERCLA contribution claim in conformity with limitations on such actions imposed by Section 113(f), it cannot bring it under CERCLA at all.

-38-

DuPont asserts (Br. 33) that Congress added the savings clause to Section 113(f)(1) to make clear that contribution rights that courts had found to exist under Section 107 prior to the passage of SARA were not diminished.  However, DuPont does not identify anything in the legislative history that elucidates congressional intent with respect to the meaning of this savings language and we are aware of nothing in the legislative history that addresses it.[18]

Contrary to DuPont's suggestion (Br. 42), we do not contend that contribution actions can be brought only during or following a Section 106 or 107 civil action.  Congress added Section 113(f)(3)(B) "to expressly provide to settlors the right to seek contribution from nonsettlors."  H.R. Rep. No. 99-253 (III) at 20, reprinted in 1986 U.S.C.C.A.N. at 3043.  Congress drafted Section 113(f) to "clarif[y] and emphasize[] that persons who settle with EPA (and who are therefore not sued), as well as defendants in CERCLA actions, have a right to seek

---

[18]    DuPont suggests (Br. 33) that because Congress added the savings language to Section 113(f)(1) at the same time it provided that contribution actions could be brought "during" Section 106 or 107 actions, it should be inferred that Congress intended that implied contribution rights that some district courts had found to exist under CERCLA prior to the passage of SARA continued to exist independent or outside of the newly-enacted Section 113(f).  In fact, savings language also appeared in the Senate version of the bill providing that contribution suits could be brought only after judgment or settlement. S. Rep. No. 99-11 at 103.  Thus, the savings language seems to be unrelated to debate over whether contribution claims could be brought during a Section 106 or 107 action.

-39-

contribution from other potentially responsible parties." H.R. Rep. No. 99-253

(III) at 18, reprinted in 1986 U.S.C.C.A.N. at 3041.  However, it does not follow

that Congress intended for the savings language in Section 113(f)(1) to create or

preserve an implied contribution right under CERCLA Section 107(a)(4)(B) that

would be available when neither the conditions for a contribution claim under

Section 113(f)(1) nor under Section 113(f)(3)(B) were met.

DuPont asserts (Br. 35) that "there is no evidence to suggest, or reason to

suppose, that by enacting Section 113(f)(1), Congress intended to cut back the

contribution rights federal courts had recognized under CERCLA."  DuPont takes

as a given that Congress understood pre-SARA courts to have interpreted Section

107(a) as allowing contribution in the circumstances presented here and intended

to ratify this form of contribution even though it departs from traditional concepts

of contribution (see infra at 42-43).  However, although district courts were in

basic agreement on the existence of a right to contribution, there was hardly a

consensus as to the source of that authority or the circumstances in which a

contribution action could be pursued.  See n.16 supra.  The legislative reports refer

to only two cases.  They note that in United States v. Ward, 1984 WL 15710 (E.D.

N.C. May 14, 1984), the court held that when joint and several liability is imposed

under section 106 or 107, a concomitant contribution right exists under CERCLA;

-40-

they also note that in *United States v. South Carolina Recycling and Disposal, Inc.*,
653 F. Supp. 984 (D. S.C. 1986), the court had recognized a right to contribution
without squarely addressing the issue. *See* S. Rep. No. 99-11 at 45; H.R. Rep. No.
99-253(I) at 79, 1986 U.S.C.C.A.N. at 2861. Both cases were actions filed by the
United States to recover response costs under Section 107(a)(4)(A). Moreover, in
both cases, the courts had relied on traditional common law principles governing
contribution. 653 F. Supp. at 984 n.8; 1994 WL at 15710. The express limitations
placed on the conditions or timing of contribution actions in Section 113(f) reflect
the traditional principles governing contribution (*see infra* at 42-43) and the
circumstances in the cases identified by Congress. In short, the legislative history
does not demonstrate that Congress intended contribution to be available in the
circumstances presented here.

DuPont suggests (Br. 32-33) that Congress did not intend to place any limits
on the timing of contribution actions by arguing that the words "during or
following" were added to Section 113(f)(1) during the legislative process only to
ensure that PRPs not have to await the outcome of government-initiated civil
actions to seek contribution. DuPont points out (Br. 32-33) that an earlier version
of the bill provided that contribution claims could be brought only after judgment
or settlement of a CERCLA action. However, a change allowing contribution

-41-

actions to be brought <u>during</u> a Section 106 or 107 action, instead of only <u>after</u>

judgment or settlement, hardly lends support to DuPont's position that it can bring

a contribution action in the absence of a Section 106 or 107 action.   Rather, it

illustrates that Congress actively considered when a contribution claim could be

initiated.

Finally, DuPont suggests (Br. 35), that statements in the legislative reports

providing that "[a]s with joint and several liability, contribution claims will be

resolved pursuant to Federal common law," authorize courts to create a federal

common law right of contribution that is not subject to the express preconditions

provided by Section 113(f).  S. Rep. No. 99-11, at 45; H.R. Rep. No. 99-253(I) at

80, <u>reprinted in</u> 1986 U.S.C.C.A.N. at 2862.  To the contrary, read in context, these

statements indicate that equitable apportionment principles would be developed by

courts on a case-by-case basis in contribution actions.  These statements do not

evince that Congress intended to authorize courts to disregard or relax the

preconditions for bringing the contribution claim that Congress had expressly

provided.

c. <u>Requiring CERCLA contribution claims to satisfy prerequisites set forth</u>

<u>in Section 113(f) is consistent with the traditional understanding of contribution.</u> –

The "venerable common-law backdrop," *United States v. Bestfoods*, 524 U.S. 51,

-42-

62 (1998), against which Congress enacted Section 113(f) reinforces the conclusion that a PRP is limited to seeking contribution pursuant to Section 113(f)'s express terms. The two avenues for contribution that Congress provided in Sections 113(f)(1) and (f)(3)(B) are consistent with traditional legal concepts of contribution. As the Third Restatement of Torts explains, while procedurally a person seeking contribution may assert a claim in an action in which the person seeking contribution is sued by the plaintiff, the right to contribution depends on the resolution of the underlying liability to the plaintiff either by settlement or judgment. See Restatement (Third) of Torts §23 cmt. b,n (2000); see also Restatement (Second) of Torts §886A(1) and (2) (1979); *Black's Law Dictionary* 297 (5th ed. 1979) ("Under principle of 'contribution,' a tortfeasor against whom a judgment is rendered is entitled to recover proportional shares of judgment from other joint tort-feasors whose negligence contributed to the injury and who were also liable to the plaintiff.") The traditional concept does not envision that a party may seek contribution before a final judgment or before a pending action is underway that would determine and resolve the joint liability, unless the party has entered into a settlement that discharges or resolves that liability. Restatement (Third) of Torts §23 cmt. b.