-43-

The preconditions on contribution set forth in Section 113(f) conform to the traditional limitations placed on contribution. DuPont's interpretation does not. Statutes are not to be construed as making an innovation upon the common law unless the intent to do so is fairly expressed. *See Robert C. Herd & Co. v. Krawill Mach. Corp.*, 359 U.S. 297, 304-305 (1959).

d. Other provisions of the statute do not support finding an implied right of contribution. – DuPont contends (Br. 38-44) that an implied right of contribution is consistent with, or affirmatively supported by, other provisions of the statute. These arguments are meritless.

i. Settlement protection under Section 113(f)(2). – In *Matter of Reading Co.*, 115 F.3d at 1119, this Court expressed concern that if a party could elect to seek contribution under Section 107(a)(4)(B), rather than Section 113(f), it could bypass the settlement protection provided by Section 113(f). DuPont argues that the implication of a private right to contribution under Section 107(a)(4)(B) will not interfere with the settlement protection provided by Section 113(f)(2) because "Section 113(f)(2) is not limited by its terms to barring contribution claims under Section 113(f)(1) and 113(f)(3)(B), but applies to bar all contribution claims, including those implied from Section 107(a)(4)(B)." Br. 38. While this untested approach would solve the problem this Court identified with allowing a private

-44-

PRP to seek contribution under Section 107(a)(4)(B), it seems at odds with a theory that Section 107(a)(4)(B) operates independent of Section 113(f).

Furthermore, by calling attention to the issue of settlement protection, DuPont highlights another potentially undesirable consequence of its interpretation. Contribution is an action among parties that are jointly liable to a third party, which under CERCLA is typically the EPA or a State. A party that pays "contribution" in the absence of a settlement or judgment resolving liability to EPA or a State enforcement agency has no guarantee that its payment to the contribution plaintiff will discharge or extinguish liability to the government; it remains potentially subject to an action seeking recovery of response costs under Section 107(a)(4)(A) if any relevant government agency later investigates and determines that the voluntary conduct is inadequate or improper. The traditional strictures on contribution that are reflected in the prerequisites to contribution in Section 113(f) are designed to eliminate this prospect of double liability. *See, e.g.,* Restatement (Third) Torts §23 (2000), Reporter's Note cmt. b.

ii. Statute of limitations. – DuPont contends (Br. 39) that an implied contribution right under Section 107(a)(4)(B) is not at odds with the statute of limitations set forth in Section 113(g) because there is an imperfect alignment between Section 113(g)(3), the subsection addressing the statute of limitations for

-45-

contribution actions, and Section 113(f)(1) and Section 113(f)(3).  True enough,
but this statute of limitations gap exists under both DuPont's and our
interpretation.[19]  Accordingly, the statute of limitations provision sheds no
particular light on the present issue.[20]

     iii.  Section 120(a) does not support the implication of a contribution right.

—DuPont argues (Br. 41-44) that  CERCLA Section 120(a), 42 U.S.C. §9620(a),
affirmatively supports the implication of a contribution right under Section
107(a)(4)(B).  In pertinent part, Section 120(a) provides:

> Each department, agency, and instrumentality of the United States ...
> shall be subject to, and comply with, this chapter in the same manner
> and to the same extent, both procedurally and substantively, as any
> nongovernmental entity, including liability under section 9607 of this
> title.

Id.

---

[19]    DuPont asserts (Br. 39-40) that Section 113(g)(3) provides no statute of
limitations for contribution actions brought during a Section 106 or 107 civil action
or following settlements with states.  While we fail to understand how it can be
said that Section 113(g)(3) does not address the statute of limitations for
contribution actions brought during a Section 106 or 107 action, we concur that
Section 113(g)(3) does not expressly address state administrative settlements and it
expressly addresses only a subset of federal administrative settlements.

[20]    DuPont suggests (Br. 40) that the Section 113(g)(2) limitations period would
apply to an implied contribution claim brought under Section 107(a)(4)(B). For
present purposes, there is no need to choose which statute of limitations would
govern a stand-alone, implied contribution claim under Section 107(a) should one
be recognized.

-46-

DuPont circuitously reasons (Br. 42-43) that the United States will refrain from bringing CERCLA Section 107 or 106 actions at sites where there is a federal PRP to avoid triggering a right to contribution against the United States and that an implied contribution claim must therefore be recognized to ensure that the government shall be subject to CERCLA liability in the same manner and to the same extent as private parties. DuPont's reasoning is flawed.

First, only if Congress intended to create an implied statutory right to contribution against private PRPs in the absence of the preconditions set forth in Section 113(f)(1) and (f)(3) would the waiver of sovereign immunity in Section 120(a) have any bearing here. DuPont turns the proper analysis on its head by suggesting that in order to ensure the availability of contribution against a federal PRP, an implied contribution right must be recognized against federal and non-federal PRPs alike. Furthermore, as discussed in Section II.C, well-established principles governing waivers of sovereign immunity preclude inferring an implied contribution right based on Section 120(a).

