IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 04-2096

———————

E.I. DUPONT de NEMOURS AND COMPANY, et al.,
Plaintiffs-Appellants,

v.

UNITED STATES OF AMERICA, et al.,
Defendants-Appellees

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

———————

BRIEF FOR THE FEDERAL APPELLEES

———————

STATEMENT OF JURISDICTION

Appellants, collectively referred to herein as "DuPont," invoked district

court jurisdiction under 42 U.S.C. §9613(b) and 28 U.S.C. §1331. Plaintiffs'

Appendix ("PA") 68. The district court entered an order on March 1, 2004,

granting defendants' motion for judgment on the pleadings that decided all claims

as to all parties. PA11-13. DuPont filed a timely notice of appeal on April 19,

2004. PA1. This Court has jurisdiction under 28 U.S.C. §1291.

-2-

## STATEMENT OF THE ISSUES

In the district court, DuPont sued the United States seeking contribution for environmental cleanup costs under Section 113(f) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §9613(f). The district court dismissed the action due to DuPont's failure to demonstrate that it satisfied the prerequisites for bringing a Section 113(f) contribution action, which are either a pending or completed civil action under CERCLA Sections 106 or 107, *see* 42 U.S.C. §9613(f)(1), or an administrative or judicially approved settlement that resolves some or all of a person's liability to the United States or a State, *see* 42 U.S.C. §9613(f)(3)(B). The following questions are presented in this appeal:

1. Whether this Court should consider DuPont's claims raised for the first time on appeal seeking contribution under CERCLA Section 107(a)(4)(B), 42 U.S.C. §9607(a)(4)(B), or federal common law.

2. If the Court entertains DuPont's new claims, whether CERCLA Section 107(a)(4)(B) or federal common law provides a contribution right, independent of CERCLA Section 113(f), allowing a responsible party to seek contribution from another potentially responsible party in the absence of the express statutory prerequisites to contribution under Section 113(f).

-3-

3. Whether the district court erred in granting judgment on the pleadings when DuPont's sole claim in its complaint sought contribution under CERCLA Section 113(f) and DuPont did not allege or seek to amend its complaint to allege and did not produce any evidence showing the existence of a civil action or settlement that met the Section 113(f) preconditions at any of the 15 sites at issue.

## STATEMENT OF RELATED CASES

This proceeding has not been before this Court previously.  This case is related to *United States v. E.I. DuPont de Nemours and Co.*, 2d Cir. No. 04-5380, which is an action to recover response costs related to a site that is also at issue in this case.

## STATEMENT OF THE CASE

A.  <u>Nature of the case and proceedings below</u>. – On January 29, 1997, DuPont filed a three-count complaint against the United States and federal agencies seeking to recover costs DuPont has incurred in environmental cleanup efforts at fifteen ongoing industrial facilities located in eight different states. PA66-89.  DuPont alleged that during World War I or World War II the facilities manufactured products for the war efforts under contracts with the federal government.  PA71-85.  DuPont generally alleged that during World War I and World War II, and at various times before and after those wars, federal defendants

-4-

exercised substantial control over, or ownership of, the facilities and therefore were potentially responsible parties under CERCLA Section 107(a), 42 U.S.C. §9607(a). PA74-77,85.

Count one of the complaint alleged that under CERCLA Section 107(a), 42 U.S.C. §9607(a), the federal defendants are liable to DuPont for any necessary response costs incurred by DuPont. PA85-87. Count two alleged that pursuant to CERCLA Section 113(f), 42 U.S.C. §9613(f), DuPont is entitled to contribution from federal defendants for response costs incurred by DuPont with the allocation of costs to be determined by the court applying equitable factors. PA87. Count three alleged that DuPont is entitled to recoupment to set off any amounts DuPont might be found to owe the defendants with respect to each of the facilities. PA88.

On December 31, 1997, DuPont voluntarily dismissed counts one and three of the complaint without prejudice. PA91. Thus, the only remaining claim in the case was count two, the contribution claim under CERCLA Section 113(f). PA19.

