-26-

a Section 106 or 107(a) civil action or settlement with a State or federal government.

CERCLA is properly interpreted to limit a PRP to seeking contribution in the manner authorized by Section 113(f). Sections 107(a)(1)-(4)(B) and Section 113 should be read in conjunction. See cases cited nn.2, 3 *supra*; see also *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221(1991) (congressional enactments should be construed in light of the "the cardinal rule that a statute is to be read as a whole"). While Section 107(a)(4)(B)'s reference to "any other person" is broad enough to render a PRP liable for another PRP's response costs, Section 107(a)(4)(B) does not describe what form that liability should take. Section 113 addresses the issue by expressly recognizing a right of contribution and providing the details as to when and under what circumstances a PRP may initiate and maintain an action in contribution under CERCLA against another PRP. Thus, as this and nine other courts of appeals have held, after the addition of Section 113 by SARA, a CERCLA contribution action is governed by Section 113. *See Matter of Reading*, 115 F.3d at 1118-1121; *New Castle County*, 111 F.3d at 1122; cases cited *supra* at n.3. As we elaborate below, this interpretation is compelled by principles governing statutory construction and implication of private remedies, and the historical background and legislative history leading to Section 113(f)'s enactment.

-27-

1.  Section 107(a)(4)(B) does not expressly confer a right to bring a

contribution claim independent of Section 113. – DuPont suggests (Br. 25-27) that

a right in contribution expressly arises from the language of Section 107(a)(4)(B)

providing that an owner, operator,  and "any person" [who arranges, accepts, or

transports hazardous wastes] "shall be liable" for "any other necessary costs of

response incurred by any other person consistent with the national contingency

plan." While this language describes liable parties, there is no express mention of

contribution. *See Matter of Reading*, 115 F.3d at 1118 (recognizing that Section

107(a)(4)(B) lacks any express mechanism by which one party could recover from

another for paying more than its pro rata share of cleanup costs).[1]  Congress spoke

to the right of contribution in Section 113. Thus, it is only when Section

107(a)(4)(B) and Section 113(f) are read together, that an express right to

contribution becomes manifest. *See New Castle County*, 111 F.3d at 1122.

    The only authority DuPont cites (Br. 26) in support of the suggestion that

Section 107 provides an express right of contribution, independent of Section

113(f), is a dissenting opinion in *Key Tronic Corp. v. United States*, 511 U.S. 809,

_____

[1]    The conclusion that Section 107 does not provide an express right to
contribution is confirmed by the 1980 legislative history:  Congress considered
contribution provisions but rejected them prior to passage of Section 107.  See 126
Cong. Rec. 30,909 (Nov. 24, 1980); 126 Cong. Rec.  26,780-26,784 (Sept. 23,
1980).

-28-

822 (1994).[12] This is hardly persuasive since the majority in *Key Tronic* stated in

dicta that Section 107 does not expressly provide private parties with a right of

contribution.[13]

2. There is no implied right to a Section 107(a)(4)(B) stand-alone

contribution action. – Alternatively, DuPont contends that Section 107(a)(4)(B)

creates, and the savings clause in Section 113(f)(1) preserves, an implied private

right of contribution that allows it to bring a contribution remedy against another

---

[12]    Moreover, the dissenting opinion states only that Section 107 expressly
creates a "right of action." It does not state it is a right of action for contribution
and does not address what limitations or preconditions might govern any
contribution action under Section 107.

[13]    The majority observed that Section 107

> merely says that "A shall be liable" without revealing *to
> whom* A is liable. Sections 104 and 106 plainly indicate
> that the parties described in §107 are liable to the
> Government. The statute thus expressly identifies the
> Government as a potential plaintiff and only impliedly
> identifies private parties as the hypothetical B in §107
> litigation. That §107 imposes liability on A for costs
> incurred "by any other person" *implies* – but does not
> expressly command – that A may have a claim for
> contribution against those treated as joint tortfeasors.

511 U.S. at 818 n. 11 (emphasis in original). In *Cooper*, the Supreme Court
majority stated that the question of a stand-alone Section 107 contribution action
should not be decided on the basis of this dictum and noted that the passage had
not classified the right between joint tortfeasors as one for cost recovery or
contribution. 125 S. Ct. at 585-586.

