-51-

Congress has given the courts the power to develop substantive law." *Texas Industries*, 451 U.S. at 640 (citations omitted).

DuPont asserts (Br. 49) that CERCLA implicates uniquely federal interests because CERCLA is concerned with the rights and obligations of the United States. This argument does not provide any reason to create a federal common law contribution right against private PRPs. Moreover, courts may not exercise common law powers premised on protection of federal interests to expand the waiver of federal sovereign immunity beyond that provided by Congress. Because the rights and duties of the United States are uniquely federal interests, it is appropriate that federal, rather than state, law govern the question of a contribution right against the United States. Moreover, a suit seeking recovery of money in contribution against the United States is against the federal sovereign and cannot be maintained without an express and unambiguous waiver of immunity from Congress. *Lane v. Pena*, 518 U.S. 187, 192 (1996). It is axiomatic that a waiver of the federal government's sovereign immunity must be strictly construed in terms of its scope, in favor of the sovereign. *Id.* By its terms, the waiver of sovereign immunity in CERCLA Section 120(a) is limited to procedural and substantive requirements imposed by the statute. 42 U.S.C. §9620(a) (federal agencies "shall be subject to, and comply with, this chapter in the same manner and to the same

-52-

extent, both procedurally and substantively, as any nongovernmental entity")
(emphasis added).  A federal common law right – a non-statutory right – does not
fall within the terms of the waiver.

DuPont's argument also relies on the erroneous theory that unless the Court
holds that contribution actions can be brought in the absence of a civil action or
settlement, parties will have no means of recovering the United States' equitable
share at those facilities where the United States is a PRP.  As explained *supra* at
45-47, this reasoning is factually and legally erroneous.

DuPont's argument that Congress authorized courts to develop a federal
common law contribution right, including a right against the United States, is
equally meritless.  As discussed in Section II.B.2.b, the legislative history of
CERCLA merely suggests that courts are to resolve equitable apportionment under
Section 113(f) on a case-by-case basis pursuant to federal common law.  It does
not follow that Congress thereby intended to give courts authority to create a
supplementary common law contribution right that could be utilized when the
statutory preconditions for contribution are absent.  Judicial authority to construe
and apply a statute to particular cases "is fundamentally different from the
authority to fashion a new rule or to provide a new remedy which Congress has
decided not to adopt.'" *See Texas Industries*, 451 U.S. at 646, quoting *Northwest*

-53-

*Industries*, 451 U.S. at 97.  The power to create federal common law does not authorize a court to substitute its views for those expressed by Congress in a duly enacted statute. *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978).  "There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted." *Id.*  "[W]hen Congress has legislated on a question that is claimed to be appropriate for the creation of federal common law, courts must assume that Congress has articulated all the governing federal standards." *Ridenour v. Andrews Federal Credit Unition*, 897 F.2d 715, 722 (4th Cir. 1990).

Applying these principles, it would be improper to create a federal common law contribution right to supplement and effectively subsume the express right provided by Congress in Section 113(f).  Accordingly, DuPont's attempt to distinguish *Texas Industries* and *Northwest Airlines* on the grounds that neither involved statutes containing an express right to contribution and neither involved evidence that Congress intended to create a private right of contribution, misses the mark.  Br. 52.  It is precisely because CERCLA contains an express right of contribution that this Court should decline to create a common law right.

This conclusion is reinforced by the lack of a common law right to contribution among joint tortfeasors, *see Texas Industries*, 451 U.S. at 634, and

-54-

the availability of contribution, under the contribution remedies fashioned by state legislation or judicial action in the last 100 years (*id.*), generally only where there is a pending or completed suit or settlement with an injured third-party. *See* Section II.B.2.c *supra*. For all these reasons, this Court should decline to create a common law contribution right.[23]

---

[23]    DuPont argues (Br. 53-56) that if this Court finds it has viable contribution claims that arise from Section 107(a)(4)(B) or federal common law, it should reject the district court's articulation of requisite elements for a federal common law contribution action and articulate the proper standards. We agree that if this Court were to find contribution claims arising from Section 107 or federal common law, the district court's dicta concerning requirements of a traditional, common law contribution action should be vacated or otherwise not be considered binding. The proper disposition would be to remand to the district court to address in the first instance the elements of a stand-alone Section 107(a)(4)(B) implied contribution action or federal common law action and to decide whether DuPont meets those elements.

