## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AGERE SYSTEMS, INC., et al.,                    :
                                                 :

                         Plaintiffs,          :

                                                 :

             v.                                  :          Civil Action No. 02-CV-3830

                                                 :

ADVANCED ENVIRONMENTAL                          :
TECHNOLOGY CORPORATION, et al.,                 :

                                               :

                        Defendants.          :

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS FOURTH AMENDED COMPLAINT
## FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

## I.    INTRODUCTION

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Eastern District of Pennsylvania Local Court Rule 7.1, and paragraph 3 of this Court's Order of July 20, 2005, Defendant Ashland Inc., along with nine (9) other named defendants (collectively referred to as the "Moving Defendants")[1], presently move this Court to dismiss the Fourth Amended Complaint filed by the five newly added Plaintiffs for failure to state a claim upon which relief can be granted. The grounds for dismissal can be summarized as follows:

1.    Neither Plaintiff TI Group Automotive Group Systems, LLC ("TI") with respect to its contribution claims for recovery of costs associated with the first phase of remedial design and action for the Boarhead Site (designated as OU-1) nor Agere Systems, Inc. ("Agere") were

---

[1]    In addition to Ashland Inc., this memorandum of law is submitted on behalf of Defendants Advanced Environmental Technology Corporation, Carpenter Technology Corporation, FCG, Inc., a/k/a Flexible Circuits, Inc., Handy & Harman Tube Company, Inc., Merit Metals Products Corp., NRM Investment Company, Rahns Specialty Metals, Inc., Techalloy Company, Inc. and Thomas & Betts Corporation.

parties to an underlying civil action against them under Sections 106 or 107(a) of CERCLA nor did they resolve their liability to the United States or a state in an administrative or judicially approved settlement as required by Section 113 of CERCLA which, as recently held by the United States Supreme Court in <u>Cooper Industries v. Aviall Services</u>, 125 S. Ct. 577 (U.S. 2004), are conditions to the maintenance of contribution claims under that section;

2.     Plaintiffs Cytec Industries, Inc. ("Cytec"), Ford Motor Company ("Ford"), SPS Technologies, Inc. ("SPS"), and TI (for OU-2 remediation costs) cannot recover under Section 113(f)(1) of CERCLA because, as parties who have settled claims against them by the United States for response costs, any contribution claims for recovery of part of payments made by them in connection with a settlement with the United States can only be pursued under Section 113(f)(3)(B) of CERCLA;

3.     Plaintiffs TI (for OU-1 response costs) and Agere cannot recover under Section 113(f)(3)(B) of CERCLA as they did not enter into a settlement with the United States;

4.     None of the Plaintiffs has alleged sufficient facts to establish liability under Sections 113(f)(1) or 113 (f)(3)(B) of CERCLA as they have not alleged that in the settlement of the United States' claims against them they discharged the common liability to the United States for such claims, nor have they alleged actual payment to the United States by any particular Plaintiff in excess of each's fair share of the common liability;

5.     Under CERCLA, plaintiffs in a contribution action are not entitled to declaratory relief, but are limited to recovery of damages for remediation costs incurred by them and payments made to the United States in excess of their respective fair shares of the common liability;

6.     With respect to Plaintiffs' state contribution claim under the Pennsylvania Hazardous Sites Clean Up Act, 35 P.S. § 6020.701 *et seq.* ("HSCA"), Plaintiffs do not have any

implied rights of contribution under Section 702 of that statute, 35 P.S. § 6020.702, the only section of HSCA under which Plaintiffs seek contribution in this action;

7.    Although not sought by Plaintiffs, any contribution claims under Section 705 of HSCA would be futile, as Plaintiffs do not allege that there was or is a pending action under HSCA Sections 507 or 1101 brought by the Pennsylvania Department of Environmental Resources ("DER") (now Department of Environmental Protection or "DEP"), any other commonwealth agency or any municipality nor have Plaintiffs alleged that they had entered into any settlement of any purported liability for response costs to the DER or DEP; and

8.    Any claims by the Plaintiffs pursuant to HSCA pled in the Fourth Amended Complaint are preempted by CERCLA.

## II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

Most of the facts material to the Moving Defendants' motion have recently been exhaustively set forth in the Statement of Facts section of Defendants' Memorandum of Law in Opposition to Plaintiff BFAG's Motion to Amend and in support of their Cross-Motion for Summary Judgment (Exh. "A"), which Statement of Facts is incorporated herein without restatement. By Memorandum & Order of July 20, 2005 (Exh. "B"), this Court granted in part and denied in part Plaintiff BFAG's Motion for Leave to Amend its Third Amended Complaint and denied as moot all Defendants' Cross-Motions for Summary Judgment. In so ordering, the Court's ruling, as set forth in its July 20, 2005 Memorandum & Order (Exh. "B"), can be summarized as follows:

1.    The substitution of the members of BFAG as Plaintiffs would not be futile as such members are the real parties in interest and the assertion of claims by them would for statute of limitations purposes relate back to the filing of Plaintiff BFAG's original Complaint;

3

2.    The Court permitted the BFAG members to assert previously unasserted contribution claims under Section 113(f)(3)(B) of CERCLA which permits contribution claims to be asserted following an administrative or judicially approved settlement resolving liability to the United States or a state, holding that such newly added claims would not be barred by the statute of limitations as such claims would relate back to the date of the filing of Plaintiff BFAG's original complaint; and

3.    The Court rejected Plaintiff BFAG's attempts to assert implied contribution claims under Section 107(a) of CERCLA as impermissible under the Third Circuit's decision in New Castle County v. Halliburton N.U.S. Corp., 111 F.3d 1116 (3d Cir. 1997), and rejected Defendant Handy & Harman Tube Company's Motion to Dismiss Plaintiff's Contribution Claims under § 113(f)(1), holding that the Supreme Court in Cooper Industries required only that a prior or pending civil action by the government must have been filed, to which a Plaintiff seeking contribution need not have been a party.[2]

Accordingly, the Court directed in its order that Plaintiff file a revised Fourth Amended Complaint in accordance with its Order within ten (10) days, to which Moving Defendants' responsive pleading or dispositive motion is to be filed within twenty-one (21) days from the filing of the Fourth Amended Complaint, with the Plaintiff being permitted to file a response to any dispositive motions within twenty-one (21) days from the filing of such motion. On August 2, 2005, Plaintiffs, not including BFAG, filed a Fourth Amended Complaint (Exh. "C"). By stipulation approved by this Court, the Defendants' answers or dispositive motions are due on or before September 9, 2005.

---

[2]    The Court did not rule on the Moving Defendants' alternative Motion for Summary Judgment requesting the Court to decline to assert supplemental jurisdiction over Plaintiff BFAG's HSCA claims.

