Page 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AGERE SYSTEMS, INC., CYTEC INDUSTRIES, : 
INC., FORD MOTOR COMPANY, SPS : 
TECHNOLOGIES, LLC, and TI GROUP : 
AUTOMOTIVE SYSTEMS, LLC, : 
                                : 
              Plaintiffs, :     Civil Action No.  02-3830
                                : 
v.                                : 
                                : 
ADVANCED ENVIRONMENTAL : 
TECHNOLOGY CORPORATION, ET AL., : 
                                : 
             Defendants. : 

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS

Page 2

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... i

INTRODUCTION ..................................................................................................... 1

ARGUMENT ........................................................................................................... 3

I.  *This Court Has Already Ruled that TI and Agere Can State a Claim Pursuant to CERCLA Section 113(f)(1* ................................................... 4

II.  *Plaintiffs Claims Under Section 113(f)(1) and 113(f)(3)(B) Do Not Require the Discharge of a Common Liability or an Express Allegation that Each Plaintiff Has Paid More than Its Fair Share* ........................... 10

    A.  Section 113(f) Directly Contradicts Defendants' Argument that a CERCLA Statutory Contribution Claim Must Include the Elements of Contribution Outlined in Restatement Section 886A(2) ...................... 13

    B.  No Opinion Holds that the Terms of Section 886A(2) of the Restatement are Elements of a Section 113(f) Cause of Action .............. 21

    C.  Plaintiffs' Complaint Alleges That Plaintiffs Have Paid More Than Their Fair Share ....................................................................... 27

III.  *The Agreement Group Members May Assert Claims Pursuant to Both CERCLA Section 113(f)(1) and 113(f)(3) Simultaneously* ...................... 30

IV.  *Plaintiffs Are Entitled to a Judgment that Defendants Are Liable for Future Response Costs* ........................................................................ 31

V.  *Plaintiffs Have Stated a Claim Pursuant to HSCA* ................................. 34

    A.  Plaintiffs Have an Implied Right of Contribution Under HSCA Section 702 ...................................................................................... 34

    B.  Plaintiffs Have an Express Right of Contribution Under HSCA Section 705 ...................................................................................... 35

    C.  Plaintiffs' HSCA Claim is not Preempted by CERCLA ........................ 38

    D.  There is no express preemption of the State's public nuisance and restitution claims. ............................................................................. 38

Page 3

E.      There is no field preemption to bar the State's claims under state law........................................................................................................ 39

CONCLUSION.................................................................................................................. 40

## INTRODUCTION

The members of the Boarhead Farm Agreement Group ("Agreement Group" or "Plaintiffs") respectfully submit this Memorandum in opposition to the Motion of the Defendants to Dismiss the Fourth Amended Complaint for Failure to State a Claim Upon Which Relief Can be Granted. This Motion is the Defendants' latest attempt to completely evade responsibility for their equitable shares of the millions of dollars of response costs that Plaintiffs have incurred or will incur to remediate contamination at the Boarhead Farms Superfund Site ("the Site"). Defendants' Motion is largely based upon an impermissible attempt to reargue the holding in this Court's July 20, 2005 Opinion that Agere and TI have a right to contribution under section 113(f)(1) of CERCLA. Defendants' remaining arguments relate to allegations that have been in each of the Complaints filed in this action, and not to any new or amended allegations in the Fourth Amended Complaint.

Congress designed section 113 of CERCLA as a statutory scheme intended to encourage persons potentially responsible for remediating contaminated sites to promptly settle claims with the United States or a State so that available governmental monies and attention could be redirected to other hazardous waste sites. A fundamental component of this statutory scheme is the creation of a statutory right given to, *inter alia*, persons who settle their liability with the government to immediately seek from non-settling liable parties their equitable shares of response costs incurred and to be incurred by the settling parties pursuant to the terms of their settlement with the government.

Typically, the United States Environmental Protection Agency ("EPA") targets only a few PRPs under CERCLA with respect to a particular site. Thereafter, EPA provides those targeted PRPs a very limited timeframe in which to decide whether or not to pay the

government its past response costs and/or perform future remedial work at a contaminated site. Those PRPs must then quickly decide whether to enter into a settlement with the government in which they agree to become jointly and severally liable for those costs, despite having only a minimal understanding of their equitable shares relative to each other and to all of the other persons potentially responsible for contamination at the site (including those PRPs who might not then be known). Congress recognized that the statutory right to seek immediate contribution from non-settlors would be critical to parties considering such settlements.

This statutory scheme worked at the Site. After being notified by EPA of their potential liability, four of the Agreement Group members agreed to complete the remediation begun by the United States, to operate and maintain the remedy until EPA determines that the remediation is complete, and to pay to the United States over $7 million dollars for its past response costs. The fifth Agreement Group member, Agere Systems, Inc. ("Agere"), joined with the other four Agreement Group members to collectively fund those costs and activities. Each Agreement Group member committed to these costs with full knowledge that many of the non-settling defendants here had been asked, but had refused, to make those very commitments. The Agreement Group members proceeded as they did in reliance on the right Congress gave them to pursue equitable shares from those non-settlers. As a result, the Superfund was replenished and governmental resources were redirected to other contaminated sites with EPA secure in the knowledge that the Agreement Group members were going to do what was necessary to eliminate the threat to human health and the environment presented by the Site.

Defendants want to eviscerate the statutory contribution rights so important to the Agreement Group's decision to settle with EPA and to the statutory scheme created by Congress in section 113. Defendants insist that the Agreement Group must plead one or more "elements"

of a common law claim for contribution to state a claim for statutory contribution under section 113(f). No opinion cited by the Defendants or known to Plaintiffs holds that a pleading fails to state a claim under section 113(f) if it does not allege such common law "elements." Defendants' argument is also directly contradicted by the plain language and legislative history of section 113.

The Agreement Group respectfully requests that this Court deny Defendants' Motion in its entirety so that the expert phase of discovery can go forward and this matter be prepared for trial.

## ARGUMENT

Dismissal under Fed. R. Civ. P. Rule 12(b)(6) may be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). A federal court's task in determining the sufficiency of a complaint is "necessarily a limited one." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds* by *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). The appropriate inquiry is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* The Rule's purpose is to terminate lawsuits "that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity." *See Port Authority of New York & New Jersey v. Arcadian Corp.*, 189 F.3d 305, 313 (3d Cir. 1999) (Rule "is designed to screen out cases where 'a complaint states a claim based upon a wrong for which there is clearly no remedy, or a claim which the plaintiff is without right or power to assert and for which no relief could possibly be granted . . ..'" (citations omitted)). The role of the court is to determine "whether, under any reasonable reading of the pleadings, the plaintiffs may be entitled to relief,

Page 7

and [the court] must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn there from." *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).

> I.      *This Court Has Already Ruled that TI and Agere Can State a Claim Pursuant to CERCLA Section 113(f)(1)*

Defendants' assertion that Agere and TI are not entitled to seek contribution pursuant to section 113(f)(1) is an attempt to reargue an issue that has already been decided by this Court. This Court squarely and unambiguously held that the portion of the proposed Fourth Amended Complaint wherein TI and Agere asserted claims against the Defendants pursuant to section 113(f)(1) was not futile. July 20, 2005 Opinion at 15. Defendants had ten (10) days to seek reconsideration of this Court's holding. Local Rule 7.1(g).[1] They chose not to do so and are now barred from seeking reconsideration pursuant to a formal Motion for Reconsideration or under the guise of some other procedure. That holding is thus the law of the case and may be changed only in very limited circumstances, none of which Defendants assert here. *See Lambert v. Blackwell*, 387 F.3d 210, 237 n.20 (3d Cir. 2004) ("as a rule courts should be loathe to [revisit prior decisions of their own or of coordinate courts] in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'"). Instead, the Defendants brazenly assert that no such ruling was made, and then repeat their losing arguments. Pages 7 through 12 of Defendants' Brief are thus improper and should be ignored.

---

[1]      Though Handy & Harmon initially raised the futility of Agere and TI (with respect to OU-1-related costs) asserting section 113(f)(1) claims, each of the other Moving Defendants expressly joined in that portion of the Handy & Harmon motion and argument. Reply Brief in Support of Defendants' Cross-Motion for Summary Judgment at 2, n.1. Having joined in that motion and those arguments, the Defendants cannot now distance themselves from this Court's July 20, 2005 resolution of those arguments.

