## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AGERE SYSTEMS, INC., CYTEC
INDUSTRIES, INC., FORD MOTOR
COMPANY, SPS TECHNOLOGIES, LLC and
TI GROUP AUTOMOTIVE SYSTEMS LLC,

          Plaintiffs,

v.

ADVANCED ENVIRONMENTAL
TECHNOLOGY CORPORATION, et al.,

          Defendants.

CIVIL ACTION

Case No. 02-cv-3830

Judge LeGrome D. Davis

## BRIEF IN SUPPORT OF SUMMARY JUDGMENT MOTION
## OF DEFENDANT ADVANCED ENVIRONMENTAL TECHNOLOGY CORP.

WOLFF & SAMSON PC
Robert Carlton, Jr. (RC-25050)
Thomas Sabino (TS-4691)
One Boland Drive
West Orange, NJ 07052
(973) 325-1500
rcarlton@wolffsamson.com
tsabino@wolffsamson.com
Attorneys for Defendant, Advanced
Environmental Technology Corp.

**TABLE OF CONTENTS**

PAGE

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF UNDISPUTED FACTS ........................................................................... 3

   A.   Plaintiffs' Fourth Amended Complaint ........................................................................ 3

   B.   The "Arranger" Allegations Against AETC ................................................................. 3

   C.   AETC Was a Non-Generator Broker............................................................................ 5

   D.   The Nature of the Relationship Between AETC and DeRewal Chemical .................... 7

   E.   The Bills of Lading Referencing Ashland Chemical and Diaz Chemical ..................... 8

   F.   Possession or Ownership of the Ashland or Diaz Chemical Wastes.............................. 9

LEGAL ARGUMENT......................................................................................................... 11

   POINT I .......................................................................................................................... 11

   AETC IS NOT A CERCLA "ARRANGER" BECAUSE
   IT DID NOT OWN OR POSSESS THE ASHLAND CHEMICAL
   or DIAZ CHEMICAL WASTES..................................................................................... 11

       I.A    The Third Circuit's Morton International Decision...................................... 11

       I.B    AETC Did Not Transport or Possess the Wastes Whose Disposal
              It Brokered .................................................................................................. 13

       I.C    AETC Did Not Own the Wastes Whose Disposal It Brokered .................... 14

       I.D    Based On The Undisputed Facts, Summary Judgment Should Be
              Granted........................................................................................................ 16

POINT II .......................................................................................................................... 18

AETC IS NOT AN "ARRANGER" BECAUSE IT DID NOT HAVE
KNOWLEDGE OF OR CONTROL OVER THE ASHLAND CHEMICAL
or DIAZ CHEMICAL WASTES ........................................................................................ 18

    II.A    AETC Had No Knowledge of the Illegal Dumping of DeRewal Chemical ........ 18

    II.B.   AETC Did Not Control the Disposal Process ......................................................... 19

POINT III ........................................................................................................................ 22

SUMMARY JUDGMENT SHOULD ALSO BE GRANTED TO AETC REGARDING
THE DECLARATORY JUDGMENT COUNT .................................................................. 22

POINT IV ........................................................................................................................ 23

AETC IS NOT LIABLE UNDER THE PENNSYLVANIA HAZARDOUS SITES
CLEANUP ACT ............................................................................................................... 23

CONCLUSION ................................................................................................................ 25

ii

## PRELIMINARY STATEMENT

Defendant, Advanced Environmental Technology Corporation ("AETC"), stands alone as the only party (Plaintiff or Defendant) in this CERCLA contribution action that is not a generator of waste that was allegedly disposed of at the Boarhead Farms Superfund site. Instead, AETC's liability is predicated upon its purported "arranger" status based on being a broker between generators, Ashland Chemical, and Diaz Chemical and transporters, DeRewal Chemical Company and Environmental Chemical Control, the entities that actually picked and deposited the Ashland and Diaz wastes.

Under the CERCLA "arranger" standard recently established by the Third Circuit in Morton International v. A.E. Staley Company, Inc., 343 F.3d 669 (3d Cir. 2003), AETC is not an "arranger" because it did not own or possess any wastes, did not know where those wastes were being disposed of and did not have control of the disposal process. AETC acted as the middleman; i.e., broker, to have the wastes of its customers, Ashland Chemical and Diaz Chemical, disposed of at the Wissinoming Industrial Park facility in Philadelphia. Unknown to AETC, the transporters were also illegally dumping wastes at the Boarhead Farms Superfund site. At no point did AETC ever pick-up, transport, possess or own the Ashland Chemical and Diaz Chemical wastes. Indeed, in the time period relevant to AETC's connection to this litigation (1976-77), AETC was a new company working out of the garage of its vice-president with fewer than four employees and, thus, lacked the resources to handle and transport any wastes.

There being no genuine issue of material fact that AETC ever owned, possessed or controlled the waste alleged to have gone to the Boarhead Farms Superfund site, AETC cannot be held liable as a CERCLA "arranger" and summary judgment should be

granted.    The same analysis applies to Plaintiffs' claim under the Pennsylvania Hazardous Site Cleanup Act, which should also be dismissed with prejudice via summary judgment.

