# EXHIBIT "D"

## AGREEMENT OF SALE AND PURCHASE

AGREEMENT made this first day of July, 1988, by and
between MERIT METAL PRODUCTS CORPORATION, a Pennsylvania business
corporation (the "Seller") and STEFANOWICZ & LUTZ, INC., a
Pennsylvania business corporation (the "Buyer").

### BACKGROUND

Seller is willing to assign, convey and sell to Buyer and
Buyer is willing to purchase the assets and business of Seller,
except the excluded assets specified in paragraph 1 of this
Agreement, located primarily at 242 Valley Road, Warrington,
Pennsylvania 18976 ( which land, building and improvements are
hereinafter called the "Business Premises"), on the terms and con-
ditions hereinafter set forth.

### AGREEMENT

In consideration of the mutual promises and covenants
herein contained and other good and valuable consideration, and
intending to be legally bound hereby, the parties hereto agree as
follows:

1. Purchase and Sale of Assets. At the Closing (as
defined in paragraph 10 hereof), Seller agrees to assign, convey,
deliver, sell and transfer to Buyer, and Buyer agrees to accept,
acquire and purchase from Seller, pursuant to the terms and condi-

MERI0018

tions of this Agreement all right, title and interest of the Seller in the assets of every type and description, tangible and intangible, wherever located, and the business of Seller as a going concern (collectively herein called the "Business") including but not limited to, the following assets:

(a)  All the equipment, machinery, furniture and fixtures presently used by Seller in connection with the operation of the Business, including, without limitation, all such assets listed on the Seller's Balance Sheet for the period ending December 31, 1987, except such equipment, machinery, furniture and fixtures disposed of in the ordinary course of business, which is hereby incorporated herein by reference, which Balance Sheet was delivered to Buyer and upon which Buyer relied in purchasing the Business pursuant to this Agreement;

(b)  the prepaid expenses and service contracts attributable to the Business, other than those attributable to assets not purchased hereunder;

(c)  the customer lists attributable to the Business;

(d)  The goodwill and other intangibles assets connected with the operation of the Business, including, without limitation, the right of the Buyer to use Seller's names and telephone numbers and listings, it being hereby agreed that Seller will, on the Closing Date as hereinafter defined, agree to change its name and grant the right to use the name "MERIT METAL PRODUCTS CORPORATION"

-2-

MERI0019

to the Buyer and assign and transfer all other names and trade styles which are listed on Exhibit "I-A" hereto to the Buyer. To facilitate the transfer by the Seller of its name to Buyer, the Seller will authorize, execute and deliver the Consent to Appropriation of Name and Amendment of Seller's Articles of Incorporation attached as Exhibit "I-B" and "I-C", respectively, hereto;

(e) All of Seller's usable and saleable inventory located on the Business Premises and elsewhere (collectively herein called "Seller's Inventory") as of the Closing Date. Seller hereby agrees to cooperate with the Buyer to develop an inventory valuation acceptable to the Buyer and to the Buyer's bank. Seller and Buyer hereby agrees to be bound by the analysis and determination of the valuation of Seller's Inventory by Goldenberg/Rosenthal, Certified Public Accountants for purposes of subparagraph 1(f) hereof;

(f) Seller agrees that on the Closing Date that the value of Seller's Inventory and Seller's accounts receivable (collectively herein called "Seller's Accounts Receivable") shall not be less than One Million Dollars ($1,000,000.00); and

(g) Seller agrees to conduct their business with respect to Seller's Inventory and Seller's Accounts Receivable in the same manner as in the past and not to pay officers or employees any bonuses or any other extraordinary compensation.

-3-

MERI0020

The only assets (herein collectively called "Excluded Assets") of Seller excluded from the Seller's assets to be sold by Seller to Buyer hereunder are (i) the Business Premises, (ii) the Volvo Sedan and the Audi Sedan owned by the Seller, (iii) all Seller's actual cash on hand and in the reconciled account in the Seller's Bank in the sum of Twenty Eight Thousand Dollars ($28,000), and (iv) Seller's pro rata share of prepaid expenses and other assets, excluding all amounts receivable from sale of scrap metal, agreed upon in a writing by the Buyer and Seller dated the date hereof.

2.    <u>Assumption of Specific Liabilities of Seller by Buyer and Seller's Indemnity of Buyer</u>.

(a)    None of Seller's liabilities or obligations of any nature whatsoever, pursuant to this Agreement or otherwise, are assumed, discharged or paid or are to be assumed, discharged, paid or performed by Buyer, including without limitation any vacation accrued to Messrs. Sayles or Wolberg, except pursuant to subparagraphs 2(b) and 2(c) of this paragraph 2.

(b)    Buyer agrees to discharge and pay at the Closing all of Seller's obligations due the Seller's bank and to assume current trade debts incurred in the ordinary course of business and other liabilities and obligations of the Business all of which are listed on Exhibit "II" hereto, as updated to the Closing Date, but Buyer agrees to pay all such liabilities and obligations incurred in the ordinary course of Seller's business, if any, which are unintentionally not included on Exhibit "II" hereto.

-4-

MERI0021

(c)  Buyer agrees to assume the obligations of Seller
under any purchase order of Seller for merchandise or services
issued in the ordinary course of its business after the date of this
Agreement and prior to the Closing as to which the merchandise or
services ordered has not been delivered to Seller prior to the
Closing, provided however, that without Buyer's written approval,
Seller will not, after the date hereof, issue any purchase order
which, in any case, exceeds Ten Thousand Dollars ($10,000) for con-
sumable items (e.g. supplies and inventory).  Attached as Exhibit
"III" hereto is a list of Seller's outstanding merchandise and
service orders.  Buyer will, at the Closing, assume and agree to
discharge or cause to be discharged all such obligations for mer-
chandise or services listed on Exhibit "III" attached hereto, as
updated to the Closing Date, but agrees to assume all such obliga-
tions incurred in the ordinary course of Seller's business, if any,
which are not included on Exhibit "III" hereto.

(d)  Buyer agrees to assume and take over the Seller's
collective bargaining agreement with the Seller's Union and to
initially employ all Seller's employees.

3.  Purchase Price for Seller's Business.

(a)  The purchase price (the "Purchase Price") for Seller's
Business, including, without limitation, all the assets sold here-
under and described in paragraph 1 hereof, shall be Four Hundred
Forty Six Thousand, Two Hundred and Fifty Dollars ($446,250), and
the assumption of the liabilities specified on Exhibit "II" hereto

-5-

MERI0022

updated to the date of Closing and shall be allocable among the
Business and assets being sold hereunder as agreed by the parties
hereto.  Seller and Buyer shall both execute and file an appro-
priate form concerning the the assets acquired and liabilities paid
pursuant hereto, with the United States Internal Revenue Service by
attaching the form to their respective Federal Income Tax Returns
for the year 1988 which confirms the value of the assets trans-
ferred and liabilities paid pursuant to the consummation of this
Agreement.

