EXHIBIT 7

```
 1
 2                    United States District Court
                    Eastern District of Pennsylvania
 3                    Civil Action No. 02-3830
 4     _____
 5     Boarhead Farm Agreement Group
 6              plaintiff
                                            Oral Deposition of:
 7         V.                               John Leuzarder
                                            Volume II
 8     Advanced Environmental
       Technology Corporation,
 9     et als.,
                defendants
10     _____
11                    *   *   *   *   *
                    Monday, December 6, 2004
12                    *   *   *   *   *
13              Transcript in the above matter taken
       at the law offices of Wolff & Samson, 1 Boland
14     Drive, West Orange, New Jersey, commencing at
       9:00 a.m.
15
16
17
18
19
20
21
22
               CERTIFIED SHORTHAND REPORTING SERIVCES
23                    Arranged Through
                MASTROIANNI & FORMAROLI, INC.
24                  709 White Horse Pike
                  Audubon, New Jersey 08106
25                    (856) 546-1100
```

Page 161

1  waste disposal?
2  A.  I've heard it here, that that was the
3  case. So that has — that's all I know. I did
4  not handle that account.
5  Q.  Do you recall anything about their waste?
6  A.  No.
7  Q.  Do you recall who at AETC did handle
8  Diaz's account?
9  A.  I'm not sure.
10 Q.  Do you recall when they were a customer of
11 AETC —
12 A.  No.
13 Q.  Let me finish the question. Thank you.
14 Do you recall the name of the corporate entity
15 — strike that. What was the name of the
16 DeRewal corporate entity that AETC did business
17 with?
18     MR. SABINO: Time period, please.
19 Q.  '76, 1976.
20 A.  I think it was DeRewal Chemical. I see on
21 the correspondence another name here which I had
22 not remembered. That is Environmental Chemical
23 Control.
24 Q.  Let the record reflect that the witness is
25 looking at what was previously marked as

Page 162

1  Leuzarder exhibit number 4. Can you direct me
2  to a page, Mr. Leuzarder, that you are looking
3  at.
4  A.  I'm trying to find it because I looked
5  through the stuff when I was at home.
6  Q.  Can I direct your attention to AETC 178,
7  Bates number.
8  A.  Yes.
9  Q.  Do you see Environmental Chemical Control?
10 A.  There it is, yes.
11 Q.  Do you recall that Environmental Chemical
12 Control was a corporate entity with which
13 DeRewal was affiliated?
14 A.  Only supposing based on the fact this
15 asset was going to DeRewal, then Environmental
16 Chemical Control which I had not remembered or
17 recalled and this is under my signature, yes,
18 that had to be.
19 Q.  That had to be what?
20 A.  That had to be that DeRewal Chemical and
21 Environmental Chemical Control were the same
22 entity.
23 Q.  Do you recall why they were these separate
24 names for DeRewal's corporate entity?
25     MR. SABINO: Objection to the form

Page 163

1  of the question. How would he know what was
2  going on in other corporations. He doesn't have
3  that knowledge.
4  A.  No, I don't.
5  Q.  Do you know if when AETC originally
6  contracted with DeRewal he used the corporate
7  name DeRewal Chemical Company?
8  A.  I don't remember.
9  Q.  Do you recall that DeRewal switched his
10 corporation's name from DeRewal Chemical Company
11 to Environmental Chemical Control at some point?
12 A.  No, I don't remember.
13 Q.  Do you recall that AETC had some kind of
14 involvement in DeRewal's use of the name
15 Environmental Control Company?
16 A.  State that again, please.
17 Q.  Do you recall that AETC had some
18 involvement in DeRewal's use of the corporate
19 name Environmental Control Company?
20     MR. SABINO: Objection to the
21 form. It supposes there was some involvement.
22 The proper question is do you know whether or
23 not there was some involvement.
24 A.  And I do not.
25 Q.  Do you know if DeRewal's use of the

