## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AGERE SYSTEMS, INC., CYTEC
INDUSTRIES, INC., FORD MOTOR
COMPANY, SPS TECHNOLOGIES, LLC and
TI GROUP AUTOMOTIVE SYSTEMS LLC,

              Plaintiffs,

v.

ADVANCED ENVIRONMENTAL
TECHNOLOGY CORPORATION, et al.,

              Defendants.

CIVIL ACTION

Case No. 02-cv-3830

Judge LeGrome D. Davis

---

## DEFENDANT AETC's BRIEF IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

WOLFF & SAMSON PC
Robert Carlton, Jr. (RC-25050)
Thomas Sabino (TS-4691)
One Boland Drive
West Orange, NJ 07052
(973) 325-1500
rcarlton@wolffsamson.com
tsabino@wolffsamson.com
Attorneys for Defendant, Advanced
Environmental Technology Corp.

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ................................................................................... 1

LEGAL ARGUMENT ................................................................................................. 3

COUNTER-STATEMENT OF FACTS ...................................................................... 3

A.    AETC Was Not Aware That DeRewal Was Secretly and Illegally Dumping
      Wastes at Boarhead Farms ............................................................................. 3

B.    AETC and Ashland Had No Written Contract ................................................. 3

C.    AETC and Ashland Never Entered Into Any Joint Venture ............................ 4

POINT I

      THE THIRD CIRCUIT'S MORON DECISION CONTROLS THE MOTIONS
      BEFORE THIS COURT ................................................................................... 5

POINT II

      AETC DID NOT MAKE THE .......................................................................... 7

POINT III

      AETC DID NOT "CONSTRUCTIVELY" OWN ITS CUSTOMERS WASTES ........... 11

      A.   AETC Never Exercised Control Over The Ashland and Diaz Wastes ..................... 12

POINT IV

      AETC's STATUS AS A BROKER DOES NOT MAKE IT A CERCLA
      ARRANGER ..................................................................................................... 18

      A.   The Pre-Morton "Broker" Cases ............................................................. 18

      B.   The Opinions of Messrs. Risi, Michelman and Healy Are Relevant
           and Admissible ....................................................................................... 20

POINT V

      AETC IS NOT LIABLE UNDER THE PENNSYLVANIA HAZARDOUS
      SITES CLEANUP ACT ................................................................................... 22

CONCLUSION ........................................................................................................... 23

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*American Cyanamid Company v. Capuano,*
381 F.3d 6 (1st Cir. 2004) ................................................................................8, 19, 20

*BP Amoco Chemical Company v. Sun Oil Company,*
316 F. Supp. 2d 166 (D.Del. 2004) ...........................................................................20

*CERCLA § 107(a)(3).,* [861 F. Supp. 951 ..................................................................13

*Chesapeake & Potomac Telephone v. Peck Iron & Metal Co.,*
814 F. Supp. 1293 (E.D.Va. 1993) .............................................................................7

*Concrete Sales and Services, Inc. v. Blue Bird Body Co.,*
211 F.3d 1333 (11 Cir. 2000) ......................................................................................6

*Gencorp, Inc. v. Olin Corp.,*
390 F.3d 433 (6th Cir. 2005), cert. denied, 126 S.Ct. 420 (2005) ...................................8

*General Electric Co. v. AAMCO Transmissions,*
962 F.2d 281 (2nd Cir. 1992) ...............................................................................8, 15

*Gould, Inc. v. A&M Battery and Tire Service,*
954 F. Supp. 1014 (M.D.Pa. 1997) .....................................................................18, 19

*Gould, Inc. v. A&M Battery and Tire Service,*
954 F. Supp. 1020 (M.D.Pa. 1997) .................................................................9, 18, 19

*Hassayampa Steering Committee v. Arizona,*
768 F. Supp. 697 (D.Az. 1991) ..........................................................................14, 15

*Morton International v. A.E. Staley Company, Inc.,*
343 F.3d 669 (3d Cir. 2003) ...................................................1, 5, 6, 7, 8, 11, 18, 19, 20

*Transport Leasing Company v. California,*
861 F. Supp. 931 (C.D.Ca. 1993) .......................................................................12, 13

*U.S. v. Aceto Agr. Chemicals Corp,*
872 F.2d 1373 (8th Cir. 1989) ...................................................................................16

*United States v. Bestfoods,*
524 U.S. 51 (1998) .....................................................................................................1
*United States v. Bliss,*
667 F. Supp. 1298 (E.D. Mo. 1987) .....................................................................16, 19

ii

*United States v. Bliss*,
668 F. Supp. 1298 (E.D.No. 1987) .......................................................................15

*United States v. Friedland*,
173 F. Supp. 2d 1077 (D.Co. 2001) ......................................................................15

*United States v. Mottolo*,
629 F. Supp. 546 (D.N.H. 1984) ...........................................................................15

*United States v. NEPACCO*,
810 F.2d 726 (8th Cir. 1986), cert. denied, 484 U.S. 848 (1987) ......................12, 13, 15

*United States v. New Castle County*,
727 F. Supp. 854 (D.Del. 1989) ...........................................................11, 12, 22

