**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

AGERE SYSTEMS, INC., et al.                      :
                                                 :
                              Plaintiffs          :       Civil Action No. 02-CV-3830
              v.                                 :       (Hon. Legrome D. Davis)
                                                 :
ADVANCED ENVIRONMENTAL                           :
TECHNOLOGY CORPORATION, et al.,                  :
                                                 :
                              Defendants.         :

**AMENDED ANSWER ASSERTING COMMON LAW**
**CROSS-CLAIMS OF DEFENDANT ASHLAND INC. AGAINST**
**DEFENDANT ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION**

Defendant Ashland Inc. (hereinafter, "Ashland"), by and through its attorneys, hereby

files its Amended Answer Asserting Common Law Cross-Claims against Defendant Advanced

Environmental Technology Corporation (hereinafter, "AETC").    Ashland incorporates by

reference as though set forth fully herein paragraphs 1 through 167 of its Answer and

Affirmative Defenses to Plaintiffs Fourth Amended Complaint, and asserts cross-claims against

AETC as follows:

**THE TESTIMONY OF AETC'S PRINCIPALS,**
**JOHN LEUZARDER AND ROBERT LANDMESSER**

168.    In July 1976, Robert Landmesser and John Leuzarder formed a company, AETC,

which was involved in the removal, transportation and disposal of chemical waste.    Mr.

Landmesser was AETC's President and Mr. Leuzarder was AETC's Vice-President.

169.    Between 1976 and 1978, AETC represented itself to state environmental

regulatory authorities as, quoting Mr. Landmesser verbatim, a "transporter of regulated

materials," including chemical waste.

170.    Mr. Landmesser has testified that the only means by which AETC could obtain a

state licensure or permit to transport chemical waste was to have an AETC vehicle that was

licensed to transport hazardous materials, including chemical waste, and that, as a result, AETC purchased a truck that was licensed in New Jersey.

171.    AETC's customers would ask AETC for, *inter alia,* its and its principals' expertise in packaging chemicals for hauling, which experience included not only waste disposal consulting, but actually packaging chemical waste at AETC's customers' sites so that the packages complied with regulatory guidelines.

172.    AETC's business also consisted of relationships which AETC solicited and created among three parties: (1) AETC; (2) AETC's customers; and (3) waste removers, haulers and disposers (hereinafter, collectively "waste disposers").

173.    AETC hired and paid waste disposers to safely remove, haul and dispose of chemical waste (hereinafter, collectively referred to as "disposal")_produced by AETC's customers.

174.    In and after 1976, one of AETC's waste disposers was Manfred DeRewal and his companies, Environmental Chemical Control and DeRewal Chemical Company (collectively, "DeRewal").

175.    Pursuant to AETC's agreement with it, DeRewal, for monetary consideration paid to it by AETC, removed chemical waste from AETC's customers' facilities for neutralization and/or disposal by DeRewal.

176.    During at least the period of August 1976 to March or April 1977, Ashland was a customer of AETC for the disposal of Ashland waste from Ashland's Great Meadows, New Jersey chemical facility.

2

177.    AETC hired DeRewal to pick up, remove, transport, process and/or dispose of certain chemical wastes from Ashland's Great Meadows facility.

178.    On certain dates in 1976 and 1977, DeRewal picked up, hauled, neutralized and disposed of certain chemical waste, including nitrating acid waste, from Ashland's Great Meadows facility.

## AETC EXERCISED CONTROL OVER ITS WASTE DISPOSERS

179.    Mr. Landmesser has testified as to the special expertise of the waste disposers who were hired by AETC to dispose of the chemical wastes of AETC's customers:

> We hired chemists and trained them to be truck drivers ... and also drive the truck back with the [chemical waste] materials." "So that when our [AETC's] people went out to a customer's facility they had people who were qualified to deal with the chemistry associated with the material along with the transportation aspect of it and also drive the truck back with the materials. They were a full Hazmat respondent.    These were very, very highly trained competent people who went to fire school, CPR training.  And we found it was easier to teach people who had a chemistry or biology background than to take truck drivers and try to make them chemists.

180.    AETC trained the waste disposers whom AETC hired beginning in 1976.

181.    AETC's training of its waste disposers included the completion of manifests for hauling hazardous wastes, licensing requirements, CPR, first aid, other emergency response procedures (in case there was a leak or a spill), and safety procedures.

182.    AETC's waste disposers were not direct employees of AETC, but were separate companies hired by AETC.

3

183.    It was not AETC's practice to have written contracts with its waste disposers and, during the period of 1976-1977, AETC had entered into oral agreements with its waste disposers.

184.    AETC hired DeRewal based, in part, on AETC's assessment of DeRewal's expertise in transporting and disposing of nitrating acid waste.

185.    AETC required documentation from its all of its waste disposers, specifically, insurance documentation and documentation required by state law for spill response.

186.    Mr. Landmesser has testified that it was "highly probable" that AETC had "standard protocol" for discussing with AETC's waste disposers "the risks associated with the type of waste that the waste disposer would be handling."

