UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AGERE SYSTEMS, INC., CYTEC INDUSTRIES INC., FORD MOTOR COMPANY, SPS TECHNOLOGIES, LLC and TI GROUP AUTOMOTIVE SYSTEMS LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, et al.,<br><br>Defendants. | Civil Action No. 02-3830 (LDD) |

AETC'S MEMORANDUM OF LAW IN OPPOSITION TO ASHLAND'S
MOTION FOR LEAVE TO FILE CONTRACT, FRAUD AND
NEGLIGENCE CROSS-CLAIMS AGAINST AETC

WOLFF & SAMSON PC
Thomas Sabino (TS-6491)
One Boland Drive
West Orange, NJ 07052
(973) 325-1500

tsabino@wolffsamson.com
Attorneys for Defendant, AETC

By: _____
THOMAS SABINO (TS-6491)

## **TABLE OF CONTENTS**

PAGE

PRELIMINARY STATEMENT ............................................................................................... 1

COUNTERSTATEMENT OF FACTS .................................................................................... 3

    A.    THE PLAINTIFF HAS FILED FIVE COMPLAINTS .......................................... 3

    B.    THIS COURT HAS ENTERED EIGHT CASE MANAGEMENT ORDERS .................................................................................................................. 3

    C.    AETC HAS ALWAYS DENIED IT IS A CERCLA "ARRANGER" ...................................................................................................... 4

    D.    ASHLAND'S PROPOSED CROSS-CLAIMS ...................................................... 4

POINT I ........................................................................................................................................ 6

    ASHLAND'S MOTION SHOULD BE DENIED BASED ON UNDUE DELAY .............................................................................................................. 6

        I.A.    CMO5 Put Ashland On Notice To Join Its Party Specific Common Law Claims In June 2004 ................................................... 6

        I.B.    CERCLA Does Not Preempt a Party From Asserting Non-Contribution Common Law Claims ......................................................... 7

POINT II .................................................................................................................................... 10

    ASHLAND'S MOTION SHOULD BE DENIED BASED ON SUBSTANTIAL PREJUDICE TO AETC ............................................................. 10

        II.A.    AETC Would Suffer Substantial Prejudice Due to the Need to Undertake Extensive Discovery Regarding the Eight New Claims Against It ............................................................................... 10

        II.B.    The Inclusion of Ashland's Common Law Claims Would Require a Jury Trial ..................................................................................... 12

CONCLUSION .......................................................................................................................... 14

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Adams v. Gould, Inc.*,
    739 F.2d 858 (3d Cir. 1988), cert. denied, 469 U.S. 1122 (1985) ..................... 10

*Agrizap, Inc. v. Woodstream Corp.*,
    450 F. Supp. 2d 562 (E.D.Pa. 2006) ................................................................. 11

*Bechtel v. Robinson*,
    886 F.2d 644 (3d Cir. 1989) ............................................................................. 10

*Berger v. Edgewater Steel Company*,
    911 F.2d 911 (3d Cir. 1990), cert. denied 499 U.S. 920 (1991) .................. 10, 11

*Caisson Corp. v. Ingersoll-Rand Co.*,
    622 F.2d 672 (3d Cir. 1980) ............................................................................. 12

*Cureton v. National Collegiate Athletic Association*,
    252 F.3d 267 (3d Cir. 2001) ............................................................................... 6

*EEOC v. Corry Jamestown Corp.*,
    719 F.2d 1219 (3d Cir. 1983) ........................................................................... 13

*Grand Street Artists v. General Electric Company*,
    28 F. Supp. 2d 291 (D.N.J. 1998) ...................................................................... 8

*SC Holdings v. AAA Realty*,
    935 F. Supp. 1354 (D.N.J. 1996) ....................................................................... 8

*Lutz v. Chromatex, Inc.*,
    718 F. Supp. 413 (M.D.Pa. 1989) ...................................................................... 7

*M&M Realty v. Eberton Terminal Corp.*,
    977 F. Supp. 683 (M.D.Pa. 1997) ...................................................................... 8

*Molthan v. Temple University*,
    778 F.2d 955 (3d. Cir. 1985) ........................................................................... 13

*Rolo v. City Investing Co. Liquidating Trust.*,
    155 F.3d 644 (3d Cir. 1998) ............................................................................... 6

*Tarkett v. Congoleum Corp.*,
    144 F.R.D. 289 (E.D. Pa. 1992) ......................................................................... 6

