IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AGERE SYSTEMS, INC.;            :
CYTEC INDUSTRIES. INC.;         :
FORD MOTOR COMPANY;             :
SPS TECHNOLOGIES, LCC;          :
TI GROUP AUTOMOTIVE SYSTEMS;    :
                                :        CIVIL ACTION
        Plaintiffs,             :
                                :
    v.                          :
                                :
ADVANCED ENVIRONMENTAL          :        NO. 02-3830
TECHNOLOGY CORPORATION, ET AL., :
                                :
        Defendants.

Legrome D. Davis, J.                          November 17, 2006

MEMORANDUM & ORDER

_____Presently before the Court are Defendant Advanced Environmental Technologies Corporation's ("AETC") Motion for Summary Judgment (Doc. 196) and Plaintiffs' Cross Motion for Partial Summary Judgment (Doc. 202). Upon careful consideration of the pleadings and after oral argument on November 6, 2006, for the reasons set forth below, AETC's Motion for Summary Judgment is DENIED. Plaintiffs' Motion for Partial Summary Judgment is GRANTED.

**Factual and Procedural Background**

The parties' cross motions for summary judgment ask the Court to determine whether AETC is liable as an "arranger" under CERCLA § 107(a)(3). That section imparts liability on "any person who by contract, agreement or otherwise arranged for disposal or treatment, or

1

arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by an other party or entity, at any facility..." 42 U.S.C. § 9607(a). The following facts are undisputed unless otherwise noted.

The Boarhead Farms Superfund Site (the "Site") is located in Bucks County Pennsylvania and since 1969 has been owned by Manfred DeRewal.  Compl.  ¶ 4-5.  From the time of DeRewal's purchase until 1977, the Site was used for the disposal of hazardous substances.  Id. After several years of inspection, the United States Environmental Protections Agency ("EPA") placed the Site on the National Priorities List pursuant to 40 C.F.R. Part 300 and 42 U.S.C. § 9605(a), and has since conducted three remedial actions in which contaminated soil, drums and groundwater were either treated or removed.  Id. at 10-11.  In 1984 the EPA also issued a Record of Decision outlining the continuing remedial action required for the Site.  Id. at 14.  Though the Plaintiffs deny liability under CERCLA Section 107, they have agreed to collectively fund and perform the clean-up effort.  Id. at 16-17.

Pursuant to CERCLA Section 113(f)(3)(B), 42 U.S.C. § 9613(f)(3)(B), Plaintiffs seek contribution from the Defendants as liable or potentially liable parties under CERCLA Section 107(a), 42 U.S.C. § 9607(a).  The Fourth Amended Complaint names Ashland Chemical Company ("Ashland") and Diaz Chemical Company ("Diaz") (collectively "the generators") as defendants who generated waste which was deposited at the Site, and AETC as an arranger defendant under CERCLA § 107(a)(3).

AETC is a New Jersey corporation whose business involves the transportation and disposal of hazardous waste.  In the mid-1970's AETC agreed with Ashland and Diaz to remove, transport and dispose of liquid hazardous waste generated at their respective sites.  Def.'s Mot. at

2

9; Pl.'s Cross Mot. at 3.   AETC could have fulfilled this obligation by personally removing the

waste, or by hiring an outside company.   Pl.'s Cross Mot. at 4.   AETC chose the latter and

independently contracted with Manfred DeRewal, through Environmental Chemical Control or

DeRewal Chemical Company, Inc., (both owned and operated by DeRewal) to perform the

removal, transportation and disposal.   Id.; Def.'s Mot. at 8.   Later AETC hired another disposal

contractor to fulfill the obligation it owed to the generators.   Def.'s Mot. at 9; Pl.'s Cross Mot. at

10.

      The individual transactions occurred as follows.   The generators would inform AETC that

they have a load of waste which was ready for transport and disposal.   AETC and the generators

would agree upon a per gallon price which was paid directly to AETC.   AETC would then

contract with DeRewal for the actual removal and disposal, for which DeRewal would be paid

directly by AETC.   Def.'s Mot. at 8.   No contract between the generators and DeRewal existed,

and AETC never took physical possession of the waste.   Pl.'s Cross Mot. at 4; N.T Or. Arg.

11/6/06 at 8.

      When DeRewal employees entered the generators' sites, they were presented with a bill

of lading indicating that the waste was "consigned" to AETC.   Def.'s Mot. at 8, Ex. 11, 12.   The

DeRewal employee then signed the bill of lading which, in the case of the Ashland bills, had

AETC's named typed into the signature line.   Id.

