IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BOARHEAD FARM AGREEMENT GROUP, | : |
| Plaintiff, | : CIVIL ACTION NO. |
| v. | : 02-cv-3830 (LDD) |
| ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, et al., | : |
| Defendants. | : |

**MEMORANDUM ON BEHALF OF DEFENDANT HANDY & HARMAN TUBE COMPANY, INC. IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DRAFTS OF THE EXPERT REPORT PREPARED BY KIRK W. BROWN, Ph.D.**

INTRODUCTION

In accordance with the Eighth Case Management Order, defendant Handy & Harman Tube Company, Inc. ("Handy & Harman") submitted the expert report of Dr. Kirk W. Brown to all parties on September 29, 2006. Declaration of Melissa E. Flax ("Flax Decl."), Exhibit A. Plaintiffs noticed the deposition of Dr. Brown by letter and deposition notice dated October 30, 2006. In connection with that notice, plaintiffs requested that Handy & Harman produce all documents considered by Dr. Brown in connection with his preparation of his report. In accordance with this request, Handy & Harman produced two (2) CDs which contain 1,197 MB of documents. On December 1, 2006, Dr. Brown was deposed for approximately 6 hours by plaintiffs' counsel, Amy Trojecki. His deposition is scheduled to continue on January 29, 2007.

In the pending motion, plaintiffs are attempting to portray some sinister plot to hide draft reports. Nothing can be farther from the truth. Dr. Brown testified that it is not his practice to

keep draft reports and that while a copy of his draft report was provided to counsel for Handy & Harman, the suggested organizational changes made by counsel did not have anything to do with his conclusions or the meaning of his report. In accordance with plaintiffs' request made at Dr. Brown's deposition, counsel for Handy & Harman checked its files to determine whether a copy of the draft report still existed and it does not. SI Group, LP ("SIG"), the consulting firm providing support services for Dr. Brown checked their files and likewise confirmed that no copy of Dr. Brown's draft reports exist.

Plaintiffs are obviously dissatisfied with Dr. Brown's opinions. Plaintiffs are not alleging that the draft report contained some different opinion than expressed in Dr. Brown's final report or in Dr. Brown's deposition. Rather, plaintiffs are merely attempting to fashion a procedural argument to escape Dr. Brown's opinions, instead of addressing them substantively.

Plaintiffs' motion should be denied.

## STATEMENT OF FACTS

**A.    Handy & Harman's Expert Dr. Kirk W. Brown, Ph.D.**

Dr. Brown was retained by Handy & Harman on August 18, 2006. Trojecki Cert., Exhibit C. Dr. Brown is a principal consultant with the firm of SIG, whose offices are located at 1701 Southwest Parkway, Suite 100, College Station, Texas. Flax Decl., Exhibit A. His educational background includes a Bachelor of Science degree in Agronomy from Delaware Valley College (1962), a Masters of Science degree in Agronomy/Plant Physiology from Cornell University (1964), and a Doctor of Philosophy degree in Agronomy from the University of Nebraska (1969). *Id.*

From 1970 through 2001, Dr. Brown was a member of the faculty at Texas A&M University and he currently serves as *Professor Emeritus* in the Soil and Crop Sciences Department, Texas A&M University, College Station, Texas. *Id.* During his tenure at Texas

A&M, he conducted extensive research including numerous research projects for the U.S. Environmental Protection Agency ("USEPA") on the fate and transport of contaminants in the environment including Resource Conservation and Recovery Act ("RCRA") hazardous wastes and Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") hazardous substances. As a result of his research efforts, Dr. Brown has authored or co-authored over 190 peer-reviewed, scientific publications. *Id.*

Research projects, which Dr. Brown conducted included investigations of the movement of hazardous substances through geomembrane landfill liners and caps and the underlying soil, the fate and movement of hazardous metals in the environment and the land treatment of wastes. His research was instrumental in development of the USEPA regulations which specify the design of hazardous and municipal waste landfills, and in the banning of liquid and untreated wastes from disposal in landfills. *Id.*

