| | |
|---|---|
| AGERE SYSTEMS, INC., et al.,<br>                    Plaintiffs<br><br>v.<br><br>ADVANCED ENVIRONMENTAL<br>TECHNOLOGY CORPORATION, et al.,<br>                    Defendants | IN THE UNITED STATES<br>DISTRICT COURT FOR THE<br>EASTERN DISTRICT OF<br>PENNSYLVANIA<br><br>CIVIL ACTION<br><br>NO: 02-cv-3830 |

ORDER

AND NOW this        day of June, 2007, upon consideration of Defendant

NRM  Investment Company's motion to compel answers to contention

interrogatories propounded under Rule 33, the motion is hereby granted and

plaintiffs are ordered to furnish NRM Investment Company complete answers to

their interrogatories Numbered 2, 3, 6 and 7, and to furnish all defendants complete

answers to joint interrogatory 78 within        days from the date of this Order.

By the Court

_____

                                        J.

Edward Fackenthal
Attorney for Defendant NRM Investment Company
Attorney ID NO. 09462
LAW OFFICE OF EDWARD FACKENTHAL
One Montgomery Plaza, Suite 209
Norristown, Pennsylvania 19401
Telephone: (610) 279-3370 · Facsimile: (610) 279-0696

| | |
|---|---|
| AGERE SYSTEMS, INC., et al.,<br>                    Plaintiffs<br><br>v.<br><br>ADVANCED ENVIRONMENTAL<br>TECHNOLOGY CORPORATION, et al.,<br>                    Defendants | IN THE UNITED STATES<br>DISTRICT COURT FOR THE<br>EASTERN DISTRICT OF<br>PENNSYLVANIA<br><br>CIVIL ACTION<br><br>NO: 02-cv-3830 |

### NRM INVESTMENT COMPANY'S MOTION TO COMPEL ANSWERS TO CERTAIN CONTENTION INTERROGATORIES

TO THE HONORABLE, THE JUDGES OF THE SAID COURT:

Defendant NRM Investment Company moves this court for an order compelling plaintiffs to furnish answers to certain interrogatories.

In this CERCLA contribution proceeding Defendant NRM I, by a number of contention interrogatories sought damage computations from the plaintiffs. Although plaintiffs have stated damages in their answers, they have refused to furnish the "computation" required by Rule 26. There is no readily understandable link between the factual bases plaintiffs cite and the damages they state. Rule 33 requires the computation when the link is not readily apparent. Accordingly, for

the reasons more fully explained in the attached memorandum, Defendant NRM

Investment Co. seeks an order compelling plaintiffs to furnish answers to NRM

Investment Company's interrogatories numbered 2, 3, 6 and 7.

Defendants as a group propounded similar interrogatories, in particular joint

interrogatory 78. NRM I individually and on behalf of the other defendants

requests an order compelling plaintiffs to furnish complete answers to that

interrogatory.

Respectfully submitted,

Date: June 1, 2007        /s/ Edward Fackenthal - Signature Code EF3176
                          Edward Fackenthal
                          Attorney for Defendant NRM Investment Company

Edward Fackenthal
Attorney for Defendant NRM Investment Company
Attorney ID NO. 09462
LAW OFFICE OF EDWARD FACKENTHAL
One Montgomery Plaza, Suite 209
Norristown, Pennsylvania 19401
Telephone: (610) 279-3370 · Facsimile: (610) 279-0696

| | |
|---|---|
| AGERE SYSTEMS, INC., et al.,<br>                              Plaintiffs<br><br>v.<br><br>ADVANCED ENVIRONMENTAL<br>TECHNOLOGY CORPORATION, et al.,<br>                              Defendants | IN THE UNITED STATES<br>DISTRICT COURT FOR THE<br>EASTERN DISTRICT OF<br>PENNSYLVANIA<br><br>CIVIL ACTION<br><br>NO: 02-cv-3830 |

## NRM INVESTMENT COMPANY'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ANSWERS TO CERTAIN CONTENTION INTERROGATORIES

### Introduction

This memorandum, prepared specifically for Defendant NRM Investment Company addresses the discovery issue of whether plaintiffs must, in response to contention interrogatories, furnish their method of computing damages by explaining how the facts which they recite as the bases for their views lead to the damages they assert. Other defendants in motions to compel will address remaining issues involved in plaintiffs' deficiencies in their responses. NRM Investment, in turn, incorporates and joins in those motions.

Procedural History

The Boarhead Farm Agreement Group filed a Complaint and over time made four amendments[1] thereto all seeking contributions under CERCLA from a number of entity and individual defendants. The Complaints allege that the group members discharged more than their fair share of clean-up costs to remediate Boarhead Farm, a Superfund Site ("Boarhead Site") in Upper Black Eddy in Bucks County, Pennsylvania, and that they are entitled to recover shares from each defendant based primarily upon plaintiffs' calculation of the volumetric share of waste disposed at the Boarhead Site by each party.

In particular reference to Defendant NRM Investment Company, the Complaints allege that NRM I contracted with DeRewal Chemical Company to dispose of pickle liquor waste containing hazardous substances from 1974 through 1978 and that DeRewal transported some of that NRM I waste to the Boarhead Site. With variations regarding the nature of the specific waste and the dates of disposal, plaintiffs made similar allegations respecting the remaining defendants.

