**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AGERE SYSTEMS, INC., et al. | : | |
| | : | |
| Plaintiffs | : | Civil Action No. 02-CV-3830 |
| v. | : | |
| | : | |
| ADVANCED ENVIRONMENTAL | : | |
| TECHNOLOGY CORPORATION, et al., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
ASHLAND CHEMICAL, INC.'S MOTION TO COMPEL
PLAINTIFFS ANSWERS TO CONTENTION INTERROGATORIES**

## I.    INTRODUCTION

Defendant Ashland Chemical Inc. ("Ashland") files this Motion pursuant to Paragraph (A) (4) of the Tenth Case Management Order to compel Plaintiffs to respond to certain contention interrogatories filed in accordance with prior Case Management Orders in this litigation. Plaintiffs have objected generally and specifically to virtually all of Defendants' Joint Contention Interrogatories and contention interrogatories of specific defendants including Ashland and otherwise limited their responses. This motion addresses six issues with respect to the Plaintiffs' responses which, in most instances, affect numerous Contention Interrogatories. Other Defendants are filing motions on other distinct issues. Ashland incorporates those motions by reference.

## II.  <u>HISTORY OF THE DISPUTE</u>

Plaintiffs seek contribution from Defendants for costs incurred by each Plaintiff for the remediation of the Boarhead Farm Superfund Site under CERCLA and the Pennsylvania Hazardous Site Cleanup Act.  During the initial discovery phase of this litigation, Ashland and other Defendants served Interrogatories addressed to the Plaintiff, some of which included contention interrogatories.  Plaintiffs objected to answering any contention interrogatories on the grounds that they were premature.  These objections lead to the filing of several motions by the Defendants, including Ashland's Motion to Strike Plaintiffs' Untimely and Improper Objections to Ashland's Interrogatories and Document Requests and to Compel More Specific Responses Thereto filed on December 20, 2004.  The Court resolved these motions by Order dated June 23, 2005, which included the following pertinent provisions:

> 1.a.    Defendant's [Ashland Chemical Co.] Motion is DENIED. Defendant's Motion, insofar as it seeks to compel responses to so-called "contention interrogatories," is premature.  However, Defendant may submit narrowly-tailored contention interrogatories to Plaintiff at the close of expert discovery.  If appropriate, the Court will consider and favorably review a Motion to Compel and/or a reasonable extension of discovery at that time.

> 6.    Upon consideration of Plaintiffs' Motion for Protective Order (Doc. No. 138), filed March 16, 2005, it is hereby ORDERED that Plaintiffs' Motion is GRANTED in part, and DENIED in part.  As discussed above, questions regarding contentions and contribution are premature.  Moreover, the Court agrees with the holding in <u>SmithKline Beecham Corp. v. Apotex</u>, 2004 WL 739959, at *3 (E.D. Pa. March 23, 2004), that contention interrogatories are more appropriate than Rule 30(b)(6) depositions to elicit the party's legal conclusions.  Therefore, it is hereby ORDERED that Defendants may not question deponents on those subjects and Plaintiffs' motion is GRANTED in that respect. However, Defendants may depose a corporate designee of Boarhead Farm Agreement Group on nine (9) days notice. Therefore, Plaintiffs' motion is DENIED in that respect.

(Doc. No. 169.)

Following this Order, the parties engaged in additional fact discovery. The Court's Eighth Case Management Order, dated May 16, 2006 addressed expert discovery. It also ordered:

> 5.    Defendants may serve Plaintiffs with contention interrogatories on or before January 15, 2007 in accordance with the Court's June 23, 2005 Order (Doc. No.169), to which Plaintiffs will respond as required by F.Rule.Civ.P. 33(b).

(Doc. No. 194.)

Furthermore, the Eighth Case Management Order provided in Paragraph 7:

> After the close of this discovery period, the Court will schedule a case management conference to determine a framework for the remainder of this action. If appropriate, the Court will consider motions to compel and/or a reasonable extension of discovery at that time, in accordance with the Court's June 23, 2005 Order (Doc. No. 169). Prior to the conference, the parties shall confer in good faith to abide by the terms of this Order.

(Doc. No. 194.)

