# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AGERE SYSTEMS, INC., CYTEC INDUSTRIES INC., FORD MOTOR COMPANY, SPS TECHNOLOGIES, LLC and TI GROUP AUTOMOTIVE SYSTEMS, LLC<br><br>　　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, et al.,<br><br>　　　　　　　　Defendants. | Civil Action No. 02-CV-3830 (LDD)<br><br>**PLAINTIFFS' RESPONSES TO JOINT CONTENTION INTERROGATORIES OF ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, ASHLAND, INC., CARPENTER TECHNOLOGY CORPORATION, fcg, inc., HANDY & HARMAN TUBE COMPANY, INC. AND NRM INVESTMENT COMPANY** |

Plaintiffs Agere Systems, Inc., Cytec Industries Inc., Ford Motor Company, SPS Technologies, LLC and TI Group Automotive Systems, LLC ("Plaintiffs"), by their undersigned attorneys, object and respond to the joint contention interrogatories of Advanced Environmental Technology Corporation ("AETC"), Ashland, Inc., Carpenter Technology Corporation, fcg, inc., Handy & Harman Tube Company, Inc. and NRM Investment Company (collectively, "Defendants") as follows:

## GENERAL STATEMENTS AND OBJECTIONS

1.　　Plaintiffs object to Defendants' Definitions, Instructions and Interrogatories to the extent that they are not "narrowly-tailored contention interrogatories" as permitted by Judge Davis' June 23, 2005 Order.

2.　　Plaintiffs object to Defendants' Definitions, Instructions and Interrogatories to the extent that they seek information outside the scope of the contentions that Plaintiffs will make as part of their prima facie case at trial. Plaintiffs specifically reserve the right to make any factual

and legal contentions, whether expressly set forth in their responses to these Interrogatories or not, in response to positions taken by Defendants at trial.

3.      Plaintiffs object to Defendants' Definitions, Instructions and Interrogatories to the extent that they seek information and documents that are not relevant to the subject matter of this action or are not reasonably calculated to lead to the discovery of admissible evidence.

4.      Plaintiffs object to Defendants' Definitions, Instructions and Interrogatories to the extent that they seek information not in Plaintiffs' possession, custody or control.

5.      Plaintiffs object to Defendants' Definitions, Instructions and Interrogatories to the extent that they seek information already in the possession, custody or control of Defendants.

6.      Plaintiffs object to Defendants' Definitions, Instructions and Interrogatories to the extent that they seek information which is publicly available or that is attainable by Defendants from a source other than Plaintiffs at no greater inconvenience, burden, or expense than Defendants seek to impose on Plaintiffs.

7.      Plaintiffs object to Defendants' Definitions, Instructions and Interrogatories to the extent that they seek information protected by the attorney-client privilege or any other applicable privilege. Any inadvertent disclosure of privileged information shall not constitute a waiver of the attorney-client or any other applicable privilege.

8.      Plaintiffs object to Defendants' Definitions, Instructions and Interrogatories to the extent that they seek the discovery of the mental impressions, conclusions, strategies, opinions, research or legal theories of their attorneys or other representatives. Any inadvertent disclosure of work product shall not constitute a waiver of any work product protection.

9.      Plaintiffs object to Defendants' Definitions, Instructions and Interrogatories to the extent that they are not limited in time or scope.

10.    Plaintiffs object to Defendants' Definitions, Instructions and Interrogatories to the extent that they are unduly burdensome, onerous, oppressive, or designed to be harassing or will cause unnecessary expense.

11.    Plaintiffs object to Defendants' Definitions, Instructions and Interrogatories to the extent that they are overly broad, vague or ambiguous.

12.    Plaintiffs object to Defendants' Definitions, Instructions and Interrogatories to the extent that they seek to alter or exceed the scope of the obligations placed on Plaintiffs by the Federal Rules of Civil Procedure or other applicable law, including, but not limited to, any obligations Plaintiffs may have to supplement or amend their answers.

13.    Plaintiffs' responses to the Defendants' contention interrogatories shall serve to supplement their previous responses to Defendants' discovery requests.

14.    A specific reference to a particular General Objection in the following responses is not intended to exclude the application of other General Objections to that response or of the General Objections to other responses.  To the extent that Plaintiffs respond to Interrogatories to which it objects, such objections are not waived by the furnishing of information or providing of documents.

## INTERROGATORIES AND RESPONSES

Subject to and without waiving the foregoing General Objections, Plaintiffs make the following responses to the joint contention interrogatories of Defendants:

1.    Do plaintiffs contend that Agere Systems, Inc. ("Agere") arranged for the disposal of drummed waste at the Site?

    A.    If not, what is the factual and legal basis for your response.

    B.    If so, how many drums of waste do plaintiffs contend Agere arranged to be disposed of at the Site?

        i.    What is the factual basis for plaintiffs' contention as to the number of drums set forth in the answer to above?

    C.    If so, what do plaintiffs contend the drummed waste that Agere arranged to be disposed of at the Site consisted of?

        i.    What is the factual basis for plaintiffs' contention as to what the drummed waste consisted of, as set forth in the answer to above?

    D.    If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    Plaintiffs object to this Interrogatory to the extent that it seeks information outside the scope of the contentions that Plaintiffs will make as part of their prima facie case at trial. Plaintiffs further object to the phrases "arranged for the disposal of drummed waste at the Site" and "arranged for bulk waste to be disposed of at the Site" because they are vague, confusing and ambiguous. Plaintiffs further object to this Interrogatory to the extent that it seeks the discovery of the mental impressions, conclusions, strategies, opinions, research or legal theories of its attorneys or other representatives or information protected by the attorney-client privilege or any other applicable privilege. By way of further objection, Defendants' definition of "factual basis" is overbroad and unduly burdensome.

Without waiving any such objections, Plaintiffs will not ask the Court at trial to make findings of fact or conclusions of law that Agere or any other entities arranged for waste to be disposed of specifically at the Site, except that Plaintiffs will ask the Court to conclude that

AETC knew that DCC was disposing of Ashland's waste at the Site and that Ashland knew that DCC intended to use the Site for disposal of Ashland waste. By way of further response, see Plaintiffs' response to Interrogatory No. 78.

2.      Do plaintiffs contend that Agere arranged for bulk waste to be disposed of at the Site?

   A.      If not, what is the factual and legal basis for your response.

   B.      If so, what do plaintiffs contend is the total volume of bulk waste that Agere arranged to be disposed of at the Site?

      i.      What is the factual basis for plaintiffs' contention as to the total volume of bulk waste as set forth in the answer to above?

   C.      If so, what do plaintiffs contend the bulk waste that Agere arranged to be disposed of at the Site consisted of?

      i.      What is the factual basis for plaintiffs' contention as to what the bulk waste consisted of, as set forth in the answer to above?

   D.      If so, do you contend that such waste contained Hazardous Substances?

   **ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

3.      Do plaintiffs contend that Cytec Industries Inc. ("Cytec") arranged for the disposal of drummed waste at the Site?

   A.      If not, what is the factual and legal basis for your response.

   B.      If so, how many drums of waste do plaintiffs contend Cytec arranged to be disposed of at the Site?

      i.      What is the factual basis for plaintiffs' contention as to the number of drums set forth in the answer to above?

   C.      If so, what do plaintiffs contend the drummed waste that Cytec arranged to be disposed of at the Site consisted of?

      i.      What is the factual basis for plaintiffs' contention as to what the drummed waste consisted of, as set forth in the answer to above?

   D.      If so, do you contend that such waste contained Hazardous Substances?

   **ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

4.      Do plaintiffs contend that Cytec arranged for bulk waste to be disposed of at the Site?

A.      If not, what is the factual and legal basis for your response.

B.      If so, what do plaintiffs contend is the total volume of bulk waste that Cytec arranged to be disposed of at the Site?

i.      What is the factual basis for plaintiffs' contention as to the total volume of bulk waste as set forth in the answer to above?

C.      If so, what do plaintiffs contend the bulk waste that Cytec arranged to be disposed of at the Site consisted of?

i.      What is the factual basis for plaintiffs' contention as to what the bulk waste consisted of, as set forth in the answer to above?

D.      If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**     See Plaintiffs' response to Interrogatory No. 1.

5.      Do plaintiffs contend that Ford Motor Company ("Ford") arranged for the disposal of drummed waste at the Site?

A.      If not, what is the factual and legal basis for your response.

B.      If so, how many drums of waste do plaintiffs contend Ford arranged to be disposed of at the Site?

i.      What is the factual basis for plaintiffs' contention as to the number of drums set forth in the answer to above?

C.      If so, what do plaintiffs contend the drummed waste that Ford arranged to be disposed of at the Site consisted of?

i.      What is the factual basis for plaintiffs' contention as to what the drummed waste consisted of, as set forth in the answer to above?

D.      If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**     See Plaintiffs' response to Interrogatory No. 1.

6.      Do plaintiffs contend that Ford arranged for bulk waste to be disposed of at the Site?

A.      If not, what is the factual and legal basis for your response.

B.      If so, what do plaintiffs contend is the total volume of bulk waste that Ford arranged to be disposed of at the Site?

i.      What is the factual basis for plaintiffs' contention as to the total volume of bulk waste as set forth in the answer to above?

C.     If so, what do plaintiffs contend the bulk waste that Ford arranged to be disposed of at the Site consisted of?

    i.     What is the factual basis for plaintiffs' contention as to what the bulk waste consisted of, as set forth in the answer to above?

D.     If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**     See Plaintiffs' response to Interrogatory No. 1.

7.     Do plaintiffs contend that SPS Technologies, LLC ("SPS") arranged for the disposal of drummed waste at the Site?

A.     If not, what is the factual and legal basis for your response.

B.     If so, how many drums of waste do plaintiffs contend SPS arranged to be disposed of at the Site?

    i.     What is the factual basis for plaintiffs' contention as to the number of drums set forth in the answer to above?

C.     If so, what do plaintiffs contend the drummed waste that SPS arranged to be disposed of at the Site consisted of?

    i.     What is the factual basis for plaintiffs' contention as to what the drummed waste consisted of, as set forth in the answer to above?

D.     If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**     See Plaintiffs' response to Interrogatory No. 1.

8.     Do plaintiffs contend that SPS arranged for bulk waste to be disposed of at the Site?

A.     If not, what is the factual and legal basis for your response.

B.     If so, what do plaintiffs contend is the total volume of bulk waste that SPS arranged to be disposed of at the Site?

    i.     What is the factual basis for plaintiffs' contention as to the total volume of bulk waste as set forth in the answer to above?

C.     If so, what do plaintiffs contend the bulk waste that SPS arranged to be disposed of at the Site consisted of?

    i.     What is the factual basis for plaintiffs' contention as to what the bulk waste consisted of, as set forth in the answer to above?

D.     If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

9.    Do plaintiffs contend that TI Group Automotive Systems LLC ("TI") arranged for the disposal of drummed waste at the Site?

    A.    If not, what is the factual and legal basis for your response.

    B.    If so, how many drums of waste do plaintiffs contend TI arranged to be disposed of at the Site?

        i.    What is the factual basis for plaintiffs' contention as to the number of drums set forth in the answer to above?

    C.    If so, what do plaintiffs contend the drummed waste that TI arranged to be disposed of at the Site consisted of?

        i.    What is the factual basis for plaintiffs' contention as to what the drummed waste consisted of, as set forth in the answer to above?

    D.    If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

10.    Do plaintiffs contend that TI arranged for bulk waste to be disposed of at the Site?

    A.    If not, what is the factual and legal basis for your response.

    B.    If so, what do plaintiffs contend is the total volume of bulk waste that TI arranged to be disposed of at the Site?

        i.    What is the factual basis for plaintiffs' contention as to the total volume of bulk waste as set forth in the answer to above?

    C.    If so, what do plaintiffs contend the bulk waste that TI arranged to be disposed of at the Site consisted of?

        i.    What is the factual basis for plaintiffs' contention as to what the bulk waste consisted of, as set forth in the answer to above?

    D.    If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

11.    Do plaintiffs contend that Advanced Environmental Technology Corp. ("AETC") arranged for the disposal of drummed waste at the Site?

    A.    If not, what is the factual and legal basis for your response.

B.    If so, what is the factual and legal basis for plaintiffs' contention that AETC arranged for drummed waste to be disposed of at the Site?

C.    If so, how many drums of waste do plaintiffs contend AETC arranged to be disposed of at the Site?

i.    What is the factual basis for plaintiffs' contention as to the number of drums set forth in the answer to above?

D.    If so, what do plaintiffs contend the drummed waste that AETC arranged to be disposed of at the Site consisted of?

i.    What is the factual basis for plaintiffs' contention as to what the drummed waste consisted of, as set forth in the answer to above?

E.    If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

12.    Do plaintiffs contend that AETC arranged for bulk waste to be disposed of at the Site?

A.    If not, what is the factual and legal basis for your response.

B.    If so, what is the factual and legal basis for plaintiffs' contention that AETC arranged for bulk waste to be disposed of at the Site?

C.    If so, what do plaintiffs contend is the total volume of bulk waste that AETC arranged to be disposed of at the Site?

i.    What is the factual basis for plaintiffs' contention as to the total volume of bulk waste as set forth in the answer to above?

D.    If so, what do plaintiffs contend the bulk waste that AETC arranged to be disposed of at the Site consisted of?

i.    What is the factual basis for plaintiffs' contention as to what the bulk waste consisted of, as set forth in the answer to above?

E.    If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

13.    Do plaintiffs contend that Ashland Inc. ("Ashland") arranged for the disposal of drummed waste at the Site?

A.    If not, what is the factual and legal basis for your response.

B.    If so, what is the factual and legal basis for plaintiffs' contention that Ashland arranged for drummed waste to be disposed of at the Site?

C.     If so, how many drums of waste do plaintiffs contend Ashland arranged to be disposed of at the Site?

     i.     What is the factual basis for plaintiffs' contention as to the number of drums set forth in the answer to above?

D.     If so, what do plaintiffs contend the drummed waste that Ashland arranged to be disposed of at the Site consisted of?

     i.     What is the factual basis for plaintiffs' contention as to what the drummed waste consisted of, as set forth in the answer to above?

E.     If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**     See Plaintiffs' response to Interrogatory No. 1.

14.     Do plaintiffs contend that Ashland arranged for bulk waste to be disposed of at the Site?

A.     If not, what is the factual and legal basis for your response.

B.     If so, what is the factual and legal basis for plaintiffs' contention that Ashland arranged for bulk waste to be disposed of at the Site?

C.     If so, what do plaintiffs contend is the total volume of bulk waste that Ashland arranged to be disposed of at the Site?

     i.     What is the factual basis for plaintiffs' contention as to the total volume of bulk waste as set forth in the answer to above?

D.     If so, what do plaintiffs contend the bulk waste that Ashland arranged to be disposed of at the Site consisted of?

     i.     What is the factual basis for plaintiffs' contention as to what the bulk waste consisted of, as set forth in the answer to above?

E.     If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**     See Plaintiffs' response to Interrogatory No. 1.

15.     Do plaintiffs contend that Boarhead Corporation ("Boarhead") arranged for the disposal of drummed waste at the Site?

A.     If not, what is the factual and legal basis for your response.

B.     If so, what is the factual and legal basis for plaintiffs' contention that Boarhead arranged for drummed waste to be disposed of at the Site?

C.     If so, how many drums of waste do plaintiffs contend Boarhead arranged to be disposed of at the Site?

       i.     What is the factual basis for plaintiffs' contention as to the number of drums set forth in the answer to above?

D.     If so, what do plaintiffs contend the drummed waste that Boarhead arranged to be disposed of at the Site consisted of?

       i.     What is the factual basis for plaintiffs' contention as to what the drummed waste consisted of, as set forth in the answer to above?

E.     If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

16.     Do plaintiffs contend that Boarhead arranged for bulk waste to be disposed of at the Site?

A.     If not, what is the factual and legal basis for your response.

B.     If so, what is the factual and legal basis for plaintiffs' contention that Boarhead arranged for bulk waste to be disposed of at the Site?

C.     If so, what do plaintiffs contend is the total volume of bulk waste that Boarhead arranged to be disposed of at the Site?

       i.     What is the factual basis for plaintiffs' contention as to the total volume of bulk waste as set forth in the answer to above?

D.     If so, what do plaintiffs contend the bulk waste that Boarhead arranged to be disposed of at the Site consisted of?

       i.     What is the factual basis for plaintiffs' contention as to what the bulk waste consisted of, as set forth in the answer to above?

E.     If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

17.     Do plaintiffs contend that Carpenter Technology Corporation ("Carpenter") arranged for the disposal of drummed waste at the Site?

A.     If not, what is the factual and legal basis for your response.

B.     If so, what is the factual and legal basis for plaintiffs' contention that Carpenter arranged for drummed waste to be disposed of at the Site?

C.     If so, how many drums of waste do plaintiffs contend Carpenter arranged to be disposed of at the Site?

       i.     What is the factual basis for plaintiffs' contention as to the number of drums set forth in the answer to above?

D.    If so, what do plaintiffs contend the drummed waste that Carpenter arranged to be disposed of at the Site consisted of?

i.    What is the factual basis for plaintiffs' contention as to what the drummed waste consisted of, as set forth in the answer to above?

E.    If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

18.    Do plaintiffs contend that Carpenter arranged for bulk waste to be disposed of at the Site?

A.    If not, what is the factual and legal basis for your response.

B.    If so, what is the factual and legal basis for plaintiffs' contention that Carpenter arranged for bulk waste to be disposed of at the Site?

C.    If so, what do plaintiffs contend is the total volume of bulk waste that Carpenter arranged to be disposed of at the Site?

i.    What is the factual basis for plaintiffs' contention as to the total volume of bulk waste as set forth in the answer to above?

D.    If so, what do plaintiffs contend the bulk waste that Carpenter arranged to be disposed of at the Site consisted of?

i.    What is the factual basis for plaintiffs' contention as to what the bulk waste consisted of, as set forth in the answer to above?

E.    If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

19.    Do plaintiffs contend that Crown Metro, Inc./Emhart Industries, Inc. ("Crown") arranged for the disposal of drummed waste at the Site?

A.    If not, what is the factual and legal basis for your response.

B.    If so, what is the factual and legal basis for plaintiffs' contention that Crown arranged for drummed waste to be disposed of at the Site?

C.    If so, how many drums of waste do plaintiffs contend Crown arranged to be disposed of at the Site?

i.    What is the factual basis for plaintiffs' contention as to the number of drums set forth in the answer to above?

D.    If so, what do plaintiffs contend the drummed waste that Crown arranged to be disposed of at the Site consisted of?

       i.     What is the factual basis for plaintiffs' contention as to what the drummed waste consisted of, as set forth in the answer to above?

E.     If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

20.     Do plaintiffs contend that Crown arranged for bulk waste to be disposed of at the Site?

A.     If not, what is the factual and legal basis for your response.

B.     If so, what is the factual and legal basis for plaintiffs' contention that Crown arranged for bulk waste to be disposed of at the Site?

C.     If so, what do plaintiffs contend is the total volume of bulk waste that Crown arranged to be disposed of at the Site?

       i.     What is the factual basis for plaintiffs' contention as to the total volume of bulk waste as set forth in the answer to above?

D.     If so, what do plaintiffs contend the bulk waste that Crown arranged to be disposed of at the Site consisted of?

       i.     What is the factual basis for plaintiffs' contention as to what the bulk waste consisted of, as set forth in the answer to above?

E.     If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

21.     Do plaintiffs contend that Diaz Chemical Corporation ("Diaz") arranged for the disposal of drummed waste at the Site?

A.     If not, what is the factual and legal basis for your response.

B.     If so, what is the factual and legal basis for plaintiffs' contention that Diaz arranged for drummed waste to be disposed of at the Site?

C.     If so, how many drums of waste do plaintiffs contend Diaz arranged to be disposed of at the Site?

       i.     What is the factual basis for plaintiffs' contention as to the number of drums set forth in the answer to above?

D.     If so, what do plaintiffs contend the drummed waste that Diaz arranged to be disposed of at the Site consisted of?

       i.     What is the factual basis for plaintiffs' contention as to what the drummed waste consisted of, as set forth in the answer to above?

E.      If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**     See Plaintiffs' response to Interrogatory No. 1.

22.     Do plaintiffs contend that Diaz arranged for bulk waste to be disposed of at the Site?

A.      If not, what is the factual and legal basis for your response.

B.      If so, what is the factual and legal basis for plaintiffs' contention that Diaz arranged for bulk waste to be disposed of at the Site?

C.      If so, what do plaintiffs contend is the total volume of bulk waste that Diaz arranged to be disposed of at the Site?

   i.      What is the factual basis for plaintiffs' contention as to the total volume of bulk waste as set forth in the answer to above?

D.      If so, what do plaintiffs contend the bulk waste that Diaz arranged to be disposed of at the Site consisted of?

   i.      What is the factual basis for plaintiffs' contention as to what the bulk waste consisted of, as set forth in the answer to above?

E.      If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**     See Plaintiffs' response to Interrogatory No. 1.

23.     Do plaintiffs contend that Etched Circuits, Inc. ("Etched") arranged for the disposal of drummed waste at the Site?

A.      If not, what is the factual and legal basis for your response.

B.      If so, what is the factual and legal basis for plaintiffs' contention that Etched arranged for drummed waste to be disposed of at the Site?

