# PHELAN, PETTIT & BIEDRZYCKI, LLC
## ATTORNEYS AT LAW

RICHARD C. BIEDRZYCKI
JEFFREY L. PETTIT
CHRISTOPHER H. JONES*
DAVID M. DOTO*
JOHN W. PHELAN*
BRENT A. COSSROW*

OF COUNSEL
JOHN M. PHELAN

* ALSO ADMITTED TO NJ BAR

SUITE 1600
THE NORTH AMERICAN BUILDING
121 SOUTH BROAD STREET
PHILADELPHIA, PA 19107

TELEPHONE (215) 546-0500
FACSIMILE (215) 546-9444

509 SWEDE STREET
NORRISTOWN, PA 19401

TELEPHONE (610) 279-0316
FACSIMILE (610) 279-0378

PLEASE REPLY TO PHILADELPHIA OFFICES

April 30, 2007

**VIA E-MAIL AND FIRST CLASS MAIL**
Glenn M. Harris, Esquire
Ballard, Spahr, Andrews & Ingersoll, LLP
Plaza 1000 - Suite 500
Main Street
Voorhees, NJ 08043-4636

RE: Boarhead Farm Agreement Group v.
Advanced Environmental Technology Corporation, et al.
U.S.D.C., E.D.Pa., Civil Action No. 02-3830

Dear Glenn:

I am writing on behalf of the remaining Defendants to comply with the first deadline that we anticipate will be set forth in the Tenth Case Management Order. Defendants have conferred and identified several areas where we believe the Plaintiffs' responses to the Joint Contention Interrogatories are deficient and where additional discovery is required. Deficiencies or additional discovery required as a result of the Plaintiffs' responses to Joint Contention Interrogatories that specifically relate to individual defendants or responses to specific Defendant's Contention Interrogatories will be addressed by those defendants in separate correspondence.

As a general matter, the responses are deficient to the extent that they fail to provide or object to providing the legal basis for a contention. Defendants request that Plaintiffs withdraw this objection.

### Interrogatory Nos. 1 through 66

Defendants request that Plaintiffs withdraw their objection on the ground that it seeks information outside of the contentions that the Plaintiffs will make as part of their *prima facie* case at trial.

In paragraph 1, Plaintiffs also objected to the phrases, "arranged for the disposal of drum wastes at the Site" and "arranged for bulk waste to be disposed of at the Site" on the grounds that these phrases were vague, confusing and ambiguous. Since these phrases closely track the statutory language, Defendants assume the basis of Plaintiffs' objection was the inference that the legal term "arrange" was tied to disposal "at the Site." That was not the Defendants' intent. The intent of these contention interrogatories was to determine whether the Plaintiffs were contending that the parties referenced in these paragraphs were or were not "arrangers" within the meaning of CERCLA. Put another way, the intent was to determine whether the Plaintiffs were contending that these parties had arranged for the disposal of wastes that the Plaintiffs have alleged were disposed at the Site; the intent was not to determine whether the Plaintiffs were contending that these parties had selected the Site, as opposed to some other location, for disposal. With that clarification in mind, Defendants request that Interrogatory Nos. 1 through 66 be fully answered.

### Interrogatory Nos. 67-71

Defendants request that the Plaintiffs withdraw their objection on the ground that it seeks information outside of the contentions that the Plaintiffs will make as part of their *prima facie* case at trial.

The Plaintiffs stated in their response to Paragraph 67 that Plaintiffs will request findings of fact and conclusions that drummed and bulk waste, hauled by DCC <u>beginning in 1972</u>, was disposed of at the Site. Plaintiffs' response does not address the 1969-72 period. If the Plaintiffs contend that DCC did not haul wastes before 1972, the factual and legal basis must be stated.

In their response to paragraph 67, Plaintiffs also stated that they will not ask the Court to make any findings of fact or conclusions of law that waste hauled by Globe Disposal Co., Inc./Globe-Wastec, Inc. was disposed of at the Site. Interrogatory Nos. 69 (A) through 71 (A) requested the factual and legal bases for this negative response. These bases were not provided. Please supplement your responses with these bases.

### Interrogatory Nos. 73-77

Defendants request that the Plaintiffs withdraw their objection on the ground that it seeks information outside of the contentions that the Plaintiffs will make as part of their *prima facie* case at trial.

