# PHELAN, PETTIT & BIEDRZYCKI, LLC
## ATTORNEYS AT LAW

RICHARD C. BIEDRZYCKI
JEFFREY L. PETTIT
CHRISTOPHER H. JONES*
DAVID M. DOTO*
JOHN W. PHELAN*
BRENT A. COSSROW*

OF COUNSEL
JOHN M. PHELAN

* ALSO ADMITTED TO NJ BAR

SUITE 1600
THE NORTH AMERICAN BUILDING
121 SOUTH BROAD STREET
PHILADELPHIA, PA 19107

TELEPHONE (215) 546-0500
FACSIMILE  (215) 546-9444

509 SWEDE STREET
NORRISTOWN, PA 19401

TELEPHONE (610) 279-0316
FACSIMILE  (610) 279-0378

PLEASE REPLY TO PHILADELPHIA OFFICES

May 18, 2007

**VIA E-MAIL**
**ENCLOSURES VIA FIRST CLASS MAIL**
Glenn M. Harris, Esquire
Ballard, Spahr, Andrews & Ingersoll, LLP
Plaza 1000 - Suite 500
Main Street
Voorhees, NJ 08043-4636

RE: Boarhead Farm Agreement Group v.
Advanced Environmental Technology Corporation, et al.
U.S.D.C., E.D.Pa., Civil Action No. 02-3830

Dear Glenn:

This will follow-up some of the issues that we discussed at our meeting on May 14, 2007 concerning Plaintiffs' responses to the Defendants' Contention Interrogatories. The following issues are those you suggested could be resolved by telephone call or the provision of particular documents.

### Agere's Responsibility for Boarhead Clean Up and Contributions to Response Costs

Agere Systems, Inc., is identified in the Fourth Amended Complaint as a Delaware corporation. Public information reveals that Agere was incorporated on August 1, 2000 as a subsidiary of Lucent Technologies and then spun off on June 2, 2002. The allegations in this case concern disposal of waste from two Western Electric plants. Defendants need to know the basis on which Agere claims legal liability for Western Electric waste and, on what legal and factual bases Agere contends that contributions by Lucent to the response costs at Boarhead can be credited to Agere and sought by it in this CERCLA contribution action. These questions may well be answered by the documents underlying the creation of Lucent from the break-up of AT&T and the documents relevant to the corporate changes noted above.

PHELAN, PETTIT & BIEDRZYCKI
Glenn M. Harris, Esquire
May 18, 2007
Page 2

### TI Group's Responsibility for Boarhead Clean Up and Contributions to Response Costs

Plaintiff TI Group Automotive Systems, LLC, according to public records, was formed in Delaware as a limited liability company in June 2001. A different entity, TI Group Automotive Systems Corporation, was a party to the OU-2 Consent Decree. That corporation was incorporated in Michigan in 1929 and disappeared by merger in June 2001. Defendants have additional information that another TI Group Automotive entity merged with Smith's Industries in 2000 to create Smith's Group PLC and that TI entity "demerged" from Smith's Group.

Defendants further understand from Initial Disclosures that Bundy Corporation operated the National Rolling Mills Plant from 1970 to 1974 as a division and that some Bundy-related entity may have been either a parent of TI Automotive or a sister entity. Defendants need to know on what basis Plaintiff TI Group Automotive Systems, LLC assumed liability for Boarhead response costs related to National Rolling Mills waste and what is the basis for the Plaintiffs' contention that contributions for response costs by Smith's Industries can be considered contributions by Plaintiff TI Automotive Systems, LLC for which recovery is sought by it in this CERCLA contribution action.

### Contentions Concerning Ashland Drummed Waste

Ashland seeks further clarification as to the Plaintiffs' contentions concerning disposal of Ashland drummed waste. Documents indicate that there were drums of waste removed from the Great Meadows Plant in 1976 and, in addition, there were direct sales of chemicals by Ashland from Easton, PA to DeRewal Chemical in late 1977 to early 1978. Our review of the various deposition transcripts of the DeRewal drivers indicate that none of them brought Ashland drummed waste to Boarhead Farm. Yet, your letter of May 7, 2007, responding to our deficiency letter, indicates that "Plaintiffs contend that the drums depicted in these documents and contents thereof were included in the waste hauled by DCC from Ashland and disposed of at the Site for the reasons set forth in their response to Interrogatory No. 78 and because they bore the Ashland label and were buried at the Site." Other than the discovery of buried drums and Ashland labels at the Site, please provide the factual basis for this statement, and especially whether Plaintiffs intend to rely on any testimony from DeRewal affiliated drivers or other personnel that support this contention.

Ashland also seeks clarification of the Plaintiffs' contentions regarding the contents of the "Ashland drums" found at Boarhead. Your May 7, 2007 letter referenced your e-mails dated 9/26/03 and 10/13/03. The 9/26/03 e-mail identified "analytical results for the 1st Ashland chemical drum and the Rohm and Haas drum." Attached is a copy of your e-mail and the Eco Test Laboratory results. As you will see, there were four separate samples taken. You attached the Eco Test Laboratory analysis designated as BF-2, WC-MA: 22:DM:02, identified as BF-18, which refers to the sample as a solid. Your e-mail of 10/13/03 refers to this as a liquid, hence, our confusion.

PHELAN, PETTIT & BIEDRZYCKI
Glenn M. Harris, Esquire
May 18, 2007
Page 3

Your first e-mail of 10/13/03 identified a second "Ashland drum" found in Magnetic Anomaly ("MA") 22. You forwarded the analytical results of this drum later on 10/13/03, a copy of which is attached. However, the analytical results were from a drum from MA 18. Your e-mail further confuses the matter by stating that no sample was taken of the foam in other drums because the contents were similar to the polyurethane foam in the "Ashland drum". We want to make sure what your contention is about the contents of the second "Ashland drum".

In any event, we do not see the basis for the contention that these specific drums contained solvent waste claimed to have been taken from the Great Meadows Plant by DeRewal drivers or anyone else and disposed of at the Boarhead Site. Please explain in detail the factual basis for Plaintiffs' contention that the contents of the drums bearing Ashland labels that were found at the Boarhead Site contained "solvent wastes."

We look forward to hearing from you.

Very truly yours,

Jeffrey L. Pettit

JLP/vic
Enclosure

cc:   Thomas Sabino, Esquire (w/out encl., via e-mail)
      Lynn Wright, Esquire (w/out encl., via e-mail)
      Melissa E. Flax, Esquire (w/out encl., via e-mail)
      Edward Fackenthal, Esquire (w/out encl., via e-mail)
      Seth v.d.H. Cooley, Esquire (w/out encl., via e-mail)

G:\DATA\1357-29\Ltrs\GMH-029.doc