# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AGERE SYSTEMS, INC., CYTEC INDUSTRIES, INC., FORD MOTOR COMPANY, SPS TECHNOLOGIES, LLC and TI GROUP AUTOMOTIVE SYSTEMS LLC, <br><br>         Plaintiffs, <br><br> v. <br><br> ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, et al., <br><br>         Defendants. | CIVIL ACTION <br><br> Case No. 02-cv-3830 <br><br> Judge LeGrome D. Davis |

## MEMORANDUM OF LAW IN SUPPORT OF AETC'S MOTION FOR AN ORDER DECLARING EQUITABLE ALLOCATION OF THE DIAZ CHEMICAL "ORPHAN SHARE"

**WOLFF & SAMSON PC**
Robert T. Carlton, Jr.
Two Penn Center, Suite 1310
Suite 1310
1500 John F. Kennedy Boulevard
Philadelphia, Pennsylvania 19102
(215) 567-2878
rcarlton@wolffsamson.com
Attorneys for Defendant
Advanced Environmental Technology Corp.

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ....................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ..................................................................................................... 3

    A.   Plaintiffs' Fourth Amended Complaint ............................................................ 3

    B.   The Allegations Against AETC and Diaz Chemical ........................................ 3

    C.   Diaz's Status as an "Orphan" ......................................................................... 4

    D.   EPA's Orphan Share Policy ............................................................................ 5

LEGAL ARGUMENT ........................................................................................................... 7

POINT I .................................................................................................................................. 7

THE DIAZ "ORPHAN SHARE" SHOULD BE EQUITABLY
ALLOCATED AMONG THE PLAINTIFFS AND ALL THE
DEFENDANTS IN THIS ACTION ....................................................................................... 7

I.A      Diaz's Share for Response Costs at the Boarhead Farms
         Site is an "Orphan Share" Under CERCLA .................................................. 7

I.B      "Orphan Share" Should be Allocated Equitably Among
         all Solvent PRPs .............................................................................................. 9

I.C      The Diaz "Orphan Share" Should be Equitably Allocated
         Among All PRPs ............................................................................................. 12

CONCLUSION ..................................................................................................................... 14

## TABLE OF AUTHORITIES

## FEDERAL CASES

**PAGE**

Action Manufacturing Co. v. Simon Wrecking Co.,
  428 F. Supp. 2d 288 (E.D. Pa. 2006) ...................................................................1, 7, 10

Browning-Ferris Ind. of Ill., Inc. v. Ter Maat.,
  13 F. Supp. 2d 756 (N.D. Ill. 1998), aff. in part,
  rev. in part, 195 F.3d 953 (7th Cir. 1999) ............................................................8, 9, 11

Centerior Service Co. v. Acme Scrap Iron & Metal Corp.,
  153 F.3d 344 (6th Cir. 1998) ...........................................................................................11

Charter Township of Octavo v. American Cyanamid,
  898 F. Supp. 506 (W.D.Mich. 1995) ..............................................................................11

Gould v. A&M Battery Tire Service,
  987 F. Supp. 353 (M.D.Pa. 1997) ...................................................................................13

SC Holdings, Inc. v. A.A.A. Realty Co.,
  935 F. Supp. 1354 (D.N.J. 1996) ...............................................................................10, 12

K.C. 1986 Limited Partnership v. Reade Manufacturing,
  472 F.3d 1009 (7th Cir. 2007) .........................................................................................13

Morrison Enterprises v. McShares, Inc.,
  302 F.3d 1127 (10th Cir. 2002) .......................................................................................11

Niagara Mohawk Power v. Con Rail Corp.,
  291 F. Supp. 2d 105 (N.D.N.Y. 2003)..............................................................................7

Pinal Creek Group v. Newmont Min. Corp.,
  118 F.3d 1298 (9th Cir. 1997) ....................................................................................11, 12

Sterns & Foster Bedding Co. v. Franklin Holding Co.,
  947 F. Supp. 790 (D.N.J. 1996) ...................................................................................7, 10

