# EXHIBIT D

Page 1

1          IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA
2            CIVIL ACTION No. 02-CV-3830(LDD)

3

AGERE SYSTEMS, INC., CYTEC      *
4  INDUSTRIES, INC., FORD
   MOTOR COMPANY, SPS            *
5  TECHNOLOGIES, LLC and
   TI GROUP AUTOMOTIVE           *
6  SYSTEMS, LLC,                           DEPOSITION OF:
                Plaintiffs,      *
7                                          KIRK W. BROWN
            vs.                  *
8
   ADVANCED ENVIRONMENTAL        *
9  TECHNOLOGY CORPORATION,
   et al.,                       *
10              Defendants.
   -------------------------------*
11

12          T R A N S C R I P T of the stenographic

13  notes of the proceedings in the above-entitled

14  matter, taken by and before DEBRA DeLOOF, a

15  Certified Shorthand Reporter and Notary Public of

16  the State of New Jersey, held at the offices of

17  Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart &

18  Olstein, P.C., 5 Becker Farm Road, Roseland, New

19  Jersey, on Friday, December 1, 2006, commencing

20  at 10:15 a.m.

21

22

23

24

25

Page 2

1    A P P E A R A N C E S:

2        BALLARD, SPAHR, ANDREWS & INGERSOLL, LLP
         BY: AMY TROJECKI, ESQ.
3        1735 Market Street
         Philadephia, Pennsylvania 08043
4        Attorneys for Plaintiffs

5        CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI,
         STEWART & OLSTEIN, P.C.
6        BY: MELISSA FLAX, ESQ.
         JOHN M. AGNELLO, ESQ.
7        5 Becker Farm Road
         Roseland, New Jersey 07068-1739
8        Attorneys for Defendant, Handy & Harman

9        WOLFF & SAMSON, PC
         BY: THOMAS W. SABINO, ESQ.
10       One Boland Drive
         West Orange, New Jersey 07052
11       Attorneys for Defendant, Advanced Technology

12       EDWARDS, ANGELL, PALMER & DODGE, LLP
         BY: LYNN WRIGHT, ESQ.
13       51 John F. Kennedy Parkway
         Short Hills, New Jersey 07078
14       Attorneys for Defendant, Carpenter Technology

15       PHELAN, PETTIT & BIEDRZYCKI, ESQS.
         BY: JEFFREY L. PETTIT, ESQ.
16       121 South Broad Street, Suite 1600
         Philadelphia, Pennsylvania 19107
17       Attorneys for Defendant, Ashland Chemical

18       DUANE MORRIS, LLP
         BY: SETH v.d.H. COOLEY, ESQ.
19       30 South 17th Street
         Philadelphia, Pennsyvania 19103-4196
20       Attorneys for Defendant, Flexible Crevits

21       DRINKER, BIDDLE & REATH, ESQS.
         BY: ANDREW P. FOSTER, ESQ.
22       18th and Cherry Streets
         Philadelphia, Pennsylvania 19103-6996
23       Attorneys for Thomas & Betts, and RSM

24
         ALSO PRESENT: Kalisha Crawford
25

1    drum?

2           A.       Drum, yes.

3           Q.       How do you know that they were even put

4    in drums?

5           A.       Mr. Curran's deposition.

6           Q.       How about the spent cleaning solvents,

7    do you know how they were disposed of?

8           A.       Again, they were put in barrels and

9    disposed of off site but it doesn't say other than

10   that they were pretty small quantities, there's no

11   record of where they were disposed of.

12          Q.       When you say they were disposed of

13   drums, disposed in drums is the basis for that

14   statement Curran's deposition testimony?

15          A.       Yes.  He says they would have been

16   drummed if they had not evaporated.

17          Q.       What is the industrial waste solution

18   that you refer to in paragraph 31G?

19          A.       Industrial waste solution is a waste

20   water that includes some traces of oil, grit, dirt and

21   other things that were generated during the periodic

22   shut down and clean up of the operation, so they went

23   systematically through the plant and cleaned their

24   draw machines, cleaned their grinding machines and

25   that type of thing, during shut down, so this was a

Page 101

1    waste, it was a sporadically generated waste that was

2    put in barrels, drums.

3         Q.    How do you know this?

4         A.    Again, Curran.

5         Q.    Other than Curran's deposition testimony

6    is there any other basis for your opinion that

7    industrial waste solution is washed water with oil and

8    grease, dirt and grime?

9         A.    No.    That's the basis and I've now found

10   Curran on page 16 and 17 said that waste conversion

11   systems handled their acids during the relevant

12   period.

13        Q.    Can you show me where you're referring

14   to?

15        A.    Page 12, the last paragraph, paragraph

16   35, bottom.

17        Q.    In paragraph 32 you list seven chemical

18   compounds that were not used at the Handy Harman

19   facility, how do you know that these compounds were

20   not used at Handy Harman?

21        A.    There's no, number one, testimony that

22   they were used and number two, knowing the processes

23   these are compounds that would not have been used

24   there.

25        Q.    When you say knowing the processes are

1        A.      The finished products is where you would

2    use paint or adhesives and the finished products were

3    the tubes themselves and there was no requirement from

4    the purchaser of paint or adhesives or anything of

5    that nature, you want a very clean tube, especially if

6    it's going to become a hypodermic needle, you don't

7    want paints or adhesives on them.

8        Q.      How do you know that paint waste, spent

9    resins or waste polymers were wastes found in drums

10   discovered as part of OU2?

11       A.      They're listed in the Brown and Caldwell

12   report.

13       Q.      Any other basis?

14       A.      No, that's the physical description of

15   the material they found in drums.

16       Q.      Is that the description of the material

17   found in all the drums removed in OU2?

18       A.      I don't believe it was all of them but a

19   good number of them were described as one of these

20   categories.

21       Q.      In paragraph 43 of your report you state

22   that the based on the description of the cleaning

23   process during the plant shut down the waste water

24   generated as the industrial waste solution was

25   non-hazardous.  What do you mean the description of

Page 108

1    the cleaning process during the shut down?

2         A.    Curran's description of the washed down

3    of the machines.  And it's my opinion that had that

4    been tested it would not have been classified as

5    hazardous waste.  So it would have been a

6    non-hazardous waste.

7         Q.    Why is that?

8         A.    Because it was a water base cleaning

9    process.  They were cleaning grit and grime and

10   particles off the machinery and there would have been

11   nothing -- while there would have been metals in the

12   waste, traces of oil, that type of thing, nothing

13   would have been of high enough concentration to

14   classify it as a hazardous waste.

15        Q.    Again, the basis for your description or

16   what you believe is a industrial waste solution is

17   Curran's deposition testimony; is that correct?

18        A.    Yes, his testimony on how that was

19   generated.

20        Q.    Is there any other basis as to what's in

21   the industrial waste solution?

22        A.    That and my then knowledge of the

23   chemistry of what was going on at the machines that

24   were being cleaned.

25        Q.    In paragraph 42 of your report in the

1        Q.     If you look at B-6 it references

2    industrial waste solution, is it your understanding

3    that this industrial waste solution is referenced in

4    B-6 is the industrial waste solution that you are

5    speaking of in paragraph 42 of your report?

6              MS. FLAX:  Objection to the form.

7        A.     Yes I believe it is.

8        Q.     What's the basis of your opinion?

9        A.     Well, if you look at the other waste

10   generated at this facility there is nothing else

11   that's generated in a quantity that you would get this

12   number of barrels.  That wasn't handled in some other

13   method.  We know the acid waste was taken out by

14   somebody else, the polisher waste was, the used oil

15   and lubricants were taken off.  The ketone wastes were

16   very small.  The polisher wastes were sent off

17   somewhere else.  So this is the only one that would

18   possibly be accumulated in such volumes.

19       Q.     Any other reason why you believe the

20   industrial waste solution referenced in B-6 is the

21   industrial waste solution that you speak about in

22   paragraph 42 of your report?

