**EXHIBIT J**

Page 181

1          IN THE UNITED STATES DISTRICT COURT
2      FOR THE EASTERN DISTRICT OF PENNSYLVANIA
              CIVIL ACTION No. 02-CV-3830(LDD)

3

4   AGERE SYSTEMS, INC., CYTEC          *
    INDUSTRIES, INC., FORD                          COPY
    MOTOR COMPANY, SPS                 *
5   TECHNOLOGIES, LLC and
    TI GROUP AUTOMOTIVE                 *      CONTINUED
6   SYSTEMS, LLC,                              DEPOSITION OF:
              Plaintiffs,               *
7                                              KIRK W. BROWN
              vs.                        *
8
    ADVANCED ENVIRONMENTAL             *
9   TECHNOLOGY CORPORATION,
    et al.,                             *
10            Defendants.
    -----------------------------*
11

12          T R A N S C R I P T of the stenographic

13   notes of the proceedings in the above-entitled

14   matter, taken by and before DEBRA DeLOOF, a

15   Certified Shorthand Reporter and Notary Public of

16   the State of New Jersey, held at the offices of

17   Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart &

18   Olstein, P.C., 5 Becker Farm Road, Roseland, New

19   Jersey, on Monday, January 29, 2007, commencing

20   at 9:45 a.m.

21

22

23

24

25

Page 182

A P P E A R A N C E S:

BALLARD, SPAHR, ANDREWS & INGERSOLL, LLP
BY: AMY TROJECKI, ESQ.
1735 Market Street
Philadephia, Pennsylvania 08043
Attorneys for Plaintiffs


HINMAN, HOWARD & KATTELL, LLP
BY: RALPH K. KESSLER, ESQ.
106 Corporate Park Drive, Suite 317
White Plains, New York 10604
Attorneys for Plaintiff, TI Automotive


CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI,
STEWART & OLSTEIN, P.C.
BY: MELISSA FLAX, ESQ.
5 Becker Farm Road
Roseland, New Jersey 07068-1739
Attorneys for Defendant, Handy & Harman

WOLFF & SAMSON, PC
BY: THOMAS W. SABINO, ESQ.
One Boland Drive
West Orange, New Jersey 07052
Attorneys for Defendant, Advanced Technology

EDWARDS, ANGELL, PALMER & DODGE, LLP
BY: LYNN WRIGHT, ESQ. (NOT PRESENT)
51 John F. Kennedy Parkway
Short Hills, New Jersey 07078
Attorneys for Defendant, Carpenter Technology

PHELAN, PETTIT & BIEDRZYCKI, ESQS.
BY: JEFFREY L. PETTIT, ESQ.
121 South Broad Street, Suite 1600
Philadelphia, Pennsylvania 19107
Attorneys for Defendant, Ashland Chemical

DUANE MORRIS, LLP
BY: SETH v.d.H. COOLEY, ESQ. (NOT PRESENT)
30 South 17th Street
Philadelphia, Pennsyvania 19103-4196
Attorneys for Defendant, Flexible Crevits

Page 233

1   solution come from?

2              MS. FLAX:  Objection to form.

3       Q.    Do you know if that's a Handy & Harman

4   term or a DeRewal chemical company term?

5              MS. FLAX:  Objection to form.  You

6   just asked three questions.

7                   (The requested portion was read back

8              by the reporter.)

9       Q.    Do you understand what I'm asking?

10      A.     It appears on the Handy & Harman invoice

11  from DeRewal, and then Curran accepts and utilizes

12  that term, for describing the waste that we've just

13  been talking about.

14      Q.     It's your opinion that the solution that

15  Curran is referring to in his deposition as industrial

16  waste solution is non hazardous; is that correct?

17      A.     Yes.

18      Q.     Why do you think that?

19              MS. FLAX:  Objection.  Asked and

20  answered.

21              You can answer it.

22      A.     It's not a listed hazardous waste.  It

23  would not fail any of the four criteria for being a

24  hazardous waste.  It would not fail toxic

25  concentration -- it's a test for soluble metals in

1   waste, if I have the acronym right, TCLP, I'll get you
2   the right acronym, it wouldn't fail that test, it
3   wouldn't have a pH outside the normal range.  It
4   wouldn't be flammable.  It wouldn't be corrosive.  So
5   it wouldn't be reactive.  So there's nothing there
6   that would indicate that it was a hazardous waste.
7       Q.    Going back for one minute, if the tubes
8   were cleaned with TCE and taken to the drawing
9   machines, is it possible that TCE could be a residual,
10  TCE would be on the drawing machines or any of the
11  machines that were cleaned during the annual shut down
12  process?
13      MS. FLAX:  Objection.  Asked and
14  answered.
15      A.    Well, they were annealed between being
16  cleaned and drawn again so the TCE would have been
17  evaporated.
18      Q.    How about if they weren't annealed?
19      A.    Again, it evaporates very rapidly.
20      Q.    When you say that the solution that
21  Curran is referring to as industrial waste solution is
22  not a listed hazardous waste, explain to me what you
23  mean by that?
24      A.    Well, there are certain waste streams
25  from industries that are listed in RCRA, for instance

Page 279

1

2                   C E R T I F I C A T E

3

4        I, DEBRA DeLOOF, a Certified Shorthand

5    Reporter and Notary Public of the State of New

6    Jersey, certify that the foregoing is a true

7    and accurate transcript of the stenographic

8    notes of the deposition of said witness who was

9    first duly sworn by me, on the date and place

10   hereinbefore set forth.

11        I FURTHER CERTIFY that I am neither

12   attorney, nor counsel for, nor related to or

13   employed by, and of the parties to the action

14   in which this deposition was taken, and further

15   that I am not a relative or employee of any

16   attorney or counsel in this case, nor am I

17   financially interested in this case.

18

19

20        _Debra DeLoof_

21        DEBRA DeLOOF, C.S.R.

22        LICENSE NO. XI100228900

23

24

25

**EXHIBIT K**

#188796

1

```
 1                  UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF PENNSYLVANIA
 2       ─────────────────────────────   ────
                                    CIVIL ACTION NO.
 3   BOARHEAD FARM AGREEMENT        02-CV-3830
     GROUP,                         Judge Legrome D. Davis
 4
              Plaintiff,
 5                                           ORAL DEPOSITION OF:
        vs.
 6                                        BRUCE DeREWAL
     ADVANCED ENVIRONMENTAL TECHNOLOGY
 7   CORPORATION; ASHLAND CHEMICAL
     COMPANY; BOARHEAD CORPORATION;
 8   CARPENTER TECHNOLOGY CORPORATION;
     CROWN METRO, INC.; DIAZ CHEMICAL
 9   CORPORATION; EMHART INDUSTRIES,
     INC.; ETCHED CIRCUITS, INC.; FCG,
10   INC.; GLOBE DISPOSAL COMPANY, INC.;
     GLOBE-WASTECH, INC.; HANDY & HARMAN
11   TUBE COMPANY, INC.; KNOLL, INC.;
     MERIT METAL PRODUCTS CORPORATION;
12   NOVARTIS CORPORATION; NRM INVESTMENT
     COMPANY; PLYMOUTH TUBE COMPANY;
13   QUIKLINE DESIGN AND MANUFACTURING
     COMPANY; RAHNS SPECIALTY METALS,
14   INC.; ROHM & HAAS COMPANY, SIMON
     WRECKING COMPANY, INC.; TECHALLOY
15   COMPANY, INC.; THOMAS & BETTS
     CORPORATION; UNISYS CORPORATION;
16   UNITED STATES OF AMERICA
     DEPARTMENT OF NAVY,
17
              Defendants.
18       ──────────────────────────────

19                    *   *   *   *   *
                  Monday, June 16, 2003
20                    *   *   *   *   *
               Transcript in the above matter taken at
21   the offices of Ballard, Spahr, Andrews & Ingersoll,
     LLP, 1735 Market Street, 42nd Floor, Philadelphia,
22   Pennsylvania, commencing at 10:10 a.m.

23           Certified Shorthand Reporting Services
                     Arranged Through
24             Mastroianni & Formaroli, Inc.
                   709 White Horse Pike
25             Audubon, New Jersey 08106
                     (856) 546-1100
```

2

```
 1   A P P E A R A N C E S:

 2              BALLARD, SPAHR, ANDREWS & INGERSOLL, LLP
                BY: GLENN A. HARRIS, ESQUIRE
 3              PLAZA 1000, MAIN STREET, # 500
                VOORHEES, NEW JERSEY  08043
 4              (856)761-3400
                ATTORNEYS FOR THE PLAINTIFF
 5
                MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP
 6              BY: SALLY ACKERMAN KING, ESQUIRE
                123 SOUTH BROAD STREET
 7              PHILADELPHIA, PENNSYLVANIA 19109
                (215) 772-7412
 8              ALSO APPEARING FOR THE PLAINTIFF

 9              HINMAN, HOWARD & KATTELL, LLP
                BY:  RALPH K. KESSLER, ESQUIRE
10              106 CORPORATE PARK DRIVE, SUITE 317
                WHITE PLAINS, NEW YORK  10604
11              (914)694-4102
                ALSO APPEARING FOR THE PLAINTIFF
12
                WOLFF & SAMSON, PC
13              BY:  THOMAS W. SABINO, ESQUIRE
                THE OFFICES AT CRYSTAL LAKE
14              ONE BOLAND DRIVE
                WEST ORANGE, NEW JERSEY  07052-3698
15              (973)530-2044
                ATTORNEYS FOR THE DEFENDANT,
16              ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION

17              PHELAN, PETTIT & BIEDRZYCKI, ESQUIRES
                BY:  DAVID M. DOTO, ESQUIRE
18              NORTH AMERICAN BUILDING
                121 SOUTH BROAD STREET, SUITE 1600
19              PHILADELPHIA, PENNSYLVANIA  19107
                (215)546-0500
20              ATTORNEYS FOR THE DEFENDANT,
                ASHLAND CHEMICAL COMPANY
21
                EDWARDS & ANGELL, LLP
22              BY:  LYNN WRIGHT, ESQUIRE
                51 JOHN F. KENNEDY PARKWAY
23              SHORT HILLS, NEW JERSEY  07078-5006
                (973)376-7700
24              ATTORNEYS FOR THE DEFENDANT,
                CARPENTER TECHNOLOGY CORPORATION
25
```

3

1   A P P E A R A N C E S (CONTINUED:)

2          SWIDLER, BERLIN, SHEREFF, FRIEDMAN, LLP
           BY:  LAURA A. FORD, ESQUIRE
3          3000 K STREET, N.W., SUITE 300
           WASHINGTON, D.C.  20007-5116
4          (202)424-7861
           ATTORNEYS FOR THE DEFENDANTS,
5          CROWN METRO and EMHART INDUSTRIES

6          DUANE MORRIS
           BY:  A. NICOLE FRIANT, ESQUIRE
7          ONE LIBERTY PLACE
           PHILADELPHIA, PENNSYLVANIA  19103-7396
8          (215)979-1818
           ATTORNEYS FOR THE DEFENDANT,
9          FLEXIBLE CIRCUITS

10         CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI,
             STEWART & OLSTEIN, PC
11         BY:  MELISSA E. FLAX, ESQUIRE
           6 BECKER FARM ROAD
12         ROSELAND, NEW JERSEY  07068-1739
           (973)994-1700
13         ATTORNEYS FOR THE DEFENDANT,
           HANDY & HARMAN TUBE COMPANY, INC.
14
           MC NEES, WALLACE & NURICK, LLC
15         BY:  RICHARD H. FRIEDMAN, ESQUIRE
           100 PINE STREET
16         HARRISBURG, PENNSYLVANIA  17108-1166
           (717)237-5469
17         ATTORNEYS FOR THE DEFENDANT, KNOLL, INC.

