IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AGERE SYSTEMS, INC., CYTEC INDUSTRIES INC., FORD MOTOR COMPANY, SPS TECHNOLOGIES, LLC and TI GROUP AUTOMOTIVE SYSTEMS LLC, | : : : : : : | Civil Action No. 02-CV-3830 (LDD) |
| Plaintiffs, | : : | |
| v. | : : | |
| ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, et al., | : : : | |
| Defendants. | : | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
AETC'S MOTION FOR AN ORDER DECLARING EQUITABLE
ALLOCATION OF THE DIAZ CHEMICAL "ORPHAN SHARE" AND IN
SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Agere Systems, Inc., Cytec Industries Inc., Ford Motor Company, SPS

Technologies, LLC and TI Group Automotive Systems LLC (collectively "Plaintiffs") hereby

respectfully submit this Memorandum in Opposition to Defendant Advanced Environmental

Technology Corporation's ("AETC") Motion for Declaration that the Defendant Diaz Chemical

Corporation ("Diaz") "Orphan Share" Be "Equitably" Allocated Among the Plaintiffs and Non-

Settled Defendants and in Support of Their Cross-Motion for Summary Judgment.  AETC seeks

to distance itself yet again from waste for which it *has already been found liable*, this time under

the ruse of "orphan shares."  AETC arranged for the transport and disposal of waste generated by

Diaz Chemical Corporation ("Diaz") that was dumped at the Boarhead Farms site ("the Site").  It

should not now be permitted to slough off liability for that waste to the other parties here, none

of whom had anything to do with that waste. Plaintiffs are also entitled to a summary judgment holding that AETC is jointly and severally liable pursuant to CERCLA § 107(a).

### Discussion

AETC already has been held liable with respect to the waste created by Diaz that was disposed of at the Site. AETC contracted with Diaz to haul and dispose of the waste, then arranged with DCC for DCC to do the work. November 17, 2006 Order. Nevertheless, AETC now asks this Court to rule that some of the liability for the Diaz waste should be shifted to Plaintiffs and the other Defendants, despite the fact that no other solvent party had anything at all to do with that waste. It does so based upon the argument that the Diaz "share" of this waste is an "orphan."

I.    **AETC Should Bear Full Liability For The Diaz/AETC Waste Stream**

    A.    **The Diaz Waste Stream Is Not "Orphaned"**

The operative language in CERCLA is: "In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." 42 U.S.C. §9613(f)(1). "Equitable" simply means: "Just; conformable to the principles of justice and right." Black's Law Dictionary, 5th Edition, 1979. Virtually every opinion written concerning the equitable allocation of liability in a Superfund case has said that there is no such thing as a "standard" allocation. Rather, each case is unique and should be decided fairly and justly upon the basis of its particular facts. *See, e.g., Beazer East, Inc. v. Mead Corp.*, 412 F.3d 429, 446 (3d Cir. 2005).

The entire concept of "orphan share" is questionable, perhaps explaining why courts have typically struggled with the definition and concept of just what is an "orphan share."

Courts overwhelmingly respond to "orphan share" pre-trial motions by simply saying that such shares are to be "equitably" allocated at trial among all liable parties, without discussing or deciding how they will actually allocate those shares. Or, when they have to make a post-trial decision on what, exactly, to do with an "orphan share," courts almost always decide that the share should be divided *pro rata* among all financially viable parties and then ignore it. The practical effect of a *pro rata* allocation is, of course, that the "orphan share" becomes irrelevant, because a *pro rata* allocation of the "orphan share" does not change the share that would otherwise be assigned to a party.[1] *See, e.g., Action Manufacturing Co., Inc. v. Simon Wrecking Co.*, 420 F. Supp.2d 288, 329 (E.D. Pa. 2006). Whether there are entities not a party to the litigation that could potentially be found liable under § 107(a) if they were solvent and what the facts concerning those parties are is thus of no moment, and should not waste this Court's (or the litigants') time. Thus, this Court should ignore "orphan share" arguments, and allocate shares of responsibility equitably among the liable parties before it at trial.

