# EXHIBIT 'C'



Date Transcribed __February 12, 1993__

ORIGINAL (Red)

THOMAS M. CURRAN was interviewed at his office at Handy & Harmon Tube Company, Inc., Township Line and Whitehall Road, Norristown, PA 19403. The following descriptive information was obtained:

Home Address:
Home Telephone:
Date of Birth:
SSAN:
Employer:    Handy & Harmon Tube Company, Inc.,
             Norristown, PA
             Vice President - Manufacturing

JOHN C. BULLOCK, Esquire, Environmental Counsel, Handy & Harmon, Waterbury, CT, was present for the interview. Mr. Grabill identified himself by displaying his credentials and advised Mr. Curran that the interview concerned his knowledge of the type and extent of a possible relationship between Handy & Harmon Tube Company, Inc. and the Boarhead Farms Site during the period from 1969 to 1977. Mr. CURRAN was also advised that the investigation had been authorized by the U. S. Environmental Protection Agency (EPA), Region III, Philadelphia, PA and that his participation was voluntary. Mr. Grabill informed Mr. CURRAN that no information protected by attorney/client privilege would be sought. Mr. CURRAN agreed to be interviewed and stated that he would be willing to review this statement and, after reviewing it for accuracy, sign the statement.

Prior to the start of the interview, Mr. BULLOCK advised that Handy & Harmon Tube Company, Inc. is a separate corporation and that the parent company is Handy & Harmon, Waterbury, CT. Mr. CURRAN then provided the following information:

Mr. CURRAN stated that he has been employed by Handy & Harmon Tube Company, Inc. for twenty-eight years and that he is currently the Vice President of Manufacturing. During the pertinent period, 1969 to 1977, he was an Assistant in the Production Control Office. As such, he was not responsible for waste disposal. During this period, the Maintenance Department may have been responsible for placing liquid wastes in containers for disposal. The Maintenance Department would have contacted Purchasing to have them contact a hauler. BOB ZIMMERMAN was Maintenance Manager during part of the pertinent period, but he is now deceased. ROBERT BECKER was a Purchasing Agent, possibly in 1972 or 1973, but he is no longer employed by Handy & Harmon, and his location is not known. MARY KOLLMAR is currently Purchasing Manager. She began in the Purchasing Department in 1972 or 1973.

Mr. CURRAN stated that Handy & Harmon Tube Company manufactures stainless steel tubes of various diameters and lengths. Some of the tubing is very small and is used for instrumentation. The raw material is placed in acid baths for a

In rview of __Thomas M. Curran__    On __2/5/93__    JHA File # __90-150__

d by __Richard C. Grabill__    Client File # __CDM Work Asgmt.# C03052__

HEMENWAY ASSOCIATES    A-3    EXHIBIT Curran-2    Form 302 - Interview Re

41

ORIGINAL

pickling process which reduces the size. The steel rods are then drawn through a die and over a mandrel in a cold drawing process to further reduce the size. Mr. CURRAN said that the pickling baths use hydrofluoric acid, hydrochloric acid, sulfuric acid, and nitric acid mixed with water. The acid content ranges from 8% - 18%. Ordinarily the acids are not mixed and are separate baths. Spent acids are taken out by tankers. The hauler, currently and during the pertinent period, is Waste Conversion Systems whose headquarters are in Hatfield, PA. Mr. CURRAN could not estimate the volume of spent acid generated and hauled out from 1969 to 1977.

Mr. CURRAN stated that the product was cleaned with a trichloroethylene bath and annealed in a hydrogen atmosphere. No finish coating was applied. The trichloroethylene was redistilled in-house which generated a sludge. The sludge was placed in 55-gallon drums. During the pertinent period, it may have been hauled out by Delaware Container or Chemclene. To the best of Mr. CURRAN's memory, Chemclene hauled out some of the sludge for recycling at no charge to Handy & Harmon.

Mr. CURRAN recalled the name DeRewal but could not associate the name with hauling out sludge or other wastes. He did not recognize DeRewal Chemical Company invoice number 571, dated 2/5/73, issued to Handy & Harmon Tube Company.

Mr. CURRAN stated that 10W30 and other oils were used in their vacuum furnaces and became a waste stream. This was recycled by outside vendors whom he did not recall. He stated that the volume was not very large.

Mr. CURRAN said that another waste stream was generated by the use of animal fats based, oil based, and rubber based lubricating oils. This waste was collected in 55-gallon drums and picked up by a hauler whom he did not recall.

Mr. CURRAN stated that the finishing operation includes a grinding process lubricated by water which creates a mix of metal particles and water. This mixture must be disposed of, but it is not a hazardous material. Mr. CURRAN advised that the manufacturing process does not generate any copper wastes.

Mr. CURRAN stated that while the name DeRewal was familiar to him, he did not recognize the names DeRewal Chemical Company; Revere Chemical Transport; Revere Chemical Company; Echo, Inc.; MANFRED DEREWAL; NORBERT DEREWAL; JONATHAN DUNN; KAREN BEAN; or any of the other names set forth on page 3, paragraph 5 of the 104(e) letter from the EPA dated September 30, 1992.

Mr. Curran could provide no further information of value, and the interview was terminated.

STATEMENT OF THOMAS H. CURRAN:

I, Thomas H. Curran, have read the above statement; and it is true and accurate to the best of my recollection. I have voluntarily signed this page and have initialed all corrections and each of the above pages to attest to the accuracy of this statement. No threats or promises have been made to me, and no coercion of any kind has been used to make me sign this statement.

Date: _____   Signature: _____

Boarhead Farms Site
Curran, Thomas H.
Page 2

A-4