# EXHIBIT 'G'

**Interrogatory No. 3:**

For each facility identified in response to Interrogatory No. 1 above, identify the following:

(a) Address;
(b) Distance of facility from the Site;
(c) Years you owned or operated the facility;
(d) Your predecessor at the facility;
(e) Your successor at the facility;
(f) Years your immediate predecessor and immediate successor owned or operated the facility;
(g) A complete description of the types of manufacturing, storage and disposal activities which occurred at the facility, including a description of each waste stream generated at the facility;
(h) Copies of all Federal, State and local permits that relate to any waste stream described above;
(i) The names of person(s) presently or formerly employed by you who have the most knowledge about the subject matter of the Interrogatories, and state the time period employment and the positions held;
(j) The total number of employees at each facility during the relevant time period and a description of any personnel changes during the relevant time period;
(k) Any documents, including without limitation, photographs, paintings, drawings, sketches, models, reproductions, that depict or purport to depict the exterior of the facility; and
(l) All documents that refer to, relate to, support or contradict your response to this interrogatory and its subparts.

**Response:**

Handy & Harman Tube Company incorporates by reference its General Objections as if set forth at length herein. Handy & Harman Tube Company further objects to this interrogatory on the grounds that it is overbroad and unduly burdensome. Handy & Harman Tube Company further objects to this interrogatory on the ground that storage and disposal at its premises is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Handy & Harman Tube Company further objects to this interrogatory on the ground that it seeks information outside the Relevant Time Period and is therefore irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, Handy & Harman Tube Company responds to subparts (a) through (k) as follows with respect to the Relevant Time Period:

(a) 701 W. Township Line Road, Norristown, Pennsylvania 19403.
(b) Unknown.
(c) 1963 to present.
(d) Posen & Kline Tube Company, Inc. of Norristown, Pennsylvania.
(e) None.
(f) As to predecessor– 1948 to 1958; as to successor– not applicable.

8

(g) Handy & Harman Tube Company manufactures small-diameter precision tubing made from tube hollows (*e.g.* 1 ¼" O.D./1" I.D. or 2" O.D./1" I.D.) of stainless steel, carbon and various alloyed steels ("Raw Stock"). Manufacturing waste was temporarily stored in 55-gallon drums and tanks which were removed/emptied by waste removal companies. The manufacturing waste consisted of spent TCE/still bottoms, TCE contaminated lubricants and spent acids. Office trash and trash from manufacturing operations were disposed of in an on-premises dumpster which was removed by a waste removal company. No disposal activities occurred at the facility.

(h) None.

(i) <u>Larry Rees</u> (current employee)

| | |
|---|---|
| July 1975 | Production Operator |
| 1979 | Supervisor, Small Tube |
| 1984 | Manager Small Tube & Capillary (title changed to Business Unit Manager, Capillary) |
| Currently | Foreman, Capillary Division |

<u>Mary Kollmar</u> (current employee)

| | |
|---|---|
| October 1972 | Purchasing Clerk |
| 1981 | Junior Buyer |
| Mid-1980s | Senior Buyer/Purchasing Agent |
| 1992 | Purchasing Manager |

<u>Thomas Curran</u> (Retired)

| | |
|---|---|
| 1964 | Lab services |
| 1970 | Production Control Office Assistant |
| 1973 | Supervisor of Production Control |
| 1984 | Director of Production and Engineering |
| Early 1990s | Vice President of Manufacturing for Tune Group |
| 1998 | Vice President of Operations for Tube Group |

(j) Approximately 250 employees. No personnel changes occurred other than retirements, separations and new hires in the normal course of business.

(k) The search for items responsive to this request continues.

(l) *See* objections set forth above.

9

**Interrogatory No. 6:**

For each waste stream referenced above in your response to interrogatory number 3(g) which you believe, have reason to believe or surmise was sent directly or indirectly to the Site or which is referenced in any document relating to the Site or which was handled by a Transporter, unless you can demonstrate that such waste stream handled by such Transporter, was, in its entirety, taken directly to a site or sites other than the Site, state or provide a good faith estimate of:

(a) A complete description of the process creating the waste stream, noting any changes in the process that occurred during the Relevant Time Period and the points in the process where the waste stream was generated, and including, without limitation, the raw materials used and byproducts or off-spec material generated in the process that produced the waste stream and, if the composition of the raw material is not clearly identifiable from its name, provide material safety data sheets or equivalent documentation;

(b) The specific source, nature, formulation and constituents of each waste stream including, without limitation, any constituent that, based on its mishandling, may have become part of a waste stream, the physical state of the waste stream (e.g. liquid, gas, solid, semi-solid). The chemical content of the waste stream and the chemical, generic, trade, brand or other name for the waste. If you contend that a constituent evaporated or was neutralized, the basis for this contention must be explained in full;

(c) The amount of each waste stream produced per year during the Relevant Time Period.

