IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AGERE SYSTEMS, LLC, et al.,

                Plaintiffs,

v.

ADVANCED ENVIRONMENTAL
TECHNOLOGY CORPORATION, et al.,

                Defendants.

CIVIL ACTION NO.
02-cv-3830 (LDD)

## REPLY MEMORANDUM ON BEHALF OF DEFENDANT HANDY & HARMAN TUBE COMPANY, INC. IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

In an effort to defeat Handy & Harman Tube Company, Inc.'s ("H&H Tube") motion for summary judgment, plaintiffs, Agere Systems, Inc., Cytec Industries, Inc., Ford Motor Company, SPS Technologies, LLC and TI Group Automotive Systems, LLC ("Plaintiffs"), have, in scattershot fashion, attempted to portray H&H Tube as a generator of multiple waste streams that were disposed of at the Boarhead Farms Superfund Site ("Site"). In their desperation to escape summary judgment, Plaintiffs' opposition papers present this Court with unauthenticated, inadmissible documents containing double hearsay; incomplete and misleading citations to deposition testimony and totally unsubstantiated factual allegations that are not supported by affidavit, deposition testimony or any other evidence admissible in connection with a summary judgment motion.

As demonstrated in H&H Tube's moving papers, the only document that purports to connect H&H Tube with DeRewal Chemical Company ("DCC")[1] is a 1973 invoice – the

---

[1] DCC is the entity that Plaintiffs claim hauled waste from various sources, including, but not limited to the Plaintiffs' facilities, to the Site.

authenticity of which has never been established.[2] Nevertheless, the only waste referred to in the 1973 invoice (purportedly issued by DCC to H&H Tube) is described as "Industrial Waste Solution." The volume of "Industrial Waste Solution" reflected by the 1973 Invoice is 5,260 gallons. In Plaintiffs' response to Defendants' Joint Contention Interrogatories, Plaintiffs contend that the total volume of waste from H&H Tube that was disposed of at the Site was 5,899 gallons, a figure not far from the total gallons on the invoice. Plaintiffs do not address this volume issue in their opposition papers. Instead, Plaintiffs attempt to convince this Court by innuendo that there was a plethora of waste generated at H&H Tube that somehow wound up at the Site. An example of Plaintiffs' request by innuendo that this Court make the illogical leap and conclude that because wastes were generated at H&H Tube's manufacturing facility, they made their way to the Site appears at page 14 of Plaintiffs' opposition brief ("Opp. Br."). There, Plaintiffs list a number of wastes that were generated at H&H Tube's facility and then state "all of these wastes were drummed and hauled away from the H&H facility for disposal." This statement itself is correct. However, Plaintiffs request that this Court conclude that the waste streams described were disposed of at the Site by DCC is not supported by the record.

Plaintiffs ask this Court to make and then use completely unsupported inferences to deny H&H Tube's motion for summary judgment. This request should be rejected. For the reasons set forth below and in H&H Tube's moving papers, summary judgment dismissing Plaintiffs' claims against H&H Tube should be granted.

---

[2] See Footnote 2 in H&H Tube's Opening Memorandum in Support of Its Motion for Summary Judgment ("Opening Mem.") at page 8.

## ARGUMENT

### I. Plaintiffs' Reliance on Inadmissible Hearsay Documents Should Be Rejected

Throughout Plaintiffs' opposition papers, they repeatedly refer this Court to two unsigned summaries of interviews with former H&H Tube employees, Thomas Curran ("Curran") and Jay Crawford ("Crawford").[3] *See* Opp. Br. and Certification of Amy M. Trojecki ("Trojecki Cert."), Exhibits A and C. It is well established that a Court, in considering a motion for summary judgment, only considers evidence that would be admissible at a trial.[4] Rule 56(e) specifically contemplates that only competent, admissible evidence should be considered. Rule 56(e) provides:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. ...

