IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AGERE SYSTEMS, INC., CYTEC INDUSTRIES INC., FORD MOTOR COMPANY, SPS TECHNOLOGIES, LLC and TI GROUP AUTOMOTIVE SYSTEMS LLC, <br><br> Plaintiffs, <br><br> v. <br><br> ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, et al., <br><br> Defendants. | Civil Action No. 02-CV-3830 (LDD) |

**PLAINTIFFS' SURREPLY MEMORANDUM IN OPPOSITION TO HANDY & HARMAN'S MOTION FOR SUMMARY JUDGMENT**

Handy and Harman Tube Company, Inc.'s ("Handy and Harman") motion for summary judgment was initially based solely upon its assertion that the waste hauled from its facility by DeRewal Chemical Company ("DCC") was not a "hazardous substance" for which it can be liable under CERCLA. Handy Summary Judgment Brief at 1-2, 15, 19-20. This assertion was premised upon Handy and Harman's argument that the only waste hauled by DCC was waste created during the annual summer shutdown of its facility (alleged to be called "Industrial Waste Solution"), and the further assertion that that waste was not a CERCLA "hazardous substance." Handy Summary Judgment Brief at 1, 19.

Plaintiffs noted in opposition that Handy and Harman's argument was based upon total obfuscation, as there could be no dispute that the annual shutdown waste did contain multiple contaminants that are CERCLA hazardous substances. An "arranger" for the disposal of wastes containing any concentrations at all of CERCLA hazardous substances is liable under CERCLA whether or not those wastes were also "hazardous wastes" under RCRA. *United*

*States v. Alcan Aluminum Corp., et al.,* 964 F.2d 252, 259 (3d Cir. 1992).[1] Handy and Harman's reply brief does not dispute either that the annual shutdown waste was disposed of at the Site, Reply Brief at 13, n.8., or, now, that it actually did contain CERCLA hazardous substances. Reply Brief at 14 ("While [the] proposition [that any waste that contains even a trace amount of a 'hazardous substance' falls under the CERCLA definition of 'hazardous substance'] is certainly true, that does not end the inquiry.")

Plaintiffs also demonstrated that Handy and Harman's spent acid waste (that also contains CERCLA hazardous substances), was disposed of at the Site. Freddy DeRewal testified that he picked up at least one load of bulk waste at the Handy and Harman facility and took it to the Site for disposal. Trojecki Cert., Exhibit D at 119:12-122:20. The only waste stored in bulk by Handy and Harman for off-site disposal from its facility was the spent acid waste, as Dr. Brown stated and as Handy and Harman has not denied.[2] Handy and Harman does not in its reply brief effectively dispute that its bulk acid waste was disposed of at the Site. Freddy DeRewal's clear and unequivocal testimony that he disposed of Handy and Harman bulk waste at the Site *cannot* be disputed for summary judgment purposes. Handy and Harman also does not dispute that its own expert agrees that the acid waste contained CERCLA hazardous substances.[3]

Instead of disputing these two facts fatal to its initial motion, Handy argues that Plaintiffs "distorted" the deposition testimony of DCC and Handy and Harman former employees with respect to questions of fact that are irrelevant for the purposes of deciding Handy and Harman's motion for summary judgment. Handy Reply Brief at 4-11. None of the claimed

---

[1] The CERCLA definition of "hazardous wastes" includes, but is much broader than, the RCRA definition of "hazardous wastes." 42 U.S.C. § 9601(14).

[2] Plaintiffs provided other evidence which, when viewed in a light most favorable to them, the non-moving parties, establishes that other Handy and Harman wastes containing CERCLA hazardous substances were hauled away by DCC as well.

