# Exhibit C




# Streamlined Approach for Settlements With De Minimis Waste Contributors under CERCLA Section 122(g)(1)(A)

```
*************** DISCLAIMER ***************
The following electronic file contains the text of a policy
issued by the U.S. Environmental Protection Agency (EPA).
This file has been reformatted to make it available to you
in electronic form.  Formatting (margins, page numbering,
etc.) may be different than the original hard copy to make
the document more easily readable on your computer screen.
Where graphics have been removed, the editor has noted it
in the text.  This electronic file is a courtesy copy of
the official policy.  If any discrepancies are found, the
file copy (hard copy original) which resides at the U.S.
EPA provides the official policy.
***************************************************
```

JUL 30 1993

OSWER Directive #9834.7-1D

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
WASHINGTON, D.C. 20460

MEMORANDUM

SUBJECT:  Streamlined Approach for Settlements With De Minimis Waste
          Contributors under CERCLA Section 122(g)(1)(A)

FROM:     Bruce M. Diamond, Director /s/
          Office of Waste Programs Enforcement

          William A. White, Enforcement Counsel for Superfund /s/
          Office of Enforcement

TO:       Waste Management Division Directors, Regions I-X Regional
          Counsel, Regions I-X

     This memorandum transmits to you the Agency's "Streamlined Approach
for Settlements With De Minimis Waste Contributors under CERCLA Section
122(g)(1)(A)." The guidance supplements existing guidance for de
minimis waste contributor settlements and to the extend applicable,
supersedes existing guidance.

     The guidance establishes the minimum level of information necessary
before a Region can consider a de minimis settlement, provides a

methodology to construct payment matrices in appropriate circumstances, and encourages Regions to take a more active role in facilitating the de minimis settlement.

The guidance reflects input from the Regions, Headquarters and the Department of Justice. We thank you for your assistance.

Attachment

cc: Superfund Branch Chiefs, Waste Management Division,
       Regions I-X
    Superfund Branch Chiefs, Office of Regional Counsel,
       Regions I-X

--------------- ATTACHMENT ---------------

STREAMLINED APPROACH FOR SETTLEMENTS WITH
DE MINIMIS WASTE CONTRIBUTORS UNDER
CERCLA SECTION 122(G)(1)(A)

This guidance sets forth the Agency's new approach to completing de minimis settlements. (See footnote 1 below)  This memorandum expands upon the information provided in the "Superfund Administrative Improvements - Final Report (June 23, 1993)."

Under Section 122(g) of CERCLA the Agency may settle with persons who contributed to a facility hazardous substances which are minimal, both in terms of volume and toxicity or other hazardous effects, relative to other hazardous substances at a site.  De minimis settlements may only address a minor amount of response costs at a site.

To encourage more, early, and expedited settlements, and reduce the transaction costs of all parties, the Agency identified several actions to improve the de minimis program during our review of administrative improvements to Superfund.  We are changing our existing guidance to simplify the administrative determinations for finding a PRP eligible for a de minimis settlement, and provide opportunities for streamlining the de minimis settlement process.

Eligibility Determinations

The Agency's pervious guidance recommended that a de minimis waste contributor settlement should not be considered until a waste-in list and volumetric ranking is available.  It is no longer necessary to prepare a waste-in list or volumetric ranking before considering a party's eligibility for a de minimis settlement.  To determine whether a PRP is eligible for a waste contributor de minimis settlement, a Region need only assess the individual PRP's waste contribution relative to the volume of waste at the site. (See footnote 2 below)  Comparing these two pieces of information allows the Region to determine whether that party's contribution was minor compared to other hazardous substances at the facility.  Regions should use available documentary evidence to identify the individual amount of contribution.  Regions may estimate the volume of waste present at the site using several methods, including review of site volumetric records, process engineering information, or site sampling results.  The volumetric estimate should reflect the Region's understanding of the waste present at the site; the amount does not need to be a precise figure.  In circumstances where it is particularly difficult to quantity the waste amount (especially early in the response process) a Region may identify in the response process) a Region may identify the volumetric estimate as a range (e.g., between 50,000 and 100,000 gallons, or batteries, etc.).

```
============ Foot Note ================
1    To the extent this memorandum changes past Agency procedures or
     policies or policies this memorandum supersedes those documents,
     and Regions should follow the directives set forth herein.
     Otherwise, past guidance on de minimis waste contributor
     settlements remains in effect.

2    Generally, the Region should then divide the individual
     contribution by the volume of waste at the site; this establishes
     the PRPs volumetric percentage of waste contribution.
=========================================
```

