# Exhibit D

 

# Transmittal of Guidance on CERCLA Settlements With De Micromis Waste Contributors

```
*************** DISCLAIMER ****************
The following electronic file contains the text of a policy
issued by the U.S. Environmental Protection Agency (EPA).
This file has been reformatted to make it available to you
in electronic form.  Formatting (margins, page numbering,
etc.) may be different than the original hard copy to make
the document more easily readable on your computer screen.
Where graphics have been removed, the editor has noted it
in the text.  This electronic file is a courtesy copy of
the official policy.  If any discrepancies are found, the
file copy (hard copy original) which resides at the U.S.
EPA provides the official policy.
********************************************************
```

JUL 30 1993

OSWER DIRECTIVE NUMBER 9834.17

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

MEMORANDUM

SUBJECT:   Transmittal of Guidance on CERCLA Settlements With De
           Micromis Waste Contributors

FROM:      William A. White /s/
           Enforcement Counsel for Superfund

           Bruce M. Diamond, Director /s/
           Office of Waste Programs Enforcement

TO:        Regional Counsels
           Regional Waste Management Division Directors


     Attached please find the final "Guidance on CERCLA Settlements With
De Micromis Waste Contributors."  The purpose of the memorandum is to
provide guidance on using CERCLA's settlement authorities to resolve the
CERCLA liability of parties who have contributed even less hazardous
substances to a site than the de minimis parties the Agency
traditionally pursues.  These parties will hereinafter be referred to as
"de micromis" parties and EPA settlements with such parties are referred
to as "de micromis settlements."

     The attached memorandum describes the types of situations in which

a Region may find that it is in the public's interest to exercise
enforcement discretion by offering de micromis settlements.  The
memorandum also explains how to use EPA's existing settlement authority
in an expeditious manner to resolve the liability of these de micromis
parties.  We are in the process of developing appendices to the
guidance, which will include a model CERCLA Section 122(g)
Administrative Agreement, a model Section 122(g) Federal Register
Notice, a questionnaire and examples of notification, declaration and
certification letters for potential de micromis settlors.

Attachment


--------------- ATTACHMENT ---------------


JUL 30 1993

                                        OSWER DIRECTIVE NUMBER 9834.17

             UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
                        WASHINGTON, D.C.   20460


MEMORANDUM

SUBJECT:   Guidance on CERCLA Settlements With De Micromis Waste
           Contributors

FROM:      William A. White /s/
           Enforcement Counsel for Superfund

           Bruce M. Diamond, Director /s/
           Office of Waste Programs Enforcement

TO:        Regional Counsels
           Regional Waste Management Division Directors

I.    PURPOSE

     EPA has long believed that it is in the public interest to develop
procedures for expeditiously resolving the potential CERCLA liability of
contributors of small amounts of hazardous substances to Superfund
sites.  The Agency has previously published a number of guidance
documents setting out methodologies for settling with such parties,
traditionally known as de minimis contributors, using the provisions of
Section 122(g) of the Comprehensive Environmental Response,
Compensation, Liability Act of 1980, as amended by the Superfund
Amendments and Reauthorization Act of 1986 (CERCLA), Pub. L. No. 99-499.
(See footnote 1 below)  The purpose of this memorandum is to provide
guidance on using CERCLA's settlement authorities to resolve the CERCLA
liability of parties who have contributed even less hazardous substances
to a site than the de minimis parties the Agency traditionally pursues.
These parties will hereinafter be referred to as "de micromis" parties
and EPA settlements with such parties will be referred to as "de
micromis" settlements.

     This memorandum describes the types of situations in which a Region
may find that it is in the public interest to exercise enforcement
discretion by offering de micromis settlements.  The guidance also
explains how to use EPA's existing settlement authority in an
expeditious manner to resolve the liability of de micromis parties and
to grant them the full extent of contribution protection available under
the statute.  The guidance will be supplemented with appendices that
will include:  a model CERCLA Section 122(g) Administrative Agreement
for De Micromis Settlements a model Section 122(g) Federal Register

Notice, a questionnaire and examples of notification, declaration and
certification letters for potential de micromis settlors.

