IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AGERE SYSTEMS, INC., CYTEC INDUSTRIES INC., FORD MOTOR COMPANY, SPS TECHNOLOGIES, LLC and TI GROUP AUTOMOTIVE SYSTEMS LLC,<br><br>      Plaintiffs,<br>v.<br><br>ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, et al.,<br><br>      Defendants. | Civil Action No. 02-CV-3830 (LDD) |

## REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR LEAVE TO AMEND FOURTH AMENDED COMPLAINT

Plaintiffs Agere Systems, Inc., Cytec Industries Inc., Ford Motor Company, SPS Technologies, LLC and TI Group Automotive Systems LLC (collectively "Plaintiffs") respectfully submit this Reply Memorandum in response to Defendants' Joint Memorandum of Law in Opposition to Plaintiffs' Motion for Leave to Amend Fourth Amended Complaint. Plaintiffs have always sought only Defendants' fair shares of the millions of dollars Plaintiffs have paid and will in the future pay to remediate the Boarhead Farms Site (the "Site").

Defendants' opposition overlooks the fact that Plaintiffs seek leave to amend the Complaint so that this action is resolved in accordance with applicable law established in *United States v. Atlantic Research Corporation*, 127 S. Ct. 2331 (2007). Defendants tacitly suggest by opposing Plaintiffs' motion that the parties and this Court should continue to prepare the case for trial and then try it for six weeks pretending that the *Atlantic Research* opinion does not exist.

DMEAST #9875304 v2

Defendants also base their opposition upon a faulty premise -- that a motion for leave to amend should be denied where the proposed amendment *might* impact them. All of the horribles that Defendants imagine will happen to them are the supposed result *not* of Plaintiffs' assertion of a *claim* for certain response costs under § 107(a) (as dictated by the Supreme Court), but of the *nature of the relief* sought under that claim, joint and several liability. The Supreme Court assumed, without deciding, that a § 107(a) claim under these circumstances is one for joint and several liability. 127 S. Ct. at 2339. Defendants will no doubt later argue that Plaintiffs are entitled only to contribution under § 107(a). If this Court agrees, then none of the problems they anticipate will occur. Leave must be granted in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment. *Foman v. Davis*, 371 U.S. 178 (1962). Plaintiffs are aware of no opinion where leave to amend has been denied where the nature of the relief sought in a claim *might* create one of those situations.

This action can and should be tried in accordance with *Atlantic Research*. Doing so will not change the essential nature of the case even if Plaintiffs are entitled to joint and several liability under § 107(a) because this Court will resolve all claims by allocating response costs among liable parties in accordance with § 113(f) of CERCLA, the very claims that have always been the focus of the litigation. Following the amendment, some of Plaintiffs' specific costs will continue to be the subject only of a § 113(f) claim, to which the Defendants will have a § 113(f) counterclaim and §113(f) cross-claims, *just as they do now*. CMO No. 5 at ¶1. Those claims will be resolved by this Court allocating "response costs among liable parties using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f)(1). Accordingly, the Plaintiffs and each Defendant will be allocated a percentage share of Plaintiffs' response costs, which shares will collectively add up to 100% of those costs. Allocated shares will be

based upon findings of fact and conclusions of law made at trial concerning the wastes associated with each Plaintiff, each of the Defendants, and each of the Settled Defendants[1] that were disposed of at the Site, and upon whatever other equitable factors this Court "determines are appropriate."

Other of Plaintiffs' costs will be the subject initially of a claim under § 107(a), for which Plaintiffs will assert joint and several liability. Defendants will assert in response to those claims a § 113(f) counterclaim and § 113(f) cross-claims, *just as they have now*. Even if this Court rules at trial that Defendants are jointly and severally liable on those claims, it will also resolve the § 113(f) claims. The *final judgment* therefore will reflect this Court's allocation of response costs "among liable parties using such equitable factors as the court determines are appropriate." There will be no difference between the findings of fact, conclusions of law, and consideration of equitable factors necessary to allocate those costs subject to the initial § 113(f) claim and those necessary to allocate those costs asserted under § 107(a) claims (or under both).

