**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AGERE SYSTEMS, INC., CYTEC INDUSTRIES INC., FORD MOTOR COMPANY, SPS TECHNOLOGIES, LLC, TI GROUP AUTOMOTIVE SYSTEMS, L.L.C., | : : : : : : | |
| Plaintiffs, | : : | CIVIL ACTION |
| v. | : : | NO. 02-CV-3830 |
| ADVANCED ENVIRONMENTAL TECHNOLOGY CORP.; ASHLAND, INC., CARPENTER TECHNOLOGY CORPORATION; DIAZ CHEMICAL CORPORATION; fcg, INC.; HANDY & HARMAN TUBE COMPANY; NRM INVESTMENT COMPANY, | : : : : : : : : | Judge Legrome D. Davis |
| Defendants. | : : | |

**FIFTH AMENDED COMPLAINT**

Plaintiffs Agere Systems, Inc. ("Agere"), Cytec Industries Inc. ("Cytec") , Ford

Motor Company ("Ford"), SPS Technologies, LLC (as successor to SPS Technologies, Inc.)

("SPS"), and TI Group Automotive Systems, L.L.C. (as successor to TI Group Automotive

Systems Corporation ("TI") (collectively "Cooperating Plaintiffs"), by and through their

attorneys, by way of Complaint against the Defendants hereby state as follows:

**FACTUAL BACKGROUND**

1.      Plaintiffs seek cost recovery and contribution from Defendants for the

response costs that Plaintiffs have incurred and the damages that Plaintiffs have suffered as a

result of releases or threatened releases of one or more hazardous substance as defined by

Section 101 (14) of the Comprehensive Environmental Response, Compensation and Liability

Act, as amended, ("CERCLA"), 42 U.S.C. § 9601 (14), and Section 103 of the Pennsylvania

Hazardous Sites Cleanup Act ("HSCA"), 35 PA. CONS. STAT. § 6020.103 ("Hazardous Substances"), at or from the Boarhead Farms Superfund Site, Lonely Cottage Road, Upper Black Eddy, Bridgeton Township, Bucks County, Pennsylvania (the "Site"). Plaintiffs also seek a declaratory judgment that Defendants are liable to Plaintiffs for contribution for any and all response costs that Plaintiffs will or may incur and for any and all damages that Plaintiffs will or may suffer in the future as a result of releases, threatened releases, or discharges of Hazardous Substances at or from the Site.

2.      Manfred DeRewal ("DeRewal") incorporated Boarhead Corporation in 1969. In addition, DeRewal incorporated and operated DeRewal Chemical Company, Inc. ("DeRewal Chemical"), a hauler of waste materials.

3.      In 1969, Boarhead Corporation purchased the Site. The Site is and was, at all relevant times, a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S. § 9601(9).

4.      From some time after purchase until approximately 1977, the Site was used for, among other things, the disposal of Hazardous Substances.

5.      In the early 1970s, the Bucks County Department of Health (the "DOH"), responding to complaints of dead fish, dead plant life, and other environmental and public health concerns, investigated the Site. The DOH noted the following at the Site: pungent odors; drums on an open trailer; drums awaiting disposal; empty tanks awaiting removal; a bulldozer burying old drums; 40 drums filled with solvent; and empty tanker trucks parked at the Site.

6.      The DOH obtained a search warrant and searched the Site on March 5, 1973. The DOH documented the following at the Site: improperly stored chemicals; chemicals

leaking from 55-gallon drums; liquid and solid waste on the ground; chemicals leaking into waste pools, on-Site lagoons, and vats; copper ammonia sulfate; paint solvents; arsenic pent oxide; pesticides; copper naphtholate; and a cleared area in the northeast section of the Site containing drums.

7.    In October of 1973, a tank truck discharged approximately 3,000 gallons of ferrous chloride at the Site, for which Boarhead Corporation was found to be in violation of the Pennsylvania Clean Streams Law, 35 PA. CONS. STAT. §§ 691.1 *et seq.*

8.    Soil samples taken from the Site in 1974 revealed the following:  soil pH levels of 2.9 and the presence of chloride, iron, chromium, copper, zinc, and nickel.

