**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

AGERE SYSTEMS, INC., et al.   :
            :
    Plaintiffs    :  Civil Action No.  02-CV-3830
            :
    v.      :  (Hon. Legrome D. Davis)
            :
ADVANCED ENVIRONMENTAL :
TECHNOLOGY CORPORATION, et al., :
            :
    Defendants.   :

**ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANT
ASHLAND INC. TO PLAINTIFFS' FIFTH AMENDED COMPLAINT
TOGETHER WITH COUNTERCLAIMS AND CROSSCLAIMS**

  Defendant Ashland Inc. (hereinafter, "Ashland"), by and through its attorneys, hereby responds to Plaintiffs' Fifth Amended Complaint as follows:

**FACTUAL BACKGROUND**

  1.  Admitted in part, denied in part.  It is admitted that Plaintiffs Agere Systems, Inc. ("Agere"), Cytec Industries, Inc. ("Cytec"), Ford Motor Company ("Ford"), SPS Technologies, LLC ("SPS") and TI Group Automotive Systems, LLC ("TI") seek cost recovery and contribution from Defendants, including Ashland, for response costs that Plaintiffs have allegedly incurred and damages that Plaintiffs have allegedly suffered as a result of a release or threatened release of hazardous substances at or from the Boarhead Farms Superfund Site, Lonely Cottage Road, Upper Black Eddy, Bridgeton Township, Bucks County, Pennsylvania (hereinafter, "the Site") pursuant to Section 101 (14) of the Comprehensive Environmental Response, Compensation and Liability Act, as amended ("CERCLA"), 42 U.S.C. § 9601 (14), and Section 103 of the Pennsylvania Hazardous Sites Cleanup Act ("HSCA"), 35 PA. CONS. STAT. § 6020.103 and that Plaintiffs further seek a declaratory judgment that Defendants, including Ashland, are liable to Plaintiffs for contribution for alleged future

response costs and damages.  Ashland denies that it is responsible for the release, threatened release or discharge of any Hazardous Substances as defined by Section 101 (14) of CERCLA or Section 103 of HSCA at the Site.   After reasonable investigation, Ashland is without knowledge or information sufficient to form a belief that any particular Plaintiff has incurred Response Costs and/or damages as a result of a release of hazardous substances at the Site, wherefore said allegation is deemed denied and at issue and strict proof thereof is demanded at the time of trial.  The remaining averments of paragraph 1 state conclusions of law to which no response is necessary.

2.    Denied as stated.  It is admitted, upon information and belief, that Manfred DeRewal was the president and sole shareholder of Boarhead Corporation which was incorporated in 1969.  It is further admitted that DeRewal incorporated and operated other entities, including DeRewal Chemical Company, Inc. ("DeRewal Chemical"), which hauled waste materials.

3.    Admitted in part and denied in part.  It is admitted, upon information and belief, that in 1969 the Boarhead Corporation purchased the Site.  The remaining allegation of paragraph 3 states a conclusion of law to which no response is necessary.

4.    Denied as stated.  It is admitted, upon information and belief, only that from the time of purchase until no later than October, 1976 the Site was used for, among other things, the disposal of solid and liquid substances, including Hazardous Substances.

5.    Denied as stated.  It is admitted, upon information and belief, only that starting in or around July, 1970 the Bucks County Department of Health ("DOH"), began investigating the Site. In 1972, responding to complaints of dead fish, dead plant life and other environmental public concerns, DOH investigated the Site. It is further admitted that in 1973, DOH noted the following at the Site:

2

pungent odors; drums on an open trailer; drums awaiting disposal; empty tanks awaiting removal; a bulldozer burying drums; drums filled with solvent; and empty tanker trucks parked at the Site. The remaining allegations set forth in paragraph 5 of Plaintiffs' Fifth Amended Complaint are denied.

6.    Admitted.

7.    Admitted in part and denied in part. It is admitted only that in October of 1973, a tank truck discharged approximately 3,000 gallons of ferrous chloride at the Site and that Boarhead Corporation was subject to certain proceedings by the Pennsylvania Department of Environmental Resources. After reasonable investigation, Ashland is without knowledge of information sufficient to form a belief as to the remaining averment of paragraph 7 of Plaintiffs' Fifth Amended Complaint, wherefore said allegation is deemed denied and at issue and strict proof thereof is demanded at the time of trial.

8.    Denied as stated. It is admitted, upon information and belief, only that soil samples taken from the site in 1974 revealed many substances, including the presence of chloride, iron, chromium, copper, zinc, nickel and sulfuric waste pollution. The remaining allegations set forth in paragraph 8 of Plaintiffs' Fifth Amended Complaint are denied.

9.    Denied as stated. It is admitted, upon information and belief, only that on or about September 8, 1976, a tank truck released sulfuric acid on the Site which combined with ammonia on the Site to produce ammonium sulfate which resulted in an evacuation of local residents. The remaining allegations set forth in paragraph 9 of Plaintiffs' Fifth Amended Complaint are denied.

10.    Admitted.

11.    Paragraph 11 states a conclusion of law to which no response is necessary. To the

extent that a response may be necessary, Ashland admits only that the USEPA located and removed

from the Site in excess of 2,600 drums as well as contaminated soil and that groundwater, to the best

of Ashland's information and belief, is being treated at an on-site treatment facility.  Otherwise, the

remaining averments, to the extent that they do not constitute conclusions of law, are denied.

12.    Paragraph 12 states a conclusion of law to which no response is necessary.  To the

extent that a response may be necessary, Ashland admits only that General Ceramics, Inc. addressed

the presence of radioactive waste at the Site in a removal action.

13-15.  Admitted.

16.    Admitted in part, denied in part.  It is admitted that the Plaintiffs and others have

sought and are seeking cost recovery and contribution from the Defendants by the filing  of a

Complaint and amendments thereto.  It is denied that Plaintiffs alone have agreed collectively to

undertake the cleanup work comprising OU-1 and OU-2, to otherwise resolve the claims of EPA

related to the Site, and that they alone have agreed to or will reach a final allocation among

themselves applicable to all costs associated with the alleged group activities, including the costs of

cleanup work comprising OU-1 and OU-2.

17.    Admitted in part and denied in part.  It is admitted only that Plaintiffs Cytec, Ford and

SPS are parties to both an Administrative Order on Consent for Remedial Design, USEPA Docket

No. III-2000-002-DC, entered in February 2000 and a Consent Decree entered by this Court on

about September 28, 2000 relating to OU-1 response activity and future response costs.  The

remaining allegations of paragraph 17 of Plaintiffs' Fifth Amended Complaint state conclusions of law

to which no response is necessary.  Ashland further denies the allegations of paragraph 17 because the

OU-1 AOC and OU-1 Consent Decree, being in writing, speak for themselves.

18.     Denied.  After reasonable investigation, Ashland is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 18 of Plaintiffs' Fifth Amended Complaint, wherefore said allegations are deemed denied and at issue and strict proof thereof is demanded at the time of trial.  Ashland further denies the allegations of paragraph 18 because the OU-1 Group Agreement referenced therein, if in writing, speaks for itself.

19.     Denied.  After reasonable investigation, Ashland is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 19 of Plaintiffs' Fifth Amended Complaint, wherefore said allegations are deemed denied and at issue and strict proof thereof is demanded at the time of trial.

20.     Admitted in part, denied in part.  It is admitted that Plaintiffs Cytec, Ford, SPS and an entity known as TI Automotive Systems Corp. are signatories to an Administrative Order on Consent for Remedial Design, EPA Docket No. III-2001-0010-DC and a Consent Decree entered by this Court on March 14, 2002 relating to OU-2 response activities and reimbursement of past and future response costs.  The remaining allegations of paragraph 20 state conclusions of law to which no response is necessary.  Ashland further denies the allegations of paragraph 20 because the OU-2 AOC and OU-2 Consent Decree, being in writing, speak for themselves.

21.     Denied.  After reasonable investigation, Ashland is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 21 of Plaintiffs' Fifth Amended Complaint, wherefore said allegations are deemed denied and at issue and strict proof thereof is demanded at the time of trial.

22.    Denied. After reasonable investigation, Ashland is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 22 of Plaintiffs' Fifth Amended Complaint, wherefore said allegations are deemed denied and at issue and strict proof thereof is demanded at the time of trial.

23.    Denied. After reasonable investigation, Ashland is without knowledge or information sufficient to form a belief that Plaintiffs have incurred costs and damages, including attorneys fees, in the course of performing the requirements of the OU-1 and OU-2 AOCs and Consent Decrees or that Plaintiffs have incurred Response Costs because of releases or threatened releases of Hazardous Substances at or from the Site, wherefore said allegations are deemed denied and at issue and strict proof thereof is demanded at the time of trial. The remaining allegations of paragraph 23 state conclusions of law to which no response is necessary.

24.    Denied. After reasonable investigation, Ashland is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 24 of Plaintiffs' Fifth Amended Complaint, wherefore said allegations are deemed denied and at issue and strict proof thereof is demanded at the time of trial.

