## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AGERE SYSTEMS, INC., CYTEC
INDUSTRIES, INC., FORD MOTOR
COMPANY, SPS TECHNOLOGIES, LLC and
TI GROUP AUTOMOTIVE SYSTEMS LLC,

Plaintiffs,

v.

ADVANCED ENVIRONMENTAL
TECHNOLOGY CORPORATION, et al.,

Defendants.

CIVIL ACTION

Case No. 02-cv-3830

Judge LeGrome D. Davis

---

**DEFENDANT ADVANCED ENVIRONMENTAL TECHNOLOGY CORP.'S
BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, OR
IN THE ALTERNATIVE, TO DISMISS COUNT SIX OF ASHLAND'S CROSS-
CLAIM FOR FAILURE TO PLEAD FRAUD WITH PARTICULARITY**

---

**WOLFF & SAMSON PC**
John A. McKinney
Laurie J. Sands
Elisa Pagano
One Boland Drive
West Orange, NJ 07052
(973) 325-1500
jmckinney@wolffsamson.com
lsands@wolffsamson.com
Attorneys for Defendant Advanced
Environmental Technology Corp.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iv

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 2

    A.    Alleged Written Contract between Ashland and AETC .......................................... 4

    B.    Ashland's Involvement in Utilizing DeRewal for Disposal .................................... 5

LEGAL ARGUMENT.......................................................................................................... 5

POINT I

STANDARD FOR SUMMARY JUDGMENT...................................................................... 5

POINT II

ASHLAND'S CROSS-CLAIMS SHOULD BE DISMISSED IN THEIR ENTIRETY
BECAUSE THEY ARE ALL BARRED BY THE STATUTE OF LIMITATIONS.................... 6

    A.    The Causes of Action Set forth in Counts One through Ten of Ashland's
    Cross-Claims Arose on June 18, 2002, the Date on Which the Initial
    Complaint was Filed in this Matter, and, Therefore, are Time Barred.................. 6

    B.    The District Court Must Apply Pennsylvania Law to Determine Whether
    Plaintiff's Cross-Claims are Barred by the Statute of Limitations. ........................ 9

        1.    Counts One (Breach of Written Contract), Two (Breach of Oral
        Contract), Three (Breach of Implied Contract), Four (Unjust
        Enrichment) and Five (Promissory Estoppel) of Ashland's Cross-
        Claims Are Barred By Pennsylvania's Four-Year Statute of
        Limitations. ............................................................................................. 11

        2.    Count Six (Fraud in the Inducement) of Ashland's Cross-Claim
        is Barred by Pennsylvania's Two-Year Statute of Limitations. ............... 12

        3.    Count Seven (Failure to Exercise Care and Control over
        Contractor/Agent (Restatement (Second) of Torts § 317)) of
        Ashland's Cross-Claims is Barred by Pennsylvania's Two-Year
        Statute of Limitations................................................................................. 13

        4.        Counts Eight (Negligent Hiring/Breach of Fiduciary Duty), Nine (Negligent Supervision/ Breach of Fiduciary Duty) and Ten (Negligent Retention/Breach of Fiduciary Duty) of Ashland's Cross-Claims Are Barred By Pennsylvania's Two-Year Statute of Limitations. ........................................................................................ 14

    C.     Counts One Through Ten of Ashland's Cross-Claims Are Time Barred ............. 15

POINT III

ASHLAND'S CROSS-CLAIMS SHOULD BE DISMISSED IN THEIR ENTIRETY BECAUSE THEY ARE BARRED BY THE DOCTRINE OF LACHES ................................... 16

    A.     Ashland's Delay in Filing its Cross-Claims Was Unreasonable. ......................... 17

    B.     AETC Has Been Significantly Prejudiced By Ashland's Delay. .......................... 18

POINT IV

ASHLAND'S COMMON LAW CLAIMS ARE NOT PREEMPTED BY CERCLA ................ 19

POINT V

SUMMARY JUDGMENT SHOULD  BE GRANTED TO AETC ON COUNTS ONE AND SIX OF ASHLAND'S CROSS-CLAIMS  BECAUSE THEY ARE UNSUPPORTED BY THE UNCONTESTED FACTS ................................................................. 20

    A.     Choice of Law Analysis ....................................................................................... 20

        1.        There is no Conflict of Law with Respect to Ashland's Breach of Contract Claims ....................................................... 21

        2.        New Jersey Law Applies to Ashland's Fraud in the Inducement Claim ................................................................ 21

    B.     Ashland's Cross-Claims Asserting Breach of Written Contract Must Be Dismissed Because No Written Contract Between the Parties Exists. ....................................................................................................... 23

    C.     Ashland's Cross-Claim Asserting Fraud in the Inducement Must be Dismissed Because Uncontested Facts Establish There was No Fraud ............... 26

POINT VI

IN THE ALTERNATIVE, COUNT SIX OF ASHLAND'S CROSS-CLAIMS
ASSERTING FRAUD IN THE INDUCEMENT SHOULD BE DISMISSED,
PURSUANT TO FED. R. CIV. P. 9(b), FOR FAILURE TO PLEAD FRAUD
WITH PARTICULARITY ............................................................................................................ 29

CONCLUSION............................................................................................................................... 32

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page

A.C. Aukerman Co. v. R.L. Chaides Construction Co.,
960 F.2d 1020 (Fed. Cir. 1992)..................................................................................17

A.I. Credit Consumer Discount Co. v. Premiere Foods, Inc.,
2007 WL 3256733 (D.N.J. November 5, 2007) .........................................................11

Alexander v. Cigna Corp.,
991 F. Supp. 427 (D.N.J. 1998)..................................................................................27

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986)..................................................................................................5, 6

Baer v. Chase,
392 F.3d 609 (3d Cir. 2004)..........................................................................................8

Beauty Time, Inc. v. Vu Skin System, Inc.,
118 F.3d 140 (3d Cir. 1997)..........................................................................................7

Blackburn v. Prudential Lines, Inc.,
454 F. Supp. 1302 (D.C.Pa. 1978) ..............................................................................13

CSX Transport Co. v. Novolog Bucks County,
No. 04-4018, 2006 WL 1451280 (E.D.Pa. May 24, 2006)..........................................24

Caisson Corp. v. Ingersoll-Rand Co.,
622 F.2d 672 (3d Cir. 1980)........................................................................................24

Celotex Corp. v. Catrett,
477 U.S. 317 (1986)......................................................................................................5

Craftmatic Sec. Litigation V. Kraftsow,
890 F.2d 628 (3d Cir. 1989)........................................................................................30

Farmers Export Co., Inc. v. Energy Terminals, Inc.,
673 F. Supp. 715 (E.D.Pa. 1987) ................................................................................13

Gashlin v. Prudential Insurance Co. of America Retirement,
286 F. Supp. 2d 407 (D.N.J. 2003) ..............................................................................11

In re Global Industrial Technologies, Inc.,
    333 B.R. 251 (Bkrtcy.W.D.Pa. 2005) .................................................................................10, 12

Guaranty Trust Co. v. York,
    326 U.S. 99 (1945).................................................................................................................9

Hancock Industries v. Schaeffer,
    811 F.2d 225 (3rd Cir. 1987) ...............................................................................................5

Hersh v. Allen Products Co.,
    789 F.2d 230 (3rd Cir. 1986) ...............................................................................................5

Kepner-Tregoe v. Executive Development Inc.,
    79 F. Supp. 2d 474 (D.N.J. 1999) ..................................................................................16, 17

Kronfeld v. First Jersey National Bank,
    638 F. Supp. 1454 (D.N.J. 1986) ....................................................................................12, 14

LeJeune v. Bliss-Salem, Inc.,
    85 F.3d 1069 (3d Cir. 1996)...............................................................................................21

Lucker Manufacturing v. Home Insurance Co.,
    23 F.3d 808 (3d Cir. 1994)................................................................................................21

Mardini v. Viking Freight, Inc.,
    92 F. Supp. 2d 378 (D.N.J.1999) .......................................................................................27

Matsushita Electric Industrial Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986)............................................................................................................6

National Utility Service, Inc. v. Cambridge Lee,
    199 Fed.Appx. 139 (N.J. 2006)...........................................................................................11

NLRB v. Local 825 Intern. Union of Operating Engineers, AFL-CIO,
    315 F.2d 695 (3d Cir. 1963)...............................................................................................23

O'Brien v. Pennington School,
    2008 WL 160588 (E.D.Pa. Jan. 15, 2008)...........................................................................20

Ormsby v. Luzerne County Dept. of Public Welfare Office,
    149 Fed.Appx. 60 (Pa. 2005)...............................................................................................14

Papacoda v. A.I. Dupont Hospital for Children of the Nemours,
    2006 WL 1789077 (E.D.Pa. 2006) ......................................................................................21

1115570.6

RTC Mortg. Trust 1994N-1 v. Fidelity National Title Insurance Co.,
    58 F. Supp. 2d 503 (D.N.J. 1999) ................................................................................14

In re Resorts Intern., Inc.,
    181 F.3d 505 (3d Cir. 1999).........................................................................................27

