WOLFF & SAMSON PC
THE OFFICES AT CRYSTAL LAKE
ONE BOLAND DRIVE
WEST ORANGE, NEW JERSEY 07052
973-325-1500
Attorneys for Defendant, Advanced Environmental Technology Corp. (TS-6491)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BOARHEAD FARM AGREEMENT GROUP,<br><br>Plaintiff,<br><br>v.<br><br>ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, et al.,<br><br>Defendants. | Civil Action No. 02-3830 (LDD)<br><br>**DEFENDANT AETC'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR AN ORDER GRANTING SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, DISMISSING COUNT SIX OF ASHLAND'S CROSS-CLAIM FOR FAILURE TO PLEAD WITH PARTICULARITY** |

In connection with the motion for summary judgment filed by Defendant Advanced Environmental Technology Corporation ("AETC"), AETC hereby sets forth the following material facts as to which there does not exist a genuine issue of fact:

1. The initial Complaint in this action was filed on June 18, 2002 by the Boarhead Farms Agreement Group ("BFAG"). See Declaration of Laurie J. Sands, Esq., dated February 21, 2008 ("Sands Decl."), ¶ 3, Ex. A.

1116776.1

2. On January 31, 2008, Defendant Ashland, Inc. ("Ashland") filed an answer to Plaintiff's Fifth Amended Complaint together with Cross-claims against Defendant Advanced Environmental Technology Corporation ("AETC"). See Sands Decl., ¶ 4, Ex. B.

3. On June 16, 2004, the Court entered Case Management Order No. 5 in this matter, which orders that Cross-claims or counterclaims based on separate claims peculiar to an individual party, such as claims for contractual indemnification (and other than claims against the insurance company), shall be individually pleaded. See Sands Decl., ¶ 5, Ex. C.

4. In 1999, certain parties were asked to participate in the clean up at the Boarhead Farms Site. See Sands Decl., ¶ 6, Ex. D.

5. AETC was one of those parties and, upon information and belief, Ashland was also notified at that time. See id.

**Alleged Written Contract between Ashland and AETC**

6. Ashland attaches to its answer and cross-claims a copy of an unsigned agreement, which Ashland alleges contains terms and conditions agreed upon by Ashland and AETC. See Sands Decl., ¶ 7, Ex. E.

7. Sometime in 1976, AETC began discussing with Ashland the possibility of handling Ashland's acid waste through a distillation process. See Sands Decl., ¶ 8, Ex. F.

8. AETC made a proposal to Ashland in September 1976 regarding this potential process; however, the proposal never came to fruition. See id.

9. As a result of the proposal, however, an agreement was drafted. The draft agreement is the document that Ashland now attaches to its cross-claims alleging that it provides an indemnification by AETC for Ashland with respect to the damages sought in this action. See Sands Decl., ¶ 7, Ex. E.

1116776.1

10. The agreement clearly indicates that it was in connection with the proposal to set up a distillation process for Ashland's acid waste. See id.

11. It was not in reference to the alleged disposal activities that are at issue in this case. See id.

12. John Leuzarder, Vice-President of AETC, testified that the agreement was with respect to the distillation of nitric acid. See Sands Decl., ¶ 9, Ex. G at 182:08-183:03.

13. The agreement Ashland references in its cross-claims was drafted for a specific proposal to install distillation equipment to recycle Ashland's acidic wastes. See id. and ¶ 8, Ex. F.

### Ashland's Involvement in Utilizing DeRewal for Disposal

14. Ashland was actively involved in the decision to use DeRewal Chemical Company to dispose of its waste. See Sands Decl., ¶ 10, Ex. H and ¶ 11, Ex. I.

15. Arthur Curley, Ashland's plant manager and a chemical engineer, insisted on meeting with Manfred DeRewal and visiting the DeRewal facility in Wissinoming where Ashland's acid wastes were to be disposed. See id. and ¶ 12, Ex. J at 174:17-174:21.

16. Arthur Curly, testified that AETC did not have a prior relationship with DeRewal before it started handling Ashland's waste stream. See Sands Decl., ¶ 12, Ex. J at 112:23-113:03.

17. Mr. Curley wanted to meet the man [DeRewal], find out about him and see what he could do with the [Ashland's] acid stream." See Sands Decl., ¶ 10, Ex. H.

18. From that meeting, Mr. Curley concluded that "DeRewal is a very innovative person, who can and will come up with solutions to problems. I do not feel he is the type to dump wastes in the first hold he can find." See id.

1116776.1

19. DeRewal also informed Mr. Curley at that meeting that he had been fined on several occasions for pollution and even made major headlines a few years back for pollution. See id.

20. In October 1976, Mr. Curley visited the DeRewal acid neutralizing plant located in Wissinoming, Pennsylvania. See Sands Decl., ¶ 11, Ex. I and ¶ 12, Ex. J at 174:17-177:12.

21. Mr. Curley, a chemical engineer, inspected the plant where DeRewal allegedly took Ashland's spent acid. See id.

22. Mr. Curley stated that although the DeRewal Wissinoming facility was not impressive, he believed it was adequate. See Sands Decl., ¶ 11, Ex. I .

23. Also, Mr. Curley, in a memorandum regarding his visit to the Wissinoming facility, discusses obtaining information regarding the Pennsylvania Department of Environmental Resources. See id.

24. Mr. Curley testified that he included this suggestion in his memorandum to J. Minott, an Ashland environmental engineer, in order for Mr. Minott to track down such information. See Sands Decl., ¶ 12, Ex. J at 176:04-176:22.

I declare under penalty of perjury that the foregoing is true and correct. Executed on February 21, 2008

                                            LAURIE J. SANDS, ESQ.
                                            lsands@wolffsamson.com

1116776.1