**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

AGERE SYSTEMS, INC., et al.,                    :
                                                :
                              Plaintiffs,       :
                                                :
              v.                                :        Civil Action No. 02-CV-3830
                                                :
ADVANCED ENVIRONMENTAL                          :
TECHNOLOGY CORPORATION, et al.,                 :
                                                :
                              Defendants.       :

**DEFENDANT ASHLAND INC.'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT ADVANCED ENVIRONMENTAL**
**TECHNOLOGY CORP.'S MOTION FOR SUMMARY JUDGMENT,**
**OR, IN THE ALTERNATIVE, TO DISMISS COUNT VI OF ASHLAND'S CROSS-**
**CLAIM FOR FAILURE TO PLEAD FRAUD WITH PARTICULARITY**

Defendant Ashland Inc. (hereinfter, "Ashland"), by and through its attorneys, submits this Memorandum of Law in Opposition to Defendant Advanced Environmental Technology Corp.'s ("AETC's") Motion for an Order Granting Summary Judgment, or, in the alternative, Dismissing Count VI of Ashland's Cross-claim for Failure to Plead Fraud with Particularity.

**I.    INTRODUCTION**

On January 21, 2008, Plaintiffs filed their Fifth Amended Complaint in this litigation in accordance with the Court's Order entered on January 14, 2008. (Doc. No. 279). Plaintiffs' latest complaint was prompted by the United States' Supreme Court's decision in United States v. Atlantic Research Corporation, 127 S.Ct. 2331 (2007), in which the Supreme Court offered a new interpretation of CERCLA § 107 which recognized a claim by potentially responsible parties ("PRPs") against other PRPs for response costs on the basis of joint and several liability under Section 107(a). Exercising the rights provided by Fed.R.Civ.P. 13 (g), and in recognition of the fact that Plaintiffs have now asserted new claims against the Defendants under Section

107(a) and that both the legal and factual bases for Ashland's cross-claims against AETC have been already partially adjudicated by this Court in granting Plaintiffs' cross-motion for summary judgment against AETC, Ashland filed its Answer with Affirmative Defenses, Counterclaims and Cross-claims to the Fifth Amended Complaint including a specific, factually-detailed, ten-count cross-claim against AETC.   AETC now files the instant motion claiming, *inter alia*, surprise, prejudice and the bars of the statute of limitations and laches despite its judicially determined status as an arranger for the disposal of waste under Section 107 and knowledge of Ashland's 2006 Motion for Leave to File an Amended Answer to the Plaintiffs' Fourth Amended Complaint seeking to assert these same cross-claims against AETC before Plaintiffs amended their complaint on January 21, 2008 asserting their new Section 107 claims.   AETC's motion for summary judgment against Ashland should be denied because it is wrong on the law, wrong on the facts and wrong on procedure.

## II.    SUPPLEMENTAL STATEMENT OF FACTS

### A.    Procedural History

#### 1.    Case Management Order No. 5

AETC's account of the complex procedural history in this case starts with the Court's Fifth Case Management Order dated June 16, 2004, quoted on page 3 of AETC's Memorandum of Law.   To be sure, that Order stated, in reference to Defendants' responses to the Third Amended Complaint, that any cross-claims for contribution pursuant to CERCLA or the Pennsylvania Hazardous Sites Clean Up Act ("HCSA") were deemed to be raised and denied without further pleading.   The Order also stated that cross-claims or counterclaims "peculiar to an individual party, such as claims for contractual indemnification . . . , shall be individually pleaded."   AETC contends that Ashland should have asserted the cross-claims presently at issue as part of its Answer to the Third Amended Complaint.

Since cross-claims arising out of the transaction or occurrence that is the subject matter of the original action are not mandatory under Rule 13(g) of the Federal Rules of Civil Procedure, see, e.g., Aetna Ins. Co. v. Pennsylvania Mfg's Assn. Ins. Co., 456 F. Supp. 6257, 635 (E.D. Pa. 1978), Ashland elected not to file cross-claims against AETC at that time.  In any event, the Fifth Case Management Order was superseded by the five case management orders that followed and the fact that the Plaintiffs filed Fourth and Fifth Amended Complaints since that Order was entered, spawning new obligations to plead on behalf of the Defendants.  AETC made the same decision to reserve cross-claims other than deemed cross-claims when it also refrained from asserting specific cross-claims against the Defendants until it answered the Plaintiffs' Fifth Amended Complaint on January 31, 2008.  Yet, AETC faults Ashland for making the same choices.

> **2.    Ashland's Motion for Leave to Amend Its Answer to the Fourth Amended Complaint to Plead Common Law Cross-Claims against AETC**

Ashland did, however, attempt to file the identical cross-claims here at issue against AETC after the Plaintiffs filed their Fourth Amended Complaint, a fact that AETC curiously failed to mention in either its motion or its brief.  Ashland sought to amend its answer to add cross-claims against AETC because AETC filed a Motion for Summary Judgment in its favor and against the Plaintiffs on the basis that AETC could not be considered an "arranger" under CERCLA or HCSA.  So long as CERCLA-based claims were pending against AETC any contractual or other common law contribution and/or indemnity claims against it were arguably pre-empted by CERCLA as a matter of law.  E.g., Matter of Reading Co., 115 F.3d 1111, 1113 (3d Cir. 1997).  Therefore, if AETC's motion for summary judgment against the Plaintiffs were to be granted, AETC would not be able to contend that any statutory, contractual and other

common law contribution or indemnity claims against AETC were pre-empted by CERCLA.[1] As a result, Ashland at that point elected to seek to assert its statutory, contractual and other common law contribution and indemnity claims against AETC by filing a motion for leave to file an Amended Answer to Plaintiffs' Fourth Amended Complaint.  (Doc. No. 211).  As Ashland explained on page 2 of its Memorandum of Law in support of its earlier motion to amend:

> "Thus, in light of the fact that Plaintiffs' legal right to pursue federal claims against AETC has now been challenged by AETC, Ashland simply seeks to enumerate the specific legal theories upon which Ashland may continue to pursue cross-claims against AETC in this action, even in the event that AETC is determined to not be subject to a liability as an "arranger" under CERCLA.  In order to insure the preservation of its right to pursue contribution and indemnity claims against AETC that are not dependent on the outcome of AETC's motion for summary judgment, Ashland seeks leave to supplement its existing cross-claims by specifically pleading additional legal theories upon which it may pursue cross-claims against AETC in this action and which discovery in this litigation has established to be unique to the relationship between Ashland and AETC."

