IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AGERE SYSTEMS, LLC, et al., | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION NO. |
| v. | : | 02-cv-3830 (LDD) |
| | : | |
| ADVANCED ENVIRONMENTAL | : | |
| TECHNOLOGY CORPORATION, et al., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM ON BEHALF OF DEFENDANT HANDY & HARMAN
TUBE COMPANY, INC. IN SUPPORT OF ITS MOTION TO STRIKE
PLAINTIFFS' SUPPLEMENTAL RESPONSE TO JOINT CONTENTION
INTERROGATORY NO. 123 AND FOR OTHER RELIEF**

**PRELIMINARY STATEMENT**

On January 11, 2008, this Court entered a Memorandum and Order (the "January

11 Order") that barred certain claims by Plaintiffs as being beyond the statute of

limitations. As if the January 11 Order did not exist, Plaintiffs have attempted to

"supplement" their response to Defendants' Joint Contention Interrogatory No. 123 by

adding new facts, new documents and new witnesses – all of which are directly related to

claims that this Court determined are barred by the statute of limitations. Plaintiffs set

the stage for this "supplement" by improperly including two paragraphs in the Fifth

Amended Complaint that allege facts relating to the time barred claims.

Under the guise of supporting claims alleged by plaintiff TI Automotive Systems,

L.L.C. ("TI"), Plaintiffs, through the "supplemental" response to Joint Contention

Interrogatory No. 123, provided "facts", documents and witnesses specifically relating to

Smiths Group Services Corporation and Smith Group North America, Incorporated ("Smiths"). The voluminous information provided is a transparent attempt to resuscitate claims to collect monies allegedly paid by Smiths in connection with or relating to the Boarhead Farm Superfund Site ("Site") – the very claims this Court found were time barred. The January 11 Order and Rule 26 prohibit this "supplement." Plaintiffs' February 8, 2008 "supplement" to their response to Joint Contention Interrogatory No. 123 should be stricken and Plaintiffs should be barred from introducing this new information at the time of trial. Additionally, since the "supplement" was not for a proper purpose, Plaintiffs should be sanctioned in accordance with Rule 26(g)(3).

## STATEMENT OF FACTS

On March 5, 2007, Defendants served Plaintiffs with Defendants' Joint Contention Interrogatories. Declaration of Melissa E. Flax in Support of Motion to Strike Plaintiffs' Supplemental Response to Joint Contention Interrogatory No. 123 and For Other Relief ("Flax Decl."), Exhibit A. On April 17, 2007, Plaintiffs served their responses. Flax Decl., Exhibit B. By letter dated April 30, 2007, Plaintiffs were advised that, among other things, their response to Joint Contention Interrogatory No. 123 was deficient. Flax Decl., Exhibit C. By letter dated May 7, 2007, Plaintiffs responded to Defendants' deficiency letter, asserting that what Plaintiffs had provided with respect to Joint Contention Interrogatory No. 123 was totally responsive, but nevertheless provided some additional information. Flax Decl., Exhibit D.

On June 1, 2007, Defendants filed a motion to compel Plaintiffs to respond to certain Joint Contention Interrogatories. [Docket 234]. Joint Contention Interrogatory No. 123 was not included as part of that application.

By Order dated October 29, 2007, Plaintiffs were required, among other things, to provide more specific responses to the Defendants' Joint Contention Interrogatories Nos. 78-92 and 94-111. Flax Decl., Exhibit E. Joint Contention Interrogatory No. 123 was not part of that Order.

Joint Contention Interrogatory No. 123 asks:

> Does TI contend that it did not receive or had credited on its behalf any monies or other consideration that reduced its share of Total Cleanup Costs of the Site from any source, including, but not limited to, settlement, insurance proceeds, predecessors, or payment under an indemnity agreement?
>
> (a)    If not, what monies did TI receive and from what sources?

Flax Decl., Exhibit F.

