**EXHIBIT E**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AGERE SYSTEMS, INC., ET AL.,                        :
                                                    :          CIVIL ACTION
            Plaintiffs,                             :
                                                    :
        v.                                          :
                                                    :
ADVANCED ENVIRONMENTAL                              :          NO. 02-3830
TECHNOLOGY CORPORATION, ET AL.,                     :
                                                    :
            Defendants.                             :

<u>ORDER</u>

This is a discovery dispute regarding plaintiffs' answers to various contention interrogatories. The defendants individually and collectively filed motions to compel answers to interrogatories (Doc. No. 233, 234, 235, and 237), and the plaintiff responded in a single motion (Doc. No. 238). After an extensive review of the interrogatories, responses, and supporting documents, defendants' motions (Doc. No. 233, 234, 235, and 237) are granted in part and denied in part.

And now, this 29th day of October, 2007, it is hereby ordered that plaintiffs provide the following discovery responses by Wednesday, November 21, 2007:

1. Plaintiffs are directed to give more comprehensive responses to Interrogatories 78-92 and 94-111 (Doc. Nos. 233, 234, 235, and 237).[1]

---

[1] The Court realizes that plaintiffs answered Joint Contention Interrogatories 78-111 in a single response (Answer to Interrogatory 78) because all of these interrogatories pose the same question with respect to different entities. However, for completeness, the Court directs plaintiffs to answer Interrogatories 78-92 and 94-111. Plaintiffs need not answer Interrogatory 93 because summary judgment was granted as unopposed (Doc. No. 216) with respect to Merit Metal.

1

a. Plaintiffs' answers should demonstrate precisely how they determined the volume of waste they attribute to each entity. These answers should provide sufficient information such that one can trace back the results to the original data source used. In other words, plaintiffs should provide their step-by-step methodology for determining each volume, by demonstrating: (1) the discrete component volumes used to find the total volume for each defendant; (2) for each discrete component volume, citation(s) to document(s) where this number can be found; and (3) if the discrete component volume is not specifically stated in the document, plaintiffs should explain how they calculated, derived, or estimated, the discrete component volume. Given the inherent difficulties of deciphering the photocopied invoices and records, it is crucial that plaintiffs identify the specific values used in their calculations and extrapolations so that defendants may verify plaintiffs' conclusory results.

b. Plaintiffs' answers should also demonstrate precisely how they determined the percentage of waste they allege was disposed of at the Boarhead Farm Site during distinct time periods. These answers should provide sufficient information such that one can trace back the results to the original data source used. In other words, plaintiffs should provide their step-by-step methodology for determining each volume, by demonstrating: (1) the discrete components or numbers of the calculation used to determine the percentage of waste disposed of at the Site during specific time periods; (2) for each discrete component or number of the calculation, citation(s) to document(s) where these items can be found; and (3) if the component or number is not specifically stated in the document, plaintiffs should explain how they calculated, derived, or estimated the component or number.

2. Defendants' motion to compel plaintiffs to withdraw all interrogatory objections based upon the contention being outside the plaintiffs' prima facie case is DENIED (Doc. Nos. 233, 234, 235, and 237).

3. Defendant NRM's motion to compel plaintiffs' answer to Interrogatory 2 is GRANTED only to the extent that it is not already answered by Joint Contention Interrogatory 95 (Doc. No. 233).

4. Defendant NRM's motion to compel plaintiffs' answer to Interrogatory 3 is DENIED (Doc. No. 233).

5. Defendant NRM's motion to compel plaintiffs' answer to Interrogatory 6 is GRANTED only to the extent that it is not already answered by Joint Contention Interrogatory 95 and NRM Interrogatory 2 (Doc. No. 233).

6. Defendant NRM's motion to compel plaintiffs' answer to Interrogatory 7 is

GRANTED only to the extent that it is not already answered by Joint Contention Interrogatory 95 and NRM Interrogatory 2 (Doc. No. 233).

7.  Defendant Ashland's motion to compel plaintiffs to fully and completely respond to Joint Contention Interrogatories 67-70 is DENIED (Doc. No. 234).

8.  Defendant Ashland's motion to compel plaintiffs to fully and completely respond to Joint Contention Interrogatories 76-82 is DENIED (Doc. No. 234).

9.  Defendant Ashland's motion to compel plaintiffs to fully and completely respond to Joint Contention Interrogatory 118 is DENIED (Doc. No. 234).

10.  Defendant Ashland's motion to preclude plaintiffs from using the phrase "included, but not limited to" is DENIED (Doc. No. 234).

11.  Defendant Ashland's motion to compel plaintiffs to fully and completely respond to Interrogatory 3 is GRANTED (Doc. No. 234).

12.  Defendant fcg's motion to compel plaintiffs to fully and completely respond to Interrogatory 1 is GRANTED only to the extent that it is not already answered by Joint Contention Interrogatories 89 and 90.  Specifically, plaintiffs should set forth their contention as to the chemical content of the spent etchant and the basis therefore (Doc. No. 235).

