**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AGERE SYSTEMS, INC., et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No. 02-CV-3830 |
| | : | |
| ADVANCED ENVIRONMENTAL | : | |
| TECHNOLOGY CORPORATION, et al., | : | |
| | : | |
| Defendants. | : | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT OF DEFENDANT ASHLAND INC.**

Defendant Ashland Inc. (hereinafter, "Ashland"), by and through its undersigned counsel, respectfully submits its within Reply Memorandum of Law in Support of its Motion for Partial Summary Judgment on Counts I, II, III and IV of the Plaintiff's Fifth Amended Complaint and all cross-claims, deemed or otherwise, against Ashland.

**I.    INTRODUCTION**

Ashland moved for partial summary judgment against the Plaintiffs, Agere Systems, Inc., Cytech Industries, Inc., Ford Motor Company, SPS Technologies, LLC and TI Group Automotive Systems, LLC ("Plaintiffs"), on the grounds that the evidence the Plaintiffs identified to establish that Ashland-generated waste was transported to and discharged at the Boarhead Farm Site failed to raise a genuine issue of material fact as to five of the six alleged Ashland-generated waste streams the Plaintiffs contend are involved in this case. Plaintiffs' response to this motion consists of the presentation of additional and even more speculative claims about what the evidence purports to show and the interjection of new facts concerning drums bearing Ashland labels found at the Boarhead Farm Site that have nothing to do with the Plaintiffs' claims against Ashland. Moreover, Plaintiffs' response misstates the burden of proof

of a plaintiff when a defendant such as Ashland is the moving party on a motion for summary judgment.  Accordingly, Ashland is compelled to file this reply.

## II.   PLAINTIFFS' FACTUAL CONTENTION AS TO A DRUM BEARING AN ASHLAND LABEL FOUND AT THE BOARHEAD FARM SITE

In their Preliminary Statement of their Brief, Plaintiffs make the bold statement, "Finally, Plaintiffs will rely upon the fact that Ashland drums, including a drum containing the same types of compounds generated at Ashland's facility, were found buried at the Site."  (Plaintiffs' Brief in Opposition to Defendant Ashland Inc.'s Motion for Partial Summary Judgment, p. 2.)  Not only is this an inaccurate statement of the evidence but constitutes no more than a red herring immaterial to the issues at hand.

Plaintiffs attach to their Brief a declaration of R. Craig Coslett.  According to Mr. Coslettt, an "intact" Ashland drum was excavated from the Boarhead Farm Site on June 18, 2003 and its contents were chemically analyzed.  (Declaration of R. Craig Coslettt, ¶ 8.)[1]  According to Exhibit "A" to his Declaration, the Ashland drum referenced by Coslett was assigned "Drum No. BF18."  Coslett describes the analytical results of Drum BF18 as containing "among other things benzene, several other benzene compounds, phenols, methylene chloride, acetone, toluene and toluene compounds."  (Declaration of R. Craig Coslett, ¶ 10) (emphasis added.)

Mr. Coslett's description is misleading.  The Generator Approval Notification for drum BF-18 produced by Plaintiffs in this case described the waste as "Organic Resin, Solidified." (Exhibit "15".)  Furthermore, Mr. Coslett's own Waste Characterization Report for this drum describes the drum contents as "Organic Resin (solidified) with Benzene at .88 ppm and toluene at 140 ppm.  (Exhibit "16".)

---

[1] Coslett also refers to a drum fragment excavated on 8/11/03 and a second drum excavated on 9/2/03, but did not state whether any chemical analysis was performed on the contents of these alleged drums.  (Declaration of R. Craig Coslett, ¶ 8.)

