IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AGERE SYSTEMS, INC., CYTEC INDUSTRIES INC., FORD MOTOR COMPANY, SPS TECHNOLOGIES, LLC and TI GROUP AUTOMOTIVE SYSTEMS L.L.C., <br><br> Plaintiffs, <br> v. <br><br> ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, et al., <br><br> Defendants. | : <br> : <br> : <br> : Civil Action No. 02-CV-3830 (LDD) <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

**SUR-REPLY TO DEFENDANT ASHLAND, INC. MOTION FOR PARTIAL SUMMARY JUDGMENT**

Ashland seeks a judgment as a matter of law that Plaintiffs can prove only one of the six types of Ashland wastes, all of which it concedes were picked up by DeRewal Chemical Company ("DCC"), was disposed of at the Boarhead Farms Site ("the Site"). Ashland's motion ignored Plaintiffs' extensive responses to both the Joint Contention Interrogatories and to Ashland's own contention interrogatories, unilaterally and artificially focusing solely on the deposition testimony of three DCC drivers. It then both misread that testimony and relied upon non-record "evidence" to argue that Plaintiffs can't prove at trial that wastes other what Ashland calls "spent/mixed nitrating acid" were disposed of at the Site. Confronted with evidence it intentionally overlooked, including the undeniable presence of three Ashland-labeled drums buried at the Site, Ashland again relies upon material that should not be considered here to try and argue that there are no genuine issues of material fact. Nowhere in its fourteen page Reply

Brief does Ashland even attempt to refute Plaintiffs' detailed examination of the actual words spoken by the three drivers at their depositions in this action and the inescapable conclusion that the testimony *cannot be read* to mean that the only Ashland waste they disposed of at the Site was "spent/mixed nitrating acid."

## ARGUMENT

Evidence presented by the non-moving party in opposition to a motion for summary judgment is always construed in favor of that party, who is given the benefit of all favorable inferences that can be drawn from it. *Matsushita Elec. Indu. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). Ashland was required to establish as a matter of law that Plaintiffs' evidence did not create an inference that types of Ashland wastes other than "spent/mixed nitrating acid" were disposed of at the Site.

Ashland incorrectly restricted the documents and witnesses identified by Plaintiffs' in their discovery responses to the testimony of three DCC drivers. The deposition testimony of those three drivers does not support Ashland's argument, especially when Plaintiffs are given all favorable inferences from that testimony.[1]

Freddie DeRewal and John Barsum were each asked what waste they recalled *picking up* from Ashland's Great Meadows facility. Manfred DeRewal, Jr. Dep. at 65:18-66:5; Barsum Dep. at 182:17-183:4. They each responded (with neither of them

---

[1] Ashland continues to rely on inappropriate material to counter Plaintiffs' evidence. It relies in four places on testimony given by Arthur Curley in a prior litigation to attempt to contradict Plaintiffs' evidence. Ashland Reply Brief at 3, 8-9, footnote 4, and 13. Ashland has not established by affidavit or otherwise that the deposition is admissible here or at trial. As set forth on pages 20-21 of Plaintiffs' initial brief, a deposition taken in another matter is admissible only if the witness is unavailable for trial and Plaintiffs had an opportunity to cross examine the witness at that deposition. Ashland has established neither fact, so that the 1996 transcript cannot be considered here. Fed. R. Evid. 804(b)(1). Mr. Pettit's Declaration merely says that Exhibit 17 is a copy of excerpts of Mr. Curley's deposition taken in another matter. It does not provide the required evidentiary foundation. If Ashland wanted to rely on testimony from Mr. Curley, it should either have obtained an affidavit from him or elicited that testimony from him when he was deposed in this action.

saying the words "spent/mixed nitrating acid"), but also identified many Ashland bills of lading that prove that they each picked up many of the different Ashland waste types. Jeff Shaak was not asked what types of waste he picked up or what types of waste he dumped at the Site. Shaak Dep. at 66:25-67:9; 68:4-16. Ashland's statement in its Reply Brief that "not one of these three drivers testified that they disposed of any Ashland waste at the Boarhead Farm Site other than spent/mixed nitrating acid," Ashland Reply Brief at 7, simply misstates the testimony again without addressing Plaintiffs' detailed explication of the *actual* words spoken by those witnesses.[2]

Any fair reading of that testimony is that the three drivers took waste picked up from Ashland to the Site and disposed of it there without any distinction between (or even specific knowledge of) the various wastes they actually picked up at the Ashland facility. Freddie DeRewal's testimony that he took all but the first four loads of Ashland waste to the Site for disposal and the actual bills of lading showing that the loads after the first four included Ashland's CDN waste water, dye waste, and phthalide waste alone defeat Ashland's motion. Manfred DeRewal, Jr. Dep. at 404:1-6; bills of lading attached as Exhibit 4 to Plaintiffs' initial Brief. Ashland utterly failed to dispute these facts.[3]

---

[2] This statement and the similar one "In fact, two of them [the drivers] testified that it was the spent/mixed nitrating acid waste that was taken to the Boarhead Farm Site rather than the Wissinoming Site because of the characteristics of that waste" are unsupported by citation to actual deposition testimony for good reason. There is no supporting deposition testimony. Only Freddie DeRewal said that he disposed of what he thought (before seeing his name on multiple bills of lading) was "sulfuric nitric mix" at the Site, but he made no mention whatsoever of disposing of Ashland's wastes anywhere other than the Site based on what he understood to be the nature of the wastes. Manfred DeRewal, Jr. Dep. at 65:18-66:5. He took all of the Ashland wastes either to Wissinoming or to the Site thinking it was all "sulfuric nitric mix."

