IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AGERE SYSTEMS, INC., CYTEC INDUSTRIES INC., FORD MOTOR COMPANY, SPS TECHNOLOGIES, LLC and TI GROUP AUTOMOTIVE SYSTEMS L.L.C., <br><br> Plaintiffs, <br> v. <br><br> ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, et al., <br><br> Defendants. | Civil Action No. 02-CV-3830 (LDD) |

**DECLARATION OF JOHN P. JUDGE, ESQUIRE IN SUPPORT OF PLAINTIFFS' SUR-REPLY MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

JOHN P. JUDGE, ESQUIRE hereby declares:

1. I am of counsel to the law firm of Montgomery McCracken Walker & Rhoads, LLP, and counsel for TI Group Automotive Systems L.L.C. with respect to the Boarhead Farms Site. I have personal knowledge of the facts stated herein.

2. I submit this declaration in support of Plaintiffs' Sur-Reply Memorandum in Opposition to Defendants' Motion for Partial Summary Judgment.

3. In February and March, 2001, I participated with other counsel in negotiations with the United States Environmental Protection Agency (EPA) and Department of Justice concerning reimbursement of all past response costs and for performance of the remedial action for Operable Unit 2 at the Boarhead Farms Site. During these negotiations, I argued that EPA's recovery against the companies who eventually signed the OU-2 Consent Decree (OU-2 Group) should be reduced for several reasons: a) there was a substantial "orphan share" of liability at the Site; b) there were the typical risks to success in litigation and recovery of costs; c) there was a very small group of companies willing to perform an expensive remedy (total site costs were then projected by some at approximately $24 Million); d) by agreeing to perform the OU-2 remedy, there was a demonstration of continuing cooperation with EPA by those companies that assumed responsibility for the OU-1 remedial action in a prior Consent Decree, despite the failure of any other PRP other than TI Group stepping forward; and e) there was an adequate pool of PRPs for EPA to pursue for any compromise to its total costs claim. The OU-2 Group strongly requested EPA to pursue the non-settling PRPs.

4. In March, 2001, counsel for EPA informed the OU-2 Group that EPA had decided to provide orphan share funding of 25% of the cost of implementing the remedial actions specified in the ROD, or $3,289,250, if an overall settlement could be reached. As part of this settlement, EPA offered to continue to apply prior guidance for calculating indirect costs incurred in the past. If settlement was not reached by March 31, 2001, EPA would apply its new guidance for calculating indirect costs (which had become effective on October 2000). The new guidance would have increased the EPA past costs claim to approximately $17 million.

5. After further discussions, EPA accepted the OU-2 Group's offer of $7 Million for its past costs claim. This amount was then incorporated into the OU-2 Consent Decree, which was executed by the individual OU-2 Group members on or before March 31, deadline.

6. EPA neither outlined in writing nor orally provided to the OU-2 Group the basis of its decision to settle on the past costs claims.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated April 11, 2008

John P. Judge, Esquire