IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AGERE SYSTEMS, INC., CYTEC INDUSTRIES INC., FORD MOTOR COMPANY, SPS TECHNOLOGIES, LLC and TI GROUP AUTOMOTIVE SYSTEMS L.L.C., : : : : : : : Plaintiffs, : v. : : ADVANCED ENVIRONMENTAL : TECHNOLOGY CORPORATION, et al., : : Defendants. : | Civil Action No. 02-CV-3830 (LDD) |

## BRIEF IN RESPONSE TO THE MOTION OF HANDY & HARMAN TO STRIKE INTERROGATORY RESPONSES

Handy & Harman Tube Company, Inc.'s ("Handy & Harman") motion seeks to strike Plaintiffs' February 8, 2008 Supplemental Response to Interrogatory No. 123 of Defendants' Joint Contention Interrogatories ("February 2008 Response") primarily because, according to Handy & Harman, the information provided in those responses is not relevant to this action. The supposedly irrelevant information concerns the payment of funds by two Smiths Group plc ("Smiths") entities into the OU-1 and OU-2 Group Trust Accounts on behalf of Plaintiff TI Group Automotive Systems, L.L.C. ("TI"), the agreement between TI and Smiths that TI will seek to recover in this action and repay to Smiths all sums paid by Smiths on TI's behalf, and evidence that TI already has in fact made such repayments.

Plaintiffs' Fifth Amended Complaint clearly and unequivocally states that TI seeks recovery of response costs paid by it or in its name on behalf of Smiths, a claim Plaintiffs long have been making. This information is therefore directly relevant to that claim. Handy &

Harman ignores this fact and instead argues that Plaintiffs are nefariously asserting claims by the Smiths entities in contravention of this Court's January 11, 2008 Order (the "Order"). Without saying so, it is really seeking in the guise of a discovery motion to strike that portion of Plaintiffs' Fifth Amended Complaint wherein TI's claim is stated. Plaintiffs' amendment of its Fourth Amended Complaint was permitted in this and other respects by the Order. If Handy & Harman thought otherwise, it should have moved timely to strike the new pleading or moved for summary judgment when it was permitted to do so. Moreover, nothing in the Order prohibits TI's claim.

Handy & Harman has known all of the details about these payments, including the fact that two Smiths entities made contributions to the trust accounts from which payments to EPA and to site remediation contractors were made, since at least 2004. Plaintiffs provided much of the information in the February 2008 Supplemental Response to Interrogatory No. 123 to Defendants in earlier amended and supplemental responses to Defendants' joint contention interrogatories. Moreover, the very information about which Handy & Harman complains is information Plaintiffs had no obligation to provide in the first instance, because this Court sustained Plaintiffs' objections to that portion of Interrogatory No. 123 in its October 29, 2007 Order denying in most respects Defendants' motion to answers to interrogatories. The February 2008 Supplemental Response cannot be stricken for providing such information. Handy & Harman's assertion that Plaintiffs should be sanctioned for providing this information is over the top. Its motion should be denied.

# DISCUSSION

I. Plaintiffs' February 2008 Supplemental Response to Interrogatory No. 123 is directly relevant to the claims in this litigation.

The Fifth Amended Complaint provides as follows:

> TI seeks cost recovery and contribution from Defendants for the response costs TI has incurred by making payments itself into the OU-1 and OU-2 Group Trust Accounts. TI also seeks recovery and contribution from Defendants in its name on behalf of Smiths.

Exhibit A to Harris Declaration at ¶ 27. Plaintiffs thus unambiguously are seeking to recover monies paid by Plaintiffs to the United States Environmental Protection Agency ("EPA") and for the remediation of the Boarhead Farms Site (the "Site"), just as they have done since the inception of this action. Included in those dollars are sums which were paid by or on behalf of TI in accordance with TI's commitments to EPA in the 2001 Consent Decree and to the other Plaintiffs pursuant to TI's agreements with them. These claims are thus expressly in this case. Plaintiffs' Supplemental Response to Interrogatory No. 123 includes information about the relationship between TI and Smiths, the payment of funds by Smiths into the OU-1 and OU-2 Group accounts on behalf of TI, the agreement that TI will seek to recover in this action and repay to Smiths all sums paid by Smiths on TI's behalf, and evidence that TI already has in fact made such repayments.

