# EXHIBIT "D"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AGERE SYSTEMS, INC., CYTEC INDUSTRIES INC., FORD MOTOR COMPANY, SPS TECHNOLOGIES, LLC and TI GROUP AUTOMOTIVE SYSTEMS LLC, <br><br> Plaintiffs, <br><br> v. <br><br> ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, et al., <br><br> Defendants. | Civil Action No. 02-CV-3830 (LDD) |

## MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO AMEND FOURTH AMENDED COMPLAINT

Plaintiffs Agere Systems, Inc., Cytec Industries Inc., Ford Motor Company, SPS Technologies, LLC and TI Group Automotive Systems LLC (collectively "Plaintiffs") move this Court, pursuant to Fed. R. Civ. P. 15(a), for leave to amend their Fourth Amended Complaint in response to the recent opinion of the United States Supreme Court in *United States v. Atlantic Research Corporation*, 127 S. Ct. 2331 (2007). Plaintiffs' proposed pleading, a copy of which is attached to this Memorandum as Exhibit "A," modifies the specific claims they make to recover response costs incurred or reimbursed by them with respect to the Boarhead Farms site ("the Site") in accordance with *Atlantic Research*, deletes settled parties and persons who were never served, and adds two entities as plaintiffs that have been making payments to the OU-1 and OU-2 Group accounts on behalf of Plaintiff TI.

Nothing in the proposed pleading will delay the progress of the action. Plaintiffs believe that this Court will at trial adjudicate an equitable allocation of the costs of cleaning up the Boarhead Farms site among the Plaintiffs and the Defendants just as it would do pursuant to

the existing pleadings. The alterations in the pleading proposed by this motion seek only to assure that such allocation is reached based upon correct causes of action as clarified by the United States Supreme Court. For the following reasons, Plaintiffs' motion should be granted, and Plaintiffs' Fifth Amended Complaint should be deemed filed and should relate back to the date of the filing of the original Complaint.

### Statement of Facts

The United States Supreme Court in *Atlantic Research* decided a question left open in *Cooper Industries, Inc. v. Aviall Services, Inc.*, 543 U.S. 157 (2004) by determining that CERCLA § 107(a) provides so-called potentially responsible parties ("PRPs") with a cause of action to recover costs from other PRPs.[1] 127 S. Ct. at 2333-34. The Court reasoned that the words "any other person" in section 107(a)(4)(B) encompassed PRPs. *Id.* at 2336-37. The Court then went on to harmonize § 107(a) with § 113(f), the contribution section, by focusing on the word "incurred" in § 107(a). The Court stated:

> Section 113(f)(1) authorizes a contribution action to PRPs with common liability stemming from an action instituted under § 106 or § 107(a). And § 107(a) permits cost recovery (as distinct from contribution) by a private party that has itself incurred cleanup costs. Hence, a PRP that pays money to satisfy a settlement agreement or a court judgment may pursue § 113(f) contribution. But by reimbursing response costs paid by other parties, the PRP

---

[1] Section 107(a) provides, in relevant part, that four specific "classes" of persons are liable for:

(A) All costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;

(B) Any other necessary costs of response incurred by any other person consistent with the national contingency plan; . . .

42 U.S.C. § 9607(a)(1-4)(A), (B).

> has not incurred its own costs of response and therefore cannot recover under § 107(a). As a result, though eligible to seek contribution under § 113(f)(1), the PRP cannot simultaneously seek to recover the same expenses under § 107(a).

127 S. Ct. at 2338. Section 113(f), the Court said, thus was primarily for one who settles the claim of a government by agreeing to reimburse that government for response costs incurred by the government.[2]

The Court nevertheless recognized the untidiness of this dichotomy, as settlements with the government often involve *both* reimbursement of the government's past costs claim and an agreement to perform future work at the Site, which work requires the direct payment of response costs. *Id.* at 2338, n. 6. The Court noted that these future response costs would be "incurred" yet not "voluntary." *Id.* It left to another day whether such "compelled" costs are recoverable under § 113(f), § 107(a), or both. *Id.* The Court concluded that "costs incurred voluntarily are recoverable only by way of § 107(a)(4)(B), and costs of reimbursement to another person pursuant to a legal judgment or settlement are recoverable only under § 113(f)." *Id.*

