# EXHIBIT "I"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AGERE SYSTEMS, INC., CYTEC INDUSTRIES INC., FORD MOTOR COMPANY, SPS TECHNOLOGIES, LLC and TI GROUP AUTOMOTIVE SYSTEMS, LLC<br><br>Plaintiffs,<br><br>v.<br><br>ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, et al.,<br><br>Defendants. | Civil Action No. 02-CV-3830 (LDD)<br><br>**PLAINTIFFS' RESPONSES TO JOINT CONTENTION INTERROGATORIES OF ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, ASHLAND, INC., CARPENTER TECHNOLOGY CORPORATION, fcg, inc., HANDY & HARMAN TUBE COMPANY, INC. AND NRM INVESTMENT COMPANY** |

Plaintiffs Agere Systems, Inc., Cytec Industries Inc., Ford Motor Company, SPS Technologies, LLC and TI Group Automotive Systems, LLC ("Plaintiffs"), by their undersigned attorneys, object and respond to the joint contention interrogatories of Advanced Environmental Technology Corporation ("AETC"), Ashland, Inc., Carpenter Technology Corporation, fcg, inc., Handy & Harman Tube Company, Inc. and NRM Investment Company (collectively, "Defendants") as follows:

## GENERAL STATEMENTS AND OBJECTIONS

1.  Plaintiffs object to Defendants' Definitions, Instructions and Interrogatories to the extent that they are not "narrowly-tailored contention interrogatories" as permitted by Judge Davis' June 23, 2005 Order.

2.  Plaintiffs object to Defendants' Definitions, Instructions and Interrogatories to the extent that they seek information outside the scope of the contentions that Plaintiffs will make as part of their prima facie case at trial. Plaintiffs specifically reserve the right to make any factual

and legal contentions, whether expressly set forth in their responses to these Interrogatories or not, in response to positions taken by Defendants at trial.

3. Plaintiffs object to Defendants' Definitions, Instructions and Interrogatories to the extent that they seek information and documents that are not relevant to the subject matter of this action or are not reasonably calculated to lead to the discovery of admissible evidence.

4. Plaintiffs object to Defendants' Definitions, Instructions and Interrogatories to the extent that they seek information not in Plaintiffs' possession, custody or control.

5. Plaintiffs object to Defendants' Definitions, Instructions and Interrogatories to the extent that they seek information already in the possession, custody or control of Defendants.

6. Plaintiffs object to Defendants' Definitions, Instructions and Interrogatories to the extent that they seek information which is publicly available or that is attainable by Defendants from a source other than Plaintiffs at no greater inconvenience, burden, or expense than Defendants seek to impose on Plaintiffs.

7. Plaintiffs object to Defendants' Definitions, Instructions and Interrogatories to the extent that they seek information protected by the attorney-client privilege or any other applicable privilege. Any inadvertent disclosure of privileged information shall not constitute a waiver of the attorney-client or any other applicable privilege.

8. Plaintiffs object to Defendants' Definitions, Instructions and Interrogatories to the extent that they seek the discovery of the mental impressions, conclusions, strategies, opinions, research or legal theories of their attorneys or other representatives. Any inadvertent disclosure of work product shall not constitute a waiver of any work product protection.

9. Plaintiffs object to Defendants' Definitions, Instructions and Interrogatories to the extent that they are not limited in time or scope.

10. Plaintiffs object to Defendants' Definitions, Instructions and Interrogatories to the extent that they are unduly burdensome, onerous, oppressive, or designed to be harassing or will cause unnecessary expense.

11. Plaintiffs object to Defendants' Definitions, Instructions and Interrogatories to the extent that they are overly broad, vague or ambiguous.

12. Plaintiffs object to Defendants' Definitions, Instructions and Interrogatories to the extent that they seek to alter or exceed the scope of the obligations placed on Plaintiffs by the Federal Rules of Civil Procedure or other applicable law, including, but not limited to, any obligations Plaintiffs may have to supplement or amend their answers.

13. Plaintiffs' responses to the Defendants' contention interrogatories shall serve to supplement their previous responses to Defendants' discovery requests.

