IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AGERE SYSTEMS, INC., ET AL., | : | |
| | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| ADVANCED ENVIRONMENTAL | : | NO. 02-3830 |
| TECHNOLOGY CORPORATION, ET AL., | : | |
| | : | |
| Defendants. | : | |

MEMORANDUM AND ORDER

Presently before the Court are defendant Advanced Environmental Technology

Corporation's Motion for Summary Judgment (Doc. No. 293), Ashland's Response in

Opposition (Doc. No. 296), and Advanced Environmental Technology's Reply (Doc. No. 313).

After careful consideration and for the reasons set forth below, it is ORDERED that the motion is

GRANTED.

I. Factual and Procedural History

The underlying cause of action in this suit was filed on June 18, 2002, under the

Comprehensive Environmental Response, Compensation and Liability Act, as amended, 42

U.S.C. § 9601, *et seq.*, ("CERCLA") and the Pennsylvania Hazardous Sites Cleanup Act, 35 Pa.

Cons. Stat. § 6020.101 *et seq*., ("HSCA") for the recovery of costs incurred and to be incurred in

response to the release or threatened release of hazardous substances at the Boarhead Farms

Superfund Site (the "Site").  Nearly six years later, on January 11, 2008, after extensive discovery

and litigation, this Court granted plaintiffs leave to file a Fifth Amended Complaint (Doc. No.

1

279).  Defendants answered the complaint on January 31, 2008 (Doc. Nos. 283, 284, 285, 286, and 287).

Defendant Ashland Chemical Company ("Ashland"), in its answer to the Fifth Amended Complaint, asserted ten new cross-claims against defendant Advanced Environmental Technology Corporation ("AETC") (Doc. No. 286).  Ashland previously asserted these cross-claims in its Motion for Leave to File an Amended Answer to Plaintiffs' Fourth Amended Complaint (Doc. No. 211).  However, Ashland's Motion was based on the possibility that summary judgment might be granted in favor of AETC (See Doc. Nos. 196 and 211).  Thus, when AETC's Motion for Summary Judgment was denied (Doc. No. 216), Ashland's Motion for Leave to File an Amended Answer to Plaintiffs' Fourth Amended Complaint was denied as moot (Doc. No. 217).

In light of recent litigation events, Ashland now seeks to reassert its cross-claims against AETC, and AETC moved for summary judgment on all of the cross-claims.

## II.  Legal Standard

In considering a motion for summary judgment, the court must examine "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," to determine whether there is any "genuine issue as to any material fact."  Fed. R. Civ. P. 56(c).  A genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In ruling on the motion, the court must draw all reasonable inferences in the light most favorable to the nonmoving party, and "may not weigh the evidence or make credibility determinations."

Boyle v. City of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998); Anderson, 477 U.S. at 255.

Therefore, "where the non-moving party's evidence contradicts the movant's, then the non-

movant's must be taken as true." Big Apple BMW, Inc. v. BMW of North America, Inc., 974

F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993).


III.  Discussion

        Contribution and indemnity are each separate and distinct causes of action.  The right of

contribution arises as between joint tort-feasors where a party has paid more than its fair share of

liability to a third party.  Swartz v. Sunderland, 169 A.2d 289, 291 (1961).  Indemnity, on the

other hand, can arise from express contract, implied contract, or by operation of law.   Boswell v.

Aetna Life Ins. Co., 31 Pa. D. & C.3d 94, 98 (Pa. Commw. Ct. 1984).  Indemnity arising by

operation of law "is a right which enures to a person who, without active fault on his own part,

has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial

negligence of another, and for which he himself is only secondarily liable."  MIIX Insurance Co.

v. Epstein, 937 A.2d 469, 472 (Pa. Super. 2007).  Absent a contract to the contrary, indemnity is

not available to a party who is actively negligent, Consolidated Rail Corp. v. Youngstown Steel

Door Co., 695 F. Supp. 1577, 1581 (E.D. Pa. 1988) (citing Rabatin v. Columbus Lines, Inc., 790

F.2d 22 (3d Cir.1986); Wingo v. Celotex Corp., 834 F.2d 375 (4th Cir. 1987)), and is therefore

unavailable among joint tort-feasors. Globe Indem. Co. v. Agway, Inc., 456 F.2d 472, 474-75 (3d

Cir. 1972); Foulke v. Dugan, 212 F.R.D. 265, 270 (E.D. Pa. 2002).  As such, claims for

contribution and indemnity should be analyzed separately.

