IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AGERE SYSTEMS, INC., CYTEC INDUSTRIES INC., FORD MOTOR COMPANY, SPS TECHNOLOGIES, LLC and TI GROUP AUTOMOTIVE SYSTEMS L.L.C.,<br><br>    Plaintiffs,<br>v.<br><br>ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, et al.,<br><br>    Defendants. | Civil Action No. 02-CV-3830 (LDD) |

## ORDER

AND NOW, this _____ day of _____, 2008, upon consideration of Plaintiffs' Motion to Bar Testimony from Ashland, Inc.'s Designated Experts, it is hereby ORDERED that Plaintiffs' Motion is GRANTED, and no testimony from W. Leigh Short, Ph.D., PE, James F. Roetzer, Ph.D., or Gordon R. Jamieson, PG, may be offered at trial.

_____
Legrome D. Davis, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AGERE SYSTEMS, INC., CYTEC INDUSTRIES INC., FORD MOTOR COMPANY, SPS TECHNOLOGIES, LLC and TI GROUP AUTOMOTIVE SYSTEMS L.L.C., <br><br> Plaintiffs, <br><br> v. <br><br> ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, et al., <br><br> Defendants. | Civil Action No. 02-CV-3830 (LDD) |

## MOTION TO BAR TESTIMONY OF ASHLAND, INC.'S EXPERTS

Plaintiffs Agere Systems, Inc., Cytec Industries Inc., Ford Motor Company, SPS Technologies, LLC, and TI Group Automotive Systems L.L.C. ("Plaintiffs") move this Court, pursuant to Fed. R. Civ. P. 26(a)(2), to bar testimony from Ashland, Inc.'s experts for the reasons set forth in the accompanying memorandum of law.

Dated: May 23, 2008

                                            Respectfully submitted,

                                            Ballard Spahr Andrews & Ingersoll, LLP

                                            By: _____
                                                    Glenn A. Harris, Esquire
                                                    Plaza 1000, Suite 500, Main Street
                                                    Voorhees, New Jersey 08043
                                                    E-mail: harrisg@ballardspahr.com
                                                    Phone: (856) 761-3400

                                                    Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AGERE SYSTEMS, INC., CYTEC INDUSTRIES INC., FORD MOTOR COMPANY, SPS TECHNOLOGIES, LLC and TI GROUP AUTOMOTIVE SYSTEMS L.L.C., | Civil Action No. 02-CV-3830 (LDD) |
| Plaintiffs, | |
| v. | |
| ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, et al., | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF MOTION TO BAR TESTIMONY OF ASHLAND, INC.'S EXPERTS**

Plaintiffs Agere Systems, Inc., Cytec Industries Inc., Ford Motor Company, SPS Technologies, LLC and TI Group Automotive Systems L.L.C. (collectively "Plaintiffs") move this Court, pursuant to Fed. R. Civ. P. 26(a)(2), to bar testimony of W. Leigh Short, Ph.D., PE, James F. Roetzer, Ph.D., and Gordon R. Jamieson, PG, identified by Ashland, Inc. as persons who may be used at trial to present evidence under Federal Rules of Evidence 702, 703, or 705. Ashland failed to comply with Fed. R. Civ. P. 26(a)(2) in that it did not produce a report from any one of those individuals setting forth solely such individual's opinions and the bases for those opinions. Ashland instead produced a single report "prepared by" the three individuals that did not identify which of the discreet opinions therein were formed by a particular individual. Alternatively, this Court should limit any testimony from each of those individuals to opinions actually formed by him.

## **STATEMENT OF FACTS**

Ashland produced an expert report dated September 28, 2006 said to be "prepared by" three people: Dr. Short; Dr. Roetzer; and Mr. Jamieson ("Report"). The text of the Report begins:

> *We* have been retained by Ashland, Inc. . . . to review data and documents related to Boarhead Farms Superfund Site (Site) and to respond to certain opinions . . . This section contains a brief history of the site and a summary of *our* opinions. Section 2 contains the basis of *our* opinions. Section 3 outlines *our* qualifications and Section 4 lists the documents considered by *us* in forming *our* opinions.

Report at 1 (emphasis added). A copy of the Report is attached hereto and marked Exhibit "A." The Report consists of a section titled "History," followed by sections setting forth and discussing three main opinions, with sub-opinions under each of the three main opinions: Opinions 1A, 1B, 1C, and 1D with respect to Opinion 1; Opinions 2A, 2B, 2C with respect to Opinion 2; and Opinions 3A and 3B with respect to Opinion 3. Absolutely nothing in the Report gives any indication of the extent to which any of the listed authors actually formed the separate opinions expressed in the Report or which of them drafted any specific pages of the Report.

