# Exhibit "E"

# ORIGINAL TRANSCRIPT

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AGERE SYSTEMS, INC.,    CIVIL ACTION
CYTEC INDUSTRIES,
INC., FORD MOTOR
COMPANY, SPS
TECHNOLOGIES LLC
and TI GROUP
AUTOMOTIVE SYSTEMS
LLC

      Plaintiffs

    V

ADVANCED ENVIRONMENTAL
TECHNOLOGY CORPORATION,
ET AL.

              NO.
    Defendants    02-CV-3830 (LDD)


         Oral deposition of JAMES F. ROETZER, Ph.D., taken at the law offices of Ballard Spahr Andrews & Ingersoll, LLP, 1735 Market Street 42nd Floor, Philadelphia, Pennsylvania, on Tuesday, December 19, 2006, at 9:37 a.m. before Jennifer Bermudez, a Registered Professional Reporter, and Notary Public, pursuant to notice.



## James DeCrescenzo Reporting, LLC
INNOVATING LITIGATION
1880 JFK Blvd., 6th Floor • Philadelphia, PA 19103
www.jdreporting.com

215.564.3905
PHONE

215.751.0581
FAX

ORAL DEPOSITION OF JAMES F. ROETZER, Ph.D., 12/19/06

```
 1    APPEARANCES:

 2    BALLARD SPAHR ANDREWS & INGERSOLL,
         LLP
 3        AMY M. TROJECKI, ESQUIRE
          TROJECKIA@BALLARDSPAHR.COM
 4        1735 Market Street, 51st Floor
          Philadelphia, Pennsylvania 19103
 5        215-665-8500
          Attorney for Plaintiffs
 6
      WOLFF & SAMSON, P.C.
 7        THOMAS W. SABINO, ESQUIRE
          tsabino@wolffsamson.com
 8        The Offices at Crystal Lake
          One Boland Drive
 9        West Orange, New Jersey 07052
          973-530-2044
10        Attorney For AETC

11    PHELAN, PETTIT & BIEDRZYCKI
          JEFFREY L. PETTIT, ESQUIRE
12        Jpettit@pp-b.com
          RICHARD C. BIEDRZYCKI, ESQUIRE
13        Rbiedrzycki@pp-b.com
          121 S. Broad Street, Suite 1600
14        Philadelphia, Pennsylvania 19107
          215-546-0500
15        Attorneys for Ashland, Inc.

16    CARELLA, BYRNE, BAIN, GILFILLAN,
         CECCHI, STEWART & OLSTEIN
17        MELISSA E. FLAX, ESQUIRE
          mflax@carellabyrne.com
18        5 Becker Farm Road
          Roseland, New Jersey 07068-1739
19        973-994-1700
          Attorney for Handy & Harman Tube
20        Company

21

22

23

24
```

**JDR**

**James DeCrescenzo Reporting**, LLC

215.564.3905

InnovatingLitigation
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

FAX  215.751.0581

ORAL DEPOSITION OF JAMES F. ROETZER, Ph.D., 12/19/06

1    A P P E A R A N C E S   (C O N T I N U E D):

2    **HINMAN, HOWARD & KATTELL, LLP**
       **RALPH K. KESSLER, ESQUIRE**
3      **rkessler@hhk.com**
      **106 Corporate Park Drive**
4      **Suite 317**
      **White Plains, New York 10604**
5      **914-694-4102**
      **Attorney for TI Automotive**

6

7    **DUANE MORRIS, LLP**
      **SETH v.d.H. COOLEY, ESQUIRE**
      **scooley@duanemorris.com**
8      **30 S. 17th Street**
      **Philadelphia, Pennsylvania 19103**
9      **215-979-1000**
      **Attorney for Flexible Circuits**

10

11           E X A M I N A T I O N   I N D E X

12   JAMES F. ROETZER, Ph.D.
13      DIRECT BY MS. TROJECKI    4
      CROSS BY MS. FLAX    244
13      DIRECT BY MS. TROJECKI  251
14      CROSS BY MR. SABINO    265

