# Exhibit "F"

# ORIGINAL TRANSCRIPT

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AGERE SYSTEMS, INC.,    CIVIL ACTION
CYTEC INDUSTRIES,
INC., FORD MOTOR
COMPANY, SPS
TECHNOLOGIES LLC
and TI GROUP
AUTOMOTIVE SYSTEMS
LLC

       Plaintiffs

   V

ADVANCED ENVIRONMENTAL
TECHNOLOGY CORPORATION,
ET AL.
               NO.
   Defendants   02-CV-3830 (LDD)

      Oral deposition of W. LEIGH SHORT, Ph.D., P.E., taken at the law offices of Ballard Spahr Andrews & Ingersoll, LLP, 1735 Market Street 42nd Floor, Philadelphia, Pennsylvania, on Monday, December 18, 2006, at 9:41 a.m. before Jennifer Bermudez, a Registered Professional Reporter, and Notary Public, pursuant to notice.



## James DeCrescenzo Reporting, LLC
INNOVATING LITIGATION
1880 JFK Blvd., 6th Floor • Philadelphia, PA 19103
www.jdreporting.com

215.564.3905
PHONE

215.751.0581
FAX

ORAL DEPOSITION OF W. LEIGH SHORT, Ph.D., P.E., 12/18/06

```
1     APPEARANCES:

2     BALLARD SPAHR ANDREWS & INGERSOLL,
         LLP
3        AMY M. TROJECKI, ESQUIRE
         trojeckia@ballardspahr.com
4        1735 Market Street, 51st Floor
         Philadelphia, Pennsylvania  19103
5        215-665-8500
         Attorney for Plaintiffs
6
      WOLFF & SAMSON, P.C.
7        THOMAS W. SABINO, ESQUIRE
         tsabino@wolffsamson.com
8        The Offices at Crystal Lake
         One Boland Drive
9        West Orange, New Jersey
         973-530-2044
10       Attorney For AETC

11    PHELAN, PETTIT & BIEDRZYCKI
         JEFFREY L. PETTIT, ESQUIRE
12       jpettit@pp-b.com
         RICHARD C. BIEDRZYCKI, ESQUIRE
13       Rbiedrzycki@pp-b.com
         121 S. Broad Street, Suite 1600
14       Philadelphia, Pennsylvania 19107
         215-546-0500
15       Attorneys for Ashland, Inc.

16    CARELLA, BYRNE, BAIN, GILFILLAN,
         CECCHI, STEWART & OLSTEIN
17       G. GLENNON TROUBLEFIELD, ESQUIRE
         gtroublefield@carellabyrne.com
18       5 Becker Farm Road
         Roseland, New Jersey 07068-1739
19       973-994-1700
         Attorney for Handy & Harman Tube
20       Company

21    LAW OFFICE OF EDWARD FACKENTHAL
         EDWARD FACKENTHAL, ESQUIRE
22       edwardfackenthal@cs.com
         One Montgomery Plaza, Suite 209
23       Norristown, Pennsylvania 19401
         610-279-3370
24       Attorney for NRM Investment Co.
```

**JDR**

**James DeCrescenzo Reporting**, LLC

215.564.3905          InnovatingLitigation          FAX 215.751.0581
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

```
 1    APPEARANCES (CONTINUED):

 2    HINMAN, HOWARD & KATTELL, LLP
           RALPH K. KESSLER, ESQUIRE
 3         rkessler@hhk.com
           106 Corporate Park Drive
 4         Suite 317
           White Plains, New York 10604
 5         914-694-4102
           Attorney for TI Automotive
 6

 7                 EXAMINATION INDEX

 8    W. LEIGH SHORT, Ph.D., P.E.
           DIRECT BY MS. TROJECKI              4
 9         CROSS BY MR. TROUBLEFIELD         323
           CROSS BY MR. SABINO               399
10         CROSS BY MR. FACKENTHAL           399

11                   EXHIBIT INDEX

12                                          MARKED

13    SHORT
       1    EXPERT REPORT                      7
14
       2    E-MAILS, AUGUST 21ST AND          72
15          AUGUST 22ND, 2006

16     3    E-MAIL FROM GORDON               110
            JAMIESON TO LEIGH SHORT
17          SEPTEMBER 2, 2006

18     4    GORDON JAMIESON SUMMARY          115
            OF AUGUST 2006 WORK
19          ACTIVITIES BOARHEAD FARMS

20     5    DIAGRAM, FIGURE 7               129

21     6    DIAGRAM, FIGURE 3-22            174

22     7    21-PAGE HANDWRITTEN             325
            DOCUMENT
23

24
```

