IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AGERE SYSTEMS, INC., CYTEC INDUSTRIES INC., FORD MOTOR COMPANY, SPS TECHNOLOGIES, LLC and TI GROUP AUTOMOTIVE SYSTEMS L.L.C., <br><br> Plaintiffs, <br> v. <br><br> ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, et al., <br><br> Defendants. | Civil Action No. 02-CV-3830 (LDD) |

## ORDER

AND NOW, this _____ day of _____,  2008, upon consideration of Plaintiffs' Motion *In Limine* to Strike Defendant AETC's Expert, Kenneth Goldstein, P.E. it is hereby ORDERED that Plaintiffs' Motion *In Limine* to Strike AETC's Expert, Kenneth Goldstein, P.E. is GRANTED, and no testimony from Kenneth Goldstein, P.E. may be offered at trial.

_____
Legrome D. Davis, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AGERE SYSTEMS, INC., CYTEC INDUSTRIES INC., FORD MOTOR COMPANY, SPS TECHNOLOGIES, LLC and TI GROUP AUTOMOTIVE SYSTEMS L.L.C., <br><br>    Plaintiffs, <br>   v. <br><br>ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, et al., <br><br>    Defendants. | Civil Action No. 02-CV-3830 (LDD) |

**PLAINTIFFS' MOTION *IN LIMINE* TO STRIKE DEFENDANT AETC'S EXPERT, KENNETH GOLDSTEIN, P.E.**

Plaintiffs Agere Systems, Inc., Cytec Industries Inc., Ford Motor Company, SPS Technologies, LLC, and TI Group Automotive Systems L.L.C. ("Plaintiffs") move this Court, to strike defendant AETC's expert, Kenneth Goldstein, P.E. for the reasons set forth in the accompanying memorandum of law.

Dated: May 23, 2008

Respectfully submitted,

Ballard Spahr Andrews & Ingersoll, LLP

By: /s/
Glenn A. Harris, Esquire
Plaza 1000, Suite 500, Main Street
Voorhees, New Jersey 08043
E-mail: harrisg@ballardspahr.com
Phone: (856) 761-3400

Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AGERE SYSTEMS, INC., CYTEC INDUSTRIES INC., FORD MOTOR COMPANY, SPS TECHNOLOGIES, LLC and TI GROUP AUTOMOTIVE SYSTEMS L.L.C., <br><br> Plaintiffs, <br> v. <br><br> ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, et al., <br><br> Defendants. | Civil Action No. 02-CV-3830 (LDD) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION *IN LIMINE* TO STRIKE DEFENDANT AETC'S EXPERT, KENNETH GOLDSTEIN, P.E.**

Glenn A. Harris, Esquire
Ballard Spahr Andrews & Ingersoll, LLP
A Pennsylvania Limited Liability Partnership
Plaza 1000, Suite 500, Main Street
Voorhees, New Jersey 08043
Phone: (856) 761-3440
Fax: (856) 761-9001
E-mail: harrisg@ballardspahr.com

Attorney for Plaintiffs

Dated: May 23, 2008

## Table of Contents

Page

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ...................................................................................................................1

ARGUMENT ............................................................................................................................3

    A.    The Legal Standard Governing The Admissibility Of Expert Opinions. .................3

    B.    Mr. Goldstein's Second, Third And Fourth Opinions Are Inadmissible As Expert Testimony Because They Are Nothing More Than Restatements Of The Testimony Of Others And Are Not Based On "Scientific, Technical Or Other Specialized Knowledge." ................................................................................4

    C.    Mr. Goldstein's Opinion Regarding AETC's Ownership Of Hazardous Waste Should Also Be Excluded Because It Is Not Relevant To A "Fact In Issue" At Trial. .......................................................................................................7

    D.    Because Mr. Goldstein Has No Expertise With Hazardous Waste Management Regulations, His Opinions On These Issues Will Not Assist The Trier Of Fact And Should Be Barred. ..........................................................8

CONCLUSION .......................................................................................................................11

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ancho v. Pentek Corp.*, 157 F.3d 512 (7th Cir. 1998) ......................................................... 3

*Bausch & Lomb, inc. v. Alcon Laboratories, Inc.*, 79 F. Supp. 2d 252 (W.D.N.Y. 2000) ................................................................................................................................ 6

*Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) ......................................... 3

*Hutchison v. Cutliffe*, 344 F. Supp. 2d 219 (D. Me. 2004) .................................................. 4

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ......................................................... 3

*Salas v.* Carpenter, 980 F.2d (5th Cir. 1992) ........................................................................ 8

*TMI Litigation*, 193 F.3d 613 (3d Cir. 1999) ....................................................................... 8

*Vioxx Products Liability Litigation*, 414 F. Supp. 2d 574 (E.D. La. 2006) ..................... 4, 8

## FEDERAL RULES

Fed. R. Evid. 403 .................................................................................................................. 3

Fed. R. Evid. 702 ................................................................................................. 3, 4, 6, 8, 11

Fed. R. Evid. 804 .................................................................................................................. 7

## INTRODUCTION

Defendant Advanced Environmental Technology Corp. ("AETC") seeks to offer Kenneth Goldstein, P.E., a professional engineer, as a person who may be used at trial to present evidence under Rule 702 of the Federal Rules of Evidence. Mr. Goldstein prepared an expert report on behalf of AETC, the purposes of which were to describe: 1) the hazardous waste management rules and regulations in effect during the mid-1970s; 2) AETC's actions and business practices during the mid-to-late 1970s and the services AETC provided its customers during that time period; and 3) AETC's relationship with DeRewal Chemical Company ("DCC"). *See* Deposition of Kenneth Goldstein 12/4/06 ("Goldstein Dep.") at 21: 97-98, attached hereto as Exhibit A; Expert Report of Kenneth Goldstein, P.E. 9/27/06 ("Goldstein Report" or "Report") attached hereto as Exhibit B. His Report is based solely on his reading of documents from this action, including the depositions of AETC representatives, AETC's answers to interrogatories and AETC's motion for summary judgment, Plaintiff's responses to AETC's interrogatories, three expert reports provided by Plaintiff in this matter and various invoices, bills of lading and correspondence regarding AETC's relationship with DCC and waste generators.[1] Goldstein Dep. at 100; Report at 1. Mr. Goldstein's reading of these documents was the basis for the four "opinions" stated in the Report:

> 1. ... AETC conducted its business in compliance with the state of the art of hazardous waste management as it existed in 1976-77.

---

[1] The only two documents Mr. Goldstein relied upon that were not provided by AETC's counsel were two congressional reports, relied on merely to summarize the federal hazardous waste program in the 1970s. Goldstein Report at 4-6. Mr. Goldstein presumed these documents to be true without any independent investigation, used them solely for factual information, and did not know the purpose for which the congressional reports were prepared. Goldstein Dep. at 228-229.

> 2.  The transport of highly acidic waste streams, as generated by Ashland Chemical and Diaz Chemical, required specialized equipment. In the 1976-1977 time frame, AETC did not own or operate any tanker trucks capable of transporting these waste streams.
>
> 3.  There is no evidence that AETC took ownership of any hazardous waste from either generator through a written document. Even if such document existed, based on my experience as a regulator, it is my opinion that the ownership of the hazardous waste could not pass from a generator to another party under waste management regulations.
>
> 4.  Manfred DeRewal and DeRewal Chemical Company deceived AETC and its customers into believing that the entirety of the transported waste streams were being properly treated at the Wissinoming facility. In reality some portion of the waste streams [were] being discharged surreptitiously directly into the Delaware River and into the ground at Boarhead Farms, Manfred DeRewal's country residence.

Goldstein Report at 21.

Not one of the four opinions offered by Mr. Goldstein is based on expertise, or is the result of any methodology or analysis. Instead, Mr. Goldstein's Report is based merely upon Mr. Goldstein's reading of documents provided by AETC's counsel and his summaries thereof. Mr. Goldstein's second, third and fourth opinions are nothing more than restatements of the testimony of AETC's principals and are not based on any specialized knowledge or skill. Additionally, Mr. Goldstein's opinion regarding AETC's ownership of hazardous waste is not relevant to a "fact in issue" at trial, as this issue was already decided by this Court. Finally, because Mr. Goldstein has no expertise with hazardous waste management regulations, his opinions on such issues cannot possibly assist the trier of fact. Plaintiff therefore seeks to bar the Goldstein Report and Mr. Goldstein's anticipated testimony pursuant to Rule 702 of the Federal Rules of Evidence, as his proposed testimony is neither "expert" testimony nor testimony that will assist the trier of fact.

