# EXHIBIT "B"
# Part 7 of 7

DEPOSITION OF JOSEPH J. HOCHREITTER, JR., 2/27/07

1      specifics on, you know, time frames.

2              An employee recalled

3      hauling hydrochloric acid from the

4      Bristol facility.  DeRewal recalled

5      hauling acrylic latex and Sevin

6      insecticide and another DeRewal

7      employee recalled hauling drummed

8      wastes, types not specified.

9              There's just not enough

10     information there to be able to form

11     any meaningful -- I mean, do I

12     believe that waste was hauled from

13     Rohm & Haas Company during the period

14     of interest, yes.

15             Do I have any information

16     to be able to form an intelligent

17     opinion about what that waste was and

18     how much of it there was, I wasn't

19     comfortable.

20         Q.    Can we turn to Simon

21     Wrecking?

22         A.    Sure.  Give me one second.

23         Q.    Uh-huh.

24         A.    Okay.

**JD**

**James DeCrescenzo Reporting**, LLC

215.564.3905          InnovatingLitigation          FAX  215.751.0581
                1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
                        www.JDReporting.com

DEPOSITION OF JOSEPH J. HOCHREITTER, JR., 2/27/07

1      Q.     And you believe that a
2  minimum of 178,000 gallons of waste
3  consisting of paint sludge, solvents
4  waste acid and waste oil were
5  generated by Simon Wrecking during
6  the 1969 to 1977 period, correct?
7      A.     That is correct.
8      Q.     And what is that based on?
9      A.     If we turn to Table 8 in
10  the appendix of my report, we
11  summarize from Jonas ledgers, there's
12  entries of drums, which I believe are
13  converted to gallons, and then, in
14  some instances, reports of just
15  gallons of paint sludge solvent,
16  waste acid, and waste oil. This is
17  what we were able to pull from the
18  factual information.
19          We were able to look at
20  tank wagons and, because of some
21  cross-referencing, we were able to
22  get an understanding of what the
23  volume of a tank wagon typically
24  was. And we made an assumption that,

**JDR**

**James DeCrescenzo Reporting**, LLC
InnovatingLitigation
215.564.3905                    1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103        FAX  215.751.0581
www.JDReporting.com

DEPOSITION OF JOSEPH J. HOCHREITTER, JR., 2/27/07

1    if the tank wagon went, the tank

2    wagon was filled.

3            The problem with this is

4    that we aren't really sure what the

5    exact dates are for this.

6        Q.    Dates of what?

7        A.    Of when these things were

8    picked up.  I don't believe the Jonas

9    ledger, it gives us months and days,

10   but it doesn't give us years, so we

11   assume, if you look at the note on

12   the bottom, all data are assumed to

13   date from the same year because of

14   the position they were on the ledger,

15   but we have no idea what the year is.

16       Q.    Okay.  And why is it that

17   you were not able to extrapolate with

18   respect to Simon Wrecking?

19       A.    If we -- we are fairly

20   confident that the 178,000-gallon

21   volume estimate is accurate, but we

22   have no idea if this is from June to

23   July of 1970, 1976, and what year.

24   It may be even conceivably, although

**JDR**

**James DeCrescenzo Reporting**, LLC

215.564.3905          InnovatingLitigation          FAX  215.751.0581
               1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
                        www.JDReporting.com

DEPOSITION OF JOSEPH J. HOCHREITTER, JR., 2/27/07

1    I don't think so, but outside the

2    period of interest.  We just don't

3    know.

4              So I was very uncomfortable

5    in principle, when I don't even know

6    what year this information

7    represents.  If I knew the year, then

8    I probably would have done an

9    extrapolation.

10    Q.    So if I were to say, Assume

11   that it all came from 1976, then you

12   would be able to do an extrapolation

13   with respect to Simon Wrecking?

14    A.    As long as no one would

15   have an objection to that assumption,

16   yes.  If we know for certain that it

17   came from 1976.  And then we also

18   have insight, and I don't recall

19   anything in the record that suggests

20   that this operation significantly

21   changed over the eight-year period of

22   interest.

23             I would want to research

24   that a little more.  I think in this

**JDR**

**James DeCrescenzo Reporting**, LLC
InnovatingLitigation
215.564.3905                    1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103              FAX  215.751.0581
www.JDReporting.com

350

DEPOSITION OF JOSEPH J. HOCHREITTER, JR., 2/27/07

1    instance, because we didn't even know

2    what year this came from, I simply

3    decided we were going to report the

4    volume and that's it.

5        Q.    Do you know the time period

6    that Simon Wrecking operated?

7        A.    I believe it operated

8    during the period of interest, 1969

9    to 1977. I do not, off the top of my

10   head, know if we were given the

11   information on their entire

12   operational history.

13       Q.    And what's the basis for

14   your belief that they did operate

15   during the period of interest?

16       A.    I don't recall specifically

17   seeing a document that said they

18   didn't operate during the period of

19   interest, so the assumption was that

20   they did operate during the period of

21   interest. I mean, this issue -- they

22   are a PRP at this site, and

23   presumably, you know, it's thought

24   they might have sent waste here.