Second, DuPont's suggestion that the United States has or will refrain from initiating Section 106 or 107 actions to avoid exposure to contribution claims is without factual support. Though taking the position ultimately adopted by the Supreme Court in *Cooper*, the government has not hesitated to bring suit under

-47-

Section 106 or 107 or to enter into administrative or judicial settlements at sites where there are federal PRPs.[2/]

Finally, a contribution claim may be triggered by a civil action initiated by, or a settlement with, a state. Therefore, the availability of contribution is not solely dependent on federal enforcement action.

e. Policy considerations do not justify recognition of an implied right to contribution. – DuPont and amici contend that allowing parties to pursue an implied right of contribution in the absence of a civil action or settlement would encourage prompt, so-called voluntary cleanup actions by PRPs and ensure fairness. Br. 36-37. Regardless of the appeal of these contentions, congressional intent to create an implied contribution right distinct from the express contribution right provided by the statute cannot be assumed based on such policy arguments. *See Texas Industries*, 451 U.S. at 646 (contribution implicates complex policy issues which are matters for Congress, not the courts, to resolve); *Key Tronic*, 511 U.S. at 819 n.13 (expansion of the scope of CERCLA's existing remedies is a

--------

[2/]    Federal PRPs are frequently parties to administrative or judicially approved settlements. *See, e.g.*, 61 Fed. Reg. 54,215 (Oct. 17, 1996); 65 Fed. Reg. 32,123 (May 22, 2000); 67 Fed. Reg. 8557 (Feb. 25, 2002); 69 Fed. Reg. 51,326 (Aug. 18, 2004); 69 Fed. Reg. 67,607 (Nov. 18, 2004).

-48-

policy decision that must be made by Congress, not the courts).[22] In the future, Congress may decide to make a legislative judgment that a PRP who incurs response costs in the absence of the prerequisites in Section 113(f) should nonetheless be able to recover costs in contribution from other PRPs. But it would be improper for a Court to override the result dictated by statutory construction principles based on its own assessment of policy considerations.

3. DuPont's interpretation is contrary to the decisions of this Court and nine other courts of appeals holding that a contribution claim may not be brought under Section 107. – In *Matter of Reading*, 115 F.3d at 1118-1124, and *New Castle County*, 111 F.3d at 1121-1124, this Court held that a PRP could not bring a contribution claim under Section 107(a)(4)(B) and may only bring contribution claims in conformity with Section 113(f). DuPont suggests (Br. 45-49) that a panel of this Court need not adhere to the holdings in *Matter of Reading* and *New Castle County* because both were instances in which a PRP had already been sued under Section 107.

---

[22]    The choice here is not between an interpretation that encourages prompt, voluntary cleanups and one that does not. The legislative history reveals that Congress believed that Section 113(f), with its preconditions on initiation of a contribution action, would encourage private party settlements and cleanups. *See supra* at 36-37.

-49-

While it is true that in both *Matter of Reading* and *New Castle County* the precondition of a Section 107 action was satisfied, in both instances, like here, the proponent of bringing a contribution claim under Section 107(a)(4)(B) was attempting to circumvent Section 113 limitations that posed insurmountable obstacles to recovery under that section.  In *New Castle County*, the PRP seeking to bring suit against another PRP sought to avoid the shorter statute of limitations applicable to Section 113 contribution claims.  In *Matter of Reading*, the PRP sought to circumvent the settlement protection provisions of Section 113(f)(2).  That DuPont seeks to circumvent a different limitation in Section 113(f) is not a compelling basis for distinguishing those cases.

While *Reading* does include a sentence indicating that Section 113(f)(1) permits a contribution action to be brought in the absence of a civil action, 115 F.3d at 1120, that assumption appears only in the discussion of secondary reasons reinforcing the holding that a contribution claim may not be brought under Section 107, 115 F.3d at 1119, and has been corrected by the holding in *Cooper*.  In *New Castle County*, this Court indicated that the claim by a private PRP against another PRP was governed by Section 113, rather than 107, because such a suit was necessarily an action for contribution, and contribution actions are governed by, and must be brought under, the express mechanisms for contribution that Congress

-50-

provided in Section 113(f). 111 F.3d at 1121. This Court concluded that a PRP is "not permitted, under any scenario, to pursue a section 107 cost recovery action against other potentially responsible persons." 111 F.3d at 1124.

The holdings in *New Castle County* and *Reading* are well-reasoned and consistent with unanimous holdings in nine other circuits. The enactment of two express statutory avenues for contribution weighs strongly against the implication of a third avenue any time a contribution plaintiff cannot meet the strictures of the express provisions. CERCLA is properly interpreted to require that a private PRP's claim against another PRP conform to the Section 113(f) requirements governing contribution.