The parties thereafter focused litigation efforts on a DuPont plant located in Louisville, Kentucky, essentially using that site as a test case. PA19. On December 30, 2003, the district court granted federal defendants' motion for summary judgment with respect to the Louisville site. The court held that preconditions for bringing a contribution action under Section 113(f) are a pending

-5-

or completed suit under CERCLA Section 106 or 107 as provided by Section 113(f)(1), or a settlement resolving liability to the United States or a State within the scope of Section 113(f)(3). DuPont met none of these preconditions with respect to the Louisville site and accordingly could not maintain its contribution claim under CERCLA Section 113(f) for that site. PA27.

On January 15, 2004, DuPont filed a motion requesting that the district court enter a Rule 54(b) judgment or, in the alternative, certify an appeal under 28 U.S.C. §1292. Appellees' Supplemental Appendix ("SA") at 55-78. The federal defendants responded with a cross-motion for judgment on the pleadings arguing that, absent an amendment of the complaint, the court should dismiss the claims rather than grant DuPont's motion because the requisite preconditions for bringing a Section 113(f) contribution action had not been alleged or otherwise been demonstrated to exist for the other sites. SA79-89. On March 1, 2004, following a hearing, the court granted judgment in favor of defendants for all sites and with respect to all claims. PA13. The court explained that as established by the court's December 30, 2003, order, DuPont's claims seeking contribution under Section 113(f) for costs incurred at other sites were deficient in the absence of an allegation or evidence that there were prior or pending Section 106 or 107 actions or Section 113(f)(3) settlements respecting those sites. PA7-9.

-6-

B. Statutory and regulatory background. –

1. CERCLA. – CERCLA provides the President (acting primarily through the Environmental Protection Agency ("EPA")), *see* Exec. Order No. 12,580, 3 C.F.R., 1987 Comp., p. 193, with alternative means for cleaning up contaminated property. Section 104, 42 U.S.C. §9604, authorizes EPA itself to undertake response actions to remove hazardous substances and provide appropriate cleanup, using the Hazardous Substance Superfund. *See United States v. Bestfoods*, 524 U.S. 51, 55 (1998). Alternatively, Section 106(a) authorizes EPA to compel, by means of an administrative order or a request for judicial relief, the responsible parties to undertake response actions, which the government then monitors. See 42 U.S.C. §9606(a).

Section 107(a)(4)(A) provides that four categories of covered persons – typically referred to as "potentially responsible parties" or "PRPs"[1] shall be liable for all costs of removal or remedial action incurred by the United States that are "not inconsistent with the national contingency plan." See 42 U.S.C. §9607(a)(4)(A). Whether the United States proceeds under Section 104 or Section

---

[1]    PRPs include (1) owners and operators of facilities at which hazardous substances are located; (2) past owners and operators of such facilities at the time hazardous substances were disposed of; (3) persons who arranged for disposal or treatment of hazardous substances; and (4) certain transporters of hazardous substances to the site. 42 U.S.C. §9607(a)(1)-(4).

-7-

106(a), the United States may recover its response costs from PRPs in an action under Section 107(a)(4)(A).

At a substantial number of contaminated sites, States have primary responsibility for cleanup or associated oversight. States too may seek to recover their costs under Section 107(a)(4)(A), or they may undertake or, under state law, compel cleanups and seek to recover their costs at non-federal facilities. See 42 U.S.C. §9620(a)(4).

Liability in a Section 107(a)(4)(A) action to recover response costs is joint and several, except to the extent that defendants can establish that the harm is divisible. *New Castle County v. Halliburton NUS Corp.*, 111 F.3d 1116, 1121 (3d Cir. 1997). Divisibility is a defense to joint and several liability. In a contribution action, liability is several, not joint and several, and response costs are equitably allocated; thus, divisibility is not a defense to a contribution action. *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1513-1514 (11th Cir. 1996).