-29-

PRP at any time. In *Key Tronic*, 511 U.S. 818, and again in *Cooper*, 125 S. Ct. at 586, the Court called attention to the fact that it had visited the subject of implied rights of contribution before, citing *Texas Industries*, 451 U.S. at 638-647, and *Northwest Airlines, Inc. v. Transport Workers*, 451 U.S. 77, 90-99 (1981). In both instances, the Court declined to find implied rights of contribution. *Cooper* also stated that pre-SARA cases indicating that Section 107 created an implied right of contribution were "debatable" in light of *Texas Industries* and *Northwest Airlines*. 125 S. Ct. at 581.

Ultimately the question here is whether, after enactment of Section 113(f), Congress intended that CERCLA Section 107(a)(4)(B) provide a PRP an implied right to bring a contribution claim when the preconditions for contribution expressly set forth in Section 113(f) are not met. 451 U.S. at 91. Factors relevant to this inquiry are the language of the statute itself, its legislative history, the underlying purpose and structure of the statutory scheme, and the likelihood that Congress intended to supersede or to supplement existing remedies. *Northwest Airlines*, 451 U.S. at 91. These factors compel rejection of DuPont's theory that Section 107(a)(4)(B) provides an implied contribution right that is not subject to the preconditions for contribution prescribed by Section 113(f)(1) and (f)(3)(B).

-30-

a. The text of the statute does not support an implied right of contribution that would allow a contribution action without meeting the express preconditions set forth in Section 113(f)(1) and 113(f)(3)(B). – DuPont argues (Br. 28-29) that the language of Section 107(a)(4)(B) supports the implication of a private right to contribution in the absence of a prior or pending CERCLA civil action or Section 113(f)(3)(B) settlement.  However, the existence of a provision dictating the contours of a contribution remedy, combined with the absence of any express contribution right in Section 107, weighs heavily against the recognition of an implied right of contribution under Section 107(a)(4)(B) that is not subject to the express limitations on contribution provided by Section 113(f).

The Supreme Court has warned against the judicial implication of private rights of action not specifically authorized by Congress. *See, e.g., Alexander v. Sandoval*, 532 U.S. 275, 287-288 (2001); *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 67 & n.3 (2001); *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283-284 (2002).  The Court has instructed  that "[i]n the absence of strong indicia of a contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate." *Middlesex County Sewerage Authority v. National Sea Clammers Assoc.*, 453 U.S. 1, 15  (1981).  Similarly, the Court has stated that "where Congress has provided 'elaborate

-31-

enforcement provisions' for remedying the violation of a federal statute, as Congress has done with RCRA and CERCLA, 'it cannot be assumed that Congress intended to authorize by implication additional judicial remedies for private citizens suing under' the statute." *Mehrig v. KFC Western, Inc.*, 516 U.S. 479, 488-89 (1986), quoting *Middlesex County Sewerage Authority*, 516 U.S. at 14-15; *Northwest Airlines*, 451 U.S. at 93-94 (express statutory provisions allowing private enforcement "in certain carefully defined circumstances" and enforcement by the federal government in other circumstances, "strongly evidence[] an intent not to authorize additional remedies"). Finally, it is an "elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Transamerica Mortgage Advisors, Incl v. Lewis*, 444 U.S. 11, 19 (1979); *see also Mehrig*, 516 U.S. at 488; *Northwest Airlines*, 451 U.S. at 95 n. 34. In *Northwest Airlines*, the Court stated that the "'frequently stated principle of statutory construction [] that when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies'" applied with full force to a putative implied right to contribution. 451 U.S. at 94 n.30, quoting *National Railroad Passenger Corp. v. National Assoc. of Railroad Passengers*,

-32-

414 U.S. 453, 458 (1974).[14]  In light of these governing principles, it would be incorrect to focus on the language of Section 107(a)(4)(B) alone to determine if it creates an implied contribution right. *See also Koons Buick v. Bradley*, 125 S. Ct. 460, 466 (2004), quoting *United Sav. Assn. of Tex. v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 371 (1988) ("Statutory construction is a 'holistic endeavor'").