-55-

III

## THE DISTRICT COURT COMMITTED NO ERROR BY DISMISSING THE SECTION 113(f) CLAIM AS TO ALL SITES

A. Standard of review. – Judgment on the pleadings is reviewed de novo.

*Shelly v. Johns Manville Corp.*, 798 F.2d 93, 97 n.4 (3d Cir. 1986).

B. Dismissal was appropriate because DuPont's pleadings failed to allege or

otherwise demonstrate that other sites met Section 113(f) preconditions. –

Following summary judgment on the Louisville site, the district court granted the

government's motion for judgment on the pleadings as to the remainder of the

sites, explaining that it "has been presented with no allegations in the pleadings (or

evidence beyond the pleadings) differentiating the Louisville site from the

remaining sites." PA9. DuPont suggests (Br. 57-58) that because its pleadings

complied with  prima facie requirements established by this Court for pleading a

CERCLA contribution claim, it was entitled to rely on those pleadings.   However,

in the district court, DuPont acknowledged that its pleadings did not allege the

elements of a prima facie case for a Section 113(f) contribution claim found by the

district court in its opinion. PA225. *Cooper* confirmed that either a Section 106 or

-56-

107 civil action or settlement within the scope of Section 113(f)(3) is a

precondition for bringing a Section 113 contribution action.[24]

Second, DuPont suggests (Br. 58) that the district court erred because there

is no factual record with respect to the fourteen facilities other than the Louisville

plant and the court therefore could not have known that no sets of facts could be

proved that would entitle it to relief under Section 113(f) with respect to those

sites. However, on a motion for judgment on the pleadings, the court properly

reviews only the pleadings for sufficiency. DuPont's complaint is deficient

because it fails to allege facts from which it can be inferred that a requisite element

to recovery under Section 113(f) – *i.e.*, civil action or settlement – is met with

respect to any of the sites. *See In re Cendant Corp. Securities Litigation*, 190

F.R.D. 331, 334 (D. N.J. 1999) ("the claimant must set forth sufficient information

to outline the elements of his claims or to permit inferences to be drawn that these

elements exist"); *Florian Greenhouse, Inc. v. Cardinal IG Corp.*, 11 F. Supp. 2d

521, 524 (D. N. J. 1998) (same); *cf. Menkowitz v. Pottstown Memorial Medical*

---

[24]    DuPont also asserts (Br. 57) that the judgment on the pleadings should be
reversed because the district court applied the wrong legal standard for
contribution. This assertion appears premised on the assumption that DuPont will
prevail on its new claims. However, regardless of the merits of the new claims
asserted by DuPont, the lower court correctly dismissed the claim brought under
Section 113(f) and therefore judgment with respect to that claim should be
affirmed.

-57-

*Center*, 154 F.3d 113, 124-25 (3d Cir. 1998) ("[T]he complaint will withstand a Fed. R. Civ. P. 12(b)(6) attack if the material facts as alleged, in addition to inferences drawn from those allegations, provide a basis for recovery."). Moreover, DuPont itself told the district court that the Section 113(f) question decided by summary judgment on the Louisville Plan is "common to all of the contribution claims in this litigation." SA70; see also SA73.

DuPont suggests (Br. 58) that because discovery with respect to those sites had been stayed, it was not appropriate to rule on the pleadings. However, DuPont does not explain why discovery is necessary to overcome a motion for judgment on the pleadings nor why discovery would be necessary for DuPont itself to ascertain whether it had been sued in a civil action or entered into a settlement with regard to the sites at issue. DuPont's brief in response to the motion for judgment on the pleadings asserted that DuPont had incurred response costs at the Necco Park site pursuant to an EPA administrative order on consent and its counsel stated at the hearing that DuPont had entered into settlements with federal or state agencies at unspecified sites that they believed satisfied the requirements of Section 113(f)(3)(B).[29] PA224;SA93. However, as the court noted, these representations

---

[29]    After this case was appealed, undersigned counsel learned that in September 2001 the United States filed a Section 107 action against DuPont for the Necco Park site. *United States v. E.I. DuPont de Nemours and Co.*, 2d Cir. No. 04-5380.