In their Fourth Amended Complaint, Agere, Cytec, Ford, SPS and TI were substituted for BFAG as Plaintiffs. For the most part, the claims asserted by BFAG in its Third Amended Complaint were asserted by Plaintiffs in their Fourth Amended Complaint, except that Plaintiffs have removed BFAG's prior implied contribution claims under Section 107(a) and asserted a new claim (Count II) under Section 113(f)(3)(B) for contribution premised on the settlement of governmental claims against them for response costs. Despite the removal of BFAG, the Plaintiffs, comprising an unincorporated association, seek contribution based upon their alleged collective resolution of the claims brought by the United States Environmental Protection Agency ("EPA") and, accordingly, they collectively seek contribution from the Defendants. (Exh. "C", ¶ 16.) There is no allegation in the Fourth Amended Complaint of any payment by any individual Plaintiff to the EPA in resolution of the EPA's claims against it nor any allegation that through any settlement by an individual Plaintiff with the EPA such Plaintiff has discharged any common liability of the Defendants with respect to the EPA's claims. In paragraphs 18 and 21 of their Fourth Amended Complaint, the Plaintiffs allege that payments were made by them into a trust fund for the response costs on the basis of an interim non-binding allocation reached among them, with a final allocation of the individual Plaintiff's shares allegedly to be reached in the future.[3]

## III.    ARGUMENT

This motion presents significant issues of law under Section 113(f) of the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9613(f), and its Pennsylvania counterpart, Section 705 of the Pennsylvania Hazardous Waste Cleanup Act

---

[3]    Several other modifications were made by Plaintiffs to the Third Amended Complaint which are not relevant to the instant motion and will not be referenced herein.

("HSCA"), 35 P.S. § 602.705, which, despite the extensive procedural history in this case, this Court has not yet had occasion to consider. Moving Defendants submit that in view of the caselaw in this Circuit and the Supreme Court's recent decision in <u>Cooper Industries, Inc. v. Aviall Services, Inc.</u>, the Plaintiffs' Fourth Amended Complaint fails to state necessary elements of these statutory causes of action and the Fourth Amended Complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

Initially, certain key averments as to each of the five Plaintiffs' connections with the Boarhead Farm Site cleanup as alleged in the Fourth Amended Complaint should be noted since those averments, which Defendants recognize must be deemed undisputed for purposes of this motion, are determinative of each Plaintiff's purported right to seek contribution from the Defendants under CERCLA or HSCA. Three of the Plaintiffs, Cytec, Ford and SPS, were parties to a Consent Decree with the United States entered in this Court on September 28, 2000 in which those Plaintiffs agreed to perform the first phase of the remedial design and action for the Boarhead Farm Site, which phase has been designated as OU-1. (Fourth Amended Complaint, Exh. "C", at ¶ 17.) Additionally, these three Plaintiffs, together with Plaintiff TI, were parties to a second Consent Decree entered in this Court on March 14, 2002 obligating those parties to: (1) perform a second phase of the remedial design and action for the Boarhead Farm Site, which phase has been designated as OU-2; and (2) reimburse the United States Environmental Protection Agency in the amount of $7 million for response costs incurred prior to July, 2000 and for response costs incurred after July, 2000. (Fourth Amended Complaint, Exh. "C", at ¶ 20.) The fifth remaining Plaintiff, Agere, was not a party to either the OU-1 or OU-2 Consent Decree or any other consent decree involving the Boarhead Farm Site. According to the Fourth Amended Complaint, Agere, as a member of a "Boarhead Farm Agreement Group," entered into

an agreement with the other Plaintiffs to contribute to the cost of the work of the OU-1 and OU-2

remediation, along with two other parties who are not Plaintiffs in this action.  (Fourth Amended

Complaint, Exh. "C", at ¶¶ 16, 18, 101.)

A.    **Plaintiffs Have Failed to Plead Viable Claims Under CERCLA Section 113(f)**

1.    **No Plaintiff is Entitled to Recover Contribution Under Section 113(f)(1)**

a.    **Neither TI (With Respect to OU-1 Costs) Nor Agere Were Parties to a Prior Civil Action and Therefore Cannot Recover Under CERCLA Section 113(f)(1)**

In Count I of the Fourth Amended Complaint, each Plaintiff seeks contribution from

Defendants under CERCLA Section 113(f)(1) which reads, in pertinent part:

> Any person may seek contribution from any other person who is liable or potentially liable under Section 9607(a) of this Title, during or following any civil action under Section 9606 of this Title or under 9607(a) of this Title . . . .

42 U.S.C. 9613(f)(1).

As the Supreme Court determined in Cooper Industries, a plaintiff that has not been sued

under CERCLA Sections 106 or 107(a) may not seek contribution under Section 113(f)(1).  125

S.Ct. at 586.  Therefore, neither TI (with respect to OU-1 costs) nor Agere is entitled to seek

contribution under Section 113(f)(1) as they had not been sued by the United States under

Sections 106 or 107(a) of CERCLA.  Defendants are mindful that Defendant Handy & Harman

Tube Company, Inc. raised this very defense in opposition to former Plaintiff BFAG's Motion

for Leave to File a Fourth Amended Complaint and that this Court rejected it as to Plaintiff

BFAG which, at that time, was the lone Plaintiff in this action.  The Court reasoned that the

institution of a civil action by the United States against parties other than BFAG (who then were

not Plaintiffs to this contribution action) satisfied Section 113(f)(1)'s requirement of a prior or

pending civil action even as to a party such as BFAG which had not been sued by the

government. (Memorandum & Order of July 20, 2005, Exh. "B", pp. 13-15). However, the Court's ruling on this issue in the determination of former Plaintiff BFAG's Motion to Leave to Amend (where a court need only determine whether or not the proposed amended pleading is futile) does not preclude the Court from ruling otherwise when the issue is later presented on a motion to dismiss following the filing of an amended complaint. National Railroad Passenger Corp. v. Penn Central Corp., 2004 WL 1335723 * 5 (E.D. Pa. 2004). This is particularly so here wherein this Court, in granting former Plaintiff BFAG's Motion for Leave to Amend its Complaint, denied as moot Handy & Harman's cross-motion for summary judgment raising this defense. It is further particularly appropriate to consider this issue anew where, as here, other district courts in this Circuit have applied Cooper Industries and dismissed Section 113(f)(1) contribution claims because the plaintiff had not been sued in an underlying Section 106 or Section 107 action. Montville Township v. Woodmont Builders, LLC, 2005 WL 2000204 * 11-13 (D.N.J. Aug, 17, 2005); Champion Laboratories, Inc. v. Metex Corp., 2005 WL 1606921 * 4 (D.N.J. July 8, 2005). See also, Simon Wrecking Co. V. AIV Ins. Co., 350 F. Supp. 2d 624, 637 n. 14 (E.D. Pa. 2004).