In that portion of this Court's July 20th Order addressing section 113(f)(1), the Court noted that it was specifically addressing Handy & Harmon's arguments that Agere and TI are barred from seeking section 113 contribution because of the *Cooper Industries* opinion. The Court stated that it was addressing this argument "with regard to Agere and TI," and that it did not need to consider whether the Agreement Group could bring a section 113(f)(1) contribution action because it had already ruled that plaintiffs could amend the caption to name the members of the Agreement Group. July 20th Opinion at 12-13. The Court held in that section of the opinion, after a careful and full analysis of section 113(f)(1), that it would "not deny Plaintiff's Motion for Leave to Amend on the ground that, in as much as it is brought by Agere and TI, Plaintiff's section 113(f)(1) claims are futile."[2] July 20th Opinion at 15. It is impossible to reconcile the Defendants' representations of what the July 20th Opinion says with the Opinion itself. *See* Fed. R. Civ. P. 11.

The opinions relied upon by Defendants to support their attempt to reargue this issue are inapposite. The court in *United States v. National Railroad Passenger Corp.*, 2004 W.L. 1335723 (E.D. Pa. 2004), permitted third-party plaintiffs there to amend their Complaint despite objection by one of the third-party defendants. 2004 W.L. 1335723 at p. 5. The court severed the proposed new claims and stated that it would consider the merits of those claims on a future motion to dismiss or motion for summary judgment relating to those claims, stating: "[T]his Court is not prepared to say, at this point, that SEPTA's retrofitting contribution claims

---

[2]    A proposed amendment to a complaint is "futile" if it fails to state a claim upon which relief may be granted. July 20, 2005 Opinion at 9, n.5. Indeed, this court specifically noted that "the parties appear to have sufficiently briefed the futility, or lack thereof, of each of the proposed amendments," and that, because the standard for determining the futility of an amendment is the same as the standard for a Motion to Dismiss, "this Court will examine each of the proposed amendments to which defendants object in turn." *Id.*

are 'clearly futile.'" *Id.* at 6.  Because, in contrast, this Court chose to decide the futility question

as part of the Agreement Group's Motion for Leave to Amend, the *National Railroad* opinion is

irrelevant.[3]

Moreover, nothing Defendants say in attempting to reargue this issue is of merit.

None of the post-*Cooper Industries* opinions cited by Defendants, all but two of which were

cited in briefs filed with respect to the Motion for Leave to Amend, contradict the holding

contrary to the holding in the July 20th Opinion.  None of those courts had any reason to consider

the words "Any person" in section 113(f)(1) because in each instance the plaintiff there was a

sole plaintiff, like Aviall in *Cooper Industries*.[4]  Plaintiffs here believe that there is no opinion

either before or after *Cooper Industries* that is contrary to this Court's holding that Agere and TI

may bring a contribution action under section 113(f)(1).[5]

---

[3]    The three "new" opinions relied upon by Defendants in support of their reargument of
this issue are meaningless.  In both *Montville Township v. Woodmont Builders, LLC*,
2005 WL 2000204 (D.N.J. August 17, 2005) and *Champion Laboratories, Inc. v. Metex
Corp.*, 2005 WL 1606921 (D.N.J. July 8, 2005) a sole plaintiff sought to maintain section
113(f)(1) claims despite the fact that there had been no prior civil action against it or
anyone else.  These opinions are no different from the other opinions cited in the past by
Defendants because they involve only a single plaintiff, such that the courts there had no
occasion to construe the words "any person."  *Simon Wrecking Co., Inc. v. AIU Ins. Co.*,
350 F. Supp. 2d 624 (E.D. Pa. 2004) is nothing more than a declaratory judgment action
that includes in a footnote a reference to the *Cooper Industries* opinion.  Nothing in that
opinion constitutes a holding with respect to the question here nor should it have any
persuasive authority.

[4]    The two plaintiffs in *Pharmacia Corp. v. Clayton Chemical Acquisition LLC*, 2005 WL
615755 (S.D. Ill. March 8, 2005) were related entities with respect to the site.

[5]    Defendants' repeated reference to TI's inability to seek recovery of "OU-1 costs" because
it signed only the second of the two Consent Decrees is incorrect.  The OU-2 Consent
Decree at Par. 54 required TI and the other signatories to the Decree to pay to the EPA
$7,000,000 of EPA's "Past Response Cost".  "Past Response Costs" were defined at Par.
4 as *all* costs including but not limited to, direct and indirect costs that the United States
paid *at or in connection with the Site* through July 31, 2000." (emphasis added).  The

(continued...)

Defendants' only "new" argument, which seems to be that Agere and TI should not be able to assert a section 113(f)(1) claim because, if they did, they would "unfairly" get the benefits of 113(f)(2) and (3), Defendant's Brief 10-12, frankly makes no sense. Defendants' argument is premised upon the assertion that just by being a section 113(f)(1) plaintiff "any person" receives the benefit of the contribution protection provided by section 113(f)(2).[6] Nothing in the CERCLA statute suggests that this is so, Plaintiffs do not believe that it is so, and nothing in Plaintiff's Complaint alleges that it is so.[7]

Persons who settle with the United States or a state are entitled to the contribution protection of section 113(f)(2) because, and only because, they settled with the United States.

---

(...continued)

Consent Decree makes no distinction between nor places any limitation on OU-1 or OU-2 costs. Nor was there any such distinction or limitation in the payment made by the OU-2 signatories. There is no question, however, that TI's payment applied to OU-1 costs and OU-2 costs. As the OU-1 remedy was constructed by EPA in 1997 and was operated by EPA until May 2000, TI reimbursed EPA for OU-1 costs.

Finally, in the 2001 Complaint filed by the United States against the OU-2 signatories (Docket No. 01cv61090, the United States stated unequivocally that the signatories were liable under Section 106 and 107 for the *Site*, not just OU-2. 2001 Complaint at ¶¶ 1, 19, 21, 32, 33, 34, and Request for Relief B and C. Accordingly, TI has been sued under Section 106 and 107 for the entire Site, has settled its liability for the entire Site, and has incurred costs for the entire Site as a result of that lawsuit. Therefore, TI has stated a claim pursuant to CERCLA section 113(f)(3)(B).

[6]   Defendants merely announce that these two concepts are linked because "Congress clearly intended" them to be linked, without citation to any authority for the proposition. Defendant's Brief at 12.

[7]   The Fourth Amended Complaint contains no allegation that any of the Agreement Group members are entitled to contribution protection pursuant to section 113(f)(2). Similarly, nothing in the Fourth Amended Complaint suggests that any claims that the United States still has, if any, against anyone are limited in a dollar-for-dollar fashion (or in any other way) by the fact of Agere and TI's agreements to contribute to costs associated with the OU-1 and OU-2 Consent Decrees.

Nothing in section 113(f)(1) says that a party bringing a contribution action is entitled to contribution protection under section 113(f)(2) simply because that party brought the section 113(f)(1) action, and nothing in section 113(f)(2) says anything about a settling party having to bring a subsequent contribution action to get contribution protection. Defendants cite no statutory or decisional authority to support their basic premise because there is none.

Defendants have apparently lifted a portion of the opinion in *In re Reading* and twisted it around to form their argument. The *In re Reading* court was concerned that the section 113(f)(2) statutory scheme would be bypassed if a party could seek "costs of response" under §107(a) instead of suing for "contribution," on the theory that the contribution protection provided by section 113(f)(2) would not protect a party who had already settled its liability with the government from a section 107(a) claim. 115 F.3d at 1119 ("If a party could end run § 113(f)(2) and (3) by suing a settling party under § 107(a)(4)(B) for 'costs of response' the settlement scheme would be bypassed"). The court relied upon this analysis only to support its conclusion that a PRP could not bring a claim under section 107(a). *Id*. at 1119-20.

This portion of *Reading* has nothing to do with the claims of Agere and TI under section 113(f). Permitting Agere and TI to bring a contribution claim could not possibly deprive a person who has settled with the government of statutory contribution protection because section 113(f)(2) applies to section 113(f)(1) contribution actions. This is in contrast to *In re Reading* where the court was concerned that section 113(f)(2) contribution protection did not apply to actions seeking "costs of response" under section 107(a). Defendant's statement that the *Reading* court's concern poses "the same danger as if a PRP were permitted to seek implied contribution under § 107(a)" misses the whole point. Defendant's Brief at 10. Agere and TI

simply are not obtaining any "benefit" from section 113(f)(2) by bringing their section 113(f) claim.[8]

The entire argument makes no sense for another reason. Plaintiffs have from the beginning of this lawsuit repeatedly stated that they seek from this Court an allocation of responsibility for past and future response costs as between the Agreement Group members and Defendants using such equitable factors as the Court determines are appropriate. *See, e.g.,* p. 21 and 23 of Plaintiffs' Complaint. Plaintiffs have never suggested that, as part of that process or otherwise, this Court should ignore whatever equitable shares it believes are appropriately allocated to Plaintiffs. Defendants' section 113(f)(2) argument is thus a complete red herring.[9]

This Court's July 20, 2005 Opinion correctly held that Plaintiff's requests to amend its Complaint to allow TI and Agere to assert a Section 113(f)(1) claim was not futile precisely because such allegations would state a claim under that section of CERCLA.