## STATEMENT OF UNDISPUTED FACTS

### A.    Plaintiffs' Fourth Amended Complaint

This action was initially commenced by Plaintiff, Boarhead Farm Agreement Group ("BFAG"), by Complaint filed on June 18, 2002 seeing damages related to the cleanup of the Boarhead Farms Superfund site in Bridgeton Township, Bucks County, Pennsylvania (the "Site"). BFAG consisted of Agere Systems, Inc., Cytec Industries, Inc., Ford Motor Company, SPS Technologies, LLC and TI Group Automotive Systems, LLC.

As this action progressed through mediation and discovery, several amended complaints were filed. By "Memorandum and Order" filed on July 20, 2005 this Court granted leave for the filing of a Fourth Amended Complaint. The Fourth Amended Complaint substituted the individual members of BFAG as the Plaintiffs instead of BFAG. However, this Court's July 20, 2005 "Memorandum and Order" did not grant leave for the Plaintiffs to asserts a CERCLA §107 cost recovery action against the Defendants because the Plaintiffs were themselves parties responsible for the contamination at the Site.

### B.    The "Arranger" Allegations Against AETC

In the Fourth Amended Complaint, Plaintiff alleges that AETC "arranged with DeRewal Chemical for the disposal of hazardous substances from Defendants Ashland Chemical Company ("Ashland") and Diaz Chemical Corporation ("Diaz"), which Hazardous Substances were disposed of at the Site." (Fourth Amended Complaint, ¶31.)

Manfred DeRewal is identified as the person who incorporated and operated DeRewal Chemical, "a hauler of waste materials." (Fourth Amended Complaint, ¶31.)[1]

In actuality, AETC entered into brokering agreements with Ashland and Diaz for the removal of their wastes for transport and disposal by DeRewal Chemical Company. (See Exhibit 1 at ¶2.)[2]  Those materials were to be disposed of at Manfred DeRewal's facility in the Wissinoming Industrial Park on Comly Road in Philadelphia. (Exhibit 1 at ¶2; Exhibit 3 at p.73 and Exhibit 8.)

AETC did not transport any materials to the Site.  In its Interrogatory answers, Plaintiffs admitted this: **"Plaintiff does not allege that trucks owned by AETC conveyed materials and/or hazardous substances to the Site**, but rather that AETC arranged for DCC to haul hazardous substances…"  (Exhibit 2, Plaintiff's Answer to AETC Interrogatory no. 5; emphasis added.)  Not only did AETC not transport any waste to the Site (Exhibit 1 at ¶2), but AETC did not know the Site was being used for the disposal of wastes until after it ceased doing business with DeRewal Chemical. (Exhibit 1 at ¶4 and Exhibit 3 at p.73).

Plaintiffs also allege that AETC is liable as a "Generator/Arranger" under the Pennsylvania Hazardous Site Cleanup Act ("PHSCA").  (Fourth Amended Complaint, ¶165.)  However, Plaintiffs' citation to the PHSCA is misleading.  Plaintiffs imply that a party can be liable if it arranged for the disposal, treatment or transport for hazardous substances even if it did not own or possess that substance.  (See Fourth Amended

---

[1] It is actually another Manfred DeRewal Company, Environmental Chemical Control ("EEC"), that is listed on the bills of lading as the transporter of the Ashland and Diaz wastes.  See Exhibits 11 & 12 to Sabino Decl.  In his 2004 deposition, former Assistant District Attorney General David Michelman testified that EEC was a Manfred DeRewal company.  (Exhibit 5 at p. 15.)

[2] References herein to any "Exhibit" are to those documents attached to the Declaration of Thomas Sabino, Esq., submitted in support of AETC's motion for summary judgment.

Complaint, ¶165, "The Generator/Arranger Defendants are persons who by contract, agreement or otherwise, arranged for disposal or treatment, or transport for disposal or treatment of Hazardous Substances owned or possessed by them or by another entity or party, at the Site...", citing 35 Pa. Cons. Stat. §6020.701(a)(2).)   In fact, 35 Pa. Cons. Stat. §6020.701(a)(2) reads:

§6020.701. Responsible Person
(a) General Rule. – Except for releases of hazardous substances expressly and specifically approved under a valid Federal or State permit, a person shall be responsible for a release or threatened release of a hazardous substance from a site when any of the following apply:
(1) The person owns or operates the site:  (subparts i to iii are omitted)
(2) **The person generates, owns or possesses a hazardous substance and** arranges by contract, agreement, or otherwise for the disposal, treatment or transport or treatment of the hazardous substance. (emphasis added).

Thus, under the PHSCA, a party can only be a "responsible person" if it generated, owned or possessed a hazardous substance.  Plaintiffs inclusion of the words "by them or another entity or party" in ¶165 of the Fourth Amended Complaint does not comport with the express language of 35 Pa. Cons. Stat. §6020.701(a)(2).