(b)  The Purchase Price shall be payable to Seller by
Buyer as follows:

(i)  Twenty Thousand Dollars ($20,000) upon execution
of this Agreement; and

(ii) The balance at the Closing specified in
paragraph 10 hereof.

4.  Downpayment.

(a)  The amount required to be paid by Buyer on the
date hereof in accordance with subparagraph (b)(i) of paragraph 3
hereof shall be paid to Lawrence E. McAlee, Esquire, attorney for
the Buyer and Richard B. Laden, Esquire, attorney for the Seller,
to be held in a joint escrow account.  If the Closing is completed
as herein provided, the downpayment and all accrued interest thereof
shall be applied to reduce the Purchase Price.  If the Buyer fails
to close as required hereunder, through no fault of Seller, the

-6-

MERI0023

downpayment and accrued interest shall be retained by Seller as liquidated damages, and in such event this Agreement shall become null and void with no further obligation on either of the parties hereto. If Buyer fails to close as required hereunder because of any of the reasons stated in paragraph 12 hereof, the downpayment shall be returned to the Buyer with the accrued interest thereon and in such event this Agreement shall be null and void with no further obligation on either of the parties hereto.

(b) Messrs. Laden and Mr. McAlee (herein collectively called "Escrow Agents") shall cause the Escrow Deposit to be deposited in the Fidelity Bank at 123 South Broad Street, Philadelphia, Pennsylvania and to be maintained in that Escrow Deposit with interest reinvested until paid out in accordance with the terms hereof.

(c) The duties of the Escrow Agents hereunder shall be entirely administrative and not discretionary. The Escrow Agents shall be obligated to act only in accordance with written instructions received by them as provided in this Agreement except that they shall be authorized hereby to comply with any final and unappealable order, judgment or decree of any court of competent jurisdiction and shall not be liable as a result of their compliance with such order, judgment or decree.

(d) As to any legal questions arising in connection with the performance of their duties hereunder, Escrow Agents may

-7-

MERI0024

obtain opinions from outside counsel or from the law firm with which either Escrow Agent is associated and Escrow Agents may rely absolutely upon such opinions and shall be free of liability for acting in reliance thereon.

(e)  The Escrow Agents may rely absolutely upon the genuineness and authorization of the signature and purported signature of any party upon any instruction, notice, release, receipt or other document delivered to them pursuant to this Agreement.

(f) Buyer and Seller agree that Escrow Agents shall not be liable for any damages or other payments pursuant to any suit, claim or cause of action which either Buyer or Seller may commence, unless such suit, claim, demand or cause of action is based upon the willful neglect or gross negligence of Escrow Agent. Buyer and Seller further agree jointly to indemnify each Escrow Agent against and from any and all claims, demands, costs, liabilities and expenses, including counsel fees, which may be asserted against either Escrow Agent or to which either of them may be exposed or which either of them may incur by reason of the execution or performance of this Agreement unless such claims, demands, costs, liabilities or expenses are based upon the willful neglect or gross negligence of said Escrow Agent.

(g)  Each Escrow Agent has agreed to serve hereunder without compensation but each shall be entitled to reimbursement

MERI0025

for any out-of-pocket expenses reasonably incurred and Buyer and Seller jointly agree to pay such expenses arising from the performance by the Escrow Agents hereunder.

     5.   <u>Covenants Not to Compete and Consulting Agreement</u>.

     (a)  Seller hereby agrees that as a condition to the Closing of this transaction, Seller shall enter into an agreement, and cause Leonard Wolberg and Leonard P. Sayles, its only shareholders to enter into agreements in form and substance satisfactory to Buyer and its counsel, in the form attached hereto as Exhibits "IV-A", "IV-B", "IV-C", whereby (Y) Seller warrants, covenants and agrees not to compete with Buyer for the period set forth in the Consulting and Non-Competition Agreement attached hereto as Exhibit IV-A and (Z) Messrs. Wolberg and Sayles agree to act as consultants for the Buyer and not to compete with Buyer for the periods set forth in the Consulting and Non-Competition Agreements attached hereto as Exhibits IV-B and IV-C, respectively. Seller and Messrs. Wolberg and Sayles hereby acknowledge that Buyer is placing significant reliance on the obtaining of the Non-Competition Agreement attached hereto as Exhibit "IV-A" and Consulting and Non-Competition Agreements attached hereto as Exhibits "IV-B" and "IV-C", respectively, and that the execution and delivery of such Agreements will not prevent Messrs. Wolberg and Sayles, respectively, from earning a livelihood.

-9-

MERI0026

(b)   In addition to the compensation and benefits payable under the Consulting and Non-Competition Agreement the Buyer shall pay Messrs. Wolberg and Sayles, each within forty-five (45) days after the first annual anniversary of the Closing of this Agreement, an amount equal to five percent (5%) of the Buyer's sales in excess of Three Million Four Hundred Thousand Dollars ($3,400,000) during the first twelve (12) month period after the date of the Closing of this Agreement and within forty-five (45) days after the second annual anniversary of the Closing of this Agreement, an amount equal to five percent (5%) of the Buyer's sales in excess of Three Million Five Hundred Thousand Dollars ($3,500,000) during the second twelve (12) month period after the date of the Closing of this Agreement.

6.   Representations and Warranties by Seller.  As an inducement to Buyer to purchase the Business and its assets, Seller represents, warrants, covenants and agrees as of the date of the execution hereof, and as of the Closing Date, that:

(a)   Seller's Organization, Good Standing and Qualifications. Seller is a stock corporation duly organized, existing and in good standing under the laws of the Commonwealth of Pennsylvania, has all necessary corporate powers to own the assets to be transferred

-10-

MERI0027

hereunder and to operate the Business as now owned and operated by Seller, and is duly qualified or registered as a foreign corporation in each other state or jurisdiction in which its ownership of properties or the conduct of its business requires such registration or qualification, if failure to do so will adversely impact its business, and is in full compliance with all applicable laws of each state or other jurisdiction, in which the nature or conduct of its business requires such compliance;

(b)  <u>Seller's Authority to Enter into this Agreement</u>. Seller has taken all requisite corporate action to enter into this Agreement and perform its obligations hereunder, the execution of this Agreement by Seller and its delivery have been duly authorized by the Seller's Board of Directors and shareholders, and no further corporate action will be necessary on the part of Seller to make this Agreement valid and binding upon Seller in accordance with its terms;