Page 164

1  corporate name Environmental Control Company had
2  anything to do with Ashland?
3      MR. SABINO: Objection to the form
4  of the question. How does he know what the
5  corporate mind of ECC or DeRewal was.
6  Q.  You can answer the question.
7  A.  Restate the question.
8  Q.  Do you know if DeRewal's use of the
9  corporate name Environmental Control Company —
10 A.  Environmental Chemical Control.
11 Q.  Environmental Chemical Company had
12 anything to do with Ashland Chemical Company?
13     MR. SABINO: Same objection.
14 A.  I don't know.
15 Q.  When you first started testifying today
16 you mentioned the name Gene Conlin.
17 A.  Junior. That's important.
18 Q.  Why is that important?
19 A.  Because there's a Gene Conlin, Senior who
20 is an owner of Jersey Sanitation. Gene Conlin,
21 Junior was his son. These men, Gene Conlin,
22 Senior and John Albert later got into trouble
23 with an organization called Chemical Control
24 Corporation and were — to the extent I don't
25 know but they got into a lot of trouble for what

Page 205
1  Q. Do you know anyone who worked in accounts
2  payable in 1977 for AETC?
3  A. No.
4  Q. I'm going to give you a document that was
5  previously marked Leuzarder 11.
6       MR. BIEDRZYCKI: We don't have a
7  10?
8       MS. MOONEY: No.
9  A. All right.
10 Q. Do you recognize this letter?
11 A. No.
12 Q. Is this your signature at the bottom?
13 A. Yes.
14 Q. Was Diamond Shamrock dash Carlstadt a
15 customer of AETC's?
16 A. I don't remember.
17 Q. What about Roche Belvidere?
18 A. I don't recall.
19 Q. Do you know if these companies ever became
20 customers of AETC's?
21 A. I don't know.
22 Q. Under number 2 in this letter where it
23 says Roche will be told materials is going to
24 Grows Landfill (can it or at least part). What
25 does that mean?

Page 206
1  A. I don't know. It says -- let's restate
2  that. It says trucks must be cleaned and neat
3  in appearance. Roche will be told materials are
4  going to Grows Landfill. Can or at least part,
5  and lime make-up. So some of the water needs to
6  go to lime make-up and some to Grows Landfill
7  for some reason, I don't know why it says that.
8  Q. Why it says?
9  A. Can it be or at least part. I don't know
10 why.
11 Q. I mean it seems to indicate that it's
12 not?
13 A. Or asking Mr. DeRewal whether or not this
14 can be arranged. I don't know why it says
15 that.
16 Q. Do you know where this waste was being
17 sent?
18 A. I don't know that we ever handled it.
19 Q. Why does the letter specify that trucks
20 must be clean and neat in appearance?
21 A. Because Hoffman and Roche is a
22 pharmaceutical company and the place was
23 spotless and they expect anyone to come in there
24 to be spotless too.
25 Q. Is that what they told you?

Page 207
1  A. As I recall. I had been to the plant once
2  that I remember. They made A and D, Vitamin E
3  and other things of that nature. I believe
4  Hoffman and Roche no matter where they were, any
5  of the pharmaceutical companies required a very,
6  very neat appearance on the equipment that came
7  in to service their needs.
8  Q. Do you recall specific conversations you
9  had with them about that?
10 A. No.
11 Q. Do you know why AETC was contacting
12 DeRewal for the disposal of these waste
13 materials?
14 A. We contacted a number of disposers. As
15 you can see on previous correspondence we talked
16 about like Modern Transportation and others. I
17 think what we would do is write to them giving
18 them a chemical description of the various
19 materials that were out there to try to come up
20 with the -- confirm a price he may have given us
21 and then we go back to the customer and because
22 we were brokers we would add something to that
23 price, go back to the customer and then give
24 them a price. Whether they accepted it or not
25 was a different story but we may have gone out

Page 208
1  to several disposers at the time with these
2  waste streams seeking to determine whether or
3  not who could handle it the most economical and
4  in the most economical way.
5  Q. So did AETC use DeRewal to handle wastes
6  other than acid related wastes?
7  A. I believe I testified earlier we did
8  handle some drum material that was able to be
9  recycled.
10 Q. So recyclable waste and acid waste were
11 those the only two types of waste?
12 A. Obviously we've seen two on the
13 correspondence that certain waste water
14 materials were used for lime make-up to
15 neutralize the acids.
16 Q. I'm going to give you what's been marked
17 as Leuzarder 12.
18 A. Okay.
19 Q. Do you know if at the time of this
20 invoice, May 28th, 1977, if Diaz was a customer
21 of AETC?
22 A. No.
23 Q. No, you don't know or no, they weren't?
24 A. No, I don't know. I did not have anything
25 to do with Diaz Chemical.