*United States v. North Landing Line Construction Co.*,
3 F. Supp. 2d 694 (E.D.Va. 1998) ..........................................................................7

*United States v. Pesses*, 794 F. Supp. 151 (W.D. Pa. 1992) .........................................9

*United States v. Shell Oil Company*, 294 F.3d 1045 (9th Cir. 2002), cert. denied, 537
U.S. 1147 (2003) ..........................................................................................13, 14

*Williams v. West Chester*,
891 F.2d 458 (3d Cir. 1990) .................................................................................21

## STATE CASES

*Emergency Technical*, 1993 WL. 210531, 1993 U.S. Dist. LEXIS 8018 ....................................19

*R.R. Street v. Pilgrim Enterprises*, 166 S.W.3d 232 (S.C. Tex. 2005) ..........................................15

## STATUTES

Fed.R.Evid. 410, 402 ........................................................................................20

Fed.R.Evid. 601, 602 ........................................................................................21

42 U.S.C. §9607(a)(3)........................................................................................11

## PRELIMINARY STATEMENT

In response to Defendant, Advanced Environmental Technology Corporation's ("AETC"), motion for summary judgment, Plaintiffs have cross-moved for partial summary judgment, seeking a ruling that AETC is a CERCLA "arranger". The pending motions present an issue of first impression – can a broker be held liable as a CERCLA "arranger" when the trucker it hired to transport wastes to a licensed facility instead illegally and secretly diverted some of that waste to an unlicensed site? The answer is no because AETC neither made the "critical decision" to send wastes to the unlicensed site, nor "exercised control" over the disposal of hazardous wastes at Boarhead Farms.

CERCLA liability, while broad, is not unlimited. The fundamental purpose of CERCLA is to make those "actually responsible" for pollution pay for the cleanup. United States v. Bestfoods, 524 U.S. 51, 55-56 (1998). AETC is not "actually responsible" for the pollution at Boarhead Farms because it did not make the "critical decision" to dump waste there, nor did it "exercise control" over the actual disposal. It would be unfair to force AETC to pay for the cleanup of a site used for "midnight dumping" when AETC contracted with DeRewal Chemical to take its customers' wastes to a licensed site in Philadelphia. The unique role of AETC in this case cannot and should not be forgotten:  AETC is neither a generator, transporter nor owner/operator.

Recognizing the foregoing, but ignoring the logical consequences of same, in their cross-motion, Plaintiffs instead deconstruct the Third Circuit's "arranger" decision in Morton International v. A.E. Staley Company, Inc., 343 F.3d 669 (3d Cir. 2003), turning each factor of that test upside down in their attempt to keep AETC in this case. First, AETC did not "control" the disposal of its customers' wastes. While AETC contracted to have its customers wastes

deposited in Philadelphia, DeRewal Chemical was secretly depositing some of those wastes at the Boarhead Farms Superfund site in rural Pennsylvania.    In reality, AETC had no control over the place and manner of the disposal of wastes.  In every case cited by Plaintiffs, the party held to be an "arranger" in fact controlled either the production process or the disposal process.  That is the key to AETC's non-liability here:  AETC lacked the critical control of the wastes that were disposed of surreptitiously at Boarhead Farms.

Second, Plaintiffs submit that AETC "constructively owned" the waste of its customers, even though AETC did not generate, transport or dispose of those wastes.  This "fiction" is merely a construct of the Plaintiffs to attempt to keep AETC in this case.   The case law on this issue is clear:  to "constructively own" waste, a party must actually "exercise control" over that waste.  It is undisputed that AETC did not exercise control over its customer's waste, which was picked by, transported and dumped by DeRewal Chemical truck drivers.   In the narrow circumstances presented by AETC's role in this case, AETC cannot be held to be a CERCLA "arranger".  Accordingly, Plaintiffs' cross-motion for summary judgment should be denied.

## COUNTER-STATEMENT OF FACTS

Plaintiffs improperly have not, in support of their cross-motion for partial summary judgment, submitted a Rule 56 Statement of Material Facts.  For the sake of clarity, AETC highlights a few critical undisputed facts:

## A.    AETC Was Not Aware That DeRewal Was Secretly and Illegally Dumping Wastes at Boarhead Farms

AETC's verbal agreement with DeRewal Chemical called for DeRewal to transport and deposit the Ashland & Diaz waste to Wissinoming Park in Philadelphia, and AETC understood that its customers waste was going to Philadelphia.  See Exhibit 1 at ¶2, Sabino Decl., Certification of AETC's President Robert Landmesser: "I understood that all of the liquid waste DeRewal Chemical collected from Ashland and Diaz was deposited at the Wissinoming Industrial Park ("Wissinoming') neutralization facility in Philadelphia."  This was confirmed by AETC's vice-president John Leuzarder at deposition:

Q.    Was the Wissinoming facility the only disposal site the DeRewal was
       using to AETC's knowledge?
A.    Yes.
Q.    Did AETC specify that the Wissinoming facility was to be used for the
       disposal of its customer's waste?
A.    I think it was more implied.  It was the only facility that we knew he had.
Q.    Did AETC ever ask DeRewal Chemical where it was disposing of waste?
A.    Again, it was implied by the fact that was his only facility.
Q.    To AETC's knowledge was DeRewal taking its customer's waste to the
       Wissinoming facility?
A.    Yes.   [Exhibit 3 at p.73, Sabino Decl.)