187.    AETC audited the sites of its waste disposers to insure that their permits and insurance were in place and in compliance with state regulations.

188.    AETC advised its waste disposers as to what they could and should do with AETC's customers' waste.

189.    The agreement between AETC and DeRewal also required DeRewal's work to comply with "appropriate state and federal regulations."

## AETC'S STANDARD PROCEDURE FOR MEMORIALIZING
## THE TERMS OF PLAINTIFFS' AGREEMENTS WITH ITS CUSTOMERS

190.    AETC's standard procedure was to send initial letters to its customers memorializing the services that AETC was offering to provide to its customers.

191.    AETC would customarily work with its customers' plant managers and corporate legal counsel to determine what type of waste disposal services AETC could provide to them, which services were confirmed by AETC in its initial letter to its customer.

4

192.    AETC's letters normally started off with a salutation and then described the services that AETC's waste disposers would provide, i.e., the packaging, removal transporting, and disposal of waste, including chemical waste.  These letters also explained AETC's desire that its customers comply with legal requirements by certifying that the waste materials were accurately described in waste information profiles.

193.    In most instances, AETC's letters to its customers would also identify the waste disposer to be hired by AETC to provide the waste disposal services AETC agreed to provide for its customers.

## AETC AND ASHLAND HAD AN AGREEMENT FOR THE REMOVAL, HAULING AND DISPOSAL BY AETC OF CERTAIN ASHLAND-GENERATED CHEMICAL WASTES

194.    In 1976, Ashland prepared and presented AETC with a proposed written agreement, a true and correct copy of which is attached hereto as Exhibit "A", providing that AETC would dispose of certain chemical wastes generated by Ashland at its Great Meadows facility and that Ashland would pay AETC for such disposal for an agreed price on a per gallon or per load basis.

195.    A signed version of the written agreement between Ashland and AETC has not been located.

196.    AETC and Ashland agreed that AETC would safely and legally pick up, transport and dispose of certain chemical wastes from Ashland's Great Meadows facility and that Ashland would pay AETC for such services.

197.    AETC performed the services required by its agreement with Ashland by having Ashland's wastes picked up, transported and disposed of by DeRewal, for which services

5

Ashland was billed by and for which it paid AETC.

## AETC BILLED AND WAS PAID BY ITS CUSTOMERS
## FOR THE HAULING AND DISPOSAL OF THEIR WASTES

198.    AETC's customers were billed by AETC for removing, hauling and disposing of their chemical wastes, which bills were paid by AETC's customers.

199.    AETC unilaterally hired and delegated to DeRewal the waste disposal services that AETC had agreed to provide to certain of its customers, including Ashland.

200.    AETC billed Ashland for the services delegated by AETC to DeRewal for the disposal of Ashland's waste.

201.    AETC agreed to and did pay  DeRewal for all such waste disposal services so delegated to DeRewal by AETC.

202.    DeRewal invoiced and was paid by AETC for the waste disposal services that DeRewal provided to AETC for the benefit of AETC and its customers, including the disposal of Ashland's wastes generated at its Great Meadows facility.

203.    AETC structured its separate relationships with its customers and its waste disposers so that its customers would not deal directly with its waste disposers.  As Mr. Leuzarder testified:

> You try to get the customer to understand that you are close to the disposer and you try to get the disposer to understand you're very close to the customer. So if we were writing it on the other way, we would say that our very close client relationship with Ashland Oil, in other words, **it was merely to avoid having Ashland go direct around us to Environmental Chemical Control**.

6

> See, the only thing that kept us going was not because we had disposal facilities or we had trucks or anything else, it was that we had found these people and that we were developing enough -- we had a relationship with the customer and a relationship with the disposer that **we were trying to stay in the middle and not be gone around. And there was no way to do that unless the customer continued to believe that we had a close relationship with the disposer and the disposer believed that we had a close relationship with the customer. They could literally eliminate us completely.**

204.    At no time relevant to this civil action were there any direct dealings or a relationship between DeRewal and AETC's customers, including Ashland.

205.    At the outset of its relationship with Ashland as a disposer of Ashland-generated wastes, AETC obtained from Ashland a written analysis of Ashland's waste, which analysis was provided by AETC to DeRewal. Mr. Leuzarder's testimony confirms this:

> Q.    But AETC specified that Ashland was to give this information to DeRewal?
>
> A.    Yes, DeRewal asked for it. We went to Fred -- we went to Art and said Fred needs this description of materials and so on and so forth to make arrangements for this relationship.

206.    Ashland either gave this analysis to AETC or sent the analysis to DeRewal.

207.    Ashland's representative, Art Curley, has testified that he was "sure" that Ashland provided AETC with samples of its waste streams "[o]n more than one occasion . . . . "More likely I [Curley] might have gotten them [AETC] a sample, Jake Young from the shipping department might have gotten them a sample and the lab might have gotten them a sample."