*Tri-county Business Campus Joint Venture v. Clow Corp.*,
    792 F. Supp. 984 (E.D.Pa. 1992) .................................................................................. 8, 13

*In re Tutu Water Wells Contamination Liquidation*,
    78 F. Supp. 2d 456 (D.V.I. 1999) ....................................................................................... 11

*United States v Atlas Minerals and Chemical, Inc.*,
    797 F. Supp. 411 (E.D.Pa. 1992) ....................................................................................... 13

### STATE CASES

*F.P. Woll & Company v. Fifth and Mitchell Street, Corp.*,
    2005 WL. 1592948, 61 ERC 1295 (E.D.Pa. 2005) ........................................................... 13

### STATUTES

Section 107(a) of CERCLA, 42 U.S.C. §9607(a) .................................................................. 4

35 P.S. § 6020.101 et seq .......................................................................................................... 12

## PRELIMINARY STATEMENT

Over four years after this action was first commenced, and after the completion of fact discovery and one month before expert discovery concludes, defendant Ashland Inc. moves for leave to file **eight** brand new and previously unknown contract, fraud and negligence cross-claims against defendant Advanced Environmental Technology Corporation ("AETC"). Ashland's motion is not only untimely but prejudicial to AETC because Ashland is asserting **eight new claims** heretofore not at issue in this action. Simply stated, Ashland seeks to substantially broaden the scope of this action by opening a "second front" against AETC just as this case is nearing trial.

Ashland states that the possibility that AETC might win its pending summary judgment motion justifies its motion for leave to file these cross-claims,[1] and that CERCLA had preempted it from previously asserting its common law claims. That is not true. Only common law contribution and indemnification are barred by CERCLA. In the majority of CERCLA contribution cases, parties consistently also assert common law claims. Moreover, in this action, CMO5 (dated June 16, 2004) references and allows for the assertion of party specific common law claims. Indeed, Ashland's counsel insisted on the inclusion of that provision in CMO5. Yet for over two years, Ashland ignored the terms of CMO5.

The Plaintiffs have filed an original and four Amended Complaints; this Court has entered eight case management orders. Now, at the last minute, Ashland seeks leave to assert an eight count, 98 paragraph proposed cross-claims against AETC. With fact discovery over, and

---

[1] Thus, should AETC lose its summary judgment motion that it is not a CERCLA "arranger" there is no reason to grant Ashland's motion, since Ashland already has the benefit of CERCLA and HSCA contribution cross-claims which all Defendants have been deemed to raise per Order of this Court.

expert discovery in the deposition phase, AETC will have no opportunity to serve interrogatories on Ashland regarding these new contract, fraud and negligence cross-claims, no opportunity to depose the persons that would be named in Ashland's interrogatory answers as persons with knowledge of these claims and no opportunity to submit expert reports regarding the eight new claims. The granting of such a motion would result in severe prejudice to AETC unless the pre-trial schedule in this action is significantly altered to give AETC adequate time to engage in discovery against Ashland.

Critically, the facts that underlie Ashland's proposed cross-claims against AETC have been known to Ashland for several decades and there is no reasonable excuse for the delay that has occurred. It is the very business relationship between Ashland, AETC and DeRewal Chemical in the 1970s that is the basis of Ashland's proposed claims. Simply stated, Ashland slept on its rights and now, at the last moment, it moves too late to assert common law cross-claims.

Finally, Ashland improbably asserts that its new proposed claims against AETC are "procedural" and do not change "the nature of the legal relief" sought. (Ashland Brief at 7.) This is not only disingenuous but it completely misses the fundamental point. Ashland's new common law claims would interject eight new factual and legal basis of claims against AETC for which there has been absolutely no discovery. Fairness and equity demand that Ashland's motion for leave be denied.

## **COUNTERSTATEMENT OF FACTS**

### A.  **The Plaintiff Has Filed Five Complaints**

The initial Complaint in this action was filed on June 18, 2002 by the Boarhead Farms Agreement Group ("BFAG"). BFAG has since been replaced as the Plaintiff by the individual corporations that made up BFAG. Amended Complaints were filed on:

- August 26, 2002 – Amended Complaint;
- February 21, 2003 – Second Amended Complaint;
- September 18, 2003 – Third Amended Complaint; and
- July 25, 2005 – Fourth Amended Complaint.