      AETC confirmed that it explicitly directed DeRewal to take the waste to DeRewal's

disposal facility in the Wissinoming Industrial Park in Philadelphia, Pennsylvania.   N.T. Or. Arg.

11/06/06 at 20.   AETC's president Robert Landmesser and vice-president John Lezuarder, offer

sworn statements that they believed that all waste was going to the Wissinoming site.   Def.'s

Mot. at 9, Ex. 1¶, Ex. 2 p. 73, 211.  The Diaz bills of lading also indicate that the waste was

destined for disposal at the Wissinoming site.  Def.'s Mot. at 8, Ex. 11.

While the parties to this motion concede that at least some of the generators' waste was

deposited at Boarhead Farms, the parties dispute whether AETC knew or should have known that

DeRewal was dumping waste at the Site.  Plaintiffs offer internal Ashland memoranda in which

Ashland employees claim to have alerted AETC to information indicating that the waste was

being deposited at the Site.[1]  Pl.'s Cross Mot. at 8, Ex. 11.  These memoranda also describe a

meeting at the Site attended by AETC, Ashland and DeRewal employees where the group

observed evidence of waste disposal such as acid wagons and a storage tank.  Id.  At that meeting

DeRewal informed AETC and Ashland that he intended to start sending Ashland waste to the

Site.  Id. at 9, Ex. 22.  Finally, Plaintiffs have produced evidence indicating that AETC informed

a different chemical producer that its waste would be sent to a site other than its actual

destination.  Id. at 9, Ex. 24.

## Discussion

AETC moves for summary judgment alleging that the undisputed facts indicate that

AETC was an not arranger under § 107(a)(3).  By way of cross motion, Plaintiffs allege that the

facts establish AETC's arranger liability as a matter of law.

AETC further contends that the Third Circuit's opinion in Morton International v. A.E.

---

[1] In this memo,  Ashland's plant manager wrote the following: "Leuzarder, when
confronted by me with this rumored incident [a spill at the Site where Mr. DeRewal was
allegedly injured by Ashland acid], explained that there was an incident, the burns were slight,
the spill was contained and reported, the acid was not ours [Ashland's] and no charges were
made. When I told Leuzarder that Santoro hinted that the acid was being dumped on the
[Boarhead] farm, he said that the trucks sometimes stopped at this location and went on into
Philadelphia." Pl.'s Cross Mot., Ex. 11.

4

<u>Staley Co., Inc</u>, controls the outcome of this case.  343 F.3d 669 (3d Cir. 2003).  In <u>Morton</u>, the Third Circuit addressed the standard for arranger liability under unique factual circumstances.  In that case, the owner of prime virgin mercury contracted with a chemical plant to process that substance into commercially-usable mercury compounds.  <u>Id.</u>  Hazardous substances were produced and released as a bi-product of that conversion.  The Third Circuit was left to determine whether the owner of the unprocessed mercury was an entity that arranged for the disposal of the hazardous bi-product.

The <u>Morton</u> Court established a two-part test to determine arranger liability.  The plaintiff must first prove that the defendant owned or possessed the waste.  <u>Id.</u> at 678.  This preliminary showing is required by the plain language of the statute.  <u>Id.</u>  After ownership or possession is shown, the plaintiff must show "the defendant's knowledge that the processing of that material can or will result in the release of hazardous waste; or the defendant's control over the production process."  <u>Id.</u>

Plaintiffs assert that <u>Morton</u> is inapposite, and thus not binding on the Court, for two related reasons.  First, the facts are fundamentally different.  Pl.'s Cross Mot. at 22.  Whereas <u>Morton</u> addressed the consequential release of a bi-product during a manufacturing process, the present case involves a contract for the deliberate disposal/release of a waste product.  Secondly, the actual language used by the <u>Morton</u> court to articulate its holding cannot be readily applied to the facts of this case.  There is no "production process" for AETC to have "control over."  Further, knowledge that a release will occur is inherent in the fact that this is a contract for the disposal of waste.  <u>See</u> <u>Morton</u>, 343 F.3d at 678.

AETC responds by noting that the <u>Morton</u> court recognized the distinction between direct

5

arranger liability (cases, like the present, in which the sole purpose of contract is for disposal) and indirect arranger liability (cases like <u>Morton</u> in which waste is produced as a bi-product).  <u>Id.</u> at 679 (citing <u>United States v. Shell Oil Company,</u> 294 F.3d 1045, 1055 (9th Cir. 2002)).  The court further stated in footnote, "accordingly we see no reason to draw a distinction between direct and broad (indirect) 'arranger liability.'"  <u>Id.</u> (parenthetical remarks in original).