Dr. Brown served on technical advisory panels to the USEPA, US Congressional Office of Technology Assessment, National Science Foundation, and the National Academy of Science. Significant reports resulting from these committee assignments include, Groundwater and Soil Cleanup, Improving Management of Persistent Contaminants (1999); Ranking Hazardous Waste Sites (1994); Coming Clean, Superfund Problems Can be Solved (1989); and Superfund Strategy (1985). *Id.*

Dr. Brown was the primary author of two publications for the USEPA entitled Hazardous Waste Land Treatment (1983) and Characteristics of Hazardous Waste Streams (1982). Both of these texts deal with the composition, handling and disposal of hazardous substances in industrial waste streams. *Id.* Dr. Brown was formerly a member of the American Society of Agronomy (1970-2001), Soil Science Society of America (1970-2001), American Chemical Society (1970-2001), and the International Society of Soil Science (1970-2001). Additionally, he served on the

editorial board for Environmental Engineering Science, formerly known as Hazardous Waste and Hazardous Materials from 1989 through 2001. *Id.*

Some of Dr. Brown's other committee assignments include the following:

- National Academy of Sciences, National Research Council Committee on Environmental Technologies Subcommittee on Landfills (1995-1998).
- EPA Review for Risk Assessment for Petroleum Industry Hazardous Waste Listing Determination (Sept 1995).
- Environmental Geosciences Advisory Committee of the American Geological Institute representing the Soil Science Society of America (1993-2000).
- National Academy of Sciences (NRC) Committee on Remedial Action Priorities for Hazardous Waste Sites (1991-1994).
- EPA Hazardous Waste Center Review Panel (1988).
- National Science Foundation, Environmental Engineering Div., Review Panel (1987-1995).
- Advisory Panel to U.S. Congressional Office of Technology Assessment (OTA) on An Assessment of the Effectiveness of the EPA in Identifying, Prioritizing and Cleaning Up Hazardous Waste Sites (1987-1995).
- Organizing Committee for SSSA Workshop on Utilization, Treatment and Disposal of Waste on Land (1985).
- Panel to Write Research Needs for Hazardous Waste Treatment and Disposal for National Science Foundation. Drexel University, PA (1986).
- EPA Technical Advisory Panel on the Adequacy of Ground Water Monitoring at Hazardous Waste Landfills (1985).
- EPA Panel to Review the Acceptability of Landfill Disposal of Sewage Sludge (1984).
- Office of Water Regulations and Standards Committee on Municipal Sludge Landfilling to Advise EPA on the Pollutants which should be Regulated for Various Disposal Options and the Methods or Procedures to be Used for Regulating such Pollutants (1984).
- Advisory Panel to U.S. Congressional Office of Technology Assessment (OTA) to Determine the Effectiveness of Current Programs to Clean Up Uncontrolled Hazardous Waste Sites (1983-84).
- EPA Science Review Panel for Environmental Engineering Research Grants (1982-1998).
- United States Environmental Protection Agency Land Treatment Task Force (1981-1985).

*Id.*

Dr. Brown has been a consultant in the field of environmental science and engineering for the past 25 years. He founded K. W. Brown and Assoc., Inc. and served as President from

4

1980 until 1991. He was employed as a principal consultant with K. W. Brown Environmental Services from 1991 until 1999 and with SIG since 2000. Consulting activities have included consultations on the cleanup and disposal of wastes, the impacts of hazardous waste on the environment, the design of hazardous waste landfills and solid waste management units, and the fate and mobility of hazardous substances in the soil, groundwater, and air. *Id.*

Dr. Brown has extensive experience in the remedial design for hazardous waste disposal sites, remediation/reclamation of contaminated and drastically disturbed lands, and the design of hazardous waste landfills and solid waste management units, including landfill liner and cap design. He has extensive experience in preparing detailed cost estimates for remediation projects dealing with in-situ chemical treatment, fixation and stabilization of metals in the environment, biodegradation, land treatment, capping and cover, and excavation with off-site disposal. *Id.*

Dr. Brown has qualified and given testimony as an expert witness in civil cases in federal and state courts, regulatory hearings, and enforcement actions pertaining to hazardous wastes, heavy metal contamination, the fate and transport of inorganic chemicals and other contaminants in environmental media, and remediation of contaminated sites, among other issues. He has offered opinions related to the fate and transport and/or clean up of metals at several Superfund sites. *Id.*

In the published opinion in the matter entitled *B.F. Goodrich v. Bertowski*, 99 F.3d 505, 525 (2d Cir. 1996), the Second Circuit commented on Dr. Brown's qualifications in the field of environmental remediation as follows: " ... it is difficult for us to imagine an expert with more experience and knowledge in the hazardous substances field than Dr. Brown."