Since the filing of the initial complaint the parties engaged in a substantial amount of written and oral discovery. Included in the former was plaintiffs' production to NRM I of records allegedly maintained by another hauler, Marvin Jonas, consisting in part of ledgers and shipping documents. Also included within

---

[1] The latest amendment included the group's individual members as plaintiffs.

written discovery were NRM I interrogatories that asked plaintiffs what allocation factors they considered and their "beliefs" about the hazardous waste sent to the site by every person or entity, the volume thereof, its adverse effect, as well as the bases for their beliefs. Other defendants asked similar questions. Citing *B. Braun Medical, Inc. v. Abbott Laboratories,* 155 F.R.D. 525 (E.D. Pa., 1994) plaintiffs declined to answers these questions. To each pertinent question plaintiffs said it was a "contention interrogatory that calls for the Plaintiff to articulate theories of its case not yet fully developed and, as such, is premature."[2]  The court agreed and by a case management order *postponed* contention inquiries until later in the discovery.

Discovery proceeded with a focus on the pertinent, available information on each party's nexus to the Boarhead site.  Early depositions included the testimony of former DCC officers or record keepers, a former Jonas employee, and a number of DCC drivers who transported loads to Boarhead.  The purpose of these was to determine their knowledge of facts which may establish a nexus, if any, between the parties and the Boarhead Site.  Later depositions were taken of experts for both sides.  While plaintiffs' experts described generally what in their view defendant factories produced as waste and said that any such waste if deposited at Boarhead would have contributed to the cleanup costs, no expert for plaintiffs attempted to

---

[2] Note at this point, the focus was on prematurity, and, with the exception of work-product documents created by third persons, not a claim that such inquiry was outside the scope of discoverable material.

establish or calculate the volume of NRM I's waste or any other defendant's waste that was destined for the Boarhead Site, nor did they attempt to describe what other factor or factors would lead to a logical apportionment of responsibility for remediation costs.

After all discovery had been taken to date, it became absolutely clear that plaintiffs' determination of the percentages of waste contributed by each party and the volumes upon which shares of liability were established came from plaintiffs themselves, not some uniform or definitive set of business records.

Following the completion of expert discovery, NRM I and the other defendants again posed questions about plaintiffs' theories of apportioning liability among all of the settled and non-settled defendants. These were the recent contention interrogatories that the Court postponed earlier in the proceedings. Defendants drafted interrogatories in two parts, one encompassing matters important to *all* of the non-settling Defendants and the other in the form of separate interrogatories pertinent to the individual defendants.

Following the filing, the plaintiffs on April 17, 2007 responded by separate answers to the group and to the individuals. Part of the answers to the group contained, in chart form, alleged waste volumes, *to the gallon,* from each defendant that were deposited at Boarhead. See joint interrogatory 78 and NRM I's separate interrogatories 2, 3, 6, and 7. The answers referenced depositions and

4

paper discovery (discussed hereafter) as the factual bases for the alleged volumes. All of the Defendants concluded that the answers were deficient.

Accordingly, on April 30, 2007, defendants again acting individually and as a group prepared and sent deficiency letters to plaintiffs' counsel explaining in detail what the defendants considered to be significant gaps in the information produced.  Plaintiffs responded for the most part affirming their earlier position. Then, following E. D. Rule 26.1(f) and the tenth case management order, counsel for the defendants met with plaintiffs' counsel on May 14, 2007 in an effort to resolve the impasse.   Following discussion, plaintiffs' counsel continued to maintain his position on a number of points refusing to answer or elaborate upon plaintiffs' prior responses. NRM I is most interested in a set of questions which will provide information critical to evaluating and testing plaintiffs' theories and methodology for establishing volumetric share.  For this reason NRM moves separately to compel.

Specifically, NRM I seeks answers to the following contention interrogatories[3] which it propounded:

> 2.  If so,  [i.e. contend that DCC took NRM I pickle liquor to Boarhead]
>     a.  How much pickle liquor do you contend was disposed of at Boarhead, specifying to the best of your ability the dates and amounts of disposal?
>     b.  *Explain* the factual basis for your contention as to volume and the *method* you used to apply the facts in reaching your contention. (Note: for this and the following interrogatories, in answering, follow the requirements of the

---

[3] All of NRM I's interrogatories and plaintiffs' answers are attached as an appendix.

definitions of "fact(s) or factual basis" contained or incorporated herein.) [Italics added]

3. Do you contend that NRM pickle liquor was disposed of at sites other than Boarhead?

    c. How much pickle liquor do you contend was disposed of at other sites (whether lawful disposal or unlawful disposal), specifying to the best of your ability the location of every other site and the dates and amounts of disposal?

    d. *Explain* the factual basis for your contention as to volume and the *method* you used to apply the facts in reaching your contention. [Italics added]

6. … do you contend that any fraction of the total cleanup cost can be rationally apportioned to NRM?