This order was modified on February 13, 2007 at the request of the parties to require expert discovery to be concluded by February 28, 2007 (rather than December 20, 2006) and authorized Defendants to serve contention interrogatories on or before March 15, 2007 in accordance with the Court's June 23, 2005 Order. (Doc. No. 225)

Defendants served Joint Contention Interrogatories and Ashland and certain Defendants served more limited contention interrogatories. Plaintiffs responded to each set of contention interrogatories on April 17, 2007. Defendants' Joint Contention Interrogatories with Plaintiffs' responses and Ashland's Contention Interrogatories with Plaintiffs' responses are attached as Exh. "1" and "2" respectively).

The Court convened a Case Management Conference on April 24, 2007 in accordance with Paragraph 7 of the Eighth Case Management Order. The parties conferred in good faith

prior to the conference in an effort to resolve their differences over discovery, the responses to joint contention interrogatories and trial schedule.   As a result of the case management conference, the Court issued its Tenth Case Management Order (Doc. No. 231) which established a series of steps to resolve disputes over the Plaintiffs' responses to contention interrogatories. On April 30, 2007, Defendants sent letters identifying the deficiencies in the Plaintiffs' responses as required by paragraph 1 of the Tenth Case Management Order.   One letter was sent concerning the deficiencies in the responses to the Joint Contention Interrogatories (Exh. "3") and another letter was sent with respect to answers to both Ashland's contention interrogatories and the Joint Contention Interrogatories affecting Ashland (Exh. "4".)    Plaintiffs responded to these deficiencies on May 7, 2007 by providing additional information with respect to some of the interrogatories, and clarifying some of their answers.   A copy of the Plaintiffs' responses to deficiency letters dated May 7, 2007 for the Joint Contention Interrogatories is attached as Exhibit "5," and for Ashland's contention interrogatories is attached as Exhibit "6".   As further directed by paragraph 3 of the Tenth Case Management Order, the parties conferred on May 14, 2007 in an attempt to resolve some of the outstanding disputes.   Some were resolved, but other substantive and crucial matters were not.   Letters memorializing these discussions are attached as Exhibits "7" and "8" respectively.   Ashland now files this motion to compel Plaintiffs' responses to certain Joint Contention Interrogatories that encompass significant issues that have always been in this litigation and more specific issues concerning Plaintiffs' contentions regarding Ashland.

III.    **ARGUMENT**

    A.    **Joint Contention Interrogatories**

        1.    **Plaintiffs Improperly Objected to Defendants' Contention Interrogatories On the Ground That They Seek Information Outside of the Contentions That Plaintiffs Will Make as Part of Their Prima Facie Case at Trial.**

In paragraph 2 of their "General Statements and Objections" to Defendants' Joint Contention Interrogatories (Exh. "1"), Plaintiffs assert the following objection insofar as the "interrogatories seek information outside the scope of the contentions that Plaintiffs will make as part of their prima facie case at trial":

    2.    Plaintiffs object to Defendants' . . . Interrogatories to the extent that they seek information outside the scope of the contentions that Plaintiffs will make as part of their prima facie case at trial.  Plaintiffs reserve the right to make any factual and legal contentions, whether expressly set forth in their response to these Interrogatories or not, in response to positions taken by Defendants at trial.

This General Objection is repeated in response to many of Plaintiffs' responses to Defendants' Joint Interrogatories, as well as in Plaintiffs' responses to Ashland's Contention Interrogatories (Exh. "2").  For the reasons discussed below, Ashland and other Defendants respectfully contend that this objection is unfounded, and requests that it be stricken, and that Plaintiffs be required to fully respond to those contention interrogatories wherein either no response was provided, or only a partial response was provided based thereon.[1]

---

[1]    Those Interrogatories to which no or only a partial answer was given because of these objections are 29-32, 47, 48, 53-66, 72, 111, 124, 125.  The specific Ashland Contention Interrogatories at issue is number 3.  Other issues with respect to specific Joint Contention Interrogatories are either addressed herein, or in the Motions filed by other Defendants, including NRM Investment Co., fcg, inc. and Carpenter Technology Corp., which Motions are incorporated herein by reference.