C.      If so, how many drums of waste do plaintiffs contend Etched arranged to be disposed of at the Site?

   i.      What is the factual basis for plaintiffs' contention as to the number of drums set forth in the answer to above?

D.      If so, what do plaintiffs contend the drummed waste that Etched arranged to be disposed of at the Site consisted of?

   i.      What is the factual basis for plaintiffs' contention as to what the drummed waste consisted of, as set forth in the answer to above?

E.      If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

24.    Do plaintiffs contend that Etched arranged for bulk waste to be disposed of at the Site?

    A.    If not, what is the factual and legal basis for your response.

    B.    If so, what is the factual and legal basis for plaintiffs' contention that Etched arranged for bulk waste to be disposed of at the Site?

    C.    If so, what do plaintiffs contend is the total volume of bulk waste that Etched arranged to be disposed of at the Site?

        i.    What is the factual basis for plaintiffs' contention as to the total volume of bulk waste as set forth in the answer to above?

    D.    If so, what do plaintiffs contend the bulk waste that Etched arranged to be disposed of at the Site consisted of?

        i.    What is the factual basis for plaintiffs' contention as to what the bulk waste consisted of, as set forth in the answer to above?

    E.    If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

25.    Do plaintiffs contend that fcg, Inc. ("fcg") arranged for the disposal of drummed waste at the Site?

    A.    If not, what is the factual and legal basis for your response.

    B.    If so, what is the factual and legal basis for plaintiffs' contention that fcg arranged for drummed waste to be disposed of at the Site?

    C.    If so, how many drums of waste do plaintiffs contend fcg arranged to be disposed of at the Site?

        i.    What is the factual basis for plaintiffs' contention as to the number of drums set forth in the answer to above?

    D.    If so, what do plaintiffs contend the drummed waste that fcg arranged to be disposed of at the Site consisted of?

        i.    What is the factual basis for plaintiffs' contention as to what the drummed waste consisted of, as set forth in the answer to above?

    E.    If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

26.    Do plaintiffs contend that fcg arranged for bulk waste to be disposed of at the Site?

    A.    If not, what is the factual and legal basis for your response.

    B.    If so, what is the factual and legal basis for plaintiffs' contention that fcg arranged for bulk waste to be disposed of at the Site?

    C.    If so, what do plaintiffs contend is the total volume of bulk waste that fcg arranged to be disposed of at the Site?

        i.    What is the factual basis for plaintiffs' contention as to the total volume of bulk waste as set forth in the answer to above?

    D.    If so, what do plaintiffs contend the bulk waste that fcg arranged to be disposed of at the Site consisted of?

        i.    What is the factual basis for plaintiffs' contention as to what the bulk waste consisted of, as set forth in the answer to above?

    E.    If so, do you contend that such waste contained Hazardous Substances?

    **ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

27.    Do plaintiffs contend that Handy & Harman Tube Company ("H&H") arranged for the disposal of drummed waste at the Site?

    A.    If not, what is the factual and legal basis for your response.

    B.    If so, what is the factual and legal basis for plaintiffs' contention that H&H arranged for drummed waste to be disposed of at the Site?

    C.    If so, how many drums of waste do plaintiffs contend H&H arranged to be disposed of at the Site?

        i.    What is the factual basis for plaintiffs' contention as to the number of drums set forth in the answer to above?

    D.    If so, what do plaintiffs contend the drummed waste that H&H arranged to be disposed of at the Site consisted of?

        i.    What is the factual basis for plaintiffs' contention as to what the drummed waste consisted of, as set forth in the answer to above?

    E.    If so, do you contend that such waste contained Hazardous Substances?

    **ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

28.    Do plaintiffs contend that H&H arranged for bulk waste to be disposed of at the Site?

A.     If not, what is the factual and legal basis for your response.

B.     If so, what is the factual and legal basis for plaintiffs' contention that H&H arranged for bulk waste to be disposed of at the Site?

C.     If so, what do plaintiffs contend is the total volume of bulk waste that H&H arranged to be disposed of at the Site?

i.     What is the factual basis for plaintiffs' contention as to the total volume of bulk waste as set forth in the answer to above?

D.     If so, what do plaintiffs contend the bulk waste that H&H arranged to be disposed of at the Site consisted of?

i.     What is the factual basis for plaintiffs' contention as to what the bulk waste consisted of, as set forth in the answer to above?

E.     If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**     See Plaintiffs' response to Interrogatory No. 1.

29.     Do plaintiffs contend that Knoll Inc./Knoll International, Inc. ("Knoll") arranged for the disposal of drummed waste at the Site?

A.     If not, what is the factual and legal basis for your response.

B.     If so, what is the factual and legal basis for plaintiffs' contention that Knoll arranged for drummed waste to be disposed of at the Site?

C.     If so, how many drums of waste do plaintiffs contend Knoll arranged to be disposed of at the Site?

i.     What is the factual basis for plaintiffs' contention as to the number of drums set forth in the answer to above?

D.     If so, what do plaintiffs contend the drummed waste that Knoll arranged to be disposed of at the Site consisted of?

i.     What is the factual basis for plaintiffs' contention as to what the drummed waste consisted of, as set forth in the answer to above?

E.     If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**     See Plaintiffs' response to Interrogatory No. 1.

30.     Do plaintiffs contend that Knoll arranged for bulk waste to be disposed of at the Site?

A.     If not, what is the factual and legal basis for your response.

B.    If so, what is the factual and legal basis for plaintiffs' contention that Knoll arranged for bulk waste to be disposed of at the Site?

C.    If so, what do plaintiffs contend is the total volume of bulk waste that Knoll arranged to be disposed of at the Site?

    i.    What is the factual basis for plaintiffs' contention as to the total volume of bulk waste as set forth in the answer to above?

D.    If so, what do plaintiffs contend the bulk waste that Knoll arranged to be disposed of at the Site consisted of?

    i.    What is the factual basis for plaintiffs' contention as to what the bulk waste consisted of, as set forth in the answer to above?

E.    If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

31.    Do plaintiffs contend that Merit Metals Products Corp. ("Merit Metals") arranged for the disposal of drummed waste at the Site?

A.    If not, what is the factual and legal basis for your response.

B.    If so, what is the factual and legal basis for plaintiffs' contention that Merit Metals arranged for drummed waste to be disposed of at the Site?

C.    If so, how many drums of waste do plaintiffs contend Merit Metals arranged to be disposed of at the Site?

    i.    What is the factual basis for plaintiffs' contention as to the number of drums set forth in the answer to above?

D.    If so, what do plaintiffs contend the drummed waste that Merit Metals arranged to be disposed of at the Site consisted of?

    i.    What is the factual basis for plaintiffs' contention as to what the drummed waste consisted of, as set forth in the answer to above?

E.    If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

32.    Do plaintiffs contend that Merit Metals arranged for bulk waste to be disposed of at the Site?

A.    If not, what is the factual and legal basis for your response.

B.    If so, what is the factual and legal basis for plaintiffs' contention that Merit Metals arranged for bulk waste to be disposed of at the Site?

C.    If so, what do plaintiffs contend is the total volume of bulk waste that Merit Metals arranged to be disposed of at the Site?

    i.    What is the factual basis for plaintiffs' contention as to the total volume of bulk waste as set forth in the answer to above?

D.    If so, what do plaintiffs contend the bulk waste that Merit Metals arranged to be disposed of at the Site consisted of?

    i.    What is the factual basis for plaintiffs' contention as to what the bulk waste consisted of, as set forth in the answer to above?

E.    If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

33.    Do plaintiffs contend that Novartis Corporation ("Novartis") arranged for the disposal of drummed waste at the Site?

A.    If not, what is the factual and legal basis for your response.

B.    If so, what is the factual and legal basis for plaintiffs' contention that Novartis arranged for drummed waste to be disposed of at the Site?

C.    If so, how many drums of waste do plaintiffs contend Novartis arranged to be disposed of at the Site?

    i.    What is the factual basis for plaintiffs' contention as to the number of drums set forth in the answer to above?

D.    If so, what do plaintiffs contend the drummed waste that Novartis arranged to be disposed of at the Site consisted of?

    i.    What is the factual basis for plaintiffs' contention as to what the drummed waste consisted of, as set forth in the answer to above?

E.    If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

34.    Do plaintiffs contend that Novartis arranged for bulk waste to be disposed of at the Site?

A.    If not, what is the factual and legal basis for your response.

B.    If so, what is the factual and legal basis for plaintiffs' contention that Novartis arranged for bulk waste to be disposed of at the Site?

C.    If so, what do plaintiffs contend is the total volume of bulk waste that Novartis arranged to be disposed of at the Site?

    i.    What is the factual basis for plaintiffs' contention as to the total volume of bulk waste as set forth in the answer to above?

D.    If so, what do plaintiffs contend the bulk waste that Novartis arranged to be disposed of at the Site consisted of?

    i.    What is the factual basis for plaintiffs' contention as to what the bulk waste consisted of, as set forth in the answer to above?

E.    If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

35.    Do plaintiffs contend that NRM Investment Company ("NRM") arranged for the disposal of drummed waste at the Site?

A.    If not, what is the factual and legal basis for your response.

B.    If so, what is the factual and legal basis for plaintiffs' contention that NRM arranged for drummed waste to be disposed of at the Site?

C.    If so, how many drums of waste do plaintiffs contend NRM arranged to be disposed of at the Site?

    i.    What is the factual basis for plaintiffs' contention as to the number of drums set forth in the answer to above?

D.    If so, what do plaintiffs contend the drummed waste that NRM arranged to be disposed of at the Site consisted of?

    i.    What is the factual basis for plaintiffs' contention as to what the drummed waste consisted of, as set forth in the answer to above?

E.    If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

36.    Do plaintiffs contend that NRM arranged for bulk waste to be disposed of at the Site?

A.    If not, what is the factual and legal basis for your response.

B.    If so, what is the factual and legal basis for plaintiffs' contention that NRM arranged for bulk waste to be disposed of at the Site?

C.    If so, what do plaintiffs contend is the total volume of bulk waste that NRM arranged to be disposed of at the Site?

      i.      What is the factual basis for plaintiffs' contention as to the total volume of bulk waste as set forth in the answer to above?

D.      If so, what do plaintiffs contend the bulk waste that NRM arranged to be disposed of at the Site consisted of?

      i.      What is the factual basis for plaintiffs' contention as to what the bulk waste consisted of, as set forth in the answer to above?

E.      If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

37.      Do plaintiffs contend that Plymouth Tube Company ("Plymouth") arranged for the disposal of drummed waste at the Site?

A.      If not, what is the factual and legal basis for your response.

B.      If so, what is the factual and legal basis for plaintiffs' contention that Plymouth arranged for drummed waste to be disposed of at the Site?

C.      If so, how many drums of waste do plaintiffs contend Plymouth arranged to be disposed of at the Site?

      i.      What is the factual basis for plaintiffs' contention as to the number of drums set forth in the answer to above?

D.      If so, what do plaintiffs contend the drummed waste that Plymouth arranged to be disposed of at the Site consisted of?

      i.      What is the factual basis for plaintiffs' contention as to what the drummed waste consisted of, as set forth in the answer to above?

E.      If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

38.      Do plaintiffs contend that Plymouth arranged for bulk waste to be disposed of at the Site?

A.      If not, what is the factual and legal basis for your response.

B.      If so, what is the factual and legal basis for plaintiffs' contention that Plymouth arranged for bulk waste to be disposed of at the Site?

C.      If so, what do plaintiffs contend is the total volume of bulk waste that Plymouth arranged to be disposed of at the Site?

      i.      What is the factual basis for plaintiffs' contention as to the total volume of bulk waste as set forth in the answer to above?

D.    If so, what do plaintiffs contend the bulk waste that Plymouth arranged to be disposed of at the Site consisted of?

    i.    What is the factual basis for plaintiffs' contention as to what the bulk waste consisted of, as set forth in the answer to above?

E.    If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

39.    Do plaintiffs contend that Quickline Design and Manufacturing Co. ("Quickline") arranged for the disposal of drummed waste at the Site?

A.    If not, what is the factual and legal basis for your response.

B.    If so, what is the factual and legal basis for plaintiffs' contention that Quickline arranged for drummed waste to be disposed of at the Site?

C.    If so, how many drums of waste do plaintiffs contend Quickline arranged to be disposed of at the Site?

    i.    What is the factual basis for plaintiffs' contention as to the number of drums set forth in the answer to above?

D.    If so, what do plaintiffs contend the drummed waste that Quickline arranged to be disposed of at the Site consisted of?

    i.    What is the factual basis for plaintiffs' contention as to what the drummed waste consisted of, as set forth in the answer to above?

E.    If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

40.    Do plaintiffs contend that Quickline arranged for bulk waste to be disposed of at the Site?

A.    If not, what is the factual and legal basis for your response.

B.    If so, what is the factual and legal basis for plaintiffs' contention that Quickline arranged for bulk waste to be disposed of at the Site?

C.    If so, what do plaintiffs contend is the total volume of bulk waste that Quickline arranged to be disposed of at the Site?

    i.    What is the factual basis for plaintiffs' contention as to the total volume of bulk waste as set forth in the answer to above?

D.    If so, what do plaintiffs contend the bulk waste that Quickline arranged to be disposed of at the Site consisted of?

      i.     What is the factual basis for plaintiffs' contention as to what the bulk waste consisted of, as set forth in the answer to above?

E.     If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

41.     Do plaintiffs contend that Rahns Specialty Metals, Inc./Techalloy Company Inc. ("RSM") arranged for the disposal of drummed waste at the Site?

    A.     If not, what is the factual and legal basis for your response.

    B.     If so, what is the factual and legal basis for plaintiffs' contention that RSM arranged for drummed waste to be disposed of at the Site?

    C.     If so, how many drums of waste do plaintiffs contend RSM arranged to be disposed of at the Site?

        i.     What is the factual basis for plaintiffs' contention as to the number of drums set forth in the answer to above?

    D.     If so, what do plaintiffs contend the drummed waste that RSM arranged to be disposed of at the Site consisted of?

        i.     What is the factual basis for plaintiffs' contention as to what the drummed waste consisted of, as set forth in the answer to above?

    E.     If so, do you contend that such waste contained Hazardous Substances?

    **ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

42.     Do plaintiffs contend that RSM arranged for bulk waste to be disposed of at the Site?

    A.     If not, what is the factual and legal basis for your response.

    B.     If so, what is the factual and legal basis for plaintiffs' contention that RSM arranged for bulk waste to be disposed of at the Site?

    C.     If so, what do plaintiffs contend is the total volume of bulk waste that RSM arranged to be disposed of at the Site?

        i.     What is the factual basis for plaintiffs' contention as to the total volume of bulk waste as set forth in the answer to above?

    D.     If so, what do plaintiffs contend the bulk waste that RSM arranged to be disposed of at the Site consisted of?

        i.     What is the factual basis for plaintiffs' contention as to what the bulk waste consisted of, as set forth in the answer to above?

E.    If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

43.    Do plaintiffs contend that Rohm and Haas Company ("R&H") arranged for the disposal of drummed waste at the Site?

A.    If not, what is the factual and legal basis for your response.

B.    If so, what is the factual and legal basis for plaintiffs' contention that R&H arranged for drummed waste to be disposed of at the Site?

C.    If so, how many drums of waste do plaintiffs contend R&H arranged to be disposed of at the Site?

    i.    What is the factual basis for plaintiffs' contention as to the number of drums set forth in the answer to above?

D.    If so, what do plaintiffs contend the drummed waste that R&H arranged to be disposed of at the Site consisted of?

    i.    What is the factual basis for plaintiffs' contention as to what the drummed waste consisted of, as set forth in the answer to above?

E.    If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

44.    Do plaintiffs contend that R&H arranged for bulk waste to be disposed of at the Site?

A.    If not, what is the factual and legal basis for your response.

B.    If so, what is the factual and legal basis for plaintiffs' contention that R&H arranged for bulk waste to be disposed of at the Site?

C.    If so, what do plaintiffs contend is the total volume of bulk waste that R&H arranged to be disposed of at the Site?

    i.    What is the factual basis for plaintiffs' contention as to the total volume of bulk waste as set forth in the answer to above?

D.    If so, what do plaintiffs contend the bulk waste that R&H arranged to be disposed of at the Site consisted of?

    i.    What is the factual basis for plaintiffs' contention as to what the bulk waste consisted of, as set forth in the answer to above?

E.    If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**     See Plaintiffs' response to Interrogatory No. 1.

45.     Do plaintiffs contend that Simon Wrecking Co. ("Simon") arranged for the disposal of drummed waste at the Site?

A.     If not, what is the factual and legal basis for your response.

B.     If so, what is the factual and legal basis for plaintiffs' contention that Simon arranged for drummed waste to be disposed of at the Site?

C.     If so, how many drums of waste do plaintiffs contend Simon arranged to be disposed of at the Site?

i.     What is the factual basis for plaintiffs' contention as to the number of drums set forth in the answer to above?

D.     If so, what do plaintiffs contend the drummed waste that Simon arranged to be disposed of at the Site consisted of?

i.     What is the factual basis for plaintiffs' contention as to what the drummed waste consisted of, as set forth in the answer to above?

E.     If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**     See Plaintiffs' response to Interrogatory No. 1.

46.     Do plaintiffs contend that Simon arranged for bulk waste to be disposed of at the Site?

A.     If not, what is the factual and legal basis for your response.

B.     If so, what is the factual and legal basis for plaintiffs' contention that Simon arranged for bulk waste to be disposed of at the Site?

C.     If so, what do plaintiffs contend is the total volume of bulk waste that Simon arranged to be disposed of at the Site?

i.     What is the factual basis for plaintiffs' contention as to the total volume of bulk waste as set forth in the answer to above?

D.     If so, what do plaintiffs contend the bulk waste that Simon arranged to be disposed of at the Site consisted of?

i.     What is the factual basis for plaintiffs' contention as to what the bulk waste consisted of, as set forth in the answer to above?

E.     If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**     See Plaintiffs' response to Interrogatory No. 1.

47.    Do plaintiffs contend that Thomas & Betts Corporation ("T&B") arranged for the disposal of drummed waste at the Site?

    A.    If not, what is the factual and legal basis for your response.

    B.    If so, what is the factual and legal basis for plaintiffs' contention that T&B arranged for drummed waste to be disposed of at the Site?

    C.    If so, how many drums of waste do plaintiffs contend T&B arranged to be disposed of at the Site?

        i.    What is the factual basis for plaintiffs' contention as to the number of drums set forth in the answer to above?

    D.    If so, what do plaintiffs contend the drummed waste that T&B arranged to be disposed of at the Site consisted of?

        i.    What is the factual basis for plaintiffs' contention as to what the drummed waste consisted of, as set forth in the answer to above?

    E.    If so, do you contend that such waste contained Hazardous Substances?

    **ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

48.    Do plaintiffs contend that T&B arranged for bulk waste to be disposed of at the Site?

    A.    If not, what is the factual and legal basis for your response.

    B.    If so, what is the factual and legal basis for plaintiffs' contention that T&B arranged for bulk waste to be disposed of at the Site?

    C.    If so, what do plaintiffs contend is the total volume of bulk waste that T&B arranged to be disposed of at the Site?

        i.    What is the factual basis for plaintiffs' contention as to the total volume of bulk waste as set forth in the answer to above?

    D.    If so, what do plaintiffs contend the bulk waste that T&B arranged to be disposed of at the Site consisted of?

        i.    What is the factual basis for plaintiffs' contention as to what the bulk waste consisted of, as set forth in the answer to above?

    E.    If so, do you contend that such waste contained Hazardous Substances?

    **ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

49.    Do plaintiffs contend that Unisys Corporation ("Unisys") arranged for the disposal of drummed waste at the Site?

A.    If not, what is the factual and legal basis for your response.

B.    If so, what is the factual and legal basis for plaintiffs' contention that Unisys arranged for drummed waste to be disposed of at the Site?

C.    If so, how many drums of waste do plaintiffs contend Unisys arranged to be disposed of at the Site?

   i.    What is the factual basis for plaintiffs' contention as to the number of drums set forth in the answer to above?

D.    If so, what do plaintiffs contend the drummed waste that Unisys arranged to be disposed of at the Site consisted of?

   i.    What is the factual basis for plaintiffs' contention as to what the drummed waste consisted of, as set forth in the answer to above?

E.    If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

50.    Do plaintiffs contend that Unisys arranged for bulk waste to be disposed of at the Site?

A.    If not, what is the factual and legal basis for your response.

B.    If so, what is the factual and legal basis for plaintiffs' contention that Unisys arranged for bulk waste to be disposed of at the Site?

C.    If so, what do plaintiffs contend is the total volume of bulk waste that Unisys arranged to be disposed of at the Site?

   i.    What is the factual basis for plaintiffs' contention as to the total volume of bulk waste as set forth in the answer to above?

D.    If so, what do plaintiffs contend the bulk waste that Unisys arranged to be disposed of at the Site consisted of?

   i.    What is the factual basis for plaintiffs' contention as to what the bulk waste consisted of, as set forth in the answer to above?

E.    If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

51.    Do plaintiffs contend that United States of America Department of Navy ("Navy") arranged for the disposal of drummed waste at the Site?

A.    If not, what is the factual and legal basis for your response.

B.    If so, what is the factual and legal basis for plaintiffs' contention that Navy arranged for drummed waste to be disposed of at the Site?