In these paragraphs, Defendants sought to understand each Plaintiff's position on the total clean-up costs for OU-1 and OU-2 incurred by each Plaintiff. The totals outlined on the tables on pages 39 and 40 suggest that the Plaintiffs are seeking contribution toward response costs incurred by NRM Investments and Worthington Industries, Inc., companies that are not plaintiffs in this case. Furthermore, the amounts attributed to the Plaintiffs are inconsistent with other documents produced by the Plaintiffs, such as Jerome Exhibit "10" which purports to be a calculation of contributions to the funds maintained by the OU-1 and OU-2 groups to pay

response costs and EPA oversight costs at the time. Defendants need clarification on these responses and details on every payment by each Plaintiff or payments by others credited to that Plaintiff that are included in the totals indicated.

Furthermore, in their responses Plaintiffs state that they will ask the Court to rule that they have "collectively paid" an amount in excess of their equitable share of the costs identified above. The Contention Interrogatories were specific and consistent with the law to the extent they requested the Plaintiffs to identify each specific Plaintiff's payment in excess of its equitable share. Based on our review of the PRP Group Organizational Documents produced by the Plaintiffs in this case, Defendants are aware there are underlying mechanisms to allocate costs for both OU-1 and OU-2 remediation internally among the parties to those agreements. We will request discovery on whether those allocation mechanisms have been utilized and the results thereof, as well as on the potential for further allocation or reallocation as between any of the Plaintiffs in the future. Defendants further note that on page 41 the Plaintiffs indicated that there has been a settlement with Agere, evidenced by an Agreement dated March 30, 2007. None of the Defendants were advised that this document had been placed in the Repository and request that you produce the Agreement immediately. We also request that you supplement the responses to these Contention Interrogatories to state Plaintiffs' contention with respect to whether or not Agere, having settled with the Plaintiffs, intends to remain a Plaintiff in the case for any purpose and whether or not the Plaintiffs seek to recover the payments made to or by Agere as represented in the present response.

Defendants will also further seek discovery on the OU-1 and OU-2 group discussions, determinations and actions relating to allocations and investigation of other PRPs, subjects referenced in various documents in the Repository. We know from records produced by the Plaintiffs that there was an allocation performed by John M. Barkett, Esq. and an investigation by Environmental Strategies Management in 1998.

These responses are also deficient in that the Contention Interrogatories requested the Plaintiffs' calculation of the Total Clean-Up Costs. The responses only indicate the costs paid by or on behalf of the Plaintiffs, and do not provide the total response costs. For example, we understand that Plaintiffs paid only $7 million of the United States' past response costs, costs which were much greater than that amount.

**Interrogatory No. 78**

The response to this paragraph is cross-referenced in the responses to paragraphs 79 to 111 and, therefore, the deficiencies outlined here are applied to those paragraphs as well.

Defendants request that the Plaintiffs withdraw their objection on the ground that it seeks information outside of the contentions that the Plaintiffs will make as part of their *prima facie* case at trial. These paragraphs request the Plaintiffs to identify their contentions as to the Plaintiffs', Settling Defendants' and Non-Settling Defendants' respective allocable/equitable shares of the total clean-up costs and the factual basis thereof, whether those contentions are

made in the Plaintiffs' *prima facie* case at trial or otherwise. These are essential contentions in a CERCLA contribution action.

Although the responses provide a very broad outline of the Plaintiffs' methodology for determining volumes of waste to be attributed to the Plaintiffs, Non-Settling Defendants, and Settled Defendants and indicate percentages of wastes for certain time periods, the responses are deficient because they fail to provide the basis on which these percentages were calculated. For example, the Plaintiffs indicate that they will ask the Court to conclude that 95% of all the waste handled by DCC from 1/72 to 12/1/73 was disposed of at the Site. Certain documents are listed and references are made to deposition testimony. However, these sources do not support the specific percentage identified in the responses and there is no information in the responses as to how the referenced information was utilized to arrive at the specific percentage. Furthermore, the listings of the documents that purportedly justify the Plaintiffs' calculations are all preceded by the disclaimer, "include, but are not limited to." Thus, Defendants are left without knowing all the documents that the Plaintiffs specifically rely upon in developing this percentage. The same comments apply with respect to the other time periods set forth in the response to paragraph 78, and the other calculated percentages. As a result, Defendants will seek additional discovery on the precise manner in which the alleged documents and deposition testimony were utilized to arrive at these percentages.