Town of New Windsor v. Tesa Tuck, Inc.,
  919 F. Supp. 662 (S.D.N.Y. 1996)...................................................................................11

United States v. City of Grand Rapids,
  166 F. Supp. 2d 1213 (W.D.Mich. 2000) ......................................................................12

United States v. Davis,
  31 F. Supp. 2d 45 (D.R.I. 1998) ................................................................................2

United States v. Kramer,
  953 F. Supp. 592 (D.N.J. 1997) ...............................................................7, 9, 10, 12

## STATE CASES

Caldwell Trucking PRP Group v. Spaulding Composites Company, Inc.,
  1996 WL 608490 (D.N.J. April 22, 1996)...............................................................11

United States v. Atlas Minerals and Chemicals, Inc.,
  1995 WL 510304 (E. D. Pa. 1995) .........................................................................7, 8

## PRELIMINARY STATEMENT

Defendant Advanced Environmental Technology Corporation ("AETC") moves for a declaration that the "orphan share" of Defendant Diaz Chemical Corporation ("Diaz") be equitably allocated among the Plaintiffs and non-settled Defendants in this case.

Diaz is a bankrupt entity that is unable to pay for any part of the Boarhead Farms Site cleanup. AETC was a waste broker for Diaz, and, based on that relationship, Plaintiffs seek to transfer the Diaz liability for Site cleanup to AETC, which is a legally unsupportable position. A mere broker-customer relationship does not justify the transfer of an assetless corporation's liability to an entity that has no legal responsibility for that corporation. Only if it is alleged that AETC is an **affiliate** of Diaz, _i.e._ a parent, subsidiary or successor-in-interest, is there a **possibility** that AETC could be held liable for the Diaz share (in which case there would be no Diaz "orphan share"). But AETC did not have any inter-corporate relationship with Diaz. Therefore, Plaintiffs cannot justify a liability transfer.

In this CERCLA contribution action, the Court will allocate response costs among all liable parties. Here, not only are the Defendants alleged to have polluted the Boarhead Farms Site, but the Plaintiffs are responsible parties as well. In such cases, Courts in the Third Circuit have concluded that it is equitable to divide the orphan share among all plaintiff and defendant potentially responsible parties ("PRPs"). See e.g., Action Mfg Co. v. Simon Wrecking Co., 428 F. Supp. 2d 288, 328-29 (E.D. Pa. 2006). In fact, to allocate the orphan share among all responsible parties is the only fair method of dealing with an orphan share. To do otherwise would either punish or reward a particular party for the insolvency of Diaz.

Accordingly, AETC seeks an order from this Court declaring[1] that Diaz's share of the cleanup costs at the Boarhead Farms Site be split equitably between the five Plaintiffs and all non-settled Defendants.

---

[1] The use of a declaratory judgment in CERCLA allocation cases is common. See e.g., United States v. Davis, 31 F. Supp.2d 45, 59 (D.R.I. 1998) (the apportionment of liability among PRPs presents a real and substantial controversy that satisfies the requirements of the Declaratory Judgment Act).

## STATEMENT OF FACTS

**A.**    **Plaintiffs' Fourth Amended Complaint**

This action was initially commenced by Plaintiff, Boarhead Farm Agreement Group ("BFAG"), by Complaint filed on June 18, 2002 seeking damages related to the clean up of the Boarhead Farms Superfund site in Bridgeton Township, Bucks County, Pennsylvania (the "Site").  BFAG consisted of Agere Systems, Inc., Cytec Industries, Inc., Ford Motor Company, SPS Technologies, LLC and TI Group Automotive Systems, LLC.  As this action progressed through mediation and discovery, several amended complaints were filed.  By Memorandum and Order, filed on July 20, 2005, this Court granted leave for the filing of a Fourth Amended Complaint.  The Fourth Amended Complaint substituted the individual members of BFAG as the Plaintiffs instead of BFAG.  (See Fourth Amended Complaint, attached as Exhibit 1 to the Declaration of Laurie J. Sands, Esq. submitted in support of AETC's Motion for an Order Declaring Equitable Allocation of the Diaz Chemical "Orphan Share" ("Sands Decl.")).