23       A.     Well, the bottom sledges from the

24   trichlorethylene degreaser would have been solids so

25   you wouldn't call those solutions, and that kind of

1    closes the loop.  There's nothing else that would fit

2    the description but industrial waste solution that's

3    cited by Curran and the e-mail we just looked at by

4    Coates.

5         Q.    Other than the sort of process of

6    elimination system that you're working with to

7    determine that the industrial waste solution in B-6 is

8    the industrial waste solution that you're speaking of

9    in paragraph 42, are there any other reasons that you

10   believe that the industrial waste solution is what

11   you're referring to in paragraph 42?

12              MS. FLAX:  Object to the form.

13        Q.    Do you understand the question?

14        A.    Well, as I said, the other wastes are

15   known to have been taken out by other providers and

16   then secondly you would not have put the waste acid in

17   drums of this nature to haul off.  So that's certainly

18   not going to be waste acid in these drums.

19        Q.    How do you know the polisher waste and

20   the bottom sludges and the other wastes other than the

21   spent acids were taken to what you described as other

22   haulers?

23              MS. FLAX:  Object to the form.

24        A.    We have a reference to who hauled off

25   the polisher waste.

Page 128

1          Q.      In the 1990's?

2          A.      In the 1990's, I'm well aware of dumping

3    things down sewers, I've even dumped some down myself

4    in the 70's that I shouldn't have now that I know

5    better.  I mean, the common thing even at the

6    chemistry lab at the University in my own laboratory

7    if you had chemicals you wanted to get rid of them you

8    dumped them into the sewer, we no longer do that.

9          Q.      Other than the reasons that you've

10   already stated is there any other basis for your

11   opinion that you believe that the standard practice of

12   disposal companies would have been to dump waste in

13   sewers?

14         A.      That's pretty much the basis of it.

15         Q.      Going back to your opinion in paragraph

16   43 when you say the industrial waste solution was not

17   hazardous, do you mean that, that that type of

18   solution wouldn't be listed as a hazardous waste

19   today?

20         A.      It's my opinion that that solution would

21   not meet the criteria for a hazardous waste.  It's not

22   listed, it's not corrosive, it's not loaded with

23   metals, it's not flammable, and if you go down the

24   criteria I believe it would not have met those.  It

25   would not have been classified as a hazardous waste.

Page 129

1          Q.     The industrial waste solution would

2     contain metals, correct?

3          A.     Yes.

4          Q.     Do you have any idea of what percentage?

5          A.     No.   There's no way to tell what

6     percentage but the metals would have been in the

7     elemental form and not in solution.   So elemental

8     metals are not going to fail the toxic characteristic

9     procedure.

10         Q.     So how is it that you know that the

11    metals in this industrial waste solution wouldn't have

12    been to the level to characterize it as a hazardous

13    material?

14               MS. FLAX:   Object to the form.

15         A.     Their solubility is so low from metallic

16    pieces that you wouldn't get high enough ionic

17    concentration to fail a toxic characteristic leachate

18    procedure.

19         Q.     Could there have been pieces of metal in

20    the solution?

21         A.     Yes.

22         Q.     And the pieces of metal in the solution

23    would not have rendered it hazardous?

24         A.     Right, because it would not have ionized

25    enough to cause the concentration in the water in the

Page 130

1    solvent to be high enough.

2         Q.    How about the oil and grease in the

3    industrial waste solution, why wouldn't the presence

4    of oil and grease in the solution make it a hazardous

5    material?

6         A.    Senator Lloyd Benson got the oil and

7    grease exclusion.

8         Q.    Because of the petroleum --

9         A.    Yes.

10        Q.    Would the presence of oil and grease

11   characterize something as a hazardous waste under

12   RCRA?

13        A.    No.

14        Q.    Is oil a hazardous waste under RCRA?

15        A.    No.

16        Q.    Is used oil a hazardous waste under

17   RCRA?

18        A.    Some used oils would be but general

19   petroleum wouldn't be.

20        Q.    Do you know what the composition of the

21   oil in -- the lubricating oil in the Handy Harman

22   waste?

23        A.    They used 5W30 and 10W30 the common

24   motor oils.

25        Q.    Would that be considered a hazardous

Page 131

1    waste?

2          A.    No.

3          Q.    Other than oil, grease and metals, wash

4    water and possibly some soap agent, were there any

5    other compounds that you believe would be found in the

6    industrial waste solution that you describe in

7    paragraph 42 of your expert report?

8          A.    It's possible that the other cleaning

9    compounds that they, chemicals that they used acetone

10   or methyl ethyl ketone could show up in low

11   concentrations but they'd be very low.

12         Q.    It's your testimony that there would be

13   no TCE, I believe you testified earlier that TCE would

14   not come in contact with any machines that the

15   industrial waste solution would have cleaned?

16               MS. FLAX:  Objection to the form.

17         Q.    Is that correct?

18         A.    I'm not aware of any mechanism by which

19   TCE would have come in contact with them.

20         Q.    How is it that the MEK and acetone would

21   have come in -- could have been in the industrial

22   waste solution but TCE couldn't have been?

23         A.    They could have been used to wipe down

24   the machinery whereas TCE was not used for that

25   purpose.

Page 132

1    Q.    How do you know TCE was not used for

2  that purpose?

3    A.    There's no reference to it being used

4  for that purpose.

5    Q.    So is it your belief if you refer to

6  Curran's deposition testimony page 54 line 19 when he

7  speaks about industrial waste solution that it may

8  have contained traces of some solvents, which solvents

9  were they?

10    A.    Well, he says -- what line are you on?

11    Q.    19 and 20.

12    A.    The only thing he says there is

13  something like acetone.  And the other thing that's

14  like acetone is methyl ethyl ketone which we already

15  covered.

16    Q.    Would the presence of acetone and

17  possibly methyl ethyl ketone render the industrial

18  waste solution hazardous?

19        MS. FLAX:  Objection to the form.

20    A.    Again, I don't believe they would have

21  been in high enough concentrations, they evaporate

22  quickly, partition into the air and would have been if

23  present in very low concentrations.

24    Q.    If present in the industrial waste

25  solution?

Page 133

1        A.      Right.

2        Q.      Is that the only reason why you believe

3    the industrial waste solution with possible trace

4    amounts of these solvents would not be considered

5    hazardous?

6              MS. FLAX:  Objection to form.

7        A.      That and the other things that we

8    discussed earlier about the metals.

9        Q.      If you look at page 56 of Curran's

10   deposition testimony I'm sorry, page 55, line 2 to 4,

11   he talks about a sludge from machines, possibly being

12   in the industrial waste solution, can you tell me

13   about that sludge?

14        A.      Well, that would have been a sludge

15   which would have been the dirt accumulated at the

16   machine, the dirt accumulates from a couple of

17   activities.  Number one, when you're putting metal

18   through a di you do get some abrasion.  So you do get

19   some metal abraded off the material you're pulling

20   through.  This is a factory, so there is dust and dirt

21   around.  So between annulling and pulling, annealing

22   and pulling the wire through the di dirt would

23   accumulate on that material that would slough off at

24   the machine.  There is some oil at the machine.  That

25   would cause it to accumulate there and it just builds

Page 134

1   up around the mechanism after a while and that's what

2   they were doing once a year cleaning that off.

3        Q.    Could that sludge have contained TCE?

4        A.    Well, that sludge is then what goes into

5   the waste water cleaning, industrial waste cleaning

6   solution, it's going to be in the bottom of the

7   barrel.  So essentially we covered that already.  You

8   don't see a mechanism to get the TCE into that sludge.

9        Q.    When Curran is speaking about sludge

10  from the machine, what machines is he referring to?

11       A.    The drawing machines.

12       Q.    And do you believe that the sludge from

13  the drawing machines when washed down with the

14  industrial waste solution, do you believe that the

15  industrial waste solution would have contained some of

16  that sludge?

17            MS. FLAX:  Object to the form.

18       A.    Yes, they're washing it down with water

19  perhaps some soap in it and then the sludge would have

20  gone into the industrial waste solution.