18         MONTEVERDE, MC ALEE & HURD, ESQUIRES
           BY:  MATTHEW LIPMAN, ESQUIRE
19         1617 JFK BOULEVARD, SUITE 1500
           PHILADELPHIA, PENNSYLVANIA  19103-1815
20         (215)557-2900
           ATTORNEYS FOR THE DEFENDANT,
21         MERIT METALS PRODUCTS CORPORATION

22         MORGAN, LEWIS & BOCKIUS, LLP
           BY:  MICHAEL R. DILLON, ESQUIRE
23         1701 MARKET STREET
           PHILADELPHIA, PENNSYLVANIA  19103-2921
24         (215)963-4938
           ATTORNEYS FOR THE DEFENDANT,
25         NOVARTIS CORPORATION

4

```
 1   A P P E A R A N C E S  (CONTINUED:)

 2            JONES, LEMON, GRAHAM & CLANCY, ESQUIRES
              BY:  STEVEN J. LEMON, ESQUIRE
 3            223 EAST STATE STREET
              GENEVA, ILLINOIS  60134-0805
 4            (630)208-0805
              ATTORNEYS FOR THE DEFENDANT,
 5            PLYMOUTH TUBE COMPANY

 6            SCHMIDT & TOMLINSON, ESQUIRES
              BY:  MARGARET QUINN, ESQUIRE
 7            29 UNION STREET
              MEDFORD, NEW JERSEY  08055
 8            (609)714-0600
              ATTORNEYS FOR THE DEFENDANT,
 9            QUIKLINE DESIGN AND MANUFACTURING COMPANY

10            ROHM AND HAAS COMPANY
              BY:  JENNIFER BERKE LEVIN, ESQUIRE
11            100 INDEPENDENCE MALL WEST
              PHILADELPHIA, PENNSYLVANIA  19106-2399
12            ATTORNEYS FOR THE DEFENDANT,
              ROHM AND HAAS COMPANY
13
              MATTLEMAN, WEINROTH & MILLER, PC
14            BY:  SHARON ORAS MORGAN, ESQUIRE
              LAND TITLE BUILDING, SUITE 2226
15            BROAD & CHESTNUT STREETS
              PHILADELPHIA, PENNSYLVANIA  19110
16            (215)923-2225
              ATTORNEYS FOR THE DEFENDANT,
17            SIMON WRECKING COMPANY, INC.

18            DRINKER, BIDDLE & REATH, LLP
              BY:  ADINA M. DZIUK, ESQUIRE
19            ONE LOGAN SQUARE
              18TH & CHERRY STREETS
20            PHILADELPHIA, PENNSYLVANIA  19103-6996
              (215)988-2696
21            ATTORNEYS FOR THE DEFENDANTS,
              RAHNS SPECIALTY METALS, INC.,
22            TECHALLOY COMPANY, INC., THOMAS & BETTS
              CORPORATION and UNISYS CORPORATION
23

24

25
```

5

```
 1    A P P E A R A N C E S  (CONTINUED:)

 2          DEPARTMENT OF THE NAVY
             OFFICE OF THE GENERAL COUNSEL
 3          BY:  JOHN D. TEW, ESQUIRE
             720 KENNON STREET
 4          WASHINGTON NAVY YARD
             WASHINGTON, D.C.  20002
 5          (202)685-7030
                  -and-
 6          UNITED STATES DEPARTMENT OF JUSTICE
             ENVIRONMENT & NATURAL RESOURCES
 7          BY:  JOHN SHEEHAN, ESQUIRE (present via phone)
             601 D STREET NW, SUITE 8120
 8          WASHINGTON, D.C.
             (202)514-0995
 9          ATTORNEYS FOR THE DEFENDANT,
             UNITED STATES OF AMERICA DEPARTMENT OF NAVY
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    A.    309.

2    Q.    309?

3    A.    I guess.  I remember coming down 202, make a

4    right, to 73.

5    Q.    Maybe?

6,    A.    73?  No.

7    Q.    Can you remember anything?

8    A.    I really don't remember.

9    Q.    Can you remember anything in the area of

10   this building, you know, landmarks?

11   A.    202 used to come down and the road would

12   split off to the right and that would be a little

13   triangle.  You bear off to the right and it came to the

14   next road, you could make a left and go down a block

15   and come back on 202 or you could make a right and

16   that's where this building was.

17   Q.    All right.  So that was real close to the

18   triangle where 202 split?

19   A.    Yes.

20   Q.    That's the facility you were thinking of?

21   A.    Yes.

22   Q.    Let's just stick with that for a minute.

23   Did anyone at that facility tell you what kind of waste

24   you were picking up?

25   A.    No.

1      Q.   And now that you say that --

2      A.   When I got burned I was scheduled to go to

3  Philadelphia.

4      Q.   It was supposed to go to Philadelphia?

5      A.   Yeah.

6      Q.   So now you're remembering another load that

7  was supposed to go to the farm?

8           MR. DILLON:  Objection to the form,

9  leading.

10  BY MR. HARRIS:

11     Q.   I'm trying to clarify your testimony.

12     A.   No, I might have pulled two loads out of

13  there.  One was set to go to the farm and the second

14  one was supposed to go to Philly, and I had to pull out

15  of there because of the leak in the trailer.

16     Q.   The Norristown, the outside Norristown place

17  that we talked about a few minutes ago, I don't

18  remember if I asked you how many times you went there.

19     A.   I don't recall.  Not that many.

20     Q.   By "not that many", we mean less than ten?

21     A.   Yes.

22     Q.   Less than five?

23     A.   Let's say less than ten, let's keep it at

24  ten.

25     Q.   You're comfortable with less than ten?

```
1          A.    Yeah, I think.

2          Q.    What kind of pick-up was that, was that bulk

3   or drums?

4          A.    That was drums.

5          Q.    What kind of truck did you drive on those

6   trips?

7          A.    It could have been a box van, box truck.

8          Q.    By "box truck", is it a straight truck?

9          A.    Straight truck, yes.

10         Q.    Stakes on the side or, you know, sides on

11  it?

12         A.    Yeah, either stake body or it was a rental,

13  a Ryder rental or something box truck.

14         Q.    You mean literally with an enclosed --

15         A.    Yeah, enclosed box.

16         Q.    How big was the box truck?

17         A.    16 feet.

18         Q.    And we're talking the bed, right?

19         A.    Yeah, the bed.

20         Q.    How many drums were you able to put in there

21  on the times you went to Handy & Harman?

22               MS. FLAX:  Objection to form.

23               MR. HARRIS:  I'm sorry, the place in

24  Norristown.

25               THE WITNESS:  Whatever we can get in a
```

1    box truck.

2    BY MR. HARRIS:

3        Q.    Again --

4        A.    Twenty.

5        Q.    Again, we don't want a guess.

6            MS. FLAX:  I'm going to object to this

7    whole line of questioning.  Ask him a question, don't

8    ask him a question that tells him the answer.

9            MR. HARRIS:  Which answer did I tell him

10    that time?

11            MS. FLAX:  She can read back the last

12    five questions that you've done it.  Ask him a

13    question, don't put words in his mouth and let's see

14    what he remembers.

15            If he doesn't remember anything, then

16    that's his testimony.  It's not a guessing game.  And

17    you've done it with a lot of less than ten, more than

18    20, 20.  It's not a guessing game.

19            MR. HARRIS:  You should get used to that

20    because you're going to hear a lot of less than ten,

21    more than 20.  That's absolute legitimate questioning,

22    I will continue it.  If you want to call a judge and

23    try to get him to stop me from doing it, you're free to

24    do it.

25            But I'm going to test this witness'

1    described off of, 209 was it?

2        A.    202.

3        Q.    Do you remember sitting here today after

4    hearing all this whether it was called Handy & Harman?

5        A.    Yeah, I guess.

6        Q.    Well, again --

7        A.    I'm sorry.  I don't recall.

8        Q.    I don't want to put words in your mouth.

9        A.    Okay, I don't recall.

10        Q.    And I'd be happy with whatever you recollect

11    today.

12        A.    I don't recall the name.

13        Q.    Fine.  Now, let's talk about the facility, I

14    don't care if it's called Handy & Harman, Manny, Moe

15    and Jack or McDonald's.

16        A.    Yes.

17        Q.    The facility you're remembering.

18        A.    Yes.

19        Q.    Let's just talk about that facility.

20        A.    Yes.

21        Q.    How many drums do you think you put in the

22    box truck?

23        A.    About 20.

24        Q.    On the times that you went to that facility

25    and picked up drums, where did those drums go for

1    disposal?

2        A.    They went down to, they would go down to

3    Ontario Street or I would take them back to the farm.

4        Q.    Okay.  Any other choices between Ontario

5    Street and the farm?

6        A.    No, those were the only two places.

7        Q.    On the occasions that you went to that

8    facility that we're talking about to pick up drums, how

9    many times did you take them back to the farm?

10       A.    I don't recall.

11       Q.    Sitting here today, is it, can you come up

12   with a reasonable approximation of whether it was half

13   the time or a quarter of the time?

14       A.    Maybe a quarter or less.  Most of the time

15   it was in Philly.

16       Q.    Okay.  Quarter or less went back to the

17   Boarhead site --

18       A.    Yes.

19       Q.    -- to be disposed of?

20       A.    I don't know.  I took the truck back and

21   dropped it.

22       Q.    You took the truck back and dropped it and

23   it had the drums in it?

24       A.    Yes.

25       Q.    You never saw the drums leave any other way?

```
1              C E R T I F I C A T E

2          I, Karen L. Siedlecki, a Notary Public and

3    Certified Shorthand Reporter of the State of New

4    Jersey, do hereby certify that the foregoing is

5    a true and accurate transcript of the testimony

6    as taken stenographically by and before me at the

7    time, place and on the date hereinbefore set

8    forth.

9          I do further certify that I am neither a

10   relative nor employee nor attorney nor counsel of

11   any of the parties to this action, and that I am

12   neither a relative nor employee of such attorney

13   or counsel and that I am not financially

14   interested in this action.