The key and already decided fact is that the Diaz waste stream is not "orphaned"-- AETC is an "arranger" of that waste. AETC contacted with Diaz to haul away and dispose of the waste from Diaz's New York plant. It then contracted with DeRewal Chemical Company ("DCC") to do the work. November 20, 2006 Order at 2-4. There is substantial credible evidence proving that AETC knew or should have known that DCC was dumping waste hauled

---

[1]     For example, if a court determines at a two party trial that it is equitable, based solely on the facts concerning those two parties, for Party A to bear 80% of the responsibility for response costs at issue and for Party B to bear 20%, then it simply doesn't matter whether parties that are not before the court, are insolvent, or both contributed one percent or ninety-nine percent of the waste disposed of at the site but unrelated to Party A or Party B. Parties A and B will be allocated 80% and 20% of the liability with or without *pro rata* distributions of "orphan shares."

for AETC at the Site. *Id*. at 4. No other party (except Ashland) had such knowledge. Diaz is

insolvent. DCC is neither a party nor solvent. *See* Expert Report of Raymond F. Dovell, CPA

attached to the Declaration of Glenn A. Harris as Exhibit A. No other party had anything to do

with the Diaz waste. The Diaz waste thus would not have been dumped at the Site but for

AETC's actions. Equity requires that AETC bear the full responsibility for the Diaz waste; it is

not equitable for AETC to escape this liability simply because Diaz is insolvent.

      Note that AETC fails to actually identify what comprises the Diaz "orphan share."

AETC apparently presumes that this Court will first allocate some share of overall Site liability

to the Diaz/AETC waste stream, then divide that share on some basis between it and Diaz. This

Diaz "orphan share" would then, according to AETC, evaporate using AETC's proposed *pro*

*rata* distribution of the share to Plaintiffs and the other Defendants. However, it would be

perfectly reasonable for this Court to allocate shares to entities based upon the volumes of waste

to which they are connected whether or not another solvent party is also connected to that waste

stream. For example, this Court might equitably conclude that AETC should be allocated 5% of

Plaintiffs' response costs based on the 43,275 gallons of Diaz/AETC waste Plaintiffs contend

was disposed of at the Site, and that another Defendant should also be allocated 5% because

43,275 gallons of its waste was also disposed of at the Site. Each of them, after all, arranged for

the same volume of waste.

### B.    AETC Should Bear the Full Liability for the Diaz/AETC Waste Stream Even If There Is a Diaz "Orphan Share"

      Even if there is a Diaz "orphan" share, AETC's reasons why this Court should

allocate that share *pro rata* to Plaintiffs and all remaining Defendants, rather than just to AETC,

are unpersuasive.

AETC first argues that the "Diaz share" is orphaned in the eyes of EPA because AETC is not an "affiliated party." AETC Brief at 7-8. AETC neglects to mention that the EPA orphan share policy is nothing more than an internal agency guidance applicable *only* in instances where EPA is considering compromising its claims in a settlement. Orphan Share Superfund Reforms - Questions and Answers at 1 (attached as Exhibit 6 to AETC's Brief). The policy permits EPA to deduct up to 25% from its total claim as part of such settlement based on an orphan share. *Id*. at 19. EPA's guidance is not a duly promulgated rule, nor does it purport to interpret or enforce any statutory provision or language. The guidance merely sets up a process that EPA believes *it* should apply to *its* internal decision making. Nothing about the EPA guidance, and certainly not any specific words used by EPA in that guidance, are binding in any way on this Court.

Moreover, because EPA is giving up a substantial amount of its claim, EPA's guidance takes a very restrictive approach to what is an "orphan share." EPA understandably does not want to give orphan share credit to settling PRPs for shares EPA thinks are "affiliated" with viable parties, certainly not with one or more of the potentially settling PRPs. "Affiliated" means: "Closely associated with another typically in a dependent or subordinate position." Webster's Ninth New Collegiate Dictionary, 1986. AETC is unquestionably "closely associated" with both Diaz and the Diaz waste through its contractual relationship with Diaz. EPA's guidance says only that and affiliated party "can include a liable successor corporation …", it does not say that it *only* includes such entities. Nothing in the guidance directly addresses the situation here, where two PRPs each arranged for disposal of the same waste.