(d) The receptacle used to collect each waste stream including: (1) a description of the receptacle, including without limitation each bin, box, drum, dumpster, tank, sump, catch basin, reactor, tanker, pipe, pit, ditch, roll off, bag, barrel and lagoon; (2) the size of each receptacle; (3) the supplier of each receptacle (i.e. your company or another person); (4) the location of each receptacle; and (5) the frequency at which each receptacle was emptied;

(e) The equipment used to remove the waste from each receptacle including: (1) a description of the type of equipment; (2) the amount of waste the equipment removed or could remove; and (3) whether any equipment used to remove each waste stream was owned or operated by the facility or another person, and, if owned or operated by another person, the identity of that person.

Identify all documents that refer to, relate to, support or contradict your response to this interrogatory and its subparts.

**Response:**

Handy & Harman Tube Company incorporates by reference its General Objections as if set forth at length herein. Handy & Harman Tube Company further objects to this interrogatory on the grounds that it is vague, overbroad and unduly burdensome. Handy & Harman Tube Company further objects to this interrogatory on the ground that it calls for speculation. Handy & Harman Tube Company's responses are limited to facts within the knowledge of either current or former employees. Handy & Harman Tube Company further objects to this interrogatory on

12

the ground that it seeks information outside the Relevant Time Period and is therefore irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections and limitations, Handy & Harman Tube Company responds as follows with respect to the Relevant Time Period:

Handy & Harman Tube Company does not believe nor does it have reason to believe that any of its waste was sent to the Site. Handy & Harman Tube Company's office waste and manufacturing waste were removed and disposed of by William O'Hara Garbage Services. The spent acids were removed and disposed of by Waste Conversion Systems.

(a) Waste stream: Spent TCE and TCE contaminated lubricants:

Manufacturing procedures vary slightly from product to product. The following is an accurate generalization of the manufacturing of most products.

(1) Cold Draw – A 20-foot piece of Raw Stock is drawn through a die in order to make a longer and thinner tube. The tube is lubricated as it goes through the die.
(2) Degreasing – After the tube completes the cold draw, it is put through the degreaser to clean off any residual lubricants that remain on the tube. The degreaser uses TCE which is distilled for reuse.
(3) Annealing – After the degreasing, the tube is annealed.
(4) Pickeling – The tube is then placed in an acid bath to remove rust and scale from the outside of the tube and etch the surface.
(5) Steps (1) through (4) are repeated until the tube meets the specifications of the customer. Once the specifications have been met, the last run through of the process stops at the annealing stage.

(b) Spent TCE/still bottoms:

50% spent TCE
50% contaminants (*e.g.* lubricants, metal fines, solid impurities)

TCE contaminated lubricants:

Lubricants contaminated with residual TCE from cleaning tooling (*i.e.* dies) at the benches and a small amount from the degreasing process.

(c) Spent TCE/still bottoms:

No documentation exists on which to base a good faith estimate. Former employees best able to give a good faith estimate are deceased.

TCE contaminated lubricants:

No documentation exists on which to base a good faith estimate. Former employees best able to give a good faith estimate are deceased.

13

(d) <u>Spent TCE/still bottoms</u>:

(1) Drums.
(2) 55-gallons.
(3) Unknown at this time.
(4) Stored on premises pending removal.
(5) No documentation exists on which to base a good faith estimate. Former employees best able to give a good faith estimate are deceased.

<u>TCE contaminated lubricants</u>:

(1) Drums.
(2) 55-gallons.
(3) Unknown at this time.
(4) Stored on premises pending removal.
(5) No documentation exists on which to base a good faith estimate. Former employees best able to give a good faith estimate are deceased.

(e) <u>Spent TCE/still bottoms</u>:

Drums were removed from Handy & Harman Tube Company's premises by waste removal companies, including Lightman Drum, ChemClene and Delaware Container.

<u>TCE contaminated lubricants</u>:

Drums were removed from Handy & Harman Tube Company's premises by waste removal companies, including Lightman Drum, ChemClene and Delaware Container.

No documents referring to, relating to, supporting or contradicting the foregoing responses exist for the Relevant Time Period.

14