The requirement that only admissible evidence is to be considered in connection with a summary judgment application has been repeatedly recognized. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n.17 (1970); *Dole v. Elliot Travel & Tours, Inc.*, 942 F.2d 962, 968-969 (6th Cir. 1991). The unsigned and unsworn 1993 interview summaries attached as Exhibits A and C to the Trojecki Cert. do not come near satisfying the foregoing requirement.

Exhibits A and C were prepared by a third party purportedly setting forth a "summary" of what the interviewees, Curran and Crawford, said. If they were signed, they would be inadmissible hearsay. In their current form, they are inadmissible double hearsay. And,

---

[3] Crawford is deceased. He was never deposed in this action.

[4] Simultaneously with the filing of the within motion for leave to file a reply brief, H&H Tube has also filed a motion to strike Exhibits A and C to the Trojecki Cert. and all references to those exhibits in Plaintiffs' opposition papers.

3

although Curran was deposed in this case, he was not asked to adopt the unsigned and unsworn 12 year old "summary"[5] as being true, complete or accurate.

In *United States v. Benson*, 961 F.2d 707 (8th Cir. 1992), the court, in an almost identical situation, found the unsigned and unsworn documents to be inadmissible double hearsay. The *Benson* Court stated:

> The hearsay exception of past-recorded recollection under Fed.R.Evid. 803(5) is not applicable because the requirement of Rule 803(5) that the records be made or adopted by the witness has not been met. The two interviews ... were not reported verbatim and they were unsigned and unsworn by [the witness]. Thus, both reports constitute inadmissible double hearsay....

*Benson*, 961 F.2d at 708. *See also Mays v. Rhodes*, 255 F.2d 644, 648 (8th Cir. 2001) ("While we review the record in the light most favorable to Mays as the non-moving party, we do not stretch this favorable presumption so far as to consider as evidence statements found only in inadmissible hearsay. *See* Fed.R.Civ.P. 56(e); *Cronquist v. City of Minneapolis*, 237 F.3d 920, 927 (8th Cir. 2001) (holding that affidavits based on hearsay cannot defeat a summary-judgment motion)").

The Court should reject in its entirety Plaintiffs' attempt to rely on Exhibits A and C.

## II. The Out-of-Context, Incomplete, Distorted and Misleading Deposition Citations to the Testimony of DCC Employees Presented By Plaintiffs Do Not Provide a Basis for Denying H&H Tube's Motion for Summary Judgment

Throughout their opposition papers, Plaintiffs grossly distort the deposition testimony of Freddie DeRewal, Jr. ("DeRewal Jr."), Bruce DeRewal ("B. DeRewal") and John Barsum ("Barsum") in an attempt to defeat H&H Tube's motion for summary judgment. When the deposition testimony is viewed in its proper context, Plaintiffs have presented no basis for denying H&H Tube's motion for summary judgment.

---

[5] Curran was deposed on December 2, 2004.

A. <u>DeRewal Jr.</u>

At page 2 of their brief, Plaintiffs state "Freddie DeRewal testified that he personally picked up H&H Tube's spent acids and disposed of them at the Site." Plaintiffs' footnote immediately following this statement reads "Even H&H Tube's own expert, Dr. Kirk W. Brown, Ph.D. acknowledged this testimony." Both of these statements are grossly misleading. DeRewal Jr.'s testimony was that he picked up one bulk load but that he did not know what type of waste he picked up. DeRewal Jr. testified in response to Plaintiffs' questions as follows:

**HARRIS:** Q. All right. Did anybody tell you there what it was that was being loaded?

**DeREWAL:** A. No, I have no idea.

Q. Did you see the stuff?

A. No, I did not.

Q. How many times did you go to that facility to pick up waste?

A. I can't remember.

Q. At least once?

A. At least once.

Trojecki Cert., Exhibit D at 122:8-17. Thus, it is clear that DeRewal Jr. had no knowledge of the type of waste that he claimed he picked up on one occasion at H&H Tube.