[3] Because Handy and Harman has admitted that the only bulk waste at its facility was spent acid, Plaintiffs are entitled on this motion and at trial to the inference that the bulk waste Freddie DeRewal disposed of at the Site was the spent acid waste. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

2

"distortions" change the fact that Freddy DeRewal testified that he took at least one load of bulk waste from Handy and Harman's facility and disposed of it at the Boarhead Site, that the only bulk waste that Handy and Harman produced was the spent acid, or that the spent acid contained hazardous substances. Similarly, none of the "distortions" change the fact that the "industrial waste solution" contained CERCLA hazardous substances.[4]

Thus, the one and only premise initially asserted by Handy and Harman for summary judgment, that its wastes contained no CERLCA hazardous substances, is conclusively defeated at least with respect to the "industrial waste solution" and the bulk spent acid waste.

Having been caught trying to mislead the Court into thinking that there is no difference between a RCRA "hazardous waste" and a CERCLA "hazardous substance," Handy and Harman asserts a wholly new basis for summary judgment in its reply brief. Handy and Harman now asserts that it is entitled to summary judgment because only a "de minimus" [sic] amount of its hazardous substances were disposed of at the Site. Handy Brief at 11 to 16. This new argument has even less merit than the first.

Handy and Harman accepts for the purposes of this new argument that thousands of gallons of its wastes were disposed of at the Site. Specifically, it accepts as true both the waste-in calculations of its own expert, Dr. Brown, and the volumes of wastes Plaintiffs allege

---

[4]   Handy and Harman's reply brief points to what it describes as "a January 7, 1993 letter from Curran to the USEPA," Handy Reply Brief at 9, for the proposition that Handy and Harman "knows" exactly which of its wastes was the "Industrial Waste Solution." Handy neglected to mention that this document is not just "a letter" from Mr. Curran, but a supplemental response by and on behalf of Handy and Harman to a second EPA request pursuant to Section 104(e) of CERCLA. Attached as Exhibit A to the Declaration of Glenn A. Harris enclosed herewith is the initial September 30, 1992 104(e) request, Handy and Harman's October 29, 1992 response thereto, and EPA's December 21, 1992 letter stating Handy and Harman's initial response was inadequate, to which Mr. Curran is responding. EPA's 104(e) request shows that Handy and Harman was provided with a copy of the 1973 DCC invoice containing the phrase "Industrial Waste Solution" and that EPA specifically questioned Handy and Harman about that document and that phrase. October 29, 1992 Request No. 3. This additional document puts in context Mr. Curran's January 7, 1993 response concerning the question whether there was in fact a specific waste stream known to Handy and Harman as the "Industrial Waste Solution." The initial Handy and Harman response to the 104(e) request constitutes an admission by Handy and Harman that several of its then employees remembered that the facility did business with DCC, a fact Handy and Harman vehemently denies. The Handy and Harman argument beginning at the bottom of page 10, and continuing through most of page 11 is thus both incorrect and irrelevant.

were disposed of at the Site. Handy and Harman Reply Brief at 15-16, 13 n.4. Dr. Brown assumed that one tanker load of bulk waste (3,525 gallons) was disposed of at the Site, as testified to by Freddy DeRewal. Brown Report at ¶ 81. He also credited Bruce DeRewal's testimony that fifty 55 gallon drums of waste (2,750 gallons) were disposed of at the Site, for a total of 6,275 gallons. Brown Report at ¶ 84. Plaintiffs' responses to Defendants' Joint Contention Interrogatories state that 5,899 gallons of Handy and Harman waste were disposed of at the Site. As set forth above, it must be assumed for purposes of this motion that the bulk liquids were waste acids.

Handy and Harman's new argument is negated by the CERCLA statute itself, which includes a "*de micromis*" exemption shielding from liability in contribution actions, *inter alia*, persons who arranged for the disposal of less than 110 gallons of liquid material. 42 U.S.C. § 9607(o)(1). Obviously, persons like Handy and Harman who arranged for the disposal of *thousands of gallons* of liquid material *are* liable in a contribution action.