While it is not necessary to prepare a waste-list or volumetric ranking for determining de minimis eligibility, when this information is available it should be considered in making the de minimis eligibility determination. Consistent with the Agency's information release policy, Regions should release any waste-in list and volumetric ranking to all PRPs. (See footnote 3 below)

It is important to reemphasize the Agency's approach to the toxicity component of the de minimis determination. In both our 1987 and 1989 de minimis guidances the toxicity finding is met when the substances are not "significantly more toxic and not of significantly greater hazardous effect" than other hazardous substances at the facility. (See footnote 4 below) For example, if the hazardous substances at a site are of similar toxicity and hazardous nature, a Region does not have to engage in further evaluation to make the toxicity determination.

Once the above information is available, a Region needs to determine the appropriate cutoff for de minimis and non-de minimis parties at the site. This guidance does not establish a set percentage for eligibility for a de minimis waste contributor settlement; we believe that decision is primarily site-specific. (See footnote 5 below)

Where a Region identifies the volume of the waste at the site as a range, they should use the lower estimate for establishing the eligibility of the PRP for a de minimis settlement. This ensures that the party is truly de minimis. For example, if a PRP contributed 500 batteries to a site where the Region estimates that between 50,000 and 100,000 batteries are present, the PRP's assigned volumetric percentage should be 1.0% (500/50,000).

```
============ Foot Note ================
3    "Releasing Information to potentially Responsible Parties at CERCLA
     Sites," OSWER Directive 9835.12 (March 1, 1990); "Revised Policy on
     Discretionary Information Release Under CERCLA," OSWER Directive
     9835.12-01a (March 31, 1993).

4    "Interim Guidance on Settlements with De Minimis Waste Contributors
     under Section 122(g) of SARA," OSWER Directive 9834.7); (June 19,
     1987); "Methodologies for Implementation of CERCLA Section
     122(g)(1)(A) De Minimis Waste Contributor Settlements," OSWER
     Directive 9834.7-7-1B (December 20, 1989).

5    Please note that statistically (of the de minimis settlements
     entered to date), the de minimis cutoff has ranged from .07% to
     10.0%, the mean was 1.059%, and the median was 1.0%.
=========================================
```

In determining the cutoff point, the Region needs to make a reasoned judgement regarding the effect of a possible settlement on non-de minimis parties. We recognize that there may be a certain amount of imprecision, particularly in light of the limited amount of volumetric information available at many sites. Detailed information and extensive

supporting documentation are not necessary for this determination, although the Region will need to explain the basis for the identified cutoff (i.e., what factors they considered). If information available at the time of settlement indicates that there is or is likely to be a large or very large orphan share, the Region should take this into consideration in formulating the de minimis settlement (e.g., by adjusting the premium upward). In addition, a de minimis settlement should not foreclose the Region's ability to pursue an enforcement action against the non-de minimis parties to perform or finance the remedy.

Streamlining the Payment Calculation

    A.    Baseline Payment

Consistent with past guidance we suggest establishing the baseline payment amount by applying several factors: the individuals's percentage of waste contribution to the site, the total past costs expended and estimate of future costs. To established the future cost estimate, Regions are encouraged to use the "Methodology for Early De Minimis Waste Contributor Settlements under CERCLA Section 122(g)(1)(A)," OSWER Directive 9834.7-1C (June 2, 1992). This guidance reaffirms the methodology contained therein for estimating future costs, as well as the Agency's commitment to developing early estimates of future costs.