============ Foot Note ================
1/    This memorandum supplements existing guidances, as they are applied
      to de micromis parties.  See "Interim Guidance on Settlements with
      De Minimis Waste Contributors under Section 122(g) of SARA"
      (Adams/Porter, June 19, 1987) published at 52 Fed. Reg. 24333 (June
      30, 1987), the "Interim Model CERCLA Section 122(g)(4) De Minimis
      Waste Contributor Consent Decree and Administrative Order on
      Consent" (Reich/Lucero, Oct.  19, 1987), published at 52 Fed. Reg.
      43393 (Nov. 12, 1987), and the "Methodology for Early De Minimis
      Waste Contributor Settlements under CERCLA Section 122(g)(1)(A)"
      (Diamond/White, June 2, 1992), (OSWER Directive #9834.7-1C).
      Guidance on settlements with de minimis landowners under Section
      122(g)(1)(B) is provided in "Guidance on Landowner Liability Under
      Section 107(a)(1) of CERCLA, and Settlements with Prospective
      Purchasers of Contaminated Property," published at 54 Fed. Reg.
      34,235 (Aug. 18, 1989).
==========================================

II.   BACKGROUND

      A main EPA objective at Superfund sites is to obtain cleanup and
reimbursement of response costs through the use of enforcement
authorities -- our "enforcement first" initiative.  To meet this
objective, EPA seeks to identify potentially responsible parties (PRPs),
to give them notice of their potential liabilities, and to fairly
resolve those liabilities as quickly as practicable.  This is achieved
primarily through use of the settlement authorities and procedures
provided in Section 122 of CERCLA, or through appropriate use of other
enforcement tools and cost recovery authorities.  Approximately 70% of
all remedial actions at Superfund sites are now being performed by PRPs.

      The manner in which EPA determines to resolve a PRP's liability in
a Superfund case is determined in large part by how the Agency decides
to exercise its enforcement discretion.  CERCLA provides the Agency with
enforcement discretion to determine when to enter into, among other
things, de minimis settlements, cost recovery settlements, RD/RA consent
decrees or Administrative Orders on Consent, and when to issue
Unilateral Administrative Orders and commence cost recovery litigation.
In addition, EPA exercises its enforcement discretion in determining
which parties not to pursue -- both in terms of classes of parties (See
footnote 2 below) and on a party-by-party basis at specific sites.

============ Foot Note ================
2/    See, E.g., "Interim Policy on CERCLA Settlements Involving
      Municipalities or Municipal Waste" (Clay, Dec. 6, 1989), (OSWER
      Directive #9834.13); "Policy Towards Owners of Residential Property
      at Superfund Sites," (Clay/Ludwiszewski, July 3, 1991), (OSWER
      Directive #9834.6).
==========================================

      For the most part, EPA generally uses its enforcement discretion to
settle or litigate with parties the Agency itself has identified as
PRPs.  In certain circumstances it may be appropriate for the Agency
also to extend settlement opportunities to parties not noticed by the
Agency who have nonetheless received or may receive contribution demand
letters from other PRPs at a site or been sued in third party suits.
Sometimes these parties have contributed such minuscule amounts of
hazardous substances, that EPA has not known of their existence.
Alternatively, EPA may have known about the parties but not actively
sought to pursue enforcement actions against them, preferring to focus
its limited resources on more significant contributors may be high.  In

order to provide resolution of their liability quickly and fairly, EPA could settle with eligible parties using this guidance.

To better understand the potential uses to which de micromis settlements might be put, it is useful to examine several examples of sites where PRPs have made demands for contribution against parties who were not initially pursued in government enforcement efforts, and against whom the government would in all likelihood never have taken enforcement action.

A.    New York Example

The State of New York brought a cost recovery action under CERCLA regarding a municipal landfill.  The defendants in the State action, the individual owners of the property, then sued two major industrial generators at the site for contribution.  These two parties agreed to immediately provide $4 million for what was expected to be a $9 million cleanup and the State agreed not to interfere with their efforts to seek contribution.  The two industrial generator parties ("second-round contribution action plaintiffs") then sued 603 parties, including area towns, school districts and small-business owners, seeking $5 million in an action for contribution.  The second-round contribution action defendants included an Elks club, an exercise gym, a donut shop, a pizza parlor and restaurants.