This is precisely the result anticipated by the Supreme Court in *Atlantic Research*: "Resolution of a §113(f) counterclaim would necessitate the equitable apportionment of the costs among the liable parties, including the PRP that filed the §107(a) action." 127 S. Ct. at 2339. Plaintiffs here want nothing more than for this Court to allocate shares of Plaintiffs' response costs fairly and justly based upon the facts as proven at trial. They expect this to happen when this Court resolves Defendants' § 113(f) counterclaims and cross-claims. Defendants' arguments as to why all claims "may not" be resolved in equity are without merit.

---

[1] This Court has already ruled that Plaintiffs' claim against the Non-Settling Defendants "is reduced by the amount of the released person's equitable share of the obligation." June 30, 2004 Memorandum Order at 6 (*quoting* Section 6 of the UFCA).

Pages 16 through 20 of Defendants' Brief use a lot of words to suggest that, somehow, either language in the 2000 and 2002 Consent Decrees or language in the Orders by which the Settling Defendants have been dismissed to date will result in Defendants' inability to offset their initial joint and several liability by shares of response costs that should equitably be allocated to Plaintiffs. Plaintiffs consented to CMO No. 5 in which Defendants have *already* asserted a § 113(f) counterclaim against them. Defendants' assertion that they will be forced to sue the Settling Defendants starts from the incorrect proposition that they will be held jointly and severally liable for those costs subject to Plaintiffs' § 107(a) claim and will, thus, "pay in excess of their fair shares" of those costs. Defendants' Brief at 17-19. Again, this argument presumes that Plaintiffs are entitled to joint and several liability under their § 107(a) claims, an issue Defendants will no doubt later challenge. Moreover, Defendants already have a § 113(f) counterclaim and § 113(f) cross-claims. Defendants offer no coherent explanation of why this Court will not act fairly or justly in resolving those claims.

Defendants also argue that they will somehow be prejudiced because of a shifting of burden of proof arising out of a §107(a) claim. Defendants' Brief at 21-22. This argument overlooks the fact that they have *always* had the burden of proving at trial any equitable shares they believe should be allocated to Plaintiffs, both for the practical reason that Plaintiffs have no obligation or reason to prove a case against themselves or against the Settled Defendants and because Defendants *already have* § 113(f) claims for which they have the legal burden of proof. Thus, it is Defendants' burden, whether or not Plaintiffs assert a § 107(a) claim, to establish at trial, for example, that some share should be allocated to either Agere or TI[2] or, similarly, that

---

[2] Plaintiffs' response to the Joint Contention Interrogatories set forth Plaintiffs' contentions that Agere and TI each should be assigned a zero equitable share because no waste from
(continued...)

the other three Plaintiffs should be allocated shares greater than those contended by Plaintiffs. Moreover, Defendants have known since June 30, 2004, when this Court agreed that the UCFA should govern the "extent to which the non-settling defendants' liability should be offset by any settlement agreement," June 30, 2004 Memorandum Order at 6, that they had the burden to prove at trial the nature and extent, if any, of both liability and equitable shares of each of the Settled Defendants. Plaintiffs certainly have no reason to do so. Nothing in Defendant's brief explains what the difference is between the burden to "defend" against a § 113(f) claim by proving someone else's share and the burden to affirmatively prosecute a §113(f) counterclaim in response to a § 107(a) claim by offering the same proofs. The facts concerning the wastes of Plaintiffs, Defendants, and the Settled Defendants continue to be the key building blocks to support an equitable allocation of response costs whether all or only some of Plaintiffs' claims arise out of § 113(f).