9.    In September of 1976, a tank truck released approximately 3,000 gallons of sulfuric acid on the Site, resulting in the evacuation of 34 local residents.

10.    In 1984, the United States Environmental Protection Agency ("USEPA") performed a Site inspection.  On March 31, 1989, the USEPA placed the Site on the National Priorities List (the "NPL"), 40 C.F.R Part 300, Appendix B, a national list of hazardous waste sites that the USEPA has determined may pose a threat to health, welfare, and the environment. The NPL was established under the National Contingency Plan (the "NCP"), 40 C.F.R. Part 300, as required by Section 105(a) of CERCLA, 42 U.S.C. § 9605(a).

11.    The USEPA has conducted a CERCLA removal action at the Site.  In connection with this removal action, the USEPA located and removed from the Site 2,600 drums as well as contaminated soil.  Contaminated groundwater is being treated at an on-site treatment facility.

12.    Under an administrative consent order, USEPA Docket Number: III-92-66-DC, General Ceramics, Inc., performed a separate removal action to address the presence of radioactive waste at the Site.

13.    The USEPA completed a Remedial Investigation and Feasibility Study for the Site in July 1997.

14.    On or about November 18, 1998, the USEPA issued a Record of Decision (the "ROD") selecting a remedial action for the Site.  The Commonwealth of Pennsylvania concurred in this remedy selection.

15.    Subsequent to the issuance of the ROD, the USEPA determined to implement the remedial action described in the ROD in two operable units ("OUs").  The USEPA determined that, in general, OU-1 would address:  Groundwater extraction, metal precipitation, and air stripping; the installation of additional monitoring wells; the implementation of institutional controls and monitoring for OU-1; residential water treatment; and phytoremediation.  The USEPA determined that, in general, OU-2 would address:  Soil aeration and the treatment of volatile organic compound hot spots; the excavation and off-site disposal of buried drums; and the implementation of institutional controls and monitoring for OU-2.

16.    Cooperating Plaintiffs have agreed collectively to undertake the cleanup work comprising OU-1 and OU-2, to otherwise collectively resolve the claims of EPA related to the Site, and to seek collectively cost recovery and contribution from the Defendants in this civil action.  Cooperating Plaintiffs have agreed that they will, at some future time, and not in this

civil action, reach a final allocation among themselves applicable to all costs associated with group activities, including the costs of the cleanup work comprising OU-1 and OU-2.

17.    Although denying that they are liable parties under Section 107 of CERCLA, 42 U.S.C. § 9607, Cytec, Ford, and SPS are parties to both an Administrative Order on Consent for Remedial Design, USEPA Docket No. III-2000-002-DC, entered in February 2000 (the "OU-1 AOC") and a Consent Decree entered by this Court on or about September 28, 2000 (the "OU-1 Consent Decree") obligating them to perform the OU-1 remedial design and remedial action (the "OU-1 RD/RA") at the Site, and to reimburse the USEPA for its administrative and oversight costs in the future ("Future Response Costs") in connection with the OU-1 RD/RA.

18.    Cooperating Plaintiffs have agreed to collectively fund and perform the OU-1 RD/RA and have entered into an agreement with two other entities, NRM Investment Company ("NRM") and Worthington Steel Company - Malvern ("Worthington") (the "OU-1 Group Agreement") whereby the parties to that agreement ("the OU-1 Parties") agreed to collectively fund and perform the OU-1 RD/RA and to otherwise comply with the OU-1 Consent Decree.  Specifically, each of the OU-1 Parties contributes (or has contributed) funds to OU-1 Group trust accounts ("the OU-1 Trust Accounts").  Such contributions are (or have been) made on the basis of an interim allocation among the OU-1 Parties.   The interim allocation does not bind any of the OU-1 Parties, and the Cooperating Plaintiffs have agreed to reach a final allocation of their shares separate and apart from this action.  Plaintiffs herein assert claims against NRM with respect to response costs for the OU-1 RD/RA and for the Future Response Costs required by the OU-1 Consent Decree.  The activities necessary for performance of the

OU-1 RD/RA have been undertaken by Cooperating Plaintiffs (and the two other entities), collectively by using contractors hired by and paid by them collectively.