25.    Denied. After reasonable investigation, Ashland is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 25 of Plaintiffs' Fifth Amended Complaint, wherefore said allegations are deemed denied and at issue and strict proof thereof is demanded at trial. Ashland further denies the allegations of paragraph 25 to the extent that any settlement agreement and/or assignment as alleged may be in writing, in which event said writing speaks for itself.

6

26.     After reasonable investigation, Ashland is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 26 of Plaintiffs' Fifth Amended Complaint, wherefore said allegations are deemed denied and at issue and strict proof thereof is demanded at trial.

27.     Admitted in part, denied in part.  It is admitted only that TI seeks cost recovery and contribution from Defendants for response costs allegedly incurred by TI.  After reasonable investigation, answering Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations as to TI's incurrence of such costs, the making of payments as alleged and as to whether TI seeks recovery in its name on behalf of "Smiths," wherefore said allegations are deemed denied and at issue and strict proof thereof is demanded at the time of trial.

## JURISDICTION AND VENUE

28.     Paragraph 28 states a conclusion of law to which no response is necessary.

29.     Paragraph 29 states a conclusion of law to which no response is necessary.

30.     Paragraph 30 states a conclusion of law to which no response is necessary.

31.     Paragraph 31 states a conclusion of law to which no response is necessary.

# PARTIES

A.    <u>The Plaintiffs</u>

32.    It is admitted, upon information and belief, that Plaintiff Agere is a Delaware Corporation with a principal place of business in Allentown, Pennsylvania, that Plaintiff Cytec is a Delaware Corporation with a principal place of business in West Patterson, New Jersey, that Plaintiff Ford is a Delaware Corporation with a principal place of business in Dearborn, Michigan, that Plaintiff SPS is a Pennsylvania limited liability corporation with a principal place of business in Jenkintown, Pennsylvania, and that Plaintiff TI is a Delaware limited liability company with a principal place of business in Warren, Michigan.  The remaining allegations of Paragraph 32 of Plaintiffs' Fifth Amended Complaint state conclusions of law to which no response is necessary.

B.    <u>The Defendants</u>

## **Defendant Advanced Environmental Technology Corp.**

33.    Admitted.

34.    Denied as stated.  It is admitted only that AETC arranged with DeRewal Chemical for the removal of wastes from Ashland's Great Meadows, New Jersey facility beginning in the latter part of 1976.  It is specifically denied that any Hazardous Substances from Ashland were disposed of at the Site through an arrangement between AETC and DeRewal Chemical or otherwise. After reasonable investigation, Ashland is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 34 of Plaintiffs' Fifth Amended Complaint, wherefore said allegations are deemed denied and at issue and strict proof thereof is demanded at the time of trial.

**Defendant Ashland Inc.**

35.    Denied.  Ashland's principal place of business is located in Covington, Kentucky.

36.    Admitted in part and denied in part.  It is admitted only that Ashland engaged AETC to remove industrial wastes from its Great Meadows, New Jersey plant.  It is denied that Ashland used DeRewal Chemical to remove industrial wastes from its Great Meadows, New Jersey plant. Ashland specifically denies that any wastes removed from Ashland's Great Meadows, New Jersey plant  during any time period relevant to Plaintiffs' civil action were transported to or disposed of at the Site.

37-38.  Denied.

**Other Defendants**

39-60.  The allegations of these paragraphs are directed toward other Defendants in this civil action.  Accordingly, no response by Ashland is necessary.  To the extent that specific responses to the allegations of these paragraphs may be required, after reasonable investigation, Ashland is without information or knowledge sufficient to enable it to form a belief as to the truth of the allegations set forth in these paragraphs, wherefore said allegations are deemed denied and at issue and strict proof thereof is demanded at the time of trial.

**COUNT I**

**(CERCLA Section 107(a))**

61.    Ashland incorporates herein by reference in their entirety its above responses to paragraphs 1 through 60 of the Fifth Amended Complaint.

62-65.  Denied.  After reasonable investigation, Ashland is without knowledge or information sufficient to form a belief as to the truth of the factual allegations of paragraph 62 through 65 of Plaintiffs' Fifth Amended Complaint, wherefore said allegations are deemed denied and at issue and strict proof thereof is demanded at the time of trial.  By way of further response, the allegations of these paragraphs state conclusions of law to which no responses are necessary.

66.    Paragraph 66 states a conclusion of law to which no response is necessary.

67.    Paragraph 67 states a conclusion of law to which no response is necessary.

68.    Denied.  It is denied that Ashland, by contract, agreement or otherwise, arranged for the disposal, treatment or transport of any Hazardous Substances to the Site or owned or possessed any Hazardous Substances that were transported to the Site.  After reasonable investigation, Ashland is without information or knowledge sufficient to form a belief as to the truth of the factual averments set forth in paragraph 68 of Plaintiffs' Fifth Amended Complaint insofar as they relate to other defendants to this action, wherefore same are deemed denied and at issue and strict proof thereof is demanded at the time of trial.  The remaining allegations of paragraph 68 state conclusions of law to which no response is necessary.

69.    Denied.  It is denied that Ashland transported or arranged for the disposal, treatment or transport of any Hazardous Substances to the Site or owned or possessed any Hazardous Substances that were transported to the Site.  After reasonable investigation, Ashland is without knowledge or information sufficient to form a belief as to the truth of the allegation that the total amount of wastes transported to the Site by any Defendants, individually or collectively, was greater than 110 gallons of liquid or greater than 200 pounds of solid materials, wherefore said allegation is

deemed denied and at issue and strict proof thereof is demanded at the time of trial. The remaining allegation of paragraph 69 states a conclusion of law to which no response is necessary.

WHEREFORE, Defendant Ashland Inc. demands judgment in its favor against Plaintiffs as follows:

(a)    dismissing, with prejudice, Plaintiffs' claims against Ashland Inc.;

(b)    adjudging, decreeing, and declaring that Defendant Ashland Inc. is not jointly or severally liable or liable for contribution to the Plaintiffs for any Response Costs or damages under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), or otherwise;

(c)    adjudging, decreeing and declaring that Defendant Ashland Inc. is not responsible for any Response Costs incurred or that may be incurred by Plaintiffs or damages pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), or otherwise;

(d)    ordering Plaintiffs to pay Defendant Ashland Inc. the reasonable costs incurred by it in defending itself against Plaintiffs' claims in this action, including reasonable attorney's fees; and

(e)    granting Defendant Ashland Inc. such other and further relief as the Court may deem just and proper.

## COUNT II

## (CERLCA Section 113(f))

70.    Ashland incorporates herein by reference in their entirety its above responses to paragraphs 1 through 69 of Plaintiffs' Fifth Amended Complaint.

71-73.  Denied.  After reasonable investigation, Ashland is without knowledge or information

sufficient to form a belief as to the truth of the factual allegations of paragraph 71 through 73 of Plaintiffs' Fifth Amended Complaint, wherefore said allegations are deemed denied and at issue and strict proof thereof is demanded at the time of trial. By way of further response, the allegations of these paragraphs state conclusions of law to which no responses are necessary.

74.     Denied. Paragraph 74 of Plaintiffs' Fifth Amended Complaint states a conclusion of law to which no response in necessary. To the extent that a further response may be required, Ashland specifically denies that it is liable to Plaintiffs for contribution or an allocation of Response Costs, if any, incurred to date and/or any Future Response Costs incurred or to be incurred by Plaintiffs in connection with the Site.

WHEREFORE, Defendant Ashland Inc. demands judgment in its favor against Plaintiffs as follows:

(a)     dismissing, with prejudice, Plaintiffs' claims against Ashland Inc.;

(b)     adjudging, decreeing, and declaring that Defendant Ashland Inc. is not liable for contribution to the Plaintiffs for any Response Costs incurred to date, Future Response Costs or damages under Section 113(f) of CERCLA, 42 U.S.C. § 9613(f), or otherwise;

(c)     adjudging, decreeing and declaring that Defendant Ashland Inc. is not responsible for any Response Costs and/or Future Response Costs that were or may be incurred by Plaintiffs pursuant to Section 113(f) of CERCLA, 42 U.S.C. § 9613(f), or otherwise;

(d)     ordering Plaintiffs to pay Defendant Ashland Inc. the reasonable costs incurred by it in defending itself against Plaintiffs' claims in this action, including reasonable attorney's fees; and

(e)    granting Defendant Ashland Inc. such other and further relief as the Court may deem just and proper.

## COUNT III

### (CERCLA Section 113(g)(2) Declaratory Judgment)

75.    Ashland incorporates herein by reference in their entirety its above responses to paragraphs 1 through 74 of the Fifth Amended Complaint.

76.    Admitted.

77.    Admitted in part, denied in part.  It is admitted only that Plaintiffs request the entry of a declaratory judgment holding Ashland and other Defendants liable for certain costs pursuant to CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2).  The remaining allegation of paragraph 77 of Plaintiffs' Fifth Amended Complaint states a conclusion of law to which no response is necessary.  By way of further response, Ashland denies that it is liable to Plaintiffs for any such costs.