Rolo v. City Investing Co. Liquidating Trust,
    155 F.3d 644 (3d Cir. 1998).........................................................................................30

Semegen v. Weidner,
    780 F.2d 727 (9th Cir. 1985) .......................................................................................30

Seville Industrial Machine Corp. v. Southmost Machine Corp.,
    742 F.2d 786 (3d Cir. 1984).........................................................................................30

Schreiber v. Eli Lilly and Co.,
    2006 WL 782441 (E.D.Pa. 2006) ......................................................................9, 12, 20

Shields v. Consolidated Rail Corp.,
    810 F.2d 397 (3d Cir. 1987).........................................................................................20

Slepski v. Dravo Corp.,
    104 F. Supp. 89 (D.C.Pa. 1951) ...................................................................................19

U.S. v. Shaw,
    2004 WL 1858349 (E.D.Pa. 2004) ..............................................................................16

Valhal Corp. v. Sullivan Associates, Inc.,
    44 F.3d 195 (3d Cir. 1995)...........................................................................................23

Waddell v. Small Tube Products, Inc.,
    799 F.2d 69 (3d Cir. 1986)...........................................................................................16

Wakefield v. Joy Mining Machinery Co.,
    2006 WL 840345 (W.D.Pa. 2006) ...............................................................................14

Weis-Buy Services, Inc. v. Paglia,
    411 F.3d 415 (3d Cir. 2005).........................................................................................14

Wells v. Simonds Abrasive Co.,
    345 U.S. 514 (1953).......................................................................................................9

White v. Daniel,
    909 F.2d 99 (4th Cir. 1990) .........................................................................................17

## STATE CASES

Allstate Insurance Co. v. Howard Savings Institution,
    127 N.J. Super. 479 (Ch. Div. 1974) ........................................................................17

Ayers v. Morgan,
    397 Pa. 282 (1959)..........................................................................................................7

Barsotti v. Merced,
    346 N.J. Super. 504 (App. Div. 2002) .....................................................................27

Bednar v. Marino,
    435 Pa. Super. 417 (1994)...........................................................................................12

Binder v. Price Waterhouse & Co., L.L.P.,
    393 N.J. Super. 304 (App.Div. 2007) ......................................................................11

Cole v. Lawrence,
    701 A.2d 987 (Pa.Super. 1997)..................................................................................11

Commonwealth ex. rel. Baldwin v. Richard,
    751 A.2d 647 (Pa. 2000) .............................................................................................16

Cooper River Plaza East, LLC v. Briad Group,
    359 N.J. Super. 518 (App.Div. 2003) ......................................................................16

Crouse v. Cyclops Industries,
    560 Pa. 394 (Pa. 2000)...........................................................................................8, 12

Doe v. XYC Corp.,
    382 N.J. Super. 122 (App. Div. 2005) .....................................................................13

Eigen v. Textron Lycoming Reciprocating Engine Division,
    874 A.2d 1179 (Pa. Super. 2005)..........................................................................22, 26

Enfield v. FWL, Inc.,
    256 N.J. Super. 502 (Ch. Div. 1991) .......................................................................17

Ferraro v. McCarthy-Pascuzzo,
    777 A.2d 1128 (Pa. Super. 2001)...........................................................................9, 10

Foont-Freedenfeld Corp. v. Electro-Protective Corp.,
    126 N.J. Super. 254 (App. Div. 1973) .....................................................................26

Gennari v. Weichert Co. Realtors,
    177 N.J. Super. 504 (App. Div. 1996) .....................................................................27

Gladden v. Public Empl. Retirement System Trustee Board,
    171 N.J. Super. 363 (App. Div. 1979) .......................................................................16

Good v. Lackawanna Leather Co.,
    96 N.J. Super. 439 (Ch. Div. 1967) ..........................................................................18

Griffith v. United Air Lines, Inc.,
    416 Pa. 1 (1964)..........................................................................................................21

Gwaltney v. Stone,
    387 Pa. Super. 492 (1989)...........................................................................................10

Hayward v. Medical Center of Beaver County,
    530 Pa. 320 (Pa. 1992)..................................................................................................8

Jewish Center of Sussex County v. Whale,
    86 N.J. 619 (NJ 1981)..................................................................................................27

Jones v. Zoning Board of Adjustment,
    28 N.J. Super. 483 (Law Div. 1953) ...........................................................................18

Knorr v. Smeal,
    836 A.2d 794 (N.J. 2003).............................................................................................16

L.V. v. R.S.,
    347 N.J. Super. 33 (App. Div. 2002) ..........................................................................17

Leodori v. Cigna Corp.,
    175 N.J. 293 (2003) .....................................................................................................24

Mancini v. Township of Teaneck,
    179 N.J. 425 (2004) .....................................................................................................16

Manobianco v. City of Hoboken,
    96 N.J. Super. 273 (Law Div. 1967) ...........................................................................16

Mavrikidis v. Petullo,
    153 N.J. 117 (N.J. 1998)..............................................................................................13

Nolan v. Lee Ho,
    120 N.J. 465 (1990) ...............................................................................................22, 26

Estate of Parr v. Buontempo Insurance Services,
    2006 WL 2620504 (N.J.App.Div. 2006) .....................................................................14

1115570.6

Pennock v. Lenzi,
  882 A.2d 1057 (Pa.Cmwlth. 2005) ................................................................7

Ramapo Bank v. Bechtel,
  224 N.J. Super. 191 (App. Div. 1988) ..........................................................27

Riemer v. St. Clare's Riverside Medical Ctr.,
  300 N.J. Super. 101 (App.Div. 1997) ...........................................................8

Schultze v. Wilson,
  54 N.J. Super. 309 (App. Div. 1959) ...........................................................18

State by Commissioner of Transport v. Weiswasser,
  287 N.J. Super. 287 (App. Div. 1995) ..........................................................18

Troxel v. A.I. duPont Institute,
  431 Pa. Super. 464 (Pa. Super. 1994) ...........................................................21

Unisys Finance Corp. v. U.S. Vision, Inc.,
  428 Pa. Super. 107 (1993)....................................................................9, 10

United Jersey Bank v. Kensey,
  306 N.J. Super. 540 (App. Div. 1997) ..........................................................27

Ward v. Rice,
  828 A.2d 1118 (Pa.Super. 2003)..................................................................7

Weil v. Express Container Corp.,
  360 N.J. Super. 599 (App. Div. 2003) ..........................................................27

Wilson v. Transport Insurance Co.,
  889 A.2d 563 (Pa.Super. 2005)...................................................................21

Wolf ex rel. Wolf v. W.C.A.B. (Birdsboro Corp.),
  734 A.2d 460 (Pa.Cmwlth. 1999) ................................................................7

## RULES

Fed. R. Civ. P. 9.................................................................................29

Fed. R. Civ. P. 9(b)..............................................................................29

Fed. R. Civ. P. 56(c) .............................................................................5

## STATUTES

42 U.S.C. § 9601(14) ............................................................................................................20

N.J.S.A. 2A:14-1 ..............................................................................................11, 12, 13, 14

42 Pa. C.S.A. § 5521(b) ...........................................................9, 10, 11, 12, 13, 14, 15

## OTHER AUTHORITIES

Restatement (Second) of Torts § 317.........................................................................1, 13

1115570.6

## PRELIMINARY STATEMENT

Ashland inexplicably decided to file ten new common law claims against AETC in this case after the parties have completed discovery, the Court has set a dispositive motion schedule and trial is imminent. Ashland did so even though it knew about these claims since June 18, 2002, the date the Plaintiffs filed the initial Complaint in this action. In the initial Complaint, the Plaintiffs alleged that Ashland's waste was disposed of at the Boarhead Farms Site and that AETC arranged for the disposal of Ashland's waste. Therefore, when Ashland read the initial Complaint, Ashland became aware that it could have potential claims against AETC. Yet, Ashland did not assert those claims. Nor did Ashland assert those claims during the numerous times the complaint in this action was amended. Ashland did not even file those claims when directed by the Court to do so in June of 2004. Instead, Ashland waited until this case was heading toward trial to file its claims.

Unfortunately for Ashland, it is too late. All of the ten claims Ashland has asserted against AETC are barred by the applicable statute of limitations. The longest statute of limitations that applies to these claims is four years. The shortest is two years. Ashland should have filed its claims against AETC in its first answer. Instead, it filed its claims on January 31, 2008 – one year and seven months too late for the four year statute of limitations claims and three years and seven months too late for the two year statute of limitation claims.

Further, there was no discovery taken in this case with respect to the ten new claims Ashland is asserting against AETC. AETC did not conduct discovery with respect to these claims because they were not at issue in this case. The claims, however, require extensive discovery. Therefore, if this Court decides to allow Ashland to pursue its claims, in order for

AETC to properly defend itself, AETC must be permitted to take discovery, which will certainly delay this litigation.

Additionally, Ashland attempts to assert claims that are unsupportable and have no basis in law or fact. Ashland asserts a breach of contract claim and in support of the claim points to an unsigned agreement. The unsigned agreement, however, is irrelevant to the claims at issue in this case. That does not stop Ashland -- Ashland then points to this unsigned agreement to allege that AETC owes Ashland an indemnity.