(Doc. No. 211, p. 2).

Ashland attached to its earlier motion a proposed amended answer setting forth by way of cross-claim the identical causes of action asserted by it in its cross-claims included in Ashland's Answer to the Fifth Amended Complaint and in its Memorandum of Law. Ashland further specifically articulated the bases for its cross-claims against AETC.  (Doc. 211, p. 14 n.5).

AETC opposed Ashland's Motion for Leave to File an Amended Answer to the Plaintiffs' Fourth Amended Complaint (Doc. No. 214), asserting the same contentions AETC makes in the instant motion for summary judgment.  Plaintiffs answered AETC's earlier motion

---

[1] AETC did not seek dismissal of any pending cross-claims against it in its motion which was only directed to the Plaintiffs' claims.  Undoubtedly, this was due to the fact that controlling appellate decisions dictated that Ashland's and the other Defendants' cross-claims against AETC would be unaffected by the Court's ruling on AETC's summary judgment motion.  See Fairview Park Excavating Co., Inc. v. Almonzo Construction Co., 560 F.2d 1122, 1125-26 (3d Cir. 1977); Aetna Ins. Co. v. Newton, 398 F.2d 729, 734 (3d Cir. 1968).

for summary judgment and filed, in turn, a cross-motion for partial summary judgment against AETC.  (Doc. No. 204).

On November 17, 2006, this Court, in a seventeen page Memorandum and Order, denied AETC's earlier motion for summary judgment and granted Plaintiffs' motion for partial summary judgment.  The following quote summarizes the Court's analysis:

> "In sum, the Court finds that Plaintiffs have established as a matter of law that AETC had the knowledge or control required under Morton because AETC knew that a release of hazardous waste would occur and exercised control over the waste by selecting DeRewal to perform the disposal.  It is immaterial that DeRewal deposited the waste in a location other than where AETC anticipated."

(Doc. No. 216, p. 15).[2]

On November 22, 2006, the Court denied Ashland's motion for leave to file an amended answer to Plaintiffs' Fourth Amended Complaint as moot.  (Doc. No. 217).

### 3.   Motions for Additional Discovery

The procedural history of this case subsequent to the disposition of these motions is also relevant to the contentions made by AETC in its motion.  The Court's case management orders provided the opportunity for extensive fact discovery by both Plaintiffs and Defendants.  The initial deadline for the completion of discovery was extended to March 18, 2005.  (Doc. No. 133).  Pursuant to the Eighth Case Management Order (Doc. No. 194), Defendants served collective and individual contention interrogatories on Plaintiffs to which Plaintiffs responded on April 17, 2007.  Not satisfied with Plaintiffs' responses, Defendants moved to compel more specific responses (Doc. No. 238) and to seek additional discovery. (Doc. No. 239).[3]   On

---

[2] The Court applied the same analysis and findings to AETC's liability under HCSA. AETC sought interlocutory appellate review of the Court's Order (Doc. No. 219) which was denied by this Court.  (Doc. No. 224).

[3] AETC filed the Motion For Leave to Pursue Supplemental Discovery on behalf of all

October 30, 2007, the Court granted Defendants' Motion to Compel, in part, (Doc. No. 267) and denied Defendant's Motion for Additional Discovery. (Doc. No. 268). There was, of course, extensive discovery taken by and of Ashland and by and of AETC.[4] At no time did AETC seek additional discovery from Ashland after the expiration of the fact discovery period on March 18, 2005. (Sixth Case Management Order (Doc. No. 133)).

### 4. Plaintiffs, for the First Time, Sought to Hold Defendants Jointly and Severally Liable for Response Costs in the Fifth Amended Complaint

On July 26, 2007, Plaintiffs filed a motion for leave to file a Fifth Amended Complaint which was ultimately granted, in part, by the Court. (Doc. No. 244). For the first time in this litigation, Plaintiffs asserted against Defendants, including AETC and Ashland, in Count I of their Fifth Amended Complaint claims under CERCLA § 107, in addition to their previously pleaded contribution claims under CERCLA § 113. The Plaintiffs' prayer for relief in Count I reads, in part:

> "(a) adjudging, decreeing, and declaring that Defendants are jointly and severally liable pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), to Plaintiffs for such response costs incurred to date and awarding damages to Plaintiffs in that amount and for such response costs incurred by Plaintiffs, together with interest thereon. . . ."

(Doc. No. 244, p. 14) (emphasis added).

This prayer for relief under Count I should be contrasted with the Plaintiffs' prayers for relief for their CERCLA § 113(f) contribution claims set forth in Count II and their HCSA contribution claim set forth in Count V:

> "(a) adjudging, decreeing, and declaring that Defendants are liable pursuant to Section 113(f) of CERCLA, 42 U.S.C. § 9613(f), for contribution to them for such response costs incurred to date

---

Defendants.

[4] For a list of AETC and Ashland employees deposed, see page 16 of this Memorandum of Law.

> awarding damages to them in that amount together with interest
> thereon and for such response costs to be incurred; (b) allocating
> responsibility for such response costs incurred to date to be
> incurred as between them and defendants pursuant to Section
> 113(f) of CERCLA, <u>42 U.S.C. § 9613(f)</u>, using such equitable
> factors as the Court determines are appropriate . . . ."

(<u>Doc. No. 244</u>, p. 15-16).

This dramatic difference in the collective liability of the Defendants to Plaintiffs is yet another reason for Ashland's need to file separate cross-claims against AETC in this litigation, as explained on pages 14 to 15 of this Memorandum of Law.