In their original response to this interrogatory (served on April 17, 2007), Plaintiffs stated "See Plaintiffs' response to Interrogatory No. 119." Plaintiffs' response to Interrogatory No. 119 reads as follows:

> Plaintiffs object to this Interrogatory to the extent that it seeks information outside the scope of the contentions that Plaintiffs will make as part of their prima facie case at trial. Plaintiffs further object to this Interrogatory because it is vague, confusing and ambiguous. Plaintiffs further object to this Interrogatory to the extent that it seeks the discovery of the mental impressions, conclusions, strategies, opinion, research or legal theories of their attorneys or other representatives or information protected by the attorney-client privilege or any other applicable privilege. Plaintiffs also object to this Interrogatory to the extent that its [sic] seek information and documents that are not relevant to the subject matter of this action or are not reasonably calculated to lead to the discovery of admissible evidence.
>
> Without waiving any such objections, Plaintiffs will not ask the Court at trial to make findings of fact or conclusions of law that they "did not receive or had credited on its behalf

3

any monies or other consideration that reduced its share of
Total Cleanup Costs of the Site from any source, including,
but not limited to, settlement, insurance proceeds,
predecessors, or payment under an indemnity agreement."
By way of further response, Plaintiffs have entered into the
following settlements with parties to this action: Novartis
($162,500); United States Navy ($100,000); Unisys
($50,000); Quikline Design ($50,000); Simon Wrecking
($50,000); Knoll ($207,500); Plymouth Tube ($425,000);
Rohm and Haas ($35,000); Emhart ($100,000);
Techalloy/Rahns ($3,200,000); and Thomas & Betts
Corporation ($42,500).

Flax Decl., Exhibit F.

On July 26, 2007, Plaintiffs filed a motion for leave to file a fifth amended
complaint. On January 11, 2008, that motion was granted in part and denied in part.
Flax Decl., Exhibit G. The Court specifically denied that portion of Plaintiffs' motion
seeking leave to add Smiths as plaintiffs. The Court agreed with the Defendants'
argument that "[t]he statute of limitations, with respect to Smiths' claims, has already
passed." Flax Decl., Exhibit G at p.12.[1]

Notwithstanding the clarity of this Court's ruling with respect to the invalidity of
Smiths' claims, Plaintiffs filed a Fifth Amended Complaint that included the following
allegations regarding Smiths:[2]

> 26.    Smiths Group plc, a United Kingdom corporation,
> was, prior to April 25, 2001, the ultimate parent of
> TI. On or about April 25, 2001, Smiths sold the
> share of TI (and other related companies) to 329[th]
> Shelf Investment Company Limited ("329").
> Smiths agreed, as part of that transaction (and as set

---

[1] The Court also concluded that the Smiths' claims did not relate back to the original
filing of the complaint.

[2] The proposed Fifth Amended Complaint annexed to Plaintiffs' motion papers contained
paragraphs 26 and 27. Clearly, these paragraphs should have been removed from
(paragraph 26) or modified in (paragraph 27) the Fifth Amended Complaint as a result of
this Court's January 11 Order, but were not.

4

forth in the April 25, 2001 agreement pursuant to which the shares of TI were sold), to indemnify TI and 329 with respect to any liabilities arising as a result of or in connection with the Site. Smiths has, since April 2001, caused its subsidiaries, Smiths Group Services Corp. and Smiths Group North America, Inc., to transfer funds into the OU-1 and OU-2 Group Trust Accounts on behalf of TI and with respect to TI's obligations to the OU-1 and OU-2 Groups, TI has agreed with Smiths Group plc that it will seek to recover in this action and repay to Smiths Group plc all sums paid by Smiths on TI's behalf.

27.    TI seeks cost recovery and contribution from Defendants for the response costs TI has incurred by making payments itself into the OU-1 and OU-2 Group Trust Accounts. TI also seeks cost recovery and contribution from Defendants in its name on behalf of Smiths.