13.  Defendant fcg's motion to compel plaintiffs to fully and completely respond to Interrogatories 2, 3, 4, and 6 is DENIED (Doc. No. 235).

14.  Defendant Carpenter's motion to compel plaintiffs to fully and completely respond to Joint Contention Interrogatories 1-66 is DENIED (Doc. No. 237).

15.  Defendant Carpenter's motion to compel plaintiffs to fully and completely respond to Interrogatories 2 and 3 is GRANTED only to the extent that they are not already answered by Joint Contention Interrogatory 86 (Doc. No. 237).

16.  Defendant Carpenter's motion to compel plaintiffs to fully and completely respond to Interrogatories 4, 6, and 7 is DENIED (Doc. No. 237).

BY THE COURT:

/S/LEGROME D. DAVIS

Legrome D. Davis, J.

3

**EXHIBIT F**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AGERE SYSTEMS, INC., CYTEC
INDUSTRIES INC., FORD MOTOR
COMPANY, SPS TECHNOLOGIES, LLC
and TI GROUP AUTOMOTIVE
SYSTEMS, LLC

　　　　　　　　　　　　　Plaintiffs,

　　　　v.

ADVANCED ENVIRONMENTAL
TECHNOLOGY CORPORATION, et al.,

　　　　　　　　　　　　　Defendants.

Civil Action No. 02-CV-3830 (LDD)

**PLAINTIFFS' RESPONSES TO JOINT
CONTENTION INTERROGATORIES OF
ADVANCED ENVIRONMENTAL
TECHNOLOGY CORPORATION,
ASHLAND, INC., CARPENTER
TECHNOLOGY CORPORATION, fcg,
inc., HANDY & HARMAN TUBE
COMPANY, INC. AND NRM
INVESTMENT COMPANY**

Plaintiffs Agere Systems, Inc., Cytec Industries Inc., Ford Motor Company, SPS

Technologies, LLC and TI Group Automotive Systems, LLC ("Plaintiffs"), by their undersigned

attorneys, object and respond to the joint contention interrogatories of Advanced Environmental

Technology Corporation ("AETC"), Ashland, Inc., Carpenter Technology Corporation, fcg, inc.,

Handy & Harman Tube Company, Inc. and NRM Investment Company (collectively,

"Defendants") as follows:

### GENERAL STATEMENTS AND OBJECTIONS

1.　　　Plaintiffs object to Defendants' Definitions, Instructions and Interrogatories to the

extent that they are not "narrowly-tailored contention interrogatories" as permitted by Judge

Davis' June 23, 2005 Order.

2.　　　Plaintiffs object to Defendants' Definitions, Instructions and Interrogatories to the

extent that they seek information outside the scope of the contentions that Plaintiffs will make as

part of their prima facie case at trial.  Plaintiffs specifically reserve the right to make any factual

overly broad. Plaintiffs further object to this Interrogatory to the extent that it seeks the discovery of the mental impressions, conclusions, strategies, opinions, research or legal theories of their attorneys or other representatives or information protected by the attorney-client privilege or any other applicable privilege. By way of further objection, Defendants' definition of "factual basis" is overbroad and unduly burdensome.

Without waiving any such objections, see Plaintiffs' response to Interrogatory No. 78.

119.    Does Agere contend that it did not receive or had credited on its behalf any monies or other consideration that reduced its share of Total Cleanup Costs of the Site from any source, including, but not limited to, settlement, insurance proceeds, predecessors, or payment under an indemnity agreement?

A.    If not, what monies did Agere receive and from what sources?

**ANSWER:** Plaintiffs object to this Interrogatory to the extent that it seeks information outside the scope of the contentions that Plaintiffs will make as part of their prima facie case at trial. Plaintiffs further object to this Interrogatory because it is vague, confusing, and ambiguous. Plaintiffs further object to this Interrogatory to the extent that it seeks the discovery of the mental impressions, conclusions, strategies, opinions, research or legal theories of their attorneys or other representatives or information protected by the attorney-client privilege or any other applicable privilege. Plaintiffs also object to this Interrogatory to the extent that its seek information and documents that are not relevant to the subject matter of this action or are not reasonably calculated to lead to the discovery of admissible evidence.

Without waiving any such objections, Plaintiffs will not ask the Court at trial to make findings of fact or conclusions of law that they "did not receive or had credited on its behalf any monies or other consideration that reduced its share of Total Cleanup Costs of the Site from any source, including, but not limited to, settlement, insurance proceeds, predecessors, or payment under an indemnity agreement." By way of further response, Plaintiffs have entered into the

following settlements with parties to this action: Novartis ($162,500); United States Navy ($100,000); Unisys ($50,000); Quikline Design ($50,000); Simon Wrecking ($50,000); Knoll ($207,500); Plymouth Tube ($425,000); Rohm and Haas ($35,000); Emhart ($100,000); Techalloy/Rahns ($3,200,000); and Thomas & Betts Corporation ($42,500).