Thus, this drum was not among the 4,345 gallons of "drummed solvent wastes" that Plaintiffs contend were disposed of at the Boarhead Farm Site.  (Plaintiffs' Amended and Supplemental Responses to Contention Interrogatories, p. 60, attached to Ashland's Motion for Partial Summary Judgment as Exhibit "1".)  The bill of lading that Plaintiffs rely upon to establish the quantity of "drummed solvent wastes" is among the documents collectively identified as Exhibit "4" to Plaintiff's Brief, and referenced as ASHL0097, which identified "64 Drums of Isopropanol, 15 Drums of Methanol" -- not solidified organic resin with trace amounts of benzene and toluene which are the alleged contents of Drum BF-18.  Furthermore, the driver indicated on the bill of lading appears to be Ed Long, not one of the three drivers who purportedly took Ashland-generated waste to the Boarhead Farm Site. More importantly, there is no evidence that BF-18 was a drum picked up by DeRewal from Ashland's Great Meadows plant.  Ashland's practice was to properly label any waste placed in a drum.  (8/21/96 deposition of A. Curley, Exh. "17", pp. 202-204.) Drum BF-18 is not labeled as containing any waste, much less isopropanol or methanol.  Thus, the existence of this "Ashland drum" is completely irrelevant to Ashland's motion and is not probative of the disposal at the Boarhead Farm Site of wastes generated at Ashland's Great Meadows plant.

III.   <u>ARGUMENT</u>

 A. **Ashland's Motion Complied with Rule 56 of the Federal Rules of Civil Procedure**

Plaintiffs' alternative basis for opposing Ashland's motion is an alleged failure to comply with Rule 56 of the Federal Rules of Civil Procedure by failing to make the evidence cited in Ashland's motion "part of the record for this motion through one or more affidavits or

otherwise." (Plaintiffs' Brief in Opposition to Defendant Ashland Inc.'s Motion for Partial Summary Judgment, p. 3 n.1.) Plaintiffs' interpretation of Rule 56 is utterly erroneous.

Rule 56(b) plainly states that a defendant may move for summary judgment at any time "with or without supporting affidivits" "on all or part of the claim." Ashland, as "a party seeking summary judgment," had "the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." <u>Celotex Corporation v. Catrett</u>, 477 U.S. 317, 323 (1986), quoting Rule 56(c). There is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponents claim." <u>Id.</u> Moreover, "in cases like the instant one, where the nonmoving party will bear the burden of proof at trial on dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories and admissions on file.' " <u>Id.</u> at 324. In a CERCLA case, a defendant does not have the burden of proving that none of its hazardous waste was disposed of at a particular site. <u>Dana Corp. v. American Standard, Inc.</u>, 866 F. Supp. 1481, 1494 (N.D. Ind. 1994) (citation omitted). As a party moving for summary judgment, a defendant "need only establish that the plaintiffs have insufficient evidence to prove each element of their claims; the defendants have no burden to prove that the plaintiffs' claims are not true. <u>Id.</u> (citations omitted).

Ashland's motion complies with these requirements. Ashland referenced Plaintiffs' Amended and Supplemental Responses to Contention Interrogatories (Exhibit "1" to Ashland's Motion for Partial Summary Judgment) and the evidence cited by Plaintiffs to establish their case against Ashland. As the evidence at issue on Ashland's motion is that relied upon by the

Plaintiffs, it need not have been authenticated or made part of the record by affidavit. The absurdity of the Plaintiffs' position is evident in the three instances in which Plaintiffs complained that Ashland relied upon unauthenticated evidence. First, Plaintiffs argued that the Bucks County Court of Common Pleas order dated October 15, 1976 in No. 76-9647 was unauthenticated. Curiously, Plaintiffs did not raise this objection when they answered Ashland's Contention Interrogatories concerning this very Order. Plaintiffs acknowledged the existence of the injunction, merely stating in their answers to Contention Interrogatories that it had no effect on DeRewal's disposal practices. (Exhibit "1", pp. 13, 72-73.)[2]

Plaintiffs also miss the point as to the City of Philadelphia's billing of DeRewal for sewer charges due to his illegal dumping at the Wissinoming Site. (Exhibit "4" to Ashland's motion.) While this is not conclusive evidence that all of Ashland's spent acid and non-spent acid wastes were disposed of at the Wissinoming Plant, it is relevant to the validity of the Plaintiffs' contention that some portion of Ashland's wastes were disposed of at the Boarhead Farm Site. Mr. Healey's decision to bill DeRewal for sewer charges for waste disposal at the Wissinoming Site was based on the conclusion that all Ashland-generated waste during the Wissinoming Period was taken to that site which, in turn, was based on input from Manfred DeRewal. (Exhibit "18", Healey Dep., p. 52.)