[3] Ashland's extended discussion of the differences between its various wastes misses the point. Mr. Barsum said the single word "sulfuric" when asked what wastes he picked up at Ashland. That some Ashland wastes had *greater percentages* of sulfuric acid than others does not change the fact that Mr. Barsum did *not say*, contrary to Ashland's suggestion, that he picked up only "spent/mixed nitrating acid." Ashland's argument that Dr. Exner's opinions should be disregarded, Ashland Reply Brief at fn 4, relies

Ashland's attempt to deal with the fact that three Ashland drums were buried at the Site also ignores the Rule 56 standard. Plaintiffs are entitled to the very reasonable inference that these drums were among the Ashland wastes picked up by DCC simply because the drums were there and DCC hauled Ashland wastes, including drummed wastes. *Matsushita Elec. Indu. Co., supra.* Indeed, Ashland argued to the United States Court of Appeals for the First Circuit in support of its appeal from a trial judgment that the *Davis* plaintiff had not proven an Ashland nexus to that site because, *inter alia*, plaintiff "presented no direct evidence, such as drums or other containers bearing Ashland's name and found at the Davis site, to show that Ashland's waste was on the CWR deliveries to the Davis site." *United States v. Davis, et al*, 261 F.3d 1, 32 (1st Cir. 2001. The two intact drums and one drum fragment here are "direct evidence" that Ashland's wastes were disposed of at the Site. Neither Ashland's listing of other possible explanations for the existence of those drums[4] nor its attempt to argue that the description of the drummed wastes by the persons conducting the remediation thirty years later does not match the description on the bills of lading (even though benzene, toluene, and acetone are admittedly solvents)[5] does not change the inference to which Plaintiffs are entitled here to defeat Ashland's motion.[6]

---

not only on Mr. Curley's inadmissible 1996 transcript but upon unsupported statements like "That literature, however, provides no analysis of waste streams from dye manufacturing." The cited opinion in *Hurst v. United States*, 882 F.2d 306, 311 (8th Cir. 1989) says that an expert opinion should be excluded "only if it is so fundamentally unsupported that it cannot help the factfinder" and admitted the challenged testimony. Dr. Exner's opinion is properly before this Court on this motion.

[4] As set forth in footnote 1 above, Ashland cannot rely on Mr. Curley's statement in his 1996 deposition that it was Ashland's "practice" to label waste drums to dispute the inference to which Plaintiffs are entitled. *General Electric Co. v. AAMCO Transmission, Inc.*, 962 F.2d 281, 286 (2nd Cir. 1992) to which Ashland cites discuses only the required nexus between the "arranger" and the *waste*, not a nexus between the waste and the disposal site.

[5] For the same reason, Plaintiffs' use of the generic term "solvent wastes" in identifying Ashland wastes they contend was disposed of at the Site when responding to contention interrogatories instead of, presumably, the precise words "Organic Resin, Solidified" does not change the fact that Plaintiffs have

## CONCLUSION

For all the foregoing reasons, and in the interest of justice, Plaintiffs respectfully request that this Court dismiss Ashland's motion.

Dated: April 16, 2008

        Respectfully submitted,

        Ballard Spahr Andrews & Ingersoll, LLP
        A Pennsylvania Limited Liability Partnership

By: _____
        Glenn A. Harris, Esquire
        Plaza 1000, Suite 500, Main Street
        Voorhees, New Jersey  08043
        E-mail: harrisg@ballardspahr.com
        Phone: (856) 761-3400

Attorney for Plaintiffs

---

always contended that the three Ashland drums contain Ashland wastes or the inference that this Court should draw from the presence of those drums buried at the Site.

[6] The *Davis* court likewise dismissed Ashland's alternative explanations for where its waste went (other than the Davis site) as "alternate theories about why the [trial] court should have made other findings and inferences." 261 F.3d at 32, fn 22. Plaintiffs here are entitled to all favorable inferences, such that a genuine issue of material fact defeats Ashland's motion.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AGERE SYSTEMS, INC., CYTEC INDUSTRIES INC., FORD MOTOR COMPANY, SPS TECHNOLOGIES, LLC and TI GROUP AUTOMOTIVE SYSTEMS L.L.C., <br><br> Plaintiffs, <br> v. <br><br> ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, et al., <br><br> Defendants. | Civil Action No. 02-CV-3830 (LDD) |

## CERTIFICATE OF SERVICE

DAWN M. NEUKIRCH, of full age, certifies as follows:

1.   I am employed by the law firm of Ballard Spahr Andrews & Ingersoll, LLP, as a legal secretary.

2.   On this date, I caused one copy of Plaintiffs' Sur-Reply to Defendant Ashland, Inc. Motion for Partial Summary Judgment, and Certificate of Service to be served via electronic submission upon the following:

**ALL DEFENDANTS ON ATTACHED SERVICE LIST**

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated:  April 16, 2008

<u>Dawn M. Neukirch /s/</u>