Rule 401 of the Federal Rules of Evidence defines "Relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The relationship between TI and Smiths and whether TI and Smiths agreed that TI would seek to recover costs in this action and to repay amounts paid by Smiths into the OU-1

and OU-2 accounts on behalf of TI is directly relevant to TI's claim stated in the Complaint that it can recover from Defendants monies paid into the OU-1 and OU-2 Group accounts by Smiths. Unless and until that claim is dismissed the information supplied by Plaintiffs in supplemental response to Interrogatory No. 123 is *per se* relevant.

Defendants were required to answer, plead or otherwise move in response to Plaintiffs' Fifth Amended Complaint by January 31, 2008. Exhibit B to Harris Declaration, ¶ 1. All of the Defendants answered the Fifth Amended Complaint. No Defendant moved to dismiss any portion of that pleading or even so much as mentioned informally to Plaintiffs that they thought anything was improper with it. Further, Defendants were required to file motions for summary judgment by February 22, 2008. Exhibit C to Harris Declaration, ¶ 1. Defendants had received Plaintiffs' Supplemental Response to Interrogatory No. 123 before this deadline expired and no motion for summary judgment with respect to the allegations in the Fifth Amended Complaint that TI seeks to recover costs paid by Smiths on TI's behalf was filed.

Therefore, Plaintiffs' claim that TI is entitled to recover from Defendants the costs that Smiths paid into the OU-1 and OU-2 Group accounts is an essential part of this case, and the information provided in Plaintiffs' Supplemental Response to Interrogatory No. 123 is directly relevant to this claim. Accordingly, Handy & Harman's motion that Plaintiff's response to this interrogatory should be stricken because it is not relevant should be denied.

II. This Court's January 11, 2008 Order does not Prohibit TI's Claim to Recover Costs Paid by Smiths into the OU-1 and OU-2 Group Accounts.

Handy & Harman contends that "[T]he January 11 Order specifically addressed the issue of Plaintiffs' ability to add Smiths as party plaintiffs and seek to recover from the

Defendants monies allegedly paid by Smiths." Handy & Harman Brief at 9. As demonstrated above, the first part of that sentence is correct, the second part is not. Nothing in the January 11th Order addressed *Plaintiffs'* ability to seek to recover the monies paid by Smiths or precludes Plaintiffs from supplementing their response to Interrogatory No. 123. Plaintiffs have *always* sought to recover from Defendants the monies paid on behalf of TI by Smiths and are simply continuing to do so in the Fifth Amended Complaint.

Defendants have always known that TI sought to recover costs paid into the OU-1 and OU-2 Group accounts by Smiths. Plaintiffs' initial Complaint alleged that certain Plaintiffs had entered into two separate Consent Decrees with EPA and sought recovery from Defendants of the monies paid by Plaintiffs as required by those Consent Decrees. Each of plaintiffs' pleadings since has been based upon this fundamental proposition. Approximately half of Plaintiffs' response costs to date are expressly enumerated in the 2001 Consent Decree, *e.g.,* the payment of $7 million dollars to EPA in settlement of EPA's claim for its past response costs. Plaintiffs informed all Defendants of the amount of their past response costs on virtually the date the initial Complaint was filed, and have periodically provided to the defendants updated information on further response costs as they were incurred. The cost documentation and payment proofs, which include checks issued by Smiths, have been produced to the Repository on a rolling basis for years. Plaintiffs' cost disclosures alone include the unmistakable proof that payments being credited by the OU-1 and OU-2 Groups to TI in satisfaction of TI's commitments to those groups actually came from Smiths. Plaintiffs have unmistakably asserted the right to recover those monies from Defendants.