The Court assumed, without deciding, that the claim of a PRP under § 107(a) would be for joint and several liability. *Id.* at 2339, n. 7. The Court dismissed the reasoning of those Courts of Appeal that had previously held that a PRP was limited to a § 113(f) claim because, those courts said, it would make no sense to permit such a person to maintain a claim for joint and several liability when the person itself was a liable party, noting that the defendant in such circumstances would simply file its own § 113(f) counterclaim seeking contribution with

---

[2]  Section 113(f) of course also applies where a person is sued by the government for cost recovery under § 107(a) and that claim has not yet been settled or adjudicated.

respect to the plaintiff's own liability. *Id.* at 2338-39. The Court reasoned that the trial court would under those circumstances equitably apportion costs among the liable parties, including the PRP plaintiff. *Id.* at 2339.[3]

*Atlantic Research* requires a modification of plaintiffs' claims. Those claims include monies paid by Plaintiffs to the United States to settle claims by the United States with respect to response costs the United States alleged that it incurred and response costs Plaintiffs have themselves have incurred by remediating the Site.

Plaintiffs SPS Technologies, Inc. ("SPS"), Ford Motor Company ("Ford"), and Cytec Industries ("Cytec") (on behalf of American Cyanamid Company) reached a settlement with EPA in or about February 2000 under which those entities agreed to undertake Operable Unit 1 ("OU-1") of the remedy set forth in the 1998 Record of Decision. Specifically, they agreed to continue the operation and maintenance of the groundwater recovery and treatment system until the "performance standards" in the ROD are achieved and to update that system in certain respects.[4] They also agreed to pay to the EPA "Future Response Costs," costs that the EPA would incur thereafter in implementing, overseeing, or enforcing the OU-1 work. This Court entered a Consent Decree on or about September 28, 2000 with respect to this settlement.

---

[3] The Supreme Court also vacated the decision of the United States Court of Appeals for the Third Circuit in *E.I. du Pont de Nemours & Co. v. United States*, 460 F.3d 515. This tacitly overruled *New Castle County v. Halliburton NUS Corp.*, 111 F.3d 1116, 1120-24 (3rd Cir. 1997) one of two Third Circuit opinions that the *DuPont* court had relied upon in holding that DuPont could not bring a § 107(a) claim because it was itself a liable party.

[4] The ROD, the document in which EPA selected which remediation technologies should be implemented at the Site, sets forth certain performance standards, achievement of which will, in EPA's view, remediate the Site to acceptable levels of contamination.

SPS, Ford, and Cytec entered into an agreement with Agere Systems, Inc. ("Agere"), NRM Investments, Inc. ("NRM"), TI Group Automotive Systems LLC ("TI"), and Worthington Steel Company - Malvern ("Worthington") wherein those entities agreed to collectively fund and perform the OU-1 work.

SPS, Ford, Cytec, and TI reached a second settlement with EPA in or about October of 2001 wherein those entities agreed to perform Operable Unit 2 of the remedy by designing and implementing certain remedial actions and by reimbursing EPA approximately $7,000,000 in response costs alleged to have been incurred by EPA since the 1990s. They also agreed to pay "Interim Response Costs," defined as costs incurred by the United States between July 31, 2000 and the effective date of the Consent Decree or incurred prior to the effective date of the Consent Decree and paid after that date. They also agreed to pay "Future Response Costs" as in the OU-1 settlement. As before, a Consent Decree was lodged with and entered by this Court, and those four entities entered into an agreement with Agere pursuant to which the five entities have collectively funded and performed the OU-2 work.

At the time that TI agreed to pay a share of the OU-1 - related costs it was owned through a series of parent corporations by a United Kingdom company, Smiths Group plc. On or about April 25, 2001, Smiths Group plc sold the shares of TI (and other related companies) to another entity. Smiths agreed, as part of that transaction, to indemnify both TI and the new ultimate parent of TI with respect to any liabilities arising as a result or in connection with the Site. Smiths has since April of 2001 caused two of its US subsidiaries, Smiths Group Services Corp. and Smiths Group North America, Inc., to transfer funds into the OU-1 and OU-2 Trust Accounts on behalf of TI and with respect to TI's obligations to the OU-1 and OU-2 Groups. TI has agreed with Smiths Group plc that it will seek to recover in this action and will pay to Smiths

Group plc, directly or indirectly, any sums paid by Smiths on TI's behalf to the extent recovered from the Defendants.