14. A specific reference to a particular General Objection in the following responses is not intended to exclude the application of other General Objections to that response or of the General Objections to other responses. To the extent that Plaintiffs respond to Interrogatories to which it objects, such objections are not waived by the furnishing of information or providing of documents.

overly broad. Plaintiffs further object to this Interrogatory to the extent that it seeks the discovery of the mental impressions, conclusions, strategies, opinions, research or legal theories of their attorneys or other representatives or information protected by the attorney-client privilege or any other applicable privilege. By way of further objection, Defendants' definition of "factual basis" is overbroad and unduly burdensome.

Without waiving any such objections, see Plaintiffs' response to Interrogatory No. 78.

119. Does Agere contend that it did not receive or had credited on its behalf any monies or other consideration that reduced its share of Total Cleanup Costs of the Site from any source, including, but not limited to, settlement, insurance proceeds, predecessors, or payment under an indemnity agreement?

   A.   If not, what monies did Agere receive and from what sources?

**ANSWER:** Plaintiffs object to this Interrogatory to the extent that it seeks information outside the scope of the contentions that Plaintiffs will make as part of their prima facie case at trial. Plaintiffs further object to this Interrogatory because it is vague, confusing, and ambiguous. Plaintiffs further object to this Interrogatory to the extent that it seeks the discovery of the mental impressions, conclusions, strategies, opinions, research or legal theories of their attorneys or other representatives or information protected by the attorney-client privilege or any other applicable privilege. Plaintiffs also object to this Interrogatory to the extent that its seek information and documents that are not relevant to the subject matter of this action or are not reasonably calculated to lead to the discovery of admissible evidence.

Without waiving any such objections, Plaintiffs will not ask the Court at trial to make findings of fact or conclusions of law that they "did not receive or had credited on its behalf any monies or other consideration that reduced its share of Total Cleanup Costs of the Site from any source, including, but not limited to, settlement, insurance proceeds, predecessors, or payment under an indemnity agreement." By way of further response, Plaintiffs have entered into the

following settlements with parties to this action: Novartis ($162,500); United States Navy ($100,000); Unisys ($50,000); Quikline Design ($50,000); Simon Wrecking ($50,000); Knoll ($207,500); Plymouth Tube ($425,000); Rohm and Haas ($35,000); Emhart ($100,000); Techalloy/Rahns ($3,200,000); and Thomas & Betts Corporation ($42,500).

120. Does Cytec that it did not receive or had credited on its behalf any monies or other consideration that reduced its share of Total Cleanup Costs of the Site from any source, including, but not limited to, settlement, insurance proceeds, predecessors, or payment under an indemnity agreement?

  A. If not, what monies did Cytec receive and from what sources?

  **ANSWER:** See Plaintiffs' response to Interrogatory No. 119.

121. Does Ford contend that it did not receive or had credited on its behalf any monies or other consideration that reduced its share of Total Cleanup Costs of the Site from any source, including, but not limited to, settlement, insurance proceeds, predecessors, or payment under an indemnity agreement?

  A. If not, what monies did Ford receive and from what sources?

  **ANSWER:** See Plaintiffs' response to Interrogatory No. 119.

122. Does SPS contend that it did not receive or had credited on its behalf any monies or other consideration that reduced its share of Total Cleanup Costs of the Site from any source, including, but not limited to, settlement, insurance proceeds, predecessors, or payment under an indemnity agreement?

  A. If not, what monies did SPS receive and from what sources?

  **ANSWER:** See Plaintiffs' response to Interrogatory No. 119.

123. Does TI contend that it did not receive or had credited on its behalf any monies or other consideration that reduced its share of Total Cleanup Costs of the Site from any source, including, but not limited to, settlement, insurance proceeds, predecessors, or payment under an indemnity agreement?

  A. If not, what monies did TI receive and from what sources?

  **ANSWER:** See Plaintiffs' response to Interrogatory No. 119.

124. Do plaintiffs contend there is any "orphan share" liability associated with the Site?

  A. If so, has the EPA agreed to reduce the Total Cleanup Cost for the Site for which plaintiffs are responsible as a result of the "orphan share" liability?