A.  Ashland's Claims for Contribution

Pennsylvania adopted the Uniform Contribution Among Tort-feasors Act ("UCATA").[1] 42 Pa. Cons. Stat. §§ 8321 *et seq*.  UCATA establishes a right to contribution among joint tort-feasors.  42 Pa. Cons. Stat § 8324(a).  The term "joint tort-feasor" is defined as "two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them."  42 Pa. Cons. Stat § 8322.  "In order to be joint tortfeasors, 'the parties must either act together in committing the wrong, or their acts, if independent of each other, must unite in causing a single injury.'"  Foulke v. Dugan, 212 F.R.D. 265 (E.D. Pa. 2002) (quoting Lasprogata v. Qualls, 397 A.2d 803, 806 n.4 (Pa. Super. Ct. 1979); Black's Law Dictionary, 4th Ed. (1968) at 1661)).  Contribution "is not a recovery for the tort, but rather it is the enforcement of an equitable duty to share liability for the wrong done by both."  Swartz v. Sunderland, 169 A.2d 289, 290 (Pa. 1961) (citing  Parker to Use of Bunting v. Rodgers, 189 A. 693, 695. (Pa. Super. Ct. 1937) ("The doctrine of contribution rests on the principle that, when the parties stand in *aequali jure*, the law requires equality, which is equity, and one of them shall not be obliged to bear a common burden in ease of the rest.")).  Contribution is a fault-sharing mechanism between two parties responsible for a harm.  Kemper National P & C Companies v. Smith, 615 A.2d 372, 375 (Pa. Super. Ct. 1992).

In Ashland's ten cross-claims it asserts a right to contribution based on:  (1) Breach of

---

[1]The parties appear to agree for purposes of this motion that Ashland's claims for contribution are brought under Pennsylvania statutory and common law.  (See Ashland Mot. Opp'n page 11 n.5; AETC Mot. Summ. J. pages 4-5.)  However, the Court notes that New Jersey's law of contribution is substantially similar to Pennsylvania's, and there is no apparent conflict for purposes of this motion.  Compare 42 Pa. Cons. Stat §§ 8321 *et seq.* with N.J. Stat. Ann. §§ 2A:53A-1 *et seq.* (recognizing a right of contribution among joint tort-feasors).

Written Contract; (2) Breach of Oral Contract; (3) Breach of Implied Contract; (4) Unjust

Enrichment; (5) Detrimental Reliance; (6) Fraud in the Inducement; (7) Failure to Exercise

Reasonable Care and Control Over Contractor/Agent; (8) Negligent Hiring/Breach of Fiduciary

Duty; (9) Negligent Supervision/Breach of Fiduciary Duty; and (10) Negligent Retention/Breach

of Fiduciary Duty. Ashland asserts that the ten cross-claims are all claims for contribution and/or

indemnity. However, the claims are plead as either contract claims or tort claims with

contribution and indemnity asserted as alternative damages. Contribution, however, is a separate

cause of action, and is distinct from the underlying tort upon which it is based. Svetz for Svetz v.

Land Tool Co., 513 A.2d 403, 407 (Pa. Super. Ct. 1986) (quoting Puller v. Puller, 110 A.2d 175,

177 (Pa. 1955) ("[C]ontribution is not a recovery for the tort [committed against the plaintiff,]

but the enforcement of an equitable duty to share liability for the wrong done.")).

      In order to be entitled to contribution, Ashland must plead that it and AETC are joint tort-

feasors both liable to a third party. All ten of Ashland's cross-claims, however, allege that AETC

is liable to Ashland for breaching contractual obligations or duties owed to Ashland, not a third

party. This is not the basis for a contribution claim.

      The only liability for which Ashland and AETC could potentially be found jointly liable

to a third party are plaintiffs' CERCLA and HSCA claims. (See Pls. Fifth Am. Compl.) This

Court already deemed defendants' answers to raise all cross-claims and counterclaims for

contribution pursuant to CERCLA and HSCA.