Plaintiffs sought clarity. They asked Ashland by e-mail of October 11, 2006: "The Ashland expert report lists three authors. Please identify which of them Ashland may use at trial." A copy of the October 11, 2006 e-mail is attached hereto and marked Exhibit "B." Thirteen days later Ashland replied by e-mail: "Any or all." A copy of the October 24, 2006 e-mail is attached hereto and marked Exhibit "C." Ashland's flip answer strongly suggests that it believes it is free to call at trial one, two, or three of these gentlemen, and that each is free to testify as to each and every opinion set forth in the Report, whether or not the opinions are opinions of that gentlemen.

Plaintiffs deposed each of the three purported authors to determine, *inter alia*, what each of them had to do with the creation of the Report and the opinions stated therein. Plaintiffs learned through those depositions that each of the authors was responsible for forming and drafting text concerning only one or more specific opinions that are disclosed in certain sections of the Report. Not coincidentally, each formed one or more opinions directly related to their specific area of expertise. The Report was thereafter assembled from these separately-drafted sections.

Plaintiffs accordingly move to bar the testimony of any of these gentlemen on any topic or, in the alternative, for a ruling that each may testify only as to the opinions he personally formed and with respect to which he wrote the corresponding text in the Report disclosing those opinions.

## ARGUMENT

The Eighth Case Management Order provides: "Defendants shall make their expert disclosures and produce the information required by Fed. R. Civ. P. 26(a)(2) on or before September 29, 2006." CMO No. 8 at ¶ 2. That rule provides, *inter alia*:

> [W]ith respect to *a witness* who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by *the witness*. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by *the witness* in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of *the witness*, including a list of all publications authored by *the witness* within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases for which *the witness* has testified as an expert at trial or by deposition within the preceding four years.

Fed. R. Civ. P. 26(a)(2)(B) (emphasis added).

Ashland did not comply with Fed. R. Civ. P. 26(a)(2). With respect to none of the purported authors does the Report constitute "A written report prepared and signed by *the witness*" (it was signed by all three), nor does it contain a statement solely of the opinions of *that witness*. Ashland thus has not complied with the rule and the testimony of each of these witnesses should be barred.

Mr. Jamieson, a hydrogeologist, testified that he was solely responsible for drafting the "History" section of the Report (pages 1-2) and for forming the opinions in and drafting the text of Sections 2B (page 7) and 3A (pages 9-10) of the Report, opinions relating to hydrogeology. Jamieson 10:20-11:20. Copies of the relevant pages from the deposition transcripts of Mr. Jamieson, Dr. Roetzer and Dr. Short are attached hereto and marked Exhibits D, E and F respectively. He then provided that text to Dr. Roetzer, left the country for a three week vacation, and returned to find that the other sections of the Report had been written and the Report assembled in his absence. Jamieson at 10:20-22, 102:10-103:14. Dr. Roetzer confirmed this testimony. Roetzer 85:13-15. Mr. Jamieson admitted that he had absolutely nothing to do with any of the other sections of the Report:

> A.   With respect to the opinions in this report, I was responsible for Opinion 2B and 3A. The remainder of the report -- I wrote the Introductory History section, and those are the two opinions that were my responsibility, that I developed. The other ones were developed by Dr. Roetzer and Dr. Short.
>
> Q.   So do you feel that you are not an expert to testify regarding the subject matters in the other opinions?
>
> MR. PETTIT:  Object to the form.
>
> A.   Those opinions were drawn and developed by Dr. Short and Dr. Roetzer, actually while I was out of the country, so I was not part of the development of those opinions. I developed my opinions and was out of the country from September 7th to September 30th on a Mediterranean cruise.

Jamieson 10:20-11:20. Mr. Jamieson mailed his signature page to Dr. Roetzer without even

looking at any sections of the Report drafted by Dr. Roetzer or Dr. Short. Jamieson at 100:24-103:14. The Report was issued on September 28, 2006, but Mr. Jamieson did not return from vacation until the 30th. Mr. Jamieson thus had nothing to do with the opinions developed by Dr. Roetzer or Dr. Short or the writing of any other parts of the Report.

Dr. Roetzer, an environmental engineer, developed Opinions 1A, 1B, 1C, 1D (pages 3-6), 2A (page 5-6), and 3B (page 10). Roetzer at 84:22-85:3. He testified that he did not form any opinions except for those contained in the sections of the Report that he drafted. Roetzer at 167:21-168:4. In addition, Dr. Roetzer went through the Report at his deposition opinion by opinion and identified which of the three gentlemen was responsible for developing each of the sub-opinions. Dr. Roetzer corroborated Mr. Jamieson's testimony that Mr. Jamieson was only responsible for developing opinions 2B and 3A in the Report, Roetzer 85:13-15, and that Dr. Short, a chemical engineer, developed only the remaining opinion, Opinion 2C (page 8) (concerning drum degradation). Roetzer at 84:22-85:23.