15             E X H I B I T   I N D E X

16                           M A R K E D

17  ROETZER
18    1    ADVANCED ENVIRONMENTAL    142
         TECHNOLOGY, INC. LETTER
19       FROM JOHN LEUZARDIR TO
         ART CURLEY, AUGUST 3
20       1976, WITH ATTACHMENT

21    2    LEGEND, FIGURE 7    165

22    3    E-MAIL FROM JIM ROETZER    260
         TO LEIGH SHORT, GORDON
23       JAMIESON, SEPTEMBER 14
         2006, WITH ATTACHED
24       EXPERT REPORT

**JDR**
**James DeCrescenzo Reporting, LLC**
InnovatingLitigation
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

215.564.3905           FAX  215.751.0581

ORAL DEPOSITION OF JAMES F. ROETZER, Ph.D., 12/19/06

1    point we were asked to address the

2    issue of drum wastes and potential

3    accelerated degradation of drums and

4    the impact of that on the site.

5        Q.    And you were asked to do

6    that by Ashland's lawyers?

7        A.    I believe so.

8        Q.    Did any other changes, any

9    other modifications to what you

10   thought your scope of work was to be?

11       A.    Not that I recall, no.

12       Q.    How was the work initially

13   divided between you, Leigh and

14   Gordon?

15       A.    Well, the division was

16   primarily based on expertise.  The

17   site geography, geology, hydrogeology

18   issues were within Gordon's

19   expertise.

20            The chemistry issues were

21   within my expertise.  And we had the

22   most experience with issues with

23   waste drums, drum degradation.

24       Q.    So did there come a time

**JDR**

**James DeCrescenzo Reporting**, LLC
InnovatingLitigation
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

215.564.3905                                FAX 215.751.0581

ORAL DEPOSITION OF JAMES F. ROETZER, Ph.D., 12/19/06

1    after you reviewed the Vandeven and

2    Exner report that you met with Leigh

3    or Gordon to discuss who was going to

4    be doing what?

5         A.    We didn't meet face to

6    face.

7         Q.    Did you have a

8    conversation?

9         A.    We did have conversations,

10   yes.

11        Q.    Telephone conversations?

12        A.    That would be telephone,

13   yes.

14        Q.    And what did you discuss

15   during your phone conversations?

16        A.    Well, general -- we

17   discussed general approaches to the

18   issues, as well as the work

19   assignments.

20        Q.    Did each of you review all

21   of the documents that are listed in

22   your -- that are attached and listed

23   in your expert report?

24        A.    Not that I know of.  I

**James DeCrescenzo Reporting**, LLC
InnovatingLitigation
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

215.564.3905                                          FAX  215.751.0581

1   think each person reviewed the

2   information he needed to do his part

3   of the report.

4        Q.    So what was your part of

5   the report, when you say each person

6   reviewed documents for their part?

7   If you want to refer me to the

8   specific section.

9        A.    By sections?

10        Q.    Uh-huh.

11        A.    Again, I think we can

12   identify the primary authors of

13   different sections, if that's

14   helpful.  That may be the best way to

15   do it.

16        Q.    Okay.

17        A.    I think Gordon had the lead

18   role on the introduction and history.

19   1.2 the summary really evolved from a

20   summary of the opinions.

21        Q.    Okay.

22        A.    Section 2, the basis of

23   opinions.  I would say 1A I probably

24   was the primary author.  1B also.  I

ORAL DEPOSITION OF JAMES F. ROETZER, Ph.D., 12/19/06

1    would say 1C I probably authored but

2    I had some input from -- a little bit

3    of input from my partners on that.

4         Q.    From both partners?

5         A.    Yes.  I think Gordon with

6    respect to the site history and such,

7    and Leigh had some experience with

8    metal finishing wastes.

9         Q.    Okay.

10        A.    1D I would say I was the

11    primary author.  Opinion 2 I would

12    say 2A I think I was the primary

13    author of that.  2B, Gordon was the

14    primary author of that.  3A, Gordon

15    was the primary author.

16         Q.    How about 2C?

17        A.    I'm sorry, did I skip one?

18    2C, I think Leigh was the primary

19    author there.

20         Q.    Okay.

21        A.    3A, Gordon was the primary

22    author.  And 3B, I was the primary

23    author.