**JDR**

**James DeCrescenzo Reporting,** LLC

215.564.3905

Innovating Litigation
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

FAX  215.751.0581

ORAL DEPOSITION OF W. LEIGH SHORT, Ph.D., P.E., 12/18/06

1      Q.     And that was sent after

2    that initial phone call meeting?

3      A.     Yes.

4      Q.     And the lawyers determined

5    that they were going to send you

6    those deposition transcripts and the

7    expert reports.   Is that correct?

8      A.     I believe that's correct.

9      Q.     Were each you, Gordon, and

10   Jim -- is that it?

11     A.     Jim.

12     Q.     -- to read each of the

13   deposition transcripts and each of

14   the expert reports and all of the

15   documents on the website, or was

16   there some division of responsibility

17   after that initial phone call

18   meeting?

19     A.     We all -- the documents

20   sent to us by the law firm were sent

21   to Gordon, I believe, and he gave

22   them to the rest of us.   We all read

23   those documents, the ones that came

24   from the law firm.

**JDR**

**James DeCrescenzo Reporting**, LLC
InnovatingLitigation
215.564.3905          1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103          FAX  215.751.0581
www.JDReporting.com

ORAL DEPOSITION OF W. LEIGH SHORT, Ph.D., P.E., 12/18/06

1          The information on the
2    website, I'm not sure that we ever
3    discussed who would do what.  We each
4    looked at parts of it that was going
5    to help us understand what went on at
6    the site and understand what we felt
7    as individuals at that point,
8    Ashland's activities vis-a-vis that
9    site might or might not have to do
10   with it.
11          For example, the RI and the
12   feasibility study and the ROD
13   I believe were reviewed by all of us.
14   Others might have looked individually
15   at particular documents that the rest
16   of us did not.
17      Q.    And after that initial
18   phone call meeting was there some
19   division of work that was made
20   between you, Jim, and Gordon?
21      A.    Gordon was to take the lead
22   in looking at the analysis of the
23   hydrogeology/geology groundwater
24   monitoring well issues at the site

**JDR**

**James DeCrescenzo Reporting**, LLC

215.564.3905                InnovatingLitigation                FAX  215.751.0581
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

ORAL DEPOSITION OF W. LEIGH SHORT, Ph.D., P.E., 12/18/06

1    such as they may be.

2              Jim was going to take the

3    lead in reviewing the testimony of in

4    particular Curley, but wherever

5    somebody said or alleged that Ashland

6    wastes were deposited and to prepare

7    a section on the chemistry of metals,

8    chemistry generally.

9              I was to take the lead in

10   looking at the remedy as it was

11   selected, what impact, if any,

12   Ashland has or had on that remedy and

13   how the remedy itself was implemented

14   and the data that was going into and

15   out of the treatment facility,

16   groundwater treatment facility.

17       Q.    Now, after that initial

18   phone call meeting -- I just want to

19   make sure this is clear:  What you

20   just told me, that Gordon would be

21   responsible for the hydrogeology and

22   geology, Jim would be responsible for

23   reading Curley's deposition testimony

24   and other deposition testimony having

James DeCrescenzo Reporting, LLC

215.564.3905                     InnovatingLitigation                     FAX  215.751.0581
                   1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
                              www.JDReporting.com

ORAL DEPOSITION OF W. LEIGH SHORT, Ph.D., P.E., 12/18/06

1    to do with where Ashland wastes may

2    have been deposited, and your

3    expertise with the remedy selection,

4    that was all decided after that

5    initial first meeting phone call?