# ARGUMENT

### A.   The Legal Standard Governing The Admissibility Of Expert Opinions.

The admissibility of expert testimony in federal court is guided by a set of principles established by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) and in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). The holdings of these cases are incorporated into Rule 702 of the Federal Rules of Evidence, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. An expert's opinion is helpful to the trier of fact, and therefore relevant under Rule 702, "only to the extent the expert draws on some special skill, knowledge or experience to formulate that opinion; the opinion must be an expert opinion (that is, an opinion informed by the witness' expertise) rather than simply an opinion broached by a purported expert." *Ancho v. Pentek Corp.*, 157 F.3d 512, 518 (7th Cir. 1998).

The Advisory Committee comments provide useful context to Rule 702. The comments note that expert testimony does not "assist the trier of fact" if it is "superfluous and a waste of time" and would be excluded under Federal Rule of Evidence 403. Further, according to the note, "there is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." Fed. R. Evid 702.

Where no expertise is involved, and an expert's involvement fails to move beyond the knowledge of a layman, expert testimony is inadmissible.

> B. **Mr. Goldstein's Second, Third And Fourth Opinions Are Inadmissible As Expert Testimony Because They Are Nothing More Than Restatements Of The Testimony Of Others And Are Not Based On "Scientific, Technical Or Other Specialized Knowledge."**

Courts have seen fit to exclude expert testimony that does nothing more than restate or attempt to reinforce testimony presented by other witnesses. *In re Vioxx Products Liability Litigation*, 414 F. Supp. 2d 574 (E.D. La. 2006); s*ee also Hutchison v. Cutliffe*, 344 F. Supp. 2d 219 (D. Me. 2004) (excluding an expert's testimony that depended on "nothing more than a regurgitation of [plaintiff's] version of the events). In *In re Vioxx Products Liability Litigation*, for example, the testimony that plaintiff's expert was to provide mirrored the deposition testimony of another witness and reiterated the exact message in a medical publication. The court's initial determination, before starting an analysis of the expert's qualifications and the methodology he used, was whether the expert testimony would "assist the trier of fact" as required by Rule 702. 414 F. Supp. 2d at 580. The court concluded that the testimony would not assist the jury because the testimony merely validated testimony already provided in the case. According to the court, "validating or adding credibility to another witness' testimony is not the proper realm for an expert. Cheerleading the testimony of another editor or a medical publication does not constitute expert testimony." *Id.* at 581.

Similarly, Mr. Goldstein's second, third and fourth opinions are not "expert testimony," but merely his summary of what AETC's principals said at their depositions, all of which Mr. Goldstein took as truth. These opinions are based upon Sections 5.0 and 6.0 of the Report. Those sections are a regurgitation of deposition testimony of AETC representatives, as

is evident from both the numerous and exclusive citations to these depositions in his Report and by Mr. Goldstein's own admissions. Goldstein Dep. at 155, 158; 167; 170; 181-182.

Section 5 consists of four pages of Mr. Goldstein's summarization of Mr. Leuzarder's and Mr. Landmesser's deposition testimony concerning their creation of AETC, AETC's business practices, and AETC's "stature" in the waste business community. Report at 11-14. His four "conclusions" about AETC are based on his reading of those transcripts. Report at 14. Section 6 consists of five pages of Mr. Goldstein's restatement of that testimony (plus the testimony of two other deponents) with respect to AETC's involvement with Mr. DeRewal and DCC. His six "conclusions" about that relationship are based upon his view of that testimony. Report at 19-20.

Additionally, Mr. Goldstein has even conceded that he has no specialized knowledge or experience that underlies the conclusions in Opinion Nos. 2 and 3.[2] Goldstein Dep. at 166, 184-185. The sole basis for these opinions is Mr. Goldstein's reading of the deposition testimony of Messrs. Leuzarder and Landmesser. These opinions amount to a

---

[2] Mr. Goldstein's Opinion No. 2 is:

> The transport of highly acidic waste streams, as generated by Ashland Chemical and Diaz Chemical, required specialized equipment. In the 1976-1977 timeframe, AETC did not own or operate any tanker trucks capable of transporting these waste streams.