**JDR**

**James DeCrescenzo Reporting**, LLC

215.564.3905          InnovatingLitigation          FAX  215.751.0581
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

DEPOSITION OF JOSEPH J. HOCHREITTER, JR., 2/27/07

1          So -- I know very little
2     about Simon Wrecking, I was given
3     very little information about Simon
4     Wrecking.
5          Q.     So my question is knowing
6     what you do know that's set out on
7     Section 4.7.1.1 and Section 4.7.1.2,
8     if you knew the year of the Jonas
9     records --
10         A.     Sorry, go ahead.
11         Q.     Knowing what you do know
12    that's contained in Section 4.7.1.1
13    and 4.7.1.2 of your report, if you
14    did know the year of the Jonas
15    ledger, then you would extrapolate;
16    is that correct?
17         A.     That is correct.
18         Q.     And why is that?  Why
19    specifically with respect to Simon
20    Wrecking?  What information in those
21    two sections would allow you to
22    extrapolate?
23         A.     I would look at two months'
24    worth of record and say that at a

DEPOSITION OF JOSEPH J. HOCHREITTER, JR., 2/27/07

1    minimum this is the amount of

2    material that was produced for that

3    two-month period of time.  It may

4    actually be more than that, because

5    June is very sparsely represented.

6    It's primarily one month of record.

7              So I'm just -- I'm very

8    uncomfortable given that I can't even

9    say with certainty what year this

10   information represents to do an

11   extrapolation.  It is just a judgment

12   call.

13             If it was identified as

14   1972, so I know it's within the

15   period of interest, and, you know,

16   I'm aware -- I have no reason to

17   believe that their operations

18   substantially changed during that

19   period of time, then, yes, I would be

20   comfortable doing an extrapolation.

21             Would it be as good an

22   extrapolation as some of the others

23   we have done?  Perhaps not.  One

24   thing, I think, that is important to

DEPOSITION OF JOSEPH J. HOCHREITER, JR., 2/27/07

1   know is that not all extrapolations

2   are necessarily of equal weight.

3   What we are trying to do here is fill

4   in gaps and information where ideally

5   we should have that information and

6   we don't.

7          Q.    So what you are saying is

8   you would extrapolate based on the

9   information you know about Simon

10  Wrecking if you knew the year of the

11  Jonas ledger, correct?

12         A.    That would be a big factor

13  in my decision to go ahead and

14  extrapolate, yes.  I would also want

15  to probably look at Simon a little

16  more closely, although, again, we

17  don't have a lot of records.

18         Q.    My question is, then, if

19  that's the case, how is that

20  different from Quickline, where, with

21  respect to Simon Wrecking you have

22  two months of waste records and with

23  respect to Quickline you have one

24  record, but you have the same little

DEPOSITION OF JOSEPH J. HOCHREITTER, JR., 2/27/07

1    bit of information about both of

2    those it seems.

3         A.    We did essentially the same

4    thing with both Quickline and Simon,

5    we simply reported what we knew.

6         Q.    So is it the case that,

7    even if you did know the year of the

8    Jonas ledger, you would not

9    extrapolate with respect to Simon

10   Wrecking?

11              MS. FLAX:   Objection.

12              THE WITNESS:   If I knew the

13   year, then I would make an attempt at

14   extrapolation, and at the end of the

15   process would I -- because, you know,

16   as I indicated before, we go through

17   this process.   I made a decision very

18   early on because I don't even know

19   the year, I'm simply going to report

20   the volume.   That's it, and I'm not

21   going to go any further with in.

22        Q.    But I'm asking you, if you

23   did know the year.

24        A.    If I did know the year, I

**JDR**

**James DeCrescenzo Reporting**, LLC
InnovatingLitigation
215.564.3905          1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103          FAX  215.751.0581
www.JDReporting.com

DEPOSITION OF JOSEPH J. HOCHREITTER, JR., 2/27/07

1    would take that into consideration

2    and likely extrapolate, but I would

3    also want to look at the entire base

4    of knowledge of Simon Wrecking again

5    to form a final opinion.  It is not

6    just a bright line, flip the switch

7    on or off.

8         Q.    And you couldn't say, based

9    on the information that's listed in

10   your report here, based on the stuff

11   that you have listed in your report

12   here, instead of going out and

13   looking at Simon Wrecking again,

14   looking at the stuff that's right in

15   front of you, would you extrapolate

16   or not, if you knew the year of the

17   Jonas record?

18              MS. FLAX:  Objection.

19              THE WITNESS:  I believe,

20   and I have said before, at least a

21   couple times, that I would probably

22   extrapolate.  This is -- 178,000

23   gallons for a thirty-day period of

24   time is a fair amount of material.

DEPOSITION OF JOSEPH J. HOCHREITTER, JR., 2/27/07

1  BY MS. TROJECKI:

2      Q.    So since you are saying

3  that you would extrapolate, what is

4  it about Simon Wrecking that would --

5  what is it about the information in

6  4.7.1.1 and 4.7.1.2 that would cause

7  you to make that decision, what

8  specifically?

9      A.    I'm trying my best to

10 answer the question that I think you

11 are trying to get at.  I don't know

12 how to add anything more to our

13 discussion than probably what I have

14 already said.