C. Courts may not formulate a federal common law right of contribution against the United States. – DuPont alternatively contends (Br. 49-53) that a right of action for contribution in the absence of the preconditions set forth in CERCLA Section 113(f) may arise through the power of federal courts to fashion a federal common law. There is "'no federal general common law.'" *Texas Industries*, 451 U.S. at 640, quoting *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The instances in which courts may formulate federal common law are "'few and restricted,'" and "fall into essentially two categories: those in which a federal rule of decision is 'necessary to protect uniquely federal interests,' and those in which

-51-

Congress has given the courts the power to develop substantive law." *Texas Industries*, 451 U.S. at 640 (citations omitted).

DuPont asserts (Br. 49) that CERCLA implicates uniquely federal interests because CERCLA is concerned with the rights and obligations of the United States. This argument does not provide any reason to create a federal common law contribution right against private PRPs. Moreover, courts may not exercise common law powers premised on protection of federal interests to expand the waiver of federal sovereign immunity beyond that provided by Congress. Because the rights and duties of the United States are uniquely federal interests, it is appropriate that federal, rather than state, law govern the question of a contribution right against the United States. Moreover, a suit seeking recovery of money in contribution against the United States is against the federal sovereign and cannot be maintained without an express and unambiguous waiver of immunity from Congress. *Lane v. Pena*, 518 U.S. 187, 192 (1996). It is axiomatic that a waiver of the federal government's sovereign immunity must be strictly construed in terms of its scope, in favor of the sovereign. *Id.* By its terms, the waiver of sovereign immunity in CERCLA Section 120(a) is limited to procedural and substantive requirements imposed by the statute. 42 U.S.C. §9620(a) (federal agencies "shall be subject to, and comply with, <u>this chapter</u> in the same manner and to the same

-52-

extent, both procedurally and substantively, as any nongovernmental entity")
(emphasis added). A federal common law right – a non-statutory right – does not
fall within the terms of the waiver.

DuPont's argument also relies on the erroneous theory that unless the Court
holds that contribution actions can be brought in the absence of a civil action or
settlement, parties will have no means of recovering the United States' equitable
share at those facilities where the United States is a PRP. As explained *supra* at
45-47, this reasoning is factually and legally erroneous.

DuPont's argument that Congress authorized courts to develop a federal
common law contribution right, including a right against the United States, is
equally meritless. As discussed in Section II.B.2.b, the legislative history of
CERCLA merely suggests that courts are to resolve equitable apportionment under
Section 113(f) on a case-by-case basis pursuant to federal common law. It does
not follow that Congress thereby intended to give courts authority to create a
supplementary common law contribution right that could be utilized when the
statutory preconditions for contribution are absent. Judicial authority to construe
and apply a statute to particular cases "is fundamentally different from the
authority to fashion a new rule or to provide a new remedy which Congress has
decided not to adopt.'" *See Texas Industries*, 451 U.S. at 646, quoting *Northwest*

-53-

*Industries*, 451 U.S. at 97.   The power to create federal common law does not authorize a court to substitute its views for those expressed by Congress in a duly enacted statute. *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978). "There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted." *Id.* "[W]hen Congress has legislated on a question that is claimed to be appropriate for the creation of federal common law, courts must assume that Congress has articulated all the governing federal standards." *Ridenour v. Andrews Federal Credit Union*, 897 F.2d 715, 722 (4th Cir. 1990).

Applying these principles, it would be improper to create a federal common law contribution right to supplement and effectively subsume the express right provided by Congress in Section 113(f).  Accordingly, DuPont's attempt to distinguish *Texas Industries* and *Northwest Airlines* on the grounds that neither involved statutes containing an express right to contribution and neither involved evidence that Congress intended to create a private right of contribution, misses the mark.  Br. 52.  It is precisely because CERCLA contains an express right of contribution that this Court should decline to create a common law right.

This conclusion is reinforced by the lack of a common law right to contribution among joint tortfeasors, *see Texas Industries*, 451 U.S. at 634, and

-54-

the availability of contribution, under the contribution remedies fashioned by state legislation or judicial action in the last 100 years (*id.*), generally only where there is a pending or completed suit or settlement with an injured third-party.  *See* Section II.B.2.c *supra*.  For all these reasons, this Court should decline to create a common law contribution right.[23]

---

[23]    DuPont argues (Br. 53-56) that if this Court finds it has viable contribution claims that arise from Section 107(a)(4)(B) or federal common law, it should reject the district court's articulation of requisite elements for a federal common law contribution action and articulate the proper standards.  We agree that if this Court were to find contribution claims arising from Section 107 or federal common law, the district court's dicta concerning requirements of a traditional, common law contribution action should be vacated or otherwise not be considered binding.  The proper disposition would be to remand to the district court to address in the first instance the elements of a stand-alone Section 107(a)(4)(B) implied contribution action or federal common law action and to decide whether DuPont meets those elements.