Section 107(a)(4)(B) provides that PRPs shall be liable for "any other necessary costs of response incurred by any other person consistent with the national contingency plan." The courts of appeals have ruled that persons who are not themselves liable may clean up contaminated property and then invoke this provision to seek reimbursement from the same four categories of PRPs that are

-8-

subject to government cleanup or cost recovery actions.[2]  Ten courts of appeals,

including this one, have uniformly concluded, however, that a private PRP cannot

rely solely on Section 107(a)(4)(B) to seek recovery of response costs from another

PRP. *See New Castle County*, 111 F.3d at 1121-1123.[3]  The courts have held that

a private party that is subject to CERCLA liability is limited to seeking

contribution from other PRPs in accordance with the provisions of CERCLA

Section 113. *Id.;* cases cited n.3.

Section 113(f)(1), which Congress added as part of the Superfund

Amendments and Reauthorization Act of 1986 ("SARA"), Pub. L. No. 99-499, 100

Stat. 1613, provides:

> Any person may seek contribution from any other person who is liable
> or potentially liable under [Section 107(a)], during or following any

---

[2]    *See Matter of Reading Co.*, 115 F.3d 1111, 1120 (3d Cir. 1997); *Rumpke of Ind., Inc. v. Cummins Engine Co.*, 107 F.3d 1235, 1242-43 (7th Cir. 1997); *Redwing Carriers, Inc.*, 94 F.3d at 1496; *United Techs. Corp. v. Browning-Ferris Indus.*, 33 F.3d 96, 100 (1st Cir. 1994); *Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d 761, 764 (7th Cir. 1994).

[3]    *See also Bedford Affiliates v. Sills*, 156 F.3d 416, 423-425 (2d Cir. 1998); *Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp.*, 153 F.3d 344, 356 (6th Cir. 1998); *Pneumo Abex Corp. v. High Point, Thomasville & Denton R.R.*, 142 F.3d 769, 776 (4th Cir. 1998); *Dico, Inc. v. Amoco Oil Co.*, 340 F.3d 525, 530-531 (8th Cir. 2003); *Pinal Creek Group v. Newmont Mining Corp.*, 118 F.3d 1298, 1301 (9th Cir. 1997); *Redwing Carriers*, 94 F.3d at 1496;  *United States v. Colorado & E. R.R.*, 50 F.3d 1530, 1534-36 (10th Cir. 1995); *United Techs. Corp.*, 33 F.3d at 103; *Akzo*, 30 F.3d at 764.

-9-

civil action under [Section 106] or under [Section 107(a)]. * * *
Nothing in this subsection shall diminish the right of any person to
bring an action for contribution in the absence of a civil action under
[Section 106] or [Section 107].

42 U.S.C. §9613(f)(1). Section 113(f)(3)(B) provides a second avenue for seeking

contribution, stating:

A person who has resolved its liability to the United States or a State
for some or all of a response action or for some or all of the costs of
such action in an administrative or judicially approved settlement may
seek contribution from any person who is not party to a settlement
referred to in paragraph (2).

42 U.S.C. §9613(f)(3)(B).

Section 113(f)(2) states that a party that resolves its liability to the United

States or a State through an administrative or judicially approved settlement shall

not be subject to contribution "regarding matters addressed in the settlement." 42

U.S.C. §9613(f)(2).

    2. The Resource Conservation and Recovery Act ("RCRA") – Prior to

enacting CERCLA, Congress in 1976 had enacted the Resource Conservation and

Recovery Act ("RCRA"), 42 U.S.C. §§6901-92k, to address serious environmental

and health dangers arising from the generation, management, and disposal of waste

at active sites. RCRA's primary purpose is regulatory: it regulates the storage,

transportation, and disposal of hazardous wastes through a permit system that

-10-

applies to active storage, treatment, or disposal facilities and to such facilities that

closed after November 19, 1980. 42 U.S.C. §6925(a). RCRA permits are issued

either by EPA or by a State with an approved program. Although RCRA Subtitle

C focuses on the management of existing and future hazardous waste handling

activities, RCRA permits allowing continued operation of a hazardous waste

facility require "corrective action" for releases of hazardous waste from any "solid

waste management unit" at a facility (*e.g.*, landfill, lagoon, settling pond,

incinerator, drum accumulation area, etc.), regardless of when the waste was

deposited. 42 U.S.C. §§6924(u), 6928.