Even if the language of Section 107(a)(4)(B) were sufficiently broad and ambiguous to imply a contribution right, the fact that Section 113(f) expressly addresses and defines the procedural preconditions and parameters for a contribution remedy strongly evidences that Section 107(a)(4)(B) does not provide a stand-alone contribution remedy that is not subject to the preconditions on

---

[14]    In *Northwest Airlines*, the Court stated that the omission of an express right of contribution in favor of employers is not dispositive if, among other things, the language of a statute indicates that it was enacted for the special benefit of a class of which petitioner is a member. 451 U.S. at 91-92. DuPont asserts (Br. 29) that Section 107(a)(4)(B) was enacted for the special benefit of parties who are responsible for creating the hazardous waste dumps and who have incurred costs in cleaning them up.  However, in *Northwest Airlines*, the Court looked to the statutes as a whole, rather than isolated provisions, and concluded that neither the Equal Pay Act or Title VII of the Civil Rights Act were enacted for the benefit of employers even though some isolated provisions arguably were intended to provide special protection for them. 451 U.S. at 92-93. Similarly here, parties responsible for creating hazardous waste sites who have paid more than their equitable share are not "members of the class for whose especial benefit" CERCLA as a whole was enacted. *Northwest Airlines*, 451 U.S. at 92.

-33-

contribution set forth in Section 113(f). *See Koons Buick*, 125 S. Ct. at 467 ("a

provision that may seem ambiguous in isolation is often clarified by the remainder

of the statutory scheme"). Thus, even if pre-SARA courts correctly allowed

contribution claims based solely on a contribution right implied from Section 107,

that implication and result is necessarily altered by SARA's addition of the express

contribution remedy. *Cf. U.S. v. Fausto*, 484 U.S. 439, 451-55 (1988) (judicial

task of reconciling laws enacted over time necessarily assumes that implications of

an earlier statute may be altered by implications of a later statute). Stated

differently, after SARA, any right to contribution under CERCLA that can be

implied from the language of Section 107(a)(4)(B) is qualified by the express

limitations on a contribution remedy set forth in Section 113(f).

Furthermore, DuPont's claim that Section 107(a)(4)(B) provides an

independent right to contribution in the absence of a Section 106 or 107 civil

action or settlement is untenable because it renders Section 113(f)(1) and Section

113(f)(3)(B) unnecessary and superfluous. *See Hohn v. United States*, 524 U.S.

236, 249 (1998) ("We are reluctant to adopt a construction making another

statutory provision superfluous."). DuPont's interpretation produces the absurd

result that Congress expressly designated two avenues by which a liable party may

seek contribution for cleanup costs under Section 113(f), while at the same time

-34-

allowing a contribution claim to be brought under Section 107 when the preconditions for those avenues are not satisfied.

The savings language in Section 113(f)(1) does not change this result. The savings language does not create a right to contribution; it simply preserves whatever independent rights to contribution, if any, exist outside of CERCLA such as under state law or other statutes.[15] There is no evidence in the legislative history, statutory language, or structure of CERCLA indicating that Congress added the savings clause in Section 113(f)(1) to preserve a version of contribution under Section 107(a)(4)(B) that would permit PRPs to circumvent the express preconditions for seeking contribution under Section 113(f)(1) and 113(f)(3). It would have been pointless for Congress to create an explicitly limited right to contribution under Section 113(f) if, at the same time, the "savings" clause were intended to preserve an all-encompassing "contribution" remedy under the same Act that would allow all persons potentially liable under Section 106 or 107 to bring a contribution action at any time. As the Supreme Court stated in *Cooper*:

---

[15]    In our view, the savings language of Section 113(f)(1) is properly read as generally preserving state contribution remedies except in the case of an actual conflict with the CERCLA scheme. *Cf. Reading,* 115 F.3d at 117 (holding that state contribution remedies that actually conflict with CERCLA are preempted, but stating that CERCLA does not explicitly preempt all state law nor create a comprehensive scheme that leaves no room for state law).

-35-

"There is no reason why Congress would bother to specify conditions under which a person may bring a contribution claim, and at the same time allow contribution actions absent those conditions." 125 S. Ct. at 583.