-58-

are not evidence and do not appear in the pleadings. PA8 n.4. The district court remarked at a hearing that it was troubled by the lack of information and that it would have been simple for DuPont to demonstrate the existence of civil actions or settlements involving the other sites. PA224-225. Despite this and the United States' indication that it would not oppose amendment, DuPont did not seek leave to amend its complaint nor seek permission to make a late filing to submit additional information. PA8, 224; SA102. Furthermore, with the exception of the reference to the Necco Park site, DuPont has yet to identify the sites for which it believes it has a viable contribution claim under Section 113(f). On these facts, the district court reasonably dismissed the action on the pleadings.

---

While it was incumbent on DuPont as the plaintiff in this case to allege the prerequisites for a valid Section 113(f) contribution claim, we nevertheless suggest that the dismissal with respect to that site be without prejudice.

-59-

## CONCLUSION

The judgment of the district court should be affirmed.

Respectfully submitted,

KELLY A. JOHNSON
Acting Assistant Attorney General

MICHAEL D. ROWE
SCOTT JORDAN
DAVID M. THOMPSON
ERIC G. HOSTETLER
MICHELE L. WALTER
DAVID C. SHILTON
ELLEN J. DURKEE /s/ Ellen J. Durkee
Attorneys, Environment & Natural
Resources Division
Department of Justice
P.O. Box 23795, L'Enfant Plaza Station
Washington, D.C. 20026
(202) 514-4426

APRIL 2005
90-11-6-103

-60-

## CERTIFICATIONS RESPECTING WORD COUNT, IDENTICAL TEXT OF E-BRIEF AND HARD COPIES, VIRUS CHECK AND BAR MEMBERSHIP

I certify that the foregoing brief has double spaced text (excluding quotations, headings, and footnotes) in proportional 14 point type.  According to the word perfect word count the brief is 13,971 words.

I certify that the text of the E-Brief in PDF format transmitted to the Court and counsel of record and the hard copies of the Brief sent to the Court and counsel are identical.

I certify that the E-Brief transmitted to the Court in PDF format has been scanned for viruses with the most recent version of a Computer Associates eTrust InoculateIT, version 6.0.96, updated through April 22, 2005 and, according to the program, are free of viruses.

I am an attorney with the United States Department of Justice representing the United States in this appeal and, as such, am not required to be a member of the Third Circuit Bar for purposes of this appeal.

/s/ Ellen J. Durkee
ELLEN J. DURKEE
Attorney, Environment & Natural
Resources Division
Department of Justice
P.O. Box 23795, L'Enfant Plaza Station
Washington, D.C.  20026
(202) 514-4426

-61-

## CERTIFICATE OF SERVICE

I certify that on April 22, 2005, I caused 10 hard copies of the brief to be

sent by Federal Express delivery to the Clerk's Office. Also on April 22, 2005, I

transmitted an E-brief to the Clerk's Office. At the request of appellants' counsel,

the foregoing brief was e-mailed in PDF format to counsel listed below on the 22d

day of April, 2005. I further certify that I caused two hard copies of the foregoing

brief to be served by U.S. mail this 22d day of April 2005, on each of the following

counsel:

John McGahren
Latham & Watkins LLP
One Newark Center, 16th Floor
Newark, NJ 07102
john.mcgahren@lw.com

William H. Hyatt, Jr.
Kirkpatrick & Lockhart Nicholson Graham LLP
One Newark Center, 10th Floor
Newark, NewJersey 07102
whyatt@klng.com

/s/ Ellen J. Durkee
ELLEN J. DURKEE
Attorney, Environment & Natural
Resources Division
Department of Justice
P.O. Box 23795, L'Enfant Plaza Station
Washington, D.C. 20026
(202) 514-4426

# Addendum

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

METROPOLITAN WATER
RECLAMATION DISTRICT OF
GREATER CHICAGO,

      Plaintiff,

      v.