Other federal courts outside of the Third Circuit have also applied Cooper Industries to bar contribution actions by plaintiffs who were not parties to a predicate Section 106 or Section 107 action even where there had been state and federal administrative proceedings instituted against them. Syms v. Olin Corporation, 408 F.3d 95, 101 (2d Cir. 2005); Cadlerock Properties Joint Venture, L.P. v. Schilberg, 2005 WL 1683494 * 4-5 (D. Conn. July 19, 2005) (state administrative order); Blue Tee Corp. v. ASARCO, Inc., 2005 WL 1532955 * 3-4 (W.D. Mo. June 27, 2005) (EPA administrative order); W.R. Grace & Co.-Conn v. Zotos International, Inc., 2005 WL 1076117 * 2 (W.D.N.Y. May 3, 2005) (state administrative consent order);

Metropolitan Water Reclamation District of Greater Chicago v. Lake River Corp., 365 F. Supp. 2d 913, 916-917 (N.D. Ill. April 12, 2005); Vine Street LCC v. Keeling, 362 F. Supp. 2d 754, 760 (E.D. Tx. 2005); City of Waukesha v. Viacom International, Inc., 362 F. Supp. 2d 1025, 1026-1027 (E.D. Wis. 2005) (state administrative settlement); Pharmacia Corp. v. Clayton Chemical Acquisition LLC, 2005 WL 615755 * 7-11 (S.D. Ill. March 8, 2005) (EPA administrative order); Mercury Mall Associates, Inc. v. Nick's Market, Inc., 368 F. Supp. 2d 513, 518 (E.D. Va. 2000); Elementis Chemicals, Inc. v. T.H. Agriculture and Nutrition, L.L.C., 373 F. Supp. 2d 257, 265-266 (S.D.N.Y. 2005); AMW Materials Testing, Inc. v. Town of Babylon, 348 F. Supp. 2d 4, 11 (E.D.N.Y. 2004).    To be sure, none of these cases involved circumstances identical to those present in this case in which, as the Court pointed out in its July 20, 2005 Memorandum and Order (Exh. "B"), a Section 107 action brought by the government had been resolved against potentially responsible parties ("PRPs") other than the plaintiff suing for contribution.    Nevertheless, the holding in Cooper Industries, CERCLA statutory scheme's policy of encouraging settlements with the EPA and state agencies, and the very nature of a contribution action all suggest that the Court's reading of Section 113(f)(1) was not correct.

The logic of the Cooper Industries Court's decision was stated succinctly by Justice Thomas:

> Section 113(f)(1), 100 STAT. 1647, authorizes contribution claims only "during or following" a civil action under § 106 or § 107(a) and it is undisputed that Aviall has never been subject to such an action.

125 S.Ct. at 585 (emphasis added).    The Supreme Court could have easily said, but did not, that **no one** had been a party to a civil action brought by the United States government under Sections 106 or 107 with respect to the contaminated site at issue. The Court's careful choice of words -- words that specifically described Aviall as a nonparty to such prior or pending civil action --

speaks volumes.  It is not reasonable to conclude that the Court intended its holding to be narrowly restricted to cases in which no action had been brought by the government against anyone without giving the slightest indication of such intent in its Opinion.

This Court's extension of Section 113(f)(1) to permit contribution claims by <u>any</u> PRP, whether or not that PRP was a party to a prior or pending Section 106 or Section 107 action, also is inconsistent with the interaction of the plain meaning and intent of CERCLA Sections 113(f)(1), (f)(2) and (f)(3) to encourage settlements, as noted in <u>In the Matter of Reading Co.</u>, 115 F.3d 1111 (3d Cir. 1997).  The Court of Appeals in that case identified the two incentives to an early settlement with the United States that Section 113 provides.  First, settling PRPs -- and only settling PRPs -- are protected from claims by non-settling parties for contribution for costs arising from "matters addressed" in a Consent Decree under Section 113(f)(2).  Second, the potential liability of non-settling PRPs to the government is reduced only by the amounts of the settlements rather than the equitable shares of the settling PRPs.  <u>Id</u>. at 1119.  In rejecting an implied right of contribution under CERCLA Section 107(a)(4)(B), the Court noted how this statutory scheme would be bypassed if there was another right to contribution, stating:

> The incentive to early settlement would disappear, and the extent of litigation involved in a CERCLA case would increase dramatically.  Consent agreements would no longer provide protection, and settling parties would have to endure additional rounds of litigation to apportion their losses.

<u>Id</u>.

If any person can seek contribution under Section 113(f)(1), even where it has not been a party to a prior or pending civil action brought by the government under Section 106 or 107, the same danger would exist as identified by the <u>Reading</u> court if a PRP were permitted to seek "implied" contribution under Section 107(a)(4)(B).  There would be no incentive to parties such

10

as Agere and TI to settle their potential liability with the United States if such parties, without settling, could gain the same advantage earned by those parties that actually settle their liability with the United States. The two advantages highlighted by the <u>Reading</u> Court are present here. First, parties such as Agere and TI obtain the protection from contribution claims arising from Section 113(f)(2) without having to commit to paying a dime toward remediation costs. All that a non-settling PRP would have to do would be to simply join forces with parties that did settle with the government and thereinafter seek contribution for any costs they may ultimately agree to pay just as though they had settled with the government. Second, the liability of the non-settling defendants is reduced only by the amount ultimately paid by such parties, not their equitable shares, thereby eliminating the incentive of settling with the United States. In reality, parties in the position of Agere and TI are more akin to those defendant PRPs in this case who settled with the contribution plaintiffs after this contribution action was instituted. This Court previously determined in its June 30, 2004 Order (Exh. "D") that such settling Defendants are <u>not</u> entitled to pursue contribution claims and the liability of the remaining defendants is reduced by the settling defendants' equitable shares of liability, not just the amount paid in settlement. Thus, Agere and TI, who also settled only with the Plaintiffs who had been sued by the government, and not with the government itself, also should not be entitled to seek contribution not envisioned by CERCLA.

Plaintiffs will undoubtedly argue, as former Plaintiff BFAG did in its response to Defendants' Cross-Motions for Summary Judgment, that the Defendants' strict reading of Section 113(f)(1), if followed, will discourage PRPs from settling with other PRPs who previously settled with the United States. The question is where the proper line should be drawn in allowing a settling PRP to gain the advantage and protection of 113(f)(2). The Supreme Court

has already answered this question.   Congress clearly intended that line should be "an administrative or judicially approved settlement" between the government <u>and a party sued by the government and now seeking contribution</u>.   Any contrary holding would permit parties such as Agere and TI to do an end run around what this Court previously held settling contribution defendants could not do -- pursue contribution claims to attempt to recover some of what they paid to proper contribution plaintiffs in settlement of those plaintiffs' claims against parties such as Agere and TI who did not enter into settlements with the government.