---

[8]    Defendants incorrectly claim that section 113(f)(2) offers parties who settle with the United States two "incentives." Defendants' Brief at 10-11. The only incentive to a settling party is the protection from claims for contribution regarding matters addressed in the settlement. The second sentence of section 113(f)(2), providing that the government's claims against persons *not a party to the settlement* are reduced by the dollar amount of the settling party's payment, gives no benefit to the settling party, but instead "creat[es] a settlement system in which potential damages increase dramatically for parties who refuse to settle." 115 F.3d at 119. That sentence is thus a threat to non-settlers, like the Defendants, not a "benefit" to parties who settle with the government.

[9]    Defendants also appear to be arguing that Agere and TI should not be permitted to bring a section 113(f)(1) claim because this Court barred previous settling defendants from bringing claims for contribution as part of the Orders dismissing those defendants from the litigation. Defendants' Brief at 11. Nothing in this Court's dismissal Orders could be read to bar claims by Agere or TI against the remaining defendants. Saying that TI and Agere are "more akin" to those settling defendants than to the other Agreement Group members does not change the language in this Court's Orders or otherwise make those Orders applicable to TI and Agere.

Page 13

Defendants should not be able to take a second bite of the apple now under the guise of a motion to dismiss.

II.     *Plaintiffs Claims Under Section 113(f)(1) and 113(f)(3)(B) Do Not Require the Discharge of a Common Liability or an Express Allegation that Each Plaintiff Has Paid More than Its Fair Share*

It is well-settled that the elements of a claim for contribution under CERCLA section 113(f) are: (1) that the defendant is a potentially responsible party; (2) that hazardous substances were disposed of at a "facility"; (3) that there has been a "release" or "threatened" release of hazardous substances from the facility into the environment; and (4) that the release or threatened release has required or will require the plaintiff to incur "response costs." *New Jersey Turnpike Authority v. PPG Industries, Inc., et al.*, 197 F.3d 96, 103-04 (3rd Cir. 1999). *See also California v. Campbell, et al.*, 319 F.3d 1161 (9th Cir. 2003); *Crofton Ventures Limited Partnership v. G&H Partnership, et al.*, 258 F.3d 292 (4th Cir. 2001); *Geraghty and Miller, Inc. v. Conoco Inc., et al.*, 234 F.3d 917 (5th Cir. 2001); *United States v. Davis, et al.,* 261 F.3d 1 (1st Cir. 2001); *The Sherwin-Williams Co. v. ARTRA Group, Inc., et al.,* 125 F.Supp.2d 739 (D. Md. 2001). Once the contribution plaintiff demonstrates these elements of its claim, the court "may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f)(1). At most, a contribution plaintiff must demonstrate at trial "that apportionment is *feasible*." *New Jersey Turnpike Authority*, 197 F.3d at 104 n.7 (emphasis added).

Plaintiffs' Complaint alleges that each of the Defendants is liable under CERCLA section 107(a), that hazardous substances were disposed of at the Site, that there has been a release or threat of release of hazardous substances at or from the Site into the environment, and that the Agreement Group members have incurred and will continue to incur response costs at

the Site. The Complaint also seeks an allocation by the Court of those response costs between

the Agreement Group members and the Defendants using such equitable factors as the Court

determines are appropriate. *See* Complaint at ¶¶ 1, 4, 23, 146, 147, 150-151. Plaintiffs have thus

stated a claim under section 113(f).[10]

Defendants ignore this decisional law and argue that the Complaint fails to state a

claim under either section 113(f)(1) or section 113(f)(3)(B) because it does not allege "two

fundamental elements" of those causes of action: the discharge of the "entire claim for the harm"

and payment of "more than his equitable share of the common liability." Defendants' Brief at

14-15. No opinion cited by Defendants, however, holds that a pleading fails to state a section

113(f) claim if it does not include such an allegation. Defendants' entire argument instead is

supported only by a handful of references pieced together with leaps of logic.[11]

Specifically, Defendants reference *In Re Reading*, asserting that the court there

"referenced Restatement (Second) of Torts § 886(a) [sic] as the embodiment of the 'traditional,

common law sense' of contribution that Congress intended to be reflected in Section 113(f),"

Defendants' Brief at 15, and implying, incorrectly, that the court in that opinion incorporated

some or all of the Restatement into section 113(f)'s statutory language. Defendants then quote

---

[10]     Plaintiffs' Complaint includes as well factual allegations pertaining to the two prior civil
actions and two administrative settlements so as to comply particularly with sections
113(f)(1) and 113(f)(3)(B).

[11]     Defendants' argument that Plaintiffs' complaint should be dismissed because it does not
allege common law elements of contribution could and should have been made three
years ago when the original Complaint was filed. The argument is based on allegations
that appear (or were not included) in the original Complaint. There are no changed
allegations in the Fourth Amended Complaint that raise these issues. This is true as well
of Defendants' arguments that Plaintiffs are not entitled to declaratory relief and relief
under HSCA.

subsection 886A(2) of the Restatement, a subsection nowhere mentioned in *In Re Reading*, and simply announce that the "requirements" of subsection (2) constitute "elements" of a prima facie section 113(f) claim that must be pleaded to survive a motion to dismiss. Defendants' Brief at 15-16.

No court has ever held that subsection (2) of the Restatement is engrafted onto section 113(f) or that it otherwise controls such statutory claims, and no court has ever held that a pleading fails to state a claim under section 113(f) either because the pleading does not allege that the plaintiff discharged the "entire" common liability or because it does not allege that plaintiff paid more than its "fair share" of that common liability. And for good reason. Section 113 itself directly contradicts Defendants' assertion that a section 113 contribution claim includes these two "elements."

> A.    Section 113(f) Directly Contradicts Defendants' Argument that a CERCLA Statutory Contribution Claim Must Include the Elements of Contribution Outlined in Restatement Section 886A(2)

Several sections of CERCLA conclusively refute Defendants' argument. Section 113(f)(3) expressly provides that a contribution action may be brought by a person who has settled with a government for "some or all" of that government's costs. The section provides:

> (A) If the United States or a State has obtained less than complete relief from a person who has resolved its liability to the United States or the State in an administrative or judicially approved settlement, the United States or the State may bring an action against any person who has not so resolved its liability.

> (B) A person who has resolved *its* liability to the United States or a State for *some or all* of the costs of a response action in an administrative or judicially approved settlement may seek contribution from any person who is not a party to a settlement referred to in paragraph (2) [an administrative or judicially approved settlement].

> (C)  In any action under this paragraph, the rights of any person who has resolved its liability to the United States or a State shall be subordinate to the rights of the United States or the State.  Any contribution action brought under this paragraph shall be governed by Federal law.

42 U.S.C. § 113(f)(3) (emphasis added).  The one and only way to read these three subsections is that a person may settle with a governmental entity for "*some*" of that entity's claimed response costs and then immediately pursue a contribution claim against any liable person not a party to the settlement.  Indeed, that contribution claim may be brought even if the governmental entity simultaneously pursues the same non-settling liable party for the balance of the government's claimed costs.  This language directly contradicts Defendants' suggestion that a section 113(f) claim may only be brought following the discharge by the contribution plaintiff of the entire governmental claim.

The legislative history of section 113(f)(3)(B) comports with the plain meaning of the statute.  The initial draft of that section stated:

> (3)  Nothing in this subsection shall affect or modify in any way the rights of--
>
> (A) the United States,
>
> (B) a State, or
>
> (C) any person that has resolved its liability to the United States or a State in a good-faith settlement,
>
> to seek contribution or indemnification against any persons who are not party to any settlement referred to in paragraph (2).

Page 17

H.R. 2817, 99th Cong. §113 (1985).[12]  The Senate version of this section is virtually identical.  S.

494, 99th Cong. §202 (1985).  Both the House Judiciary and House Energy and Commerce

Committees reasoned that this section needed to be amended to provide an express statutory right

to contribution.  The House Judiciary Committee reported that the above language should be

modified to create "an express right of contribution to parties who settle with the government for

some or all of the costs of a clean-up," and "to encourage settlements and to avoid problems that

might otherwise arise due to the courts' reluctance to imply new private rights of action under

federal statutes."  H.R. REP. NO. 99-253, pt. III, at 20 (1985), *as reprinted in* 1986 U.S.C.C.A.N.

3043.  Likewise, the House Energy and Commerce Committee reported that:

> The section should encourage private party settlements and
> cleanups.  Parties who settle for *all or part* of a cleanup or its costs,
> or who pay judgments as a result of litigation, can attempt to
> recover some portion *of their expenses and obligations* in
> contribution litigation from parties who were not sued in the
> enforcement action or who were not parties to the settlement.
> Private parties may be more willing to assume the financial
> responsibility for some or all of the cleanup if they are assured that
> they can seek contribution from others.