## C.    AETC Was a Non-Generator Broker

AETC was started in July 1976 by Robert Landmesser, its president, and John Leuzarder, its vice-president. (Exhibit 3 at pp. 14-15.)  In the beginning, AETC worked out of Mr. Leuzarder's garage.  (Exhibit 3 at pp. 15-16.)  In the early years, AETC consisted of Mr. Landmesser, Mr. Leuzarder and a secretary.  (Id.)  AETC did not move to a "proper" office until approximately 1978:

> Q.    So for approximately the first year and a half of AETC's corporate existence you were working out of your garage?
> A.    That's correct.
> Q.    When you moved to the office on Speedwell Avenue, did you take on any employees then?

> A.     Yes, we began to – we began to grow over the next, you know, the number of years that we were there…[Exhibit 3 at p. 18.]

AETC was a broker who acted as a middleman for the removal and disposal of wastes for its customers. (Exhibit 1 at ¶2).  See also, Exhibit 3 at p. 19:

> Q.     When you and Mr. Landmesser started AETC in July 1976, what was AETC's business?
> A.     We were endeavoring to find alternatives to help our customers, of course which   were few at that time, to find ways of recycling, recovering and properly disposing of hazardous and nonhazardous waste materials.

AETC's role as a broker was described by its vice-president, Mr. Leuazrder, as follows:

> "It's a – when you're a brokerage firm, you really don't own anything, you always talk like that…See, the only thing that kept us going was not because we had disposal facilitates or we had trucks or anything else, it was that we had found these people that we were developing enough – we had a relationship with the customer and a relationship with the disposer that we were trying to stay in the middle and not be gone around." [Exhibit 3, at p. 125.]

Non-party witnesses who had contacts with AETC in the 1970's also testified that AETC was a "broker".   Walter Risi, Esq, who represented AETC shortly after its incorporation in 1976 (Exhibit 4 at p.12), testified as follows: "Robert Landmesser and John Leuzarder had gotten together and were – brokers is the word I would use.  People who – people, companies and organizations that needed to comply with environmental laws in regards to disposal of substances, these two fellows were packaging the substances in a way that would comply with the Code of Federal Regulations, and there were very strict guidelines, I can remember." (Exhibit 4 at p. 13-15.)

David Michelman was an Assistant District Attorney in the Philadelphia District Attorney's Office from 1975-86 and was involved with the Philadelphia's District

Attorney's Office from 1977-78 in the investigation of, and litigations against, Manfred DeRewal and Environmental Chemical Control for environmental violations in and near the Wissinoming Industrial Park in Philadelphia 1977-78. (Exhibit 5 at p. 8-15.) Mr. Michelman testified about his understanding of AETC's business: "My recollection is that AETC acknowledged and admitted that it was the broker for DeRewal and that it was providing customers for DeRewal and identifying customers whose wastes could be transported and disposed of by DeRewal, and that Ashland and these other sources of acid were customers who AETC had and directed the waste for disposal through DeRewal..." (Exhibit 5 at p.51.)

Tom Healey was an engineer with the Philadelphia Water Department, who was involved with the investigation of Manfred DeRewal and Environmental Chemical Control for environmental violations in and near the Wissinoming Industrial Park in Philadelphia 1977-78. (Exhibit 6, p.8-11.) As to AETC, he recalled that "At one point we met with John Leuzarder and Bob Landmesser from AETC, and they were brokers, and they hooked up some of their clients out of North Jersey from the previous business contracts that were handling a lot of nitrating acids." (Exhibit 6 at p 34.)

## D.    The Nature of the Relationship Between AETC and DeRewal Chemical

At his deposition, AETC's vice-president was asked to describe the business relationship between AETC and DeRewal Chemical. That testimony is set forth below but, in sum, AETC was paid a commission for linking the transporter, Manfred DeRewal, with generators of waste:

> Q. [portion omitted] What was the nature of the business relationship between DeRewal Chemical and AETC in 1976?

A.    As I stated before, we were a brokerage firm that like a real estate operation was connecting up sellers of services with those in need of such services on the basis that the supplier of the services, in this case, DeRewal Chemical Company was approved by the necessary – by the appropriate authorities. And the customer in this case Ashland Chemical, would make, would also – we'd check out their credentials as well, that we would connect it to that they might develop a relationship and that we were paid a commission by DeRewal actually, we billed – we billed – that's incorrect. Let me restate that.

We billed Ashland for the cost we were being charged by DeRewal for the neutralization of acids and so on plus a profit for ourselves. And we would then pay DeRewal Chemical what they were asking for the individual truckload prices of neutralization of those particular chemicals. [Exhibit 3 at p.48.]