(c)  <u>Seller's Financial Statements</u>.  Seller has heretofore delivered to Buyer the Seller's financial statements for the periods ended April 30, 1983, 1984, 1985, 1986, 1987 and December 31, 1987 which are incorporated herein by this reference (collectively called "Seller's Financial Statements").  The Balance Sheet and Statement of Operations and Retained Earnings for the period ending December 31, 1987 are in accordance with the books and records of

-11-

MERI0028

Seller and were prepared on a basis consistent with the prior Seller's Financial Statements, subject to its usual year end adjustments.  Since December 31, 1987, to the date of this Agreement and to the Closing Date, there has not been any adverse change in the Seller's financial condition or Business from that shown on Seller's financial statements for the period ending December 31, 1987, subject to seasonal adjustments which do not materially differ from practice of previous years.  Seller agrees to make available to Buyer its current accounting records at least five (5) days prior to the Closing for their review.  Since the delivery of the Seller's Financial Statements, there has been no events or transactions having a material effect on Seller's Financial Statements or which should be disclosed in order to make them not misleading.  Seller's Financial Statements described above are accompanied by a report thereon of Goldberg/Rosenthal, Seller's independent public accountants, and such of Seller's Financial Statements as are unaudited have been certified by the Seller's President and by the Seller's chief financial officer.  Seller's Financial Statements present fairly the financial condition of Seller at their respective dates and the results of Seller's operations for such periods in accordance with generally accepted accounting principles, and Seller's usual year end adjustments, consistently applied.  There are no liabilities of Seller, contingent or otherwise, including, without limitation, any tax liabilities of any nature whatsoever, which are

-12-

MERI0029

not disclosed by or reflected fully in Seller's Financial State-
ments or disclosed in Exhibit "V" attached hereto.  Seller warrants
that Seller duly filed all federal, state and county income tax
returns and other tax returns of every kind and description, and
there are presently no claims for tax deficiencies pending against
Seller by any taxing authority, nor does Seller know of any basis
for the making of any claim by any taxing authority for any tax
deficiency against Seller;

(d)  Tax Returns.  Seller's tax returns have been filed
when due and in accordance with generally accepted tax practice
and Seller's federal income tax returns have been audited for the
years set forth on a schedule attached hereto as Exhibit "V";

(e)  Seller's Assets Other than Fixed Assets.  Seller does
not utilize in its Business any tangible assets, other than Seller's
Fixed Assets, or other than property owned by public utilities or
municipal authorities, not reflected in the December 31, 1987
Balance Sheet, except for those assets, a list of which is attached
hereto as Exhibit "VI" and Seller warrants that all of assets
listed on Exhibit "VI" are located at Business Premises;

(f)  Seller's Fixed Assets.  Immediately after the Agree-
ment is executed, Seller will permit the Buyer and its representa-
tives, at its initial expense, to make an appraisal of all the
Seller's fixed assets.  If the Closing is not held, Seller can

-13-

MERI0030

obtain the appraisal by paying Buyer One Thousand Dollars ($1,000).
Attached hereto as Exhibit "VII" is a list of all Seller's fixed
assets, including its equipment, machinery, furniture and fixtures
as of the date hereof. The particular equipment, machinery, furni-
ture and fixtures to be transferred to Buyer at the Closing will
not materially vary in description and number from the respective
listings set forth on Exhibit "VII";

(g)  No Breach of Seller's Charter Documents or Other
Agreements. The execution of this Agreement by Seller, or the
performance of the requirements in the Agreement, will not result
in a violation of the Seller's Articles of Incorporation or By-Laws
or constitute a violation or breach of any term or provisions of,
or constitute a default under, any indenture, mortgage, deed of
trust, or other contract or agreement to which Seller is a party or
by which the Seller or its shareholders are bound and the Agreement
does not require the approval of any other person, governmental
entity or instrumentality. Seller is not in breach or default of
any obligation or liability to be assumed by Buyer hereunder and no
event has occurred which, by the passage of time or giving of
notice or both, would result in a breach or default by Seller
thereunder;

(h)  Contracts and Agreements. To the best of their
knowledge after a diligent review of their records, attached hereto

-14-

MERI0031

as Exhibit "VIII" is a list of all Seller's contracts, leases, commitments and agreements (whether or not in writing) to which Seller is a party or by which Seller is bound, including without limitation:

(i)     Agreements for the employment of any person which are not terminable by Seller without further obligation on ten (10) day notice or less;

(ii)    Collective bargaining agreements;

(iii)   Sales agency, distributorship or manufacturer's representative agreements;

(iv)    Leases of real property wherein Seller is the lessor or lessee;

(v)     Leases of personal property wherein Seller is the lessor or lessee;

(vi)    Agreements for the maintenance of Seller's products or to provide warranty service;

(vii)   Outstanding purchase orders of Seller for the purchase of goods, materials or services;

-15-

MERI0032

(viii)   Unfilled sales orders of Seller for the sale of its products or services; and

(ix)   A copy of the Seller's consulting contract and Sales Agency contract with Mr. Mel Silverman, the prior owner of the Seller;

(x)   Copies of all the documents which evidence any correspondence presently in the Seller's possession from an environmental agency of Warrington Township, or other municipality or the Commonwealth of Pennsylvania concerning an environmental or related problem with the Seller's Business or the Business Premises;

(xi)   A copy of all documents and approvals which the Seller has presently in the file from the officials of the Occupational Safety and Health Service Commission established under Occupational Safety and Health Act ("OSHA Act");

(xii)   A copy of any contract, letter of understanding and all other writings by and between the Seller and F.LLI Razeto & Casareto S.p.A. authorizing the Seller

-16-

MERI0033

to distribute, sell or act as their
agent to distribute and sell or distribute
their products and/or sell or perform
services in North America and copies of
all other contracts, letters of under-
standing and all other writings which
authorize the Seller to distribute,
sell or act as agent for any other
party to sell or distribute any products
and/or sell or perform any services; and

(xiii)    Any other contract or commitment, in excess
of One Thousand Dollars ($1,000.00) whether
or not in the ordinary course of business,
which involves future payments, performance
of services or delivery of goods or
materials.