Page 225

1  Q. Were you ever asked to give any statements
2  to any government agencies concerning DeRewal
3  Chemical or Mr. DeRewal?
4  A. I vaguely remember being questioned by
5  somebody from Pennsylvania and perhaps the City
6  of Philadelphia about that in that time period,
7  but I can't remember any of the details.
8  Q. Were you ever subpoenaed to appear before
9  a grand jury?
10 A. No.
11 Q. Were you ever asked to give a deposition
12 by any government agency in connection with
13 DeRewal?
14 A. I believe so. This is what I'm saying, I
15 can remember having two individuals questioning
16 me about -- I'm not even sure it was about the
17 DeRewal situation. That's the problem. I've
18 had a number of depositions over the years about
19 things that occurred during my involvement with
20 AETC. I just am very, very vague.
21         MR. BIEDRZYCKI: That's all I
22 have. Thank you, sir.
23         MR. TROUBLEFIELD: No questions.
24         MS. MOONEY: No redirect.
25         (Deposition concluded)

Page 226

1         Certificate
2     I, Alan L. Lesky, a Notary Public and
3  Certified Shorthand Reporter of the State of New
4  Jersey and a Commissioner of Deeds of the State
5  of Pennsylvania, do hereby certify that prior to
6  the commencement of the examination,
7         John Leuzarder
8  was duly sworn by me to testify to the truth,
9  the whole truth and nothing but the truth.
10    I do further certify that the foregoing is
11 a true and accurate transcript of the testimony
12 as taken stenographically by and before me at
13 the time, place and on the date hereinbefore set
14 forth.
15    I do further certify that I am neither a
16 relative nor employee nor attorney nor counsel
17 of any of the parties to this action, and that I
18 am neither a relative nor employee of such
19 attorney or counsel and that I am not
20 financially interested in this action.
21
22 _____
    Alan L. Lesky, C.S.R.
23 Notary Public, State of New Jersey
    My Commission expires November 1, 2008
24 Certificate No. Xi730
    Date: December 8, 2004
25

# EXHIBIT 8



AETC130

# DeRewal Chemical Co., Inc.
P.O. BOX 56
REVERE, BUCKS COUNTY, PENNSYLVANIA 18953

**INVOICE No. 1388**

| INVOICE DATE | 3/19/77 |
|---|---|
| OUR ORDER NO. | |
| YOUR ORDER NO. | |
| TERMS | |
| SALESMAN | |
| F.O.B. | C.A.B.H. |
| SHIPPED VIA | |

**SHIPPED TO:**
Advanced Environmental Tech.
97 W. Hanover Ave.
Randolph, New Jersey 07801

| QUANTITY | DESCRIPTION | PRICE | AMOUNT | PPD. OR COLL. |
|---|---|---|---|---|
| 1 | load misc. drums per 10¢ | | $760.70 | |
| 38 | drums at $12.00 each | | 475.00 | |
| 3,000 | gal. loads acid removed per Ashland | $.35/gal | 2100.00 | |
| 4,000 | gal. loads Phthalic removed per Ashland | $.07/gal | 560.00 | |
| 5,500 | gal. loads wastewater removed per Ashland | $.07/gal | 770.00 | |
| | | | $4665.70 | |

000 3469

FORM 1400, REGENT FORMS, PENNSAUKEN, N.J. 08109

AETC132

ASHL00249

# INVOICE

No. 1402

**DeRewal Chemical Co., Inc.**
P. O. BOX 58
REVERE, BUCKS COUNTY, PENNSYLVANIA 18953

Ashland Chemical Co.
Alphano Road

Advanced Environmental Tech.
97 W. Hanover Ave.
Randolph, New Jersey  07801

Great Meadows N. J 07838

INVOICE DATE: 4/9/77
TERMS: net 10

| QUANTITY | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
|  | J.T. Baker  9 hrs. at $25.00 per. |  | $ 225.00 |
| 1 | 4,000 gal load waste water per Ashland | $.07/gal | 280.00 |
| 1 | 2,800 gal load acid removed per Ashland | .35/ga | 980.00 |
|  |  |  | $1485.00 |

Linda - Bill Ashland
water $.0875 per gallon = $ 350
Mixed Acid $.4473 per gallon   1252.44
                                1602.44

     1602
     1260
Remit $ 342.00
              $ 117.00

EXHIBIT 14

# EXHIBIT 9

A G R E E M E N T

THIS AGREEMENT made this      day of         , 1976 by and between ADVANCED ENVIROMENTAL TECHNOLOGY, INC., 97 West Hanover Avenue, Randolph, N. J. 07801 (hereinafter called "AETC" or "Contractor") and ASHLAND CHEMICAL COMPANY, Division of Ashland Oil, Inc., (hereinafter called "Ashland").