## B.    AETC and Ashland Had No Written Contract

On the issue of the unsigned contract between AETC and Ashland Chemical (Sabino Decl., Ex. 7), despite Plaintiffs' unsupported and disingenuous assertion (Pb16, n.16), the evidence is that AETC never signed that agreement.  Mr. Curley confirmed this fact back in October 19, 1976, by writing:  "I gave Leuzarder three signed copies of the contract our Law

3

Department had drawn up for wavier of liability. His hesitation tells me that he will sit on these for a while and we should not expect to receive the signed contract too soon, if at all." (Sabino Decl., Exhibit 8, p. 2.) Mr. Curley's 1976 memo is contemporaneous evidence the contract was never executed.

Thirty years later, at his deposition, Mr. Curley was confused at to who drafted the unsigned contract. (See Sabino Decl. Exhibit 9 at 146-48.) Clearly, Mr. Curley's 1976 is the more reliable evidence of who drafted said contract and why it was never signed. (Sabino Decl., Ex. 8.)

**C.    AETC and Ashland Never Entered Into Any Joint Venture**

Plaintiffs argue that AETC was more than a mere "broker" since it was to be in a joint venture with Ashland regarding the distillation of Ashland's wastes. (Pb19.) However, the September 29, 1976 letter referenced by Plaintiff to support this argument was a mere proposal that was never actualized, and thus is not evidence that AETC acted as more than a "broker":

> Q.    This document is a copy of a proposal that's signed – actually, its not signed by you. It is typed sincerely and there's a blank space and it says John B. Leuzarder, technical service rep. Do you know if this was ever signed by you?
> A.    I don't know.
>                  * * * * * *
> Q.    Can you describe how this proposal came about?
> A.    I'm dealing on in vague memory…But as I recall this never came to be.
> Q.    The proposal never came to be?
> A.    In other words, nothing was ever done. [Mooney Decl., Exhibit 2 at 119-121.]

**LEGAL ARGUMENT**

**POINT I**

**THE THIRD CIRCUIT'S MORON DECISION CONTROLS
THE MOTIONS BEFORE THIS COURT**

Plaintiffs implausible argument is that the Third Circuit's decision in Morton

International v. A.E. Staley Company, Inc., 343 F.3d 669 (3d Cir. 2003) is distinguishable

because it is limited to its facts. (Pb22-24.)   Specifically, Plaintiffs argue that AETC arranged

for the disposal of wastes and that "...Morton does not apply to an arrangement the principal

purpose of which is for the disposal of hazardous substances...Morton explored the frontiers of

CERCLA Section 107(a) (3) liability, namely, arrangement that are *not* on their face for the

treatment or disposal of hazardous substances." (Pb22 – emphasis in original.)   Nothing could

be further from the truth.

The Third Circuit expressly rejected the distinction between "Direct Arranger Liability"

(involving a transaction solely for the purpose of arranging the treatment or disposal of wastes)

and "Broader Arranger Liability":

> Accordingly, we see no need to draw a distinction between direct and broad
> (indirect) 'arranger liability'.   After all, there is only one category of 'arranger
> liability' under Section 107(a).   We believe that only one set of factors is required
> to analyze it.   [343 F.3d at 679, n6.]

Plaintiffs attempt to portray AETC as a "direct arranger" (Pb22) is meaningless.   Under Third

Circuit law there is "only one category of arranger". The standard for assessing whether a party

is a CERCLA "arranger" was "definitively address[ed]" in Morton.   343 F.3d at 675 and 675 n.4.

That standard is:

> In sum, we conclude that the analysis of 'arranger liability' under Section 107(a) (3)
> should focus on these principal factors: (1) ownership or possession of a material by
> the defendant; and (2) the defendant's knowledge that the processing of that material
> can or will result in the release of hazardous waste; or (3) the defendant's control over
> the production process. A plaintiff is required to demonstrate ownership or possession,

but liability cannot be imposes on that basis alone.  A plaintiff is also required to demonstrate either knowledge or control.  [343 F.3d at 679.]

These factors apply to every fact pattern presented to any court in the Third Circuit. Accordingly, it is application of the Morton factors that controls AETC's motion and Plaintiffs' cross-motion.

However, the Morton Court did not limit itself to the above-cited test: "We identify these factors to establish the base-line for analysis of 'arranger liability' in this Circuit.  It is certainly possible that other factors could be relevant to this analysis in an given case, and we encourage consideration of those as well."  343 F.3d at 679.  The Morton Court then identified numerous other factors that could be relevant, including "…whether the party made the 'critical decision' to place hazardous substances in the hands of a particular facility".  343 F.3d at 677, n5, citing Concrete Sales and Services, Inc. v. Blue Bird Body Co., 211 F.3d 1333, 1336-37 (11 Cir. 2000).

As set forth in Point II below, the fact that DeRewal Chemical secretly and illegally dumped wastes at Boarhead Farms is a factor that mitigates against AETC being considered a CERCLA "arranger" because AETC did not make the "critical decision" to send the Ashland and Diaz wastes to Boarhead Farms.