## ASHLAND'S CROSS-CLAIMS AGAINST AETC FOR CONTRACTUAL AND OTHER COMMON LAW CONTRIBUTION AND/OR INDEMNITY

### Count I – Breach of Written Contract

208.    Ashland hereby incorporates by reference, without admitting, all of the averments in Plaintiffs' Fourth Amended Complaint and, in doing so, specifically denies any liability on its part for any and all claims set forth in Plaintiffs' Fourth Amended Complaint and incorporates by reference herein the allegations and averments set forth in its Answer to Plaintiffs' Fourth Amended Complaint, as well as above paragraphs 168 through 207 of Ashland's within Amended Answer.

209.    Ashland and AETC agreed to the terms set forth in a written agreement between them, including, but not limited to, the indemnification and hold harmless provision thereof, a true and correct copy of which is attached hereto as Exhibit "A".

210.    This agreement set forth the essential terms by which AETC would provide, and Ashland would pay, AETC for the removal, hauling and disposal of Ashland's chemical waste from its Great Meadows facility.

211.    In 1976 and 1977 AETC provided waste disposal services to Ashland subject to the terms of this agreement.

212.    AETC hired and delegated to DeRewal the waste disposal services AETC agreed to provide to Ashland pursuant to the agreement between AETC and Ashland.

213.    Ashland paid AETC for the waste removal services provided by DeRewal at AETC's request.

214.    DeRewal invoiced and was paid by AETC, not Ashland, for the disposal of Ashland's chemical waste.

8

215.    AETC breached one or more duties owed to Ashland under their agreement, including, but not limited to, AETC's duty to provide, oversee and ensure the safe and legal disposal of Ashland's chemical waste.

216.    As a direct result of AETC's breach of its contractual duties, Ashland has suffered, and/or may or will suffer, resultant economic losses and/or other damages, including potential liability to Plaintiffs for contribution for the responses costs incurred and to be incurred by them in connection with the remediation of the site.

WHEREFORE, Defendant Ashland, Inc. denies any liability to any party to this civil action, and demands judgment in its favor, together with costs and attorney's fees, as follows:

(a)    If the allegations of Plaintiff's Fourth Amended Complaint are proven true and any liability to Plaintiffs be found, that such liability be adjudged solely that of Defendant AETC, not Ashland;

(b)    If any liability of Defendant Ashland, Inc. to Plaintiffs be found, that Defendant AETC be adjudged jointly and severally liable with Ashland and/or liable over to Ashland for contribution and/or indemnity for any such liability attributed to Ashland; and

(c)    Such further legal and equitable relief to which Ashland may be entitled.

<u>Count II – Breach of Oral Agreement</u>

217.    Ashland hereby incorporates by reference, without admitting, all of the averments in Plaintiffs' Fourth Amended Complaint and, in doing so, specifically denies any liability on its part for any and all claims set forth in Plaintiffs' Fourth Amended Complaint and incorporates by reference herein the allegations and averments set forth in its Answer to Plaintiffs' Fourth Amended Complaint, as well as above paragraphs 168 through 216 of Ashland's within

Amended Answer.

218.    Alternatively, in the event that it is determined that Ashland and AETC did not enter into the written agreement in the form attached hereto as Exhibit "A", then Ashland and AETC entered into an oral agreement whereby AETC agreed to provide safe and legal waste disposal services to Ashland for which Ashland agreed to pay AETC.

219.    Ashland and AETC each manifested its respective intent to be bound by the terms of their oral agreement, the terms of which included and are as set forth in the document attached hereto as Exhibit "A," including, but not limited to, the indemnification and hold harmless provision thereof.

220.    The terms of the aforesaid oral agreement were accepted and agreed to by AETC by its performance of such agreement, including:

(a)    AETC provided waste removal, hauling and disposal services to Ashland,

(b)    AETC hired DeRewal to remove, haul and dispose of Ashland's waste;

(c)    DeRewal removed, hauled and disposed of Ashland's waste;

(d)    DeRewal invoiced AETC for the removal, hauling and disposal of Ashland's waste;

(e)    AETC invoiced Ashland for the removal, hauling and disposal of Ashland's waste; and

(f)    Ashland paid AETC for the removal, hauling and disposal of Ashland's waste.

221.    In the event that any of Ashland's chemical waste was disposed of at the Site by AETC and/or DeRewal, such disposal was in breach of AETC's agreement to provide safe and legal waste disposal services to Ashland.

10

WHEREFORE, Defendant Ashland, Inc. denies any liability to any party to this civil action, and demands judgment in its favor, together with costs and attorney's fees, as follows:

   (a) If the allegations of Plaintiff's Fourth Amended Complaint are proven true and any liability to Plaintiffs be found, that such liability be adjudged solely that of Defendant AETC, not Ashland;

   (b) If any liability of Defendant Ashland, Inc. to Plaintiffs be found, that Defendant AETC be adjudged jointly and severally liable with Ashland and/or liable over to Ashland for contribution and/or indemnity for any such liability attributed to Ashland; and

   (c) Such further legal and equitable relief to which Ashland may be entitled.