### B.  **This Court Has Entered Eight Case Management Orders**

Eight case management orders have been entered by this Court to advance the orderly progression of discovery in this CERCLA contribution action. Those orders were entered on:

- February 3, 2003 – Initial CMO;
- July 27, 2003 – CMO2;
- November 25, 2003 – CMO3;
- March 9, 2004 – CMO4;
- June 16, 2004 – CMO5;
- December 30, 2004 – CMO6;
- February 2, 2005 – CMO7; and
- May 16, 2006 – CMO8.

Case management order #5, dated June 16, 2004, is particularity relevant to Ashland's motion for leave to file an Amended Answer. The first paragraph reads as follows:

> 1. Initial Pleadings: On or before July 15, 2004, Defendants who have not reached settlements with Plaintiff shall answer, move (to the extent not limited by prior Case Management Orders), or otherwise plead in response to the Third Amended Complaint. Answers shall be deemed to raise cross-claims for contribution pursuant to CERCLA and Pennsylvannia Hazardous Sites Cleanup Act. All such deemed cross-claims and counterclaims shall be deemed denied. **Cross-claims or counterclaims bases on separate claims peculiar to an individual party, such as claims for contractual indemnification (and other than claims against the insurance company), shall be individually pleaded.**

3

(Exhibit A to Ashland's motion for leave, emphasis added.) Thus, Ashland has been on notice for two and a half years of its need to file cross-claims "peculiar" to Ashland. Indeed, it was Ashland's counsel who insisted on the inclusion in CMO5 of the provision allowing the filing of party specific common law claims. (Sabino Decl., ¶ 2.)[2]

Fact discovery in this matter is complete. Pursuant to Case Management Order 8, all expert discovery is to be completed by December 20, 2006. In fact, Ashland admits that expert witness depositions "must be completed by December 20, 2006." (Ashland Brief at 7, fn.3.)

### C. AETC Has Always Denied It Is A CERCLA "Arranger"

Ashland asserts that AETC's pending summary judgment motion, that it is not a CERCLA "arranger", is the reason for Ashland filing its motion for leave at this time. (Ashland's Brief at 2, 7 9 & 11.) In fact, Ashland has always been aware that AETC has contested the Plaintiffs' assertion that AETC was a CERCLA "arranger".

In AETC's July 15, 2004 Answer in this action, in Affirmative Defense No. 5, AETC specifically refuted it was a CERCLA "Arranger":

> 5.    Plaintiff's CERCLA claims against AETC fails because AETC does not fall within any of the four classes of potentially responsible parties under Section 107(a) of CERCLA, 42 U.S.C. §9607(a); specifically AETC is not an "arranger". [Exhibit A to Sabino Decl.]

Moreover, in the 2003-04 mediation held in this action, Ashland was aware that AETC disputed that it was a CERCLA "arranger". (Sabino Decl. at ¶6.)

### D. Ashland's Proposed Cross-Claims

Ashland seeks to assert eight common law and contractual cross-claims against AETC in its proposed Amended Answer:

---

[2] The Declaration of Thomas Sabino, Esq. ("Sabino Decl.") is submitted on behalf of AETC in opposition to Ashland's motion for leave to file an Amended Answer.

4

- Count 1 – Breach of Written Contract;
- Count 2 – Breach of Oral Contract;
- Count 3 – Breach of Implied Contract;
- Count 4 – Unjust Enrichment;
- Count 5 – Detrimental Reliance (Promissory Estoppel);
- Count 6 – Fraud in the Inducement;
- Count 7 – Failure to Exercise Reasonable Care and Control over Contractor/Agent; and
- Count 8 – Negligent Hiring/Breach of Fiduciary Duty

The Wherefore Clause to each of these eight counts seeks "contribution and/or indemnity". Each Wherefore Clause also seeks "such further legal and equitable relief to which Ashland may be entitled." Critically, each Wherefore Clause seeks a declaration that if Ashland is held to be liable "such liability be adjudged solely that of Defendant AETC, not Ashland." (Ashland's proposed Amended Answer.) Thus, Ashland seeks to have AETC be held completely responsible for Ashland's liability in this case.

It is obvious from the above that if Ashland is granted leave to file its Amended Answer with common law cross-claims, fairness demands that fact discovery be re-opened to give AETC adequate time to explore the viability of those claims. AETC respectfully submits that approximately eight months would be needed for the Ashland/AETC phase of discovery. (See Sabino Decl., ¶5).