Despite Plaintiffs' assertions and the clear factual differences, it is readily apparent that the <u>Morton</u> court intended to provide guidance for all arranger liability cases.  <u>See id.</u>  And, while the specific language used to articulate the <u>Morton</u> holding cannot be applied in this case, the essence and practical import of that holding are certainly applicable here.  <u>Morton</u> stands for the proposition that ownership or possession of waste is required but is not, in itself, sufficient to establish arranger liability.  <u>See id.</u>  A plaintiff must also prove that the defendant knew that a hazardous release was likely or exercised some control over the waste in the course of its release into the environment.  <u>See id.</u>  Plaintiffs have provided sufficient undisputed evidence to indicate that all three of those elements are satisfied.

## I.  Ownership or Possession

The parties agree that, pursuant to the plain language of the statute and regardless of whether <u>Morton</u> is applicable, Plaintiffs are required to show ownership or possession of the waste.  Though repeatedly referring to the doctrine as a "legal fiction" ATEC concedes that Plaintiffs' burden can be established through a showing of constructive possession.  Def.'s Opp. at 12; <u>United States v. Northeastern Pharmaceutical & Chemical Co., Inc.</u>, 810 F.2d 726, 743 (8th Cir. 1986) ("requiring proof of personal ownership or actual physical possession of hazardous substances as a precondition to liability... would be inconsistent with the broad

6

remedial purpose of CERCLA"); United States v. New Castle County, 727 F.Supp. 854, 872 (D. Del. 1989). AETC then asserts that "constructive possession can only arise when a party exercises control over the wastes. Here, it was DeRewal Chemical Drivers who exercised physical control over those wastes. Thus AETC cannot be a CERCLA 'arranger.'" Def.'s Opp. at 12) (underscore in original). AETC is correct as a general matter that constructive possession will be achieved only when the defendant exercises some control over the waste because control is inherent in the definition of constructive possession. See United States v. Cartwright, 359 F.3d 281, 290 (3d Cir. 2004) ("constructive possession exists if an individual knowingly has both the power and intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons.") (internal citations omitted). AETC's argument fails, however, when it implies that physical control is necessary to establish constructive possession. If physical control was required, actual possession would be established and the doctrine of constructive possession would not be relevant.

In the CERCLA context, as in all other contexts, constructive possession of an item is established once a party exercises dominion or control other than by taking physical possession of it. See Cartwright, 359 F.3d at 290. In this case, AETC exercised control over the waste when it agreed by contract to dispose of the waste and independently hired DeRewal to perform the removal and disposal. It is irrelevant for the purpose of constructive possession whether AETC continues to direct DeRewal's actions because AETC has exercised the requisite control by placing the waste into DeRewal's possession.

The cases cited by AETC actually support this notion. In General Electric Co. v. AAMCO Transmission, the Second Circuit declined to extend arranger liability to an oil

7

company who simply leased service stations to independent dealers when the dealers unilaterally

arranged for the disposal of waste oil.  962 F.2d 281 (2d Cir. 1992).  The court noted that "almost

all of the courts that have held defendants liable as arrangers have found that the defendant had

some actual involvement in the decision to dispose of waste."  Id. at 286.  The court then held

that, in cases where the defendant takes no affirmative act, arranger liability will only attach

when the defendant had the "obligation to exercise control over hazardous waste disposal, and

not the mere ability or opportunity."  Id.  AETC's actions fall squarely within the holding of this

case.  AETC had much more than the ability or opportunity to dispose of the waste, it was under

a contractual obligation to do so.  Furthermore, AETC "had some actual involvement in the

decision to dispose of waste" as it made the critical decision to put the waste in the hands of

DeRewal.  See id.

Similarly, in Transportation Leasing Co. v. State of California, the court agreed that the

mere authority or ability to exercise control was insufficient, but found that:

> Despite contracting with private disposal companies to perform this
> [removal] function, defendant cities still constructively owned or
> possessed the waste those companies collected.  In addition to having
> the duty provide for disposal service, the stipulated facts discussed
> below show each defendant city exercised control over residential and
> commercial waste when it contracted with a transporter.  When both
> duty and control exist, CERCLA § 107(a)(3)'s 'owned or possessed'
> requirement is satisfied.