In the published opinion in the matter entitled *Interfaith Community Organization v. Honeywell International, Inc.*, 263 F. Supp. 2d 796, 810 (D.N.J. 2003), *aff'd* 399 F.3d 248 (3d

Cir. 2005), the district court commented on Dr. Brown's qualifications and trial testimony as follows:

> I found Dr. Brown to be most believable and credible and I therefore afforded his testimony the greatest weight. Not only was he a knowledgeable and believable witness, but the subject of his testimony was perhaps the most significant in assisting the Court regarding the appropriate remediation at the Site. Dr. Brown was an excellent witness.

**B.     Plaintiffs' Motion to Compel Production of Non-existent "Drafts"**

On September 29, 2006, Handy & Harman submitted the expert report of Dr. Brown in accordance with the Eighth Case Management Order. Flax Decl., ¶3 and Exhibit A. A couple of days before the date on which the final report was to be submitted, Michael A. Golladay of SIG (the entity that provides support services for Dr. Brown) faxed to Handy & Harman's counsel, Melissa E. Flax, a draft report. Flax Decl., ¶4. The draft report was faxed at the request of Dr. Brown to Ms. Flax for purposes of ensuring that the organization of the report was in accordance with the federal rules. Declaration of Michael Golladay ("Golladay Decl."), ¶3.

Upon receipt of the report, Ms. Flax read the report and noted on the draft report several formatting concerns. Flax Decl., ¶5. On the same day that Ms. Flax received the faxed copy of the draft report, she spoke with Dr. Brown and Michael Golladay by telephone. In that conversation, Ms. Flax suggested that Dr. Brown's qualifications be moved to the front of the report (the draft report had them at the end), that all of the paragraphs in the report be numbered consecutively and that topic headings be inserted for ease of reading. She also advised Dr. Brown and Michael Golladay of the grammatical errors. Flax Decl., ¶6; Golladay Decl., ¶¶4, 5. Ms. Flax did not suggest any additions, subtractions or changes to Dr. Brown's conclusions or opinions or to any of the content of the report. Flax Decl., ¶7; Golladay Decl., ¶5.

Following the telephone conversation with Dr. Brown and Michael Golladay, Ms. Flax discarded the faxed copy of the draft report. Flax Decl., ¶8. After the telephone conversation,

6

the electronic file of the draft report was overwritten with the organizational and grammatical changes and Michael Golladay discarded the paper copy of the draft report that had been faxed to Ms. Flax. Golladay Decl., 6.

On October 30, 2006, plaintiffs emailed a deposition notice for the deposition of Dr. Brown. *See* Certification of Amy Trojecki ("Trojecki Cert."), Exhibit A. In accordance with the deposition notice, by letter dated November 27, 2006, Handy & Harman produced to plaintiffs two (2) CDs containing Dr. Brown's entire file. Flax Decl., ¶10 and Exhibit B. Dr. Brown's entire file, which was produced on two (2) CDs (containing 1,197 MB of information), has been re-checked to determine whether the draft report that was faxed to Ms. Flax still exists and it does not. Golladay Decl., ¶7.

## POINT I

## PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF A NON-EXISTENT "DRAFT" REPORT MUST BE DENIED

Although plaintiffs rely upon this Court's decision in *Synthes Spine Company, L.P. v. Walden*, 232 F.R.D. 460 (E.D. Pa. 2005), this is not a case where there is an issue relating to the withholding of information that is in the possession of an expert. The sole issue here is plaintiffs' futile request to have Handy & Harman produce a draft of Dr. Brown's report that no longer exists.

In his deposition, Dr. Brown testified that it is not his practice to retain draft reports. Trojecki Cert., Exhibit B at 48:49:5. Both the Flax Decl. and the Golladay Decl. explain that the draft report that was faxed to Ms. Flax a couple of days before the final report was to be submitted was discarded. Golladay re-checked Dr. Brown's entire file and has also confirmed that no draft reports of Dr. Brown exist. Golladay Decl., ¶7.