7. If so,

    a. What portion can be so apportioned to NRM in the period before June 1, 1974 and what portion after May 31, 1974.

    b. Explain the factual basis for your contention and the *method* you used to apply the facts in reaching your contention. (Italics added)

    c. Did you take into consideration in reaching your conclusion about apportionment any of the following factors: (i) the ability to distinguish the NRM's waste streams from others, (ii) *the volume of NRM's waste,* (Italics added) (iii) the toxicity of NRM's waste, (iv) the degree of involvement of NRM in the generation, transportation, storage and disposal of waste, (iv) the care NRM used in disposing of waste and (vi) the co-operation of NRM in the total cleanup cost of Boarhead. (Italics added)

    d. If so, and to the extent not answered in your response to joint interrogatories, explain in detail the significance you gave each such factor recited in "c.".

The presently pertinent part of the substantially similar responses plaintiffs furnished to these questions (and to all other defendants in response to similar inquiries) is in the form of an objection:

> Plaintiffs further object to this Interrogatory to the extent that it seeks the discovery of the mental impressions, conclusions, strategies, opinions, research or legal theories of their attorneys or other representatives or information protected by the attorney-client privilege or any other applicable privilege.[4]

---

[4] The court is invited to compare this response to the earlier response complaining only about prematurity.

In a final effort to at least narrow the discovery issue, defendants wrote a confirmatory letter to plaintiffs' counsel. It said in part that at the meeting plaintiffs' counsel did decline to answer questions respecting the *methods* plaintiffs used in calculating volumetric contributions to the Boarhead site. Plaintiffs' counsel answered the confirmatory letter, saying in part:

> With respect to the *"methodology" for determining the nexus percentages*, plaintiffs have provided all of the factual information upon which their contentions are based. Plaintiffs remain unwilling to discuss with defendants why they believe these proofs lead to those conclusions. (Italics added)

Plaintiffs, in effect, respond by saying that their method is somehow based upon facts which can potentially be discerned from the case record. There are, in fact, no records or other discovery which establish volume. Assumptions – contentions – must be made. All defendants believe they are entitled to know plaintiffs' methods which led from the available record to the conclusions they reached. It is the essence of this memorandum. The methods for determining the volume of waste and thus percentage shares of liability for each party are the essence of the case which will be tried before this court.

As mentioned above, Plaintiffs' response to the joint contention interrogatories did include a summary chart listing volumes of wastes from each defendant[5] during varying nexus periods that came to Boarhead. See plaintiffs' response to joint interrogatory 78. For example, according to the chart NRM  I

---

[5] Plaintiffs other responses make clear that they rely primarily upon volume in apportioning liability.

(then operating as National Rolling Mills) produced 1,062,000 gallons of pickle liquor of which DeRewal took 491,000 gallons to the Boarhead site.  Again, plaintiffs must have derived these numbers from a methodology applied to documents produced in early discovery, the drivers' testimony and their experts' testimony.

But to repeat, upon a close examination of the recited documents, the pages referred to in the notes of testimony of the fact witnesses, and the notes of testimony from the expert witness, it is not possible to determine how plaintiffs reached their volumetric calculations.  Their method is either a carefully reasoned progression based on established facts leading to arguable liability based upon volume substantiated by the record, or it is an unsupported guess which is the proper subject of a Rule 56 motion.

## Argument

Broadly stated, the issue, as suggested by the history, is whether the remaining defendants, including NRM I as one of that group, are entitled to know how plaintiffs established the waste – in volumes attributed to each company which were used to compute the damages they seek.  The Federal Rules, in so many words, require such disclosure.

8

Rule 26(a)(1)(C) [6] entitled defendants to that information within fourteen days from the outset of the litigation. Every plaintiff is required to furnish a **computation** of damages. Notably, the rule does not provide for a *statement* of damages, but a *computation.* Plaintiffs did not within the fourteen-day period supply a computation. Later, when defendants attempted to obtain the required computation of damages, they again were rebuffed by plaintiffs who entered a plea of prematurity. Now the litigants are nearing the end of the pre-trial procedures and it will soon be time for them to prepare a pre-trial order. Certainly in light of Local Rule 16.1(d) 2. (b)(3)(A) plaintiffs cannot argue sensibly that the method of damage computation can be withheld at that time. [7] What will be an inevitable explanation just prior to trial should be explained now to enable defendants to consider timely motions before the parties undertake a pre-trial order. Plaintiffs cannot conceal their basis for assigning a volume and percentage share of liability to each defendant.

---

[6] (a) Required Disclosures; Methods to Discover Additional Matter. (1) Initial Disclosures. Except in categories of proceedings specified in Rule 26(a)(1)(E), or to the extent otherwise stipulated or directed by order, a party must, without awaiting a discovery request, provide to other parties:

  **(C) a computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under <u>Rule 34</u> the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered;**

[7] That defendants are entitled to such information in a pre-trial order, see *McCrane v. Marconi Medical Systems, Inc.* and *Szusterman v. Amoco Oil Co.* 112 Fed.Appx. 130, C.A.3 (N.J.), 2004. Each provides for methodology in damage computation.

Remember that plaintiffs depend almost exclusively[8] upon volumetric contributions to the waste deposits at Boarhead to measure liability.  They say confidently that more than 2.3 million gallons of waste were deposited at Boarhead and, again, they purport to know *to the gallon* the amounts the plaintiffs, settled defendants and non-settled defendants contributed. Moreover they are able to divide the contributions into various nexus periods.  They claim to know, again, *to the gallon,* the total volumes each of the parties and former parties produced during each period and are able to apply fractions to these totals to show the volumes each added to Boarhead.  To perform this analysis, they must know the fraction of the total production for each party and non-party that went to alternate destinations. Plaintiffs then compare the waste for each to the site to the whole to the site and assign liability to each expressed in percentages.  Damages alleged at nearly $20,000,000[9] each percentage point plaintiffs calculate is worth roughly $200,000.