Plaintiffs have not cited any authority for their position, nor is Ashland aware of any. Indeed, Rule 26(b)(1) expressly allows a party to "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1); see, e.g., In Re Automotive Refinishing Paint Antitrust Litigation, No. MDL 1426, 2006 WL 1479819, *2 (E.D. Pa.) (slip. op. May 26, 2006).   The information sought need not be directly admissible as long as it "appears reasonably calculated to lead to the discovery of admissible evidence."  Rule 33 was amended to expressly contemplate contention interrogatories, now providing that such interrogatories are "not necessarily objectionable merely because an answer to the interrogatory involves an opinion or contention that relate to fact or the application of law to fact." Fed.R.Civ.P. 33(c); see, e.g., ACLU v. Gonzales, 237 F.R.D. 120,  *123 (E.D. Pa. 2006)(mem.). Rule 33(c) and the Advisory Committee Note make it clear that timely contention interrogatories are proper if designed to narrow the issues at trial and provide fair notice of all relevant issues. See, e.g., id. at *123-24.  As outlined below and in the Motions submitted by other Defendants, the contention interrogatories at issue clearly meet these standards, and Plaintiffs' attempt to evade their obligation to provide the information sought by creating a new and unfounded distinction between contentions in their prima facie case or otherwise must be rejected.[2]

---

[2]    As discussed at the conference with Judge Davis on April 24, 2007, Defendants contend that Plaintiffs' objection is unwarranted in that the facts that form the subject of these contention interrogatories may be facts presented by one or more of the Defendants at trial. Defendants are entitled to know whether and how Plaintiffs will contest such factual allegations. In such regard, Ashland notes that Plaintiffs do not aver in their responses to the contention interrogatories, or any of the correspondence between the parties, that they have no position or "contentions" to the questions posed.  Furthermore, it is telling that, as set forth above, Plaintiffs expressly assert in paragraph 2 of their General Objections that "Plaintiffs reserve the right to make any factual and legal contentions, whether expressly set forth in their response to these Interrogatories or not, in response to positions taken by Defendants at trial."

2.    **Plaintiffs' Responses to Contention Interrogatories 67–70 are Deficient Because They Fail to Address the Disposal of Wastes on the Site Prior to 1972.**

Defendants are aware through other evidence uncovered during discovery that DeRewal purchased the Site during 1969, and that Site was used for waste disposal before 1972. In their response to Joint Contention Interrogatories 67-70 (Exh. "1"), Plaintiffs state that they will request findings of fact and conclusions of law that that drummed and bulk waste hauled by DCC beginning in 1972, was disposed of at the Site. Further, Plaintiffs state that they will not request findings of fact or conclusions of law that drummed and bulk waste hauled by Globe was disposed of on the Site at any time. Plaintiffs' response does not address the 1969-72 period as to DCC, nor does it address the disposal of waste by Globe during any time. If the Plaintiffs contend that DCC did not haul and dispose of waste on Site before 1972, and that Globe never hauled and disposed of wastes on Site, Contention Interrogatory Nos. 69 (A) through 70(A) requested the factual and legal bases for these negative responses. These bases were not provided.

3.    **Plaintiffs' Responses to Contention Interrogatories 76 to 82 are Deficient Because They Fail to State Each Plaintiff's Contention as to the Total Clean Up Costs for OU-1 and OU-2 Incurred by Each Plaintiff and Each Plaintiff's Allocable Share**

In Joint Contention Interrogatories 76 to 82 (Exh. "1"), Defendants, including Ashland, requested each Plaintiff to state their contention on the fundamental elements of their contribution action under CERCLA § 113(f) - the amount that each Plaintiff paid toward OU-1 and OU-2 response costs and each Plaintiff's allocable/equitable share of those costs.

Plaintiffs cannot dispute that these are essential contentions of each Plaintiff's prima facie case of contribution. In In the Matter of Reading Co., 115 F.3d 1111 (3d Cir. 1997), the Court of

Appeals recognized the federal common law basis of CERCLA § 113(f) in stating that:

> In passing § 113(f), Congress acted to codify existing federal common law and to replace the judicially crafted measure with an express statutory remedy.

Id. at 1119.   The Reading Court correctly noted that CERCLA does not define the term "contribution."   Id. at 1120.   The Court further referenced Restatement (Second) of Torts § 886(a) as the embodiment of the "traditional, common law sense" of contribution that Congress intended to be reflected in Section 113(f).   Id. at 1124.   See also United States v. Compaction Systems Corp., 88 F. Supp. 2d 339, 351-352 (D.N.J. 1999); E.I. Du Pont De Nemours and Co. v. United States, 297 F. Supp. 2d 740, 746-747 (D.N.J. 2003); aff'd, 460 F.3d 515 (3d. Cir. 2006), petition for cert filed, 75 U.S.L.W. 3296 (Nov. 21, 2006).