C.    If so, how many drums of waste do plaintiffs contend Navy arranged to be disposed of at the Site?

    i.    What is the factual basis for plaintiffs' contention as to the number of drums set forth in the answer to above?

D.    If so, what do plaintiffs contend the drummed waste that Navy arranged to be disposed of at the Site consisted of?

    i.    What is the factual basis for plaintiffs' contention as to what the drummed waste consisted of, as set forth in the answer to above?

E.    If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

52.    Do plaintiffs contend that Navy arranged for bulk waste to be disposed of at the Site?

A.    If not, what is the factual and legal basis for your response.

B.    If so, what is the factual and legal basis for plaintiffs' contention that Navy arranged for bulk waste to be disposed of at the Site?

C.    If so, what do plaintiffs contend is the total volume of bulk waste that Navy arranged to be disposed of at the Site?

    i.    What is the factual basis for plaintiffs' contention as to the total volume of bulk waste as set forth in the answer to above?

D.    If so, what do plaintiffs contend the bulk waste that Navy arranged to be disposed of at the Site consisted of?

    i.    What is the factual basis for plaintiffs' contention as to what the bulk waste consisted of, as set forth in the answer to above?

E.    If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

53.    Do plaintiffs contend that Haven Chemical Industries/Haven Chemical ("Haven") arranged for the disposal of drummed waste at the Site?

A.    If not, what is the factual and legal basis for your response.

B.    If so, what is the factual and legal basis for plaintiffs' contention that Haven arranged for drummed waste to be disposed of at the Site?

C. If so, how many drums of waste do plaintiffs contend Haven arranged to be disposed of at the Site?

 i. What is the factual basis for plaintiffs' contention as to the number of drums set forth in the answer to C above?

D. If so, what do plaintiffs contend the drummed waste that Haven arranged to be disposed of at the Site consisted of?

 i. What is the factual basis for plaintiffs' contention as to what the drummed waste consisted of, as set forth in the answer to above?

E. If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:** See Plaintiffs' response to Interrogatory No. 1.

54. Do plaintiffs contend that Haven arranged for bulk waste to be disposed of at the Site?

A. If not, what is the factual and legal basis for your response.

B. If so, what is the factual and legal basis for plaintiffs' contention that Haven arranged for bulk waste to be disposed of at the Site?

C. If so, what do plaintiffs contend is the total volume of bulk waste that Haven arranged to be disposed of at the Site?

 i. What is the factual basis for plaintiffs' contention as to the total volume of bulk waste as set forth in the answer to above?

D. If so, what do plaintiffs contend the bulk waste that Haven arranged to be disposed of at the Site consisted of?

 i. What is the factual basis for plaintiffs' contention as to what the bulk waste consisted of, as set forth in the answer to above?

E. If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:** See Plaintiffs' response to Interrogatory No. 1.

55. Do plaintiffs contend that Envirotec, Inc. ("Envirotec") arranged for the disposal of drummed waste at the Site?

A. If not, what is the factual and legal basis for your response.

B. If so, what is the factual and legal basis for plaintiffs' contention that Envirotec arranged for drummed waste to be disposed of at the Site?

C. If so, how many drums of waste do plaintiffs contend Envirotec arranged to be disposed of at the Site?

    i.    What is the factual basis for plaintiffs' contention as to the number of drums set forth in the answer to above?

D.    If so, what do plaintiffs contend the drummed waste that Envirotec arranged to be disposed of at the Site consisted of?

    i.    What is the factual basis for plaintiffs' contention as to what the drummed waste consisted of, as set forth in the answer to above?

E.    If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

56.    Do plaintiffs contend that Envirotec arranged for bulk waste to be disposed of at the Site?

A.    If not, what is the factual and legal basis for your response.

B.    If so, what is the factual and legal basis for plaintiffs' contention that Envirotec arranged for bulk waste to be disposed of at the Site?

C.    If so, what do plaintiffs contend is the total volume of bulk waste that Envirotec arranged to be disposed of at the Site?

    i.    What is the factual basis for plaintiffs' contention as to the total volume of bulk waste as set forth in the answer to above?

D.    If so, what do plaintiffs contend the bulk waste that Envirotec arranged to be disposed of at the Site consisted of?

    i.    What is the factual basis for plaintiffs' contention as to what the bulk waste consisted of, as set forth in the answer to above?

E.    If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

57.    Do plaintiffs contend that Sitkin Smelting & Refining, Inc. ("Sitkin") arranged for the disposal of drummed waste at the Site?

A.    If not, what is the factual and legal basis for your response.

B.    If so, what is the factual and legal basis for plaintiffs' contention that Sitkin arranged for drummed waste to be disposed of at the Site?

C.    If so, how many drums of waste do plaintiffs contend Sitkin arranged to be disposed of at the Site?

    i.    What is the factual basis for plaintiffs' contention as to the number of drums set forth in the answer to above?

D.     If so, what do plaintiffs contend the drummed waste that Sitkin arranged to be disposed of at the Site consisted of?

       i.     What is the factual basis for plaintiffs' contention as to what the drummed waste consisted of, as set forth in the answer to above?

E.     If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

58.    Do plaintiffs contend that Sitkin arranged for bulk waste to be disposed of at the Site?

A.     If not, what is the factual and legal basis for your response.

B.     If so, what is the factual and legal basis for plaintiffs' contention that Sitkin arranged for bulk waste to be disposed of at the Site?

C.     If so, what do plaintiffs contend is the total volume of bulk waste that Sitkin arranged to be disposed of at the Site?

       i.     What is the factual basis for plaintiffs' contention as to the total volume of bulk waste as set forth in the answer to above?

D.     If so, what do plaintiffs contend the bulk waste that Sitkin arranged to be disposed of at the Site consisted of?

       i.     What is the factual basis for plaintiffs' contention as to what the bulk waste consisted of, as set forth in the answer to above?

E.     If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

59.    Do plaintiffs contend that Trace International, Inc. ("Trace") arranged for the disposal of drummed waste at the Site?

A.     If not, what is the factual and legal basis for your response.

B.     If so, what is the factual and legal basis for plaintiffs' contention that Trace arranged for drummed waste to be disposed of at the Site?

C.     If so, how many drums of waste do plaintiffs contend Trace arranged to be disposed of at the Site?

       i.     What is the factual basis for plaintiffs' contention as to the number of drums set forth in the answer to above?

D.     If so, what do plaintiffs contend the drummed waste that Trace arranged to be disposed of at the Site consisted of?

   i.  What is the factual basis for plaintiffs' contention as to what the drummed waste consisted of, as set forth in the answer to above?

 E.  If so, do you contend that such waste contained Hazardous Substances?

 **ANSWER:**  See Plaintiffs' response to Interrogatory No. 1.

60. Do plaintiffs contend that Trace arranged for bulk waste to be disposed of at the Site?

 A.  If not, what is the factual and legal basis for your response.

 B.  If so, what is the factual and legal basis for plaintiffs' contention that Trace arranged for bulk waste to be disposed of at the Site?

 C.  If so, what do plaintiffs contend is the total volume of bulk waste that Trace arranged to be disposed of at the Site?

   i.  What is the factual basis for plaintiffs' contention as to the total volume of bulk waste as set forth in the answer to above?

 D.  If so, what do plaintiffs contend the bulk waste that Trace arranged to be disposed of at the Site consisted of?

   i.  What is the factual basis for plaintiffs' contention as to what the bulk waste consisted of, as set forth in the answer to above?

 E.  If so, do you contend that such waste contained Hazardous Substances?

 **ANSWER:**  See Plaintiffs' response to Interrogatory No. 1.

61. Do plaintiffs contend that General Ceramics Inc., individually and as successor in interest to National Beryllia Corporation and National Beryllia & Ceramics Systems, Inc. ("General Ceramics") arranged for the disposal of drummed waste at the Site?

 A.  If not, what is the factual and legal basis for your response.

 B.  If so, what is the factual and legal basis for plaintiffs' contention that General Ceramics arranged for drummed waste to be disposed of at the Site?

 C.  If so, how many drums of waste do plaintiffs contend General Ceramics arranged to be disposed of at the Site?

   i.  What is the factual basis for plaintiffs' contention as to the number of drums set forth in the answer to above?

 D.  If so, what do plaintiffs contend the drummed waste that General Ceramics arranged to be disposed of at the Site consisted of?

      i.     What is the factual basis for plaintiffs' contention as to what the drummed waste consisted of, as set forth in the answer to above?

E.     If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

62.    Do plaintiffs contend that General Ceramics arranged for bulk waste to be disposed of at the Site?

A.     If not, what is the factual and legal basis for your response.

B.     If so, what is the factual and legal basis for plaintiffs' contention that General Ceramics arranged for bulk waste to be disposed of at the Site?

C.     If so, what do plaintiffs contend is the total volume of bulk waste that General Ceramics arranged to be disposed of at the Site?

      i.     What is the factual basis for plaintiffs' contention as to the total volume of bulk waste as set forth in the answer to above?

D.     If so, what do plaintiffs contend the bulk waste that General Ceramics arranged to be disposed of at the Site consisted of?

      i.     What is the factual basis for plaintiffs' contention as to what the bulk waste consisted of, as set forth in the answer to above?

E.     If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

63.    Do plaintiffs contend that Manfred DeRewal, Sr. ("DeRewal") arranged for the disposal of drummed waste at the Site?

A.     If not, what is the factual and legal basis for your response.

B.     If so, what is the factual and legal basis for plaintiffs' contention that DeRewal arranged for drummed waste to be disposed of at the Site?

C.     If so, how many drums of waste do plaintiffs contend DeRewal arranged to be disposed of at the Site?

      i.     What is the factual basis for plaintiffs' contention as to the number of drums set forth in the answer to above?

D.     If so, what do plaintiffs contend the drummed waste that DeRewal arranged to be disposed of at the Site consisted of?

       i.      What is the factual basis for plaintiffs' contention as to what the drummed waste consisted of, as set forth in the answer to above?

E.      If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

64.      Do plaintiffs contend that DeRewal arranged for bulk waste to be disposed of at the Site?

A.      If not, what is the factual and legal basis for your response.

B.      If so, what is the factual and legal basis for plaintiffs' contention that DeRewal arranged for bulk waste to be disposed of at the Site?

C.      If so, what do plaintiffs contend is the total volume of bulk waste that DeRewal arranged to be disposed of at the Site?

       i.      What is the factual basis for plaintiffs' contention as to the total volume of bulk waste as set forth in the answer to above?

D.      If so, what do plaintiffs contend the bulk waste that DeRewal arranged to be disposed of at the Site consisted of?

       i.      What is the factual basis for plaintiffs' contention as to what the bulk waste consisted of, as set forth in the answer to above?

E.      If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

65.      Do plaintiffs contend that DeRewal Chemical Company a/k/a DeRewal Chemical Corporation ("DCC") arranged for the disposal of drummed waste at the Site?

A.      If not, what is the factual and legal basis for your response.

B.      If so, what is the factual and legal basis for plaintiffs' contention that DCC arranged for drummed waste to be disposed of at the Site?

C.      If so, how many drums of waste do plaintiffs contend DCC arranged to be disposed of at the Site?

       i.      What is the factual basis for plaintiffs' contention as to the number of drums set forth in the answer to above?

D.      If so, what do plaintiffs contend the drummed waste that DCC arranged to be disposed of at the Site consisted of?

       i.      What is the factual basis for plaintiffs' contention as to what the drummed waste consisted of, as set forth in the answer to above?

E.      If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

66.    Do plaintiffs contend that DCC arranged for bulk waste to be disposed of at the Site?

A.      If not, what is the factual and legal basis for your response.

B.      If so, what is the factual and legal basis for plaintiffs' contention that DCC arranged for bulk waste to be disposed of at the Site?

C.      If so, what do plaintiffs contend is the total volume of bulk waste that DCC arranged to be disposed of at the Site?

i.      What is the factual basis for plaintiffs' contention as to the total volume of bulk waste as set forth in the answer to above?

D.      If so, what do plaintiffs contend the bulk waste that DCC arranged to be disposed of at the Site consisted of?

i.      What is the factual basis for plaintiffs' contention as to what the bulk waste consisted of, as set forth in the answer to above?

E.      If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 1.

67.    Do plaintiffs contend that drummed waste transported by DCC was disposed of at the Site?

A.      If not, what is the factual and legal basis for your response.

B.      If so, what is the factual and legal basis for plaintiffs' contention that drummed waste transported by DCC was disposed of at the Site?

C.      If so, how many drums of waste transported by DCC do plaintiffs contend were disposed of at the Site?

i.      What is the factual basis for plaintiffs' contention as to the number of drums set forth in the answer to above?

D.      If so, what do plaintiffs contend the drummed waste transported by DCC consisted of?

i.      What is the factual basis for plaintiffs' contention as to what the drummed waste consisted of, as set forth in the answer to above?

E.      If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    Plaintiffs object to this Interrogatory to the extent that it seeks information outside the scope of the contentions that Plaintiffs will make as part of their prima facie case at trial and to the extent that it is overly broad and unduly burdensome.  Plaintiffs further object to this Interrogatory to the extent that it seeks the discovery of the mental impressions, conclusions, strategies, opinions, research or legal theories of their attorneys or other representatives or information protected by the attorney-client privilege or any other applicable privilege.  By way of further objection, Defendants' definition of "factual basis" is overbroad and unduly burdensome.

Without waiving any such objections, Plaintiffs will ask the Court at trial to make findings of fact or conclusions of law that drummed and bulk waste hauled by DCC beginning in 1972 was disposed of at the Site.  By way of further response, see response to Interrogatory No. 78.  Plaintiffs will not ask the Court at trial to make findings of fact or conclusions of law that drummed and bulk waste hauled by Globe was disposed of at the Site.

68.    Do plaintiffs contend that bulk waste transported by DCC was disposed of at the Site?

    A.    If not, what is the factual and legal basis for your response.

    B.    If so, what is the factual and legal basis for plaintiffs' contention that bulk waste transported by DCC was disposed of at the Site?

    C.    If so, what do plaintiffs contend is the total volume of bulk waste transported by DCC that was disposed of at the Site?

        i.    What is the factual basis for plaintiffs' contention as to the volume of bulk waste as set forth in the answer to above?

    D.    If so, what do plaintiffs contend the bulk waste transported by DCC that was disposed of at the Site consisted of?

        i.    What is the factual basis for plaintiffs' contention as to what the bulk waste consisted of, as set forth in the answer to above?

    E.    If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 67.

69. Do plaintiffs contend that drummed waste transported by Globe Disposal Co., Inc./Globe-Wastech, Inc. ("Globe") was disposed of at the Site?

    A.     If not, what is the factual and legal basis for your response.

    B.     If so, what is the factual and legal basis for plaintiffs' contention that drummed waste transported by Globe was disposed of at the Site?

    C.     If so, how many drums of waste transported by Globe do plaintiffs contend were disposed of at the Site?

        i.     What is the factual basis for plaintiffs' contention as to the number of drums set forth in the answer to above?

    D.     If so, what do plaintiffs contend the drummed waste transported by Globe consisted of?

        i.     What is the factual basis for plaintiffs' contention as to what the drummed waste consisted of, as set forth in the answer to above?

    E.     If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**     See Plaintiffs' response to Interrogatory No. 67.

70. Do plaintiffs contend that bulk waste transported by Globe was disposed of at the Site?

    A.     If not, what is the factual and legal basis for your response.

    B.     If so, what is the factual and legal basis for plaintiffs' contention that bulk waste transported by Globe was disposed of at the Site?

    C.     If so, what do plaintiffs contend is the total volume of bulk waste transported by Globe that was disposed of at the Site?

        i.     What is the factual basis for plaintiffs' contention as to the volume of bulk waste as set forth in the answer to above?

    D.     If so, what do plaintiffs contend the bulk waste transported by Globe that was disposed of at the Site consisted of?

        i.     What is the factual basis for plaintiffs' contention as to what the bulk waste consisted of, as set forth in the answer to above?

    E.     If so, do you contend that such waste contained Hazardous Substances?

**ANSWER:**     See Plaintiffs' response to Interrogatory No. 67.

71. What do plaintiffs contend is the total volume of waste that was disposed of at the Site?

**ANSWER:**    Plaintiffs object to this Interrogatory to the extent that it seeks information outside the scope of the contentions that Plaintiffs will make as part of their prima facie case at trial and to the extent that it is overly broad and unduly burdensome.  Without waiving any such objections, Plaintiffs will not ask the Court at trial to make findings of fact or conclusions of law concerning the "total volume of waste that was disposed of at the Site."  By way of further answer, see Plaintiffs' response to Interrogatory No. 78.

72.    What do plaintiffs contend is the total volume of Hazardous Substances that was disposed of at the Site?

**ANSWER:**    Plaintiffs object to this Interrogatory to the extent that it seeks information outside the scope of the contentions that Plaintiffs will make as part of their prima facie case at trial and to the extent that it is overly broad and unduly burdensome.  Without waiving any such objections, Plaintiffs will not ask the Court at trial to make findings of fact or conclusions of law concerning the "total volume of Hazardous Substances that was disposed of at the Site."  By way of further answer, see Plaintiffs' response to Interrogatory No. 78.

73.    What do plaintiffs contend is the Total Cleanup Cost for the Site?

**ANSWER:**    Plaintiffs object to the Defendants' definition of "Total Cleanup Cost" because it is overly broad, vague, ambiguous, unduly burdensome and not limited in time.  Plaintiffs further object to this Interrogatory to the extent that it seeks information outside the scope of the contentions that Plaintiffs will make as part of their prima facie case at trial.  Plaintiffs further object to this Interrogatory to the extent that it seeks the discovery of the mental impressions, conclusions, strategies, opinions, research or legal theories of their attorneys or other representatives or information protected by the attorney-client privilege or any other applicable privilege.

Without waiving any such objections, Plaintiffs will ask the Court at trial to make findings of fact and conclusions of law based upon testimony and documents Plaintiffs will offer into evidence concerning the costs of response incurred by them up to a date to be set by the Court. Plaintiffs will also ask the Court to declare that Defendants are liable for contribution for whatever costs of response that are incurred by Plaintiffs after that date. Plaintiffs thus have no contentions concerning "Total Cleanup Cost."

The OU-1 Group has through 2006 incurred $3,381,696 in response costs for work required by the OU-1 Consent Decree and $322,196 for EPA oversight costs. Work required by the OU-1 Consent Decree is ongoing. Funds for those costs of response were paid as follows:

| Agere Systems, Inc. | $583,191.37 |
| Cytec Industries | $780,006.07 |
| Ford Motor Company | $780,006.07 |
| NRM Investments | $257,183.94 |
| SPS Technologies | $780,006.07 |
| TI Automotive | $265,976.35 |
| Worthington Industries, Inc. | $257,183.94 |
| | $3,703,553.81 |

The OU-2 Group has through 2006 incurred $2,187,711 in response costs for work required by the OU-2 Consent Decree and $325,981 for EPA oversight costs. OU-2 work is complete with the exception of necessary engineering and institutional controls. Funds for those costs of response were paid as follows:

| Cytec Industries | $565,581.00 |

| Ford Motor Company | $565,581.00 |
|---|---|
| SPS Technologies | $565,581.00 |
| TI Automotive | $565,581.00 |
| Agere | $251,369 |
| | $2,513,693.00 |

The OU-2 Group has through 2006 paid to EPA $7,478,615 for EPA's past and interim costs as required by the OU-2 Consent Decree. Funds for those costs of response were paid as follows:

| Cytec Industries | $1,848,871.00 |
|---|---|
| Ford Motor Company | $1,848,871.00 |
| SPS Technologies | $1,848,871.00 |
| TI Automotive | $1,793,451.00 |
| NRM Investments | $27,710.18 |
| Worthington Industries, Inc. | $27,710.18 |
| Agere | $83,130.55 |
| | $7,478,614.91 |

Plaintiffs are also entitled to interest on amounts recoverable. Plaintiffs have previously provided Defendants with documentation of past costs, including, but not limited to, two reports from MPS/Zaumeyer Economic Consulting, LLC (dated April 11, 2005 and July 28, 2006) that track the response costs incurred for OU-1 and OU-2 work, respectively, for the time period up to May 31, 2006. Plaintiffs also advised Defendants that the backup documentation for the Zaumeyer reports, including invoices, payment proofs and invoice tracking charts prepared by

Geoffrey Siebel of de maximis, inc., are available for Defendants' inspection in the Document Repository. Plaintiffs have also updated the Repository to include the de maximis, inc. OU-1 invoice tracking chart and backup documentation for OU-1 work performed through the end of 2006 as well as invoices for OU-2 work performed in 2006. Plaintiffs will rely upon the Zaumeyer charts, de maximis, inc. invoice tracking charts and the testimony of Mr. Seibel to prove the response costs incurred for OU-1 and OU-2 work, and upon the Zaumeyer charts and the testimony of Timothy Bergere, Esquire to prove the payment of those costs from the OU-1 and OU-2 Group accounts, the payments to EPA, and the payments by Plaintiffs, NRM Investment Company, and Worthington into the OU-1 and OU-2 Group accounts. Given that the voluminous invoices and other payment proofs cannot be conveniently examined in court, Plaintiffs intend to use the schedules in the Zaumeyer reports and/or the de maximis, inc. invoice tracking charts as proof of Plaintiffs' damages at trial, pursuant to Fed. R. Evid. 1006.