The response on behalf of Agere Systems, Inc. indicates there is no evidence establishing that any hazardous wastes owned or possessed by Agere's predecessor, Western Electric, was disposed of at the Site. This response fails to address other possible predecessors of Agere, including AT&T and Lucent Technologies, all of whom have been implicated at the Site. In addition, the response on behalf of Agere refers only to hazardous wastes rather than the term "waste" used in most of the other responses. We request that this response be supplemented to include all waste and all waste of predecessors.

The response on behalf of TI Group Automated Systems, LLC refers only to hazardous waste owned or possessed by Bundy Corporation. Defendants do not understand Plaintiffs' contentions as to the relationships between Bundy Corporation and TI Group and National Rolling Mills since none is pleaded in the Fourth Amended Complaint. In addition, this response is deficient because the term "hazardous waste" is used here rather than the term "waste".

The response to Contention Interrogatory No. 78, page 66, also repeats the contention in other responses that the Plaintiffs will allocate to the Plaintiffs collectively rather than individually. Again, individual allocation is necessary in order to compare costs paid by individual Plaintiffs with their respective alleged allocable/equitable shares.

### Interrogatory No. 85

In this response, the Plaintiffs state that Boarhead Corporation is not a party to this action. Boarhead Corporation was originally named as a defendant in the case. Please explain the basis for this statement.

PHELAN, PETTIT & BIEDRZYCKI
Glenn M. Harris, Esquire
April 30, 2007
Page 5

### Interrogatory No. 108

The Plaintiffs failed to respond to this interrogatory which requests the Plaintiffs to identify their contentions as to General Ceramics' allocable/equitable share. The response accurately indicates that General Ceramics conducted a separate removal action. However, it is evident from Exhibit "A" attached to Ashland's Contention Interrogatories that the Plaintiffs received consideration from General Ceramics by way of an assignment of insurance proceeds. Moreover, the Plaintiffs' expert Jay Vandeven, opined that all wastes contributed in some way to response costs. Therefore, Defendants are entitled to a response and further discovery on the details of any funds received by the Plaintiffs in the way of insurance proceeds or otherwise as result of claims against General Ceramics.

### Interrogatory Nos. 92, 93, 104, 105, 106, 107, 109-111

The Plaintiffs did not respond to these interrogatories asking for the Plaintiffs' contentions as to Knoll/Art Metal-Knoll Corporation, Merit Metals, Haven Chemical/Haven Ind., Inc., Envirotec/Enviratech, Sitkin Smelting & Refining, DeRewal's, DCC's and Globe's allocable/equitable shares. The only response was that these entities have no identifiable assets. Defendants are still entitled to know the Plaintiffs' contentions as to the allocable/equitable shares of these parties.

### Interrogatory No. 112

In their response to Interrogatory 112, the Plaintiffs propound a number of objections. First, the Plaintiffs object to this Interrogatory to the extent that it seeks information outside the scope of the contentions that Plaintiffs will make as part of their *prima facie* case at trial. As discussed above, the Defendants are entitled to discovery as to the Plaintiffs' contentions irrespective of when such contentions might be made. Please withdraw, and confirm your withdrawal of, this objection (in connection with all of Defendants' contention interrogatories).

Next, the Plaintiffs object to the phrase "first removal action" as being "vague, confusing and ambiguous." This is an unfounded objection because as the Plaintiffs well know, the administrative record generated by EPA in connection with the Site contains multiple references to, and descriptions of, a series of discrete removal actions. Indeed, Interrogatory 112 specifies the very page and paragraph of the ROD (p. 3, para. 1) where a description of the three distinct removal actions is found. The referenced section of the ROD states, in relevant part, that "EPA has conducted three removal actions at the Boarhead Farms Site. During the first two, one each in 1992 and 1993, over 2500 buried drums were located, excavated and disposed of offsite, reducing the contaminant levels in the subsurface soils. The excavated areas were then covered with a layer of clean fill to reduce exposure risk. A third removal action to intercept, collect and treat contaminated groundwater in an onsite treatment facility is continuing at this time." Please

withdraw, and confirm your withdrawal of, this objection, and in light of this (unnecessary) clarification, please provide a full and complete response to this Interrogatory.