**B.**    **The Allegations Against AETC and Diaz Chemical**

In the Fourth Amended Complaint, Plaintiffs allege that AETC "arranged with DeRewal Chemical for the disposal of hazardous substances from Defendants Ashland Chemical Company ("Ashland") and Diaz Chemical Corporation ("Diaz"), which Hazardous Substances were disposed of at the Site." (See Sands Decl., Exh. 1 at ¶31). Specifically, Plaintiffs allege that DeRewal Chemical transported hazardous industrial wastes from the Holley, New York plant of Diaz that were deposited at the Boarhead Farms Site.  (See Sands Decl., Exh. 1 at ¶52-54).

**C.     Diaz's Status as an "Orphan"**

There is no dispute between Plaintiffs and AETC that Diaz Chemical is defunct and assetless.

In its Initial Interrogatories to the Plaintiffs, AETC asked if the Plaintiffs considered Diaz to be a viable entity with assets necessary to satisfy any judgment that might be entered against it in the above-captioned action.  (See Sands Decl., Exh. 2, Interrogatory no. 8).    In response, Plaintiffs advised that Diaz was defunct and without assets:

> By way of further answer, Plaintiff performed internet-based research through PACER to determine that Diaz filed for protection under Chapter 7 of the United States Bankruptcy Code and to ascertain the identity of the Chapter 7 Trustee.  Plaintiff then contacted the Chapter 7 Trustee, John Ring, who informed Plaintiff that the U.S. Environmental Protection Agency holds a $10,000,000 administrative claim over and above millions of dollars of unsecured claims against Diaz.  The Trustee indicated that there would be no distribution.  (See Sands Decl., Exh. 2, Interrogatory no. 8).

On June 29, 2006, Plaintiffs served the Defendants with the "Report of Raymond F. Dovell, CPA re Boarhead Farms Superfund Site Asset Searches for Manfred T. DeRewal and Certain Other Parties."  (See Sands Decl., Exh. 3).  In his report, Mr. Dovell concludes Diaz has no assets.  (See Sands Decl., Exh. 3 at pp. 8-10).

AETC served Plaintiffs Contention Interrogatories and Plaintiffs answered same on April 17, 2007.  (See Sands Decl., Exh. 4).  In response to AETC's Contention Interrogatory No. 1, Plaintiffs stated, in relevant part:  "Plaintiffs will ask the Court to allocate the 'Ashland/AETC' share jointly and severally to Ashland and AETC and the 'Diaz/AETC' share to AETC."  (See Sands Decl., Exh. 4 at p. 2).

In the 2004 mediation in the action, Plaintiffs also took the position that AETC was liable for the entire Diaz share. (See Sands Decl. at ¶ 8). Following the April 24, 2007 status conference with this Court, counsel for AETC and Plaintiffs conferred regarding AETC's Contention Interrogatories and agreed there was no dispute over the fact that Diaz was defunct and assetless but there was a legal dispute over who was liable for the Diaz share. (See Sands Decl. at ¶ 8).

**D.     EPA's Orphan Share Policy**

Under CERCLA, an "orphan share" are those cleanup costs attributable to insolvent or defunct responsible parties. The United States Environmental Protection Agency's ("EPA") Fact Sheet: Orphan Share Reform, dated June 4, 1996, states, in relevant part, that those costs should be shared by all solvent PRPs:

> Under CERCLA's joint and several liability system, at sites where there are parties who have no money to contribute to the cleanup or who are no longer in existence, viable potentially responsible parties (PRPs) are required to absorb the shares that may be attributable to such insolvent and defunct PRPs. (See Sands Decl., Exh. 5).