21       Q.    What does that sludge consist of?

22            MS. FLAX:  Object to the form.  Asked

23  and answered.

24       A.    Yeah, I can repeat what I said before.

25       Q.    Please.

1          A.      It's going to include the water, the

2     soap solution, and any ketones being acetone or methyl

3     ethyl ketone that was used in the wipe down, it's

4     going to include some dirt and grime, its going to

5     include some flakes of metal, and it's going to

6     include some of the oil and grease that was at the

7     drawing machine.

8          Q.      But it would not include any TCE?

9          A.      I've seen no evidence it would include

10    TCE.

11               MS. TROJECKI:   I want to have marked

12    as B-7, an interview of Jay Crawford conducted by

13    Richard Grabill on February 23rd, 1993.

14               (Plaintiff's Exhibit No. Brown-7,

15               Interview of Jay Crawford, was marked for

16               identification at this time.)

17         Q.      Have you ever seen this document before?

18         A.      Yes.

19         Q.      Did you review this in preparing your

20    expert report?

21         A.      Yes.

22         Q.      Do you believe this document has any

23    significance?

24         A.      Well, it's one point of reference.

25         Q.      Can you tell me what it refers to?

Page 159

1                    C E R T I F I C A T E

2

3        I, DEBRA DeLOOF, a Certified Shorthand

4   Reporter and Notary Public of the State of New

5   Jersey, certify that the foregoing is a true

6   and accurate transcript of the stenographic

7   notes of the deposition of said witness who was

8   first duly sworn by me, on the date and place

9   hereinbefore set forth.

10       I FURTHER CERTIFY that I am neither

11  attorney, nor counsel for, nor related to or

12  employed by, and of the parties to the action

13  in which this deposition was taken, and further

14  that I am not a relative or employee of any

15  attorney or counsel in this case, nor am I

16  financially interested in this case.

17

18

19        _Debra DeLoof_____

20              DEBRA DeLOOF, C.S.R.

21              LICENSE NO. XI100228900

22

23

24

25

**EXHIBIT E**



INVOICE

**D. Rosol Chemical Company**

P. O. BOX 1, REVERE
BUCKS COUNTY, PENNSYLVANIA 18953 • PHONE AREA 215 847-5146

ORIGINAL
(Red)

EXHIBIT
Curran-3
12-2-04

SOLD TO: Handy & Harman Tube Company
Whitehall Road & Township Line
Morristown, Pennsylvania

SHIPPED TO

INVOICE NO. 571

| DATE ENTERED | DATE SHIPPED | SHIPPED VIA | YOUR ORDER NO. | TERMS |
| --- | --- | --- | --- | --- |
| 2/1/73 | 2/5/73 | Our Truck | 23030 | 1/10 N30 N. |

| QUANTITY | DESCRIPTION | PRICE | AMOUNT |
| --- | --- | --- | --- |
| 1 | 250 gallon oil tank | | $ 25 00 |
| 20 | 55 gallon drums Industrial Waste Solution | $6 00/ea | $156 00 |
| 36 | 30 gallon drums Industrial Waste Solution | $5 00/ea | $180 00 |
| 25 | Empty 55 gallon drums delivered | $ 75/ea | $ 18 75 |
| | | | $379 75 |
| | B/L# 434 | | |

# EXHIBIT F

Page 1

1                  UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA
2
3    _____    CIVIL ACTION NO.
                                 02-CV-3830
4
     Boarhead Farm Agreement Group,
5
                 Plaintiff,          Oral Deposition of
6
             vs.                        Larry Rees
7
     Advanced Environmental
8    Technology Corporation;
     Ashland Chemical Company;
9    Boarhead Corporation;
     Carpenter Technology
10   Corporation; Crown Metro,
     Inc.; Diaz Chemical Corporation;
11   Emhart Industries, Inc.; Globe
     Disposal Company, Inc.;
12   Globe-Wastech, Inc.; Handy &
     Harman Tube Company, Inc.;
13   Knoll, Inc.; Merit Metal
     Products Corporation; Novartis
14   Corporation; NRM Investment
     Company; Plymouth Tube Company;
15   Quikline Design and Manufacturing
     Company; Rahns Specialty Metals,
16   Inc.; Rohm & Haas Company; Simon
     Wrecking Company, Inc.; Techalloy
17   Company, Inc.; Thomas & Betts
     Corporation; Unisys Corporation;
18   United States of America
     Department of Navy,
19
                 Defendants.
20   _____
21
22
             Certified Shorthand Reporting Services
23                   arranged through
               Mastroianni & Formaroli, Inc.
24               709 White Horse Pike
               Audubon, New Jersey 08106
25                   (856) 546-1100

Page 2

1      * * * * *
       Thursday, November 18, 2004
2      * * * * *
3      Transcript in the above matter taken at
the offices of Ballard, Spahr, Andrews & Ingersoll,
4  Esquires, 1735 Market Street, Philadelphia,
Pennsylvania, commencing at 9:30 a.m.
5
       A P P E A R A N C E S :
6
       BALLARD, SPAHR, ANDREWS & INGERSOLL, ESQUIRES
7      BY:  MARC E. DAVIES, ESQUIRE
          - and -
8         ANNE HEIDEL, ESQUIRE
       1735 MARKET STREET
9      51ST FLOOR
       PHILADELPHIA, PENNSYLVANIA 19103
10     (215) 864-8248
       Attorneys for the Plaintiff,
11        BFAG
12     HINMAN, HOWARD & KATTELL, ESQUIRES
       BY:  RALPH K. KESSLER, ESQUIRE
13     106 CORPORATE PARK DRIVE
       SUITE 317
14     WHITE PLAINS, NEW YORK 10604
       (914) 694-4102
15     Attorneys for the Plaintiff,
       TI Automotive
16
17     CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI,
          STEWART & OLSTEIN, ESQUIRES
18     BY:  JOHN M. AGNELLO, ESQUIRE
       5 BECKER FARM ROAD
19     ROSELAND, NEW JERSEY 07068
       (973) 994-1700
20     Attorneys for the Defendant,
       Handy & Harman Tube Company
21
22
23
24
25

Page 3

1      W I T N E S S   I N D E X
2      Examination of Mr. Rees by Ms. Heidel:
          Page 5
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 4

1          E X H I B I T S
2      EXHIBITS ATTACHED TO THE END OF THIS TRANSCRIPT
3          EXHIBIT INDEX
4      Appears at the conclusion of the transcript
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 5

1      (LARRY REES, having been duly sworn, was examined and
2  testified as follows:)
3      (EXAMINATION OF MR. REES BY MS. HEIDEL:)
4      Q.    Hi, Mr. Rees.  Thanks for coming in.
5            You understand today your testimony is
6  sworn testimony just like you would give in court.
7            Try to make your responses verbal, so
8  don't nod your head or anything because the court
9  reporter has to write down what you say.
10           And try to just have one person talk at
11  a time.  If you need to interrupt, just take a moment
12  so that she doesn't have to worry about figuring out
13  who's talking at what point.
14           If you need me to repeat the question
15  or clarify, feel free.  Or if your lawyer needs to
16  jump in, he'll do that.
17           I have to ask you have you taken any
18  medications in the last twenty-four hours that might
19  have effected your ability to testify?
20     A.    No.
21     Q.    Okay.
22           Okay.  Can you state your name for the
23  record and spell your last name?
24     A.    Larry Rees, R-E-E-S, as in Sam.
25     Q.    Okay.

Larry Rees                                            November 18, 2004

Page 22

1    aware, did they arrange for the pick up of these
2    waste drums?
3        A.    Don't know, that I don't know.
4        Q.    Okay.
5              Are you aware of any companies that
6    Handy & Harman uses to pick up waste?
7        A.    When?
8        Q.    Let's start from '75 to '84.
9        A.    No.
10       Q.    Okay.
11             And then from '84 to the present are
12   you aware of any vendors or companies that Handy &
13   Harman uses to pick up waste?
14       A.    The only one I know of that they used
15   was Safety Clean, and they're not even using them
16   now, I don't know when they used them, they used them
17   in the last five, ten years, but exactly when, I
18   don't know.
19       Q.    Okay.
20             During the time that you worked there
21   was it ever your job to pick a waste hauler, to
22   select a company?
23       A.    No.
24       Q.    Do you have any idea how much Handy &
25   Harman paid for waste hauling?