15

16

17   _____
         Karen L. Siedlecki, C.S.R.
18       Notary Public, State of New Jersey
         My Commission expires 2-17-04
19       Certificate No. 2162671

20

21

22

23

24

25
```

**EXHIBIT L**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AGERE SYSTEMS, INC., CYTEC INDUSTRIES INC., FORD MOTOR COMPANY, SPS TECHNOLOGIES, LLC and TI GROUP AUTOMOTIVE SYSTEMS, LLC<br><br>               Plaintiffs,<br><br>       v.<br><br>ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, et al.,<br><br>               Defendants. | Civil Action No. 02-CV-3830 (LDD)<br><br>**PLAINTIFFS' RESPONSES TO JOINT CONTENTION INTERROGATORIES OF ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, ASHLAND, INC., CARPENTER TECHNOLOGY CORPORATION, fcg, inc., HANDY & HARMAN TUBE COMPANY, INC. AND NRM INVESTMENT COMPANY** |

Plaintiffs Agere Systems, Inc., Cytec Industries Inc., Ford Motor Company, SPS Technologies, LLC and TI Group Automotive Systems, LLC ("Plaintiffs"), by their undersigned attorneys, object and respond to the joint contention interrogatories of Advanced Environmental Technology Corporation ("AETC"), Ashland, Inc., Carpenter Technology Corporation, fcg, inc., Handy & Harman Tube Company, Inc. and NRM Investment Company (collectively, "Defendants") as follows:

### GENERAL STATEMENTS AND OBJECTIONS

1.    Plaintiffs object to Defendants' Definitions, Instructions and Interrogatories to the extent that they are not "narrowly-tailored contention interrogatories" as permitted by Judge Davis' June 23, 2005 Order.

2.    Plaintiffs object to Defendants' Definitions, Instructions and Interrogatories to the extent that they seek information outside the scope of the contentions that Plaintiffs will make as part of their prima facie case at trial. Plaintiffs specifically reserve the right to make any factual

76.   What do plaintiffs contend is the Total Cleanup Cost incurred by each plaintiff for each of OU-1 andOU-2?

      **ANSWER:**   See Plaintiffs' response to Interrogatory No. 73.

77.   Do you contend that any Plaintiff has spent, or is obliged to spend for future costs, amounts in excess of its equitable share of the Total Cleanup Cost?

      A.   If so, state what each plaintiff contends to be the amount it has already spent and that it will be obliged to spend.

      **ANSWER:**   See Plaintiffs' response to Interrogatory No. 73. By way of further answer, see Plaintiffs' response to Interrogatory No. 78.

78.   What do plaintiffs contend is Agere's allocable/equitable share of the Total Cleanup Cost for the Site (expressed in a percentage)?

      A.   What is the factual basis for plaintiffs' contention as to Agere's allocable/equitable share of the Total Cleanup Cost for the Site?

      B.   Set forth the calculation used by plaintiffs to arrive at their contention as to Agere's allocable/equitable share of the Total Cleanup Cost for the Site.

Plaintiffs object to this Interrogatory to the extent that it seeks information outside the scope of the contentions that Plaintiffs will make as part of their prima facie case at trial. Plaintiffs further object to this Interrogatory to the extent that it seeks the discovery of the mental impressions, conclusions, strategies, opinions, research or legal theories of their attorneys or other representatives or information protected by the attorney-client privilege or any other applicable privilege. By way of further objection, Defendants' definition of "factual basis" is overbroad and unduly burdensome.

Without waiving any such objections, Plaintiffs will ask the Court at trial to make findings of fact and conclusions of law based upon testimony and documents Plaintiffs will offer into evidence concerning the hazardous substances owned or possessed by those Defendants who have not settled ("the Non-Settling Defendants") that were disposed of at the Site, by Plaintiffs that were disposed of at the Site, and by Plymouth Tube Company, Quikline Design and

Manufacturing Co., Rohm and Haas Company, Simon Wrecking Co., Inc., Unisys Corporation,

United States of America Department of Navy, Novartis Corporation, Techalloy Company,

Inc./Rahns Specialty Metals, Inc., and Emhart Industries, Inc./Crown Metro, Inc. ("Settling

Defendants") that were disposed of at the Site. Plaintiffs will not ask as part of their case-in-

chief that the Court make findings of fact and conclusions of law concerning disposal at the Site

of hazardous substances owned or possessed by any other person or entity.

Plaintiffs will ask the Court to make findings of fact concerning the Non-Settling

Defendants' total volumes of hazardous wastes that were hauled by DeRewal Chemical

Company and/or Environmental Chemical Control (collectively "DCC"). Plaintiffs will then ask

the Court to determine the amount of each Non-Settling Defendants' total volume of waste that

was disposed of at the Site based upon evidence concerning DCC's handling of all its customer

wastes in various time periods ("Nexus Periods") as well as DCC's handling of particular Non-

Settling Defendants' wastes. Plaintiffs will ask the Court to conclude that a specific percentage

of all wastes handled by DCC in any given Nexus Period was disposed of at the Site, and to

apply that percentage to all wastes of Non-Settling Defendants handled by DCC in that Nexus

Period. Set forth below is the testimony and documents Plaintiffs intend to offer into evidence

for the Court's consideration.

Should the Court adopt Plaintiffs' proposed conclusions that specific percentages of all

wastes handled by DCC in any given Nexus Period were disposed of at the Site, then the

Plaintiffs expect that the Court will apply the same nexus percentages to the Plaintiffs and

Settled Defendant's wastes. Exhibit A attached hereto is a chart showing the total volumes of

each Non-Settling Defendant's, each Plaintiff's, and each Settling Defendant's wastes that were

hauled by DCC in each Nexus Period ("Gross" on the chart by "Time" period), the nexus

percentages Plaintiffs will ask the Court to find ("Factor" on the chart), and the volumes that the Court will conclude were disposed of at the Site if those nexus percentages are adopted ("Net" on the chart). The entries for "Ashland/AETC" and "Diaz/AETC" show waste that was hauled by DCC from Ashland and Diaz respectively, the transportation for disposal of which those entities and AETC each arranged. Plaintiffs will ask the Court to allocate the "Ashland/AETC" share jointly and severally to Ashland and AETC and the "Diaz/AETC" share to AETC. The entries for "Etched/Flexible" show waste that was hauled by DCC from the Etched Circuits facility for which Flexible is liable.

Plaintiffs will ask the Court to allocate response costs incurred by them up to a date to be set by the Court among Plaintiffs, Non-Settling Defendants, and Settling Defendants only based primarily upon the respective volume of each party's waste that was disposed at the Site (as set forth more fully below). Plaintiffs will also ask the Court for interest on its response costs. Plaintiffs will also ask the Court to apply this allocation to response costs to be incurred by Plaintiffs after that date.

    A.    <u>Waste Quantities</u>

        1.    *Nexus Periods*

            (a).    1/72 to 12/1/73

Plaintiffs will ask the Court to conclude that 95% of all of the waste handled by DCC beginning in January of 1972 was disposed of at the Site until the opening of DCC's Ontario Street operation in Philadelphia on December 1, 1973. The documents that Plaintiffs intend to rely upon to support this conclusion include, but are not limited to:

- Boarhead Corporation Certificate of Incorporation dated September 2, 1969 [P-5];

- Deed Between Robert and Ruth Buckman and Boarhead Corporation dated October 16, 1969 [P-6];

- DeRewal Chemical Company, Inc. Certificate of Incorporation dated December 29, 1969 [P-7];

- Pennsylvania State Police Investigation Report dated April 26, 1972;

- March 7, 1973 and March 12, 1973 BDOH memorandum;

- Waste Discharge Inspection Report and Site Map dated February 14, 1973 [P-22]

- Waste Discharge Inspection Report dated March 5, 1973 [P-23];

- Agreement Between Boarhead Corporation and Manfred DeRewal dated March 21, 1973 [P-24];

- December 20, 1973 Bucks County Department of Health memorandum;

- PADER November 2, 1973 Order to Boarhead Corporation;

- Waste Discharge Inspection Report dated November 5, 1973

- November 23, 1973 Waste Discharge Inspection Report;

- January 8, 1974 Department of Health Memorandum;

- June 28, 1974 Department of Health memo;

- Complaint in Equity filed on May 31, 1974 in the Court of Common Pleas of Bucks County with an injunction issuing on June 21, 1974;

- Lease Agreement Between Philadelphia Hide Corporation and Manfred DeRewal for 3013-31 East Ontario Street dated November 15, 1973 [P-20]; and

- Affidavit of John Barsum dated April 28, 2000 [D-27].

Plaintiffs also intend to rely upon the testimony of Bruce DeRewal, Freddie DeRewal, Jeff Shaak, John Barsum, John Bean, and June Stephens to support that conclusion. Should one or more of those individuals be unavailable to testify at trial, Plaintiffs intend to offer into evidence the transcripts of the depositions taken in this action of those individuals. Plaintiffs believe that the testimony of those individuals as reflected in those transcripts supports this conclusion, including, but not limited to:

- Bruce DeRewal at 12-38;

- Jeff Shaak at 13-56;

- June Stephens at 20-22, 28-29, 45, 92, 98, 169-71;

- John Bean at 13-24, 45-88;

- John Barsum at 40-43, 51-52, 57-58, 92-93, 206-08, 244-46, 328-30; and

- Freddie DeRewal at 15, 39-58, 129-37.

(b).     12/1/73 to 6/30/75

Plaintiffs will ask the Court to conclude that 15% of all of the waste handled by DCC

after the opening of DCC's Ontario Street operation on December 1, 1973 until the closing of

Ontario Street on or before June 30, 1975 was disposed at the Site. The documents that Plaintiffs

intend to rely upon to support this conclusion include, but are not limited to:

- Lease Agreement Between Philadelphia Hide Corporation and Manfred DeRewal for 3013-31 East Ontario Street dated November 15, 1973 [P-20];

- Letter and Diagram from Thomas J. Kulesza of the City of Philadelphia Water Department to Manfred DeRewal dated September 24, 1974 regarding operations at 3015 E. Ontario Street [P-25];

- Letter from Michael Nelson of the City of Philadelphia Water Department to Manfred DeRewal dated June 2, 1975 regarding cessation of sewer and water services at 3015 E. Ontario Street [P-26];

- June 17, 1975 Philadelphia Water Department letter;

- Waste Discharge Inspection Report dated April 25, 1974;

- Commonwealth of Pennsylvania Complaint in equity on May 28, 1974, which was resolved with an agreed order; and

- February 26, 1975 Waste Discharge Inspection Report.

Plaintiffs also intend to rely upon the testimony of Bruce DeRewal, Freddie DeRewal,

Jeff Shaak, John Barsum, John Bean, Manfred DeRewal, and June Stephens to support that

conclusion. Should one or more of those individuals be unavailable to testify at trial, Plaintiffs

intend to offer into evidence the transcripts of the depositions taken in this action of those

individuals. Plaintiffs believe that the testimony of those individuals as reflected in those

transcripts supports that conclusion, including, but not limited to:

- Fred DeRewal at 113-14;
- June Stephens at 28-29, 92-102, 171;
- John Bean at 47-48, 70-80; and
- Bruce DeRewal at 46-47, 55-56.

    (c).    7/1/75 to 6/1/76

Plaintiffs will ask the Court to conclude that 65% of all of the waste handled by DCC

after the closing of DCC's Ontario Street operation on or before June 30, 1975 and until the

opening of DCC's Wissinoming operation on June 1, 1976 was disposed at the Site. The

documents that Plaintiffs intend to rely upon to support this conclusion include, but are not

limited to:

- Bench opinion filed May 16, 1978 in <u>United States v. Manfred DeRewal, et al.</u> in the United States District Court for the Eastern District of Pennsylvania at Docket No. 77-287;

- Environmental Chemical Control, Inc. Certificate of Incorporation dated October 18, 1976 [P-27];

- July 16, 1975 Waste Discharge Inspection Report;

- Nine criminal complaints filed by BCDOH on January 25, 1976 and February 18, 1976 against Boarhead Corporation and Manfred DeRewal alleging violations of the Pennsylvania Clean Streams Law; and

- Waste Discharge Inspection Report dated April 1, 1976.

Plaintiffs also intend to rely upon the testimony of Bruce DeRewal, Freddie DeRewal,

Jeff Shaak, John Barsum, John Bean, Manfred DeRewal, Linda Cochran, and June Stephens to

support that conclusion. Should one or more of those individuals be unavailable to testify at

trial, Plaintiffs intend to offer into evidence the transcripts of the depositions taken in this action

of those individuals. Plaintiffs believe that the testimony of those individuals as reflected in

those transcripts supports that conclusion, including, but not limited to:

- Freddie DeRewal at 51-52, 125-26, 383-91;

- Linda Cochran at 91;

- Fred DeRewal at 115-17; and

- John Bean at 45-70, 80.

(d).    6/1/76 to March 29, 1977

Plaintiffs will ask the Court to conclude that 15% of all of the waste handled by DCC

after opening of DCC's Wissinoming operation on June 1, 1976 until March 29, 1977 were

disposed of at the Site, except that 25% of the wastes believed by the DCC drivers to consist of

nitrating acids were disposed of at the Site during this period. The documents that Plaintiffs

intend to rely upon to support this conclusion include, but are not limited to:

- Violation Notice to Ed and Linda Cochron regarding premises located at 5001 Comly Street (Bldg. R) dated April 5, 1977 [P-28];

- Agreement between Manfred DeRewal, Environmental Chemical Control, Inc., Environmental Protection Agency and the City of Philadelphia dated May 12, 1977 [P-29];

- BCDOH "Field Action Report" on July 9, 1976;

- A Waste Discharge Inspection Report dated July 30, 1976;

- Bridgeton Police Department complaint of ammonia odor on September 8, 1976; and

- September 20, 1976 memorandum prepared by Arthur Curley.

Plaintiffs also intend to rely upon the testimony of Bruce DeRewal, Freddie DeRewal,

Jeff Shaak, John Barsum, John Bean, Manfred DeRewal, Linda Cochran, and June Stephens to

support that conclusion. Should one or more of those individuals be unavailable to testify at

trial, Plaintiffs intend to offer into evidence the transcripts of the depositions taken in this action

of those individuals. Plaintiffs believe that the testimony of those individuals as reflected in those transcripts supports that conclusion, including, but not limited to:

- Fred DeRewal at 117-22;
- Bruce DeRewal at 142-43;
- Freddie DeRewal at 328-30; and
- Jeff Shaak at 59-61.

 

    2.    *Non-Settling Defendants' Wastes Hauled By DCC*

Carpenter Technology Corporation:

The documents that Plaintiffs intend to rely upon to support their conclusions with respect to Carpenter Technology Corporation include, but are not limited to:

- 6/12/73 contract (Cheri-2) and legal department cover letter (Cheri-1);
- 12/20/73 purchase order (Cheri-3);
- "Waste Acid Removal Cost" chart (Cheri-8);
- "DeRewal Chemical Co. Waste Acid Removal" chart (Cheri-7);
- "DeRewal Chemical Co. 80#228" chart (Cheri-6);
- 10/8/74 Memo (Mann-4);
- 2/25/71 letter (Mann-15);
- Analysis Requests (Mann-3);
- Handwritten notes (Mann-12);
- 7/17/69 Memo (Mann-8);
- 7/8/69 Handwritten telephone note (Adams-2);
- 2/25/70 Memo (Mann-14); and
- Polinko Affidavit.

Plaintiffs also intend to rely upon the testimony of Richard Cheri, William Reger, James Adams, David Mann, Charles Polinko, Robert Elbert, Freddie DeRewal, Bruce DeRewal, June Stevens, John Barsum, and Jurgen H. Exner, Ph.D.  Should one or more of those individuals be unavailable to testify at trial, Plaintiffs intend to offer into evidence the transcripts of depositions taken in this action of those individuals, including but not limited to:

- Cheri 24-27, 33-38, 43-50, 52-56, 70-74;

- Reger 13-24;

- Adams 21-23, 35, 48-59, 67-87;

- Mann 19-21, 57-64, 70-74, 81-89, 95, 105-109, 115-17, 127-33, 145-49;

- Elbert 45-47, 67;

- Freddie DeRewal 132-37, 352-53;

- Bruce DeRewal 39-47;

- June Stevens 95-98; and

- John Barsum 51-52, 92-94.

NRM Investment Co.

The documents that Plaintiffs intend to rely upon to support their conclusions with respect to NRM Investment Co. include, but are not limited to:

- 4/87 business confidential response to EPA;

- February 1975 letter to NJDEP;

- Handwritten document from 1977 detailing hauling NRM waste acid;

- Accounts receivable ledger for 1974-75;

- February 2000 letter to Platt, including attachments;

- Handwritten notes from 1976;

- February 1991 interview notes regarding Minthorn;

- Summaries of bills of lading and accounting;

- May 1986 application for discharge permit;

- May 1984 letter to Valley Forge Sewer Authority;

- November 1989 evaluation of cyanide treatment alternatives with attachments;

- April 1986 letter to EPA;

- 1987 engineering records including handwritten calculations and sample results;

- 1988-89 fact sheet and tables;

- May 1989 proposed wastewater treatment plan;

- 1986 handwritten notes re CN;

- 6/88 handwritten notes;

- Schematic of NRM facility;

- Invoices, pick up tickets, summaries of the same, and

- Other correspondence related to hauling of NRM liquid waste.

Plaintiffs also intend to rely upon the testimony of Santo Quici, Frederick Chesky, Peter Freda, Merle Winters, Fred Piotto, Manfred DeRewal, Freddie DeRewal, John Barsum, Jeff Shaak, June Stevens, Bruce DeRewal and Jurgen H. Exner, Ph.D. Should one or more of those individuals be unavailable to testify at trial, Plaintiffs intend to offer into evidence the transcripts of depositions taken in this action of those individuals, including but not limited to:

- Piotti, 13-14, 20-32, 39-47, 50, 55-60, 64-65, 79-83, 86, 93-95, 97-100, 104;

- Quici 15-18, 22-25;

- Chesky 11-14, 16-17, 21-25, 27, 30-31, 36-37, 40-42, 45-48, 52-55, 56-62;

- Freda 9-10, 12-16, 18-24, 27, 30, 37-40, 43-45, 47-78, 57, 62;

- Winters 10-13, 17-18, 21-28, 31, 36-37, 39-40, 42-43, 47, 59, 68-70;

- Manfred DeRewal 157-60, 410-14, 510;

- Freddie DeRewal 47-50, 52, 58-59, 381-84;

- John Barsum 117-20;

- Jeff Shaak 56-64, 113-14;

- June Stevens 90-92; and

- Bruce DeRewal 39, 86-87.

<u>Advanced Environmental Technology Corporation</u>

*As to AETC Itself*