AETC's second argument, that it should not be assigned any Diaz orphan share because it is was "merely a broker," is a jaw dropper. AETC has already been held liable with

respect to the Diaz waste under CERCLA Section 107(a)(3) as a person who "by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal for treatment, of hazardous substances owned or possessed by such person," and also has been adjudged liable under the Pennsylvania Hazardous Sites Clean-Up Act. November 17, 2006 Order. In so holding, this Court stated:

> AETC also repeatedly asserts that it is not liable as an arranger because it was a 'broker' between the generators and DeRewal. This assertion also is entirely contradicted by the facts. A broker negotiates and facilitates contracts between parties in exchange for a fee. See Blacks Law Dictionary 7th Ed. (stating also, 'a broker usually does not have possession of the property'). There were no contracts between DeRewal and the generators for AETC to negotiate or facilitate. A broker does not personally enter into a contract with one party, and then hire another party to fulfill its obligation created by the first agreement.

November 17, 2006 Memorandum and Order at 9.[2] AETC's argument that it is only a "broker" for the Diaz waste is not "warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed. R. Civ. P. 11(b).

AETC apparently makes its "mere broker" argument both to suggest that it is not an "affiliated party" under the EPA guidance and to suggest that it is no different from the Plaintiffs and other Defendants, such that the Diaz "orphan share" should be distributed *pro rata* to all remaining parties. Plaintiffs and the other Defendants, though, had nothing to do with Diaz, with the Diaz/AETC waste stream, or with the dumping of that waste at the Site. AETC was intimately involved at each step of the process. AETC's situation is significantly different

---

[2]    AETC's attempt to reargue in its Petition for Certification for Interlocutory Appeal that it was a "mere" broker that never constructively possessed the Diaz and Ashland waste was denied as well. February 7, 2007 Order.

from that of the remaining parties. AETC's mantra that it is a "mere broker" doesn't change that fact.

None of the opinions cited by AETC stands for the proposition that, where two entities each arranged for disposal of a waste stream, the solvent entity can evade some share of the liability for that waste stream simply because the other arranger is insolvent. AETC's suggestion that the court in *Browning Ferris Industries of Illinois, Inc. v. Ter Maat*, 13 F. Supp. 2d 756 (N.D. Ill. 1998) "did not allocate a larger portion of the 'orphan share' to the generators that used the defunct transporters based on some notion that the generator's business dealings with the transporting companies made them liable as 'affiliates' of the defunct companies," is incorrect. AETC Brief at 8. There is no discussion whatsoever in that opinion about whether the "orphan transporters" hauled waste related to the defendant generators, nor is there any discussion about whether those generators were or were not "affiliates" of the transporters. 13 F. Supp.2d at 773. The court only noted that Plaintiffs' expert identified 510,580 cubic yards attributable to "orphan" transporters, and offered the opinion that that share (as well as "orphan" shares related to generators and owners/operators) be distributed on a *pro rata* basis to all parties. *Id.* The court merely accepted that opinion because no one disagreed with it. *Id.*[3]

---

[3]     AETC also misstates several other opinions. The *Action Manufacturing* court concluded that the "fairest way" to divide the orphan share was to allocate it between the plaintiff group and the remaining defendant in proportion to their relative liability at the site. *Action Manufacturing Co., Inc. v. Simon Wrecking Co.*, 420 F. Supp.2d 288, 329 (E.D. Pa. 2006). Any orphan share thus became irrelevant, such that the court made no effort to determine what actual entities or quantities of waste were part of this "orphan share." 428 F. Supp.2d at 329. The court in *United States v. Helen Kramer*, 953 F. Supp. 592 (D.N.J. 1997), held, in deciding a motion seeking a ruling that it could not, as a matter of law, allocate any portion of the "orphan share" to third-party defendants, that it was free under its equitable powers to allocate some or all of the "orphan share" to those parties if it felt doing so was appropriate under the circumstances of that litigation. 953 F. Supp. at

(continued...)