Additionally, Plaintiffs statement regarding Dr. Brown's opinion is also misleading. In his report, Dr. Brown stated that DeRewal Jr.'s deposition testimony set forth above was the only suggestion in all of the record that H&H Tube bulk waste was disposed of at the Site. *See* Declaration of Melissa E. Flax in Support of Motion for Summary Judgment, dated July 17, 2007 ("Flax Decl."), Exhibit C, p.12, ¶35. Dr. Brown further stated that the overwhelming testimony was that all of H&H Tube's bulk acid wastes were picked up by known transporters who were doing that work since 1965. Dr. Brown's report states:

5

> The former and current employees of the Handy & Harman Facility who gave deposition testimony uniformly testified that (1) the bulk waste at the Handy & Harman Facility was spent acid; (2) the spent acid bulk waste was hauled from the Handy & Harman Facility by Waste Conversion Systems as early as 1965-1970 (Curran, 2004, pg.16-17); and (3) Waste Conversion Systems had a number of successors, each of whom continued to haul spent acid bulk waste from the Handy & Harman Facility continuously from the 1970s through the present (Handy & Harman, 2004a).

Flax Decl., Exhibit C, p.12, ¶35.

Plaintiffs' misleading citations to DeRewal Jr.'s testimony and to Dr. Brown's report do not supply a basis for creating a material issue of fact sufficient to defeat H&H Tube's motion for summary judgment.

Moreover, in answering Defendants' Joint Contention Interrogatories, Plaintiffs assert that the total volume contributed by H&H Tube is 5,899 gallons without indicating whether the gallons were bulk or drums. Flax Decl., Exhibit L. To the contrary, with respect to the waste generated by other parties (*i.e.* Plaintiffs, other Defendants and Settled Defendants), Plaintiffs clearly indicated in their answers to the contention interrogatories how many gallons of bulk waste and how many gallons of drummed waste Plaintiffs' claim each party contributed to the Site. *See* Flax Decl., Exhibit L at Ex. B. For example, Plaintiffs cite for Ashland/AETC five different types of bulk waste and then one type of drummed waste. *Id.* For NRM and Carpenter, Plaintiffs cite only to bulk waste. *Id.* For Ford, Plaintiffs cite to three different types of drummed waste. *Id.* For Cytec, Plaintiffs cite to bulk waste. *Id.* If Plaintiffs' contention is that H&H Tube's total gallons are 5,899 is combined with their claim that bulk waste from H&H Tube was disposed of at the Site, the inescapable conclusion would be that one (1) tank truck of H&H Tube bulk waste (tankers typically hold 5,000 to 6,000 gallons) was disposed of at the Site. Such a conclusion is defeated by Plaintiffs' assertion that the 1973 invoice reflects drummed waste from H&H Tube (*i.e.* industrial waste solution) having been disposed of at the Site, it is

also defeated by the fact that the record is replete with evidence that H&H Tube's bulk waste was hauled from its facility by Waste Conversion Systems and its successors entities. Flax Decl., Exhibit C, p.12; Reply Declaration of Melissa E. Flax in Further Support of Handy & Harman Tube Company, Inc.'s Motion for Summary Judgment ("Flax Reply Decl."), Exhibit A at 17, 44.

The notion that bulk waste was hauled from H&H Tube's facility to the Site is nothing more than an unsupported red herring.

### B. B. DeRewal

At page 5 of their Opp. Br., Plaintiffs assert that B. DeRewal testified that he picked up drums from H&H Tube and that he remembered "disposing of H&H Tube drums of waste at the Site." This is a complete misstatement of his testimony. As set forth in H&H Tube's Opening Mem., B. DeRewal testified on examination by Plaintiffs' counsel that he did not know if the drums that went back to the Site were disposed of at the Site – he simply dropped the truck with the drums at the Site. Flax Decl., Exhibit K at 50:16-52:4; 55:21-56:21; Opening Mem. at p.10, ¶¶25-26. B. DeRewal's testimony does not present any reason for denying H&H Tube's summary judgment motion.