Handy and Harman's new argument is also directly contrary to the law in this Circuit. The court in *United States v. Alcan Aluminum Corp.*, 964 F.2d 252 (3d Cir. 1992), rejected Alcan's argument that it was not liable under CERCLA because the level of hazardous substances in its waste was below that which naturally occurs in the environment and thus could not have contributed to the environmental injury for which the United States was seeking to recover its response costs. 964 F.2d at 259. The court held that CERCLA does not include a threshold concentration requirement, such that wastes containing *even one molecule* of hazardous substances create CERCLA liability. *Id.* at 259-260, 271. It also held that "[A] CERCLA plaintiff need not establish a causal connection between a generator's hazardous substances and the release or the incurrence of response costs." *Id* at 271. There is thus no "just a little bit" exception to CERCLA liability in the Third Circuit.

4

Ignoring the plain language of CERCLA and *Alcan*, Handy premises its new argument on the basis of carefully selected passages from *Acushnet Company v. Mohasco Corp.*, 191 F.3d 69 (1st Cir. 1999) and upon a 1993 EPA "guidance" document setting forth EPA's approach to reaching administrative settlements of its own CERCLA claims.

*Acushnet* held only that: "[A] defendant may avoid joint and several liability for response costs in a contribution action under § 113(f) if it demonstrates that its share of hazardous waste deposited at the site constitutes no more than background amounts of such substances in the environment and cannot concentrate with other wastes to produce higher amounts." 191 F.3d at 77. The court there affirmed the district court's grant of summary judgment to NETT, one of the defendants whose old telephone poles were disposed of at the site, because "NETT essentially offered evidence tending to show that its equitable share would amount to zero, [and] plaintiffs gave only a non-responsive rejoinder, mostly by insisting (wrongly) that causation is irrelevant." *Id.* at 79. It affirmed the dismissal at trial of three other defendants "on the basis that the evidence was inadequate to permit a rational fact finder to make a quantifiable allocation of response costs to AFC, Mohasco, or Ottaway under § 9613(f)." *Id.* at 80. AFC contributed two cubic yards of solid waste, Mohasco contributed even less waste, and there was a question whether any waste at all from Ottaway was disposed of at the site. *Id.* at 80-81. The First Circuit in *United States v. Davis*, 261 F.3d 1, 44-45 (1st Cir. 2001) interpreted *Acushnet* to mean that: "[O]nce the plaintiff has established that a defendant disposed of hazardous waste, *Acushnet* put the burden of proof on the defendant to show that this waste did *not* contribute to cleanup costs." 261 F.3d at 44. It reaffirmed that there is no minimum quantitative threshold to CERCLA's causation standard. *Id.*

*Acushnet* does not rescue Handy and Harman. To the extent that opinion suggests there is a "*de minimis*" exception to CERCLA liability, it is directly contrary to *United States v.*

5

*Alcan Aluminum Corp.*, binding precedent here. Even if that opinion did apply here, the facts about Handy and Harman's wastes are very different from those of the *Acushnet* defendants. Handy and Harman does not even assert that its wastes contributed only background levels of CERCLA hazardous substances to the Site, or that its wastes did not cause the incurrence of response costs either alone or in combination with other wastes at the Site. It simply says the volume isn't very much.

Such an assertion would be futile in any event in a motion for summary judgment. One of Plaintiffs' experts, Jay Vandeven, a Principal of ENVIRON International Corporation and an environmental engineer with over 20 years of experience, has offered this opinion: "All of the wastes disposed of at the Boarhead Farms Superfund Site contributed in some manner to the environmental conditions that led to the response activities [undertaken by EPA and by Plaintiffs]." Vandeven June 30, 2006 Expert Report at 13. Mr. Vandeven elaborated in his rebuttal report: "The various wastes disposed of at the Boarhead Farms Site interacted with other wastes and environmental media in a very complex manner causing environmental conditions that lead to the response activities." Vandeven November 15, 2006 Expert Report at 7. With respect to wastes such as from Handy and Harman's industrial waste solution that contains solvents, Mr. Vandeven states: "Solvents contained in wastes disposed of at the Boarhead Farms site contaminated the soil and groundwater." Vandeven June 30, 2006 Expert Report at 16. With respect to spent acid wastes such as the Handy and Harman spent acid waste disposed of at the Site by Freddie DeRewal, Mr. Vandeven states: "If released to the environment at the Boarhead Farms site, pickle liquors increased the acidity and the levels of metal in both soil and groundwater." *Id.* at 15. Mr. Vandeven added in his rebuttal expert report: "Acid wastes released to the environment increased the mobility of metals and the corrosivity of the subsurface materials, thus contributing to the need for and cost of response