If a Region can establish an individual's percentage, identify past costs and estimate future costs with relative ease, based on the available information (i.e., without expending substantial resources or time to collect the relevant data), that is the preferred approach for establishing the baseline payment amount. (See footnote 6 below) There may be situations where there is uncertainty in the overall volume of waste at the site (used to establish the individual percentage) or where the future estimate of site costs is particularly difficult to establish other than to estimate the amount within a range (e.g., the remedy cost estimate is between 10-20 million dollars). In such situations, a Region may construct a payment matrix to assist in establishing a PRP's baseline payment amount. See Attachment 1 for an example payment matrix.

============= Foot Note =================
6    To identify the past future cost baseline payment a Region would first multiply the individual volumetric percentage by the total past cost amount; this provides a PRP's pro-rata share of past costs. A similar multiplication would be made to establish the pro-rata share of future costs. The pro-rata share of the past and future costs components are added together to form the baseline payment amount.
=========================================

    B.    Premium

A Region should assign an appropriate premium to the baseline future payment amount. The amount of premium will often bear close relation to the scope of the covenant not to sue provided to the de minimis settlors. (See footnote 7 below) Of the de minimis settlements reached to date, the premium assigned has generally ranged from 50 - 100%. (See footnote 8 below) In an effort to streamline the process, Regions may assign a 50% premium where PRPs agree to a covenant not to sue which contains a remedy cost re-opener. Where the Region offers a covenant not to sue without a remedy cost re-opener (and thus provides the settlors with more finality), the premium may be closer to 100%. Regions should consider offering both options in the same settlement document (i.e., a menu approach). A Region should adjust these numbers

to reflect other uncertainties or concerns. For example, a Region should increase the premium if the settling parties decline a previous settlement offer. On the other hand, site conditions may justify a lower premium.

Facilitating the De Minimis Agreement

To facilitate the de minimis settlement process, Regions may settle with individual de minimis parties, settle after a de minimis group forms, or settle with individual de minimis parties and combine the signature pages into one settlement document. Although the Agency prefers settling with de minimis parties as a group because it conserves government resources, Regions should consider offering individual de minimis settlements without waiting for a de minimis group to form, as this will reduce the de minimis parties' transaction costs incurred while waiting for the group to form. To reduce resource implications for de minimis parties, Regions should actively assist in forming the de minimis group once there is a potential for a de minimis settlement. It may be appropriate to offer the use of an alternate dispute resolution (ADR) professional to assist in the formation of the group and dissemination of information.

============ Foot Note ================
7    See "Guidance on Premium on Payments in Cercla Settlements." OSWER Directive 9835.6 (November 17, 1988).

8    Of the 47 de minimis settlements with available premium data, 29 settlements used a premium between 50 and 100%.
=========================================

Before the Region tenders a de minimis settlement offer there are several things the Region should consider doing to improve the chances of the offer's acceptance as well as to avert potential controversy. Frequently, de minimis parties are unaware of the difference between a demand letter from a settling PRP and an offer letter from the government. Moreover, some de minimis parties are unfamiliar with the benefits that accrue from settling with the government, such as the covenants not to sue, contribution protection and reduced transaction costs. Members of Congress and other elected officials are also frequently concerned about the effect of Superfund on their constituents and thus may be another important audience for information about impending de minimis settlements. Therefore, a Region should consider developing a communication strategy prior to initiating settlement discussions. In addition, information concerning proposed de minimis settlements should be provided to the non-de minimis parties.

Elevating Issues

Under existing delegations Regions must consult with the Office of Enforcement and Office of Waste Programs Enforcement for all de minimis waste contributor settlements. (See footnote 10 below)  Under Section 122(g)(4) of CERCLA, the approval of the Department of Justice is necessary for administrative de minimis settlements when site costs exceed $500,000; the Department must approve all Consent Decrees regardless of site costs. To provide assistance in evaluating potential de minimis settlements before they are transmitted to the PRPs, Headquarters and the Department of Justice have each established a task force. Senior managers will also be available to discuss proposed settlements early in the process. Finally, Headquarters and the Department of Justice have agreed to provide rapid elevation of key decisions regarding the implementation of the new de minimis procedures.