The second round contribution action plaintiffs hired a consultant to formulate each contribution action defendant's allocation of the site costs.  Several of the second round contribution action defendants were charged with a six-figure sum.  However, about 80% of the other allocations were under $10,000 and more than half were under $5,000.  At a minimum, second round contribution action defendants were assessed a $3,000 "transaction" fee if the contribution action plaintiffs could not determine what an entity sent to the landfill.  The transaction fee was charged to contribution action defendants even though there was no evidence of what materials were sent to the site.

After sending demand letters, the contribution action plaintiffs offered to settle with the contribution action defendants at half their allocated price prior to a set deadline.  Approximately 85% of the contribution action defendants chose to settle, with the aggregate settlement figure totaling about $2 million.  Many of these settlors believed they were not liable parties, but decided to settle to avoid any further transaction costs.  Indeed, a group of contribution action defendants who refused to settle were dismissed from the case after providing affidavits that they had sent no hazardous substances to the landfill other than those normally associated with household waste.

B.    Connecticut Example

Another controversial example of a contribution action involving third parties arose in a case which consolidated several actions concerning two landfills.  The landfills were both owned and operated by the same family.  They both contained large quantities of municipal solid waste (MSW).  The United States pursued only industrial generators and municipalities about whom the United States had site-specific evidence of hazardous substance contributions.  The settling defendants connected to each landfill formed two coalitions.  Collectively, these two coalitions sued, or proposed to sue, over 1,000 third parties who had contributed only MSW to the landfills.  The Court eventually permitted the addition of only about 40 parties to this contribution case.

C.    Michigan Example

At another municipally owned and operated landfill at which

hazardous substances from industrial sources were co-disposed with MSW, EPA sent special notice letters to the municipal owner/operators and several industrial generators. EPA then reached a settlement with the major PRP, who agreed to perform the remedial design/remedial action, and also with the municipal owner/operators for cash payments and work at the site. The settling major PRP then sent its own version of a contribution demand letter threatening to sue over 800 generators and transporters at the site. These transporters and generators included approximately 200 small businesses, schools, non-profit organizations and associations, as well as several other industrial and MSW generators. The parties included non-profit charities, an aviation history museum, a symphony society, the Little League, and a church.

In response to the major PRP's letter threatening suit, over 200 of these 800 parties, the bulk of which were only MSW contributors, came forward requesting to be included in the main settlement with the United States. EPA included these potential third party defendants in the settlement consent decree.

III. DISCUSSION

In each of the situations discussed above, PRPs who were the subject of EPA or State government enforcement actions brought or threatened to bring contribution actions against hundreds of additional parties, whom the governments had either not been aware of, or had elected not to pursue. The PRPs took the position that household waste and commercial trash contain hazardous substances in an effort to justify their contribution demands upon entities almost never included in government enforcement actions.

We believe that the contribution demands and several recent third party suits against parties that could qualify for a de micromis settlement produce inequitable burdens (e.g., increased litigation expenses and transaction costs) for these parties. This unfairness arises from the fact that the amount of waste they contributed or the amount of hazardous substances in the waste they contributed is so small that it would be unfair and inequitable to seek any significant contribution from them. In these circumstances, unless EPA provides a means for prompt, inexpensive and permanent settlement of the de micromis parties' alleged liability, it is the PRPs who are determining the effective scope of CERCLA enforcement activities rather than the government agencies who administer the statute. EPA intends to use its authority where appropriate to review and resolve potential liability of de micromis parties. This settlement guidance is designed to help the Regions in managing the situations similar to those in the above examples, where the Region determines it is in the public interest to do so and resources are available.

IV. POLICY

CERCLA provides the Agency with the authority to enter into settlements at any time with persons who may have contributed minuscule amounts of hazardous substances to a Superfund site. We believe that such settlements could be helpful in reducing transaction costs and in promoting more equitable allocations of responsibility for de micromis parties at Superfund sites.

In appropriate circumstances, a Region may want to offer a de micromis settlement to certain parties who contribute hazardous substances to Superfund sites (e.g., recycling facilities or landfills). The Agency will generally consider as de micromis parties those generators or transporters who contribute minuscule amount of hazardous substances to a Superfund site. A de micromis settlement may be especially appropriate for such entities as small businesses,

associations, non-profit organizations, or other entities that do not manufacture or use large amounts of hazardous substances in their activities and who contributed small amounts of waste to the site.  Such entities may be typical candidates for de micromis settlements because their activities do not result in generation or disposal of significant amounts of hazardous substances.  A de micromis settlement may also be appropriate for federal agencies, or industrial or commercial entities when their contribution for the site meets the de micromis eligibility test established for a particular Superfund site.  De micromis contributor settlements are not available to owners or operators of Superfund sites.