The Defendants next argue that leave to amend should be denied because they will be unduly prejudiced and the proceedings will be unnecessarily delayed because they now have to defend against "Plaintiffs' new legal theories." Defendants Brief at 9. Once again, Defendants overlook the fact that the proposed pleading does not set forth "Plaintiffs' new legal theories," but the change in law dictated by *Atlantic Research*. It is true that the Supreme Court left open the question whether claims for certain costs are properly brought under § 107(a), § 113(f), or both, as Plaintiffs noted in their initial brief. Plaintiffs' Brief at 3. Defendants cite absolutely no authority for their apparent belief that leave to amend a complaint to conform with new law should be denied simply because new legal issues must be decided. Indeed, not a single

---

(...continued)
    those entities was disposed of at the Boarhead Site.

opinion cited by Defendants involved a situation where there was an intervening change of law. Each opinion involved instead a Plaintiff's attempt to assert new claims based upon *existing* law. This Court has noted that an intervening change in applicable law is one of the reasons for granting a Motion to Amend. July 20, 2005 Memorandum & Order at 5.

To the contrary, leave must be granted in the absence of "undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment." *Grayson v. Mayview State Hospital*, 293 F.3d 103, 108 (*citing Foman v. Davis*, 371 U.S. 178 (1962)). The *Grayson* court noted that the first four of these reasons "devolve to instances where permitting amendment would be inequitable."[3] *Id.* It is simply not "inequitable" for Defendants to have to confront the precise intersection of § 107(a) and § 113(f) left open by the *Atlantic Research* court.[4] A change in the law, even if it is to the detriment of one or more of the parties, is not "inequitable."

Many of the factual or legal issues trotted out by the Defendants to support this "new legal theories" argument have nothing whatsoever to do with the proposed amendment. Defendants have already raised: The relationship between the TI-named entity that signed the 2002 Consent Decree and the TI-named entity that is the named Plaintiff; the legal effect of the settlement between four of the Plaintiffs and Agere; and Defendants' perennial argument that each of the Plaintiffs cannot show that it paid more in response costs than its individual fair share

---

[3]   Defendants do not even suggest that, with respect to the proposal to amend the Complaint to conform with *Atlantic Research*, Plaintiffs have acted with "undue delay," "bad faith," or for a "dilatory motive."

[4]   As set forth above, whether certain response costs are claimed under § 107(a) or § 113(f), shares will ultimately be decided equitably under § 113(f).

because the substantial monies each of them has paid to date was paid on an "interim" basis. These issues thus cannot serve as a basis for denying leave to amend.

Similarly, Defendants' Point IV, that amendment of the Complaint will require "additional discovery," relies primarily on discovery Defendants have *already* said they "need" to defend against Plaintiffs' *current* claims. The relationship between the two TI-named entities, the nature of the Agere settlement, and the nature of the work done by EPA at the Site prior to 2000 are all factual questions that Defendants have already raised and that have nothing to do with the proposed amendment. In any event, any legitimate need for additional discovery that might be created by Plaintiffs' proposed Complaint should not prevent the grant of leave to file that Complaint. Any truly unfair prejudice can be easily remedied by simply permitting such discovery now.[5]

Finally, Defendants assert that the proposed amendments seeking to add the Smiths companies as additional plaintiffs are futile because of the applicable statutes of limitations.[6] Defendants' Brief at 25-37. This argument is virtually identical to the argument

---

[5] Plaintiffs have already provided Defendants with a copy of the settlement with Agere and copies of the settlement agreements with all of the Settled Defendants. It is thus unclear what type of discovery Defendants think they "need" to understand these settlements. Defendants' Brief at 24.

[6] Defendants raised in their Point I that one of the Smiths entities is dissolved and therefore "cannot possibly file a lawsuit." Defendants' Brief at 13-14. Smiths Group North America, Inc. was incorporated in the State of Florida, as is shown in its Articles of Dissolution attached hereto as Exhibit A (and previously produced to Defendants). Dissolved Florida corporations continue their corporate existence to wind up and liquidate their business and affairs (including "collecting its assets"), and can sue or be sued indefinitely for such purposes. F.S.A. § 607.1405; *Ron's Quality Towing, Inc. v. Southeastern Bank of Florida*, 765 So.2d 134 (Fla. App. 2000); *Gould v. Brick*, 358 F.2d 437 (5th Cir. 1996). That is precisely what is happening here.