19.     Costs related to activities to perform the OU-1 RD/RA and for the Future Response Costs required by the OU-1 Consent Decree have been paid for and will in the future be paid for from the OU-1 Trust Accounts.

20.     Although denying that they are liable parties under Section 107 of CERCLA, 42 U.S.C. § 9607, Cytec, Ford, SPS, and TI are signatories to an Administrative Order on Consent for Remedial Design, EPA Docket No. III – 2001 – 0010 – DC, effective October 17, 2001 (the "OU-2 AOC") and a Consent Decree (the "OU-2 Consent Decree") entered by this Court on March 14, 2002 obligating them to perform the OU-2 remedial design and remedial action (the "OU-2 RD/RA") at the Site, to reimburse the USEPA both for $7,000,000 in response costs incurred and accounted for prior to July 2000 ("Past Response Costs") and for an as yet undetermined amount of response costs incurred subsequent to July 2000 ("Interim Response Costs"), and to reimburse the USEPA for its Future Response Costs in connection with the OU-2 RD/RA.

21.     Cooperating Plaintiffs have and will in the future collectively fund and perform the OU-2 RD/RA and to otherwise comply with the OU-2 Consent Decree. Specifically, Cooperating Plaintiffs contribute funds to OU-2 Group trust accounts ("the OU-2 Trust Accounts"). Such contributions are made on the basis of an interim allocation among Cooperating Plaintiffs. The interim allocation does not bind any of the Cooperating Plaintiffs, and they have agreed to reach a final allocation of their shares separate and apart from this

action. The activities necessary for performance of the OU-2 RD/RA have been undertaken by Cooperating Plaintiffs collectively by using contractors hired by and paid by them collectively.

22.    All costs of the activities to perform the OU-2 RD/RA and to perform the other requirements of the OU-2 Consent Decree have been paid for and will in the future be paid for from the OU-2 Trust Accounts.

23.    Plaintiffs have incurred costs and damages, including attorneys fees, in the course of collectively performing the requirements of the OU-1 and OU-2 AOCs and Consent Decrees. These costs constitute necessary costs of response, as defined in Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), incurred consistently with the NCP, within the meaning of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a). Releases or threatened releases of Hazardous Substances at or from the Site have caused Plaintiffs to incur response costs. The response costs incurred by Plaintiffs are also reasonable and necessary or appropriate costs consistent with Section 702(a)(3) of HSCA, 35 PA. CONS. STAT. § 6020.703(a)(3).

24.    Plaintiffs anticipate that they will incur additional necessary response costs consistent with the NCP.

25.    Agere has to date paid approximately $1,294,196.10 into OU-1 and OU-2 Trust Accounts and to counsel for Plaintiffs for legal fees for this action. On or about March 30, 2007, Agere entered into a settlement agreement with SPS, Ford, Cytec, and TI resolving certain claims, including the rights and obligations, as between Agere and those entities, for Agere's share of all OU-1 and OU-2 Group costs, including the costs of this action. SPS, Ford, Cytec, and TI agreed therein to pay Agere $400,000, none of which was allocated by the parties to any previous contributions by Agere. Agere assigned its rights in this action to those parties.

26.    Smiths Group plc, a United Kingdom corporation, was, prior to April 25,

2001, the ultimate parent of TI.  On or about April 25, 2001 Smiths sold the shares of TI (and

other related companies) to 329th Shelf Investment Company Limited ("329").  Smiths agreed, as

part of that transaction (and as set forth in the April 25, 2001 agreement pursuant to which the

shares of TI were sold), to indemnify TI and 329 with respect to any liabilities arising as a result

of or in connection with the Site.  Smiths has, since April 2001, caused its subsidiaries, Smiths

Group Services Corp. and Smiths Group North America, Inc., to transfer funds into the OU-1

and OU-2 Group Trust Accounts on behalf of TI and with respect to TI's obligations to the OU-1

and OU-2 Groups.  TI has agreed with Smiths Group plc that it will seek to recover in this action

and repay to Smiths Group plc all sums paid by Smiths on TI's behalf.

27.    TI seeks cost recovery and contribution from Defendants for the response

costs TI has incurred by making payments itself into the OU-1 and OU-2 Group Trust Accounts.