WHEREFORE, Defendant Ashland Inc. demands judgment in its favor against Plaintiffs and that Plaintiffs' claims against it be dismissed, with prejudice, and further requests that the Court enter a declaratory judgment on liability pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), if applicable, in favor of Defendant Ashland Inc. adjudging, decreeing and declaring that Ashland Inc. is not liable to Plaintiffs for any Response Costs and/or Future Response Costs or damages that Plaintiffs have or may suffer at or with respect to the Site, and that such judgment be declared binding in any subsequent action(s) by Plaintiffs or a Defendant to recover Future Response Costs or damages.

## COUNT IV

### (Pennsylvania Hazardous Sites Cleanup Act)

78.    Ashland incorporates herein by reference in their entirety its above responses to paragraphs 1 through 77 of the Fifth Amended Complaint.

79.    Paragraph 79 states a conclusion of law to which no response is necessary.

80.    Paragraph 80 states a conclusion of law to which no response is necessary.

81.    Paragraph 81 states a conclusion of law to which no response is necessary.

82.    Denied.  It is denied that Ashland allowed a release of any substance from the Site and denied that it in any manner caused a public nuisance.  The remaining allegation of paragraph 82 of Plaintiffs' Fifth Amended Complaint states a conclusion of law to which no response is necessary.

83.    Denied.  After reasonable investigation, Ashland is without knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiffs individually have incurred costs in responding to a release or threatened release of Hazardous Substances at the Site, wherefore said allegation is deemed denied and at issue and strict proof thereof is demanded at the time of trial. The remaining allegation of paragraph 83 of Plaintiffs' Fifth Amended Complaint states a conclusion of law to which no response is necessary.

84.    Denied.  It is denied that Ashland arranged for the disposal, treatment or transport to the Site of any Hazardous Substances owned or possessed by Ashland or any other party.  After reasonable investigation, Ashland is without knowledge or information sufficient to form a belief as to the truth of the remaining factual allegations of paragraph 84 of Plaintiffs' Fifth Amended Complaint, wherefore said allegations are deemed denied and at issue and strict proof thereof is demanded at the

time of trial.   The remaining allegation of paragraph 84 states a conclusion of law to which no response is necessary.

85.    Denied.  Paragraph 85 of Plaintiffs' Fifth Amended Complaint states a conclusion of law to which no response is necessary.   To the extent that a further response may be required, Ashland specifically denies that it is liable to Plaintiffs for contribution or an allocation of Response Costs incurred or to be incurred by Plaintiffs in connection with the Site.

WHEREFORE, Defendant Ashland Inc. demands judgment in its favor against Plaintiffs as follows:

(a)    dismissing, with prejudice, Plaintiffs' claims against Ashland Inc.;

(b)    adjudging, decreeing, and declaring that Defendant Ashland Inc. is not liable for contribution to Plaintiffs for any Response Costs incurred to date and/or Future Response Costs pursuant to Section 702(a)(3) of HSCA, 35 PA. CONS. STAT. § 6020.702(a)(3), or otherwise;

(c)    adjudging, decreeing, and declaring that Defendant Ashland Inc. is not responsible for any Response Costs and/or Future Responses Costs that were or may be incurred by Plaintiffs;

(d)    adjudging, decreeing, and declaring that Defendant Ashland Inc. shall not provide contribution to Plaintiffs for Response Costs related to the Site incurred to date or for Future Response Costs related to the Site under Section 702(b) of HSCA, 35 PA. CONS. STAT. § 6020.702(b), or otherwise;

(e)    ordering Plaintiffs to pay Defendant Ashland Inc. the reasonable costs incurred by it in defending itself against Plaintiffs' claims in this action, including reasonable attorney's fees; and

(f)    Granting Defendant Ashland Inc. such other and further relief as the Court may deem just and proper.

## FIRST AFFIRMATIVE DEFENSE

Plaintiffs' Fifth Amended Complaint fails, in whole or in part, to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

Neither Plaintiff TI Group Automotive Group Systems, LLC ("TI") with respect to its claims for recovery of costs associated with the first phase of remedial design and action for the Boarhead Site (designated as OU-1) nor Agere Systems, Inc. ("Agere") can recover contribution from the Defendants, including Ashland, under Section 113(f)(1) of CERCLA because neither was or is a party to an underlying civil action against it under Sections 106 or 107(a) of CERCLA, nor did TI or Agere resolve any liability or potential liability to the United States or to a state in an administrative or judicially approved settlement as required by Section 113(f)(3)(B) of CERCLA, nor were their contribution claims asserted during or following a civil action under Section 106 or 107(a) of CERCLA.

## THIRD AFFIRMATIVE DEFENSE

Plaintiffs Cytec Industries, Inc. ("Cytec"), Ford Motor Company ("Ford"), SPS Technologies, Inc. ("SPS"), and TI as alleged successor to TI Automotive Systems Corp. (for OU-2 remediation costs) cannot recover under Section 113(f)(1) of CERCLA because, as parties who have settled claims against them by the United States for response costs, any contribution claims for recovery of part of payments made by them in connection with a settlement with the United States can only be

pursued under Section 113(f)(3)(B) of CERCLA.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs TI (for OU-1 response costs) and Agere cannot recover under Section 113(f)(3)(B) of CERCLA as they did not enter into a settlement with the United States.

## FIFTH AFFIRMATIVE DEFENSE

None of the Plaintiffs has alleged sufficient facts to establish liability under Sections 113(f)(1) or 113 (f)(3)(B) of CERCLA as they did not discharge the common liability, including the liability, if any, of the Defendants, to the United States for such claims in the settlement of the United States' claims against them, nor have any of the Plaintiffs made or alleged to have made actual payment to the United States in excess of each's fair share of the common liability.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs are not entitled to declaratory relief under CERCLA, but are limited to seeking recovery of damages for any remediation costs incurred by them and payments made to the United States in excess of their respective fair shares of the common liability.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs do not have any rights of contribution under Section 702 of Pennsylvania Hazardous Sites Clean Up Act, 35 P.S. § 6020.701 *et seq.* ("HSCA"), 35 P.S. § 6020.702.

## EIGHTH AFFIRMATIVE DEFENSE

Since neither the Pennsylvania Department of Environmental Resources ("DER") (now Department of Environmental Protection or "DEP"), nor any other commonwealth agency or any municipality brought an action under HSCA Sections 507 or 1101 against Plaintiffs, nor have

Plaintiffs entered into any settlement of any purported liability for response costs to the DER or DEP, nor have Plaintiffs asserted their claims during or following a civil action under Sections 507 or 1101 of HSCA, Plaintiffs have no cause of action against Defendants, including Ashland, under HCSA.

## NINTH AFFIRMATIVE DEFENSE

Any claims by the Plaintiffs pursuant to HSCA are preempted by CERCLA.

## TENTH AFFIRMATIVE DEFENSE

Ashland is not a person who is liable or potentially liable under Sections 107(a) of CERCLA, 42 U.S.C. 9607(a), or Section 103 of HSCA, 35 Pa.Cons.Stat. § 6010.103, and, therefore, is not a person from which Plaintiff may seek contribution under Section 9613(f) of CERCLA, 42 U.S.C. § 9613(f), or Sections 701, 702(a)(3) and 1101 of HSCA, 35 Pa.Cons.Stat. §§ 6020.701, 6020.702(a)(b) and 6020.110.

## ELEVENTH AFFIRMATIVE DEFENSE

No Hazardous Substance as defined under Section 9601(14) of CERCLA or Section 103 of HSCA owned or possessed by Ashland was taken to or released at the Boarhead Site.

## TWELFTH AFFIRMATIVE DEFENSE

No Hazardous Substance as defined under Section 9601(14) of CERCLA or Section 103 of HSCA owned or possessed by Ashland was released or is threatened to be released at the Boarhead Site within the meaning of Section 9601(22) of CERCLA or Section 103 of HSCA.

## THIRTEENTH AFFIRMATIVE DEFENSE

Ashland's conduct was not the proximate cause of any release or threatened release of a Hazardous Substance from the Site.

18

## FOURTEENTHAFFIRMATIVE DEFENSE

Ashland is not liable to the Plaintiffs for any and all claimed damages.

## FIFTEENTH AFFIRMATIVE DEFENSE

Actual or threatened releases of Hazardous Substances as alleged in the Fifth Amended Complaint, if any, were caused solely by the acts or omissions of third parties, including, but not limited to, the Plaintiffs, who were not employees or agents of Ashland and whose acts or omissions did not occur in connection with a contractual relationship existing directly or indirectly with Ashland.

## SIXTEENTH AFFIRMATIVE DEFENSE

Actual or threatened releases of Hazardous Substances as alleged in the Fifth Amended Complaint,  if true, were the result of superseding or intervening acts and/or omissions on the part of third parties, including, but not limited to, the Plaintiffs, over whom Ashland did not exercise any direction or control, and, at all relevant times, Ashland has exercised due care and taken all reasonable precautions against such acts and/or omissions and their reasonably foreseeable consequences.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Ashland did not own, possess or control any materials that were transported to or disposed at the Site.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Ashland had no control over the means by which any materials were transported to or disposed at the Site.