Finally, Ashland asserts a fraud claim against AETC by twisting facts in an attempt to provide support for the unfounded claim. Ashland asserts that AETC mislead Ashland with respect to AETC's relationship with DeRewal Chemical Company. When, in fact, Ashland insisted on meeting Manfred DeRewal and visiting the Boarhead Farms Site and the Wissinoming facility prior to allowing DeRewal Chemical Company to continue to handle Ashland's wastes. Moreover, the individual from Ashland involved in this decision making process was Ashland's plant manager and a chemical engineer. Ashland knows that AETC did not perpetrate a fraud upon Ashland. Yet, Ashland decided to assert a fraud claim against AETC.

This Court cannot allow Ashland to disrupt this litigation by asserting claims that were delayed without any reasonable justification, are time barred, and unsupportable. Accordingly, this Court should grant AETC summary judgment and dismiss all ten of Ashland's cross-claims.

## STATEMENT OF FACTS

The initial Complaint in this action was filed on June 18, 2002 by the Boarhead Farms Agreement Group ("BFAG"). See Declaration of Laurie J. Sands, Esq., dated February 21, 2008 ("Sands Decl."), ¶ 3, Ex. A. BFAG has since been replaced as the Plaintiff by the individual

2

entities that formed the BFAG. Since June 2002, several amended Complaints have been filed in this action. On January 31, 2008, Defendant Ashland, Inc. ("Ashland") filed an answer to Plaintiff's Fifth Amended Complaint together with Cross-claims against Defendant Advanced Environmental Technology Corporation ("AETC"). See Sands Decl., ¶ 4, Ex. B.

In addition, the Court has entered ten case management orders. Case management order #5, dated June 16, 2004, is particularly relevant to Ashland's recent attempt to assert cross-claims against AETC. The first paragraph of that order reads as follows:

> 1.    Initial Pleadings: On or before July 15, 2004, Defendants who have not reached settlements with Plaintiff shall answer, move (to the extent not limited by prior Case Management Orders), or otherwise plead in response to the Third Amended Complaint. Answers shall be deemed to raise cross-claims for contribution pursuant to CERCLA and Pennsylvania Hazardous Sites Cleanup Act. All such deemed cross-claims and counterclaims shall be deemed denied. **Cross-claims or counterclaims based on separate claims peculiar to an individual party, such as claims for contractual indemnification (and other than claims against the insurance company), shall be individually pleaded.**

See Sands Decl., ¶ 5, Ex. C.

Ashland's claims are peculiar to Ashland and AETC and sound in contract law, negligence and fraud. Therefore, Ashland should have asserted its cross-claims against AETC back in 2004 as directed by this Court. Instead, Ashland waited until discovery was complete, a schedule for dispositive motions was set and trial was imminent before asserting its cross-claims against AETC.

Also, in 1999, certain parties were asked to participate in the clean up at the Boarhead Farms Site. See Sands Decl., ¶ 6, Ex. D. AETC was one of those parties and AETC believes Ashland was also notified at that time. See id. Therefore, Ashland has been aware of potential claims against AETC for over nine years. See id.

3

A.    **Alleged Written Contract between Ashland and AETC**

Within the claims Ashland seeks to assert against AETC is a claim for breach of a written contract. Ashland attaches to its answer and cross-claims a copy of an unsigned agreement, which Ashland alleges contains terms and conditions agreed upon by Ashland and AETC. See Sands Decl., ¶ 7, Ex. E. This agreement, however, is not relevant to the claims Ashland is asserting against AETC.

Sometime in 1976, AETC began discussing with Ashland the possibility of handling Ashland's acid waste through a distillation process. See Sands Decl., ¶ 8, Ex. F. If Ashland's acid waste was distilled, it could be reused instead of being disposed. AETC made a proposal to Ashland in September 1976 regarding this potential process. See id. The proposal never came to fruition. As a result of the proposal, however, an agreement was drafted. See Sands Decl., ¶ 7, Ex. E. The draft agreement is the document that Ashland now attaches to its cross-claims alleging that it provides an indemnification by AETC for Ashland with respect to the damages sought in this action. See id.

The agreement clearly indicates that it was in connection with the proposal to set up a distillation process for Ashland's acid waste. See id. It was not in reference to the alleged disposal activities that are at issue in this case. See id. In fact, John Leuzarder, Vice-President of AETC, testified that the agreement was with respect to the distillation of nitric acid. See Sands Decl., ¶ 9, Ex. G at 182:08-183:03. As demonstrated, the agreement Ashland references in its cross-claims was drafted for a specific proposal to install distillation equipment to recycle Ashland's acidic wastes. See id. and ¶ 8, Ex. F. This project never materialized, and, therefore, contrary to Ashland's assertions, the referenced agreement is irrelevant to the claims at issue in this case.

4

**B.**     **Ashland's Involvement in Utilizing DeRewal for Disposal**

Ashland, in its cross-claims, seems to suggest that it relied entirely on AETC in making decisions with respect to the disposal of Ashland's waste. The facts indicate otherwise. Ashland was actively involved in the decision to use DeRewal Chemical Company ("DeRewal") to dispose of its waste. See Sands Decl., ¶ 10, Ex. H and ¶ 11, Ex. I. In fact, Arthur Curley, Ashland's plant manager and a chemical engineer, insisted on meeting with Manfred DeRewal and visiting the DeRewal facility in Wissinoming where Ashland's acid wastes were to be disposed. See Sands Decl., ¶ 10, Ex. H. and ¶ 12, Ex. J at 174:17-174:21. After those visits, Mr. Curley approved the use of DeRewal to handle Ashland's wastes.

## LEGAL ARGUMENT

### POINT I

### STANDARD FOR SUMMARY JUDGMENT

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Hersh v. Allen Prods. Co., 789 F.2d 230, 232 (3rd Cir. 1986). In deciding whether there is a disputed issue of material fact, the Court must draw all inferences from the underlying facts in favor of the non-moving party. See Hancock Industries v. Schaeffer, 811 F.2d 225, 231 (3rd Cir. 1987). Summary judgment must be granted if no reasonable trier of fact could find for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

When the non-moving party bears the burden of proof at trial, the moving party's burden can be "discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S.

5

317, 325 (1986). If the moving party has carried its burden of establishing the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show there is some metaphysical doubt as to the material facts." Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). When the non-moving party's evidence in opposition to a properly supported motion for summary judgment is merely "colorable" or "not significantly probative," the Court may grant summary judgment. See Anderson, 477 U.S. at 249-250.

### POINT II

### ASHLAND'S CROSS-CLAIMS SHOULD BE DISMISSED IN THEIR ENTIRETY BECAUSE THEY ARE ALL BARRED BY THE STATUTE OF LIMITATIONS

Counts One through Ten of Ashland's Cross-claims should be dismissed because they are barred by their respective statutes of limitations. Ashland knew about the claims it now asserts against AETC since June 2002 and arguably since December 1999. Yet, Ashland waited until discovery was complete and trial was imminent in this case before asserting such claims. Ashland can offer no reasonable explanation as to why it sat on its rights in asserting these claims. Unfortunately for Ashland, it waited too long and now its claims are barred by the applicable statute of limitations for such claims.

A.    **The Causes of Action Set forth in Counts One through Ten of Ashland's Cross-Claims Arose on June 18, 2002, the Date on Which the Initial Complaint was Filed in this Matter, and, Therefore, are Time Barred.**

In June 2002, the Plaintiffs in this case filed their initial Complaint alleging that "Ashland used AETC and DeRewal Chemical to remove industrial wastes from its Pennsylvania plant", "Ashland's waste was disposed at the Site" and "AETC arranged with DeRewal Chemical for the disposal of Hazardous Substances from Defendants Ashland Chemical Company ("Ashland") and Diaz Chemical Corporation ("Diaz")". See Sands Decl., ¶

6

3, Ex. A.  When Ashland was served with the Plaintiffs' Complaint, Ashland knew that it was

being pursued by the Plaintiffs for cleanup costs incurred at the Boarhead Farms Site.  Ashland

also knew the Plaintiffs were alleging that Ashland's waste was disposed of at the Site – waste

that AETC allegedly brokered for disposal for Ashland.  At that point, Ashland was on notice of

its alleged breach of contract, negligence and fraud claims against AETC.   Nevertheless,

Ashland decided not assert those claims against AETC at that time.  Nor did Ashland assert

those claims during the numerous times the Complaint was amended in this case or when

directed to do so by the Court under Case Management Order No. 5.  See Sands Decl., ¶ 5, Ex.

C.  Instead, Ashland waited until now to file these claims.[1]  They are too late.

In most instances, the limitations period for filing claims begins to run when the cause

of action accrues.   Wolf ex rel. Wolf v. W.C.A.B. (Birdsboro Corp.), 734 A.2d 460, 465

(Pa.Cmwlth. 1999).   Normally, a cause of action accrues at the time the injury is inflicted.