### B.    Contract between Ashland and AETC

In the Statement of Facts section of its Brief, AETC misconstrues the nature of Ashland's contractual claims for indemnification against AETC.    AETC does not dispute the fact that a written agreement was prepared to memorialize the negotiations between Ashland and AETC over the disposal of Ashland's wastes.  The only evidence of this written contract is an unsigned version of an Agreement attached to Ashland's cross-claims as Exhibit "A" and to AETC's motion as Exhibit "E".  There are two distinct genuine issues of fact relative to this Agreement: (1) was the Agreement signed by AETC; and (2) did AETC otherwise manifest agreement to its terms.  Count I of Ashland's cross-claims asserts that Ashland and AETC agreed to the terms of this contract.  In Count II of its cross-claims against AETC, Ashland alleges, in the alternative, that if the agreement was not signed, it nevertheless contained of all the necessary conditions to the agreement, thereby affirming an oral contract between the parties.  The deposition testimony relevant to these issues is discussed on pages 14 to 15 of this Memorandum of Law.

Whether the contract was signed or not, AETC accepts the proposition that it could serve as a basis for a contractual indemnity claim by Ashland against AETC.  (See pages 23 to 24 of AETC's brief).    AETC, however, narrowly restricts the application of this Agreement to Ashland's nitric acid waste stream, one of several waste streams produced at Ashland's Great

Meadows Plant and hauled away by AETC.  AETC's narrow and mistaken reading of this contract is addressed in the Argument section of this brief. However, the following undisputed facts, omitted from AETC's motion and brief, are directly relevant to that interpretation and provide background for the written contract.

One of the principals of AETC, John Leuzarder, testified that in the summer of 1976, he approached Arthur Curley of Ashland to offer AETC's services to haul away and dispose of certain Ashland wastes.  (Exhibit "1", Leuzarder deposition, 11/29/04 at p. 78; Exhibit "2", Curley deposition, 12/9/04 at p. 24).  Leuzarder and Curley's discussions lead to the proposal dated August 3, 1976 from AETC to Curley proposing to dispose of six specified bulk waste streams and drum waste.  (Exhibit "3", Curley-1).  Further discussions between Leuzarder and Curley resulted in the negotiation of changes in the costs proposed by AETC on August 9, 1976 which is also the date that AETC first picked up spent acid waste from Ashland's Great Meadows plant. (Exh. "4", Exhibit "2" to Ashland's Motion for Summary Judgment; Exhibit "5"; Exhibit "1", p. 137-138).  Curley memorialized his dealings with Leuzarder and other waste disposal firms seeking Ashland's business in an August 23, 1976 memorandum. (Exhibit "6").  This memorandum indicated that as of August 23, 1976, Ashland had used AETC "all this week" for spent acid and would be switching other waste streams to AETC.  The written contract was prepared more than two months after AETC began removing Ashland's wastes, signed by Ashland and submitted to Leuzarder by Curley on October 18, 1976, as Mr. Curley indicated in his October 1976 memorandum attached as Exhibit "I" to AETC's motion.

### C.    Additional Facts Supporting Ashland's Cross-Claims against AETC

Plaintiffs' successful cross-motion for partial summary judgment against AETC contained a statement of facts fully supported by the record which articulated in great detail the respective relationships between Ashland and AETC and AETC and DeRewal Chemical Company ("DCC").  The statement of facts from that cross-motion (Doc. No. 204, pp. 3-10) and

the exhibits thereto are incorporated by reference.  (Copy attached as Exhibit "7").  They are not replicated here for the sake of brevity and in view of the fact that the Court has already reviewed these facts and determined that AETC was an arranger for the disposal of Ashland's wastes as a matter of law.

The other undisputed fact, ignored by AETC in its instant motion, is that under Section 7 of the contract between AETC and Ashland, AETC agreed "to indemnify and save harmless" Ashland from any liabilities, losses, damages, costs or expenses in two separate and distinct circumstances.  First, Section 7 required AETC to indemnify Ashland "as a result of the failure of [AETC] to comply with the provisions of this agreement."   Second, AETC agreed to indemnify Ashland for any harm "resulting from or arising out of any negligent acts or omissions of [AETC], its employees and subcontractors in the performance of the work herein specified." Thus, if Ashland's wastes are determined to have been disposed at the Boarhead Farms Site, AETC's failure to discharge all of its obligations pursuant to the contract with Ashland and AETC's negligent acts or omissions in connection with such disposal triggered its contractual duty to indemnify Ashland.  AETC's failure to comply and its negligent acts or omissions are what support the separate indemnification and contribution claims set forth in Ashland's cross-claims.

## III.    LEGAL ARGUMENT

### A.    Ashland's Cross-Claims for Contribution and Indemnity are Not Time-Barred Because Ashland's Causes of Action Have Yet to Accrue

Each of the ten counts of Ashland's cross-claims against AETC fall under the heading:

**"ASHLAND'S CROSS-CLAIMS AGAINST AETC FOR CONTRACTUAL AND/OR OTHER COMMON LAW CONTRIBUTION AND/OR INDEMNITY"**

(Doc. No. 286, p. 35; Exhibit "B" to AETC's Motion, p. 35).

Each prayer for relief under each of these ten counts contains the identical language that:

"(a)    If the allegations of Plaintiffs Fifth Amended Complaint are proven true and any liability to Plaintiffs be found, that such liability be adjudged solely that of Defendant AETC, not Ashland;

(b)    if any liability of Defendant Ashland Inc. to the Plaintiffs be found, that Defendant AETC be adjudged jointly and severally liable with Ashland and/or liable over to Ashland for contribution and/or indemnity for any such liability attributed to Ashland"

(Doc. No. 286, pp. 35-49; Exhibit "B" to AETC's Motion, pp. 35-49).

Despite Ashland's clear and unambiguous statement in its cross-claims that each of these ten counts are claims for indemnification and contribution, AETC inexplicably reasons that each of the ten counts are <u>original</u> claims by Ashland against AETC not dependent on the outcome of the Plaintiffs' claims. (AETC Brief, p. 19).  Relying on this mistaken construction, AETC spent pages 6 through 15 of its Brief arguing that each of Ashland's claims are barred by the statute of limitations.  The simple response to AETC's contention that Ashland's cross-claims are time-barred is that Ashland's claims for contribution and indemnity have not yet accrued because there has yet to be a finding that Ashland is liable to the Plaintiffs for response costs.  Obviously, AETC fails to comprehend this fundamental principle of contribution and indemnity law.