Flax Decl., Exhibit H. Confirming that the inclusion of paragraphs 26 and 27 in the Fifth Amended Complaint was not an oversight, Plaintiffs served their "supplemental" response to Defendants' Joint Contention Interrogatory No. 123 on February 8, 2008 for the sole purpose of adding new facts, documents and witnesses – all of which directly relate to the Smiths' claim that the Court has ruled is time barred. Flax Decl., Exhibit I. Plaintiffs' "supplemental" response to Joint Contention Interrogatory No. 123 asserts the same objections as their original answer and then provides as follows:

Without waiving any such objections, Plaintiffs will not ask the Court at trial to make findings of fact or conclusions of law that they "did not receive or had credited on its behalf any monies or other consideration that reduced its share of Total Cleanup Costs of the Site from any source, including, but not limited to, settlement, insurance proceeds, predecessors, or payment under an indemnity agreement." *By way of further response, Plaintiff TI Group Automotive Systems, L.L.C. is the successor by merger to Bundy Corporation, a Michigan corporation. Bundy Corporation changed its name in or about October 1999 to TI Group*

*Automotive Systems Corporation ("TIGASC") [BSAI103048-BSAI103049]. TI Group plc, a United Kingdom corporation, became the ultimate parent of TIGASC in or about 1987. In or about December 2000, TI Group plc merged into Smiths Industries plc, a United Kingdom corporation, and the surviving company changed its name to Smiths Group plc. On or about July 3, 2001 and pursuant to a [sic] April 25, 2001 Transfer Agreement, Smiths transferred the shares of TIGASC (and other related companies) to 329th Shelf Investment Company Limited ("329"), a publicly owned company [BSAI103074-BSAI103164]. Smiths Group plc agreed, as part of that transaction (and as set froth in the April 25, 2001 agreement pursuant to which the shares of TIGASC were sold), to indemnify TIGASC and 329 with respect to any liabilities arising as a result of or in connection with the Site. On or about June 8, 2001 Plaintiff TI Automotive Group Systems, L.L.C. ("TI") was incorporated in the state of Delaware [BSAI103050]. On or about June 25, 2001 TIGASC was merged into TI [BSAI103051-BSAI103052]. Documents reflecting these transactions are in the Document Repository and available for inspection and copying.*

*Smiths Group plc has, since April 2001, caused its subsidiaries, Smiths Group Services Corp. and Smiths Group North America, Inc., to transfer funds into the OU-1 and OU-2 Group Trust Accounts on behalf of TI and with respect to TI's obligations to the OU-1 and OU-2 Groups,. Those payments are reflected in the accounting ledgers and documents previously produced. Smiths Group plc has also, since April 2001, caused its subsidiaries to directly or indirectly pay certain legal fees of TI, none of which are being sought from Defendants in this action. TI has agreed with Smiths Group plc that it will seek to recover in this action and repay to Smiths Group plc all sums paid by Smiths on TI's behalf.*

*A portion of the proceeds of the settlement between Plaintiffs and Techalloy were distributed to Cytec Industries, Inc., Ford Motor Company, SPS Technologies, LLC and to TI, Agere previously having settled with those four plaintiffs. TI's share of the proceeds of that settlement were forwarded by TI to Smiths Group Services Corporation. Specifically, on or about May 10, 2007 TI's portion of that settlement payment was distributed to TI by*

*counsel for Plaintiffs.   TI then paid those proceeds to Smiths Group plc's designee, Smiths Group Services Corporation [BSAI103331-BSAI103334].   The proceeds of all earlier settlements between Plaintiffs and other Settling Defendants were held in the trust account of counsel for Plaintiffs and disbursed to pay invoices to Plaintiffs for the fees and costs of this litigation that would otherwise have been paid by Smiths on behalf of TI.  Smiths Group plc thus obtained the benefit of those proceeds.   Documents reflecting the payment by TI to Smiths of the proceeds from the Techalloy settlement are in the Document Repository and available for inspection and copying.*

*Smiths Industries, Inc. changed its name to Smiths Group North America, Inc. on or about June 13, 2001.  Smiths Group North America, Inc. liquidated and sold certain assets to Smiths Group Services Corporation on or about July of 2004.  [BSAI103335-BSAI103341].   Upon the dissolution of Smiths Group North America, Inc., Smiths Group Services Corporation changed its name to Smiths Group North America, Inc. [BSAI103335].*