120.    Does Cytec that it did not receive or had credited on its behalf any monies or other consideration that reduced its share of Total Cleanup Costs of the Site from any source, including, but not limited to, settlement, insurance proceeds, predecessors, or payment under an indemnity agreement?

    A.    If not, what monies did Cytec receive and from what sources?

**ANSWER:** See Plaintiffs' response to Interrogatory No. 119.

121.    Does Ford contend that it did not receive or had credited on its behalf any monies or other consideration that reduced its share of Total Cleanup Costs of the Site from any source, including, but not limited to, settlement, insurance proceeds, predecessors, or payment under an indemnity agreement?

    A.    If not, what monies did Ford receive and from what sources?

**ANSWER:** See Plaintiffs' response to Interrogatory No. 119.

122.    Does SPS contend that it did not receive or had credited on its behalf any monies or other consideration that reduced its share of Total Cleanup Costs of the Site from any source, including, but not limited to, settlement, insurance proceeds, predecessors, or payment under an indemnity agreement?

    A.    If not, what monies did SPS receive and from what sources?

**ANSWER:** See Plaintiffs' response to Interrogatory No. 119.

123.    Does TI contend that it did not receive or had credited on its behalf any monies or other consideration that reduced its share of Total Cleanup Costs of the Site from any source, including, but not limited to, settlement, insurance proceeds, predecessors, or payment under an indemnity agreement?

    A.    If not, what monies did TI receive and from what sources?

**ANSWER:** See Plaintiffs' response to Interrogatory No. 119.

124.    Do plaintiffs contend there is any "orphan share" liability associated with the Site?

    A.    If so, has the EPA agreed to reduce the Total Cleanup Cost for the Site for which plaintiffs are responsible as a result of the "orphan share" liability?

## **VERIFICATION**

Jocelyn T. de Grandpre, being duly sworn, deposes and says that she is an authorized agent of Agere Systems Inc., and that she verifies the foregoing responses and objections to Interrogatories to the Plaintiffs jointly from Advanced Environmental Technology Corporation, Ashland, Inc., Carpenter Technology Corporation, fgc, Inc., Handy & Harman Tube Company, Inc. and NRM Investment Co., for and on behalf of Agere Systems Inc.; that the matters stated therein are not within the personal knowledge of deponent; that the facts stated therein have been assembled by authorized employees and counsel of Agere Systems Inc.; and deponent is informed that the facts stated therein are true.

Dated:  April 13, 2007

Jocelyn T de Grandpre

## VERIFICATION

Thomas E. Mesevage, being duly sworn, deposes and says that he is an authorized agent of Cytec Industries Inc. and that he verifies the foregoing responses and objections to Interrogatories to the Plaintiffs jointly from Advanced Environmental Technology Corporation, Ashland, Inc., Carpenter Technology Corporation, fgc, Inc., Handy & Harman Tube Company, Inc. and NRM Investment Co., for and on behalf of Cytec Industries Inc.; that the matters stated therein are not within the personal knowledge of deponent; that the facts stated therein have been assembled by authorized employees and counsel of Cytec Industries Inc. and deponent is informed that the facts stated therein are true.

Dated: <u>April 16, 2007</u>    Signature: _____

Thomas E. Mesevage
Safety, Health and Environmental Counsel
Cytec Industries Inc.
5 Garret Mountain Plaza
West Paterson, NJ 07424

DMEAST #1923994 v3

## **VERIFICATION**

Timothy M. Guerriero, being duly sworn, deposes and says that he is an authorized agent of TI Group Automotive Systems, L.L.C., and that he verifies the foregoing responses and objections to Interrogatories to the Plaintiffs jointly from Advanced Environmental Technology Corporation, Ashland, Inc., Carpenter Technology Corporation, fgc, inc., Handy & Harman Tube Company, Inc. and NRM Investment Co., for and on behalf of TI Group Automotive Systems, L.L.C.; that the matters stated therein are not within the personal knowledge of deponent; that the facts stated therein have been assembled by authorized employees and counsel of TI Group Automotive Systems, L.L.C.; and deponent is informed that the facts stated therein are true.

Dated:  April 12, 2007

Timothy M. Guerriero, Secretary

DMEAST #1923999 v3

## **VERIFICATION**

_____Kathryn Lamping_____, being duly sworn, deposes and says that he is an

authorized agent of Ford Motor Company, and that he verifies the foregoing responses and

objections to Interrogatories to the Plaintiffs jointly from Advanced Environmental Technology

Corporation, Ashland, Inc., Carpenter Technology Corporation, fgc, Inc., Handy & Harman

Tube Company, Inc. and NRM Investment Co., for and on behalf of Ford Motor Company; that

the matters stated therein are not within the personal knowledge of deponent; that the facts stated

therein have been assembled by authorized employees and counsel of Ford Motor Company and

deponent is informed that the facts stated therein are true.