Finally, Plaintiffs fail to acknowledge the purpose of Ashland's references to the earlier EPA depositions of Freddie DeRewal, John Barsum and Jeffrey Shaak. Ashland did not cite these in their motion as admissible evidence that none of Ashland's wastes were disposed of at the Boarhead Farm Site, a proposition that these depositions nevertheless clearly support, but to

---

[2] Plaintiffs further contend in their brief that "not a single driver testified that the Site was 'shut down' during the Wissinoming Period." (Plaintiffs' Brief at 20.) Plaintiffs conveniently overlook John Barsum's testimony that he avoided the Boarhead Farm Site when the "Farm got shut down." (Exhibit "13", pp. 244-245, 329-330.)

demonstrate to the Court that the three individuals upon whose testimony Plaintiffs rely have made statements in the past that are at polar opposites with their testimony in this case. Obviously, these prior statements are fertile ground for cross-examination in the event that these witnesses testify.  They are also relevant to the Court's evaluation of whether or not the imprecise recollection of these witnesses is such that they do not create a genuine issue of material fact concerning the disposal of the non-spent acid waste streams.  Thus, all of the evidence identified in Ashland's motion is part of the record and can be considered by the Court.

**B.     Plaintiffs' Response Does Not Create a Genuine Issue of Material Fact Concerning the Disposal of Ashland's Waste at the Boarhead Farm Site Other Than Mixed Acid Waste**

Plaintiffs offer three reasons why, despite the testimony of the three DeRewal drivers to the contrary, there is a genuine issue of material fact that some of Ashland's waste streams, in addition to the spent/mixed nitrating acid, were taken to the Boarhead Farm Site for disposal. Each of these reasons should similarly be rejected.

**1.     The Three DeRewal Drivers, If They Are To Be Believed, Knew Exactly What Ashland Wastes They Took and Did Not Take to the Boarhead Farm Site**

Plaintiffs misstate Ashland's contentions in the Introduction Section of their brief:

> "Ashland argues that the only waste picked up from its facility was its spent mixed acid, and that, therefore, the only waste that could have been disposed of at the Site was those spent mixed acid wastes."

(Plaintiffs' Brief, p. 1.)

On the contrary, at the top of page 6 of its Memorandum of Law, Ashland stated, "For purposes of this motion, Ashland does not contest that Plaintiffs' computations or that DCC, as arranged by AETC, did pick up these wastes (spent/mixed nitrating acid, dye waste, pthalide acid wastes, CDN waste, drum solvent waste, bulk solvent waste) in the volumetric amounts alleged

by Plaintiffs."  The obvious reason for Ashland's willingness to concede this point for purposes of this motion is the fact that the bills of lading cited by the Plaintiffs constituted more persuasive evidence that all of these waste streams were picked up by DCC drivers than the drivers' recent "recollections."  Thus, for purposes of Ashland's motion there is no genuine issue of material fact that all six waste streams were picked up by DCC drivers.

The critical issue of fact raised by Ashland's motion, however, is whether any of the other five waste streams found their way to the Boarhead Farm Site.  Unlike the factual issue of <u>what</u> was picked up, the critical fact issue as to <u>where</u> it was disposed has no corroborating documentation.  In fact, the only evidence that supports any of Plaintiffs' contentions as to the disposal sites for Ashland wastes is the testimony of the three DeRewal drivers, John Barsum, Jeffrey Shaak and Freddie DeRewal.  As outlined in Ashland's motion, not one of these three drivers testified that they disposed of any Ashland waste at the Boarhead Farm Site other than spent/mixed nitrating acid.  In a frustrated effort to close this enormous evidentiary gap in trying to establish a "nexus" between Ashland's non-acid wastes and their disposal at the Boarhead Farm Site, Plaintiffs resort to what amounts to an unsupported plea that the Court defy logic and reason and read exactly the opposite into the testimony of the drivers on which Plaintiffs rely.