On July 25, 2007, in response to the United States Supreme Court's opinion in *United States v. Atlantic Research Corporation,* 127 S. Ct. 2331 (2007), Plaintiffs took the

precautionary step of seeking leave to add the two Smiths entities as plaintiffs in order to assert claims directly by those entities for recovery of costs paid by them on TI's behalf into the OU-1 and OU-2 trust accounts. Exhibit D to Harris Declaration. Plaintiffs stated then their continued belief that they (and TI) were the proper entities to seek recovery of the payments made by Smiths on behalf of TI, but that they believed it prudent to add direct claims by Smiths. Exhibit D to Harris Declaration at Pgs. 10-12. Plaintiffs said in their initial memorandum: "TI is a member of the OU-1 and OU-2 groups and a plaintiff herein to recover both monies it has itself paid and on behalf of Smiths and those paid by Smiths. Plaintiffs continue to believe that TI is thus the proper plaintiff and can recover herein all the amounts paid by it or on its behalf." Exhibit D to Harris Declaration at 11. Plaintiffs' reply memorandum in support of their motion for leave to amend said: "Either TI has the right to seek recovery of dollars paid on its own behalf (for its own account by the Smiths entities) or the Smiths entities themselves are the real parties-in-interest with respect to the dollars they paid on behalf of TI." Exhibit E to Harris Declaration at 9.

Plaintiffs' proposed Fifth Amended Complaint accompanying its motion included Paragraph 26 containing allegations concerning the natures of the Smiths' entities, the indemnity obligation, the transfer of funds on behalf of TI with respect to TI's obligations into the OU-1 and OU-2 trust accounts, and the agreement between TI and Smiths that TI will repay to Smiths all sums paid by Smiths on TI's behalf as funds are recovered from Defendants herein. Exhibit F to Harris Declaration at ¶ 26. The proposed pleading also contained in Paragraph 27 the allegations that TI seeks recovery from the Defendants in its name and on behalf of Smiths, and, alternatively, that Smiths would seek recovery of the monies it paid directly.

By order dated January 11, 2008 this Court granted leave for the filing of the proposed Fifth Amended Complaint, except that it denied Plaintiffs' request to add Smiths as parties. Exhibit G to Harris Declaration at Pgs. 10-13. The relevant section of the January 11th Order is titled: "Addition of Smiths Group Services Corporation and Smiths Group North America Incorporated as Plaintiffs," and concludes with the statement: "For the foregoing reasons, plaintiffs' amended complaint is denied with respect to the addition of Smiths Group Services Corporation and Smiths Group North America, Incorporated." Exhibit G to Harris Declaration at 10, 13. The analysis in that section focuses quite clearly on whether or not the Smiths entities can be added as plaintiffs and denies leave for those two entities to join as plaintiffs because any direct claims by them would not relate back to the filing of Plaintiffs' initial complaint and because the Smiths entities "are not real parties in interest." Exhibit G to Harris Declaration at 11-13. The Smith entities are not real parties in interest precisely because TI *is* the real party in interest with respect to monies paid by it or on its behalf to satisfy the obligations of TI to the EPA and to the OU-1 and OU-2 Groups. In other words, while this Court denied Plaintiffs leave to name Smiths as plaintiffs, it did not rule that TI could not recover costs paid by Smiths on behalf of TI into the OU-1 and OU-2 Group accounts.

Accordingly, Plaintiffs excised from the proposed Fifth Amended Complaint the second section of Paragraph 27 wherein the Smiths entities had proposed asserting direct claims. Compare ¶¶ 18, 21, 27, 32, 68, 70, 78, 79, 80 of the proposed Fifth Amended Complaint with ¶¶ 18, 21, 27, 32, 62, 64, 72, 73, 74 of the Fifth Amended Complaint. Exhibits F and A to Harris Declaration. Plaintiffs did not remove the language concerning the relationship between Smiths and TI because that language was consistent with all of the facts of which the Defendants had been aware for many years, and because the Order did not deny leave to amend with respect to

that language.  Plaintiffs' Fifth Amended Complaint thus does not assert claims by Smiths, contrary to Handy & Harman's argument.