Plaintiffs' initial Complaint (and all subsequent amendments to that Complaint) alleged a cause of action under section 113(f)(1) of CERCLA seeking contribution from the Defendants, a claim under section 113(g)(2) of CERCLA seeking an additional declaratory judgment that the Defendants are liable for all future response costs as those costs are incurred, and a claim for contribution for past and future response costs under the Pennsylvania Hazardous Sites Cleanup Act ("HSCA"). Following the United States Supreme Court decision in *Cooper Industries*, and as part of seeking leave to file the Fourth Amended Complaint, Plaintiffs sought leave to add a claim under § 107(a). This Court denied that portion of Plaintiffs' motion on the basis that it was bound by *New Castle County*.

## Discussion

Plaintiffs seek through this motion to amend the claims stated in their Fourth Amended Complaint in light of the *Atlantic Research* opinion. **Nothing in the proposed pleading will change the essential relief sought from the Defendants – the recovery by Plaintiffs of the equitable shares attributable to the Defendants of the past and future response costs paid or to be paid from the OU-1 and OU-2 accounts, which accounts have been and will continue to be funded by Plaintiffs (and by Smiths on behalf of TI).**

A motion for leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The United States Supreme Court has cautioned that "this mandate is to be heeded," and has held that leave to amend under Rule 15 should be denied only in certain limited circumstances:

> In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997); *Bell v. Allstate Ins. Co.*, No. 03-4482, 2004 U.S. Dist. LEXIS 4438, at *2 (E.D. Pa. Feb. 17, 2004). One of the circumstances under which courts have granted a motion for leave to amend a complaint is an intervening change in applicable law. *See United States v. Almodovar*, Nos. 01-1378 and 01-1501, 2002 U.S. App. LEXIS 14337, at *6 (3d Cir. July 16, 2002); *see also Vanguard Sav. & Loan Ass'n v. Banks*, No. 93-4627, 1995 U.S. Dist. LEXIS 8799, at *6 (E.D. Pa. June 27, 1995).

The proposed pleading is intended to assure that nothing in the form of the pleading prevents the Agreement Group from recovering from the Defendants whatever shares of Plaintiffs' past and future response costs this Court ultimately determines are appropriate based upon the substance of the members' actions in settling EPA's claims by agreeing to take over the continued remediation of the Site and to reimburse EPA for EPA's past response costs.

### New § 107(a) Claim and Revised § 113(f) Claim

The proposed pleading modifies the allegations in the Fourth Amended Complaint to address the issues presented by the Supreme Court's rulings with respect to sections 107(a) and 113(f). The proposed pleading asserts a new claim for joint and several liability under section 107(a) with respect to those response costs that have been "incurred" by Plaintiffs and not "reimbursed" to the United States while retaining the existing § 113(f) claim for contribution

with respect to those monies paid to the United States in settlement to "reimburse" the United States for its alleged past response costs.

The various categories of response costs for which Plaintiffs seek recovery include: (1) The monies Plaintiffs have spent performing the OU-1 Remedial Design and Remedial Action ("RD/RA"); (2) the amounts Plaintiffs have paid to the United States for its administrative and oversight costs to oversee the OU-1 RD/RA; (3) the monies Plaintiffs have spent performing the OU-2 RD/RA; (4) the amounts Plaintiffs have paid to the United States for its Interim Response Costs and for its administrative and oversight costs to oversee the OU-2 RD/RA; (5) the amounts Plaintiffs have reimbursed to the United States pursuant to the OU-2 Consent Decree for the United States's claimed Past Response Costs.

(Category 1) -- The costs to Cytec, Ford, and SPS of performing the OU-1 RD/RA work are "compelled costs," as they were "incurred" but not "voluntary." Those three entities thus have either a § 107(a) claim, a § 113(f) claim, or both for those costs. 127 S. Ct. at 2338, n. 6. TI, Smiths, and Agere have a § 107(a) claim for those costs because those costs were "incurred" by them but not "compelled" (because they were not parties to the Consent Decree).

(Category 2) -- The "Future Response Costs" paid by Plaintiffs pursuant to the OU-1 Consent Decree should be considered "incurred" because those costs did not arise, until after entry of the Consent Decree, rather than being a reimbursement of a past costs claim. All five Plaintiffs (and Smiths) thus have a § 107(a) claim for those costs.