      For these reasons, AETC's Motion for Summary Judgment as to Ashland's cross-claims

for contribution is granted.[2]

### B.  Ashland's Claims for Indemnity

#### 1.  Applicable Law

A federal court sitting in diversity applies the substantive law of the forum state.  <u>First Health Group Corp. v. National Prescription Adm'rs, Inc.</u>, 155 F. Supp. 2d 194, 215 (M.D. Pa. 2001).  Therefore, this Court applies Pennsylvania choice of law analysis.  <u>Id.</u>  Under Pennsylvania law, the first question to resolve is whether there is an actual conflict of law.  <u>Ratti v. Wheeling Pittsburgh Steel Corp.</u>, 758 A.2d 695, 702 (Pa. Super. Ct. 2000).  If there is a conflict, the court "must weigh the governmental interests underlying the issue and determine which state has the greater interest in the application of its law."  <u>Id.</u>

The Court finds that, for purposes of this motion, there is no conflict between Pennsylvania and New Jersey's law of indemnity.  Both states recognize that a right to indemnity can arise from contract, express or implied.  <u>Westville Land Co. v. Handle</u>, 171 A. 520, 522 (N.J. 1934); <u>Boswell v. Aetna Life Ins. Co.</u>, 31 Pa. D. & C.3d 94, 98 (Pa. Commw. Ct. 1984). Additionally, both Pennsylvania and New Jersey recognize a common law right to indemnity. <u>MIIX Ins. Co. v. Epstein</u>, 937 A.2d 469, 472 (Pa. Super. Ct. 2007); <u>Stephenson v. R.A. Jones & Co., Inc.</u>, 510 A.2d 1161, 1163 (N.J. 1986); <u>Boswell</u>, 31 Pa. D. & C.3d at 98 (1984).

"The right to [common law] indemnity arises by operation of law and will be allowed where necessary to prevent an unjust result.  It is a common law equitable remedy that shifts the entire responsibility for damages from a party who, without any fault, has been required to pay

---

[2]It is specifically noted that this Order does not address Ashland's cross-claims for contribution pursuant to CERCLA and HSCA.

because of a legal relationship to the party at fault." City of Wilkes-Barre v. Kaminski Bros.,

Inc., 804 A.2d 89, 92 (Pa. Commw. Ct. 2002) (citing 18 P.L.E. Indemnity § 2 (1988);

Restatement (Second) of Torts § 886B (1979)). "However it is formed, the relation requires

'passive' or secondary liability in the indemnitor to an injured third party." Boswell, 31 Pa. D. &

C.3d at 98 (1984). See also Enright v. Lubow, 493 A.2d 1288, 1303 (N.J. Super. Ct. App. Div.

1985) (Indemnity "is a right which enures to a person who, without active fault on his own part,

has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial

negligence of another, and for which he himself is only secondarily liable.").

### 2. Counts I and II of Ashland's Cross-claims Plead a Claim for Indemnity Based Upon Express Contract.

Although imprecisely captioned, Counts I and II of Ashland's cross-claims can be

construed as stating claims for indemnity based upon an express contract.  In Counts I and II,

Ashland alleges that it has, or may in the future, suffer economic losses as a result of potential

liability to plaintiffs for their CERCLA and HSCA claims.  Ashland further alleges that it had an

express agreement with AETC, either written or oral, which included an indemnification

provision.  Finally, Ashland asserts that the indemnification clause covers the potential CERCLA

and/or HSCA liability for which Ashland may be held liable.  For the foregoing reasons, the

Court will construe Counts I and II as one claim for indemnity based upon an express contract,

either oral or written.

### 3. Counts III Through X of Ashland's Cross-claims are not Claims for Indemnity.

Counts III through X of Ashland's cross-claims cannot be construed as claims for

indemnity.  First, it is clear that none of the claims are for express contractual indemnity.  After

examination it is also clear that Counts III through X do not state claims for indemnity based upon an implied contract.

Only Counts III, IV, and V of Ashland's cross-claims could possibly be construed to state a claim for indemnity based upon an implied contract. Although Count III pleads conduct which, if true, could give rise to an contract implied-in-fact,[3] it does not allege an implied-in-fact contract *for indemnity*. That Ashland and AETC may have had an agreement that AETC would dispose of waste in a non-negligent manner, and that AETC allegedly breached that term, does not automatically imply that AETC would be liable to Ashland for anything more than contract damages.