> Q. Specifically referring to the third line down in Opinion 2C there's a reference to poor waste management practices and that that may have caused drums to be damaged during handling and disposal. Do you see that reference?
>
> A. Yes.
>
> Q. What is the basis for that statement?
>
> A. I would probably defer to Dr. Short for what's in this opinion, however I think I can add that the waste management practices at the site were not good. And I think based on general experience, as it says, typical of other sites, drums were not necessarily handled with care at this type of site. So I think that's -- again, you may have to ask Leigh that question, but this is primarily his opinion.

Roetzer 252:9-253:8. Dr. Roetzer received the sections of the report drafted by Mr. Jamieson and Dr. Short, combined them with the sections he wrote into a single document, then edited the entire Report:

> Q. Okay. How physically did the report get put together?
>
> A. I ended up putting the report together, assembling the pieces.
>
> Q. So was it that you drafted a part and Leigh drafted a part and Gordon drafted a part and you compiled them into one?
>
> A. That's correct.

Roetzer 87:3-13.

Dr. Short agreed that Mr. Jamieson wrote the site history and the sections concerning hydrogeology (sections 2B and 3A). Short 81:10-22 and 82:7-13. He additionally agreed that Dr. Roetzer wrote most of the remaining sections of the report. Short 84:11-14. He agreed with Dr. Roetzer that he wrote the initial draft of Opinion 2C, Short 85:19-85:18, and that he wrote the "summary of Opinion 3" language, Short 85:19-86:5, and he claimed that he wrote Opinion 3B with respect to language about "hot spot areas." Short 86:6-21. Dr. Short's testimony with respect to Opinion 3B is directly contradicted by Dr. Roetzer's testimony, wherein Dr. Roetzer testified he formed Opinion 3B and then wrote the text.

Ashland was required to produce "A written report prepared and signed by the witness" with respect to each of the three experts, with each report containing a statement solely of the opinions of that witness. Ashland did not comply with this requirement. Therefore, the testimony of each of these witnesses should be barred.

Alternatively, each of these witnesses should be permitted to testify only as to the opinions each of them formed and disclosed in their own individual portions of the Report. A witness "qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if . . . (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. A witness thus can give expert testimony only if *he* has the requisite skills, *he* reviewed "facts or data," and *he* "has

applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. It is elementary that a witness cannot testify to opinions that he has not himself formed. Each of the three persons should only be permitted to testify at trial as to *his* opinions. Indeed, each of the experts repeatedly testified that questions concerning opinions and text prepared by one of the other two were not in his particular area of expertise and should be directed to the individuals who actually prepared those opinions.

For example, Mr. Jamieson was not able to answer questions about anything other than the "history" section and sections 2B and 3A, those which he drafted. Jamieson 10:16-14-10; 51:9-55-24. Dr. Roetzer routinely deferred questions about the subject matter of opinions developed by Mr. Jamieson or Dr. Short. *See, e.g.*, Roetzer 86:4-21. For example, Dr. Roetzer testified:

> Q.   And what are some of the monitoring well locations that are not near the source area?
>
> A.   Well, they are not shown on this figure. Again, I think with respect to the groundwater data you will be better off asking your questions of Gordon [the hydrogeologist].

Roetzer 167:21-168:4

> Q.   And can you identify on this map what you are talking about when you say in the areas down[gradient] of the source area?
>
> In other words, in the last line of your report you speak about areas down[gradient] of the source area. Can you identify that area on Exhibit 2?
>
> A.   Well, again, I think you are best off addressing groundwater questions to Gordon, but in general it's heading that way. It's a very rough description. Gordon can provide that in detail.

Roetzer 171:12-172:1.

> Q.   And is the direction of the gradient that you are referring to on Page 3 of your report, does that apply to one aquifer, many

aquifers?

A.   I'm going to defer any question on the hydrogeology to Gordon. He can discuss that with you.

Roetzer 173:6-13.

Dr. Short also responded to questions about groundwater and hydrogeology by stating that these questions were better suited for Mr. Jamieson, the hydrogeologist:

Q.   I just want you to take a look at the groundwater model report for OU1 and just tell me if this is the document that you are speaking of that references a high groundwater flow rate.

A.   I believe the answer is yes, and I would further tell you that this document is well within the expertise of Gordon versus me.

***

Q.   Is this document the only basis for your statement that the groundwater flow rate is high?

A.   You would have to ask Gordon that.

Short 206:7-207:4.