24         Q.    Do you believe that you

**JDR**

**James DeCrescenzo Reporting**, LLC
InnovatingLitigation
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

215.564.3905                           FAX  215.751.0581

ORAL DEPOSITION OF JAMES F. ROETZER, Ph.D., 12/19/06

1    have expertise related to each of the

2    expert opinions in this expert report

3    that we have marked as Exhibit 1?

4         A.    I think I -- I have some

5    expertise in all of those areas, but

6    certainly nowhere near the expertise

7    as Gordon with respect to

8    hydrogeology. And Leigh has more

9    experience with the areas where he

10   was the primary author.

11             So certainly I don't

12   disagree with the opinions expressed

13   by my partners, but I would defer to

14   their opinion.

15        Q.    Are they your opinion also?

16   Is everything in this report your

17   opinion also?

18        A.    As I said, there's nothing

19   I disagree with in the report.

20        Q.    But you didn't necessarily

21   create all the opinions?

22        A.    But I didn't necessarily

23   create all the opinions.

24        Q.    I didn't hear you.

**James DeCrescenzo Reporting**, LLC

215.564.3905    InnovatingLitigation    FAX  215.751.0581
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

ORAL DEPOSITION OF JAMES F. ROETZER, Ph.D., 12/19/06

1      A.      Yes.   I did not necessarily

2   create all the opinions.

3      Q.      Okay.

4            How physically did the

5   report get put together?

6      A.      I ended up putting the

7   report together, assembling the

8   pieces.

9      Q.      So was it that you drafted

10   a part and Leigh drafted a part and

11   Gordon drafted a part and you

12   compiled them into one?

13      A.      That's correct.

14      Q.      And how were those

15   documents transmitted to you?

16      A.      They were transmitted -- I

17   think all of them probably came via

18   e-mail.

19      Q.      And as separate, were they

20   Word documents?

21      A.      Yes.   They probably would

22   have been a Word document.

23      Q.      Did you print out any of

24   the separate pieces of the report

**JDR**

**James DeCrescenzo Reporting,** LLC

215.564.3905          InnovatingLitigation          FAX  215.751.0581
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

ORAL DEPOSITION OF JAMES F. ROETZER, Ph.D., 12/19/06

1    that may have been e-mailed to you at

2    any time?

3         A.    I don't believe so.

4         Q.    Did you retain copies of

5    those different sections of the

6    report in any way?

7         A.    No.  Those -- I mean, I

8    merged them into one document that I

9    worked on and edited.

10        Q.    So did you also save a

11   separate copy of the pieces that you

12   were working on as a separate

13   document?

14        A.    No.  No.  Those pieces got

15   merged into one document.

16        Q.    But, I mean, was there a

17   separate document, just with respect

18   to the pieces that you drafted, I

19   mean did you have a document that you

20   merged or did you open that one

21   document that you were working on and

22   overwrite the stuff?

23        A.    My best recollection is I

24   took the pieces, the input from

**JDR**

**James DeCrescenzo Reporting**, LLC

215.564.3905              InnovatingLitigation              FAX  215.751.0581
                 1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
                           www.JDReporting.com

ORAL DEPOSITION OF JAMES F. ROETZER, Ph.D., 12/19/06

1      Gordon and Leigh and merged them into

2      sort of my master document.

3          Q.    So you only had one Word

4      document that you were working off of

5      the whole time; is that correct?

6          A.    Correct.

7          Q.    Did you save a copy of your

8      drafts of this document?

9          A.    I didn't save any drafts.

10     I believe that there were the drafts

11     that were sent to the attorneys I

12     believe survived, but as far as I

13     know those are the only drafts that

14     exist.

15         Q.    So just to be clear, when

16     you actually physically started

17     typing your report in this matter you

18     saved it as a Word document; is that

19     correct?

20         A.    Correct.

21         Q.    And any changes that you

22     made to that initial document were

23     overwrote, the initial document; is

24     that correct?