6        A.    Now, when I say

7    responsible, I do not mean that all

8    of us did not end up looking at the

9    report or reviewing it but that that

10    was the general area of gathering

11    data to help us write the report, is

12    the way we divvied those work

13    assignments up.

14        Q.    And was that all after the

15    initial phone call meeting?

16        A.    Yes.

17        Q.    And, again, the overall

18    task after the initial phone call

19    meeting was what?

20        A.    It was, as I understand it,

21    to look at all the data for the site

22    and prepare our analysis of what

23    responsibility, role, if any, Ashland

24    had in placing wastes on the site,

**JDR**

**James DeCrescenzo Reporting**, LLC
InnovatingLitigation
215.564.3905                        1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103        FAX  215.751.0581
www.JDReporting.com

1    and if they did place them what

2    impact that would have on the remedy,

3    selection, and allocation of costs

4    and general costs.

5                MS. TROJECKI:  Can you read

6    that back?

7                (The court reporter read

8    back the following:

9                "A.    It was, as I

10   understand it, to look at all the

11   data for the site and prepare our

12   analysis of what responsibility,

13   role, if any, Ashland had in placing

14   wastes on the site, and if they did

15   place them what impact that would

16   have on the remedy, selection, and

17   allocation of costs and general

18   costs.")

19   BY MS. TROJECKI:

20       Q.    What was the next step in

21   the process, I guess, of creating

22   this expert report that we marked as

23   Exhibit 1?

24                So just to let me

ORAL DEPOSITION OF W. LEIGH SHORT, Ph.D., P.E., 12/18/06

1    backtrack.

2              Gordon contacted you and

3    Jim to tell you that Ashland had

4    retained you, then you had an initial

5    phone call meeting where documents

6    were sent -- and documents were sent

7    to you, and you had some division of

8    responsibility.

9              What was next after that?

10        A.    Well, I think the answer to

11    your question is in part in one of

12    the e-mails, which I expect you have,

13    which I think starts off with one

14    from Gordon that says, Here we go, we

15    have been hired, or something to that

16    effect.

17              And we, as I recall it, put

18    together what I would call a bullet

19    outline of the sorts of things that

20    we were going to do.

21              And if you look through the

22    report we were going to write a brief

23    history section, which is at the

24    front of it, we were going to look at

ORAL DEPOSITION OF W. LEIGH SHORT, Ph.D., P.E., 12/18/06

1       forgotten the name of that particular

2       firm, but it came from --

3               Q.      Does demaximus ring a bell?

4               A.      Pardon me?

5               Q.      Demaximus.

6               A.      It was probably demaximus.

7               Q.      Do you recall requesting

8       any other documents?

9               A.      Me personally, no.

10              Q.      Now, of the items on your

11      bullet outline that we discussed

12      earlier, what were you specifically

13      supposed to do?

14              A.      To look at the analysis of

15      the site data vis-a-vis what Ashland

16      might have put there to see if I

17      could identify any chemicals that

18      drove the remedy in some manner or

19      another or to identify places where

20      there are chemicals that they might

21      have put there and to review our

22      final report along with the other two

23      of us to see that it was consistent

24      with what we all thought.

**JDR**

**James DeCrescenzo Reporting**, LLC

215.564.3905          InnovatingLitigation          FAX  215.751.0581
                1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
                            www.JDReporting.com

ORAL DEPOSITION OF W. LEIGH SHORT, Ph.D., P.E., 12/18/06

```
1              The review of the data that
2    I looked at does not suggest to me
3    that Ashland's chemicals, assuming
4    they were put there, in any way
5    drives the remedy.
6         Q.     What parts of the report
7    did you physically write?
8         A.     You want it line by line,
9    page by page, or topic by topic?
10        Q.     However you did it.  Well,
11   let's just go through it, then.
12   Describe to me how physically the
13   report was put together.
14        A.     It was done in -- well,
15   obviously electronically, but the
16   original part on the hydrogeology was
17   written by Gordon, and if you read
18   this e-mail it also refers to the
19   fact he was away from August
20   something to September something, and
21   he prepared that at the very
22   beginning.
23              Jim and I discussed the
24   testimony as we understood it and the
```

**JDR**

**James DeCrescenzo Reporting**, LLC

215.564.3905                 InnovatingLitigation              FAX  215.751.0581
                    1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
                              www.JDReporting.com

ORAL DEPOSITION OF W. LEIGH SHORT, Ph.D., P.E., 12/18/06

1     various issues on the site, so he and

2     I between us wrote some of the

3     chemistry section, some of the

4     information where it refers to drums,

5     and some of the information on hot

6     spot areas.