Goldstein Report at 21. *Opinion No. 3* is:

> There is no evidence that AETC took ownership of any hazardous waste from either generator through a written document. Even if such document existed, based on my experience as a regulator, it is my opinion that the ownership of the hazardous waste could not pass from a generator to another party under waste management regulations.

Goldstein Report at 21.

layman's finding of fact based upon Mr. Goldstein's view of the evidence provided to him by counsel. They are not scientific opinions that might themselves be evidence.[3]

Mr. Goldstein's Opinion No. 4, that DCC "deceived" AETC and its customers, is also nothing more than his proposed finding of fact based exclusively on his reading of the deposition testimony of AETC's principals. Goldstein Dep. at 167; 170; 181-182; Goldstein Report at 15-20. Mr. Goldstein again admitted that no specialized knowledge or experience was used to reach this conclusion: "I'm not sure there is any specialized knowledge. It's an evaluation of the facts that I reviewed, and developed a framework for why I believe that DeRewal Chemical Company deceived AETC and Ashland and Diaz." Goldstein Dep. at 184-185. "Other than the distillation of the factual information," which information is merely a summary of deposition testimony, Mr. Goldstein did not employ any methodology or analysis to arrive at his opinion that DCC deceived AETC. Goldstein Dep. at 185. Indeed, he made no attempt to independently investigate the credibility of these individuals or their testimony. Goldstein Dep. at 107-108. He has spoken with neither Mr. Leuzarder nor Mr. Landmesser. Goldstein Dep. at 25.

Nothing about Mr. Goldstein's "knowledge, skill, experience, training, or education," as required by Rule 702 for qualification as an expert, makes him better than anyone else at reading deposition transcripts and summarizing what the witnesses say in those transcripts. Indeed, the whole idea of an "expert" testifying as to non-scientific "facts" is preposterous. *See Bausch & Lomb, inc. v. Alcon Laboratories, Inc.*, 79 F. Supp. 2d 252, 259

---

[3] Mr. Goldstein candidly admitted that his opinion that AETC did not take ownership of hazardous waste generated by Ashland or Diaz is not based on any specialized knowledge or experience, or any particular methodology or analysis. Goldstein Dep. at 184-185.

(W.D.N.Y. 2000) (stating that an expert's purpose in testifying is to render opinions about certain matters, not to testify about the facts of the case). This Court will consider the testimony and documents the parties offer into evidence at trial concerning what Mr. Leuzarder and Mr. Landmesser did or didn't do in starting up and running AETC, how they ran the business, and what there dealings with DCC were or weren't, decide what testimony to permit and which documents to admit into evidence, review all of the evidence, and then make findings of fact based thereon.

AETC will have to offer the live testimony of Mr. Leuzarder and Mr. Landmesser at trial if it chooses to rely on any such testimony, unless those witnesses are unavailable. Fed. R. Evid. 804. This Court will be able to observe the witnesses' demeanor and to determine their credibility. The witnesses will be subject to cross-examination. There may be documents and other proofs admitted into evidence that Mr. Goldstein was not given by AETC to review.

There is simply no reason to permit Mr. Goldstein to testify concerning what he thinks the non-scientific "facts" of the case are. Statements like "AETC was formed in 1976 by two individuals interested in improving the treatment, disposal and regulatory oversight of hazardous waste management," Report at 14, are nothing more than findings of fact by someone who hasn't heard the evidence, didn't observe the witnesses testifying, accepted without any determination of credibility their deposition testimony, and has no special qualifications to even consider the evidence. Therefore, Mr. Goldstein's Report and testimony should be barred.