15     Q.    Let me just try to one more

16 time, too.

17         The problem that I'm having

18 is that the information you have

19 about Quickline that's contained in

20 the manufacturing and the waste

21 generation section seems to be

22 similar to the information you know

23 about Simon Wrecking.

24     A.    Yes, except for there's --

**JDR**

**James DeCrescenzo Reporting**, LLC
InnovatingLitigation
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

215.564.3905                                    FAX  215.751.0581

DEPOSITION OF JOSEPH J. HOCHREITTER, JR., 2/27/07

1    in Quickline we had 1,900 gallons and

2    here we have 178,000 gallons for a

3    very limited period of time.  Other

4    than that, yes, it's, you know, it's

5    similar, I will accept that.

6        Q.    So was that the difference,

7    then, the amount of wastes?  So if

8    you say you have 178,000 gallons in

9    two months you can extrapolate, but

10   if you only had 1,925 in one month

11   then you can't?

12            MS. WRIGHT:  Objection.

13            THE WITNESS:  I wouldn't

14   say that.  I wouldn't say that.  I

15   wouldn't say that that's the

16   determining criteria.

17            As I said at the very

18   beginning, since I didn't know the

19   year that this represents, at the

20   very beginning, at the very onset I

21   said I am uncomfortable with

22   extrapolating this.  The data should

23   be able to tell me what year this

24   represents, and if it can't then I

DEPOSITION OF JOSEPH J. HOCHREITTER, JR., 2/27/07

1    simply would do what I did with

2    Quickline and report the volume.

3           And it's almost certainly a

4    minimum quantity, but I cannot say

5    more than that.

6    BY MS. TROJECKI:

7        Q.    I understand that.  And I

8    understand that you said that if you

9    did know the year you would

10   extrapolate.

11       A.    I would likely extrapolate,

12   yes.

13       Q.    And you did say that the

14   information that you know about

15   Quickline is similar to the

16   information you know about Simon

17   Wrecking?

18           MS. WRIGHT:  Objection.

19           THE WITNESS:  It's limited

20   in both instances.

21   BY MS. TROJECKI:

22       Q.    But with respect to

23   Quickline you did not extrapolate,

24   but you would extrapolate with

**JDR**

**James DeCrescenzo Reporting**, LLC
InnovatingLitigation
215.564.3905                    1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103                    FAX  215.751.0581
www.JDReporting.com

DEPOSITION OF JOSEPH J. HOCHREITTER, JR., 2/27/07

1   respect to Simon Wrecking?

2            MS. FLAX:  Objection.

3            MS. WRIGHT:  Objection.

4   BY MS. TROJECKI:

5        Q.    Is that correct?

6        A.    I would be inclined to

7   extrapolate Simon Wrecking, yes.

8        Q.    And can you tell me why you

9   would do it with respect to Simon

10  Wrecking and not Quickline?

11           MS. WRIGHT:  Objection.

12           THE WITNESS:  All right,

13  let's go into Quickline.

14           In the case of Quickline,

15  we have a DeRewal invoice for 35

16  drums of waste chromic acid in 1973.

17  We're assuming those drums are 55

18  gallons and that they are full.  It's

19  a relatively small quantity in a

20  one-time event.

21           Here for Simon Wrecking we

22  have what would be construed as a

23  one-time event, but there are

24  interestingly many tank wagons, many

**James DeCrescenzo Reporting**, LLC

215.564.3905        InnovatingLitigation        FAX  215.751.0581
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

DEPOSITION OF JOSEPH J. HOCHREITTER, JR., 2/27/07

1   drums over a 20, 25-day period, which

2   reflects a substantially larger

3   volume of waste material.

4           In Quickline this may just

5   have been an incidental generation of

6   waste.  When you look at Simon

7   Wrecking, there's at least a small

8   glimmer that there's quite a bit of

9   waste being generated here.

10  BY MS. TROJECKI:

11      Q.     Okay.

12      A.     And you are asking me about

13  a hypothetical, what I would do if I

14  had the year, and I said yes, I would

15  probably extrapolate, but I would

16  also go back and take a look at all

17  else that I know about Simon

18  Wrecking, because, again, the

19  decision to not extrapolate was one

20  that I reached very early in this

21  process, because I didn't really -- I

22  couldn't even say what year it is,

23  and I'm just uncomfortable with the

24  ledger and the quality of the

**JDR**

**James DeCrescenzo Reporting**, LLC

215.564.3905          InnovatingLitigation          FAX  215.751.0581
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

DEPOSITION OF JOSEPH J. HOCHREITTER, JR., 2/27/07

1    information to allow me to do that,

2    and, hopefully, that addresses your

3    concern.

4         Q.    Okay, let's move on to

5    Sperry/Burroughs.  You believe

6    that -- and I'm going to refer to

7    Sperry/Burroughs and Unisys all as

8    the same company, as Sperry.

9         A.    Okay.

10        Q.    You believe that Sperry

11   generated a minimum of 3,615 gallons

12   of waste from 1969 to 1977, correct?

13        A.    Let me change that or

14   clarify that.