-55-

III

THE DISTRICT COURT COMMITTED NO ERROR BY DISMISSING THE
SECTION 113(f) CLAIM AS TO ALL SITES

A. Standard of review. – Judgment on the pleadings is reviewed de novo.

*Shelly v. Johns Manville Corp.*, 798 F.2d 93, 97 n.4 (3d Cir. 1986).

B. Dismissal was appropriate because DuPont's pleadings failed to allege or
otherwise demonstrate that other sites met Section 113(f) preconditions. –
Following summary judgment on the Louisville site, the district court granted the
government's motion for judgment on the pleadings as to the remainder of the
sites, explaining that it "has been presented with no allegations in the pleadings (or
evidence beyond the pleadings) differentiating the Louisville site from the
remaining sites." PA9. DuPont suggests (Br. 57-58) that because its pleadings
complied with  prima facie requirements established by this Court for pleading a
CERCLA contribution claim, it was entitled to rely on those pleadings.  However,
in the district court, DuPont acknowledged that its pleadings did not allege the
elements of a prima facie case for a Section 113(f) contribution claim found by the
district court in its opinion. PA225. *Cooper* confirmed that either a Section 106 or

-56-

107 civil action or settlement within the scope of Section 113(f)(3) is a precondition for bringing a Section 113 contribution action.[24]

Second, DuPont suggests (Br. 58) that the district court erred because there is no factual record with respect to the fourteen facilities other than the Louisville plant and the court therefore could not have known that no sets of facts could be proved that would entitle it to relief under Section 113(f) with respect to those sites. However, on a motion for judgment on the pleadings, the court properly reviews only the pleadings for sufficiency. DuPont's complaint is deficient because it fails to allege facts from which it can be inferred that a requisite element to recovery under Section 113(f) – *i.e.*, civil action or settlement – is met with respect to any of the sites. *See In re Cendant Corp. Securities Litigation*, 190 F.R.D. 331, 334 (D. N.J. 1999) ("the claimant must set forth sufficient information to outline the elements of his claims or to permit inferences to be drawn that these elements exist"); *Florian Greenhouse, Inc. v. Cardinal IG Corp.*, 11 F. Supp. 2d 521, 524 (D. N. J. 1998) (same); *cf. Menkowitz v. Pottstown Memorial Medical*

---

[24]    DuPont also asserts (Br. 57) that the judgment on the pleadings should be reversed because the district court applied the wrong legal standard for contribution. This assertion appears premised on the assumption that DuPont will prevail on its new claims. However, regardless of the merits of the new claims asserted by DuPont, the lower court correctly dismissed the claim brought under Section 113(f) and therefore judgment with respect to that claim should be affirmed.

-57-

*Center*, 154 F.3d 113, 124-25 (3d Cir. 1998) ("[T]he complaint will withstand a
Fed. R. Civ. P. 12(b)(6) attack if the material facts as alleged, in addition to
inferences drawn from those allegations, provide a basis for recovery.").
Moreover, DuPont itself told the district court that the Section 113(f) question
decided by summary judgment on the Louisville Plan is "common to all of the
contribution claims in this litigation." SA70; see also SA73.

DuPont suggests (Br. 58) that because discovery with respect to those sites
had been stayed, it was not appropriate to rule on the pleadings. However, DuPont
does not explain why discovery is necessary to overcome a motion for judgment on
the pleadings nor why discovery would be necessary for DuPont itself to ascertain
whether it had been sued in a civil action or entered into a settlement with regard to
the sites at issue. DuPont's brief in response to the motion for judgment on the
pleadings asserted that DuPont had incurred response costs at the Necco Park site
pursuant to an EPA administrative order on consent and its counsel stated at the
hearing that DuPont had entered into settlements with federal or state agencies at
unspecified sites that they believed satisfied the requirements of Section
113(f)(3)(B).[25] PA224;SA93. However, as the court noted, these representations

---

[25]     After this case was appealed, undersigned counsel learned that in September
2001 the United States filed a Section 107 action against DuPont for the Necco
Park site. *United States v. E.I. DuPont de Nemours and Co.*, 2d Cir. No. 04-5380.

-58-

are not evidence and do not appear in the pleadings. PA8 n.4. The district court remarked at a hearing that it was troubled by the lack of information and that it would have been simple for DuPont to demonstrate the existence of civil actions or settlements involving the other sites. PA224-225. Despite this and the United States' indication that it would not oppose amendment, DuPont did not seek leave to amend its complaint nor seek permission to make a late filing to submit additional information. PA8, 224; SA102. Furthermore, with the exception of the reference to the Necco Park site, DuPont has yet to identify the sites for which it believes it has a viable contribution claim under Section 113(f). On these facts, the district court reasonably dismissed the action on the pleadings.