        C. Statement of the Facts. – DuPont currently owns and operates a plant in

Louisville, Kentucky, that manufactures neoprene, a synthetic rubber product, and

other products. The United States owned the plant from 1942-1948, when DuPont

bought it, but DuPont has operated it since its inception in 1942. While conducting

manufacturing operations at the plant, DuPont has generated and disposed of

hazardous waste at the site. As a result, various areas within the site have become

contaminated. The plant is regulated under RCRA because it is an ongoing

hazardous waste, treatment, storage and disposal facility. The cleanup work for

which DuPont seeks contribution from the United States was incurred to comply

with RCRA requirements. SA2-3,15.

-11-

Neither EPA nor the State has filed a civil action involving the plant under CERCLA Sections 106 or 107. DuPont has not alleged that is has entered into a judicial or administrative settlement respecting the site that is within the scope of CERCLA Section 113(f)(3)(B).

DuPont's claim seeking contribution against the United States under CERCLA Section 113(f) stems from the six-year period, 1942-1948, when, at the start-up of plant operations during World War II, the United States owned the plant, while DuPont operated it. PA96. Approximately 97 percent of total production at the site has occurred in the 57-year period since DuPont bought the site in 1948. SA42-46. DuPont's production of neoprene greatly increased during the 1950s. SA42-43. In 1955, DuPont commenced production of fluoroproducts that led to the creation of new waste streams and contaminated areas. SA18, 43-46.

DuPont has disposed of waste in many locations throughout the site that were not utilized for waste disposal in the 1940s. SA21-32. For example, beginning in the 1950s, DuPont began to dispose of waste into what would ultimately become a vast landfill; DuPont nonetheless seeks to have the United States contribute funds towards cleanup of this landfill. SA21-22. DuPont also

-12-

seeks to have the United States contribute funds towards cleanup costs associated
with basins located on property that DuPont purchased in 1952. SA20-21.

     D. The Supreme Court decision in *Cooper v. Aviall*. – As described above,
the United States moved for summary judgment with respect to the Louisville site
on the ground, *inter alia*, that a contribution claim could not be brought under
Section 113(f)(1) in the absence of a pending or completed civil action under
CERCLA Sections 106 or 107. While this suit was pending before the district
court, the United States Supreme Court granted a petition for a writ of certiorari in
*Aviall Servs., Inc. v. Cooper Indus., Inc.*, 312 F.3d 677 (5th Cir. 2002), cert.
granted, 540 U.S. 1099 (2004), to address "whether a private party who has not
been sued under §106 or §107(a) may nevertheless obtain contribution under
§113(f)(1) from other liable parties." [4] *Cooper Indus., Inc. v. Aviall Servs., Inc.*
*("Cooper")*, 125 S. Ct. 577, 580 (2004). The Supreme Court held "that it may
not." 125 S. Ct. at 580. The Court expressly declined to decide whether a PRP
could bring a stand-alone claim seeking partial recovery of response costs or

---

[4]    The district court entered judgment after the Supreme Court granted
certiorari, but before it rendered a decision in *Cooper*. At DuPont's request, this
Court stayed briefing of the appeal pending the Supreme Court's disposition in
*Cooper*.

-14-

Contrary to DuPont's contention, Section 107(a)(4)(B) does not expressly or impliedly provide a private PRP with a separate contribution remedy in the absence of a Section 106 or 107(a) civil action or settlement with a State or federal government. Such a result is contrary to statutory construction principles disfavoring implication of remedies that subsume those Congress has expressly provided in an elaborate statutory scheme. Furthermore, DuPont's interpretation would render Section 113(f) superfluous. The savings clause in Section 113(f)(1) is not properly read to preserve an independent, all-encompassing contribution right inferred from Section 107(a)(4)(B) that would allow private PRPs to bring contribution actions against other PRPs at any time. If the savings language had that effect, Congress' creation of the explicitly-limited contribution remedies under Section 113(f) would have been pointless.