In sum, when the statutory text is considered as a whole and in light of governing principles, it does not support an interpretation that would allow DuPont to bring a stand-alone, implied right of contribution under Section 107(a)(4)(B) whenever it fails to satisfy the prerequisites for contribution set forth in Section 113(f).

b. The legislative history of SARA shows that Congress intended for Section 113 to govern all contribution actions brought under CERCLA . – Before CERCLA was amended by SARA in 1986, "it was not clear whether a potentially responsible person under section 107 could recover from other potentially responsible persons that portion of its clean-up costs that exceeded its fair share." *New Castle County*, 111 F.3d at 1122. Pre-SARA, district courts were divided on the questions of whether there was an implied right to contribution under CERCLA, the source of such authority, and the timing for such actions.[16]

_____

[16]    *See, e.g., United States v. New Castle County*, 642 F. Supp. 1258, 1261-1269 (D. Del. 1986) (no express or implied right to contribution under Section 107, but authority for right under federal common law); *Bulk Distribution Centers, Inc. v. Monsanto Co.*, 589 F. Supp. 1437, 1444 (S.D. Fla. 1984) ("While private cost recovery actions are permissible under CERCLA, courts disagree on when a

-36-

The legislative history of SARA demonstrates that Congress sought to eliminate uncertainty regarding the availability of contribution under CERCLA by squarely addressing the question in newly-enacted Section 113(f). Congress intended that Section 113(f) clarify and confirm a right to contribution.[17] The legislative history confirms that Congress meant to permit contribution only when the underlying liability had been or was in the process of being resolved. For example, the House Report states:

> The section should encourage private party settlements and cleanups. Parties <u>who settle</u> for all or part of a cleanup or its costs, <u>or who pay judgments</u> as a result of litigation, can attempt to recover some portion of their expenses and obligations in contribution litigation from

---

claimant may commence its lawsuit."); *United States v. Westinghouse Electric Corp.*, 1983 WL 160587 (S.D. Ind. 1983) (no right to contribution); *City of Philadelphia v. Stepan Chemical Co.*, 544 F. Supp. 1135 (E.D. Pa. 1982) (permitting City, the land owner, to pursue claim for response costs against responsible parties under Section 107); *City of New York v. Exxon*, 633 F. Supp. 609, 615 (S.D. N.Y. 1986)(same); cases cited *infra* at 39-40.

[17] *See* H.R. Rep. No. 99-253(I), at 79 (1985), <u>reprinted in</u> 1986 U.S.C.C.A.N. 2835, 2861 ("This section clarifies and confirms the right of a person held jointly and severally liable under CERCLA to seek contribution from other potentially liable parties, when the person believes that it has assumed a share of the cleanup or cost that may be greater than its equitable share under the circumstances."); S. Rep. No. 99-11, at 43 (1985) (the bill "clarifies and confirms existing law" by adding a contribution provision); 131 Cong. Rec. 24450 (1985) (statement of Sen. Stafford) (amendment of statute would "remove[] any doubt as to the right of contribution . . . amendment is necessary because the Supreme Court, in recent decisions, has refused to imply a right of contribution under other statutes unless expressly stated").

-37-

parties who were not sued in the enforcement action or who were not parties to the settlement.

H.R. Rep. No. 99-253 (I), reprinted in U.S.C.C.A.N. at 2862.

Based on this background and the legislative history, this Court stated in *Matter of Reading*: "In passing §113(f), Congress acted to codify existing federal common law . . . . Thus, the language of §113(f), permitting contribution, replaced the judicially created right to contribution under §107(a)(4)(B)." 115 F. 3d at 1119. Similarly, in *New Castle County* this Court explained:

> [P]rior to the passage of SARA and section 113, section 107 potentially responsible persons were required to rely upon an uncertain common law right of contribution. It was only upon passage of section 113 that these persons had a clear, statutory right to seek an equitable division of clean-up costs. The history and language of section 113 lend support to our conclusion that it, and not section 107, is the appropriate mechanism for obtaining a fair allocation of responsibility between two or more potentially responsible persons.

111 F.3d at 1122. Other courts of appeals have concurred that the legislative history supports the conclusion that Section 113 qualifies a right to contribution that pre-SARA courts had implied from Section 107, so that the contours and mechanics of any contribution action under CERCLA are governed and regulated by Section 113. *E.g., Pinal Creek Group*, 118 F.3d at 1302. Thus, after SARA, if a PRP cannot bring a CERCLA contribution claim in conformity with limitations on such actions imposed by Section 113(f), it cannot bring it under CERCLA at all.