LAKE RIVER CORP.; LRT HOLDING
CO., INC.; LAKE RIVER TERMINALS,
INC.; LAKE RIVER OIL CO.; and NORTH
AMERICAN GALVANIZING &
COATINGS, INC.,

      Defendants.

No. 03 C 0754
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

### I. Background

This lawsuit arises out of chemical spills that occurred on a parcel of property belonging to Plaintiff Water Reclamation District of Greater Chicago ("Water Rec. Dist."). In the 1940's and 1950's, the Water Rec. Dist. entered into a long-term lease with Defendant Lake River Corp. ("Lake River"). Lake River operated the property as an industrial chemical storage, mixing, and packaging facility. During the term of the lease, the Water Rec. Dist. alleges that chemicals were spilled and/or released into the property's soil and ground water. The Water Rec. Dist. further alleges that it has incurred and will continue to incur expenses investigating and cleaning up the spills and/or releases.

Initially, the Water Rec. Dist. brought this suit to recover costs associated with the cleanup solely against Lake River. That litigation resulted in a default judgment, ordering Lake River to pay the Water Rec. Dist. approximately $1.8M in damages plus future response costs.

After securing the default judgment, the Water Rec. Dist. filed a Second Amended Complaint, which added Defendant North American Galvanizing & Coatings, Inc. ("North American"). In 1968, North American, then known as Kinark Corp., purchased Lake River and held it until its sale in 2000. The Water Rec. Dist. then filed a Third Amended Complaint with additional counts, alleging that North American is liable for its cleanup efforts under § 107(a) and § 113(f)(1) of the Comprehensive Environmental Response Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 (Counts XII & XIII), § 7002 of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972 (Count XIV), and common law nuisance (Count XI).

## II. Standard of Review

North American now asks that I dismiss Counts XI, XII, XIII, and XIV of the Water Rec. Dist.'s Third Amended Complaint pursuant to Fed. R. Civ. P 12(b)(6). A motion to dismiss under Rule 12(b)(6) is proper where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In reviewing a motion to dismiss, the court must construe all allegations in the complaint in the light most favorable to the plaintiff and accept all well-pleaded facts and allegations as true. *Bontkowski v. First Nat'l Bank*, 998 F.2d 459, 461 (7th Cir. 1993).

## III. The Water Rec. Dist.'s CERCLA Claims

The Water Rec. Dist. asserts two causes of action under CERCLA for the recovery of response costs incurred to remediate the environmental conditions present on its property. The first is an action for cost recovery pursuant to § 107(a), 42 U.S.C. § 9607(a) – Count XII, and the second is an action for contribution pursuant to § 113(f)(1), 42 U.S.C. § 9613(f)(1) – Count XIII.

2

The legal purposes served by the § 107(a) cost recovery and § 113(f)(1) contribution provisions of CERCLA are independent and distinct. A § 107(a) claim for cost recovery applies to cases where a party is seeking direct recovery of costs incurred in cleaning up a hazardous waste site. *Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d 761, 764 (7th Cir. 1994). Whereas, a § 113(f)(1) claim for contribution applies to cases in which "potentially responsible parties" ("PRP's") are seeking to properly apportion damages between themselves. *Rumpke v. Cummins Engine Co.*, 107 F.3d 1235, 1240 (7th Cir. 1997). Under § 107(a), an owner of the contaminated property is a PRP. 42 U.S.C. § 9607(a). Since the Water Rec. Dist. currently owns and did own the property throughout the period it was leased to Lake River, it is a PRP within the meaning of CERCLA.