That a party's right to contribution under Section 113(f) was intended to arise from a prior action asserted against it (Section 113(f)(1)), or from a settlement it individually enters into with the government (Section 113(f)(3), discussed below), is even more apparent when one considers the fundamental nature of a contribution action.   See discussion at pp. 14-16 of this Memorandum of Law.   The essence of a contribution claim under Section 113, as noted by the <u>Reading</u> court, is a claim " 'by and between jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make.' " 15 F.3d at 1120, quoting <u>Akzo Coatings, Inc. v. Aigner Corp.</u>, 30 F.3d 761, 764 (7th Cir. 1994).   If this Court allows Agere and TI (with respect to OU-1 costs), to seek contribution under Section 113(f)(1), then a PRP who was not sued in a prior action can seek contribution for liabilities associated with a claim it is not facing, or for a settlement it was not "compelled" to make to resolve a lawsuit or administrative action instituted against it by the government.   As already explained by the Supreme Court, this is not what Congress intended.

**b.    Cytec, Ford, SPS and TI (With Respect to OU-2 Costs), Having Settled with the United States, Cannot Seek Recovery Under CERCLA Section 113(f)(1)**

Cytec, Ford, SPS and TI (with respect to OU-2 costs) cannot recover contribution under Section 113(f)(1) for a much different reason.[4]  As this Court recognized in its July 20, 2005 Memorandum & Order (Exh. "B"), the Cooper Industries opinion clarified that Section 113(f) provides two separate express rights of contribution in Sections 113(f)(1) and 113(f)(3)(B).  (Id. at p. 10, quoting Cooper Industries, Inc. v. Aviall Services, Inc., 125 S.Ct. 584).[5]  Implicit in both the Court's reading of Section 113(f) and in Cooper Industries is that a party that settles with the United States must rely exclusively upon the second available cause of action for contribution as provided by 113(f)(3)(B), because a Section 113(f)(1) action -- a contribution action during a primary action by the government or following a judgment -- is no longer available.  Since no Plaintiff in this case brought a contribution action during a civil action by the government or following a judgment in favor of the government, no Plaintiff has pled a valid right to contribution under Section 113(f)(1)[6], whereby Count I of the Fourth Amended Complaint should be dismissed.

---

[4]    As stated earlier, Cytec, Ford and SPS were parties to both Consent Decrees.  TI was a party only to the second Consent Decree (providing for design and implementation of the OU-2 phase and payment to the United States for response costs).

[5]    The Cooper Industries court reached this conclusion, in part, because there are two separate statutes of limitations covering contribution actions, one that begins running on the date of a judgment under CERCLA § 113(g)(3)(A), with the other that begins to run on the date of a settlement under 113(g)(3)(B).

[6]    As earlier noted, neither TI for OU-1 costs nor Agere are entitled to contribution under Section 113(f)(1) as neither was sued by the government or had a judgment entered against it.

2.    **Plaintiffs TI (With Respect to OU-1 Costs) and Agere Are Not Entitled to Recover Contribution Against Defendants Under Section 113(f)(3)(B)**

As stated above, CERCLA Section 113(f)(3)(B) provides the exclusive avenue for CERCLA contribution claims by a party that has settled its CERCLA liabilities with the United States or a state. Only TI (with respect to OU-2 costs), Cytec, Ford and SPS satisfy this condition.[7] TI (OU-1 costs) and Agere (OU-1 and OU-2 costs) cannot pursue claims under Section 113(f)(3)(B) because they have not settled their potential liabilities with the United States in an administrative or judicially approved settlement. Agere and TI settled with the other Plaintiffs who had settled with the government, not with the United States. Thus, as parties who settled with the other Plaintiffs, under this Court's June 30, 2004 Order (Exh. "D"), Agere and TI are not entitled to pursue contribution claims under Section 113(f)(3)(B) because they had not been sued by, nor have they settled with, the United States. Consequently, Count II of the Fourth Amended Complaint should be dismissed as to TI (for the OU-1 costs) and Agere.

3.    **No Plaintiff Has Alleged Facts Sufficient to Support a Contribution Claim Under Section 113(f)(1) or 113(f)(3)(B)**

Assuming, arguendo, that any Plaintiff can successfully overcome the statutory hurdles outlined above and can proceed under either Section 113(f)(1) or Section 113(f)(3)(B), the Fourth Amended Complaint nevertheless still fails to state any valid claim under Section 113(f) because two fundamental elements of a contribution action as defined by the courts are missing.

In In the Matter of Reading Co., 115 F.3d 1111 (3d Cir. 1997), the Court of Appeals recognized the federal common law basis of CERCLA § 113(f) in stating that:

---

[7]    Moving Defendants reserve all rights to argue whether the settlements between TI, Cytec, Ford and SPS constitute settlements contemplated by Section 113(f)(3)(B). For purposes of this motion only, Moving Defendants are not relying on this argument.

> In passing § 113(f), Congress acted to codify existing federal common law and to replace the judicially crafted measure with an express statutory remedy.

Id. at 1119.  The <u>Reading</u> Court correctly noted that CERCLA does not define the term "contribution."  Id. at 1120.  The Court further referenced Restatement (Second) of Torts § 886(a) as the embodiment of the "traditional, common law sense" of contribution that Congress intended to be reflected in Section 113(f).  Id. at 1124.  See also, United States v. Compaction Systems Corp., 88 F. Supp. 2d 339, 351-352 (D.N.J. 1999); E.I. Du Pont De Nemours and Co. v. United States, 297 F. Supp. 2d 740, 746-747 (D.N.J. 2003).

Section 886(a) of the Restatement (Second) of Torts reads as follows:

> (1) Except as stated in Subsections (2), (3) and (4), when two or more persons become liable in tort to the same person for the same harm, there is a right of contribution among them, even though judgment has not been recovered against all or any of them.

> (2) The right of contribution exists only in favor of a tortfeasor who has discharged the entire claim for the harm by paying more than his equitable share of the common liability, and is limited to the amount paid by him in excess of his share.  No tortfeasor can be required to make contribution beyond his own equitable share of the liability.

> (3) There is no right of contribution in favor of any tortfeasor who has intentionally caused the harm.

> (4) When one tortfeasor has a right of indemnity against another, neither of them has a right of contribution against the other.