H.R. REP. NO. 99-253, pt. I, at 80 (1985) (emphasis added).  Section 113(f)(3) was accordingly

amended to read as it does in its final form so that there would be no doubt that a party need not

settle the government's entire claim before pursuing contribution against any person not a party

to that settlement to recover some portion of that settlement amount.

        The United States Court of Appeals for the First Circuit has rejected the identical

argument made here by the Defendants based upon exactly this plain language reading of section

113(f)(3).  *United States v. Davis*, 261 F.3d 1, 48-49, (1st Cir. 2001).  The court there held

---

[12]    The bill introduced to the House Energy and Commerce Committee actually refers to this
section as section 113(g)(3), but the numbering and lettering of the section was later
changed to section 113(f)(3).

"CERCLA clearly anticipated that some settlements, like the one in this case, would cover only a portion of the total cleanup costs for a hazardous waste site. The statute does not impose a requirement that a contribution plaintiff must settle the entire cost of cleaning up a site before it can seek contribution." Id.[13]

Defendants' argument that the entire liability must be discharged flies in the face of an additional statutory provision. Section 113(f)(1) permits the initiation of a contribution claim "during" a civil action. Obviously, there can have been no discharge of the "common liability" during the pendency of the section 107(a) action and alleging such discharge cannot be necessary to state a claim. Once again, the plain meaning of the statute is consistent with the legislative history. Initially, the Senate and House disagreed over when a CERCLA contribution action should be commenced. The Senate bill provided that a PRP could bring a contribution claim only after it had resolved its liability to the United States. S. 494, 99th Cong. §202 (1985).[14] The House bill, on the other hand, allowed a defendant that was alleged or held to be liable in a section 106 or section 107 action immediately to commence a contribution action.

---

[13] Another opinion cited by Defendants in support of this argument in fact recognizes the plain meaning of § 113(f)(3) - - that a person who has settled with EPA may bring and maintain a § 113(f) contribution action at the same time that EPA may pursue other PRPs for the same or different costs covered by the initial settlement. *United States v. Occidental Chemical Corporation*, 200 F.3d 143, 149 (3d Cir. 1999).

[14] This bill proposed to include the contribution provisions in section 107 rather than section 113 of CERCLA, and provided:

(k)(1) In any civil or administrative action under this section or section 106, any claims for contribution or indemnification shall be brought only after entry of judgment or date of settlement in good faith.

(2) After judgment in any civil action under section 106 or under subsection (a) of this section, any defendant held liable in the action may bring a separate action for contribution against any other person liable or potentially liable under subsection (a). *Id.*

H.R. 2817, 99th Cong. §113 (1985).[15]  The House Energy and Commerce Committee reported

that the House language:

> contemplates that if an action under section 106 or 107 of the Act
> is under way, any related claims for contribution or
> indemnification may be brought in such an action.  This provision
> should also encourage private party settlements and cleanup since
> the actuality of being brought into litigation as a third-party
> defendant, concurrent with the original litigation, has the effect of
> bringing all such responsible parties to the bargaining table at an
> early date.

H.R. REP. No. 99-253, pt. III, at 80 (1985), *as reprinted in* 1986 U.S.C.C.A.N. 2862.  The

differences between the Senate and House bills were resolved in a conference committee by use

of the words "*during or following* any civil action under section 106 or under section 107(a)."

Congress's decision to allow a PRP to commence a contribution action before a section 106 or

107(a) action was resolved proves that a PRP is not required to discharge any common liability

to a plaintiff.[16]

      CERCLA's contribution statute of limitations further disproves Defendants'

argument that plaintiffs must entirely extinguish the government's claim before pursuing

contribution.  That section provides:

---

[15]    The exact language of the House bill is as follows:

> Except as provided in paragraph (2), any defendant alleged or held to be
> liable in an action under section 106 or section 107 may bring an action
> for contribution or indemnity against any other person liable or potentially
> liable.  *Id.*

[16]    The *DuPont* court noted that 113(f)(1) permits the initiation of a contribution action *prior
to* final judgment or settlement with the primary plaintiff, directly contrary to common
law contribution principles, precisely because Congress "sought to facilitate cost sharing
early in the proceedings."  *Id.* at 747-48.

> No action for contribution for *any* response costs or damages may be commenced more than 3 years after -
>
> (A) the date of judgment in any action under this chapter for recovery of such costs or damages, or
>
> (B) the date of an administrative order under section 9622(g) of this title (relating to de minimis settlements or 9622(h) of this title (relating to cost recovery settlements) or entry of a judicially approved settlement with respect to such costs or damages.

42 U.S.C. § 9613(g)(3) (emphasis added).[17]  It would be impossible to comply with these limitation periods if a section 113(f) claim could not be brought until the governmental claim was discharged.

As Defendants themselves argue, even if a person entered into a Consent Decree with the United States agreeing to pay all past costs and agreeing to undertake the further and complete remediation of the site, the claim of the United States would not be "discharged" until all the remediation was satisfactorily completed.  Defendants' Brief at 19.  It is not unusual for remediation work undertaken pursuant to a Consent Decree to include an extended period of "operation and maintenance" of the site, typically for fifteen to thirty years beyond the completion of the construction of the remedy.  The covenant not to sue typically included in Consent Decrees (and which serves the same purpose as a release of liability in a private party settlement) does not take effect with respect to future liability to the United States "until the President certifies that remedial action has been completed in accordance with the requirements of this chapter at the facility that is the subject of such covenant."  42 U.S.C. § 40 at 9622(f)(3).  Similarly, section 122 provides:  "Any covenant not to sue under this subsection shall be subject

---

[17]    The words "any response costs or damages" confirm that a section 113(f) claim may be brought for the specific costs incurred by the contribution plaintiff (whether by payment to the government as part of a settlement or through implementation of remedial actions), and not just where the plaintiff has discharged the "entire claim."

to the satisfactory performance by such party of its obligations under the agreement concerned."

42 U.S.C. § 9622(f)(5). Thus, where a Consent Decree (or administrative settlement) includes an

obligation for the settling party to undertake or pay for future work, the claim of the government

is not "fully discharged" until the operation and maintenance is complete and a certificate of

completion has been issued by EPA, possibly decades after the execution of the administrative

settlement or entry of the Consent Decree.

The clear language of section 113(g)(3) requiring the initiation of an action for

contribution under § 113(f) within three years from the entry of a judicially approved settlement

or the date of an administrative settlement, coupled with the fact that such settlements may take

decades to satisfy, conclusively refutes the Defendants' suggestion that such an action cannot be

brought until the remedial action is completed. A section 113(f) action would, under

Defendants' logic, not accrue until a certificate of completion was issued decades after the very

limitations period governing such causes of action had run. Discharging the "entire claim for the

harm" cannot be an element of a section 113(f) claim.[18]

Moreover, section 113(f)(3) contradicts Defendants' argument that a section

113(f) plaintiff must allege that he has paid "more than his equitable share of the common

liability" as provided in section 886A(2) of the Restatement. That section expressly states that a

person who has resolved "its" liability to the government may seek contribution from any person

---

[18]     The Third Circuit correctly noted in *In Re Reading* that a § 113 contribution action may
be initiated "at whatever time in the clean-up process the party, seeking contribution,
decides to pursue it." 115 F.3d at 1120. *See also DuPont*, 297 F. Supp. 2d at 748, n.9
("Indeed, textually, the statute of limitations against a contribution action does not begin
to run until a settlement or judgment is reached with respect to response costs or
damages. The timing of actual clean-up, removal or remediation does not control.")
(citation omitted).

who is not a party to a settlement, and, in that contribution action, the rights of any person who has resolved "its" liability to the government are subordinate to the government's rights. Therefore, the statute expressly contemplates that a party settling "its" liability for only a portion of a claim by the United States or a state is entitled to bring an immediate contribution action against any person not a party to that settlement to recover some portion of that settlement amount.

Once again, the legislative history is consistent with this interpretation. As mentioned previously, Congress adopted modifications to CERCLA proposed by the House Energy and Commerce Committee for the specific purpose of allowing parties to recover some portion of their settlement with the United States from other non-settling parties. The House Energy and Commerce Committee report provides that parties who settle with the government "can attempt to recover some portion *of their expenses and obligations* in contribution litigation from parties who were not sued in the enforcement action or who were not parties to the settlement." H.R. REP. No. 99-253, pt. I, at 80 (1985) (emphasis added). On the Senate floor, Senator Stafford, a co-sponsor of the legislation, provided noteworthy comments, stating: "Also where the United States or a State has secured a partial settlement, it may seek relief for any of the remaining response action or costs for which the non-settlors are liable. Similarly, a settler may also maintain a contribution action against non-settlors regarding *the portion* of the response action or costs to which the settler has agreed." 131 Cong. Rec. S11830 (daily ed. September 20, 1985) (emphasis added).