In this time period, (1976-77), AETC did not have written contracts with the haulers it dealt with but instead worked under oral agreements. (Exhibit 10, Vol. I at p. 147.) Thus, AETC did not have a written contract with DeRewal Chemical; instead, these parties operated under a "handshake agreement". (Exhibit 3 at pp. 58-59.) The relationship operated simply: AETC's customer would call and advise that it had liquid wastes that needed to be disposed of; AETC would then call DeRewal Chemical and tell them that a disposal pick-up was required. (Exhibit 3 at pp. 65-66.)

E.    **The Bills of Lading Referencing Ashland Chemical and Diaz Chemical**

The bills of lading that memorialize Environmental Chemical Control taking liquid waste from Defendants, Ashland Chemical and Diaz Chemical, indicate that the waste was "consigned" to AETC. (Exhibits 11 & 12.)

The Diaz Chemical bills of lading indicated that the waste was to be deposited at the Wissinoming Industrial Park in Philadelphia. (Exhibit 11.) Those bills of lading reveal that AETC had a business relationship with Environmental Chemical Control and

Diaz Chemical from January 1977 to April 1977. (Id.) Diaz Chemical understood that its liquid waste was being sent to the Wissinoming Industrial Park in Philadelphia and not to the Boarhead Farms Site. (Exhibit 13.)

The Ashland Chemical bills of lading listed no destination. (Exhibit 12.) Those bills of lading reveal that AETC had a business relationship with Environmental Chemical Control and Ashland Chemical from August 1976 to April 1977. (Exhibit 12.) AETC understood that the Ashland waste was being deposited at the Wissinoming Industrial Park in Philadelphia. (Exhibit 1 at ¶2 and Exhibit 3 at p. 73.)    Modern Transportation took over the transport of Ashland's acids in April 1977. (Exhibits 12 & 13.)

Both Mr. Landmesser and Mr. Lezuarder have made sworn statements that they understood that the Ashland and Diaz wastes were going to Philadelphia and not to the Boarhead Farms Site. (Exhibit 1 at ¶2; Exhibit 3 at p. 73 and p. 211-212.)

**F.**    **Possession or Ownership of the Ashland or Diaz Chemical Wastes**

As previously stated, Plaintiffs do not allege that AETC ever had possession of or transported any wastes to the Boarhead Farms Superfund site. (Exhibit 2, Plaintiff's Answer to AETC Interrogatory no. 5.)

Nor do Plaintiffs have any evidence that AETC ever owned the Ashland Chemical or Diaz Chemical waste. When asked in Interrogatories to identify any facts to show that AETC owned any materials and/or hazardous substances that were deposited at the Boarhead Farms Superfund site, Plaintiffs could only allege that "Ashland and Diaz consigned their wastes to AETC for removal and disposal." (Exhibit 2, Plaintiff's Answer to AETC Interrogatory no. 3.) At deposition, when asked about his

understanding of who owned these wastes, either AETC or Ashland/Diaz, Mr. Landmesser testified: "It's my understanding that the generator of the material always owns the waste." (Exhibit 10, Vol. III at pp. 24-25.)

When AETC's vice-president, Mr. Leuzarder, was asked at deposition about his understanding of who owned the wastes being transported, he also testified that he believed it was the transporter, DeRewal Chemical:

> Q.    Did AETC in its agreement with DeRewal specify anything to him regarding ownership of the waste that he handled?
>
> A.    As I recall it, if once a trucker took the material it belonged to them. [Exhibit 3 at p.62.]

In 1976, an "Agreement" was drawn up by Ashand Chemical between Ashland and AETC which purported, in part, to transfer title of the Ashland wastes to AETC upon pickup. (Exhibit 7 at ¶4.) However, the "Agreement" was never signed. In a memorandum dated October 19, 1976, Arthur Curley of Ashland wrote: "I gave Leuzarder three signed copies of the contract our Law Department had drawn up for waiver of liability. His hesitation tells me that he will sit on these for a while and we should not expect to receive the signed contract too soon, if at all." (Exhibit 8.) Mr. Curley also testified at deposition that the 1976 Agreement was never signed. (Exhibit 9 at pp. 146-48.) Mr. Curley could not recall any further discussions with AETC regarding the ownership of the Ashland waste. (Exhibit 9 at p. 149.)

**LEGAL ARGUMENT**

**POINT I**

**AETC IS NOT A CERCLA "ARRANGER" BECAUSE IT DID NOT OWN OR POSSESS THE ASHLAND CHEMICAL or DIAZ CHEMICAL WASTES**

**I.A    The Third Circuit's Morton International Decision**

In September 2003, for the first time, the Third Circuit set forth the standard for "arranger" liability under CERCLA in this Circuit. See Morton International v. A.E. Staley Company, Inc., 343 F.3d 669 (3d Cir. 2003) ("The District Court has asked us to 'definitively address' the standard for 'arranger liability' under CERCLA Section 107(a)(3) in this Circuit...") 343 F.3d at 675.[3]   The Morton court first evaluated the legislative history of CERCLA, summarized the "arranger" decisions of the Supreme Court and the other Circuits (343 F.3d at 675-677), and then concluded:

> After carefully examining the language of the statute and considering the standards adopted by other courts, we conclude that the most important factors in determining 'arranger liability' are: (1) ownership or possession; and (2) knowledge; or (3) control.  Ownership or possession of the hazardous substance must be demonstrated, but this factor alone will not suffice to establish liability.  A plaintiff must also demonstrate either control over the process that results in a release of hazardous waste *or* knowledge that such a release will occur during the process.  [343 F.3d at 677, emphasis in original]

With respect to the ownership/possession factor, the Morton court explained that its rationale was based on the actual language of CERCLA:

> First, proof of ownership, or at least possession, of the hazardous substance is required by the plain language of the statute. See 42 U.S.C. §9607(a)(3) ('any person who...arranged for disposal or treatment...of hazardous substance

---

[3] See, also Morton International, Inc. v. A.E. Staley Manufacturing Co.: The Third Circuit Establishes a Standard For CERCLA Arranger Liability, 17 Tul. Envtl. L.J. 201 (2003); The Third Circuit Clarifies Arranger Liability Under CERCLA, 31 Ecology L.Q. 739 (2004); 18 Andrews Delaware Corporate Litigation Reporter 9, 3D Cir. Established Standard for "Arranger Liability" under CERCLA Morton Int'l v. AE. Staley Mfg. Co. (2003).

*owned or possessed* by such person…'(emphasis added). This required factor is the starting point in determining 'arranger liability' because, of course, with ownership comes responsibility. [343 F.3d at 678, emphasis in original]

Thus, the threshold issue in considering "arranger liability" in this Circuit is whether a defendant owned or possessed the hazardous substances at issue.[4] Only if proof of ownership and/or possession is first established, do the control or knowledge factors become applicable. Here, Plaintiffs have no proof that AETC either owned or possessed the Ashland or Diaz wastes whose disposal it brokered and, thus, Plaintiffs have failed to satisfy the threshold Morton factor. As illustrated in BP Amoco Chemical Company v. Sun Oil Company, 316 F.Supp.2d 166 (D.Del. 2004), this fact alone is sufficient basis upon which to grant summary judgment to AETC.

In BP Amoco Chemical Company v. Sun Oil Company, 316 F.Supp.2d 166 (D.Del. 2004), the court applied the Morton standard to conclude that the parent corporation (Sun Oil) was not subject to arranger liability because it did not own or possess the waste of its subsidiary's manufacturing facility. Sun Oil was merely the owner of the subsidiary's stock and not the company that operated the film and polymer plant.

The BP Amoco court began its analysis by citing to the three-prong Morton "arranger" liability test; i.e., ownership or possession, knowledge and control. 316 F.Supp. 2d at 172. It then emphasized that proof of ownership or possession must be shown to satisfy arranger liability: "Therefore, a defendant cannot be held liable as an

---

[4] In Morton, the plaintiff was the operator of a mercury processing plant who took its customers prime virgin mercury ("PVM") and converted it. Summary judgment granted to defendant/customer Tenneco was reversed because the Third Circuit found there was a fact issue as to Tennaco's ownership of the PVM.

arranger under CERCLA unless the plaintiff comes forward with evidence demonstrating ownership or possession of the hazardous substance by the defendant." 316 F.Supp. 2d at 172, citing Morton, 343 F.3d at 677.    The BP Amoco court then referenced facts that may have shown that defendant Sun Oil controlled the process by which waste from the subject facility was disposed but concluded:

> …control is not enough to impose arranger liability under Third Circuit law.  See Morton Int'l, 343 F. 3d at 677-78. Rather, BP Amoco must first come forward with evidence to prove that Sun owned or possessed the waste at issue…and it has failed to do so.  Sun's Motion will be granted to the extent that it seeks summary judgment that it is not liable as an arranger under CERCLA. [316 F.Supp. at 172.]

Similarly, here there is no evidence that AETC ever owned or possessed the Ashland or Diaz waste.  AETC's role as broker/middleman kept AETC far removed from any of its customer's wastes.  Stated another way, AETC's employees wore suits and ties and "handled" telephones; they did not wear boots and overalls and "handled" trucks of liquid waste. As stated by AETC's vice-president John Leuzarder, "…we were just brokers and not actually handlers." (Exhibit 3 at p.217.)