Except as otherwise specifically provided in this Agreement, all
rights of Seller under all contracts of Seller, including, without
limitation, those described above, shall be delivered, transferred
and assigned to Buyer at the Closing;

(i)    Logo, Licenses, Patents, Trademarks and the Like.
Attached hereto as Exhibit "IX" is a description of all logo,
licenses, patents, patent applications, trade names, trademarks,
trademark registrations and applications therefor, and other assets

-17-

MERI0034

of like kind, any interest in which has been assigned to, is owned
by or registered in the name of Seller relating to its Business and
such logo, licenses, patents, patent applications, trade names,
trademarks, trademark registrations and applications constitute all
those necessary to lawfully produce Seller's goods, products and
services which are sold by Seller or used in Seller's Business and
Seller's Business does not infringe on such rights which belong to
others.  Seller has the right to use all logo, licenses, patents,
trademarks, trade names and trade secrets now used in the conduct
of its Business, and such rights are in full force and effect and
have not been amended or modified.  Seller has in all material
respects performed all obligations required to be performed by it
relating to said logo, licenses, patents, patent applications,
trade names, trademarks, trademark registration and applications
and is not in default in any material respect under any of the
foregoing;

     (j)   Title to Assets - No Encumbrances.  At the Closing
Seller has good and marketable title and full power to sell and
transfer Seller's Business and all of the assets which Seller has
agreed to sell, transfer and assign hereunder and such Business
assets are not subject to any security interest, except that of
Bucks County Bank and Trust Company, contractual restriction,
pledge, lien, conditional sale agreement, encumbrance or charge,
except a lien for taxes not delinquent;

MERI0035

(k)  Seller's Pension Obligations.  To the best of the
Seller's knowledge and belief and based on a diligent review of all
relevant documents and records, the representations, warranties and
factual statements made in this subparagraph 6(k) are true and
correct.  Seller and any subsidiary is in compliance in all mate-
rial respects with all applicable provisions of the Employee Retire-
ment Income Security Act of 1974 (ERISA), as amended, and the reg-
ulations and published interpretations thereunder.  Neither a report-
able event as set forth in Section 4043 of ERISA or the regulations
thereunder ("Reportable Event") nor a prohibited transaction as set
forth in Section 406 of ERISA or Section 4975 of the Internal Rev-
enue Code of 1954, as amended, has occurred and is continuing with
respect to any employee benefit or other plan established, maintained,
or to which contributions have been made by the Seller or any trade
or business (whether or not incorporated) which together with the
Seller would be treated as a single employer under Section 4001 of
ERISA ("ERISA Affiliate") for its employees which is covered by
Title IV of ERISA ("Plan"); no notice of intent to terminate a Plan
has been filed nor has any Plan been terminated; no circumstances
exist that constitute grounds under Section 4042 of ERISA entitling
the Pension Benefit Guaranty Corporation ("PBGC") to institute pro-
ceedings to terminate, or appoint a trustee to administrate, a Plan,
nor has the PBGC instituted any such proceedings; neither the Seller
nor any ERISA Affiliate has completely or partially withdrawn under
Sections 4201 or 4204 of ERISA from any Plan described in Section
4001(a)(3) of ERISA which covers employees of the Seller or any
ERISA Affiliate ("Multiemployer Plan"); and the Seller and each
ERISA Affiliate has met its minimum funding requirements under

MERI0036

ERISA with respect to all of its Plans and the present value of all vested benefits under each Plan do not exceed the fair market value of all Plan assets allocable to such benefits, as determined on the most recent valuation date of the Plan and in accordance with the provisions of ERISA and the regulations thereunder for calculating the potential liability of the Seller or any ERISA Affiliate to the PBGC or the Plan under Title IV of ERISA; neither the Seller nor any ERISA Affiliate has incurred any liability to the PBGC under ERISA; neither the Seller or any ERISA Affiliate has unfunded pension liabilities; and Seller will provide Buyer with the information concerning pension liabilities which must be disclosed pursuant to Financial Accounting Standards Board Statement #87;

(l)  Condition of Assets.  All of Seller's assets being sold hereunder are in the aggregate suitable for carrying on the Business;

(m)  List of Creditors.  Seller has no creditors other than those which are set forth on Exhibit "II" or other Exhibits hereto; but Buyer agrees to pay all such creditor's liabilities and obligations incurred in the ordinary course of Seller's business, if any, which are unintentionally not included on Exhibit "II" hereto.

(n)  Compliance with Laws.  To the best of their knowledge and belief and based on a diligent review of its records, Seller has received no citation or notice of violation of any applicable zoning law, ordinance or regulation, environmental laws or regulations or any other law, order, regulation or requirement relating

-20-

MERI0037

to the operation of the Business and/or use of the Business Premises which Seller has not complied with;

(o) <u>Litigation</u>. There is no litigation, proceeding or investigation pending or, insofar as is known to the Seller, threatened at law or in equity, or before any federal, state or municipal or other governmental department or instrumentality affecting the assets or the operation of the Business or the Business Premises and the Business is not, in so far as it is known to Seller, operating under, subject to or in default with respect to any order, writ, injunction or decree of any such instrumentality, other than the litigation pending between Mr. Mel Silverman and Seller will, upon signing of this Agreement, deliver to Buyer's counsel copies of the pleadings in such litigation and authorize Seller's counsel to fully discuss this matter with Buyer's counsel.

(p) <u>Employment and Related Obligations</u>. Attached hereto as Exhibit "X" is a list of all Seller's employment contracts and obligations re accrued vacation, holiday, sick pay or severance pay or employment benefits, except those as disclosed on Exhibit II hereto.

(q) <u>Compliance with OSHA Act</u>. To the best of Seller's knowledge and belief after diligent investigation Seller is in compliance with the requirements of the OSHA Act and the regulations which implement that Act.

MFRI0038

(r)  <u>Compliance with Environmental Laws and Regulations</u>.
Seller, to the best of their knowledge and belief after diligent
investigation and the Business Premises are in compliance with all
environmental laws and regulations (federal, state and local) and
Seller will, within ten (10) days prior to the Closing hereunder,
present the Buyer with a certificate signed by Seller's President
that Seller and the Business Premises are in compliance with such
laws and regulations supported by such data as Seller has its pos-
session from the regulatory authorities having jurisdiction over
such environmental matters.

(s)  <u>Discussion and Agreement by Buyer with Seller's
Employees' Union</u>.  Seller and Buyer hereby agree, before the Closing
of this transaction, to jointly meet with the representatives of
the Union representing Seller's employees.

(t)  <u>Conduct of Business</u>.  All transactions of Seller with
outside business concerns are conducted on an arms-length basis.
Since the date of Seller's most recent financial statements delivered
to Buyer, except as disclosed in this Agreement, Seller has not:

    (i)    Entered into any transaction out
           of the ordinary course of business;

-22-

MERI0039

(ii)    Had any change in its financial condition assets, business or its customers, other than changes in the ordinary course of business, none of which changes in the ordinary course of business has been materially adverse;

(iii)   Suffered any fire, riot, explosion, earthquake, windstorm, strike or other labor trouble, lockout, flood, act of God, or of the public enemy, casualty, condemnation, confiscation, requisition, embargo, activity of the United States government, revocation of license or right to do business, cancellation or modification of contracts by governmental authority, governmental regulation or order restricting the operation of its Business, cancellation or modification of any franchise, right, contract, license or agreement or any other event which has materially and adversely affected the Business, its operations, properties or assets;

-23-

MERI0040

(iv)    Had any material change in the accounting principles and practices followed by Seller; or

(v)    Entered into any sale or transfer of any of the assets purchased hereunder, or except in the ordinary course of business or any disposition of any of its intangible assets.