W I T N E S S E T H

The PARTIES HERETO mutually covenant and agree as follows:

1. The Contractor shall, as requested by the Plant Manager of Ashland's Plant located in the town of Great Meadows, County of Warren, State of New Jersey (hereinafter called "Plant") furnish and pay for all material, labor, power, equipment, transporation and all other items necessary to remove and properly dispose of certain chemical waste materials generated by the Plant including a blend of sulfuric and nitric acids. The Ashland Plant Manager shall specify which chemical waste materials Contractor is to remove which shall be agreeable to the Contractor.

2. Contractor shall secure all permits and licenses necessary for the accomplishment of the work to be done hereunder and shall comply with all local, state or federal laws, guidelines and regulations concerning the handling and disposal of such chemical waste materials. Contractor will furnish to Ashland true copies of the aforementioned permits and licenses upon written request by Ashland prior to beginning the work.


EXHIBIT
Curley-4
12-9-04 Cnc

AETC184

3. The aforesaid work will be performed in a good and workmanlike manner by qualified, careful, experienced and efficient workers in strict conformity with the best standard practices with all legal requirements.

4. In consideration for the Contractor undertaking and performing the work to be done hereunder, Ashland, agrees that all materials removed will become the property of the Contractor. Title to the material removed and risk of loss will pass to the Contractor upon completion of loading of the materials, IN AN "AS IS WHERE IS" CONDITION WITHOUT ANY WARRANTY OR REPRESENTATION WHATSOEVER (EXPRESSED OR IMPLIED) AS TO CONDITION OR FITNESS FOR ANY PURPOSE. Ashland also agrees to pay to the Contractor such sums as are specified on the Rate Schedule attached hereto and made a part hereof.

Notwithstanding the forgoing, Ashland, acknowledges responsibility for the proper identification, packaging and labeling of the chemical materials herein in compliance with applicable Federal, State and Local Laws or regulations (D.O.T., etc.) and shall indemnify AETC for all claims or liabilities resulting from their non-compliance or mis-compliance with the aforesaid laws or regulations.

5. It is agreed that the Contractor is an independent contractor for the performance of all work undertaken under this Agreement and for the accomplishment of the desired result, and that Ashland is to exercise and have no control whatsoever over the methods and means of such accomplishment, except that the Contractor, while on the property of Ashland, shall observe rules

AETC185

and regulations required by Ashland with respect to smoking, and other sources of vapor ignition and shall exercise due care and diligence to perform the work and to prevent any damage to property of Ashland or injury to persons including Ashland's Employees.

6. Contractor agrees to comply with the Federal Social Security Act, the State and Federal Unemployment Insurance Acts, the Wage and Hour Laws, any and all applicable Sales, Use and Gross Receipts Tax Laws and Regulations and all other laws and regulations; and the Contractor assumes exclusive liability for the reporting and payment of any and all contributions and taxes required thereby.

7. Each party agrees to indemnify and save harmless the other against and from any and all liabilities, losses, damages, costs, expenses (including reasonable attorney's fees), causes of action, suits, claims, and demands for judgments of any nature whatsoever a party may sustain as a result of the failure of the other party to comply with the provisions of this Agreement or resulting from or arising out of any negligent acts or omissions of the other party, its employees, and subcontractors in the performance of the work herein specified.

8. Contractor further agrees at his own expense to procure and keep in force insurance listed below and to furnish to Ashland certificates by a carrier acceptable to Ashland upon request. All certificates of insurance must be attested by a duly authorized representative of the Insurance Company and contain a statement that the insurance shall not be cancelled with-

AETC186

out ten (10) days written notice to the Insurance Division of Ashland at 1409 Winchester Avenue, Ashland, Kentucky:

(A) COMPENSATION AND EMPLOYER'S LIABILITY INSURANCE:

The Contractor shall take out and maintain during the life of this contract Workmen's Compensation and Employer's Liability Insurance complying with all statutory provisions for all of its employees to be engaged in work under this contract.