## POINT II

### AETC DID NOT MAKE THE "CRITICAL DECISION" TO DEPOSIT THE ASHLAND AND DIAZ WASTES AT BOARHEAD FARMS

As noted above, the <u>Morton</u> Court did not limit the factors to decide if a party is a CERCLA "arranger" to ownership, and knowledge and/or control.    The Third Circuit encouraged trial courts to consider other relevant factors as well.  <u>Morton</u>, 343 F.3d at 679.[1] Among those other factors is who made the "critical decision" to place hazardous wastes at a particular facility.  <u>Morton</u>, 343 F.3d 677, n5.

The "critical decision" test has been applied by a number of courts when deciding "arranger" liability.  <u>See</u> <u>e.g.</u>, <u>Chesapeake & Potomac Telephone v. Peck Iron & Metal Co.</u>, 814 F.Supp. 1293,  1301 (E.D.Va. 1993) (granting summary judgment to defendant N.C. Salvage since that defendant did not make the critical decision to send its batteries to the site at issue); <u>United States v. North Landing Line Construction Co.</u>, 3 F.Supp.2d 694,  701  (E.D.Va. 1998) (granting summary judgment to North Landing because the government could not prove that defendant "made the crucial decision" to send its PCB containing transformers to the subject site).

According to AETC's verbal agreement with DeRewal Chemical, the Ashland and Diaz wastes were to be disposed of at the Wissinoming Industrial Park in Philadelphia.  As sworn to by AETC's President Robert Landmesser: "I understood that all of the liquid waste DeRewal Chemical collected from Ashland and Diaz was deposited at the Wissinoming Industrial Park ("Wissinoming') neutralization facility in Philadelphia."  (<u>See</u> Exhibit 1 at ¶2, Sabino Decl.)  As

---

[1]  AETC does not seek to invoke CERCLA's "third-party defense" by this argument.  Instead, AETC asks this Court to consider the factor of who made the "critical decision" to send waste to Boarhead Farms in deciding whether AETC is a CERCLA "arranger".

noted previously, this was confirmed by AETC's vice-president John Leuzarder at his deposition. (See Exhibit 3 at p.73, Sabino Decl.)

CERCLA's liability scheme is not unlimited. To be liable, a party must be "actually responsible" for the subject pollution. AETC was not "actually responsible" for the pollution at Boarhead Farms. A review of the cases cited by Plaintiffs reveals that in every one, liability was assessed because the waste was sent to site contemplated by the parties. See e.g., American Cyanamid Company v. Capuano, 381 F.3d 6, 10 (1st Cir. 2004) ("In 1977, the Capuanos reached an agreement with Warren Picillo to dump hazardous waste on his pig farm."); Gencorp, Inc. v. Olin Corp., 390 F.3d 433, 437 (6th Cir. 2005), cert. denied, 126 S.Ct. 420 (2005), ("Plant operators hauled the waste to an offsite landfill, which eventually landed on the EPA's National Priority List of hazardous waste facilities…"); General Electric Co. v. AAMCO Transmissions, 962 F.2d 281, 282 (2nd Cir. 1992) ("…Wray transported various hazardous substances from General Electric's and other defendants' facilities to a storage site on Waite Road [the Waite Road site]. The State claimed that hazardous wastes stored at the Waite Road site…had leaked into the surrounding soil surface water and groundwater.")

The latitude given to trial courts by the Third Circuit to use other factors is consistent with the Morton Court's recognition of the underling Legislative intent of CERCLA to limit CERCLA liability to "those actually responsible" for harm to the environment. Morton, 343 F. 3d at 678 citing Bestfoods, 524 U.S. at 55-56. Here, AETC is not "actually responsible" for the pollution at Boarhead Farms. It did not generate, transport or actually dispose of its customers waste. Instead, it acted as the broker between its customers (Ashland Chemical and Diaz Chemical) and the trucker (DeRewal Chemical). That AETC did not make the "critical

decision" to deposit wastes at Boarhead Farms, is a significant factor that mitigates against finding that AETC is a CERCLA "arranger".

In <u>Gould, Inc. v. A&M Battery and Tire Service</u>, 954 F.Supp. 1020 (M.D.Pa. 1997), the court considered the very issue presented by the pending motions herein, under what circumstances could a "broker" be a CERCLA "arranger". Defendant Hudson Scrap, a broker of used batteries, moved for summary judgment, arguing that a "broker, as a matter of law, cannot be liable under CERCLA." 954 F. supp. at 1021. The court denied the motion because Hudson Scrap selected the Marjol site as the disposal site:

> As previously stated, Hudson Scrap decided to contact Marjol and not another site for the scrap dealers. This makes Hudson Scrap's argument that it cannot be liable because it did not have the authority and control over the selection of the site for disposal of the spent batteries unpersuasive. [954 F. Supp. at 1023.]

In contrast here, AETC did not select Boarhead Farms as a disposal site for the Ashland and Diaz waste. AETC contracted with DeRewal Chemical for disposal at the Wissinoming site in Philadelphia.