Count III – Breach of Implied Contract

222. Ashland hereby incorporates by reference, without admitting, all of the averments in Plaintiffs' Fourth Amended Complaint and, in doing so, specifically denies any liability on its part for any and all claims set forth in Plaintiffs' Fourth Amended Complaint and incorporates by reference herein the allegations and averments set forth in its Answer to Plaintiffs' Fourth Amended Complaint, as well as above paragraphs 168 through 221 of Ashland's within Amended Answer.

223. In the event that it is determined that Ashland and AETC did not enter into a written or oral agreement, then Ashland and AETC entered into an implied agreement, whereby in consideration for the promised payment to it by Ashland, AETC agreed to provide safe and legal waste disposal services to Ashland.

224. AETC in fact provided waste disposal services to Ashland, including AETC's hiring of DeRewal to dispose of Ashland's waste.

11

225.    Ashland paid AETC for the waste removal services performed by DeRewal pursuant to the hiring agreement between AETC and DeRewal.

226.    In the event that any Ashland waste was disposed of at the Site, such disposal was the result of AETC's failure to perform its obligations under its implied agreement with Ashland to provide safe and legal waste disposal services to Ashland, including its obligation to ensure that DeRewal would safely and legally dispose of such waste at a proper, safe and legal site and in a proper, safe and legal manner.

227.    AETC's failure to ensure that DeRewal would provide safe, proper and legal waste disposal services constitutes a breach of the implied agreement between Ashland and AETC.

WHEREFORE, Defendant Ashland, Inc. denies any liability to any party to this civil action, and demands judgment in its favor, together with costs and attorney's fees, as follows:

(a)    If the allegations of Plaintiff's Fourth Amended Complaint are proven true and any liability to Plaintiffs be found, that such liability be adjudged solely that of Defendant AETC, not Ashland;

(b)    If any liability of Defendant Ashland, Inc. to Plaintiffs be found, that Defendant AETC be adjudged jointly and severally liable with Ashland and/or liable over to Ashland for contribution and/or indemnity for any such liability attributed to Ashland; and

(c)    Such further legal and equitable relief to which Ashland may be entitled.

### Count IV – Unjust Enrichment

228.    Ashland hereby incorporates by reference, without admitting, all of the averments in Plaintiffs' Fourth Amended Complaint and, in doing so, specifically denies any liability on its

part for any and all claims set forth in Plaintiffs' Fourth Amended Complaint and incorporates by reference herein the allegations and averments set forth in its Answer to Plaintiffs' Fourth Amended Complaint, as well as above paragraphs 168 through 227 of Ashland's within Amended Answer.

229.    Ashland paid AETC to provide safe and legal chemical waste disposal services.

230.    AETC retained the money paid by Ashland for the disposal of Ashland's chemical waste.

231.    In the event and to the extent that any of Ashland's waste was disposed of at the Site, such disposal was the result of AETC's failure to perform the services for which Ashland paid AETC, namely, the safe and legal disposal of Ashland's waste, whereby it would inequitable and unjust for AETC to retain the benefit of the money that Ashland paid to it without providing adequate consideration to Ashland in the form of safe and legal waste disposal services.

WHEREFORE, Defendant Ashland, Inc. denies any liability to any party to this civil action, and demands judgment in its favor, together with costs and attorney's fees, as follows:

(a)    If the allegations of Plaintiff's Fourth Amended Complaint are proven true and any liability to Plaintiffs be found, that such liability be adjudged solely that of Defendant AETC, not Ashland;

(b)    If any liability of Defendant Ashland, Inc. to Plaintiffs be found, that Defendant AETC be adjudged jointly and severally liable with Ashland and/or liable over to Ashland for contribution and/or indemnity for any such liability attributed to Ashland; and

(c)    Such further legal and equitable relief to which Ashland may be entitled.

Count V – Detrimental Reliance (Promissory Estoppel)

232.    Ashland hereby incorporates by reference, without admitting, all of the averments in Plaintiffs' Fourth Amended Complaint and, in doing so, specifically denies any liability on its part for any and all claims set forth in Plaintiffs' Fourth Amended Complaint and incorporates by reference herein the allegations and averments set forth in its Answer to Plaintiffs' Fourth Amended Complaint, as well as above paragraphs 168 through 231 of Ashland's within Amended Answer.

233.    AETC made an express promise and gave assurances to Ashland that AETC would accomplish, provide for and/or ensure the safe and legal disposal of Ashland's chemical waste.

234.    Ashland reasonably relied on such express promises and assurances by AETC in allowing its wastes to be removed and transported by AETC and DeRewal for the disposal thereof.

235.    In the event and to the extent that any of Ashland's waste was disposed of at the Site, such disposal was in breach of AETC's aforesaid promises and assurances.

WHEREFORE, Defendant Ashland, Inc. denies any liability to any party to this civil action, and demands judgment in its favor, together with costs and attorney's fees, as follows:

(a)    If the allegations of Plaintiff's Fourth Amended Complaint are proven true and any liability to Plaintiffs be found, that such liability be adjudged solely that of Defendant AETC, not Ashland;

(b)    If any liability of Defendant Ashland, Inc. to Plaintiffs be found, that Defendant AETC be adjudged jointly and severally liable with Ashland and/or liable over to

Ashland for contribution and/or indemnity for any such liability attributed to Ashland; and

(c)      Such further legal and equitable relief to which Ashland may be entitled.