5

## POINT I

## ASHLAND'S MOTION SHOULD BE DENIED BASED ON UNDUE DELAY

Undue delay by a movant in seeking leave to amend is grounds for denial. Tarkett v. Congoleum Corp., 144 F.R.D. 289, 291 (E.D. Pa. 1992). The moving party bears the burden of proof in explaining the reasons for delay in seeking leave to amend. Id. at 290. In general, the question of undue delay requires the Court to focus on the movant's reasons for not amending sooner. Cureton v. National Collegiate Athletic Ass'n, 252 F3d. 267, 273 (3d Cir. 2001). Delay is undue when a movant has failed to amend despite previous opportunities to do so. See Rolo v. City Investing Co. Liquidating Trust., 155 F.3d 644, 654-551 (3d Cir. 1998) (denying leave to file second amended complaint when plaintiff was pleading facts that could have been plead earlier).

### I.A.   CMO5 Put Ashland On Notice To Join Its Party Specific Common Law Claims In June 2004

Ashland asserts that it is seeks to file its Amended Answer now merely to "preserve" its right to pursue common law claims against AETC. (Ashland Brief at 2 & 8). If Ashland had wanted to "preserve" its common law claims against AETC, it should have done so after the filing of CMO5 in June 2004. The purpose of paragraph 1 of CMO5 was to provide notice to any defendant if another defendant intended to assert party specific common law claims against it. Then, it would have been up to AETC, or any defendant against whom common law claims had been made, to propound discovery and ascertain the validity of the factual and legal basis of those common law claims. And, as this case moved into the expert phase, AETC (or any defendant against who a common law claim had been made), would have produced appropriate expert reports.

6

The foregoing begs the question: in November 2006, what future is Ashland "preserving" its common law claims for? Fact discovery is over; expert discovery is nearly over. Ashland's assertion that it is "preserving" its common law claims is false. In truth, Ashland seeks to hide its failure to act timely behind the phony excuse that AETC's summary judgment triggered its need to file common law cross-claims. It was CMO5 in June 2004 that was the trigger. Ashland's self-imposed dilemma should not be cured at AETC's expense. Based upon the express terms of CMO5, the motion for leave should be denied as being too late and in violation of a Court Order.

**I.B.  CERCLA Does Not Preempt a Party From Asserting Non-Contribution Common Law Claims**

Ashland also asserts that it had not previously brought common law claims against AETC because "claims for common law contribution and/or indemnity against a PRP are generally deemed preempted by CERCLA." (Ashland Brief at 9.) This argument is unavailing for several reasons.

First, AETC does not contest that CERCLA preempts common law contribution and indemnity claims **but** Ashland's proposed claims against AETC are not "common law contribution and/or indemnity", they are breach of contract, fraud, unjust enrichment and negligence claims. (See Ashland's proposed Amended Answer). Thus, Ashland's proposed claims fall outside the Du Pont and Reading rule barring common law contribution and indemnity causes of action in CERCLA contribution actions.

Second, consistent with the above, it is common place in CERCLA contribution actions for parties to concomitantly assert non-contribution common law claims. See e.g., Lutz v. Chromatex, Inc., 718 F. Supp. 413, 429-431 (M.D.Pa. 1989) (denying motion to dismiss common law claims of strict liability, breach of restrictive covenants and emotional distress in

7

CERCLA contribution action); Tri-county Business Campus Joint Venture v. Clow Corp., 792 F. Supp. 984, 995-96 (E.D.Pa. 1992) (dismissing common law negligence, misrepresentation and strict liability claims on statute of limitation grounds, not preemption grounds, in CERCLA action); SC Holdings v. AAA Realty, 935 F. Supp. 1354, 1367 (D.N.J. 1996) (denying motion to dismiss strict liability claim in CERCLA contribution action); Grand Street Artists v. General Electric Company, 28 F. Supp.2d 291 (D.N.J. 1998) (in plaintiff's CERCLA contribution action it also asserted common law claims for strict liability, negligence, fraud, recision and nuisance).