861 F.Supp. 931, 955 (C.D. Ca. 1993).

AETC alleges that Plaintiffs argue for the adoption of a lesser standard that would allow

constructive possession where a defendant had only the "authority to control" the waste.  Def's

Opp. at 13.  This assertion misstates Plaintiffs' position and is belied by the facts.  Plaintiffs

8

clearly allege that AETC "exercised that control by delegating the job to DeRewal." Pl.'s Cross Mot. at 27. Whether the Court applies the "ability to control" standard or the "exercise of control" standard is immaterial because the stricter legal standard is met. AETC had the contractual obligation to exercise control of the waste, as AETC was the only entity that Ashland and Diaz contracted with, see General Electric, 962 F.2d at 286, and in fact exercised control when it subcontracted the transportation responsibilities to DeRewal, see Transportation Leasing, 861 F.Supp. at. 952.

AETC also repeatedly asserts that it is not liable as an arranger because it was a "broker" between the generators and DeRewal. This assertion also is entirely contradicted by the facts. A broker negotiates and facilitates contracts between parties in exchange for a fee. See Blacks Law Dictionary 7th Ed. (stating also, "a broker usually does not have possession of the property"). There were no contracts between DeRewal and the generators for AETC to negotiate or facilitate. A broker does not personally enter into a contract with one party, and then hire another party to fulfill its obligation created by the first agreement.

Even if the Court were to attach the "broker" title, AETC would still be subject to arranger liablity. In United States v. Bliss, under nearly identical facts, defendant IPC argued that it was just a broker between the waste generator and the disposal facility. 667 F.Supp. 1298, 1307 (E.D. Mo. 1987). The court held: "Under its arrangement with [the generator], IPC has authority to control the place and manner of disposal; for example IPC could have chosen Bliss or any other party to dispose of the waste. Thus the Court finds IPC liable..."[2] Similarly, in

_____

[2]AETC argues that Bliss is inapposite because it is an "authority to control" case. While that phrase is used, the "broker" in Bliss, like the present case, actually exercised control by contracting with the transporter. 667 F.Supp. at 1303. In Bliss, the contractual arrangement

American Cyanamid Company v. Capuano, the court stated, "we therefore hold that a broker can be liable as an arranger if the broker controls the disposal of the waste."  381 F.3d 6, 25 (1st Cir. 2004).[3]

AETC alleges that these "broker" cases are inapposite because they predate Morton.  N.T. Or. Arg. 11/6/06 at 5.  However, AETC provides no indication of how Morton's holding abrogates these decisions.  The first prong of Morton clarified that ownership or possession are required in order to attach arranger liability.  Bliss and Capuano identify ways in which the requisite ownership or possession can be established.  There is nothing in Morton to suggest that exercising control over waste by hiring an outside transporter would be insufficient to establish constructive possession.  See 343 F.3d 669.  In fact, constructive possession was not an issue in Morton.  Id.

Finally, ATEC argues that because it did not select the Boarhead Farms site for disposal, it did not constructively possess the waste.  This argument fails on two levels.  First it must be noted that arranger liability is not conditioned on the defendant knowing where the waste will be dumped.  United States v. Aceto Agr. Chemical Corp., 872 F.2d 1373, 1381 (8th Cir. 1989) ("Courts have also held defendants 'arranged for' disposal of wastes at a particular site even when defendants did not know the substances would be deposited at that site or in fact believed they would be deposited elsewhere.") (citing cases); see also United States v. Alcan, 964 F.2d 252, 256 (3d Cir. 1992); GenCorp, Inc., v. Olin Corporation, 390 F.3d 433, 446 (6th Cir. 2004);

---

between the generator, broker, and transporter are identical to the contracts in this case.  Id.

[3]Note that in Capuano, the broker did more than just hire a subcontractor.  It "selected, secured and directed the waste to the Picillo Site." 381 F.3d. at 25.  However the court did not state nor imply that this level of involvement was required to attach liability to a "broker".

Transportation Leasing, 861 F.Supp. at 952; CPC International, Inc. v. Aerojet-General Corp.,
759 F.Supp. 1269, 1279 (W.D. Mich. 1991); United States v. Wade, 577 F.Supp. 1326, 1333
(E.D. Pa. 1983).