7

Importantly, both Dr. Brown's testimony and the Golladay Decl. explain that the only suggestions made by Ms. Flax with respect to the draft report pertained to organization of the report and some grammatical cleanup. Dr. Brown testified as follows:

**TROJECKI:** Q. Did you have discussions with Handy & Harman's lawyers about any of the drafts that you created?

**BROWN:** A. Yes.

Q. What were those discussions?

A. There were -- we were asked to change organization report a little bit. It didn't change the assertions at all or the conclusions that were drawn, just we didn't have it organized very well at the beginning. And there were some word smithing but nothing that changed anything that would change the meaning. It's my report. It's not -- written in my shop, it's not something that the lawyers –

Trojecki Cert., Exhibit B at 49:17-50:4.

Golladay's declaration states:

> 4. Subsequent to my faxing the draft report, I had a telephone conversation with Ms. Flax and Dr. Brown during which Ms. Flax suggested some changes in the organization of the report.
>
> 5. During this telephone conversation, Ms. Flax recommended that Dr. Brown's qualifications be moved to the front of the report (in the draft it was at the back), that the paragraphs be numbered and that topic headings (which appear as Roman Numerals I through X in Dr. Brown's report) be inserted. In addition, Ms. Flax suggested several minor grammatical cleanup items. These suggestions had nothing to do with the substance of the report or Dr. Brown's opinions.

Golladay Decl., ¶¶4, 5. The Flax Decl. confirms the foregoing.

The report was submitted to all parties on September 29, 2006. Flax Decl., Exhibit A. One month later, plaintiffs sent their letter and deposition notice which included a request that Dr. Brown produce his file. Flax Decl., ¶9. Handy & Harman produced Dr. Brown's entire file.

8

Flax Decl., ¶10 and Exhibit B. The file did not include the draft report since it had been discarded.

The issue of discovery of draft reports goes to the credibility of the expert. For instance, if a draft report contained different opinions from the expert's final opinions, the report could be used to discredit the expert. Here, that issue does not exist. This is not a case where the expert testified at his deposition that the draft report contained opinions or conclusions that were different than those in the final report. Dr. Brown testified that his final report and the opinions contained therein are his and his alone. The formatting changes suggested by counsel had nothing to do with the content of the report.

Plaintiffs are well aware from Dr. Brown's deposition and from Ms. Flax' email that the draft report does not exist. The current motion is nothing more than a smokescreen. Plaintiffs' true intent is revealed in footnote 1 on page 5 of their brief. Dr. Brown's report and his testimony extinguish plaintiffs' claims against Handy & Harman. As a result, as revealed in footnote 1, it is plaintiffs' intent to claim that the fact that a draft report no longer exists constitutes spoliation of evidence that plaintiffs will no doubt argue entitles them to an order limiting or barring Dr. Brown's testimony.

This Court should not permit plaintiffs to engage in these procedural machinations. Dr. Brown is a highly qualified expert whose testimony has been commended by the United States Court of Appeals for the Second Circuit and the United States District Court for the District of New Jersey. *See B.F. Goodrich v. Bertowski*, 99 F.3d 505, 525 (2d Cir. 1996); *Interfaith Community Organization v. Honeywell International, Inc.*, 263 F. Supp. 2d 796, 810 (D.N.J. 2003), *aff'd* 399 F.3d 248 (3d Cir. 2005). His testimony should be considered on the merits. The fact that the draft report no longer exists is nothing but a red herring.

Plaintiffs' current motion should be denied and plaintiffs should not be permitted to burden this Court with the spoliation motion which they have indicated in their brief they intend to file.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that plaintiffs' motion to compel drafts of the expert report prepared by Kirk W. Brown, Ph.D. be denied.

Respectfully submitted,

CARELLA, BYRNE, BAIN, GILFILLAN,
CECCHI, STEWART & OLSTEIN
Attorneys for Defendant, Handy & Harman
Tube Company, Inc.

By: _____ MF 1386
MELISSA E. FLAX
JOHN M. AGNELLO
G. GLENNON TROUBLEFIELD (Bar No. 64989)
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700
(973) 994-1744 (fax)

Dated: January 8, 2007

10