We have seen that defendants cannot match the information in the references with the percentages and consequent damages plaintiffs assigned to each defendant.  They cannot, in other words, "connect the dots."  On the other hand, the plaintiffs have this critical information at their fingertips that they can disclose with no additional burden. Plaintiffs must disclose whether they used a consistent

---

[8] They ignore other Gore factors in apportionment including toxicity.

[9] With future damages being uncertain, it is difficult to measure total damages. It is assumed that the recited figure is an outside amount and assumes pumping and cleaning for a full 30 years.

methodology to establish percentages.  For tactical reasons they choose to keep it secret until the time of trial or the pre-trial order.  Defendants cannot prepare to challenge unknown facts or assumptions.

Plaintiffs' tactic is wholly inconsistent with Rule 26(b)(2)(C).[10] In placing limitations on discovery the rule takes into consideration these very considerations of whether the party seeking the discovery has an opportunity to acquire it himself (here, NRM I does not) and the relative ease the responding party has in answering the question (here, plaintiffs have no additional burden).  Since volume, according to plaintiffs, determines the extent of liability, knowledge of the plaintiffs' method for determining the liability computation is essential to the just and speedy and inexpensive determination of this suit[11] and should be made available.

The immediate controversy arises under Rule 33(c). There is nothing in Rule 33 that qualifies plaintiffs' duty to respond. In fact the cases decided thereunder

---

[10]  (b) Discovery Scope and Limits. Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

(2) Limitations.

(C) The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. The court may act upon its own initiative after reasonable notice or pursuant to a motion under Rule 26(c).

[11]  F.R.C.P. 1. The district courts have the responsibility to secure the just and speedy and inexpensive determination of every action. *Kenney v. California Tanker Co.,* C.A.3 (Del.) 1967, 381 F.2d 775, certiorari denied 88 S.Ct. 817, 390 U.S. 904, 19 L.Ed.2d 870.

emphasize the duty to produce this type of damage information which defendants have been pressing for from the outset.

A very frequently cited contention interrogatory case was written by Magistrate Judge Wayne D. Brazil from the Northern District of California in 1985. [12] Judge Brazil describes in detail the makeup and use of such interrogatories giving examples of various types of inquiries. The importance of his discussion to the present case, is the duty of the responding party not only to state his contention and take a position by so doing, but to *explain* or defend that position. The required explanation includes *how the law* (the ultimate liability of defendants) *applies to facts* (the discovery materials plaintiffs cite). To this end mental impressions,[13] when necessary are available for discovery and inquiries in this respect should be granted unless posed for an improper purpose.[14]

---

[12] *In re Convergent Technologies Securities Litigation,* 108 F.R.D. 328, 338 (N.D.Cal.1985).  (A current WestLaw® search shows that it has been cited 468 times.)

[13] Commenting on its codification of the work product doctrine in Rule 26(b)(3), [FN13] the Advisory Committee pointed out that under its amendments to Rule 33 "a party and his attorney or other representative may be required to disclose, *to some extent,* mental impressions, opinions, or conclusions."

[14] *Convergent* at 333: "After 1983, a court can determine whether any given interrogatory is "otherwise proper" only after considering, among other things, whether it is interposed for any improper purpose, and whether it is "unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation."  [FN9]  If it were clear, for example, that by using some other discovery tool a party could acquire information of comparable quality while imposing less of a burden on an opponent, a court would be constrained to rule that a contention interrogatory need not be answered, regardless of when in the pretrial period it was served.  [FN10]"

    FN9. Rule 26(g), *supra* note 6.

    FN10. *See also* Rule 26(b)(2), *supra* note 4.

Eastern District Magistrate Judge Edwin E. Naythons cited the *Convergent* case for authority[15] that a party must explain (again, not just give) a summary position when needed to clarify the relation between law and fact. The late judge Huyett of the Eastern District cites both *Convergent* and *Fischer and Porter* that a party must "take a position, and explain or defend that position, with respect to how the law applies to facts;  or to state the legal or theoretical basis for a contention" so that where appropriate (not there present) it "will contribute meaningfully to clarifying the issues in the case, narrowing the scope of the dispute, or setting up early settlement discussions, or that such answers are likely to expose a substantial basis for a motion under Rule 11 or Rule 56." [16]

Another case decided by Judge Brazil is on point in a matter where plaintiffs claim that, because, they are offering only legal opinions and theories, they can withhold the valuable information which forms the basis.[17]  In a complex case (there it was a patent case) the information must of necessity come from an interplay between a lawyer and his client; even though it consists of *quasi-legal* argument the results must be disclosed.[18] The Eastern District cites *McCormick-Morgan* with approval.[19]

---

[15] *Fischer and Porter Co. v. Tolson,* 143 F.R.D. 93, 95 (E.D.Pa.1992)

[16] *B .Braun Medical, Inc. v. Abbott Laboratories,* 155 F.R.D. 525 (E.D. Pa., 1994)

[17] *McCormick-Morgan* v. *Teledyne Indus., Inc.,* 134 F.R.D. 275, 286 (N.D.Cal.)