Section 886(a) of the Restatement (Second) of Torts reads as follows:

> (1) Except as stated in Subsections (2), (3) and (4), when two or more persons become liable in tort to the same person for the same harm, there is a right of contribution among them, even though judgment has not been recovered against all or any of them.

> (2) The right of contribution exists only in favor of a tortfeasor who has discharged the entire claim for the harm by paying more than his equitable share of the common liability, and is limited to the amount paid by him in excess of his share.   No tortfeasor can be required to make contribution beyond his own equitable share of the liability.

> (3) There is no right of contribution in favor of any tortfeasor who has intentionally caused the harm.

> (4) When one tortfeasor has a right of indemnity against another, neither of them has a right of contribution against the other.

The significant language for the present motion is the first sentence of subparagraph (2) -- "[t]he right of contribution exists only in favor of a tortfeasor who has discharged the entire claim for the harm by paying more than his equitable share of the common liability, and is

limited to the amount paid by him in excess of his share." Thus, each Plaintiff in this case must necessarily plead and prove, at a minimum, what it paid in settlement and that its payment exceeded its "fair share of the overall liability." New Castle County, supra, 111 F.3d at 1122 (citation omitted). Defendants are entitled to know what each Plaintiff's contention is on these two key elements of their claims.

Therefore, in Joint Contention Interrogatory 76, Defendants simply requested each Plaintiff to state its contention as to the Total Clean Up Cost for OU-1 and OU-2 that that Plaintiff incurred. Joint Contention Interrogatory 77 through 82 asked each Plaintiff to state the logical follow-up contention -- what is each Plaintiff's allocable/equitable share of the Total Clean Up Cost. Responses to these contention interrogatories would quantify each Plaintiff's contribution claim by stating each Plaintiff's contention of what it has and will pay for response costs and what it should have to pay for response costs.

Plaintiffs' responses to these Contention Interrogatories are inadequate. First, Plaintiffs' response to Interrogatory 76, which addressed how much of the response costs were incurred by each Plaintiff, cross-referenced the response to Joint Contention Interrogatory 73. That response stated only Plaintiffs' contention as to how much each Plaintiff paid into the fund established by the Plaintiffs and other members of the OU-1 and OU-2 groups from which response costs were paid.[3] The amounts each Plaintiff paid into these funds is not the same as each Plaintiff's "true" contribution to response costs which Plaintiffs either refuse to disclose or which have not been calculated. Plaintiffs' responses to Joint Contention Interrogatories 77 to 82, which requested each Plaintiff's contention as to its allocable/equitable share of response costs, cross-referenced

---

[3]     The letter from Plaintiffs' counsel dated May 7, 2007 (Exh. "5") provided more detailed information on the payments.

Plaintiffs' responses to Joint Contention Interrogatories 73 and 78.  Again, those responses are inadequate because Plaintiffs merely state that their contention is "Plaintiffs will ask the Court at trial to rule that they have <u>collectively paid</u> to date an amount in excess of <u>their</u> equitable share of those costs identified above."  (p. 41) (emphasis added).  Plaintiffs' counsel's May 7, 2007 letter repeats this contention that Plaintiffs, <u>collectively</u>, have paid an amount in excess of their equitable share which it calculates to be 17.91%.  (Exh. "5").

Defendants assume that the reason that Plaintiffs refuse to state their contention as to the amount of response costs each Plaintiff has incurred and the allocable/equitable share of each Plaintiff is that Plaintiffs have not reached a consensus among themselves as to their respective equitable shares.  Indeed, Paragraph 16 of the Fourth Amended Complaint (Doc. No. 172) avers only that "the Agreement Group Members[4] have agreed that they will, at some future time, <u>and not in this civil action</u>, reach a final allocation among themselves applicable to all costs associated with group activities, including the costs of cleanup work comprising OU-1 and OU-2."  (Emphasis added).  Plaintiffs further admit in paragraph 21 of the Fourth Amended Complaint that the contributions they have made towards OU-2 costs have been based on an interim allocation among them that does not bind any of them.  Adding to the uncertainty is the allegation in paragraph 18 that the Plaintiffs have also entered into an agreement with two other entities (only one of which is identified (¶ 101) and who is a defendant in this litigation), who allegedly also have contributed to the costs of the OU-1 remedial action.  According to that Paragraph, those parties' contributions were based upon yet another "interim allocation" that, again, does not bind either the Plaintiffs or the two entities.