On or about March 30, 2007, Agere entered into a settlement agreement with SPS, Ford, Cytec and TI resolving certain claims, including the rights and obligations, as between Agere and those entities, for Agere's share of all OU-1 and OU-2 Group costs, including costs of this action. SPS, Ford, Cytec and TI agreed therein to pay to Agere $400,000, none of which was allocated by the parties to any previous contributions by Agere. A copy of the agreement is available in the Document Repository.

Plaintiffs will ask the Court at trial to rule that they have collectively paid to date an amount in excess of their equitable share of those costs identified above.

74.    What do plaintiffs contend is the Total Cleanup Cost for OU-1 ?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 73.

75.    What do plaintiffs contend is the Total Cleanup Cost for OU-2?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 73.

76.  What do plaintiffs contend is the Total Cleanup Cost incurred by each plaintiff for each of OU-1 andOU-2?

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 73.

77.  Do you contend that any Plaintiff has spent, or is obliged to spend for future costs, amounts in excess of its equitable share of the Total Cleanup Cost?

A.    If so, state what each plaintiff contends to be the amount it has already spent and that it will be obliged to spend.

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 73. By way of further

answer, see Plaintiffs' response to Interrogatory No. 78.

78.  What do plaintiffs contend is Agere's allocable/equitable share of the Total Cleanup Cost for the Site (expressed in a percentage)?

A.    What is the factual basis for plaintiffs' contention as to Agere's allocable/equitable share of the Total Cleanup Cost for the Site?

B.    Set forth the calculation used by plaintiffs to arrive at their contention as to Agere's allocable/equitable share of the Total Cleanup Cost for the Site.

Plaintiffs object to this Interrogatory to the extent that it seeks information outside the

scope of the contentions that Plaintiffs will make as part of their prima facie case at trial.

Plaintiffs further object to this Interrogatory to the extent that it seeks the discovery of the mental

impressions, conclusions, strategies, opinions, research or legal theories of their attorneys or

other representatives or information protected by the attorney-client privilege or any other

applicable privilege. By way of further objection, Defendants' definition of "factual basis" is

overbroad and unduly burdensome.

Without waiving any such objections, Plaintiffs will ask the Court at trial to make

findings of fact and conclusions of law based upon testimony and documents Plaintiffs will offer

into evidence concerning the hazardous substances owned or possessed by those Defendants who

have not settled ("the Non-Settling Defendants") that were disposed of at the Site, by Plaintiffs

that were disposed of at the Site, and by Plymouth Tube Company, Quikline Design and

Manufacturing Co., Rohm and Haas Company, Simon Wrecking Co., Inc., Unisys Corporation, United States of America Department of Navy, Novartis Corporation, Techalloy Company, Inc./Rahns Specialty Metals, Inc., and Emhart Industries, Inc./Crown Metro, Inc. ("Settling Defendants") that were disposed of at the Site. Plaintiffs will not ask as part of their case-in-chief that the Court make findings of fact and conclusions of law concerning disposal at the Site of hazardous substances owned or possessed by any other person or entity.

Plaintiffs will ask the Court to make findings of fact concerning the Non-Settling Defendants' total volumes of hazardous wastes that were hauled by DeRewal Chemical Company and/or Environmental Chemical Control (collectively "DCC"). Plaintiffs will then ask the Court to determine the amount of each Non-Settling Defendants' total volume of waste that was disposed of at the Site based upon evidence concerning DCC's handling of all its customer wastes in various time periods ("Nexus Periods") as well as DCC's handling of particular Non-Settling Defendants' wastes. Plaintiffs will ask the Court to conclude that a specific percentage of all wastes handled by DCC in any given Nexus Period was disposed of at the Site, and to apply that percentage to all wastes of Non-Settling Defendants handled by DCC in that Nexus Period. Set forth below is the testimony and documents Plaintiffs intend to offer into evidence for the Court's consideration.

Should the Court adopt Plaintiffs' proposed conclusions that specific percentages of all wastes handled by DCC in any given Nexus Period were disposed of at the Site, then the Plaintiffs expect that the Court will apply the same nexus percentages to the Plaintiffs and Settled Defendant's wastes. Exhibit A attached hereto is a chart showing the total volumes of each Non-Settling Defendant's, each Plaintiff's, and each Settling Defendant's wastes that were hauled by DCC in each Nexus Period ("Gross" on the chart by "Time" period), the nexus

percentages Plaintiffs will ask the Court to find ("Factor" on the chart), and the volumes that the Court will conclude were disposed of at the Site if those nexus percentages are adopted ("Net" on the chart). The entries for "Ashland/AETC" and "Diaz/AETC" show waste that was hauled by DCC from Ashland and Diaz respectively, the transportation for disposal of which those entities and AETC each arranged. Plaintiffs will ask the Court to allocate the "Ashland/AETC" share jointly and severally to Ashland and AETC and the "Diaz/AETC" share to AETC. The entries for "Etched/Flexible" show waste that was hauled by DCC from the Etched Circuits facility for which Flexible is liable.

Plaintiffs will ask the Court to allocate response costs incurred by them up to a date to be set by the Court among Plaintiffs, Non-Settling Defendants, and Settling Defendants only based primarily upon the respective volume of each party's waste that was disposed at the Site (as set forth more fully below). Plaintiffs will also ask the Court for interest on its response costs. Plaintiffs will also ask the Court to apply this allocation to response costs to be incurred by Plaintiffs after that date.

    A.    <u>Waste Quantities</u>

        1.    *Nexus Periods*

            (a).    1/72 to 12/1/73

Plaintiffs will ask the Court to conclude that 95% of all of the waste handled by DCC beginning in January of 1972 was disposed of at the Site until the opening of DCC's Ontario Street operation in Philadelphia on December 1, 1973. The documents that Plaintiffs intend to rely upon to support this conclusion include, but are not limited to:

- Boarhead Corporation Certificate of Incorporation dated September 2, 1969 [P-5];

- Deed Between Robert and Ruth Buckman and Boarhead Corporation dated October 16, 1969 [P-6];

- DeRewal Chemical Company, Inc. Certificate of Incorporation dated December 29, 1969 [P-7];

- Pennsylvania State Police Investigation Report dated April 26, 1972;

- March 7, 1973 and March 12, 1973 BDOH memorandum;

- Waste Discharge Inspection Report and Site Map dated February 14, 1973 [P-22]

- Waste Discharge Inspection Report dated March 5, 1973 [P-23];

- Agreement Between Boarhead Corporation and Manfred DeRewal dated March 21, 1973 [P-24];

- December 20, 1973 Bucks County Department of Health memorandum;

- PADER November 2, 1973 Order to Boarhead Corporation;

- Waste Discharge Inspection Report dated November 5, 1973

- November 23, 1973 Waste Discharge Inspection Report;

- January 8, 1974 Department of Health Memorandum;

- June 28, 1974 Department of Health memo;

- Complaint in Equity filed on May 31, 1974 in the Court of Common Pleas of Bucks County with an injunction issuing on June 21, 1974;

- Lease Agreement Between Philadelphia Hide Corporation and Manfred DeRewal for 3013-31 East Ontario Street dated November 15, 1973 [P-20]; and

- Affidavit of John Barsum dated April 28, 2000 [D-27].

Plaintiffs also intend to rely upon the testimony of Bruce DeRewal, Freddie DeRewal, Jeff Shaak, John Barsum, John Bean, and June Stephens to support that conclusion. Should one or more of those individuals be unavailable to testify at trial, Plaintiffs intend to offer into evidence the transcripts of the depositions taken in this action of those individuals. Plaintiffs believe that the testimony of those individuals as reflected in those transcripts supports this conclusion, including, but not limited to:

- Bruce DeRewal at 12-38;

- Jeff Shaak at 13-56;

- June Stephens at 20-22, 28-29, 45, 92, 98, 169-71;

- John Bean at 13-24, 45-88;

- John Barsum at 40-43, 51-52, 57-58, 92-93, 206-08, 244-46, 328-30; and

- Freddie DeRewal at 15, 39-58, 129-37.

(b).     12/1/73 to 6/30/75

Plaintiffs will ask the Court to conclude that 15% of all of the waste handled by DCC

after the opening of DCC's Ontario Street operation on December 1, 1973 until the closing of

Ontario Street on or before June 30, 1975 was disposed at the Site.  The documents that Plaintiffs

intend to rely upon to support this conclusion include, but are not limited to:

- Lease Agreement Between Philadelphia Hide Corporation and Manfred DeRewal for 3013-31 East Ontario Street dated November 15, 1973 [P-20];

- Letter and Diagram from Thomas J. Kulesza of the City of Philadelphia Water Department to Manfred DeRewal dated September 24, 1974 regarding operations at 3015 E. Ontario Street [P-25];

- Letter from Michael Nelson of the City of Philadelphia Water Department to Manfred DeRewal dated June 2, 1975 regarding cessation of sewer and water services at 3015 E. Ontario Street [P-26];

- June 17, 1975 Philadelphia Water Department letter;

- Waste Discharge Inspection Report dated April 25, 1974;

- Commonwealth of Pennsylvania Complaint in equity on May 28, 1974, which was resolved with an agreed order; and

- February 26, 1975 Waste Discharge Inspection Report.

Plaintiffs also intend to rely upon the testimony of Bruce DeRewal, Freddie DeRewal,

Jeff Shaak, John Barsum, John Bean, Manfred DeRewal, and June Stephens to support that

conclusion.  Should one or more of those individuals be unavailable to testify at trial, Plaintiffs

intend to offer into evidence the transcripts of the depositions taken in this action of those

individuals.  Plaintiffs believe that the testimony of those individuals as reflected in those

transcripts supports that conclusion, including, but not limited to:

- Fred DeRewal at 113-14;

- June Stephens at 28-29, 92-102, 171;

- John Bean at 47-48, 70-80; and

- Bruce DeRewal at 46-47, 55-56.

> (c).    7/1/75 to 6/1/76

Plaintiffs will ask the Court to conclude that 65% of all of the waste handled by DCC

after the closing of DCC's Ontario Street operation on or before June 30, 1975 and until the

opening of DCC's Wissinoming operation on June 1, 1976 was disposed at the Site.  The

documents that Plaintiffs intend to rely upon to support this conclusion include, but are not

limited to:

- Bench opinion filed May 16, 1978 in United States v. Manfred DeRewal, et al. in the United States District Court for the Eastern District of Pennsylvania at Docket No. 77-287;

- Environmental Chemical Control, Inc. Certificate of Incorporation dated October 18, 1976 [P-27];

- July 16, 1975 Waste Discharge Inspection Report;

- Nine criminal complaints filed by BCDOH on January 25, 1976 and February 18, 1976 against Boarhead Corporation and Manfred DeRewal alleging violations of the Pennsylvania Clean Streams Law; and

- Waste Discharge Inspection Report dated April 1, 1976.

Plaintiffs also intend to rely upon the testimony of Bruce DeRewal, Freddie DeRewal,

Jeff Shaak, John Barsum, John Bean, Manfred DeRewal, Linda Cochran, and June Stephens to

support that conclusion.  Should one or more of those individuals be unavailable to testify at

trial, Plaintiffs intend to offer into evidence the transcripts of the depositions taken in this action

of those individuals.  Plaintiffs believe that the testimony of those individuals as reflected in those transcripts supports that conclusion, including, but not limited to:

- Freddie DeRewal at 51-52, 125-26, 383-91;

- Linda Cochran at 91;

- Fred DeRewal at 115-17; and

- John Bean at 45-70, 80.

> (d).    6/1/76 to March 29, 1977

Plaintiffs will ask the Court to conclude that 15% of all of the waste handled by DCC after opening of DCC's Wissinoming operation on June 1, 1976 until March 29, 1977 were disposed of at the Site, except that 25% of the wastes believed by the DCC drivers to consist of nitrating acids were disposed of at the Site during this period.  The documents that Plaintiffs intend to rely upon to support this conclusion include, but are not limited to:

- Violation Notice to Ed and Linda Cochron regarding premises located at 5001 Comly Street (Bldg. R) dated April 5, 1977 [P-28];

- Agreement between Manfred DeRewal, Environmental Chemical Control, Inc., Environmental Protection Agency and the City of Philadelphia dated May 12, 1977 [P-29];

- BCDOH "Field Action Report" on July 9, 1976;

- A Waste Discharge Inspection Report dated July 30, 1976;

- Bridgeton Police Department complaint of ammonia odor on September 8, 1976; and

- September 20, 1976 memorandum prepared by Arthur Curley.

Plaintiffs also intend to rely upon the testimony of Bruce DeRewal, Freddie DeRewal, Jeff Shaak, John Barsum, John Bean, Manfred DeRewal, Linda Cochran, and June Stephens to support that conclusion.  Should one or more of those individuals be unavailable to testify at trial, Plaintiffs intend to offer into evidence the transcripts of the depositions taken in this action

of those individuals. Plaintiffs believe that the testimony of those individuals as reflected in those transcripts supports that conclusion, including, but not limited to:

- Fred DeRewal at 117-22;

- Bruce DeRewal at 142-43;

- Freddie DeRewal at 328-30; and

- Jeff Shaak at 59-61.


2.    *Non-Settling Defendants' Wastes Hauled By DCC*

Carpenter Technology Corporation:

The documents that Plaintiffs intend to rely upon to support their conclusions with respect to Carpenter Technology Corporation include, but are not limited to:

- 6/12/73 contract (Cheri-2) and legal department cover letter (Cheri-1);

- 12/20/73 purchase order (Cheri-3);

- "Waste Acid Removal Cost" chart (Cheri-8);

- "DeRewal Chemical Co. Waste Acid Removal" chart (Cheri-7);

- "DeRewal Chemical Co. 80#228" chart (Cheri-6);

- 10/8/74 Memo (Mann-4);

- 2/25/71 letter (Mann-15);

- Analysis Requests (Mann-3);

- Handwritten notes (Mann-12);

- 7/17/69 Memo (Mann-8);

- 7/8/69 Handwritten telephone note (Adams-2);

- 2/25/70 Memo (Mann-14); and

- Polinko Affidavit.

Plaintiffs also intend to rely upon the testimony of Richard Cheri, William Reger, James Adams, David Mann, Charles Polinko, Robert Elbert, Freddie DeRewal, Bruce DeRewal, June Stevens, John Barsum, and Jurgen H. Exner, Ph.D. Should one or more of those individuals be unavailable to testify at trial, Plaintiffs intend to offer into evidence the transcripts of depositions taken in this action of those individuals, including but not limited to:

- Cheri 24-27, 33-38, 43-50, 52-56, 70-74;

- Reger 13-24;

- Adams 21-23, 35, 48-59, 67-87;

- Mann 19-21, 57-64, 70-74, 81-89, 95, 105-109, 115-17, 127-33, 145-49;

- Elbert 45-47, 67;

- Freddie DeRewal 132-37, 352-53;

- Bruce DeRewal 39-47;

- June Stevens 95-98; and

- John Barsum 51-52, 92-94.

NRM Investment Co.

The documents that Plaintiffs intend to rely upon to support their conclusions with respect to NRM Investment Co. include, but are not limited to:

- 4/87 business confidential response to EPA;

- February 1975 letter to NJDEP;

- Handwritten document from 1977 detailing hauling NRM waste acid;

- Accounts receivable ledger for 1974-75;

- February 2000 letter to Platt, including attachments;

- Handwritten notes from 1976;

- February 1991 interview notes regarding Minthorn;

- Summaries of bills of lading and accounting;

- May 1986 application for discharge permit;

- May 1984 letter to Valley Forge Sewer Authority;

- November 1989 evaluation of cyanide treatment alternatives with attachments;

- April 1986 letter to EPA;

- 1987 engineering records including handwritten calculations and sample results;

- 1988-89 fact sheet and tables;

- May 1989 proposed wastewater treatment plan;

- 1986 handwritten notes re CN;

- 6/88 handwritten notes;

- Schematic of NRM facility;

- Invoices, pick up tickets, summaries of the same, and

- Other correspondence related to hauling of NRM liquid waste.

Plaintiffs also intend to rely upon the testimony of Santo Quici, Frederick Chesky, Peter Freda, Merle Winters, Fred Piotto, Manfred DeRewal, Freddie DeRewal, John Barsum, Jeff Shaak, June Stevens, Bruce DeRewal and Jurgen H. Exner, Ph.D. Should one or more of those individuals be unavailable to testify at trial, Plaintiffs intend to offer into evidence the transcripts of depositions taken in this action of those individuals, including but not limited to:

- Piotti, 13-14, 20-32, 39-47, 50, 55-60, 64-65, 79-83, 86, 93-95, 97-100, 104;

- Quici 15-18, 22-25;

- Chesky 11-14, 16-17, 21-25, 27, 30-31, 36-37, 40-42, 45-48, 52-55, 56-62;

- Freda 9-10, 12-16, 18-24, 27, 30, 37-40, 43-45, 47-78, 57, 62;

- Winters 10-13, 17-18, 21-28, 31, 36-37, 39-40, 42-43, 47, 59, 68-70;

- Manfred DeRewal 157-60, 410-14, 510;

- Freddie DeRewal 47-50, 52, 58-59, 381-84;

- John Barsum 117-20;

- Jeff Shaak 56-64, 113-14;

- June Stevens 90-92; and

- Bruce DeRewal 39, 86-87.

Advanced Environmental Technology Corporation

*As to AETC Itself*

The documents that Plaintiffs intend to rely upon to support their conclusions with respect to Advanced Environmental Technology Corporation include, but are not limited to, the documents identified with respect to Diaz Chemical Corporation and Ashland Chemical Company below, and the following:

- Correspondence dated August 17, 1976 from ECC to AETC, (AETC51);

- Correspondence dated August 31, 1976 from AETC to DCC, (AETC135);

- Correspondence from AETC to Ashland dated September 28, 1976 (Leuzarder-3);

- Correspondence from John Leuzarder to Manfred DeRewal, dated August 31, 1976, confirming conversation regarding trucking and disposal services (Leuzarder-7);

- DCC invoice dated March 31, 1977 (Leuzarder-9);

- Correspondence dated September 7, 1976 from Leuzarder to DeRewal (Leuzarder-11);

- Correspondence from Susan Lemore to Manfred DeRewal, dated August 23, 1976, confirming conversation regarding required certificate of insurance to be issued to Advanced Environmental Technology Corp. for work to be performed at Ashland Chemical (Leuzarder-13);

- Handwritten notes (undated) referring to sulfuric acid leak at Boarhead Farms (Landmesser-3);

- USEPA's Information Requests to Advanced Environmental Technology Corp. and Advanced Environmental Technology Corporation's Response to Information Requests of USEPA (BSAI022885-022936 and BSAI022975022997);

Plaintiffs also intend to rely upon the testimony of individuals in this case including, but not limited to, the deposition testimony identified with respect to Diaz Chemical Corporation and Ashland Chemical Company below, and the following: Arthur Curley, John Leuzarder and Robert Landmesser. Should one or more of those individuals be unavailable to testify at trial, Plaintiffs intend to offer into evidence the transcripts of depositions taken in this action of those individuals, including, but not limited to:

- Curley: 107, 108, 111, 114-115, 117, 122, 125-130, 157;

- Leuzarder: 37-38, 42, 47, 53, 56-59, 62-68, 70-73, 88-93;

- Landmesser (v.2) 144-147, 151, 154-155, 166-168; (v.1) 56-59, 64-65, 76-78, 86-87, 92, 94-95, 101, 151.

*As to Waste from Diaz Chemical Corporation:*

The documents that Plaintiffs intend to rely upon to support their conclusions with respect to Diaz Chemical Corporation include, but are not limited to:

- Letter Agreement, dated January 7, 1977, between R.W. Landmesser of Advanced Environmental Technology Corp. and Don Hollwedel of Diaz Chemical Corporation extending services (Landmesser-4);

- Correspondence from H.D. Hollwedel of Diaz Chemical Corporation to Robert Landmesser of Advanced Environmental Technology Corp., dated April 14, 1977, confirming Diaz Chemical Corporation as primary source for disposal of its waste nitration acid (Landmesser-5);

- Invoice, dated March 7, 1977, from Advanced Environmental Technology Corp. to Diaz Chemical Corporation (Landmesser-6);

- USEPA's Information Request to Diaz Chemical Corporation (BSAI029281-BSAI029290; BSAI029291-BSAI029293);

- Diaz Chemical Corporation's Response to Information Request of USEPA (BSAI029140-BSAI029277; BSAI029278-BSAI029280);

- Purchase Order dated 5/16/77 (BSAI029294-BSAI029295)

- Acknowledgment of bill of lading dated 5/28/77 (Leuzarder-12);

- Receipts (variously dated) (BSAI029297-BSAI029301)

- Handwritten notes (BSAI029302)

- Portion of document indicating the amount of money and waste streams that were sent to DCC from Ashland Chemical and Diaz (AETC197-199)

Plaintiffs also intend to rely upon the testimony of individuals in this case including, but not limited to, the following: Theodore Jenney, Stanley Chiras, Diane Shampine, Robert Landmesser, John Leuzarder and Jurgen H. Exner, Ph.D. Should one or more of those individuals be unavailable to testify at trial, Plaintiffs intend to offer into evidence the transcripts of depositions taken in this action of those individuals, including, but not limited to:

- Jenney: 32-49;

- Chiras: 20-26, 34-41; 62, 73;

- Shampine: 19-23; and

- Landmesser: (v.2) 161, 177, 185-192, (v.3) 41-42, 46.