The Plaintiffs' answer to Interrogatory No. 112 states: "Plaintiffs will not ask the Court at trial to make findings of fact or conclusions of law concerning when 'the first removal action conducted by the United States (as that removal action is described in the first paragraph of page 3 of the Record of Decision for the Site)' was completed." Please confirm that this answer means that if Defendants contend at or prior to trial that the referenced first removal action was completed in 1992, the Plaintiffs will not contend otherwise. If you will not provide such confirmation, please provide a full and complete response to this Interrogatory (including its subparts).

### Interrogatory No. 113

The first two paragraphs above relating to Interrogatory 112 apply equally to Interrogatory 113, and Defendants make the same requests of the Plaintiffs with regard to the Plaintiffs' objections and answer to Interrogatory 113 as Defendants made with regard to the Plaintiffs' objections and answer to Interrogatory 112.

Furthermore, the Plaintiffs' answer to Interrogatory No. 113 states: "Plaintiffs will not ask the Court at trial to make findings of fact or conclusions of law concerning when 'the second removal action conducted by the United States (as that removal action is described in the first paragraph of page 3 of the Record of Decision for the Site)' was completed." Please confirm that this means that if Defendants contend at or prior to trial that the referenced second removal action was completed in 1993, the Plaintiffs will not contend otherwise. If you will not provide such confirmation, please provide a full and complete response to this Interrogatory (including its subparts).

### Interrogatory Nos. 114-115

The first two paragraphs above relating to Interrogatory 112 also apply to Interrogatories 114 and 115, except that in response to Interrogatories 114 and 115 the Plaintiffs object that the term "remedial action" is also "vague, confusing and ambiguous." This objection, like the Plaintiffs' parallel objection to the terms "first remedial action" and "second remedial action," is unfounded. Interrogatories 114 and 115 are quite specific in defining "remedial action" to mean " 'remedial action' (as that term is used in 42 U.S.C. § 9613(g)(2))." It is hard to imagine there being less vagueness, confusion or ambiguity concerning the meaning of a term when the specified meaning is that given by the statute being relied upon by the responding parties as the basis of their claims. Defendants make the same requests of the Plaintiffs with regard to the Plaintiffs' objections and answers to Interrogatories 114 and 115 as Defendants made with regard to the Plaintiffs' answers and objections to Interrogatories 112 and 113.

Furthermore, the Plaintiffs' answer to Interrogatory No. 114 states: "Plaintiffs will not ask the Court at trial to make findings of fact or conclusions of law concerning [sic] that 'the

"remedial action" (as that term is used in 42 U.S.C. § 9613(g)(2) at the Site was initiated within three years after the completion of the first removal action conducted by the United states (as that removal action is described in the first paragraph of page 3 of the Record of Decision for the Site).'" Similarly, the Plaintiffs' answer to Interrogatory 115 states: "Plaintiffs will not ask the Court at trial to make findings of fact or conclusions of law concerning [sic] that 'the 'remedial action' (as that term is used in 42 U.S.C. § 9613(g)(2) at the Site was initiated within three years after the completion of the second removal action conducted by the United States (as that removal action is described in the first paragraph of page 3 of the Record of Decision for the Site).'" Please confirm that these answers mean that if Defendants contend at or prior to trial that the referenced remedial action was initiated more than three years after the completion of the first and second removal actions, respectively, the Plaintiffs will not contend otherwise. If you will not provide such confirmation, please provide a full and complete response to these Interrogatories (including their subparts).

### Interrogatory No. 116

Defendants make the same request of the Plaintiffs with regard to the deficiencies in the Plaintiffs' objections and answer to Interrogatory 116 as Defendants made in connection with Interrogatories 112 through 115. In addition, Defendants note that the Plaintiffs have identified a typographical error in Interrogatory 116. For sake of (unnecessary) clarification, this will confirm that the parenthetical following which the Plaintiffs wrote "[sic]" should have read "(as that term is defined in the OU-2 Consent Decree)" (just as that parenthetical reads in Interrogatory 117). The objection to the term "Past Response Costs" as being "vague, confusing and ambiguous" is not only unfounded, but remarkable, inasmuch as most of the Plaintiffs negotiated the language of the OU-2 Consent Decree, including the definition of "Past Response Costs," and then signed that document.