In January 2001, the EPA defined an "orphan share" to be "that share of responsibility for response costs specifically attributable to identified parties determined by the Agency to be: 1) potentially liable; 2) insolvent or defunct; and 3) unaffiliated with any other viable party potentially liable for response costs at the site." (See Sands Decl., Exh. 6 at § C.1).

The EPA has defined an affiliated party in the "orphan share" context as a corporate-related entity:

> An affiliated party can include a liable successor corporation, parent corporation, subsidiary corporation or an individual (e.g., an officer, director, shareholders, or employee). The work policy

provides that the estimated share for an insolvent or defunct party affiliated with another potentially liable and financially viable party cannot be an orphan at the site for purposes of applying the reform.  The general approach is that if the financially viable party (i.e. the affiliate) could be liable under a credible legal theory for the share of another party with 'no ability to pay', the party with 'no ability to pay' should not be considered an orphan.  (<u>See</u> Sands Decl., Exh. 5 at § C.3.(h)).

The EPA policy is explicit in that successor, parent and subsidiary corporations are considered "affiliates".  AETC is not a successor, parent or subsidiary corporation to Diaz, and, thus, the issue of whether there is a "credible legal theory" that AETC could be held responsible for the Diaz "orphan share", <u>e.g.</u> as a parent corporation, is not reached.

## LEGAL ARGUMENT

## POINT I

## THE DIAZ "ORPHAN SHARE" SHOULD BE EQUITABLY ALLOCATED AMONG THE PLAINTIFFS AND ALL THE DEFENDANTS IN THIS ACTION[2]

**I.A    Diaz's Share for Response Costs at the Boarhead Farms Site is an "Orphan Share" Under CERCLA**

Under CERCLA, "orphan shares" are response costs attributable to insolvent or defunct PRPs.  Accordingly, an "orphan share" refers to a portion of liability that cannot be paid because the responsible party is not subject to a judgment or otherwise not available to satisfy a judgment of cleanup costs  See e.g. United States v. Kramer, 953 F. Supp. 592, 595 (D.N.J. 1997) (holding CERCLA orphans are "parties that are defunct or otherwise unable to a pay a full share"); Sterns & Foster Bedding Co. v. Franklin Holding Co., 947 F. Supp. 790, 800 (D.N.J. 1996) (holding cleanup costs "attributable to absent or insolvent PRPs" are orphan shares);  United States v. Atlas Minerals and Chemicals, Inc., 1995 WL 510304, *75 (E. D. Pa. 1995) (holding "an 'orphan share' refers to a portion of liability for recoverable costs that would be allocated to a party that is impecunious, not subject to judgment , or otherwise not available to satisfy a judgment.").

The United States Environmental Protection Agency ("EPA"), the agency designated by Congress to oversee CERCLA, defines an "orphan share" as the liability attributable to a PRP who is defunct or insolvent and for **whom there is no "affiliate"**.  (See Sands Decl., Exh. 6 at § C.1).    An "affiliate" is listed by the EPA as a successor corporation, parent corporation,

---

[2]  This motion deals only with the "orphan share" issue and does not relate to the settled defendants.  See e.g. Action Mfg. Co. v. Simon Wrecking Co., 428 F. Supp.2d 288, 325 (E.D.Pa. 2006) (dealing with the allocation of the shares of settled defendants and the "orphan share" as separate, distinct issues);  Niagara Mohawk Power v. Con Rail Corp., 291 F. Supp.2d 105, 121 (N.D.N.Y. 2003) (only non-settling defendants will be held liable for orphan shares).

subsidiary corporation, or an officer, director, shareholder or employee of one of those corporations. (See Sands Decl., Exh. 6 at § C.3(h)). According to EPA, an affiliated company is a company that is legally responsible for the "orphan's" share of the costs at the Site, such as a successor corporation. If an affiliate exists, there is a viable entity to pay response costs, and, therefore, no "orphan share". (Id.) If there is no affiliate, an "orphan share" arises. This is consistent with the courts' interpretation that an "orphan share" comes about when responsible companies are insolvent, bankrupt or not subject to judgment.