Page 23

1        A.    No idea.
2        Q.    Okay.
3              So from, let's see, '75 until '84 are
4    you aware of any records that Handy & Harman kept --
5        A.    No --
6        Q.    -- for waste --
7        A.    -- I wouldn't --
8              MR. AGNELLO:  You got to wait until she
9    completes her question.
10             THE WITNESS:  I'm sorry.
11   BY MS. HEIDEL:
12       Q.    -- for keeping track of how much waste
13   is produced?
14       A.    No, I wouldn't have anything to do with
15   that.
16       Q.    So you didn't -- did you ever collect
17   records for how many barrels of the waste lubricants
18   were produced from '79 to '84?
19       A.    No.
20       Q.    Are you familiar with a term industrial
21   waste solution?
22             Have you ever heard that term when you
23   were working at Handy & Harman?
24       A.    No.
25       Q.    Let me show you a document --

Page 24

1              MS. HEIDEL:  Can you mark it LR-2?
2              MR. AGNELLO:  Are you going to do this
3    one LR-2?
4              MS. HEIDEL:  Do this LR-2 and LR-3.
5              MR. AGNELLO:  Only because I wrote it
6    down already.
7              (Exhibit LR-2, Diagram, is marked for
8    identification.)
9              (Exhibit LR-3, Invoice, is marked for
10   identification.)
11   BY MS. HEIDEL:
12       Q.    Just ask if you are familiar at all with
13   that document?
14       A.    I've never seen it.
15       Q.    Okay.
16             Is this company's name De Rewal
17   Chemical, is that at all familiar to you, that name?
18       A.    Now?
19       Q.    Now, yes.
20       A.    No -- well, I've heard it in the course
21   of answering questions, but I've never heard of --
22       Q.    Okay.
23             Let's go back -- bear with me, I know
24   it was a long time ago, when you first started
25   in '75 can you tell me the names of people who were

Page 25

1    involved in the production process in your group in
2    the small tubes department?
3        A.    Doug Willauer.
4        Q.    Can you spell that last name?
5        A.    W-I-L-L-A-U-E-R.
6        Q.    Okay.
7        A.    Let's see, Charlie Friday, they're both
8    deceased, Andy Giovinco, G-I-O-V-I-N-C-O, Abe Kassel,
9    that's about the only ones I remember.
10       Q.    Okay.
11             What about when you were foreman
12   from '79 to '84, can you tell me the names of people
13   who were you were supervising?
14       A.    Those guys, Fred Bleuit -- I don't know,
15   it's a been a lot of years, I don't remember.
16       Q.    Okay.
17             Was there any particular person that
18   you were supervising who was responsible for handling
19   the waste that was generated?
20       A.    What time period?
21       Q.    Sorry, from '79 to '84.
22       A.    No.
23       Q.    You said in the production process --
24   let's look at this again.
25             You mentioned part of the process was

7 (Pages 22 to 25)

1                    C E R T I F I C A T E

2

3

4

5          I, Christi A. Argenbright, a Notary Public and

6     Certified Shorthand Reporter of The State of New

7     Jersey do hereby certify that the foregoing is a true

8     and accurate transcript of the testimony as taken

9     stenographically by and before me at the time, place

10    and on the date hereinbefore set forth.

11         I do further certify that I am neither a

12    relative nor employee nor attorney nor counsel of any

13    of the parties to this action, and that I am neither

14    a relative nor employee of such attorney or counsel

15    and that I am not financially interested in this

16    action.

17

18    _____
      Christi A. Argenbright, C.S.R.
19    Notary Public, State of New Jersey
      My commission expires October 16, 2005
20    Certificate No. XI01789

21

22

23

24

25

**EXHIBIT G**

Mary A. Kollmar

November 18, 2004

Page 1

1              UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA
2
3    _____  CIVIL ACTION NO.
                                      02-CV-3830
4
     Boarhead Farm Agreement Group,
5
              Plaintiff,          Oral Deposition of
6
          vs.                     Mary A. Kollmar
7
     Advanced Environmental
8    Technology Corporation;
     Ashland Chemical Company;
9    Boarhead Corporation;
     Carpenter Technology
10   Corporation; Crown Metro,
     Inc.; Diaz Chemical Corporation;
11   Emhart Industries, Inc.; Globe
     Disposal Company, Inc.;
12   Globe-Wastech, Inc.; Handy &
     Harman Tube Company, Inc.;
13   Knoll, Inc.; Merit Metal
     Products Corporation; Novartis
14   Corporation; NRM Investment
     Company; Plymouth Tube Company;
15   Quikline Design and Manufacturing
     Company; Rahns Specialty Metals,
16   Inc.; Rohm & Haas Company; Simon
     Wrecking Company, Inc.; Techalloy
17   Company, Inc.; Thomas & Betts
     Corporation; Unisys Corporation;
18   United States of America
     Department of Navy,
19
              Defendants.
20   _____
21
22
        Certified Shorthand Reporting Services
23                 arranged through
          Mastroianni & Formaroli, Inc.
24            709 White Horse Pike
           Audubon, New Jersey 08106
25               (856) 546-1100

Mary A. Kollmar

November 18, 2004

Page 2

```
 1            * * * * *
            Thursday, November 18, 2004
 2            * * * * *
 3       Transcript in the above matter taken at
      the offices of Ballard, Spahr, Andrews & Ingersoll,
 4    Esquires, 1735 Market Street, Philadelphia,
      Pennsylvania, commencing at 9:30 a.m.
 5
      A P P E A R A N C E S :
 6
         BALLARD, SPAHR, ANDREWS & INGERSOLL, ESQUIRES
 7       BY:  MARC E. DAVIES, ESQUIRE
              - and -
 8          ANNE HEIDEL, ESQUIRE
         1735 MARKET STREET
 9       51ST FLOOR
         PHILADELPHIA, PENNSYLVANIA 19103
10       (215) 864-8248
         Attorneys for the Plaintiff,
11          BFAG
12       HINMAN, HOWARD & KATTELL, ESQUIRES
         BY:  RALPH K. KESSLER, ESQUIRE
13       106 CORPORATE PARK DRIVE
         SUITE 317
14       WHITE PLAINS, NEW YORK 10604
         (914) 694-4102
15       Attorneys for the Plaintiff,
            TI Automotive
16
17       CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI,
            STEWART & OLSTEIN, ESQUIRES
18       BY:  JOHN M. AGNELLO, ESQUIRE
         5 BECKER FARM ROAD
19       ROSELAND, NEW JERSEY 07068
         (973) 994-1700
20       Attorneys for the Defendant,
            Handy & Harman Tube Company
21
22
23
24
25
```

Page 4

```
 1              E X H I B I T S
 2    EXHIBITS ATTACHED TO THE END OF THIS TRANSCRIPT
 3              EXHIBIT INDEX
 4       Appears at the conclusion of the transcript
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
 1       W I T N E S S   I N D E X
 2    Examination of Ms. Kollmar by Mr. Davies:
         Page 5
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 5