The documents that Plaintiffs intend to rely upon to support their conclusions with respect to Advanced Environmental Technology Corporation include, but are not limited to, the documents identified with respect to Diaz Chemical Corporation and Ashland Chemical Company below, and the following:

- Correspondence dated August 17, 1976 from ECC to AETC, (AETC51);

- Correspondence dated August 31, 1976 from AETC to DCC, (AETC135);

- Correspondence from AETC to Ashland dated September 28, 1976 (Leuzarder-3);

- Correspondence from John Leuzarder to Manfred DeRewal, dated August 31, 1976, confirming conversation regarding trucking and disposal services (Leuzarder-7);

- DCC invoice dated March 31, 1977 (Leuzarder-9);

- Correspondence dated September 7, 1976 from Leuzarder to DeRewal (Leuzarder-11);

- Correspondence from Susan Lemore to Manfred DeRewal, dated August 23, 1976, confirming conversation regarding required certificate of insurance to be issued to Advanced Environmental Technology Corp. for work to be performed at Ashland Chemical (Leuzarder-13);

- Handwritten notes (undated) referring to sulfuric acid leak at Boarhead Farms (Landmesser-3);

- USEPA's Information Requests to Advanced Environmental Technology Corp. and Advanced Environmental Technology Corporation's Response to Information Requests of USEPA (BSAI022885-022936 and BSAI022975022997);

Plaintiffs also intend to rely upon the testimony of individuals in this case including, but not limited to, the deposition testimony identified with respect to Diaz Chemical Corporation and Ashland Chemical Company below, and the following: Arthur Curley, John Leuzarder and Robert Landmesser. Should one or more of those individuals be unavailable to testify at trial, Plaintiffs intend to offer into evidence the transcripts of depositions taken in this action of those individuals, including, but not limited to:

- Curley: 107, 108, 111, 114-115, 117, 122, 125-130, 157;

- Leuzarder: 37-38, 42, 47, 53, 56-59, 62-68, 70-73, 88-93;

- Landmesser (v.2) 144-147, 151, 154-155, 166-168; (v.1) 56-59, 64-65, 76-78, 86-87, 92, 94-95, 101, 151.

*As to Waste from Diaz Chemical Corporation:*

The documents that Plaintiffs intend to rely upon to support their conclusions with respect to Diaz Chemical Corporation include, but are not limited to:

- Letter Agreement, dated January 7, 1977, between R.W. Landmesser of Advanced Environmental Technology Corp. and Don Hollwedel of Diaz Chemical Corporation extending services (Landmesser-4);

- Correspondence from H.D. Hollwedel of Diaz Chemical Corporation to Robert Landmesser of Advanced Environmental Technology Corp., dated April 14, 1977, confirming Diaz Chemical Corporation as primary source for disposal of its waste nitration acid (Landmesser-5);

- Invoice, dated March 7, 1977, from Advanced Environmental Technology Corp. to Diaz Chemical Corporation (Landmesser-6);

- USEPA's Information Request to Diaz Chemical Corporation (BSAI029281-BSAI029290; BSAI029291-BSAI029293);

- Diaz Chemical Corporation's Response to Information Request of USEPA (BSAI029140-BSAI029277; BSAI029278-BSAI029280);

- Purchase Order dated 5/16/77 (BSAI029294-BSAI029295)

- Acknowledgment of bill of lading dated 5/28/77 (Leuzarder-12);

- Receipts (variously dated) (BSAI029297-BSAI029301)

- Handwritten notes (BSAI029302)

- Portion of document indicating the amount of money and waste streams that were sent to DCC from Ashland Chemical and Diaz (AETC197-199)

Plaintiffs also intend to rely upon the testimony of individuals in this case including, but not limited to, the following: Theodore Jenney, Stanley Chiras, Diane Shampine, Robert Landmesser, John Leuzarder and Jurgen H. Exner, Ph.D. Should one or more of those individuals be unavailable to testify at trial, Plaintiffs intend to offer into evidence the transcripts of depositions taken in this action of those individuals, including, but not limited to:

- Jenney: 32-49;

- Chiras: 20-26, 34-41; 62, 73;

- Shampine: 19-23; and

- Landmesser: (v.2) 161, 177, 185-192, (v.3) 41-42, 46.

Ashland, Inc.

The documents that Plaintiffs intend to rely upon to support their conclusions with respect to Ashland, Inc. include, but are not limited to:

- Correspondence from R.T. Olsen of Ashland Chemical Company to Andrea Barnhouse of A.B.M. Disposal Company, dated August 4, 1976, regarding "best estimate" analysis of its A.C.C. Code 616-220 CDN Spent Acid (ASHL00004);

- Bills of lading, dated 8/9/76-4/12/77 (ASHL00005-00010; ASHL00037-00044; ASHL00048-00065; ASHL00070-00072; ASHL00075-00084; ASHL00000087-00089; ASHL00091-00099; ASHL00105-00110; ASHL00113-00118; ASHL00120-00121; ASHL00124-00126; ASHL00128-00129; ASHL00131; ASHL00133-00139; ASHL00142-00143; ASHL00145-00146; ASHL00148; ASHL00150; ASHL00152; ASHL00154; ASHL00156; ASHL00163-00164; ASHL00166; ASHL00168; ASHL00170; ASHL00172; ASHL00174; ASHL00176; ASHL00178-00180; ASHL00182; ASHL00184; ASHL00186-

00187; ASHL00192-00195; ASHL00197-00212; ASHL00215; ASHL00217-00231; ASHL00233-00234; ASHL00239; ASHL00246-00249; ASHL00251-00252);

- Memorandum from A.T. Curley to W.R. Starkey dated September 16, 1976 (ASHL00066-00069);

- USEPA's Information Requests to Ashland Chemical Company and Ashland Responses to USEPA Information Requests (ASHL00313-ASHL00472 and BSAI005140-005142);

- Invoice from DeRewal Chemical Co., Inc. to Advanced Environmental Tech., dated 4/9/77 (ASHL00249);

- Portions of waste ledger sheets (BSAI024255-024256; BSAI024275-024276; BSAI033916; BSAI033932; BSAI033937-033938; BSAI034142-034143; BSAI034201);

- Bill of lading, dated 4/28/77 (BSAI024001);

- Correspondence from John Leuzarder of Advanced Technology, Inc. to Art Curley of Ashland Chemical Co., dated August 3, 1976 regarding pricing on various waste streams (Curley -1);

- Memorandum, dated August 23, 1976, from A.T. Curley to W. R. Starkey regarding waste chemical disposal (Curley-2);

- Agreement between Advanced Environmental Technology, Inc. and Ashland Chemical Company, undated and unsigned (Curley-4);

- Memorandum to file, dated September 20, 1976, from A.T. Curley regarding visit with current spent acid disposer (Curley-5);

- Memorandum, dated October 19, 1976, from A.T. Curley to J. Minott/W.R. Starkey regarding visit to disposal site for its CDN spent acid (Curley-6);

- Memorandum, dated April 14, 1977, from A.T. Curley to W.R. Starkey regarding CDN spent acid disposal (Curley-8);

- Memorandum, dated May 18, 1977, from A.T. Curley to T. Bailey regarding waste disposal (Curley-9);

- Portion of waste ledger sheet for April 1977 (Curley-11);

- Correspondence from John Leuzarder of Advanced Environmental Technology Corp., Inc. to Art Curley of Ashland Chemical Corporation, dated August 16,

1976, offering reduced pricing on two items covered in its quote of August 3, 1976 (Curley-16);

- Correspondence from Arthur Curley of Ashland Chemical Company to John Leuzarder of Advanced Environmental Technology Corp., Inc., dated October 26, 1976, regarding freeze point of its spent acid (Curley-17);

- Correspondence from John Leuzarder of Advanced Environmental Technology Corp., Inc. to Art Curley of Ashland Chemical Company, dated September 28, 1976, providing quote on extension of services (Curley-18);

- Bill of lading, dated 9/8/76 (C. Hendershot-5);

- Bill of lading, dated 11/4/76 (C. Hendershot-8);

- "Totals Paid DeRewal", (AETC197-199; Leuzarder-5);

- Photographs regarding Ashland Chemical drums and labels found at the site; and

- Sample results regarding contents of drums with Ashland Chemical labels

Plaintiffs also intend to rely upon the testimony of individuals in this case including, but not limited to, the following: Arthur Curley, John Leuzarder, Robert Landmesser, Charles R. Wilcox, Howard L. Hendershot, Charles Hendershot, Alberto Celleri, Freddie DeRewal, John Barsum, Jeff Shaak, Bruce DeRewal, June Stevens, Jurgen H. Exner, Ph.D and Craig Coslett and Geoffrey Siebel of de maximis, inc. Should one or more of those individuals be unavailable to testify at trial, Plaintiffs intend to offer into evidence the transcripts of depositions taken in this action of those individuals, including, but not limited to:

- Curley 44, 46-51, 53-54, 57, 59-60, 71, 110, 133-139, 141-145, 149-148, 167, 193;

- Wilcox 35-36, 37, 72;

- L. Hendershot 21;

- C. Hendershot 31-32, 36, 86, 89, 95;

- Celleri 23-24, 28-29;

- Freddie DeRewal 65-69;

- Jeff Shaak 65-68;

- John Barsum 180-84;

- Bruce DeRewal 80-83; and

- June Stevens 88-89.

Plaintiffs also intend to offer into evidence the transcripts of depositions taken in other

cases, including the deposition of William C. Olasin taken on May 14, 2001 in *Rohm and Haas*

*Co. v. American Cyanamid Co., et al.*, No. 95-1864 and 99-1891 (D.N.J.) 72-75, 158, 201; and

the deposition of Arthur Curley taken on August 21, 1996 in *U.S. v. Davis, et al.*, No. 90-0484/P

(D.R.I.) 35-37, 42, 62-63, 68-69, 83, 90, 108-111, 139-180, 201-205.

fcg, inc.

*As to Waste From Flexible Circuit Facility:*