C.    There Is No Such Thing As An "Orphan Share"

Moreover, there is a serious question whether there is such a thing as an "orphan share," especially in the context of the Diaz/AETC waste stream. Arguments about the "orphan share" and who should or shouldn't bear it in a § 113(f) equitable allocation have wasted countless hours of judicial and party resources over the last twenty-plus years. Section 113(f) requires the allocation of response costs "among liable parties." 42 U.S.C. § 9613(f)(1). Congress's use of the word "parties" is in contrast to the language of Section 107(a) defining "persons" who are liable under CERCLA. 42 U.S.C. § 9607(a). This language must mean that shares of response costs can only be allocated to persons that are: (1) parties to the action; *and* (2) actually found liable by the court under Section 107(a).[4] Thus, an entity that is not a "party" to the litigation cannot be "allocated" a share under any circumstances. Similarly, neither can a party to the litigation which is proven to have no assets with which to satisfy a judgment be equitably assigned a share of response costs. This is so because 100% of the response costs at issue in the litigation must, in a contribution case, be assigned to parties able to satisfy those shares. Otherwise, one ore more solvent parties would end up paying less than their equitable

---

(...continued)

601.  AETC's statement that the court held that they "should" be allocated among all liable PRPs is incorrect. AETC Brief at 9. AETC incorrectly states that the court in *SC Holdings, Inc. v. A.A.A. Realty Co.*, 935 F. Supp. 1354 (D.N.J. 1996), ruled that "all parties would be responsible" for "orphan shares." AETC Brief at 10. The court quite clearly states that it is reserving judgment "as to whether the orphaned shares, if any, should be allocated [to the third-party defendants]." 935 F. Supp. at 1374. The court thus ruled only that it would equitably allocate orphan shares as it saw fit at trial. *Id.*

[4]    The Supreme Court in *United States v. Atlantic Research Corporation*, 127 S. Ct. 2331 (2007) twice specifically stated just a few weeks ago that a § 113(f) equitable allocation should be made "among *liable parties.*" 127 S. Ct. at 2338 and 2339 (emphasis added).

shares of the response costs at issue. Diaz is a bankrupt entity. There is therefore no "share" to be allocated to Diaz in the first place and then "orphaned" because of Diaz's inability to pay.

AETC is the only solvent party with any connection to Diaz or to the Diaz/AETC waste stream. AETC is fundamentally different from the remaining parties, such that it should equitably be allocated the responsibility for the Diaz/AETC waste stream. No other party should share in that liability. AETC's motion should therefore be denied.

## II.    AETC Is Liable Pursuant to CERCLA § 107(a)

Plaintiffs have filed a Motion for Leave to Amend Fourth Amended Complaint in response to the recent opinion of the United States Supreme Court in *United States v. Atlantic Research Corporation*, 127 S. Ct. 2331 (2007). The Supreme Court held therein that a PRP who incurs response costs has a direct cause of action for recovery of those costs pursuant to CERCLA § 107(a). 127 S. Ct. at 2339. Plaintiffs have accordingly proposed a Fifth Amended Complaint that asserts a § 107(a) claim with respect to certain of its response costs. Plaintiffs are entitled to judgment as a matter of law upon filing of that Complaint that AETC is liable to them under § 107(a) for such costs.[5]

A plaintiff is entitled to a judgment for joint and several liability against a defendant under § 107(a) where plaintiff establishes four elements: (1) the defendant falls within one of the four categories of covered persons; (2) the site with respect to which response costs were incurred is a "facility"; (3) there is a release, or a threatened release of hazardous substances from the facility into the environment; and (4) the release causes the incurrence of