### C. Barsum

At pages 5-6 of their Opp. Br., Plaintiffs cite to the deposition testimony of Barsum. That citation is offered to convince this Court that the drummed waste that Barsum picked up on one (1) occasion was disposed of at the Site. It is also offered in support of Plaintiffs' request that this Court infer that all of H&H Tube's drummed waste was disposed of at the Site. Plaintiffs' citation to Barsum's testimony is intentionally misleading. Barsum's testimony is the direct opposite. Barsum testified that the drummed waste he allegedly picked up from H&H Tube on that one occasion was disposed of at Ontario Street in Philadelphia and not at the Site. Barsum testified as follows:

| | | |
|---|---|---|
| **HARRIS:** | Q. | -- do you think that you personally went to a place called Handy & Harman in, near Norristown? |
| **BARSUM:** | A. | One time, that's all, Glenn. That's where it was at, Norristown, not Jenkintown. I'm sorry, I said Jenkintown. That was Standard. |

\*     \*     \*     \*

Q. Now, that we're focusing on this Handy & Harman --

A. One time though.

\*     \*     \*     \*

Q. What did you pick up the time you went there?

A. Drums.

Q. How many?

A. Fifteen, 10 or 15.

Q. Are you just guessing?

A. Twelve, 15. Maybe 25. I don't know.

Q. You don't remember, is that a fair statement?

A. I'm saying it -- yeah, it wasn't no full trailer load.

Q. Okay.

A. Could have been 20; 15, 20.

\*     \*     \*     \*

Q. Where did you take those drums to be disposed?

A. Philadelphia, Ontario.

Flax Reply Decl., Exhibit B at 326:20-24; 327:5-7; 327:11-23; 328:12-14.

Barsum's testimony has nothing to do with the Site. The fact that Plaintiffs cite to Barsum's testimony highlights the total weakness of their position.

8

In addition to the foregoing, neither DeRewal Jr., B. DeRewal nor Barsum provided any testimony that they had knowledge of the make-up of any of the wastes they each allegedly hauled.

The out-of-context, incomplete, distorted and misleading deposition citations to the testimony of DCC employees presented by Plaintiffs do not create a genuine issue of material fact. H&H Tube's motion for summary judgment should be granted.

III. **The Out-of-Context, Incomplete, Distorted and Misleading Deposition Citations to the Testimony of H&H Tube Former Employees Presented By Plaintiffs Do Not Provide a Basis for Denying H&H Tube's Motion for Summary Judgment**

In addition to the unpersuasive arguments advanced by Plaintiffs based upon their incomplete and inaccurate citations to the deposition testimony of DeRewal Jr., B. DeRewal and Barsum, and to the expert report of Dr. Brown, Plaintiffs completely mischaracterize the testimony of H&H Tube former employees. The deposition testimony of Curran and Mary Kollmar ("Kollmar") directly contradicts Plaintiffs "factual" assertion that the term "Industrial Waste Solution" was coined by DCC and foreign to H&H Tube. Similarly, both Curran and Kollmar testified that they had absolutely no knowledge of the relationship between H&H Tube and DCC, contrary to what Plaintiffs have suggested to this Court.

A. **H&H Tube Former Employees' Knowledge of Industrial Waste Solution**

In their opposition, Plaintiffs assert that no one from H&H Tube knows what "Industrial Waste Solution" is and that the phrase "Industrial Waste Solution" was a term created by DCC. Opp. Br. at pp.3, 8, and 18. On examination by Plaintiffs' counsel, Curran identified Curran-1 during his deposition. Curran-1 is a January 7, 1993 letter from Curran to the USEPA, in which he identifies the "Industrial Waste Solution" at page 1. Flax Reply Decl., Exhibit C. The letter stated that H&H Tube generated a "waste stream that was designated "Industrial Waste Solution" [which] was also shipped out for disposal." *Id.* Furthermore, as set forth in paragraphs 6

9

through 8 of the Statement of Facts section of H&H Tube's Opening Mem., Curran testified in detail at his deposition as to the constituents of the "Industrial Waste Solution." *See* Flax Decl., Exhibit B at 53:20-55:14.