6

activities taken at the Boarhead Farms Superfund Site." Vandeven November 15, 2006 Expert Report at 4-5. Copies of Mr. Vandeven's initial and rebuttal expert reports are attached to the Harris Declaration and marked Exhibit B. Mr. Vandeven's uncontradicted opinion conclusively proves that Handy and Harman has not met even its burden of proof under First Circuit law.

Handy and Harman's reference to the July 30, 1993 EPA *De Minimis* Guidance is beyond disingenuous. A copy of that guidance is attached to the Harris Declaration and marked Exhibit "C." First, the guidance makes clear that *de minimis* waste contributors *are* liable under CERCLA and must pay their fair share of site response costs, including a settlement premium. *July 30, 1993 De minimis* Guidance at 4-5. Second, EPA issued, on the same day, a separate guidance for *de micromis* waste contributors, which addresses how EPA is to accomplish settlements of its claims with entities responsible for *less volume* than *de minimis* parties. July 30, 1993 Guidance on CERCLA Settlements with De Micromis Waste Contributors at 7-8. A copy of this guidance is attached to the Harris Declaration and marked Exhibit "D." This guidance is "intended to encompass only the parties who contributed miniscule amounts of waste to a site." *De micromis* Guidance at 7. The guidance gives some examples of what constitutes "miniscule," saying that in some circumstances the qualifying volume could be up to 0.001% of waste at homogeneous waste sites and up to 0.1% of total wastes at typical landfills. *Id.* at 7-8. The guidance as well makes clear that *de micromis* contributors *are liable* under CERCLA and must make some payment, including a settlement premium, to the United States to resolve the United States's claims. *Id.* at 9-10.[5] The guidance was revised on June 3, 1996, in which revision EPA suggested that 110 gallons of liquid waste or 200 pounds of solid waste might be used as the maximum amount to qualify for a *de micromis* settlement. A copy of the June 3,

---

[5] Both the *de minimis* and the *de micromis* guidances are simply that -- "guides" prepared by EPA for EPA to consider with respect to *EPA's claims* under CERCLA. They are not duly promulgated rules and have no legal force or effect with respect to private party CERCLA actions.

1996 Revised *De Micromis* Guidance is attached to the Harris Declaration and marked Exhibit "E." These are the same maximum volumes ultimately incorporated by Congress into the *de micromis* exemption to CERCLA 42 U.S.C. § 607(o)(1).

Handy and Harman's motion assumes that Dr. Brown's calculation of 0.084% or, alternatively, Plaintiffs' volumetric percentage calculation of 0.25% is to be accepted as true. Handy and Harman obviously would not qualify under the EPA guidance as a *de micromis* contributor. Either EPA guidance would treat Handy and Harman as a liable party anyway, such that Handy and Harman would not be permitted to settle with EPA unless it paid its appropriate share of EPA's past and future response costs. Neither guidance can possibly support Handy and Harman's argument that it has no liability to Plaintiffs here.

There is thus absolutely no basis factually or legally to support Handy and Harman's new argument that it should be dismissed from this action, given its concession for purposes of this motion that thousands of gallons of its wastes containing hazardous substances were disposed of at the Boarhead Farms Site.

## CONCLUSION

For all the foregoing reasons, and in the interest of justice, Plaintiffs respectfully request that this Court deny Handy & Harman's Motion for Summary Judgment.

Dated: September 21, 2007

Respectfully submitted,

Ballard Spahr Andrews & Ingersoll, LLP

By: _____
Glenn A. Harris, Esquire
Plaza 1000, Suite 500, Main Street
Voorhees, New Jersey 08043
Phone: (856) 761-3400
Attorney for Plaintiffs

DMEAST #9877808 v1