Disclaimer

This guidance and any internal procedures adopted for its

implementation are intended solely as guidance for employees of the U.S. Environmental Protection Agency. They do not constitute a rulemaking by the Agency and may not be relied upon to create a specific right or a benefit, substantive or procedural, enforceable at law, or in equity, by any person. The Agency may take action at variance with this guidance or its internal implementing procedures.

Further Information
    For further information concerning this document, please contact Gary Worthman in the Office of Waste Programs Enforcement at (703) 603-8951 or Ken Patterson in the Office of Enforcement at (202) 260-3091.

============ Foot Note ================
9   Model communications strategy for use in de minimis settlements is forthcoming that includes a model notice letter for de minimis parties.

10  Current Agency guidance requires Headquarters concurrence on the first de minimis waste contributor settlement Region. Every Region has completed at least one de minimis waste contributor settlement. Therefore, while only consultation is necessary it is important to begin discussions with Headquarters early to ensure a quick resolution of issues.
=========================================

---------------- ATTACHMENT ----------------

ATTACHMENT 1

    Set forth below is an example of a payment matrix a Region might construct for determining a de minimis party's baseline payment amount (i.e., the payment before a premium is assessed). In this example, both the individual contribution and total site costs are expressed in ranges. There may be situations where only one of these factors will be uncertain, thus, a matrix would only have one component expressed as a range while the other is expressed as a set number.

Example De Minimis Payment Matrix

| Individual Contribution | Total Site Costs |||| 
|---|---|---|---|---|
| | $0-10 M | $10-20M | $20-30M | $30-40M |
| CLASS IA: .001% - .009% | $250 | $750 | $1,250 | $1,750 |
| CLASS IB: .010% - .090% | $2,500 | $7,500 | $12,500 | $17,500 |
| CLASS IC: .100% - .200% | $7,500 | $22,500 | $37,500 | $52,500 |
| CLASS II: .210% - .400% | $15,000 | $45,000 | $75,000 | $105,000 |
| CLASS III: .410% - .600% | $25,000 | $75,000 | $125,000 | $175,000 |
| CLASS IV: .610% - .800% | $35,000 | $105,000 | $175,000 | $245,000 |
| CLASS V: | $45,000 | $135,000 | $225,000 | $315,000 |

```
°  .810% - 1.00%           °           ³           ³           ³           °
ÉíííííííííííííííííííÉíííííííííííííííííííííííííííííííííííííííííííííííííííí¼
```

In designing a matrix, it may be useful to present total site costs as one figure, or set up separate matrices for past and future costs. The example matrix provides payment amounts for five classes of possible de minimis parties, ranging from .001% to 1.00% contribution. (See footnote 1 below)  Classes II through V represent ranges of equivalent size.  We subdivided Class I into three parts in order to tailor payment amounts more closely to the contribution for the smallest de minimis waste contributors.  In our example, eligible de minimis parties contribution between .001% and 1.0%. (See footnote 2 below)

The example payment amounts in matrix were calculated simply by multiplying the individual contribution (expressed as a percent of the overall waste at the site) by the estimated total site costs.  The payment amount was calculated using the average total site cost in each range and the average percent contribution in each Class.  For example, the $250 payment for a Class I settlor at sites that range from $0-10 million was calculated as follows:  $5 million x .00005 = $250.

```
============= Foot Note ================
```
1   Percentage contributions in four decimal places that end in 5 or greater should be rounded up to the next thousandth (e.g., .0205% becomes .021%).

2   The range of contributions provided in this example was selected for two reasons.  First, a separate draft guidance that focuses on de micromis settlements may suggest that parties who contributed less than .001% should be treated as de micromis rather than de minimis parties.  Second, the example range extends only to 1.0% because the average cutoff for eligibility in de minimis settlements to date has been 1.0%.
```
=========================================
```

Return to the top of this document.

Return to OSRE Home Page

Search   Map/Index   Feedback   OECA Home   EnviroSense   EPA Home

*Last Updated: June 17, 1998*