A Region can exercise its enforcement discretion to decide whether to offer a settlement at a site where it is aware of de micromis parties, particularly in cases where such parties have been sued or threatened with contribution suits, or it can determine to resolve a de micromis PRP's liability only when the party actively requests such a settlement.  The Region can then determine whether to include the de micromis parties in an existing Section 122(g) de minimis, or other, settlement.  The Region may also enter into an individual settlement with de micromis parties using the settlement authority under Section 122(g) of CERCLA.

In any de micromis settlement the Agency's goal will be to cash out those settlors at the earliest possible time, consistent with ensuring that the Agency possesses an adequate basis for the de micromis determination, thereby safeguarding the positions of all non-settlors. As with any other de minimis settlement, a de micromis settlement must involve only a minor portion of the total, estimated response costs at the facility concerned.

V.    SETTLEMENT AUTHORITY

A.    Section 122(g)

CERCLA Section 122(g) provides discretionary authority to enter into administrative and judicial de minimis settlements with contributors of hazardous substances.  To qualify for a settlement under Section 122(g), the settling party's contribution of hazardous substances must be minimal in terms of amount and toxicity in comparison to other hazardous substances at the facility.  In addition, the statute requires that the settlement involve only a minor portion of the total response costs.

A Section 122(g) de micromis settlement will contain an immediately effective covenant not to sue for past and future liability at the specific facility.  The covenant not to sue relates, among other things, to future potential actions that the Agency could pursue against such parties. (See footnote 3 below)  In addition, a de micromis Section 122(g) settlement would provide the settlor with contribution protection as set forth in Sections 113(f) and 122(g)(5 of CERCLA.

B.    Deciding Whether to Pursue an Administrative or Judicial Settlement With De Micromis Parties under Section 122(g)

When a Region determines to pursue a de micromis settlement, the circumstances surrounding that decision will dictate whether to settle administratively or judicially under Section 122(g).  In situations where a de micromis party not named in a contribution action asks the Agency to settle, an administrative settlement may be preferable because such a settlement typically can be accomplished more quickly and with fewer transaction costs than a judicial settlement.  However, if a Region is asked to settle with de micromis parties who have already been named in a contribution action, the United States may be asked by the

court to join the litigation, or a Region may seek to have DOJ participate in that action to settle the liability claim.  In such a situation, it is likely that a judicial consent decree will be the more appropriate settlement tool.  Even in such situations, a Region may administratively settle the liability of a de micromis party. (See footnote 4 below)

VI.    DE MICROMIS SETTLEMENT PROCEDURES

    A.    Eligibility

    De micromis settlements are a subset of de minimis settlements under CERCLA Section 122(g), and are intended to encompass only the parties who contributed minuscule amounts of waste to a site. Therefore, in considering parties for de micromis settlements, the Region must first be able to make the Section 122(g) findings required for a de minimis settlement with respect to those parties.  The next step in determining eligibility is establishing a de micromis volumetric cut-off, above which no party could qualify for a de micromis settlement (although they may still qualify for other settlements).

=============== Foot Note ==================
3/    The present and future liability concepts are explained in the interim guidance entitled "Covenants Not to Sue Under SARA" (Adams/Porter, July 10, 1987), published at 52 Fed. Reg. 28038 (July 27, 1987).

4/    See Dravo v. Zuber, No: 8:CV 91-00499 (D. Neb. September 9, 1992)(contribution protection effective even though administrative de minimis settlement was not final at the time a contribution action was commenced).
===========================================

    The Region may consider several factors in determining the eligibility cut-off for PRPs who would qualify as de micromis, including the settlor's contribution of hazardous substances in relation to the over-all volume of waste at the site, and the toxic or hazardous effects of such hazardous substances.  We discuss below some examples of parties whom the Regions might determine are eligible for de micromis settlements and circumstances under which the Region might make such a determination. (See footnote 5 below)

    It must be stressed that determinations to offer de micromis settlements are discretionary.  At a particular site, the Regions might reasonably decide not to offer any de micromis settlements. Furthermore, disposal of minuscule amounts of hazardous substances does not automatically make a party eligible for a de micromis settlement. The Region should evaluate site-specific factors in determining whether a de micromis settlement is appropriate in a given situation.