Defendants made in opposition to Plaintiffs' motion for leave to amend its Third Amended Complaint in 2005 and Plaintiffs will not restate here their arguments made in support of that motion. This Court should permit the amendment now for the same reasons it permitted the last amendment. July 20, 2005 Memorandum & Order. This Court there permitted the substitution of the five individual members of the Boarhead Farm Agreement Group, finding that they were the real parties in interest, and noting that the real party in interest may be substituted at any time. July 20, 2005 Memorandum & Order at 6-7. It additionally noted that the concerns underlying elements of Rule 15(c)(3), notice and prejudice the Defendants, were not at issue. *Id.* at 8. Finally, this Court found that the claims being asserted in the proposed Complaint arose out of the same "conduct, transaction, or occurrence" set forth in the previous Complaints, and that the presentation of Defendants' defenses would not be unduly prejudiced. *Id.*

Plaintiffs have always sought from Defendants those Defendants' equitable shares recoverable under CERCLA of the response costs paid out of the OU-1 and OU-2 Group trust accounts. Plaintiffs have repeatedly informed Defendants of the quantum of those costs, and have long ago (and with updates as monies continue to be spent) produced to Defendants all of the underlying documents evidencing those costs. The two Smiths entities are nothing more than corporations that made payments into these accounts on behalf of Plaintiff TI to honor TI's obligations to the OU-1 and the OU-2 Groups. There are no new or additional dollars that Plaintiffs seek to recover that have not already been disclosed to Defendants. There is no new party whose wastes were disposed of at the Site.[7] Whether TI's share of payments into the OU-1

---

[7] Defendants claim that the Smiths entities cannot bring a § 107(a) claim because they haven't "incurred" costs, but only "indemnified" TI's costs. Defendants' Brief at 37. They then have the audacity to say that TI didn't "incur" costs either, because TI was "merely reimbursing" the other four Plaintiffs. Defendants' Brief at 12. It is undisputed
(continued...)

and OU-2 accounts came from TI's own checkbook or from the Smiths entities on behalf of TI is irrelevant to the findings of fact and conclusions of law that will have to be made to resolve all claims at trial.[8] Either TI has the right to seek recovery of dollars paid on its behalf (for its own account by the Smiths entities) or the Smiths entities themselves are the real parties in interest with respect to the dollars they paid on behalf of TI. The claims "arose out of the conduct, transaction, or occurrence" set forth in all previous pleadings -- any other conclusion would exalt form over substance. There is no prejudice, undue or otherwise, to Defendants by the addition of these two entities as Plaintiffs.

---

(...continued)
    that both TI and the Smiths entities paid millions of dollars directly into Group trust accounts from which payments to EPA and to various response action contractors were made. Defendants' inconsistent arguments are both incorrect.

[8]     Plaintiffs acknowledge that Defendants may want to better understand the relationship between the Smiths entities and TI. Plaintiffs have already produced to Defendants the corporate documents relevant to those entities and have produced the transactional document wherein Smiths plc agreed to honor TI's obligations here. Defendants can learn all that they need to know in a single deposition of a person familiar with these transactions and relationships or, alternatively, a Rule 30(b)(6) deposition.

## Conclusion

Plaintiffs have paid millions of dollars to EPA and to contractors doing the work of remediating the Site. All but one of the Defendants have paid nothing. Plaintiffs simply ask this Court, sitting in equity, to determine Defendants' fair share of Plaintiffs' costs. It is time for an end to Defendants' attempts to avoid a fair and just result. Plaintiffs' motion for leave to amend the Fourth Amended Complaint should be granted.

Dated: September 21, 2007

Respectfully submitted,

Ballard Spahr Andrews & Ingersoll, LLP

By: _____
Glenn A. Harris, Esquire
Plaza 1000, Suite 500, Main Street
Voorhees, New Jersey 08043
Phone: (856) 761-3400

Attorney for Plaintiffs