TI also seeks cost recovery and contribution from Defendants in its name on behalf of Smiths.

## JURISDICTION AND VENUE

28.    This action arises under Section 107 of CERCLA, 42 U.S.C. § 9607,

Section 113 of CERCLA, 42 U.S.C. § 9613, and Section 702(a)(3) of HSCA, 35 PA. CONS.

STAT. § 6020.702(a)(3).

29.    This Court has jurisdiction over the subject matter of this action pursuant

to Section 113(b) of CERCLA, 42 U.S.C. § 9313(b), 28 U.S.C. §§ 1331 and 1367.  This Court

has supplemental jurisdiction over the state claims based on 28 U.S.C. § 1367.

30.     This Court has authority to enter a declaratory judgment regarding the rights and liabilities of the parties pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, and Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2).

31.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) and Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), because the releases or threatened release of Hazardous Substances, wastes, pollutants, and contaminants alleged herein occurred and the claims set forth herein arose in the Eastern District of Pennsylvania.

## PARTIES

### A.    The Plaintiffs

32.     Plaintiffs are persons as defined by Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).  Agere is a Delaware corporation with a principal place of business in Allentown, Pennsylvania.  Cytec is a Delaware corporation with a principal place of business in West Paterson, New Jersey.  Ford is a Delaware corporation with a principal place of business in Dearborn, Michigan.  SPS is a Pennsylvania limited liability corporation with a principal place of business in Jenkintown, Pennsylvania.  TI is a Delaware limited liability company with a principal place of business in Warren, Michigan.

### B.    The Defendants

### Defendant Advanced Environmental Technology Corp.

33.     Defendant Advanced Environmental Technology Corp. ("AETC") is a New Jersey corporation with a principal place of business in Flanders, New Jersey.

34.     AETC arranged with DeRewal Chemical for the disposal of Hazardous Substances from Defendants Ashland Inc. ("Ashland") and Diaz Chemical Corporation ("Diaz"), which Hazardous Substances were disposed of at the Site.

### Defendant Ashland Inc.

35.     Defendant Ashland is a Kentucky corporation with a principal place of business in Russell, Kentucky.

36.     Ashland used AETC and DeRewal Chemical to remove industrial wastes from its Great Meadows, New Jersey plant.

37.     Ashland's waste was disposed of at the Site.

38.     Ashland's waste contained Hazardous Substances.

### Defendant Carpenter Technology Corporation

39.     Defendant Carpenter Technology Corporation ("Carpenter Technology") is a Delaware corporation with a principal place of business in Reading, Pennsylvania.

40.     Carpenter Technology used DeRewal Chemical for the removal of waste pickling solution from its Reading, Pennsylvania plant.

41.     Carpenter Technology's waste was disposed of at the Site.

42.     Carpenter Technology's waste contained Hazardous Substances.

### Defendant Diaz Chemical Corporation

43.     Defendant Diaz is a New York corporation with a principal place of business in Holley, New York.

44.    Diaz used AETC and DeRewal Chemical to remove industrial wastes from its Holley, New York, plant.

45.    Diaz's waste was disposed of at the Site.

46.    Diaz's waste contained Hazardous Substances.

### Defendant fcg, inc.
### (a/k/a Flexible Circuits, Inc.)

47.    Defendant fcg, inc. (a/k/a Flexible Circuits, Inc.) ("fcg") is a Pennsylvania corporation with a principal place of business in Warrington, Pennsylvania.

48.    Fcg used DeRewal Chemical to remove spent etchings and other industrial waste from its Warrington, Pennsylvania plant.

49.    Fcg's waste was disposed of at the Site.

50.    Fcg's waste contained Hazardous Substances.

51.    In 1969 fcg became the owner of all outstanding stock of Etched Circuits, Inc. ("Etched Circuits") and thereafter operated the Etched Circuits facility in Cherry Hill, New Jersey. Etched Circuits during this period used DeRewal Chemical to remove industrial waste from its Cherry Hill facility. Etched Circuits' waste contained hazardous substances and was disposed of at the Site. Fcg is thus a person who arranged for the transport, disposal, or treatment of Hazardous Substances from the Etched Circuits facility, which Hazardous Substances were disposed of at the Site.