## NINETEENTH AFFIRMATIVE DEFENSE

Ashland had no knowledge that any materials were transported to or disposed at the Site.

## TWENTIETH AFFIRMATIVE DEFENSE

Ashland did not arrange for disposal or treatment of solvents or any other materials at the Site.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

At all relevant times Ashland acted with due care and followed state-of-the-art procedures in the handling and disposal of its waste hazardous materials, complied with all statutory and regulatory requirements, and otherwise conducted itself as a reasonable person under the circumstances. In addition, Ashland was unaware of deficiencies, if any, in the manner in which Boarhead Corporation and/or DeRewal Chemical Company, Inc. operated the Site.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

In the event that materials produced by Ashland were transported to or disposed at the Site, some or all of said materials were useful materials sold by Ashland to be processed, otherwise used or resold, and not for disposal.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

The Response Costs allegedly incurred by Plaintiff are not reasonable, necessary or appropriate costs as defined by Section 101(25) of CERCLA and within the meaning of Section 107(a) of CERCLA and Section 702(a)(3) of HSCA.

20

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiffs are generators of Hazardous Substances who, from time to time, contracted, agreed, or otherwise arranged to have Boarhead Corporation, DeRewal Chemical Company and/or others recycle, treat and/or dispose of such substances at the Site as alleged in the Complaint.  As such, members of Plaintiffs have caused and/or contributed to any and all releases or threatened releases at the Site, are responsible for the conditions of which Plaintiffs complain, and are liable, in whole or in part, for the costs and damages they seek to recover in this action.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by application of the doctrine of res judicata and/or the doctrine of collateral estoppel.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiffs are generators of Hazardous Substances who, from time to time, contracted, agreed, or otherwise arranged to have Boarhead Corporation, DeRewal Chemical Company and others recycle, treat and/or dispose of such substances at the Site as alleged in the Fifth Amended Complaint. Therefore, Plaintiffs have caused and/or contributed to any and all releases or threatened releases at the Site, are responsible for the conditions of which they complain, and lack the clean hands necessary to assert such claims to the extent they arise under equitable principles.  Therefore, Plaintiffs' claims are barred, in whole or in part, by the equitable doctrine of unclean hands.

21

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

The claims of Plaintiffs are barred, in whole or in part, by the equitable doctrine of laches.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

The claims of Plaintiffs are barred, in whole or in part, by the equitable doctrine of waiver.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

Joint and several liability is not provided for by law or for the claims alleged in the Fifth Amended Complaint.

## THIRTIETH AFFIRMATIVE DEFENSE

The Response Costs allegedly incurred by Plaintiffs have not been approved under, and are inconsistent with, the National Contingency Plan, as evidenced by the United States Environmental Protection Agency's Record of Decision for the Site. By reason of the foregoing, Plaintiffs are not entitled to recover from Ashland Response Costs or any other relief requested in the Complaint.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

Plaintiffs have failed to mitigate, minimize, or avoid any damages they allegedly sustained and any recovery against Ashland must be eliminated or reduced by that amount.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

Ashland cannot be liable for any Response Costs incurred or to be incurred by Plaintiffs that were not caused by or contributed to by any Hazardous wastes of Ashland.

22

## THIRTY-THIRD AFFIRMATIVE DEFENSE

Any liability for Response Costs that may be found against Ashland must be reduced and/or offset by an amount representing (a) the allocable share(s) of such costs attributable to the other Defendants and/or the Plaintiffs in this action, (b) any amounts which may actually be paid by any party, person or entity for any of the injuries, costs, damages and expenses alleged in this action, including insurers or other indemnitors of Plaintiffs; (c) any amounts stipulated or agreed to under any settlement, or any release or covenant not to sue any person or entity for any of the injuries, costs, damages and expenses alleged in this action; (d) the equitable share of liability of any person or entity that receives any release from liability or covenant not to sue or enters into any settlement with respect to the injuries, costs, damages and expenses alleged in this action; (e) the equitable share of liability of any person or entity who is responsible for any of the injures, costs, damage and expenses alleged in this action but is unable to pay its fair share due to insolvency or any other reason; and/or (f) the equitable share of liability of any person or entity who is responsible for any of the injuries, costs, damages and expenses alleged in this action but is not named as a party in the case.

## THIRTY-FOURTH AFFIRMATIVE DEFENSE

Ashland denies that it is responsible for any response, removal or remediation costs arising out of the Site. However, if Ashland is held liable, then its liability should be limited to its fair, equitable proportionate share of costs, harm or damage, taking into account, inter alia, equitable principles, Plaintiffs, site owners (and/or their predecessors) in operating the Site, the percentage of total volume of hazardous substances at the Site that was contributed by all persons, the hazardous substances contributed by the Plaintiffs and their employees and agents, the liability of those transporters that

may have hauled waste to the Site, and the contribution and/or negligence of all other persons and entities to the alleged release or threatened release of hazardous substances at the Site.

## THIRTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by their failures to pay or agree to pay more than their fair shares of any Response Costs.

## THIRTY SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the applicable statute(s) of limitations.

## THIRTY-SEVENTH AFFIRMATIVE DEFENSE

Ashland's share of any liability to Plaintiffs, taking into account the volume of waste transported to and disposed of at the Site by others and all relevant equitable factors, can be no more than a de minimis share.

## THIRTY-EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred and/or limited, in whole or in part, by Plaintiffs' failure to join parties necessary and indispensable to the completion of an equitable adjudication of Plaintiffs' claims.

## THIRTY-NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred and/or limited, in whole or in part, insofar as and to the extent that Plaintiffs seek to recover costs, damages, expenses and any other type of relief incurred before the effective dates of CERCLA and HSCA.

## FORTIETH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred as a result of their failure to comply with all of the statutory

and/or regulatory prerequisites to the commencement and/or maintenance of an action under CERCLA or HSCA.

### FORTY-FIRST AFFIRMATIVE DEFENSE

The amount and scope of the Plaintiffs' claims against the non-settled defendants, including Defendant Ashland, should be reduced by the greater of the equitable share of liability of all settling defendants or the dollar amounts obtained by Plaintiffs from all settling defendants.

### FORTY-SECOND AFFIRMATIVE DEFENSE

The amount and scope of the Plaintiffs' claims against the remaining non-settling defendants, including Defendant Ashland, should be reduced by at least the equitable share of the liability of all liable persons that Plaintiffs elected not to sue and/or who were dismissed as parties to this civil action.

### FORTY-THIRD AFFIRMATIVE DEFENSE

The amount and scope of the Plaintiffs' claims against the remaining non-settling defendants, including Defendant Ashland, should be reduced and/or offset by the dollar amounts of all other recoveries obtained by Plaintiffs, including, without limitation, all such recoveries obtained from insurers or other indemnitors of the Plaintiffs.

### FORTY-FOURTH AFFIRMATIVE DEFENSE

Because the alleged harm, if any, is divisible and there is a reasonable basis for dividing the harm, joint and several liability may not be imposed.

## FORTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiffs cannot recover costs, damages or other relief for Hazardous Substances for which Ashland did not make treatment or disposal arrangements or which it did not transport.

## FORTY-SIXTH AFFIRMATIVE DEFENSE

Ashland, alone or by and through its agents, servants or employees, did not proximately cause any of the costs or damages alleged by Plaintiffs and, therefore, no liability can exist on the part of Ashland for any such response costs or damages.

## FORTY-SEVENTH AFFIRMATIVE DEFENSE

Ashland reserves its right to assert additional affirmative defenses upon completion of discovery.

## FORTY-EIGHTH AFFIRMATIVE DEFENSE

Ashland incorporates by reference any additional affirmative defenses pleaded or to be pleaded by any other Defendants to the extent that such affirmative defenses operate as a complete or partial bar to any liability on the part of Ashland.

## FORTY-NINTH AFFIRMATIVE DEFENSE

Plaintiff Agere's claims are extinguished and barred by virtue of its final resolution thereof through the settlement of its claims with one or more of the other Plaintiffs.

## FIFTIETH AFFIRMATIVE DEFENSE

To the extent that Plaintiffs seek recovery of contribution pursuant to Section 113(f) of

CERCLA for response costs other than reimbursement of costs incurred by other parties, such recovery is barred.

### FIFTY-FIRST AFFIRMATIVE DEFENSE

To the extent that Plaintiffs are Potentially Responsible Parties under CERCLA, any recovery by Plaintiffs pursuant to Section 107(a) of CERCLA is barred.

### FIFTY-SECOND AFFIRMATIVE DEFENSE

To the extent that Plaintiffs seek recovery under Section 107(a) of CERCLA of response costs that it did not voluntarily incur, including any response costs, past and future, incurred or to be incurred by Plaintiffs pursuant to Consent Decrees, such costs are not recoverable by Plaintiffs as compelled costs of response are exclusively recoverable, if at all, pursuant to Section 113(f) of CERCLA.