Pennock v. Lenzi, 882 A.2d 1057, 1060 (Pa.Cmwlth. 2005) (citing Ayers v. Morgan, 397 Pa.

282 (1959)).  In some cases, as in the present case, where the injury, or the fact that it was

caused by the conduct of another, is not known or discoverable through the exercise of

reasonable diligence, courts have invoked the discovery rule, which delays the accrual of a

cause of action and tolls the statute of limitations until a time when the injury and its cause can

reasonably be discovered.   Ward v. Rice, 828 A.2d 1118 (Pa.Super. 2003); see also Beauty

Time, Inc. v. Vu Skin Sys., Inc., 118 F.3d 140, 148 (3d Cir. 1997) (The limitation period will be

tolled until after the plaintiff discovers, or should have discovered, the existence of the claim.)

Reasonable diligence means that a reasonable effort was made to discover the cause of an injury

---

[1] Ashland filed leave to amend its answer in October 2006 to assert many of the claims it is now asserting against AETC.  Even if this Court decided to grant leave at that time, Ashland's claims would have been time barred by the applicable statute of limitations.

under the facts and circumstances present in the case. Crouse v. Cyclops Industries, 560 Pa. 394, 404 (Pa. 2000). A plaintiff's actions must be evaluated to determine whether he exhibited "those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others." Id. at 405 (other citations omitted).

Similarly, in New Jersey, "[t]he discovery rule postpones the commencement of a cause of action until a Plaintiff knows, or should have known, of facts which establish that an injury has occurred, and that fault for that injury can be attributed to another." Baer v. Chase, 392 F.3d 609, 621-22 (3d Cir. 2004) (quoting Riemer v. St. Clare's Riverside Med. Ctr., 300 N.J.Super 101,109 (App.Div. 1997)).

Whether the statute of limitations has run on a claim is usually a question of law for the trial judge. Crouse, 560 Pa. at 404. Although the point at which the complaining party should reasonably be aware that he has suffered an injury is a factual issue, the commencement of the limitations period may be determined as a matter of law where the facts are so clear that reasonable minds cannot differ. Id. (citing Hayward v. Medical Center of Beaver County, 530 Pa. 320, 325 (Pa. 1992)).

When the Plaintiffs first asserted claims against Ashland in June 2002 alleging that Ashland's waste was disposed of at the Boarhead Farms Site and AETC arranged with DeRewal Chemical for the disposal of hazardous substances from Ashland, it was clear, and reasonable minds cannot differ, that Ashland could have potential claims against AETC. At that time, even if Ashland employed a minute amount of judgment, intelligence and attention, Ashland could have discerned that it could assert the same claims it is presently attempting to assert against

8

AETC. Ashland, however, failed to act in a reasonable and timely manner with respect to these claims and, as a result of that behavior, is now barred from bringing such claims.

**B.    The District Court Must Apply Pennsylvania Law to Determine Whether Plaintiff's Cross-Claims are Barred by the Statute of Limitations.**

Under Pennsylvania law, all of Ashland's cross-claims are barred by the applicable statute of limitations. Generally, statutes of limitations are deemed to be procedural for conflict of law purposes and the Court would apply its own state's statute of limitations. See Wells v. Simonds Abrasive Co., 345 U.S. 514, 517-518 (1953); Guaranty Trust Co. v. York, 326 U.S. 99 (1945); see also Unisys Finance Corp. v. U.S. Vision, Inc., 428 Pa.Super. 107, 112 (1993), appeal denied, 538 Pa. 615 (1994) (explaining that, historically, Pennsylvania treats the question of which statute of limitations applies not as a matter of substantive law but as a matter of procedural law); see also Schreiber v. Eli Lilly and Co., 2006 WL 782441, at *6 n.12 (E.D.Pa. 2006) (applying Pennsylvania's law to determine which state's statute of limitations applies to state law claims asserted in a patent infringement action wherein the District Court's jurisdiction is based upon federal question) (other citations omitted). Indeed, Pennsylvania courts have held that whenever Pennsylvania is the chosen forum state for a civil action, Pennsylvania's procedural rules govern, no matter what substantive law the court must apply in resolving the underlying legal issues. See Ferraro v. McCarthy-Pascuzzo, 777 A.2d 1128, 1136-1137 (Pa.Super. 2001) (holding that the choice-of-law analysis applies only to conflicts of substantive law).

Pennsylvania statutory law, however, also provides that for claims accruing outside of Pennsylvania, the period of limitations shall be prescribed by the limitations period of the place where the claim accrued or by the law of Pennsylvania, whichever is shorter. 42 Pa.C.S.A. §

5521(b) (the "Borrowing Statute")[2]; see also Gwaltney v. Stone, 387 Pa.Super. 492, 501 (1989).

In the present case, the Borrowing Statute applies to determine the appropriate statutes of limitations because Ashland's cross-claims accrued in New Jersey – the place where the parties are incorporated and where the alleged contract was entered into and, in part, allegedly performed.[3] See In re Global Indus. Technologies, Inc., 333 B.R. 251 (Bkrtcy.W.D.Pa. 2005) (Pursuant to the Borrowing Statute, Pennsylvania's two-year statute of limitations governed equipment buyer's claim against sellers for alleged fraud in the inducement of sales contract, rather than four-year limitations period under Ohio law, which parties had contractually selected to govern contract, or five-year limitations period of Kentucky, where seller's underlying action was filed.); Unisys Finance Corp. v. U.S. Vision, Inc., 428 Pa.Super. 107, 111-12 (Pa.Super. 1993) (holding that under the Borrowing Statute, the Pennsylvania statute of limitations applied to an action for breach of an equipment lease that was entered into in Michigan).

As discussed in detail below, under the terms of the Borrowing Statute, because the Pennsylvania limitations statutes provide for shorter periods of time to bring each respective cross-claim after accrual, the District Court must apply Pennsylvania statutes of limitations to Ashland's cross-claims. Unisys Finance Corp., 428 Pa.Super. at 112.

---

[2] 42 Pa.C.S.A. § 5521 specifically provides that "[t]he period of limitation applicable to a claim accruing outside this Commonwealth shall be either that provided or prescribed by the law of the place where the claim accrued or by the law of this Commonwealth, whichever first bars the claim."

[3] Even if the District Court determines that the cross-claims asserted by Ashland did not accrue in New Jersey, and thus the Borrowing Statute is not applicable, Pennsylvania's respective statutes of limitations must be applied. See Ferraro v. McCarthy-Pascuzzo, 777 A.2d 1128, 1136-1137 (Pa.Super. 2001) (when Pennsylvania is the chosen forum state for a civil action, Pennsylvania's procedural rules govern).

1.  **Counts One (Breach of Written Contract), Two (Breach of Oral Contract), Three (Breach of Implied Contract), Four (Unjust Enrichment) and Five (Promissory Estoppel) of Ashland's Cross-Claims Are Barred By Pennsylvania's Four-Year Statute of Limitations.**

Pennsylvania's four-year statute of limitations applies to Count One, Breach of Written Contract; Count Two, Breach of Oral Contract; Count Three, Breach of Implied Contract; Count Four, Unjust Enrichment and Count Five, Promissory Estoppel, of Ashland's cross-claims.

Under New Jersey law, actions for breach of contract (written, oral or implied) have six-year statutes of limitations. N.J.S.A. 2A:14-1; see also National Utility Service, Inc. v. Cambridge Lee, 199 Fed.Appx. 139, 142 (N.J. 2006); Binder v. Price Waterhouse & Co., L.L.P., 393 N.J.Super. 304, 309 (App.Div. 2007). This six-year limitation period also applies to actions for unjust enrichment and promissory estoppel. See A.I. Credit Consumer Discount Co. v. Premiere Foods, Inc., 2007 WL 3256733, at *11 (D.N.J. November 5, 2007) ("New Jersey has adopted a six-year statute of limitation for non-personal injury actions involving monetary damages, a grouping which includes unjust enrichment actions."); Gashlin v. Prudential Ins. Co. of America Retirement, 286 F.Supp.2d 407, 421 (D.N.J. 2003) (holding that six-year state statute of limitations [N.J.S.A. 2A:14-1] for contracts applies to promissory estoppel claim).

Under Pennsylvania law, actions sounding in contract, including actions for breach of written contract, oral contract, implied contract, and actions for promissory estoppel and unjust enrichment/quantum meruit are subject to a four-year statute of limitations. 42 Pa. C.S.A. § 5525(a)(3), (4) and (8); see also Cole v. Lawrence, 701 A.2d 987, 989 (Pa.Super. 1997), appeal denied, 555 Pa. 738 (1998) ("Regardless of whether a party is seeking to recover under an

express or implied agreement, the four year statute of limitations period governing such claims begins to run at the time of breach."); Bednar v. Marino, 435 Pa.Super. 417, 427 (1994) (The four-year limitation applicable to contracts implied-in-law governs an action based upon a theory of quantum meruit pursuant to 42 Pa.C.S. § 5525(4)); Crouse v. Cyclops Industries, 560 Pa. 394, 398 (Pa. 2000) (holding that four-year statute of limitations for contract actions applies to promissory estoppel claims).