Under Pennsylvania law, as elsewhere, contribution is the right given to one joint tortfeasor to recover against another who has not yet paid its proportionate share of common liability to another party or parties such as the Plaintiffs here.  It does not "directly litigate liability for tort between the injured party and the tortfeasor." <u>United States v. Sunoco, Inc., 501 F. Supp. 2d 641, 651 (E.D. Pa. 2007)</u>.  " '[T]he right of contribution is a quasi-contractual right arising by reason of an implied engagement of each to help bear the common burden.' " <u>Id.,</u> quoting <u>Builders Supply Co. v. McCabe, 366 Pa. 322, 77 A.2d 368, 375 (1951)</u>.

As stated in <u>W.D. Rubright Co. v. International Harvester Co., 358 F.Supp. 1388 (W.D. Pa. 1973)</u>:

> In fact, the right to contribution accorded by the
> Pennsylvania statutes to one joint tortfeasor against the other
> creates a cause of action of a different nature from the tort action
> which was the subject of the original suit or claim.

Id. at 1391.  Ashland's claims for indemnity is related to its contribution claims in that such indemnity claims are independent causes of action based upon either the agreement of one party to hold another party harmless or where the injury arises if one party is primarily liable and another party is only secondary or vicariously liable.  Mattia v. Sears Roebuck & Co., 531 A.2d 789, 792 (Pa. Super. 1987).[5]

As independent actions, claims for contribution and indemnification do not accrue for statute of limitations purposes "until the party seeking contribution or indemnity has had a judgment rendered against it or upon payment of a claim."  Mack Trucks, Inc. v. Bendex-Westinghouse Automotive Airbrake Co., 372 F.2d 18 (3d Cir. 1966), cert denied, 387 U.S. 930 (1967) (applying Florida and Pennsylvania law); Site-Blauvelt Engineers, Inc. v. First Union Corp., 153 F.Supp. 2d 707, 710 (E.D. Pa. 2001), citing Sea-Land Serv., Inc. v. United States, 874 F.2d 169, 171-72 (3d Cir. 1989); Shouey v. Duck Head Apparel Co., Inc., 49 F.Supp. 2d 413, 422-23 (M.D. Pa. 1999); Rubin Quinn Moss Heaney & Patterson, P.C. v. Kennel, 832 F. Supp. 922, 934-35 (E.D. Pa. 1993).  See also Sun Company, Inc. (R&M) v. Browning-Ferris, Inc., 919 F. Supp. 1523, 1531-32 (N.D. Okl. 1996) (applying Oklahoma law), aff'd in part, rev'd in part, 124 F.3d 1187 (10th Cir. 1997), cert denied, 522 U.S. 1113 (1998); Thermo King Corp. v. Strick Corp., 467 F. Supp. 75, 77 (E.D. Pa. 1979).

Since Plaintiffs have yet to prove their case against Ashland, obviously no judgment has been rendered against Ashland nor has it been alleged by AETC that a settlement been paid by Ashland to the Plaintiffs.  Therefore, Ashland's claims for contribution and indemnity have not

---

[5] AETC's confusion on this point is mystifying in view of Ashland's carefully drafted cross-claims for contribution and indemnity under Pennsylvania statutory and common law. (Doc. No. 284, pp. 26-27).

yet accrued.   Consequently, AETC's analysis of and contentions in support of its statute of limitations defense to each of Ashland's ten counts for contribution and indemnity are completely irrelevant.

### B.    Ashland's Cross-Claims are Not Barred by the Doctrine of Laches

AETC makes a similar meritless argument with respect to the claim that Ashland's cross-claims are barred by the doctrine of laches.   As recognized in the New Jersey cases cited by AETC, laches is a defense similar to a statute of limitations defense, but applicable in equity actions.   Cooper River Plaza East, LLC v. Briad Group, 359 N.J. Super. 518, 532-533, 823 A.2d 690, 698 (App. Div.  2003) (reversion of neighbor's land for violation of deed restriction); Manobianco v. City of Hoboken, 96 N.J. Super. 273, 285, 232 A.2d 856, 862 (Law. Div. 1967) (writ of mandamus to compel payment of back salary).   As the New Jersey Supreme Court recognized in Mancini v. Township of Teaneck, 179 N.J. 425, 846 A.2d 596 (2004), laches is applicable "in the absence of the statute of limitations[.]", such as when there is a claim of continuing violation of rights.   Id. at 432, 846 A.2d at 600, quoting, Borough of Princeton v. Board of Chosen Freeholders, 169 N.J. 135, 157, 77 A.2d 19 (2001).[6] Thus, the defense of laches is of a questionable applicability to Ashland's cross-claims, claims which are premised in legal, not equitable theories, and which would not be subject to a statute of limitations once the cause of action accrue upon the entry of a judgment against it.

Assuming, arguendo, that the defense of laches could be applied to Ashland's claim for contribution and indemnity, Ashland's cross-claims are not barred because, like the statute of limitations, laches could only apply after Ashland's causes of action accrue, which they have not. Manobianco v. City of Hoboken, supra, 232 A.2d at 858, citing, Schack v. Trimble, 28 N.J. 40,

---

[6] Ashland does not agree or disagree with AETC's choice of New Jersey law on this point, but concedes that Pennsylvania law of laches is substantially similar.

49, 145 A.2d 1 (1958), Band's Refuse Removal, Inc. v. Fairlawn, 163 A.2d 465 (App. Div. 1960), Marine v. Wanaque, 37 N.J. Super. 32, 116 A.2d 813 (App. Div. 1955).

Even if the doctrine of laches could be properly invoked by AETC in this case, the two factors usually examined by the courts in these cases, unreasonable or unexplained delay and prejudice to the adverse party, are not present in this case.   AETC cites Ashland's delay in filing its cross-claims.  Ashland's "delay" should be evaluated in the context of three factors.  First, as stated above, Ashland's cross-claims for contribution or indemnification have not yet accrued because no judgment has been rendered against Ashland nor has Ashland paid a settlement. Second, Ashland did, in fact, attempt to assert its cross-claims in filing a Motion for Leave to Amend its Answer to the Fourth Amended Complaint, which motion was filed on October 31, 2006.   Third, cross-claims are not compulsory under Rule 13(g) of the Federal Rules of Civil Procedure.  Thus, although Ashland was not required to file its cross-claims against AETC under Rule 13(g), it is advisable in the best interests of judicial economy to do so in this case due to the fact Ashland's cross-claims involve many of the same factual and legal issues forming the basis of the controversy between Plaintiffs and Defendants.  Jefferson Standard Ins. Co. v. Craven, 365 F.Supp. 861, 866-867 (E.D. Pa. 1973).