*Smiths Group Services Corporation was incorporated in Delaware on or about October 6, 1989 as CEI Acquisition, Inc.  CEI Acquisition, Inc. changed its name to Infrared Associates Inc. on or about December 5, 1989.  Infrared Industries, Inc. merged Infrared Associates Inc. and Infrared Systems Inc. into itself on or about December 20, 1991.   Infrared Industries Inc. changed its name to Graseby Electro-Optics Inc. on or about February 1998. [BSAI103342].  Graseby Electro-Optics Inc. changed its name to Smiths Group Services Corporation on or about May 22, 2001. [BSAI103341-BSAI103345].  Smiths Group Services Corporation merged Integrated Air Systems, Inc. and Vent-Axia Inc. into itself on or about July 2001. [BSAI103346-BSAI103349].*

*The following individuals have knowledge of some or all of the above: Timothy Guerriero, Walter Orme, and Ira Greenberg.*

Flax Decl., Exhibit I (emphasis supplied).

The index to the Document Repository was last updated and circulated on October 23, 2007.  None of the documents referenced in the brackets in Plaintiffs'

February 8, 2008 "supplemental" response are contained on that index. Moreover, the individuals, Timothy Guerriero, Walter Orme, and Ira Greenberg, were first disclosed as persons with factual knowledge in the "supplemental" response. Fact discovery closed over three (3) years ago on March 18, 2005 and none of these facts, documents or witnesses were ever disclosed until now. *See* Flax Decl., Exhibit J.

ARGUMENT

I.      **THE JANUARY 11 ORDER CONSTITUTES THE LAW OF THE CASE AND PRECLUDES PLAINTIFFS FROM SUPPLEMENTING THEIR RESPONSE TO JOINT CONTENTION INTERROGATORY NO. 123**

The law of the case doctrine is well settled in this Circuit. This doctrine "limits relitigation of an issue once it has been decided." *In re Continental Airlines, Inc.*, 279 F.3d 226, 232 (3d Cir. 2002). In *Williams v. Runyon*, 130 F.3d 568 (3d Cir. 1997), the Court specifically addressed the applicability of the law of the case doctrine in the district court. The *Williams* Court stated "[t]he law of the case doctrine expresses the practice of courts generally to refuse to reopen what has been decided." *Williams*, 130 F.3d at 573 (citation omitted). The law of the case doctrine has been defined

> as a precept that posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. This rule of practice promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues.

*Continental Airlines*, 279 F.3d at 233 (internal quotations omitted) (citations omitted). *See also United Artists Theatre Circuit, Inc. v. Township of Warrington*, 316 F.3d 392, 397-98 (3d Cir. 2003) ("Courts apply the law of the case doctrine when their prior decisions in an ongoing case either expressly resolved an issue or necessarily resolved it by implication"); *Yurcik v. Purdue Pharma, L.P.*, 343 F. Supp. 2d 386, 389-392 (M.D.

Pa. 2004) (transferee court applied the law of the case doctrine to the Hon. Legrome D. Davis' earlier decision in the same case that plaintiffs claims against the fraudulently joined defendants were barred by the statute of limitations).

Here, the January 11 Order specifically addressed the issue of Plaintiffs' ability to add Smiths as party plaintiffs and seek to recover from the Defendants monies allegedly paid by Smiths.  This Court found that "Defendants did not know, nor should they have known before the expiration of the limitations period that, but for a mistake, they would have been sued directly by [Smiths]."  Exhibit G at p.12.  In concluding that the Smiths' claims could not be brought against the Defendants, this Court held:

> [P]laintiffs and Smiths have known about the indemnity agreement and Smiths' rights under that agreement since at least 2001, which was prior to the filing of plaintiffs' original complaint. (citation omitted).  Here, as in <u>Nelson</u>, there is no allegation that Smiths were unaware of their right to join this litigation.  Smiths made an affirmative choice not to join this lawsuit and, since there was no mistake, they are bound by that decision.  (Citation omitted).  Rule 15(c) is not meant to allow plaintiffs to make an end-run around the statute of limitations and defendants are entitled to finality, at some point, with respect to which entities they face in litigation.