Dated:

_____

Kathryn S. Lamping

Assistant Secretary

## VERIFICATION

_Tom Cross_____, being duly sworn, deposes and says that he is an

authorized agent of SPS Technologies, LLC and that he verifies the foregoing responses and

objections to the Interrogatories to the Plaintiffs jointly from Advanced Environmental

Technology Corporation, Ashland, Inc., Carpenter Technology Corporation, fgc, Inc., Handy &

Harman Tube Company, Inc. and NRM Investment Co., for and on behalf of SPS Technologies,

LLC; that the matters stated therein are not within the personal knowledge of deponent; that the

facts stated therein have been assembled by authorized employees and counsel of SPS

Technologies, LLC and deponent is informed that the facts stated therein are true.


Dated: 12 April 2007                                    _Thomas S. Cross_____

**EXHIBIT G**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AGERE SYSTEMS, INC., ET AL.,          :
                                      :          CIVIL ACTION
            Plaintiffs,               :
                                      :
        v.                            :
                                      :
ADVANCED ENVIRONMENTAL                :          NO. 02-3830
TECHNOLOGY CORPORATION, ET AL.,       :
                                      :
            Defendants.               :

Davis, J.                                        January 11, 2008

Memorandum and Order

Presently before the Court are Plaintiffs' Motion for Leave to Amend Fourth Amended Complaint (Doc. No. 244), Defendants' Opposition to Plaintiffs' Motion for Leave to Amend the Fourth Amended Complaint (Doc. No. 251), and Plaintiffs' Reply Memorandum in Further Support of Motion for Leave to Amend Fourth Amended Complaint (Doc. No. 260). For the reasons set forth below, Plaintiffs' Motion for Leave to Amend is GRANTED in part and DENIED in part.

I. Factual and Procedural History

The instant action was filed under the Comprehensive Environmental Response, Compensation and Liability Act, as amended, 42 U.S.C. § 9601, *et seq.*, ("CERCLA") and the Pennsylvania Hazardous Sites Cleanup Act, 35 Pa. Cons. Stat. § 6020.101 *et seq.*, ("HSCA") for the recovery of costs incurred and to be incurred in response to the release or threatened release of hazardous substances at the Boarhead Farms Superfund Site (the "Site").

1

The Boarhead Farms Site became a Superfund site when it was listed by the Environmental Protection Agency ("EPA") on the National Priorities List on March 31, 1989. Thereafter, the EPA issued letters to persons allegedly responsible or potentially responsible for cleaning up the Site. Three of those parties–SPS Technologies, Inc. ("SPS"), Ford Motor Company ("Ford"), and Cytec Industries ("Cytec")–reached a settlement with the EPA in or about February 2000. Under the terms of the settlement, those entities agreed to undertake Operable Unit 1 ("OU-1") of the remedy. According to Plaintiffs, under OU-1, SPS, Ford, and Cytec agreed to:

> continue the operation and maintenance of the groundwater recovery and treatment system until the "performance standards" in the ROD are achieved and to update that system in certain respects. They also agreed to pay the EPA "Future Response Costs," costs that the EPA would incur thereafter in implementing, overseeing, or enforcing the OU-1 work . . . . SPS, Ford, and Cytec then entered into an agreement with Agere System, Inc. ("Agere"), NRM Investments ("NRM"), TI Group Automotive Systems LLC ("TI"), and Worthington Steel Company - Malvern ("Worthington") wherein those entities agreed to collectively fund and perform the OU-1 work.

(Pls.' Mot. to Amend Fourth Am. Compl. at 4.)

SPS, Ford, Cytec, and TI then reached a second settlement agreement with the EPA. Under this agreement, those entities agreed to perform Operable Unit 2 ("OU-2") of the remedy. Pursuant to OU-2 the parties agreed to reimburse the EPA approximately $7,000,000 in response costs. The entities also agreed to pay the EPA's "interim response costs," which were defined as "costs incurred by the United States between July 31, 2000 and the effective date of the Consent Decree or incurred prior to the effective date of the Consent Decree and paid after that date." (Pls.' Mot. to Amend Fourth Am. Compl. at 5.) Lastly, under OU-2, the entities agreed to pay "Future Response Costs". (Id.) These four parties–SPS, Ford, Cytec, and TI–then entered into

an agreement with Agere whereby Agere also agreed to fund and perform the OU-2 work. (Id.)

The plaintiffs allege that at the time TI agreed to fund OU-1, TI was owned by Smiths Group plc, a United Kingdom company. (Id.) In April 2001, Smiths Group plc sold the shares of TI to 329th Shelf Investment Company Limited ("329th"). (Proposed Fifth Amended Compl. ¶ 26.) Pursuant to this sale, Smiths Group plc agreed to indemnify TI and 329th for liabilities arising from the Site. Subsequently, Smiths Group plc directed its subsidiaries–Smiths Group Services Corporation and Smith Group North America, Incorporated–to make payments to the OU-1 and OU-2 Trust Accounts on behalf of TI. (Pls.' Mot. to Amend Fourth Am. Compl. at 5.)