First, Plaintiffs propose the following analysis:

> "The logical consequence of Ashland's own argument is that, if DCC drivers in fact picked up types of Ashland's waste in addition to its mixed spent acids, then those wastes were also disposed of at the site."

(Plaintiffs' Brief at p. 15.)

The mere fact that a generator's hazardous waste may have been hauled by certain identified drivers does nothing to prove that such waste was disposed of at a particular site when the drivers have no recollection of taking it there.  <u>Dana Corporation v. American Standard, Inc.</u>,

supra, 860 F. Supp. at 1522-23. Moreover, Plaintiffs' so-called "logical consequence" must necessarily assume that all waste picked up by DCC's drivers went to the Boarhead Farm Site, which assumption is in stark conflict with Plaintiffs' own admission that during the Wissinoming period only a small percentage of waste went to the Boarhead Farm Site. (Exhibit "1" to Ashland's Motion for Partial Summary Judgment, p. 29.)  Plaintiffs further ignore the points made in Ashland's motion that according to the testimony of these drivers, it was the exception, not the rule, for any Ashland-generated waste to be taken to the Boarhead Farm Site rather than the Wissinoming facility and that the reason that spent mixed acid waste sometimes found its way to the Boarhead Farm Site was due to its sulfuric acid content which, in contrast to the non-acid Ashland waste strams, produced yellow fumes which created the risk of discovery of DCC's illegal use of the Wissinoming facility as a waste disposal site.  (Ashland Memorandum of Law, p. 16.)

Plaintiffs also contend that the DCC drivers were unable to differentiate between various waste streams and, therefore, on the few occasions that they took waste to the Boarhead Farm Site, the truck loads they hauled must have somehow included waste streams other than spent mixed acid wastes.  Plaintiffs support this baseless argument by contending that the waste streams were not all that different and, for example, "sulfuric", in John Barsum's mind, was not limited to spent/mixed nitrating acid because of "high concentrations of nitric and sulfuric acid in Ashland's dye waste water and 1.5% sulfuric acid in the pthalide acid waste."  (Plaintiffs' Brief at p. 17.)

To compare the other five waste streams to spent/mixed nitrating acid solely on the basis of acid content is absurd.  Ashland's Arthur Curley described the spent/mixed nitrating acid waste as "very dangerous stuff" that would "fume" into steam and possibly yellow fumes if

mixed with water.  (Curley August 21, 1996 deposition, Exhibit "17", pp. 38-40.)  The bills of lading for the spent/mixed nitrating acid identified the material as "corrosive liquid," noting: "corrosive labels required."  (See, e.g., ASHL0051, Exhibit "4" to Plaintiffs' Brief.)  Plaintiffs' own expert, Dr. Exner, determined that the spent/mixed nitrating acid consisted of 83% sulfuric acid and 3.5% nitric acid as compared to the pthalide acid waste which contained only 1.5 % sulfuric acid.  (Exhibit "5" to Ashland Motion for Partial Summary Judgment, p. 6.)

The bills of lading for the spent/mixed acid are easily contrasted with the bills of lading for the other bulk waste streams:

> Waste water from dyes - "No Labels Required" (Plaintiffs' Exhibit "4", ASHL00153)

> Phthalaide water layer- 2% corrosive liquid "corrosive labels required" (Plaintiffs' Exhibit "4", ASHL00178)

> Waste water from CDN – "No Labels Required" (ASHL00179.)[3]

These are consistent with AETC's description of Ashland's wastes in Exhibit "6" to Ashland's Motion for Partial Summary Judgment which stated that the CDN water waste and dye waste waters were as described in aqueous streams and other materials.[4]

---

[3] Bulk solvent wastes are not referenced here because, according to Plaintiffs' analysis (Exhibit "4", part 1), neither DeRewal, Barsum nor Shaak hauled bulk solvents.