Nothing in Defendants' opposition to Plaintiffs' Motion for leave to amend challenged TI's right to seek recovery of the money paid by Smith on TI's behalf.  That claim was expressly stated in the proposed pleading and squarely before the Court as part of that motion.  The absence of any discussion in the January 11th Order of TI's claim, much less a ruling that such claim was improper, was not an oversight.  Plaintiffs were permitted to retain that claim as part of the Fifth Amended Complaint, and they did so.

Plaintiffs' supplemental response to Interrogatory No. 123 that Handy & Harman seeks to strike has nothing to do with direct claims by the Smiths entities.  It concerns only TI's claim that it can receive from Defendants the money paid by Smiths on its behalf.  Accordingly, the information provided in Plaintiffs' February 8, 2008 Supplemental Responses to Defendants' joint contention interrogatories is relevant to Plaintiffs' properly asserted claim in the Fifth Amended Complaint.  Handy & Harman's motion should therefore be denied.

III.   This Court Should Not Strike Plaintiffs' Supplemental Response to Interrogatory No. 123 because Plaintiffs do not now nor have Plaintiffs ever had any Obligation to Provide the Information Contained in that Response to Defendants.

Handy & Harman is also incorrect in suggesting that Plaintiffs should be sanctioned for their February 8, 2008 Response.  First, as set forth above, the information therein was relevant and was not provided for an improper purpose.  Second, Plaintiffs had no obligation to provide that information in response to Interrogatory No. 123, so that they cannot be sanctioned for doing so.  Neither can the information be stricken as untimely.

Defendants served their joint contention interrogatories upon Plaintiffs on March 15, 2007. Exhibit H to Harris Declaration. Five of those contention interrogatories, Interrogatories Nos. 119-123, ask whether Plaintiffs will contend that they "did not receive or had credited on its behalf any monies or other consideration that reduced its share of Total Cleanup Costs of the Site from any source…" *Id.* Like many of Defendants' joint contention interrogatories, Interrogatories Nos. 119-123 essentially ask Plaintiffs whether or not they will refute certain arguments that might be made some day by the Defendants. In other words, Defendants were attempting to learn in these interrogatories what the Plaintiffs' response would be to an argument that the monies that an individual Plaintiff can recover from the Defendants should be reduced by amounts received by that Plaintiff from insurers, indemnitors, predecessors or successors.[1]

Plaintiffs objected to Defendants' contention interrogatories generally on many grounds, including that the interrogatories exceeded the scope of the June 23, 2005 Order, especially to the extent that they sought information outside of the scope of information that Plaintiffs intend to make as part of their prima facie case at trial. Exhibit I to Harris Declaration. The objections also stated: "Plaintiffs specifically reserve the right to make any factual and legal contentions, whether expressly set forth in their responses to these Interrogatories or not, in response to positions taken by Defendants at trial." Exhibit I to Harris Declaration at 1.

---

[1] The interrogatories are confusing and ambiguous in part because Defendants drafted them as contention interrogatories. Defendants were permitted to seek to learn only Plaintiffs' contentions in "narrowly-tailored contention interrogatories." Exhibit J to Harris Declaration.

Plaintiffs objected specifically to Interrogatories Nos. 119 to 123 on the basis that these interrogatories were outside the scope of Plaintiffs' case in chief, were vague, confusing and ambiguous, were not relevant, and on other grounds. See Exhibit I to Harris Declaration. Plaintiffs also objected to the Defendants' definition of "Total Cleanup Costs" to mean all cleanup costs incurred by any one at any time. *Id.* Subject to these objections, Plaintiffs responded that they would *not* contend as part of their case in chief at trial that they did not receive any monies that reduced their individual share of Total Cleanup Costs. *Id.* Quite simply, Plaintiffs will not contend, as is suggested in Interrogatories Nos. 119 to 123, that each individual Plaintiff has an individual share of cleanup costs, that the denominator of cleanup costs is all cleanup costs incurred by any one at any time, and that any Plaintiff received any monies that reduced their collective share. These are the Defendants' arguments.[2]

In June 2007 Defendants filed various motions to compel Plaintiffs to respond more specifically to certain contention interrogatories. No Defendant in any of the motions filed