(Category 3) -- Cytec, Ford, SPS and TI (and Smiths on behalf of TI) have "incurred" the costs for the OU-2 RD/RA but were "compelled" to do so. Those entities thus

have a claim under § 107(a), under § 113(f), or under both for such costs. 127 S. Ct. at 2338, n. 6. Agere has a § 107(a) claim for those costs because it was not "compelled" to pay them.

(Category 4) -- Cytec, Ford, SPS, TI and Smiths have "incurred" the Interim Response Costs and Future Response Costs required by the OU-2 Consent Decree, but were "compelled" to do so. 127 S. Ct. at 2338, n. 6. They accordingly have a claim under § 107(a), under § 113(f), or under both for such costs. Agere has a § 107(a) claim for those costs because it was not "compelled" to pay them.

(Category 5) -- The $7,000,000 in Past Response Costs (plus interest thereon) are monies "reimbursed" to the United States as part of the settlement with Cytec, Ford, SPS, and TI. Those four entities thus have a claim for contribution under § 113(f) for those monies. 127 S. Ct. at 2338.

All of these claims are now reflected in the addition of a new Count I pursuant to § 107(a) and in the revised language of Count II under § 113(f).

The end result of this litigation will remain unchanged even though it now will be decided under both § 113(f) and § 107(a). Though Plaintiffs will now seek joint and several liability under § 107(a) for certain of their response costs, each of the Defendants has asserted both a counterclaim against Plaintiffs and cross-claims against the other Defendants for contribution under CERCLA. This Court therefore will at trial equitably allocate Plaintiffs' response costs among the liable parties before the Court pursuant to the various § 113(f) claims. The *Atlantic Research* court postulated just such a situation and reasoned that it was appropriate, concluding: "Resolution of a § 113(f) counterclaim would necessitate the equitable

apportionment of costs among the liable parties, including the PRP that filed the § 107(a) action." 127 S. Ct. at 2339.

For example, AETC will be liable with respect to some categories of Plaintiffs' response costs for contribution under § 113(f) and for joint and several liability under § 107(a) with respect to other categories of response costs. Even though AETC's pending "orphan share" motion is irrelevant to Plaintiffs' § 107(a) claims (because AETC is jointly and severally liable), its arguments (though incorrect) are relevant to the § 113(f) counterclaim and cross-claims it has and presumably will bring in response to the § 107(a) claims. *See* Plaintiffs' Memorandum in Opposition to AETC's Motion for an Order Declaring Equitable Allocation.

### New Plaintiffs

The proposed Fifth Amended Complaint also adds Smiths Group Services Corp. and Smiths Group North America, Inc. as plaintiffs and certain allegations concerning those entities out of an excess of caution. TI agreed to pay its share of the OU-1 Group and OU-2 Group costs, and became jointly and severally to the United States with respect to the requirements of the OU-2 Consent Decree. Following the sale of the shares of TI by Smiths Group plc to TI's current parent, TI (and its current parent) looked to Smiths Group plc for the actual funding of those obligations pursuant to the indemnity given by Smiths Group plc to TI's current parent. Smiths Group plc, a United Kingdom company with no direct operations in the United States, chose to honor its indemnity obligations by funding those payments through first one and then another of its United States subsidiaries, Smiths Group Services Corp. and Smiths Group North America, Inc. It made payments into the OU-1 and OU-2 Group trust accounts on behalf of TI.

TI has been a member of the OU-1 and OU-2 Groups and has participated in this litigation as a plaintiff to honor its commitment to those groups (and to the United States pursuant to the OU-2 Consent Decree), and to recover from Defendants the past and future response costs it has directly incurred by its own payments and, pursuant to its agreement with Smiths Group plc, on behalf of Smiths Group plc for the payments made by the Smiths Group plc subsidiaries. This arrangement is virtually identical to the typical situation in which an indemnitor (such as an insurance company) satisfies its insured's loss and thereby becomes subrogated to the insured's claim against the tortfeasor who caused the loss. The indemnitor then may bring a subrogation claim against the tortfeasor in its own name or in the name of the insured. Subrogation is an equitable right one purpose of which is "to enable the loss to fall on the person who is legally responsible for it, instead of the party who pays the debt (such as the insurer). Subrogation is intended to work justice, and a just result is having a loss fall ultimately on the party legally responsible for it." *Understanding Insurance Law*, Jerry, R., 1987 at 463. Equitable subrogation is effected by operation of law, but can also arise out of a contractual relationship between the parties. *Id.* at 462.