Count IV is for unjust enrichment which sounds in quasi-contract or contract implied-in-law. Sevast v. Kakouras, 915 A.2d 1147, 1153 n.7 (Pa. 2007). However, the recovery for a claim of unjust enrichment is limited to the value conferred, not indemnity. West v. Peoples First Nat. Bank & Trust Co., 106 A.2d 427, 433 (Pa. 1954).

Count V is for promissory estoppel. "Unlike the doctrine of implied contract, which provides for restitution in the absence of an enforceable agreement, promissory estoppel makes promises enforceable." Crouse v. Cyclops Indus., 704 A.2d 1090, 1093 (Pa. Super. Ct. 1997), appeal granted, 727 A.2d 1121 (1998) and aff'd in part, rev'd in part on other grounds, 745 A.2d 606 (2000), reh'g denied, (Aug. 25, 2000). This claim is simply not one for indemnity nor can it be construed as such.

---

[3] "A contract implied in fact is one where the parties assent to the formation of a contract, but instead of being expressed in words, the intention to infer obligation is inferred from the conduct of the parties in light of surrounding circumstances including a course of conduct." Highland Sewer and Water Auth. v. Forest Hills Mun. Auth., 797 A.2d 385, 390 (Pa. Commw. Ct. 2002).

Lastly, Counts III through X do not state claims for common law indemnity. The counts are devoid of allegations that AETC is primarily liable for plaintiffs' CERCLA and/or HSCA claims, or that Ashland will be forced to answer for AETC's active fault with respect to plaintiff's CERCLA and HSCA claims. Whether or not AETC fraudulently induced Ashland, negligently hired DeRewal Chemical Company ("DCC"), negligently supervised DCC, or breached fiduciary duties speaks to its direct liability to Ashland, but is irrelevant for determining whether AETC was primarily liable (and Ashland only secondarily or vicariously liable) for plaintiffs' CERCLA and HSCA claims.[4]

### 4. Statute of Limitations.

#### a. Counts I and II are Not Time-barred

Under both Pennsylvania and New Jersey law, the statute of limitations begins to run when the plaintiff's cause of action accrues. Barnes v. American Tobacco Co., 161 F.3d 127, 149 (3d Cir. 1998). A claim for indemnity accrues when "liability is fixed by a judgment against, or payment in settlement by, the indemnitee." Thermo King Corp. v. Strick Corp., 467 F.Supp. 75, 77 (W.D. Pa. 1979); Harley Davidson Motor Co., Inc. v. Advance Die Casting, Inc., 696 A.2d 666, 671 (N.J. 1997).

Having determined that Counts I and II of Ashland's cross-claims will be construed as a

---

[4]Indeed, the Court questions whether it is even possible for Ashland to state a cross-claim for common law indemnity given that, if plaintiffs are successful on their CERCLA or HSCA claims, both Ashland and AETC might be vicariously, not primarily and/or secondarily liable, and thus there would be no indemnity. See Two Rivers Terminal, L.P. v. Chevron USA, Inc., 96 F. Supp. 2d 432, 448 (M.D. Pa. 2000).

claim for indemnity based upon express contract, the claim has not yet accrued[5] and therefore is not time barred.

> b.  The Pennsylvania Statute of Limitations Applies to Counts III, IV, V, VI, VII, VIII, IX, and X.

"[T]he doctrine of Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), requires courts to apply the substantive law, including conflicts of laws rules and statute[s] of limitations of the state where the District Court sits, in this case, the law of Pennsylvania."  Lafferty v. St. Riel, 495 F.3d 72, 75 (3d Cir. 2007) (internal quotations omitted). Pennsylvania considers statutes of limitations be procedural and therefore applies its own statutes of limitations unless the so-called "borrowing statute" applies.  AAMCO Transmissions, Inc. v. Harris, 759 F.Supp. 1141, 1143-44 (E.D. Pa. 1991).  Pennsylvania's borrowing statute provides that "[t]he period of limitation applicable to a claim accruing outside this Commonwealth shall be either that provided or prescribed by the law of the place where the claim accrued or by the law of this Commonwealth, whichever first bars the claim."  42 Pa. Cons. Stat. § 5521(b).