Each of these witnesses thus consistently refused to answer questions about opinions formed by the other two, at least in part because those opinions were not in the witness's area of expertise. Beyond the requirements of the Federal Rules, it would be unfair for these three witnesses to now testify at length concerning the very opinions with respect to which they deferred questioning at their depositions.

Finally, although Dr. Short testified that he "adopted" all of the opinions in the Report, even his own deposition testimony makes evident that he, Mr. Jamieson, and Dr. Roetzer independently created certain of the sub-opinions contained in the Report. For instance, Dr. Short admitted that Mr. Jamieson was to "take the lead" on the analysis of hydrogeology/geology and groundwater monitoring well issues at the site; Dr. Roetzer was to "take the lead" on

preparing a section in the Report on the chemistry of metals; and he was to "take the lead" in determining what impact, if any, Ashland wastes had on the selected remedy at the Site. Short 65:17-66:16. Moreover, Dr. Short's attempt to suggest that he had some involvement in the opinions formed by Dr. Roetzer and Mr. Jamieson is wholly refuted by the testimony of those gentlemen.

Neither Fed. R. Civ. P. 26(a)(2) nor Fed. R. Evid. 702 or 703 can be read to permit someone to testify as to opinions formed by others that he simply "adopts." Instead, those rules require that a witness must have formed the opinions himself based upon *his* expertise, *his* principles and methods, and *his* application of those principles and methods to the facts. Fed. R. Evid. 702. A witness, even if an "expert" in some field, can't simply read a report written by someone else and reflecting that person's opinions and the bases for them, decide that he "agrees" with those opinions, sign the report, and then testify at length about each and every opinion stated in the report and the bases for those opinions.

Accordingly, if this Court does not bar the testimony of these experts for failure to comply with Fed. R. Civ. P. 26(a)(2), any testimony from these experts should be limited to opinions each expert himself formed and disclosed in the section or sections of the Report relating to those opinions. Mr. Jamieson should be permitted to testify only as to the "History" section and to the opinions expressed in Sections 2B and 3A. Dr. Short should be permitted to testify only as to his opinion expressed in Section 2C. Dr. Roetzer should be permitted to testify only as to the opinions in Sections 1A, 1B, 1C, 1D, 2A, and 3B.

## **CONCLUSION**

For all the foregoing reasons, and in the interest of justice, Plaintiffs respectfully request that this Court bar testimony from any of the three individuals listed in the Report or, alternatively, limit each person's testimony to opinions actually formed by such individual.

Dated: May 23, 2008

                                          Respectfully submitted,

                                          Ballard Spahr Andrews & Ingersoll, LLP

                          By: _____
                                          Glenn A. Harris, Esquire
                                          Plaza 1000, Suite 500, Main Street
                                          Voorhees, New Jersey  08043
                                          E-mail: harrisg@ballardspahr.com
                                          Phone:  (856) 761-3400

                                          Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AGERE SYSTEMS, INC., CYTEC INDUSTRIES INC., FORD MOTOR COMPANY, SPS TECHNOLOGIES, LLC and TI GROUP AUTOMOTIVE SYSTEMS L.L.C., <br><br> Plaintiffs, <br> v. <br><br> ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, et al., <br><br> Defendants. | : <br> : <br> : Civil Action No. 02-CV-3830 (LDD) <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

**DECLARATION IN SUPPORT OF PLAINTIFFS' MOTION TO BAR TESTIMONY OF ASHLAND, INC.'S EXPERTS**

GLENN A. HARRIS, ESQUIRE hereby certifies:

1.     I am a member of the law firm of Ballard Spahr Andrews & Ingersoll, LLP, and counsel for Plaintiffs in the above-captioned matter.

2.     I submit this declaration in support of Plaintiffs' Motion to Bar Testimony of Ashland, Inc.'s Experts.

3.     Attached hereto and marked Exhibit "A" is a true and correct copy of the September 28, 2006 expert report prepared by Dr. Short; Dr. Roetzer; and Mr. Jamieson.

4.     Attached hereto and marked Exhibit "B" is a true and correct copy of the October 11, 2006 e-mail.

5.     Attached hereto and marked Exhibit "C" is a true and correct copy of the October 24, 2006 e-mail.

6. Attached hereto and marked Exhibit "D" is a true and correct copy of the deposition of Mr. Jamieson.

7. Attached hereto and marked Exhibit "E" is a true and correct copy of the deposition of Dr. Roetzer.

8. Attached hereto and marked Exhibit "F" is a true and correct copy of the deposition of Dr. Short.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated May 23, 2008

_____
Glenn A. Harris, Esquire