**JDR**

**James DeCrescenzo Reporting**, LLC

215.564.3905        InnovatingLitigation        FAX  215.751.0581
                 1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
                           www.JDReporting.com

ORAL DEPOSITION OF JAMES F. ROETZER, Ph.D., 12/19/06

1    source area.  Do you need a pen?

2         A.    Well, there is source area

3    certainly in these hot spots here

4    (indicating).

5         Q.    Can you write SA for source

6    area, and if you can draw a circle or

7    some boundary so we know what you are

8    referring to.

9         A.    I'm not really prepared to

10   draw a circle around the entire

11   source area.  I think Gordon can

12   address that question.  But certainly

13   these areas here were involved in

14   disposal, but I'm not going to try

15   to put limits on it and recall --

16        Q.    When you say "these areas,"

17   which areas are you referring to?

18        A.    Well, the hot spots in the

19   area down the hill from hot spot 2

20   and 3.

21        Q.    So when you say in your

22   report only two wells near the source

23   area, are you telling me now that you

24   can't tell me what exactly you meant

ORAL DEPOSITION OF JAMES F. ROETZER, Ph.D., 12/19/06

1    by the source area?

2        A.    Well, those wells were on

3    the property near the sources of

4    disposal and were not the wells

5    that were down -- the potentially

6    impacted down gradient wells.

7        Q.    Which wells are you

8    referring to?

9        A.    I'm sorry, 20 and 21.

10       Q.    So wells 20 and 21 were --

11   can you repeat what you just said

12   with respect to those wells?

13       A.    Well, those wells are

14   basically on the property and not the

15   farther down gradient wells.

16       Q.    There are farther --

17       A.    Those wells are on the

18   property near the source areas as

19   opposed to the down gradient wells

20   where we don't see the low pHs.

21       Q.    And what are some of the

22   monitoring well locations that are

23   not near the source area?

24       A.    Well, they are not shown on

**JDR**

**James DeCrescenzo Reporting**, LLC

215.564.3905        Innovating Litigation        FAX  215.751.0581
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

ORAL DEPOSITION OF JAMES F. ROETZER, Ph.D., 12/19/06

1   this figure.  Again, I think with

2   respect to the groundwater data you

3   will be better off asking your

4   questions of Gordon.

5        Q.    Did you draft this Opinion

6   1B?  I think you indicated that you

7   were the primary author?

8        A.    I did.  Yes.  With input

9   from Gordon with respect to the

10  hydrogeology.

11       Q.    And so when you say only

12  two wells near the source area had

13  acidic pH values, I guess it's not

14  clear to me what you are talking

15  about when you say near the source

16  areas still.

17       A.    What it is saying is there

18  is no observation of acidic pHs in

19  the down gradient wells in the plume.

20            If there is no depressed pH

21  in the down gradient wells, then a

22  contention that acids were mobilizing

23  metals in the down gradient areas is

24  not accurate, it's inconsistent with

ORAL DEPOSITION OF JAMES F. ROETZER, Ph.D., 12/19/06

1    the data.

2         Q.    So then this sentence means

3    that there is no acidic pH values in

4    any place where you believe waste was

5    disposed of at the site except for

6    MW20 and MW21; is that correct?

7         A.    No.    I don't think that's

8    correct.    I think with respect to the

9    monitoring well data reported at that

10   time, the first groundwater

11   monitoring data, those were the only

12   two locations that showed acidic pHs.

13        Q.    So MW20 and MW21 are the

14   only monitoring wells that show

15   acidic pHs, correct?

16        A.    At the time that that data

17   set was collected.

18        Q.    And what is the

19   significance of those two wells

20   having acidic pH values?

21            MR. BIEDRZYCKI:    Object to

22   the form.

23            THE WITNESS:    Well, the

24   significance of those two wells

**JDR**

**James DeCrescenzo Reporting**, LLC
InnovatingLitigation
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

215.564.3905                                    FAX  215.751.0581

1    having acidic pH values I think

2    demonstrates that if there was any

3    impact of acids it was a near field

4    impact, it was near the source area.

5            Maybe to back up a step,

6    acids I think even in theory could

7    only impact the mobility of metals

8    where you actually have acidic

9    conditions.