7          Q.     So going back, just to make

8     sure I'm clear, the part that Gordon

9     wrote on the hydrogeology, which part

10    of the report is that?

11         A.     Well, he wrote -- as I

12    recall it, he wrote the history of

13    the site.

14         Q.     Okay.

15         A.     And you will find words in

16    here that say that he reviewed the

17    groundwater flow modeling that was

18    done by the site consulting firm, and

19    he reviewed the information in the

20    middle of Page 9, for example, where

21    you have elevations and discussions

22    on groundwater flow versus where

23    Ashland allegedly put things versus

24    flows in directions.

**JDR**

**James DeCrescenzo Reporting**, LLC
InnovatingLitigation
215.564.3905          1880 JFK Blvd., 6ᵗʰ Floor, Philadelphia, PA 19103          FAX  215.751.0581
www.JDReporting.com

83

ORAL DEPOSITION OF W. LEIGH SHORT, Ph.D., P.E., 12/18/06

1       Q.      So we know that Jamieson

2    wrote the history.  Did he also

3    write, then, all of Opinion 3?

4       A.      What page are you on now,

5    I'm sorry?

6       Q.      Page 8.  The bottom of Page

7    8.

8       A.      I don't believe he wrote

9    all of that, no.

10      Q.      Which paragraphs did he

11   write?

12      A.      I don't -- other than the

13   actual data that comes in here on

14   groundwater flow, we don't write

15   reports that way.  We typically have

16   a draft and then we all edit it and

17   write it.

18      Q.      So how does the draft get

19   created?

20      A.      It was pulled together in

21   the middle of September by basically

22   Jim and myself, because Gordon at

23   that time was in Europe.

24      Q.      Now, in the initial draft

**JDR**

**James DeCrescenzo Reporting**, LLC

215.564.3905          InnovatingLitigation          FAX  215.751.0581
                1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
                        www.JDReporting.com

ORAL DEPOSITION OF W. LEIGH SHORT, Ph.D., P.E., 12/18/06

1    did Gordon write the site history?

2        A.    Yes.

3        Q.    And other than that, the

4    initial draft was written by you and

5    Jim.  Is that correct?

6        A.    Parts of it.  Gordon had

7    prepared a lot of information that

8    you will find scattered through the

9    rest of it on groundwater and

10   groundwater flows and elevations.

11       Q.    But physically who wrote

12   it?

13       A.    Jim wrote most of it.  I

14   rewrote and helped write parts of it.

15       Q.    Did you write any part of

16   the first draft?

17       A.    Yes.

18       Q.    Which part?

19       A.    Some of the information on

20   management of landfill sites and some

21   of the information that is the

22   summary of Opinion 3 which says that

23   we don't believe that that has any

24   effect on the remedy.

**JＤＲ**

**James DeCrescenzo Reporting**, LLC

InnovatingLitigation
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

215.564.3905                                        FAX  215.751.0581

ORAL DEPOSITION OF W. LEIGH SHORT, Ph.D., P.E., 12/18/06

1      Q.    And where in the report

2    does it speak about the management of

3    landfill sites?

4      A.    In the middle -- top of

5    Page 8 there's some information there

6    about poor waste management practices

7    at the site.

8      Q.    And you are referring to

9    the paragraph that starts, "Many acid

10   wastes were disposed about the site"?

11     A.    Yes.

12     Q.    And ends with, "Under

13   natural conditions most drums would

14   have lost their integrity."  Did you

15   write that whole first paragraph?

16     A.    I wrote a draft of it.  I'm

17   not sure I wrote it in this final

18   form to get to the end of it.

19     Q.    And in Opinion 3 which part

20   did you write the first draft of?

21     A.    Back to where you get the

22   summary of it, on Page 10.