C. **Mr. Goldstein's Opinion Regarding AETC's Ownership Of Hazardous Waste Should Also Be Excluded Because It Is Not Relevant To A "Fact In Issue" At Trial.**

Opinion No. 3 of the Goldstein Report speaks to AETC's ownership of hazardous waste and should be excluded for an additional reason: the issue of ownership is no longer in dispute. Because Rule 702 requires that expert testimony assist the trier of fact, admissibility

depends in part on "the proffered connection between the [evidence] to be presented and particular disputed factual issues in the case." *In re TMI Litigation,* 193 F.3d 613, 665 (3d Cir. 1999). This Court has already ruled as a matter of law that AETC at least constructively owned or possessed the Ashland and Diaz wastes, and that AETC is liable as an "arranger" under CERCLA and HSCA. November 17, 2006 Order. As Mr. Goldstein's opinion on ownership is not relevant to a "fact in issue" at trial, it cannot assist the trier of fact and should therefore be excluded pursuant to Rule 702.

### D. Because Mr. Goldstein Has No Expertise With Hazardous Waste Management Regulations, His Opinions On These Issues Will Not Assist The Trier Of Fact And Should Be Barred.

For expert testimony to be admissible pursuant to Rule 702, a proffered expert must offer something more than what the lawyers could offer in argument. *Salas v. Carpenter*, 980 F.2d (5th Cir. 1992); *In re Vioxx Products Liability Litigation*, 414 F. Supp. 2d at 580. Mr. Goldstein must have expertise in hazardous waste management in the mid-1970s to offer expert opinion testimony as in his Opinion No. 1. He does not. Mr. Goldstein's opinions rely instead on general experience working for an environmental regulatory agency to formulate opinions based solely on his interpretation of regulations which he was not involved in promulgating, administering, or enforcing.

For example, Mr. Goldstein's Opinion No. 1, based on the information supplied in Section 4.0 of his Report, is that "AETC conducted its business in compliance with the state of the art of hazardous waste management as it existed in 1976-77." Goldstein Report at 21. Mr. Goldstein admitted that the sole specialized knowledge he possessed to qualify him to render this opinion was his "ability to understand regulations by being in the field for the years *after* '76/'77, which had similar - although not precisely the same - conditions at the time...[and by having] knowledge of the state of the hazardous waste management program at that time period."

Goldstein Dep. at 204-205 (emphasis added). Mr. Goldstein also stated that his "experience as a regulator" makes him an expert in interpreting statutes and regulations by allowing him to "read previously adopted regulations and have an understanding of what their purpose and breadth is." Goldstein Dep. at 133.

Similarly, the statement in Opinion No. 3 that AETC could not have taken ownership of the hazardous waste from the generators under the waste management regulations, is without expert basis. Mr. Goldstein provided the following basis for this statement: "The experience that I've had is that the . . . generator has the ownership of the waste until such time as it's no longer a waste. That's the way the regulations read, the generator is the owner throughout." Goldstein Dep. at 208. Mr. Goldstein, however, has no particular experience or expertise with the hazardous waste management regulations which were in effect during 1976-1977, and has no experience whatsoever with hazardous waste hauling in that time period. His opinion as to "the way the regulations read" would do nothing to assist the trier of fact in understanding the evidence or determining a fact in issue.

Mr. Goldstein has admitted that he was in no way involved with hazardous waste management regulations under either federal or state programs in or prior to 1976-1977. His mere "knowledge" of the hazardous waste management rules in effect in 1976-1977 and the ability to read and interpret those regulations does not constitute expertise or specialized knowledge and offers nothing more to the trier of fact than what AETC's attorneys can provide in their argument.

According to Mr. Goldstein, he is qualified to offer "expert" testimony because of his thirty years of environmental consulting experience both in the public and private sectors. Goldstein Report at 2. Mr. Goldstein graduated in 1976 from Rensselaer Polytechnical Institute

with a Bachelor of Science and a Master's in Environmental Engineering. He began his career working for the New Jersey Department of Environmental Protection ("NJDEP") in various positions within the Division of Water Resources, Goldstein Dep. at 61,[4] and the Division of Responsible Party Site Remediation.[5] Goldstein Dep. at 68-69. However, at no time during his sixteen years at NJDEP was Mr. Goldstein involved in the promulgation, administration, or enforcement of hazardous waste regulations. Goldstein Dep. at 49, 57, 81-82.[6]