15             If you look at Table 9 in

16   my appendix for Sperry/Burroughs, the

17   period of time where we have factual

18   information is 1972 to 1974.  So in

19   the case of Sperry/Burroughs, what we

20   are able to tally up using, in one

21   instance, a purchase order issue to

22   DeRewal, a Univac purchase order, and

23   a DeRewal chemical invoice, the total

24   is 3,615 gallons.  And this is for

**James DeCrescenzo Reporting**, LLC

215.564.3905          InnovatingLitigation          FAX  215.751.0581
                 1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
                            www.JDReporting.com

1      two different facilities, Blue Bell,

2      Pennsylvania, and Utica, New York.

3              So, basically, we concluded

4      on Page 4-12 of my expert report

5      those data are listed in Table 9 and

6      summarized in Table Roman Numeral IX

7      as totaling 3,615 gallons. They are

8      considered too limited to permit an

9      estimate or extrapolation of monthly

10     annual waste volumes.

11             So this fits into the

12     Quickline kind of model. I simply

13     don't have enough information to be

14     able to say. Also, the biggest

15     quantity or element of this waste is

16     something just called industrial

17     waste.

18         Q.    And what does that -- how

19     does that --

20         A.    It doesn't tell me anything

21     about the process that generated it.

22         Q.    Let's move on to the Navy.

23     I am going to go with your counsel's

24     previous stipulation that the

**JDR**

**James DeCrescenzo Reporting**, LLC

215.564.3905          InnovatingLitigation          FAX  215.751.0581
                1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
                          www.JDReporting.com

DEPOSITION OF JOSEPH J. HOCHREITTER, JR., 2/27/07

1    information is limited to the

2    documents you reviewed and deposition

3    testimony.

4         A.    Yes.

5         Q.    And you were not able to

6    render any opinion about the estimate

7    of total waste quantified by the

8    Navy; is that correct?

9         A.    That is correct.

10        Q.    And why is that?

11        A.    In Section 4.9.2 of my

12   expert report, there's two pieces of

13   information from deposition testimony

14   that we consider to be very sketchy.

15             One is J. Barsum recalling

16   two waste pickups at Johnsville Air

17   Base, less than 20 drums each time.

18   And then Manford DeRewal recalls

19   picking up drums from the naval

20   facility off Street Road on two or

21   three occasions.  They were in either

22   in 5- to 55-gallon containers,

23   possibly 10 to 20 drums.

24             It's just very hearsay-type

364

DEPOSITION OF JOSEPH J. HOCHREITTER, JR., 2/27/07

1   recollection.  It's not anything that

2   I can put my hands on.  Wouldn't even

3   begin to try to understand what the

4   nature of the wastes generation at

5   the Navy's facilities were.  And I

6   assuming that it is just Warminster.

7   I'm assuming that the Johnsville and

8   the Navy facility off Street Road are

9   the same.  I believe they are.

10          Q.    Okay.  Now, for many of the

11  plaintiffs and settled defendants,

12  with respect to quantifying their

13  waste types, you have indicated that

14  a lot of times it was a personal

15  judgment call and I believe you used

16  those words exactly several times

17  today?

18          A.    That's correct.

19          Q.    So what expertise did you

20  apply in making the personal judgment

21  call that you did in creating this

22  report?

23          A.    Well, I thought we had

24  discussed that in the past in terms

**JDR**

**James DeCrescenzo Reporting**, LLC

215.564.3905          InnovatingLitigation          FAX  215.751.0581
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

DEPOSITION OF JOSEPH J. HOCHREITTER, JR., 2/27/07

1    of the expertise that I brought to

2    this assignment.

3         Q.    Okay, so you named in the

4    past two areas that you considered

5    yourself to be an expert, hydrology

6    and site remediation?

7         A.    That's correct.

8         Q.    Did the hydrology side

9    factor into the preparation -- your

10   hydrology expertise factor into the

11   preparation of this report?

12        A.    Not directly, no.

13        Q.    So it's the site

14   remediation expertise?

15        A.    That's correct.

16        Q.    And what expertise on the

17   site remediation side did you utilize

18   in making the personal judgment calls

19   that you made?

20        A.    That's an over -- that's a

21   very, very broad question.

22             We talked quite a bit this

23   morning about the experience that I

24   have doing compliance audits, working

**JDR**

**James DeCrescenzo Reporting**, LLC

215.564.3905        InnovatingLitigation        FAX  215.751.0581
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

366

DEPOSITION OF JOSEPH J. HOCHREITTER, JR., 2/27/07

1    in industrial facilities, taking

2    environmental contamination and

3    tracing it back to its source and

4    trying to mitigate the sources of

5    contamination at industrial

6    facilities.

7            That experience directly

8    relates to -- coupled with the

9    environmental remediation side of

10   managing and handling wastes and

11   sending wastes to facilities and

12   knowing how it is packaged and

13   knowing the RCRA regulations, knowing

14   the Superfund regulations, all of

15   that comes together in being able to

16   evaluate what a waste is, how to

17   quantify it, and how to evaluate how

18   it was handled by each of these

19   companies.