---

While it was incumbent on DuPont as the plaintiff in this case to allege the prerequisites for a valid Section 113(f) contribution claim, we nevertheless suggest that the dismissal with respect to that site be without prejudice.

-59-

## CONCLUSION

The judgment of the district court should be affirmed.

Respectfully submitted,

KELLY A. JOHNSON
<u>Acting Assistant Attorney General</u>

MICHAEL D. ROWE
SCOTT JORDAN
DAVID M. THOMPSON
ERIC G. HOSTETLER
MICHELE  L. WALTER
DAVID C. SHILTON
ELLEN J. DURKEE /s/ Ellen J. Durkee
<u>Attorneys, Environment & Natural</u>
<u>Resources Division</u>
<u>Department of Justice</u>
<u>P.O. Box 23795, L'Enfant Plaza Station</u>
<u>Washington, D.C.  20026</u>
<u>(202) 514-4426</u>

APRIL 2005
90-11-6-103

-60-

## CERTIFICATIONS RESPECTING WORD COUNT, IDENTICAL TEXT OF E-BRIEF AND HARD COPIES, VIRUS CHECK AND BAR MEMBERSHIP

I certify that the foregoing brief has double spaced text (excluding quotations, headings, and footnotes) in proportional 14 point type. According to the word perfect word count the brief is 13,971 words.

I certify that the text of the E-Brief in PDF format transmitted to the Court and counsel of record and the hard copies of the Brief sent to the Court and counsel are identical.

I certify that the E-Brief transmitted to the Court in PDF format has been scanned for viruses with the most recent version of a Computer Associates eTrust InoculateIT, version 6.0.96, updated through April 22, 2005 and, according to the program, are free of viruses.

I am an attorney with the United States Department of Justice representing the United States in this appeal and, as such, am not required to be a member of the Third Circuit Bar for purposes of this appeal.

/s/ Ellen J. Durkee
ELLEN J. DURKEE
Attorney, Environment & Natural
Resources Division
Department of Justice
P.O. Box 23795, L'Enfant Plaza Station
Washington, D.C. 20026
(202) 514-4426

-61-

## CERTIFICATE OF SERVICE

I certify that on April 22, 2005, I caused 10 hard copies of the brief to be

sent by Federal Express delivery to the Clerk's Office. Also on April 22, 2005, I

transmitted an E-brief to the Clerk's Office. At the request of appellants' counsel,

the foregoing brief was e-mailed in PDF format to counsel listed below on the 22d

day of April, 2005. I further certify that I caused two hard copies of the foregoing

brief to be served by U.S. mail this 22d day of April 2005, on each of the following

counsel:

John McGahren
Latham & Watkins LLP
One Newark Center, 16th Floor
Newark, NJ 07102
john.mcgahren@lw.com

William H. Hyatt, Jr.
Kirkpatrick & Lockhart Nicholson Graham LLP
One Newark Center, 10th Floor
Newark, NewJersey 07102
whyatt@klng.com

/s/ Ellen J. Durkee
ELLEN J. DURKEE
Attorney, Environment & Natural
Resources Division
Department of Justice
P.O. Box 23795, L'Enfant Plaza Station
Washington, D.C. 20026
(202) 514-4426

# Addendum

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| METROPOLITAN WATER RECLAMATION DISTRICT OF GREATER CHICAGO,<br><br>      Plaintiff,<br><br>      v.<br><br>LAKE RIVER CORP.; LRT HOLDING CO., INC.; LAKE RIVER TERMINALS, INC.; LAKE RIVER OIL CO.; and NORTH AMERICAN GALVANIZING & COATINGS, INC.,<br><br>      Defendants. | No. 03 C 0754<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

### I. Background

This lawsuit arises out of chemical spills that occurred on a parcel of property belonging to Plaintiff Water Reclamation District of Greater Chicago ("Water Rec. Dist."). In the 1940's and 1950's, the Water Rec. Dist. entered into a long-term lease with Defendant Lake River Corp. ("Lake River"). Lake River operated the property as an industrial chemical storage, mixing, and packaging facility. During the term of the lease, the Water Rec. Dist. alleges that chemicals were spilled and/or released into the property's soil and ground water. The Water Rec. Dist. further alleges that it has incurred and will continue to incur expenses investigating and cleaning up the spills and/or releases.

Initially, the Water Rec. Dist. brought this suit to recover costs associated with the cleanup solely against Lake River. That litigation resulted in a default judgment, ordering Lake River to pay the Water Rec. Dist. approximately $1.8M in damages plus future response costs.