The legislative history of Section 113(f) demonstrates that Congress enacted Section 113(f) to eliminate uncertainty regarding the availability of contribution under CERCLA and intended that the mechanisms of Section 113(f) thereafter govern contribution actions brought under CERCLA. This interpretation is reinforced by the fact that the preconditions on contribution set forth in Section 113(f) conform to the traditional limitations placed on contribution. Other statutory provisions on which DuPont relies lend no support to the theory that a

-15-

stand-alone contribution action can be brought under Section 107(a)(4)(B) unfettered by Section 113(f) prerequisites. Nor can DuPont rely on policy arguments to override the result dictated by statutory construction principles.

DuPont also cannot bring a contribution claim against the United States under federal common law. Well-established principles governing waivers of sovereign immunity preclude a court from creating a non-statutory right of contribution against the United States. Congress never intended to authorize courts to create a common law right of contribution that would be available when the express right Congress provided in CERCLA Section 113(f) would not.

Finally, the district court appropriately entered judgment on the pleadings because DuPont failed to allege or to seek to amend its complaint to allege, or to otherwise demonstrate in its pleadings, the existence of a civil action or settlement related to any of the 15 sites at issue that would satisfy the preconditions for contribution under Section 113(f).

-16-

ARGUMENT

I

THIS COURT SHOULD DECLINE TO ADDRESS DUPONT'S CLAIMS
FOR CONTRIBUTION UNDER CERCLA SECTION 107(a)(4)(B)
AND FEDERAL COMMON LAW
BECAUSE IT DID NOT RAISE THESE CLAIMS BELOW

A. Standard of review. DuPont urges this Court to consider and decide

whether it may bring contribution claims under CERCLA Section 107(a)(4)(B) or

federal common law, independent of CERCLA Section 113(f), even though it did

not allege these claims below. This Court's review of an issue not raised in the

trial court is necessarily plenary.

B. This Court should not consider DuPont's newly-raised claims under an

exception for intervening changes in law. – "Although [this Court] has discretion

to review an argument not raised below, [it] will ordinarily refuse to do so."

*Gardiner v. Virgin Islands Water & Power Authority*, 145 F.3d 635, 647 (3d Cir.

1998); *see also Singleton v. Wulff*, 428 U.S. 106, 120 (1976); *Hormel v. Helvering*,

312 U.S. 552, 556 (1941). In this instance, the Court should follow the general

rule and refuse to consider DuPont's newly-raised claims.

Citing *Salvation Army v. N.J. Dept. of Community Affairs*, 919 F.2d 183, 196

(3d Cir. 1990), DuPont contends (Br. 20), that this case falls within an intervening

-17-

law exception to the rule that an appellate court will not consider issues not raised

below. Although legal developments culminating in the Supreme Court's decision

may have clarified pre-existing assumptions concerning the prerequisites for a

valid Section 113(f)(1) contribution action, that development simply means that the

district court correctly held that DuPont's Section 113(f) claim is not viable. That

the intervening Supreme Court decision dooms DuPont's claim for contribution

under Section 113(f) does not, however, provide warrant for raising entirely new

claims on appeal. *Cf. United States v. Washington*, 12 F.3d 1128, 1139 (D.C. Cir.

1994) (supervening decision doctrine allows consideration of waived issues when

the supervening decision has changed the law in appellant's favor).

   *Salvation Army* considered a theory that plaintiff had asserted in its

complaint and never withdrawn, yet had largely ignored until a Supreme Court

decision rendered while the case was on appeal provided "direct support" for the

revived theory. 919 F.2d at 185-186, 196. There are critical differences between

that case and this one.[9] First, although a Section 107(a) claim appeared in

_____

[9]    The other cases on which DuPont relies (Br. 20) are also distinguishable. In
*Empagran S.A. v. F. Hoffman-LaRouche, Ltd.*, 388 F.3d 337, 339, 345 (D.C. Cir.
2004), the D.C. Circuit decided to consider an alternative theory expressly left
open by the Supreme Court's decision vacating the court of appeals' judgment in
that case because the Supreme Court suggested it would be appropriate for the
court of appeals to decide an open, alternative claim appellants had pled and raised
before the district court and before the court of appeals. *Snaido v. Bank Austria,*

-18-

DuPont's complaint, shortly thereafter DuPont voluntarily dismissed that claim, thus formally removing it from the complaint and case. PA92.