-38-

DuPont asserts (Br. 33) that Congress added the savings clause to Section 113(f)(1) to make clear that contribution rights that courts had found to exist under Section 107 prior to the passage of SARA were not diminished. However, DuPont does not identify anything in the legislative history that elucidates congressional intent with respect to the meaning of this savings language and we are aware of nothing in the legislative history that addresses it.[18]

Contrary to DuPont's suggestion (Br. 42), we do not contend that contribution actions can be brought only during or following a Section 106 or 107 civil action. Congress added Section 113(f)(3)(B) "to expressly provide to settlors the right to seek contribution from nonsettlors." H.R. Rep. No. 99-253 (III) at 20, reprinted in 1986 U.S.C.C.A.N. at 3043. Congress drafted Section 113(f) to "clarif[y] and emphasize[] that persons who settle with EPA (and who are therefore not sued), as well as defendants in CERCLA actions, have a right to seek

---

[18]    DuPont suggests (Br. 33) that because Congress added the savings language to Section 113(f)(1) at the same time it provided that contribution actions could be brought "during" Section 106 or 107 actions, it should be inferred that Congress intended that implied contribution rights that some district courts had found to exist under CERCLA prior to the passage of SARA continued to exist independent or outside of the newly-enacted Section 113(f). In fact, savings language also appeared in the Senate version of the bill providing that contribution suits could be brought only after judgment or settlement. S. Rep. No. 99-11 at 103. Thus, the savings language seems to be unrelated to debate over whether contribution claims could be brought during a Section 106 or 107 action.

-39-

contribution from other potentially responsible parties." H.R. Rep. No. 99-253 (III) at 18, reprinted in 1986 U.S.C.C.A.N. at 3041. However, it does not follow that Congress intended for the savings language in Section 113(f)(1) to create or preserve an implied contribution right under CERCLA Section 107(a)(4)(B) that would be available when neither the conditions for a contribution claim under Section 113(f)(1) nor under Section 113(f)(3)(B) were met.

DuPont asserts (Br. 35) that "there is no evidence to suggest, or reason to suppose, that by enacting Section 113(f)(1), Congress intended to cut back the contribution rights federal courts had recognized under CERCLA." DuPont takes as a given that Congress understood pre-SARA courts to have interpreted Section 107(a) as allowing contribution in the circumstances presented here and intended to ratify this form of contribution even though it departs from traditional concepts of contribution (see *infra* at 42-43). However, although district courts were in basic agreement on the existence of a right to contribution, there was hardly a consensus as to the source of that authority or the circumstances in which a contribution action could be pursued. *See* n.16 *supra*. The legislative reports refer to only two cases. They note that in *United States v. Ward*, 1984 WL 15710 (E.D. N.C. May 14, 1984), the court held that when joint and several liability is imposed under section 106 or 107, a concomitant contribution right exists under CERCLA;

-40-

they also note that in *United States v. South Carolina Recycling and Disposal, Inc.*, 653 F. Supp. 984 (D. S.C. 1986), the court had recognized a right to contribution without squarely addressing the issue. *See* S. Rep. No. 99-11 at 45; H.R. Rep. No. 99-253(I) at 79, 1986 U.S.C.C.A.N. at 2861. Both cases were actions filed by the United States to recover response costs under Section 107(a)(4)(A). Moreover, in both cases, the courts had relied on traditional common law principles governing contribution. 653 F. Supp. at 984 n.8; 1994 WL at 15710. The express limitations placed on the conditions or timing of contribution actions in Section 113(f) reflect the traditional principles governing contribution (*see infra* at 42-43) and the circumstances in the cases identified by Congress. In short, the legislative history does not demonstrate that Congress intended contribution to be available in the circumstances presented here.

DuPont suggests (Br. 32-33) that Congress did not intend to place any limits on the timing of contribution actions by arguing that the words "during or following" were added to Section 113(f)(1) during the legislative process only to ensure that PRPs not have to await the outcome of government-initiated civil actions to seek contribution. DuPont points out (Br. 32-33) that an earlier version of the bill provided that contribution claims could be brought only after judgment or settlement of a CERCLA action. However, a change allowing contribution

-41-

actions to be brought <u>during</u> a Section 106 or 107 action, instead of only <u>after</u> judgment or settlement, hardly lends support to DuPont's position that it can bring a contribution action in the absence of a Section 106 or 107 action.  Rather, it illustrates that Congress actively considered when a contribution claim could be initiated.