Originally, CERCLA did not include a provision allowing PRP's to seek contribution from each other. Section 113(f)(1) was added after significant debate arose as to whether § 107(a), in addition to allowing the Government and certain private parties to recover costs from PRP's, also allowed a PRP to recover costs or obtain contribution from other PRP's. *Cooper Indus. v. Aviall Servs., Inc.*, 125 S. Ct. 577, 581 (2004). Many courts held that, while § 107(a) did not directly provide for contribution, such a right could be implied from the provisions of the statute. *Id.* In 1986, Congress amended CERCLA with the Superfund Amendments and Reauthorization Act ("SARA") to provide an express cause of action for PRP's seeking contribution, now know as CERCLA § 113(f)(1). Ordinarily, a suit for recovery of costs made by one PRP against another is considered as a suit for contribution since it is usually intended to apportion damages between multiple liable parties. *Azko*, 30 F.3d at 764.

Since the addition of § 113(f)(1), questions have arisen as to whether any of the implied rights of recovery for PRP's under § 107(a) survived the SARA amendment. The Supreme Court

3

first suggested that some implied right to contribution remained in the dicta of *Key Tronic Corp.*

*v. United States,* 511 U.S. 809, 816-17 (1994), which states "the statute now expressly authorizes

a cause of action for contribution in § 113 and impliedly authorizes a similar and somewhat

overlapping remedy in § 107." The existence of such a right is far from a certainty given that the

majority in *Aviall* declined to resolve the so called § 107 question solely on the basis of *Key

Tronic* and instead remanded the case for further briefing. 125 S. Ct. 577, 585 (2004).

The dissent in *Aviall*, however, suggested that there was "no cause for protracting this

litigation by requiring the Fifth Circuit to revisit a determination [the Court] has essentially made

already." *Id.* at 588. In the opinion of the dissenting judges, "[f]ederal courts, prior to the

enactment of § 113(f)(1), had correctly held that PRPs could recover [under § 107] a

proportionate share of their costs in actions for contribution against other PRPs." *Id.* The dissent

further opined that since § 113(f)(1) included a savings clause preserving all preexisting state and

federal rights of action for contribution, the implied right under § 107(a) remains open to a

certain subset of plaintiffs. *Id.*

The subset of plaintiffs who may have implied rights of contribution under § 107(a) are

those, like the Water Rec. Dist., who are not entitled to seek contribution under § 113(f)(1).

Section 113(f)(1) states that PRP's may seek contribution "during or following any civil action

under § 9606 of this title or under § 9607(a) of this title." 42. U.S.C. § 9613(f)(1). In *Aviall*, the

Court held that this statutory language limited the parties entitled to relief under § 113(f)(1) to

those who had already been the subject of a civil suit. *Id.* at 584. Since Aviall's cleanup efforts

were undertaken voluntarily, that is to say without being the subject of a suit either by another

4

PRP or a governmental body, it was not entitled to seek contribution from the defendant pursuant to § 113(f)(1). *Id.* at 585.

In the instant case, the Water Rec. Dist., like the plaintiff in *Aviall*, voluntarily undertook cleanup efforts, amounting to costs of approximately $1.8M. It asserted in its Complaint causes of actions under both § 107(a) and § 113(f)(1) of CERCLA. In light of *Aviall*, it is clear that the Water Rec. Dist. does not have a cause of action under § 113(f)(1). What remains is whether the Wat. Rec. Dist. has a viable claim under § 107(a).

The Seventh Circuit has yet to allow a claim made by a PRP to go forward on the basis of an implied right to contribution under § 107(a) . The closest it has come has been to recognize that an implied right to contribution is not forestalled by the Supreme Court's prior opinions. In the dicta of *Rumpke*, the Seventh Circuit states that "[t]o the extent this looks like an implied claim for contribution...we note that dicta in the Supreme Court's decision in *Key Tronic* suggests that the Court was not disturbed by that possibility." *Rumpke*, 107 F.3d 1235 at 1241.