The significant language for the present case is the first sentence of subparagraph (2) -- "[t]he right of contribution exists only in favor of a tortfeasor who has discharged the entire claim for the harm by paying more than his equitable share of the common liability, and is limited to the amount paid by him in excess of his share."  Thus, a plaintiff that seeks contribution under Section 113 must at least plead facts demonstrating that it has settled all

15

alleged liability to a third party by paying an amount that exceeds its "fair share of the overall liability." New Castle County, supra, 111 F.3d at 1122 (citation omitted). Indeed, at trial, the plaintiff seeking contribution bears the burden of establishing a reasonable basis for apportioning the overall liability to the third party. DeGussa Construction Chem. Operations, Inc. v. Berwind Corp., 280 F. Supp. 2d 393, 401 (E.D. Pa. 2003), citing, United States v. Union Corp., 277 F. Supp. 2d 478, 485 (E.D. Pa. 2003). Thus, each plaintiff seeking contribution must necessarily plead and prove, at a minimum, what it paid in settlement and that its payment exceeded its equitable share of the common liability.

No Plaintiff avers in the Fourth Amended Complaint any facts demonstrating that it settled liability to a third party by paying an amount exceeding its fair share of the overall liability. In fact, due to an ongoing, and fundamental, subterfuge plainly outlined in the Fourth Amended Complaint, the Plaintiffs intend to hide for all time from this Court the ultimate amount that any of them ends up paying. That subterfuge defeats the Plaintiffs' contribution claims because it necessarily prevents any one of them from alleging that it has paid more than its fair share of the common liability of all PRPs, one of the fundamental attributes of a valid claim for contribution. Paragraph 16 of the Fourth Amended Complaint (Exh. "C") avers only that "the Agreement Group Members[8] have agreed that they will, at some future time, and not in this civil action, reach a final allocation among themselves applicable to all costs associated with group activities, including the costs of cleanup work comprising OU-1 and OU-2." (Emphasis added). Plaintiffs further admit in paragraph 21 of their pleading that the contributions they have made towards OU-2 costs have been based on an interim allocation among them that does not bind any of them. Adding to the uncertainty is the allegation in paragraph 18 that the Plaintiffs have also

---

[8] The preamble to the Fourth Amended Complaint identifies the "Agreement Group Members" as Agere, Cytec, Ford, SPS and TI.

entered into an agreement with two other entities (only one of which is identified (¶ 101) and who is a defendant in this litigation), who allegedly also have contributed to the costs of the OU-1 remedial action. According to that Paragraph, those parties' contributions were based upon yet another "interim allocation" that, again, does not bind either the Plaintiffs or the two entities.

Clearly, there is no way to decipher whether and in what amount any particular Plaintiff has made a true contribution to an OU-1 or OU-2 settlement and, consequently, whether or not a particular Plaintiff has paid or ever will pay an amount that exceeded its fair share of liability for overall costs. Potentially, one or more of the Plaintiffs ultimately might contribute nothing to the settlement with the government because a final allocation reached privately after this civil action concludes (and therefore out of earshot of this Court) might assign one hundred percent of the Plaintiffs' collective interim liability payments to the other Plaintiffs.

In short, none of the Plaintiffs in this case have validly alleged in the Fourth Amended Complaint that it has paid in excess of its fair share to resolve a common liability.[9]

The Fourth Amended Complaint lacks another essential element of a contribution action under Section 113(f). There is no allegation that the Plaintiffs, individually or collectively, have "discharged the entire claim for the harm," i.e., have extinguished the liability of the Defendants to the United States for the OU-1 and OU-2 remediation and costs. The federal common law right of contribution recognized in the Reading and Halliburton cases, and embodied in Section 886(A) of the Restatement (Second) of Torts, depends upon the discharge of the common

---

[9]    There is a clear, if improper, purpose lurking behind the Plaintiffs' odd determination to pursue their final allocation *inter se* in a later private proceeding, rather than in this civil action. And that is this -- there are fundamental differences between and among the Plaintiffs as to what the evidentiary facts show and mean, and as to what equitable allocation consequences flow from those facts. Hiding those differences from the Court fundamentally and unfairly tilts the playing field in favor of the Plaintiffs in what is otherwise supposed to be an equitable proceeding. It is exactly as if the Court were being asked to umpire a baseball game, but is allowed to call strikes only against the Defendants, but not against the Plaintiffs.

liability as a critical, necessary condition to the accrual of a right to contribution.[10]  In E.I. Du
Pont De Nemours & Co. v. United States, 297 F. Supp. 2d 740 (D.N.J. 2003), the district court
granted summary judgment on a Section 113(f) contribution action on several grounds, including
the inability of the plaintiff to prove that it had discharged the common liability on the underlying
claim.  Id. at 752-753.  See Elf Atochem North America, Inc v. United States, 833 F. Supp. 488,
496-497 (E.D. Pa. 1993) (no right to contribution under New Jersey Joint Tortfeasor
Contribution Act because no discharge of common liability).

The Fourth Amended Complaint contains no clear averment that the liability of the
Defendants has been extinguished by the two settlements which certain of the Plaintiffs' have
entered into with the United States.  Paragraph 16 of the Fourth Amended Complaint merely
alleges that the Plaintiffs agreed to "collectively resolve the claims of EPA related to the site."
As a general rule, consent decrees do not extinguish the liability of any other person not party to
the agreement unless its terms so provide.  42 U.S.C. § 9622(h)(4); see also, 42 U.S.C. §
9613(f)(2).  The Fourth Amended Complaint does not allege that the United States has released
any non-parties, including the Defendants, pursuant to the terms of the Consent Decrees or
otherwise.[11]

---

[10]    Some courts look to the 1997 Uniform Comparative Fault Act ("UCFA") to
define the federal right of contribution.  See, e.g., Lyncott v. Chemical Waste Management, Inc.,
690 F. Supp. 1409 (E.D. Pa. 1998).  Section 4 of the UCFA also provides that in order to sustain
a right of contribution, the underlying common liability must first have been extinguished.  This
Court relied upon the UCFA in its Memorandum Order of June 30, 2004 (Exh. "D") to determine
"the extent to which the non-settling defendants' liability should be offset by any settlement
agreements." (Page 3, citing American Cyanamid Co. v. King Industries, Inc., 814 F. Supp. 215
(D.R.I. 1993)).  In the American Cyanamid case, the court ruled that the settling defendants could
not sue non-settling defendants for contribution unless the settlement agreement between
plaintiff and the settling defendants extinguished the liability of the non-settling parties.  Id. at
218.

[11]    Although not pleaded, there is no dispute that the United States expressly reserved
all rights to proceed against non-settling defendants in both Consent Decrees.

Moreover, if in the two Consent Decrees the Plaintiffs collectively agreed to implement all remediation efforts required by the United States for the Boarhead Farm Site and agreed to pay all response costs incurred by the United States, the liability of the Defendants, nevertheless, would not be discharged until all remediation was satisfactorily completed and all response costs paid. In United States v. Occidental Chemical Corp., 200 F. 3d 143 (3d. Cir. 1999), the Court of Appeals reversed the district court's order dismissing the United States' action against one PRP after another PRP entered into a consent order to remediate the site. The Court reasoned that because the consent decree depended upon the completion of remedial action and satisfactory performance by the settling PRP, the United States could pursue other PRPs. Id. at 148-149. See also, Elf Atochem North America v. United States, supra, 833 F. Supp. at 498 (consent decree with United States did not extinguish common liability because of reservation of rights with respect to non-parties). Plaintiffs in this action have not alleged that by the Consent Decrees or otherwise, they have extinguished "the entire claim for the harm" which the Defendants potentially may have to the government, a critical element of a purported right to contribution.