It should be noted that the Restatement subsection relied upon by the Defendants does not actually refer to two separate "elements" of even a common law contribution claim. Section 886A(2) of the Restatement provides, in relevant part:

> The right of contribution exists only in favor of a tortfeasor who has discharged the entire claim for the harm by paying more than his equitable share of the common liability, and is limited to the amount paid by him in excess of his share.

Restatement (Second) of Torts § 886A(2). Section 886A applies only to instances in which "two or more persons become liable in tort to the same person for the same harm." Thus, the words "by paying more than his equitable share of the common liability" do nothing more than describe the initial words to which they are grammatically linked: "who has discharged the entire claim for the harm." *Each and every* joint tortfeasor who discharges the entire harm must, by definition, have paid more than his fair share, because that tortfeasor has paid 100% of the liability and at least one other tortfeasor is also liable to the injured party. The concepts of "discharge the entire claim" and "more than his fair share" are thus not two independent elements of even the common law of contribution.

Similarly, a section 113(f) plaintiff seeking to recover from liable parties those liable parties' equitable shares of the sums paid by the contribution plaintiff to a governmental entity must have paid more than his "fair share" of the settlement sum precisely because he is the only person to have paid that sum and the defendants are liable parties. As liable parties, the defendants must have some equitable share of the amount paid in settlement by the section 113(f) plaintiff, such that, by definition, the section 113(f) plaintiff must have paid more than his "fair share" of the settlement amount.

All of these statutory provisions conclusively demonstrate that the provisions of section 886A(2) of the Restatement, or any other supposed embodiment of the common law "requirement" that a contribution plaintiff must have discharged the entire claim for the harm by paying more than his equitable share of the common liability, *cannot be* an element of a statutory claim for contribution pursuant to section 113(f).

B.  No Opinion Holds that the Terms of Section 886A(2) of the Restatement
    are Elements of a Section 113(f) Cause of Action

No opinion cited by Defendants holds that the terms of Section 886A(2) of the

Restatement constitute elements of a Section 113(f) cause of action. Plaintiffs are aware of no

opinion that so holds. Defendants apparently hope that this Court will over read *In re Reading* as

adding the words of section 886A of the Restatement to the CERCLA statute, and thereby feel

bound to add new pleading requirements to the well-settled elements of a section 113(f)

contribution claim.

The ultimate question in *In re Reading* was whether Conrail could assert a

CERCLA contribution claim against the Reading Company (formerly the Reading Railroad)

with respect to liability that Conrail and other parties were facing in a section 107(a) civil action

brought by the United States with respect to the Douglassville site. 115 F.3d at 116. Conrail's

third-party complaint against Reading alleged causes of action under § 107(a), § 113(f), common

law contribution and common law restitution. *Id.* at 117. The Third Circuit held that CERCLA

preempted Conrail's two common law theories, *id.*, and that section 113(f) "Replaces the

judicially created cause of action under § 107(a)(4)(B) to the extent that a party seeks

contribution," such that Conrail could not bring a § 107(a) claim. *Id.* at 1119-20. Solely in the

context of deciding whether the essential nature of Conrail's claim was one for contribution (and

thus properly brought under § 113(f)), the court examined *Black's Law Dictionary* and case

authority (but not the Restatement) to conclude that Conrail's claim was for contribution because

Conrail was seeking apportionment of its liability with Reading. *Id.* at 1120-21.

The Court next considered whether Conrail had a claim under section 113(f). The

determining question was whether some form of joint liability between the contribution plaintiff

and the contribution defendant was necessary for liability to attach under section 113(f). It is

only in this section of the opinion that the court makes any reference to the Restatement. The

Third Circuit concluded that "CERCLA contribution, like common law contribution, requires

some form of joint liability." *Id.* at 1124. It reached this conclusion based upon the plain

language of section 113(f): "may seek contribution from any other person who is liable or

potentially liable under section 9607(a) of this title . . .." *Id.* at 1124. The court disagreed with

Conrail's argument that common liability by two or more defendants to one common

governmental agency was not required by this language. *Id.* at 1124. It found instead: "Because

§ 113(f)(1) *reflects* the traditional concept of contribution, its language does not permit

contribution among liable parties who do not have a common derivation of liability." *Id.* at 1124

(emphasis added). In support of its statutory analysis, the Third Circuit merely noted that section

113(f) "parallels the scope of common law contribution," citing to comment (b) of the

Restatement § 886A, which is a comment to subsection (1).[19] *Id.* at 1124-25.

   It is thus quite clear that the Third Circuit's references to the Restatement and

other sources of "common law" are only to support its reading of section 113(f)(1), and not for

the purpose of deciding that Restatement § 886A(1) *adds* additional elements to section

113(f)(1). Indeed, because the court concluded that the "common law" of joint liability is

identical to the language of section 113(f)(1), the court's opinion cannot be read to mean that the

Restatement *adds* new elements to section 113(f). The *Reading* court nowhere quotes or even

refers to § 886A(2) of the Restatement, the section relied upon Defendants in patching together

---

[19] Restatement § 886A(1) says, in relevant part: "When two or more persons become liable
in tort to the same person for the same harm, there is a right of contribution among them,
even though judgment has not been recovered against all or any of them."

their argument here, much less holds that each and every sentence in subsection (2) states an element of a section 113(f) claim.[20]

Neither of the other opinions cited by Defendants to support such a proposition hold or even suggest that section 886A(2) is somehow engrafted onto section 113(f)'s contribution provisions or that it otherwise states "fundamental elements" of a section 113(f) claim. *E.I. DuPont de Nemours & Company v. United States*, 297 F. Supp. 2d 740, 746-47 (D.N.J. 2003), in fact directly refutes this proposition. The *DuPont* court analyzed whether DuPont could rely on any of three possible avenues for a contribution claim under CERCLA: Section 113(f)(1); section 113(f)(3)(B); or pursuant to the savings clause in section 113(f)(1). 297 F. Supp. 2d at 747. The court decided DuPont could not proceed under either of the first two approaches because there had been no prior civil action and because there had been no prior settlement. *Id*. at 747-49. The court then analyzed whether a contribution action could nevertheless be brought under the savings clause. It is in this section of the opinion, and only in this section, that the *DuPont* court discusses the "common law" preconditions for a contribution action. Indeed, the court expressly states: "Thus actions brought *pursuant to the savings clause* must meet all the traditional common law elements of a contribution action . . ." *Id.* at 750 (emphasis in original). The court specifically noted that Congress "*expanded* on the contribution right [when enacting §113(f)(1)] by permitting such an action to be brought where the primary action is a CERCLA Section 106 order -- not a traditional lawsuit. But no such exception was

---

[20]    The opinion nowhere says even that § 886A of the Restatement is "the embodiment of the traditional, common law sense of contribution," contrary to Defendants' suggestion. Defendants' Brief at 15. The exact sentence referenced by Defendants states: "We held in part III.A, *Supra*, that § 113(f) uses the term contribution in its traditional, common law sense. This means that CERCLA contribution, like common law contribution, requires some form of joint liability." 115 F.3d at 1124.

Page 27

placed into the savings clause." *Id. (emphasis added).* The court's ruling that DuPont could not pursue a contribution claim because it had not discharged the common liability was thus limited to a "common law" contribution claim that DuPont might be able to bring pursuant to the savings clause. The *DuPont* court expressly recognized that the "traditional common law" requirements for contribution do not apply to a *statutory* contribution action under § 113(f), at least to the extent that any such common law contradicts the statutory language itself. *Id.* at 750-51.[21]

Defendants' essential premise that the terms of section 886A(2) of the Restatement somehow have become elements of a section 113(f) claim is directly refuted by section 113 itself and is without support in case law. Defendants have simply concocted this argument.

Moreover, no opinion cited by the defendants otherwise holds that a pleading fails to state a section 113(f) claim because it does not have an express allegation that the plaintiff has "discharged the entire claim for the harm." Defendants' citation to *DuPont* for the proposition that the court there "granted summary judgment on a section 113(f) contribution action on several grounds, including the inability of the plaintiff to prove that it had discharged the common liability on the underlying claim" is misleading at best. Defendants' Brief at 18. As set forth above, that Court's discussion of common law conditions applied only to a possible claim under the savings clause of § 113(f)(1), and not to DuPont's *statutory* claim.

Defendants' citation to *Elf Atochem North America, Inc. v. United States*, 833 F. Supp. 488 (E.D. Pa. 1993) is also misleading. That opinion construed the New Jersey Joint

---

[21]    The court in *United States v. Compaction Systems Corp.*, 88 F. Supp. 2d. 339, 351-52, did nothing more than rely on *In re Reading* to conclude that contribution requires some form of joint liability.