## I.B    AETC Did Not Transport or Possess the Wastes Whose Disposal It Brokered

Plaintiffs do not allege that trucks owned by AETC ever transported Ashland or Diaz wastes. (Exhibit 2, Answer to Interrogatory no. 5.)  In fact, no AETC trucks and drivers ever transported wastes, which DeRewal Chemical/Environmental Chemical Control collected from either Ashland or Diaz. (Exhibit 1, ¶2).  AETC never transported wastes from any of its customers to the Boarhead Farms Site. (Exhibit 1, ¶2).  It is

944829.1                                   13

undisputed that AETC never physically possessed any waste that was ultimately allegedly dumped at the Boarhead Farms Superfund site.[5]

## I.C   AETC Did Not Own the Wastes Whose Disposal It Brokered

AETC did not own the liquid wastes of either Ashland or Diaz, whose transport it brokered. Plaintiffs have offered no evidence that AETC, in fact, owned the subject wastes. When questioned at deposition regarding who owned the Ashland and Diaz wastes, neither AETC's president, nor vice-president, stated that it was AETC. (See Exhibit 3 at p. 62; Exhibit 10, Vol.III at pp. 24-25.) Specifically, Mr. Landmesser testified that AETC did not obtain title to waste when a hauler brokered by AETC picked up that waste from a customer:

> Q.    Well I'm not talking about today. I'm talking about in 1976 and 1977, was it your understanding that when one of the haulers with whom you contracted removed Ashland's waste, that that waste become AETC's waste?
>
> A.    No, it's not my understanding.
>
> Q.    Okay. What was your understanding at the time of the ownership of that waste upon removal?
>
> A.    It's my understanding that the generator of the material always owns the waste. [Ex. 10, Vol. III at 24-25.]

AETC could find no case law standing for the proposition that ownership of waste could be transferred to a broker, who acted as the middleman between a generator and a transporter. The case law on the broader issue of transfer of ownership of waste in this Circuit is sparse and does not provide much guidance.

For example, in United States v. Wade, 577 F.Supp. 1326 (E.D. Pa. 1983), the court rejected, inter alia, on a summary judgment motion, the argument that the transfer

---

[5] In Plaintiffs' Fourth Amended Complaint, it has withdrawn the allegation that AETC transported wastes to the Boarhead Farms site. (See Fourth Amended Complaint, at ¶¶30-31.)

14

of ownership of hazardous wastes to a disposal company at the time of pickup for disposal absolved the waste generator of CERCLA liability. "I also reject the arguments that the government must establish that the generator selected the site at which the wastes were dumped and that transfer of ownership of the waste to ABM [the transporter] at the time of pick-up for disposal absolves the generator of liability. Neither argument finds support in the language of the statute." 577 F. Supp. at 1333, n.3.[6] The inference from the Wade case is that ownership of waste could possibly be transferred to a transporter. However, in the case at bar it is undisputed that AETC never transported any waste to the Site and, thus, the Wade case is inapposite.

In its Interrogatory answers, Plaintiffs merely assert that the evidence establishes that "AETC entered into separate contracts with Ashland and Diaz for the removal and disposal of wastes from those companies, and that, pursuant to those contracts, Ashland and Diaz **consigned** their wastes to AETC for removal and disposal." (Exhibit 2, Answer to Interrogatory no. 5, emphasis added.) Thus, the "consigned" issue appears to be at the heart of Plaintiffs' "ownership" argument. But this argument is weak and unsupported. Black's Law Dictionary defines "consign" as:

> 1. To transfer to another's custody or charge.  2. To give (goods) to a carrier for delivery to a designated recipient. 3. To give (merchandise or the like) to another to sell, usu. with the understanding that the seller will pay the owner for the goods from the proceeds.  (Black's Law Dictionary, 8th Ed. 1999.)

In the case a bar, there is no dispute that AETC ever had possession, custody or charge of any Ashland or Diaz waste. (Exhibit 2, Answer to Interrogatory no. 5:

---

[6] The Wade case's opinion on the transfer of waste from a generator to a transporter is referenced in at least two other reported decisions, but without illuminating the issue. See Signature Combs v. U.S., 331 F. Supp.2d 630, 639 (W.D.Tenn. 2004); U.S. v. Conservation Chemical Co., 619 F. Supp. 162, 234 (D.C.Mo. 1985).

"Plaintiff does not allege that trucks owned by AETC conveyed material and/or hazardous substances to the site...") Thus, the waste was never physically transferred or given to AETC, but instead transferred to the custody of Manfred DeRewal's truck drivers. Plaintiffs' reliance upon the designation of AETC as the "consignee" in the bills of lading does not establish "ownership".

The only documentary reference to ownership of wastes is the unsigned 1976 "Agreement" between AETC and Ashland, which states in part: "In consideration for the Contractor undertaking and performing the work to be done hereunder, Ashland, agrees that all materials will become the property of the Contractor. Title to the material removed and risk of loss will pass to the Contractor upon completion of loading of the materials." (Exhibit 7, ¶4.) This "Agreement" was never signed and, thus, the attempted ownership transfer was never effected. (Exhibit 7; Exhibit 8 at p.2, Exhibit 9 at p. 146-47).

AETC operated as a broker under oral agreements with Ashland and Diaz, and these oral agreements never contemplated the transferring of title of the waste to AETC. (See Exhibit 3 at p. 62; Exhibit 9 at p. 149; Exhibit 10 at pp. 24-25.)