(u)  Conduct of Business from Date of Agreement Until Closing Date.  Between the date hereof and the Closing Date, Seller shall diligently conduct the Business in good faith and as previously conducted and Seller will maintain in force existing insurance in connection with the Business, a list of which is attached hereto as Exhibit "XI" which list details the annual premium of each policy and its expiration date.  Except to the extent permitted by this Agreement or otherwise waived or consented to in writing by Buyer, Seller covenants and agrees that pending Closing:

(i)    Seller shall conduct its business only in the ordinary course and in a good businesslike manner, as heretofore conducted;

(ii)    Seller will use its best efforts to keep its business intact and keep the present

-24-

MERI0041

key employees and hereby authorizes the Buyer's representatives, within one week prior to Closing and upon notice to Seller, to meet, during the Seller's business hours, and discuss the sale of the Seller's business to the Buyer with the key employees of Seller to determine and use its best efforts to cause such key employees to take up employment with the Buyer immediately after consummation of this transaction;

(iii)    Seller shall use its best efforts to preserve the goodwill of persons having business relations with Seller including customers, suppliers, employees and creditors;

(iv)    Seller will not declare any dividends or otherwise distribute additional funds to any stockholder;

(v)    No capital expenditures or commitment in excess of One Thousand Dollars ($1,000.00) therefor, shall be made by Seller without notice to Buyer; and

-25-

MERI0042

(vi)       Seller shall make available, after normal

business hours to Buyer all of its books

of account, financial records and all

of Seller's documents and shall make

available an office and desk for Buyer's use.

7.    Representations and Warranties by Buyer.    As an
inducement to Seller to sell the Business and its assets, Buyer
represents, warrants, covenants and agrees as of the date of the
execution hereof, and as of the Closing Date, that:

(a)    Buyer's Organization and Good Standing.    Buyer is a
stock corporation duly organized, existing and in good standing
under the laws of the Commonwealth of Pennsylvania, has all neces-
sary corporate powers to own the assets to be transferred hereunder
and upon consummation of this transaction to operate the Business
as now owned and operated by Seller.

(b)    Buyer's Authority to Enter into this Agreement.    Buyer
has taken all requisite corporate action to enter into this Agree-
ment and perform its obligations hereunder and the execution of
this Agreement by Buyer and its delivery have been duly authorized
by the Buyer's Board of Directors and shareholders, and no further
corporate action will be necessary on the part of Buyer to make
this Agreement valid and binding upon Buyer in accordance with its
terms.

-26-

MERI0043

8.   Seller's Indemnification of Buyer.

(a) Except for liabilities of the kind and character assumed by Buyer pursuant to subparagraph 2(c) hereof, Seller agrees to and does hereby effective on and after the Closing hereunder, indemnify and save harmless Buyer of and from all liabilities or damages of any kind or character whatsoever arising out of the conduct or operation of Seller's Business prior to the Closing hereunder including, without limitation, the litigation between the Seller and Mr. Mel Silverman, for a period of two (2) years after the Closing Date and for amounts which aggregate in excess of Fifteen Thousand Dollars ($15,000.00).

(b) In the event that any claim is made upon Buyer with respect to any matter covered by the indemnity of Seller of Buyer granted in subparagraph 8(a) hereof, Buyer shall, if it seeks to invoke such indemnity, give notice in writing to Seller within thirty (30) days of becoming aware of any such claim and afford Seller full opportunity to defend, settle, compromise or otherwise dispose of such claim. If Seller shall fail or refuse to defend such claim within ten (10) days from the date the Buyer gives written notice thereof to the Seller, then Buyer shall have the right to defend such claim by counsel of Buyer's own choosing, but at the sole expense of Seller, including without limitation, reasonable legal fees and expenses.

-27-

MERI0044

(c) Seller agrees to reimburse Buyer, on demand, for
any payment made by Buyer at any time in respect of any liability
or claim to which Seller's indemnity granted in subparagraph 8(a)
hereof relates, subject to the arbitration provisions under para-
graph 14 hereof.  The term "liability" or claim as employed in the
foregoing sentence shall be deemed to include reasonable counsel
fees and court costs incurred in connection with any and all liti-
gation in which such claim or liability was established or sought
to be established, provided, however, if Seller provides a defense
with respect to any claim against Buyer, the latter will only be
entitled to legal fees for appropriate services rendered by its
counsel.

(d)  In the event that the Buyer shall elect to
defend any claim or liability pursuant to this paragraph 8, the
Seller agrees that it will cooperate and to the fullest extent prac-
ticable and permit the Buyer to make any investigations which the
Buyer may reasonably request.

9.  <u>Buyer's Indemnification of Seller</u>.

(a)  Buyer agrees to and does hereby effective on and
after the Closing hereunder, indemnify and save harmless Seller of
and from all liabilities or damages of any kind or character what-
soever arising out of the conduct or operation of the Business
after the Closing, other than acts caused by Seller's conduct prior

-28-

MERI0045

to the Closing for a period of two (2) years after the Closing Date and for amounts which aggregate in excess of Fifteen Thousand Dollars ($15,000);

(b)  In the event that any claim is made upon Seller with respect to any matter covered by the indemnity of Buyer granted in subparagraph 9(a) hereof, Seller shall, if it seeks to invoke such indemnity, give notice in writing to Seller within thirty (30) days of becoming aware of such claim and afford Buyer full opportunity to defend, settle, compromise or otherwise dispose of such claim.  If Buyer shall fail or refuse to defend such claim within ten (10) days from the date Seller gives written notice thereof to Buyer, then Seller shall have the right to defend such claim by counsel of Seller's own choosing, but at the sole expense of Buyer, including without limitation, reasonable legal fees and expenses.

(c)  Buyer agrees to reimburse Seller, on demand, for any payment made by Seller at any time in respect of any liability or claim to which Buyer's indemnity granted in subparagraph 9(a) hereof relates, subject to the arbitration provisions of paragraph 14 hereof.  The term "liability" as employed in the foregoing shall be deemed to include reasonable counsel fees and court costs incurred in connection with any and all litigation in which such claim or liability was established or sought to be established

-29-

MERI0046

provided, however, if Buyer provides a defense with respect to any claim against Seller, the latter will only be entitled to legal fees for appropriate services rendered by its counsel; and

(d)  In the event that the Seller shall elect to defend any claim or liability pursuant to this paragraph 9, the Buyer agrees that it will cooperate and to the fullest extent practicable and permit the Seller to make any investigations which the Seller may reasonably request.