(B) BODILY INJURY LIABILITY AND PROPERTY DAMAGE LIABILITY INSURANCE:

The Contractor shall take out and maintain during the life of this contract, such Bodily Injury Liability and Property Damage Liability Insurance as shall protect it from claims for damages for personal injury, including accidental deaths, as well as from claims for property damage, which may arise from Contractors negligent operations under this contract, whether such operation be by itself or by any subcontractor or by anyone directly or indirectly employed by either of them, and the amounts of such insurance shall not be less than:

(i) Bodily Injury Liability Insurance, in an amount not less than $100,000.00 for injuries, including wrongful death to any one person, and subject to the same limit for each person in an amount not less than $300,000.00 on account of one accident.

(ii) Property Damage Insurance in an amount not less

than $100,000.00 for damages on account of any one accident.

9. If the work is unreasonably delayed, or any of the conditions of the Agreement are being willfully violated or executed carelessly, then Ashland or its representatives may notify the Contractor in writing and request that he immediately remedy the deficiency or delay; and, if the same shall not be remedied within forty-eight (48) hours of notice being received then Ashland may without prejudice to any other right or remedy terminate this Agreement.

. If within one week of being notified of the readiness of a given shipment of chemical wastes AETC does not remove the shipment or if any work is unreasonably delayed or any of the conditions of the Agreement are being willfully violated or executed carelessly, then Ashland or its representatives may notify AETC in writing and request that AETC immediately remedy the deficiency or delay, and, if the same shall not be remedied within forty-eight (48) hours of notice being received, then Ashland may, without prejudice, employ any other contractor or person to remove any or all of the quanity of waste material in the aforesaid order.

10. The Contractor shall cooperate fully with Ashland in performing the work to be done hereunder and shall NOT interfere with other operations at Ashland's Plant.

11. The terms, provisions, covenants, or conditions herein contained shall control in the event of any conflict with any provision, term, covenant, or condition in any other document executed

AETC188

between the parties. This Agreement constitutes the entire agreement between the parties and no addition to or modification of any of the provisions shall be binding unless made in writing and signed by a duly authorized representative of Ashland and Contractor.

12. Ashland acknowledges and recognizes that AETC will incur and sustain substantial capital equipment costs so that AETC can more properly preform its duties with respect to the distilling of the blend of sulfuric and nitric acids under this agreement. In further consideration of this Agreement and of AETC's promise to make the said investment Ashland shall, for a minimum period of six months from the date hereof, utilize the services of AETC exclusively for the disposal of any of its wastes containing sulfuric or nitric acids or blends of these two in accordance with the price quotes, annexed hereto as Exhibit A. Ashland acknowledges that it is required to use the sole services of AETC with respect to the disposal of its sulfuric and nitric acid wastes for this minimum period regardless of Ashland's ability subsequent to the date of signing to obtain a better price quotation then that set forth in Schedule A.

Ashland further agrees that subsequent to the expiration of this initial six (6) months period but prior to the expiration of this Agreement it will grant AETC the right of last refusal to meet any valid bid or price quotation with respect to the removal of any sulfuric or nitric acid blends by any other contractor. Ashland shall submit, in writing, all such other bids or quotations

AETC189

from other contractors to the offices of AETC and in the event that AETC cannot or will not meet the submitted bid or price within thirty (30) days of its submission then Ashland may terminate this agreement in whole or in part.

13. Subject to the non-cancellation provisions of paragraph 12 concerning sulfuric and nitric acid blends, this Agreement may be terminated by the Contractor or Ashland at any time by the delivery of written notice of the terminating party's intention so to terminate at least thirty (30) days prior to the effective date of such termination; provided, however, that any such termination shall not release either party from any of its obligations hereunder accruing prior to the effective date of termination.

WITNESS THE following signatures as of the day and year first above written.

ADVANCED ENVIRONMENTAL TECHNOLOGY, INC.         ASHLAND CHEMICAL COMPANY
                                                DIVISION OF ASHLAND OIL

By:_____            By:_____

Title:_____                    Title:_____
    Authorized Representative

AETC190