In <u>United States v. Pesses</u>, 794 F. Supp. 151 (W.D. Pa. 1992), the court held that the defendants were CERCLA arrangers even though they did not retain ownership of the materials which they sold and/or sent to the subject site. The <u>Pesses</u> court based its ruling upon the decision to send wastes to a site that handled hazardous substances: "The relevant inquiry is *who decided* to place the material into the hands of a facility containing hazardous substances." 794 F.Supp. at 157 (emphasis in original.)

Here, it was DeRewal Chemical, not AETC, who decided to illegally divert some of the Ashland and Diaz waste from the Philadelphia site to Boarhead Farms. This factor should be given considerable weight by this Court in deciding the instant motion. When considered along

with the other evidence, Plaintiffs' cross-motion should be denied and AETC's summary judgment motion granted.

## POINT III

## AETC DID NOT "CONSTRUCTIVELY" OWN ITS CUSTOMERS WASTES

To be held a CERCLA arranger in the Third Circuit, a party must either own or possess the wastes deposited at a subject site. As set forth in Morton, the applicable standard is:

> First, proof of ownership, or at least possession, of the hazardous substance is required by the plain language of the statute. See 42 U.S.C. §9607(a)(3) ('any person who…arranged for disposal or treatment…of hazardous substance *owned or possessed* by such person…'(emphasis added). This required factor is the starting point in determining 'arranger liability' because, of course, with ownership comes responsibility. [343 F.3d at 678, emphasis in original]

It is undisputed that AETC never actually possessed its customers wastes in 1976-77. (See Exhibit 2 to Sabino Decl., Plaintiffs Interrogatory Answer no. 5: "Plaintiff does not allege that trucks owned by AETC conveyed materials and/or hazardous substances to the Site…") Thus, the issue is whether AETC "owned" its customers wastes. Plaintiffs argue the legal fiction that AETC "constructively" owned its customers wastes. (Pb11-21.) However, every single case cited by the Plaintiffs is outside the Third Circuit. (Pb11-14, Pb19, Pb21.) Yet, there is Third Circuit case law regarding "constructive ownership" of wastes that provides useful guidance to this Court.

In United States v. New Castle County, 727 F. Supp. 854 (D.Del. 1989), the United States brought a CERCLA cost-recovery action against various defendants, who then filed a third-party complaint against the State of Delaware. On cross-motions for summary judgment regarding Delaware's "arranger" liability, the court found that Delaware did not constructively own or possess the hazardous waste even though it determined the type of waste permitted to be deposited, and approved the disposal of those wastes, at the subject facility. 757 F. Supp. at 873-

11

74. The New Caste court agreed with Eighth Circuit's decision in United States v. NEPACCO, 810 F.2d 726, 743 (8th Cir. 1986), cert. denied, 484 U.S. 848 (1987), that personal ownership or actual possession of waste was not necessary as a precondition for CERCLA, but that "constructive possession" also applies. 727 F. Supp. at 873. In its analysis, the New Castle court included the following analysis of the Eighth Circuit's "constructive possession" holding[2].

> This constructive possession is entirely consistent with the dictionary definition of 'possessed'. The plant supervisor, as the one who had actual control over the hazardous substances was a possessor. See e.g., Webster's Third New International Dictionary 1770 (1981) ('possessor' defined as one that occupies, holds owns *or controls*; 'possess' defined, inter alia, as "4a to take into one's possession: seize *or gain control* of...b: to inter into and influence powerfully *or control*; and 'possession' as '1a the act or condition of having in or taking into one's control'; and 'possessed' as 'held as on possession...influenced or controlled by something...' [727 F. Supp. at 873, n41 – emphasis in original.]

The foregoing is directly relevant to the issue before this court: what constitutes "constructive possession" of hazardous wastes? Using the New Castle decision as guidance, "constructive possession" can only arise when a party exercises control over the wastes. Here, it was the DeRewal Chemical drivers who exercised physical control over those wastes. Thus, AETC cannot be a CERCLA "arranger". Case law from other Circuits supports this position.

## A.    AETC Never Exercised Control Over The Ashland and Diaz Wastes

The "control" test set forth in New Castle is entirely consistent with the standard used in other Circuits. For example, in Transport Leasing Company v. California, 861 F. Supp. 931 (C.D.Ca. 1993) (discussed by Plaintiffs at Pb13), the court considered whether constructive ownership or possession of hazardous wastes is shown by "exercise of control" or the "authority to control". 861 F.Supp. at 950. The Transport Leasing court rejected the plaintiffs' argument

---

[2] The NEPACCO court held that the plant supervisor who exercised actual control over the plant's hazardous substances, had "constructive ownership" of them. 810 F.2d at 743.

that the looser "authority to control" standard was determinative and, instead, held that "exercise to control" was needed to establish constructive ownership or possession.  861 F.Supp. at 950-51:

> Focusing on authority to control makes governmental CERCLA defendants potentially liable regardless of their actual exercise of control of waste.  Examining the defendant cities' exercise of control is the correct means for judging whether defendant cities constructively owned or possessed waste within the meaning of CERCLA § 107(a)(3). [861 F.Supp. 951.]