## Count VI – Fraud in the Inducement

236.    Ashland hereby incorporates by reference, without admitting, all of the averments in Plaintiffs' Fourth Amended Complaint and, in doing so, specifically denies any liability on its part for any and all claims set forth in Plaintiffs' Fourth Amended Complaint and incorporates by reference herein the allegations and averments set forth in its Answer to Plaintiffs' Fourth Amended Complaint, as well as above paragraphs 168 through 235 of Ashland's within Amended Answer.

237.    AETC made material misrepresentations and omissions of fact to Ashland as to AETC's purportedly close relationship with, and the history, capability and reputation of, DeRewal with respect to its waste removal, hauling and disposal activities and experience.

238.    AETC did not, in fact, have a close relationship with DeRewal and knew, or should have known, that DeRewal had a history of improper, unsafe and illegal waste disposal activities, which facts AETC intentionally and/or negligently failed to disclose to Ashland.

239.    AETC's aforesaid misrepresentations and non-disclosures were made with the intent of inducing Ashland to rely thereon and enter into an agreement with AETC for AETC to provide waste disposal services for a fee to be paid by Ashland.

240.    Ashland justifiably and reasonably relied on AETC's aforesaid misrepresentations and omissions, as a result of which Ashland entered into a waste disposal agreement with AETC and allowed AETC to hire DeRewal to perform the waste disposal services AETC had agreed to perform for Ashland.

241.    In the event and to the extent that any of Ashland's chemical waste was disposed of at the Site, such disposal was the result of AETC's aforementioned misrepresentations and omissions which induced Ashland to enter into a waste disposal agreement with AETC and to allow AETC to hire DeRewal to perform such waste disposal services that AETC agreed to perform for Ashland.

WHEREFORE, Defendant Ashland, Inc. denies any liability to any party to this civil action, and demands judgment in its favor, together with costs and attorney's fees, as follows:

(a)    If the allegations of Plaintiff's Fourth Amended Complaint are proven true and any liability to Plaintiffs be found, that such liability be adjudged solely that of Defendant AETC, not Ashland;

(b)    If any liability of Defendant Ashland, Inc. to Plaintiffs be found, that Defendant AETC be adjudged jointly and severally liable with Ashland and/or liable over to Ashland for contribution and/or indemnity for any such liability attributed to Ashland; and

(c)    Such further legal and equitable relief to which Ashland may be entitled.

### Count VII – Failure to Exercise Reasonable Care and Control over Contractor/Agent (Restatement (Second) of Torts § 317)

242.    Ashland hereby incorporates by reference, without admitting, all of the averments in Plaintiffs' Fourth Amended Complaint and, in doing so, specifically denies any liability on its part for any and all claims set forth in Plaintiffs' Fourth Amended Complaint and incorporates by reference herein the allegations and averments set forth in its Answer to Plaintiffs' Fourth Amended Complaint, as well as above paragraphs 168 through 241 of Ashland's within Amended Answer.

243.    In connection with its hiring of DeRewal, AETC was under a duty to exercise careful and reasonable care and control over DeRewal to ensure that DeRewal would properly, safely and legally dispose of Ashland's chemical waste.

244.    DeRewal was acting as the agent and/or servant of AETC when DeRewal removed, hauled and disposed of Ashland's chemical waste.

245.    As DeRewal's principal, AETC had the right, obligation, ability and duty to carefully and reasonably control DeRewal and its waste disposal activities to ensure that DeRewal would safely and legally dispose of Ashland's chemical waste.

246.    AETC knew or should have known of the necessity for it to exercise careful and reasonable control over DeRewal's waste disposal activities.

247.    In the event and to the extent that any Ashland chemical waste was disposed of at the Site, such disposal was the result of AETC's negligent failure to exercise careful and reasonable control over DeRewal to ensure that DeRewal would safely and legally dispose of Ashland's chemical waste.

WHEREFORE, Defendant Ashland, Inc. denies any liability to any party to this civil action, and demands judgment in its favor, together with costs and attorney's fees, as follows:

(a)    If the allegations of Plaintiff's Fourth Amended Complaint are proven true and any liability to Plaintiffs be found, that such liability be adjudged solely that of Defendant AETC, not Ashland;

(b)    If any liability of Defendant Ashland, Inc. to Plaintiffs be found, that Defendant AETC be adjudged jointly and severally liable with Ashland and/or liable over to Ashland for contribution and/or indemnity for any such liability attributed to Ashland; and

17

(c)    Such further legal and equitable relief to which Ashland may be entitled.

## Count VIII – Negligent Hiring/Breach of Fiduciary Duty

248.    Ashland hereby incorporates by reference, without admitting, all of the averments in Plaintiffs' Fourth Amended Complaint and, in doing so, specifically denies any liability on its part for any and all claims set forth in Plaintiffs' Fourth Amended Complaint and incorporates by reference herein the allegations and averments set forth in its Answer to Plaintiffs' Fourth Amended Complaint, as well as above paragraphs 168 through 247 of Ashland's within Amended Answer.