The foregoing principle was aptly illustrated in M&M Realty v. Eberton Terminal Corp., 977 F. Supp. 683 (M.D.Pa. 1997). While the M&M Realty court held that the plaintiff's common law claims for contribution and indemnification were preempted by CERCLA, it addressed on the merits plaintiff's other claims of fraud, negligent misrepresentation and implied warranty. 977 F.Supp. at 689-90. The M&M Realty court held that the non-contribution claims should be dismissed based upon the specific language of the "Environmental Contingency" provision in the contract between the parties, and not preemption. Id. Clearly, Ashland was not barred by CERCLA from bringing its common law contract, fraud and negligence claims against AETC at any time before or during fact discovery. It failed to do so and must now suffer the consequences of its carelessness.

Finally, Ashland elevates form over substance by characterizing its proposed cross-claims as claims for "contribution and indemnity". By this semantic game, Ashland seeks to bring itself into the "preemption tent" and thus excuse its failure to bring these claims earlier. However, Ashland's extremely detailed 98 paragraph cross-claims against AETC are, in fact, what they state they are: common law claims for breach of contract, fraud and negligence. Such claims are not preempted by CERCLA. Limiting its prayer for relief to "contribution and

8

indemnity" in the Wherefore clause of each count does not turn these contract, fraud and negligence claims into contribution claims. Ashland's intellectually dishonesty regarding this issue should be recognized and its motion denied.

## POINT II

## ASHLAND'S MOTION SHOULD BE DENIED BASED ON SUBSTANTIAL PREJUDICE TO AETC

AETC understands that, generally, motions for leave to file amended pleadings should be liberally considered. However, mechanically applying that general principle under the specific facts here would result in an unjust outcome inconsistent with the fundamental policy that leave to amend should not be granted when substantial prejudice results. The relative weight of the harm to AETC far outweighs the benefits to Ashland that would result from the granting of the instant motion, especially since Ashland already has the advantage of statutory contribution cross-claims under CERCLA and HSCA.

**II.A.  AETC Would Suffer Substantial Prejudice Due to the Need to Undertake Extensive Discovery Regarding the Eight New Claims Against It**

Granting Ashland's motion for leave to file an Amended Answer should be denied because the inclusion of eight new cross-claims at this late stage would cause substantial prejudice to AETC. The Third Circuit has consistently emphasized that prejudice to the non-moving party is the touchstone for the denial of amended pleading. Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989). Critically, in determining whether a party's delay in seeking to amend is prejudicial, the Court must focus on the impact of the amendment on the non-moving party. Adams v. Gould, Inc., 739 F.2d 858, 869 (3d Cir. 1988), cert. denied, 469 U.S. 1122 (1985). Here the prejudice to AETC to defend eight new claims based on contract, fraud and negligence grounds in a case where fact discovery is over and expert discovery is nearly over is obvious.

In Berger v. Edgewater Steel Company, 911 F.2d 911 (3d Cir. 1990), cert. denied 499 U.S. 920 (1991), the Third Circuit affirmed the denial of the plaintiffs' motion for leave to

10

amend their complaint because of the prejudice to defendant Edgewater. 911 F.2d at 923-925. In Berger, plaintiffs sought to assert a new discrimination claim after the close of discovery. After considering the plaintiffs' arguments on appeal, the Third Circuit held:

> Here, new and extensive discovery concerning the pre-January 15, 1987 practices of Edgewater in connection with §2.6(c) of the Plan would have been necessary in order to develop the Employee theory of discrimination....Unlike Coventry, it is plain that allowing the amendment here would inject new issues into the case requiring extensive discovery...The allowance of the Employees' untimely motion for leave to amend by adding this new and substantially broader claim would put an unwarranted burden on the trial court and be likely to result in prejudice to Edgewater. [911 F.2d at 924.]

The same rationale applies to this case. The entire focus of discovery in this case has been upon the parties' statutory liability under CERCLA and HSCA, and the limited defenses allowed under these statutes. Ashland's eight common law claims would open up a Pandora's Box of new and substantially broader claims that have not been addressed in either fact or expert discovery. AETC has not focused any discovery on Ashland's proposed common law claims because they were not at issue. AETC did not propound any interrogatories upon Ashland, did not notice or take the deposition of any Ashland representatives and did not serve any expert reports regarding any of Ashland's proposed claims. (See Sabino Decl. at ¶4.) Indeed, the very nature of Ashland's proposed cross-claims demand extensive discovery.