        This argument fails on a more fundamental level.  Whether one constructively possess
something is not contingent on where the item ends up after being transferred to a third party.
The mere fact that the individual is able to transfer the item to a third party establishes that the
individual has exercised control.  AETC alleges that it specifically directed DeRewal to dispose
of the waste at the Wissinoming site.  In doing so, AETC establishes its own constructive
possession of the waste.  See Transportation Leasing, 861 F.Supp. at 952 ("Evidence that a
defendant selected a site for disposal can demonstrate constructive ownership or possession.").
AETC cannot simultaneously argue that it did not have control over the waste and that it was in
such a position to direct DeRewal on where to deposit it.  AETC's ownership status does not
change based on the fact DeRewal deposited the waste at Boarhead Farms rather than
Wissinoming because AETC had already "arranged with a transporter for the transport for
disposal of waste."  See CERCLA § 107(a)(3).

        As a final note, it is important to consider arranger liability and constructive possession in
a manner consistent with CERCLA's legislative intent.  The reach of arranger liability is entitled
to "liberal judicial interpretation" consistent with the statute's "overwhelmingly remedial"
statutory scheme.  Aceto, 872 F.2d at 1380 (discussing legislative history); Northeastern
Pharmaceuticals, 810 F.2d at 733; see also Dedham Water Co. v. Cumberland Farms Dairy, Inc.,
805 F.2d 1074, 1081 (1st Cir. 1986); United States v. Mottolo, 605 F.Supp. 898, 902 (D.N.H
1985).  CERCLA imposes strict liability to assure that those who benefit financially from

11

commercial activity internalize the health and environmental costs of that activity into the cost of doing business.  <u>New Castle</u>, 727 F.Supp at 858.  AETC certainly benefitted financially from this arrangement and had the unique opportunity to effectively ensure that its waste was being disposed in a proper manner.

## II.  Knowledge and Control

Having concluded that the undisputed facts establish that AETC had constructive possession of the waste, the Court must then determine whether <u>Morton</u>'s knowledge or control elements are satisfied.

<u>Morton</u>'s holding requires the plaintiff to show the "defendant's knowledge that the processing of that material can or will result in the release of hazardous waste; or the defendant's control over the production process."  Because there is no "production process" for AETC to control or know will result in a release of hazardous waste, the parties have averred differing opinions on what degree of knowledge or control is required by <u>Morton</u> under the facts of this case.

AETC repeatedly asserts that the relevant control and knowledge are not satisfied because it did not direct the waste to the Boarhead Farms site and did not know it was being deposited there.[4]  Def.'s Mot at 19.  AETC does not reconcile that position with those cases

---

[4]Before addressing this legal interpretation it should be noted that AETC's knowledge is disputed. Pl.'s Cross Mot. at 8-9.  The facts indicate, *inter alia*, that the principals of AETC met with Ashland and DeRewal representatives at the Boarhead Farms site, and that Mr. DeRewal informed AETC that he intended to send the waste to the Site.  The facts also indicate that AETC had been informed of a spill at the Site allegedly involving waste from Ashland.  Finally, Plaintiffs have shown other instances in which AETC allegedly informed a generator that its waste would be sent to a facility other than its actual destination. Therefore even if the Court were to adopt its argument regarding the knowledge and control elements, AETC would not be entitled to summary judgment because there are disputed issues of material fact.

holding that an arranger can be liable even when the waste is sent to a site other than the one

contemplated. See *supra*. Nor does AETC argue that <u>Morton</u> expressly rejects this line of settled

case law.

Plaintiffs, on the other hand, assert that their burden is only to show that AETC had

knowledge that a release would occur, not that a release at a specific location was likely. Pl.'s

Cross Mot. at 26. They further opine that this burden has been satisfied by virtue of the fact that

the relevant contracts were for waste disposal, which necessarily contemplates a release

somewhere. <u>Id.</u>; <u>see</u> <u>Morton</u>, 343 F.3d at 678 ("Thus, general knowledge that waste disposal is

an inherent or inevitable part of the process arranged for by the defendant may suffice to establish

liability."). Lastly, Plaintiffs assert that the control element is satisfied because AETC exercised

control over the waste by delegating the removal responsibility to DeRewal. Pl.'s Cross Mot. at

27.

The Court finds that the Plaintiffs have provided the appropriate standard. If the Court

starts from the premise that AETC had constructive possession of the waste (i.e. it was AETC's

waste), and then attaches arranger liability only if AETC controlled the actual disposal by

selecting the specific dump-site, it would create a standard that is inconsistent with CERCLA's

general purpose. The <u>Morton</u> court explained that arranger liability is designed to prevent

"defendants [from] simply clos[ing] their eyes to the method of disposal of their hazardous

substances." <u>Morton</u>, 343 F.3d at 678 (citing <u>Aceto</u>, 872 F.2d at 1382). Similarly, "defendants

[a]re not free to contract away their obligation to control the disposal or treatment of the

hazardous waste..." <u>Briggs and Stratton Corp. v. Concrete Sales & Services, Inc.</u>, 971 F.Supp.