[18] "We presume here that the answers to contention interrogatories in a case like this are in fact written by lawyers, not parties. Parties, of course, provide substantial input, but they cannot be expected to have the range of

## Conclusion

Plaintiffs assert that the heart of defendants' nexus liability and the damages ascribable to each is based upon volume. They claim to have established from information a formula – by exact volume and percentage – to assign precise responsibility to each settled defendant and the present parties. Their wish to keep this vital information secret is counter to the spirit to the Federal Rules (Rule 1) the general discovery rules dealing with computation of damages (Rule 26) and the allowance of contention interrogatories (Rule 33) all as discussed in the cases cited. They should be ordered to supply an explanation of every step in the progression from the references they cite to the dollars they claim. Specifically NRM I requests an order requiring plaintiffs to answer questions 2, 3, 6 and 7, as quoted above, giving detail as to the volumes of NRM I's waste that went to Boarhead during every nexus period. NRM I must know how and on what basis plaintiffs seek to establish its share of liability based on volume disposed.

---

understanding of patent law or of proceedings in the patent office to reliably identify and accurately articulate all of the predicates for their legal positions.

"As we have written elsewhere, in many settings going through the trouble of writing answers to contention interrogatories cannot be justified, e.g., because the contentions are not especially subtle or complex and the evidentiary and legal bases for them either are obvious or already have been made pretty clear in other ways. In a case like this, however, it is more persuasively arguable that going through the hard work of answering contention interrogatories, at the end of the discovery period, is justified because by doing so counsel can set the case up for serious settlement negotiations or for a streamlined and rational trial."

[19] *SmithKline Beecham Corp. v. Apotex Corp.* Not Reported in F.Supp.2d, 2004 WL 739959; E.D.Pa.,2004.

On behalf of the other defendants, NRM I  also requests an order requiring plaintiffs to supply the same volumetric and other information requested of them by joint interrogatory 78.

Respectfully submitted,

Date: June 1, 2007          /s/ Edward Fackenthal - Signature Code EF3176
                            Edward Fackenthal
                            Attorney for Defendant NRM Investment Company

15

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AGERE SYSTEMS, INC., CYTEC INDUSTRIES INC., FORD MOTOR COMPANY, SPS TECHNOLOGIES, LLC and TI GROUP AUTOMOTIVE SYSTEMS, LLC | : : : : : : | Civil Action No. 02-CV-3830 (LDD) |
| Plaintiffs, | : : | **PLAINTIFFS' RESPONSES TO DEFENDANT NRM INVESTMENT COMPANY'S CONTENTION INTERROGATORIES** |
| v. | : : : | |
| ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, et al., | : : : | |
| Defendants. | : | |

Plaintiffs Agere Systems, Inc., Cytec Industries Inc., Ford Motor Company, SPS Technologies, LLC and TI Group Automotive Systems, LLC ("Plaintiffs"), by their undersigned attorneys, object and respond to the contention interrogatories of NRM Investment Company ("Defendant") as follows:

### GENERAL STATEMENTS AND OBJECTIONS

Plaintiffs hereby incorporate by reference, as if fully set forth herein, the General Statements and Objections contained in Plaintiffs' Responses to the joint contention interrogatories of Advanced Environmental Technology Corporation ("AETC"), Ashland, Inc., Carpenter Technology Corporation, fcg, inc., Handy & Harman Tube Company, Inc. and NRM Investment Company (collectively, "Defendants").

### INTERROGATORIES AND RESPONSES

Subject to and without waiving the foregoing General Objections, Plaintiffs make the following responses to the contention interrogatories of Defendant:

1.    Do you contend that any NRM pickle liquor was disposed of at Boarhead?

**ANSWER:** Plaintiffs object to this Interrogatory because it is vague and overly broad. Plaintiffs further object to this Interrogatory to the extent that it seeks the discovery of the mental impressions, conclusions, strategies, opinions, research or legal theories of their attorneys or other representatives or information protected by the attorney-client privilege or any other applicable privilege.

Without waiving any such objections, yes.

2.    If so,

       a.    How much pickle liquor do you contend was disposed of at Boarhead, specifying to the best of your ability the dates and amounts of disposal?

       b.    Explain the factual basis for your contention as to volume and the method you used to apply the facts in reaching your contention. (Note: for this and the following interrogatories, in answering, follow the requirements of the definitions of "fact(s) or factual basis" contained or incorporated herein.)

**ANSWER:** Plaintiffs object to this Interrogatory because it is overly broad and vague. Plaintiffs further object to this Interrogatory to the extent that it seeks the discovery of the mental impressions, conclusions, strategies, opinions, research or legal theories of their attorneys or other representatives or information protected by the attorney-client privilege or any other applicable privilege. By way of further objection, Defendant's definition of "factual basis" is overbroad and unduly burdensome.

Without waiving any such objections, see Plaintiffs' response to Interrogatory No. 78 of the Defendants' Joint Contention Interrogatories to Plaintiffs.

3.    Do you contend that NRM pickle liquor was disposed of at sites other than Boarhead?

a.  How much pickle liquor do you contend was disposed of at other sites (whether lawful disposal or unlawful disposal), specifying to the best of your ability the location of every other site and the dates and amounts of disposal?

b.  Explain the factual basis for your contention as to volume and the method you used to apply the facts in reaching your contention.