---

[4]     The preamble to the Fourth Amended Complaint identifies the "Agreement Group Members" as Agere, Cytec, Ford, SPS and TI.

Documents produced in discovery reveal that the amounts paid by each Plaintiff for OU-1 response costs as indicated in Plaintiffs' response to Joint Contention Interrogatory 73 were merely interim payments based upon a division of the response costs into five shares with Plaintiffs Cytec, Ford, SPS and Agere paying a full share and the fifth share being divided by NRM Investment and Worthington Industries.  Plaintiffs Cytec, Ford and SPS were originally parties to a 1999 "Agreement in Principle."  (Repository Document PHKS-071738 - PHKS-071747, attached as Exh. "9").  Paragraph 7(a) provided that the initial allocation of OU-1 costs would be on a per capita basis with the National Rolling Mills Plant regarded a single share to be divided by Defendant NRM Investment, and non-party Worthington Steel.  Paragraph 7(b) provided that the parties would agree to an interim allocation within nine months of the date of the agreement and reach a non-binding "Final Allocation."

Subsequently, in 2000, Plaintiffs Cytec, Ford and SPS signed a "Boarhead Farm Site PRP Group Organization Agreement" (Repository Document PHKS071644-071666, attached as Exh. "10").  Under paragraph 7.1 of this Agreement, each member was required to participate in a non-binding process for allocation "in accordance with the Non-Binding Allocation Agreement for the Site."[5]  According to paragraph 8.4 (a), until an agreement was reached in allocation, response costs would be allocated on a per capita basis with a share of the National Rolling Mills Plant "divided among current and former owners."

A similar arrangement was apparently made for OU-2 response costs.  According to an e-mail dated June 17, 2003 (Repository Document PHKS-073639-073640, attached as Exh. "11"), a OU-2 PRP Group Organization Agreement was drafted but never signed by the parties.  Later correspondence indicates that Plaintiffs Cytec, Ford and TI paid equal shares and Agere made a

---

[5]    The Non-Binding Allocation Agreement is not in the Document Repository.

11

much smaller contribution of one-tenth of the OU-2 costs with no payment for the EPA's past costs unless Agere was allocated liability.  (Agere May 31, 2001 Letter, attached as Exh. "12". John P. Judge June 13, 2001 letter attached as Exh. "13").

Clearly, Plaintiffs' responses to the Joint Contention Interrogatories do not state whether and in what amount any particular Plaintiff has made a true contribution to an OU-1 or OU-2 settlement and, consequently, whether or not a particular Plaintiff has paid or ever will pay an amount that exceeded its fair share of liability for overall costs.  Potentially, one or more of the Plaintiffs ultimately might contribute nothing to the settlement with the United States because a final allocation reached privately after this civil action concludes (and therefore out of earshot of this Court) might assign one hundred percent of the Plaintiffs' collective interim liability payments to the other Plaintiffs.  If, on the other hand, Plaintiffs have already made a final allocation, there is no reason why that should not be stated.

To further add to the uncertainty and the need for more specificity in the Plaintiffs' responses to the Contention Interrogatories, Plaintiffs stated in their responses and as further explained in the response to Defendants' deficiency letter, Plaintiff Agere entered into a settlement agreement on May 30, 2007 with Plaintiffs Cytec, Ford, SPS and TI Group. (Repository Document BSAI 102980-102933 (attached as Exh. "14").  Under that Agreement, Plaintiffs Cytec, Ford, SPS and TI paid Agere $400,000 in settlement and will receive an assignment of Agere's rights to contributions against the Defendants in this action.  In response the Defendants' deficiency letter, Plaintiffs have responded by stating that they will seek to collect on Agere's behalf its alleged right to contribution from the Defendants.

Plaintiffs offer no justification for refusing to state each Plaintiff's specific contention as to contribution costs they have individually paid or their equitable share of the response costs.

This view of Plaintiffs' burden is not only incorrect under the law, but wholly inadequate to allow Defendants to mount a defense to contentions by each Plaintiff as to the total response costs they actually paid and compare that to their equitable share of the response costs which is the basic formula for CERCLA contribution actions.