<u>Ashland, Inc.</u>

The documents that Plaintiffs intend to rely upon to support their conclusions with respect to Ashland, Inc. include, but are not limited to:

- Correspondence from R.T. Olsen of Ashland Chemical Company to Andrea Barnhouse of A.B.M. Disposal Company, dated August 4, 1976, regarding "best estimate" analysis of its A.C.C. Code 616-220 CDN Spent Acid (ASHL00004);

- Bills of lading, dated 8/9/76-4/12/77 (ASHL00005-00010; ASHL00037-00044; ASHL00048-00065; ASHL00070-00072; ASHL00075-00084; ASHL00000087-00089; ASHL00091-00099; ASHL00105-00110; ASHL00113-00118; ASHL00120-00121; ASHL00124-00126; ASHL00128-00129; ASHL00131; ASHL00133-00139; ASHL00142-00143; ASHL00145-00146; ASHL00148; ASHL00150; ASHL00152; ASHL00154; ASHL00156; ASHL00163-00164; ASHL00166; ASHL00168; ASHL00170; ASHL00172; ASHL00174; ASHL00176; ASHL00178-00180; ASHL00182; ASHL00184; ASHL00186-

00187; ASHL00192-00195; ASHL00197-00212; ASHL00215; ASHL00217-
00231; ASHL00233-00234; ASHL00239; ASHL00246-00249; ASHL00251-
00252);

- Memorandum from A.T. Curley to W.R. Starkey dated September 16, 1976
  (ASHL00066-00069);

- USEPA's Information Requests to Ashland Chemical Company and Ashland
  Responses to USEPA Information Requests (ASHL00313-ASHL00472 and
  BSAI005140-005142);

- Invoice from DeRewal Chemical Co., Inc. to Advanced Environmental Tech.,
  dated 4/9/77 (ASHL00249);

- Portions of waste ledger sheets (BSAI024255-024256; BSAI024275-024276;
  BSAI033916; BSAI033932; BSAI033937-033938; BSAI034142-034143;
  BSAI034201);

- Bill of lading, dated 4/28/77 (BSAI024001);

- Correspondence from John Leuzarder of Advanced Technology, Inc. to Art
  Curley of Ashland Chemical Co., dated August 3, 1976 regarding pricing on
  various waste streams (Curley -1);

- Memorandum, dated August 23, 1976, from A.T. Curley to W. R. Starkey
  regarding waste chemical disposal (Curley-2);

- Agreement between Advanced Environmental Technology, Inc. and Ashland
  Chemical Company, undated and unsigned (Curley-4);

- Memorandum to file, dated September 20, 1976, from A.T. Curley regarding visit
  with current spent acid disposer (Curley-5);

- Memorandum, dated October 19, 1976, from A.T. Curley to J. Minott/W.R.
  Starkey regarding visit to disposal site for its CDN spent acid (Curley-6);

- Memorandum, dated April 14, 1977, from A.T. Curley to W.R. Starkey regarding
  CDN spent acid disposal (Curley-8);

- Memorandum, dated May 18, 1977, from A.T. Curley to T. Bailey regarding
  waste disposal (Curley-9);

- Portion of waste ledger sheet for April 1977 (Curley-11);

- Correspondence from John Leuzarder of Advanced Environmental Technology
  Corp., Inc. to Art Curley of Ashland Chemical Corporation, dated August 16,

1976, offering reduced pricing on two items covered in its quote of August 3, 1976 (Curley-16);

- Correspondence from Arthur Curley of Ashland Chemical Company to John Leuzarder of Advanced Environmental Technology Corp., Inc., dated October 26, 1976, regarding freeze point of its spent acid (Curley-17);

- Correspondence from John Leuzarder of Advanced Environmental Technology Corp., Inc. to Art Curley of Ashland Chemical Company, dated September 28, 1976, providing quote on extension of services (Curley-18);

- Bill of lading, dated 9/8/76 (C. Hendershot-5);

- Bill of lading, dated 11/4/76 (C. Hendershot-8);

- "Totals Paid DeRewal", (AETC197-199; Leuzarder-5);

- Photographs regarding Ashland Chemical drums and labels found at the site; and

- Sample results regarding contents of drums with Ashland Chemical labels

Plaintiffs also intend to rely upon the testimony of individuals in this case including, but not limited to, the following: Arthur Curley, John Leuzarder, Robert Landmesser, Charles R. Wilcox, Howard L. Hendershot, Charles Hendershot, Alberto Celleri, Freddie DeRewal, John Barsum, Jeff Shaak, Bruce DeRewal, June Stevens, Jurgen H. Exner, Ph.D and Craig Coslett and Geoffrey Siebel of de maximis, inc. Should one or more of those individuals be unavailable to testify at trial, Plaintiffs intend to offer into evidence the transcripts of depositions taken in this action of those individuals, including, but not limited to:

- Curley 44, 46-51, 53-54, 57, 59-60, 71, 110, 133-139, 141-145, 149-148, 167, 193;

- Wilcox 35-36, 37, 72;

- L. Hendershot 21;

- C. Hendershot 31-32, 36, 86, 89, 95;

- Celleri 23-24, 28-29;

- Freddie DeRewal 65-69;

- Jeff Shaak 65-68;

- John Barsum 180-84;

- Bruce DeRewal 80-83; and

- June Stevens 88-89.

Plaintiffs also intend to offer into evidence the transcripts of depositions taken in other cases, including the deposition of William C. Olasin taken on May 14, 2001 in *Rohm and Haas Co. v. American Cyanamid Co., et al.*, No. 95-1864 and 99-1891 (D.N.J.) 72-75, 158, 201; and the deposition of Arthur Curley taken on August 21, 1996 in *U.S. v. Davis, et al.*, No. 90-0484/P (D.R.I.) 35-37, 42, 62-63, 68-69, 83, 90, 108-111, 139-180, 201-205.

fcg, inc.

*As to Waste From Flexible Circuit Facility:*

- All documents recovered from the Bucks County Department of Health files for Flexible Circuits, produced at Bates Range BSAI082378-082771, including, but not limited to, a March 1968 Valley Sewer Authority sample; a June 1968 letter from Edwin Faunce to Flexible Circuits; follow up letters from 10/15/68, 10/16/68, 10/16/68; a February 27, 1969 letter from Flexible Circuits to the PA DER; follow up correspondence between Flexible Circuits and state agencies on 5/15/70; 6/18/70 handwritten notes; 7/7/70 letter from Melvin Bach; a July 1970 proposal from Udyllite; 10/10/70 inspection report; 1/29/71 and 2/22/71 inspection reports and samples; 2/10/71 letter; 7/7/71 complaint; 1/10/72 letter from DeRewal; 5/2/72 and 6/13/72 inspection reports; 6/15/72, 6/19/72, 6/23/72, 7/3/72 letters; 7/10/72, 8/8/72 inspection reports; 7/26/72 letter; 8/17/72 and 9/5/72 reports; a 10/72 agreement; 10/19/72 and 10/25/72 inspection reports; 1/12/73 and 3/12/73 inspection reports; 9/9/74 inspection report; 1/9/75 inspection report; 6/10/77 handwritten notes from BCDH; 9/21/77 and 11/21/77 letters; 4/6/79, 5/24/79, 5/25/79 and 5/29/79 reports and 5/31/79 response letter; 8/16/79 memo to DER; 10/16/79 letter; 10/17/79 handwritten notes; 2/20/80 letter; 5/5/82 handwritten notes; 6/16/82 letter; 11/3/82 letter; 2/1/83 letter and 1984 handwritten notes; 10/4/84 letter; 1992 inspection report.

- Additional documents not from the Bucks County Department of Health files for Flexible Circuits include 11/6/87 letter from Stollsteimer to EPA; a 10/2/87 letter from Bach to EPA; 9/11/87 letter from Bach to EPA; handwritten notes detailing DeRewal purchases and payments; 10/13/87 handwritten notes by Zia; 1/10/72 letter from DeRewal; 9/22/00 letter from Barbin to EPA; 1/27/86 letter and PPC Plan; 5/27/83 letter; undated Flexible Circuits Inc's promotional materials; the

Flexible Circuits' 1969 Annual Report, multiple DeRewal invoice's and pickup tickets 1973-75.

Plaintiffs also intend to rely upon the testimony of Melvin Bach, George Stollsteimer, Peter Knoll, Ralph Parker, Richard Yeatman, Freddie DeRewal, June Stevens, John Bean, Bruce DeRewal, John Barsum, Jeff Shaak and Jurgen H. Exner, Ph.D. Should one or more of those individuals be unavailable to testify at trial, Plaintiffs intend to offer into evidence the transcripts of depositions taken in this action of those individuals, including but not limited to:

- Bach 8, 15-20, 21-26, 27-30, 34-36, 38, 43, 49-56, 58-63, 65-66, 68, 71-73, 75, 80, 83, 86-89;

- Stollsteimer 10-13, 16-19, 23-25, 30-33, 35, 37, 39-41, 43, 53-61, 63-64, 66-67, 70-71, 77-80, 85-87, 92-94;

- Freddie DeRewal 8-88, 127-29;

- June Stevens 78-83, 107;

- John Bean 60-61;

- Bruce DeRewal 77-79;

- John Barsum 111-18, 154-60, 137-40, 179-80; and

- Jeff Shaak 29-31, 86-87.

*As to Waste From Etched Circuits Facility:*

- All of the documents and testimony listed under Flexible Circuits and in addition, to rely on a 10/2/87 letter from Bach to EPA; 10/24/70 meeting minutes; 4/25/70 meeting notes; 11/2/77 field representative waste survey report; 3/2/73 letter; 9/11/87 letter; 9/4/90 GIS submission; DeRewal invoices; 11/15/88 Inspection Report, 9/28/2000 response to EPA.

Handy & Harman Tube Company, Inc.

The documents that Plaintiffs intend to rely upon to support their conclusions with respect to Handy & Harman Tube Company, Inc. include, but are not limited to:

- 1/7/93 letter to EPA;

- September 1992 Site Investigation;

- 10/29/92 letter to EPA;

- February 1973 DCC invoice;

- Interview notes of Jay Crawford, Mary Kollmar, Thomas Curran; and

- Handy & Harman interrogatory responses.

Plaintiffs also intend to rely upon the testimony of Jay Crawford, Mary Kollmar, Thomas Curran, James McElya, Bruce DeRewal, Freddie DeRewal, John Barsum and Jurgen H. Exner, Ph.D. Should one or more of those individuals be unavailable to testify at trial, Plaintiffs intend to offer into evidence the transcripts of depositions taken in this action of those individuals, including but not limited to:

- Curran 31-32, 48-49, 52-56, 61, 71-71, 84;

- Kollmar 24;

- Bruce DeRewal 43-56;

- Freddie DeRewal 119-23, 397; and

- John Barsum 122, 326-328.

3.  *Settling Defendants' Waste Hauled By DCC*

Rohm and Haas:  There are no documents and no testimony establishing that DCC ever hauled waste from Rohm and Haas.

Unisys:

The documents that Plaintiffs intend to rely upon to support their conclusions with respect to Unisys include, but are not limited to:

- 4/30/72 Invoice to Univac (P-18)

- January 21, 1972 DCC letter to Univac (P-16)

- 3/6/73 Remington Rand Purchase Order

- 4/27/73 Univac Purchase Order

Plymouth Tube:

The documents that Plaintiffs intend to rely upon to support their conclusions with respect to Plymouth Tube include, but are not limited to:

- November 27, 1972 DCC letter to Carpenter Technology (P-32);

- January 10, 1973 letter from Hugh Hawk to EPA;

- DCC invoices dated 1976 (P-15);

- May 24, 1977 letter from Hugh Hawk to PADER.

Quikline Design and Manufacturing Co.:

The documents that Plaintiffs intend to rely upon to support their conclusions with respect to Quikline Design and Manufacturing Co. include, but are not limited to:

- March 1973 DCC Invoice;

- March 2, 1973 letter from DeRewal to Marchewka; and

- 1978 Waste Survey Report

Plaintiffs also intend to rely upon the testimony of Manfred DeRewal and Freddie DeRewal. Should one or more of those individuals be unavailable to testify at trial, Plaintiffs intend to offer into evidence the transcripts of depositions taken in this action of those individuals, including but not limited to:

- Manfred DeRewal at 150-152

- Freddie DeRewal at 361-367

United States Navy:

The documents that Plaintiffs intend to rely upon to support their conclusions with respect to the United States Navy include, but are not limited to:

- 5/17/76 Fumara letter; and

- 9/7/76 Lynn letter

Plaintiffs also intend to rely upon the testimony of Freddie DeRewal. Should Freddie DeRewal be unavailable to testify at trial, Plaintiffs intend to offer into evidence the transcripts of his depositions taken in this action, including but not limited to:

- Freddie DeRewal at 107-10, 368-69

Simon Wrecking Co., Inc.: There are no documents to permit any estimate of total volume of waste hauled in any time period by DCC from Simon Wrecking.

Plaintiffs intend to rely upon the testimony of Freddie DeRewal. Should Freddie DeRewal be unavailable to testify at trial, Plaintiffs intend to offer into evidence the transcripts of his depositions taken in this action, including but not limited to:

- Freddie DeRewal at 112-16, 158-61, 421-22, 423-28

Crown Metro/Emhart:

The documents that Plaintiffs intend to rely upon to support their conclusions with respect to Crown Metro/Emhart include, but are not limited to:

- 12/1/76 DCC letter to Bostik South; and
- 2/25/77 Bostik South letter to DCC

Plaintiffs intend to rely upon the testimony of Freddie DeRewal and Jeffrey Shaak. Should one or more of those individuals be unavailable to testify at trial, Plaintiffs intend to offer into evidence the transcripts of depositions taken in this action of those individuals, including but not limited to:

- Freddie DeRewal at 116-119, 353-361
- Jeff Shaak at 81-83

Novartis:

The documents that Plaintiffs intend to rely upon to support their conclusions with respect to Novartis include, but are not limited to:

- Ciba-Geigy shipping documents (D-25)
- Ciba-Geigy 6/6/76 Purchase Order (D-26)

Thomas & Betts Corporation:  There are no documents and testimony establishing that DCC hauled waste from Thomas & Betts after January 1, 1972.

Techalloy/Rahns:

The documents that Plaintiffs intend to rely upon to support their conclusions with respect to Techalloy/Rahns include, but are not limited to:

- August 1972 DCC invoice to Techalloy (P-37);
- July 14, 1972 DCC quotation letter to Techalloy;
- October 12, 1972 Techalloy letter to PADER (RAHN 0288);
- 11/26/73 Techalloy purchase order to Liquid Removal Service;
- DCC time card for Bruce DeRewal dated 9/21/73;
- DCC time cards for "Walt" dated 11/26 and 11/27/73;
- 5/16/73 PADER Waste Discharge Inspection Report of Techalloy (RAHN-521);
- 10/17/73 PADER Regional Engineer's Review of Techalloy (RAHN-0592-93);
- 6/5/72 Waste Inspection Report of Techalloy;
- August 20, 1971 PADER Waste Discharge Inspection Report of Techalloy (RAHN-0622);
- Techalloy 104(e) response to EPA;
- February 1973 portions of Techalloy accounts payable register (Senin-2);
- Sanitary Sewerage System, Drawing No. S-10 (Moran-1);
- Application for Plumbing Permit to Connect Building to Public Sewer (Moran-2 and RAHN 1251-59); and

- Portions of Weston Technical Report (RAHN-0539- RAHN0555)

Plaintiffs intend to rely upon the testimony of Theodore Hahn, John T. Moran, Sr., Freddie DeRewal, Bruce DeRewal, June Stephens, John Bean, and William J. Lehane. Should one or more of those individuals be unavailable to testify at trial, Plaintiffs intend to offer into evidence the transcripts of depositions taken in this action of those individuals, including but not limited to:

- Theodore Hahn at 12-38, 47-51, 59-61, 70-78;

- John T. Moran, Sr.;

- Freddie DeRewal at 129-32

- Bruce DeRewal at 13-16, 35

- June Stephens at 20-22, 63-64, 72-73

- John Bean at 41-46, 59-60

- William J. Lehane, Esquire, Drinker Biddle & Reath

  4.    *Plaintiffs' Waste Hauled By DCC*

Agere Systems, Inc.

There are no documents and no testimony establishing that any hazardous waste owned or possessed by Agere's predecessor, Western Electric, was disposed at the Site.

Cytec Industries Inc.

American Cyanamid was never a customer of DCC. Rather, records indicate that Marvin Jonas hauled waste for American Cyanamid during the 1970s. The Jonas records reflect, however, that DCC collected on Jonas' behalf American Cyanamid waste in two distinct time periods. The documents that Plaintiffs intend to rely upon to support their conclusions with respect to Cytec include, but are not limited to:

- February 18, 1975 Jonas, Incorporated report to NJDEP otherwise known as "Phylis Jonas Grid", which was identified as Jonas-14 during the June 21, 1995 deposition of Marvin Jonas in the Buzby landfill litigation;

- Marvin Jonas, Inc. Registration Statement for a Solid/Liquid Waste Collector-Hauler dated March 31, 1975, which was identified as Jonas-15 during the June 21, 1995 deposition of Marvin Jonas in the Buzby landfill litigation;

- Marvin Jonas, Portions of Marvin Jonas' handwritten transactional ledger for the year 1976, which are Bates-stamped BSAI071668-BSAI071670;

- Marvin Jonas, Inc. Registration Statement for a Solid/Liquid Waste Collector-Hauler dated May 26, 1977, which was identified as Jonas-11 during the June 21, 1995 deposition of Marvin Jonas in the Buzby landfill litigation;

- American Cyanamid responses to EPA 104(e) Information Requests;

- April 14, 1992 correspondence from Margaret Tribble at American Cyanamid Company to Martha Wilkie Murray at Peterson Consulting Company and attached affidavits from Jonas employees.

Plaintiffs also intend to offer into evidence the transcripts of Marvin Jonas' depositions in the Buzby landfill litigation.

SPS Technologies, LLC

The documents that Plaintiffs intend to rely upon to support their conclusions with respect to SPS Technologies, LLC include, but are not limited to:

- SPS purchase orders, DCC shipping orders and DCC invoices (SPST00137-155, SPST00165-176 and SPST00234;

- November 3, 1992 response to EPA 104(e) Information Request (SPST00090); and

- February 5, 1996 response to EPA 104(e) Information Request (SPST00182);

TI Group Automotive Systems, LLC

There are no documents and no testimony establishing that any hazardous waste owned or possessed by Bundy Corporation was disposed at the Site or was hauled by DCC.

Ford Motor Company

The documents that Plaintiffs intend to rely upon to support their conclusions with respect to Ford Motor Company include, but are not limited to:

- DCC invoices and Ford purchase orders (FORD000009, FORD00010-12, FORD000016, FORD000032-000121, FORD000128, FORD000130-132, FORD000134;

- January 21, 1972 letter from DCC to Mike Margarite (FORD000123);

- Responses to EPA 104(e) Information Requests (FORD000016); and

- Analytical Sampling Results (FORD000032-000121); and

- Waste Characterization Report dated September 26, 2003

Plaintiffs also intend to rely upon the testimony of Craig Coslett and/or Geoffrey Siebel of de maximis, inc.

B.    Allocation

Plaintiffs will ask the Court at trial to allocate response costs primarily based upon the equitable factor of volume of wastes of Plaintiffs, Non-Settling Defendants, and Settling Defendants that were disposed of at the Site. Plaintiffs will also ask the Court at trial to increase the allocation to AETC and Ashland by 10% because those parties knew that Manfred DeRewal had a history of pollution violations and that he intended to dispose of Ashland waste at the Site and because AETC knew that he was in fact disposing of those wastes at the Site. Plaintiffs will also ask the Court at trial to increase the allocation to Carpenter by 10% because Carpenter knew before it contracted with DCC in 1973 to remove Carpenter's wastes that Manfred DeRewal was a principal in DCC and that he had a history of pollution violations. Plaintiffs will also ask the Court at trial to decrease Plaintiffs' share by 50% based upon the fact that Plaintiffs have cooperated with EPA and the Commonwealth of Pennsylvania by, inter alia, settling EPA's past costs claim and conducting the response actions required by the OU-1 and OU-2 Consent

Decrees and because the Non-Settling Defendants did not do so, despite having received notice letters from EPA.

Plaintiffs intend to rely upon the following documents and testimony to support these conclusions:

- Documents and testimony concerning the knowledge and conduct of AETC, Ashland, and Carpenter as set forth in the section "Non-Settling Defendants Wastes Hauled by DCC" above;

- Documents and testimony in the Administrative Record establishing the reasons for EPA's initial response activities at the Site, the study and analysis by EPA of a multitude of COPCs identified at the Site in the RI/FS and otherwise, the distribution of inorganic and organic compounds in soils throughout the Site, EPA's Record of Decision and the process leading to the ROD, and the response actions taken by EPA;

- Testimony of Jay Vandeven (including documents referenced in his expert reports);

- Consent Decrees entered with respect to the Site on or about September 28, 2000 and March 14, 2002.

- Defendants received General Notice Letter and Special Notice Letters from EPA as follows:  AETC, Ashland, NRM Investment Company - General Notice Letters in May and July 1989; Carpenter, Etched Circuits, fcg, inc., Handy & Harman - General/Special Notice Letters in September 2000.