The Plaintiffs' answer to Interrogatory 116 states: "Plaintiffs will not ask the Court at trial to make findings of fact or conclusions of law that, at the time the March 14, 2002 Consent Decree was executed, 'any plaintiff had any potential liability for payment of any "Past Response Costs" (as that term is defined in) [sic] associated with the first two removal actions conducted by the United States (as those removal actions are described in the first paragraph of page 3 of the Record of Decision for the Site).'" Please confirm that this answer means that if Defendants contend at or prior to trial that the Plaintiffs had no potential liability for payment of any "Past Response Costs" (as that term is defined in the OU-2 Consent Decree), the Plaintiffs will not contend otherwise. If you will not provide such confirmation, please provide a full and complete response to this Interrogatory (including its subparts).

### Interrogatory No. 117

Defendants make the same request of the Plaintiffs with regard to the deficiencies in the Plaintiffs' objections and answer to Interrogatory 117 as Defendants made in connection with Interrogatories 112 through 116.

The Plaintiffs' answer to Interrogatory 117 states: "Plaintiffs will not ask the Court at trial to make findings of fact or conclusions of law that, at the time the March 14, 2002 Consent Decree was executed, 'an initial action by the United States for recovery of "Past Response Costs" (as that term is defined in the OU-2 Consent Decree) associated with the first two removal actions conducted by the United States (as those removal actions are described in the first paragraph of page 3 of the Record of Decision for the Site) was not barred by the statute of limitations found at 42 U.S.C. § 9613(g)(2).' " Please confirm that this answer means that if Defendants contend at or prior to trial that an initial action by the United States against the Plaintiffs for recovery of "Past Response Costs" (as that term is defined in the OU-2 Consent Decree) associated with the first two removal actions (as those removal actions are described in the first paragraph of page 3 of the Record of Decision for the Site) was barred by the statute of limitations found at 42 U.S.C. § 9613(g)(2), the Plaintiffs will not contend otherwise. If you will not provide such confirmation, please provide a full and complete response to this Interrogatory (including its subparts).

### Interrogatory No. 118

Interrogatory 118 poses a straightforward question: "Without regard to the Consent Decree(s), do plaintiffs (each, any or all) contend that they have no liability for the contamination at the Site?" The Plaintiffs answered this interrogatory by referring Defendants to the Plaintiffs' response to Interrogatory 78. However, the Plaintiffs' response to Interrogatory 78 does not state whether the Plaintiffs (each, any or all) contend that they have no liability for the contamination at the Site. Although the Plaintiffs' response to Interrogatory 78 lists certain documents and testimony pertaining to certain of the Plaintiffs, we note that Mr. Harris made an absolute representation to the Court during the most recent (April 24, 2007) case management conference that the Plaintiffs had no liability. Please provide a full and complete answer to this Interrogatory (including its subparts).

### Interrogatory Nos. 119-123

Defendants request that the Plaintiffs withdraw their objection on the ground that it seeks information outside of the contentions that the Plaintiffs will make as part of their *prima facie* case at trial.

The only answer provided by the Plaintiffs was the amount of settlements reached with other Defendants in this action. Defendants are entitled to know any credits, including insurance proceeds, contributions from predecessors or any other source offsetting its costs and will seek discovery of those items.

### Interrogatory Nos. 124-125

Defendants are entitled to know whether the Plaintiffs contend that there are parties who have an allocable/equitable share of response costs but which may not have the assets to pay and whether Plaintiffs contend that Defendants are responsible.

PHELAN, PETTIT & BIEDRZYCKI
Glenn M. Harris, Esquire
April 30, 2007
Page 9

       The remaining Defendants look forward to your timely response to the matters addressed in this letter.

                            Very truly yours,

                            Jeffrey L. Pettit

JLP/vic

cc:    All defense counsel (via e-mail)

G:\DATA\1357-29\Ltrs\GMH-026.doc