Here, however, Plaintiffs are going outside the "affiliate" list of EPA and arguing that AETC's status as Diaz's waste broker makes it an "affiliate", and, therefore, liable for Diaz's entire share of response costs at the Site. There is no legal basis for this argument, nor do the facts of this case support such a position. AETC is not, and never was, an "affiliate" of Diaz. AETC simply had a contractual agreement with Diaz regarding its waste disposal; that relationship does not rise to the level of "affiliate". There was never any inter-corporate relationship between AETC and Diaz, and, consequently, no legal responsibility on the part of AETC for liabilities of Diaz.

The court's decision in Browning-Ferris Industries of Illinois, Inc. v. Ter Maat, 13 F. Supp. 2d (N.D. Ill. 1998), is instructive on this issue. The court allocated "orphan shares" of certain companies that transported waste to the Site equally among all PRPs at the Site. The court recognized that nothing in CERCLA prohibits the allocation of "orphan shares" to all liable parties. Id. at 773. Moreover, the court did not allocate a larger portion of the "orphan share" to the generators that used the defunct transporters based on some notion that the generator's business dealings with the transporting companies made them liable as "affiliates" of the defunct companies. Yet, this is exactly what the Plaintiffs are attempting to do in this

case.  Regardless of the Plaintiffs' arguments, AETC is not an affiliate of Diaz and not responsible for Diaz's share of response costs at the Boarhead Farms Site.

**I.B**     **"Orphan Shares" Should be Allocated Equitably Among all Solvent PRPs**

It is undisputed that a Federal Court, in the adjudication of equitable apportionment of liability under CERCLA, "enjoys broad discretion to consider and apply such equitable factors as it deems appropriate to achieve a just and fair allocation among the liable parties."  United States v. Kramer, 953 F. Supp. 592, 597 (D.N.J. 1997)  A just and fair allocation of the Diaz "orphan share" in the present litigation would be to divide it equitably among all five Plaintiffs and all non-settled Defendants.  See Browning-Ferris, 12 F. Supp. 2d at 773.  Indeed, the law in the Third Circuit supports allocating the "orphan share" among all viable PRPs in a CERCLA contribution action.

In United States v. Kramer, 953 F. Supp. 592 (D.N.J. 1997), the third-party defendants in a §113 contribution action moved for a ruling that, since their liability was several only, they could not be held liable for the "orphan share".  The court denied their motion, holding that the "orphan share" should be allocated among all viable PRPs:

> There is no reason in law or equity to rule out the notion that consideration may be given to equitable apportionment of the 'orphan share' among all responsible parties, including third-party defendants.  The equitable apportionment may include an orphan share in arriving at the appropriate liability of a severally liable party.  To do so does not convert such liability to 'joint and several' because the severally liable party will not be responsible for satisfying the judgment entered against any other party.  953 F. Supp. at 601.

The Kramer court began its analysis by noting its "broad discretion" to consider and apply all equitable factors in a CERCLA allocation.  953 F. Supp. at 597.  Since § 113 specifically allows a court to allocate response costs "among liable parties", this logically

means all liable parties, "without limitation to some subset of liable parties." 953 F. Supp. at 598. The <u>Kramer</u> court concluded "to hold that third-party defendants in a CERCLA case may never be held responsible for an orphan share would essentially engraft on to the CERCLA statute a restriction that finds no basis in the statutory language or legislative history." <u>Id</u>.