```
 1    (MARY A. KOLLMAR, having been duly sworn, was
 2    examined and testified as follows:)
 3    (EXAMINATION OF MS. KOLLMAR BY MR. DAVIES:)
 4       Q.   Okay.
 5            Ms. Kollmar, could you state your name
 6    for the record, state and spell your name?
 7       A.   Mary A. Kollmar, last name is spelled
 8    K-O-L-L-M-A-R.
 9       Q.   Okay.
10            Have you ever been deposed before?
11       A.   No.
12       Q.   All right.
13            Well, I'll just briefly go over the
14    outline of sort of how we do it, and if you ever have
15    any questions for what I've said or later, please,
16    just ask.
17            We have a reporter here, but it's a
18    pretty informal thing, it's just like talking.
19            So, first, your testimony today is
20    sworn testimony, so your answers are under oath and
21    carry the same weight just like if you were in court.
22            Please make sure that all of your
23    responses are verbal.  The court reporter can't take
24    down a head nod or if you say uh-huh or something
25    like that, it's easier if you can give verbal
```

2 (Pages 2 to 5)

Mary A. Kollmar                                                              November 18, 2004

Page 34

1  that was a term used?
2     A.   No.
3     Q.   Okay.
4          MR. DAVIES: I think I'm going to mark
5  that as MK-2.
6          (Exhibit MK-2, Invoice, is marked for
7  identification.)
8  BY MR. DAVIES:
9     Q.   You're being handed a document which
10 we've marked MK-2, just take a look at it for a
11 moment, it appears to be an invoice from February 5,
12 1973, actually, it says sold to Handy & Harman Tube
13 Company.
14         Are you familiar with this document?
15    A.   Only because Mr. Agnello showed me this
16 document, other than that I have no familiarity with
17 it.
18    Q.   Okay.
19         Could you describe to me generally were
20 you involved with invoices at all when you started at
21 the company?
22    A.   No.
23    Q.   Okay.
24         Do you recall if an invoice came in
25 where it would go from those offices, who would take

Page 35

1  care of them?
2     A.   This office right next door to me.
3     Q.   Okay.
4          Who was in that office? That's blank
5  still.
6     A.   I honestly don't recall her name. She
7  was only there for probably -- well, not even a year.
8  I started in October and I believe she left in
9  January. I don't remember her name.
10    Q.   Okay.
11         Well, who was the next person that was
12 there?
13    A.   Could possibly have been Marty Miller,
14 but I don't know if -- I don't remember what year she
15 started. There could have been someone else after --
16 whoever this person was when I came.
17    Q.   Well, let's just make it for anywhere in
18 the 1970's, do you recall anyone else that worked --
19    A.   Marty Miller, Tina Sampson.
20    Q.   And what was their job?
21         What did they do?
22    A.   Marty Miller was the accounts payable,
23 Tina was a -- I think she initially was a part-time
24 employee, then she became full-time, and eventually
25 took over accounts payable.

Page 36

1     Q.   Is she still with the company?
2     A.   No.
3     Q.   Do you recall when she left?
4     A.   I would speculate '70's.
5     Q.   Okay.
6          Let's see -- just give me one second.
7          Are you familiar with the term RCRA or
8  Resource Conservation Recovery Act?
9     A.   I've heard the term.
10    Q.   Do you remember -- I think it came into
11 place around 1977, give or take, just to give you a
12 time frame.
13         Do you recall whether Handy & Harman
14 had to create any records or do anything related to
15 RCRA?
16    A.   I would suspect that because of that we
17 made out specific manifests when waste was taken out
18 of the building.
19    Q.   Okay.
20         Do you know whether those manifests
21 were kept -- are kept still?
22    A.   Are kept, in the engineering department.
23    Q.   And do you know who -- let's go back
24 again towards the beginning -- well, towards '77 or
25 so, do you know who was in the engineering department

Page 37

1  in the late '70's?
2     A.   Bob Zimmerman, Jack Schurr.
3     Q.   How do you spell that, do you know?
4     A.   S-C-H-U-R-R, I believe.
5     Q.   Okay.
6          Do you recall whether they would have
7  been the ones that prepared these waste manifests?
8  (Objection) MR. AGNELLO: Objection to the form.
9          You can answer.
10 BY MR. DAVIES:
11    Q.   You can answer.
12         MR. AGNELLO: Yeah, you can answer.
13         THE WITNESS: Okay.
14         Quite possibly it was Bob Zimmerman's
15 secretary, Joan Stinson.
16 BY MR. DAVIES:
17    Q.   Joan --
18    A.   Stinson.
19    Q.   Do you know does she still work at
20 Handy & Harman?
21    A.   No.
22    Q.   Do you remember when she left?
23    A.   Early -- or late '90's.
24    Q.   Okay.
25         I was going to ask you also about

10 (Pages 34 to 37)