- All documents recovered from the Bucks County Department of Health files for Flexible Circuits, produced at Bates Range BSAI082378-082771, including, but not limited to, a March 1968 Valley Sewer Authority sample; a June 1968 letter from Edwin Faunce to Flexible Circuits; follow up letters from 10/15/68, 10/16/68, 10/16/68; a February 27, 1969 letter from Flexible Circuits to the PA DER; follow up correspondence between Flexible Circuits and state agencies on 5/15/70; 6/18/70 handwritten notes; 7/7/70 letter from Melvin Bach; a July 1970 proposal from Udyllite; 10/10/70 inspection report; 1/29/71 and 2/22/71 inspection reports and samples; 2/10/71 letter; 7/7/71 complaint; 1/10/72 letter from DeRewal; 5/2/72 and 6/13/72 inspection reports; 6/15/72, 6/19/72, 6/23/72, 7/3/72 letters; 7/10/72, 8/8/72 inspection reports; 7/26/72 letter; 8/17/72 and 9/5/72 reports; a 10/72 agreement; 10/19/72 and 10/25/72 inspection reports; 1/12/73 and 3/12/73 inspection reports; 9/9/74 inspection report; 1/9/75 inspection report; 6/10/77 handwritten notes from BCDH; 9/21/77 and 11/21/77 letters; 4/6/79, 5/24/79, 5/25/79 reports and 5/31/79 response letter; 8/16/79 memo to DER; 10/16/79 letter; 10/17/79 handwritten notes; 2/20/80 letter; 5/5/82 handwritten notes; 6/16/82 letter; 11/3/82 letter; 2/1/83 letter and 1984 handwritten notes; 10/4/84 letter; 1992 inspection report.

- Additional documents not from the Bucks County Department of Health files for Flexible Circuits include 11/6/87 letter from Stollsteimer to EPA; a 10/2/87 letter from Bach to EPA; 9/11/87 letter from Bach to EPA; handwritten notes detailing DeRewal purchases and payments; 10/13/87 handwritten notes by Zia; 1/10/72 letter from DeRewal; 9/22/00 letter from Barbin to EPA; 1/27/86 letter and PPC Plan; 5/27/83 letter; undated Flexible Circuits Inc's promotional materials; the

Flexible Circuits' 1969 Annual Report, multiple DeRewal invoice's and pickup tickets 1973-75.

Plaintiffs also intend to rely upon the testimony of Melvin Bach, George Stollsteimer, Peter Knoll, Ralph Parker, Richard Yeatman, Freddie DeRewal, June Stevens, John Bean, Bruce DeRewal, John Barsum, Jeff Shaak and Jurgen H. Exner, Ph.D. Should one or more of those individuals be unavailable to testify at trial, Plaintiffs intend to offer into evidence the transcripts of depositions taken in this action of those individuals, including but not limited to:

- Bach 8, 15-20, 21-26, 27-30, 34-36, 38, 43, 49-56, 58-63, 65-66, 68, 71-73, 75, 80, 83, 86-89;

- Stollsteimer 10-13, 16-19, 23-25, 30-33, 35, 37, 39-41, 43, 53-61, 63-64, 66-67, 70-71, 77-80, 85-87, 92-94;

- Freddie DeRewal 8-88, 127-29;

- June Stevens 78-83, 107;

- John Bean 60-61;

- Bruce DeRewal 77-79;

- John Barsum 111-18, 154-60, 137-40, 179-80; and

- Jeff Shaak 29-31, 86-87.

*As to Waste From Etched Circuits Facility:*

- All of the documents and testimony listed under Flexible Circuits and in addition, to rely on a 10/2/87 letter from Bach to EPA; 10/24/70 meeting minutes; 4/25/70 meeting notes; 11/2/77 field representative waste survey report; 3/2/73 letter; 9/11/87 letter; 9/4/90 GIS submission; DeRewal invoices; 11/15/88 Inspection Report, 9/28/2000 response to EPA.

Handy & Harman Tube Company, Inc.

The documents that Plaintiffs intend to rely upon to support their conclusions with respect to Handy & Harman Tube Company, Inc. include, but are not limited to:

- 1/7/93 letter to EPA;

- September 1992 Site Investigation;

- 10/29/92 letter to EPA;

- February 1973 DCC invoice;

- Interview notes of Jay Crawford, Mary Kollmar, Thomas Curran; and

- Handy & Harman interrogatory responses.

Plaintiffs also intend to rely upon the testimony of Jay Crawford, Mary Kollmar, Thomas Curran, James McElya, Bruce DeRewal, Freddie DeRewal, John Barsum and Jurgen H. Exner, Ph.D. Should one or more of those individuals be unavailable to testify at trial, Plaintiffs intend to offer into evidence the transcripts of depositions taken in this action of those individuals, including but not limited to:

- Curran 31-32, 48-49, 52-56, 61, 71-71, 84;

- Kollmar 24;

- Bruce DeRewal 43-56;

- Freddie DeRewal 119-23, 397; and

- John Barsum 122, 326-328.

  3.  *Settling Defendants' Waste Hauled By DCC*

Rohm and Haas: There are no documents and no testimony establishing that DCC ever hauled waste from Rohm and Haas.

Unisys:

The documents that Plaintiffs intend to rely upon to support their conclusions with respect to Unisys include, but are not limited to:

- 4/30/72 Invoice to Univac (P-18)

- January 21, 1972 DCC letter to Univac (P-16)

- 3/6/73 Remington Rand Purchase Order

- 4/27/73 Univac Purchase Order

Plymouth Tube:

The documents that Plaintiffs intend to rely upon to support their conclusions with respect to Plymouth Tube include, but are not limited to:

- November 27, 1972 DCC letter to Carpenter Technology (P-32);
- January 10, 1973 letter from Hugh Hawk to EPA;
- DCC invoices dated 1976 (P-15);
- May 24, 1977 letter from Hugh Hawk to PADER.

Quikline Design and Manufacturing Co.:

The documents that Plaintiffs intend to rely upon to support their conclusions with respect to Quikline Design and Manufacturing Co. include, but are not limited to:

- March 1973 DCC Invoice;
- March 2, 1973 letter from DeRewal to Marchewka; and
- 1978 Waste Survey Report

Plaintiffs also intend to rely upon the testimony of Manfred DeRewal and Freddie DeRewal. Should one or more of those individuals be unavailable to testify at trial, Plaintiffs intend to offer into evidence the transcripts of depositions taken in this action of those individuals, including but not limited to:

- Manfred DeRewal at 150-152
- Freddie DeRewal at 361-367

United States Navy:

The documents that Plaintiffs intend to rely upon to support their conclusions with respect to the United States Navy include, but are not limited to:

- 5/17/76 Fumara letter; and

- 9/7/76 Lynn letter

Plaintiffs also intend to rely upon the testimony of Freddie DeRewal. Should Freddie DeRewal be unavailable to testify at trial, Plaintiffs intend to offer into evidence the transcripts of his depositions taken in this action, including but not limited to:

- Freddie DeRewal at 107-10, 368-69

Simon Wrecking Co., Inc.: There are no documents to permit any estimate of total volume of waste hauled in any time period by DCC from Simon Wrecking.

Plaintiffs intend to rely upon the testimony of Freddie DeRewal. Should Freddie DeRewal be unavailable to testify at trial, Plaintiffs intend to offer into evidence the transcripts of his depositions taken in this action, including but not limited to:

- Freddie DeRewal at 112-16, 158-61, 421-22, 423-28

Crown Metro/Emhart:

The documents that Plaintiffs intend to rely upon to support their conclusions with respect to Crown Metro/Emhart include, but are not limited to:

- 12/1/76 DCC letter to Bostik South; and
- 2/25/77 Bostik South letter to DCC

Plaintiffs intend to rely upon the testimony of Freddie DeRewal and Jeffrey Shaak. Should one or more of those individuals be unavailable to testify at trial, Plaintiffs intend to offer into evidence the transcripts of depositions taken in this action of those individuals, including but not limited to:

- Freddie DeRewal at 116-119, 353-361
- Jeff Shaak at 81-83

Novartis:

The documents that Plaintiffs intend to rely upon to support their conclusions with respect to Novartis include, but are not limited to:

- Ciba-Geigy shipping documents (D-25)
- Ciba-Geigy 6/6/76 Purchase Order (D-26)

Thomas & Betts Corporation:  There are no documents and testimony establishing that DCC hauled waste from Thomas & Betts after January 1, 1972.

Techalloy/Rahns:

The documents that Plaintiffs intend to rely upon to support their conclusions with respect to Techalloy/Rahns include, but are not limited to:

- August 1972 DCC invoice to Techalloy (P-37);
- July 14, 1972 DCC quotation letter to Techalloy;
- October 12, 1972 Techalloy letter to PADER (RAHN 0288);
- 11/26/73 Techalloy purchase order to Liquid Removal Service;
- DCC time card for Bruce DeRewal dated 9/21/73;
- DCC time cards for "Walt" dated 11/26 and 11/27/73;
- 5/16/73 PADER Waste Discharge Inspection Report of Techalloy (RAHN-521);
- 10/17/73 PADER Regional Engineer's Review of Techalloy (RAHN-0592-93);
- 6/5/72 Waste Inspection Report of Techalloy;
- August 20, 1971 PADER Waste Discharge Inspection Report of Techalloy (RAHN-0622);
- Techalloy 104(e) response to EPA;
- February 1973 portions of Techalloy accounts payable register (Senin-2);
- Sanitary Sewerage System, Drawing No. S-10 (Moran-1);
- Application for Plumbing Permit to Connect Building to Public Sewer (Moran-2 and RAHN 1251-59); and

- Portions of Weston Technical Report (RAHN-0539- RAHN0555)

Plaintiffs intend to rely upon the testimony of Theodore Hahn, John T. Moran, Sr.,

Freddie DeRewal, Bruce DeRewal, June Stephens, John Bean, and William J. Lehane. Should

one or more of those individuals be unavailable to testify at trial, Plaintiffs intend to offer into

evidence the transcripts of depositions taken in this action of those individuals, including but not

limited to:

- Theodore Hahn at 12-38, 47-51, 59-61, 70-78;

- John T. Moran, Sr.;

- Freddie DeRewal at 129-32

- Bruce DeRewal at 13-16, 35

- June Stephens at 20-22, 63-64, 72-73

- John Bean at 41-46, 59-60

- William J. Lehane, Esquire, Drinker Biddle & Reath

4.    *Plaintiffs' Waste Hauled By DCC*

Agere Systems, Inc.

There are no documents and no testimony establishing that any hazardous waste owned

or possessed by Agere's predecessor, Western Electric, was disposed at the Site.

Cytec Industries Inc.

American Cyanamid was never a customer of DCC. Rather, records indicate that Marvin

Jonas hauled waste for American Cyanamid during the 1970s. The Jonas records reflect,

however, that DCC collected on Jonas' behalf American Cyanamid waste in two distinct time