---

[5]    For a full discussion, *see* Plaintiffs' Memorandum in Support of Motion for Leave to Amend Fourth Amended Complaint.

response costs. 42 U.S.C. § 9607. *United States v. Alcan Aluminum Corp.*, 964 F.2d 252, 258-59 (3d Cir. 1992). Plaintiffs can establish each of these elements with respect to AETC as a matter of law, and are accordingly entitled to entry of a summary judgment that AETC is jointly and severally liable pursuant to § 107(a) to plaintiffs for those costs that plaintiffs ultimately prove at trial to be recoverable pursuant to § 107(a).

With respect to the above:  (1) this Court has already ruled that AETC is a person liable under § 107(a)(3) as a CERCLA "arranger." November 20, 2006 Order at 16.  (2) The Boarhead Farms Site is a "facility." "Facility" means, *inter alia*, "(b) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or will otherwise come to be located; but does not include any consumer product in consumer use or any vessel." 42 U.S.C. § 9601(9).  (3) and (4) There have been multiple releases of hazardous substances from the Site into the environment, and those releases caused the incurrence of response costs.  Two Consent Decrees entered by this Court[6] recite that EPA did a Remedial Investigation and Feasibility Study ("RI/FS") for the Site "in response to a release or substantial threat of a release of a hazardous substance(s) at or from the Site." 2000 Consent Decree at ¶ I(h), 2002 Consent Decree at ¶ I(g).  These recitations establish elements 2-4, which otherwise are beyond dispute.

---

[6] The Court, in entering the Consent Decrees, found that they were negotiated by the parties in good faith, that implementation of the Consent Decree would expedite the clean-up of the Site and avoid prolonged and complicated communications between the parties, and that the Consent Decrees themselves were fair, reasonable, and in the public interest. 2000 Consent Decree at ¶ I(P) and, 2002 Consent Decree at ¶ I(O).

AETC is thus liable as a matter of law to Plaintiffs pursuant to § 107(a).

It is well settled that the common law principles of joint and several liability apply to a § 107(a) claim. *See, e.g., Alcan*, 964 F.2d at 268; *New Castle County v. Halliburton NUS Corp.*, 111 F.3d 1116, 1121 (3d Cir. 1997)(and opinions cited therein). A § 107(a) defendant is jointly and severally liable under those principles unless it can meet its burden to "prove that the harm is divisible and that the damages are capable of some reasonable apportionment." *New Castle County*, 111 F.3d at 1121; *Alcan*, 964 F.2d at 268-69. No doubt based on the virtual unanimity on this rule, the Supreme Court in *Atlantic Research* assumed without deciding that § 107(a) provides for joint and several liability, 127 S. Ct. at 2339, and distinguished between "cost recovery" actions under § 107(a) and contribution actions under § 113(f). *Id.* at 2338.

Plaintiffs are thus entitled to a summary judgment now that AETC is jointly and severally liable for all response costs that this Court determines at trial are recoverable under § 107(a) unless AETC proves at trial that the harm is divisible and that the damages are capable of some reasonable apportionment.[7]

---

[7] Plaintiffs recognize that they must prove at trial that they have incurred "necessary costs of response … consistent with the national contingency plan," and that AETC will have an opportunity to establish a divisibility defense. They also recognize that AETC will have the opportunity at trial to prove divisibility. Plaintiffs are nevertheless entitled to a summary judgment now that AETC is liable pursuant to § 107(a) and that such a claim is for joint and several liability unless a defendant proves divisibility.

## Conclusion

For all the foregoing reasons, and in the interest of justice, AETC's Motion should be denied and Plaintiffs' Cross-Motion for summary judgment should be granted.

Dated: July 26, 2007

Respectfully submitted,

Ballard Spahr Andrews & Ingersoll, LLP

By: _____

Glenn A. Harris, Esquire
Plaza 1000, Suite 500, Main Street
Voorhees, New Jersey 08043
Phone: (856) 761-3400

Attorney for Plaintiffs