Moreover, contrary to Plaintiffs' assertion at page 8, Kollmar, an office worker having nothing to do with plant operations, testified that she did not recall whether H&H Tube used the term "Industrial Waste Solution," not that "she never heard of the term." Trojecki Cert., Exhibit B at 33:24-34:2. This, of course, is not surprising in view of the fact that Kollmar was an employee in the purchasing department and was not involved with manufacturing operations. Trojecki Cert., Exhibit B at 9:12-10:9.

Notwithstanding the fact that Manfred DeRewal, Sr. claimed he did not know what was meant by "Industrial Waste Solution," (*see* Flax Reply Decl., Exhibit D at 153:9-13), the undisputed evidence confirms that the phrase "Industrial Waste Solution" was not a DCC term but rather an H&H Tube term.

Plaintiffs' assertion that the term "Industrial Waste Solution" was not known to H&H Tube former employees and was a term coined by DCC is totally contrary to the record. The out-of-context, incomplete, distorted and misleading deposition citations to the testimony of H&H Tube former employees presented by Plaintiffs do not create a genuine issue of material fact. H&H Tube's motion for summary judgment should be granted.

### B.   DCC's Alleged Relationship with H&H Tube

At page 2 of its opposition (as well as at pages 4 and 6), Plaintiffs state "there is substantial evidence establishing that DCC hauled many of H&H Tube's manufacturing wastes, including H&H Tube's employees' recollection of an ongoing business relationship between H&H Tube and DCC ...." That is a lie. All of the H&H Tube employees that were deposed were consistent in the testimony regarding DCC. Each witness testified, unequivocally and without

hesitation that they did not know DCC nor did they have any knowledge that DCC ever provided any services to H&H Tube. Trojecki Cert., Exhibit B at 25:21-26:16; Flax Reply Decl., Exhibit A at 58:12-59:21. Curran testified that he could not recall the name DeRewal. Kollmar testified that she simply remembered the name DeRewal. No where in the hundreds of pages of deposition testimony is there any other suggestion that H&H Tube employees even "knew" the name DeRewal. For instance, Larry Rees, an H&H Tube former employee, testified that he never heard of the name DeRewal prior to this litigation. Flax Reply Decl., Exhibit E at 24:15-21. Likewise, Thomas Bell, another former H&H Tube employee, testified that he never even heard the name DeRewal. Flax Reply Decl., Exhibit F at 70:9-11.

The fact that Curran and Kollmar, both of whom worked at H&H Tube since the 1960s heard of the name DeRewal is not surprising. As the Court is aware from the pleadings in this matter, the name "DeRewal" was infamous during the 1970s and thereafter as a result of his numerous illegal activities in the Delaware Valley area. Newspapers regularly reported on his conviction and his criminal trial for international drug smuggling. *See* Flax Reply Decl., Exhibit G.

The distorted and misleading deposition citations to the testimony of H&H Tube former employees regarding H&H Tube's relationship with DCC do not create a genuine issue of material fact and should be rejected. H&H Tube's motion for summary judgment should be granted.

## IV. Even if H&H Tube's Industrial Waste Solution is Viewed as a Hazardous Substance for CERCLA Purposes, H&H Tube's Waste is *De Minimus* and Summary Judgment is Appropriate

Plaintiffs' entire argument is based upon their claim that the "Industrial Waste Solution" is hazardous from a CERCLA perspective because it contains, in *de minimus* amounts, hazardous substances. As set forth above and in the Opening Mem., the unauthenticated invoice reflects

11

5,260 gallons of "Industrial Waste Solution." The only DCC employee that claimed that he picked up drummed waste and brought it to the Site was B. DeRewal. B. DeRewal's testimony, at best, equates to 2,750 gallons of drummed waste.

In an abundance of caution, Dr. Brown calculated H&H Tube's volumetric percentage using both B. DeRewal's testimony and the bulk waste testimony by DeRewal Jr.[6] Flax Decl., Exhibit C at p.32-33. That calculation revealed the maximum volume allocation that could be attributed to H&H Tube is 0.048%. Flax Decl., Exhibit C, p.33, ¶86. Although completely unsupported, Plaintiffs themselves claim that H&H Tube's volumetric percentage is only 0.25%.[7] Flax Decl., Exhibit L.