    (1)   Sites with similar waste contributions

    At sites where the wastes are found to be essentially similar (See footnote 6 below) (as may be the case at particular battery cracking, waste oil recycling, or scrap metal facilities), the Region could establish a cut-off for de micromis eligibility based simply on the volumetric waste contribution (e.g., the percentage of the number of batteries or gallons of waste oil sent by a party as compared to the total waste at the site).  Given the nature of wastes at these sites and their similar toxicities, a typical de micromis cutoff would be .001% although this number will vary based on site-specific factors.

    (2)   Landfills with contributions of varying toxicity

    Another example of sites where the Regions might determine that

parties are eligible for de micromis settlements is landfills containing a municipal solid waste ("MSW") and/or trash from a commercial, institutional, or industrial entity ("industrial trash") component. (See footnote 7 below)   Wastes at these landfills may vary in toxicity but the MSW and industrial trash contributions are generally high volume and their toxicities, at most, are comparatively low.   Based on the different nature of MSW and industrial trash contributions compared to industrial hazardous substances, it is appropriate for a Region to consider a higher volumetric cut-off for de micromis eligibility.   The Region might offer a de micromis settlement to PRPs whose contribution of MSW or industrial trash did not exceed 0.1% of the total waste at the site.   The Region should also take site-specific factors into account when establishing this volumetric cut-off.

============= Foot Note =================
5/    There may be other situations where de micromis settlements may be appropriate.

6/    In this context, similar is intended to signify that waste contributions are not significantly more toxic than other contributions at the site.

7/    See "Interim Policy on CERCLA Settlements Involving Municipalities or Municipal Wastes" (Clay, Dec. 6, 1989)(OSWER Directive #9834.13).   54 Fed. Reg. 51071 (Dec. 12, 1989) for the definitions of "MSW" and "industrial trash."
==========================================


In order to qualify for de micromis treatment at these landfills, parties must show that their contribution to the site complies with the criteria articulated in the "Interim Policy on CERCLA Settlements involving Municipalities or Municipal Wastes."   In this policy, the Agency determined that it would generally not pursue parties who contributed certain types of wastes.

    B.    Timing

    The Agency can enter into a de micromis settlement as soon as it can reasonably determine that a party meets the eligibility requirements discussed above and the Agency can calculate the de micromis part's appropriate payment of site costs.   De micromis settlements can be used separately or in conjunction with de minimis and other settlements. Parties interested in obtaining a de micromis settlement can contract the EPA Regional Office, or the Region may volunteer to offer de micromis settlements to a class of parties at a site.

    C.    Information

    The Region should evaluate the following site information before offering a de micromis settlement:   1) information regarding hazardous substances sent to the site by the de micromis party; 2) the total estimate of waste at the site; and 3) a reasonable estimate of past and future response costs at the site.   To estimate costs, a Region can use the procedures outlined in the June 2, 1992, Methodology for Early De Minimis Waste Contributor Settlements under CERCLA Section 122(g)(1)(A), (OSWER Directive #9834.7-1C).

    The Region may use a variety of information sources to determine a party's eligibility for a de micromis settlement.   These sources include:   state records, manifests, site records, canceled checks, waste-in lists, other allocation documents, or Section 104(e) information request responses.   The Region does not have to produce a waste-in list, even if the information is available, if the Region has information in its possession to determine the potential settlor is a de

micromis party. However, the Region should use its prepared waste-in list if it is available. The Region can also use a certification letter and questionnaire to determine eligibility (models will be provided in a later memorandum). The certification letter and questionnaire offer the party an opportunity to describe the nature and quantity of the materials it sent to the site. The information from these sources can be used to determine whether the Region should enter into a de micromis settlement with the party.