**Defendant Handy & Harman Tube Company**

52.    Defendant Handy & Harman Tube Company ("Handy & Harman Tube")
is a Delaware corporation with a principal place of business in Norristown, Pennsylvania.

53.    Handy & Harman Tube used DeRewal Chemical to remove industrial
waste from its Norristown, Pennsylvania facility.

54.    Handy & Harman Tube's waste was disposed at the Site.

55.    Handy & Harmon Tube's waste contained Hazardous Substances.

**Defendant NRM Investment Company**

56.    Defendant NRM Investment Company ("NRMC") is a Pennsylvania
corporation with its principal place of business in Rosemont, Pennsylvania.

57.    From 1974 to 1978 NRMC, then named National Rolling Mills Co., used
DeRewal Chemical to dispose of waste pickle liquor solution from its plant located in Malvern,
Pennsylvania (the "NRM Plant").

58.    Waste from the NRM Plant was disposed of at the Site.

59.    The NRM Plant waste contained Hazardous Substances.

60.    NRMC is a party to the OU-1 Agreement.

## COUNT I

### (CERCLA Section 107(a))

61.    The allegations made in paragraphs 1 through 60 are incorporated by
reference as if set forth here in full.

62.     TI and Agere have incurred response costs for the OU-1 RD/RA and for the Future Response Costs required by the OU-1 Consent Decree.

63.     Agere has incurred response costs for the OU-2 RD/RA and for the Interim Response Costs and Future Response Costs required by the OU-2 Consent Decree.

64.     TI has incurred response costs for the OU-2 RD/RA and for the Interim Response Costs and Future Response Costs required by the OU-2 Consent Decree.

65.     Cytec, Ford, and SPS have incurred response costs for the OU-1 and OU-2 RD/RAs and for the Interim Response Costs and Future Response Costs required by the Consent Decrees.

66.     Plaintiffs are "persons" within the meaning of Sections 101(21) of CERCLA, 42 U.S.C. §§ 9601(21).

67.     Each Defendant is a "person" within the meaning of Sections 101(21) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(21) and 9607(a).

68.     Defendants AETC, Ashland, Carpenter Technology, Diaz; fcg, Handy & Harman Tube, and NRMC are persons who by contract, agreement or otherwise, arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment of Hazardous Substances owned or possessed by them or by another party or entity, at the Site, or are successors-in-interest to such persons and are liable under Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

69.     The total amount of the wastes for which the Defendants arranged and that were disposed of at the Site was greater than 110 gallons of liquid or greater than 200 pounds of solid materials.  None of such wastes were municipal solid waste as defined by CERCLA § 107.

WHEREFORE Plaintiffs demand judgment in their favor against each of the Defendants, as follows:

(a)     Adjudging, decreeing, and declaring that Defendants are jointly and severally liable pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), to Plaintiffs for such response costs incurred to date and awarding damages to Plaintiffs in that amount and for such response costs to be incurred by Plaintiffs, together with interest thereon;

(b)     Ordering Defendants to pay Plaintiffs their costs of this action, including reasonable attorneys fees; and

(c)     Granting Plaintiffs such other, further, and different relief as the Court may deem just and appropriate.

## COUNT II

### (CERCLA Section 113(f))

70.     The allegations made in paragraphs 1 through 69 are incorporated by reference as if set forth here in full.

71.     Cytec, Ford, and SPS have incurred response costs for the OU-1 RD/RA and for the Future Response Costs required by the OU-1 Consent Decree.

72.     Cytec, Ford, SPS, and TI have paid the Past Response Costs as required by the OU-2 Consent Decree.

73.     Cytec, Ford, SPS, and TI have incurred response costs for the OU-2 RD/RA and for the Interim Response Costs and the Future Response Costs required by the OU-2 Consent Decree.

74.     Cytec, Ford, SPS, and TI are entitled to contribution from Defendants for such response costs paid, incurred, and to be incurred by them and to an allocation by the Court of such response costs as between them and Defendants using such equitable factors as the Court determines are appropriate.