### FIFTY-THIRD AFFIRMATIVE DEFENSE

To the extent that Plaintiffs seek recovery under Section 107(a) of CERCLA for cleanup costs incurred by others and for which Plaintiffs seek reimbursement from the Defendants, such costs are not recoverable under Section 107(a) of CERCLA.

### FIFTY-FOURTH AFFIRMATIVE DEFENSE

To the extent that Plaintiffs had no liability to the United States, including the US EPA, Plaintiffs' claims for contribution are barred.

WHEREFORE, Defendant Ashland Inc. demands judgment in its favor against each Plaintiff as follows:

(a)    dismissing, with prejudice, Plaintiffs' claims against Ashland Inc.;

(b)    adjudging, decreeing, and declaring that Defendant Ashland Inc. is not jointly and severally liable or liable for contribution to the Plaintiffs for any Response Costs, Future Response Costs and/or damages pursuant to Sections 107(a), 113(f)(1), or 113(f)(3)(B) of CERCLA, 42 U.S.C. §§ 9607(a), 9613(f)(1), or 9613(f)(3)(B) or Sections 702(a)(3) or 702(b) of HSCA, 35 PA.CONS.STAT. § 6020.702(a)(3), 6020.702(b), or otherwise;

(c)    adjudging, decreeing, and declaring that Defendant Ashland Inc. is not responsible for any Response Costs and/or Future Responses Costs that were or may be incurred by Plaintiffs under CERCLA or HSCA, or otherwise;

(d)    ordering Plaintiffs to pay Defendant Ashland Inc. the reasonable costs incurred by it in defending itself against Plaintiffs' claims in this action, including reasonable attorney's fees; and

(e)    granting Defendant Ashland Inc. such other and further relief as the Court may deem just and proper.

## CONTRIBUTION COUNTERCLAIMS/CROSSCLAIMS

Ashland hereby refers to and incorporates by reference Paragraph 1 of the June 18, 2004 Fifth Case Management Order in the within action, which provides that each Defendant's Answer shall be deemed to raise cross-claims and counterclaims for contribution pursuant to CERCLA and the

Pennsylvania Hazardous Sites Cleanup Act and that all such cross-claims and counterclaims shall be deemed denied.

## SEPARATE CROSS-CLAIMS OF DEFENDANT ASHLAND INC. AGAINST DEFENDANT ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION

Defendant Ashland Inc. (hereinafter, "Ashland"), by and through its attorneys, hereby asserts Additional Cross-Claims against Defendant Advanced Environmental Technology Corporation (hereinafter, "AETC"). Ashland incorporates by reference as though set forth fully herein paragraphs 1 through 85 of its Answer as well as its above Affirmative Defenses, Counterclaims and Cross-Claims to Plaintiffs' Fifth Amended Complaint, and asserts additional cross-claims against AETC as follows:

## THE TESTIMONY OF AETC'S PRINCIPALS, JOHN LEUZARDER AND ROBERT LANDMESSER

86.     In July 1976, Robert Landmesser and John Leuzarder formed a company, AETC, which was involved in the removal, transportation and disposal of chemical waste. Mr. Landmesser was AETC's President and Mr. Leuzarder was AETC's Vice-President.

87.     Between 1976 and 1978, AETC represented itself to state environmental regulatory authorities as, quoting Mr. Landmesser verbatim, a "transporter of regulated materials," including chemical waste.

88.     Mr. Landmesser has testified that the only means by which AETC could obtain a state licensure or permit to transport chemical waste was to have an AETC vehicle that was licensed to transport hazardous materials, including chemical waste, and that, as a result, AETC purchased a truck that was licensed in New Jersey.

29

89.     AETC's customers would ask AETC for, *inter alia,* its and its principals' expertise in packaging chemicals for hauling, which experience included not only waste disposal consulting, but actually packaging chemical waste at AETC's customers' sites so that the packages complied with regulatory guidelines.

90.     AETC's business also consisted of relationships which AETC solicited and created among three parties: (1) AETC; (2) AETC's customers; and (3) waste removers, haulers and disposers (hereinafter, collectively "waste disposers").

91.     AETC hired and paid waste disposers to safely remove, haul and dispose of chemical waste (hereinafter, collectively referred to as "disposal") produced by AETC's customers.

92.     In and after 1976, one of AETC's waste disposers was Manfred DeRewal and his companies, Environmental Chemical Control and DeRewal Chemical Company (collectively, "DeRewal").

93.     Pursuant to AETC's agreement with it, DeRewal, for monetary consideration paid to it by AETC, removed chemical waste from AETC's customers' facilities for neutralization and/or disposal by DeRewal.

94.     During at least the period of August 1976 to March or April 1977, Ashland was a customer of AETC for the disposal of Ashland waste from Ashland's Great Meadows, New Jersey chemical facility.

95.     AETC hired DeRewal to pick up, remove, transport, process and/or dispose of certain chemical wastes from Ashland's Great Meadows facility.

96.     On certain dates in 1976 and 1977, DeRewal picked up, hauled, neutralized and disposed of certain chemical waste, including nitrating acid waste, from Ashland's Great Meadows

facility.

## AETC EXERCISED CONTROL OVER ITS WASTE DISPOSERS

97.     Mr. Landmesser has testified as to the special expertise of the waste disposers who were hired by AETC to dispose of the chemical wastes of AETC's customers:

> We hired chemists and trained them to be truck drivers … and also drive the truck back with the [chemical waste] materials." "So that when our [AETC's] people went out to a customer's facility they had people who were qualified to deal with the chemistry associated with the material along with the transportation aspect of it and also drive the truck back with the materials.  They were a full Hazmat respondent.  These were very, very highly trained competent people who went to fire school, CPR training.  And we found it was easier to teach people who had a chemistry or biology background than to take truck drivers and try to make them chemists.

98.     AETC trained the waste disposers whom AETC hired beginning in 1976.

99.     AETC's training of its waste disposers included the completion of manifests for hauling hazardous wastes, licensing requirements, CPR, first aid, other emergency response procedures (in case there was a leak or a spill), and safety procedures.

100.     AETC's waste disposers were not direct employees of AETC, but were separate companies hired by AETC.

101.     It was not AETC's practice to have written contracts with its waste disposers and, during the period of 1976-1977, AETC had entered into oral agreements with its waste disposers.

102.     AETC hired DeRewal based, in part, on AETC's assessment of DeRewal's expertise in transporting and disposing of nitrating acid waste.

103.     AETC required documentation from its all of its waste disposers, specifically, insurance documentation and documentation required by state law for spill response.

31

104.    Mr. Landmesser has testified that it was "highly probable" that AETC had "standard protocol" for discussing with AETC's waste disposers "the risks associated with the type of waste that the waste disposer would be handling."

105.    AETC audited the sites of its waste disposers to insure that their permits and insurance were in place and in compliance with state regulations.

106.    AETC advised its waste disposers as to what they could and should do with AETC's customers' waste.

107.    The agreement between AETC and DeRewal also required DeRewal's work to comply with "appropriate state and federal regulations."

### AETC'S STANDARD PROCEDURE FOR MEMORIALIZING
### THE TERMS OF PLAINTIFFS' AGREEMENTS WITH ITS CUSTOMERS

108.    AETC's standard procedure was to send initial letters to its customers memorializing the services that AETC was offering to provide to its customers.

109.    AETC would customarily work with its customers' plant managers and corporate legal counsel to determine what type of waste disposal services AETC could provide to them, which services were confirmed by AETC in its initial letter to its customer.

110.    AETC's letters normally started off with a salutation and then described the services that AETC's waste disposers would provide, i.e., the packaging, removal, transporting, and disposal of waste, including chemical waste.  These letters also explained AETC's desire that its customers comply with legal requirements by certifying that the waste materials were accurately described in waste information profiles.

111.    In most instances, AETC's letters to its customers would also identify the waste

32

disposer to be hired by AETC to provide the waste disposal services AETC agreed to provide for its customers.

## AETC AND ASHLAND HAD AN AGREEMENT FOR THE REMOVAL, HAULING AND DISPOSAL BY AETC OF CERTAIN ASHLAND-GENERATED CHEMICAL WASTES

112.    In 1976, Ashland prepared and presented AETC with a proposed written agreement, a true and correct copy of which is attached hereto as Exhibit "A", providing that AETC would dispose of certain chemical wastes generated by Ashland at its Great Meadows facility and that Ashland would pay AETC for such disposal for an agreed price on a per gallon or per load basis.

113.    A signed version of the written agreement between Ashland and AETC has not been located.

114.    AETC and Ashland agreed that AETC would safely and legally pick up, transport and dispose of certain chemical wastes from Ashland's Great Meadows facility and that Ashland would pay AETC for such services.

115.    AETC performed the services required by its agreement with Ashland by having Ashland's wastes picked up, transported and disposed of by DeRewal, for which services Ashland was billed by and for which it paid AETC.