Pursuant to Pennyvania's Borrowing statute, the shorter limitations period applies. See 42 Pa.C.S.A. § 5521(b). Here, because Pennyvania's statute of limitations (4 years) is shorter than New Jersey's statute of limitations (6 years), the four-year statute of limitations applies to Counts One through Five of Ashland's cross-claims.

## 2. Count Six (Fraud in the Inducement) of Ashland's Cross-Claim is Barred by Pennsylvania's Two-Year Statute of Limitations.

Pennsylvania's two-year statute of limitations applies to Count Six, Fraud in the Inducement, of Ashland's cross-claims.

In Pennsylvania, there is a limitation of two years for claims of fraudulent inducement. 42 Pa.C.S.A. § 5524(7); see also Schreiber v. Eli Lilly & Co., 2006 WL 782441, at *6 (E.D.Pa 2006); In re Global Indus. Technologies, Inc., 333 B.R. 251, 260 (Bkrtcy.W.D.Pa. 2005). In contrast, under New Jersey law, the applicable statute of limitations governing an action for fraudulent inducement is six years. N.J.S.A. 2A:14-1; see also Kronfeld v. First Jersey National Bank, 638 F.Supp. 1454, 1478 (D.N.J. 1986) ("The statute of limitations governing actions for negligent misrepresentation, fraud or deceit, or breach of fiduciary duty under New Jersey law is N.J.S.A. 2A:14-1.")

Pursuant to Pennsylvania's Borrowing statute, the shorter limitations period applies. See 42 Pa.C.S.A. § 5521. Here, because Pennyvania's statute of limitations (2 years) is shorter than

12

New Jersey's statute of limitations (6 years), the two-year statute of limitations applies to Count Six of Ashland's Cross-claim.

> ### 3.    Count Seven (Failure to Exercise Care and Control over Contractor/Agent (Restatement (Second) of Torts § 317)) of Ashland's Cross-Claims is Barred by Pennsylvania's Two-Year Statute of Limitations.

Pennsylvania's two-year statute of limitations applies to Count Seven, Failure to Exercise Care and Control over Contractor/Agent, of Ashland's cross-claims.

Under both Pennsylvania and New Jersey law, a claim for failure to exercise care and control over contractor/agent, pursuant to the Restatement (Second) of Torts § 317, sounds in negligence. See, e.g., Farmers Export Co., Inc. v. Energy Terminals, Inc., 673 F.Supp. 715 (E.D.Pa. 1987); Blackburn v. Prudential Lines, Inc., 454 F.Supp. 1302 (D.C.Pa. 1978); Doe v. XYC Corp., 382 N.J.Super. 122 (App.Div. 2005); Mavrikidis v. Petullo, 153 N.J. 117 (N.J. 1998).

Pennsylvania applies a two-year statute of limitations to any "action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct...." 42 Pa.C.S.A. § 5524 (7). In contrast, New Jersey applies a six-year limitations period to an "action at law for trespass to real property, for any tortious injury to real or personal property,...for any tortious injury to the rights of another not stated in sections 2A:14-2 [applying to actions for personal injury] and 2A:14-3 [applying to actions for libel and slander] of this Title..." N.J.S.A. 2A:14-1.

Pursuant to Pennylvania's Borrowing statute, the shorter limitations period applies. See 42 Pa.C.S.A. § 5521. Here, because Pennylvania's statute of limitations (2 years) is shorter than New Jersey's statute of limitations (6 years), the two-year statute of limitations applies to Count Seven of Ashland's cross-claims.

13

4.    **Counts Eight (Negligent Hiring/Breach of Fiduciary Duty),
      Nine (Negligent Supervision/ Breach of Fiduciary Duty) and
      Ten (Negligent Retention/Breach of Fiduciary Duty) of
      Ashland's Cross-Claims Are Barred By Pennsylvania's
      Two-Year Statute of Limitations.**

Pennsylvania's two-year statute of limitations applies to Count Eight, Negligent
Hiring/Breach of Fiduciary Duty; Count Nine, Negligent Supervision/Breach of Fiduciary Duty;
and Count Ten, Negligent Retention/Breach of Fiduciary Duty, of Ashland's cross-claims.

Under Pennsylvania law, the statute of limitations for a breach of fiduciary duty claim is
two years. See Weis-Buy Servs., Inc. v. Paglia, 411 F.3d 415, 422 (3d Cir. 2005) (referring to 42
Pa.C.S.A. section 5524(7)) ("Generally, the statute of limitations begins to run on a breach of
fiduciary duty claim when the trustee openly and unequivocally violates his duties.") Claims for
negligent supervision, hiring and retention brought in Pennsylvania are also governed by this two
year limitation period. See Ormsby v. Luzerne County Dept. of Public Welfare Office, 149
Fed.Appx. 60, 62 (Pa. 2005) (applying 42 Pa.C.S.A. § 5524 to a claim for negligent supervision);
Wakefield v. Joy Mining Machinery Co., 2006 WL 840345, at *2 (W.D.Pa. 2006) (applying
two-year statute of limitations to bar state law claim of negligent retention).

Under New Jersey law, the applicable statute of limitations for a breach of fiduciary duty
claim is six years. See N.J.S.A. 2A:14-1; see also Kronfeld v. First Jersey National Bank, 638
F.Supp. 1454, 1478 (D.N.J. 1986) ("The statute of limitations governing actions for negligent
misrepresentation, fraud or deceit, or breach of fiduciary duty under New Jersey law is N.J.S.A.
2A:14-1."); see also Estate of Parr v. Buontempo Ins. Services, 2006 WL 2620504, at *1
(N.J.App.Div. 2006). Likewise, the six-year limitation period found in N.J.S.A. 2A:14-1 applies
to claims for negligent hiring, supervision and retention. See, e.g., RTC Mortg. Trust 1994N-1
v. Fidelity Nat. Title Ins. Co., 58 F.Supp.2d 503, 542 (D.N.J. 1999).

14

Pursuant to Pennylvania's Borrowing statute, the shorter limitations period applies. <u>See</u> 42 Pa.C.S.A. § 5521. Here, since Pennylvania's statute of limitations (2 years) is shorter than New Jersey's statute of limitations (6 years), the two-year statute of limitations applies to Counts Eight through Ten of Ashland's cross-claims.

### C.    Counts One Through Ten of Ashland's Cross-Claims Are Time Barred

Counts One through Ten of Ashland's cross-claims asserting breach of written contract, breach of oral contract, breach of implied contract, promissory estoppel, unjust enrichment, fraud in the inducement, failure to exercise care and control over contractor/agent, negligent hiring/breach of fiduciary duty, negligent supervision/breach of fiduciary duty and negligent retention/breach of fiduciary duty are all time barred. The cross-claims One through Five are subject to the longest statute of limitations and that is four years. The remaining Counts are subject to the shorter two-year statute of limitations.

Ashland filed its cross-claims against AETC on January 31, 2008. <u>See</u> Sands Decl., ¶ 2, Ex. B. Accordingly, for Ashland's claims to be timely with respect to the four-year statute of limitations, none of the claims could have accrued before January 31, 2004. For the claims subject to a two-year statute of limitations, none of the claims could have accrued prior to January 31, 2006. The record clearly establishes that Ashland knew or had reason to know of the facts underlying the allegations asserted in Counts One through Ten of its cross-claims by June 2002, and most likely as early as December 1999. Accordingly, Ashland's cross-claims set forth in Counts One through Ten are time barred.

15

## POINT III

### ASHLAND'S CROSS-CLAIMS SHOULD BE DISMISSED IN THEIR ENTIRETY BECAUSE THEY ARE BARRED BY THE DOCTRINE OF LACHES

Even if this Court were to conclude that Counts One through Ten of Ashland's cross-claims are not barred by the pertinent statutes of limitations, AETC should be granted summary judgment and Ashland's cross-claims should be dismissed on the ground of laches because, as explained below, Ashland unreasonably delayed in asserting its cross-claims and such delay substantially prejudiced AETC. See Manobianco v. City of Hoboken, 96 N.J. Super. 273, 285 (Law Div. 1967) (granting the defendant's motion for summary judgment on the ground of laches, and stating "plaintiff's failure to act promptly justifies the conclusion that he acquiesced in the challenged action."); Cooper River Plaza East, LLC v. Briad Group, 359 N.J. Super. 518, 532-533 (App.Div. 2003) (holding that the doctrine of laches barred the suit).[4]

The defense of laches arises "when there is a delay, unexplained and inexcusable, in the enforcing of a known right, and prejudice has resulted to the other party because of that delay." Gladden v. Public Empl. Retirement Sys. Trustee Bd., 171 N.J. Super. 363, 370-71 (App. Div. 1979). Laches is an equitable defense which grants the court flexibility, the application of which is committed to the sound discretion of the district court. Mancini v. Township of Teaneck, 179 N.J. 425, 436 (2004); Kepner-Tregoe v. Executive Development Inc., 79 F. Supp. 2d 474, 486 (D.N.J. 1999) (citing Waddell v. Small Tube Prods., Inc., 799 F.2d 69, 79 (3d Cir. 1986); see

---

[4]     Under the law of both New Jersey and Pennsylvania, the doctrine of laches "bars relief when the plaintiff's dereliction indicates a lack of due diligence in failing to institute an action and such failure results in prejudice to another." Commonwealth ex. rel. Baldwin v. Richard, 751 A.2d 647, 651 (Pa. 2000); see also Knorr v. Smeal, 836 A.2d 794, 800-01 (N.J. 2003). Accordingly, no choice-of-law issue arises with respect to this defense because both states have adopted the orthodox definition of laches articulated here. See U.S. v. Shaw, 2004 WL 1858349, at *2 (E.D.Pa. 2004).