In view of the fact that Ashland had the right to file cross-claims at any time in this action, or even in a separate action upon the conclusion of Plaintiff's claims against Ashland, to determine if there was an unreasonable or unexplained delay, the question is why Ashland attempted to do so in its Answer to Plaintiff's Fourth Amended Complaint and why it asserted its cross-claims in its Answer to the Fifth Amended Complaint.  Ashland's 2006 motion for leave to amend was prompted by the fact that AETC sought summary judgment on Plaintiff's claims under CERCLA and HCSA.  Cases such as Matter of Reading, supra, established that CERCLA and HCSA pre-empted any common law rights of contribution.   Thus, if AETC had been successful in its summary judgment motion premised on its contentions that it was not an

arranger under CERCLA or HCSA, AETC would not be able to contend that Ashland's contribution and indemnity claims were pre-empted by CERCLA as a matter of law.  Given that threat, Ashland understandably then decided at that stage of the litigation to specifically plead its statutory and common law cross-claims of contribution and indemnity against AETC, actions that it could have reserved for a separate lawsuit after the conclusion of the Plaintiffs' main action.[7]  Oviatt v. Automated Entrance System, Co., 583 A.2d 1223, 1226 (Pa. Super. 1990), citing National Liberty Life Ins. Co. v. Clean Partnership, 504 A.2d 1273 (1986); Nationwide Mutual Ins. Co. v. Philadelphia Electric Co., 443 F.Supp. 1140, 1147 (E.D. Pa. 1977), citing Builders Supply Co. v. McCabe, 366 Pa. 322, 77 A.2d 368 (1951).

Ashland's motion was denied as moot as the basis for Ashland's motion – the possibility that AETC's liability under CERCLA would have been adjudicated in its favor – no longer existed because AETC's motion for summary judgment was unsuccessful.[8]  However, another opportunity and new basis for Ashland to assert its cross-claims  arose when Plaintiffs filed their Fifth Amended Complaint, a point that seems to be lost on AETC.

Plaintiffs' Fifth Amended Complaint asserts new claims under Section 107 of CERCLA in that Plaintiffs seek, for the first time, joint and several liability against the defendants for most of the response costs that Plaintiffs allege they incurred at the Boarhead Farms Site.  The imposition of joint and several liability could result in each remaining defendant being held liable for the entire amount of response costs sought by the Plaintiffs, not just each Defendant's allocable share, if any, as is the case with Plaintiffs' existing CERCLA § 113 claims.  In such a

---

[7] It is evident by AETC's attempt to obtain an interlocutory appeal that it will seek to reverse the Court's order granting summary judgment.  If AETC is successful on appeal and had Ashland not pleaded these cross-claims against AETC, Ashland would, indeed, have to institute a separate action against AETC if Ashland were found liable in this case.

[8] Another possible basis for the Court's decision denying Ashland's leave for motion to amend was that the facts supporting Ashland's cross-claims would be included in the equitable factors the Court would consider in allocating responsibility for payment of the response costs.

situation, each Defendant would have the burden to seek payment, through contribution and execution proceedings, from other defendants and responsible PRPs, for any amount collected by Plaintiffs from such Defendant in excess of that Defendant's allocable, equitable share. Thus, if AETC were to settle with the Plaintiffs for less than its equitable share, Ashland would have to seek contribution and indemnity from AETC in a separate proceeding if it did not assert these cross-claims in this action. The Court's June 30, 2004 order, which AETC cites, made no specific provision for resolution of Section 107 claims involving joint and several liability and, therefore, may not have provided protection to the non-settling defendants to preserve their rights for contribution against a settling defendant such as AETC. Moreover, substantial questions exist on the effect on the non-settling defendants' liability if AETC, as a settling defendant, was dismissed from the case. If AETC was found to be jointly and severally liable at trial, what credits do the remaining unsettled defendants earn for that settlement share? Possible answers are:

1.    the amount of the settlement;

2.    the settling defendant's equitable share; or

3.    a per capita amount.

In a typical joint tortfeasor case, the effect is dictated by a carefully joined release with the results by no means certain. Therefore, it should be understandable why Ashland chose to assert its cross-claims for contribution and indemnity. AETC made the same choice too because it filed cross-claims asserting statutory and common law claims for contribution and indemnity.

To successfully pursue a laches defense against Ashland's cross-claims, AETC must also demonstrate that it has been prejudiced by the alleged delay by Ashland in filing its cross-claims. Since AETC had not identified what prejudice it allegedly suffered by Ashland's delay, it is assumed that AETC means "evidentiary prejudice," from the death of witnesses, a lack of memory, or loss of documents." Kepner-Tregoe, Inc. v. Executive Development, Inc., 79 F.

Supp. 2d 474, 490-491 (D.N.J. 1999).  AETC claims that Ashland should have known of a potential connection by AETC with the Boarhead Farms site because that is when AETC was put on notice by the EPA (Exhibit "D" to AETC's motion) and certainly by June 2002 when Plaintiffs filed the Complaint in this action.  Even by December 1999, more than twenty-three years had elapsed since the occurrence of key events in AETC and Ashland's relationship.  Thus, the prejudice, if any, would have occurred prior to 1999, not in the eight years since then.

The truth is that AETC cannot demonstrate evidentiary prejudice.  The key players in the Ashland AETC relationship have all been deposed in this litigation and, to the best of Ashland's knowledge, are all still alive.  For AETC, its principals John Leuzarder and Landmesser were both deposed along with its counsel Walter Cisi who had defended a lawsuit filed by DCC to collect invoices that AETC failed to pay.  The Plaintiffs deposed Arthur Curley in this case as well as the following individuals involved with the alleged disposal of waste from Ashland's Great Meadows Plant and its manufacturing processes:

Alberto Celleri, 2/2/05

Arthur T. Curley, 12/9/04

Charles Hendershot, 2/1/05

Howard Leon Hendershot, 2/1/05

Charles Richard Wilcox, Jr., 2/2/05

AETC's counsel was present at all these depositions and had ample opportunity to ask appropriate questions.  Moreover, Ashland retained and produced most of the key documents relating to the disposal of wastes generated by its Great Meadows plant.