Exhibit G at p.13.  Notwithstanding this Court's ruling, Plaintiffs have, in the "supplemental" response to Joint Contention Interrogatory No. 123, attempted to introduce new facts, documents and witnesses that support the very claims that this Court has barred.

The Court has already determined that the Smiths' claims are time barred.  Fact discovery closed over three (3) years ago.  Any information relating to the time barred claims is both irrelevant and out of time.  The January 11 Order precludes Plaintiffs from attempting to supplement their response to Joint Contention Interrogatory No. 123 with

9

new facts, documents and witnesses pertaining to the Smiths' claim. Plaintiffs' "supplemental" response to Joint Contention Interrogatory No. 123 should be stricken.

## II. PLAINTIFFS VIOLATED RULE 26(e) BY SUPPLEMENTING THEIR RESPONSE TO JOINT CONTENTION INTERROGATORY NO. 123 AND THE SUPPLEMENTAL RESPONSE SHOULD BE STRICKEN

Rule 26(e) imposes upon parties the obligation to supplement or correct any disclosure or response to a discovery request. The duty to supplement attaches when a response is incomplete or incorrect "in some material respect." Rule 26(e)(1)(A). In *Sender v. Mann*, 225 F.R.D. 654, 654 (D. Colo. 2004), the court determined that materiality in the context of Rule 26(e)(1)(A) meant that "there is an objectively reasonable likelihood that the additional or corrective information could substantially affect or alter the opposing party's discovery plan or trial preparation."

In *Royalty Petroleum Company v. Arkla, Inc.*, 129 F.R.D. 674 (W.D. Okl. 1990), the defendant filed a supplemental interrogatory response on the eve of trial relating to conversations alleged to be relevant to the action. Plaintiff moved to exclude such evidence. In ruling in the plaintiff's favor and excluding the proffered evidence, the court held that the supplemental response was filed for an improper purpose, namely to harass or cause unnecessary delay or needless increase in the cost of the litigation, (*id.* at 679) and was an attempt to circumvent the Scheduling Order that contained a discovery end date. *Id.* at 686.

In *Nicholas v. Pennsylvania State University*, 227 F.3d 133, 148 (3d Cir. 2000), the Third Circuit affirmed the trial court's sanction under Rule 26, precluding the plaintiff from introducing any evidence of future lost earnings at trial. In *Nicholas*, a retaliatory discharge case, the plaintiff filed his complaint in June 1996. Although the plaintiff knew

as early as November 1997 that his position would be eliminated, he nonetheless asserted in his Rule 26 disclosures that he would have continuing employment with his employer. Plaintiff did not disclose his prior knowledge regarding the elimination of his position until May 21, 1998 when he "corrected" his initial disclosures. He did not produce documents until June 19, 1998, one month before the beginning of the damages phase trial. *Id.* at 148. This late disclosure was found to have prejudiced the defendants' trial preparation and defense and therefore was found to have been properly excluded by the trial court. *Id.*

Here, Plaintiffs have known since April 2001 that Smiths had a potential claim against Defendants. Nevertheless, the specific, detailed and voluminous information contained in Plaintiffs' February 8, 2008 "supplemental" response to Contention Interrogatory No. 123 was never disclosed until three (3) years after the close of fact discovery and after this Court ruled that the Smiths' claims were time barred. Thus, any information relating to the Smiths' claims is both irrelevant and out of time. Plaintiffs' "supplement", indicating that they intend to prove these new facts at trial with new documents and new witnesses, is improper and violates Rule 26(e). The supplemental response identifying new facts, new documents and new witnesses should be stricken.