Plaintiffs now seek to amend their complaint in light of the recent Supreme Court decision, United States v. Atlantic Research Corporation, 127 S. Ct. 2331 (2007). The proposed amendment adds claims under CERCLA § 107, removes the names of entities who settled or were never served, adds Smiths Group Services Corporation and Smiths Group North America Incorporated as plaintiffs, and makes "a few changes to allegations . . . based upon facts analyzed by Plaintiffs since filing the Fourth Amended Complaint." (Pls.' Mot. to Amend Fourth Am. Compl. at 1 and 13 n.7, Proposed Fifth Amended Compl.) Defendants oppose Plaintiffs' Motion because they contend it will "create significant delay . . . and . . . will significantly and unduly prejudice the non-settling defendants." (Defs.' Mot. in Opp'n to Pls.' Mot. for Leave to Amend the Fourth Am. Compl. at 3.)

II. Legal Standard

Under Federal Rule of Civil Procedure 15(a), leave to amend a complaint "shall be freely given when justice so requires." The Supreme Court held that leave to amend should be denied only "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or

3

dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962). See also Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). One of the circumstances under which courts may grant leave to amend a complaint arises when an intervening change in applicable law occurs. See Vanguard Sav. & Loan Ass'n v. Banks, 1995 WL 379999 *2 (E.D. Pa. June 27, 1995). However, a motion to amend need not be granted where such amendment would be futile. Arab African International Bank v. Epstein, 10 F.3d 168, 174 (3d Cir. 1993).

III. Discussion

    A. Addition of CERCLA § 107 Claims

Plaintiffs' Fourth Amended Complaint brought claims pursuant to CERCLA §§ 113(f)(1), 113(f)(3)(B), 113(g)(2), and the Pennsylvania Hazardous Sites Cleanup Act. Plaintiffs' Proposed Fifth Amended Complaint seeks to add claims under CERCLA § 107(a). In Cooper Industries, Inc. v. Aviall Services, Inc., the Supreme Court held that a private party may obtain contribution under CERCLA § 113(f)(1), "during or following a [§ 106 or § 107(a)] civil action." 543 U.S. 157, 166 (2004). Pursuant to this ruling, a party who voluntarily incurred response costs, could not sue other potentially responsible parties ("PRPs") for contribution under § 113(f)(1). In Cooper Industries, the Supreme Court left open the question of whether a party who voluntarily incurred response costs could sue PRPs for cost recovery under § 107(a).

The Court addressed this question in its recent decision, United States v. Atlantic Research Corp., 127 S. Ct. 2331 (2007). In Atlantic Research, the respondent "cleaned the site at

4

its own expense and then sought to recover some of its costs by suing the Unites States under both § 107(a) and § 113(f)." Id. at 2335. The United States moved for dismissal of the case asserting that PRPs could not bring an action for cost recovery under § 107(a). Id. The Supreme Court held that a potentially responsible party, who was not sued under § 106 or § 107(a), could seek cost recovery pursuant to § 107(a).

In Atlantic Research the Supreme Court stated that § 107(a) and § 113(f) "provide two clearly distinct remedies." 543 U.S. at 2337. However, the Court suggested that the two sections may overlap. Compare 543 U.S. at 2337 with 543 U.S. at 2338 n.6. Thus, while certain claims have been categorized as falling under the purview of either § 113(f) or § 107(a), others have yet to be designated.

Atlantic Research clearly routes two categories of cases to particular CERCLA sections. First, "costs of reimbursement to another person pursuant to a legal judgment or settlement are recoverable only under § 113(f)." 543 U.S. at 2338 n.6. Second, "costs incurred voluntarily are recoverable only by way of § 107(a)(4)(B)." Id. However, the question specifically left open in Atlantic Research is under which section a claim should be brought for costs that are not incurred voluntarily and which are not reimbursement to another party. Id. With respect to this situation, the Court did not decide "whether these compelled costs of response are recoverable under § 113(f), § 107(a), or both." Id.

In the present action, certain plaintiffs allege that they incurred costs "voluntarily" in that they were not a party to either one or both of the consent decrees (OU-1 and OU-2). Agere was not a party to either OU-1 or OU-2. Additionally, plaintiff, TI Automotive Systems Corporation, was not a party to either the OU-1 or OU-2 consent decrees. However, plaintiff TI Automotive

5

Systems Corporation alleges that it is a successor corporation of TI Automotive Systems LLC, which was party to OU-2. Agere and TI now seek recovery under § 107(a) for response costs they incurred "voluntarily." In other words, those costs the parties incurred, despite not being parties to the consent decrees.

Furthermore, plaintiffs who were parties to either or both of the consent decrees seek to add § 107(a) claims for those costs not voluntarily incurred which do not constitute reimbursement. Costs that the plaintiffs incurred as parties to the consent decrees were not incurred "voluntarily." Atlantic Research, 127 S. Ct. at 2338 n.6. While some of these costs were "reimbursement" to the United States, plaintiffs allege that others were not. Any costs not characterized as reimbursement fall into the category of response costs which the Supreme Court suggested could fall under § 107(a), § 113(f), or both. Id. Because of this uncertainty, plaintiffs would like to pursue both avenues of relief.