[4] Plaintiffs contend that the dye waste water contained "high concentrations of nitric and sulfuric acid." (Brief , p. 4 citing Dr. Exner's report.)  Exner made this unsupported statement based upon his review of the literature, not Ashland's own processes.  Arthur Curley testified that this waste was "a very dilute wastewater with a pretty intense color from the dye."  (Curley 8/21/96 deposition, Exh. "16", p. 69.)  Exner testified at his discovery deposition that he had very little experience with dye manufacturing and searched the general literature for information.  (Exh. "19", Exner deposition, pp. 79-81, 86.)  That literature, however, provides no analysis of waste streams from dye manufacturing. Exner did not define what he meant by "high concentrations of nitric and sulfuric acid." Thus, to the extent that this is an opinion as to the acid content of Ashland's dye waste water, it is inadmissible.  Hurst v. United States, 882 F.2d 306, 311 (8th Cir. 1989).  See also United States v. Atlas Minerals & Chemicals, Inc., 1993 WL 518421, *2 (E.D.Pa. 1993).  In any event, the only evidence of the content of this dye water

If the "new" testimony of the three DCC drivers that Ashland waste was occasionally taken to the Boarhead Farm Site is to be believed, then it is more likely than not that such waste was spent/mixed nitrating acid (as they testified) because that waste was the most corrosive.  In fact, two of them clearly testified that it was the spent/mixed nitrating acid waste that was taken to the Boarhead Farm Site rather than the Wissinoming Site because of the unique characteristics of that waste.  Freddie DeRewal testified that the waste he took to Boarhead gave off "a lot of fumes, a lot of nitric fumes coming off."  (DeRewal deposition, Exhibit "12" to Ashland's Motion for Partial Summary Judgment, p. 68.)  John Barsum similarly identified the spent/mixed nitrating acid as the Ashland waste that was taken to the Boarhead Farm Site because he transferred it to a neutralization tank at the site.  (Barsum dep., Exh. "13", pp. 183-84.)  It is undisputed that only the spent/mixed acid waste had to be neutralized.

The simple explanation for the drivers' inability to recall that they picked up several different wastes from Ashland's Great Meadows plant is poor memory.  As Mr. Shaak stated when presented with bills of lading that he had signed:

> Q.    You will recognize your signature, won't you?
>
> A.    Yes.  I never knew we made so many trips up there.
>        There is me.

(Exh. "14", p. 72.)  This failure to recall certainly cannot be twisted into evidence of anything beyond pure conjecture that <u>all</u> of the types of Ashland wastes generated at the Great Meadows plant were taken to the Boarhead Farm Site as Plaintiffs contend.

---

clearly establishes there were no substantial quantities whatsoever of acid in this waste stream. (Exhibit "6" to Ashland's Motion for Partial Summary Judgment.)

**2.    Evidence Concerning other DCC Drivers Does Not Create a Genuine Issue of Fact**

Plaintiffs add new drivers to the mix in their response to Ashland's motion.  First is June Stephens.  Here, Plaintiffs cite testimony that they did not even reference in their Answers to Defendant's Contention Interrogatories.  In any event, Ms. Stephens never testified that she actually took a single load of Ashland waste to the Boarhead Farm Site.  At best, she merely confirmed what was indicated on a bill of lading that she had picked up one load of mixed spent acid waste.  Plaintiffs then make the quantum leap that since Ms. Stevens testified that during her entire employment by DCC as a truck driver she took every load of waste to the Boarhead Farm Site and maybe two or three to Wissinoming and two or three to Ontario, this one Ashland load must have been taken to the Boarhead Farm Site.  The converse is much more likely to be true, namely that this single Ashland load of waste was among those that Ms. Stephens took to the Wissinoming facility.  In any event, the testimony concerning her years as a truck driver for DCC cited by Plaintiffs involved removal of wastes for National Rolling Mills and Merit Metals, not Ashland.