---

[2] On April 30, 2007 Defendants sent a deficiency letter to Plaintiffs asking Plaintiffs to withdraw their objection to Interrogatories Nos. 119 to 123 because they seek information outside Plaintiffs' prima facie case and that "Defendants are entitled to know any credits, including insurance proceeds, contributions from predecessors or any other source offsetting its costs and will seek discovery of those items." Exhibit K to Harris Declaration. Plaintiffs responded to this letter on May 7, 2007 by explaining that Defendants had not identified any authority suggesting that any amounts paid into the OU-1 or OU-2 Group accounts on behalf of Plaintiffs by insurers, indemnitors, predecessors or successors are relevant to this action. Exhibit L to Harris Declaration. This response highlights that Interrogatories Nos. 119 to 123 were intended to develop an argument of Defendants rather than to seek information about Plaintiffs' contentions. Moreover, Plaintiffs essentially provided Defendants with the information that they were looking for in Interrogatories Nos. 119 to 123 by stating that Plaintiffs believe that this information is not relevant. In any event, Plaintiffs' May 7, 2007 response reminded Defendants that the payee for each payment made into each Group account is set forth on documents that had long been in the repository. *Id.* The response also expressly stated that, "TI Automotive is a wholly-owned subsidiary of Smiths Industries," and "certain payments were made by Smiths on behalf of TI." *Id.*

asserted that Plaintiffs' response to Interrogatories No. 119 to 123 was deficient in any way, though the Defendants' joint motion sought to compel Plaintiffs to withdraw all interrogatory objections based upon the contention interrogatories being outside the scope of Plaintiffs' prima facie case at trial. This Court denied Defendants' motion stating: "Defendants' motion to compel plaintiffs to withdraw all interrogatory objections based upon the contention being outside the plaintiffs' prima facie case is DENIED (Doc. Nos. 233, 234, 235, and 237)." Exhibit M to Harris Declaration at ¶ 2.

Plaintiffs' objections to Interrogatories Nos. 119 to 123 having been sustained, the only portion of Interrogatory No. 123 which required a response was the question of whether TI intended to make the specific contention set forth in that interrogatory. A full and complete answer to that question was "no." Plaintiffs had no obligation to respond to subpart A of the interrogatory asking Plaintiffs to identify monies received by TI and the sources of such monies?"[3] Plaintiffs were not required, therefore, to provide the supplemental information that is the subject of this motion because Defendants did not properly request it in an interrogatory.

Plaintiffs are aware of no opinion wherein a court has stricken interrogatory responses and other disclosures where the party making the disclosures had no obligation to make them in the first place. Nothing in the Federal Rules of Civil Procedure that Plaintiffs can identify even suggests that a party to an action is prevented from providing information to his adversary when he is under no obligation to do so. Nothing in Fed. R. Civ. P. 37(c) excludes as

---

[3] Handy & Harman's statement that Defendants' motion to compel did not include Interrogatory No. 123 is only half true. It is true that no specific relief was requested with respect to that interrogatory, however, Plaintiffs did object to *all* interrogatories seeking information outside of the scope of Plaintiffs' case in chief.

evidence information or witnesses that the party did not have an obligation to disclose. Plaintiffs have always been free to present at trial all of the evidence set forth in their supplemental answers because they have never had an obligation to disclose that information.

Even if Plaintiffs had some obligation to supply the information in the February 8, 2008 Responses, their response to Interrogatory No. 123 was proper. Plaintiffs supplemented their responses to Defendants' contention interrogatories as a purely precautionary measure and not because the information that it provided in response to Interrogatories Nos. 119 to 123 was deficient in any way. Exhibit N to Harris Declaration. Plaintiffs' February 8, 2008 supplemental response includes much of the same information that Defendants already had at that time. The first two paragraphs of Plaintiffs' supplemental response to Interrogatory No. 123 do nothing more than provide in more detail the same information about the relationship between TI, Bundy Corporation, and Smiths, the April 25, 2001 Transfer Agreement and the payment of monies by Smiths on behalf of TI.[4] The only new information included in Plaintiffs' February 8, 2008 supplemental response is documentation showing that monies received by TI in May 2007 from Plaintiffs' settlement with Techalloy were turned over to Smiths and other documents showing