TI is a member of the OU-1 and OU-2 Groups and a plaintiff herein to recover both monies it has itself paid and on behalf of Smiths for those paid by Smiths. Plaintiffs continue to believe that TI is thus the proper plaintiff and can recover herein all the amounts paid by it or on its behalf.[5] Plaintiffs have always focused on recovering response costs paid *out of* the OU-1 and OU-2 Trust Accounts rather than on who put the money *into* those accounts. They

---

[5] Payments to the United States and to the various contractors performing the OU-1 and OU-2 RD/RA work and other group efforts have been made from the OU-1 and OU-2 Group trust accounts after those trust accounts were funded by contributions from the members of those groups.

believe that how they ultimately allocate amongst themselves the shares of response costs not recovered from the Defendants in this litigation is irrelevant to the litigation.

Nevertheless, Defendants may argue that TI does not have the right to seek recovery under either § 107(a) or § 113(f) for monies paid into the Group accounts by Smiths. Plaintiffs have added Smiths as plaintiffs to make resolution of such a form over substance argument unnecessary.

The addition of these two new plaintiffs will not change the litigation or delay trial in any way. The total amount of response costs sought by Plaintiffs remains the same. The only difference is which entity put the dollars into OU-1 and OU-2 Group trust accounts from which the payments for those response costs came. The Smiths entities are merely indemnitors, and have no other connection to the Site or to any other party. The Defendants have known about the dollars into and out of each of the accounts for years. Several of the entries in those accounts show deposits from the Smiths entities. Plaintiffs have recently produced documentation concerning the Smiths entities and a copy of the 2001 agreement pursuant to which the shares of TI were sold. No new discovery is needed with respect to these entities or the dollars they put into the Group trust accounts.

### Other Changes

The proposed pleading deletes defendants that previously have been dismissed and entities initially named as defendants but which were never served.[6] The Court Clerk

---

[6] Thomas & Betts Corporation ("T&B") remains in the pleading because no dismissal order has been submitted, even though Plaintiffs and T&B have settled the claims between them. Diaz Chemical Corporation ("Diaz") remains because it was served and a default has been entered, even though Diaz has filed a Chapter 7 petition in the United

(continued...)

instructed Plaintiffs' counsel that only parties remaining in the case should appear in the amended pleading so as to avoid the same circumstance as when the Fourth Amended Complaint was field and the Clerk issued new summonses for entities that had already been dismissed, assuming the already dismissed parties were being added back in to the action.[7]

### Relation Back

Plaintiffs' proposed amendment relates back to the date of the original pleading because the claim asserted in the amended pleading arose out of the "conduct, transaction, or occurrence" set forth or attempted to be set forth in the original pleading. Fed. R. Civ. P. 15(c)(2); *see also Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 309-10 (3d Cir. 2004); *Pennington v. British Airways*, 275 F. Supp. 2d 601, 606-07 (E.D. Pa. 2003).

### Conclusion

Plaintiffs' motion should be granted because a recent change in the law has clarified Plaintiffs' CERCLA causes of action and because none of the reasons for denying leave to amend are present here. Plaintiffs should be permitted to file their proposed Fifth Amended Complaint so that the current form of its pleading does not unfairly affect its fundamental right to recover from the Defendants the costs of remediating the Site. For all of the foregoing reasons,

---

(...continued)
Bankruptcy Court. Boarhead Corporation, the Globe entities, and Knoll International, Inc. were never served and thus have never been parties.

[7] A few changes to allegations were made based upon facts analyzed by Plaintiffs since filing of the Fourth Amended Complaint.

and in the interest of justice, Plaintiffs respectfully request that they be given leave to file the proposed Fifth Amended Complaint.

Dated: July 25, 2007

Respectfully submitted,

Ballard Spahr Andrews & Ingersoll, LLP

By: _____
Glenn A. Harris, Esquire
Plaza 1000, Suite 500, Main Street
Voorhees, New Jersey 08043
Phone: (856) 761-3400

Attorney for Plaintiffs