Under Pennsylvania law, Counts III, IV, and V are governed by a four-year statute of limitations period.  42 Pa. Cons. Stat. § 5525(a)(4); Sevast v. Kakouras, 915 A.2d 1147, 1153 (Pa. 2007) (Pennsylvania statute of limitations for unjust enrichment is four years); Crouse v. Cyclops Industries, 745 A.2d 606, 610 (Pa. 2000) (Pennsylvania statute of limitations for promissory estoppel is four years).  The Pennsylvania statute of limitations for Counts VI, VII,

---

[5]Although Ashland's claims for indemnity have technically not yet accrued, they are still appropriately brought in conjunction with the underlying CERCLA and HSCA claims for which indemnity is sought.  See Fed. R. Civ. P. 14; Jones v. Waterman S. S. Corp., 155 F.2d 992, 997 (3d Cir. 1946).

VIII, IX, and X is two years.  42 Pa. Cons. Stat. 5524(7); <u>Half v. Metropolitan Life Ins. Co.</u>, 2003

WL 23354138 *2 (Pa. Com. Pl. Ct. 2003) (Pennsylvania statute of limitations for fraud claims is

two years); <u>Matthews v. Roman Catholic Diocese of Pittsburgh</u>, 2004 WL 2526794; 67 Pa. D. &

C.4th 393 (Pa. Com. Pl. 2004) (Pennsylvania statute of limitations for negligent hiring and

supervision claims is two years); <u>Toy v. Metropolitan Life Ins. Co.</u>, 863 A.2d 1, 14 (Pa. Super.

Ct. 2004) (Pennsylvania statute of limitations for negligent supervision is two years).

Under New Jersey law, Counts III, IV, V, VI, VII, VIII, IX, and X are governed by a six-

year limitations period.  N.J. Stat. Ann. § 2A:14-1; <u>Stahl v. Sybig C.F.S., Inc.</u>, 2008 WL 833907

(N.J. Super. App. Div. 2008) (New Jersey statute of limitations for breach of contract and

negligent supervision is six years); <u>A.I. Credit Consumer Discount Co. v. Premiere Foods, Inc.</u>,

2007 WL 3256733 *1 (D. N.J. 2007) (New Jersey statute of limitations for unjust enrichment is

six years);  <u>Estate of Parr v. Buontempo Ins. Serv.</u>, 2006 WL 2620504 *1 (N.J. Super. App. Div.

2006) (New Jersey statute of limitations for breach of fiduciary duty is six years); <u>Gashlin v.</u>

<u>Prudential Ins. Co. of America Retirement System for U.S.</u>, 286 F. Supp. 2d 407, 421 (D. N.J.

2003) (New Jersey statute of limitations for promissory estoppel is six years); <u>Holmin v. TRW,</u>

<u>Inc.</u>, 748 A.2d 1141 (N.J. Super. App. Div. 2000) (New Jersey statute of limitations for fraud is

six years).

Because Pennsylvania's limitations period is shorter than New Jersey's for Counts III

through X, the Pennsylvania limitations period will apply regardless of whether the claims

accrued in Pennsylvania or New Jersey.  <u>See</u> 42 Pa. Cons. Stat. § 5521(b).

<u>c.  Counts III, IV, V, VI, VII, VIII, IX, and X are Time-barred.</u>

At the very latest, Ashland was aware of its claims in Counts III through X when the

11

plaintiffs filed their lawsuit on June 18, 2002. Therefore, the statute of limitations ran on Counts

III, IV, and V on June 18, 2006. The statute of limitations for Counts VI, VII, VIII, IX, and X ran

on June 18, 2004.

As such, Counts III, IV, V, VI, VII, VIII, IX, and X are time barred.

5.  Ashland's Cross-claim for Indemnity Based Upon Express Contract is Unsupported by the Evidence.

A.  Applicable Law

As discussed above, a federal court sitting in diversity applies the substantive law of the

forum state, First Health Group Corp. v. National Prescription Adm'rs, Inc., 155 F. Supp. 2d 194,

215 (M.D. Pa. 2001), and thus this Court will apply Pennsylvania's choice of law analysis. The

Court finds that, for purposes of this motion, there is no conflict between Pennsylvania and New

Jersey law.