10            If the down gradient plume

11   is not acidic, then any potential

12   acid mobilizing effect isn't

13   occurring there.

14   BY MS. TROJECKI:

15       Q.    Is it possible that there

16   would have been an effect or acids

17   could have mobilized metals when they

18   were first exposed but by the time

19   that these pH values were taken that

20   effect is no longer demonstrated?

21       A.    That's possible, you know,

22   for some of the metals.

23       Q.    And then just so the record

24   is clear, on Exhibit 2, Roetzer

**James DeCrescenzo Reporting**, LLC

215.564.3905            InnovatingLitigation            FAX  215.751.0581
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

ORAL DEPOSITION OF JAMES F. ROETZER, Ph.D., 12/19/06

1   Exhibit 2, you are not able to

2   identify the areas of the site that

3   you believe are the source area; is

4   that correct?

5            MR. PETTIT:  Objection.

6            THE WITNESS:  I'm not -- I

7   can't identify all of the source

8   areas on that map or the extent of

9   the source area.

10  BY MS. TROJECKI:

11      Q.    And can you identify on

12  this map what you are talking about

13  when you say in the areas down

14  grading of the source area?

15          In other words, in the last

16  line of your report you speak about

17  areas down grading of the source

18  area.  Can you identify that area on

19  Exhibit 2?

20      A.    Well, again, I think you

21  are best off addressing groundwater

22  questions to Gordon, but in general

23  it's heading that way.  It's a very

24  rough description.  Gordon can

JDR
James DeCrescenzo Reporting, LLC
215.564.3905
InnovatingLitigation
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com
FAX  215.751.0581

172

ORAL DEPOSITION OF JAMES F. ROETZER, Ph.D., 12/19/06

1    provide that in detail.

2         Q.    And are you relying on the

3    pH data that's discussed in Page 3 of

4    your report to form the basis of your

5    opinion that the impact of acids

6    would be localized and short-lived,

7    or does this data only support either

8    one term or the other?

9         A.    That, as it says in the

10   opinion, supports the localized

11   conclusion, not the short-lived

12   conclusion.

13        Q.    And when you speak about

14   down gradient in Paragraph 3 of your

15   report, are you speaking down

16   gradient hydrogeologically,

17   topographically or some other way I'm

18   not aware of?

19        A.    Down gradient would

20   generally mean hydrologically.

21        Q.    And that's what you mean

22   when you are talking in Paragraph 3

23   of your report, you mean down

24   gradient hydrogeologically?

**JDR**

**James DeCrescenzo Reporting**, LLC

215.564.3905          InnovatingLitigation          FAX 215.751.0581
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

ORAL DEPOSITION OF JAMES F. ROETZER, Ph.D., 12/19/06

1      A.    I'm sorry, where are you?

2      Q.    Page 3.  The bottom of Page

3  3, the last line.

4      A.    Yes.  Down gradient

5  hydrogeologically.

6      Q.    And is the direction of the

7  gradient that you are referring to on

8  Page 3 of your report, does that

9  apply to one aquifer, many aquifers?

10      A.    I'm going to defer any

11  question on the hydrogeology to

12  Gordon.  He can discuss that with

13  you.

14      Q.    Do you know how many

15  aquifers are indicated at the

16  Boarhead Farms site?

17      A.    No, I don't.

18      Q.    Does Opinion 1 -- does your

19  Opinion 1B mean that any metals in

20  the groundwater at the Boarhead Farms

21  site were not there because of spent

22  acids?

23      A.    Not exactly.  There are

24  some metals that could be present in

**JDR**

**James DeCrescenzo Reporting**, LLC

215.564.3905          InnovatingLitigation          FAX  215.751.0581
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

ORAL DEPOSITION OF JAMES F. ROETZER, Ph.D., 12/19/06

1   the natural soils.

2        Q.    Does your Opinion 1B mean

3   that any metals in the groundwater at

4   the Boarhead Farms site are not there

5   because of Ashland's spent acid

6   waste?

7        A.    It's our opinion, again

8   based on the deposition testimony of

9   Mr. Curley, that Ashland's spent acid

10  waste did not contain metals.