23     Q.    Did you write any other

24   parts of Opinion 3 in the first

**JDR**

**James DeCrescenzo Reporting**, LLC

InnovatingLitigation

1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103

www.JDReporting.com

215.564.3905                                    FAX  215.751.0581

ORAL DEPOSITION OF W. LEIGH SHORT, Ph.D., P.E., 12/18/06

1    draft?

2         A.    I edited them.

3         Q.    But did you write any on

4    the first draft?

5         A.    I don't think so.

6         Q.    So other than that one

7    paragraph on Page 8 and the summary

8    of Opinion 3, did you write any first

9    drafts of any other paragraphs in

10   this report?

11        A.    I wrote the Opinion 3B

12   section where it talks about hot spot

13   areas and VOCs.

14        Q.    Anything else?

15        A.    The material at the top of

16   Page 9 where again it identifies some

17   hot spots.

18        Q.    Are you referring to the

19   paragraph that starts, "Three hot

20   spots"?

21        A.    Yes.

22        Q.    And where did you write --

23   where is that in, the part that you

24   wrote?

**James DeCrescenzo Reporting**, LLC

215.564.3905                InnovatingLitigation                FAX  215.751.0581
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

ORAL DEPOSITION OF W. LEIGH SHORT, Ph.D., P.E., 12/18/06

1      A.    What do you mean where is

2    it?

3      Q.    It starts with, "Three hot

4    spots." Did you write just the first

5    paragraph, or did you write the first

6    two paragraphs?

7      A.    I was involved in the

8    writing of all of it, but I put up a

9    draft of the first paragraph, as I

10   recall it.

11        And to re-emphasize what I

12   said before, what I was particularly

13   looking for was to make a

14   professional judgment as to whether

15   the chemicals that are driving the

16   remedy were placed on that site by

17   Ashland, which is why I was so

18   interested in what are the chemicals

19   of concern that were listed and what

20   are the drivers that are in the

21   groundwater, which tend to be things

22   like TCE and DCA, et cetera, which

23   were not things, to my understanding,

24   that Ashland put there.

**JDR**

**James DeCrescenzo Reporting**, LLC

215.564.3905        InnovatingLitigation        FAX  215.751.0581
              1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
                        www.JDReporting.com

ORAL DEPOSITION OF W. LEIGH SHORT, Ph.D., P.E., 12/18/06

1       the extent that metals are mobilized

2       under acid conditions.

3               A.      Uh-huh.

4               Q.      Can you tell me what if the

5       metals were not already in strong

6       acids; in other words, Opinion 1C

7       also applies to other metal treatment

8       wastes, so how does Opinion 1C affect

9       the other metal treatment wastes that

10      are not in acids?

11              A.      If -- well, let me back up

12      a little bit.

13              The sentence is saying that

14      the metals typically from pickling

15      waste come already in the acid.  If

16      one were to encounter other metal

17      treatment wastes from whatever

18      source, they may or may not come in

19      an acidic stream.

20              If they are disposed of in

21      a place where there is not acid,

22      where it is not acidic, their

23      mobility or ability to mobilize would

24      be different than the ones that are

**JDR**

**James DeCrescenzo Reporting**, LLC

InnovatingLitigation
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

215.564.3905                                           FAX  215.751.0581

ORAL DEPOSITION OF W. LEIGH SHORT, Ph.D., P.E., 12/18/06

1    already in the acid.

2        Q.    Okay.

3        A.    And to answer the other

4    metal treatment wastes, it would

5    depend where the stream is, whether

6    it had acid in it, and where it went,

7    physically on the site, I mean.

8             But 1C as written -- what

9    we are trying to say is that because

10   Ashland's wastes to our knowledge did

11   not have metals, look elsewhere for

12   the sources.

13       Q.    Okay.  When you talk about

14   the high groundwater flow rate,

15   what's the basis for that statement

16   that the groundwater flow rate is

17   high?

18       A.    At some point in the

19   documents there is a statement or

20   data that suggests the groundwater

21   flow rate is something like 500 feet

22   per year, as I recall it.

23            As groundwater flow rates

24   go, that's a fairly large number.