Mr. Goldstein left NJDEP in 1992 and has been working as an environmental consultant in the private sector for the past fourteen years. Goldstein Dep. at 70; Goldstein Report at 2. He testified that, in his thirty years of environmental experience, only one percent (1%) of his work-related duties have pertained to hazardous waste management in New Jersey. Goldstein Dep. at 76. In fact, Mr. Goldstein's claimed "expertise" with regard to New Jersey's hazardous waste statutes and regulations, on which he relies for his Report, was obtained by simply reading the Resource Conservation and Recovery Act, the New Jersey Solid Waste Management Act, and drafts of hazardous waste regulations promulgated by NJDEP in the 1980s. Goldstein Dep. at 82-83. The extent of his "expertise" in the federal hazardous waste management program is derived solely from "having been part of the regulatory atmosphere" at

---

[4] Mr. Goldstein's positions at NJDEP have primarily been in the Division of Water Resources and include: Assistant Engineer, Office of Program Development (1976-77), Goldstein Dep. at 46; Office of Sludge Management (1977-81), Goldstein Dep. at 49; 57); Chief, Industrial Pretreatment (1981-86), Goldstein Dep. 57-58; Chief, Bureau of Underground Storage Tanks (1986-92), Goldstein Dep. at 63-64.

[5] In 1992 Mr. Goldstein became the Chief of the Bureau of Applicability and Compliance, which position he held for approximately nine months. Goldstein Dep. at 70.

[6] Mr. Goldstein's only significant involvement or experience with hazardous waste regulations while at NJDEP was the development of specific requirements for disposal of a residual waste found in underground storage tanks and the cleanup of sites contaminated by these tanks. Goldstein Dep. at 66-68.

NJDEP during the implementation of the Resource Conservation and Recovery Act. Goldstein Dep. at 129-130. He had no involvement with the promulgation of those federal regulations. Goldstein Dep. at 131. He also admitted that he has had no experience whatsoever in dealing with Pennsylvania historic or current hazardous regulations. Goldstein Dep. at 76. When asked to specify his areas of expertise, Mr. Goldstein stated them to be "water and site remediation;" he did not claim an expertise in hazardous waste management. Goldstein Dep. at 77, 85.

Mr. Goldstein's opinions are simply his own proposed findings of fact based on the same deposition testimony and regulations which will be presented to the trier of fact at trial by AETC's counsel. AETC's counsel is fully capable of summarizing the state of hazardous waste management regulations in the 1970s, as Mr. Goldstein has done. Therefore, Mr. Goldstein's opinions do not offer anything more than what counsel can offer in argument, and thus do not constitute an expert opinion admissible under Rule 702 and should be barred.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant its Motion *in Limine* to Strike AETC's Expert Report.

> Ballard Spahr Andrews & Ingersoll, LLP
> A Pennsylvania Limited Liability Partnership
>
> By: _____
> Glenn A. Harris, Esquire
> Plaza 1000, Suite 500, Main Street
> Voorhees, New Jersey 08043
> Phone: (856) 761-3440
> E-mail: harrisg@ballardspahr.com
>
> Attorneys for Plaintiffs

Dated: May 23, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AGERE SYSTEMS, INC., CYTEC INDUSTRIES INC., FORD MOTOR COMPANY, SPS TECHNOLOGIES, LLC and TI GROUP AUTOMOTIVE SYSTEMS L.L.C., <br><br>　　　　　　　Plaintiffs,<br>　　v.<br><br>ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, et al.,<br><br>　　　　　　　Defendants. | Civil Action No. 02-CV-3830 (LDD) |

## DECLARATION IN SUPPORT OF PLAINTIFFS' MOTION *IN LIMINE* TO STRIKE DEFENDANT AETC'S EXPERT, KENNETH GOLDSTEIN, P.E.

GLENN A. HARRIS, ESQUIRE hereby certifies:

1.     I am a member of the law firm of Ballard Spahr Andrews & Ingersoll, LLP, and counsel for Plaintiffs in the above-captioned matter.

2.     I submit this declaration in support of Plaintiffs' Motion In Limine to Strike AETC's Expert.

3.     Attached hereto and marked Exhibit "A" is a true and correct copy of the 12/4/06 deposition transcript of Kenneth Goldstein.

4.     Attached hereto and marked Exhibit "B" is a true and correct copy of the 9/2/06 Expert Report of Kenneth Goldstein, P.E.

2

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated May 23, 2008

_____
Glenn A. Harris, Esquire