20       Q.   So in the case of

21   Quickline, for instance, what

22   expertise particularly did you apply

23   to say, No, I don't have enough

24   information to extrapolate here?  I

**James DeCrescenzo Reporting**, LLC

215.564.3905        InnovatingLitigation        FAX  215.751.0581
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

DEPOSITION OF JOSEPH J. HOCHREITTER, JR., 2/27/07

1    mean, couldn't I do the same thing,

2    read a document and say it looks like

3    there are entries for March, January,

4    February, it doesn't look complete,

5    why not just extrapolate?

6        A.    It's entirely possible that

7    you could.  I'm not going to say that

8    you couldn't.

9            MS. TROJECKI:  Just take a

10   quick break.  I want to read the

11   revised report.

12            (Recess taken)

13   BY MS. TROJECKI:

14       Q.    During our 10, 15 minute

15   break, I quickly reviewed your

16   revised report and I guess,

17   generally, the question I had with

18   respect to the revised report is, did

19   any of the information that you added

20   in the revised report change any of

21   your ultimate opinions with respect

22   to each plaintiff or settled

23   defendant?

24       A.    It, in my opinion, made

DEPOSITION OF JOSEPH J. HOCHREITTER, JR., 2/27/07

1    minor changes to a couple of the

2    plaintiffs or settled defendants

3    final tallies;, it didn't make a

4    substantive change in terms of the

5    magnitude of wastes that we think

6    might have been generated.

7        Q.    Was there ever an instance

8    where you extrapolated in one

9    instance and got some of these

10   documents and decided that you

11   shouldn't extrapolate or, vice versa,

12   that you didn't extrapolate, reviewed

13   the documents and then made a

14   decision to extrapolate?

15       A.    I don't think it would have

16   changed decisions on extrapolation.

17   There is, though, I think in

18   Cyanamid, there is an MIT article

19   that we received, and in there they

20   did research basically looking at a

21   manufacturing process to try to

22   remove aniline or some -- I forget

23   exactly what the constituent was, but

24   they produced a number for ammonia

**JDR**

**James DeCrescenzo Reporting**, LLC

215.564.3905          InnovatingLitigation          FAX  215.751.0581
                      1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
                      www.JDReporting.com

DEPOSITION OF JOSEPH J. HOCHREITTER, JR., 2/27/07

1   waste that differs from what we had

2   in the tables.

3            And what we are proposing

4   in this report is not necessarily to

5   change the conclusions but simply to

6   include this other source of

7   information in our compilation of

8   multiple sources of waste generated

9   at the Cyanamid Bound Brook facility.

10       Q.    Let's actually mark your

11   revised copy of your expert report.

12       A.    Do you have another copy of

13   that?

14       Q.    No.

15       A.    I brought one with me.  Is

16   it okay for me to make reference to

17   that?

18       Q.    Yes.  Uh-huh.

19            (Hochreiter Exhibit 12 was

20   marked for identification.)

21   BY MS. TROJECKI:

22       Q.    So we marked as Hochreiter

23   12 the revised copy of your expert

24   report, which is -- we have actually

DEPOSITION OF JOSEPH J. HOCHREITTER, JR., 2/27/07

1    marked a letter dated February 26,

2    2007, from Lynn Wright to me that

3    includes the sections of the reports

4    that were revised.

5        A.    Okay.

6        Q.    So your conclusion with

7    respect to American Cyanamid in the

8    unrevised report was that the

9    extrapolated quantity of waste

10   generated by American Cyanamid based

11   on the American Cyanamid records --

12   well, let me just refer you to Table

13   I, Roman Numeral I, of your unrevised

14   report.

15       A.    Okay.

16       Q.    And the question is does

17   the information in this MIT research

18   report change the numbers that are

19   listed in Table 1a?

20       A.    My recollection is that we

21   did not change those numbers. What

22   we did was we simply added the new

23   information to Table 1a, which is the

24   parent of Table I, if you will.

**James DeCrescenzo Reporting**, LLC

215.564.3905    InnovatingLitigation    FAX  215.751.0581
1880 JFK Blvd., 6ᵗʰ Floor, Philadelphia, PA 19103
www.JDReporting.com

DEPOSITION OF JOSEPH J. HOCHREITTER, JR., 2/27/07

1    Q.    So you did issue a revised

2    Table I?

3    A.    Yes, we're on Table 1a.

4    Q.    I don't have that.  Oh, not

5    Roman Numeral I, just revised 1.

6    A.    Not Roman numeral, yes.

7    You see that at the bottom, it's

8    shaded.  Yes.  Yes.

9    Q.    Does that actually say

10   something?

11   A.    It does on my version.

12   Q.    What does it say?

13   A.    Why don't you read it.

14   Q.    Okay, so aqueous ammonia

15   annual volume 2.9 million pounds?

16   A.    Right.  Yes.

17   Q.    And you originally had,

18   based on the American Cyanamid

19   records, 721,780 pounds of ammonia,

20   correct, for this '76 to '78 time

21   period?

22   A.    Where do you see that?

23   Q.    The first page of Table 1a.

24   MS. FLAX:  I believe she's

**James DeCrescenzo Reporting**, LLC
InnovatingLitigation
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

215.564.3905                    FAX  215.751.0581

1      looking in your original report that

2      was marked Hochreiter 1.