After securing the default judgment, the Water Rec. Dist. filed a Second Amended Complaint, which added Defendant North American Galvanizing & Coatings, Inc. ("North American"). In 1968, North American, then known as Kinark Corp., purchased Lake River and held it until its sale in 2000. The Water Rec. Dist. then filed a Third Amended Complaint with additional counts, alleging that North American is liable for its cleanup efforts under § 107(a) and § 113(f)(1) of the Comprehensive Environmental Response Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 (Counts XII & XIII), § 7002 of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972 (Count XIV), and common law nuisance (Count XI).

## II. Standard of Review

North American now asks that I dismiss Counts XI, XII, XIII, and XIV of the Water Rec. Dist.'s Third Amended Complaint pursuant to Fed. R. Civ. P 12(b)(6). A motion to dismiss under Rule 12(b)(6) is proper where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In reviewing a motion to dismiss, the court must construe all allegations in the complaint in the light most favorable to the plaintiff and accept all well-pleaded facts and allegations as true. *Bontkowski v. First Nat'l Bank*, 998 F.2d 459, 461 (7th Cir. 1993).

## III. The Water Rec. Dist.'s CERCLA Claims

The Water Rec. Dist. asserts two causes of action under CERCLA for the recovery of response costs incurred to remediate the environmental conditions present on its property. The first is an action for cost recovery pursuant to § 107(a), 42 U.S.C. § 9607(a) – Count XII, and the second is an action for contribution pursuant to § 113(f)(1), 42 U.S.C. § 9613(f)(1) – Count XIII.

The legal purposes served by the § 107(a) cost recovery and § 113(f)(1) contribution provisions

of CERCLA are independent and distinct.  A § 107(a) claim for cost recovery applies to cases

where a party is seeking direct recovery of costs incurred in cleaning up a hazardous waste site.

*Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d 761, 764 (7th Cir. 1994).  Whereas, a § 113(f)(1)

claim for contribution applies to cases in which "potentially responsible parties" ("PRP's") are

seeking to properly apportion damages between themselves. *Rumpke v. Cummins Engine Co.*,

107 F.3d 1235, 1240 (7th Cir. 1997).  Under § 107(a), an owner of the contaminated property is a

PRP.  42 U.S.C. § 9607(a).  Since the Water Rec. Dist. currently owns and did own the property

throughout the period it was leased to Lake River, it is a PRP within the meaning of CERCLA.

Originally, CERCLA did not include a provision allowing PRP's to seek contribution

from each other.  Section 113(f)(1) was added after significant debate arose as to whether

§ 107(a), in addition to allowing the Government and certain private parties to recover costs from

PRP's, also allowed a PRP to recover costs or obtain contribution from other PRP's.  *Cooper*

*Indus. v. Aviall Servs., Inc.*, 125 S. Ct. 577, 581 (2004).  Many courts held that, while § 107(a)

did not directly provide for contribution, such a right could be implied from the provisions of the

statute.  *Id.*  In 1986, Congress amended CERCLA with the Superfund Amendments and

Reauthorization Act ("SARA") to provide an express cause of action for PRP's seeking

contribution, now know as CERCLA § 113(f)(1).  Ordinarily, a suit for recovery of costs made

by one PRP against another is considered as a suit for contribution since it is usually intended to

apportion damages between multiple liable parties. *Azko*, 30 F.3d at 764.

Since the addition of § 113(f)(1), questions have arisen as to whether any of the implied

rights of recovery for PRP's under § 107(a) survived the SARA amendment.  The Supreme Court

3

first suggested that some implied right to contribution remained in the dicta of *Key Tronic Corp.*

*v. United States,* 511 U.S. 809, 816-17 (1994), which states "the statute now expressly authorizes

a cause of action for contribution in § 113 and impliedly authorizes a similar and somewhat

overlapping remedy in § 107." The existence of such a right is far from a certainty given that the

majority in *Aviall* declined to resolve the so called § 107 question solely on the basis of *Key*

*Tronic* and instead remanded the case for further briefing. 125 S. Ct. 577, 585 (2004).

The dissent in *Aviall*, however, suggested that there was "no cause for protracting this

litigation by requiring the Fifth Circuit to revisit a determination [the Court] has essentially made

already." *Id.* at 588. In the opinion of the dissenting judges, "[f]ederal courts, prior to the

enactment of § 113(f)(1), had correctly held that PRPs could recover [under § 107] a

proportionate share of their costs in actions for contribution against other PRPs." *Id.* The dissent

further opined that since § 113(f)(1) included a savings clause preserving all preexisting state and

federal rights of action for contribution, the implied right under § 107(a) remains open to a

certain subset of plaintiffs. *Id.*

The subset of plaintiffs who may have implied rights of contribution under § 107(a) are

those, like the Water Rec. Dist., who are not entitled to seek contribution under § 113(f)(1).