Second, *Cooper* marks no change in the law with respect to the Section 107(a)(4)(B) or federal common law claims that DuPont now seeks to raise for the first time on appeal. *Cooper* did not address the availability of a federal common law claim for contribution at all. Even though the plaintiff in *Cooper* had pled both Section 107 and Section 113 as the basis for contribution, the Supreme Court in *Cooper* expressly declined to take up or decide whether a stand-alone contribution claim under Section 107 is viable because the issue had not been addressed by the courts below, was beyond the question presented, and had not been briefed. 125 S. Ct. at 585-586.[9]

The Supreme Court also expressly declined to consider whether this Court's and the other nine courts of appeals' holdings that a PRP cannot sue another PRP

---

378 F.3d 210, 212-13 (2d Cir. 2004), was also a case on remand from the Supreme Court. Although the Second Circuit considered an alternative theory raised for the first time on remand from the Supreme Court, the court of appeals summarily rejected the alternative claim.

[9] The Supreme Court declined to decide whether the plaintiff had waived any free-standing Section 107 claim, leaving that issue to be decided on remand. 125 S. Ct. at 584-585. Contrary to DuPont's suggestion (Br. 19 n.3), there is no open question of waiver here. DuPont dismissed the Section 107(a) claim it initially pled; it is not even clear whether that claim sought contribution or imposition of joint and several liability.

-19-

for contribution under Section 107(a)(4)(B) are correct. 125 S. Ct. at 585, 586.

Thus, those decisions are not overruled and remain binding precedent. *See*

*Wauksesha v. Viacom International* Inc., __ F. Supp.2d __, 2005 WL 712423 (E.D.

Wis. March 23, 2005); *Elementis Chemicals Inc. v. TH Agriculture and Nutrition*,

LLC, 2005 WL 236488 (S.D. N.Y. Jan. 31, 2005); *AMW Materials Testing, Inc. v.*

*Town of Babylon*, 348 F. Supp.2d 4 (E.D. N.Y. 2004); *cf. Young v. United States*,

394 F.3d 858, 862-863 (10th Cir. 2005) (assuming in <u>dicta</u> that decision remains

binding).[2]

Moreover, neither the outcome nor the analysis in *Cooper* calls those

decisions into question. Contrary to DuPont's suggestion (Br. 45-49), the appellate

decisions that PRPs may not bring contribution claims under Section 107(a)(4)(B)

did not turn on an assumption that a Section 113(f) contribution claim could be

---

[2]      But see *General Motors Corp. v. United States*, 2005 WL 548266 (D. N.J. March 2, 2005) (stating ample reasons exist to conclude that granting leave to amend complaint to assert a contribution claim under Section 107 would be futile under controlling law, but allowing amendment because question might be revisited by the Third Circuit); *Metropolitan Water Reclamation Dist. v. Lake River* Corp., No. 03C0754 (N.D. Ill. April 12, 2005) (unpublished decision attached in addendum); *Vine Street v. Keeling*, 2005 WL 675786 (E.D. Tex. March 24, 2005) (holding that PRP can bring a claim against another PRP under Section 107(a) even though it may not state a claim for relief under Section 113(f)). That decision provides little analysis and the Fifth Circuit is not among the courts of appeals that have held that a contribution action must be brought under Section 113, not 107; thus, the question appears open in that circuit.

-20-

initiated in the absence of a Section 106 or 107 civil action or a Section

113(f)(3)(B) settlement.  Thus, *Cooper* provides no basis for overruling prior

Circuit precedent.