Finally, DuPont suggests (Br. 35), that statements in the legislative reports providing that "[a]s with joint and several liability, contribution claims will be resolved pursuant to Federal common law," authorize courts to create a federal common law right of contribution that is not subject to the express preconditions provided by Section 113(f). S. Rep. No. 99-11, at 45; H.R. Rep. No. 99-253(I) at 80, <u>reprinted in</u> 1986 U.S.C.C.A.N. at 2862.  To the contrary, read in context, these statements indicate that equitable apportionment principles would be developed by courts on a case-by-case basis in contribution actions.  These statements do not evince that Congress intended to authorize courts to disregard or relax the preconditions for bringing the contribution claim that Congress had expressly provided.

c. <u>Requiring CERCLA contribution claims to satisfy prerequisites set forth in Section 113(f) is consistent with the traditional understanding of contribution.</u> – The "venerable common-law backdrop," *United States v. Bestfoods*, 524 U.S. 51,

-42-

62 (1998), against which Congress enacted Section 113(f) reinforces the

conclusion that a PRP is limited to seeking contribution pursuant to Section

113(f)'s express terms.  The two avenues for contribution that Congress provided

in Sections 113(f)(1) and (f)(3)(B) are consistent with traditional legal concepts of

contribution.  As the Third Restatement of Torts explains, while procedurally a

person seeking contribution may assert a claim in an action in which the person

seeking contribution is sued by the plaintiff, the right to contribution depends on

the resolution of the underlying liability to the plaintiff either by settlement or

judgment.  See Restatement (Third) of Torts §23 cmt. b,n (2000); see also

Restatement (Second) of Torts §886A(1) and (2) (1979); *Black's Law Dictionary*

297 (5th ed. 1979) ("Under principle of 'contribution,' a tortfeasor against whom a

judgment is rendered is entitled to recover proportional shares of judgment from

other joint tort-feasors whose negligence contributed to the injury and who were

also liable to the plaintiff.")  The traditional concept does not envision that a party

may seek contribution before a final judgment or before a pending action is

underway that would determine and resolve the joint liability, unless the party has

entered into a settlement that discharges or resolves that liability.  Restatement

(Third) of Torts §23 cmt. b.

-43-

The preconditions on contribution set forth in Section 113(f) conform to the traditional limitations placed on contribution. DuPont's interpretation does not. Statutes are not to be construed as making an innovation upon the common law unless the intent to do so is fairly expressed. *See Robert C. Herd & Co. v. Krawill Mach. Corp.*, 359 U.S. 297, 304-305 (1959).

d. Other provisions of the statute do not support finding an implied right of contribution. – DuPont contends (Br. 38-44) that an implied right of contribution is consistent with, or affirmatively supported by, other provisions of the statute. These arguments are meritless.

i. Settlement protection under Section 113(f)(2). – In *Matter of Reading Co.*, 115 F.3d at 1119, this Court expressed concern that if a party could elect to seek contribution under Section 107(a)(4)(B), rather than Section 113(f), it could bypass the settlement protection provided by Section 113(f). DuPont argues that the implication of a private right to contribution under Section 107(a)(4)(B) will not interfere with the settlement protection provided by Section 113(f)(2) because "Section 113(f)(2) is not limited by its terms to barring contribution claims under Section 113(f)(1) and 113(f)(3)(B), but applies to bar all contribution claims, including those implied from Section 107(a)(4)(B)." Br. 38. While this untested approach would solve the problem this Court identified with allowing a private

-44-

PRP to seek contribution under Section 107(a)(4)(B), it seems at odds with a theory that Section 107(a)(4)(B) operates independent of Section 113(f).