Much like the *Aviall* plaintiff and the Water Rec. Dist., the plaintiff in *Rumpke* was one who voluntarily undertook cleanup efforts and was, thus, not the subject of a civil suit brought by another PRP or a governmental body. *Id.* at 1239. The Seventh Circuit allowed the claim on the grounds that it fit into an exception to the generally accepted proposition that all claims made by PRP's are claims for contribution to be brought under § 113(f)(1) – the innocent landowner exception. *Id.* This exception is available to a landowner seeking direct recovery for injury to its property to which the landowner did not contribute and for which the landowner had no liability. Because no liability flowed to the landowner, the Seventh Circuit found that it was a suit to

5

recover instead of apportion costs and was, therefore, appropriately brought under § 107(a). *Id.* at 1241-42; See Also *Akzo,* 30 F.3d 761.

Parties who have qualified for the innocent landowner exception have fallen into two categories – those plaintiffs who have unknowingly acquired a contaminated property and those plaintiffs whose property was contaminated by a third party's surreptitious dumping. See *Rumpke,* 107 F.3d 1235; *NutraSweet Co. v. X-L Eng'g Co.,* 227 F.3d 776 (7th Cir. 2000); *Northstar Partners v. S&S Consultants,* 2004 U.S. Dist. LEXIS 7799 (S. Dist. Ind. Mar. 31, 2004). A plaintiff may invoke the innocent landowner exception under § 107(a), if it can show that: (1) the defendant is a covered person under § 107(a), (2) there is a release or threatened release of a hazardous substance from a facility as defined by § 101(9), (3) the release caused the plaintiff to incur response costs, and (4) the plaintiff did not pollute the site in any way. *NutraSweet,* 227 F.3d at 784. Because the Water Rec. Dist. entered into a long-term lease with a party it knew intended to keep and process chemical materials, it cannot establish the fourth prong of the above test. See *Northstar,* 2004 U.S. Dist. LEXIS 7799 at **20-21. While the Water Rec. Dist. did not itself contaminate the property, it did drastically increase the risk of contamination by leasing the property to Lake River. Thus, it is clearly distinct from cases where a plaintiff had little or no warning that the property could have been or was being contaminated.

Since the Water Rec. Dist. does not fit into the innocent landowner exception and since it cannot seek contribution under § 113(f)(1), its only remaining remedy under CERCLA is an implied right to contribution under § 107(a). Section 107(a) states that the government as well as "any other person" is entitled to recovery of costs. 42 U.S.C. § 9607(a). In *Key Tronic,* the Court read that language to mean that "§ 107 unquestionably provides a cause of action for

private parties to seek recovery of cleanup costs." *Key Tronic,* 511 U.S. at 818. Although PRP's

are not explicitly named in § 107(a), there seems to be no reason why they would be excluded

from the provision that allows recovery for any person, unless that right was provided for

elsewhere in the statute. While the majority of judges were understandably reluctant to decide an

issue which could wait another day, I agree with the dissenters in *Aviall,* insofar as they express a

prediction of the result that would occur when the Court had to decide the question, that if the

implied right existed before § 113(f)(1) was added and the right was not encompassed by

§ 113(f)(1), then it must still lie in § 107(a). *Aviall,* 125 S. Ct. at 588. This is especially true

since SARA explicitly preserved all state and federal contribution rights that preexisted the

amendment. 42. U.S.C. § 9613(f)(1).

Since the Water Rec. Dist. is part of that subset of plaintiffs who voluntarily undertook

cleanup efforts and are, for that reason, not party to a civil suit, I find it may seek contribution

from other responsible parties under § 107(a). Any other outcome would seem to lie contrary to

the general purposes of CERCLA to promote prompt and proper cleanup of contaminated

properties.