Having failed to plead these essential elements of a contribution action, Plaintiffs' CERCLA claims should be dismissed.

### 4.   Plaintiffs Are Not Entitled to Declaratory Relief Under CERCLA

The prayers for relief under Counts I and II of the Fourth Amended Complaint seek an order declaring, *inter alia*, that the Defendants are liable under CERCLA Sections 113(f)(1) and 113(f)(3)(B) and compelling the Defendants to provide contribution for all future response costs incurred at the Boarhead Site. The only authority cited in Counts I and II of the Fourth Amended Complaint is Section 107(a) of CERCLA, 42 U.S.C. § 9607(a). Count III of the Fourth Amended Complaint specifically requests a declaratory judgment pursuant to CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2).

19

Neither of the above-cited sections of CERCLA pertain to contribution actions. Section 113(g)(2) speaks only to the Court's authority to enter a declaratory judgment in Section 107 actions after defining the applicable statute of limitations to that section. Section 113(g)(2) does not address contribution actions. Although the statute of limitations for contribution actions is referenced in Section 113(g)(3), no specific right of declaratory relief is provided therein.

The question, therefore, is whether in view of this Court's July 20, 2005 decision (Exh. "B"), which properly followed Third Circuit precedent holding that PRPs have no implied right to contribution under CERCLA Section 107(a)(4)(B), Plaintiffs are entitled to declaratory relief as to future costs that may be incurred in connection with the Boarhead Farm Site. The Court in Blue Tee Corp. v. ASARKO, Inc., 2005 WL 1532955 (W.D. Mo. June 27, 2005), held squarely that there is no right to declaratory relief in a contribution action. Id. at * 4-5. This result makes complete sense in view of what is a contribution action is as discussed above. Contribution requires a plaintiff seeking contribution to have made a payment in resolution of an entire common liability followed by a suit seeking recovery for its payment to the extent that it paid in excess of its fair share of the common liability. Expanding a contribution action to permit a declaration of a right to the recovery of unpaid costs is inconsistent with the very nature of contribution claims. Therefore, the declaratory relief sought by Plaintiffs in Counts I, II and III should be dismissed on this basis alone.[12]

---

[12]    In Count III of their Fourth Amended Complaint, Plaintiffs seek a declaratory judgment not only for all future response costs, but also "for all damages that the Agreement Group members may suffer at or with respect to the Site." If the Court is inclined to allow Plaintiffs' claims for declaratory relief to go forward, no provision of CERCLA permits the recovery of damages other than response costs. The reference to "damages" in CERCLA Section 113(g)(3) refers to damages to natural resources and the costs of assessing such damages, neither of which is at issue here. Thus, Plaintiffs' claims for "all damages" should be stricken.

**B.**   **Plaintiffs Have Failed to Plead a Viable Cause of Action for Contribution Under the Pennsylvania Hazardous Sites Cleanup Act**

    **1.**   **Plaintiffs Have No Implied Right of Contribution Under HSCA Section 702**

HSCA is Pennsylvania's version of CERCLA and it has long been recognized by the district courts that HSCA's provisions generally mirror those of CERCLA. See e.g., General Electric Environmental Services, Inc. v. Envirotech Corp., 763 F. Supp. 113, 118-120 (M.D. Pa. 1991). The description of "responsible persons" as defined in HSCA Section 701(a)(1)-(3), 35 P.S. § 6020.701(a)(1)-(3), is virtually identical to the classes of responsible parties as described and defined in CERCLA Section 107(a)(1)-(4), 42 U.S.C. § 9607(a)(1)-(4). Similar to CERCLA, HSCA Section 702(a)(2), 35 P.S. § 6020.702(a)(2), imposes liability on responsible persons for response costs incurred by non-governmental parties to the same extent as does CERCLA Section 107(e)(4)(B), 42 U.S.C. § 9607(a)(4)(B). HSCA also has a contribution provision that corresponds to CERCLA Section 113(f). HSCA Section 705, 35 P.S. § 6020.705, reads in its entirety as follows:

> **(a) General rule.**--A person may seek contribution from a responsible person under section 701, during or following a civil action under section 507 or 1101. Claims for contribution shall be brought in accordance with this section and the Pennsylvania Rules of Civil Procedure. Nothing in this section shall diminish the right of a person to bring an action for contribution in the absence of a civil action under section 507 or 1101.

> **(b) Allocation.**--In a civil action in which a liable party seeks a contribution claim, the court, or the board in an action brought under section 507 or 1101, shall enter judgment allocating liability among the liable parties. Allocation shall not affect the parties' liability to the department. The burden is on each party to show how liability should be allocated. In determining allocation under this section, the court or the board may use such equitable factors as it deems appropriate.

The trier of fact shall consider the following factors:

(1) The extent to which each party's contribution to the release of a hazardous substance can be distinguished.

(2) The amount of hazardous substance involved.

(3) The degree of toxicity of the hazardous substance involved.

(4) The degree of involvement of and care exercised by each party in manufacturing, treating, transporting and disposing of the hazardous substance.

(5) The degree of cooperation by each party with Federal, State or local officials to prevent harm to the public health or the environment.

(6) Knowledge by each party of the hazardous nature of the substance.

**(c) Settlements.**

(1) When the department enters into an administrative or judicially approved settlement of a civil action brought under section 507 or 1101, the amount of the department's claim under that civil action shall be reduced by the amount of the consideration paid to the department or the allocated amount of the settling party's liability, whichever is less. A settlement shall not otherwise affect the department's claim under section 507 or 1101.

(2) A person who has resolved its liability to the department in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement unless the terms of the settlement provide otherwise. The settling party may seek contribution from a nonsettling party to recover the consideration paid in excess of its allocated share of liability as determined by the court or the board.

(3) When the department has obtained less than complete relief from a person who has resolved its liability to the department in an administrative or judicially approved settlement, the department may bring an action against a person who has not so resolved its liability. A nonsettling party may seek contribution from any other nonsettling party or any settling party as allowed under this section.

> **(d) Federal funds;cooperative agreements.**--The Commonwealth shall actively seek to obtain Federal funds to which it is entitled under the Federal Superfund Act and may take actions necessary to enter into contractual or cooperative agreements under section 104(c)(3) and (d)(1) of the Federal Superfund Act (42 U.S.C. § 9604(c)(3) and (d)(a)).