Tortfeasors Contribution Act, which statute expressly requires that the right to contribution

provided therein is applicable only where the injured party "recovers a money judgment or

judgments for such injury or damage against one or more of the joint tortfeasors, either in one

action or in separate actions, and any one of the joint tortfeasors pays such judgment in whole *or*

*in part . . .*" <u>N.J.S.A.</u> 2A:53A-3 (emphasis added).[22] The *Elf Atochem* court was not construing

this statutory language, but was instead determining whether that plaintiff fit within an exception

to the statutory "judgment" requirement because it had entered into a Consent Decree with the

United States. 833 F. Supp. 496-97. Only in that context was there any discussion of the

"discharge" of a common liability. *Id.* Nothing in the opinion even remotely suggests that the

"common law" overrules the New Jersey Act's statutory grant of the right to contribution where

a *judgment* is paid *in part*.[23]

Neither do any of the opinions cited by Defendants hold that a pleading fails to

state a section113(f) claim if it does not contain an express allegation that the contribution

plaintiff has paid more than its "fair share" of some common liability. Defendants attempt to

---

[22]  Most interesting, just like CERCLA section 113(f), the New Jersey statute grants a
      statutory right to contribution where a "joint tortfeasor" pays only *part* of a judgment,
      and does *not* require that the contribution plaintiff have satisfied the entire judgment.

[23]  Defendants' citation to *Lyncott Corp. v. Chemical Waste Management, Inc.*, 690 F. Supp.
      1409 (E.D. Pa. 1988) to support the statement that "Some courts looked to the 1997
      Uniform Comparative Fault Act ("UCFA") to define the federal right of contribution,"
      Defendants' brief at 18, n.10, misrepresents that opinion. The *Lyncott* court held nothing
      other than "the principals of the Uniform Comparative Fault Act are the most consistent
      with CERCLA" for determining the effect of plaintiff's release or covenant not to sue one
      joint tortfeasor upon the right of other tortfeasors to contribution under CERCLA, just as
      this Court did in its October 19, 2004 Opinion. 690 F. Supp. at 1417-18. The opinion
      had nothing to do with the elements of a statutory cause of action under §113(f) and
      contained no citation to § 4 of the UCFA, the key section defendants suggest should be
      engrafted onto §113(f).

conflate the concepts of proving facts at trial from which a court may allocate response costs and

the elements of a prima facie case that must be pled to state a claim. Defendants' Brief at 16

("Thus, each plaintiff seeking contribution must necessary plead and prove. . ."). The court in

*New Castle County* said in dicta *only* that a potentially responsible person "should be able to

recoup that portion of its expenditures which exceeds its fair share of the overall liability." 111

F.3d at 1122. The court did so after also recognizing that the general meaning of the word

"contribution" is a claim "'by and between jointly and severally liable parties for an appropriate

division of the payment one of them has been compelled to make,'" and that in resolving such

claims section 113 provides that "'the court may allocate response costs among liable parties

using such equitable factors as the court determines are appropriate.'" 111 F.3d at 1121

(citations omitted). The quoted sentence thus refers merely to *how* the court is to allocate

equitable response costs, not to any additional requirements for *initiating* a section 113(f) action.

Neither in this language nor anywhere else in the opinion does the *New Castle County* court say,

much less hold, that a section 113(f) plaintiff must *plead* that it has paid more than its fair share

of anything. The other opinions cited by Defendants do nothing more than agree with the several

Courts of Appeal cited on page 8 above with respect to the elements of a section 113(f) cause of

action, including the statement that once the contribution plaintiff demonstrates the elements of

its claim a contribution plaintiff must demonstrate at trial that apportionment is feasible.[24]

---

[24]    *DeGussa Construction Chemicals Operations, Inc. v. Berwind Corp.*, 280 F. Supp. 2d
393 (E.D. Pa. 2003) said in *dicta* only that the "party seeking contribution bears the
burden of establishing a reasonable basis for apportioning liability to a third party and has
the burden of proving each element of the claim by a preponderance of the evidence."
280 F. Supp. 2d at 401. The court did not state, much less hold, that a pleading fails to
state a section 113(f) claim unless it includes an express allegation that the plaintiff has
paid an amount that exceeds its "fair share."

C.    Plaintiffs' Complaint Alleges That Plaintiffs Have Paid More Than Their Fair Share

An express allegation by a Section 113(f) contribution plaintiff that it has paid more than its fair share is not required to survive a motion to dismiss. Even if it is, a court deciding a Rule 12(b)(6) motion must accept each allegation in the Complaint as true and must give the plaintiff the benefit of any inferences that could be drawn from those allegations. *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996). Applying this standard, Plaintiffs' Complaint here alleges that plaintiffs have paid more than their fair share of response costs.

Plaintiffs' Complaint alleges that each of them contributes (or has contributed) funds to Group trust accounts and that the activities necessary for performance of the requirements of the OU-1 and OU-2 Consent Decrees are funded from those Group accounts. Complaint at ¶¶ 18-19, 21-22. Each of the Plaintiffs has thus incurred response costs.[25] Plaintiffs' Complaint also alleges that each of the remaining Defendants is liable under Section 107(a) of CERCLA. Complaint at ¶¶ 145-47. Finally, Plaintiffs' Complaint alleges that the Agreement Group members "are entitled to contribution from Defendants for Response Costs incurred and for Future Response Costs to be incurred by the Agreement Group members in connection with the Site and to an allocation by the Court of the Response Costs and Future Response Costs as between the Agreement Group members and Defendants using such equitable factors as the Court determines are appropriate." Complaint at ¶¶ 151, 154.

Plaintiffs' Complaint therefore expressly seeks to recover from the Defendants those Defendants' equitable shares of the sums paid by the Agreement Group members for

---

[25]    Defendants have been provided in discovery with the exact amounts paid by each Plaintiff into Group accounts and the precise amount paid to whom and for what from those accounts.

response costs. No one other than the Agreement Group members has paid those sums. The liability of each of the Defendants having been conceded for the purposes of this Motion, each of the Defendants is liable for some share of those amounts, such that the Agreement Group members must have paid more than their "fair share" of those sums. These allegations collectively either expressly or by inference make the allegation that the Agreement Group members have paid more than their "fair share" of the response costs they are seeking from the Defendants in this action.[26]

Defendants' suggestion that Plaintiffs are engaged in a "subterfuge" by bringing this action before they have decided amongst themselves what final share each of them will have contributed to the OU-1 and OU-2 costs is a red herring. Defendants' Brief at 16-17. This Court will at trial "allocate response costs among liable parties using such equitable factors as the court determines are appropriate." 42 U.S.C. § 113(f)(1). It will do so by making findings of fact and conclusions of law with respect to each of the Defendants and each member of the Agreement Group. The allocated shares will add up to 100% of Plaintiffs' response costs. Collectively, the Agreement Group members have paid 100% of payments made by the Agreement Group members for response costs irrespective of whatever final allocation the five of them agree to amongst themselves -- that total dollar number will not change. None of the Defendants has paid any portion of those costs. Because each of the Defendants is liable for some share of those costs, collectively the Agreement Group members have paid more than their fair share of those

_____

[26]    The Agreement Group members believe that they have paid more than their fair share of the response costs for which they seek contribution from the Defendants. If this Court should conclude that the allegations of Plaintiffs' Complaint cannot be read to include such an allegation, and that such an allegation is required to state a claim under section 113(f), Plaintiffs respectfully request leave to file an amended pleading that would contain such an allegation.

costs. Nothing about the way the Agreement Group members are proceeding here affects in any way the equitable share this Court allocates at trial to each of the Defendants. It is immaterial how those Defendants' shares are ultimately divided among the Agreement Group members.

Moreover, Defendants' argument starts from the false premise that when a group of entities agree collectively to resolve governmental claims and collectively bring a section 113(f) contribution action they must *each* plead that *each* has paid more than its "fair share" of the overall liability. The Agreement Group is aware of no opinion so holding. Defendants have simply invented this argument by extrapolating without any authority from the also incorrect belief that a *single* section 113(f) plaintiff must allege he has paid more than his fair share. Defendants' Brief at 16.[27]

### III.    *The Agreement Group Members May Assert Claims Pursuant to Both CERCLA Section 113(f)(1) and 113(f)(3) Simultaneously*

Defendants make the remarkable assertion that a party that settles with the United States can *only* bring a claim under section 113(f)(3)(B) and not under section 113(f)(1). Defendant's Brief at 13. The only reason given for this assertion is that it is "implicit" in the *Coopers Industries* opinion and in this Court's reading of that opinion.[28] Defendant's Brief at 13. The Supreme Court in *Coopers Industries* noted that Congress created two separate express rights of contribution along with a right for cost recovery under § 107(a), and concluded: "In

---

[27]    As set forth above, neither *New Castle County* nor *DeGussa Construction* held that even a sole section 113(f) pleading fails to state a claim unless it includes an allegation that the plaintiff paid more than its "fair share" of some common liability. The sentences in each of those opinions saying that a contribution plaintiff may "recoup that portion of its expenditures which exceeds its fair share of the overall liability" do not refer to pleading requirements and are *obiter dicta*. 111 F.3d at 1122; 280 F. Supp. 2d at 400.