**I.D    Based On The Undisputed Facts, Summary Judgment Should Be Granted**

In sum, Plaintiffs have no evidence that AETC ever possessed or owned the subject wastes. Having no proof that AETC owned or possessed the Ashland/Diaz waste, Plaintiffs cannot even get AETC to the "starting point" of the CERCLA "arranger" analysis. See Morton, 343 F.3d at 678 ("proof of ownership, or at least possession, of the hazardous substance is required by the plain language of the statute."); BP Amoco, 316 F.Supp.2d at 172 ("A defendant cannot be held liable as an arranger

under CERCLA unless the plaintiff comes forward with evidence demonstrating ownership or possession of the hazardous substance by the defendant.")

Under Civ.R. 56, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing there is a genuine issue for trial." A review of the details of AETC's limited role reveals that AETC did not own, possess, transport, deposit any of the waste that was dumped at Boarhead Farms. Summary judgment should be granted to AETC, as it was to Sun Oil in BP Amoco, supra, on the sole basis that there is no proof it owned or possessed any Ashland or Diaz waste.

### POINT II

### AETC IS NOT AN "ARRANGER" BECAUSE IT DID NOT HAVE KNOWLEDGE OF OR CONTROL OVER THE ASHLAND CHEMICAL or DIAZ CHEMICAL WASTES

As set forth in Point I above, Plaintiffs' failure to adduce any evidence that AETC either owned or possessed the Ashland or Diaz wastes mandates the grant of summary judgment because the failure to show ownership or possession is fatal to any CERCLA "arranger" liability in the Third Circuit. See BP Amoco Chemical Company v. Sun Oil Company, 316 F.Supp. 2d 166, 172 (D.Del. 2004) (granting defendant summary judgment because plaintiff could not come forward with evidence demonstrating ownership or possession of hazardous substances by defendant Sun Oil.) However, for the sake of completeness, analysis of the other prongs of the Morton case is undertaken below.

### II.A    AETC Had No Knowledge of the Illegal Dumping of DeRewal Chemical

Even if a party either owned or possessed a hazardous substance, unless it had control over the process it "arranged" for, liability will not attach: "Proof of a defendant's knowledge that hazardous waste can or will be released in the course of the process it has arranged for, provides a good reason to hold a defendant responsible because such proof demonstrates that the defendant knowingly (if not personally) contributed to the hazardous waste contamination." Morton, 343 F3d. at 678. As set forth above, AETC neither owned, nor possessed, the Ashland and Diaz acids that Plaintiffs allege wound up at the Boarhead Farms Site. Moreover, AETC did not have control over DeRewal Chemical and/or Environmental Chemical's disposal process, which was done solely by Manfred DeRewal's drivers.

Manfred DeRewal's truck drivers illegally and surreptitiously deposited liquid wastes at the Boarhead Farms Site. The Diaz bills of lading indicated the destination of those wastes to be "Philadelphia, Wysomming Industrial Park". (Exhibit 11.) Moreover, AETC understood that all of the liquid wastes that DeRewal Chemical picked up from Ashland and Diaz were deposited at the Wissinoming Industrial Park in Philadelphia. (Exhibit 1, ¶2.) Indeed DeRewal's Wissinoming facility in Philadelphia was the only disposal site that AETC was ever aware of:

> Q.    Was the Wissinoming facility the only disposal site that DeRewal was using to AETC's knowledge?
> A.    Yes.
>                          * * *
> Q.    To AETC's knowledge wad DeRewal taking its customers waste to the Wissinoming facility?
> A.    Yes.  [Exhibit 3 at p. 73]

AETC had no knowledge that the Ashland and Diaz materials, which transport by DeRewal Chemical it had brokered, would result in the release of hazardous waste into the environment because of the illegal disposal practices of DeRewal Chemical. Thus, the knowledge prong of the Morton arranger test is not satisfied as to AETC.

## II.B.   AETC Did Not Control the Disposal Process

During the nine months (from August 1976 to April 1977) that AETC brokered the removal of liquid wastes from Ashland and Diaz, AETC had no control over the process of the disposal of these wastes. AETC believed that those wastes were being neutralized, and then disposed of, at the Wissinoming site in Philadelphia. No AETC drivers ever had control of either Ashland or Diaz wastes, and no AETC employee ever dumped either Ashland or Diaz wastes in either Philadelphia or Boarhead Farms. (Exhibit 1, ¶2.)

As was stated by John Leuzarder of AETC:

> Q.    What did DeRewal Chemical Company's duties entail for AETC?
> A.    --    They were to safely pick up in compliance with the federal regulations U.S. Department of Transportation and transport, properly placed, with properly trained drivers, in other words, according to DOT requirements and transport that material to the facility that was listed on the bill of lading and to properly unload those materials. And then DeRewal Chemical, that was the trucker, conformance with DOT, then DeRewal Chemical was to properly neutralize and dispose of all or recover all wastes that were shipped to them in conformance with all applicable state and federal regulations. [Ex. 3, p. 63]

In explaining its "arranger" liability standard, the Third Circuit gave the following example:

> If, for example, a defendant arranges for a plant to treat hazardous substance that it owns or possesses, but has absolutely no control over the processing and no knowledge (or even reason to know) that the processing will result in the release of hazardous waste, it would be unfair to require that defendant to contribute to the cost of cleanup. Imposing liability on the defendant in those circumstances would go beyond Congress's intent to require those "actually responsible for any damage, environmental harm, or injury from chemical poisons" to share in the cost of cleanup.  [343 F.3d at 678.]