10.  Closing and Conditions of Closing.  Buyer will advise the Seller in a writing either (i) specifying a closing date (the "Closing Date"), which shall not be after July 15, 1988, on which the transactions contemplated by this Agreement shall be closed and consummated, or (ii) specifying that because of a material consideration, specified in paragraph 12 hereof, of the Business to be represented by Seller to the Buyer, the Buyer will not close the transaction pursuant to this Agreement and requesting return of the downpayment provided pursuant to paragraph 4 hereof with accrued interest thereon and, in such case, the Seller hereby agrees to return such downpayment with accrued interest thereon.  The consummation of this transaction (the "Closing") shall take place at the law offices of Monteverde, Hemphill, Maschmeyer & Obert, 2230 The Fidelity Building, 123 South Broad Street, Philadelphia, Pennsylvania 19109-1022, commencing at 10:00 A.M. on the Closing Date.

(a)   At or before the Closing, as a condition prece-
dent to the obligation of the Buyer to close and consummate the
transaction contemplated by this Agreement, the Buyer must have
obtained a commitment from a financial institution providing the
Buyer with the funds to accomplish the purchase contemplated by
this Agreement and the Seller shall:

(i)    Deliver to Buyer a duly dated and signed
       General Conveyance, Assignment and Bill of
       Sale in the form of Exhibit "XII" hereto
       and such other documents of title sufficient
       in the opinion of Buyer and Buyer's counsel
       to transfer, sell and deliver to and vest
       in Buyer good and marketable title to and
       ownership of all the Seller's Business and
       related assets agreed to be sold and trans-
       ferred to Buyer hereunder and to carry out
       the intent and purpose of this Agreement;

(ii)   Deliver to the Buyer a duly signed and dated
       Certificate of the President of the Seller
       that representations and warranties of Seller
       contained in this Agreement are true on and
       as of the Closing Date as though such repre-
       sentations and warranties were made at and
       as of such time;

-31-

MERI0047

(iii)    Deliver to the Buyer, at least three (3)
business days prior to the Closing Date, a
copy of a lien search and based on such
research certify that Seller owes no
Pennsylvania taxes, that all sales tax,
stock tax and other taxes due and owing by
Seller, as of a date no earlier than ten (10)
days prior to the Closing Date, have been
paid;

(iv)    Deliver to the Buyer (a) the duly author-
ized signed and dated Non-Competition Agree-
ment by the Seller and (b) the duly executed
Consulting and Non-Competition Agreements by
Messrs.  Wolberg and Sayles, respectively;

(v)    Deliver to the Buyer, at least five (5)
business days prior to Closing, true,
correct, and complete copies of the latest
available custodian or trustee reports and
annual reports together with true, complete
and correct copies of the latest actuarial
reports for each Seller's pension plans and
any other employee benefits plan together
with written evidence satisfactory to Buyer
and its counsel that there is no unfunded

-32-

MERI0048

pension liability with respect to the Seller's pension plan or other liability with respect to any other benefit plan;

(vi)    Deliver to Buyer Seller's Affidavit in form of Exhibit "XIII" hereto, of the compliance by Seller with all applicable bulk sales laws and similar laws, rules and regulations relating to the sale of all or substantially all of Seller's assets;

(vii)   Deliver to Buyer a duly authorized and executed joint and several Guaranty Agreement from Seller, Leonard Wolberg and his wife and Leonard A. Sayles and his wife guaranteeing to Buyer the payment of ninety-five percent (95%) of the Seller's Accounts Receivables on the Closing Date within one hundred and eighty (180) days of the Closing Date in the form of Exhibit "XIV" hereto.  Seller and/or Messrs. Wolberg and Sayles and their spouses jointly and severally hereby (a) agree to deposit Twenty Thousand Dollars ($20,000) from the Purchase Price, paid by Buyer, in the escrow account established pursuant to

-33-

paragraph 4 hereof against which the Buyer
may off-set any amount due in connection
with the Seller's guaranty of the payment of
the Seller's Accounts Receivables, and (b)
hereby grant the Buyer the right to set-off
against any amount due Messrs. Wolberg and
Sayles under the Consulting Agreement Non-
Competition Agreements attached hereto as
Exhibits "IV-B" and "IV-C", respectively,
and against the rent due under the Lease
Agreement attached hereto as Exhibit "XV"
any amounts due the Seller pursuant to
the Guaranty Agreement for the payment
of the Seller's Accounts Receivables, pro-
vided that, Buyer will (i) use its best
efforts to collect Seller's Accounts
Receivable, (ii) provide Seller with a
weekly Accounts Receivable report, (iii) to
apply amounts received on such Accounts
Receivables to the oldest Accounts Receiv-
able absent a dispute by the purchaser con-
cerning quality of the merchandise purchased
hereunder, (iv) any payment under the
Guaranty Agreement will be applied to the
Seller's Accounts Receivables which have

-34-

MERI0050

been outstanding for the longest period of time, and (v) assign to Messrs. Wolberg and Sayles, without recourse, all Accounts Receivables which were paid to the Buyer pursuant to the Guaranty Agreement.

(viii)    Deliver to Buyer evidence, in form satisfactory to Buyer, of the payment, assumption or satisfaction of all secured debt of Seller not assumed or discharged by Buyer pertaining to assets being purchased hereunder;

(ix)    Deliver to Buyer a duly signed and dated opinion of Richard B. Laden, Esquire of Braemer, Abelson & Hitchner, attorneys-at-law, as counsel for Seller, dated as of the Closing Date, in form acceptable to counsel for Buyer, to the effect that:

(A)  Seller is a corporation duly incorporated and validly existing in good standing under the laws of the Commonwealth of Pennsylvania and has full corporate power and authority to enter into and consummate this Agreement;

-35-

MERI0051

(B)  No authorization, approval, consent,
permit or license of any governmental,
judicial or other regulatory body,
authority or person is required for the
sale and delivery of the Business and its
assets pursuant to this Agreement (or, if
required, that such has been obtained and
specifying same) and that such sale and
delivery contemplated by this Agreement will
not violate Seller's Articles of Incorpor-
ation or By-Laws or any agreement to which
Seller is, to the knowledge of such counsel,
a party or by which Seller is bound;

(C)  This Agreement is a valid and binding
obligation of Seller enforceable pursuant
to its terms and that upon the Closing,
contemplated hereunder, shall receive title
to the assets being purchased, free and
clear of all liens, claims or encumbrances
made or suffered by Seller;

(D)  Except as may be specified in such
opinion, that counsel does not know of
any litigation, administrative proceedings

-36-

MERI0052

or governmental investigation, pending or threatened, against or relating to Seller or in respect of the Seller's Business or assets, other than the litigation between the Seller and Mr. Silverman, and in the opinion of counsel for the Seller, Buyer has no liability in connection with such litigation; and

(E)  Stating that counsel knows of no facts or claims which might indicate or result in any material misrepresentation, warranty or breach of any of Seller's covenants herein.