Plaintiffs here are arguing application of the looser "authority to control" standard.  (See Pb28: "AETC controlled who would in fact haul away and dispose of those wastes").  That argument misses the critical point of the "control" issue.  While AETC chose the hauler, AETC never exercised control over the drivers and trucks that hauled the Ashland and Diaz wastes clandestinely to Boarhead Farms.

Other courts have agreed with the Transport Leasing court and have similarly held that the stricter "exercise of control", rather than the looser "authority to control", standard applies when deciding CERCLA "constructive ownership" issues.  In United States v. Shell Oil Company, 294 F.3d 1045 (9th Cir. 2002), cert. denied, 537 U.S. 1147 (2003), the Ninth Circuit applied the "exercise of control" standard to hold the United States was not an arranger: "In this case, no official or employee of the United States ever exercised actual control over any of the waste disposal at issue." 294 F.3d at 1057.

Shell Oil is also valuable for its discussion of United States v. Northeastern Pharmaceutical & Chemical Co., 810 F.2d 726 (8th Cir. 1986), cert. denied, 484 U.S. 848 (1987) ("NEPACCO") (cited at Pb 11, 14 & 29).  The defendants in Shell Oil relied upon NEPACCO to support their argument that mere "authority to control" was sufficient, i.e. that while the United Stated did not actually exercise actual control over the oil companies acid disposal, the United

13

States had "...ultimate authority to exercise such control. It *could* have exercised control over the disposal of the waste..." 294 F.3d at 1057 (emphasis in original). The Ninth Circuit rejected that argument:

> If authority to control the Oil Companies waste disposal were sufficient without more, as the Oil Companies contend, then we would agree that the United States was an arranger under § 9607(a)(3). However, we believe that the Oil Companies conception of 'authority to control' is based on an incorrect reading of NEPACCO. In NEPACCO, there was actual control exercised by the vice-president Lee, who gave permission to the plant supervisor to dispose of the waste at the farm...In this case, the United States neither exercised actual control, nor had the direct ability to control in the sense intended in NEPACCO. [294 F.3d at 1057.]

Similarly here, AETC never exercised actual control of the waste disposal process. It was the DeRewal Chemical supervisors and truck drivers who had actual control over whether the Ashland/Diaz waste was sent to Philadelphia as intended or was illegally diverted to Boarhead Farms. Indeed, AETC was not aware that its customers waste was being sent clandestinely to Boarhead Farms.

A concise summary of this issue was presented by the court in Hassayampa Steering Committee v. Arizona, 768 F.Supp. 697 (D.Az. 1991), wherein summary judgment was granted to the State of Arizona, dismissing the claim that it was an "arranger" since it neither had actual ownership nor possession of the waste nor had enough nexus to find it had constructive ownership:

> Other cases plaintiffs cite are more relevant to determining whether the State constructively owned or possessed the waste in this case. These cases relate to whether a party can become liable for waste the party never actually owned or possessed by virtue of the party's involvement with its disposal. In these cases, however, the alleged arrangers had been given authority by the actual waste owner, either as an employee of the owner corporation or as a broker paid by the owner, to decide on the owner's behalf where

and how the waste would be disposed of. NEPACCO, 810 F.2d at 744; United States v. Bliss, 668 F.Supp. 1298, 1306, (E.D.No. 1987); United States v. Mottolo, 629 F.supp. 546, 60 (D.N.H. 1984). The control such parties exercised over disposal of the waste amounted to constructive ownership of the waste. [768 F.supp. at 701.]

See also R.R. Street v. Pilgrim Enterprises, 166 S.W.3d 232, 244 (S.C. Tex. 2005) ("We believe that focusing on the degree of control an alleged arranger actually exercised over the method or manner of disposal provides some degree of uniformity under the law…"); United States v. Friedland, 173 F.Supp.2d 1077,1099-1100 (D.Co. 2001) (using "exercise of control" standard to hold that defendant Smith was not a CERCLA arranger);

The Second Circuit has also held that the "exercise of control" is the proper standard for analyzing "arranger" liability. In General Electric Co. v. AAMCO Transmissions, 962 F.2d 281 (2nd Cir. 1992) (cited by Plaintiffs at Pb11, 14 & 27), the court affirmed a ruling that certain oil companies were not CERCLA "arrangers" in connection with the disposal of their service station tenants' waste oil. Plaintiff General Electric argued that entities that "had the ability or authority to control the waste disposal practices of a third party" were CERCLA arrangers. The Second Circuit disagreed:

> The appellant's argument is appealing, but this court cannot conclude that by enacting § 9607(a)(3), Congress intended to hold any entity that merely had the opportunity or ability to control a third party's waste disposal practices as an entity that 'otherwise arranged for' disposal or transport of hazardous waste…Accordingly, this court concludes that it is the obligation to exercise control over hazardous waste disposal, and not the mere ability or opportunity to control the disposal of hazardous substances that makes an entity an arranger under CERCLA's liability provision. [962 F.2d at 286-87.]

Here, AETC arguably had the "opportunity" or "ability" to control the Ashland and Diaz wastes based upon its verbal agreements with them to have DeRewal Chemical haul their wastes

15

away. However, the actual obligation to exercise control over those wastes lay with DeRewal Chemical, who physically picked up and transported those wastes.