249.    In the event and to the extent that AETC may be determined to have been acting as a broker between Ashland and DeRewal in connection with DeRewal's disposal of Ashland's chemical waste, then at all times material and relevant to the events set forth in Plaintiffs' Fourth Amended Complaint AETC was acting as an agent of Ashland.

250.    As an agent for Ashland, AETC owed Ashland fiduciary duties of loyalty, trust and reasonable care to Ashland in the performance of its agency.

251.    As an agent of Ashland, AETC breached its fiduciary duties of loyalty, trust and reasonable care to Ashland in the performance of its agency.

252.    Upon information and belief, AETC knew or should have known about DeRewal's history of unsafe and illegal disposal of chemical waste prior to its hiring and re-hiring of DeRewal to remove, haul and dispose of Ashland's waste.

253.    AETC owed a duty of loyalty, trust and reasonable care to Ashland to hire a competent, qualified, and safe chemical waste disposer for the proper disposal of Ashland's chemical waste.

18

254.    AETC breached its duties to Ashland by hiring DeRewal who, unbeknownst to Ashland, was incompetent, unfit, and dangerous.

255.    In the event and to the extent that any of Ashland's chemical waste was disposed of at the Site, such disposal was the result of AETC's aforesaid breaches of its duty to Ashland.

WHEREFORE, Defendant Ashland, Inc. denies any liability to any party to this civil action, and demands judgment in its favor, together with costs and attorney's fees, as follows:

(a)    If the allegations of Plaintiff's Fourth Amended Complaint are proven true and any liability to Plaintiffs be found, that such liability be adjudged solely that of Defendant AETC, not Ashland;

(b)    If any liability of Defendant Ashland, Inc. to Plaintiffs be found, that Defendant AETC be adjudged jointly and severally liable with Ashland and/or liable over to Ashland for contribution and/or indemnity for any such liability attributed to Ashland; and

(c)    Such further legal and equitable relief to which Ashland may be entitled.

### Count IX – Negligent Supervision/Breach of Fiduciary Duty

256.    Ashland hereby incorporates by reference, without admitting, all of the averments in Plaintiffs' Fourth Amended Complaint and, in doing so, specifically denies any liability on its part for any and all claims set forth in Plaintiffs' Fourth Amended Complaint and incorporates by reference herein the allegations and averments set forth in its Answer to Plaintiffs' Fourth Amended Complaint, as well as above paragraphs 168 through 255 of Ashland's within Amended Answer.

257.    Pursuant to AETC's express and implied promises and assurances to Ashland that AETC would provide for the safe and legal disposal of Ashland's chemical waste, AETC had a

19

duty to supervise its contractors, including DeRewal, whom it hired to provide hauling and waste disposal services for Ashland, to ensure that its contractors would and were disposing of Ashland's chemical waste at a safe, proper and legal site and in a safe, proper and legal manner.

258.    AETC breached its duty of supervision over DeRewal by negligently failing to adequately and properly supervise DeRewal and DeRewal's waste disposal activities.

259.    In the event and to the extent that any of Ashland's chemical waste was disposed of at the Site, such disposal was the result of AETC's aforesaid breach of its duty to adequately and properly supervise DeRewal and DeRewal's waste disposal activities.

WHEREFORE, Defendant Ashland, Inc. denies any liability to any party to this civil action, and demands judgment in its favor, together with costs and attorney's fees, as follows:

(a)    If the allegations of Plaintiff's Fourth Amended Complaint are proven true and any liability to Plaintiffs be found, that such liability be adjudged solely that of Defendant AETC, not Ashland;

(b)    If any liability of Defendant Ashland, Inc. to Plaintiffs be found, that Defendant AETC be adjudged jointly and severally liable with Ashland and/or liable over to Ashland for contribution and/or indemnity for any such liability attributed to Ashland; and

(c)    Such further legal and equitable relief to which Ashland may be entitled.

### Count X – Negligent Retention/Breach of Fiduciary Duty

260.    Ashland hereby incorporates by reference, without admitting, all of the averments in Plaintiffs' Fourth Amended Complaint and, in doing so, specifically denies any liability on its part for any and all claims set forth in Plaintiffs' Fourth Amended Complaint and incorporates by reference herein the allegations and averments set forth in its Answer to Plaintiffs' Fourth

Amended Complaint, as well as above paragraphs 168 through 259 of Ashland's within Amended Answer.

261.    AETC hired DeRewal to remove, haul and dispose of chemical waste for its customers, including Ashland.

262.    AETC had knowledge, actual or constructive, that DeRewal would not and/or was not safely and legally disposing of Ashland's chemical waste.

263.    AETC had a duty to retain only competent, qualified, and safe contractors and personnel to safely dispose of Ashland's chemical waste.

264.    AETC breached its duty by hiring DeRewal to dispose of Ashland's chemical waste.

265.    In the event and to the extent that any of Ashland's chemical waste was disposed of at the Site, such disposal was the result of AETC's negligent acts and omissions in retaining an incompetent, unfit, and dangerous entity to dispose of Ashland's chemical waste.