For example, it is well settled that consideration of any fraud claim requires an inquiry at trial, and not on summary judgment, as to the allegedly fraudulent conduct of the accused party. See Agrizap, Inc. v. Woodstream Corp., 450 F.Supp.2d 562, 574 (E.D.Pa. 2006) (intent is a factual question for the trier of fact; fact issues existed as to whether distributor fraudulently misrepresented its intentions); In re Tutu Water Wells Contamination Liquidation, 78 F. Supp.2d 456, 462 (D.V.I. 1999) (due to the difficulties inherent in proving a parties' state of mind, issues of scienter and fraudulent intent are questions for the trier of fact). For Ashland to

11

suggest that no discovery is required regarding fraud issues that are solely a question for the trier of fact to who germane evidence must be presented at trial is totally disingenuous.

By way of further example, Ashland's first three proposed counts are contractual claims based upon, alternatively, an oral agreement with AETC and an unsigned contract between AETC and Ashland. (See Ashland's proposed Amended Answer.) Thus, Ashland's contact claims are not straightforward claims based upon a written contract whose terms merely need to be interpreted. Claims based upon oral and/or unsigned contracts implicate issues which require intense fact-finding. Thus, issues such as the statute of frauds would have to be considered in discovery and motion practice between Ashland and AETC. See e.g., Caisson Corp. v. Ingersoll-Rand Co., 622 F.2d 672, 678 (3d Cir. 1980) (whether either or both parties have manifested approval of the terms of an unsigned contract is a fact-based inquiry). The quagmire of such intense fact-finding can and should be avoided by denial of Ashland's motion for leave.

If Ashland were granted leave to assert its eight new claims, in order to adequately defend itself, AETC would have to: 1) prepare and serve Interrogatories; 2) review Interrogatory answers and depose the individuals named as having relevant knowledge: 3) retain experts, prepare and serve expert reports; and 4) engage in expert depositions. AETC estimates that this discovery will take eight months. (Sabino Decl., ¶ 5.) Anything else would be malpractice by AETC's attorneys and leave AETC unprepared at trial to defend itself against Ashland's brand new common law claims.

### II.B. The Inclusion of Ashland's Common Law Claims Would Require a Jury Trial

Plaintiffs have asserted contribution claims under CERCLA and the Pennsylvania Hazardous Sites Clean-Up Act, 35 P.S. § 6020.101 et seq. ("HSCA"), but no common law claims. (See Fourth Amended Complaint.) As such, there will be no jury trial in this case. See

12

United States v Atlas Minerals and Chemical, Inc., 797 F. Supp. 411, 422 n.2 (E.D.Pa. 1992) (since cases arising under CERCLA are equitable in nature, parties have no right to a jury trial in CERCLA actions); F.P. Woll & Company v. Fifth and Mitchell Street, Corp., 2005 WL 1592948, 61 ERC 1295, (E.D.Pa. 2005) (there is no right to a jury trial under the HSCA since HSCA claims are fundamentally restitutionary and equitable, not legal in nature).

However, it is undisputed that a party is entitled to a jury trial regarding common law claims such as negligence, misrepresentation and strict liability. Molthan v. Temple University, 778 F.2d 955, 961 (3d. Cir. 1985); EEOC v. Corry Jamestown Corp., 719 F.2d 1219, 1224 (3d Cir. 1983); Tri-county Business Campus Joint Venture v. Clow Corp., 792 F. Supp. 984, 997 (E.D.Pa. 1992). Even when a party's claim is based on the same set of facts that support both its equitable and legal claims, the right to a jury trial remains. Molthan, 778 F.2d at 961.

Thus, the inclusion of Ashland's contract, fraud and negligence claims against AETC would complicate the trial of this action by necessitating the inclusion of jury. This results in more prejudice to AETC, which would have to bear the costs of empaneling a jury, preparing jury instructions, etc., costs no other party would have to incur.

## **CONCLUSION**

For the foregoing reasons, Defendant Advanced Environmental Technology Corporation ("AETC") respectfully requests that Defendant Ashland Inc.'s motion to Leave to Amend its Answer to Assert Common Law claims against AETC be denied.

        WOLFF & SAMSON PC
        Thomas Sabino (TS-6491)
        One Boland Drive
        West Orange, NJ 07052
        (973) 325-1500
        tsabino@wolffsamson.com
        Attorneys for Defendant AETC

        By: _/s/ Thomas Sabino_____
           THOMAS SABINO (TS-6491)

Dated: November 16, 2006

14