566, 570 (M.D. Ga. 1997) (citing Aceto, 872 F.2d at 1381); see also Transportation Leasing Co.,

861 F.Supp at 955 ("CERCLA does not permit defendants to avoid liability by simply hiring an

outside contractor to perform collection services..."). In this case, AETC defends its actions by

essentially saying that it rested on the assumption that the waste would go to Wissinoming and

remained indifferent to the waste's treatment once DeRewal took possession. See N.T. Or. Arg.

11/6/06 at 20 ("...the phone call we [AETC] made triggered a process. But we lost control of that

process the moment a [DeRewal] driver put that key in the truck."). To countenance AETC's

approach would encourage companies to remain consciously ignorant about the treatment and

disposal of their waste and thus would be inconsistent with CERCLA's general purpose and

"overwhelmingly remedial statutory scheme".

        The Court also remains mindful of the implications of its decision. If the Court

concludes, consistent with the overwhelming case law, that constructive possession creates the

same arranger liability as physical possession, the standard for knowledge and control would be

identical. See Morton, 343 F.3d at 679 ("After all, there is only one category of 'arranger

liability' under Section 107(a)."). Therefore, to accept AETC's argument regarding knowledge

and control would allow an individual who has actual physical possession of waste to avoid

liability by contracting away the disposal responsibility without directing or knowing where the

disposal will take place. As stated, this would conflict with CERCLA's general goals and

statutory scheme.[5]

---

        [5]In a final attempt to oppose Plaintiffs' summary judgment motion, AETC argues that
arranger liability cannot attach because it did not make the "critical decision" to send waste to
Boarhead Farms. Def.'s Opp. at 7. AETC bases this argument on a Morton footnote in which
the Third Circuit encouraged district courts to identify other factors potentially relevant to the
arranger liability analysis and then suggested that district courts may consider "whether the party

In sum, the Court finds that Plaintiffs have established as a matter of law that AETC had the knowledge and control required under Morton because AETC knew that a release of hazardous waste would occur and exercised control over the waste by selecting DeRewal to perform the disposal.  It is immaterial that DeRewal deposited the waste in a location other than where AETC anticipated.

### III.  Pennsylvania Hazardous Sites Cleanup Act

AETC concedes that arranger liability and constructive possession are subject to the same analysis under CERCLA § 107(a)(3) and the Pennsylvania Hazardous Sites Cleanup Act, 35 Pa. Cons. Stat. § 6020 et seq..  Def.'s Mot. at 23 (citing Reading Company v. City of Philadelphia, 1992 WL 392595, at *15 (E.D. Pa. Dec. 17, 1992)).

Having found that the undisputed facts establish that Plaintiffs are entitled to judgment as a matter of law with respect to liability under their CERCLA claim, the Court finds that Plaintiffs are also entitled to summary judgment with respect to liability under the Pennsylvania Hazardous Sites Cleanup Act.

### Conclusion

For the reasons set forth above, the Court finds that the undisputed facts establish that

---

made the 'crucial decision' to place hazardous substances in the hands of a particular facility". See 343 F.3d at 678 n.5.  This argument is substantively identical to AETC's contention that Morton's control element is unsatisfied because AETC did not select the Boarhead Farms site. For the same reason that the argument was unavailing in the "control" context – namely because it is inconsistent with established case law and CERCLA's general goals – this argument fails under the "critical decision" framework as well.  In deed, AETC made the "critical decision" to put DeRewal in possession of the waste.

Furthermore, AETC mischaracterizes this portion of the Morton opinion.  The court suggested other factors that may be relevant under the arranger analysis, not elements that are required for liability to attach.  See id.

15

AETC had constructive possession of the waste generated by Ashland and Diaz, and that AETC had the knowledge and exercised the control required by the Third Circuit's holding in <u>Morton</u>. Accordingly, the Court finds that Plaintiffs are entitled to judgement as a matter of law with respect to AETC's liability under CERCLA § 107(a)(3) and the Pennsylvania Hazardous Sites Cleanup Act § 701(a)(2), and will grant Plaintiffs' motion for partial summary judgment on those claims.  AETC's motion for summary judgment is denied.  An appropriate order follows.