**ANSWER:** Plaintiffs object to this Interrogatory to the extent that it seeks information outside the scope of the contentions that Plaintiffs will make as part of their prima facie case at trial. Plaintiffs further object to this Interrogatory because it is overly broad and vague. Plaintiffs further object to this Interrogatory to the extent that it seeks the discovery of the mental impressions, conclusions, strategies, opinions, research or legal theories of their attorneys or other representatives or information protected by the attorney-client privilege or any other applicable privilege. By way of further objection, Defendant's definition of "factual basis" is overbroad and unduly burdensome.

Without waiving any such objections, see Plaintiffs' response to Interrogatory No. 78 of the Defendants' Joint Contention Interrogatories to Plaintiffs. By way of further answer, except with respect to its nexus theories, Plaintiffs will not ask the Court at trial to make findings of fact or conclusions of law concerning whether NRM pickle liquor was disposed of at particular sites other than Boarhead.

4.  Do you contend that any NRM pickle liquor deposited at Boarhead contained metals other than chlorinated iron, or any metallic or nonmetallic chemicals of concern?

**ANSWER:** Plaintiffs object to this Interrogatory to the extent that it seeks information outside the scope of the contentions that Plaintiffs will make as part of their prima facie case at

trial.  Plaintiffs object to this Interrogatory because it is overly broad, vague, confusing and
ambiguous.  Plaintiffs further object to this Interrogatory to the extent that it seeks the discovery
of the mental impressions, conclusions, strategies, opinions, research or legal theories of their
attorneys or other representatives or information protected by the attorney-client privilege or any
other applicable privilege.

Without waiving any such objections, Plaintiffs contend that the metals in NRM pickle
liquor include, but are not limited to, mercury, silver and chromium.  By way of further answer,
see Plaintiffs' response to Interrogatory No. 78 of the Defendants' Joint Contention
Interrogatories to Plaintiffs.  By way of further answer, see Jurgen H. Exner, Ph.D.'s June 29,
2006 expert report.

5.    If so,

    a.    Identify all of its constituents

    b.    Specify which if any is a hazardous substance, and

    c.    Explain the factual basis for your contention as to the constituent(s),
whether they are hazardous, and in each situation, the method you used to
apply the facts in reaching your contention.

**ANSWER:**  See Plaintiffs' response to Interrogatory No. 4.  By way of further answer,
Plaintiffs object to Defendant's definition of "factual basis" because it is overbroad and unduly
burdensome.

6.    To the extent not answered in responding to the joint interrogatories propounded
by the defendants, do you contend that any fraction of the total cleanup cost can
be rationally apportioned to NRM?

**ANSWER:**  Plaintiffs object to this Interrogatory because it is overly broad, vague, and
unduly burdensome.  Plaintiffs further object to the Defendants' definition of "Total Cleanup

Cost" because it is overly broad, vague, ambiguous, unduly burdensome and not limited in time. Without waiving any such objections, see Plaintiffs' response to Interrogatory No. 78 of the Defendants' Joint Contention Interrogatories to Plaintiffs.

    7.    If so,

        a.    What portion can be so apportioned to NRM in the period before June 1, 1974 and what portion after May 31,1974.

        b.    Explain the factual basis for your contention and the method you used to apply the facts in reaching your contention.

        c.    Did you take into consideration in reaching your conclusion about apportionment any of the following factors: (i) the ability to distinguish the NRM's waste streams from others, (ii) the volume of NRM's waste, (iii) the toxicity of NRM's waste, (iv) the degree of involvement of NRM in the generation, transportation, storage and disposal of waste, (iv) the care NRM used in disposing of waste and (vi) the co-operation of NRM in the total cleanup cost of Boarhead.

        d.    If so, and to the extent not answered in your response to joint interrogatories, explain in detail the significance you gave each such factor recited in "c".

**ANSWER:** Plaintiffs object to this Interrogatory to the extent that it seeks information outside the scope of the contentions that Plaintiffs will make as part of their prima facie case at trial. Plaintiffs object to this Interrogatory because it is overly broad, vague, confusing and ambiguous. Plaintiffs further object to this Interrogatory to the extent that it seeks the discovery of the mental impressions, conclusions, strategies, opinions, research or legal theories of their attorneys or other representatives or information protected by the attorney-client privilege or any

other applicable privilege.  By way of further objection, Defendant's definition of "factual basis" is overbroad and unduly burdensome.

Without waiving any such objections, see Plaintiffs' response to Interrogatory No. 78 of the Defendants' Joint Contention Interrogatories to Plaintiffs.

8.    Do Plaintiffs contend that the Total Cleanup Costs can be apportioned among the other entities identified in items 1 through 70 of the joint contention interrogatories propounded by the defendants? If so,

  a.    What facts did Plaintiffs take or will they take into account in making an apportionment?

  b.    How did Plaintiffs apply the facts in their answer to "A" to reach their conclusion that Total Cleanup Costs can be apportioned?

  c.    To the extent not answered in A. or B. above, did the facts Plaintiffs took into account include any of the following: (i) the ability to distinguish PRP waste streams from one another, (ii) the volume of each PRP's waste, (iii) the toxicity of each PRP's waste, (iv) the degree of involvement of each PRP in the generation, transportation, storage and disposal of waste, (v) the care each PRP used in disposing of waste and (vi) the cooperation of each PRP in bearing a portion of the Total Cleanup Costs for the Site. If so, explain in detail the significance given to each such factor for each PRP. (For the purpose of this interrogatory, the PRPs are those entities identified in questions 1 through 70.)