    **4.**    **Plaintiffs' Have Failed to Adequately Respond to Contention Interrogatory 118 Wherein They Were Simply Asked if They Contend That They have No Liability for Contamination on the Site.**

Joint Contention Interrogatory 118 (Exh. "1") poses a straightforward question: "Without regard to the Consent Decree(s), do plaintiffs (each, any or all) contend that they have no liability for the contamination at the Site?" Plaintiffs responded by referring Defendants to Plaintiffs' response to Joint Contention Interrogatory 78. Plaintiffs' response to Int. No. 78, however, does not state whether each, any or all Plaintiffs contend that they have no liability for the contamination at the Site. Although the Plaintiffs' response to Int. No. 78 lists certain documents and testimony pertaining to certain of the Plaintiffs, Ashland respectfully notes that Plaintiffs' counsel, Mr. Harris, made an absolute representation to the Court during the most recent case management conference on April 24, 2007, that the Plaintiffs had no liability. Accordingly, Ashland requests that the Court compel a full and complete answer to this Contention Interrogatory, including its sub-parts.

    **5.**    **Plaintiffs' Response to Joint Contention Interrogatory No. 78 is Deficient Insofar as the Substantive Information Therein is Qualified with the Phrase, "Include, But Not Limited to."**

Defendants' Joint Contention Interrogatory No. 78 (Exh. "1") requests that Plaintiffs identify the allocable/equitable share of the Total Clean Up Cost for the Site, together with the

factual basis for, and calculation used by, Plaintiffs in arriving at their contention in such regard.[6]

While Plaintiffs' response spans approximately 34 pages, all witnesses and documents that are

identified as the factual basis for Plaintiffs' contentions are qualified with the phrase, "include,

but not limited to." Defendants respectfully request that the Court strike this phrase so that

Defendants are not presented with evidence at trial that has not been properly identified by

Plaintiffs.

### B.    Ashland's Contention Interrogatories

#### 1.    Plaintiffs Have Failed to Adequately Respond to Ashland's Contention Interrogatory No. 3 Regarding the Disposal of Waste on the Site After October 15, 1976.

Ashland's Contention Interrogatory No. 3 (Exh. "2") requests specifically whether or not

Plaintiffs contend that tank trucks, drums or containers were brought onto the Site after October

15, 1976. Plaintiffs' response references their Response to Interrogatory no. 78 of the Joint

Contention Interrogatories. Plaintiffs' response to Interrogatory No. 78, however, does not

address the specific factual issue presented in Interrogatory No. 3, i.e., whether any trucks, drums

or containers were brought onto the Site after October 15, 1976.

Such date is significant because Manfred DeRewal, on his own behalf, and on behalf of

Boarhead and DCC, consented to the entry of an Order from the Court of Common Pleas of

Bucks County on or about that time that prohibited each of them from bringing any tank, truck,

drum or container containing chemicals onto the Site. (See Exh. "15"). Accordingly, Ashland

respectfully requests that the Court compel Plaintiffs to provide a full and complete response to

this Contention Interrogatory.

---

[6]    In such regard, Joint Contention Interrogatories 79-111 pose the identical question posed in Int. No. 78 as to each party, and Plaintiffs, in turn, respond to Int. Nos. 79-111 by referring to their response to Int. No. 78.

IV.   **CONCLUSION**

For all the above and foregoing reasons, Moving Defendants respectfully request that the Court grant this Motion, thereby compelling Plaintiffs to provide full and complete responses to Defendants' Joint Contention Interrogatories and Ashland's Contention Interrogatories as set forth in the proposed Order attached hereto.

_____s/ David M. Doto_____
RICHARD C. BIEDRZYCKI
Attorney I.D. No. 30604
DAVID M. DOTO
Attorney I.D. No. 62383
JEFFREY L. PETTIT
Attorney I.D. No. 21624
Phelan, Pettit & Biedrzycki, LLC
1600 North American Building
121 South Broad Street
Philadelphia, PA   19107
(215) 546-0500

Counsel   for   Defendant   Ashland   Inc.,
designated by Plaintiff as
Ashland Chemical Company

Dated:  June 1, 2007

G:\DATA\1357-29\Disc\MotionCompel (Memo).doc