Exhibit B attached hereto is a chart showing the volumes that the Court will conclude were disposed of at the Site based upon Exhibit A, and the shares Plaintiffs will ask the Court to allocate to Plaintiffs collectively (based upon aggregating their individual shares, if any, and the individual shares of the Settling Defendants, if any) and to each Non-Settling Defendant. Specifically, the volumetric shares of Carpenter, Ashland/AETC, and AETC (for Diaz waste) were increased by 10% each, and the volumetric shares of all other entities were decreased pro-rata by the total amount of the increase ("Increase to PRPs with Knowledge" on chart). The share otherwise attributable to Plaintiffs was then reduced by 50% and the volumetric shares of the Non-Settling Defendants were increased pro-rata by the total amount of the decrease ("50%

Cooperation Credit to Plaintiffs" on chart). This column sets forth the share Plaintiffs will ask

the Court to allocate to each entity.

79. What do plaintiffs contend is Cytec's allocable/equitable share of the Total Cleanup Cost for the Site (expressed in a percentage)?

    A. What is the factual basis for plaintiffs' contention as to Cytec's allocable/equitable share of the Total Cleanup Cost for the Site?

    B. Set forth the calculation used by plaintiffs to arrive at their contention as to Cytec's allocable/equitable share of the Total Cleanup Cost for the Site.

    **ANSWER:**    See Plaintiffs' response to Interrogatory No. 78.

80. What do plaintiffs contend is Ford's allocable/equitable share of the Total Cleanup Cost for the Site (expressed in a percentage)?

    A. What is the factual basis for plaintiffs' contention as to Ford's allocable/equitable share of the Total Cleanup Cost for the Site?

    B. Set forth the calculation used by plaintiffs to arrive at their contention as to Ford's allocable/equitable share of the Total Cleanup Cost for the Site.

    **ANSWER:**    See Plaintiffs' response to Interrogatory No. 78.

81. What do plaintiffs contend is SPS' allocable/equitable share of the Total Cleanup Cost for the Site (expressed in a percentage)?

    A. What is the factual basis for plaintiffs' contention as to SPS' allocable/equitable share of the Total Cleanup Cost for the Site?

    B. Set forth the calculation used by plaintiffs to arrive at their contention as to SPS' allocable/equitable share of the Total Cleanup Cost for the Site.

    **ANSWER:**    See Plaintiffs' response to Interrogatory No. 78.

82. What do plaintiffs contend is TI's allocable/equitable share of the Total Cleanup Cost for the Site (expressed in a percentage)?

    A. What is the factual basis for plaintiffs' contention as to TI's allocable/equitable share of the Total Cleanup Cost for the Site?

    B. Set forth the calculation used by plaintiffs to arrive at their contention as to TI's allocable/equitable share of the Total Cleanup Cost for the Site.

    **ANSWER:**    See Plaintiffs' response to Interrogatory No. 78.

83.   What do plaintiffs contend is AETC's allocable/equitable share of the Total Cleanup Cost for the Site (expressed in a percentage)?

    A.   What is the factual basis for plaintiffs' contention as to AETC's allocable/equitable share of the Total Cleanup Cost for the Site?

    B.   Set forth the calculation used by plaintiffs to arrive at their contention as to AETC's allocable/equitable share of the Total Cleanup Cost for the Site.

    **ANSWER:**   See Plaintiffs' response to Interrogatory No. 78.

84.   What do plaintiffs contend is Ashland's allocable/equitable share of the Total Cleanup Cost for the Site (expressed in a percentage)?

    A.   What is the factual basis for plaintiffs' contention as to Ashland's allocable/equitable share of the Total Cleanup Cost for the Site?

    B.   Set forth the calculation used by plaintiffs to arrive at their contention as to Ashland's allocable/equitable share of the Total Cleanup Cost for the Site.

    **ANSWER:**   See Plaintiffs' response to Interrogatory No. 78.

85.   What do plaintiffs contend is Boarhead's allocable/equitable share of the Total Cleanup Cost for the Site (expressed in a percentage)?

    A.   What is the factual basis for plaintiffs' contention as to Boarhead's allocable/equitable share of the Total Cleanup Cost for the Site?

    B.   Set forth the calculation used by plaintiffs to arrive at their contention as to Boarhead's allocable/equitable share of the Total Cleanup Cost for the Site.

    **ANSWER:**   See Plaintiffs' response to Interrogatory No. 78.  By way of further response, Boarhead Corporation has no identifiable assets that would enable it to participate financially in the cleanup of the Site.  By way of further response, see June 29, 2006 expert report of Raymond F. Dovell, C.P.A. previously produced and documents referenced therein.  By way of further response, Boarhead Corporation is not a party to this action.

86.   What do plaintiffs contend is Carpenter's allocable/equitable share of the Total Cleanup Cost for the Site (expressed in a percentage)?

    A.   What is the factual basis for plaintiffs' contention as to Carpenter's allocable/equitable share of the Total Cleanup Cost for the Site?

B.    Set forth the calculation used by plaintiffs to arrive at their contention as to Carpenter's allocable/equitable share of the Total Cleanup Cost for the Site.

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 78.

87.    What do plaintiffs contend is Crown's allocable/equitable share of the Total Cleanup Cost for the Site (expressed in a percentage)?

A.    What is the factual basis for plaintiffs' contention as to Crown's allocable/equitable share of the Total Cleanup Cost for the Site?

B.    Set forth the calculation used by plaintiffs to arrive at their contention as to Crown's allocable/equitable share of the Total Cleanup Cost for the Site.

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 78.

88.    What do plaintiffs contend is Diaz's allocable/equitable share of the Total Cleanup Cost for the Site (expressed in a percentage)?

A.    What is the factual basis for plaintiffs' contention as to Diaz's allocable/equitable share of the Total Cleanup Cost for the Site?

B.    Set forth the calculation used by plaintiffs to arrive at their contention as to Diaz's allocable/equitable share of the Total Cleanup Cost for the Site.

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 78.  By way of further response, Diaz Chemical Corporation has no identifiable assets that would enable it to participate financially in the cleanup of the Site.  By way of further response, see June 29, 2006 expert report of Raymond F. Dovell, C.P.A. previously produced and documents referenced therein.

89.    What do plaintiffs contend is Etched's allocable/equitable share of the Total Cleanup Cost for the Site (expressed in a percentage)?

A.    What is the factual basis for plaintiffs' contention as to Etched's allocable/equitable share of the Total Cleanup Cost for the Site?

B.    Set forth the calculation used by plaintiffs to arrive at their contention as to Etched's allocable/equitable share of the Total Cleanup Cost for the Site.

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 78.

90.    What do plaintiffs contend is fcg's allocable/equitable share of the Total Cleanup Cost for the Site (expressed in a percentage)?

A.    What is the factual basis for plaintiffs' contention as to fcg's allocable/equitable share of the Total Cleanup Cost for the Site?

B.    Set forth the calculation used by plaintiffs to arrive at their contention as to fcg's allocable/equitable share of the Total Cleanup Cost for the Site.

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 78.

91.    What do plaintiffs contend is H&H's allocable/equitable share of the Total Cleanup Cost for the Site (expressed in a percentage)?

A.    What is the factual basis for plaintiffs' contention as to H&H's allocable/equitable share of the Total Cleanup Cost for the Site?

B.    Set forth the calculation used by plaintiffs to arrive at their contention as to H&H's allocable/equitable share of the Total Cleanup Cost for the Site.

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 78.

92.    What do plaintiffs contend is Knoll's allocable/equitable share of the Total Cleanup Cost for the Site (expressed in a percentage)?

A.    What is the factual basis for plaintiffs' contention as to Knoll's allocable/equitable share of the Total Cleanup Cost for the Site?

B.    Set forth the calculation used by plaintiffs to arrive at their contention as to Knoll's allocable/equitable share of the Total Cleanup Cost for the Site.

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 78. By way of further response, Knoll, Inc. has no successor liability for any waste disposed of at the Site from the Art Metal-Knoll Corporation East Greenville, Pennsylvania facility. Art Metal-Knoll Corporation (now Trace International) has no identifiable assets that would enable it to participate financially in the cleanup of the Site. By way of further response, see June 29, 2006 expert report of Raymond F. Dovell, C.P.A. previously produced and documents referenced therein.

93.    What do plaintiffs contend is Merit Metals' allocable/equitable share of the Total Cleanup Cost for the Site (expressed in a percentage)?

A.    What is the factual basis for plaintiffs' contention as to Merit Metals' allocable/equitable share of the Total Cleanup Cost for the Site?

B.    Set forth the calculation used by plaintiffs to arrive at their contention as to Merit Metals' allocable/equitable share of the Total Cleanup Cost for the Site.

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 78.  By way of further response, Merit Metal Products Corp. has no successor liability for any waste disposed of at the Site from the Merit Metal-Products Corporation Warrington, Pennsylvania facility.  Merit Metal Products Corporation (now Leonards II Co., Inc.) has no identifiable assets that would enable it to participate financially in the cleanup of the Site.  By way of further response, see June 29, 2006 expert report of Raymond F. Dovell, C.P.A. previously produced and documents referenced therein.

94.    What do plaintiffs contend is Novartis' allocable/equitable share of the Total Cleanup Cost for the Site (expressed in a percentage)?

    A.    What is the factual basis for plaintiffs' contention as to Novartis' allocable/equitable share of the Total Cleanup Cost for the Site?

    B.    Set forth the calculation used by plaintiffs to arrive at their contention as to Novartis' allocable/equitable share of the Total Cleanup Cost for the Site.

    **ANSWER:**    See Plaintiffs' response to Interrogatory No. 78.

95.    What do plaintiffs contend is NRM's allocable/equitable share of the Total Cleanup Cost for the Site (expressed in a percentage)?

    A.    What is the factual basis for plaintiffs' contention as to NRM's allocable/equitable share of the Total Cleanup Cost for the Site?

    B.    Set forth the calculation used by plaintiffs to arrive at their contention as to NRM's allocable/equitable share of the Total Cleanup Cost for the Site.

    **ANSWER:**    See Plaintiffs' response to Interrogatory No. 78.

96.    What do plaintiffs contend is Plymouth's allocable/equitable share of the Total Cleanup Cost for the Site (expressed in a percentage)?

    A.    What is the factual basis for plaintiffs' contention as to Plymouth's allocable/equitable share of the Total Cleanup Cost for the Site?

    B.    Set forth the calculation used by plaintiffs to arrive at their contention as to Plymouth's allocable/equitable share of the Total Cleanup Cost for the Site.

    **ANSWER:**    See Plaintiffs' response to Interrogatory No. 78.

97.    What do plaintiffs contend is Quickline's allocable/equitable share of the Total Cleanup Cost for the Site (expressed in a percentage)?

    A.    What is the factual basis for plaintiffs' contention as to Quickline's allocable/equitable share of the Total Cleanup Cost for the Site?

    B.    Set forth the calculation used by plaintiffs to arrive at their contention as to Quickline's allocable/equitable share of the Total Cleanup Cost for the Site.

    **ANSWER:**    See Plaintiffs' response to Interrogatory No. 78.

98.    What do plaintiffs contend is RSM's allocable/equitable share of the Total Cleanup Cost for the Site (expressed in a percentage)?

    A.    What is the factual basis for plaintiffs' contention as to RSM's allocable/equitable share of the Total Cleanup Cost for the Site?

    B.    Set forth the calculation used by plaintiffs to arrive at their contention as to RSM's allocable/equitable share of the Total Cleanup Cost for the Site.

    **ANSWER:**    See Plaintiffs' response to Interrogatory No. 78.

99.    What do plaintiffs contend is R&H's allocable/equitable share of the Total Cleanup Cost for the Site (expressed in a percentage)?

    A.    What is the factual basis for plaintiffs' contention as to R&H's allocable/equitable share of the Total Cleanup Cost for the Site?

    B.    Set forth the calculation used by plaintiffs to arrive at their contention as to R&H's allocable/equitable share of the Total Cleanup Cost for the Site.

    **ANSWER:**    See Plaintiffs' response to Interrogatory No. 78.

100.    What do plaintiffs contend is Simon's allocable/equitable share of the Total Cleanup Cost for the Site (expressed in a percentage)?

    A.    What is the factual basis for plaintiffs' contention as to Simon's allocable/equitable share of the Total Cleanup Cost for the Site?

    B.    Set forth the calculation used by plaintiffs to arrive at their contention as to Simon's allocable/equitable share of the Total Cleanup Cost for the Site.

    **ANSWER:**    See Plaintiffs' response to Interrogatory No. 78.

101.    What do plaintiffs contend is T&B's allocable/equitable share of the Total Cleanup Cost for the Site (expressed in a percentage)?

A.  What is the factual basis for plaintiffs' contention as to T&B's allocable/equitable share of the Total Cleanup Cost for the Site?

B.  Set forth the calculation used by plaintiffs to arrive at their contention as to T&B's allocable/equitable share of the Total Cleanup Cost for the Site.

**ANSWER:**  See Plaintiffs' response to Interrogatory No. 78.

102.  What do plaintiffs contend is Unisys' allocable/equitable share of the Total Cleanup Cost for the Site (expressed in a percentage)?

A.  What is the factual basis for plaintiffs' contention as to Unisys' allocable/equitable share of the Total Cleanup Cost for the Site?

B.  Set forth the calculation used by plaintiffs to arrive at their contention as to Unisys' allocable/equitable share of the Total Cleanup Cost for the Site.

**ANSWER:**  See Plaintiffs' response to Interrogatory No. 78.

103.  What do plaintiffs contend is Navy's allocable/equitable share of the Total Cleanup Cost for the Site (expressed in a percentage)?

A.  What is the factual basis for plaintiffs' contention as to Navy's allocable/equitable share of the Total Cleanup Cost for the Site?

B.  Set forth the calculation used by plaintiffs to arrive at their contention as to Navy's allocable/equitable share of the Total Cleanup Cost for the Site.

**ANSWER:**  See Plaintiffs' response to Interrogatory No. 78.

104.  What do plaintiffs contend is Haven's allocable/equitable share of the Total Cleanup Cost for the Site (expressed in a percentage)?

A.  What is the factual basis for plaintiffs' contention as to Haven's allocable/equitable share of the Total Cleanup Cost for the Site?

B.  Set forth the calculation used by plaintiffs to arrive at their contention as to Haven's allocable/equitable share of the Total Cleanup Cost for the Site.

**ANSWER:**  See Plaintiffs' response to Interrogatory No. 78.  By way of further response, Haven Chemical, Inc. and Haven Industries, Inc. have no identifiable assets that would enable them to participate financially in the cleanup of the Site.  By way of further response, see June 29, 2006 expert report of Raymond F. Dovell, C.P.A. previously produced and documents

referenced therein. By way of further response, Haven Chemical Inc. and Haven Industries, Inc. are not parties to this action.

105. What do plaintiffs contend is Envirotec's [sic] allocable/equitable share of the Total Cleanup Cost for the Site (expressed in a percentage)?

    A.    What is the factual basis for plaintiffs' contention as to Envirotec's allocable/equitable share of the Total Cleanup Cost for the Site?

    B.    Set forth the calculation used by plaintiffs to arrive at their contention as to Envirotec's allocable/equitable share of the Total Cleanup Cost for the Site.

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 78. By way of further response, Enviratec, Inc. has no identifiable assets that would enable it to participate financially in the cleanup of the Site. By way of further response, see June 29, 2006 expert report of Raymond F. Dovell, C.P.A. previously produced and documents referenced therein. By way of further response, Enviratec, Inc. is not a party to this action.

106. What do plaintiffs contend is Sitkin's allocable/equitable share of the Total Cleanup Cost for the Site (expressed in a percentage)?

    A.    What is the factual basis for plaintiffs' contention as to Sitkin's allocable/equitable share of the Total Cleanup Cost for the Site?

    B.    Set forth the calculation used by plaintiffs to arrive at their contention as to Sitkin's allocable/equitable share of the Total Cleanup Cost for the Site.

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 78. By way of further response, Sitkin Smelting & Refining, Inc. has no identifiable assets that would enable it to participate financially in the cleanup of the Site. By way of further response, see June 29, 2006 expert report of Raymond F. Dovell, C.P.A. previously produced and documents referenced therein. By way of further response, Sitkin Smelting & Refining, Inc. is not a party to this action.

107. What do plaintiffs contend is Trace's allocable/equitable share of the Total Cleanup Cost for the Site (expressed in a percentage)?

A.   What is the factual basis for plaintiffs' contention as to Trace's allocable/equitable share of the Total Cleanup Cost for the Site?

B.   Set forth the calculation used by plaintiffs to arrive at their contention as to Trace's allocable/equitable share of the Total Cleanup Cost for the Site.

**ANSWER:**   Art Metal-Knoll Corporation (now Trace International) has no identifiable assets that would enable it to participate financially in the cleanup of the Site. By way of further response, see June 29, 2006 expert report of Raymond F. Dovell, C.P.A. previously produced and documents referenced therein. By way of further response, Trace International is not a party to this action.

108.   What do plaintiffs contend is General Ceramics' allocable/equitable share of the Total Cleanup Cost for the Site (expressed in a percentage)?

A.   What is the factual basis for plaintiffs' contention as to General Ceramics' allocable/equitable share of the Total Cleanup Cost for the Site?

B.   Set forth the calculation used by plaintiffs to arrive at their contention as to General Ceramics" allocable/equitable share of the Total Cleanup Cost for the Site.

**ANSWER:**   See Plaintiffs' response to Interrogatory No. 78. By way of further response, General Ceramics is not a party to this action. By way of further response, General Ceramics conducted a removal action in which it removed, to EPA's satisfaction, any wastes for which it might be liable.

109.   What do plaintiffs contend is DeRewal's allocable/equitable share of the Total Cleanup Cost for the Site (expressed in a percentage)?

A.   What is the factual basis for plaintiffs' contention as to DeRewal's allocable/equitable share of the Total Cleanup Cost for the Site?

B.   Set forth the calculation used by plaintiffs to arrive at their contention as to DeRewal's allocable/equitable share of the Total Cleanup Cost for the Site.

**ANSWER:**   See Plaintiffs' response to Interrogatory No. 78. By way of further response, Manfred DeRewal, Sr. has no identifiable assets that would enable him to participate financially in the cleanup of the Site. By way of further response, see June 29, 2006 expert

report of Raymond F. Dovell, C.P.A. previously produced and documents referenced therein.  By

way of further response, Manfred DeRewal, Sr. is not a party to this action.

110.    What do plaintiffs contend is DCC's allocable/equitable share of the Total Cleanup Cost
        for the Site (expressed in a percentage)?

      A.    What is the factual basis for plaintiffs' contention as to DCC's allocable/equitable
              share of the Total Cleanup Cost for the Site?

      B.    Set forth the calculation used by plaintiffs to arrive at their contention as to
              DCC's allocable/equitable share of the Total Cleanup Cost for the Site.

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 78.  By way of further

response, DeRewal Chemical Company, Inc. has no identifiable assets that would enable it to

participate financially in the cleanup of the Site.  By way of further response, see June 29, 2006

expert report of Raymond F. Dovell, C.P.A. previously produced and documents referenced

therein.  By way of further response, DeRewal Chemical Company, Inc. is not a party to this

action.

111.    What do plaintiffs contend is Globe's allocable/equitable share of the Total Cleanup Cost
        for the Site (expressed in a percentage)?

      A.    What is the factual basis for plaintiffs' contention as to Globe's
              allocable/equitable share of the Total Cleanup Cost for the Site?

      B.    Set forth the calculation used by plaintiffs to arrive at their contention as to
              Globe's allocable/equitable share of the Total Cleanup Cost for the Site.

**ANSWER:**    See Plaintiffs' response to Interrogatory No. 78.  By way of further

response, Globe Disposal Company, Inc. has no identifiable assets that would enable it to

participate financially in the cleanup of the Site.  By way of further response, see June 29, 2006

expert report of Raymond F. Dovell, C.P.A. previously produced and documents referenced

therein.  By way of further response, Globe Disposal Company, Inc. is not a party to this action.

112.    Do plaintiffs contend that the first removal action conducted by the United States (as that
        removal action is described in the first paragraph of page 3 of the Record of Decision for
        the Site) was not completed in 1992?

A.    If so, set forth in detail each and every fact which supports the above contention and the sources of those facts;

B.    If so, set forth the name, address and telephone number of any person with knowledge regarding the above contention;

C.    If so, identify each and every document in your, or your attorney's, possession, custody or control that supports, refers or relates to the above contention; and

D.    If so, set forth the date on which you contend such removal action was completed.

**ANSWER:**    Plaintiffs object to this Interrogatory to the extent that it seeks information outside the scope of the contentions that Plaintiffs will make as part of their prima facie case at trial. Plaintiffs further object to this Interrogatory because the phrase "first removal action" is vague, confusing and ambiguous. Plaintiffs further object to this Interrogatory to the extent that it seeks the discovery of the mental impressions, conclusions, strategies, opinions, research or legal theories of their attorneys or other representatives or information protected by the attorney-client privilege or any other applicable privilege. Plaintiffs also object to this Interrogatory to the extent that its seek information and documents that are not relevant to the subject matter of this action or are not reasonably calculated to lead to the discovery of admissible evidence.