In <u>Action Mfg. Co. v. Simon Wrecking Co.</u>, 428 F. Supp.2d 288 (E.D.Pa. 2006), the court, citing to Kramer in addressing how to allocate the "orphan share", found again that the "orphan share" should be equitably divided among the parties:

> The Third Circuit has not addressed the issue of orphan share allocation in a CERCLA contribution action, but all the other federal courts of appeals to consider the issue have concluded or assumed that the orphan share should be allocated equitably among plaintiff and defendant PRPs. [cites omitted] I agree with these courts that the allocation of the orphan share is within my discretion…Therefore it is equitable to divide the orphan share between the CSDG and Simon Entities.  [428 F. Supp.2d at 328-329]

In <u>SC Holdings, Inc. v. A.A.A. Realty Co.</u>, 935 F. Supp. 1354 (D.N.J. 1996), the court refused to dismiss a complaint against third-party defendants where there existed the potential of an "orphan share" for a portion of the cleanup costs. The court stated that it did not know whether there would be an issue with "orphan shares"; however, if such an issue arose, the court recognized that all parties would be responsible for those shares, including the third-party defendants. 935 F. Supp. At 1372-1374.

The <u>SC Holdings</u> court refused to allow the third-party defendants to circumvent their liability for "orphan shares" based on the mere fact that they were not direct defendants in the action. "CERCLA should not be interpreted to yield a result which allocates costs for orphaned shares to a particular party based on its position in the litigation daisy-chain." 935 F. Supp. at 1373. <u>See also</u>, <u>Sterns & Foster Bedding Co. v. Franklin Holding Corp.</u>, 947 F. Supp. 790, 801

(D.N.J. 1996) (noting with approval that numerous courts have held §113 allows District Courts "to allocate any orphan shares among viable PRPs"); <u>Caldwell Trucking PRP Group v. Spaulding Composites Company, Inc.</u>, 1996 WL 608490, *3 n.2  (D.N.J. April 22, 1996) (the apportionment of orphan shares is "an equitable issue that is more relevant to the quantum of a defendant's liability than the fact of it.")

In addition, case law in other Circuits supports the position that orphan shares should be allocated among all viable PRPs.   <u>See</u>, <u>e.g.</u> <u>Morrison Enterprises v. McShares, Inc.</u>, 302 F.3d 1127, 1135 (10th Cir. 2002) (orphan shares "should be equitably divided among the plaintiff and the other defendant PRPs"); <u>Centerior Service Co. v. Acme Scrap Iron & Metal Corp.</u>, 153 F.3d 344, 354 (6th Cir. 1998) (a district court, under §113, may apportion the amount of the orphan shares among the parties); <u>Pinal Creek Group v. Newmont Min. Corp.</u>, 118 F.3d 1298, 1303 (9th Cir. 1997) ("Under §113(f)(1), the cost of orphan shares is distributed equitably among all PRPs." ); <u>Browning-Ferris Ind. of Ill., Inc. v. Ter Maat.</u>, 13 F. Supp. 2d 756, 773  (N.D. Ill. 1998), <u>aff. in part</u>, <u>rev. in part</u>, 195 F.3d 953 (7th Cir. 1999) (nothing in CERCLA prohibits allocating the orphan share to all responsible parties according to their proportional share); <u>Charter Township of Octavo v. American Cyanamid</u>, 898 F. Supp. 506, 509 (W.D.Mich. 1995) ("it appears much more equitable to apportion the orphan shares to all the PRPs…according to their relative equitable share."); <u>Town of New Windsor v. Tesa Tuck, Inc.</u>, 919 F. Supp. 662, 681 (S.D.N.Y. 1996) (CERCLA §113 allows district courts "to allocate any 'orphan share' among viable PRPs, with the result that each viable PRP's allocable share may include a portion of whatever 'orphan share" there are.").

Accordingly, it does not matter whether a PRP is a plaintiff or defendant, if an "orphan share" exists, it should be allocated among all viable PRPs involved in the case.

**I.C**     **The Diaz "Orphan Share" Should be Equitably Allocated Among All PRPs[3]**

It is uncontested that Diaz is insolvent and defunct, and, hence, unable to pay its equitable share of the cleanup costs for the Boarhead Farms Site.  It is also evident that, under the EPA's "orphan share" policy, AETC is not an "affiliated party" of Diaz since AETC is not a successor corporation, parent corporation or subsidiary corporation of Diaz.  (See Sands Decl., Exh. 6 at p. 15 § 3(h)).