```
1                      C E R T I F I C A T E
2
3
4
5          I, Christi A. Argenbright, a Notary Public and
6     Certified Shorthand Reporter of The State of New
7     Jersey do hereby certify that the foregoing is a true
8     and accurate transcript of the testimony as taken
9     stenographically by and before me at the time, place
10    and on the date hereinbefore set forth.
11         I do further certify that I am neither a
12    relative nor employee nor attorney nor counsel of any
13    of the parties to this action, and that I am neither
14    a relative nor employee of such attorney or counsel
15    and that I am not financially interested in this
16    action.
17
18    _____
      Christi A. Argenbright, C.S.R.
19    Notary Public, State of New Jersey
      My commission expires October 16, 2005
20    Certificate No. XI01789
21
22
23
24
25
```

**EXHIBIT H**

1                    UNITED STATES DISTRICT COURT                    187

2           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

3

4    BOARHEAD FARM AGREEMENT              CIVIL ACTION NO.
     GROUP,                              02-CV-3830

5              Plaintiff,               Judge Legrome D. Davis
                                        Oral Deposition of
6         vs.

     ADVANCED ENVIRONMENTAL TECHNOLOGY   MANFRED T. DE REWAL, SR.
7    CORPORATION; ASHLAND CHEMICAL
     COMPANY; BOARHEAD CORPORATION;
8    CARPENTER TECHNOLOGY CORPORATION;
     CROWN METRO, INC.; DIAZ CHEMICAL
9    CORPORATION; EMHART INDUSTRIES,
     INC.; ETCHED CIRCUITS, INC.; FCG,
10   INC.; GLOBE DISPOSAL COMPANY, INC.;
     GLOBE-WASTECH, INC.; HANDY & HARMAN
11   TUBE COMPANY, INC.; KNOLL, INC.;
     MERIT METAL PRODUCTS CORPORATION;
12   NOVARTIS CORPORATION; NRM INVESTMENT
     COMPANY; PLYMOUTH TUBE COMPANY;
13   QUIKLINE DESIGN AND MANUFACTURING
     COMPANY; RAHNS SPECIALTY METALS,
14   INC.; ROHM & HAAS COMPANY, SIMON
     WRECKING COMPANY, INC.; TECHALLOY
15   COMPANY, INC.; THOMAS & BETTS
     CORPORATION; UNISYS CORPORATION;
16   UNITED STATES OF AMERICA
     DEPARTMENT OF NAVY,

17              Defendants.

18
                       *   *   *   *   *
19              Thursday, May 8, 2003
                       *   *   *   *   *
20

21              Transcript in the above matter taken at
     the offices of Ballard, Spahr, Andrews & Ingersoll,
     LLP, 1735 Market Street, 42nd Floor, Philadelphia,
22   Pennsylvania, commencing at 10:15 A.M.

23         Certified Shorthand Reporting Services
                    Arranged Through
24         Mastroianni & Formaroli, Inc.
                 709 White Horse Pike
25            Audubon, New Jersey 08106
                   (856) 546-1100

188

1    A P P E A R A N C E S:

2            BALLARD, SPAHR, ANDREWS & INGERSOLL, LLP
             BY: GLENN A. HARRIS, ESQUIRE
3            PLAZA 1000, MAIN STREET, # 500
             VOORHEES, NEW JERSEY  08043
4            (856)761-3400
             ATTORNEYS FOR THE PLAINTIFF
5
             CYTEC INDUSTRIES, INC.
6            BY:  THOMAS A. WALDMAN, ESQUIRE
             5 GARRET MOUNTAIN PLAZA
7            WEST PATERSON, NEW JERSEY  07424
             (973)357-3136
8            ALSO APPEARING FOR THE PLAINTIFF

9            FORD MOTOR COMPANY
             BY:  KATHY J. HOFER, ESQUIRE
10           PARKLANE TOWERS WEST, SUITE 1500
             3 PARKLANE BOULEVARD
11           DEARBORN, MICHIGAN  48126-2493
             (313)594-1687
12           ALSO APPEARING FOR THE PLAINTIFF

13           WOLFF & SAMSON, PC
             BY:  THOMAS W. SABINO, ESQUIRE
14           THE OFFICES AT CRYSTAL LAKE
             ONE BOLAND DRIVE
15           WEST ORANGE, NEW JERSEY  07052-3698
             (973)530-2044
16           ATTORNEYS FOR THE DEFENDANT,
             ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION
17
             PHELAN, PETTIT & BIEDRZYCKI, ESQUIRES
18           BY:  DAVID M. DOTO, ESQUIRE
             NORTH AMERICAN BUILDING
19           121 SOUTH BROAD STREET, SUITE 1600
             PHILADELPHIA, PENNSYLVANIA  19107
20           (215)546-0500
             ATTORNEYS FOR THE DEFENDANT,
21           ASHLAND CHEMICAL COMPANY

22           EDWARDS & ANGELL, LLP
             BY:  LYNN WRIGHT, ESQUIRE
23           51 JOHN F. KENNEDY PARKWAY
             SHORT HILLS, NEW JERSEY  07078-5006
24           (973)376-7700
             ATTORNEYS FOR THE DEFENDANT,
25           CARPENTER TECHNOLOGY CORPORATION

189

1    A P P E A R A N C E S (CONTINUED:)

2        SWIDLER, BERLIN, SHEREFF, FRIEDMAN, LLP
          BY:  LAURA A. FORD, ESQUIRE
3        3000 K STREET, N.W., SUITE 300
          WASHINGTON, D.C.  20007-5116
4        (202)424-7861
          ATTORNEYS FOR THE DEFENDANTS,
5        CROWN METRO and EMHART INDUSTRIES

6        DUANE MORRIS
          BY:  A. NICOLE FRIANT, ESQUIRE
7        ONE LIBERTY PLACE
          PHILADELPHIA, PENNSYLVANIA  19103-7396
8        (215)979-1818
          ATTORNEYS FOR THE DEFENDANT,
9        FLEXIBLE CIRCUITS

10       CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI,
          STEWART & OLSTEIN, PC
11       BY:  MELISSA E. FLAX, ESQUIRE
          6 BECKER FARM ROAD
12       ROSELAND, NEW JERSEY  07068-1739
          (973)994-1700
13       ATTORNEYS FOR THE DEFENDANT,
          HANDY & HARMAN TUBE COMPANY, INC.
14

15       MC NEES, WALLACE & NURICK, LLC
          BY:  RICHARD H. FRIEDMAN, ESQUIRE
16       100 PINE STREET
          HARRISBURG, PENNSYLVANIA  17108-1166
17       (717)237-5469
          ATTORNEYS FOR THE DEFENDANT, KNOLL, INC.

18       MONTEVERDE, MC ALEE & HURD, ESQUIRES
          BY:  STEPHEN P. CHAWAGA, ESQUIRE
19       1617 JFK BOULEVARD, SUITE 1500
          PHILADELPHIA, PENNSYLVANIA  19103-1815
20       (215)557-2900
          ATTORNEYS FOR THE DEFENDANT,
21       MERIT METALS PRODUCTS CORPORATION

22       MORGAN, LEWIS & BOCKIUS, LLP
          BY:  MICHAEL R. DILLON, ESQUIRE
23       1701 MARKET STREET
          PHILADELPHIA, PENNSYLVANIA  19103-2921
24       (215)963-4938
          ATTORNEYS FOR THE DEFENDANT,
25       NOVARTIS CORPORATION

190

1    A P P E A R A N C E S (CONTINUED:)

2        HENDERSON, WETHERILL, O'HEY & HORSEY, ESQUIRES
3        BY:  EDWARD FACKENTHAL, ESQUIRE
         ONE MONTGOMERY PLAZA, SUITE 902
4        NORRISTOWN, PENNSYLVANIA  19404
         (610)279-3370
5        ATTORNEYS FOR THE DEFENDANT,
         NRM INVESTMENT COMPANY

6
         JONES, LEMON, GRAHAM & CLANCEY, ESQUIRES
7        BY:  STEVEN J. LEMON, ESQUIRE
         223 EAST STATE STREET
8        GENEVA, ILLINOIS  60134-0805
         (630)208-0805
9        ATTORNEYS FOR THE DEFENDANT,
         PLYMOUTH TUBE COMPANY

10
         SCHMIDT & TOMLINSON, ESQUIRES
11       BY:  MARGARET QUINN, ESQUIRE
         29 UNION STREET
12       MEDOFRD, NEW JERSEY  08055
         (609)714-0600
13       ATTORNEYS FOR THE DEFENDANT,
         QUICKLINE DESIGN AND MANUFACTURING COMPANY

14
         ROHM AND HAAS COMPANY
15       BY:  JENNIFER BERKE LEVIN, ESQUIRE
         100 INDEPENDENCE MALL WEST
16       PHILADELPHIA, PENNSYLVANIA  19106-2399
         ATTORNEYS FOR THE DEFENDANT,
17       ROHM AND HAAS COMPANY

18       MATTLEMAN, WEINROTH & MILLER, PC
         BY:  SHARON ORAS MORGAN, ESQUIRE
19       LAND TITLE BUILDING, SUITE 2226
         BROAD & CHESTNUT STREETS
20       PHILADELPHIA, PENNSYLVANIA  19110
         (215)923-2225
21       ATTORNEYS FOR THE DEFENDANT,
         SIMON WRECKING COMPANY, INC.

22

23

24

25

191

1    A P P E A R A N C E S (CONTINUED:)

2        DRINKER, BIDDLE & REATH, LLP
         BY:  ANDREW P. FOSTER, ESQUIRE
3            and ADINA M. DZIUK, ESQUIRE
         ONE LOGAN SQUARE
4        18TH & CHERRY STREETS
         PHILADELPHIA, PENNSYLVANIA  19103-6996
5        (215)988-2512
         ATTORNEYS FOR THE DEFENDANTS,
6        RAHNS SPECIALTY METALS, INC.,
         TECHALLOY COMPANY, INC., THOMAS & BETTS
7        CORPORATION and UNISYS CORPORATION

8        NAVY LITIGATION OFFICE
         BY:  ROBERT MANLEY, ESQUIRE
9        WASHINGTON NAVY YARD
         WASHINGTON, D.C.  20002
10       (202)685-6987
             -and-
11       UNITED STATES DEPARTMENT OF JUSTICE
         ENVIRONMENT & NATURAL RESOURCES
12       BY:  JOHN SHEEHAN, ESQUIRE (present via phone)
         601 D STREET NW, SUITE 8120
13       WASHINGTON, D.C.
         (202)514-0995
14       ATTORNEYS FOR THE DEFENDANT,
         UNITED STATES OF AMERICA DEPARTMENT OF NAVY
15

16

17

18

19

20

21

22

23

24

25

249

1      Q.    When was the first time you heard of

2    Handy & Harman Tube Company?

3      A.    I don't know.

4      Q.    How did you learn about Handy & Harman

5    Tube Company?

6      A.    I don't know.

7      Q.    Do you know, and I apologize if you

8    answered this in response to another question, do you

9    know what the business of Handy & Harman Tube Company

10    is?

11      A.    No.

12      Q.    Are you familiar with any of the

13    processes used by Handy & Harman Tube Company?

14      A.    No.

15      Q.    Are you familiar with the types of waste

16    generated by Handy & Harman Tube Company?

17      A.    No.

18      Q.    Mr. DeRewal, if you would turn to P-42

19    which was marked yesterday, do you have P-42 in front

20    of you?

21      A.    Yes, I have.

22      Q.    Does P-42 represent a typical DeRewal

23    Chemical Company invoice?

24      A.    Yes.

25      Q.    If you would just look across the top

254

1    Q.    Mr. DeRewal, it says 250 gallon oil

2    tank.  Do you know whether the 250 oil tank was

3    coming from Handy & Harman Tube Company or being

4    delivered to Handy & Harman Tube Company?

5    A.    I have no idea.

6    Q.    Do you know who owned the 250 gallon oil

7    tank?

8    A.    No.

9    Q.    Do you know whether looking at the

10   second line under description, whether the 26

11   55-gallon drums were full or empty?

12   A.    I would assume they're full of waste

13   solution.  That's what it says, industrial waste

14   solution, so...

15   Q.    I'm not asking you to assume.  I'm

16   asking you whether you know if they were full or

17   empty.

18   A.    I would not know whether they were full

19   or empty.

20   Q.    Was DeRewal picking up the 26 55-gallon

21   drums from Handy & Harman Tube Company containing

22   industrial waste solution?

23   A.    I don't know what they did with the 25

24   drums.

25   Q.    Do you know whether the 36 30-gallon

255

1    drums were full or empty?

2         A.    No, I do not know.

3         Q.    Do you know whether the 36 30-gallon

4    drums were being delivered to or being picked up from

5    Handy & Harman Tube Company?

6         A.    No, but the invoice would suggest that

7    they are being picked up.  They have waste solution

8    in them.

9         Q.    But you don't know as you sit here today

10   whether they were being picked up from or delivered

11   to Handy & Harman Tube Company; is that correct?

12              MR. HARRIS:    Objection.

13        A.    No, I wouldn't -- I wouldn't know what

14   they were -- just looking at this invoice, you know,

15   I don't think Handy & Harman is ordering waste

16   solutions.  I think they are getting rid of waste

17   solutions.  I mean --

18        Q.    Mr. DeRewal, I didn't ask you what you

19   think.  I asked you whether you knew or did not know.

20        A.    I absolutely do not know.

21        Q.    Okay.  Can you tell me what the $6 per

22   55-gallon drum price represents?

23        A.    What?

24        Q.    Looking in the third column under the

25   second preprinted line where it says price, second

400