periods. The documents that Plaintiffs intend to rely upon to support their conclusions with

respect to Cytec include, but are not limited to:

- February 18, 1975 Jonas, Incorporated report to NJDEP otherwise known as "Phylis Jonas Grid", which was identified as Jonas-14 during the June 21, 1995 deposition of Marvin Jonas in the Buzby landfill litigation;

- Marvin Jonas, Inc. Registration Statement for a Solid/Liquid Waste Collector-Hauler dated March 31, 1975, which was identified as Jonas-15 during the June 21, 1995 deposition of Marvin Jonas in the Buzby landfill litigation;

- Marvin Jonas, Portions of Marvin Jonas' handwritten transactional ledger for the year 1976, which are Bates-stamped BSAI071668-BSAI071670;

- Marvin Jonas, Inc. Registration Statement for a Solid/Liquid Waste Collector-Hauler dated May 26, 1977, which was identified as Jonas-11 during the June 21, 1995 deposition of Marvin Jonas in the Buzby landfill litigation;

- American Cyanamid responses to EPA 104(e) Information Requests;

- April 14, 1992 correspondence from Margaret Tribble at American Cyanamid Company to Martha Wilkie Murray at Peterson Consulting Company and attached affidavits from Jonas employees.

Plaintiffs also intend to offer into evidence the transcripts of Marvin Jonas' depositions in the Buzby landfill litigation.

<u>SPS Technologies, LLC</u>

The documents that Plaintiffs intend to rely upon to support their conclusions with respect to SPS Technologies, LLC include, but are not limited to:

- SPS purchase orders, DCC shipping orders and DCC invoices (SPST00137-155, SPST00165-176 and SPST00234;

- November 3, 1992 response to EPA 104(e) Information Request (SPST00090); and

- February 5, 1996 response to EPA 104(e) Information Request (SPST00182);

<u>TI Group Automotive Systems, LLC</u>

There are no documents and no testimony establishing that any hazardous waste owned or possessed by Bundy Corporation was disposed at the Site or was hauled by DCC.

<u>Ford Motor Company</u>

The documents that Plaintiffs intend to rely upon to support their conclusions with respect to Ford Motor Company include, but are not limited to:

- DCC invoices and Ford purchase orders (FORD000009, FORD00010-12, FORD000016, FORD000032-000121, FORD000128, FORD000130-132, FORD000134;

- January 21, 1972 letter from DCC to Mike Margarite (FORD000123);

- Responses to EPA 104(e) Information Requests (FORD000016); and

- Analytical Sampling Results (FORD000032-000121); and

- Waste Characterization Report dated September 26, 2003

Plaintiffs also intend to rely upon the testimony of Craig Coslett and/or Geoffrey Siebel of de maximis, inc.

B.    Allocation

Plaintiffs will ask the Court at trial to allocate response costs primarily based upon the equitable factor of volume of wastes of Plaintiffs, Non-Settling Defendants, and Settling Defendants that were disposed of at the Site. Plaintiffs will also ask the Court at trial to increase the allocation to AETC and Ashland by 10% because those parties knew that Manfred DeRewal had a history of pollution violations and that he intended to dispose of Ashland waste at the Site and because AETC knew that he was in fact disposing of those wastes at the Site. Plaintiffs will also ask the Court at trial to increase the allocation to Carpenter by 10% because Carpenter knew before it contracted with DCC in 1973 to remove Carpenter's wastes that Manfred DeRewal was a principal in DCC and that he had a history of pollution violations. Plaintiffs will also ask the Court at trial to decrease Plaintiffs' share by 50% based upon the fact that Plaintiffs have cooperated with EPA and the Commonwealth of Pennsylvania by, inter alia, settling EPA's past costs claim and conducting the response actions required by the OU-1 and OU-2 Consent

Decrees and because the Non-Settling Defendants did not do so, despite having received notice letters from EPA.

Plaintiffs intend to rely upon the following documents and testimony to support these conclusions:

- Documents and testimony concerning the knowledge and conduct of AETC, Ashland, and Carpenter as set forth in the section "Non-Settling Defendants Wastes Hauled by DCC" above;

- Documents and testimony in the Administrative Record establishing the reasons for EPA's initial response activities at the Site, the study and analysis by EPA of a multitude of COPCs identified at the Site in the RI/FS and otherwise, the distribution of inorganic and organic compounds in soils throughout the Site, EPA's Record of Decision and the process leading to the ROD, and the response actions taken by EPA;

- Testimony of Jay Vandeven (including documents referenced in his expert reports);

- Consent Decrees entered with respect to the Site on or about September 28, 2000 and March 14, 2002.

- Defendants received General Notice Letter and Special Notice Letters from EPA as follows: AETC, Ashland, NRM Investment Company - General Notice Letters in May and July 1989; Carpenter, Etched Circuits, fcg, inc., Handy & Harman - General/Special Notice Letters in September 2000.

Exhibit B attached hereto is a chart showing the volumes that the Court will conclude were disposed of at the Site based upon Exhibit A, and the shares Plaintiffs will ask the Court to allocate to Plaintiffs collectively (based upon aggregating their individual shares, if any, and the individual shares of the Settling Defendants, if any) and to each Non-Settling Defendant. Specifically, the volumetric shares of Carpenter, Ashland/AETC, and AETC (for Diaz waste) were increased by 10% each, and the volumetric shares of all other entities were decreased pro-rata by the total amount of the increase ("Increase to PRPs with Knowledge" on chart). The share otherwise attributable to Plaintiffs was then reduced by 50% and the volumetric shares of the Non-Settling Defendants were increased pro-rata by the total amount of the decrease ("50%

Cooperation Credit to Plaintiffs" on chart). This column sets forth the share Plaintiffs will ask

the Court to allocate to each entity.

79.   What do plaintiffs contend is Cytec's allocable/equitable share of the Total Cleanup Cost
      for the Site (expressed in a percentage)?

      A.      What is the factual basis for plaintiffs' contention as to Cytec's
              allocable/equitable share of the Total Cleanup Cost for the Site?

      B.      Set forth the calculation used by plaintiffs to arrive at their contention as to
              Cytec's allocable/equitable share of the Total Cleanup Cost for the Site.

      **ANSWER:**     See Plaintiffs' response to Interrogatory No. 78.

80.   What do plaintiffs contend is Ford's allocable/equitable share of the Total Cleanup Cost
      for the Site (expressed in a percentage)?

      A.      What is the factual basis for plaintiffs' contention as to Ford's allocable/equitable
              share of the Total Cleanup Cost for the Site?

      B.      Set forth the calculation used by plaintiffs to arrive at their contention as to Ford's
              allocable/equitable share of the Total Cleanup Cost for the Site.

      **ANSWER:**     See Plaintiffs' response to Interrogatory No. 78.

81.   What do plaintiffs contend is SPS' allocable/equitable share of the Total Cleanup Cost
      for the Site (expressed in a percentage)?

      A.      What is the factual basis for plaintiffs' contention as to SPS' allocable/equitable
              share of the Total Cleanup Cost for the Site?

      B.      Set forth the calculation used by plaintiffs to arrive at their contention as to SPS'
              allocable/equitable share of the Total Cleanup Cost for the Site.

      **ANSWER:**     See Plaintiffs' response to Interrogatory No. 78.

82.   What do plaintiffs contend is TI's allocable/equitable share of the Total Cleanup Cost for
      the Site (expressed in a percentage)?

      A.      What is the factual basis for plaintiffs' contention as to TI's allocable/equitable
              share of the Total Cleanup Cost for the Site?

      B.      Set forth the calculation used by plaintiffs to arrive at their contention as to TI's
              allocable/equitable share of the Total Cleanup Cost for the Site.

      **ANSWER:**     See Plaintiffs' response to Interrogatory No. 78.

EXHIBIT A

| Party Defendants | Waste In | Volumetric Share | Increase to PRPs with Knowledge | 50% Cooperation Credit to Plaintiffs |
|---|---|---|---|---|
| | | | 0.1 | 0.5 |
| Carpenter | 913,242 | 39.31% | 43.25% | 47.57% |
| Ashland/AETC | 138,481 | 5.96% | 6.56% | 7.21% |
| Diaz/AETC | 43,275 | 1.86% | 2.05% | 2.25% |
| Flexible | 51,948 | 2.24% | 2.04% | 2.24% |
| Etched/Flexible | 31,625 | 1.36% | 1.24% | 1.24% |
| NRM | 491,500 | 21.16% | 19.27% | 21.20% |
| Handy | 5,899 | 0.25% | 0.23% | 0.25% |
| Total | 1,675,970 | 72.15% | 74.63% | 82.09% |

| Plaintiffs | | | | |
|---|---|---|---|---|
| Cytec | 309,000 | 13.30% | 12.12% | 6.06% |
| Ford | 36,993 | 1.59% | 1.45% | 0.73% |
| SPS | 34,579 | 1.49% | 1.36% | 0.68% |
| Agere | - | 0.00% | 0.00% | 0.00% |
| TI | - | 0.00% | 0.00% | 0.00% |
| Total | 380,572 | 16.38% | 14.92% | 7.46% |

| Settleds | | | | |
|---|---|---|---|---|
| Plymouth | 14,976 | 0.64% | 0.59% | 0.59% |
| Quickline | 1,285 | 0.06% | 0.05% | 0.05% |
| Navy | 437 | 0.02% | 0.02% | 0.02% |
| Simon | 3,025 | 0.13% | 0.12% | 0.12% |