The EPA issued a guideline dated July 30, 1993, entitled "Streamlined Approach for Settlements with *De Minimus* Waste Contributors under CERCLA Section 122(g)(1)(A)" (the "July 1993 Guideline"). The purpose of the July 1993 Guideline was to "simplify the administrative determinations for finding a PRP eligible for a *de minimus* settlement and provide opportunity for streamlining the *de minimus* settlement process."

Under the July 1993 Guideline, in order to determine whether a PRP is eligible for *de minimus* settlement, "a Region need only assess the individual PRP's waste contribution relative to the volume of waste at the site." The July 1993 Guideline notes that "the Region should then divide the individual contribution by the volume of waste at the site; this establishes the PRP's volumetric percentage of waste contribution."

As for the toxicity aspect of determining the eligibility of a PRP for a *de minimus* settlement, the July 1993 Guideline states that " the toxicity finding is met when the substances

---

[6] There is no merit to DeRewal Jr.'s bulk waste testimony. *See* pages 5-6 above.

[7] A motion is pending to compel Plaintiffs to provide Defendants with the basis for their calculation of each parties' allocable share. Defendants have been unable to replicate how Plaintiffs concluded that, for example, H&H Tube was liable for 0.25%.

12

are not 'significantly more toxic and not of significantly greater hazardous effect' than other hazardous substances at the facility."

There is no set percentage for eligibility for a *de minimus* settlement. The percentage is "primarily site-specific." The July 1993 Guideline notes that "statistically (of the *de minimus* settlements entered to date), the de minimus cutoff has ranged from .07% to 1.0%, the mean was 1.059% and the median was 1.0%.

Here, Dr. Brown has opined that based on the worst case scenario for H&H Tube (*i.e.* DeRewal Jr.'s and B. DeRewal's testimony), the fraction of the total waste disposed of at the Site that could be attributed to H&H Tube is 0.048%. Flax Decl., Exhibit C, p.33, ¶86. Dr. Brown's report analyzes all of the testimony that was obtained by Plaintiffs from the DCC employees in order to determine what H&H Tube's allocable share could be in the unlikely event that the Court determines that any H&H Tube waste went to the Site.[8]

Additionally, as set forth in H&H Tube's Opening Mem., Dr. Brown testified that the "Industrial Waste Solution" was non-hazardous, did not meet the definition of hazardous waste and that any trace amounts of metals or solvents that may have been present in the "Industrial Waste Solution" were truly *de minimus*. Flax Decl., Exhibit D at 107:21-108:14; 128:15-135:10. In that regard, Dr. Brown testified at his deposition as follows:

TROJECKI: Q.   In paragraph 43 of your report you state that the based on the description of the cleaning process during the plant shut down the waste water generated as the industrial waste solution was non-hazardous. What do you mean the description of the cleaning process during the shut down?

BROWN: A.   Curran's description of the washed down of the machines. And it's my opinion that had that been tested it would not

---

[8] As indicated in Footnote 4 of the Opening Mem., for purposes of this summary judgment motion only, H&H Tube is assuming Plaintiffs can establish nexus to the Site. H&H Tube does not waive its right to challenge nexus in the event summary judgment is denied.

>       have been classified as hazardous waste. So it would have
>       been a non-hazardous waste.
>
> Q.    Why is that?
>
> A.    Because it was a water base cleaning process. They were
>       cleaning grit and grime and particles off the machinery and
>       there would have been nothing -- while there would have
>       been metals in the waste, traces of oil, that type of thing,
>       nothing would have been of high enough concentration to
>       classify it as a hazardous waste.