    D.    Settlement Amount

    As previously discussed, the Region should estimate the total past and future response costs at the site to assist in determining the appropriate payment amount for the de micromis party. The Region may use the payment matrix set forth below to calculate a de micromis party's settlement amount. The Region may also use this format as a model when developing its own site-specific matrix. Another alternative is for the Region to establish a standardized payment for everyone in the de micromis settlement class at a particular site. Where the Region has more precise information readily available, it is preferable to use the more specific information to calculate the payment amount. A party's ability to pay may also be considered in determining a settlement amount.

    The matrix uses the mathematical ratio of the party's waste contribution to the estimate of the total volume of waste at the site, in proportion to the party's share of payment of the total estimated site cleanup costs. The waste contribution axis is stated in terms of a range of volumetric percentages because EPA and PRPs will often not know precisely how much material they sent to a site. The Region must be reasonably assured that a PRP sent "no more than" the de micromis cut-off established for the site, based on available information or the PRP's certification. The Region can convert the PRP's volumetric information to a common unit of measurement to aid in this payment calculation. (See footnote 8 below)

    For example, at a site where site costs are expected to be up to $10 million and the qualifying PRP's contribution is less than .001%, a party would have to pay $100 in settlement costs. The Region can also extrapolate from the figures used in the matrix where the estimated total site costs or contribution percentages vary from the following example. (See footnote 9 below)

============= Foot Note =================
8/    Regions can use the following guidance in calculating equivalent measurements for the party's volumetric information. (See Guidance on Preparing Waste-In Lists and Volumetric Rankings for Release to Potentially Responsible Parties Under CERCLA, OSWER Directive No. 9835.16, February 20, 1991).

9/    The matrix's figures are based on the following information.

    *    On one axis site costs are grouped in ranges to allow Regions a quick way to categorize where they believe the potential remedy costs at a site might fall (based on current information about the site or similar sites).

    *    On the other axis there are volumetric percentages. (e.g., 001% of total waste volume.)
=======================================

                    EXAMPLE PAYMENT MATRIX

ÉÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÑÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍ»
º                              ³                                            º

| VOLUMETRIC CONTRIBUTION | ESTIMATED TOTAL SITE COSTS | | |
|---|---|---|---|
| | $0 - 10 M | $10 - 20 M | $20 - 30 M |
| up to .00001% | $1.00 | $2.00 | $3.00 |
| from .00001% to .0001% | $10.00 | $20.00 | $30.00 |
| from .0001% to .001% | $100.00 | $200.00 | $300.00 |

    The example payment amounts in the matrix were calculated by
multiplying the upper limit of the volumetric contribution range by the
upper limit of the estimated total site costs range.  This ensures that
the party is paying an appropriate amount relative to their potential
liability, and addresses some of the risk with settling with parties
when we are relying on estimated figures in this calculation.

    With respect to settlements involving MSW and industrial trash
contributors, the Region should similarly estimate the total past and
future cleanup costs at the site and the party's contribution to the
site compared to the total estimated site volume before determining the
appropriate settlement amount for the de micromis parties.  The Region
may also take into consideration the differing nature of MSW
contributions in calculating the payment amount.  Among the factors that
might be considered in reducing this payment are the toxicity and
mobility of MSW relative to other types of waste and the cost
differential in addressing MSW-only landfills as compared to mixed-waste
landfills. (See footnote 10 below)  The Region can also take other site-
specific factors into account when calculating the settlement amount.

    E.    Premium

    The Regions should not assign a premium to the de micromis
settlement amount since our aim is to provide protection to parties we
would not normally pursue.  The Agency has determined that the risk
posed to the Agency by site-specific uncertainties (e.g., completeness
of PRP information, knowledge of future response costs) is minimal
because the de micromis party's share represents such a minuscule amount
of the site's total clean-up costs.  The risk that a party settling on a
de micromis basis may later be determined to have contributed a larger
share is protected through a reopener provision.

    The de micromis settlers will not be required to pay a premium
whenever they seek a settlement with the government.  This approach
departs from the typical de minimis settlements where the Agency often
charges a seperate premium for parties who were eligible to settle
earlier, but enter the de minimis settlement later in the process.  EPA
has decided that a premium payment for persons who enter the settlement
late would be inappropriate for de micromis settlers because the Agency,
in exercising its enforcement discretion, generally would not pursue
these parties.