WHEREFORE Cytec, Ford, SPS, and TI demand judgment in their favor against each of the Defendants, as follows:

(a)     Adjudging, decreeing, and declaring that Defendants are liable pursuant to Section 113(f) of CERCLA, 42 U.S.C. § 9613(f), for contribution to them for such response costs incurred to date and awarding damages to them in that amount together with interest thereon and for such response costs to be incurred;

(b)     Allocating responsibility for such response costs incurred to date and to be incurred as between them and Defendants pursuant to Section 113(f) of CERCLA, 42 U.S.C. § 9613(f), using such equitable factors as the Court determines are appropriate;

(c)     Ordering Defendants to provide contribution to them for such response costs incurred to date and for such response costs to be incurred, together with interest thereon, computed in accordance with Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

(d)     Ordering Defendants to pay to them their costs of this action, including reasonable attorneys fees; and

(e)     Granting them such other, further, and different relief as the Court may deem just and appropriate.

## COUNT III

### (CERCLA Section 113(g)(2) Declaratory Judgment)

75.     The allegations made in paragraphs 1 through 74 are incorporated by reference as if set forth here in full.

76.     A controversy exists between Plaintiffs and Defendants insofar as Plaintiffs contend, and Defendants deny, that Defendants are liable under CERCLA for cost recovery and contribution for all necessary response costs incurred and to be incurred by Plaintiffs in connection with any response actions taken by Plaintiffs at the Site.

77.     Pursuant to CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2), Plaintiffs request entry of a declaratory judgment that holds Defendants liable for all necessary costs of response incurred and to be incurred in connection with any response action taken by Plaintiffs at the Site, which judgment shall be binding in any subsequent action to recover further response costs or damages.

WHEREFORE Plaintiffs demand judgment in their favor against each of the Defendants, as follows:

(a)     Entering a declaratory judgment on liability pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), in favor of Plaintiffs and against Defendants, adjudging, decreeing, and declaring that Defendants are liable to Plaintiffs for all response costs

consistent with the NCP that Plaintiffs may incur and for all damages that Plaintiffs may suffer at

or with respect to the Site, together with interest thereon, which judgment will be binding in any

subsequent action or actions brought by Plaintiffs against Defendants to recover response costs

or damages.

## COUNT V

### (Pennsylvania Hazardous Sites Cleanup Act)

78.    The allegations made in paragraphs 1 through 77 are incorporated by

reference as if set forth here in full.

79.    There has been a "release" at the Site within the meaning of Section 103

of HSCA, 35 PA. CONS. STAT. § 6020.103.

80.    Each Defendant is a "person" within the meaning of Section 103 of

HSCA, 35 PA. CONS. STAT. § 6020.103.

81.    Plaintiffs are "persons" as defined by Section 103 of HSCA, 35 PA. CONS.

STAT. § 6020.103.

82.    Each Defendant is a person who has allowed a release and thereby caused

a public nuisance pursuant to Section 1101 of HSCA, 35 PA. CONS. STAT. § 6020.1101.

83.    Plaintiffs have incurred "reasonable and necessary or appropriate costs"

responding to the release and threatened release of Hazardous Substances at the Site pursuant to

Section 702 of HSCA, 35 PA. CONS. STAT. § 6020.702(a)(3).

84.    Defendants are persons who by contract, agreement or otherwise, arranged

for disposal or treatment, or transport for disposal or treatment of Hazardous Substances owned

or possessed by them or by another party or entity, at the Site, or are successors-in-interest to such persons, and are liable to Plaintiffs pursuant to Sections 701(a)(2) and 702(a)(3) of HSCA, 35 PA. CONS. STAT. §§ 6020.701(a)(2), 6020.702(a)(3).

85.     Pursuant to Sections 701, 702(a)(3) and 1101 of HSCA, 35 PA. CONS. STAT. §§ 6020.701, 6020.702(a)(3), 6020.1101, Plaintiffs are entitled to contribution from Defendants for response costs incurred and for response costs to be incurred by Plaintiffs and to an allocation by the Court of such response costs as between Plaintiffs and Defendants using such equitable factors as the Court determines are appropriate.