## AETC BILLED AND WAS PAID BY ITS CUSTOMERS FOR THE HAULING AND DISPOSAL OF THEIR WASTES

116.    AETC's customers were billed by AETC for removing, hauling and disposing of their chemical wastes, which bills were paid by AETC's customers.

117.    AETC unilaterally hired and delegated to DeRewal the waste disposal services that

33

AETC had agreed to provide to certain of its customers, including Ashland.

118.    AETC billed Ashland for the services delegated by AETC to DeRewal for the disposal of Ashland's waste.

119.    AETC agreed to and did pay DeRewal for all such waste disposal services so delegated to DeRewal by AETC.

120.    DeRewal invoiced and was paid by AETC for the waste disposal services that DeRewal provided to AETC for the benefit of AETC and its customers, including the disposal of Ashland's wastes generated at its Great Meadows facility.

121.    AETC structured its separate relationships with its customers and its waste disposers so that its customers would not deal directly with its waste disposers.  As Mr. Leuzarder testified:

> You try to get the customer to understand that you are close to the disposer and you try to get the disposer to understand you're very close to the customer.  So if we were writing it on the other way, we would say that our very close client relationship with Ashland Oil, in other words, **it was merely to avoid having Ashland go direct around us to Environmental Chemical Control**.

> See, the only thing that kept us going was not because we had disposal facilities or we had trucks or anything else, it was that we had found these people and that we were developing enough -- we had a relationship with the customer and a relationship with the disposer that **we were trying to stay in the middle and not be gone around. And there was no way to do that unless the customer continued to believe that we had a close relationship with the disposer and the disposer believed that we had a close relationship with the customer.  They could literally eliminate us completely.**

122.    At no time relevant to this civil action were there any relevant direct dealings or a relationship between DeRewal and Ashland.

123.    At the outset of its relationship with Ashland as a disposer of Ashland-generated

wastes, AETC obtained from Ashland a written analysis of Ashland's waste, which analysis was provided by AETC to DeRewal.  Mr. Leuzarder's testimony confirms this:

> Q.    But AETC specified that Ashland was to give this information to DeRewal?

> A.    Yes, DeRewal asked for it.  We went to Fred -- we went to Art and said Fred needs this description of materials and so on and so forth to make arrangements for this relationship.

124.    Ashland either gave this analysis to AETC or sent the analysis to DeRewal.

125.    Ashland's representative, Art Curley, has testified that he was "sure" that Ashland provided AETC with samples of its waste streams "[o]n more than one occasion . . . . "More likely I [Curley] might have gotten them [AETC] a sample, Jake Young from the shipping department might have gotten them a sample and the lab might have gotten them a sample."

## ASHLAND'S CROSS-CLAIMS AGAINST AETC FOR CONTRACTUAL AND OTHER COMMON LAW CONTRIBUTION AND/OR INDEMNITY

### Count I – Breach of Written Contract

126.    Ashland hereby incorporates by reference, without admitting, all of the averments in Plaintiffs' Fifth Amended Complaint and, in doing so, specifically denies any liability on its part for any and all claims set forth in Plaintiffs' Fifth Amended Complaint and incorporates by reference herein the allegations and averments set forth in its Answer to Plaintiffs' Fifth Amended Complaint, as well as above paragraphs 86 through 125 of Ashland's within Answer and Cross-Claims.

127.    Ashland and AETC agreed to the terms set forth in a written agreement between them, including, but not limited to, the indemnification and hold harmless provision thereof, a true and correct copy of which is attached hereto as Exhibit "A".

35

128.    This agreement set forth the essential terms by which AETC would provide, and Ashland would pay, AETC for the removal, hauling and disposal of Ashland's chemical waste from its Great Meadows facility.

129.    In 1976 and 1977 AETC provided waste disposal services to Ashland subject to the terms of this agreement.

130.    AETC hired and delegated to DeRewal the waste disposal services AETC agreed to provide to Ashland pursuant to the agreement between AETC and Ashland.

131.    Ashland paid AETC for the waste removal services provided by DeRewal at AETC's request.

132.    DeRewal invoiced and was paid by AETC, not Ashland, for the disposal of Ashland's chemical waste.

133.    AETC breached one or more duties owed to Ashland under their agreement, including, but not limited to, AETC's duty to provide, oversee and ensure the safe and legal disposal of Ashland's chemical waste.

134.    As a direct result of AETC's breach of its contractual duties, Ashland has suffered, and/or may or will suffer, resultant economic losses and/or other damages, including potential liability to Plaintiffs for contribution for the responses costs incurred and to be incurred by them in connection with the remediation of the site.

WHEREFORE, Defendant Ashland Inc. denies any liability to any party to this civil action, and demands judgment in its favor, together with costs and attorney's fees, as follows:

(a)    If the allegations of Plaintiff's Fifth Amended Complaint are proven true and any liability to Plaintiffs be found, that such liability be adjudged solely that of Defendant AETC, not

Ashland;

       (b)     If any liability of Defendant Ashland Inc. to Plaintiffs be found, that Defendant AETC be adjudged jointly and severally liable with Ashland and/or liable over to Ashland for contribution and/or indemnity for any such liability attributed to Ashland; and

       (c)     Such further legal and equitable relief to which Ashland may be entitled.

<u>Count II – Breach of Oral Agreement</u>

135.    Ashland hereby incorporates by reference, without admitting, all of the averments in Plaintiffs' Fifth Amended Complaint and, in doing so, specifically denies any liability on its part for any and all claims set forth in Plaintiffs' Fifth Amended Complaint and incorporates by reference herein the allegations and averments set forth in its Answer to Plaintiffs' Fifth Amended Complaint, as well as above paragraphs 86 through 134 of Ashland's within Answer and Cross-Claims.

136.    Alternatively, in the event that it is determined that Ashland and AETC did not enter into the written agreement in the form attached hereto as Exhibit "A", then Ashland and AETC entered into an oral agreement whereby AETC agreed to provide safe and legal waste disposal services to Ashland for which Ashland agreed to pay AETC.

137.    Ashland and AETC each manifested its respective intent to be bound by the terms of their oral agreement, the terms of which included and are as set forth in the document attached hereto as Exhibit "A," including, but not limited to, the indemnification and hold harmless provision thereof.

138.    The terms of the aforesaid oral agreement were accepted and agreed to by AETC by its performance of such agreement, including:

       (a)     AETC provided waste removal, hauling and disposal services to Ashland,

37

(b)    AETC hired DeRewal to remove, haul and dispose of Ashland's waste;

(c)    DeRewal removed, hauled and disposed of Ashland's waste;

(d)    DeRewal invoiced AETC for the removal, hauling and disposal of Ashland's waste;

(e)    AETC invoiced Ashland for the removal, hauling and disposal of Ashland's waste; and

(f)    Ashland paid AETC for the removal, hauling and disposal of Ashland's waste.

139.    In the event that any of Ashland's chemical waste was disposed of at the Site by AETC and/or DeRewal, such disposal was in breach of AETC's agreement to provide safe and legal waste disposal services to Ashland.

WHEREFORE, Defendant Ashland Inc. denies any liability to any party to this civil action, and demands judgment in its favor, together with costs and attorney's fees, as follows:

(a)    If the allegations of Plaintiff's Fifth Amended Complaint are proven true and any liability to Plaintiffs be found, that such liability be adjudged solely that of Defendant AETC, not Ashland;

(b)    If any liability of Defendant Ashland Inc. to Plaintiffs be found, that Defendant AETC be adjudged jointly and severally liable with Ashland and/or liable over to Ashland for contribution and/or indemnity for any such liability attributed to Ashland; and

(c)    Such further legal and equitable relief to which Ashland may be entitled.

## Count III – Breach of Implied Contract

140.    Ashland hereby incorporates by reference, without admitting, all of the averments in

38

Plaintiffs' Fifth Amended Complaint and, in doing so, specifically denies any liability on its part for any and all claims set forth in Plaintiffs' Fifth Amended Complaint and incorporates by reference herein the allegations and averments set forth in its Answer to Plaintiffs' Fifth Amended Complaint, as well as above paragraphs 86 through 139 of Ashland's within Answer and Cross-Claims.

141.    In the event that it is determined that Ashland and AETC did not enter into a written or oral agreement, then Ashland and AETC entered into an implied agreement, whereby in consideration for the promised payment to it by Ashland, AETC agreed to provide safe and legal waste disposal services to Ashland.

142.    AETC in fact provided waste disposal services to Ashland, including AETC's hiring of DeRewal to dispose of Ashland's waste.

143.    Ashland paid AETC for the waste removal services performed by DeRewal pursuant to the hiring agreement between AETC and DeRewal.

144.    In the event that any Ashland waste was disposed of at the Site, such disposal was the result of AETC's failure to perform its obligations under its implied agreement with Ashland to provide safe and legal waste disposal services to Ashland, including its obligation to ensure that DeRewal would safely and legally dispose of such waste at a proper, safe and legal site and in a proper, safe and legal manner.