16

also A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1032 (Fed. Cir. 1992) ("The defense, being personal to the particular party and equitable in nature, must have flexibility in its application. A court must look at all of the particular facts and circumstances of each case and weigh the equities of the parties."). In asserting the equitable defense of laches, the party urging its application must show that his adversary, without explanation or excuse: (1) unreasonably delayed in asserting a claim, and (2) that such delay prejudiced the party asserting the delay. L.V. v. R.S., 347 N.J. Super. 33, 39 (App. Div. 2002); Allstate Ins. Co. v. Howard Savings Institution, 127 N.J. Super. 479, 489 (Ch. Div. 1974); Enfield v. FWL, Inc., 256 N.J. Super. 502, 520 (Ch. Div. 1991); Kepner-Tregoe at 486 – 487. Here, both elements are present.

### A.    Ashland's Delay in Filing its Cross-Claims Was Unreasonable.

The first element, lack of diligence or inexcusable delay, exists where the plaintiff delayed inexcusably or unreasonably in filing suit. See White v. Daniel, 909 F.2d 99, 102 (4th Cir. 1990). A critical determination is whether the plaintiff had knowledge of the claim at an earlier date but failed to assert it. "The test . . . is not always the actual knowledge of the party but may be what the party might have known by use of the means of information within his reach with the vigilance which the law requires of him." Enfield v. FWL, Inc., 256 N.J. Super. 502, 521 (Ch. Div. 1991). In applying these principles to the case at hand it is clear that the doctrine of laches applies.

Applying these principles, Ashland's delay in filing its cross-claims in this action was certainly unreasonable. The initial Complaint against Ashland in this action was filed on June 18, 2002, but Ashland did not file its claims against AETC at that time. See Sands Decl., ¶ 3, Ex. A. Nor did Ashland file its claims during the numerous amendments to the Complaint in this matter. Moreover, this Court directed Ashland to assert its common law claims in June 2004.

17

Again, Ashland did not file its claims against AETC. <u>See</u> Sands Decl., ¶ 5, Ex. C. Ashland simply failed to pursue its rights. Ashland cannot now be permitted to assert ten new claims against AETC at this late date in the litigation especially when Ashland can provide no reasonable justification for why it did not assert these claims in a timely manner.

**B.    AETC Has Been Significantly Prejudiced By Ashland's Delay.**

Ashland's lengthy delay in asserting its Cross-claims has greatly prejudiced AETC. Indeed, courts have held that, in certain situations, the delay itself is prejudicial. <u>See</u> <u>State by Comm'r of Transp. v. Weiswasser</u>, 287 N.J. Super. 287 (App. Div. 1995) (holding that the "length of the delay alone may result in laches...."); <u>see also</u> <u>Good v. Lackawanna Leather Co.</u>, 96 N.J. Super. 439 (Ch. Div. 1967) (holding that plaintiffs-minority shareholders' claim seeking an appraisal of the value of their shares was barred by laches because plaintiffs unreasonably delayed in bringing their claim for approximately five years and defendants had been prejudiced by the delay); <u>Schultze v. Wilson</u>, 54 N.J. Super. 309 (App. Div. 1959) (holding that plaintiff's claim seeking to invalidate a building permit issued to the defendant was barred by laches where plaintiff knew about the building permit two years prior to instituting suit, and defendant would have been prejudiced by the plaintiff's delay in instituting suit); <u>Jones v. Zoning Board of Adjustment</u>, 28 N.J. Super. 483 (Law Div. 1953) (holding that plaintiff's claim to have a zoning ordinance declared invalid was barred by laches where plaintiff failed to give any reasonable excuse for the two year delay in instituting suit and defendants would have been prejudiced by the delay.)

Here, Ashland waited to file its Cross-claims until all discovery in this case has been completed, a dispositive motion schedule set and trial imminent. Additionally, Ashland's delay has resulted in considerable time passing since the events giving rise to the Cross-claims, making

the memory of individuals regarding these events questionable. See Slepski v. Dravo Corp., 104 F.Supp. 89, 91 (D.C.Pa. 1951) (suit for libel barred by laches where 3 year delay in filing action prejudiced defendant because memories of the witnesses and events have faded).

Now, Ashland wants AETC to defend against ten new claims based on breach of contract, negligence and fraud – claims completely unlike the claims already being litigated in this case. Ashland's new and substantially broad claims have not been addressed in either the fact or expert discovery taken in this case. Moreover, AETC did not focus any discovery on Ashland's proposed common law claims because they were not at issue in the case. Yet, the very nature of Ashland's Cross-claims requires extensive discovery.

Accordingly, if Ashland is permitted to pursue these ten new claims, AETC, in order to adequately defend itself, will be required to 1) prepare and serve Interrogatories; 2) review Interrogatory responses and depose individuals with relevant knowledge; 3) retain experts, prepare and serve expert reports; and 4) engage in expert depositions. AETC estimates that this discovery would take at least six months. Anything less would leave AETC unprepared at trial to defend itself against Ashland's new common law claims.

**POINT IV**

**ASHLAND'S COMMON LAW CLAIMS ARE NOT PREEMPTED BY CERCLA**

To the extent Ashland attempts to argue that it did not raise the claims it is now asserting against AETC earlier because such claims are considered contribution or indemnity claims, and, therefore, were preempted by the CERCLA contribution claims, Ashland is simply wrong. The claims Ashland is asserting are common law claims for breach of contract, negligence, unjust enrichment and fraud. These claims are not seeking contribution or indemnity from AETC; these claims are seeking separate damages. For instance, in Ashland's Count One, breach of a

19

written contract, it states that Ashland suffered "economic losses and/or other damages." See Sands Decl., ¶ 4, Ex. B. In Ashland's Count Four, unjust enrichment, Ashland states that it would be unjust and unreasonable for AETC to retain the benefit of money paid by Ashland. See Id. Under Ashland's Count Six, fraud in the inducement, Ashland can seek punitive damages. Accordingly, the claims Ashland now asserts and the damages sought are independent of the damages stemming from the CERCLA claims. As such, Ashland's common law claims are not, and never were, preempted by CERCLA. Therefore, Ashland should have asserted these claims when the initial Complaint was filed.

## POINT V

### SUMMARY JUDGMENT SHOULD BE GRANTED TO AETC ON COUNTS ONE AND SIX OF ASHLAND'S CROSS-CLAIMS BECAUSE THEY ARE UNSUPPORTED BY THE UNCONTESTED FACTS

#### A.    Choice of Law Analysis

In a federal question case, a District Court entertaining pendent state claims should follow the choice of law rules of the forum state. See Shields v. Consolidated Rail Corp., 810 F.2d 397, 399 (3d Cir. 1987); see also Schreiber v. Eli Lilly and Co., 2006 WL 782441, at *6 n.12 (E.D.Pa. 2006). Although the initial Complaint in this matter was brought by plaintiffs, in part, pursuant to Section 101(14) of the Comprehensive Environmental Response, Compensation and Liability Act, as amended, 42 U.S.C. § 9601(14), Ashland's cross-claims against AETC are state law claims. Accordingly, because Pennsylvania is the forum state, Pennsylvania's choice of law principles apply to determine whether Pennsylvania or New Jersey law governs Ashland's state law cross-claims for breach of written contract and fraudulent inducement. See O'Brien v. Pennington School, 2008 WL 160588, at *5 (E.D.Pa. Jan. 15, 2008).

20

The first step in a choice of law analysis under Pennsylvania law is to determine whether a conflict exists between the laws of the competing states. Wilson v. Transp. Ins. Co., 889 A.2d 563, 570 (Pa.Super. 2005). Where the laws of potentially interested jurisdictions are in agreement, the choice of law question need not be decided and the Court may refer to either the forum law or the laws of the interested jurisdictions. See, e.g., Papacoda v. A.I. Dupont Hosp. for Children of the Nemours, 2006 WL 1789077, at *2 (E.D.Pa. 2006) (citing Lucker Mfg. v. Home Ins. Co., 23 F.3d 808 (3d Cir. 1994)). If the states' laws differ, Pennsylvania courts conduct an "analysis of the policies and interests underlying the particular issue before the court." Griffith v. United Air Lines, Inc., 416 Pa. 1, 21 (1964); see also LeJeune v. Bliss-Salem, Inc., 85 F.3d 1069, 1071 (3d Cir. 1996) (If there is a true conflict, the court determines which state has the greater interest in the application of its law.) The relevant inquiry for the Pennsylvania choice of law analysis is not the number of contacts each litigant has with a state but the extent to which one state has a priority interest in the application of its law. Troxel v. A.I. duPont Institute, 431 Pa. Super. 464, 468 (Pa. Super. 1994). As such, "[t]he weight of a particular state's contacts must be measured on a qualitative rather than quantitative scale." Id.