Despite AETC's claim that its additional discovery would consist of the preparation and service of interrogatories, a deposition of individuals involved, the retention of experts and expert discovery which would take six months (AETC Brief, p. 19), AETC fails to identify one

single individual or document that it needs to obtain from Ashland that it has not obtained already.  As stated above, the key individuals from both AETC and Ashland have been deposed. Ashland provided whatever documents are available concerning the disposal of waste from Ashland's Great Meadows Plant.  DCC's relationship with AETC has been already explored through extensive depositions of Manfred DeRewal and his sons and the other employees of DCC including the haulers who were alive and able to be found who allegedly disposed of Ashland's waste.  AETC already has retained an expert, Kenneth Goldstein, P.E., who provided the expert report attached as Exhibit "8" and was deposed by Plaintiffs on the issue of the appropriateness of AETC's actions in its dealings with DCC.  AETC's expert opined that AETC did everything appropriate for that time insofar as checking DeRewal's credentials and conducting further inquiry concerning his disposal practices.

AETC accuses Ashland of waiting to file its cross-claims when all discovery in this case had been completed.  The reasons for Ashland's filing its Motion for Leave to file its Answer to the Fourth Amended Complaint to add cross-claims was explained above.  Furthermore, AETC never sought additional discovery after that motion was filed on October 31, 2006 or took advantage of the opportunities provided in the Court's Tenth Case Management Order (Doc. No. 231) to seek additional discovery which were the subject of motions filed by the Defendants, including AETC, to compel more specific answers to the Defendants' Contention Interrogatories by the Plaintiff and to seek additional discovery.  Armed with the identical cross-claims raised here that were identified in Ashland's Motion for Leave to Amend its Answer to the Fourth Amended Complaint, AETC sat on its hands and never asserted that it needed additional discovery.

Obviously, AETC believed it had enough information to file a motion for summary judgment based on its alleged status as a broker, not an "arranger".  Unfortunately, for AETC, the Court has interpreted the law and the facts in ruling that AETC was an arranger despite the

fact that it had no knowledge of <u>where</u> DCC disposed of Ashland's waste. Ashland had no dealings with DCC other than to allow DCC drivers to pick up its waste as arranged by AETC. Thus, it is difficult to conceive what other area(s) of inquiry AETC needs to pursue to defend against Ashland's cross-claims. Accordingly, AETC's motion for summary judgment based on the equitable defense of laches should be denied. See <u>Waddell v. Small Tube Products, Inc., 799 F.2d 69, 74 n.2 (3d. Cir. 1986)</u> ("Laches is rarely subject to summary judgment").

### C.    Ashland's Cross-Claims Raise Substantial Issues of Material Fact

AETC seeks summary judgment on the merits (<u>i.e.</u>, excluding its statute of limitations and laches defenses) on only two of the ten bases for Ashland's cross-claims for contribution and indemnity: breach of written contract (Count I) and fraud in the inducement which caused Ashland to enter into a written and/or oral agreement with AETC for the disposal of its wastes (Count VI). AETC does **not** move for summary judgment on the other bases for Ashland's cross-claims, namely, breach of oral agreement (Count II), breach of implied contract (Count III), unjust enrichment (Count IV), debt or promissory estoppel (Count V), failure to exercise reasonable care and control over its contractor/agent (Count VII), negligent hiring/breach of fiduciary duty (Count VIII), negligent supervision/breach of fiduciary duty (Count IX) and negligent retention/breach of fiduciary duty (Count X). As set forth in greater detail below, AETC's motion for summary judgment on Counts I and VI of Ashland's cross-claims should be denied.

### 1.    The Existence of the Signed AETC-Ashland Contract and Whether AETC Agreed to the Terms of the Unsigned Contract are Genuine Issues of Material Fact

In its motion, AETC fails to identify a significant disputed issue of material fact – whether AETC signed the written contract for the disposal of Ashland's wastes. AETC assumes that the written contract was never signed by AETC. However, as pleaded in Ashland's cross-

claim, Ashland prepared and presented to AETC a proposed written agreement for the disposal

of Ashland's chemical wastes generated from the Great Meadows facility and that a signed

version of that written agreement had not been located.  (Ashland Cross-Claim paragraphs 112-

113, AETC Exhibit "B").  Curley's memorandum (Exhibit "I" to AETC's motion) states that

three signed copies of the contract were presented to AETC's John Leuzarder on October 19,

1976.  No AETC representative denied that the contract was signed.  Leuzarder merely stated

that he did not know whether the contract was signed.  (Exhibit "1", p. 119).  A fact-finder could

reasonably find that from its continued relationship with Ashland, AETC did sign this contract.

The other component of Ashland's claim for breach of a written contract is that even if

the written contract was not signed by AETC, all of the essential terms and conditions of that

contract have been agreed upon and therefore, the fact that it was reduced to writing does not

mean that the terms are unenforceable.  See Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d.

Cir. 2003); Channel Home Centers v. Grossman, 795 F.2d 291, 298-299 (3d. Cir. 1986).  AETC

recognizes this legal principle on pages 23 to 24 of its brief.

### 2.    AETC's Reading of the Written Contract is Wrong

The second reason that AETC's motion for summary judgment on Counts I and VI of

Ashland's cross-claims should be denied is AETC's misreading of the Ashland/AETC contract.

AETC contends that its responsibilities under that agreement were limited to the development of

a distillation plant to recycle Ashland's acid wastes.  (See page 24 of AETC's Brief).  The

written agreement is plainly not limited to disposal or treatment of Ashland's spent acid wastes.

Paragraph 1 of that agreement clearly references the fact that AETC ("Contractor") shall:

> furnish and pay for all material, labor, power, equipment,
> transportation and all other items necessary to remove and properly
> dispose of certain chemical waste materials generated by the Plant
> [Great Meadows], including a blend of sulphuric and nitric acids.

The Ashland Plant Manager shall specify which chemical waste materials contractor is to remove which shall be agreeable to the contractor.