**III.    THIS COURT SHOULD SANCTION PLAINTIFFS PURSUANT TO RULE 26(g) BY STRIKING THE FEBRUARY 8, 2008 "SUPPLEMENTAL" RESPONSE TO JOINT CONTENTION INTERROGATORY NO. 123 AND AWARDING REASONABLE ATTORNEYS' FEES AND COSTS**

Rule 26(g) of the Federal Rules of Civil Procedure provides for sanctions if Rule 26 is violated "without substantial justification." Rule 26(g) provides in relevant part:

> **(1) Signature Request; Effect of Signature.** Every …
> discovery request, response, or objection must be signed by
> at least one attorney of record in the attorney's own name

… and must state the signer's address, e-mail address, and telephone number. By signing, an attorney or party certifies that to the best of the person's knowledge, information and belief formed after a reasonable inquiry:

*          *          *          *

(B)    with respect to a discovery request, response, or objection, it is:

      (i)    consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;

      (ii)   not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and

      (iii)  neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

*          *          *          *

**(3) Sanction for Improper Certification.** If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

In *St. Paul Reinsurance Company, Ltd. V. Commercial Financial Corp.*, 198 F.R.D. 508 (N.D. Iowa 2000), the court was confronted with an application for discovery abuses made by the plaintiffs. In considering the parameters of Rule 26(g), the court first noted that the Rule "allows the court to impose sanctions on the signer of a discovery request when the signing of the response is … objectively unreasonable under the circumstances." *Id.* at 515 (citations omitted). The court further stated that courts test the

12

reasonableness of the signer's certification at the time the discovery response is signed.

In that regard, the court stated:

> The certification by the signer is tested as of the time the discovery paper is signed. The court must strive to avoid the wisdom of hindsight in determining whether the certification was valid at the time of the signature, and all doubts are to be resolved in favor of the signer. (Citation omitted). However, each signing of a new discovery request, response, or objection must be evaluated in light of the totality of the circumstances known at the time of the signing. Therefore, the practical import of Rule 26(g) is to require vigilance by counsel throughout the course of the proceeding. (Citation omitted).

*St. Paul*, 198 F.R.D. at 516.

In this case, when Plaintiffs signed the supplemental response to Joint Contention Interrogatory No. 123 on February 8, 2008, this Court had already ruled that the Smiths' claims were time barred. In what is nothing more than an attempt to circumvent this Court's ruling, Plaintiffs, in the guise of a "supplement," identified new facts, new documents and new witnesses in the hopes that they could "sneak" the Smiths' claims in at the time of trial. On February 8, 2008, when Plaintiffs certified their "supplemental" response to Joint Contention Interrogatory No. 123, Plaintiffs knew that it was inconsistent with the rules, that it was in violation of the January 11 Order, that it was not interposed for any proper purpose, and that the "supplemental" response would cause delay and increase Defendants' litigation costs. Thus, there was no possible justification for Plaintiffs' "supplemental" response to Joint Contention Interrogatory No. 123.

In light of the totality of the circumstances, Plaintiffs' conduct demonstrates a violation of Rule 26(g) and warrants the imposition of sanctions. Plaintiffs' February 8, 2008 "supplemental" response to Joint Contention Interrogatory No. 123 should be

stricken and Plaintiffs should be compelled to pay the reasonable attorneys' fees and costs incurred by Handy & Harman Tube Company in connection with the within application.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that the Court grant Handy & Harman Tube Company, Inc.'s motion, strike Plaintiffs' February 8, 2008 supplemental response to Joint Contention Interrogatory No. 123, and award Handy & Harman Tube Company, Inc. attorneys' fees and costs incurred in connection with the within application.

Respectfully submitted,

CARELLA, BYRNE, BAIN, GILFILLAN,
CECCHI, STEWART & OLSTEIN
Attorneys for Defendant, Handy & Harman
Tube Company, Inc.

Dated: March 31, 2008        By: _____ MF 1386

MELISSA E. FLAX
JOHN M. AGNELLO
G. GLENNON TROUBLEFIELD (Bar No. 64989)
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700
(973) 994-1744 (fax)