Defendants present several arguments in opposition to plaintiffs' request to add § 107(a) claims. The defendants argue that they will be unduly prejudiced if the plaintiffs are permitted to amend their complaint because they will be required "to defend against Plaintiffs' new legal theories" and the "parties' respective burdens of proof . . . could change dramatically." (Defs.' Mot. in Opp'n to Pls.' Mot. for Leave to Amend the Fourth Am. Compl. at 16 and 9.) Additionally, defendants argue that allowing the amendment will unduly delay the proceedings because this Court will have to determine questions left open by the Supreme Court in the Atlantic Research case. Finally, the defendants assert that allowing the plaintiffs' amendment will disrupt this Court's mechanism for settlement.

With respect to the defendants' first argument, it is an overstatement to say that the

6

defendants will have to defend against "new legal theories." Although §§ 107(a) and 113(f)

provide distinct remedies, Atlantic Research, 127 S. Ct. at 2337, both require proof of the same

elements in order to establish liability.[1] New Jersey Turnpike Auth. v. PPG Indus., Inc., 197 F.3d

96, 104 (3d Cir. 1999). See also Booth Oil Site Admin. Group v. Safety-Kleen Corp., 2007 WL

2892621 *26 (W.D.N.Y. 2007); S. Pac. Transp. Co. v. Voluntary Purchasing Groups Inc., 1997

WL 457510 *5 (N.D. Tex. 1997); Redwing Carriers, Inc. v. Saraland Apartments, 94 F.3d 1489,

1496-97 (11th Cir. 1996). Thus, although defendants will technically have to defend against a

new claim, the elements of the new § 107(a) claim are encompassed in the previous § 113(f)

claim. Therefore, this Court foresees no substantial hardship in requiring the defendants to

defend against the newly asserted § 107(a) claim.

Defendants' second argument—that allowing plaintiffs to pursue a § 107(a) claim could

change the burdens of proof—similarly lacks merit. Under § 107(a), plaintiffs have the burden

of establishing: (1) that the defendant is a PRP; (2) that a hazardous substance was disposed of at

a facility; (3) that there was a release or threatened release of a hazardous substance; and (4) that

the release or threatened release required or will require the plaintiff to incur response costs.

PPG Indus., Inc., 197 F.3d at 103-04. Pursuant to a § 113(f) claim, plaintiffs have the burden of

---

[1] "In order to prove CERCLA liability under section 107, a plaintiff must prove: 1) that the defendant is a PRP; 2) that hazardous substances were disposed of at a 'facility'; 3) that there has been a 'release' or 'threatened' release of hazardous substances from the facility into the environment; and 4) that the release or threatened release has required or will require the plaintiff to incur 'response costs.'" New Jersey Turnpike Auth. v. PPG Indus., Inc., 197 F.3d 96, 103-04 (3d Cir. 1999)(citing 42 U.S.C. § 9607(a); United States v. CDMG Realty Co., 96 F.3d 706, 712 (3d Cir.1996)). Under § 113(f), a plaintiff must establish the same four elements as under § 107 and, in addition, "each defendant's equitable share of the costs." Elementis Chromium L.P. v. Coastal States Petroleum Co., 450 F.3d 607, 612 (5th Cir. 2006)(citing Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp., 153 F.3d 344, 348 (6th Cir.1998)). See also PPG Indus., Inc., 197 F.3d at 104 n.7.

establishing the same four elements as under § 107(a) and, in addition, the burden of

"demonstrating each defendant's equitable share of the costs." Elementis Chromium L.P. v.

Coastal States Petroleum Co., 450 F.3d 607, 612 (5th Cir. 2006)(citing Centerior Serv. Co. v.

Acme Scrap Iron & Metal Corp., 153 F.3d 344, 348 (6th Cir.1998); Minyard Enters., Inc. v. Se.

Chem. & Solv. Co., 184 F.3d 373, 385 (4th Cir.1999).) See also Goodrich Corp. v. Town of

Middlebury, 311 F.3d 154, 168 (2d Cir. 2002)(stating that plaintiffs have burden under § 113(f)

of establishing both liability under § 107(a) and equitable apportionment of response costs); PPG

Indus., Inc., 197 F.3d at 104 n.7 (same).

Additionally, the burden on the defendants remains the same. In answering the Fourth

Amended Complaint, the defendants asserted counterclaims and cross-claims for contribution

pursuant to § 113(f). Thus, defendants bore the same burden as the plaintiffs in establishing

those claims. If defendants choose to reassert § 113(f) counter and cross claims, they will

continue to bear that burden.

Since the burdens of proof are essentially unchanged, defendants' argument is without

merit.

Defendants' next argue that plaintiffs' amendment will cause undue delay because this

Court will have to decide issues left open by the Supreme Court in Atlantic Research. This

protracted litigation already weathered one major Supreme Court decision during its course,[2] and

now faces a second.[3] Both Supreme Court cases dramatically changed the landscape of

---

[2] See Cooper Industries, Inc. v. Aviall Services, Inc., 543 U.S. 157 (2004).