Plaintiffs also refer to testimony by another driver, Bruce DeRewal.  Plaintiffs identified no testimony, because there is none, in which Bruce DeRewal alleged that he took Ashland waste to the Boarhead Farm Site.  If anything, Bruce DeRewal's testimony confirms Ashland's position that no Ashland waste of any type was taken to the Boarhead Farm Site.

Finally, and perhaps most amazingly, Plaintiffs identify two deceased drivers, Edward Czypecki, a/k/a Ed Long, and Richard Minthorn.  Despite the fact that these drivers will not be able to offer testimony at trial and were never deposed, Plaintiffs ask the Court to infer from their mere employment as DCC truck drivers and the fact that they picked up Ashland waste from the Great Meadows plant that some of the waste they picked up must have been disposed of at the

Boarhead Farm Site.  Plaintiffs resort to more speculation, this time premised on nothing other than wishful testimony from the grave rather than admissible  evidence supportive of the existence of a genuine issue of material fact.

### 3.    Ashland Drum

As discussed on pages 2 and 3 of this Memorandum of Law, the drum bearing an Ashland label uncovered at the Boarhead Farm Site contained, upon an analysis of the contents thereof, a solidified resin with trace amounts of benzene and toluene.  This was <u>not</u> one of the types of drum wastes that Plaintiffs contend was removed by DCC from Ashland's Great Meadows plant.  Despite the irrelevance of this evidence, Plaintiffs make the following statement in their Brief:

> "Discovery of the buried Ashland drums and drum fragments shows that some type of Ashland waste other than Ashland's mixed spent acid was disposed of at the site, providing further grounds to deny Ashland's Motion for Partial Summary Judgment."

(Plaintiffs Brief, at p. 19.)

Plaintiffs' logic is contrary to the law and the facts of this case.  "Mere disposal of drums at the Site is not sufficient to establish liability under CERCLA."  <u>Dana Corp. v. American Standard, Inc.</u>, supra., 866 F. Supp. at 1511, citing <u>B.F. Goodrich v. Murtha</u>, 840 F. Supp. 180, (D. Conn. 1993) and quoting <u>United States v. Wade</u>, 577 F. Supp. 1326, 1341-42 (E.D. Pa. 1983) ("holding 'mere placement of drums at the site will not suffice to establish [liability],' in the absence of such information as to their contents, number and frequency of disposal.")

In this case, the defect in Plaintiffs' logic is that the alleged waste in the unearthed Ashland-labeled drum is not one of the five other types of waste generated at the Great Meadows plant which Plaintiffs claim was taken by DeRewal to the Boarhead Farm Site.  Plaintiffs make

two baseless grand assumptions that they rely upon: (1) that it was Ashland material in these drums; and (2) that such material was hazardous waste. These assumptions ignore other more likely scenarios accounting for an Ashland-labeled drum being found at the Boarhead Farm Site. Other such scenarios can be summarized as follows:

(1) The drum contained Ashland products sold by Ashland to DCC. In fact, in this case, there is evidence of sales by Ashland to DeRewal Chemical of ethyl ether, isopropanol, acetic acid, sulfuric acid, toluene and sodium acetate. (Collectively attached as Exhibit "20".) A sale of a product to another does not make the manufacturer an arranger of "waste." Morton Inter., Inc. v. A.E. Staley Mfg. Co., 343 F.3d 669, 683-84 (3d. Cir. 2003).

(2) An empty Ashland-labeled drum was filled with one or more third-parties' materials. Arthur Curley testified that when he came to the Great Meadows plant in 1974, there was a huge backlog of empty drums that he was in the process of selling because such drums were a desired commodity. If any drums were being used to contain Ashland waste, they would have been labeled as such. (8/21/96 dep. of A. Curley, Exh. "17", pp. 202-204.)

(3) Ashland sold an Ashland-produced product to a third-party that was later disposed of at the Boarhead Farm Site.