---

[4] Handy & Harman insinuates in its brief that Defendants did not have certain documents identified by Bates-number in Plaintiffs' February 2008 Supplemental Response to Interrogatory No. 123 until that time. However, on July 12, 2007 Plaintiffs amended and supplemented its responses to Defendants' joint contention interrogatories and enclosed copies of corporate documents evidencing that Bundy Corporation was merged into Plaintiff TI and a provided a copy of the Transfer Agreement between Smiths Group plc and 329th Shelf Investment Company Limited. No Defendant raised any objection to Plaintiffs' July 12, 2007 amended and supplemental responses. The supplemental information provided by Plaintiffs with respect to TI was not responsive to any of Defendants' particular contention interrogatories. Plaintiffs had already answered Interrogatories Nos. 119 to 123 by stating that it was not making the stated contention, and no Defendant alleged that this response was deficient in any motions filed with the Court.

the corporate histories of Smiths Group North America, Inc. and Smiths Group Services Corporation regarding their relationship with Smiths plc. Finally, Plaintiffs identified Timothy Guerriero, Walter Orme and Ira Greenberg as persons with knowledge of the corporate history of TI.

Plaintiffs could not very well have provided the documents showing that TI's share of the Techalloy settlement was turned over to Smiths before that settlement was reached in May 2007. With respect to the identification of individuals with knowledge of TI's corporate history and the agreement between TI and Smiths, Plaintiffs acknowledged in their reply memorandum in support of their motion for leave to file the fourth amended complaint that "Defendants can learn all they need to know in a single deposition of a person familiar with these transactions and relationships, or, alternatively, a Rule 30(b)(6) deposition." Exhibit E to Harris Declaration at fn 8. No Defendant has requested any such deposition.[5]

Handy & Harman's over the top requests for costs and sanctions are premised upon Plaintiffs' supposed violation of Rule 26(e) and Rule 26(g). With respect to Rule 26(e), Plaintiffs had no obligation under Rule 26(e) to supplement its prior responses to Defendants' joint contention interrogatories so that they cannot be sanctioned for having not done so. Handy & Harman's sole argument that Plaintiffs violated Rule 26(g) is based on the flat assertion that Plaintiffs provided this information knowingly in violation of the January 11th Order, and for some undisclosed nefarious purpose. Plaintiffs' supplemental responses in fact were intended to

---

[5] Timothy Guerriero was already known to the Defendants as a person with knowledge of these facts. For instance, Tim Guerriero was identified in the April 2001 Transfer Agreement between Smiths Group plc and 329th Shelf Investment Company Limited. Mr. Guerriero also certified Plaintiffs' responses to Defendants interrogatories.

provide the relevant information to Defendants whether the Plaintiffs were required to do so or not, primarily because Plaintiffs tired long ago from the repeated and baseless assertions by various Defendants that Plaintiffs are "hiding" evidence, and because Plaintiffs wanted to avoid having to deal with pre-trial motions seeking to preclude admission of this evidence on the basis that it was a "surprise." Handy & Harman's motion demonstrates that Plaintiffs' fears were well founded.

Because Plaintiffs had no obligation to provide this information in the first place and because, even if they did, they did so in an appropriate and timely fashion, Handy & Harman's motion and its request for fees, costs, and sanctions should be denied.

## CONCLUSION

For all the foregoing reasons, and in the interest of justice, Plaintiffs respectfully request that this Court deny Handy & Harman Tube Company, Inc.'s Motion to Strike Plaintiffs' Supplemental Response to Interrogatory No. 123 and For Other Relief.

Dated: April 28, 2008

Respectfully submitted,

Ballard Spahr Andrews & Ingersoll, LLP

By: _____
Glenn A. Harris, Esquire
Plaza 1000, Suite 500, Main Street
Voorhees, New Jersey 08043
E-mail: harrisg@ballardspahr.com
Phone: (856) 761-3400

Attorney for Plaintiffs