Both Pennsylvania and New Jersey give substantial weight to the Restatement (Second)

of Contracts. Pop's Cones, Inc. v. Resorts Intern. Hotel, Inc., 704 A.2d 1321, 1326

(N.J. Super. App. Div. 1998) ("New Jersey typically gives considerable weight to Restatement

views . . . .") (citing Mazza v. Scoleri, 701 A.2d 723, 725 (N.J. Super. Ct. App. Div.1997));

Spatz v. Nascone, 424 A.2d 929, 937 (Pa. Super. Ct. 1981) ("[I]n interpreting contracts,

Pennsylvania courts have often turned to the Restatement of Contracts for guidance."). Section

17 of the Second Restatement states that, "the formation of a contract requires a bargain in which

there is a manifestation of mutual assent to the exchange and a consideration." Restatement

(Second) of Contracts § 17 (1981); Driscoll v. State, Dept. of Treasury, Div. of Lottery, 627 A.2d

1167, (N.J. Super. Ct. Law Div. 1993) (describing the rule stated in the Restatement (Second) of

Contracts § 17 as elementary); J.M.P.H. Wetherell v. Sentry Reinsurance, Inc., 743 F.Supp.

1157, 1170 (E.D. Pa. 1990) (applying Pennsylvania law and citing Restatement (Second) of

Contracts § 17 as well-settled law).

Additionally, the courts of both states have held that, in order for there to be mutual

assent, and thus a contract, the parties to must agree to the essential terms of the contract and

manifest intent to be bound by those terms. Baer v. Chase, 392 F.3d 609, 619 (3d Cir. 2004)

(applying New Jersey law); California Natural, Inc. v. Nestle Holdings, Inc., 631 F.Supp. 465,

470 (D. N.J. 1986) (internal quotations omitted) (citing Berg Agency v. Sleepworld-Willingboro,

Inc., 346 A.2d 419, 422 (N.J. Super. App. Div. 1975)); Shovel Transfer and Storage, Inc. v. Pa.

Liquor Control Bd., 739 A.2d 133, 136 (Pa. 1999).

A valid and binding contract can be formed even in the absence of signatures. Shovel

Transfer and Storage, 739 A.2d at 136. If the parties manifest their mutual assent to the essential

terms, a contract will nevertheless be formed. Id. Parties can manifest their mutual assent

through written or spoken words, or through conduct. Murphy v. Burke, 311 A.2d 904, 907 (Pa.

1973) (citing Restatement (Second) of Contracts § 5 cmt. a).

B.  Discussion

The Court first finds that the indemnity provision of the alleged written or oral contract is

an essential term.  Given the services involved in this particular contract–the hauling and

disposal or neutralization of hazardous chemicals–the indemnity clause had the potential of

subjecting a party to enormous liability.  As such, the indemnity provision was an essential term.

The Court next finds that there is insufficient evidence, and thus a reasonable factfinder

could not conclude, that there was mutual assent to the essential terms of the alleged

13

contract–either oral or written.  Although not dispositive, neither Ashland nor AETC signed the

purported contract.  (AETC Mot. Summ. J., Ex. E.)  Ashland alleges that it "prepared and

presented to AETC a proposed written agreement for the disposal of Ashland's chemical wastes

generated from the Great Meadows facility and that a signed version of that agreement has not

been located."  However, at most this shows assent by Ashland alone, not mutual assent.  A

memorandum created by Arthur Curley, an employee of Ashland, states that he presented three

signed copies of a contract to John Leuzarder of AETC.  The memorandum goes on to say that

Leuzarder was hesitant and that Ashland "should not expect to receive the signed contract too

soon, *if at all*."  (AETC Mot. Summ. J., Ex. I (emphasis added)).  This evidence is therefore

insufficient to create a genuine issue of material fact as to mutual assent.  Additionally, both

Curley and Leuzarder's deposition testimony indicate that the parties never mutually assented to

the contract in question.  Curley testified as follows:

> [Question by Ms. Mooney]: Do you know if this document was ever signed by
> Ashland?
>
> [Answer by Curley]: No, as far as I know, no.