11       Q.    But this Opinion 1B does

12  not mean that metals that could have

13  been in waste that was generated by

14  other parties other than Ashland were

15  in the groundwater because of

16  Ashland's spent acid waste, does it?

17            MR. BIEDRZYCKI:   Object to

18  the form.

19            Go ahead.

20            THE WITNESS:   Yes.   Maybe

21  to clarify, it is possible for acids

22  to increase the mobility of some

23  metals, not all, but some.

24            So it is possible that an

**JDR**

**James DeCrescenzo Reporting**, LLC
InnovatingLitigation
215.564.3905          1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103          FAX  215.751.0581
www.JDReporting.com

ORAL DEPOSITION OF JAMES F. ROETZER, Ph.D., 12/19/06

1    acid waste could have, you know -- in

2    at least the local area, have

3    effected dissolution of metals that

4    were there from other sources.

5   BY MS. TROJECKI:

6        Q.    Turning to Page 4 of your

7    report and Opinion 1C, what do you

8    mean by the term other metal

9    treatment wastes in Opinion 1C?

10        A.    And this is one of the

11   areas that I think Leigh probably had

12   some input too.

13            But in addition to pickling

14   acids there are certainly other metal

15   cleaning wastes, there are metal

16   plating wastes, there are any number

17   of other waste streams that could

18   contain heavy metals.

19        Q.    When you refer to other

20   metal treatment wastes, are these

21   wastes that only contain -- that

22   contain metals and acids or it's just

23   generally any waste that has metals

24   in it?

JDR

James DeCrescenzo Reporting, LLC
InnovatingLitigation
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

215.564.3905                                        FAX  215.751.0581

ORAL DEPOSITION OF JAMES F. ROETZER, Ph.D., 12/19/06

1    one to Mr. Jamieson to address.

2        Q.    I have understood what you

3    said that there are only certain

4    types of metals that have an

5    increased mobility in an acidic

6    state; is that correct?

7        A.    That's correct.

8        Q.    Is there a class of metals,

9    and when I say class, is there some

10   point on the periodic chart that you

11   would stop at and say from this point

12   to the left are metals that you have

13   a comfort level of saying as a

14   scientist that in an acidic state the

15   mobility will increase or is that

16   just not a feasible way to be able to

17   do that?

18       A.    I would say it's not that

19   simple.   Other than, as I think I

20   pointed out in my report, group one

21   and group two metals on the periodic

22   table, it's pretty clear.   After that

23   it's pretty much metal by metal to

24   see how they behave.

**James DeCrescenzo Reporting**, LLC

215.564.3905    InnovatingLitigation    FAX 215.751.0581
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

ORAL DEPOSITION OF JAMES F. ROETZER, Ph.D., 12/19/06

1      Q.    And when you say metal by

2  metal, does that -- would the

3  mobility or lack of mobility depend

4  on not only the metal itself but

5  other circumstances, environmental

6  circumstances?

7      A.    Yes.   The other -- the

8  various factors that were discussed

9  earlier.

10     Q.    That are contained in your

11 report?

12     A.    Yes.

13           MS. FLAX:   That's all I

14 have.

15           Thank you very much.

16           MS. TROJECKI:   Can we take

17 a brief five-minute break before we

18 get back?

19           (Recess taken)

20           DIRECT EXAMINATION (CONTINUED)

21 BY MS. TROJECKI:

22     Q.    I'm going to refer you to

23 Page 8 of your report, Opinion 2C.

24 Do you agree that it's possible that

**JDR**

**James DeCrescenzo Reporting**, LLC
InnovatingLitigation
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

215.564.3905                                    FAX  215.751.0581

252

ORAL DEPOSITION OF JAMES F. ROETZER, Ph.D., 12/19/06

1    acids could have the effect of

2    increasing the degradation of a metal

3    drum?

4         A.    That's possible, yes.

5         Q.    And do you believe that

6    that could have happened at the

7    Boarhead Farms Superfund site?

8         A.    It's possible, yes.

9         Q.    Specifically referring to

10   the third line down in Opinion 2C

11   there's a reference to poor waste

12   management practices and that that

13   may have caused drums to be damaged

14   during handling and disposal.  Do you

15   see that reference?