ORAL DEPOSITION OF W. LEIGH SHORT, Ph.D., P.E., 12/18/06

1    That's what that means.

2         Q.    Do you recall what document

3    that was contained in?

4         A.    No, I do not.   Nor do I

5    recall if my memory is correct that

6    that was 500.

7         Q.    I just want you to take a

8    look at the groundwater model report

9    for OU1 and just tell me if this is

10   the document that you are speaking of

11   that references a high groundwater

12   flow rate.

13        A.    I believe the answer is

14   yes, and I would further tell you

15   that this document is well within the

16   expertise of Gordon versus me.

17             MR. BIEDRZYCKI:   Can we

18   just read the Bates number into the

19   record?

20             MS. TROJECKI:   Sure.   It's

21   PHKS 061239.

22             MR. BIEDRZYCKI:   Thank you.

23   BY MS. TROJECKI:

24        Q.    Is this document the only

**JDR**

**James DeCrescenzo Reporting**, LLC

InnovatingLitigation
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

215.564.3905                                      FAX  215.751.0581

ORAL DEPOSITION OF W. LEIGH SHORT, Ph.D., P.E., 12/18/06

1    basis for your statement that the

2    groundwater flow rate is high?

3         A.    You would have to ask

4    Gordon that.

5         Q.    Is the groundwater flow

6    rate high at all areas of the site?

7         A.    My understanding is it is,

8    from briefly talking with Gordon

9    about it, if you will.

10        Q.    On Page 4 of your report in

11   the second sentence of the paragraph

12   under the bullets you discuss "The

13   metals, acids and chlorinated organic

14   solvents found on the site are

15   consistent with those known to be

16   used in the metal plating and

17   finishing operations."

18              What chlorinated organic

19   solvents are you talking about?

20        A.    Primarily TCE, which is

21   used as a degreasing chemical.

22        Q.    Anything else?

23        A.    That's the primary one.

24        Q.    Did you do any analysis

**JDR**

**James DeCrescenzo Reporting**, LLC

215.564.3905

InnovatingLitigation
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

FAX  215.751.0581

ORAL DEPOSITION OF W. LEIGH SHORT, Ph.D., P.E., 12/18/06

1  into whether TCE was from any other

2  sources other than metal plating

3  operations?

4          A.     Not directly, no.

5          Q.     And what's the basis for

6  your statement that the TCE found on

7  the site is consistent with metal

8  plating and finishing operations?

9          A.     TCE in the time frame of

10  the 1960s and '70s was very commonly

11  used as a degreasing chemical in

12  industrial facilities.  And in my

13  experience there are not too many of

14  them that didn't use it as a

15  degreaser.

16          Q.     Is that the only basis?

17          A.     That's my basis, yes.

18          Q.     And that's your only basis

19  for that statement?

20          A.     Well, you can also, I

21  believe, look in the cited referenced

22  EPA reports and find that chlorinated

23  organic solvents are often found in

24  or with those discharges.

James DeCrescenzo Reporting, LLC

215.564.3905          InnovatingLitigation          FAX  215.751.0581
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

209

ORAL DEPOSITION OF W. LEIGH SHORT, Ph.D., P.E., 12/18/06

1    Q.    Okay.  Anything other than

2    the EPA reports and your

3    understanding that TCE was used as a

4    degreaser during the 1970s at plating

5    operations?

6    A.    No.  As I said, two things,

7    we weren't asked to go and do all the

8    checking of what individual people

9    might or might not have sent to

10   this -- in my personal experience, I

11   have probably worked on 20 to 30

12   sites that used TCE as a degreaser, a

13   wide variety of manufacturing

14   facilities.

15   Q.    So not just metal plating

16   operations?

17   A.    No.  It's widely used, or

18   was widely used.

19   Q.    On Page -- the bottom of

20   Page 4 of your report, Opinion 1D,

21   you make reference to a statement

22   from Vandeven's report, and I just

23   want to call your attention to the

24   last sentence on Page 4.

**JDR**

**James DeCrescenzo Reporting,** LLC

215.564.3905          InnovatingLitigation          FAX  215.751.0581
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com