3                  THE WITNESS:   In this

4      table?

5      BY MS. TROJECKI:

6          Q.    The first table was 1a,

7      which I do not believe was changed.

8          A.    I don't think it was

9      changed either.  I just probably --

10     okay, and, again, what number do you

11     want me to verify?

12         Q.    The 721,780.

13         A.    Yes, that's correct.

14         Q.    So that's one estimate of

15     ammonia generation generated by

16     American Cyanamid during a certain

17     time period, correct?

18         A.    That is correct.

19         Q.    And another estimate is on

20     Table 1a, the second page, for the

21     year 1976 for ammonia you have in

22     gallons 615,000 gallons?

23         A.    That is correct.

24         Q.    And for 1977 200,000

**JDR**

**James DeCrescenzo Reporting**, LLC

215.564.3905          InnovatingLitigation          FAX  215.751.0581
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

DEPOSITION OF JOSEPH J. HOCHREITTER, JR., 2/27/07

1  gallons?

2      A.    That's correct.

3      Q.    So do you have any opinion

4  as to whether the MIT study or the

5  Jonas records or the American

6  Cyanamid records, which of those is

7  the most accurate estimate of ammonia

8  generation?

9      A.    Again, it's hard for me to

10 indicate which particular record is

11 better or worse than another;

12 however, in this one instance, I will

13 say that in reading the MIT report

14 the purpose of the MIT report was not

15 to opine as to how much ammonia,

16 aqueous ammonia is created.

17          Its intention was to do

18 some research and figure out how to

19 remove aniline contamination from the

20 process.  And as a result, they

21 reference 2.9 million pounds of

22 aqueous ammonia.  That is a different

23 category of information in my mind

24 from the actual Cyanamid reporting

**JDR**
**James DeCrescenzo Reporting**, LLC
InnovatingLitigation
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com
215.564.3905                                    FAX  215.751.0581

DEPOSITION OF JOSEPH J. HOCHREITTER, JR., 2/27/07

1    records where they are presumably

2    actually counting the pounds in the

3    field at the facility.

4            What we say in the

5    conclusion on Page 3-6 of the revised

6    report, the last new sentence, "The

7    extrapolated totals at least with

8    respect to ammonia waste liquid may

9    represent minimum quantities if as

10   noted by the 1975 MIT research report

11   2.9 million pounds of aqueous ammonia

12   were in fact generated annually."

13       Q.    Are there any other

14   instances in the revised report where

15   there was a change in the conclusion

16   with respect to a particular

17   plaintiff or settled defendant?

18       A.    Give me a minute.  Let me

19   just look at the language.  I think

20   that was the one that stuck out as

21   probably the most significant, but I

22   want to be careful.

23           For Philco Ford it appears

24   that some additional waste generation

**James DeCrescenzo Reporting**, LLC

215.564.3905         InnovatingLitigation         FAX  215.751.0581
            1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
                      www.JDReporting.com

DEPOSITION OF JOSEPH J. HOCHREITTER, JR., 2/27/07

```
 1    information was provided in the new
 2    documentation.
 3         Q.    I think I might be -- was
 4    there a change -- is there a Page
 5    3-17 on your revised report?
 6         A.    I'm sure there is.  What we
 7    gave you were just those pages that
 8    were revised.
 9         Q.    Because I assume that, if
10    there's new documentation of waste,
11    that would be reflected in the last
12    paragraph, but I don't have that.
13         A.    For which company?
14         Q.    Ford.
15         A.    May I see that?
16              MS. FLAX:  Off the record
17    for a second.
18              (Discussion off the
19    record.)
20              THE WITNESS:  The
21    conclusions for Ford did not change.
22    BY MS. TROJECKI:
23         Q.    Okay.
24         A.    What I want to do is I want
```

**JDR**

**James DeCrescenzo Reporting**, LLC

215.564.3905          InnovatingLitigation          FAX 215.751.0581
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

DEPOSITION OF JOSEPH J. HOCHREITTER, JR., 2/27/07

1    to pull the table.

2        Q.    3?

3        A.    Yes, so that's fine.  What

4    you have is correct.

5        Q.    So Table 3 didn't change at

6    all?

7        A.    No.  No, it did not.

8        Q.    So what is the new

9    information, then, that you learned

10   about Ford?

11       A.    Ford indicated that 184

12   55-gallon drums or 10,120 gallons of

13   waste finishing material was removed

14   by DeRewal Chemical Company from the

15   Watsontown plant and that

16   approximately 32 55-gallon drums of

17   industrial waste solution were

18   removed by DeRewal Chemical Company

19   from Plant 50.

20       Q.    Is that information

21   requested in Table 3?

22       A.    The problem that we have is

23   we don't really know whether that

24   material is included in Table 3,

**JDR**

**James DeCrescenzo Reporting**, LLC

215.564.3905          InnovatingLitigation          FAX  215.751.0581
                1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
                        www.JDReporting.com

DEPOSITION OF JOSEPH J. HOCHREITTER, JR., 2/27/07

1    whether it is already indicated by

2    the entries or whether it's truly new

3    information.  So to be conservative

4    we decided not to modify the table.