Section 113(f)(1) states that PRP's may seek contribution "during or following any civil action

under § 9606 of this title or under § 9607(a) of this title." 42. U.S.C. § 9613(f)(1). In *Aviall*, the

Court held that this statutory language limited the parties entitled to relief under § 113(f)(1) to

those who had already been the subject of a civil suit. *Id.* at 584. Since Aviall's cleanup efforts

were undertaken voluntarily, that is to say without being the subject of a suit either by another

4

PRP or a governmental body, it was not entitled to seek contribution from the defendant pursuant to § 113(f)(1). *Id.* at 585.

In the instant case, the Water Rec. Dist., like the plaintiff in *Aviall*, voluntarily undertook cleanup efforts, amounting to costs of approximately $1.8M. It asserted in its Complaint causes of actions under both § 107(a) and § 113(f)(1) of CERCLA. In light of *Aviall,* it is clear that the Water Rec. Dist. does not have a cause of action under § 113(f)(1). What remains is whether the Wat. Rec. Dist. has a viable claim under § 107(a).

The Seventh Circuit has yet to allow a claim made by a PRP to go forward on the basis of an implied right to contribution under § 107(a) . The closest it has come has been to recognize that an implied right to contribution is not forestalled by the Supreme Court's prior opinions. In the dicta of *Rumpke,* the Seventh Circuit states that "[t]o the extent this looks like an implied claim for contribution...we note that dicta in the Supreme Court's decision in *Key Tronic* suggests that the Court was not disturbed by that possibility." *Rumpke,* 107 F.3d 1235 at 1241.

Much like the *Aviall* plaintiff and the Water Rec. Dist., the plaintiff in *Rumpke* was one who voluntarily undertook cleanup efforts and was, thus, not the subject of a civil suit brought by another PRP or a governmental body. *Id.* at 1239. The Seventh Circuit allowed the claim on the grounds that it fit into an exception to the generally accepted proposition that all claims made by PRP's are claims for contribution to be brought under § 113(f)(1) – the innocent landowner exception. *Id.* This exception is available to a landowner seeking direct recovery for injury to its property to which the landowner did not contribute and for which the landowner had no liability. Because no liability flowed to the landowner, the Seventh Circuit found that it was a suit to

5

recover instead of apportion costs and was, therefore, appropriately brought under § 107(a). *Id.* at 1241-42; See Also *Akzo*, 30 F.3d 761.

Parties who have qualified for the innocent landowner exception have fallen into two categories – those plaintiffs who have unknowingly acquired a contaminated property and those plaintiffs whose property was contaminated by a third party's surreptitious dumping. See *Rumpke*, 107 F.3d 1235; *NutraSweet Co. v. X-L Eng'g Co.*, 227 F.3d 776 (7ᵗʰ Cir. 2000); *Northstar Partners v. S&S Consultants*, 2004 U.S. Dist. LEXIS 7799 (S. Dist. Ind. Mar. 31, 2004). A plaintiff may invoke the innocent landowner exception under § 107(a), if it can show that: (1) the defendant is a covered person under § 107(a), (2) there is a release or threatened release of a hazardous substance from a facility as defined by § 101(9), (3) the release caused the plaintiff to incur response costs, and (4) the plaintiff did not pollute the site in any way. *NutraSweet*, 227 F.3d at 784. Because the Water Rec. Dist. entered into a long-term lease with a party it knew intended to keep and process chemical materials, it cannot establish the fourth prong of the above test. See *Northstar*, 2004 U.S. Dist. LEXIS 7799 at **20-21. While the Water Rec. Dist. did not itself contaminate the property, it did drastically increase the risk of contamination by leasing the property to Lake River. Thus, it is clearly distinct from cases where a plaintiff had little or no warning that the property could have been or was being contaminated.

Since the Water Rec. Dist. does not fit into the innocent landowner exception and since it cannot seek contribution under § 113(f)(1), its only remaining remedy under CERCLA is an implied right to contribution under § 107(a). Section 107(a) states that the government as well as "any other person" is entitled to recovery of costs. 42 U.S.C. § 9607(a). In *Key Tronic*, the Court read that language to mean that "§ 107 unquestionably provides a cause of action for

private parties to seek recovery of cleanup costs." *Key Tronic,* 511 U.S. at 818. Although PRP's

are not explicitly named in § 107(a), there seems to be no reason why they would be excluded

from the provision that allows recovery for any person, unless that right was provided for

elsewhere in the statute. While the majority of judges were understandably reluctant to decide an

issue which could wait another day, I agree with the dissenters in *Aviall,* insofar as they express a

prediction of the result that would occur when the Court had to decide the question, that if the

implied right existed before § 113(f)(1) was added and the right was not encompassed by

§ 113(f)(1), then it must still lie in § 107(a). *Aviall,* 125 S. Ct. at 588. This is especially true

since SARA explicitly preserved all state and federal contribution rights that preexisted the

amendment. 42. U.S.C. § 9613(f)(1).