Finally, DuPont had ample opportunity and reason to raise in the district

court the Section 107(a)(4)(B) and federal common law claims it now advances.

DuPont suggests (Br. 19) that it reasonably abandoned its Section 107(a) claim

because the law in this Circuit was clear that it could maintain a contribution action

under Section 113(f)(1) in the absence of a pending or completed civil action under

Section 106 or 107.  In fact, it was not.  Significantly, before the district court

entered a final appealable judgment in this case, the lower court decisions in

*Cooper* and in this and other cases made it apparent that the viability of DuPont's

Section 113(f) claim was very much in doubt.[9]  In contrast to the current

suggestion that the law was settled that it could bring its action under Section

113(f), DuPont told the district court in the context of asking for a Rule 54(b)

---

[9]    Before the district court entered final judgment in this case, a district court
and panel of the court of appeals had decided in *Cooper* that a claim for
contribution could <u>not</u> be brought under Section 113(f)(1) unless the party seeking
contribution was subject to a pending or prior Section 106 or 107 action; the en
banc court had reversed; and the Supreme Court had granted certiorari.  *Aviall
Services, Inc. v. Cooper Industries, Inc.*, 2000 WL 31730 (N.D. Tex. Jan. 31,
2001), aff'd by the panel, 263 F.3d 134 (5th Cir. 2001), rev'd by the en banc court,
312 F.3d 667 (5th Cir. 2002), cert. granted, 540 U.S. 1099 (2004), rev'd, 125 S. Ct.
577 (2004) .

-21-

judgment or for certification under 28 U.S.C. 1292(b) that this case involved a "novel issue" and that "the issue regarding when and under what circumstances a contribution claim lies pursuant to CERCLA Section 113(f) had not been definitively addressed by the Third Circuit." SA66, 70.

DuPont also had reasonable opportunities, that it declined to pursue, to present its new theories for contribution in district court. For example, after the district court issued the interlocutory order in December 2003 correctly interpreting Section 113(f)(1), DuPont could have sought to amend its complaint to advance a different claim or theory of liability. The United States urged that DuPont either amend its complaint or suffer dismissal of its claims with respect to the other 14 sites. SA102; PA231. The United States alternatively suggested that the district court proceedings in this case be stayed pending Supreme Court review in *Cooper*. SA87-88. A stay would have provided the district court an opportunity to consider in the first instance a request to amend the complaint and *Cooper*'s impact on the case.

DuPont did not seek to amend its complaint and affirmatively opposed a stay of proceedings in the district court pending the outcome in *Cooper*. SA 95-96; PA233. Thus, DuPont deliberately chose to forego raising alternative theories and forged ahead with only a Section 113(f) contribution claim.

-22-

C. DuPont's other reasons for urging an exception to the rule against raising issues for the first time on appeal are not compelling. – DuPont suggests (Br. 15) that this Court should consider the new claims because they are correct on the merits. While "there are circumstances in which a federal appellate court is justified in resolving an issue not passed on below, as where the proper resolution is beyond any doubt," *Singleton*, 428 U.S. at 121, this is not one of them. As explained in Section II below, DuPont is not correct on the merits. Moreover, ten courts of appeals have uniformly held that a private PRP cannot bring a contribution action against another PRP under Section 107(a)(4)(B).

DuPont also suggests (Br. 17-18) that consideration of its new claims is appropriate because "implicit" in the district court's "analysis" is an interpretation that a viable contribution claim preserved by the savings clause of Section 113(f)(1) cannot arise under Section 107(a)(4)(B). While the district court opinion discusses the savings clause in Section 113(f)(1) and opines that an action brought pursuant to that provision would have to meet the traditional common law understanding of contribution (PA29-38), this discussion is dicta and, in any event, does not explicitly address a contribution claim brought under Section 107(a)(4)(B). The rule against raising new claims on appeal "is particularly apt when dealing with an appeal from a grant of summary judgment, because the

-23-

material facts are not in dispute and the trial judge considers only opposing legal theories." *Tele-Communications, Inc. v. Commissioner*, 104 F.3d 1229, 1232-33 (10th Cir.1997). DuPont cannot circumvent the rule requiring it to raise its arguments in the trial court by suggesting that in granting summary judgment the district court "implicitly" rejected a claim DuPont never raised.