Furthermore, by calling attention to the issue of settlement protection, DuPont highlights another potentially undesirable consequence of its interpretation. Contribution is an action among parties that are jointly liable to a third party, which under CERCLA is typically the EPA or a State. A party that pays "contribution" in the absence of a settlement or judgment resolving liability to EPA or a State enforcement agency has no guarantee that its payment to the contribution plaintiff will discharge or extinguish liability to the government; it remains potentially subject to an action seeking recovery of response costs under Section 107(a)(4)(A) if any relevant government agency later investigates and determines that the voluntary conduct is inadequate or improper. The traditional strictures on contribution that are reflected in the prerequisites to contribution in Section 113(f) are designed to eliminate this prospect of double liability. *See, e.g.,* Restatement (Third) Torts §23 (2000), Reporter's Note cmt. b.

ii. <u>Statute of limitations</u>. – DuPont contends (Br. 39) that an implied contribution right under Section 107(a)(4)(B) is not at odds with the statute of limitations set forth in Section 113(g) because there is an imperfect alignment between Section 113(g)(3), the subsection addressing the statute of limitations for

-45-

contribution actions, and Section 113(f)(1) and Section 113(f)(3).   True enough,

but this statute of limitations gap exists under both DuPont's and our

interpretation.[19]  Accordingly, the statute of limitations provision sheds no

particular light on the present issue.[20]

    iii.  <u>Section 120(a) does not support the implication of a contribution right</u>.

– DuPont argues (Br. 41-44) that  CERCLA Section 120(a), 42 U.S.C. §9620(a),

affirmatively supports the implication of a contribution right under Section

107(a)(4)(B).  In pertinent part, Section 120(a) provides:

> Each department, agency, and instrumentality of the United States ...
> shall be subject to, and comply with, this chapter in the same manner
> and to the same extent, both procedurally and substantively, as any
> nongovernmental entity, including liability under section 9607 of this
> title.

*Id.*

---

[19]    DuPont asserts (Br. 39-40) that Section 113(g)(3) provides no statute of limitations for contribution actions brought during a Section 106 or 107 civil action or following settlements with states.  While we fail to understand how it can be said that Section 113(g)(3) does not address the statute of limitations for contribution actions brought during a Section 106 or 107 action, we concur that Section 113(g)(3) does not expressly address state administrative settlements and it expressly addresses only a subset of federal administrative settlements.

[20]    DuPont suggests (Br. 40) that the Section 113(g)(2) limitations period would apply to an implied contribution claim brought under Section 107(a)(4)(B). For present purposes, there is no need to choose which statute of limitations would govern a stand-alone, implied contribution claim under Section 107(a) should one be recognized.

-46-

DuPont circuitously reasons (Br. 42-43) that the United States will refrain from bringing CERCLA Section 107 or 106 actions at sites where there is a federal PRP to avoid triggering a right to contribution against the United States and that an implied contribution claim must therefore be recognized to ensure that the government shall be subject to CERCLA liability in the same manner and to the same extent as private parties. DuPont's reasoning is flawed.

First, only if Congress intended to create an implied statutory right to contribution against private PRPs in the absence of the preconditions set forth in Section 113(f)(1) and (f)(3) would the waiver of sovereign immunity in Section 120(a) have any bearing here. DuPont turns the proper analysis on its head by suggesting that in order to ensure the availability of contribution against a federal PRP, an implied contribution right must be recognized against federal and non-federal PRPs alike. Furthermore, as discussed in Section II.C, well-established principles governing waivers of sovereign immunity preclude inferring an implied contribution right based on Section 120(a).

Second, DuPont's suggestion that the United States has or will refrain from initiating Section 106 or 107 actions to avoid exposure to contribution claims is without factual support. Though taking the position ultimately adopted by the Supreme Court in *Cooper*, the government has not hesitated to bring suit under

-47-

Section 106 or 107 or to enter into administrative or judicial settlements at sites where there are federal PRPs.[21/]

Finally, a contribution claim may be triggered by a civil action initiated by, or a settlement with, a state. Therefore, the availability of contribution is not solely dependent on federal enforcement action.

e. Policy considerations do not justify recognition of an implied right to contribution. — DuPont and amici contend that allowing parties to pursue an implied right of contribution in the absence of a civil action or settlement would encourage prompt, so-called voluntary cleanup actions by PRPs and ensure fairness. Br. 36-37. Regardless of the appeal of these contentions, congressional intent to create an implied contribution right distinct from the express contribution right provided by the statute cannot be assumed based on such policy arguments. *See Texas Industries*, 451 U.S. at 646 (contribution implicates complex policy issues which are matters for Congress, not the courts, to resolve); *Key Tronic*, 511 U.S. at 819 n.13 (expansion of the scope of CERCLA's existing remedies is a

---

[21/]    Federal PRPs are frequently parties to administrative or judicially approved settlements. *See, e.g.*, 61 Fed. Reg. 54,215 (Oct. 17, 1996); 65 Fed. Reg. 32,123 (May 22, 2000); 67 Fed. Reg. 8557 (Feb. 25, 2002); 69 Fed. Reg. 51,326 (Aug. 18, 2004); 69 Fed. Reg. 67,607 (Nov. 18, 2004).