**IV. Water Rec. Dist.'s RCRA Claim**

In Count XIV of its Complaint, the Water Rec. Dist. asserts a citizens suit against North

American under RCRA and seeks injunctive relief, commanding North American to undertake

all necessary and appropriate future corrective actions. RCRA provides that:

> "*any person* may commence a civil action...against any person... who has
> contributed or who is contributing to the past or present handling, storage,
> treatment, transportation, or disposal of hazardous waste which may present an
> imminent and substantial endangerment to health or the environment."
> 42 U.S.C, § 6972(a)(1)(B) (emphasis added)

7

North American asserts that the Water Rec. Dist. cannot bring a citizens suit because it is itself a liable party under RCRA and CERCLA. This argument, however, was expressly rejected by the Seventh Circuit in *AM Int'l v. Datacard Corp.*, 106 F.3d 1342 (7th Cir. 1997). In *Datacard*, the Seventh Circuit found that even though the "idea behind citizen suit enforcement is to unleash an army of private attorneys general to force cleanups when the government drags its feet, the plain language of RCRA and CERCLA does not exclude" parties who are themselves PRP's from class of potential citizens suits plaintiffs. *Id.* at 1349. Rather, "both RCRA and CERCLA allow 'any person' to bring citizen suits." *Id.* Accordingly, I find that the Water Rec. Dist., like the plaintiff in *Datacard*, qualifies as "any person" within the meaning of RCRA and, therefore, may bring a citizens suit. See Also *PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 618 (7th Cir. 1998); *Raytheon Co. v. McGraw-Edison Co.*, 979 F. Supp. 858, 863 (E.D. Wis. 1997).

**V. The Water Rec. Dist. Nuisance Claim**

In Count XI of its Complaint, the Water Rec. Dist. asserts a claim of nuisance against North American. North American argues that a lessor cannot bring such a claim against a former lessee. Under Illinois law, a private nuisance is "a substantial invasion of another's interest in the use and enjoyment of his or her land." *In re Chicago Flood Litig.*, 680 N.E.2d 265, 277 (Ill. 1997). The purpose of private nuisance law has historically been to resolve conflicts between neighboring, contemporaneous landowners. *See Mavigliano v. McDowell*, No. 93 C 7216, 1995 U.S. Dist. LEXIS 6104 at *15 (N.D. Ill. May 3, 1995) (quotation omitted). Because nuisance suits generally depend on concurrent usages, a number of courts have dismissed nuisance claims between current and former owners of the same property. *See Philadelphia Elec. Co. v.*

8

*Hercules, Inc.* 762 F.2d 303, 314 (3ʳᵈ Cir. 1985); *Truck Components, Inc. v. K-H Corp.*, No. 94 C 5025, 1995 U.S. Dist. LEXIS 17444 at *34-36 (N.D. Ill. Oct. 31, 1995); *Triffler v. Hopf*, No. 92 C 7193, 1994 U.S. Dist. LEXIS 16158 at *24-26 (N.D. Ill. Nov. 4, 1994). Applying the same reasoning in a case involving a lessor/lessee, Judge Gettleman found that a nuisance claim could not be brought by the lessor because there was no neighboring or contemporaneous use of property. *Mavigliano*, 1995 U.S. Dist. LEXIS 6104 at *14-16.

The Water Rec. Dist. argues that I should disregard that line of cases and instead rely on Judge Guzman's holding in *Great Oaks v. Begley Co.*, No. 02 C 6496, 2003 U.S. Dist. LEXIS 3186 at *12-13 (N.D. Ill. Mar. 3, 2003), which did allow a lessor to bring a private nuisance claim against its former tenant. However, in *Great Oaks*, Judge Guzman dealt only briefly with the issue of nuisance and based his holding on *NutraSweet Co. v. X-L Eng's Corp.*, 933 F. Supp 1409, 1423 (N.D. Ill. 1996). Since *NutraSweet* dealt with the classic case of private nuisance between neighboring, contemporaneous property owners, it is my opinion that its holding should not have been applied to lessor-plaintiffs. *Id.* at 1412. Accordingly, I adopt Judge Gettleman's reasoning and find that the Water Rec. Dist.'s claim for private nuisance should be dismissed.

For the reasons stated herein, Defendant North American's Motion to Dismiss is GRANTED as to Count XI and Count XIII, and is DENIED as to Count XII and Count XIV.

ENTER:

*James B. Zagel*
_____

James B. Zagel
United States District Judge

DATE: April 12, 2005

9