35 P.S. § 6020.705.

Prior to the <u>Cooper Industries</u> decision, the courts interpreted Section 702 of HSCA to provide an implied right of cost recovery to parties who were <u>not</u> contributors to the pollution of the site. <u>E.g. Toole v. Gould, Inc.</u>, 764 F.Supp. 95 (M.D. Pa. 1991); <u>General Electric Environmental Services, Inc. v. Envirotech Corp.</u>, <u>supra</u>. Other district courts in this Circuit reaffirmed that this cost recovery right was only available to innocent parties and that no implied right of contribution existed under Section 702 on behalf of PRPs, such as the Plaintiffs here, against other PRPs. <u>DeGussa Construction Chem. Operations, Inc. v. Berwind Corp.</u>, 280 F. Supp. 2d 393, 401 (E.D. Pa. 2003); <u>United States v. National Railroad Passenger Corp.</u>, 2004 WL 1335723 * 5 (E.D. Pa. 2004); <u>Darbouze v. Chevron Corp.</u>, 1998 WL 512941 * 9 (E.D. Pa. 1998); <u>United States v. Pesses</u>, 1998 WL 937235 * 16 (W.D. Pa. 1998) (report and recommendation of Magistrate). Recognizing the precedent of the Third Circuit's decision in <u>New Castle</u> that CERCLA claims for contribution are limited to Section 113(f), the courts in the cases cited immediately above ruled that claims under HSCA by one PRP (who paid remediation costs) against another PRP were limited to Section 705 contribution claims. As Judge Kelly stated in <u>National Railroad Passenger Corp. v. Penn Central Corp.</u>, "To hold otherwise would allow a 'responsible party' found liable to recoup all of its expenditures from another 'responsible party' regardless of its degree of fault." 2004 WL 1335723 * 5, quoting <u>Darbouze v. Chevron Corp.</u>, 1998 WL 512941 * 9 (E.D. Pa. 1998). Count IV of the Fourth Amended

Complaint in this case alleges only a purported "implied" right of contribution under HSCA Sections 701 and 702 (Fourth Amended Complaint, Exh. "C", (¶¶ 163-167), which sections provide solely for cost recovery, not contribution as is provided by Section 705. Therefore, because Count IV attempts to plead an unavailable cause of action under HSCA Section 702 by asserting a non-existent "implied right" of contribution under that section, that count should be dismissed.

Should this Court not be inclined to dismiss Plaintiffs' "implied" claim for contribution under HSCA Section 702, then it necessarily follows that a "novel" question of Pennsylvania law has been presented. In fact, currently there are no reported Pennsylvania decisions addressing how state courts will interpret the impact, if any, of Cooper Industries on HSCA. Thus, if this Court does not follow the analysis of Cooper Industries by dismissing the Plaintiffs' analogous purported state statutory "implied" contribution claim under HSCA Section 702, then it would be appropriate under 28 U.S.C. § 1367(c)(1) to defer to the Pennsylvania state courts the question of how the contribution provisions of their state statute should be construed. Consistent with the Federal Supplemental Jurisdiction Statute, this Court should exercise its discretion to defer to the Pennsylvania state courts any initial determination as to how contribution and/or cost recovery actions will proceed under HSCA following Cooper Industries. Accordingly, Plaintiffs' statutory "implied" contribution claims under HSCA Section 702 should be dismissed for that additional reason.

> ## 2. Plaintiffs Have No Express Right of Contribution Under HSCA Section 705

Defendants recognize that Plaintiffs might attempt to avoid the dismissal of all of their HSCA claims by seeking to further amend their Complaint by attempting to plead a contribution

cause of action under HSCA Section 705.  Such a pleading, however, would be futile.  None of the Plaintiffs meet the threshold requirement of Section 705(a) that there was or is a pending civil action under HSCA Sections 507 or 1101 against the Plaintiffs or anyone else.  Section 507, 35 P.S. § 6020.507, refers to actions by the DER (now the DEP), a Commonwealth agency or a municipality.  Section 1101, 35 P.S. § 6020.1101, concerns an action to abate a public nuisance. There is no allegation in the Fourth Amended Complaint that there was or is an action brought by the DER or DEP under Section 507 or a nuisance abatement action under Section 1101 relating to the Boarhead Site.  In addition, the Plaintiffs could not proceed under Section 705(c)(2) which, like CERCLA Section 113(f)(3)(b), provides a right of contribution to parties that settle because none of the Plaintiffs has alleged that it has resolved through settlement any purported liability to DER, DEP or any Pennsylvania governmental agency or municipality, in an administrative or judicially approved settlement.

Any contribution claim pled under HSCA Section 705 would also fail for the same reasons that the Plaintiffs' CERCLA contribution claims fail.  As earlier noted, none of the Plaintiffs has pled whether or in what amount each has individually paid to remediate the contamination of the Boarhead Farm Site and, therefore, there is no basis on which to determine if each has paid more than its equitable share of the total liability.  Moreover, there is no allegation that the Plaintiffs through settlement or otherwise have discharged the Defendants' alleged liability to the DER, DEP or any state or local governmental agency or municipality under HSCA.  Exactly like federal common law, such a discharge of common liability is a prerequisite to seeking contribution under Pennsylvania law.  W.D. Rubright Co. v. International Harvester Co., 358 F. Supp. 1388 (W.D. Pa. 1973); Oviatt v. Automated Entrance System Co., Inc., 583 A.2d 1223 (Pa. Super. 1990).

3. **Any HSCA Claims the Plaintiffs Can Plead are Preempted by CERCLA**

CERCLA Sections 614(a) and (b) address state-related claims as follows:

**§ 9614. Relationship to other law**

**(a) Additional State liability or requirements with respect to release of substances within State**

Nothing in this chapter shall be construed or interpreted as preempting any State from imposing any additional liability or requirements with respect to the release of hazardous substances within such State.

**(b) Recovery under other State or Federal law of compensation for removal costs or damages, or payment of claims**

Any person who receives compensation for removal costs or damages or claims pursuant to this chapter shall be precluded from recovering compensation for the same removal costs or damages or claims pursuant to any other State or Federal law. Any person who receives compensation for removal costs or damages or claims pursuant to any other Federal or State law shall be precluded from receiving compensation for the same removal costs or damages or claims as provided in this chapter.