[28]    Defendants' failure to point to specific language in either opinion to support this statement reveals that they just made it up.

short, after SARA, CERCLA provided for a right of cost recovery under certain circumstances, §

107(a), and separate rights to contribution under other circumstances, §§ 113(f)(1), 113(f)(3)(B).

125 S. Ct. at 581-82. Nothing in the opinion can be read to suggest that these three separate

statutory causes of action are mutually exclusive. This Court permitted filing of the Fourth

Amended Complaint which *added* express references to section 113(f)(3)(B) as well as to section

113(f)(1), finding that these amendments were not futile. That Opinion simply cannot be read to

imply that those two causes of action are mutually exclusive. Moreover, Fed. R. Civ. P. 8(e)(2)

provides: "A party may set forth two or more statements of a claim or defense alternatively or

hypothetically, either in one count or defense or in separate counts or defenses. . . . a party may

also state as many separate claims or defenses as the party has regardless of consistency and

whether based on legal, equitable, or maritime grounds." Finally, nothing in the language of

section 113(f) can be read to suggest that those two sections are mutually exclusive.

IV.    *Plaintiffs Are Entitled to a Judgment that Defendants Are Liable for Future Response Costs*

Under the plain language of section 113(g)(2) of CERCLA, Courts are required to

enter a declaratory judgment for future costs in contribution actions. The relevant language of

Section 113 (g)(2) provides as follows:

> In any such action described in this subsection, the court shall enter
> a declaratory judgment on liability for response costs or damages
> that will be binding on any subsequent action or actions to recover
> further response costs or damages.

Defendants contend that this provision "speaks only to the Court's authority to

enter a declaratory judgment in Section 107 actions," presumably because it is contained in

paragraph (2) that discusses the statute of limitations in section 107 cost recovery actions.

Defendants interpret the phrase, "In any such action described in this subsection" to apply only

to paragraph (2) and not to the other actions described in subsection (g). This interpretation is incorrect and fails to recognize the distinction between a paragraph and a subsection in CERCLA.

Subsections in CERCLA are designated by small letters in parentheses, such as subsection (g) of section 113. Subsection (g) of section 113 describes five different types of actions: actions for natural resource damages, cost recovery actions, contribution actions, subrogation actions and indemnification actions. Section 113(g)(2) requires a court to enter a declaratory judgment on future costs "in any such action described in this subsection." Therefore, Courts are required to enter declaratory judgments on future costs in each of the five described actions in subsection (g), including contribution actions.

Several Courts, including both United States Courts of Appeal for the First and the Second Circuits, agreed with this analysis and held that the plain language of section 113(g)(2) required courts to enter a declaratory judgment on future costs in contribution actions. See *United States. v. Davis*, 261 F.3d 1, 46-47 (1st Cir. 2001) (holding that "§9613(g)(2), the declaratory judgment provision of CERCLA, applies to §9613(f) contribution actions for both past and future costs."); *Goodrich Corp. v. Town of Middlebury*, 311 F.3d 154, 175 (2d Cir. 2002)(citing its decision in *Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85 (2d Cir. 2000) and holding that the proper remedy for future response costs in a contribution action is a declaratory judgment award, pursuant to section 113(g)(2), dividing future response costs among responsible parties.) *See also The Sherwin-Williams Company v. ARTRA Group, Inc.*, 125 F. Supp.2d 739, 753-54 (D. Md. 2001) (holding that Section 113(g)(2) applied to section 113(f) contribution actions).

In addition, Plaintiffs are entitled to a declaratory judgment for future costs under the Declaratory Judgment Act. The Declaratory Judgment Act provides that when an "actual controversy" exists, any federal court may declare the rights and other legal relations of any interested party. 28 U.S.C. §2201. In order to satisfy the "actual controversy" requirement of the Declaratory Judgment Act, the facts alleged, under all the circumstances, must show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of declaratory judgment." *Gopher Oil Co., v. Bunker*, 84 F.3d 1047,1050 (8th Cir. 1996).

Several courts have applied this rule in the CERCLA context to support the entry of a declaratory judgment for future costs. In *Kelley v. E.I. du Pont de Nemours and Company*, 17 F.3d 836 (6th Cir. 1994), the Sixth Circuit held that there was a justifiable case or controversy deserving of a declaratory judgment for future costs because the likelihood of future costs was certain and that it "would waste State, corporate and judicial resources, and add immensely to the already 'elephantine carcass of…CERCLA litigation' to require relitigation of liability whenever such subsequent response action is taken." Likewise, the Ninth Circuit in *Boeing Co. v. Cascade Corp.*, 207 F.3d 1177, 1192 (9th Cir. 2000) held that declaratory relief for future costs was appropriate because the pollution had been carefully studied, millions of dollars had been spent on the cleanup, and the facts bringing about the parties' relative responsibility had already occurred. *See also Tosco Corp. v. Koch Industries, Inc.* 216 F.3d 886 (10th Cir. 2000)(holding that where future response costs are likely to be incurred, but the exact amount remains unknown, a judgment on proportional liability is an appropriate remedy). Moreover, Courts have held that the speculative nature of future costs is not a bar to declaratory relief. *Kelley* at 844. *See also Sherwin-Williams* at 754.

Moreover, it has been held that entry of a declaratory judgment for future costs in a contribution action is appropriate because it is consistent with the broader purposes of CERCLA. For instance, the Davis Court, citing the Ninth Circuit in *Boeing Co. v. Cascade Corp.*, 207 F.3d 1177 (9th Cir. 2000), stated:

> CERCLA was intended to encourage quick response and to place the costs on those responsible. Declaratory relief serves these purposes because parties, like those in this case, will know their share of costs before they are incurred…The costs and time involved in relitigating issues as complex as these where new costs are incurred would be massive and wasteful. Declaratory relief allocating future costs is therefore consistent with the broader purposes of CERCLA.

*Davis* at 46-47.

There is no doubt that the Agreement Group members will incur future response costs. They have collectively agreed to fund and perform the OU-1 and OU-2, which include operation and maintenance of the groundwater extraction and treatment system for an indeterminate number of years (until the performance standards as set forth in the Consent Decree are met) as well as implementation of institutional controls and ongoing monitoring. Accordingly, section 113(g)(2) requires the Court to enter a declaratory judgment with respect to these future costs. Declaratory relief is also appropriate because the certainty of future costs in this instance creates a justifiable case or controversy between Plaintiffs and the defendants that requires declaratory relief. Finally, entry of a declaratory judgment in this instance will serve CERCLA's goals by establishing a relationship between the parties that will serve to expedite future cleanup work and will avoid wasteful re-litigation whenever any subsequent response action is taken.

V.    *Plaintiffs Have Stated a Claim Pursuant to HSCA*

    A.    <u>Plaintiffs Have an Implied Right of Contribution Under HSCA Section 702</u>

Plaintiffs have pleaded an implied right of contribution under HSCA section 702. Plaintiffs have already briefed, in connection with their Motion for Leave to Amend Third Amended Complaint, why they believe they have an implied right of contribution under CERCLA section 107. Plaintiffs incorporate those arguments herein by reference in support of an implied right of contribution under HSCA section 702. This Court did not permit Plaintiffs to amend their complaint to add a CERCLA section 107 claim because it believed that binding Third Circuit precedent precluded Plaintiffs from bringing such a claim, rendering such a claim futile. Opinion at 12. Unlike CERCLA, however, HSCA is a state statute. Accordingly, whether Plaintiffs have an implied right of contribution under HSCA section 702 is a matter of state law. Defendants can cite to no state court opinion holding that no implied right of contribution exists for PRPs under HSCA section 702, nor can they cite to any binding Third Circuit precedent interpreting how a state court would rule on such an issue. Rather, defendants cite to federal court opinions, which are at most persuasive, holding that there is an implied right of action, but that such an action is only available to innocent parties. The one and only reason given for this result, however, is that a liable party should not be able to obtain a judgment for joint and several liability. See e.g., *Darbouze v. Chevron Corp.,* 1998 WL 512941 (E.D. Pa. 1998). The Second Circuit recently held that an implied right of action under CERCLA section 107 is available to PRPs, specifically rejecting the "joint and several liability" reasoning it relied upon in a prior opinion. *See Consol. Edison Co. v. UGI Util., Inc.*, 2005 WL 2173585, at *5-*10 (2d Cir. Sept. 9, 2005). Plaintiffs believe that the Pennsylvania Supreme Court will follow the reasoning of the Second Circuit and find that an implied right of action under HSCA section 702

is likewise available to PRPs. Accordingly, this Court should find that plaintiffs indeed have an implied right of contribution under HSCA section 702, and deny defendants' motion to dismiss plaintiffs' claims under HSCA.