AETC clearly falls within the above exception.  It would be unfair for AETC to contribute to the cost of the cleanup of the Site because AETC had neither possession, nor control, of any hazardous substances that went to the Boarhead Farm Site, and had no knowledge that the Site was being used for the improper disposal of hazardous substances.

In sum, based on the application of the Third Circuit's standard in Morton, AETC cannot be held to be an "arranger" under CERCLA.  Since AETC was not sufficiently responsible for the disposal of the Ashland and Diaz wastes, it is not liable under CERCLA in connection with the Boarhead Farms Site.  Imposing liability on AETC in

the circumstances in this case would go beyond Congress's intent to require those "actually responsible for any damage, environmental harm, or injury from chemical poisons" to share in the costs of a cleanup.  <u>Morton,</u> 343 F.3d at 678.

## POINT III

## SUMMARY JUDGMENT SHOULD ALSO BE GRANTED TO AETC REGARDING THE DECLARATORY JUDGMENT COUNT

AETC should also be granted summary judgment as to the Third Count of the Fourth Amended Complaint, which is Plaintiffs' claim for a declaratory judgment under CERCLA. (Fourth Amended Complaint, ¶¶155-57.) It is axiomatic that a party seeking declaratory judgment must link that request to an entitlement to a substantive right. If a party has no substantive rights under a statute, declaratory relief is not available to it under that statute. See e.g., Interfaith Community Organization v. Honeywell Int., 215 F. Supp.2d 482, 496 (D.N.J. 2002) (holding that if CERCLA claims were dismissed, declaratory judgment under CERCLA would not be available); Interfaith Community Organization v. Honeywell Int., 204 F. Supp.2d 804, 816 (D.N.J. 2002) (Honeywell was not entitled to seek declaratory judgment under New Jersey Uniform Declaratory Judgment Law because it's substantive state law claims had been dismissed).

If this Court grants summary judgment to AETC at to Counts One and Two (CERCLA contribution claims), by extension, summary judgment should also to granted to AETC as to Count Three.

### POINT IV

### AETC IS NOT LIABLE UNDER THE PENNSYLVANIA
### HAZARDOUS SITES CLEANUP ACT

AETC should also be granted summary judgment as to the Fourth Count of the Fourth Amended Complaint, which is Plaintiffs' claim for cost recovery under the Pennsylvania Hazardous Sites Cleanup Act ("PHSCA"). (Fourth Amended Complaint, ¶¶158-67.) Under the foregoing analysis herein of "arranger" liability under the Morton case, AETC should be granted summary judgment because CERCLA and HSCA are treated as the same. See Reading Company v. City of Philadelphia, 1992 WL 392595 (United States District Court, E.D. Pa. 1992) (the parties agreed that operator and arranger status under CERCLA and PHSCA are identical and, "Therefore, the same result pertains to the state law claims as for the federal claims.")

Moreover, a completely separate analysis of Plaintiffs' claim under the plain language of the PHSCA results in the conclusion that summary judgment should be granted to AETC regarding the HSCA claim regardless of the legal analysis under the Morton case. Plaintiffs' allegation is that, under the PHSCA, the "Generator/Arranger Defendants...arranged for disposal or treatment, or transport for disposal or treatment of Hazardous Substances owned or possessed by them **or by another party or entity**, at the site..." (Fourth Amended Complaint, ¶165.) Plaintiffs attempt, by their misleading pleading, to broaden the scope of 35 Pa. Cons. Stat. §6020.701(a)(2) to parties, who do not own or possess hazardous substances.

In fact, the plain language of §6020.701(a)(2) limits liability to a person, who "generates, owns **or** possesses a hazardous substance **and** arranges by contract,

agreement or otherwise for the disposal, treatment or transport for disposal or treatment of the hazardous substance." (emphasis added). Clearly, liability under PHSCA §6020.701(a)(2) is limited to persons, who generate/own/possess a hazardous substance **and** then arrange to have it transported, treated or disposed of. As set forth herein, it is undisputed that AETC did not generate, own or possess any hazardous substances. Accordingly, summary judgment should be granted to AETC on the Fourth Count of the Fourth Amended Complaint.

## CONCLUSION

For the foregoing reasons, Defendant, Advanced Environmental Technology Corporation, respectfully requests that this Court grant summary judgment as to all claims against it in the above-captioned matter.

WOLFF& SAMSON PC
Attorneys for Defendant, Advanced
Environmental Technology Corp.

By: _____

ROBERT CARLTON, JR. (25050)
THOMAS SABINO (6491)

Dated: August __, 2006