For purposes of such opinion counsel may rely as to questions of fact, on certificates of officers of Seller or public officials, provided that copies thereof are attached to said opinion.

(xi)    Deliver to Buyer a duly signed and dated Lease Agreement between Seller and Buyer, the form of which is attached hereto and incorporated by reference herein as Exhibit "XV" for the lease of Business Premises and also known as 242 Valley Road, Warrington, Pennsylvania

-37-

MER10053

duly authorized and executed. The parties hereto agree that in the event that this Agreement or the Lease Agreement fail to close simultaneously, then neither party hereto shall be required to proceed with closing on the other agreement;

(xii)   Deliver to Buyer evidence satisfactory to the Buyer that the agreements, understandings and writings authorizing the Seller to distribute and sell products and services referred to in subparagraph 6(h)(xii) hereof will, at the Closing, be validly and duly assigned, transferred and conveyed to the Buyer and the Buyer will be permitted to exercise all of the Seller's rights thereunder which Seller can assign;

(xiii)  Deliver to Buyer all of the documents, contracts, agreements, records, books, materials, insurance policies, licenses, trade secrets, and all other data relating to the Business and included among the Business and its assets, including the right for the Buyer to use the name "MERIT METAL

-38-

MERI0054

PRODUCTS CORPORATION" after the Closing Date, with good and sufficient assignments of all of the foregoing in form satisfactory to Buyer provided however, Buyer for a period of five (5) years after the Closing Date will make available to Seller at reasonable times and upon reasonable notice, such accounting records, tax returns and data re Mel Silverman, conveyed to Buyer hereunder as to which Seller has a legitimate need;

(xiv)   Deliver by Seller evidence, in form satis-factory to Buyer, of the approval required of any governmental agency or instrumentality having jurisdiction over Seller or any of the purchased assets or a certificate of President of the Seller that no such approval is required;

(xv)   Perform and comply with all the agreements and conditions required of Seller by this Agreement;

(xvi)   Deliver to Buyer an opinion of Seller's labor counsel, John E. Quinn, Esquire, in form and content satisfactory to Buyers and their counsel, that the

-39-

MERI0055

Buyers have no obligation or liability whatsoever with respect to Seller's employees' pension benefits; and

(xvii)  Deliver such other documents and instruments as Buyer may deem necessary or desirable to consummate the transactions are contemplated by this Agreement.

(b)  At or before the Closing, as a condition precedent to the obligation of the Seller to close and consummate the transaction contemplated under this Agreement, the Buyer shall:

(i)  Deliver to Seller a bank check to the order of Seller or make payment on behalf of Seller in the amount due the Seller hereunder, less the sum placed in escrow pursuant to paragraph 4 hereof, and subject to any adjustments as otherwise provided hereunder;

(ii)  Deliver to Seller a duly signed and dated certificate of the President of Buyer that each of the representations, warranties and covenants contained in this Agreement are true and correct as though made again as of the Closing Date, except insofar as contracts or commitments shall have been entered into

-40-

MERI0056

after the date hereof with the written consent of Buyer or as otherwise permitted by this Agreement and that Seller has performed and complied with all agreements and conditions required to be performed under this Agreement;

(iii)   Deliver to Seller a duly signed and dated opinion of Lawrence E. McAlee, Esquire, Monteverde, Hemphill, Maschmeyer & Obert, Attorneys-at-Law, as counsel for Buyer, dated as of the Closing Date, in form acceptable to counsel for Seller, to the effect that:

(A)  Buyer is a corporation duly incorporated and validly existing in good standing under the laws of the Commonwealth of Pennsylvania and has full corporate power and authority to enter into and consummate this Agreement;

(B)  That the purchase of the Business will not violate Buyer's Articles of Incorporation or By-Laws or any agreement to which Buyer

-41-

MERI0057

is, to the knowledge of such counsel, a party or by which Buyer is bound;

(C)   This Agreement is a valid and binding obligation of Buyer;

(D)   Except as may be specified in such opinion, such counsel does not know of any litigation, administrative proceedings or governmental investigation, pending or threatened, against or relating to Buyer; and

(E)   Stating that counsel knows of no facts or claims which might indicate or result in any material misrepresentation, warranty or covenant of Buyer herein.

For purposes of such opinion such counsel may rely as to questions of fact, on certificates of officers of Buyer or public officials, provided that copies thereof are attached to said opinion.

(iv)   Perform and comply with all agreements and conditions required of Buyer this Agreement.

-42-

MERI0058

11. <u>Further Actions By Seller and Buyer</u>.  On and after
the Closing, at the request of Buyer from time to time, and without
further consideration, Seller, at its expense, will execute and
deliver such other and further instruments and perform such other
and further actions to more effectively sell, assign, transfer and
vest in Buyer the Business and assets being transferred hereunder,
and to carry out completely the terms and provisions of this Agree-
ment and Buyer will do the same for Seller.

12. <u>Termination of Agreement.</u>

(a)  In the event that prior to the consummation of
the transaction at Closing contemplated by this Agreement it is
determined by Buyer (i) that any representation, warranty or cove-
nant of Seller set forth in this Agreement contains any untrue
statement of a material fact or omits a statement of material fact
necessary in order to make the representation or warranty, in light
of the circumstances under which it was made, not misleading, (ii)
a material consideration, as hereinafter defined, of the Buyer's
agreement to purchase the Business and its assets is <u>not</u> as rep-
resented to Buyer by Seller, (iii) or Seller is unable to transfer
to Buyer five (5%) percent or more, in value, of the assets pur-
chased hereunder in accordance with this Agreement, Buyer may, in
the sole discretion of Buyer terminate this Agreement and immed-
iately obtain a refund with interest of the Buyer's downpayment

-43-

MERI0059

held in escrow pursuant to paragraph 4 hereof. A material consid-
eration for purposes of this paragraph 12 and this Agreement shall
include, (a) the Seller's Inventory, and the Seller's Accounts
Receivable being less than an aggregate of One Million Dollars
($1,000,000.00), (b) the Seller's failure to provide a written
agreement specifying the allocation of the Purchase Price with
respect to the value of the Business purchased hereunder, (c) the
Seller's failure to evidence to the Buyer that the Seller has com-
plied with all environmental laws and regulations pertaining to the
Business and the Business Premises, (d) the failure of the Buyer to
be assigned and transferred the Seller's licenses and distribution
contracts pertaining to the business, (e) the failure of the
Seller to exercise their best efforts to retain key employees to
agree to continue their employment with the Buyer, (f) the Seller's
failure to have its employees' pension plan fully funded to pay the
benefits the pension plan is obligated to pay to those entitled to
benefit pursuant to such pension plan, (g) a material adverse
change in the Seller's business since December 31, 1987, (h) an
adverse material change in the relationship of the Seller with its
employees and their union, (i) significant change in the manner
in which the Seller's business is conducted and (j) the failure of
Buyer to obtain appropriate financing from a bank or other source
to consummate this transaction.