Plaintiffs repeated reliance upon United States v. Bliss, 667 F. Supp. 1298 (E.D. Mo. 1987) is misplaced since Bliss is an "authority to control" case rather than an "exercise to control case". See 667 F.Supp. at 1307 ("IPC had authority to control the place and manner of disposal...") As noted above, "exercise of control" is the proper standard for analyzing "arranger" liability in the "constructive ownership" context.

Plaintiffs also posit that, "AETC also had actual control over the disposition of the Ashland and Diaz wastes, at least up until the time it exercised that control by delegating the job to DeRewal." (Pb27.) This statement is completely unsupportable. As the middleman simply making phone calls between its customers and DeRewal Chemical, AETC never had physical control over the Ashland and Diaz wastes.

Moreover, Plaintiffs cite three cases for the proposition that a party can be liable as an "arranger" even if the waste was sent to a site other than the one contemplated. (Pb 27, n15.) Only one of those cases (U.S. v. Aceto Agr. Chemicals Corp, 872 F.2d 1373, 1381 (8th Cir. 1989)), actually stands for that proposition.[3] Critically, none of those cases deal with the issue of constructive ownership of hazardous wastes. Thus, they are beside the point since they do not deal with the specific issue of who actually exercised control over the disposal of the subject wastes.

Here AETC never had a written contract with DeRewal Chemical, merely a verbal understanding that DeRewal would take the wastes to the Wissinoming facility in Philadelphia. Thus, AETC had no contractual control over how DeRewal would deposit the Ashland and Diaz

---

[3] The cases cited in Aceto for this proposition (872 F.2d at 1381) deal with the liability of generators not arrangers and, thus, are inapposite.

wastes.  Such a relationship does not rise to the level of "exercise of control" necessary to show constructive ownership of waste.  Likewise, Plaintiffs' argument that the waste was "consigned" to AETC (Pb at 18) missed the critical point.  Consignment is a mere paper fiction that does not rise to the level of "exercise of control" over those wastes.

In sum, Plaintiffs' argument that AETC "constructively owned" the Ashland and Diaz wastes is supported by an imagined "house of cards".  This flimsy invention fails in reality since AETC never actually exercised control over the disposal of the Ashland and Diaz wastes.  The case law is clear that actual exercise of control over a party's wastes is needed in order for a Court to buy into the fiction of "constructive ownership".  Plaintiffs have not satisfied that burden.

## POINT IV

## AETC's STATUS AS A BROKER DOES NOT MAKE IT A CERCLA ARRANGER

A consistent theme of the Plaintiffs is that AETC's role as a broker is a mere "spin" that hides its true role as an "arranger". That argument is at odds with the facts of this case. AETC was a broker only, a true middleman that never handled any wastes.

### A.    The Pre-Morton "Broker" Cases

Several Pennsylvania courts have previously dealt with the issue of what circumstances resulted in a broker being held a CERCLA "arranger". However, those cases are no longer viable since they were based upon the now faulty premise that ownership or possession of the hazardous substance was not required for "arranger" liability. That is no longer the law in the Third Circuit. See Morton, 343 F.3d at 678.

In Gould, Inc. v. A&M Battery and Tire Service, 954 F.Supp. 1020 (M.D.Pa. 1997), defendant Hudson Scrap moved for summary judgment, arguing that it was not an "arranger" since it did not own or possess the spent batteries it brokered for other scrap dealers. 954 F. Supp. at 1023. The Gould court denied the motion and held that to require continuity of ownership would allow a party to escape by sale its responsibility for safe disposal. Id.

In Gould, Inc. v. A&M Battery and Tire Service, 954 F.Supp. 1014 (M.D.Pa. 1997), defendant Larami Metal similarly moved for summary judgment, arguing that it was not an "arranger". 954 F. Supp. at 1019-20. The Gould court rejected this argument: "It makes no difference whether Larami physically touched the spent batteries, for a party need not have actual control or ownership over the hazardous waste in order for § 107(a)(3) liability to attach." 954 F. Supp. at 1020.

In light of <u>Morton</u>, <u>supra</u>, the <u>Gould</u> cases no longer provide guidance on how to judge the liability of a broker alleged to be "arranger". Ownership and/or possession of hazardous wastes must now be proved in order to show "arranger" liability.

However, a look at the First Circuit "broker" case, <u>American Cyanamid Company v. Capuano</u>, 381 F.3d 6, 10 (1st Cir. 2004) (<u>cited</u> at Pb10, 11, 12 & 29), illustrates AETC's point that control of the actual waste disposal is needed for "arranger" liability based on constructive ownership to attach. In <u>Capuano</u>, the court held the Capuano Defendants, who acted as a broker, liable as a CERCLA "arranger":

> The Capuanos found a site, the Picillo pig farm, where hazardous waste could be dumped illegally. They then arranged for the waste to be picked up from various waste generators across New England and dumped on the illegal site. A broker should not be able to profit from such activity, much less escape liability. We therefore hold that a broker can be liable as an arranger if the broker can be liable as an arranger if the broker controls the disposal of the waste. [381 F.3d at 25.]