WHEREFORE, Defendant Ashland, Inc. denies any liability to any party to this civil action, and demands judgment in its favor, together with costs and attorney's fees, as follows:

(a)    If the allegations of Plaintiff's Fourth Amended Complaint are proven true and any liability to Plaintiffs be found, that such liability be adjudged solely that of Defendant AETC, not Ashland;

(b)    If any liability of Defendant Ashland, Inc. to Plaintiffs be found, that Defendant AETC be adjudged jointly and severally liable with Ashland and/or liable over to Ashland for contribution and/or indemnity for any such liability attributed to Ashland; and

(c)    Such further legal and equitable relief to which Ashland may be entitled.

_____

RICHARD C. BIEDRZYCKI, ESQUIRE
Attorney I.D. No. 30604
JEFFREY L. PETTIT, ESQUIRE
Attorney I.D. No. 21624
BRENT A. COSSROW, ESQUIRE
Attorney I.D. No. 88361
PHELAN, PETTIT & BIEDRZYCKI
121 South Broad Street
Suite 1600
Philadelphia, PA 19107
(215) 546-0500

Counsel for Defendant Ashland Inc.

Date:  October 31, 2006

G:\DATA\1357-29\Pldgs\AmdAnswer-4thAmdCmplt-NMCC-FINAL[2].doc

22

# EXHIBIT A

A G R E E M E N T

THIS AGREEMENT made this .. day of        , 1976
by and between ADVANCED ENVIROMENTAL TECHNOLOGY, INC., 97 West
Hanover Avenue, Randolph, N. J.  07801 (hereinafter called "AETC"
or "Contractor") and ASHLAND CHEMICAL COMPANY, Division of Ash-
land Oil, Inc., (hereinafter called "Ashland").

W I T N E S S E T H

The PARTIES HERETO mutually covenant and agree as follows:

1.  The Contractor shall, as requested by the Plant
Manager of Ashland's Plant located in the town of Great Meadows,
County of Warren, State of New Jersey (hereinafter called "Plant")
furnish and pay for all material, labor, power, equipment, trans-
poration and all other items necessary to remove and properly dis-
pose of certain chemical waste materials generated by the Plant
including a blend of sulfuric and nitric acids.  The Ashland Plant
Manager shall specify which chemical waste materials Contractor
is to remove which shall be agreeable to the Contractor.

2.  Contractor shall secure all permits and licenses
necessary for the accomplishment of the work to be done hereunder
and shall comply with all local, state or federal laws, guidelines
and regulations concerning the handling and disposal of such chem-
ical waste materials.  Contractor will furnish to Ashland true copies
of the aforementioned permits and licenses upon written request
by Ashland prior to beginning the work.



EXHIBIT
Curley-4
12-9-04 Cac

AETC184

3.  The aforesaid work will be performed in a good and workmanlike manner by qualified, careful, experienced and efficient workers in strict conformity with the best standard practices with all legal requirements.

4.  In consideration for the Contractor undertaking and performing the work to be done hereunder, Ashland, agrees that all materials removed will become the property of the Contractor. Title to the material removed and risk of loss will pass to the Contractor upon completion of loading of the materials, IN AN "AS IS WHERE IS" CONDITION WITHOUT ANY WARRANTY OR REPRESENTATION WHATSOEVER (EXPRESSED OR IMPLIED) AS TO CONDITION OR FITNESS FOR ANY PURPOSE.  Ashland also agrees to pay to the Contractor such sums as are specified on the Rate Schedule attached hereto and made a part hereof.

Notwithstanding the forgoing, Ashland, acknowledges responsibility for the proper identification, packaging and labeling of the chemical materials herein in compliance with applicable Federal, State and Local Laws or regulations (D.O.T., etc.) and shall indemnify AETC for all claims or liabilities resulting from their non-compliance or mis-compliance with the aforesaid laws or regulations.

5.  It is agreed that the Contractor is an independent contractor for the performance of all work undertaken under this Agreement and for the accomplishment of the desired result, and that Ashland is to exercise and have no control whatsoever over the methods and means of such accomplishment, except that the Contractor, while on the property of Ashland, shall observe rules

AETC185

and regulations required by Ashland with respect to smoking, and other sources of vapor ignition and shall exercise due care and diligence to perform the work and to prevent any damage to property of Ashland or injury to persons including Ashland's Employees.

6.    Contractor agrees to comply with the Federal Social Security Act, the State and Federal Unemployment Insurance Acts, the Wage and Hour Laws, any and all applicable Sales, Use and Gross Receipts Tax Laws and Regulations and all other laws and regulations; and the Contractor assumes exclusive liability for the reporting and payment of any and all contributions and taxes required thereby.

7.    Each party agrees to indemnify and save harmless the other against and from any and all liabilities, losses, damages, costs, expenses (including reasonable attorney's fees), causes of action, suits, claims, and demands for judgments of any nature whatsoever a party may sustain as a result of the failure of the other party to comply with the provisions of this Agreement or resulting from or arising out of any negligent acts or omissions of the other party, its employees, and subcontractors in the performance of the work herein specified.