**ANSWER:**  Plaintiffs object to this Interrogatory to the extent that it seeks information outside the scope of the contentions that Plaintiffs will make as part of their prima facie case at trial.  Plaintiffs further object to this Interrogatory because it is overly broad, vague, confusing

and ambiguous. Plaintiffs further object to this Interrogatory to the extent that it seeks the

discovery of the mental impressions, conclusions, strategies, opinions, research or legal theories

of their attorneys or other representatives or information protected by the attorney-client

privilege or any other applicable privilege. Plaintiffs further object to the Defendants' definition

of "Total Cleanup Cost" because it is overly broad, vague, ambiguous, unduly burdensome and

not limited in time. By way of further objection, Defendant's definition of "facts" is overbroad

and unduly burdensome.

      Without waiving any such objections, see Plaintiffs' response to Interrogatory No. 78 of

the Defendants' Joint Contention Interrogatories to Plaintiffs.

      9.     Do you contend that any Plaintiff has spent, or is obliged to spend for future costs,
amounts in excess of its equitable share of the Total Cleanup Cost?

          a.     If so, and to the extent not answered in response to joint interrogatories,
state what each plaintiff contends to be the amount it has already spent and
that it will be obliged to spend, and compare those amounts with what it
contends to be its equitable share of the Total Cleanup Cost.

          b.     If so, what does each Plaintiff contend to be the equitable share of every
other PRP. (For the purpose of this interrogatory, the PRPs are those
entities identified in questions 1 through 70.)

          c.     In answering a. and b. and to the extent not otherwise answered in
response to these interrogatories, state what facts Plaintiffs took into
account in answering this interrogatory and how Plaintiffs applied those
facts in reaching their conclusion.

      **ANSWER:** Plaintiffs object to this Interrogatory to the extent that it seeks information

outside the scope of the contentions that Plaintiffs will make as part of their prima facie case at

trial. Plaintiffs further object to this Interrogatory because it is overly broad, vague, confusing and ambiguous. Plaintiffs further object to this Interrogatory to the extent that it seeks the discovery of the mental impressions, conclusions, strategies, opinions, research or legal theories of their attorneys or other representatives or information protected by the attorney-client privilege or any other applicable privilege. Plaintiffs further object to the Defendants' definition of "Total Cleanup Cost" because it is overly broad, vague, ambiguous, unduly burdensome and not limited in time. By way of further objection, Defendant's definition of "facts" is overbroad and unduly burdensome.

Without waiving any such objections, see Plaintiffs' response to Interrogatory No. 78 of the Defendants' Joint Contention Interrogatories to Plaintiffs. By way of further answer, see Plaintiffs' response to Interrogatory No. 73 of the Defendants' Joint Contention Interrogatories to Plaintiffs.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AGERE SYSTEMS, INC., CYTEC INDUSTRIES INC., FORD MOTOR COMPANY, SPS TECHNOLOGIES, LLC and TI GROUP AUTOMOTIVE SYSTEMS, LLC | : | |
| | : | |
| Plaintiffs, | : | Civil Action No. 02-CV-3830 (LDD) |
| | : | |
| v. | : | |
| | : | |
| ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, et al., | : | |
| | : | |
| Defendants. | : | |

## CERTIFICATE OF SERVICE

I certify that on this day I served a copy of Plaintiffs' Responses To Contention Interrogatories of NRM Investment Company by electronic mail and first-class postage prepaid United States mail, on the counsel listed on the service list.

Amy M. Trojecki

Dated: 4/17/07

9

## VERIFICATION

Jocelyn T. de Grandpre, being duly sworn, deposes and says that she is an authorized agent of Agere Systems Inc., and that she verifies the foregoing responses and objections to Interrogatories to the Plaintiffs from NRM Investment Company, for and on behalf of Agere Systems Inc.; that the matters stated therein are not within the personal knowledge of deponent; that the facts stated therein have been assembled by authorized employees and counsel of Agere Systems Inc.; and deponent is informed that the facts stated therein are true.

Dated: April 13, 2007

## VERIFICATION

Thomas E. Mesevage, being duly sworn, deposes and says that he is an authorized agent of Cytec Industries Inc. and that he verifies the foregoing responses and objections to Interrogatories to the Plaintiffs from NRM Investment Company, for and on behalf of Cytec Industries Inc.; that the matters stated therein are not within the personal knowledge of deponent; that the facts stated therein have been assembled by authorized employees and counsel of Cytec Industries Inc. and deponent is informed that the facts stated therein are true.