Without waiving any such objections, Plaintiffs will not ask the Court at trial to make findings of fact or conclusions of law concerning when "the first removal action conducted by the United States (as that removal action is described in the first paragraph of page 3 of the Record of Decision for the Site)" was completed. By way of further response, the Consent Decree filed on May 2, 2000 and entered by this Court on or about September 28, 2000 states: "EPA conducted removal action at the Site beginning in the year 1992 and continuing to the present pursuant to Section 104 of CERCLA, 42 U.S.C. Section 9604. The removal action included, in general: (1) the removal of buried drums; (2) the construction, operation and maintenance of groundwater interception wells and a groundwater interception trench; (3) the

construction of a groundwater treatment plant on the Site; and (4) the installation, operation and maintenance of residential well filtration systems." 2000 Consent Decree at ¶ I(G).  By way of further response, see 2000 Consent Decree at ¶¶ I(H) through (P) and Consent Decree filed on December 6, 2001 and entered by this Court on or about March 14, 2002.  By way of further response, see EPA Cost Report summarizing the Site expenditures through July 31, 2000 available in the Document Repository at BSAI 082008-082318 and EPA's Administrative Record.

113.    Do plaintiffs contend that the second removal action conducted by the United States (as that removal action is described in the first paragraph of page 3 of the Record of Decision for the Site) was not completed in 1993?

    A.    If so, set forth in detail each and every fact which supports the above contention and the sources of those facts;

    B.    If so, set forth the name, address and telephone number of any person with knowledge regarding the above contention;

    C.    If so, identify each and every document in your, or your attorney's, possession, custody or control that supports, refers or relates to the above contention; and

    D.    If so, set forth the date on which you contend such removal action was completed.

    **ANSWER:**  Plaintiffs object to this Interrogatory to the extent that it seeks information outside the scope of the contentions that Plaintiffs will make as part of their prima facie case at trial.  Plaintiffs further object to this Interrogatory because the phrase "second removal action" is vague, confusing and ambiguous.  Plaintiffs further object to this Interrogatory to the extent that it seeks the discovery of the mental impressions, conclusions, strategies, opinions, research or legal theories of their attorneys or other representatives or information protected by the attorney-client privilege or any other applicable privilege.  Plaintiffs also object to this Interrogatory to the extent that its seek information and documents that are not relevant to the subject matter of this action or are not reasonably calculated to lead to the discovery of admissible evidence.

Without waiving any such objections, Plaintiffs will not ask the Court at trial to make findings of fact or conclusions of law concerning when "the second removal action conducted by the United States (as that removal action is described in the first paragraph of page 3 of the Record of Decision for the Site)" was completed. By way of further response, the Consent Decree filed on May 2, 2000 and entered by this Court on or about September 28, 2000 states: "EPA conducted removal action at the Site beginning in the year 1992 and continuing to the present pursuant to Section 104 of CERCLA, 42 U.S.C. Section 9604. The removal action included, in general: (1) the removal of buried drums; (2) the construction, operation and maintenance of groundwater interception wells and a groundwater interception trench; (3) the construction of a groundwater treatment plant on the Site; and (4) the installation, operation and maintenance of residential well filtration systems." 2000 Consent Decree at ¶ I(G). By way of further response, *see* 2000 Consent Decree at ¶¶ I(H) through (P) and Consent Decree filed on December 6, 2001 and entered by this Court on or about March 14, 2002. By way of further response, *see* EPA Cost Report summarizing the Site expenditures through July 31, 2000 available in the Document Repository at BSAI 082008-082318 and EPA's Administrative Record.

114. Do plaintiffs contend that the "remedial action" (as that term is used in 42 U.S.C. § 9613(g)(2)) at the Site was initiated within three years after the completion of the first removal action conducted by the United States (as that removal action is described in the first paragraph of page 3 of the Record of Decision for the Site)?

    A.    If so, set forth in detail each and every fact which supports the above contention and the sources of those facts;

    B.    If so, identify each and every document in your, or your attorney's, possession, custody or control that supports, refers or relates to the above contention;

    C.    If so, set forth the name, address and telephone number of any person with knowledge regarding the above contention; and

      D.      If so, set forth the date on which you contend such "remedial action" was initiated.

**ANSWER:** Plaintiffs object to this Interrogatory to the extent that it seeks information outside the scope of the contentions that Plaintiffs will make as part of their prima facie case at trial. Plaintiffs further object to this Interrogatory because the phrases "first removal action" and "remedial action" are vague, confusing and ambiguous. Plaintiffs further object to this Interrogatory to the extent that it seeks the discovery of the mental impressions, conclusions, strategies, opinions, research or legal theories of their attorneys or other representatives or information protected by the attorney-client privilege or any other applicable privilege. Plaintiffs also object to this Interrogatory to the extent that its seek information and documents that are not relevant to the subject matter of this action or are not reasonably calculated to lead to the discovery of admissible evidence.

Without waiving any such objections, Plaintiffs will not ask the Court at trial to make findings of fact or conclusions of law concerning that "the 'remedial action' (as that term is used in 42 U.S.C. § 9613(g)(2) at the Site was initiated within three years after the completion of the first removal action conducted by the United States (as that removal action is described in the first paragraph of page 3 of the Record of Decision for the Site)." By way of further response, the Consent Decree filed on May 2, 2000 and entered by this Court on or about September 28, 2000 states: "EPA conducted removal action at the Site beginning in the year 1992 and continuing to the present pursuant to Section 104 of CERCLA, 42 U.S.C. Section 9604. The removal action included, in general: (1) the removal of buried drums; (2) the construction, operation and maintenance of groundwater interception wells and a groundwater interception trench; (3) the construction of a groundwater treatment plant on the Site; and (4) the installation, operation and maintenance of residential well filtration systems." 2000 Consent Decree at ¶

I(G). By way of further response, *see* 2000 Consent Decree at ¶¶ I(H) through (P) and Consent

Decree filed on December 6, 2001 and entered by this Court on or about March 14, 2002. By

way of further response, *see* EPA Cost Report summarizing the Site expenditures through July

31, 2000 available in the Document Repository at BSAI 082008-082318 and EPA's

Administrative Record.

115.   Do plaintiffs contend that the "remedial action" (as that term is used in 42 U.S.C.
       § 9613(g)(2)) at the Site was initiated within three years after the completion of the
       second removal action conducted by the United States (as that removal action is
       described in the first paragraph of page 3 of the Record of Decision for the Site)?

   A.   If so, set forth in detail each and every fact which supports the above contention
        and the sources of those facts;

   B.   If so, set forth the name, address and telephone number of any person with
        knowledge regarding the above contention;

   C.   If so, identify each and every document in your, or your attorney's, possession,
        custody or control that supports, refers or relates to the above contention; and

   D.   If so, set forth the date on which you contend such "remedial action" was
        initiated.

**ANSWER:** Plaintiffs object to this Interrogatory to the extent that it seeks information

outside the scope of the contentions that Plaintiffs will make as part of their prima facie case at

trial. Plaintiffs further object to this Interrogatory because the phrases "second removal action"

and "remedial action" are vague, confusing and ambiguous. Plaintiffs further object to this

Interrogatory to the extent that it seeks the discovery of the mental impressions, conclusions,

strategies, opinions, research or legal theories of their attorneys or other representatives or

information protected by the attorney-client privilege or any other applicable privilege. Plaintiffs

also object to this Interrogatory to the extent that its seek information and documents that are not

relevant to the subject matter of this action or are not reasonably calculated to lead to the

discovery of admissible evidence.

Without waiving any such objections, Plaintiffs will not ask the Court at trial to make findings of fact or conclusions of law concerning that "the 'remedial action' (as that term is used in 42 U.S.C. § 9613(g)(2) at the Site was initiated within three years after the completion of the second removal action conducted by the United States (as that removal action is described in the first paragraph of page 3 of the Record of Decision for the Site)." By way of further response, the Consent Decree filed on May 2, 2000 and entered by this Court on or about September 28, 2000 states: "EPA conducted removal action at the Site beginning in the year 1992 and continuing to the present pursuant to Section 104 of CERCLA, 42 U.S.C. Section 9604. The removal action included, in general: (1) the removal of buried drums; (2) the construction, operation and maintenance of groundwater interception wells and a groundwater interception trench; (3) the construction of a groundwater treatment plant on the Site; and (4) the installation, operation and maintenance of residential well filtration systems." 2000 Consent Decree at ¶ I(G). By way of further response, *see* 2000 Consent Decree at ¶¶ I(H) through (P) and Consent Decree filed on December 6, 2001 and entered by this Court on or about March 14, 2002. By way of further response, *see* EPA Cost Report summarizing the Site expenditures through July 31, 2000 available in the Document Repository at BSAI 082008-082318 and EPA's Administrative Record.

116.   Do plaintiffs contend that, at the time the Consent Decree between plaintiffs Cytec Industries Inc., Ford Motor Company, SPS Technologies, Inc. and TI Group Automotive Systems Corporation and the United States entered March 14, 2002 ("OU-2 Consent Decree") was executed, any plaintiff had any potential liability for payment of any "Past Response Costs" (as that term is defined in) associated with the first two removal actions conducted by the United States (as those removal actions are described in the first paragraph of page 3 of the Record of Decision for the Site), then, for each such plaintiff?

   A.   If so, set forth in detail each and every fact which supports the above contention and the sources of those facts;

   B.   If so, set forth the name, address and telephone number of any person with knowledge regarding the above contention; and

C.    If so, identify each and every document in your, or your attorney's, possession, custody or control that supports, refers or relates to the above contention.

**ANSWER:** Plaintiffs object to this Interrogatory to the extent that it seeks information outside the scope of the contentions that Plaintiffs will make as part of their prima facie case at trial. Plaintiffs further object to this Interrogatory because it is vague, confusing and ambiguous, specifically with respect to the phrases "Past Response Costs" and "first two removal actions." Plaintiffs further object to this Interrogatory to the extent that it seeks the discovery of the mental impressions, conclusions, strategies, opinions, research or legal theories of their attorneys or other representatives or information protected by the attorney-client privilege or any other applicable privilege. Plaintiffs also object to this Interrogatory to the extent that its seek information and documents that are not relevant to the subject matter of this action or are not reasonably calculated to lead to the discovery of admissible evidence.

Without waiving any such objections, Plaintiffs will not ask the Court at trial to make findings of fact or conclusions of law that, at the time the March 14, 2002 Consent Decree was executed, "any plaintiff had any potential liability for payment of any 'Past Response Costs' (as that term is defined in) [sic] associated with the first two removal actions conducted by the United States (as those removal actions are described in the first paragraph of page 3 of the Record of Decision for the Site)." By way of further response, the Consent Decree filed on May 2, 2000 and entered by this Court on or about September 28, 2000 states: "EPA conducted removal action at the Site beginning in the year 1992 and continuing to the present pursuant to Section 104 of CERCLA, 42 U.S.C. Section 9604. The removal action included, in general: (1) the removal of buried drums; (2) the construction, operation and maintenance of groundwater interception wells and a groundwater interception trench; (3) the construction of a groundwater treatment plant on the Site; and (4) the installation, operation and maintenance of residential well

filtration systems." 2000 Consent Decree at ¶ I(G).  By way of further response, *see* 2000

Consent Decree at ¶¶ I(H) through (P) and Consent Decree filed on December 6, 2001 and

entered by this Court on or about March 14, 2002.  By way of further response, *see* EPA Cost

Report summarizing the Site expenditures through July 31, 2000 available in the Document

Repository at BSAI 082008-082318 and EPA's Administrative Record.

117.    Do plaintiffs contend that, at the time the OU-2 Consent Decree was executed, an initial
        action by the United States for recovery of "Past Response Costs" (as that term is defined
        in the OU-2 Consent Decree) associated with the first two removal actions conducted by
        the United States (as those removal actions are described in the first paragraph of page 3
        of the Record of Decision for the Site) was not barred by the statute of limitations found
        at 42 U.S.C. § 9613(g)(2)?

        A.      If so, set forth in detail each and every fact which supports the above contention
                and the sources of those facts;

        B.      If so, set forth the name, address and telephone number of any person with
                knowledge regarding the above contention; and

        C.      If so, identify each and every document in your, or your attorney's, possession,
                custody or control that supports, refers or relates to the above contention.

        **ANSWER:**  Plaintiffs object to this Interrogatory to the extent that it seeks information

outside the scope of the contentions that Plaintiffs will make as part of their prima facie case at

trial.  Plaintiffs further object to this Interrogatory because it is vague, confusing and ambiguous,

specifically with respect to the phrases "Past Response Costs" and "first two removal actions."

Plaintiffs further object to this Interrogatory to the extent that it seeks the discovery of the mental

impressions, conclusions, strategies, opinions, research or legal theories of their attorneys or

other representatives or information protected by the attorney-client privilege or any other

applicable privilege.  Plaintiffs also object to this Interrogatory to the extent that its seek

information and documents that are not relevant to the subject matter of this action or are not

reasonably calculated to lead to the discovery of admissible evidence.

Without waiving any such objections, Plaintiffs will not ask the Court at trial to make findings of fact or conclusions of law that, at the time the March 14, 2002 Consent Decree was executed, "an initial action by the United States for recovery of 'Past Response Costs' (as that term is defined in the OU-2 Consent Decree) associated with the first two removal actions conducted by the United States (as those removal actions are described in the first paragraph of page 3 of the Record of Decision for the Site) was not barred by the statute of limitations found at 42 U.S.C. § 9613(g)2)." By way of further response, the Consent Decree filed on May 2, 2000 and entered by this Court on or about September 28, 2000 states: "EPA conducted removal action at the Site beginning in the year 1992 and continuing to the present pursuant to Section 104 of CERCLA, 42 U.S.C. Section 9604. The removal action included, in general: (1) the removal of buried drums; (2) the construction, operation and maintenance of groundwater interception wells and a groundwater interception trench; (3) the construction of a groundwater treatment plant on the Site; and (4) the installation, operation and maintenance of residential well filtration systems." 2000 Consent Decree at ¶ I(G). By way of further response, *see* 2000 Consent Decree at ¶¶ I(H) through (P) and Consent Decree filed on December 6, 2001 and entered by this Court on or about March 14, 2002. By way of further response, *see* EPA Cost Report summarizing the Site expenditures through July 31, 2000 available in the Document Repository at BSAI 082008-082318 and EPA's Administrative Record.

118.   Without regard to the Consent Decree(s), do plaintiffs (each, any or all) contend that they have no liability for the contamination at the Site?

   A.   If so, what is the factual and legal basis for this contention?

**ANSWER:**   Plaintiffs object to this Interrogatory to the extent that it seeks information outside the scope of the contentions that Plaintiffs will make as part of their prima facie case at trial. Plaintiffs further object to this Interrogatory because it is vague, confusing, ambiguous and

overly broad.  Plaintiffs further object to this Interrogatory to the extent that it seeks the

discovery of the mental impressions, conclusions, strategies, opinions, research or legal theories

of their attorneys or other representatives or information protected by the attorney-client

privilege or any other applicable privilege.  By way of further objection, Defendants' definition

of "factual basis" is overbroad and unduly burdensome.

     Without waiving any such objections, see Plaintiffs' response to Interrogatory No. 78.

119.    Does Agere contend that it did not receive or had credited on its behalf any monies or
       other consideration that reduced its share of Total Cleanup Costs of the Site from any
       source, including, but not limited to, settlement, insurance proceeds, predecessors, or
       payment under an indemnity agreement?

    A.    If not, what monies did Agere receive and from what sources?

    **ANSWER:** Plaintiffs object to this Interrogatory to the extent that it seeks information

outside the scope of the contentions that Plaintiffs will make as part of their prima facie case at

trial.  Plaintiffs further object to this Interrogatory because it is vague, confusing, and ambiguous.

Plaintiffs further object to this Interrogatory to the extent that it seeks the discovery of the mental

impressions, conclusions, strategies, opinions, research or legal theories of their attorneys or

other representatives or information protected by the attorney-client privilege or any other

applicable privilege.  Plaintiffs also object to this Interrogatory to the extent that its seek

information and documents that are not relevant to the subject matter of this action or are not

reasonably calculated to lead to the discovery of admissible evidence.

     Without waiving any such objections, Plaintiffs will not ask the Court at trial to make

findings of fact or conclusions of law that they "did not receive or had credited on its behalf any

monies or other consideration that reduced its share of Total Cleanup Costs of the Site from any

source, including, but not limited to, settlement, insurance proceeds, predecessors, or payment

under an indemnity agreement."  By way of further response, Plaintiffs have entered into the

following settlements with parties to this action:  Novartis ($162,500); United States Navy

($100,000); Unisys ($50,000); Quikline Design ($50,000); Simon Wrecking ($50,000); Knoll

($207,500); Plymouth Tube ($425,000); Rohm and Haas ($35,000); Emhart ($100,000);

Techalloy/Rahns ($3,200,000); and Thomas & Betts Corporation ($42,500).

120.    Does Cytec that it did not receive or had credited on its behalf any monies or other consideration that reduced its share of Total Cleanup Costs of the Site from any source, including, but not limited to, settlement, insurance proceeds, predecessors, or payment under an indemnity agreement?

   A.    If not, what monies did Cytec receive and from what sources?

   **ANSWER:**  See Plaintiffs' response to Interrogatory No. 119.

121.    Does Ford contend that it did not receive or had credited on its behalf any monies or other consideration that reduced its share of Total Cleanup Costs of the Site from any source, including, but not limited to, settlement, insurance proceeds, predecessors, or payment under an indemnity agreement?

   A.    If not, what monies did Ford receive and from what sources?

   **ANSWER:**  See Plaintiffs' response to Interrogatory No. 119.

122.    Does SPS contend that it did not receive or had credited on its behalf any monies or other consideration that reduced its share of Total Cleanup Costs of the Site from any source, including, but not limited to, settlement, insurance proceeds, predecessors, or payment under an indemnity agreement?

   A.    If not, what monies did SPS receive and from what sources?

   **ANSWER:**  See Plaintiffs' response to Interrogatory No. 119.

123.    Does TI contend that it did not receive or had credited on its behalf any monies or other consideration that reduced its share of Total Cleanup Costs of the Site from any source, including, but not limited to, settlement, insurance proceeds, predecessors, or payment under an indemnity agreement?

   A.    If not, what monies did TI receive and from what sources?

   **ANSWER:**  See Plaintiffs' response to Interrogatory No. 119.

124.    Do plaintiffs contend there is any "orphan share" liability associated with the Site?

   A.    If so, has the EPA agreed to reduce the Total Cleanup Cost for the Site for which plaintiffs are responsible as a result of the "orphan share" liability?

      i.      If so, what is the amount of the reduction (expressed in a percentage and in dollars to date)?

**ANSWER:**    Plaintiffs object to this Interrogatory to the extent that it seeks information outside the scope of the contentions that Plaintiffs will make as part of their prima facie case at trial. Plaintiffs further object to this Interrogatory because it is vague, confusing, ambiguous and overly broad, specifically with respect to the phrase "orphan share liability." Plaintiffs further object to this Interrogatory to the extent that it seeks the discovery of the mental impressions, conclusions, strategies, opinions, research or legal theories of their attorneys or other representatives or information protected by the attorney-client privilege or any other applicable privilege.

Without waiving any such objections, Plaintiffs will not ask the Court at trial to make findings of fact or conclusions of law that there is any "orphan share" liability associated with the Site. By way of further response, Plaintiffs will ask the Court at trial to make findings of fact and conclusions of law that certain entities have no identifiable assets that would enable them to participate financially in the cleanup of the Site, and that such entities should not be allocated any response costs. By way of further response, *see* June 29, 2006 expert report of Raymond F. Dovell, C.P.A., previously produced and documents referenced therein.

125.    Do plaintiffs contend that defendants are responsible for the "orphan share" liability associated with the Site?

      A.      If so, what is the factual and legal basis for this contention?

**ANSWER:**    Plaintiffs object to this Interrogatory to the extent that it seeks information outside the scope of the contentions that Plaintiffs will make as part of their prima facie case at trial. Plaintiffs further object to this Interrogatory because it is vague, confusing, ambiguous and overly broad, specifically with respect to the phrase "orphan share liability." Plaintiffs further object to this Interrogatory to the extent that it seeks the discovery of the mental impressions,

conclusions, strategies, opinions, research or legal theories of their attorneys or other

representatives or information protected by the attorney-client privilege or any other applicable

privilege.

        Plaintiffs will not ask the Court at trial to make findings of fact or conclusions of

law that "Defendants are responsible for the 'orphan share' liability associated with the Site."

By way of further response, Plaintiffs will ask the Court at trial to allocate response costs to

Plaintiffs collectively (based upon aggregating their individual shares, if any, and the individual

shares of the Settling Defendants, if any) and to each Non-Settling Defendant without regard for

any other person or entity.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AGERE SYSTEMS, INC., CYTEC    :
INDUSTRIES INC., FORD MOTOR    :
COMPANY, SPS TECHNOLOGIES, LLC    :
and TI GROUP AUTOMOTIVE    :
SYSTEMS, LLC    :
    :
        Plaintiffs,    :    Civil Action No. 02-CV-3830 (LDD)
    :
    v.    :
    :
ADVANCED ENVIRONMENTAL    :
TECHNOLOGY CORPORATION, et al.,    :
    :
        Defendants.    :

## CERTIFICATE OF SERVICE

I certify that on this day I served a copy of Plaintiffs' Responses To Joint Contention Interrogatories of Advanced Environmental Technology Corporation, Ashland, Inc., Carpenter Technology Corporation, fcg, inc., Handy & Harman Tube Company, Inc. and NRM Investment Company by email and first class postage prepaid United States mail, on the counsel listed on the service list.