Contrary to Plaintiffs' assertions, neither caselaw nor EPA guidance supports allocating the entire Diaz "orphan share" to AETC based solely on the fact that AETC was a "broker" of the Diaz waste.  See, e.g., SC Holdings, Inc. v. A.A.A. Realty Co., 935 F. Supp. 1354, 1373 (D.N.J. 1996) ("CERCLA should not be interpreted to yield a result which allocates costs for orphaned shares to a particular party based on its position in the litigation daisy-chain."); United States v. Kramer, 953 F. Supp. 592, 599 (D.N.J. 1997) (same).

Moreover, cases that have allocated the entire "orphan share" to a single party have all dealt with successor corporations -- affiliates -- and, thus, were consistent with case law and EPA's "orphan share" guidelines.[4]

The Seventh Circuit in K.C. 1986 Limited Partnership v. Reade Mfg., 472 F.3d 1009 (7th Cir. 2007), a CERCLA contribution action, noted that the District Court ruled that a successor corporation of a owner/operator of a contaminated site was liable for the orphan share of that owner/operator.  Id. at 1023, n.3.

---

[3]  The Plaintiffs, being PRPs themselves, should contribute to the "orphan share".  Pinal Creek Group v. Newmont Mining Corp., 118 F.3d 1298, 1303 (9th Cir. 1997) ("Immunizing PRPs who have directly paid for cleanup operations from the risk of sharing the cost associated with orphan shares would undermine the ability of courts to allocate costs between all PRPs.")

[4] The EPA "orphan share" policy is referenced in United States v. City of Grand Rapids, 166 F. Supp.2d 1213 (W.D.Mich. 2000):  "[A]t least twenty-three PRPs were insolvent or defunct, and therefore qualified as orphans under the EPA policy." Id. at 1224.  However, there was no discussion in the Grand Rapids case of the "orphan share" affiliate issue.

In <u>Gould v. A&M Battery Tire Service</u>, 987 F. Supp. 353 (M.D.Pa. 1997), the court found Gould, Inc., the corporate successor to the prior owner/operator of the subject battery breaking facility, liable for the entire orphan share: "Gould's share of costs is also increased by the orphan share of batteries contained at the site, in line with our previous ruling that it is liable for the orphan share." <u>Id</u>. at 372-373. It must be noted that no orphan share was assigned to the entities that "brokered" the disposal of batteries at the site. <u>Id</u>. at 368.

Thus, in both <u>K.C. 1986</u> and <u>Gould</u>, the "orphan share" was shifted to the subsequent successor owner/operator. Those rulings are consistent with the EPA's "orphan share" policy, that is, where there is a solvent corporate successor/parent/subsidiary that entity is liable for the share of its defunct affiliate.

Here, it is uncontested that AETC is neither a corporate parent, a corporate subsidiary nor a successor-in-interest to Diaz. In fact, AETC has no legal responsibility for Diaz's corporate liabilities. It follows indisputably then that AETC is not an "affiliate" of Diaz and cannot be held liable for the Diaz "orphan share". Moreover, courts have held that when an "orphan share" exists, it should be equitably allocated among all PRPs. Therefore, consistent with case law and the EPA guidance, Diaz's liability should be borne by all the Plaintiffs and all non-settled Defendants in this action.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant Advanced Environmental Technology Corporation respectfully requests that the "orphan share" of Defendant Diaz Chemical Corporation be equitably allocated among the Plaintiffs and non-settled Defendants in this action.

**WOLFF& SAMSON PC**
Attorneys for Defendant
Advanced Environmental Technology Corp.

By:    /s/ Robert T. Carlton, Jr._____
       ROBERT T. CARLTON, JR.

Dated:  July 12, 2007