```
 1              C E R T I F I C A T E

 2         I, NORA M. GALLAGHER, a Notary Public and

 3    Certified Shorthand Reporter of the State of New

 4    Jersey, and Commissioner of Deeds of the Commonwealth

 5    of Pennsylvania, do hereby certify that prior to the

 6    commencement of the examination,

 7                   MANFRED T. DE REWAL, SR.

 8    Was duly sworn by me to testify to the truth, the

 9    whole truth and nothing but the truth.

10                   I do further certify that the foregoing

11    is a true and accurate transcript of the testimony as

12    taken stenographically by and before me at the time,

13    place and on the date hereinbefore set forth.

14                   I do further certify that I am neither

15    a relative nor employee nor attorney nor counsel of

16    any of the parties to this action, and that I am

17    neither a relative nor employee of such attorney or

18    counsel and that I am not financially interested in

19    this action.

20

21

22         Nora M. Gallagher, C.S.R.
           My Commission Expires October 24, 2007
23         Certificate No. XI00911
           Date:
24

25
```

# EXHIBIT I

```
 1              UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA
 2

 3                               CIVIL ACTION NO.
    BOARHEAD FARM AGREEMENT       02-CV-3830
 4  GROUP,                        Judge Legrome D. Davis
              Plaintiff,
 5                               Oral Deposition of
         vs.                       KAREN CASTILLO
 6  ADVANCED ENVIRONMENTAL TECHNOLOGY
    CORPORATION; ASHLAND CHEMICAL
 7  COMPANY; BOARHEAD CORPORATION;
    CARPENTER TECHNOLOGY CORPORATION;
 8  CROWN METRO, INC.; DIAZ CHEMICAL
    CORPORATION; EMHART INDUSTRIES,
 9  INC.; ETCHED CIRCUITS, INC.; FCG,
    INC.; GLOBE DISPOSAL COMPANY, INC.;
10  GLOBE-WASTECH, INC.; HANDY & HARMAN
    TUBE COMPANY, INC.; KNOLL, INC.;
11  MERIT METAL PRODUCTS CORPORATION;
    NOVARTIS CORPORATION; NRM INVESTMENT
12  COMPANY; PLYMOUTH TUBE COMPANY;
    QUIKLINE DESIGN AND MANUFACTURING
13  COMPANY; RAHNS SPECIALTY METALS,
    INC.; ROHM & HAAS COMPANY, SIMON
14  WRECKING COMPANY, INC.; TECHALLOY
    COMPANY, INC.; THOMAS & BETTS
15  CORPORATION; UNISYS CORPORATION;
    UNITED STATES OF AMERICA
16  DEPARTMENT OF NAVY,
              Defendants.
17

18            *   *   *   *   *
         TUESDAY, JUNE 3, 2003
19            *   *   *   *   *

20          Transcript in the above matter taken at
    the offices of Ballard, Spahr, Andrews & Ingersoll,
21  LLP, 1735 Market Street, 42nd Floor, Philadelphia,
    Pennsylvania, commencing at 10:00 A.M.
22
         Certified Shorthand Reporting Services
23                Arranged Through
            Mastroianni & Formaroli, Inc.
24             709 White Horse Pike
             Audubon, New Jersey 08106
25                (856) 546-1100
```

2

```
 1   A P P E A R A N C E S:

 2        BALLARD, SPAHR, ANDREWS & INGERSOLL, LLP
          BY: GLENN A. HARRIS, ESQUIRE
 3        PLAZA 1000, MAIN STREET, # 500
          VOORHEES, NEW JERSEY  08043
 4        (856)761-3400
          ATTORNEYS FOR THE PLAINTIFF
 5
          WOLFF & SAMSON, PC
 6        BY:  THOMAS W. SABINO, ESQUIRE
          THE OFFICES AT CRYSTAL LAKE
 7        ONE BOLAND DRIVE
          WEST ORANGE, NEW JERSEY  07052-3698
 8        (973)530-2044
          ATTORNEYS FOR THE DEFENDANT,
 9        ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION

10        PHELAN, PETTIT & BIEDRZYCKI, ESQUIRES
          BY:  RICHARD E. STABINSKI, ESQUIRE
11        NORTH AMERICAN BUILDING
          121 SOUTH BROAD STREET, SUITE 1600
12        PHILADELPHIA, PENNSYLVANIA  19107
          (215)546-0500
13        ATTORNEYS FOR THE DEFENDANT,
          ASHLAND CHEMICAL COMPANY
14
          EDWARDS & ANGELL, LLP
15        BY:  ROBIN WRIGHT, ESQUIRE   (present via phone)
          51 JOHN F. KENNEDY PARKWAY
16        SHORT HILLS, NEW JERSEY  07078-5006
          (973)376-7700
17        ATTORNEYS FOR THE DEFENDANT,
          CARPENTER TECHNOLOGY CORPORATION
18
          SWIDLER, BERLIN, SHEREFF, FRIEDMAN, LLP
19        BY:  LAURA A. FORD, ESQUIRE
          3000 K STREET, N.W., SUITE 300
20        WASHINGTON, D.C.  20007-5116
          (202)424-7861
21        ATTORNEYS FOR THE DEFENDANTS,
          CROWN METRO and EMHART INDUSTRIES
22

23

24

25
```

```
 1   A P P E A R A N C E S (CONTINUED:)

 2         DUANE MORRIS
           BY:  A. NICOLE FRIANT, ESQUIRE
 3         ONE LIBERTY PLACE
           PHILADELPHIA, PENNSYLVANIA  19103-7396
 4         (215)979-1818
           ATTORNEYS FOR THE DEFENDANT,
 5         FLEXIBLE CIRCUITS

 6         CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI,
           STEWART & OLSTEIN, PC
 7         BY:  MELISSA E. FLAX, ESQUIRE
           6 BECKER FARM ROAD
 8         ROSELAND, NEW JERSEY  07068-1739
           (973)994-1700
 9         ATTORNEYS FOR THE DEFENDANT,
           HANDY & HARMAN TUBE COMPANY, INC.
10
           MC NEES, WALLACE & NURICK, LLC
11         BY:  RICHARD H. FRIEDMAN, ESQUIRE
           100 PINE STREET
12         HARRISBURG, PENNSYLVANIA  17108-1166
           (717)237-5469
13         ATTORNEYS FOR THE DEFENDANT, KNOLL, INC.