| Unisys | 3,292 | 0.14% | 0.13% | 0.13% |
| Rohm | - | 0.00% | 0.00% | 0.00% |
| Bostik | 7,125 | 0.31% | 0.28% | 0.28% |
| Novartis | 13,450 | 0.58% | 0.53% | 0.53% |
| Techalloy | 222,775 | 9.59% | 8.74% | 8.74% |
| Thomas | - | 0.00% | 0.00% | 0.00% |
| Total | 266,365 | 11.47% | 10.44% | 10.44% |

DMEAST #9522604 v6

EXHIBIT A

| Waste In | | | | | |
|---|---|---|---|---|---|
| | 2,322,907 | 100.00% | 100.00% | 100.00% |

EXHIBIT B

| | Time | Gross | Factor | Net |
|---|---|---|---|---|
| **Flexible** | 1/72-12/73 | - | 0.95 | - |
| Bulk | 12/1/73-6/30/75 | 93,000 | 0.15 | 13,950 |
| Etchant | 7/1/75-6/1/76 | 7,150 | 0.65 | 4,648 |
| | 6/1/76-3/30/77 | 3,900 | 0.15 | 585 |
| | | 104,050 | | 19,183 |
| | | | | |
| Drums | 1/72-12/73 | 34,000 | 0.95 | 32,300 |
| Etchant | 12/1/73-6/30/75 | 3,100 | 0.15 | 465 |
| | 7/1/75-6/1/76 | - | 0.65 | - |
| | 6/1/76-3/30/77 | - | 0.15 | - |
| | | 37,100 | | 32,765 |

| | Time | Gross | Factor | Net |
|---|---|---|---|---|
| **Diaz/AETC** | 1/72-12/73 | - | 0.95 | - |
| Nitric Acid | 12/1/73-6/30/75 | - | 0.15 | - |
| Bulk | 7/1/75-6/1/76 | - | 0.65 | - |
| | 6/1/76-3/30/77 | 173,100 | 0.25 | 43,275 |
| | | 173,100 | | 43,275 |

| | Time | Gross | Factor | Net |
|---|---|---|---|---|
| **Ashland/AETC** | 1/72-12/73 | - | 0.95 | - |
| Nitric Acid | 12/1/73-6/30/75 | - | 0.15 | - |
| Bulk | 7/1/75-6/1/76 | - | 0.65 | - |
| | 6/1/76-3/30/77 | 216,650 | 0.25 | 54,163 |
| | | | | |
| Dye Waste | 1/72-12/73 | - | 0.95 | - |
| Bulk | 12/1/73-6/30/75 | - | 0.15 | - |
| | 7/1/75-6/1/76 | - | 0.65 | - |
| | 6/1/76-3/30/77 | 185,300 | 0.25 | 46,325 |
| | | | | |
| Pthalide Acid | 1/72-12/73 | - | 0.95 | - |
| Bulk | 12/1/73-6/30/75 | - | 0.15 | - |
| | 7/1/75-6/1/76 | - | 0.65 | - |
| | 6/1/76-3/30/77 | 50,000 | 0.25 | 12,500 |
| | | | | |
| CDN Waste | 1/72-12/73 | - | 0.95 | - |
| Bulk | 12/1/73-6/30/75 | - | 0.15 | - |
| | 7/1/75-6/1/76 | - | 0.65 | - |
| | 6/1/76-3/30/77 | 86,410 | 0.25 | 21,603 |
| | | | | |
| Solvents | 1/72-12/73 | - | 0.95 | - |
| Bulk | 12/1/73-6/30/75 | - | 0.15 | - |
| | 7/1/75-6/1/76 | - | 0.65 | - |
| | 6/1/76-3/30/77 | 12,950 | 0.25 | 3,238 |
| | | | | |
| Solvents | 1/72-12/73 | - | 0.95 | - |
| Drum | 12/1/73-6/30/75 | - | 0.15 | - |
| | 7/1/75-6/1/76 | - | 0.65 | - |
| | 6/1/76-3/30/77 | 4,345 | 0.15 | 652 |

EXHIBIT B

| NRM | Time | Gross | Factor | Net |
|---|---|---|---|---|
| NRM | 1/72-12/73 | - | 0.95 | - |
| Pickle Liquor | 4/24/74-6/30/75 | 360,000 | 0.15 | 54,000 |
| Bulk | 7/1/75-6/1/76 | 605,000 | 0.65 | 393,250 |
| | 6/1/76-3/30/77 | 295,000 | 0.15 | 44,250 |
| | | 1,260,000 | | 491,500 |

| Handy | | | | |
|---|---|---|---|---|
| Handy | 1/72-12/73 | 5,020 | 0.95 | 4769 |
| Solvents (TCE, | 12/1/73-6/30/75 | 7,530 | 0.15 | 1129.5 |
| MEK, acetone) | 7/1/75-6/1/76 | - | 0.65 | 0 |
| | 6/1/76-3/30/77 | - | 0.15 | 0 |
| | | 12,550 | | 5,899 |

| Etched/Flexible | | | | |
|---|---|---|---|---|
| Etched/Flexible | 1/72-12/73 | 17,500 | 0.95 | 16,625 |
| Drums | 12/1/73-6/30/75 | 23,000 | 0.15 | 3,450 |
| Etchant | 7/1/75-6/1/76 | 15,000 | 0.65 | 9,750 |
| | 6/1/76-3/30/77 | 12,000 | 0.15 | 1,800 |
| | | 67,500 | | 31,625 |

| Thomas | | | | |
|---|---|---|---|---|
| Thomas | 1/72-12/73 | - | 0.95 | - |
| | 12/1/73-6/30/75 | - | 0.15 | 0 |
| | 7/1/75-6/1/76 | - | 0.65 | 0 |
| | 6/1/76-3/30/77 | - | 0.15 | 0 |
| | | - | | - |

| Carpenter | | | | |
|---|---|---|---|---|
| Carpenter | 1/72-12/73 | 816,658 | 0.95 | 775,825 |
| Bulk | 12/1/73-6/30/75 | 916,114 | 0.15 | 137,417 |
| Pickle Liquor | 7/1/75-6/1/76 | - | 0.65 | 0 |
| | 6/1/76-3/30/77 | - | 0.15 | 0 |
| | | 1,732,772 | | 913,242 |

| Agere | | | | |
|---|---|---|---|---|
| Agere | 1/72-12/73 | - | 0.95 | - |
| | 12/1/73-6/30/75 | - | 0.15 | - |
| | 7/1/75-6/1/76 | - | 0.65 | - |
| | 6/1/76-3/30/77 | - | 0.15 | - |
| | | - | | - |

| TI | | | | |
|---|---|---|---|---|
| TI | 1/72-12/73 | - | 0.95 | - |
| | 12/1/73-6/30/75 | - | 0.15 | - |
| | 7/1/75-6/1/76 | - | 0.65 | - |
| | 6/1/76-3/30/77 | - | 0.15 | - |
| | | - | | - |

EXHIBIT B

| | Time | Gross | Factor | Net |
|---|---|---|---|---|
| **Ford** | 1/72-12/73 | 13,585 | 0.95 | 12,906 |
| Drums | 12/1/73-6/30/75 | - | 0.15 | - |
| Plastics | 7/1/75-6/1/76 | - | 0.65 | - |
| | 6/1/76-3/30/77 | - | 0.15 | - |
| | | 13,585 | | 12,906 |

| | | | | |
|---|---|---|---|---|
| | 1/72-12/73 | 23,595 | 0.95 | 22,415 |
| Drums | 12/1/73-6/30/75 | - | 0.15 | - |
| Finishing Materials | 7/1/75-6/1/76 | - | 0.65 | - |
| | 6/1/76-3/30/77 | - | 0.15 | - |
| | | 23,595 | | 22,415 |

| | | | | |
|---|---|---|---|---|
| | 1/72-12/73 | 1,760 | 0.95 | 1,672 |
| Drums | 12/1/73-6/30/75 | - | 0.15 | - |
| Industrial Waste | 7/1/75-6/1/76 | - | 0.65 | - |
| | 6/1/76-3/30/77 | - | 0.15 | - |
| | | 1,760 | | 1,672 |

| | | | | |
|---|---|---|---|---|
| **Cytec** | 1/72-12/73 | - | 0.95 | - |
| Bulk | 12/1/73-6/30/75 | 193,000 | 0.15 | 28,950 |
| Ammonia | 7/1/75-6/1/76 | - | 0.65 | - |
| | 6/1/76-3/30/77 | 116,000 | 0.15 | 17,400 |
| Based on Driver Testimony | | 309,000 | | 46,350 |

EXHIBIT B

| | Time | Gross | Factor | Net |
|---|---|---|---|---|
| **SPS** | 1/72-12/73 | 7,838 | 0.95 | 7,446 |
| Drums | 12/1/73-6/30/75 | 12,155 | 0.15 | 1,823 |
| Chromic Acid | 7/1/75-6/1/76 | 6,270 | 0.65 | 4,076 |
| | 6/1/76-3/30/77 | 5,858 | 0.15 | 879 |
| | | 32,120 | | 14,223 |
| | | | | |
| | 1/72-12/73 | 8,388 | 0.95 | 7,968 |
| Drums | 12/1/73-6/30/75 | 12,320 | 0.15 | 1,848 |
| Cyanide Waste | 7/1/75-6/1/76 | 6,270 | 0.65 | 4,076 |
| | 6/1/76-3/30/77 | 6,573 | 0.15 | 986 |
| | | 33,550 | | 14,878 |
| | | | | |
| | 1/72-12/73 | 990 | 0.95 | 941 |
| Drums | 12/1/73-6/30/75 | - | 0.15 | - |
| Degreasing Fluids | 7/1/75-6/1/76 | - | 0.65 | - |
| | 6/1/76-3/30/77 | - | 0.15 | - |
| | | 990 | | 941 |
| | | | | |
| | 1/72-12/73 | 165 | 0.95 | 157 |
| Drums | 12/1/73-6/30/75 | - | 0.15 | - |
| Acetone Waste | 7/1/75-6/1/76 | - | 0 | - |
| | 6/1/76-3/30/77 | - | 0.15 | - |
| | | 165 | | 157 |
| | | | | |
| | 1/72-12/73 | 110 | 0.95 | 105 |
| Drums | 12/1/73-6/30/75 | - | 0.15 | - |
| Nickel Waste | 7/1/75-6/1/76 | - | 0.65 | - |
| | 6/1/76-3/30/77 | - | 0.15 | - |
| | | 110 | | 105 |
| | | | | |
| Cyanide Waste | 1/72-12/73 | 4,500 | 0.95 | 4,275 |
| Bulk | 12/1/73-6/30/75 | - | 0.15 | - |
| | 7/1/75-6/1/76 | - | 0.65 | - |
| | 6/1/76-3/30/77 | - | 0.15 | - |
| | | 4,500 | | 4,275 |

EXHIBIT B

| Plymouth | Time | Gross | Factor | Net |
|---|---|---|---|---|
| Plymouth | 1/72-12/73 | 10,604 | 0.95 | 10,074 |
| Bulk | 12/1/73-6/30/75 | 11,667 | 0.15 | 1,750 |
| Pickle Liquor | 7/1/75-6/1/76 | 4,465 | 0.65 | 2,902 |
| | 6/1/76-11/31/76 | 1,665 | 0.15 | 250 |
| | | 28,401 | | 14,976 |

| Quickline | | | | |
|---|---|---|---|---|
| Quickline | 1/72-12/73 | 1,071 | 0.95 | 1017.45 |
| Drums | 12/1/73-6/30/75 | 1,785 | 0.15 | 267.75 |
| Etchant | 7/1/75-6/1/76 | - | 0.65 | 0 |
| | 6/1/76-3/30/77 | - | 0.15 | 0 |
| | | 2,856 | | 1,285 |

| Navy | | | | |
|---|---|---|---|---|
| Navy | 1/72-12/73 | - | 0.95 | - |
| Drums/Carboys | 12/1/73-6/30/75 | - | 0.15 | - |
| | 7/1/75-6/1/76 | - | 0.65 | - |
| | 6/1/76-3/30/77 | - | 0.15 | - |
| Driver Testimony | | - | | 437 |

| Simon | | | | |
|---|---|---|---|---|
| Simon | 1/72-12/73 | - | 0.95 | 0 |
| Bulk/Plastic Drums | 12/1/73-6/30/75 | | 0.15 | |
| Sulphuric Nitrate | 7/1/75-6/1/76 | - | 0.65 | 0 |
| | 6/1/76-3/30/77 | - | 0.15 | 0 |
| Driver Testimony | | | | 3,025 |

| Unisys | | | | |
|---|---|---|---|---|
| Unisys | 1/72-12/73 | 3,465 | 0.95 | 3291.75 |
| Drums | 12/1/73-6/30/75 | - | 0.15 | 0 |
| Etchant | 7/1/75-6/1/76 | - | 0.65 | 0 |
| | 6/1/76-3/30/77 | - | 0.15 | 0 |
| | | 3,465 | | 3,292 |

| Rohm | | | | |
|---|---|---|---|---|
| Rohm | 1/72-12/73 | - | | 0 |
| | 12/1/73-6/30/75 | - | | 0 |
| | 7/1/75-6/1/76 | - | | 0 |
| | 6/1/76-3/30/77 | - | | 0 |
| | | - | | - |

| Bostik | Time | Gross | Factor | Net |
|---|---|---|---|---|
| Bostik | 1/72-12/73 | - | 0.95 | 0 |
| Bulk | 12/1/73-6/30/75 | - | 0.15 | 0 |
| Nitric Acid | 7/1/75-6/1/76 | - | 0.65 | 0 |
| | 6/1/76-3/30/77 | - | 0.25 | 0 |
| Driver Testimony | | - | | 7,125 |

EXHIBIT B

| | CDN Waste | Bulk | 21,603 |
|---|---|---|---|
| | Pthalide Acid | Bulk | 12,500 |
| | Solvents | Bulk | 3,238 |
| | Solvents | Drum | 652 |
| Diaz/AETC | Nitric Acid | Bulk | 43,275 |
| Flexible | Etchant | Bulk | 19,183 |
| | Etchant | Drum | 32,765 |
| Etched/Flexible | Etchant | Drum | 31,625 |
| NRM | Pickle Liquor | Bulk | 491,500 |
| Handy | Solvents | Drum | 5,899 |
| | | | 1,675,967 |

**Plaintiff Totals**

| Cytec | Ammonia | Bulk | 309,000 |
|---|---|---|---|
| Ford | Plastics | Drums | 12,906 |
| Ford | Finishing Mat. | Drums | 22,415 |
| Ford | Industrial Waste | Drums | 1,672 |
| SPS | Chromic Acid | Drums | 14,223 |
| SPS | Cyanide Waste | Drums | 14,878 |
| SPS | Cyanide Waste | Bulk | 4,275 |
| SPS | Degreasers | Drums | 941 |
| SPS | Acetone | Drums | 157 |
| SPS | Nickle Waste | Drums | 105 |
| | | | 380,570 |

**Settled Totals**

| Quickline | Etchant | Drums | 1,285 |
|---|---|---|---|
| Navy | Waste | Drums | 437 |
| Simon Wrecking | Sulphuric Nitrate | Bulk | 3,025 |
| Novartis | Nitric Acid | Bulk | 13,450 |
| Bostik | Nitric Acid | Bulk | 7,125 |
| Techalloy | Waste Oil | Drums | 2,375 |
| Techalloy | Pickle Liquor | Bulk | 220,400 |
| Plymouth Tube | Pickle Liquor | Bulk | 14,976 |
| Rohm | | | - |
| Unisys | Etchant | Drums | 3,292 |
| Thomas | Etchant | Drum | - |
| | | | 266,365 |