Flax Decl., Exhibit J at 107:21-108:14

> **TROJECKI:** Q.   It's your opinion that the solution that Curran is referring to
>                   in his deposition as industrial waste solution is non
>                   hazardous; is that correct?
>
> **BROWN:** A.      Yes.
>
> Q.                Why do you think that?
>
>         *         *         *         *
>
> A.                It's not a listed hazardous waste. It would not fail any of
>                   the four criteria for being a hazardous waste. It would not
>                   fail toxic concentration -- it's a test for soluble metals in
>                   waste, if I have the acronym right, TCLP, I'll get you the
>                   right acronym, it wouldn't fail that test, it wouldn't have a
>                   pH outside the normal range. It wouldn't be flammable. It
>                   wouldn't be corrosive. So it wouldn't be reactive. So
>                   there's nothing there that would indicate that it was a
>                   hazardous waste.

Flax Decl., Exhibit J at 233:14-234:6.

Plaintiffs rely heavily upon *United States v. Alcan Aluminum Corp.*, 964 F.2d 252 (3d Cir. 1992), for the proposition that any waste that contains even a trace amount of a "hazardous substance" falls within the CERCLA definition of "hazardous substance." While that proposition is certainly true, that does not end the inquiry. A court is not prevented from granting summary judgment in situations where there are trace or *de minimus* amounts of "hazardous substances" in which the purposes of CERCLA are served.

In *Acushnet Company v. Mohasco Corporation*, 191 F.3d 69 (1st Cir. 1999), the Court affirmed the district court's grant of summary judgment to defendant NETT, not because the defendant "deposited so little waste at the site that it could not be said that they caused plaintiffs to incur response costs," but rather because "the record was insufficient to permit a meaningful equitable allocation of remediation costs." *Id.* at 72 (footnote omitted). In reaching this conclusion, the Court made the following observation:

> [A]llowing a CERCLA defendant to prevail on issues of fair apportionment, even at the summary judgment stage, is consistent with Congress' intent that joint and several liability not be imposed mechanically in all cases. Permitting a result that is tantamount to a no-liability finding is in keeping with the legislative goal that clean up efforts begin in a speedy fashion and that litigation over the details of actual responsibility follow. In fact, to require an inconsequential polluter to litigate until the bitter end, we believe, would run counter to Congress's mandate that CERCLA actions be resolved as fairly and efficiently as possible. On the whole, the costs and inherent unfairness in saddling a party who has contributed only trace amounts of hazardous waste with joint and several liability for all costs incurred outweigh the public interest in requiring full contribution from *de minimus* polluters.

*Acushnet*, 191 F.3d at 78-79.

In concluding that summary judgment in favor of the *de minimus* contributor, NETT, was appropriate, the Court noted that NETT offered expert testimony as to the negligible amount of waste allegedly disposed of at the site and further stated that "plaintiffs failed to rebut NETT's evidence showing that it [NETT] should bear no more than a *de minimus* share of the remediation expenditures under §9613(f)." *Id.* at 79.

Here, like the defendant in *Acushnet*, the undisputed evidence demonstrates that, in the unlikely event Plaintiffs are able to prove that H&H Tube's waste went to the Site, the amount of that waste was negligible. This is true whether the Court accepts Dr. Brown's calculation of 0.048% (which has been unrebutted by Plaintiffs either through fact or expert evidence) or the unsubstantiated calculation presented by Plaintiffs which puts H&H Tube's allocation at 0.25%.

Thus, since the H&H Tube's waste allegedly disposed of at the Site was *de minimus*, not toxic, and not hazardous waste, summary judgment in favor of H&H Tube, dismissing all of Plaintiffs' claims against it, should be granted.

## CONCLUSION

For the foregoing reasons, in addition to the reasons set forth in the moving papers, it is respectfully requested that Handy & Harman Tube Company, Inc.'s motion for summary judgment be granted.

Respectfully submitted,

CARELLA, BYRNE, BAIN, GILFILLAN,
CECCHI, STEWART & OLSTEIN
Attorneys for Defendant, Handy & Harman
Tube Company, Inc.

Dated: August 31, 2007

By: __MF 1386__
MELISSA E. FLAX
JOHN M. AGNELLO
G. GLENNON TROUBLEFIELD (Bar No. 64989)
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700
(973) 994-1744 (fax)