    F.    Contacting De Micromis Settlors

    When the Agency initiates a de micromis settlement offer the Region
should consider that the parties may not be familiar with the Superfund
process.  Most de micromis parties might not see any practical
difference between a demand letter from a settling PRP and a letter from
the government containing an offer to enter into a de micromis
settlement.  The potential de micromis settlor may be unaware of the
possibilities of contribution litigation and any benefits it would
receive, such as contribution protection and reduced transaction costs,
by settling with the government.

Therefore, the site case team should formulate a communication strategy before the settlement offer is sent to the de micromis parties. The purpose of the strategy is to communicate EPA's actions to public officials, potential de micromis parties and other PRPs at the site. This procedure increases fairness, could reduce later settlement challenges and may identify issues or additional information that should be considered in the settlement offer. Depending on the number of parties and site-specific circumstances, it may be appropriate for the case team to discuss the settlement strategy with Regional Congressional Affairs and community relations personnel. The case team should develop a communication strategy which states that the parties are being sent a preemptive settlement offer rather than a threat of enforcement action, and explains how the settlement will benefit the de micromis party. The communication strategy should also state clearly that the federal government does not intend to pursue bona fide de micromis parties who decide not to enter into a settlement based on the current site information. The Congressional Affairs representative should be given a copy of the draft settlement offer letter in high-profile cases. In appropriate circumstances, the case team should consider offering a briefing to local, state and federal elected officials early in the settlement process.

============= Foot Note =================
10/  We are currently developing a payment matrix that specifically
     addresses how these factors can be taken into consideration.
=========================================

The Region should send a simple cover letter (a model will be provided in a later memorandum) and a non-negotiable settlement offer to parties potentially eligible for a de micromis settlement. The letter must be carefully written to explain the settlement in simple terms. The letter should emphasize that EPA is merely offering a settlement, that the government does not intend to pursue the party if the party rejects the offer and that the settlement terms are non-negotiable to reduce transaction costs and administrative expenses. The Region should set a deadline for the settlor to respond to the settlement offer and explain that the deadline is to ensure the settlor will receive timely contribution protection. The Region should also explain that the party may be subject to contribution actions brought by parties who have incurred response costs if it does not enter into the settlement.

G.    Notification of Headquarters and DOJ

The Region must notify the de micromis coordinators at Headquarters and DOJ (if the total costs are over $500,000) if planning to enter into a de micromis settlement. Headquarters should concur on the first de micromis settlement in each Region since it is a nationally significant issue. (See footnote 11 below)  Therefore, the Region should consult with Headquarters and DOJ before offering its first de micromis settlement. DOJ must approve all de micromis settlements where total site costs are expected to exceed $500,000. Subsequent de micromis settlements will not require Headquarters concurrence. The Region must consult with Headquarters and then send a copy of the final de micromis settlement agreements to the de micromis coordinator in Headquarters.

============= Foot Note =================
11/  See, EPA Delegation 14-14E (De Minimis Settlements) (Sept. 13,
     1987). Delegation was modified by "Revision of CERCLA Civil
     Judicial Settlement Authorities Under Delegations 14-13-B and 14-
     14-E" (Adams/Porter, June 17, 1988).
=========================================

If the settlement requires DOJ approval, the Region should forward the referral package prepared for the Regional Administrator (RA) to

DOJ.  After receiving the proposed settlement and supporting materials, DOJ will expeditiously review it; within 30 days of receiving the materials DOJ will advise the Region whether the settlement is approved. Barring an agreement to enlarge this time period between the appropriate Assistant Section Chief from DOJ's Environmental Enforcement Section and EPA's Regional Counsel, if DOJ does not reject a proposed de micromis settlement within the 30-day period, the settlement is deemed approved. (See footnote 12 below)  Headquarters also has 30 days to review settlement agreements when Headquarters' concurrence is necessary.

### H.    Accepting the Settlement

The party who agrees to settle should send the completed de micromis settlement forms to the Regional Office.  If total site costs are below $500,000, the Region should informally consult with DOJ before publishing a Federal Register notice of the settlement according to the requirements specified in CERCLA Section 122(i).  The Regional Administrator should determine whether to approve the AOC after the public comment period expires.  If the total site costs are over $500,000, DOJ must approve the settlement before publishing a Federal Register notice of the settlement.  The Region should send the settlor notice of the settlement's approval, if approved, after public comment and give the settlor 30 days to send in the appropriate payment amount.