WHEREFORE Plaintiffs demand judgment in their favor against each of the Defendants, as follows:

(a)     Adjudging, decreeing, and declaring that Defendants are liable pursuant to Section 702(a)(3) of HSCA, 35 PA. CONS. STAT. § 6020.702(a)(3), for contribution to Plaintiffs for response costs incurred to date and awarding damages to the Agreement Group members in that amount and for response costs to be incurred by Plaintiffs, together with interest thereon.

(b)     Allocating responsibility for such response costs as between Plaintiffs and Defendants using such equitable factors as the Court determines are appropriate;

(c)     Ordering Defendants to provide contribution to Plaintiffs for response costs incurred to date and for all response costs to be incurred, together with interest thereon, computed in accordance with Section 702(b) of HSCA, 35 PA. CONS. STAT. § 6020.702(b).

(d)     Ordering Defendants to pay Plaintiffs their costs of this action, including reasonable attorneys fees; and

(e)     Granting Plaintiffs such other, further, and different relief as the Court may deem just and appropriate.

Ballard Spahr Andrews & Ingersoll, LLP

By: _____

Glenn A. Harris, Esquire (#51222)
Plaza 1000, Suite 500, Main Street
Voorhees, New Jersey  08043
Phone:  (856) 761-3400

Attorneys for Plaintiffs Agere Systems, Inc., Cytec Industries Inc., Ford Motor Company, SPS Technologies, LLC, and TI Group Automotive Systems, L.L.C.

Dated:  January 21, 2008

## CERTIFICATE OF SERVICE

I, Dawn M. Neukirch, hereby certify that I caused a true and correct copy of the foregoing Fifth Amended Complaint to be served via electronic submission to all counsel on the attached service list this 22nd day of January, 2008 and via first class mail on the 23rd day of January, 2008.

Dated:  January 23, 2008

_____
Dawn Neukirch

Laurie J. Sands, Esquire
Wolff & Samson, PC
The Offices at Crystal Lake
One Boland Drive
West Orange, New Jersey  07052
Phone:  973-530-2098
Fax:  973-530-2298
e-mail:  lsands@wolffsamson.com

*-and-*

Robert M. Morris, Esquire
Morris & Adelman, P.C.
1920 Chestnut Street
P.O. Box 30477
Philadelphia, PA  19103
Phone:  215-568-5621
Fax:  215-568-3253
e-mail:  rmmorris@morrisadelman.com
*Advanced Environmental Technology Corp.*


Melissa Flax, Esquire
Carella, Byrne, Bain, Gilfillian, Cecchi,
        Stewart & Olstein, P.C.
5 Becker Farm Road
Roseland, New Jersey  07068-1739
Phone:  973-994-1700
Fax:  973-994-1744
e-mail:  mflax@carellabyrne.com
*Handy & Harman Tube Company*


Lynn Wright, Esquire
Edwards Angell Palmer & Dodge, LLP
750 Lexington Avenue
New York, New York  10022-1200
Phone:  212-308-4411
Fax:  212-308-4844
e-mail:  lwright@ealaw.com
*Carpenter Technology Corporation*

Christopher R. Booth, Jr., Esquire
Booth and Tucker
One Penn Center at Suburban Station
1617 JFK Boulevard, Suite 1700
Philadelphia, Pennsylvania  19103
Phone: 215-875-0609
Fax: 215-875-8143
e-mail:  cbooth@boothtucker.com
*Special Litigation Counsel for Carpenter Technology Corporation*

Seth v.d.H. Cooley, Esquire
Duane Morris LLP
United Plaza
30 South 17th Street
Philadelphia, PA  19103-4196
Phone: 215-979-1838
Fax: 215-979-1020
e-mail:  scooley@duanemorris.com
*Flexible Circuits & Etched Circuits*

Edward Fackenthal, Esquire
Law Office of Edward Fackenthal
One Montgomery Plaza
Suite 209
Norristown, PA  19401
Phone: (610) 279-3370
Fax:  (610) 279-0696
*NRM Investment Co.*
e-mail:  edwardfackenthal@cs.com

Richard C. Biedrzycki, Esquire
Phelan, Pettit & Biedrzycki
The North American Building
Suite 1600
121 South Broad Street
Philadelphia, PA  19107
Phone: 215-546-0500
Fax:  215-546-9444
e-mail:  rbiedrzycki@pp-b.com
*Ashland, Inc.*