145.    AETC's failure to ensure that DeRewal would provide safe, proper and legal waste disposal services constitutes a breach of the implied agreement between Ashland and AETC.

WHEREFORE, Defendant Ashland Inc. denies any liability to any party to this civil action, and demands judgment in its favor, together with costs and attorney's fees, as follows:

(a)    If the allegations of Plaintiff's Fifth Amended Complaint are proven true and

any liability to Plaintiffs be found, that such liability be adjudged solely that of Defendant AETC, not Ashland;

(b)     If any liability of Defendant Ashland Inc. to Plaintiffs be found, that Defendant AETC be adjudged jointly and severally liable with Ashland and/or liable over to Ashland for contribution and/or indemnity for any such liability attributed to Ashland; and

(c)     Such further legal and equitable relief to which Ashland may be entitled.

<u>Count IV – Unjust Enrichment</u>

146.     Ashland hereby incorporates by reference, without admitting, all of the averments in Plaintiffs' Fifth Amended Complaint and, in doing so, specifically denies any liability on its part for any and all claims set forth in Plaintiffs' Fourth Amended Complaint and incorporates by reference herein the allegations and averments set forth in its Answer to Plaintiffs' Fifth Amended Complaint, as well as above paragraphs 86 through 145 of Ashland's within Answer and Cross-Claims.

147.     Ashland paid AETC to provide safe and legal chemical waste disposal services.

148.     AETC retained the money paid by Ashland for the disposal of Ashland's chemical waste.

149.     In the event and to the extent that any of Ashland's waste was disposed of at the Site, such disposal was the result of AETC's failure to perform the services for which Ashland paid AETC, namely, the safe and legal disposal of Ashland's waste, whereby it would inequitable and unjust for AETC to retain the benefit of the money that Ashland paid to it without providing adequate consideration to Ashland in the form of safe and legal waste disposal services.

WHEREFORE, Defendant Ashland Inc. denies any liability to any party to this civil action,

and demands judgment in its favor, together with costs and attorney's fees, as follows:

(a)     If the allegations of Plaintiff's Fifth Amended Complaint are proven true and any liability to Plaintiffs be found, that such liability be adjudged solely that of Defendant AETC, not Ashland;

(b)     If any liability of Defendant Ashland Inc. to Plaintiffs be found, that Defendant AETC be adjudged jointly and severally liable with Ashland and/or liable over to Ashland for contribution and/or indemnity for any such liability attributed to Ashland; and

(c)     Such further legal and equitable relief to which Ashland may be entitled.

## Count V – Detrimental Reliance (Promissory Estoppel)

150.     Ashland hereby incorporates by reference, without admitting, all of the averments in Plaintiffs' Fifth Amended Complaint and, in doing so, specifically denies any liability on its part for any and all claims set forth in Plaintiffs' Fifth Amended Complaint and incorporates by reference herein the allegations and averments set forth in its Answer to Plaintiffs' Fifth Amended Complaint, as well as above paragraphs 86 through 149 of Ashland's within Answer and Cross-Claims.

151.     AETC made an express promise and gave assurances to Ashland that AETC would accomplish, provide for and/or ensure the safe and legal disposal of Ashland's chemical waste.

152.     Ashland reasonably relied on such express promises and assurances by AETC in allowing its wastes to be removed and transported by AETC and DeRewal for the disposal thereof.

153.     In the event and to the extent that any of Ashland's waste was disposed of at the Site, such disposal was in breach of AETC's aforesaid promises and assurances.

WHEREFORE, Defendant Ashland Inc. denies any liability to any party to this civil action, and demands judgment in its favor, together with costs and attorney's fees, as follows:

(a)     If the allegations of Plaintiff's Fifth Amended Complaint are proven true and any liability to Plaintiffs be found, that such liability be adjudged solely that of Defendant AETC, not Ashland;

(b)     If any liability of Defendant Ashland Inc. to Plaintiffs be found, that Defendant AETC be adjudged jointly and severally liable with Ashland and/or liable over to Ashland for contribution and/or indemnity for any such liability attributed to Ashland; and

(c)     Such further legal and equitable relief to which Ashland may be entitled.

## Count VI – Fraud in the Inducement

154.     Ashland hereby incorporates by reference, without admitting, all of the averments in Plaintiffs' Fifth Amended Complaint and, in doing so, specifically denies any liability on its part for any and all claims set forth in Plaintiffs' Fifth Amended Complaint and incorporates by reference herein the allegations and averments set forth in its Answer to Plaintiffs' Fifth Amended Complaint, as well as above paragraphs 86 through 153 of Ashland's within Answer and Cross-Claims.

155.     AETC made material misrepresentations and omissions of fact to Ashland as to AETC's purportedly close relationship with, and the history, capability and reputation of, DeRewal with respect to its waste removal, hauling and disposal activities and experience.

156.     AETC did not, in fact, have a close relationship with DeRewal and knew, or should have known, that DeRewal had a history of improper, unsafe and illegal waste disposal activities, which facts AETC intentionally and/or negligently failed to disclose to Ashland.

157.    AETC's aforesaid misrepresentations and non-disclosures were made with the intent of inducing Ashland to rely thereon and enter into an agreement with AETC for AETC to provide waste disposal services for a fee to be paid by Ashland.

158.    Ashland justifiably and reasonably relied on AETC's aforesaid misrepresentations and omissions, as a result of which Ashland entered into a waste disposal agreement with AETC and allowed AETC to hire DeRewal to perform the waste disposal services AETC had agreed to perform for Ashland.

159.    In the event and to the extent that any of Ashland's chemical waste was disposed of at the Site, such disposal was the result of AETC's aforementioned misrepresentations and omissions which induced Ashland to enter into a waste disposal agreement with AETC and to allow AETC to hire DeRewal to perform such waste disposal services that AETC agreed to perform for Ashland.

WHEREFORE, Defendant Ashland Inc. denies any liability to any party to this civil action, and demands judgment in its favor, together with costs and attorney's fees, as follows:

(a)    If the allegations of Plaintiff's Fifth Amended Complaint are proven true and any liability to Plaintiffs be found, that such liability be adjudged solely that of Defendant AETC, not Ashland;

(b)    If any liability of Defendant Ashland Inc. to Plaintiffs be found, that Defendant AETC be adjudged jointly and severally liable with Ashland and/or liable over to Ashland for contribution and/or indemnity for any such liability attributed to Ashland; and

(c)    Such further legal and equitable relief to which Ashland may be entitled.

<u>Count VII – Failure to Exercise Reasonable Care and Control over Contractor/Agent</u>
<u>(Restatement (Second) of Torts § 317)</u>

160.    Ashland hereby incorporates by reference, without admitting, all of the averments in Plaintiffs' Fifth Amended Complaint and, in doing so, specifically denies any liability on its part for any and all claims set forth in Plaintiffs' Fifth Amended Complaint and incorporates by reference herein the allegations and averments set forth in its Answer to Plaintiffs' Fifth Amended Complaint, as well as above paragraphs 86 through 159 of Ashland's within Answer and Cross-Claims.

161.    In connection with its hiring of DeRewal, AETC was under a duty to exercise careful and reasonable care and control over DeRewal to ensure that DeRewal would properly, safely and legally dispose of Ashland's chemical waste.

162.    DeRewal was acting as the agent and/or servant of AETC when DeRewal removed, hauled and disposed of Ashland's chemical waste.

163.    As DeRewal's principal, AETC had the right, obligation, ability and duty to carefully and reasonably control DeRewal and its waste disposal activities to ensure that DeRewal would safely and legally dispose of Ashland's chemical waste.

164.    AETC knew or should have known of the necessity for it to exercise careful and reasonable control over DeRewal's waste disposal activities.

165.    In the event and to the extent that any Ashland chemical waste was disposed of at the Site, such disposal was the result of AETC's negligent failure to exercise careful and reasonable control over DeRewal to ensure that DeRewal would safely and legally dispose of Ashland's chemical waste.

WHEREFORE, Defendant Ashland Inc. denies any liability to any party to this civil action, and demands judgment in its favor, together with costs and attorney's fees, as follows:

(a)    If the allegations of Plaintiff's Fifth Amended Complaint are proven true and any liability to Plaintiffs be found, that such liability be adjudged solely that of Defendant AETC, not Ashland;

(b)    If any liability of Defendant Ashland Inc. to Plaintiffs be found, that Defendant AETC be adjudged jointly and severally liable with Ashland and/or liable over to Ashland for contribution and/or indemnity for any such liability attributed to Ashland; and

(c)    Such further legal and equitable relief to which Ashland may be entitled.

### Count VIII – Negligent Hiring/Breach of Fiduciary Duty

166.    Ashland hereby incorporates by reference, without admitting, all of the averments in Plaintiffs' Fifth Amended Complaint and, in doing so, specifically denies any liability on its part for any and all claims set forth in Plaintiffs' Fifth Amended Complaint and incorporates by reference herein the allegations and averments set forth in its Answer to Plaintiffs' Fifth Amended Complaint, as well as above paragraphs 86 through 165 of Ashland's within Answer and Cross-Claims.