### 1. There is no Conflict of Law with Respect to Ashland's Breach of Contract Claims.

Since New Jersey and Pennsylvania law regarding contract principles and interpretation is similar, the District Court may apply either states' laws in determining the merits of Ashland's cross-claim for breach of written contract. Papacoda, 2006 WL 1789077, at *2.

### 2. New Jersey Law Applies to Ashland's Fraud in the Inducement Claim.

With respect to Ashland's cross-claim asserting fraudulent inducement, however, a conflict exists between Pennsylvania and New Jersey law as they pertain to the element of

scienter necessary for fraudulent inducement. Under New Jersey law, plaintiff has to prove that the misrepresentation was made with knowledge. See, e.g., Nolan v. Lee Ho, 120 N.J. 465, 472 (1990) (The elements of fraud in the inducement are: (i) a misrepresentation of material fact; (i) knowledge or belief by the defendant of its falsity; (iii) intent that the other party rely on the misrepresentation, (iv) reasonable reliance thereon by the other party.)   However, under Pennsylvania law, it is enough for plaintiff to show that the misrepresentation was made with recklessness as to whether it is true or false. See, e.g., Eigen v. Textron Lycoming Reciprocating Engine Div., 874 A.2d 1179, 1185 (Pa.Super. 2005).  (The elements of fraud in the inducement are as follows: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.")

As a result of this conflict, a choice of law analysis must be conducted.  An examination of the state contacts shows that the business transaction placed at issue by Ashland took place between individuals at an Ashland facility located in Great Meadows, New Jersey and individuals from AETC, a New Jersey Corporation with a principal place of business in New Jersey.  Moreover, the negotiations between the entities took place in New Jersey.  The alleged misrepresentations made by AETC took place in New Jersey.  The waste at the center of the business transaction was allegedly taken to a site in Pennsylvania.  Therefore, the transaction from which the alleged fraud arose has more contacts in New Jersey than Pennsylvania.  The question remains as to whether those contacts are qualitative enough to call for the application of New Jersey law.

22

Although the waste at issue in the transaction allegedly ended up in Pennsylvania, which provides Pennsylvania with an interest, an entity suffering fraud through a transaction arising in New Jersey and involving a New Jersey company, makes New Jersey's interests paramount. New Jersey has a predominant interest in ensuring that entities conducting business in the State of New Jersey are not subject to fraud. Accordingly, New Jersey law applies to the analysis of whether Ashland has evidence to support a claim of fraud.

**B.    Ashland's Cross-Claims Asserting Breach of Written Contract Must Be Dismissed Because No Written Contract Between the Parties Exists.**

Ashland asserts in Count One of its cross-claims that there was a breach of a written agreement between Ashland and AETC. See Sands Decl., ¶ 4, Ex. B. Ashland also asserts in Count Two that this agreement set forth the terms and conditions agreed upon by Ashland and AETC.[5] See id. A close examination of the facts and the agreement, however, establishes that the agreement Ashland attempts to use to support its claims against AETC has no relevance to the disposal of Ashland's waste, which is at issue in this case, but rather, addresses a proposed distillation plant that was never built. See Sands Decl., ¶ 7, Ex. E.

Both New Jersey and Pennsylvania courts look to the parties' actions to establish whether the terms of an unsigned written contract are enforceable. See, e.g., Valhal Corp. v. Sullivan Associates, Inc., 44 F.3d 195, 201 (3d Cir. 1995) (holding that when both parties demonstrate their assent to the terms of a contract, the fact that they did not sign the contract is not dispositive) (applying Pennsylvania law); NLRB v. Local 825 Intern. Union of Operating Engineers, AFL-CIO, 315 F.2d 695, 699 (3d Cir. 1963) (where only one party signed a written

---

[5] Paragraph 137 of Ashland's cross-claims states "Ashland and AETC each manifested its respective intent to be bound by the terms and conditions of their oral agreement, the terms of which included and are as set forth in the document attached hereto as Exhibit "A", including, but not limited to, the indemnification and hold harmless provision thereof." See Sands Decl., ¶ 4, Ex. B.

contract, the court looks to whether the non-signing party's actions establish that he accepted the unsigned contract and whether both parties act in reliance on it as a valid contract) (applying New Jersey law); CSX Transp. Co. v. Novolog Bucks County, No. 04-4018, 2006 WL 1451280, slip op at *17 (E.D.Pa. May 24, 2006) (holding that when there is no evidence demonstrating that a party accepted an agreement or acted pursuant to the terms of the agreement, "[t]here is insufficient evidence to establish as a matter of law that the parties entered into a valid contract.")

The New Jersey Supreme Court has stated that "[a]lthough not strictly required, a party's signature to an agreement is the customary and perhaps surest indication of assent." Leodori v. Cigna Corp., 175 N.J. 293, 307 (2003) (applying New Jersey contract principles to find that where no signature was obtained, evidence did not unmistakably reflect employee's affirmative assent to arbitration provision of employee handbook), cert. denied, 540 U.S. 938 (2003). Although courts will enforce an unsigned agreement if the parties act pursuant to its terms thereby evidencing their acceptance, it is essential that "both parties assent to the same thing in the same sense and that their minds meet on the essential terms and conditions." Caisson Corp. v. Ingersoll-Rand Co., 622 F.2d 672, 678 (3d Cir. 1980).

A review of the agreement Ashland attaches to support its Cross-claims establishes that it did not concern the hauling and disposal of Ashland's waste. See Sands Decl., ¶ 7, Ex. E. Rather, it was regarding the development of a distillation plant to recycle Ashland's acid wastes – a distillation plant that never came into existence. See id.

In September 1976, AETC began to discuss with Ashland the possibility of building a distillation plant to handle Ashland's acid waste. See Sands Decl., ¶ 8, Ex. F. In fact, in a letter dated September 28, 1976, AETC writes "[w]e, therefore, propose to offer to Ashland Chemical

24

economic advantages by installing . . . acid distillation equipment for denitrification." See id. The letter also states that "until such time as an agreement is finalized between A.E.T.C. and Ashland we will continue to provide our present services at the established price of 8.4473/gallon." See id.

The letter continues "[w]e will install distillation equipment upon receipt of a mutually satisfactory contractual commitment from Ashland for handling all acid produced over a twelve (12) month period." See id. The agreement that Ashland is trying to use to support its breach of contract claims discusses the commitment regarding the installation of a distillation plant as set forth in the September 1976 letter:

> Ashland acknowledges and recognizes that AETC will incur and sustain substantial capital equipment costs so that AETC can more properly perform its duties with respect to the distilling of the blend of sulfuric and nitric acids under this agreement. In further consideration of this Agreement and of AETC's promise to make the said investment Ashland shall for a minimum period of six months from the date hereof, utilize the services of AETC exclusively for the disposal of any of its wastes containing sulfuric or nitric acid. . . .

See Sands Decl., ¶ 8, Ex. F.

The language of the agreement clearly indicates it is meant to cover a distillation plant and not simply the disposal of wastes. See id. John Leuzarder, Vice-President of AETC, testified that the agreement was related to the distillation of nitric acid. See Sands Decl., ¶ 9, Ex. G at 182:08-183:03.

Ashland is attempting to use this unsigned agreement, pertaining to a distillation project that never came to fruition, as a basis for its breach of contract claims. The parties never assented to the terms of this agreement, because it related to something that never happened. Moreover, the parties never acted pursuant to the agreement's terms, because, again, the distillation project never came about. Therefore, Count One of Ashland's Cross-claims is based

on an unsigned agreement that does not pertain to the issues in this case and is unenforceable. As such, Count One should be dismissed. In addition, to the extent Count Two of Ashland's Cross-claims rely upon this same unsigned agreement, that claim must also fail.

### C.    Ashland's Cross-Claim Asserting Fraud in the Inducement Must be Dismissed Because Uncontested Facts Establish There was No Fraud.

Ashland, in its Cross-claims against AETC, alleges that AETC fraudulently induced Ashland to 1) enter into a waste disposal agreement with AETC; and 2) allow AETC to hire DeRewal Chemical Company ("DeRewal") to perform such waste disposal services. See Sands Decl., ¶ 4, Ex. B. There is no evidence that AETC made any misrepresentations regarding its relationship with DeRewal. In fact, the evidence demonstrates that Ashland was significantly involved in the decision to hire DeRewal for the disposal of its waste. See Sands Decl., ¶ 10, Ex. H and ¶ 11, Ex. I. Accordingly, the undisputed facts do not support a claim for fraudulent inducement under New Jersey law.[6]

New Jersey divides fraud into two types: legal and equitable. The two types of fraud are distinguished by (1) the requirement of scienter, and (2) the damages available for each type. As stated above, scienter is essential to proving a claim for legal fraud. Equitable fraud, however, does not require scienter. Foont-Freedenfeld Corp. v. Electro-Protective Corp., 126 N.J.Super. 254, 257 (App. Div. 1973). But equitable fraud is more limited in the relief available as the remedy for a claim of equitable fraud is merely rescission of the subject contract. Money damages are unavailable under such a cause of action. Id. In this case, Ashland is seeking money damages from AETC. Accordingly, Ashland is asserting a legal fraud claim against

---

[6] Elements common to fraud claims under both New Jersey and Pennsylvania law include (i) material misrepresentation and (ii) reasonable reliance thereon. See Nolan, 120 N.J. at 472; Eigen, 874 A.2d at 1185. Because Ashland cannot show that any material misrepresentation was made upon which it reasonably relied, its claim for fraudulent inducement also fails under Pennsylvania law.