(Exh. "E" to AETC's motion) (emphasis added).

By its terms, this agreement is not limited to sulphuric and nitric acids and there is an obvious reason for that. At the time that this agreement was prepared, AETC was already hauling away the other waste streams from Great Meadows. (Exhibit "6") (Exhibit "1", p. 35). Thus, any interpretation of this agreement that it is solely limited to the creation of a distillation plant to handle Ashland's spent mixed acid is erroneous.

The point is further made by the fact that the distillation plant is not addressed until paragraph 12 of the contract. The *quid pro quo* for AETC's proposed investment in this distillation plant is that Ashland would utilize AETC <u>exclusively</u> for its disposal of any of its sulphuric or nitric acid waste. This is further confirmed by Leuzarder's September 28, 1976 letter to Curley (attached as Exhibit "F" to AETC's motion) which proposes installation of the distillation equipment in return for Ashland's contractual commitment to AETC to handle all of its acids over a twelve month period. (Exhibit "F", p. 2).

In order to accept to AETC's contentions that this agreement is limited to Ashland's bulk acid waste is to ignore its clear language and all the events that preceded it. Thus, AETC's motion for summary judgment on Count I should be denied.

### 3. There are Genuine Issues of Material Fact Relative to Ashland's Claim of Fraud in the Inducement to Deny AETC's Motion for Summary Judgment

Ashland's contribution/indemnity claim based upon fraud in the inducement set forth in Count VI of its cross-claims against AETC is based upon AETC's misrepresentations concerning its close relationship with DeRewal Chemical Company and DeRewal's history, capability and

reputation for handling waste removal.  As with all of Ashland's cross-claims, these allegations are predicated on the fact if  it is determined that Ashland's waste was disposed of at Boarhead by DeRewal, as Plaintiffs contend, which Ashland vigorously denies, then the culpability for said disposal should be shared in whole or in part by AETC.

AETC contends that the facts do not support a claim of fraud in the inducement because there is insufficient evidence that AETC made material misrepresentations as to its relationship with DeRewal and that Ashland could not have reasonably relied upon such misrepresentations because of its own knowledge of DeRewal.[9]  There is sufficient evidence in this record of material representations, AETC's knowledge thereof and Ashland's reliance thereon.

AETC's August 3, 1976 proposal to Ashland represented that AETC had "licensed haulers" who were certified with the Public Utility Commission and that all materials handled by AETC would be processed or destroyed, "at approved sites under their individual permit numbers."  (Exhibit "3").  AETC further represented in its September 28, 1976 proposal to Ashland (Exhibit "F" to AETC's motion) that the neutralization of Ashland's spent acid waste was currently being processed "primarily through controlled dilution and neutralization with lime."  If Manfred DeRewal is to be believed, this statement was untrue and AETC knew it.  AETC also refers to "our neutralization facilities" in that proposal.  In fact, AETC had no such neutralization facilities and was relying upon DeRewal's Wissinoming facility.

AETC also seems to forget that the Court has entered summary judgment against AETC on the issue of whether or not AETC is an "arranger" within the meaning of Section 107 of CERCLA.  That order resulted from AETC filing a motion for summary judgment that it was not

---

[9] AETC claims that New Jersey law is applicable and requires Ashland to prove that AETC had knowledge or belief of the falsity of its misrepresentations.  Ashland does not concede that New Jersey is applicable, but for purposes of argument will assume that AETC is correct on the law that applies.

an arranger and Plaintiffs' cross-motion that it was.  This Court carefully considered the same evidence concerning the dealings between AETC and DeRewal that Ashland has cited in this response.   AETC obviously is bound by the Court's determination in connection with that motion.

Several of AETC's contentions made in its motion were rejected by the Court as irrelevant to Ashland's claims.  First, the Court rejected AETC's contention that it was a mere "broker" between Ashland and DeRewal by stating:

> "AETC had the contractual obligation to exercise control of the waste, as AETC was the only entity that Ashland and Diaz contracted with, . . . , and, in fact, exercised control when it subcontracted the transportation responsibilities to DeRewal, . . . ."

Memorandum and Order, Doc. No. 216, p. 9. [10]

The Court also cited evidence that the principals of AETC knew that Ashland's waste was being disposed of at the Boarhead Farm Site.[11]   The evidence that the Court referenced in its Memorandum and Order was Manfred DeRewal, Sr.'s testimony that he told AETC's two principals, Leuzarder and Landmesser, that Ashland's waste was being disposed of at the Boarhead Farm Site.   (Plaintiffs' Brief in Support of their Cross-Motion for Partial Summary Judgment and in Opposition to Advanced Environmental Technology Corporation's Motion for Summary Judgment, p. 9, citing Manfred DeRewal, Sr., 5/9/03 deposition at 497, 532).   The same testimony confirms that neither Mr. Curley nor any other representative of Ashland was

_____

[10] The Court also noted that AETC further evidenced its own constructive possession of Ashland's waste when it specifically directed DeRewal to dispose of the waste at the Wissinoming Site.  (Memorandum and Order, Doc. No. 216, p. 11).

[11] The Court determined that Mr. DeRewal's credibility was not at issue because there was sufficient other evidence to establish AETC's arranger liability.  That DeRewal disposed of the waste in a location other than where AETC anticipated was immaterial because AETC selected DeRewal to dispose of Ashland's wastes.  (Memorandum and Order, Doc. No. 216, p. 15).

present during this meeting when DeRewal claims he made this statement. (Exhibit "9", M. DeRewal 5/9/03 deposition, p. 532-534). If Mr. DeRewal is to be believed, then AETC had clear knowledge that Ashland's waste was being sent to Boarhead while Ashland did not.

In addition to this alleged knowledge, AETC knew other things about DeRewal that were never disclosed to Ashland. These are referenced in Plaintiffs' Brief in Support of their Cross-Motion for Partial Summary Judgment and in Opposition to Advanced Environmental Technology Corporation's Motion for Summary Judgment on page 7 to 8 and can be summarized as follows:

- Leuzarder and Landmesser were in close contact with state environmental regulators during the relevant time period.

- By 1976, DeRewal had established a lengthy track record of pollution citations involving the Boarhead Farms Site.

- AETC failed to make an independent assessment of DeRewal's alleged acid neutralizing operation at the Wissinoming facility.