[3] See Atlantic Research, 127 S. Ct. 2331 (2007).

8

CERCLA law.[4]  While this occurrence inevitably caused delay for all parties, the essential nature of the judicial process is one of evolution.  Defendants' argument on this point is without persuasive effect.

Defendants' final argument is that to permit this amendment will disrupt the settlement mechanism.  The addition of § 107(a) claims will change this lawsuit in that § 107(a) provides for joint and several liability whereas § 113(f) provides for equitable apportionment of costs only.[5]  The defendants argue that allowing the § 107(a) claim against the remaining defendants constitutes unfair prejudice because twenty-five defendants have previously settled, leaving those entities free from the grasp of joint and several liability.

The decision to settle or litigate legal contentions necessarily involves positing various contingencies, assessing the risks associated with those contingencies, and determining the likelihood  that such a contingency will occur.  An intervening change in the law, no matter how unlikely, is always a possibility, and parties bear the risk that such a contingency will come to realization.[6]

_____

[4]Joy E. Palazzo, *U.S. Supreme Court Finishes Rerouting Traffic on the CERLCA Highway*, 45-AUG Hous. Law. 51 (2007)("[T]he Supreme Court sent shockwaves through the world of environmental litigation with Cooper Industries . . . in which it overturned 20 years of case law explaining how CERCLA worked in such cases.").

[5]The parties suggest that whether § 107 provides for joint and several liability is an open question of law.  Additionally, the Supreme Court specifically declined to resolve the issue in Atlantic Research, 127 S. Ct. at 2339 n.7.  However, the current law in the Third Circuit is that § 107 provides for joint and several liability and § 113 provides for equitable apportionment of costs.  E.I. DuPont De Nemours and Co. v. U.S., 460 F.3d 515, 521-22 (3d Cir. 2006)(reversed on other grounds).

[6]Cf. U.S. v. Bank of New York, 14 F.3d 756, 759 (2d Cir. 1994)(stating that "a change in the law occurring after a settlement for a sum of money is not a basis for vacating the settlement" because the decision to settle is a "measured choice that balance[s] the risks and uncertainty

9

Additionally, the defendants' claims of prejudice are overstated. As the Supreme Court noted in Atlantic Research, a defendant in "a § 107(a) suit could blunt any inequitable distribution of costs by filing a § 113(f) counterclaim." 127 S. Ct. at 2339. Each party facing a new § 107(a) claim in the proposed amended complaint had, and presumably will maintain, counterclaims and cross-claims for contribution against all other parties to this action. Thus, there will be no need to bring additional separate lawsuits because resolution of the § 113(f) counter-claims will "necessitate the equitable apportionment of costs among the liable parties, including the PRP that filed the § 107(a) action." 127 S. Ct. at 2339.

For all of the above reasons, plaintiffs' motion for leave to amend the complaint to assert claims pursuant to § 107(a) is granted.

### B.  Deletion of Settled Entities and Entities that were Never Served

The plaintiffs' proposed Fifth Amended Complaint removes entities that settled or were never served from the caption of the complaint. Allegations in the body of the complaint regarding these entities were likewise stricken. The defendants have not objected to this change and therefore it will be granted as unopposed.

### C.  Addition of Smiths Group Services Corporation and Smiths Group North America Incorporated as Plaintiffs

Plaintiffs' proposed Fifth Amended Complaint seeks to add two new plaintiffs–Smiths Group Services Corporation and Smith Group North America, Incorporated ("Smiths")–to the lawsuit. According to the plaintiffs, these two entities contributed money to the trust accounts on behalf of the current plaintiff, TI Group Automotive Systems, LLC , pursuant to an

---

inherent in settlement agreements.").

10

indemnification agreement. (Pls.' Mot. to Amend Fourth Am. Compl. at 10.) Plaintiffs argue that the new entities are "merely indemnitors", that defendants were aware of these entities because the trust account ledgers reflect deposits made by them, and that no new discovery will be necessary because plaintiffs produced documentation concerning the Smiths entities. (Pls.' Mot. to Amend Fourth Am. Compl. at 12.)

Defendants vigorously oppose the addition of these two entities. Defendants assert that plaintiffs are attempting to make an end-run around the statute of limitations by amending the complaint to add Smiths. According to the defendants, the statute of limitations has run for both § 107(a) and § 113(f) claims, and plaintiffs' amendment adding Smiths does not relate back because it fails to meet the requirements of Federal Rule of Civil Procedure 15(c).

Plaintiffs submitted a reply in this matter and asserted the following in response to defendants' argument:

> This Court should permit the amendment now for the same reasons it permitted the last amendment. This Court there permitted the substitution of the five individual members of the Boarhead Farm Agreement Group, finding that they were the real parties in interest, and noting that the real party in interest may be substituted at any time. It additionally noted that the concerns underlying elements of Rule 15(c)(3), notice and prejudice to the Defendants, were not at issue.