Such other plausible, if not more likely, explanations for the presence of this single Ashland-labeled drum at the Boarhead Farm Site further highlights the Plaintiffs' inability and failure to proffer sufficient evidence of the existence of a liability-inducing "nexus" between this drum and the Boarhead Farm Site. General Elec. Co. v. Aamco Transmissions, Inc., 962 F.2d 281, 286 (2d. Cir. 1992.) In the case of the six alleged waste streams from Ashland's Great Meadows plant, a possible nexus between Ashland and the Boarhead Farm Site exists only to the extent that DCC picked up some waste material from Ashland's Great Meadows plant. Such

evidence, however, does not exist for the disposal at the Boarhead Farm Site of the Ashland-labeled drum or drum fragment. Accordingly, Plaintiffs' "evidence" does not create a genuine issue of material fact sufficient to preclude Ashland from partial summary judgment in this case.

IV.     <u>CONCLUSION</u>

Plaintiffs cannot demonstrate that they have sufficient admissible evidence to support a claim that the five, non-spent/mixed nitrating acid waste streams generated at Ashland's Great Meadows plant were disposed of at the Boarhead Farm Site or that Ashland arranged for such disposal. Therefore, Ashland respectfully submits that its motion for partial summary judgment should be granted.

Respectfully submitted,

/s/ Jeffrey L. Pettit
JEFFREY L. PETTIT, ESQUIRE
Attorney I.D. No. 21624
RICHARD C. BIEDRZYCKI, ESQUIRE
Attorney I.D. No. 30604
PHELAN, PETTIT & BIEDRZYCKI
121 South Broad Street
Suite 1600
Philadelphia, PA 19107
(215) 546-0500

Counsel for Defendant Ashland Inc.

Date:  April 2, 2008

G:\DATA\1357-29\Pldgs\Ashland Partial MSJ\Reply-Memo.doc

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 2, 2008, a true and correct copy of the

Reply Memorandum of Law in Support of Motion for Partial Summary Judgment of Defendant

Ashland Inc.  was served by e-mail on all counsel of record addressed as follows:

Glenn A. Harris, Esquire
Ballard Spahr Andrews & Ingersoll, LLP
Plaza 1000 - Suite 500
Main Street
Voorhees, NJ 08043-4636
e-mail:  harrisg@ballardspahr.com
***Counsel for Plaintiffs***

Laurie J. Sands, Esquire
Wolff & Samson, PC
280 Corporate Center
5 Becker Farm Road
Roseland, New Jersey  07068-1776
e-mail:  lsands@wolffsamson.com
***Advanced Environmental Technology Corp.***

Robert M. Morris, Esquire
Morris & Adelman, P.C.
1920 Chestnut Street
P.O. Box 30477
Philadelphia, PA  19103
e-mail:  rmmorris@morrisadelman.com
***Advanced Environmental Technology Corp.***

Lynn Wright, Esquire
Edwards & Angell, LLP
750 Lexington Avenue
New York, New York  10022-1200
e-mail:  lwright@eapdlaw.com
***Carpenter Technology Corporation***

Christopher R. Booth, Jr., Esquire
Booth & Tucker, LLP
One Penn Center at Suburban Station
1617 JFK Boulevard, Suite 1700
Philadelphia, PA 19103
e-mail:  cbooth@boothtucker.com
***Carpenter Technology Corporation***

Seth v.d.H. Cooley, Esquire
Duane Morris LLP
Suite 4200, One Liberty Place
Philadelphia, PA  19103-7396
e-mail:  scooley@duanemorris.com
***Flexible Circuits and Etched Circuits***

Melissa Flax, Esquire
Carella, Byrne, Bain, Gilfillian, Cecchi,
Stewart & Olstein, P.C.
5 Becker Farm Road
Roseland, New Jersey  07068-1739
e-mail:  mflax@carellabyrne.com
***Handy & Harman Tube Company***

Edward Fackenthal, Esquire
Suite 209 - One Montgomery Plaza
Norristown, PA  19401
e-mail:  edwardfackenthal@cs.com
***NRM Investment Co.***


                                                   s/Jeffrey L. Pettit
                                        JEFFREY L. PETTIT

Date:  April 2, 2008