(AETC Reply, Ex. A.).[6]  Additionally, Leuzarder testified as follows:

> [Question]: Do you know why this document [the alleged contract] was created?
>
> . . .
>
> [Answer by Leuzarder]: It appeared to be–it appeared to be trying to relate to the
> distillation of nitric acid.  On page 189, AETC 189 under number 12, Ashland

---

[6]The Court also notes that it is unclear which party drafted the alleged contract.  Contrary
to Ashland's position that it prepared the alleged contract, Curley's deposition testimony
indicates that he believed AETC generated the contract.  (AETC Reply, Ex. A.)  On the other
hand, Leuzarder's deposition testimony indicates that he believed Ashland drafted the contract.
(AETC Mot. Summ. J., Ex. G, 182:1-22.)

acknowledges or recognizes AETC will incur and sustain substantial capital equipment costs so AETC can more properly perform its duties with respect to a distilling of a blend of sulfuric and nitric acids under this agreement.

This appears to be tied in with the quotation which you would know as AETC 176 and was probably produced in response to that. *However as you can see it was not signed and I have no recollection that it ever was signed or executed*."

(AETC Mot. Summ. J., Ex. G 182:8-183:3 (emphasis added).)  Ashland's assertion that "Leuzarder merely stated that he did not know whether the contract was signed," is not supported by the evidence or the deposition testimony cited with respect to that assertion.  (Ashland Mot. Opp'n at 19.)

Additionally, no reasonable factfinder could determine that the conduct of Ashland or AETC indicated a manifestation of mutual assent to the terms of the alleged written or oral contract.  At the time this purported contract was entered into, AETC and Ashland had an ongoing relationship whereby AETC arranged for the removal of Ashland's waste.  (See Ashland Mot. Opp'n at 19; AETC Mot. Summ. J., Ex. F, I.)  Therefore, the purported agreement, if entered into by the parties, would have altered the ongoing arrangement between AETC and Ashland.  Ashland's argument that AETC's continued relationship with Ashland is an indication that "AETC did sign this contract" (or for that matter indicated assent to the terms of the purported contract) is unpersuasive.  There is no evidence that the ongoing relationship between the parties would have been terminated had the contract not been entered into.  In fact, the evidence is to the contrary.  Leuzarder's unsigned letter dated September 28, 1976 provides a price quote to Ashland for an extension of its services and proposes the construction of distillation equipment.  (AETC Mot. Summ. J., Ex. F.)  The letter goes on to say that "[u]ntil such time as an agreement is finalized between A.E.T.C. and Ashland we will continue to

15

provide our present services at the established price of $.4473/gallon."  (Id.)

Moreover, the parties' conduct does not manifest mutual assent because there is no evidence that either party's conduct conformed to a number of the essential terms of the purported contract.  For example, a primary objective of the purported contract was that Ashland would use AETC's services exclusively for a minimum of six months, and that in return AETC would incur substantial "capital equipment costs so that AETC can more properly perform its duties with respect to the distilling of the blend of sulfuric and nitric acids."  (AETC Mot. Summ. J., Ex. E, ¶ 12.)  There is no evidence that Ashland used AETC's services exclusively for the six month period, nor is there evidence that AETC incurred the capital equipment costs.  Moreover, AETC asserts, and Ashland does not dispute, that the distillation equipment was never installed. (See AETC Mot. Summ. J. at 23.)

Additionally, there is no evidence that the parties mutually assented to the indemnification term of the purported contract.  The only evidence regarding the indemnification provision indicates that Ashland's representative, Arthur Curley, knew that AETC did *not* assent to the terms of the agreement initially and that he expected that AETC might never agree to the indemnification agreement.  (See AETC Mot. Summ. J., Ex. I.)

Because a reasonable factfinder could not determine that there was mutual assent to the essential terms of the contract–either written or oral–as set forth in Exhibit A of Ashland's Answer to Plaintiff's Fifth Amended Complaint (Doc. No. 286-2), Ashland's cross-claims for indemnity based upon express contract (Counts I and II) must fail.

IV.  Conclusion

For all of the above reasons, it ordered that AETC's Motion for Summary Judgment

(Doc. No. 293) is granted.  An appropriate order follows.