16        A.    Yes.

17        Q.    What is the basis for that

18   statement?

19        A.    I would probably defer to

20   Dr. Short for what's in this opinion,

21   however I think I can add that the

22   waste management practices at the

23   site were not good.

24             And I think based on

ORAL DEPOSITION OF JAMES F. ROETZER, Ph.D., 12/19/06

1    general experience, as it says,

2    typical of other sites, drums were

3    not necessarily handled with care at

4    this type of site.

5         So I think that's -- again,

6    you may have to ask Leigh that

7    question, but this is primarily his

8    opinion.

9    Q.    I am sorry, can you just --

10   A.    I just said it was

11   primarily his opinion.

12   Q.    And the statement that the

13   presence of water often leads to drum

14   corrosion in time periods of 15 years

15   and perhaps less, what's the basis

16   for the number of 15 years?

17   A.    Again, that's based on

18   Leigh's experience at some drum

19   disposal sites that he's worked on.

20   Q.    Are you aware of any other

21   basis other than what you have just

22   stated?

23   A.    I would say -- I mean, I

24   have heard that type of number thrown

**James DeCrescenzo Reporting**, LLC

215.564.3905          InnovatingLitigation          FAX 215.751.0581
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

254

ORAL DEPOSITION OF JAMES F. ROETZER, Ph.D., 12/19/06

1   around.   I have not independently

2   studied or verified drum degradation.

3        Q.     And why is it that even if

4   accelerated degradation of drums did

5   occur as a result of contact with

6   acid waste that the extent of the

7   groundwater contamination would not

8   have been affected?

9        A.     I think that question is

10  best addressed to Dr. Short and Mr.

11  Jamieson.

12       Q.     So when you say it's best

13  addressed, does that mean that you

14  are not able to answer it?

15       A.     No.   It means I don't

16  disagree with it, but they were the

17  primary authors of that opinion.

18       Q.     I'm referring to Opinion 3

19  of the report on Page 8.   Is it your

20  opinion that the soil remediation

21  response action in OU2 only addresses

22  organic releases?

23            (Discussion off the

24  record.)

ORAL DEPOSITION OF JAMES F. ROETZER, Ph.D., 12/19/06

1          (The court reporter read

2    back the following:

3          "Q.    I'm referring to

4    Opinion 3 of the report on Page 8.

5    Is it your opinion that the soil

6    remediation response action in OU2

7    only addresses organic releases?")

8          THE WITNESS:    That's

9    correct.

10   BY MS. TROJECKI:

11        Q.    And what are your bases for

12   that opinion?

13        A.    That is -- and, again, to

14   Opinion 3A in particular was drafted

15   by Mr. Jamieson, but I can -- and I

16   was more responsible for 3B.

17          But certainly based on the

18   ROD and the feasibility study, those

19   two soil hot spot removals were

20   addressing VOC hot spots of TCE.

21          And at the time at least of

22   the ROD benzene, as I said earlier in

23   our subsequent discussions at the

24   site with Mr. Coslett we found out

**JDR**

**James DeCrescenzo Reporting,** LLC
InnovatingLitigation
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

215.564.3905                                    FAX  215.751.0581

1              CERTIFICATION

2

3              I, JENNIFER L. BERMUDEZ, a

4    Court Reporter in and for the Commonwealth

5    of Pennsylvania, hereby certify that the

6    foregoing is a true and accurate transcript

7    of the deposition of said witness who was

8    first duly sworn by me on the date and

9    place hereinbefore set forth.

10             I FURTHER CERTIFY that I am

11   neither attorney nor counsel for, nor related

12   to or employed by, any of the parties to

13   the action in which this deposition was

14   taken, and further that I am not a relative

15   or employee of any attorney or counsel

16   employed in this action, nor am I

17   financially interested in this case.

18

19   

20   _____

21   JENNIFER L. BERMUDEZ

22   Court Reporter and Notary Public

23

24

**JDR**

**James DeCrescenzo Reporting**, LLC

InnovatingLitigation

1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103

www.JDReporting.com

215.564.3905                                    FAX  215.751.0581