5        Q.    Okay.  Are there any other

6    sections or any other instances in

7    your report where the conclusions may

8    have changed with respect to a

9    particular plaintiff or settled

10   defendant?

11       A.    What I will do is I'm just

12   going to skim the tables, because if

13   there was a substantive revision it

14   would be reflected in the table.

15   Keep in mind that there are a couple

16   of references in here to additional

17   information that we're still looking

18   for.

19       Q.    Okay.

20       A.    So it's possible that if

21   that additional information manifests

22   itself we may still want to revisit

23   this yet again.

24            If we go to Ciba-Geigy,

DEPOSITION OF JOSEPH J. HOCHREITTER, JR., 2/27/07

1   Table 6a is probably a good place to

2   focus.  If you look at the new 6a,

3   and I'm hoping you can read it in

4   black and white.  I'm going to show

5   you this version with Lynn's

6   permission, okay.  You will see that

7   there were a few additional entries

8   for, I think it's spent acid.

9       Q.    And are the additional

10  entries in color?

11      A.    They are, yes.

12      Q.    So these were new documents

13  that you found with respect to Ciba-

14  Geigy that actually resulted in you

15  increasing the total number of

16  gallons?

17      A.    Actually, we ended up

18  decreasing the total number of

19  gallons slightly.  The extrapolated

20  waste volume.  Because what that

21  additional information did was it

22  depressed slightly the annual

23  averages that we were using, so it

24  brought the number down slightly.

DEPOSITION OF JOSEPH J. HOCHREITTER, JR., 2/27/07

1          The new number of

2    extrapolated eight-year waste acid

3    volume for Ciba-Geigy is 705,199.  If

4    I remember off the top of my head,

5    the old number was 720 maybe.  Let's

6    pull Table 6b from the original

7    report.

8          Q.    728,239?

9          A.    Yes.  That sounds right.

10          Q.    Okay.  I want to -- I'm

11    going to show you some documents that

12    were produced by defense counsel --

13          A.    If you give me one -- I

14    just want to make certain I have

15    answered your question thoroughly,

16    and I believe I have now, yes.

17          Q.    I want to show you some

18    documents that were included in the

19    documents that defense counsel sent

20    to me that were presumably in your

21    file.

22          The first document is

23    titled "Boarhead Farms Deposition

24    Summary:  Pertinent facts stated

**JDR**

**James DeCrescenzo Reporting**, LLC
InnovatingLitigation
215.564.3905                    1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103                    FAX  215.751.0581
www.JDReporting.com

380

DEPOSITION OF JOSEPH J. HOCHREITTER, JR., 2/27/07

1    about each litigation," and then it

2    just cuts off with "par." I assume

3    that's party. "Draft work in

4    progress." And on the top it says

5    deponent name Marvin Jonas, depo

6    date, no exhibits provided for SEC

7    review, dated April 14, 1986.

8            Do you know who prepared

9    this document?

10       A.    This was prepared by

11   Valerie and I. And, actually, it

12   printed very strangely. This is an

13   Excel table that wasn't formatted

14   properly for printing, so that's why

15   you can't read it. I'm not sure I

16   would want to try to read it in this

17   format.

18       Q.    Do you still have it saved

19   on your computer?

20       A.    I produced it to Lynn and

21   I'm sure Lynn has it electronically,

22   as I'm sure I probably do as well.

23   So it could be --

24       Q.    Reformatted and printed so

**JDR**

**James DeCrescenzo Reporting**, LLC

215.564.3905          InnovatingLitigation          FAX 215.751.0581
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

DEPOSITION OF JOSEPH J. HOCHREITTER, JR., 2/27/07

1    it is readable?

2        A.    Yes.

3        Q.    Okay.

4        A.    But what this was was a

5    working document that we used as we

6    were reviewing depositions to try to

7    cull out the pertinent information

8    from each of them.  And we did that

9    relative to the individual

10   plaintiffs.

11       Q.    Did Valerie create this or

12   did you?

13       A.    Valerie formatted it; I

14   provided input, as did she, as we

15   were reviewing material.

16       Q.    Okay.  Okay, the next

17   document I want to show you is an

18   e-mail from Valerie Holliday to you

19   dated September 10th, 2006, with an

20   attachment that says Table 1, Chrono

21   Events, BHF.doc, and then there is an

22   attachment that has a Table 1,

23   Chronologic History of Events

24   regarding DeRewal Chemical Company

**JDR**

**James DeCrescenzo Reporting**, LLC

215.564.3905            InnovatingLitigation            FAX  215.751.0581
                  1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
                             www.JDReporting.com

DEPOSITION OF JOSEPH J. HOCHREITTER, JR., 2/27/07

1    and Boarhead Farms Superfund site.

2         A.    Do you want to mark this?

3         Q.    No.

4               Who created this document?

5         A.    This was created by

6    Valerie.  I asked her to pull

7    together a table that essentially

8    gave us in one concise easy to manage

9    format what the DeRewal operating

10   history was.