Since the Water Rec. Dist. is part of that subset of plaintiffs who voluntarily undertook

cleanup efforts and are, for that reason, not party to a civil suit, I find it may seek contribution

from other responsible parties under § 107(a). Any other outcome would seem to lie contrary to

the general purposes of CERCLA to promote prompt and proper cleanup of contaminated

properties.

**IV. Water Rec. Dist.'s RCRA Claim**

In Count XIV of its Complaint, the Water Rec. Dist. asserts a citizens suit against North

American under RCRA and seeks injunctive relief, commanding North American to undertake

all necessary and appropriate future corrective actions. RCRA provides that:

> "***any person*** may commence a civil action...against any person... who has
> contributed or who is contributing to the past or present handling, storage,
> treatment, transportation, or disposal of hazardous waste which may present an
> imminent and substantial endangerment to health or the environment."
> 42 U.S.C, § 6972(a)(1)(B) (emphasis added)

7

North American asserts that the Water Rec. Dist. cannot bring a citizens suit because it is itself a liable party under RCRA and CERCLA. This argument, however, was expressly rejected by the Seventh Circuit in *AM Int'l v. Datacard Corp.*, 106 F.3d 1342 (7th Cir. 1997). In *Datacard*, the Seventh Circuit found that even though the "idea behind citizen suit enforcement is to unleash an army of private attorneys general to force cleanups when the government drags its feet, the plain language of RCRA and CERCLA does not exclude" parties who are themselves PRP's from class of potential citizens suits plaintiffs. *Id.* at 1349. Rather, "both RCRA and CERCLA allow 'any person' to bring citizen suits." *Id.* Accordingly, I find that the Water Rec. Dist., like the plaintiff in *Datacard*, qualifies as "any person" within the meaning of RCRA and, therefore, may bring a citizens suit. See Also *PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 618 (7th Cir. 1998); *Raytheon Co. v. McGraw-Edison Co.*, 979 F. Supp. 858, 863 (E.D. Wis. 1997).

**V. The Water Rec. Dist. Nuisance Claim**

In Count XI of its Complaint, the Water Rec. Dist. asserts a claim of nuisance against North American. North American argues that a lessor cannot bring such a claim against a former lessee. Under Illinois law, a private nuisance is "a substantial invasion of another's interest in the use and enjoyment of his or her land." *In re Chicago Flood Litig.*, 680 N.E.2d 265, 277 (Ill. 1997). The purpose of private nuisance law has historically been to resolve conflicts between neighboring, contemporaneous landowners. *See Mavigliano v. McDowell*, No. 93 C 7216, 1995 U.S. Dist. LEXIS 6104 at *15 (N.D. Ill. May 3, 1995) (quotation omitted). Because nuisance suits generally depend on concurrent usages, a number of courts have dismissed nuisance claims between current and former owners of the same property. *See Philadelphia Elec. Co. v.*

8

*Hercules, Inc.* 762 F.2d 303, 314 (3rd Cir. 1985); *Truck Components, Inc. v. K-H Corp.,* No. 94 C

5025, 1995 U.S. Dist. LEXIS 17444 at *34-36 (N.D. Ill. Oct. 31, 1995); *Triffler v. Hopf,* No. 92

C 7193, 1994 U.S. Dist. LEXIS 16158 at *24-26 (N.D. Ill. Nov. 4, 1994).  Applying the same

reasoning in a case involving a lessor/lessee, Judge Gettleman found that a nuisance claim could

not be brought by the lessor because there was no neighboring or contemporaneous use of

property. *Mavigliano,* 1995 U.S. Dist. LEXIS 6104 at *14-16.

The Water Rec. Dist. argues that I should disregard that line of cases and instead rely on

Judge Guzman's holding in *Great Oaks v. Begley Co.,* No. 02 C 6496, 2003 U.S. Dist. LEXIS

3186 at *12-13 (N.D. Ill. Mar. 3, 2003), which did allow a lessor to bring a private nuisance

claim against its former tenant.  However, in *Great Oaks,* Judge Guzman dealt only briefly with

the issue of nuisance and based his holding on *NutraSweet Co. v. X-L Eng's Corp.,* 933 F. Supp

1409, 1423 (N.D. Ill. 1996).  Since *NutraSweet* dealt with the classic case of private nuisance

between neighboring, contemporaneous property owners, it is my opinion that its holding should

not have been applied to lessor-plaintiffs. *Id.* at 1412.  Accordingly, I adopt Judge Gettleman's

reasoning and find that the Water Rec. Dist.'s claim for private nuisance should be dismissed.


For the reasons stated herein, Defendant North American's Motion to Dismiss is

GRANTED as to Count XI and Count XIII, and is DENIED as to Count XII and Count XIV.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: April 12, 2005