Finally, DuPont argues (Br. 18-19) that this Court should decide its new claims because they involve purely legal issues. While the issues may be purely legal, the effect of their resolution on this case is unclear because DuPont simultaneously argues (Br. 58-59) that it can meet the Section 113(f) prerequisites at unspecified sites. In any event, the general rule requiring issues to be raised in district court, rather than for the first time on appeal, is not limited to factual issues. *E.g., Young*, 394 F.3d at 861 n.2. Moreover, this Court has expressed more willingness to decide the merits of a new legal issue when it is advanced as a basis for affirmance, rather than reversal. *See Altman v. Altman*, 653 F.2d 755, (3d Cir. 1981); *cf. Casson Corp. v. Ingersoll-Rand Co.*, 622 F.2d 672, 680 (3d Cir. 1980) (we "have held on numerous occasions that a trial court should not be reversed on grounds that were never urged or argued in the court below"). [9]

---

[9]    In the only published majority opinion cited by DuPont for this argument (Br. 19), this Court resolved a legal issue that provided an alternative ground for affirmance. *See In re Ben Franklin Hotel Assocs.*, 186 F.3d 301, 306 (3d Cir.

-24-

In sum, there are no exceptional circumstances that justify this Court's consideration of DuPont's claims raised for the first time on appeal. Accordingly, this Court should not consider the merits of these claims.

## II

## A PRP MAY NOT BRING A CONTRIBUTION ACTION AGAINST ANOTHER PRP UNDER SECTION 107(a)(4)(B) OR FEDERAL COMMON LAW THEREBY AVOIDING THE PRECONDITIONS FOR A CONTRIBUTION CLAIM UNDER SECTION 113(f)

A. Standard of review. – Because DuPont did not raise the Section 107 and federal common law claims below and the district court did not address them, this Court's review of these issues is necessarily plenary. Statutory interpretation is a question of law reviewed de novo. *Daniel S. v. Scranton School Dist.*, 230 F.3d 90, 97 (3d Cir. 2000).

B. Contribution claims may be brought under CERCLA only when the prerequisites set forth in Sections 113(f)(1) or 113(f)(3) are met. – DuPont's claim against the United States is properly characterized as one for contribution and thus within the ambit of Section 113(f). "[T]he term 'contribution' is a standard legal term that refers to a claim 'by and between jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make.'"

---

1999).

-25-

*New Castle County*, 111 F.3d at 1121 (quoting *United Techs. Corp.*, 33 F.3d at 99, quoting *Akzo Coatings*, 30 F.3d at 764).[19] This and other courts of appeal have concluded that a CERCLA claim by a PRP against another PRP is necessarily for contribution.  *See New Castle County*, 111 F.3d at 1120; *Matter of Reading*, 115 F.3d at 1121; *Pinal Creek Group*, 118 F.3d at 1303 (and cases cited therein).

"[A] right to contribution [under federal law] may arise in either of two ways: first, through the affirmative creation of a right of action by Congress, either expressly or by clear implication; or, second, through the power of federal courts to fashion a federal common law of contribution." *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 638 (1981).  There is no question that Congress expressly created a right to contribution under CERCLA.  As its plain language indicates, Section 113(f) is concerned with contribution and expressly confirms the existence of such right.  However, Section 113(f) also expressly imposes preconditions that must be satisfied to bring suit under Section 113(f).  The question raised by DuPont is whether Congress created and preserved a contribution remedy under Section 107(a)(4)(B), independent of Section 113(f), that allows a PRP to initiate a contribution action under CERCLA in the absence of

---

[19]    See also *Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp.*, 153 F.3d at 350-351 (looking to traditional concept of contribution); *Colorado & Eastern R.R.*, 50 F.3d at 1536 (citing Restatement (Second) of Torts § 886A (1979)).