-48-

policy decision that must be made by Congress, not the courts).[22]  In the future,

Congress may decide to make a legislative judgment that a PRP who incurs

response costs in the absence of the prerequisites in Section 113(f) should

nonetheless be able to recover costs in contribution from other PRPs.  But it would

be improper for a Court to override the result dictated by statutory construction

principles based on its own assessment of policy considerations.

    3.  <u>DuPont's interpretation is contrary to the decisions of this Court and nine</u>

<u>other courts of appeals holding that a contribution claim may not be brought under</u>

<u>Section 107</u>. – In  *Matter of Reading*, 115 F.3d at 1118-1124, and *New Castle*

*County*, 111 F.3d at 1121-1124, this Court held that a PRP could not bring a

contribution claim under Section 107(a)(4)(B) and may only bring contribution

claims in conformity with Section 113(f).  DuPont suggests (Br. 45-49) that a panel

of this Court need not adhere to the holdings in *Matter of Reading* and *New Castle*

*County* because both were instances in which a PRP had already been sued under

Section 107.

---

[22]    The choice here is not between an interpretation that encourages prompt, voluntary cleanups and one that does not.  The legislative history reveals that Congress believed that Section 113(f), with its preconditions on initiation of a contribution action, would encourage private party settlements and cleanups.  *See supra* at 36-37.

-49-

While it is true that in both *Matter of Reading* and *New Castle County* the precondition of a Section 107 action was satisfied, in both instances, like here, the proponent of bringing a contribution claim under Section 107(a)(4)(B) was attempting to circumvent Section 113 limitations that posed insurmountable obstacles to recovery under that section. In *New Castle County*, the PRP seeking to bring suit against another PRP sought to avoid the shorter statute of limitations applicable to Section 113 contribution claims. In *Matter of Reading*, the PRP sought to circumvent the settlement protection provisions of Section 113(f)(2). That DuPont seeks to circumvent a different limitation in Section 113(f) is not a compelling basis for distinguishing those cases.

While *Reading* does include a sentence indicating that Section 113(f)(1) permits a contribution action to be brought in the absence of a civil action, 115 F.3d at 1120, that assumption appears only in the discussion of secondary reasons reinforcing the holding that a contribution claim may not be brought under Section 107, 115 F.3d at 1119, and has been corrected by the holding in *Cooper*. In *New Castle County*, this Court indicated that the claim by a private PRP against another PRP was governed by Section 113, rather than 107, because such a suit was necessarily an action for contribution, and contribution actions are governed by, and must be brought under, the express mechanisms for contribution that Congress

-50-

provided in Section 113(f). 111 F.3d at 1121. This Court concluded that a PRP is "not permitted, under any scenario, to pursue a section 107 cost recovery action against other potentially responsible persons." 111 F.3d at 1124.

The holdings in *New Castle County* and *Reading* are well-reasoned and consistent with unanimous holdings in nine other circuits. The enactment of two express statutory avenues for contribution weighs strongly against the implication of a third avenue any time a contribution plaintiff cannot meet the strictures of the express provisions. CERCLA is properly interpreted to require that a private PRP's claim against another PRP conform to the Section 113(f) requirements governing contribution.

C. Courts may not formulate a federal common law right of contribution against the United States. – DuPont alternatively contends (Br. 49-53) that a right of action for contribution in the absence of the preconditions set forth in CERCLA Section 113(f) may arise through the power of federal courts to fashion a federal common law. There is "'no federal general common law.'" *Texas Industries*, 451 U.S. at 640, quoting *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The instances in which courts may formulate federal common law are "'few and restricted,'" and "fall into essentially two categories: those in which a federal rule of decision is 'necessary to protect uniquely federal interests,' and those in which