42 U.S.C. § 9614.

Pennsylvania common law claims for contribution are preempted by this Section. In re Reading Co., 115 F.3d 1011, 1117 (3rd Cir. 1997). State regulatory schemes are not necessarily preempted. Manor Care, Inc. v. Yaskin, 950 F.2d 122, 126-127 (3rd Cir. 1991). However, HSCA claims are preempted if they are in direct conflict with CERCLA. North Penn Water Authority v. BAC Systems, 2005 WL 1779091 * 9 (E.D. Pa. May 25, 2005) (state mandated remedial action contrary to EPA remedial plan). Recovery for contribution pursuant to HSCA Section 705 is not recoverable if the same damages can be awarded under CERCLA. Darbouze v. Chevron Corp., 1998 WL 512941 (E.D. Pa. 1998). In Darbouze, Judge Kelly ruled that

plaintiff could not recover the same costs under CERCLA and HSCA. Id. at * 13 n. 30, citing Bethlehem Iron Works v. Lewis Industries, 1996 WL 557592 (E.D. Pa. 1996). In Bethlehem Iron Works, the case cited by Judge Kelly, Judge Huyett ultimately awarded certain costs under CERCLA and response costs under HSCA that Plaintiffs seek in this civil action that were not recoverable under CERCLA. Id. at * 67.

The Fourth Amended Complaint does not allege that there are any costs recoverable under HSCA that are not recoverable under CERCLA. Since the damages Plaintiffs seek in their HSCA claim are the same as the damages sought by them under CERCLA, Plaintiffs' HSCA claims should be dismissed as being preempted by CERCLA.

## III.   CONCLUSION

Now that the real plaintiffs in interest are the named Plaintiffs in this case, the Court now has the opportunity to examine and apply Section 113(f) of CERCLA, guided by the Supreme Court's decision in Cooper Industries. Each plaintiff's right to seek contribution under Sections 113(f)(l) and 113(f)(3)(B) -- the two available avenues for contribution for response costs -- must be independently judged as to whether that specific plaintiff has a claim upon which relief can be granted. Neither Plaintiff TI (with respect to the OU-1 costs) nor Plaintiff Agere can pursue contribution claims under Section 113(f) because neither Plaintiff was sued, nor did either Plaintiff settle its liability to the United States in connection with the Boarhead Farm Site. They should be treated no differently than those Defendants who have settled with the Plaintiffs. As this Court has already ruled, such settling Defendants cannot seek contribution from non-settling Defendants and the non-settling Defendants are entitled to assert the settling Defendants' full equitable shares of liability.

The remaining Plaintiffs stand on different grounds because each did settle with the United States. However, their decision, along with TI, Agere and the other two parties contributing to the cost of remediating the Boarhead Farm Site, to postpone their allocation of responsibility until after the conclusion of this litigation prohibits them from pleading two of the three essential elements of the right to contribution under CERCLA Section 113(f). No Plaintiff has alleged, and, indeed, cannot allege, what it definitively paid to remediate the Boarhead Farm Site and that such payment exceeded its equitable share of the cost.

The third missing element is equally significant and would justify the dismissal of Plaintiffs' claims absent the unresolved allocation of liability among the Plaintiffs and other parties to the remediation. Plaintiffs have not pleaded any facts that even suggest that the potential liability of the Defendants to the United States for the cost of remediating the Boarhead Farm Site has been extinguished. This is the fundamental basis for a right of contribution under federal common law that is lacking in this case.

The reasons why no plaintiff can state a claim upon which relief can be granted under CERCLA apply with equal force to their HSCA claims, assuming that such claims are not preempted by CERCLA. HSCA's statutory scheme with respect to contribution rights closely parallels that of CERCLA. Just as Plaintiffs' respective rights to seek contribution under CERCLA is limited to Section 113(f) thereof, each plaintiff's right to seek contribution under HSCA is limited to Section 705 thereof, which has not been pleaded in the Fourth Amended Complaint. Any further effort to do so would be futile.

28

For all the above and foregoing reasons, Moving Defendants respectfully request this Court to dismiss the Plaintiffs' Fourth Amended Complaint.

Respectfully submitted,

*Jeffrey L. Pettit*

RICHARD C. BIEDRZYCKI, ESQUIRE
Attorney I.D. No. 30604
JEFFREY L. PETTIT, ESQUIRE
Attorney I.D. No. 21624
PHELAN, PETTIT & BIEDRZYCKI
121 South Broad Street
Suite 1600
Philadelphia, PA 19107
(215) 546-0500

Counsel for Defendant Ashland Inc.

Date:  September 9, 2005

G:\DATA\1357-29\Pldgs\MOL-MotionDismiss.wpd

29

## CERTIFICATE OF SERVICE

I, Jeffrey L. Pettit, Esquire, hereby certify that on this Ninth of September, 2005, I caused

a true and correct copy of the foregoing Motion to Dismiss the Fourth Amended Complaint,

Supporting Memorandum of Law and Proposed Order, to be served by e-mail and first class mail

on all counsel of record addressed as follows:

Glenn A. Harris, Esquire
Ballard Spahr Andrews & Ingersoll, LLP
Plaza 1000 - Suite 500
Main Street
Voorhees, NJ 08043-4636
e-mail: harrisg@ballardspahr.com
*Counsel for Plaintiff*

Thomas W. Sabino, Esquire
Wolff & Samson, PC
280 Corporate Center
5 Becker Farm Road
Roseland, New Jersey 07068-1776
e-mail: tsabino@wolffsamson.com
*Advanced Environmental Technology Corp.*

Lynn Wright, Esquire
Edwards & Angell, LLP
750 Lexington Avenue
New York, New York 10022-1200
e-mail: lwright@ealaw.com
*Carpenter Technology Corporation*

Seth v.d.H. Cooley, Esquire
Duane Morris LLP
Suite 4200, One Liberty Place
Philadelphia, PA 19103-7396
e-mail: scooley@duanemorris.com
        anfriant@duanemorris.com
*Flexible Circuits*

Melissa Flax, Esquire
Carella, Byrne, Bain, Gilfillian, Cecchi,
Stewart & Olstein, P.C.
5 Becker Farm Road
Roseland, New Jersey  07068-1739
e-mail:  mflax@carellabyrne.com
*Handy & Harman Tube Company*


Stephen P. Chawaga, Esquire
Monteverde, McAlee & Hurd
One Penn Center at Suburban Station
Suite 1500
1617 John F. Kennedy Boulevard
Philadelphia, PA  19103-1815
e-mail:  schawaga@monteverde.com
*Merit Metal Products Corp*.


Edward Fackenthal, Esquire
Henderson, Weitherill, O'Hey & Horsey
Suite 902 - One Montgomery Plaza
P.O. Box 751
Norristown, PA  19404
e-mail:  edwardfackenthal@cs.com
*NRM Investment Co.*


Andrew P. Foster, Esquire
Adina M. Dziuk, Esquire
Drinker, Biddle & Reath, LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA  19103-6996
e-mail: Andrew.Foster@dbr.com
       Adina.Bingham@dbr.com
*Rahns Specialty Metals, Inc.*
*Techalloy Co., Inc.*
*Thomas & Betts Corporation*
*Unisys Corporation*


*Jeffrey L. Pettit*
JEFFREY L. PETTIT

Date:  September 9, 2005

31