### B.    Plaintiffs Have an Express Right of Contribution Under HSCA Section 705

Even if this Court were to decide that Plaintiffs have no implied right of contribution under HSCA section 702, which it should not, Plaintiffs nevertheless have an express right of contribution under HSCA section 705. Under modern notice pleading, all that a complaint is required to do is to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *See Conley v. Gibson*, 355 U.S. 41, 47 (1957); *see also Weston v. Pennsylvania*, 251 F.3d 420, 429 (3d Cir. 2001). The factual allegations must simply meet the minimal federal notice pleading requirements of Fed. R. Civ. P. 8, which provides that a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley*, 355 U.S. at 48.

From the inception of this action, plaintiffs' complaint included all necessary factual allegations for a contribution claim under HSCA. Under the Federal Rules of Civil Procedure, plaintiffs had no obligation to set forth a particular statutory section or legal theory underlying its contribution claim. *See Phillips v. Grendahl*, 312 F.3d 357, 364 (8th Cir. 2002) (*citing Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 45 (2d Cir. 1997) ("The failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim. Factual allegations alone are what matters."); *see also Brethwaite v. Cincinnati Milacron Mktg.*

*Co.*, 1995 U.S. Dist. LEXIS 764, at *8 (E.D. Pa. Jan. 26, 1995). Defendants cannot be heard to

complain that they were not on notice that plaintiffs were seeking contribution under HSCA,

regardless of whether plaintiffs pleaded that claim under HSCA section 702 or HSCA section

705. Accordingly, this Court should find that plaintiffs have pleaded a claim under HSCA

section 705.

Defendants suggest that a HSCA section 705 claim would nevertheless be futile

because plaintiffs have not met the threshold requirement of section 705(a) that there was or is a

pending civil action under HSCA sections 507 or 1101 against the plaintiffs or anyone else. The

plain meaning of HSCA section 705 is quite clear, however, that no such action is required:

> A person may seek contribution from a responsible person under
> section 701, during or following a civil action under section 507 or
> 1101. Claims for contribution shall be brought in accordance with
> this section and the Pennsylvania Rules of Civil Procedure.
> *Nothing in this section shall diminish the right of a person to bring
> an action for contribution in the absence of a civil action under
> section 507 or 1101.*

35 P.S. § 6020.705(a) (emphasis added). While the United States Supreme Court read similar

language in CERCLA section 113 and determined that a claim pursuant thereto can only be

brought during or following a civil action under section 9606 or section 9607(a) of CERCLA,

*see Cooper Industries*, this Court, in interpreting HSCA, is not bound by the Supreme Court's

holding in Cooper Industries. Rather, this Court sits as a Pennsylvania state court when

interpreting Pennsylvania state law. In interpreting state Superfund statutes like HSCA, other

state courts have not felt compelled to follow the Supreme Court's holding in *Cooper Industries.*

*See, e.g., R.R. Street & Co. Inc. v. Pilgrim Enterprises, Inc.*, 166 S.W.3d 232 (Tex. 2005);

*Johnson v. City of San Diego*, 2005 Cal. App. Unpub. LEXIS 1979 (Cal. Ct. App. Mar. 4, 2005).

Plaintiffs believe that the Pennsylvania Supreme Court would give the savings clause in HSCA

section 705 a literal reading and find that plaintiffs have a right to bring an action for contribution in the absence of a civil action under section 507 or 1101.

Plaintiffs incorporate their arguments presented in Section II of this brief, as applicable to HSCA as they are to CERCLA, in response to defendants' assertion that plaintiffs have not satisfied the discharge of common liability prerequisite. The cases cited by defendants in support of a prerequisite discharge of common liability for HSCA did not even involve contribution claims under HSCA, and are simply irrelevant. Accordingly, this Court should find that plaintiffs have an express right of contribution under HSCA section 705, and deny defendants' motion to dismiss plaintiffs' HSCA claim.

C.    Plaintiffs' HSCA Claim is not Preempted by CERCLA

Federal law will preempt state law only where (1) Congress expressly and unmistakably preempts state law ("express preemption"), *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977); (2) Congress has established a comprehensive regulatory scheme in the area intending to remove the entire field from the state realm ("implied or field preemption"), *English v. General Elec. Co.*, 496 U.S. 72, 78-79 (1990); or (3) where it is impossible for a party to comply with both state and federal requirements or the state law is an obstacle to the achievement of federal objectives ("conflict preemption"), *Spriestsma v. Mercury Marine*, 537 U.S. 51, 64 (2002). Courts "should not lightly infer" that state or local law has been preempted by federal law. *International Paper Co. v. Ouellette*, 479 U.S. 481, 490 (1987).

D.    There is no express preemption of the State's public nuisance and restitution claims.

CERCLA contains three separate savings clauses that expressly preserve the right of states to regulate in the field of hazardous waste clean-up and to assert claims under state statutory law. CERCLA §114(a) states:

> Nothing in this Chapter shall be construed or interpreted as
> preempting any State from imposing any additional liability or
> requirements with respect to the release of hazardous substances
> within such State.

42 U.S.C. § 9641(a). CERCLA § 302(d) expressly preserves state law claims, including

common law claims:

> Nothing in this Chapter shall affect or modify in any way the
> obligations or liabilities of any person under other Federal or State
> law, including common law, with respect to release of hazardous
> substances or other pollutants or contaminants.

42 U.S.C. § 9652(d). CERCLA § 310(h), states:

> This chapter does not affect or otherwise impair the rights of any
> persons under Federal, State of common law . . ..

42 U.S.C. § 9659(h).

> Each of these sections proves that Congress did not intend CERCLA to preempt

state law. Only one provision of CERCLA limits recovery under state law, and, by its terms, that

provision is directed to the prevention of double recovery:

> Any person who *receives compensation* for removal costs or
> damages or claims pursuant to this Act shall be precluded from
> recovering compensation for the same removal costs or damages or
> claims pursuant to any other State or Federal law. Any person who
> *receives compensation* for removal costs or damages or claims
> pursuant to any other Federal or State law shall be precluded from
> receiving compensation for the same removal costs or damages or
> claims as provided in this Act.

42 U.S.C. § 9614(b) (emphasis added).

> The Second Circuit in *Bedford Affiliates* held that "CERCLA as a whole does not

expressly preempt state law, but simply prohibits states from 'recovering compensation for the

same removal costs or damages or claims' under both CERCLA and state or other federal laws . .

.." 156 F.3d at 426 (*quoting State of New York v. Shore Realty*, 759 F.2d at 1041). *See also*

*Manor Care, Inc. v. Yaskin*, 950 F.2d 122, 127 (3d Cir. 1991) (Government may recover its

Page 42

response costs under both CERCLA and state statutory and common law theories, provided, of course, the governments does not recover twice).

     E.     <u>There is no field preemption to bar the State's claims under state law.</u>

The savings clauses in CERCLA also make clear that Congress did not intend CERCLA to occupy the entire field of hazardous waste clean-up. *Fireman's Fund Ins. Co. v. City of Lodi*, 302 F.3d 928, 941 (9th Cir. 2002). The Court in *Bedford Affilia*tes held that state law claims are not barred under a theory of implied preemption, as "it was not part of the legislative purpose that CERCLA be a comprehensive regulatory scheme occupying the entire field of hazardous wastes, nor does CERCLA prevent the states from enacting laws to supplement federal measures relating to the cleanup of such wastes." 156 F.2d at 426-427. *See also, Sprietsma*, 537 U.S. at 69.

In sum, Plaintiffs' claims are not preempted by CERCLA.

### Conclusion

Defendants' Motion should be seen for just what it is -- a last-ditch attempt by liable parties to avoid paying any share whatsoever of the millions of dollars paid to date and to be paid in the future by Plaintiffs. Contribution is an equitable remedy. There is nothing fair and just about letting liable parties pay nothing. For all the foregoing reasons, and in the interest of justice, that Motion should be denied.

Dated:  October 18, 2005

                                   _____
                                   Glenn A. Harris, Esquire
                                   BALLARD SPAHR ANDREWS & INGERSOLL, LLP
                                   A Pennsylvania Limited Liability Partnership
                                   Plaza 1000, Suite 500, Main Street
                                   Voorhees, New Jersey  08043
                                   (856) 761-3400
                                   Attorney for Plaintiff Boarhead Farm Agreement Group