　　　　(b)  If prior to the consummation of the transaction
at Closing contemplated by this Agreement it is determined by Seller
that the consummation of the transaction will result in Seller being
subject to a material liability with respect to Seller's employees'
pension plan, Seller may, in its sole discretion, terminate this
Agreement and Buyer will immediately obtain a refund with interest of
its downpayment held in escrow pursuant to paragraph 4 hereof.

MERI0060

13.  <u>Survival of Representations and Warranties</u>.  The representations, warranties and covenants of Seller and Buyer shall survive for two (2) years after the Closing, the delivery of all documents and instruments required hereunder and the consummation of the transactions contemplated by this Agreement, notwithstanding any investigation which may be or have been conduced by or on behalf of any of the parties hereto.

14.  <u>Arbitration</u>.  Except where injunctive relief is sought, any controversy or claim arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration in the City of Philadelphia, Pennsylvania, in accordance with the Rules of the American Arbitration Association, and the decision or award rendered by the arbitrator(s) shall be final, binding and conclusive upon the parties hereto and judgment upon such decision or award may be entered in any Court having jurisdiction hereof. In connection with any arbitration, the parties shall have the right to seek discovery in accordance with the Pennsylvania Rules of Civil Procedure.  All costs of any such arbitration shall be borne by the parties thereto in the manner directed by the Arbitrators.

15.  <u>Brokers' or Finders' Fees</u>.  Other than Montgomery Financial Corporation, each of the parties respectively represents and warrants to the other that no broker, finder or other person

-45-

MER10061

entitled to claim a fee for services has interested them or brought them together in the transaction evidenced by this Agreement.  Other than the brokerage fee due to Montgomery Financial Corporation of Twenty-One Thousand Two Hundred Fifty Dollars ($21,250.00) which the Seller hereby agrees to pay to Montgomery Financial Corporation, each of the parties does hereby indemnify and hold the other harmless from any and all claims, suits and actions for brokerage and other commissions and expenses (including attorney's fees and expenses) incurred by the other by reason of any claim or demand by any person or broker claiming to have been engaged by or on behalf of the indemnifying party or with whom the indemnifying party is alleged to have made any agreement for compensation.

16.  _Notices_.  All notices, requests, consents and other communications hereunder shall be in writing and shall be delivered to any party hereto by messenger or registered or certified mail, return receipt requested, postage and fees prepaid, first class mail, as follows:

            If to Buyer:    Stefanowicz & Lutz, Inc.
                            2195 Terwood Road
                            Huntingdon Valley, PA  19006

                            Attn:  A. Richard Stefanowicz, President

            Copy to:        Monteverde, Hemphill, Maschmeyer & Obert
                            2230 The Fidelity Building
                            123 South Broad Street
                            Philadelphia, PA  19109-1022

                            Attention:  Lawrence E. McAlee, Esquire

-46-

MERI0062

If to Seller:   Merit Metals Products Corporation
               242 Valley Road
               Warrington, PA 18976

Copy to:      Richard B. Laden, Esquire
               Braemer Abelson & Hitchner
               1515 Market Street, 18th Floor
               Philadelphia, PA 19102

Any party hereto may change the address designated for mailing by written notice to the other parties. All such notices shall be deemed to be given when delivered in person, or when placed in the mail as aforesaid.

17. **Miscellaneous.**

(a) Simultaneously with such delivery, Seller shall take all such steps as may be required to put Buyer in actual possession and operating control of the Business and its assets.

(b) Each person executing this Agreement on behalf of a party hereto warrants his/her authority to execute this Agreement and all documents related to this transaction on behalf of said party.

(c) This Agreement, together with the Exhibits annexed hereto, and any documents that may be delivered at the Closing, contain all the agreements, representations, warranties and covenants by the parties with respect to the transactions contemplated by this Agreement. Reference herein to the term "Agreement" includes Exhibits and attachments thereto which are hereby

-47-

MERI0063

incorporated into this Agreement.  This Agreement constitutes the entire agreement between the parties and shall be deemed to supersede and cancel any prior oral or written agreement between the parties hereto relating to the transactions herein contemplated. None of the prior and contemporaneous negotiations, preliminary drafts or prior versions of this Agreement, whether signed or unsigned, between the parties leading up to its execution and not set forth herein shall be used by any of the parties hereto to construe or affect the validity of this Agreement.  No representation, inducement, or condition other than set forth herein has been made or relied upon by any party.

(d)  This Agreement may be amended, extended or supplemented only by a written instrument executed on behalf of each of the parties hereto; provided however, that any party may at any time and from time to time waive in writing compliance by any other party with any provision hereof.

(e)  This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same Agreement.

(f)  The headings of the paragraphs in this Agreement are for convenience of reference only and are not to be used to interpret or construe any provisions of this Agreement.

-48-

MERI0064

(g)  This Agreement shall not be assignable by either of the parties hereto without the prior written authorization of the other and any attempted assignment without such written consent being first obtained is ineffective, null and void.

(h)  This Agreement shall be construed and governed in accordance with the laws of the Commonwealth of Pennsylvania.

(i)  All terms and provisions hereof shall be binding upon and shall inure to the benefit of and be enforceable by the successors and assigns of the parties hereto.

IN WITNESS WHEREOF, the Seller and Buyer have each executed this Agreement the day and year first above written.

Attest:

_____
Leonard P. Sayles, Secretary

SELLER:

MERIT METAL PRODUCTS CORPORATION

By: _____
       Leonard Wolberg, Chairman

Attest:

_____
Edwin J. Lutz, Secretary

BUYER:

STEFANOWICZ & LUTZ, INC.

By: _____
       A. Richard Stefanowicz, President

-49-

MERI0065

## CONSENT OF SHAREHOLDERS

In order to induce Buyer to enter into this Agreement and purchase Seller's Business and assets, and intending to be legally bound hereby, Leonard Wolberg and Leonard A. Sayles representing that they are the sole shareholders of Seller and hereby consent to and approve this Agreement and agree to be individually and jointly bound by the terms of this Agreement.

Witness: _____    _____ (SEAL)
                                          Leonard Wolberg

Witness: _____    _____ (SEAL)
                                          Leonard P. Sayles

-50-

MER10066