Using this criterion, AETC did not "constructively own" the Ashland/Diaz waste since (unlike the Capuano Defendants) AETC did not pick the Boarhead Farms site as a disposal site, did not direct any waste to be sent to Boarhead Farms and, thus, did not control the disposal of the Ashland/Diaz waste.

Moreover, the "broker" cases relied upon by the First Circuit in deciding the <u>Capuano</u> case are equally helpful here:

> There is a category of cases, however, that involves defendants similar to the Capuanos, brokers who arranged for a generator's waste to be disposed of illegally. <u>See</u> <u>Gould, Inc.</u>, 954 F.Supp. 1020 (a broker who arranged for the disposal of waste, made contact with the site, and received a profit is liable as an arranger; <u>Emergency Technical</u>, 1993 WL 210531, 1993 U.S. Dist. LEXIS 8018 (holding that a broker who was actively involved in the timing, manner and location of the disposal of hazardous substance could be liable as an arranger); <u>Bliss</u>, 667 F.Supp. 1298 (broker

liable as an arranger because controlled the place and manner of
disposal). [381 F.3d at 24-25.]

AETC does not fit into any of these broker categories. AETC did not contact the
Boarhead Farms site for use as a disposal site. AETC was not involved in the timing, manner
and use of Boarhead Farms as a disposal site. AETC did not control the place and manner of
disposal at Boarhead Farms.

Finally, while Plaintiffs portray BP Amoco Chemical Company v. Sun Oil Company,
316 F.Supp.2d 166 (D.Del. 2004) as irrelevant to the pending motions (Pb24), the contrary is
true. Sun Oil is directly germane as a decision by a court in the Third Circuit applying the
Morton "arranger" standard and holding that a party was not subject to arranger liability because
it did not own or possess the subject waste. That the defendant granted summary judgment was
a parent corporation is of little moment: the significance of Sun Oil is that a party who does not
own or possess waste cannot be an "arranger". For that reason, Plaintiffs' cross-motion for
partial summary judgment should be denied, and AETC's motion for summary judgment
granted.

**B.    The Opinions of Messrs. Risi, Michelman and Healy Are Relevant
and Admissible**

Plaintiffs argue that the deposition of testimony of Messrs. Risi, Michelman and Healy
are "irrelevant and inadmissible" on the issue of whether AETC was a waste "broker". (Pb 19.)
To the contrary, each of these gentlemen had first-hand dealings with AETC in the 1976-77 time
period and, as such, possess relevant and admissible knowledge that AETC acted as a "broker"
which should be considered by this Court.

The deposition testimony of these witnesses is admissible under Fed.R.Evid. 410, 402
and 403 since it is evidence having a tendency to make a fact of consequence more or less

probable.   See e.g., Williams v. West Chester, 891 F.2d 458, 466 (3d Cir. 1990) (demonstrating the relevance of testimony is a low threshold to meet).   Since whether AETC was truly only a broker (as compared to an "arranger")   is at issue in this case, testimony corroborating that AETC was a broker easily passes the relevance test.   Plaintiffs make no factual arguments attacking the credibility of Messrs. Risi, Michelman or Healy but merely conclude, without support, their testimony is irrelevant.

The deposition testimony of these witnesses is also competent under Fed.R.Evid. 601, 602 and 701.   The recollections of Messrs. Risi, Michelman or Healy that AETC was a broker was based on their own personal knowledge and, thus, is competent and admissible.   Indeed, as non-party witnesses who have no interest in the outcome of this litigation, their testimony should be given particularly credence.

## POINT V

## AETC IS NOT LIABLE UNDER THE PENNSYLVANIA HAZARDOUS SITES CLEANUP ACT

Plaintiffs submit that AETC should be liable under the Pennsylvania Hazardous Sites Cleanup Act ("PHSCA") for the same reason it is liable under CERCLA, i.e. AETC constructively owned or possessed its customers' waste. (Pb28-30.) However, as illustrated above, the issue of constructive ownership of waste is not a straightforward as Plaintiffs posit.

The true test for determining whether a party "constructively" owned or possessed hazardous waste is whether it actually exercised control over the disposal of that waste. Here AETC was powerless to exercise control over the disposal of the Ashland and Diaz waste. Despite the fact that AETC contracted with DeRewal Chemical to deposit the Ashland and Diaz waste in Philadelphia, AETC was not present when the DeRewal drivers actually picked up that waste and, occasionally, secretly and illegally drove it Boarhead Farms instead of Philadelphia. This is certainly not the "act or condition of having in or taking into one's control" . United States v. New Castle County, 727 F. Supp. 854, 873 n.4 (D.Del. 1989)

Accordingly, Plaintiffs' motion for partial summary judgment under the PHSCA should be denied.

22

## CONCLUSION

For the foregoing reasons, Defendant, Advanced Environmental Technology Corporation, respectfully requests that this Court deny Plaintiffs' cross-motion that AETC be considered a CERCLA "arranger" and grant AETC's motion for summary judgment as to all claims against it in the above-captioned matter.

WOLFF & SAMSON PC

Attorneys for Defendant, Advanced
Environmental Technology Corp.

By: _____
ROBERT CARLTON, JR. (25050)
THOMAS SABINO (6491)

Dated: October 16, 2006

23