8.    Contractor further agrees at his own expense to procure and keep in force insurance listed below and to furnish to Ashland certificates by a carrier acceptable to Ashland upon request. All certificates of insurance must be attested by a duly authorized representative of the Insurance Company and contain a statement that the insurance shall not be cancelled with-

AETC186

out ten (10) days written notice to the Insurance Division of
Ashland at 1409 Winchester Avenue, Ashland, Kentucky:

(A) COMPENSATION AND EMPLOYER'S LIABILITY INSURANCE:

The Contractor shall take out and maintain during
the life of this contract Workmen's Compensation
and Employer's Liability Insurance complying with
all statutory provisions for all of its employees
to be engaged in work under this contract.

(B) BODILY INJURY LIABILITY AND PROPERTY DAMAGE
LIABILITY INSURANCE:

The Contractor shall take out and maintain during
the life of this contract, such Bodily Injury
Liability and Property Damage Liability Insurance
as shall protect it from claims for damages for
personal injury, including accidental deaths, as
well as from claims for property damage, which may
arise from Contractors negligent operations under
this contract, whether such operation be by itself
or by any subcontractor or by anyone directly or
indirectly employed by either of them, and the
amounts of such insurance shall not be less than:

(1) Bodily Injury Liability Insurance, in an amount
not less than $100,000.00 for injuries, including
wrongful death to any one person, and subject to
the same limit for each person in an amount not
less than $300,000.00 on account of one accident.

(ii) Property Damage Insurance in an amount not less

AETC187

than $100,000.00 for damages on account of any
one accident.

9.  If the work is unreasonably delayed, or any of the
conditions of the Agreement are being willfully violated or exe-
cuted carelessly, then Ashland or its representatives may notify
the Contractor in writing and request that he immediately remedy
the deficiency or delay; and, if the same shall not be remedied
within forty-eight (48) hours of notice being received then Ashland
may without prejudice to any other right or remedy terminate this
Agreement.

If within one week of being notified of the readiness
of a given shipment of chemical wastes AETC does not remove the
shipment or if any work is unreasonably delayed or any of the
conditions of the Agreement are being willfully violated or ex-
ecuted carelessly, then Ashland or its representatives may notify
AETC in writing and request that AETC immediately remedy the
deficiency or delay, and, if the same shall not be remedied within
forty-eight (48) hours of notice being received, then Ashland
may, without prejudice, employ any other contractor or person to
remove any or all of the quanity of waste material in the afore-
said order.

10.  The Contractor shall cooperate fully with Ashland
in performing the work to be done hereunder and shall NOT interfere
with other operations at Ashland's Plant.

11.  The terms, provisions, covenants, or conditions herein
contained shall control in the event of any conflict with any pro-
vision, term, covenant, or condition in any other document executed

AETC188

between the parties.  This Agreement constitutes the entire
agreement between the parties and no addition to or modification
of any of the provisions shall be binding unless made in writing
and signed by a duly authorized representative of Ashland and
Contractor.

12.  Ashland acknowledges and recognizes that AETC will
incur and sustain substantial capital equipment costs so that
AETC can more properly preform its duties with respect to the
distilling of the blend of sulfuric and nitric acids under this
agreement.  In further consideration of this Agreement and of
AETC's promise to make the said investment Ashland shall, for
a minimum period of six months from the date hereof, utilize
the services of AETC exclusively for the disposal of any of its
wastes containing sulfuric or nitric acids or blends of these
two in accordance with the price quotes, annexed hereto as Exhibit
A.  Ashland acknowledges that it is required to use the sole
services of AETC with respect to the disposal of its sulfuric
and nitric acid wastes for this minimum period regardless of
Ashland's ability subsequent to the date of signing to obtain a
better price quotation then that set forth in Schedule A.

Ashland further agrees that subsequent to the expiration
of this initial six (6) months period but prior to the expiration
of this Agreement it will grant AETC the right of last refusal to
meet any valid bid or price quotation with respect to the removal
of any sulfuric or nitric acid blends by any other contractor.
Ashland shall submit, in writing, all such other bids or quotations

AETC189

from other contractors to the offices of AETC and in the event that AETC cannot or will not meet the submitted bid or price within thirty (30) days of its submission then Ashland may terminate this agreement in whole or in part.

13.  Subject to the non-cancellation provisions of paragraph 12 concerning sulfuric and nitric acid blends, this Agreement may be terminated by the Contractor or Ashland at any time by the delivery of written notice of the terminating party's intention so to terminate at least thirty (30) days prior to the effective date of such termination; provided, however, that any such termination shall not release either party from any of its obligations hereunder accruing prior to the effective date of termination.

WITNESS THE following signatures as of the day and year first above written.

ADVANCED ENVIROMENTAL TECHNOLOGY, INC.          ASHLAND CHEMICAL COMPANY
                                                DIVISION OF ASHLAND OIL

By:_____               By:_____

Title:_____               Title:_____
    Authorized Representative

AETC190