Dated: <u>April 16, 2007</u>        Signature: _____

Thomas E. Mesevage
Safety, Health and Environmental Counsel
Cytec Industries Inc.
5 Garret Mountain Plaza
West Paterson, NJ 07424

## <u>VERIFICATION</u>

Timothy M. Guerriero, being duly sworn, deposes and says that he is an authorized agent of TI Group Automotive Systems, L.L.C. and that he verifies the foregoing responses and objections to Interrogatories to the Plaintiffs from NRM Investment Company, for and on behalf of TI Group Automotive Systems, L.L.C.; that the matters stated therein are not within the personal knowledge of deponent; that the facts stated therein have been assembled by authorized employees and counsel of TI Group Automotive Systems, L.L.C.; and deponent is informed that the facts stated therein are true.

Dated:  April 12, 2007

_____
Timothy M. Guerriero, Secretary

## VERIFICATION

_____Ian Cross_____, being duly sworn, deposes and says that he is an authorized agent of SPS Technologies, LLC and that he verifies the foregoing responses and objections to the Interrogatories to the Plaintiffs from NRM Investment Company, for and on behalf of SPS Technologies, LLC; that the matters stated therein are not within the personal knowledge of deponent; that the facts stated therein have been assembled by authorized employees and counsel of SPS Technologies, LLC and deponent is informed that the facts stated therein are true.

Dated: 12 April 2007

Thomas S. Cross

## VERIFICATION

_____Kathryn Lamping_____, being duly sworn, deposes and says that he is an

authorized agent of Ford Motor Company, and that he verifies the foregoing responses and

objections to Interrogatories to the Plaintiffs from NRM Investment Company, for and on behalf

of Ford Motor Company; that the matters stated therein are not within the personal knowledge of

deponent; that the facts stated therein have been assembled by authorized employees and counsel

of Ford Motor Company and deponent is informed that the facts stated therein are true.

Dated:                                     _____

Kathryn S. Lamping
Assistant Secretary

Edward Fackenthal
Attorney for Defendant NRM Investment Company
Attorney ID NO. 09462
LAW OFFICE OF EDWARD FACKENTHAL
One Montgomery Plaza, Suite 209
Norristown, Pennsylvania 19401
Telephone: (610) 279-3370 · Facsimile: (610) 279-0696

| | |
|---|---|
| AGERE SYSTEMS, INC., et al.,<br>                 Plaintiffs<br><br>v.<br><br>ADVANCED ENVIRONMENTAL<br>TECHNOLOGY CORPORATION, et al.,<br>                 Defendants | IN THE UNITED STATES<br>DISTRICT COURT FOR THE<br>EASTERN DISTRICT OF<br>PENNSYLVANIA<br><br>CIVIL ACTION<br><br>NO: 02-cv-3830 |

## COUNSEL'S DISCOVERY CERTIFICATION

Pursuant to Eastern District Rule 26.1(f) and the tenth case management order in this case, the undersigned counsel for Defendant NRM Investment Company certifies that the parties, after reasonable effort, was unable to resolve the discovery dispute which is the subject of the attached motion and memorandum.

Date: June 1, 2007       <u>/s/ Edward Fackenthal - Signature Code EF3176</u>
                                 Edward Fackenthal
                                 Attorney for Defendant NRM Investment Company

Edward Fackenthal
Attorney for Defendant NRM Investment Company
Attorney ID NO. 09462
LAW OFFICE OF EDWARD FACKENTHAL
One Montgomery Plaza, Suite 209
Norristown, Pennsylvania 19401
Telephone: (610) 279-3370 · Facsimile: (610) 279-0696

| | |
|---|---|
| AGERE SYSTEMS, INC., et al.,<br>                    Plaintiffs<br><br>v.<br><br>ADVANCED ENVIRONMENTAL<br>TECHNOLOGY CORPORATION, et al.,<br>                    Defendants | IN THE UNITED STATES<br>DISTRICT COURT FOR THE<br>EASTERN DISTRICT OF<br>PENNSYLVANIA<br><br>CIVIL ACTION<br><br>NO: 02-cv-3830 |

CERTIFICATE OF SERVICE

I, Edward Fackenthal, hereby certify that service of Defendant NRM
Investment Company's motion to compel answers to certain contention
interrogatories was made upon the following parties by electronic mail and
mailing, first class, postage prepaid, a true copy on June 1, 2007:


Glenn A. Harris, Esquire
Ballard Spahr Andrews & Ingersoll, LLP
Plaza 1000 - Suite 500
Main Street
Voorhees, NJ 08043-4636

Richard C. Biedrzycki, Esquire
Phelan, Pettit & Biedrzycki
The North American Building
Suite1600
121 South Broad Street
Philadelphia, PA  19107


Seth v.d.H. Cooley, Esquire
Duane Morris LLP
Suite 4200
One Liberty Place
Philadelphia, PA  19103-7396

Melissa E. Flax, Esquire
Carella, Byrne, Bain, Gilfillan, Cecchi
5 Becker Farm Road
Roseland, NJ  07068-1739

Jeffrey L. Pettit, Esquire
Phelan Pettit & Biedrzycki
121 South Broad Street, Suite 1600
Philadelphia, PA  19107

Laurie Sands, Esquire
Wolff & Samson, PC
The Offices at Crystal Lake
One Boland Drive
West Orange, NJ  07052

Lynn Wright, Esquire
Edwards Angell  Palmer & Dodge LLP
750 Lexington Avenue
New York, NY  10022

Date: June 1, 2007        /s/ Edward Fackenthal - Signature Code EF3176
                          Edward Fackenthal
                          Attorney for Defendant NRM Investment Company