_Amy Trojecki_
Amy M. Trojecki

Dated: 4/17/07

EXHIBIT A

| Party Defendants | Waste In | Volumetric Share | Increase to PRPs with Knowledge | 50% Cooperation Credit to Plaintiffs |
|---|---|---|---|---|
| | | | 0.1 | 0.5 |
| Carpenter | 913,242 | 39.31% | 43.25% | 47.57% |
| Ashland/AETC | 138,481 | 5.96% | 6.56% | 7.21% |
| Diaz/AETC | 43,275 | 1.86% | 2.05% | 2.25% |
| Flexible | 51,948 | 2.24% | 2.04% | 2.24% |
| Etched/Flexible | 31,625 | 1.36% | 1.24% | 1.36% |
| NRM | 491,500 | 21.16% | 19.27% | 21.20% |
| Handy | 5,899 | 0.25% | 0.23% | 0.25% |
| Total | 1,675,970 | 72.15% | 74.63% | 82.09% |

| Plaintiffs | | | | |
|---|---|---|---|---|
| Cytec | 309,000 | 13.30% | 12.12% | 6.06% |
| Ford | 36,993 | 1.59% | 1.45% | 0.73% |
| SPS | 34,579 | 1.49% | 1.36% | 0.68% |
| Agere | - | 0.00% | 0.00% | 0.00% |
| TI | - | 0.00% | 0.00% | 0.00% |
| Total | 380,572 | 16.38% | 14.92% | 7.46% |

| Settleds | | | | |
|---|---|---|---|---|
| Plymouth | 14,976 | 0.64% | 0.59% | 0.59% |
| Quickline | 1,285 | 0.06% | 0.05% | 0.05% |
| Navy | 437 | 0.02% | 0.02% | 0.02% |
| Simon | 3,025 | 0.13% | 0.12% | 0.12% |
| Unisys | 3,292 | 0.14% | 0.13% | 0.13% |
| Rohm | - | 0.00% | 0.00% | 0.00% |
| Bostik | 7,125 | 0.31% | 0.28% | 0.28% |
| Novartis | 13,450 | 0.58% | 0.53% | 0.53% |
| Techalloy | 222,775 | 9.59% | 8.74% | 8.74% |
| Thomas | - | 0.00% | 0.00% | 0.00% |
| Total | 266,365 | 11.47% | 10.44% | 10.44% |

EXHIBIT A

| Waste In | | 2,322,907 | | 100.00% | | 100.00% | | 100.00% |
|----------|---|-----------|---|---------|---|---------|---|---------|

2

EXHIBIT B

| | Time | Gross | Factor | Net |
|---|---|---|---|---|
| **Flexible** | 1/72-12/73 | - | 0.95 | - |
| Bulk | 12/1/73-6/30/75 | 93,000 | 0.15 | 13,950 |
| Etchant | 7/1/75-6/1/76 | 7,150 | 0.65 | 4,648 |
| | 6/1/76-3/30/77 | 3,900 | 0.15 | 585 |
| | | 104,050 | | 19,183 |
| | | | | |
| Drums | 1/72-12/73 | 34,000 | 0.95 | 32,300 |
| Etchant | 12/1/73-6/30/75 | 3,100 | 0.15 | 465 |
| | 7/1/75-6/1/76 | - | 0.65 | - |
| | 6/1/76-3/30/77 | - | 0.15 | - |
| | | 37,100 | | 32,765 |

| | Time | Gross | Factor | Net |
|---|---|---|---|---|
| **Diaz/AETC** | 1/72-12/73 | - | 0.95 | - |
| Nitric Acid | 12/1/73-6/30/75 | - | 0.15 | - |
| Bulk | 7/1/75-6/1/76 | - | 0.65 | - |
| | 6/1/76-3/30/77 | 173,100 | 0.25 | 43,275 |
| | | 173,100 | | 43,275 |

| | Time | Gross | Factor | Net |
|---|---|---|---|---|
| **Ashland/AETC** | 1/72-12/73 | - | 0.95 | - |
| Nitric Acid | 12/1/73-6/30/75 | - | 0.15 | - |
| Bulk | 7/1/75-6/1/76 | - | 0.65 | - |
| | 6/1/76-3/30/77 | 216,650 | 0.25 | 54,163 |
| | | | | |
| Dye Waste | 1/72-12/73 | - | 0.95 | - |
| Bulk | 12/1/73-6/30/75 | - | 0.15 | - |
| | 7/1/75-6/1/76 | - | 0.65 | - |
| | 6/1/76-3/30/77 | 185,300 | 0.25 | 46,325 |
| | | | | |
| Pthalide Acid | 1/72-12/73 | - | 0.95 | - |
| Bulk | 12/1/73-6/30/75 | - | 0.15 | - |
| | 7/1/75-6/1/76 | - | 0.65 | - |
| | 6/1/76-3/30/77 | 50,000 | 0.25 | 12,500 |
| | | | | |
| CDN Waste | 1/72-12/73 | - | 0.95 | - |
| Bulk | 12/1/73-6/30/75 | - | 0.15 | - |
| | 7/1/75-6/1/76 | - | 0.65 | - |
| | 6/1/76-3/30/77 | 86,410 | 0.25 | 21,603 |
| | | | | |
| Solvents | 1/72-12/73 | - | 0.95 | - |
| Bulk | 12/1/73-6/30/75 | - | 0.15 | - |
| | 7/1/75-6/1/76 | - | 0.65 | - |
| | 6/1/76-3/30/77 | 12,950 | 0.25 | 3,238 |
| | | | | |
| Solvents | 1/72-12/73 | - | 0.95 | - |
| Drum | 12/1/73-6/30/75 | - | 0.15 | - |
| | 7/1/75-6/1/76 | - | 0.65 | - |
| | 6/1/76-3/30/77 | 4,345 | 0.15 | 652 |

EXHIBIT B

| | Time | Gross | Factor | Net |
|---|---|---|---|---|
| **NRM** | 1/72-12/73 | - | 0.95 | - |
| Pickle Liquor | 4/24/74-6/30/75 | 360,000 | 0.15 | 54,000 |
| Bulk | 7/1/75-6/1/76 | 605,000 | 0.65 | 393,250 |
| | 6/1/76-3/30/77 | 295,000 | 0.15 | 44,250 |
| | | 1,260,000 | | 491,500 |

| | Time | Gross | Factor | Net |
|---|---|---|---|---|
| **Handy** | 1/72-12/73 | 5,020 | 0.95 | 4769 |
| Solvents (TCE, | 12/1/73-6/30/75 | 7,530 | 0.15 | 1129.5 |
| MEK, acetone) | 7/1/75-6/1/76 | - | 0.65 | 0 |
| | 6/1/76-3/30/77 | - | 0.15 | 0 |
| | | 12,550 | | 5,899 |

| | Time | Gross | Factor | Net |
|---|---|---|---|---|
| **Etched/Flexible** | 1/72-12/73 | 17,500 | 0.95 | 16,625 |
| Drums | 12/1/73-6/30/75 | 23,000 | 0.15 | 3,450 |
| Etchant | 7/1/75-6/1/76 | 15,000 | 0.65 | 9,750 |
| | 6/1/76-3/30/77 | 12,000 | 0.15 | 1,800 |
| | | 67,500 | | 31,625 |

| | Time | Gross | Factor | Net |
|---|---|---|---|---|
| **Thomas** | 1/72-12/73 | - | 0.95 | - |
| | 12/1/73-6/30/75 | - | 0.15 | 0 |
| | 7/1/75-6/1/76 | - | 0.65 | 0 |
| | 6/1/76-3/30/77 | - | 0.15 | 0 |
| | | - | | - |

| | Time | Gross | Factor | Net |
|---|---|---|---|---|
| **Carpenter** | 1/72-12/73 | 816,658 | 0.95 | 775,825 |
| Bulk | 12/1/73-6/30/75 | 916,114 | 0.15 | 137,417 |
| Pickle Liquor | 7/1/75-6/1/76 | - | 0.65 | 0 |
| | 6/1/76-3/30/77 | - | 0.15 | 0 |
| | | 1,732,772 | | 913,242 |

| | Time | Gross | Factor | Net |
|---|---|---|---|---|
| **Agere** | 1/72-12/73 | - | 0.95 | - |
| | 12/1/73-6/30/75 | - | 0.15 | - |
| | 7/1/75-6/1/76 | - | 0.65 | - |
| | 6/1/76-3/30/77 | - | 0.15 | - |
| | | - | | - |

| | Time | Gross | Factor | Net |
|---|---|---|---|---|
| **TI** | 1/72-12/73 | - | 0.95 | - |
| | 12/1/73-6/30/75 | - | 0.15 | - |
| | 7/1/75-6/1/76 | - | 0.65 | - |
| | 6/1/76-3/30/77 | - | 0.15 | - |
| | | - | | - |

EXHIBIT B

|  | Time | Gross | Factor | Net |
|---|---|---|---|---|
| **Ford** | 1/72-12/73 | 13,585 | 0.95 | 12,906 |
| Drums | 12/1/73-6/30/75 | - | 0.15 | - |
| Plastics | 7/1/75-6/1/76 | - | 0.65 | - |
|  | 6/1/76-3/30/77 | - | 0.15 | - |
|  |  | 13,585 |  | 12,906 |
|  | 1/72-12/73 | 23,595 | 0.95 | 22,415 |
| Drums | 12/1/73-6/30/75 | - | 0.15 | - |
| Finishing Materials | 7/1/75-6/1/76 | - | 0.65 | - |
|  | 6/1/76-3/30/77 | - | 0.15 | - |
|  |  | 23,595 |  | 22,415 |
|  | 1/72-12/73 | 1,760 | 0.95 | 1,672 |
| Drums | 12/1/73-6/30/75 | - | 0.15 | - |
| Industrial Waste | 7/1/75-6/1/76 | - | 0.65 | - |
|  | 6/1/76-3/30/77 | - | 0.15 | - |
|  |  | 1,760 |  | 1,672 |
| **Cytec** | 1/72-12/73 | - | 0.95 | - |
| Bulk | 12/1/73-6/30/75 | 193,000 | 0.15 | 28,950 |
| Ammonia | 7/1/75-6/1/76 | - | 0.65 | - |
|  | 6/1/76-3/30/77 | 116,000 | 0.15 | 17,400 |
| Based on Driver Testimony |  | 309,000 |  | 46,350 |

EXHIBIT B

| | Time | Gross | Factor | Net |
|---|---|---|---|---|
| **SPS** | 1/72-12/73 | 7,838 | 0.95 | 7,446 |
| Drums | 12/1/73-6/30/75 | 12,155 | 0.15 | 1,823 |
| Chromic Acid | 7/1/75-6/1/76 | 6,270 | 0.65 | 4,076 |
| | 6/1/76-3/30/77 | 5,858 | 0.15 | 879 |
| | | 32,120 | | 14,223 |
| | | | | |
| | 1/72-12/73 | 8,388 | 0.95 | 7,968 |
| Drums | 12/1/73-6/30/75 | 12,320 | 0.15 | 1,848 |
| Cyanide Waste | 7/1/75-6/1/76 | 6,270 | 0.65 | 4,076 |
| | 6/1/76-3/30/77 | 6,573 | 0.15 | 986 |
| | | 33,550 | | 14,878 |
| | | | | |
| | 1/72-12/73 | 990 | 0.95 | 941 |
| Drums | 12/1/73-6/30/75 | - | 0.15 | - |
| Degreasing Fluids | 7/1/75-6/1/76 | - | 0.65 | - |
| | 6/1/76-3/30/77 | - | 0.15 | - |
| | | 990 | | 941 |
| | | | | |
| | 1/72-12/73 | 165 | 0.95 | 157 |
| Drums | 12/1/73-6/30/75 | - | 0.15 | - |
| Acetone Waste | 7/1/75-6/1/76 | - | 0 | - |
| | 6/1/76-3/30/77 | - | 0.15 | - |
| | | 165 | | 157 |
| | | | | |
| | 1/72-12/73 | 110 | 0.95 | 105 |
| Drums | 12/1/73-6/30/75 | - | 0.15 | - |
| Nickel Waste | 7/1/75-6/1/76 | - | 0.65 | - |
| | 6/1/76-3/30/77 | - | 0.15 | - |
| | | 110 | | 105 |
| | | | | |
| Cyanide Waste | 1/72-12/73 | 4,500 | 0.95 | 4,275 |
| Bulk | 12/1/73-6/30/75 | - | 0.15 | - |
| | 7/1/75-6/1/76 | - | 0.65 | - |
| | 6/1/76-3/30/77 | - | 0.15 | - |
| | | 4,500 | | 4,275 |

EXHIBIT B

| | Time | Gross | Factor | Net |
|---|---|---|---|---|
| **Plymouth** | 1/72-12/73 | 10,604 | 0.95 | 10,074 |
| Bulk | 12/1/73-6/30/75 | 11,667 | 0.15 | 1,750 |
| Pickle Liquor | 7/1/75-6/1/76 | 4,465 | 0.65 | 2,902 |
| | 6/1/76-11/31/76 | 1,665 | 0.15 | 250 |
| | | 28,401 | | 14,976 |

| | Time | Gross | Factor | Net |
|---|---|---|---|---|
| **Quickline** | 1/72-12/73 | 1,071 | 0.95 | 1017.45 |
| Drums | 12/1/73-6/30/75 | 1,785 | 0.15 | 267.75 |
| Etchant | 7/1/75-6/1/76 | - | 0.65 | 0 |
| | 6/1/76-3/30/77 | - | 0.15 | 0 |
| | | 2,856 | | 1,285 |

| | Time | Gross | Factor | Net |
|---|---|---|---|---|
| **Navy** | 1/72-12/73 | - | 0.95 | - |
| Drums/Carboys | 12/1/73-6/30/75 | - | 0.15 | - |
| | 7/1/75-6/1/76 | - | 0.65 | - |
| | 6/1/76-3/30/77 | - | 0.15 | - |
| Driver Testimony | | - | | 437 |

| | Time | Gross | Factor | Net |
|---|---|---|---|---|
| **Simon** | 1/72-12/73 | - | 0.95 | 0 |
| Bulk/Plastic Drums | 12/1/73-6/30/75 | | 0.15 | |
| Sulphuric Nitrate | 7/1/75-6/1/76 | - | 0.65 | 0 |
| | 6/1/76-3/30/77 | - | 0.15 | 0 |
| Driver Testimony | | | | 3,025 |

| | Time | Gross | Factor | Net |
|---|---|---|---|---|
| **Unisys** | 1/72-12/73 | 3,465 | 0.95 | 3291.75 |
| Drums | 12/1/73-6/30/75 | - | 0.15 | 0 |
| Etchant | 7/1/75-6/1/76 | - | 0.65 | 0 |
| | 6/1/76-3/30/77 | - | 0.15 | 0 |
| | | 3,465 | | 3,292 |

| | Time | Gross | Factor | Net |
|---|---|---|---|---|
| **Rohm** | 1/72-12/73 | - | | 0 |
| | 12/1/73-6/30/75 | - | | 0 |
| | 7/1/75-6/1/76 | - | | 0 |
| | 6/1/76-3/30/77 | - | | 0 |
| | | - | | - |

| | Time | Gross | Factor | Net |
|---|---|---|---|---|
| **Bostik** | 1/72-12/73 | - | 0.95 | 0 |
| Bulk | 12/1/73-6/30/75 | - | 0.15 | 0 |
| Nitric Acid | 7/1/75-6/1/76 | - | 0.65 | 0 |
| | 6/1/76-3/30/77 | - | 0.25 | 0 |
| Driver Testimony | | - | | 7,125 |

EXHIBIT B

| | CDN Waste | Bulk | 21,603 |
|---|---|---|---|
| | Pthalide Acid | Bulk | 12,500 |
| | Solvents | Bulk | 3,238 |
| | Solvents | Drum | 652 |
| Diaz/AETC | Nitric Acid | Bulk | 43,275 |
| Flexible | Etchant | Bulk | 19,183 |
| | Etchant | Drum | 32,765 |
| Etched/Flexible | Etchant | Drum | 31,625 |
| NRM | Pickle Liquor | Bulk | 491,500 |
| Handy | Solvents | Drum | 5,899 |
| | | | 1,675,967 |

**Plaintiff Totals**

| | | | |
|---|---|---|---|
| Cytec | Ammonia | Bulk | 309,000 |
| Ford | Plastics | Drums | 12,906 |
| Ford | Finishing Mat. | Drums | 22,415 |
| Ford | Industrial Waste | Drums | 1,672 |
| SPS | Chromic Acid | Drums | 14,223 |
| SPS | Cyanide Waste | Drums | 14,878 |
| SPS | Cyanide Waste | Bulk | 4,275 |
| SPS | Degreasers | Drums | 941 |
| SPS | Acetone | Drums | 157 |
| SPS | Nickle Waste | Drums | 105 |
| | | | 380,570 |

**Settled Totals**

| | | | |
|---|---|---|---|
| Quickline | Etchant | Drums | 1,285 |
| Navy | Waste | Drums | 437 |
| Simon Wrecking | Sulphuric Nitrate | Bulk | 3,025 |
| Novartis | Nitric Acid | Bulk | 13,450 |
| Bostik | Nitric Acid | Bulk | 7,125 |
| Techalloy | Waste Oil | Drums | 2,375 |
| Techalloy | Pickle Liquor | Bulk | 220,400 |
| Plymouth Tube | Pickle Liquor | Bulk | 14,976 |
| Rohm | | | - |
| Unisys | Etchant | Drums | 3,292 |
| Thomas | Etchant | Drum | - |
| | | | 266,365 |

## VERIFICATION

Jocelyn T. de Grandpre, being duly sworn, deposes and says that she is an authorized agent of Agere Systems Inc., and that she verifies the foregoing responses and objections to Interrogatories to the Plaintiffs jointly from Advanced Environmental Technology Corporation, Ashland, Inc., Carpenter Technology Corporation, fgc, Inc., Handy & Harman Tube Company, Inc. and NRM Investment Co., for and on behalf of Agere Systems Inc.; that the matters stated therein are not within the personal knowledge of deponent; that the facts stated therein have been assembled by authorized employees and counsel of Agere Systems Inc.; and deponent is informed that the facts stated therein are true.

Dated:  April 13, 2007

*Jocelyn T de Grandpre*

## VERIFICATION

Thomas E. Mesevage, being duly sworn, deposes and says that he is an authorized agent of Cytec Industries Inc. and that he verifies the foregoing responses and objections to Interrogatories to the Plaintiffs jointly from Advanced Environmental Technology Corporation, Ashland, Inc., Carpenter Technology Corporation, fgc, Inc., Handy & Harman Tube Company, Inc. and NRM Investment Co., for and on behalf of Cytec Industries Inc.; that the matters stated therein are not within the personal knowledge of deponent; that the facts stated therein have been assembled by authorized employees and counsel of Cytec Industries Inc. and deponent is informed that the facts stated therein are true.

Dated:  April 16, 2007                 Signature: _____
                                                   Thomas E. Mesevage
                                                   Safety, Health and Environmental Counsel
                                                   Cytec Industries Inc.
                                                   5 Garret Mountain Plaza
                                                   West Paterson, NJ 07424

## **VERIFICATION**

Timothy M. Guerriero, being duly sworn, deposes and says that he is an authorized agent of TI Group Automotive Systems, L.L.C., and that he verifies the foregoing responses and objections to Interrogatories to the Plaintiffs jointly from Advanced Environmental Technology Corporation, Ashland, Inc., Carpenter Technology Corporation, fgc, inc., Handy & Harman Tube Company, Inc. and NRM Investment Co., for and on behalf of TI Group Automotive Systems, L.L.C.; that the matters stated therein are not within the personal knowledge of deponent; that the facts stated therein have been assembled by authorized employees and counsel of TI Group Automotive Systems, L.L.C.; and deponent is informed that the facts stated therein are true.

Dated:  April 12, 2007

Timothy M. Guerriero, Secretary

## <u>VERIFICATION</u>

_____Kathryn Lamping_____, being duly sworn, deposes and says that he is an

authorized agent of Ford Motor Company, and that he verifies the foregoing responses and

objections to Interrogatories to the Plaintiffs jointly from Advanced Environmental Technology

Corporation, Ashland, Inc., Carpenter Technology Corporation, fgc, Inc., Handy & Harman

Tube Company, Inc. and NRM Investment Co., for and on behalf of Ford Motor Company; that

the matters stated therein are not within the personal knowledge of deponent; that the facts stated

therein have been assembled by authorized employees and counsel of Ford Motor Company and

deponent is informed that the facts stated therein are true.

Dated: _____    _____
                                              Kathryn S. Lamping
                                              Assistant Secretary

## VERIFICATION

_Tom  Cross_____, being duly sworn, deposes and says that he is an

authorized agent of SPS Technologies, LLC and that he verifies the foregoing responses and

objections to the Interrogatories to the Plaintiffs jointly from Advanced Environmental

Technology Corporation, Ashland, Inc., Carpenter Technology Corporation, fgc, Inc., Handy &

Harman Tube Company, Inc. and NRM Investment Co., for and on behalf of SPS Technologies,

LLC; that the matters stated therein are not within the personal knowledge of deponent; that the

facts stated therein have been assembled by authorized employees and counsel of SPS

Technologies, LLC and deponent is informed that the facts stated therein are true.


Dated: 12 April 2007                          _Thomas S. Cross_____