14         MONTEVERDE, MC ALEE & HURD, ESQUIRES
           BY:  STEPHEN P. CHAWAGA, ESQUIRE
15         1617 JFK BOULEVARD, SUITE 1500
           PHILADELPHIA, PENNSYLVANIA  19103-1815
16         (215)557-2900
           ATTORNEYS FOR THE DEFENDANT,
17         MERIT METALS PRODUCTS CORPORATION

18         MORGAN, LEWIS & BOCKIUS, LLP
           BY:  MICHAEL R. DILLON, ESQUIRE
19         1701 MARKET STREET
           PHILADELPHIA, PENNSYLVANIA  19103-2921
20         (215)963-4938
           ATTORNEYS FOR THE DEFENDANT,
21         NOVARTIS CORPORATION

22         HENDERSON, WETHERILL, O'HEY & HORSEY, ESQUIRES
           BY:  EDWARD FACKENTHAL, ESQUIRE
23         ONE MONTGOMERY PLAZA, SUITE 902
           NORRISTOWN, PENNSYLVANIA  19404
24         (610)279-3370
           ATTORNEYS FOR THE DEFENDANT,
25         NRM INVESTMENT COMPANY
```

4

```
 1
       A P P E A R A N C E S  (CONTINUED:)
 2
           JONES, LEMON, GRAHAM & CLANCEY, ESQUIRES
 3         BY:  STEVEN J. LEMON, ESQUIRE
           223 EAST STATE STREET
 4         GENEVA, ILLINOIS  60134-0805
           (630)208-0805
 5         ATTORNEYS FOR THE DEFENDANT,
           PLYMOUTH TUBE COMPANY
 6
           SCHMIDT & TOMLINSON, ESQUIRES
 7         BY:  MARGARET QUINN, ESQUIRE
           29 UNION STREET
 8         MEDFORD, NEW JERSEY  08055
           (609)714-0600
 9         ATTORNEYS FOR THE DEFENDANT,
           QUICKLINE DESIGN AND MANUFACTURING COMPANY
10
           ROHM AND HAAS COMPANY
11         BY:  JENNIFER BERKE LEVIN, ESQUIRE
           100 INDEPENDENCE MALL WEST
12         PHILADELPHIA, PENNSYLVANIA  19106-2399
           ATTORNEYS FOR THE DEFENDANT,
13         ROHM AND HAAS COMPANY

14         MATTLEMAN, WEINROTH & MILLER, PC
           BY:  SHARON ORAS MORGAN, ESQUIRE
15         LAND TITLE BUILDING, SUITE 2226
           BROAD & CHESTNUT STREETS
16         PHILADELPHIA, PENNSYLVANIA  19110
           (215)923-2225
17         ATTORNEYS FOR THE DEFENDANT,
           SIMON WRECKING COMPANY, INC.
18
           DRINKER, BIDDLE & REATH, LLP
19         BY:  ADINA M. DZIUK, ESQUIRE
           ONE LOGAN SQUARE
20         18TH & CHERRY STREETS
           PHILADELPHIA, PENNSYLVANIA  19103-6996
21         (215)988-2512
           ATTORNEYS FOR THE DEFENDANTS,
22         RAHNS SPECIALTY METALS, INC.,
           TECHALLOY COMPANY, INC., THOMAS & BETTS
23         CORPORATION and UNISYS CORPORATION

24

25
```

5

```
1
       A P P E A R A N C E S (CONTINUED:)
2
           UNITED STATES DEPARTMENT OF JUSTICE
3          ENVIRONMENT & NATURAL RESOURCES
           BY:  JOHN SHEEHAN, ESQUIRE (present via phone)
4          601 D STREET NW, SUITE 8120
           WASHINGTON, D.C.
5          (202)514-0995
           ATTORNEYS FOR THE DEFENDANT,
6          UNITED STATES OF AMERICA DEPARTMENT OF NAVY

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1      Q.     Do you know who provided you this

2   information?

3      A.     No.

4      Q.     Was there a price list for what was

5   charged to customers?

6      A.     No.

7      Q.     How did you know how much to charge a

8   customer say, for example, disposing of a 55-gallon

9   drum?

10      A.     I would get that info from Fred, Senior.

11      Q.     So Mr. DeRewel, Senior would provide you

12   with the cost per 55-gallon drum to charge a

13   particular customer; is that correct?

14      A.     Yes, or it was in black and white as a

15   quote.

16      Q.     And do you know who prepared any such

17   quotes?

18      A.     Fred, Senior.

19      Q.     Do you know what the cost of disposing a

20   full 55-gallon drum was during the time of your

21   employment with any DeRewel company?

22      A.     No.

23      Q.     Do you know what the cost of disposal of

24   a full 30-gallon drum would cost, was for any --

25   while you worked for any DeRewel company?

1      A.      No.

2      Q.      Do you know what the cost of disposing

3   an empty 55-gallon drum would have been while you

4   worked for any DeRewel company?

5      A.      No.

6      Q.      Do you know what the cost would have

7   been for an empty 30-gallon drum while you worked for

8   any DeRewel chemical company?

9              MR. HARRIS:  Objection.

10     A.      No.

11     Q.      Do you know what the cost for -- strike

12   that.

13             If I say the term bulk load, do you

14   understand what I mean by that?

15     A.      I do.

16     Q.      Can you tell me what you understand that

17   to mean?

18     A.      Bulk load would be a tanker or a full

19   tractor trailer.

20     Q.      Do you know what would be charged to

21   dispose of a bulk load?

22             MR. HARRIS:  Objection.

23     A.      No.

24     Q.      I just want to be clear.  All prices

25   charged by DeRewel Chemical Company to its customers

1    were set by Fred DeRewel, Senior?

2        A.    Yes.

3        Q.    Did DeRewel Chemical Company ever sell
4    empty 55-gallon drums?

5        A.    I don't know.  I don't know.  I don't
6    recall, but I don't honestly know.

7        Q.    Do you know who would know whether or
8    not DeRewel Chemical Company sold empty 55-gallon
9    drums?

10       A.    If they sold empty drums?  Well, since
11   Marvin Jonas was in the business I would imagine
12   Marvin Jonas would know, except he is dead.

13       Q.    In response to my last question you said
14   since Marvin Jonas was in the business.  Can you tell
15   me what business you are referring to?

16       A.    Empty 55-gallon drums.

17           MS. FLAX:  That's all I have.  Thank
18   you.

19           MR. STABINSKI:  I will go next.  Rick
20   Stabinski for Ashley.

21   (EXAMINATION OF MS. CASTILLO BY MR. STABINSKI:)

22       Q.    We have never met, have we?

23       A.    No.

24       Q.    I would like to direct your attention to
25   some of the responses you gave to Mr. Sabino about

```
 1                C E R T I F I C A T E

 2        I, RUTHANN WALKER, a Notary Public and

 3   Certified Shorthand Reporter of the State of NJ

 4   and Commissioner of Deeds of the Commonwealth of

 5   Pennsylvania, do hereby certify that prior to the

 6   commencement of the examination

 7                KAREN CASTILLO

 8   was duly sworn by me to testify to the truth, the

 9   whole truth and nothing but the truth.

10        I do further certify that the foregoing is a

11   true and accurate transcript of the testimony as

12   taken stenographically by and before me at the time,

13   place and on the date hereinbefore set forth.

14        I do further certify that I am neither a

15   relative nor employee nor attorney nor counsel of any

16   of the parties to this action, and that I am neither

17   a relative nor employee of such attorney or counsel

18   and that I am not financially interested in this

19   action.

20

21        _____

22        RUTHANN WALKER, C.S.R.
          Notary Public, State of New Jersey
23        My Commission Expires August 28, 2005
          Certificate No. 415
24        Date:  June 12, 2003

25
```