### I.    Money Received in Settlement

Money received from the de micromis settlements should generally be deposited in the invested portion of the Hazardous Substance Superfund (Trust Fund.)  The money can be used to reimburse the government for past costs.  It should be noted that the amount owed by other PRPs for past and/or future costs will be reduced by the de micromis settlement amounts.  In some cases, the Region may want to set up a site-specific special account so the funds can be used for future work to be performed at the site.  It also may be appropriate for a portion of the funds received to be placed in a PRP-created trust account. (See footnote 13 below)

============= Foot Note ================
12/   See CERCLA Section 122(g)(4), which provides DOJ thirty days to review Section 122(g) settlements.

13/   See, "Recovery of Costs for CERCLA Response Actions" published at 57 Fed. Reg. 34742 (Aug. 6, 1992) and "Interim Cashout Settlement Procedures" (Diamond, Jan. 7, 1992) for further information on recovering money for the trust fund or special accounts.
=======================================

## VII. DE MICROMIS SETTLEMENT PROVISIONS

The de micromis settlement should contain several provisions that may affect the finality of the agreement.  These provisions, which are described below, include covenants not to sue, reservation of rights, reopeners, and contribution protection.

### A.    Resolution of Liability

De micromis settlements under CERCLA Section 122(g) (administrative or judicial) will address a party's potential liability under Sections 106 and 107 and provide the settlor with an immediately effective covenant not to sue for past and future liability.  EPA intends for de micromis settlements to be a final resolution of the de micromis party's potential liability, unless new information shows that the settlor does not qualify as a de micromis settlor or that the settlor falsified data in its certification statement or questionnaire.  Otherwise, the payment of the party's de micromis settlement amount should satisfy the

governments's potential CERCLA claims against the party for the Superfund site.  The government can reopen the settlement if it discovers that the party is not eligible for the de micromis settlement.

B.   Reservation of Rights

A de micromis settlement under Section 122(g) should contain a reservation of rights for the following situations:  1) liability resulting from a settlor's failure to comply with the terms of the settlement (e.g., non-payment of money); 2) liability for natural resource damages (unless the Federal natural resource trustees have agreed to resolve the party's liability); 3) criminal liability; or 4) future disposal activities at the site.  Furthermore, all de micromis settlement agreements should state that the settlement has no effect on the Agency's ability to pursue non-settling parties.

C.   Re-openers

Re-openers should be included only for new information showing that the settlor does not qualify for a de micromis settlement (e.g., the waste contributed was materially greater than originally determined).  This situation can arise when the settlor falsified data in its certification statement or questionnaire.  The reopener will also apply whenever EPA discovers any information regarding the settlor's waste contribution (regardless of whether it was available to the Agency at the time of the settlement) that establishes that the settlor sent hazardous substances of a greater volume or toxicity than that which was identified in the settlement documents.  EPA is not charged with knowledge about a settlor's contribution where the settlor certifies directly and specifically as to their waste contribution.

D.   Contribution Protection

The de micromis settlement should contain language that the settlor receives protection against contribution actions (regarding matters addressed in the settlement) to the full extent provided in CERCLA Section 113(f) and as provided in Section 122(g)(5).

VIII.   PURPOSE AND USE OF THIS GUIDANCE

This guidance and any internal procedures adopted for its implementation are intended exclusively as guidance for employees of the U.S. Environmental Protection Agency.  This guidance does not constitute rulemaking by the Agency and may not be relied upon to create a right or a benefit, substantive or procedural, enforceable at law or in equity, by any person.  The Agency may take action at variance with this guidance or its internal implementing procedures.

IX.   FURTHER INFORMATION

For further information concerning this guidance, please contact Joan Wart Gillespie at (202) 260-3092 in the Office of Enforcement or Gary Worthman at (703) 603-8951 in the Office of Waste Programs Enforcement.

Return to the top of this document.

Return to OSRE Home Page

Search  Map/Index  Feedback  OECA Home  EnviroSense  EPA Home

http://es.epa.gov/oeca/osre/930730.html                          12/16/98

Transmittal of Guidance on CERCLA Settlements...                    Page 14 of 14

*Last Updated: May 18, 1998*