167.    In the event and to the extent that AETC may be determined to have been acting as a broker between Ashland and DeRewal in connection with DeRewal's disposal of Ashland's chemical waste, then at all times material and relevant to the events set forth in Plaintiffs' Fifth Amended Complaint AETC was acting as an agent of Ashland.

168.    As an agent for Ashland, AETC owed Ashland fiduciary duties of loyalty, trust and reasonable care to Ashland in the performance of its agency.

169.    As an agent of Ashland, AETC breached its fiduciary duties of loyalty, trust and reasonable care to Ashland in the performance of its agency.

170.    Upon information and belief, AETC knew or should have known about DeRewal's history of unsafe and illegal disposal of chemical waste prior to its hiring and re-hiring of DeRewal to remove, haul and dispose of Ashland's waste.

171.    AETC owed a duty of loyalty, trust and reasonable care to Ashland to hire a competent, qualified, and safe chemical waste disposer for the proper disposal of Ashland's chemical waste.

172.    AETC breached its duties to Ashland by hiring DeRewal who, unbeknownst to Ashland, was incompetent, unfit, and dangerous.

173.    In the event and to the extent that any of Ashland's chemical waste was disposed of at the Site, such disposal was the result of AETC's aforesaid breaches of its duty to Ashland.

WHEREFORE, Defendant Ashland Inc. denies any liability to any party to this civil action, and demands judgment in its favor, together with costs and attorney's fees, as follows:

(a)    If the allegations of Plaintiff's Fifth Amended Complaint are proven true and any liability to Plaintiffs be found, that such liability be adjudged solely that of Defendant AETC, not Ashland;

(b)    If any liability of Defendant Ashland Inc. to Plaintiffs be found, that Defendant AETC be adjudged jointly and severally liable with Ashland and/or liable over to Ashland for contribution and/or indemnity for any such liability attributed to Ashland; and

(c)    Such further legal and equitable relief to which Ashland may be entitled.

46

Count IX – Negligent Supervision/Breach of Fiduciary Duty

174.    Ashland hereby incorporates by reference, without admitting, all of the averments in Plaintiffs' Fifth Amended Complaint and, in doing so, specifically denies any liability on its part for any and all claims set forth in Plaintiffs' Fifth Amended Complaint and incorporates by reference herein the allegations and averments set forth in its Answer to Plaintiffs' Fifth Amended Complaint, as well as above paragraphs 86 through 173 of Ashland's within Answer and Cross-Claims.

175.    Pursuant to AETC's express and implied promises and assurances to Ashland that AETC would provide for the safe and legal disposal of Ashland's chemical waste, AETC had a duty to supervise its contractors, including DeRewal, whom it hired to provide hauling and waste disposal services for Ashland, to ensure that its contractors would and were disposing of Ashland's chemical waste at a safe, proper and legal site and in a safe, proper and legal manner.

176.    AETC breached its duty of supervision over DeRewal by negligently failing to adequately and properly supervise DeRewal and DeRewal's waste disposal activities.

177.    In the event and to the extent that any of Ashland's chemical waste was disposed of at the Site, such disposal was the result of AETC's aforesaid breach of its duty to adequately and properly supervise DeRewal and DeRewal's waste disposal activities.

WHEREFORE, Defendant Ashland Inc. denies any liability to any party to this civil action, and demands judgment in its favor, together with costs and attorney's fees, as follows:

(a)    If the allegations of Plaintiff's Fifth Amended Complaint are proven true and any liability to Plaintiffs be found, that such liability be adjudged solely that of Defendant AETC, not

Ashland;

   (b) If any liability of Defendant Ashland Inc. to Plaintiffs be found, that Defendant AETC be adjudged jointly and severally liable with Ashland and/or liable over to Ashland for contribution and/or indemnity for any such liability attributed to Ashland; and

   (c) Such further legal and equitable relief to which Ashland may be entitled.

<div align="center">Count X – Negligent Retention/Breach of Fiduciary Duty</div>

  178. Ashland hereby incorporates by reference, without admitting, all of the averments in Plaintiffs' Fifth Amended Complaint and, in doing so, specifically denies any liability on its part for any and all claims set forth in Plaintiffs' Fifth Amended Complaint and incorporates by reference herein the allegations and averments set forth in its Answer to Plaintiffs' Fifth Amended Complaint, as well as above paragraphs 86 through 177 of Ashland's within Answer and Cross-Claims.

  179. AETC hired DeRewal to remove, haul and dispose of chemical waste for its customers, including Ashland.

  180. AETC had knowledge, actual or constructive, that DeRewal would not and/or was not safely and legally disposing of Ashland's chemical waste.

  181. AETC had a duty to retain only competent, qualified, and safe contractors and personnel to safely dispose of Ashland's chemical waste.

  182. AETC breached its duty by hiring DeRewal to dispose of Ashland's chemical waste.

  183. In the event and to the extent that any of Ashland's chemical waste was disposed of at the Site, such disposal was the result of AETC's negligent acts and omissions in retaining an incompetent, unfit, and dangerous entity to dispose of Ashland's chemical waste.

WHEREFORE, Defendant Ashland Inc. denies any liability to any party to this civil action, and demands judgment in its favor, together with costs and attorney's fees, as follows:

(a)    If the allegations of Plaintiff's Fifth Amended Complaint are proven true and any liability to Plaintiffs be found, that such liability be adjudged solely that of Defendant AETC, not Ashland;

(b)    If any liability of Defendant Ashland Inc. to Plaintiffs be found, that Defendant AETC be adjudged jointly and severally liable with Ashland and/or liable over to Ashland for contribution and/or indemnity for any such liability attributed to Ashland; and

(c)    Such further legal and equitable relief to which Ashland may be entitled.

<div style="margin-left:50%">

_____s/Richard C. Biedrzycki_____
RICHARD C. BIEDRZYCKI, ESQUIRE
Attorney I.D. No. 30604
JEFFREY L. PETTIT, ESQUIRE
Attorney I.D. No. 21624
PHELAN, PETTIT & BIEDRZYCKI
121 South Broad Street
Suite 1600
Philadelphia, PA 19107
(215) 546-0500

Counsel for Defendant Ashland Inc.

</div>

Date:  January 31, 2008

G:\DATA\1357-29\PLDGS\ANSWER-5THAMDCMPLT(FINAL).DOC

49

## CERTIFICATE OF SERVICE

I, Richard C. Biedrzycki, Esquire, hereby certify that on this 31st day of January, 2008, I

caused a true and correct copy of the foregoing Answer and Affirmative Defenses of Defendant

Ashland Inc. to Plaintiffs' Fifth Amended Complaint Together with Counterclaims and Crossclaims to

be served by e-mail and/or first class mail on all counsel of record addressed as follows:

Glenn A. Harris, Esquire
Ballard Spahr Andrews & Ingersoll, LLP
Plaza 1000 - Suite 500
Main Street
Voorhees, NJ 08043-4636
e-mail:  harrisg@ballardspahr.com
*Counsel for Plaintiffs*

Laurie J. Sands, Esquire
Wolff & Samson, PC
280 Corporate Center
5 Becker Farm Road
Roseland, New Jersey  07068-1776
e-mail:  lsands@wolffsamson.com
*Advanced Environmental Technology Corp.*

Robert M. Morris, Esquire
Morris & Adelman, P.C.
1920 Chestnut Street
P.O. Box 30477
Philadelphia, PA  19103
e-mail:  rmmorris@morrisadelman.com
*Advanced Environmental Technology Corp.*

Lynn Wright, Esquire
Edwards & Angell, LLP
750 Lexington Avenue
New York, New York  10022-1200
e-mail:  lwright@eapdlaw.com
*Carpenter Technology Corporation*

Christopher R. Booth, Jr., Esquire
Booth & Tucker, LLP
One Penn Center at Suburban Station
1617 JFK Boulevard, Suite 1700
Philadelphia, PA 19103
e-mail: cbooth@boothtucker.com
***Carpenter Technology Corporation***

Seth v.d.H. Cooley, Esquire
Duane Morris LLP
Suite 4200, One Liberty Place
Philadelphia, PA 19103-7396
e-mail: scooley@duanemorris.com
***Flexible Circuits and Etched Circuits***

Melissa Flax, Esquire
Carella, Byrne, Bain, Gilfillian, Cecchi,
Stewart & Olstein, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068-1739
e-mail: mflax@carellabyrne.com
***Handy & Harman Tube Company***

Edward Fackenthal, Esquire
Henderson, Weitherill, O'Hey & Horsey
Suite 902 - One Montgomery Plaza
P.O. Box 751
Norristown, PA 19404
e-mail: edwardfackenthal@cs.com
***NRM Investment Co.***


        s/Richard C. Biedrzycki
        RICHARD C. BIEDRZYCKI

Date:  January 31, 2008