26

AETC, and, thus, must prove by clear and convincing evidence the five elements listed below, including scienter.

Legal fraud in New Jersey requires the presence of five factors:

> (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon; and (5) resulting damages.

See Jewish Center of Sussex County v. Whale, 86 N.J. 619, 624 (NJ 1981); Alexander v. Cigna Corp., 991 F. Supp. 427, 435 (D.N.J. 1998) (citing Gennari v. Weichert Co. Realtors, 177 N.J. Super. 504, 535 (App. Div. 1996); see also Mardini v. Viking Freight, Inc., 92 F.Supp.2d 378, 385 (D.N.J.1999); Barsotti v. Merced, 346 N.J. Super. 504 (App. Div. 2002)).

Each element of a fraud claim must be proven by clear and convincing evidence. In re Resorts Intern., Inc., 181 F.3d 505, 509 (3d Cir. 1999) (applying New Jersey law); Weil v. Express Container Corp., 360 N.J. Super. 599, 612 (App. Div. 2003). Additionally, the New Jersey Supreme Court has stated that a plaintiff must prove that the defendant sought to obtain an undue advantage over the plaintiff. Jewish Center of Sussex County, 86 N.J. at 624 (Every fraud in its most fundamental conception consists of "the obtaining of an undue advantage by means of some act or omission that is unconscientious or a violation of good faith."); see also United Jersey Bank v. Kensey, 306 N.J.Super. 540, 550-551 (App. Div. 1997). Further, a party claiming that material facts were omitted must show that those facts, if known, would have prevented the entity from entering into the agreement at issue. Ramapo Bank v. Bechtel, 224 N.J. Super. 191, 198 (App. Div. 1988).

Ashland, to support its claim of fraud, alleges that AETC made material misrepresentations as to AETC's relationship with DeRewal upon which Ashland relied when entering into an agreement with AETC. See Sands Decl., ¶ 4, Ex. B. Ashland also asserts that if

AETC did have a close relationship with DeRewal, AETC would have known about DeRewal's history of improper waste disposal activities. See id. Ashland's claim of fraud is devoid of any factual support. Indeed, Ashland cites only to one paragraph of deposition testimony to support its fraud allegation. See id. This testimony does not support Ashland's claim.

The facts establish that Ashland was well aware of the nature of AETC's relationship with DeRewal. Arthur Curly, Ashland's plant manager, testified that AETC did not have a prior relationship with DeRewal before it started handling Ashland's waste stream. See Sands Decl., ¶ 12, Ex. J at 112:23-113:03. In fact, in September 1976, Mr. Curley insisted that he visit with DeRewal at the Boarhead Farms Site. See Sands Decl., ¶ 10, Ex. H. and ¶ 12, Ex. J at 174:17-174:21. Mr. Curley wanted to meet the man [DeRewal], find out about him and see what he could do with the [Ashland's] acid stream." See Sands Decl., ¶ 12, Ex. J at 131:09-12. From that meeting, Mr. Curley concluded that "DeRewal is a very innovative person, who can and will come up with solutions to problems. I do not feel he is the type to dump wastes in the first hole he can find." See Sands Decl., ¶ 10, Ex. H. DeRewal also informed Mr. Curley at that meeting that he had been fined on several occasions for pollution and even made major headlines a few years back for pollution. See id. Regardless of these statements, Ashland made an independent decision to continue to use DeRewal and did not rely upon representations of AETC to make such a decision.

Moreover, in October 1976, Mr. Curley visited the DeRewal acid neutralizing plant located in Wissinoming, Pennsylvania. See Sands Decl., ¶ 11, Ex. I and ¶ 12, Ex. J at 174:17-177:12. Mr. Curley, a chemical engineer, inspected the plant where DeRewal allegedly took Ashland's spent acid. See id. Mr. Curley stated that although the DeRewal Wissinoming facility was not impressive, he believed it was adequate. See Sands Decl., ¶ 11, Ex. I . Also, Mr.

1115570.6

Curley, in a memorandum regarding his visit to the Wissinoming facility, discusses obtaining information regarding the Pennsylvania Department of Environmental Resources. See id. Mr. Curley testified that he included this suggestion in his memorandum to J. Minott, an Ashland environmental engineer, in order for Mr. Minott to track down such information. See Sands Decl., ¶ 12, Ex. J at 176:04-176:22. Again, Ashland was actively involved in determining whether to use DeRewal and cannot now argue otherwise.

Ashland has twisted the facts to assert fraud, a very serious allegation, against AETC. Ashland undoubtedly knew that AETC did not have a close relationship with DeRewal, and Ashland insisted on being intimately involved in determining whether to utilize DeRewal for its waste disposal activities. Further, Ashland's plant manager, a chemical engineer, even visited the Boarhead Farms Site and the Wissinoming facility to ensure that its wastes were being properly handled. Ashland conveniently ignores these facts in asserting its unsupported fraud claim. Finally, there is no evidence establishing that AETC sought to obtain an undue advantage over Ashland. Indeed, Ashland is well aware of the fact that there was no fraud perpetrated by AETC against it. Accordingly, Ashland's fraud claim must be dismissed.

## POINT VI

### IN THE ALTERNATIVE, COUNT SIX OF ASHLAND'S CROSS-CLAIMS ASSERTING FRAUD IN THE INDUCEMENT SHOULD BE DISMISSED, PURSUANT TO FED. R. CIV. P. 9(b), FOR FAILURE TO PLEAD FRAUD WITH PARTICULARITY

The rules governing pleading in the federal courts explicitly require that "[i]n all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). [7] The requirements of Rule 9(b) may be satisfied if the

---

[7]     Fed.R.Civ.P. 9(b) provides that

complaint describes the circumstances of the alleged fraud with precise allegations of date, time or place. See Craftmatic Sec. Litig. V. Kraftsow, 890 F.2d 628, 645 (3d Cir. 1989) (citing Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984)). Alternatively, plaintiffs may use some other means of "injecting precision and some measure of substantiation into their allegations of fraud." Seville, 742 F.2d at 791 (holding that the plaintiff satisfied Rule 9(b) "by incorporating into the complaint a list identifying with great specificity the pieces of machinery that were the subject of the alleged fraud").

The requirement that fraud be plead with particularity is no mere technicality or procedural formality which may be lightly ignored. Rather, it is intended to provide defendants with important substantive safeguards against non-specific or baseless claims. As the Third Circuit Court of Appeals recently stated, "[t]he purpose of Rule 9(b) is to provide notice of the 'precise misconduct' with which the defendants are charged and to prevent false or unsubstantiated charges." Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 658 (3d Cir. 1998) (citing and quoting Seville Industrial Machinery Corp. v. Southmost Machinery Corp., 742 F.2d 786, 791 (3d Cir. 1984), cert. denied 469 U.S. 1211 (1985)). The Rule "ensures that the allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985).

---

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Fed.R.Civ.P. 9 (2007).

Ashland, in its fraud claim, generally avers that "AETC made material misrepresentations and omissions of fact to Ashland." <u>See</u> Sands Decl., ¶ 4, Ex. B. Yet, Ashland does not specifically identify these material misrepresentations, to whom they were made and when they took place as required when pleading a fraud count. <u>See</u> <u>id.</u> Ashland further generally avers that the alleged misrepresentations and non-disclosures were made with the intent of inducing Ashland to enter into an agreement with AETC. <u>See</u> <u>id.</u> But, again, Ashland does not specifically state which misrepresentations induced Ashland into entering into a contract with AETC or explain why such alleged misrepresentations caused Ashland to enter into a contract with AETC. <u>See</u> <u>id.</u> Simply stated, Ashland's fraud count is missing the required facts alleging who, what, when and where, and accordingly does not provide the information necessary to give AETC proper notice of the particular misconduct that is alleged so that AETC can defend against the charge. As such, Ashland's fraud claim must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant, Advanced Environmental Technology Corporation, respectfully requests that this Court grant Summary Judgment as to Ashland's cross-claims against it in this matter, or in the alternative, dismiss Count Six of Ashland's cross-claim against it for failure to plead with particularity.

WOLFF & SAMSON, PC

Attorneys for Defendant Advanced Environmental Technology Corporation

By _____

JOHN A. MCKINNEY, JR.
jmckinney@wolffsamson.com

Dated: February 21, 2008

32