The most telling evidence of AETC's knowledge as to DeRewal's activity is set forth in Curley's August 23, 1976 memorandum (Exhibit "6"), a document curiously not referenced in AETC's Motion for Summary Judgment. This references a conversation with Leuzarder of AETC only a week after Ashland started using AETC to remove its waste. Curley's account of this conversation is significant:

> "Our spent acid is going to DeReal (this spelling could be wrong) in Philadelphia. According to Leuzarder, Ciba-Geigy is also using them for spent acid disposal. Here, the acid is neutralized (in vessels) and the salt cake landfilled.
>
> I called John today and asked if I could visit the facility and confirmed the fact that they are handling our acid in a proper manner. He hesitated a minute and then said the process was

> secret and that the outfit feared another disposal firm would steal their thunder.  I got the impression that Leuzarder had not seen the process.  Leuzarder called me back an hour or so later and said that he could arrange a visit in a 'couple of weeks'.  This will give them time to 'clean up a bit'.  He also mentioned the signing of a secrecy agreement."

(Exhibit "6", p. 2).

Thus, at the time of the inception of Ashland's relationship with AETC, Leuzarder put off Curley's request to visit DeRewal's facility until a month later when Curley eventually did visit the Wissinoming site.  Leuzarder's actions, coupled with DeRewal's claim that he told Leuzarder of the destination of Ashland's waste, creates a genuine issue of fact as to whether AETC's representation that the Wissinoming Site was the location of Ashland's wastes was true or not.

AETC further argues that Ashland, through Curley, could not have relied upon any misrepresentations by AETC because it had the same knowledge as AETC's representatives. The foregoing clearly demonstrates that this is erroneous.  Curley stated in his August 23, 1976 Memorandum "my feelings at this point lean towards staying with Leuzarder conditional with inspecting his outlet to convince ourselves of its legality."  Curley testified that he sought and received assurance from AETC that Ashland's waste would be disposed of properly and legally. (Exhibit "2", Curley Dep. 11/9/04, p. 118-123, 127-128).

> **D.    AETC's Alternative Motion Should be Denied**

> **1.    AETC Has Waived its Right to Contest the Sufficiency of Ashland's Allegations of Fraud**

AETC claims that Ashland's counterclaims do not satisfy the requirements of Fed.R.Civ.P. 9 (b).  Since Rule 9 does not authorize a motion to be filed, the Courts require this issue to be raised by a motion to dismiss for failure to state a claim upon which relief can be granted under rule 12(b)(6) or a motion for a more definite statement under 12(e).  United

National Records, Inc. v. MCA, Inc., 609 F. Supp. 33, 38-39 (N.D. Ill. 1984); 5A Wright & Miller Federal Practice and Procedure § 1300 (2007).  Answering a pleading without challenging the sufficiency by a Rule 12 motion constitutes a waiver of the objection.  Burton v. R.J. Reynolds Tobacco, Co., 181 F.Supp. 2d 1256, 1263 n.5 (D.Kan. 2002); United National Records, Inc. v. MCA, Inc., supra., at 39.

AETC did not move under Rule 12 but instead filed an answer to Ashland's cross-claims. (Doc. No. 291).  Even in its Answer, AETC did not preserve its objections, but denied Ashland's allegations.  (Doc. No. 291, p. 6).  Thus, AETC has waived any objection to the sufficiency of Ashland's allegations of fraud in the inducement.

**2.    Ashland's Cross-Claims Asserted Fraud with Particularity**

Count VI of Ashland's cross-claims do, in fact, state the material representations and omissions of fact made by AETC to Ashland and, therefore, AETC's contentions are meritless. Paragraphs 86 through 93 and 103 through 111 specifically alleges the manner in which AETC did business with its customers in general, including licensed vehicles to transport hazardous materials, and expertise in packaging chemicals for hauling chemical waste.  Paragraph 97 specifically references Landmesser's testimony about the special expertise of the waste haulers hired by AETC to dispose of chemical wastes.  Ashland's cross-claim further alleges that AETC followed its policies and practices with respect to Ashland and quotes Leuzarder's testimony that its marketing practices was to convince customers such as Ashland that it had a close relationship with the disposer of the waste material.  (Cross-claim paragraph 121).  Count VI of Ashland's cross-claims for fraud in the inducement incorporates these paragraphs by reference referring to them as "material misrepresentations and omissions of fact as to Ashland as to AETC's purportedly close relationship with, as well as its history, capability of reputation of,

DeRewal with respect to its waste removal, hauling and disposal activities and experience."
(Paragraph 155).

The allegations of Count VI of Ashland's cross-claims cannot be considered in a vacuum. These cross-claims were filed as part of the motion for leave to file the Fourth Amended Complaint as well as Answers and Affirmative Defenses to the Fifth Amended Complaint which follow extensive discovery of DeRewal, his haulers, Ashland's representative and AETC's principals. As outlined above in Ashland's response to AETC's motion for summary judgment on Count VI, AETC is well aware of the specific allegations concerning its omissions and misrepresentations and Ashland's reliance thereon. Accordingly, AETC's motion for a more definitive statement should be denied.

IV.    **CONCLUSION**

AETC's motion for summary judgment on Ashland's cross-claim should be denied. Ashland's claims for contribution and indemnity have yet to accrue and, therefore, cannot be barred by the statute of limitations or the equitable doctrine of laches. Whether AETC provided an extensive contractual indemnification to Ashland is a genuine issue of fact that precludes summary judgment. AETC has waived any alleged deficiencies in Ashland's pleading of its cross-claims by answering them. Therefore, AETC's alternate motion should also be denied.

Respectfully submitted,

/s/ Jeffrey L. Pettit
JEFFREY L. PETTIT, ESQUIRE
Attorney I.D. No. 21624
RICHARD C. BIEDRZYCKI, ESQUIRE
Attorney I.D. No. 30604
PHELAN, PETTIT & BIEDRZYCKI
121 South Broad Street
Suite 1600
Philadelphia, PA 19107
(215) 546-0500

Counsel for Defendant Ashland Inc.

Date: March 14, 2008

G:\DATA\1357-29\Pldgs\Opposition-AETC MSJ\Opp-AETCMemo.doc