(Pls.' Reply Mem. In Supp. of Mot. to Amend Fourth Am. Compl. at 8.) The Court disagrees. Smiths are not in the same position as the five individual members of the Boardhead Farm Agreement Group. Those five parties, which included plaintiff TI, composed the Boarhead Farm Agreement Group. Smiths, however, are in a different position because they were directed by their parent company to make contributions to the trust accounts on behalf of TI. Thus, Smiths are two steps removed from plaintiff TI, are not in the same position, and are not real parties in

11

interest.

Additionally, the "concerns underlying elements of Rule 15(c)(3)" are at issue. The statute of limitations, with respect to Smiths' claims, has already passed.[7] Thus, in order to bring these claims, Smiths must avail themselves of the relation back provision of Rule 15(c)(3).[8] In order for Smiths' claims to relate back, "all three conditions specified in Rule 15(c)(3) must be satisfied." Nelson v. County of Allegheny, 60 F.3d 1010, 1014 (1995). Thus, Smiths must demonstrate: (1) The claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth in the original pleading; (2) The defendants received notice such that they will not be prejudiced in maintaining a defense on the merits; and (3) The defendants knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought with the original claims. Id. at 1014. See also Fed. R. Civ. P. 15(c).

In this case, the plaintiffs' proposed amendment fails with respect to the third prong. "Defendants did not know, nor should they have known before the expiration of the limitations period that, but for a mistake, they would have been sued directly by these plaintiffs."[9] Id. at 1015. Here, plaintiffs failed to show a "mistake concerning the identity of the proper party."

---

[7]Defendants assert that the statute of limitations passed with respect to both Smiths' § 113(f) and § 107(a) claims. (Defs.' Mot. in Opp'n to Pls.' Mot. for Leave to Amend the Fourth Am. Compl. at 25-32.) Plaintiffs do not contest this point.

[8]Although Federal Rule of Civil Procedure 15 appears on its face to apply solely to the addition of defendants, its application has been extended by analogy to the addition of plaintiffs. Nelson v. County of Allegheny, 60 F.3d 1010, 1014 n.7 (1995).

[9]Here, as in Nelson, there is "no showing of specific prejudice in the sense of lost or destroyed evidence . . . . [However at] some point, defendants should have notice of who their adversaries are." 60 F.3d at 1015.

12

Fed. R. Civ. P. 15(c). Rather, plaintiffs and Smiths have known about the indemnity agreement and Smiths' rights under that agreement since at least 2001, which was prior to the filing of plaintiffs' original complaint. (Pls.' Mot to Amend Fourth Am. Compl. at 5.) Here, as in Nelson, there is no allegation that Smiths were unaware of their right to join this litigation. Smiths made an affirmative choice not to join this lawsuit and, since there was no mistake, they are bound by that decision. See Arthur v. Maersk, Inc., 434 F.3d 196, 204 n.9 (3d. Cir. 2006). Rule 15(c) is not meant to allow plaintiffs to make an end-run around the statute of limitations and defendants are entitled to finality, at some point, with respect to which entities they face in litigation.

For the foregoing reasons, plaintiffs' amended complaint is denied with respect to the addition of Smiths Group Services Corporation and Smith Group North America, Incorporated.

### D. Changes to Allegations Based Upon Facts Analyzed by Plaintiffs Since Filing the Fourth Amended Complaint

Plaintiffs casually mention in a footnote at the end of their motion that "[a] few changes to allegations were made based upon facts analyzed by Plaintiffs since filing of the Fourth Amended Complaint." (Pls.' Mot to Amend the Fourth Am. Compl. at 13.) Defendants argue that these changes are significant because they relate "specifically to the Defendants' contentions concerning the applicability of CERCLA's six year statute of limitations." (Defs.' Mot. in Opp'n to Pls.' Mot. for Leave to Amend the Fourth Am. Compl. at 24.) However, whether or not a change is "significant" is not pertinent to a Rule 15 inquiry. Rather, "prejudice to the non-moving party is the touchstone for the denial of an amendment," Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989), and "it is the opposing party's burden to prove that such prejudice

will occur." <u>Kiser v. General Elec. Corp.</u>, 831 F.2d 423, 428 (3d Cir. 1987). The opposing party "must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the . . . amendments been timely." <u>Bechtel</u>, 886 F.2d at 652 (quoting <u>Heyl & Patterson Intern., Inc. v. F. D. Rich Housing of Virgin Islands</u>, 663 F.2d 419, 426 (3d Cir. 1981)).

Defendants have not articulated any specific prejudice with respect to this amendment. Nor have defendants alleged that plaintiffs acted with undue delay. Rather, defendants appear to suggest that plaintiffs' amended pleading may defeat a statute of limitations defense. In the absence of prejudice or undue delay, plaintiffs are entitled to amend their complaint, even if this results in new allegations that undermine a particular defense.

For the foregoing reasons, plaintiffs' leave to amend is granted in this respect.

IV. Conclusion

For all of the above reasons, plaintiffs' Motion for Leave to Amend Fourth Amended Complaint (Doc. No. 244) is GRANTED in part and DENIED in part. An appropriate order follows.

14