11        Q.    The next thing I'm going to

12   give you is a document that's titled

13   Notes of an Interview, Larry Piotti,

14   and it's notes of an interview with

15   Larry Piotti on December 3rd, 2005,

16   at his house in Pottstown.

17               And at the end of that

18   document are two notes of telephone

19   conversations, one dated January 7,

20   2005, regarding a telephone

21   conversation with Earl Wagner and

22   another dated January 11, 2005,

23   regarding a telephone conversation

24   with Francis Kline.

DEPOSITION OF JOSEPH J. HOCHREITTER, JR., 2/27/07

1          Do you know who created

2     this document?

3          A.    I don't know who created

4     this document.

5          Q.    It is something that was

6     given to you by defense counsel; is

7     that right?

8          A.    That's the only way we

9     would have received it, yes.

10         Q.    And do you know who the I

11    on Page 5 of that document, who the

12    person is that spoke to Earl Wagner,

13    who the I refers to?

14         A.    I do not.

15         Q.    The next document is a

16    document that's dated September 8th,

17    2006, entitled Carpenter Technology

18    Corp Boarhead Farms Ford Production

19    Index.  Do you know who created this

20    document?

21         A.    I do not know who created

22    this document.  I know that I did

23    not.

24         Q.    Did you use it at all in --

**JDR**

**James DeCrescenzo Reporting**, LLC

215.564.3905          InnovatingLitigation          FAX  215.751.0581
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

DEPOSITION OF JOSEPH J. HOCHREITTER, JR., 2/27/07

1  did you consider it in your expert

2  report?

3      A.    I believe so.  I believe we

4  did, yes.

5      Q.    How so?

6      A.    I can't recall.  I really

7  don't know.  I mean, I remember

8  seeing that document, but I don't

9  know who created it.

10     Q.    Okay.  Are these documents

11 that we are going through listed in

12 your report as documents you

13 considered?  Do you know if you

14 listed them?

15     A.    We tried to list every

16 single document that we used in the

17 report, so I'm going to assume that

18 it's listed, but I can't say with

19 certainty.  I do remember seeing that

20 document, but --

21     Q.    Then the last one I'm going

22 to show you is an e-mail from you to

23 Valerie Holliday dated September 11,

24 2006, and it references an

**JDR**

**James DeCrescenzo Reporting**, LLC

215.564.3905          InnovatingLitigation          FAX  215.751.0581
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

DEPOSITION OF JOSEPH J. HOCHREITTER, JR., 2/27/07

1    attachment, BF Drums one dot XLS, and

2    there's an attachment that's entitled

3    Boarhead Farms Privileged and

4    Confidential Draft Prepared at the

5    Request of Counsel, Drum Allocations

6    Based on Tetra Tech June 25th, 2004

7    Remedial Action Oversight Report.

8              Did you prepare this

9    document?

10        A.    I did prepare this

11   document.

12        Q.    Was the substance of this

13   document ultimately contained in your

14   expert report in this matter?

15        A.    It was not.

16        Q.    And you have no opinions

17   with respect to any of the contents

18   of the attachment regarding drum

19   allocations; is that correct?

20        A.    That is correct.

21             MS. TROJECKI:  Okay, I'm

22   done.  Thank you.  I have no other

23   questions.

24             THE WITNESS:  Okay.

**JDR**

**James DeCrescenzo Reporting**, LLC

215.564.3905          InnovatingLitigation          FAX  215.751.0581
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

DEPOSITION OF JOSEPH J. HOCHREITTER, JR., 2/27/07

1                    (Thereupon, at 6:04 p.m.

2       the deposition concluded.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

DEPOSITION OF JOSEPH J. HOCHREITTER, JR., 2/27/07

1                    **WITNESS CERTIFICATION**

2

3

4

5               I hereby certify that I

6    have read the foregoing transcript of

7    my deposition testimony, and that my

8    answers to the questions propounded,

9    with the attached corrections or

10   changes, if any, are true and

11   correct.

12

13

14

15   DATE _____ JOSEPH J. HOCHREITER, JR.,
                   CGWP
16

17

18

19

20   PRINTED NAME

21

22

23

24

**JDR**

**James DeCrescenzo Reporting**, LLC

InnovatingLitigation

1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103

www.JDReporting.com

215.564.3905                          FAX  215.751.0581

```
 1                    CERTIFICATION

 2

 3              I, JENNIFER L. BERMUDEZ, a

 4    Court Reporter in and for the Commonwealth

 5    of Pennsylvania, hereby certify that the

 6    foregoing is a true and accurate transcript

 7    of the deposition of said witness who was

 8    first duly sworn by me on the date and

 9    place hereinbefore set forth.

10              I FURTHER CERTIFY that I am

11    neither attorney nor counsel for, nor related

12    to or employed by, any of the  parties to

13    the action in which this deposition was

14    taken, and further that I am not a relative

15    or employee of any attorney or counsel

16    employed in this action, nor am I

17    financially interested in this case.

18

19

20    ------------------------------------

21    JENNIFER L. BERMUDEZ

22    Court Reporter and Notary Public

23

24
```

**James DeCrescenzo Reporting**, LLC

215.564.3905          InnovatingLitigation          FAX  215.751.0581
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com