**EXHIBIT K**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Civil Action No. |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| CYTEC INDUSTRIES, INC., | ) |  |
| FORD MOTOR COMPANY, | ) |  |
| SPS TECHNOLOGIES, INC. | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

## TABLE OF CONTENTS

I.    BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III.  PARTIES BOUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV.   DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

V.    GENERAL PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

VI.   PERFORMANCE OF THE WORK BY SETTLING DEFENDANTS . . . . . . . . . . . 14

VII.  QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS . . . . . . . . . . . . . 26

VIII. ACCESS AND INSTITUTIONAL CONTROLS . . . . . . . . . . . . . . . . . . . . . . . . . 29

IX.   REPORTING REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

X.    EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS . . . . . . . . . . . . . . . 37

XI.   PROJECT COORDINATORS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

XII.  ASSURANCE OF ABILITY TO COMPLETE WORK . . . . . . . . . . . . . . . . . . . . 41

-2-

XIII.   CERTIFICATION OF COMPLETION ................................ 44

XIV.   EMERGENCY RESPONSE ........................................ 45

XV.    REIMBURSEMENT OF FUTURE RESPONSE COSTS .................... 46

XVI.   INDEMNIFICATION AND INSURANCE .............................. 50

XVII.  FORCE MAJEURE .............................................. 52

XVIII. DISPUTE RESOLUTION ......................................... 55

XIX.   STIPULATED PENALTIES ....................................... 59

XX.    COVENANTS NOT TO SUE BY PLAINTIFF .......................... 63

XXI.   COVENANTS BY SETTLING DEFENDANTS ........................... 66

XXII.  EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION ............. 68

XXIII. ACCESS TO INFORMATION ...................................... 70

XXIV.  RETENTION OF RECORDS ....................................... 71

XXV.   NOTICES AND SUBMISSIONS .................................... 73

XXVI.  EFFECTIVE DATE ............................................. 75

XXVII. RETENTION OF JURISDICTION .................................. 75

XXVIII. APPENDICES ................................................ 75

XXIX.  COMMUNITY RELATIONS ........................................ 76

XXX.   MODIFICATION ............................................... 76

XXXI.  LODGING AND OPPORTUNITY FOR PUBLIC COMMENT ................. 77

XXXII. SIGNATORIES/SERVICE ........................................ 78

XXXIII.  RELATIONSHIP BETWEEN CONSENT ORDER AND CONSENT DECREE .
.......................................................... 78

XXXIV. STIPULATION AND DISMISSAL OF THE UNITED STATES' CLAIMS .... 79

C.    In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C.

§ 9621(f)(1)(F), EPA notified the Commonwealth of Pennsylvania (the "State") on December 30,

1997 of negotiations with potentially responsible parties regarding the implementation of the

remedial design and remedial action for the Site, and EPA has provided the State with an

opportunity to participate in such negotiations and be a party to this Consent Decree.

D.    In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA

notified the United States Department of the Interior on August 24, 1992 and January 31, 1997,

and the National Oceanic and Atmospheric Administration ("NOAA") on August 24, 1992, of

negotiations with potentially responsible parties regarding the release of hazardous substances

that may have resulted in injury to the natural resources under Federal trusteeship and

encouraged the trustee(s) to participate in the negotiation of this Consent Decree.

E.    The defendants that have entered into this Consent Decree ("Settling Defendants")

do not admit any liability to the Plaintiff arising out of the transactions or occurrences alleged in

the complaint, nor do they acknowledge that the release or threatened release of hazardous

substances at or from the Site constitutes an imminent or substantial endangerment to the public

health or welfare or the environment.

F.    Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the

National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the

Federal Register on March 31, 1989, 54 Fed. Reg. 13296.

G.    EPA conducted removal action at the Site beginning in the year 1992 and continuing

to the present pursuant to Section 104 of CERCLA, 42 U.S.C. Section 9604. The removal action

included, in general: (1) the removal of buried drums; (2) the construction, operation and

maintenance of groundwater interception wells and a groundwater interception trench; (3) the

construction of a groundwater treatment plant on the Site; and (4) the installation, operation and

maintenance of residential well filtration systems.

     H.     In response to a release or a substantial threat of a release of a hazardous

substance(s) at or from the Site, EPA commenced on December 5, 1989, a Remedial

Investigation and Feasibility Study ("RI/FS") for the Site pursuant to 40 C.F.R. § 300.430.

     I.     EPA completed an Ecological Risk Assessment in September 1995. The Baseline

Risk Human Health Risk Assessment was also completed in September 1995. Based on these

documents and the Remedial Investigation, a Feasibility Study ("FS") was prepared in July 1997,

describing the remedial action objectives and comparing cleanup alternatives for the Site.

     J.     Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the

completion of the FS and of the proposed plan for remedial action on January 5, 1998, in a major

local newspaper of general circulation. EPA provided an opportunity for written and oral

comments from the public on the proposed plan for remedial action. A copy of the transcript of

the public meeting is available to the public as part of the administrative record upon which the

Regional Administrator based the selection of the response action.

     K.     The decision by EPA on the remedial action to be implemented at the Site is

embodied in a final Record of Decision ("ROD"), executed on November 18, 1998, on which the

State has given its concurrence. The ROD includes EPA's explanation for any significant

differences between the final plan and the proposed plan as well as a responsiveness summary to

the public comments. Notice of the final plan was published in accordance with Section 117(b)

of CERCLA.

L.    Subsequent to the issuance of the ROD, EPA determined to implement the remedial

design ("RD") and remedial action ("RA") described in the ROD in two operable units ("OUs").

OU-1 (as defined below), in general, will address Remedy Components 3, 4, 5, 6, and 7 outlined

in the ROD Declaration (Appendix A). These include:

> Remedy Component 3- Groundwater Extraction, Metals Precipitation, and Air
> Stripping
> Remedy Component 4- Installation of Additional Monitoring Wells
> Remedy Component 5- Institutional Controls and Monitoring
> Remedy Component 6- Residential Water Treatment
> Remedy Component 7- Phytoremediation

OU-2, in general, will address Remedy Components 1, 2, and 5 outlined in the ROD Declaration

(Appendix A) and any other work described in the ROD that was not addressed by this Consent

Decree as part of OU-1. These include:

> Remedy Component 1- Soil Aeration and Treatment of VOC Hot Spots
> Remedy Component 2- Excavation and Offsite Disposal of Buried Drums
> Remedy Component 5- Institutional Controls and Monitoring

M.    EPA has commenced the RD for OU-1. Under the terms of this Consent Decree, the

Settling Defendants will assume responsibility for the performance of the RD and the RA for all

OU-1 activities (together, the "Work"), as defined below.

N.    Based on the information presently available to EPA, EPA believes that the Work

will be properly and promptly conducted by the Settling Defendants if conducted in accordance

with the requirements of this Consent Decree and its appendices.

O.    Solely for the purposes of Section 113(j) of CERCLA, the Remedial Action selected

by the ROD and the Work to be performed by the Settling Defendants shall constitute a response

action taken or ordered by the President.

P.    The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II. JURISDICTION

1.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b). This Court also has personal jurisdiction over the Settling Parties. Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District. The Settling Defendants shall not challenge the terms of this Consent Decree, and the Settling Defendants shall not challenge this Court's jurisdiction to enter and enforce this Consent Decree.

## III. PARTIES BOUND

2.    This Consent Decree applies to and is binding upon the United States and upon Settling Defendants and their successors and assigns. Any change in ownership or corporate or other legal status of a Settling Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Settling Defendant's responsibilities under this Consent Decree.

3.    Settling Defendants shall provide a copy of this Consent Decree to each contractor hired to perform the Work (as defined below) required by this Consent Decree and to each person representing any Settling Defendant with respect to the Site or the Work and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree. Settling Defendants or their contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree. Settling Defendants shall nonetheless be responsible for ensuring that their contractors and subcontractors perform the Work contemplated herein in accordance with this Consent Decree. With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with the Settling Defendants within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV. DEFINITIONS

4.    Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply:

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601 et seq.

"Institutional Controls" shall mean land and/or water use restrictions including, but not limited to, restrictions in the form of contractual agreements, restrictive easements/covenants that run with the land, and governmental controls.

"Interest" shall mean interest at the rate specified for interest on investments of the Hazardous Substance Superfund established under Subchapter A of Chapter 98 of Title 26 of the U.S. Code, compounded on October 1 of each year, in accordance with 42 U.S.C. § 9607(a).

"Municipal Solid Waste" shall mean all waste materials generated by households, including single and multi-family residences, and hotels and motels. The term also includes waste materials generated by commercial, institutional, and industrial sources, to the extent such wastes (A) are essentially the same as waste normally generated by households, or (B) are collected and disposed of with other municipal solid waste or sewage sludge as part of normal municipal solid waste collection services and, regardless of when generated, would be considered conditionally exempt small quantity generator waste under regulations issued pursuant to Section 3001(d)(4) of the Solid Waste Disposal Act (42 U.S.C. 6921(d)(4)). Examples of Municipal Solid Waste include food and yard waste, paper, clothing, appliances, consumer product packaging, disposable diapers, office supplies, cosmetics, glass and metal food containers, elementary or secondary school science laboratory waste, and household hazardous waste. The term does not include combustion ash generated by resource recovery facilities or municipal incinerators, or waste from manufacturing or processing (including pollution control) operations not essentially the same as waste normally generated by households.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42

U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"Operation and Maintenance" or "O & M" shall mean all activities required to maintain the effectiveness of the RA for all OU-1 activities as required under the Operation and Maintenance Plan approved or developed by EPA pursuant to this Consent Decree.

"OU-1" or "OU-1 Activities" shall mean all of those activities described in the ROD that address Remedy Components 3, 4, 5, 6, and 7 outlined in the ROD Declaration (Appendix A). These include, but are not limited to:

> Remedy Component 3- Groundwater Extraction, Metals Precipitation, and Air Stripping
> Remedy Component 4- Installation of Additional Monitoring Wells
> Remedy Component 5- Institutional Controls and Monitoring
> Remedy Component 6- Residential Water Treatment
> Remedy Component 7- Phytoremediation

"OU-2" or "OU-2 Activities" shall mean those activities described in the ROD that address Remedy Components 1, 2, and 5 as described in the ROD Declaration (Appendix A), and any other work described in the ROD that was not addressed by this Consent Decree as part of OU-1. OU-2 or OU-2 Activities include, but are not limited to:

> Remedy Component 1- Soil Aeration and Treatment of VOC Hot Spots
> Remedy Component 2- Excavation and Offsite Disposal of Buried Drums
> Remedy Component 5- Institutional Controls and Monitoring

"Owner, Operator, or Lessee of Residential Property" shall mean a person who owns, operates, manages, or leases Residential Property and who uses or allows the use of the Residential Property exclusively for residential purposes.

"PADEP" shall mean the Pennsylvania Department of Environmental Protection and any successor departments or agencies of the State.

"Paragraph" shall mean a portion of this Consent Decree identified by an arabic numeral or an upper case letter.

"Parties" shall mean the United States and the Settling Defendants.

"Performance Standards" shall mean the cleanup standards and other measures of achievement for all OU-1 Activities as defined herein, and as set forth on pages 30-39 of the ROD attached hereto as Appendix A and those that are developed by the Settling Defendants and approved by EPA in writing during Remedial Design.

"Plaintiff" shall mean the United States.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 et seq. (also known as the Resource Conservation and Recovery Act).

"Record of Decision" or "ROD" shall mean the EPA Record of Decision relating to the Site signed on November 18, 1998 by the Director of the Region III Hazardous Site Cleanup Division, or his/her delegate, and all attachments thereto. The ROD is attached as Appendix A.

"Remedial Action" or "RA" shall mean those activities, except for Remedial Design and Operation and Maintenance, to be undertaken by the Settling Defendants to implement all OU-1 Activities as defined herein, in accordance with the final Remedial Design and Remedial Action Work Plans and other plans approved by EPA.

"Remedial Action Work Plan" shall mean the document developed pursuant to Paragraph 11 of this Consent Decree and approved by EPA, and any amendments thereto.

"Remedial Design" or "RD" shall mean those activities to be undertaken by the Settling Defendants to develop the final plans and specifications for the Remedial Action with respect to

all OU-1 Activities as defined herein, pursuant to the Remedial Design Work Plan and other

plans approved by EPA.

"Remedial Design Work Plan" shall mean the document(s) developed pursuant to Paragraph

11 of this Consent Decree and approved by EPA, and any amendments thereto.

"Residential Property" shall mean single or multi-family residences, including accessory

land, buildings, or improvements incidental to such dwellings, which are exclusively for

residential use.

"Section" shall mean a portion of this Consent Decree identified by a roman numeral.

"Settling Defendants" shall mean those Parties identified in Appendix B (Settling

Defendants).

"Sewage Sludge" means solid, semisolid, or liquid residue removed during the treatment of

municipal waste water, domestic sewage, or other waste water at or by publicly owned or

federally owned treatment works.

"Site" shall mean the Boarhead Farms Superfund Site, encompassing approximately 120

acres, located on Lonely Cottage Road in Upper Black Eddy, Bridgeton Township, Bucks

County, Pennsylvania, and depicted in the ROD.

"Small Business" shall mean any business entity that employs no more than 100 individuals

and is a "small business concern" as defined under the Small Business Act (15 U.S.C. §§ 631 et

seq.).

"Small Nonprofit Organization" shall mean any organization that does not distribute any

part of its income or profit to its members, directors, or officers, employs no more than 100 paid

individuals at the involved chapter, office, or department, and was recognized as a nonprofit

organization under Section 501(c)(3) of the Internal Revenue Code of 1986.

"State" or "Commonwealth" shall mean the Commonwealth of Pennsylvania.

"Supervising Contractor" shall mean the principal contractor retained by the Settling

Defendants to supervise and direct the implementation of the Work under this Consent Decree.

"United States" shall mean the United States of America, including its agencies,

departments, and instrumentalities.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of

CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33), 42

U.S.C. § 9601(33); and (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C.

§ 6903(27).

"Work" shall mean all activities Settling Defendants are required to perform under this

Consent Decree to perform the RD and RA for all OU-1 Activities, except those required by

Section XXIV (Retention of Records).


## V. **GENERAL PROVISIONS**

5.    Objectives of the Parties

The objectives of the Parties in entering into this Consent Decree are to protect public health

or welfare and the environment at the Site by the design and implementation of response actions

at the Site by the Settling Defendants, to reimburse the Future Response Costs of the Plaintiff,

and to resolve certain claims of Plaintiff against Settling Defendants as provided in this Consent

Decree. The execution by the Settling Defendants of this Consent Decree is not an admission by

them of liability with respect to any issue dealt with in this Consent Decree nor is it an admission

or denial of the allegations set forth in the Complaint filed by Plaintiff herein. This Consent

Decree shall not be admissible as evidence in any proceeding other than one to enforce the terms

of this Consent Decree.

      6.     <u>Commitments by Settling Defendants</u>

      a.     Settling Defendants shall finance and perform the Work as specified

in Section VI of this Consent Decree. Settling Defendants shall also reimburse the United States

for Future Response Costs as provided in this Consent Decree.

      b.     The obligations of Settling Defendants to finance and perform the

Work and to pay amounts owed the United States under this Consent Decree are joint and

several. In the event of the insolvency or other failure of any one or more Settling Defendants to

implement the requirements of this Consent Decree, the remaining Settling Defendants shall

complete all such requirements.

      c.     In the event that any of the Settling Defendants files for bankruptcy or

is placed involuntarily in bankruptcy proceedings, such Settling Defendant shall notify the

United States within three (3) days of such filing.

      7.     <u>Compliance With Applicable Law</u>

All activities undertaken by Settling Defendants pursuant to this Consent Decree shall be

performed in accordance with the requirements of all applicable federal and state laws and

regulations. Settling Defendants must also comply with all applicable or relevant and

appropriate requirements of all federal and state environmental laws as set forth in the ROD. The

activities conducted pursuant to this Consent Decree, if approved by EPA, shall be considered to

be consistent with the NCP.

8.    Permits

a.    As provided in Section 121(e) of CERCLA and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work). Where any portion of the Work that is not on-site requires a federal or state permit or approval, Settling Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

b.    The Settling Defendants may seek relief under the provisions of Section XVII (Force Majeure) of this Consent Decree for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit required for the Work.

c.    This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal, state or local statute, regulation, or ordinance.

## VI. PERFORMANCE OF THE WORK BY SETTLING DEFENDANTS

9.    Selection of Contractors.

a.    Supervising Contractor.

ii.    All aspects of the Work to be performed by Settling Defendants pursuant to Sections VI (Performance of the Work by Settling Defendants), VII (Quality Assurance, Sampling, and Data Analysis), and XIV (Emergency Response) of this Consent

Decree shall be under the direction and supervision of the Supervising Contractor, the selection

of which shall be subject to acceptance or disapproval by EPA after a reasonable opportunity for

review and comment by the State. With the written approval of EPA, the Supervising Contractor

may be the same as the Project Coordinator designated by the Settling Defendants pursuant to

Paragraph 35 of Section XI (Project Coordinators). Within ten (10) days after the lodging of

this Consent Decree, Settling Defendants shall notify EPA in writing of the name, title, and

qualifications of any contractor proposed to be the Supervising Contractor. EPA will issue a

notice of disapproval or an authorization for the Settling Defendants to proceed. If at any time

thereafter, Settling Defendants propose to change a Supervising Contractor, Settling Defendants

shall give such notice to EPA and must obtain an authorization to proceed from EPA, after a

reasonable opportunity for review and comment by the State, before the new Supervising

Contractor performs, directs, or supervises any Work under this Consent Decree.

        ii.     If EPA disapproves the selection of a proposed Supervising

Contractor, EPA will notify Settling Defendants in writing. In such event, Settling Defendants

shall submit to EPA a list of at least three contractors, including the qualifications of each

contractor, that would be acceptable to them within thirty (30) days of receipt of EPA's notice of

disapproval of the Settling Defendants' selection of a contractor. EPA will provide written

notice of the names of any contractor(s) whose selection it disapproves and an authorization for

the Settling Defendants to proceed with respect to any of the other contractors. Settling

Defendants may select any contractor whose selection was not disapproved and shall notify EPA

of the name of the contractor selected within twenty-one (21) days of EPA's authorization for the

Settling Defendants to proceed.

iii.    If EPA fails to provide written notice of its authorization for the

Settling Defendants to proceed, or written notice of disapproval as provided in this Paragraph

and this failure prevents the Settling Defendants from meeting one or more deadlines in a plan

approved by the EPA pursuant to this Consent Decree, Settling Defendants may seek relief under

the provisions of Section XVII (Force Majeure) of this Consent Decree.

      b.    <u>Other Contractors and Subcontractors.</u>

      The Settling Defendants shall submit to EPA for acceptance by EPA the

names and qualifications of any additional contractors and subcontractors they propose to use to

satisfy any requirement of this Consent Decree before such contractor or subcontractor performs

any Work. If EPA does not respond with a notice accepting or disapproving the proposal for

additional contractors and subcontractors within fourteen (14) days of receipt by EPA of Settling

Defendants' selections, the proposal for additional contractors and subcontractors shall be

deemed accepted. In the event EPA disapproves any proposed contractor or subcontractor,

Settling Defendants shall submit to EPA a list of at least three contractors or subcontractors,

including the qualifications of each, that would be acceptable to them within ten (10) days of

receipt of EPA's notice. EPA will provide written notice of the names of any contractor(s) or

subcontractor(s) whose selection it disapproves and an authorization for the Settling Defendants

to proceed with respect to any of the other contractors or subcontractors. Settling Defendants

may select any contractor or subcontractor from that list and shall notify EPA of the name of the

contractor or subcontractor selected within twenty-one (21) days of EPA's written notice.

10.    Remedial Design/Remedial Action.

a.    Within thirty (30) days after EPA's issuance of an authorization for the Settling Defendants to proceed pursuant to Paragraph 9, Settling Defendants shall submit to EPA a work plan for the design of the Remedial Action at the Site ("Remedial Design Work Plan" or "RD Work Plan"). The RD Work Plan shall be prepared by the individual(s) and/or entity(ies) responsible for completion of the Remedial Design, except to the extent such persons have been disapproved by EPA. The Remedial Design Work Plan shall provide for design of the remedy set forth in the ROD with respect to all OU-1 Activities and for achievement of the Performance Standards and other requirements for all OU-1 Activities set forth in the ROD and this Consent Decree. Upon its approval by EPA, the Remedial Design Work Plan shall be incorporated into and become enforceable under this Consent Decree. The Settling Defendants shall also submit to EPA and the State, at the time the Remedial Design Work plan is submitted, a Health and Safety Plan for field design activities which conforms to the applicable Occupational Safety and Health Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.

b.    The Remedial Design Work Plan shall include plans, schedules, and methodologies for implementation of all remedial design and pre-design tasks for all OU-1 Activities and shall, unless EPA agrees otherwise in writing, include, at a minimum:

1.    a Site Management Plan;

2.    a Sampling and Analysis Plan, containing:

a.    a Field Sampling Plan; and

b.    a Quality Assurance Project Plan (QAPP);

3.　a Remedial Design Contingency Plan;

4.　a Treatability Study Work Plan which includes, at a minimum, plans and schedules for the preparation and submission of a Treatability Study Evaluation Report;

5.　plans and schedules for the preparation and submission of a Preliminary Design Submittal (the preliminary design begins with the initial design and ends with the completion of approximately 30% of the design effort) containing, at a minimum:

　　a.　a Design Criteria Report, including:

　　　1. project description;

　　　2. design requirements and provisions;

　　　3. preliminary process flow diagrams;

　　　4. operation & maintenance requirements;

　　b.　a Basis of Design Report, including:

　　　1. justification of design assumptions;

　　　2. a project delivery strategy;

　　　3. remedial action permits plan for off-site permits;

　　　4. preliminary easement/access requirements;

　　c.　Preliminary Drawings and Specifications, including:

　　　1. outline of general specifications;

　　　2. preliminary schematics and drawings;

3.  chemical and geotechnical data (including data from pre-

    design activities);

d.  a value engineering screen; and

e.  preliminary Remedial Action schedule.

6.  plans and schedules for the preparation and submission of an

    intermediate design submittal which shall be submitted at

    approximately 60% percent of the design effort and shall address all

    of EPA's comments to the preliminary design and, at a minimum,

    additionally include:

    a.  a revised Design Criteria Report, if necessary;

    b.  a revised Basis of Design Report, if necessary;

    c.  any value engineering study results;

    d.  a revised Remedial Action schedule;

    e.  a preliminary Remedial Action contingency plan;

    f.  a preliminary Remedial Action Health and Safety Plan

        ("HASP") for EPA acceptance;

    g.  a preliminary Remedial Action waste management plan; and

    h.  a preliminary Remedial Action Sampling and Analysis Plan.

7.  plans and schedules for the preparation and submission of a pre-final

    design submittal which shall be submitted at approximately 90% of

    the design effort and shall address all of EPA's comments to the

    intermediate design, and, at a minimum, additionally include:

a.    a preliminary Operation & Maintenance Plan;

b.    a preliminary Construction Quality Assurance Plan ("CQAP")

(the CQAP, which shall detail the approach to quality

assurance during construction activities at the Site, shall

specify a quality assurance official ("QA Official"),

independent of the Supervising Contractor, to conduct a

quality assurance program during the construction phase of the

project);

c.    a preliminary Remedial Action decontamination plan;

d.    a draft final Remedial Action schedule;

e.    a draft final Remedial Action contingency plan; and

f.    a draft final Remedial Action HASP for EPA acceptance.

8.    plans and schedules for the preparation and submission of a final

design submittal which shall be submitted at 100% of the design

effort and shall address all of EPA's comments to the pre-final design,

and, at a minimum, additionally include:

a.    a final Remedial Action schedule;

b.    a final Remedial Action contingency plan;

c.    a final Remedial Action HASP for EPA acceptance;

d.    a final Remedial Action waste management plan;

      e.    a preliminary Remedial Action decontamination plan and a schedule for the submission of the final Remedial Action decontamination plan;

      f.    a final Design Criteria Report;

      g.    a final Remedial Action Sampling and Analysis Plan (directed at measuring progress towards meeting the Performance Standards);

      h.    a final Basis of Design Report;

      i.    final Drawings and Specifications;

      j.    a revised Operation & Maintenance Plan and a schedule for submission of the final Operation & Maintenance Plan;

      k.    a final Construction Quality Assurance Plan;

      l.    a final Remedial Action decontamination plan; and

      m.    a final project delivery strategy.

    9. a Remedial Design schedule.

    c.    Upon approval of the Remedial Design Work Plan by EPA, after a reasonable opportunity for review and comment by the State, and submittal of the Health and Safety Plan for all field activities to EPA and the State, Settling Defendants shall implement the Remedial Design Work Plan in accordance with the schedules and methodologies contained therein. The Settling Defendants shall submit to EPA all plans, submittals, and other deliverables required under the approved Remedial Design Work Plan in accordance with the approved schedule therein for review and approval pursuant to Section X (EPA Approval of Plans and Other

Submissions). Unless otherwise directed by EPA, Settling Defendants shall not commence further Remedial Design field activities at the Site prior to approval of the Remedial Design Work Plan.

      d.    Upon approval, approval with conditions, or modification by EPA, as provided in Section X (EPA Approval of Plans and Other Submissions), of all components of the final design submittal, the final design submittal shall serve as the Remedial Action Work Plan and shall be enforceable under this Consent Decree. The Settling Defendants shall implement the activities required under the Remedial Action Work Plan in accordance with the schedules and methodologies contained therein.

      e.    The Settling Defendants shall submit all plans, submittals, or other deliverables required under the Remedial Action Work Plan in accordance with the approved schedule for review and approval pursuant to Section X (EPA Approval of Plans and Other Submissions). Unless otherwise directed by EPA or required under the Remedial Design Work Plan, the Settling Defendants shall not commence physical activities at the Site prior to the date for commencement set forth in the approved schedule in the Remedial Action Work Plan.

    11.    <u>Resident Engineer</u>. Following EPA approval, approval with conditions, or modification by EPA, as provided in Section X (EPA Approval of Plans and Other Submissions), of all components of the final design submittal, and prior to commencement of any on-Site Work under the Remedial Action Work Plan, the Settling Defendants shall submit to EPA the name and qualifications of a Resident Engineer to be present at the Site during construction to ensure that the Work is performed in accordance with the approved Remedial Action Work Plan. The Resident Engineer shall be familiar with all aspects of the Remedial

Design approved by EPA. EPA retains the right to disapprove the use of any Resident Engineer

proposed by Settling Defendants. In the event EPA disapproves the use of any proposed

Resident Engineer, Settling Defendants shall submit to EPA a list of at least three replacements,

including the qualifications of each, who would be acceptable to them within ten (10) days of

receipt of EPA's notice. EPA will provide written notice of the names of any replacements

whose use it would accept. Settling Defendants may select any replacement from the EPA

notice and shall notify EPA of the name of the replacement selected within five (5) days of

EPA's written notice. Settling Defendants shall ensure that the Resident Engineer performs on-

Site inspections as necessary to ensure compliance with the approved Remedial Action Work

Plan and that the results of such inspections are promptly provided to Settling Defendants, EPA,

and the State. The Resident Engineer may act as the QA Official.

12.    The Settling Defendants shall continue to implement the Remedial Action and O &

M for all OU-1 Activities until the Performance Standards for all OU-1 Activities are achieved

and for so long thereafter as is otherwise required under this Consent Decree.

13.    Modification of the Work.

a.    If EPA determines, or agrees in writing that modification of the Work is

necessary to achieve and maintain the Performance Standards or to carry out and maintain the

effectiveness of the remedy set forth in the ROD with respect to all OU-1 Activities, EPA may

(1) require that such modification be incorporated into the Remedial Design Work Plan,

Remedial Action Work Plan, Operation and Maintenance Plan, and/or any other plan relating to

such Work, and/or (2) require that Settling Defendants submit a plan for EPA approval which

incorporates such modification to the Work and implement such approved plan. Provided,

however, that a modification may be required pursuant to this Paragraph only to the extent that it

is consistent with the scope of the remedy selected in the ROD with respect to all OU-1

Activities.

      b.    For the purposes of this Paragraph 13 and Paragraph 42 only, the "scope of

the remedy selected in the ROD" means:

        1.    tasks employing a technology or combination of technologies discussed in Section X (Selected Remedy and Performance Standards) of the ROD to achieve and maintain the objectives described in the ROD for all OU-1 Activities.

        2.    tasks associated with monitoring of Site conditions and the effectiveness of the Remedial Action with respect to all OU-1 Activities.

        3.    implementation of institutional controls for all OU-1 Activities, as defined herein.

      c.    If Settling Defendants object to any modification determined by EPA to be

necessary pursuant to this Paragraph, they may seek dispute resolution pursuant to Section XVIII

(Dispute Resolution), Paragraph 58 (record review). The Remedial Design Work Plan, Remedial

Action Work Plan, Operation and Maintenance Plan, and/or related work plans shall be modified

in accordance with final resolution of the dispute.

      d.    Settling Defendants shall implement any work required by any modifications

incorporated in the Remedial Design Work Plan, Remedial Action Work Plan, Operation and

Maintenance Plan, and/or in work plans developed in accordance with this Paragraph.

      e.    Nothing in this Paragraph shall be construed to limit EPA's authority to

require performance of further response actions as otherwise provided in this Consent Decree.

f.    EPA and the Settling Defendants' Project Coordinator shall meet to discuss the oversight activities that EPA intends to perform during the next year. At that time, EPA may evaluate the Site for reduced oversight in accordance with OSWER Directive 9200.4-15, "Reducing Oversight at Superfund Sites with Cooperative and Capable Parties," dated July 31, 1996; provided that the decision by EPA to reduce or not to reduce oversight activities, or to increase oversight activities, shall be in EPA's sole unreviewable discretion. Thereafter, EPA and the Settling Defendants' Project Coordinator shall meet annually to discuss the oversight activities that the EPA intends to perform during the next year.

14.    Settling Defendants acknowledge and agree that nothing in this Consent Decree or the Remedial Design or Remedial Action Work Plans constitutes a warranty or representation of any kind by Plaintiff that compliance with the work requirements set forth in the Work Plans will achieve the Performance Standards.

15.    Settling Defendants shall, prior to any off-Site shipment of Waste Material from the Site to an out-of-state waste management facility, provide written notification to the appropriate state environmental official in the receiving facility's state and to the EPA Project Coordinator of such shipment of Waste Material. However, this notification requirement shall not apply to any off-Site shipments when the total volume of all such shipments will not exceed ten (10) cubic yards.

a. The Settling Defendants shall include in the written notification the following information, where available:

1.    the name and location of the facility to which the Waste Material are to be shipped;

2.    the type and quantity of the Waste Material to be shipped;

3.    the expected schedule for the shipment of the Waste Material; and

4.    the method of transportation.

The Settling Defendants shall notify the state in which the planned receiving facility is located of

major changes in the shipment plan, such as a decision to ship the Waste Material to another

facility within the same state, or to a facility in another state.

b. The identity of the receiving facility and state will be determined by the Settling

Defendants following the award of the contract for Remedial Action construction. The Settling

Defendants shall provide the information required by Paragraph 15.a as soon as practicable after

the award of the contract but in no case less than seven (7) days before the Waste Material is

actually shipped.

# VII. QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS

16.    While conducting all sample collection and analysis activities required by this

Consent Decree, the Settling Defendants shall implement quality assurance, quality control, and

chain of custody procedures in accordance with "EPA Requirements for Quality Assurance

Project Plans for Environmental Data Operation," (US EPA Quality Assurance Management

Staff: August 1994) (EPA QA/R-5); "EPA NEIC Policies and Procedures Manual," (May 1986)

(EPA 330/978-001-R); National Functional Guidelines for Inorganic Data Review (EPA 540/R-

94/013) and Modifications to the National Functional Guidelines for Inorganic Data Review

(EPA Region III: April 1993); National Functional Guidelines for Organic Data Review (EPA

540/R-94/012) and Modifications to the National Functional Guidelines for Organic Data

Review (EPA Region III: September 1994); "Region III Innovative Approaches to Data

Validation," (EPA Region III: September 1994); "Data Quality Objectives Process for

Superfund," (EPA 540/R-93/071: September 1994); and subsequent amendments to such

guidelines upon notification by EPA to Settling Defendants of such amendment.   Amended

guidelines shall apply only to procedures conducted after such notification.  Prior to the

commencement of any monitoring project under this Consent Decree, Settling Defendants shall

submit to EPA for approval, after a reasonable opportunity for review and comment by the State,

a Quality Assurance Project Plan ("QAPP") for the Work that is consistent with the NCP and the

guidance documents cited above.  If relevant to the proceeding, the Parties agree that validated

sampling data generated in accordance with the QAPP(s) and reviewed and approved by EPA

shall be admissible as evidence, without objection, in any proceeding under this Decree.  Settling

Defendants shall ensure that EPA personnel and its authorized representatives are allowed access

at reasonable times to all laboratories utilized by Settling Defendants in implementing this

Consent Decree.  In addition, Settling Defendants shall ensure that such laboratories shall

analyze all samples submitted by EPA pursuant to the QAPP for quality assurance monitoring.

Settling Defendants shall ensure that the laboratories they utilize for the analysis of samples

taken pursuant to this Decree perform all analyses according to accepted EPA methods.  Settling

Defendants shall submit to EPA the selected laboratory's(ies') Quality Assurance Program Plan

(QAPP) and their qualifications, which shall include, at a minimum, previous certifications,

Performance Evaluation (PE) results, equipment lists and personnel resumes.  Settling

Defendants shall ensure that all field methodologies utilized in collecting samples for subsequent

analysis pursuant to this Decree will be conducted in accordance with the procedures set forth in

the QAPP approved by EPA.  At the request of EPA, Settling Defendants shall conduct one or

more audits of the selected laboratory(ies) to verify analytical capability and compliance with the

QAPP. Auditors shall conduct lab audits during the time the laboratory(ies) is analyzing

samples collected pursuant to this Consent Decree. The lab audit shall be conducted according

to procedures available from the QA Branch. Audit reports shall be submitted to the EPA

Project Coordinator within fifteen (15) days of completion of the audit. The Settling Defendants

shall report serious deficiencies, including all those which adversely impact data quality,

reliability or accuracy, and take action to correct such deficiencies within twenty-four (24) hours

of the time the Settling Defendants knew or should have known of the deficiency.

17.    Upon request, the Settling Defendants shall allow split or duplicate samples to be

taken by EPA or its authorized representatives. Settling Defendants shall notify EPA not less

than seven (7) working days in advance of any sample collection activity unless shorter notice is

agreed to by EPA. In addition, EPA shall have the right to take any additional samples that EPA

deems necessary. Upon request, EPA shall allow the Settling Defendants to take split or

duplicate samples of any samples it takes as part of the Plaintiff's oversight of the Settling

Defendants' implementation of the Work.

18.    Settling Defendants shall submit to EPA and the State three (3) copies each as well

as one (1) computer format copy of the results of all sampling and/or tests or other data obtained

or generated by or on behalf of Settling Defendants with respect to the Site and/or the

implementation of this Consent Decree unless EPA agrees otherwise.

19.    Notwithstanding any provision of this Consent Decree, the United States hereby

retains all of its information gathering and inspection authorities and rights, including

enforcement actions related thereto, under CERCLA, RCRA, and any other applicable statutes or

regulations.

## VIII. ACCESS AND INSTITUTIONAL CONTROLS

20.    *Property Owned or Controlled by Settling Defendants.* If the Site, or any other property where access and/or land/water use restrictions are needed to implement this Consent Decree, is owned or controlled by any of the Settling Defendants, such Settling Defendants shall:

a.    Commencing on the date of lodging of this Consent Decree, provide the United States and its representatives, including EPA and its contractors, with access at all reasonable times to the Site, and such other property, for the purpose of conducting any activity related to this Consent Decree including, but not limited to, the following activities:

I. Monitoring the Work;

ii. Verifying any data or information submitted to the United States;

iii. Conducting investigations relating to contamination at or near the Site;

iv. Obtaining samples;

v. Assessing the need for, planning, or implementing additional response actions at or near the Site;

vi. Implementing the Work pursuant to the conditions set forth in Paragraph 74 of this Consent Decree;

vii. Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendants or their agents, consistent with Section XXIII (Access to Information);

viii. Assessing Settling Defendants' compliance with this Consent Decree; and

ix. Determining whether the Site or other property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by Paragraph 21 of this Consent Decree or by the Institutional Controls established pursuant to this Consent Decree.

b. Commencing on the date of lodging of this Consent Decree, refrain from using the Site, or such other property, in any manner that would interfere with or adversely affect the integrity or protectiveness of the remedial measures to be implemented pursuant to this Consent Decree. Such restrictions include, but are not limited to, measures which shall protect the integrity of the interceptor trench, groundwater treatment system, soil aeration treatment area, phytoremediation area, and previously installed soil cover by, at a minimum, preventing construction, excavation, and regrading activities in such areas except as approved by EPA.

c. If EPA so requests, execute and record in the Recorder's Office or Registry of Deeds or other appropriate land records office of Bucks County, Commonwealth of Pennsylvania, an easement, running with the land, that (I) grants a right of access for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 20(a) of this Consent Decree, and (ii) grants the right to enforce the land/water use restrictions listed in Paragraph 20(b) of this Consent Decree, or other restrictions that EPA determines are necessary to implement, ensure non-interference with, or ensure the protectiveness of the remedial measures to be performed pursuant to this Consent Decree. Such Settling Defendants shall grant the access rights and rights to enforce the land/water restrictions to one or more of the following persons, as determined by EPA: (I) the United States, on behalf of EPA and its representatives, (ii) the State and its representatives, (iii) the other Settling Defendants and their representatives, and/or (iv) other appropriate grantees. Such Settling

Defendants shall, within forty-five (45) days of EPA's request, submit to EPA for review and

approval with respect to all such property:

> I.     Draft easements, in substantially the form attached hereto as
>        Appendix C, that are enforceable under the laws of the
>        Commonwealth of Pennsylvania, free and clear of all prior liens and
>        encumbrances (except as approved by EPA), and acceptable under the
>        Attorney General's Title Regulations promulgated pursuant to 40
>        U.S.C. § 255; and
>
> ii.    Current title commitments or reports prepared in accordance with the
>        U.S. Department of Justice Standards for the Preparation of Title
>        Evidence in Land Acquisitions by the United States (1970) (the
>        "Standards").

Within fifteen (15) days of EPA's approval and acceptance of the easements, such Settling

Defendants shall update the title searches and, if it is determined that nothing has occurred since

the effective date of the commitments or reports to affect the titles adversely, record the

easements with the Recorder's Office or Registry of Deeds or other appropriate office of Bucks

County, Pennsylvania. Within thirty (30) days of recording the easements, such Settling

Defendants shall provide EPA with final title evidence acceptable under the Standards, and a

certified copy of the original recorded easements showing the clerk's recording stamps.

d.     For purposes of subparagraph c. of this Paragraph 20 only, Settling

Defendants shall not be deemed to "control" the property by virtue of their presence on the

property to conduct activities under this Consent Decree.

21.    *Property Not Owned or Controlled by Settling Defendants.* If the Site, or any other

property where access and/or land/water use restrictions are needed to implement this Consent

Decree, is owned or controlled by persons other than any of the Settling Defendants, Settling

Defendants shall use best efforts to secure from such persons:

a.      Agreements to provide access thereto for Settling Defendants. as well as for the United States and its representatives, including EPA and its contractors, for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 20(a) of this Consent Decree;

b.      An agreement, enforceable by the Settling Defendants and the United States, to abide by the obligations and restrictions established by Paragraph 20(b) of this Consent Decree, or that are otherwise necessary to implement, ensure non-interference with, or ensure the protectiveness of the remedial measures to be implemented pursuant to this Consent Decree; and

c.      If EPA so requests, the execution and recordation in the Recorder's Office or Registry of Deeds or other appropriate land records office of Bucks County, Commonwealth of Pennsylvania, of an easement, running with the land, that (I) grants a right of access for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 20(a) of this Consent Decree, and (ii) grants the right to enforce the land/water use restrictions listed in Paragraph 20(b) of this Consent Decree, or other restrictions that EPA determines are necessary to implement, ensure non-interference with, or ensure the protectiveness of the remedial measures to be performed pursuant to this Consent Decree. The access rights and/or rights to enforce the land/water restrictions shall be granted to one or more of the following persons, as determined by EPA: (I) the United States, on behalf of EPA and its representatives, (ii) the State and its representatives, (iii) the other Settling Defendants and their representatives, and/or (iv) other appropriate grantees. Settling Defendants shall, within forty-five (45) days of EPA's request, submit to EPA for review and approval with respect to all such property:

I.    Draft easements, in substantially the form attached hereto as Appendix C, that are enforceable under the laws of the Commonwealth of Pennsylvania, free and clear of all prior liens and encumbrances (except as approved by EPA), and acceptable under the Attorney General's Title Regulations promulgated pursuant to 40 U.S.C. § 255; and

ii    Current title commitments or reports prepared in accordance with the U.S. Department of Justice <u>Standards for the Preparation of Title Evidence in Land Acquisitions by the United States</u> (1970) (the "Standards").

Within fifteen (15) days of EPA's approval and acceptance of the easements, Settling Defendants shall update the title searches and, if it is determined that nothing has occurred since the effective date of the commitments or reports to affect the titles adversely, the easements shall be recorded with the Recorder's Office or Registry of Deeds or other appropriate office of Bucks County, Pennsylvania. Within thirty (30) days of recording the easements, Settling Defendants shall provide EPA with final title evidence acceptable under the Standards, and a certified copy of the original recorded easements showing the clerk's recording stamps.

22.    If any access or agreements required by Paragraph 21(a) and (b) of this Consent Decree is not obtained within forty-five (45) days of the effective date of this Consent Decree, or if any access easements requested by EPA under Paragraph 21(c) are not submitted to EPA in draft form within forty-five (45) days of a request by EPA for such easements, Settling Defendants shall promptly notify the United States in writing, and shall include in that notification a summary of the steps (including requests, offers, and responses thereto) that Settling Defendants have taken to attempt to obtain such access or access easements. The United States may, as it deems appropriate, assist Settling Defendants in obtaining access, agreements, and/or land/water restrictions, either in the form of contractual agreements or in the form of

easements running with the land. Settling Defendants shall reimburse the United States in accordance with the procedures in Section XV (Reimbursement of Future Response Costs), for all costs incurred, direct and indirect, by the United States in obtaining such access, agreements, and/or land/water use restrictions including, but not limited to, the cost of attorney time and the amount of monetary consideration paid. If EPA determines that land/water use restrictions in the form of state or local laws, regulations, ordinances or other governmental controls are needed to implement the remedy selected in the ROD for any OU-1 activity, ensure the integrity and protectiveness thereof, or ensure non-interference therewith, Settling Defendants shall cooperate with EPA's efforts to secure such governmental controls. Notwithstanding any provision of this Consent Decree, the United States retains all of its access authorities and rights, including enforcement authorities related thereto, under CERCLA, RCRA, and any other applicable statute or regulations.

## IX. REPORTING REQUIREMENTS

23.    In addition to any other requirement of this Consent Decree, Settling Defendants shall submit to EPA and the State two (2) copies each of written **monthly** progress reports, unless EPA determines in writing that a different frequency is appropriate (e.g., quarterly, weekly). The progress reports shall: (a) describe the actions which have been taken toward achieving compliance with this Consent Decree during the previous month or since the last report; (b) include a summary of all results of sampling and tests and all other data received or generated by Settling Defendants or their contractors or agents in the previous month or since the last report; (c) identify all work plans, plans, and other deliverables required by this Consent

Decree completed and submitted during the previous month or since the last report; (d) describe

all actions, including, but not limited to, data collection and implementation of work plans,

which are scheduled for the next six weeks and provide other information relating to the progress

of construction, including, but not limited to, critical path diagrams, Gantt charts, and Pert

charts; (e) include information regarding percentage of completion, unresolved delays

encountered or anticipated that may affect the future schedule for implementation of the Work,

and a description of efforts made to mitigate those delays or anticipated delays; (f) include any

modifications to the work plans or other schedules that Settling Defendants have proposed to

EPA or that have been approved by EPA; and (g) describe all activities undertaken in support of

the Community Relations Plan during the previous month or since the last report and those to be

undertaken in the next six weeks. Settling Defendants shall submit these progress reports to

EPA and the State by the tenth day of every month (or according to a different schedule as

determined by EPA in writing) following the lodging of this Consent Decree until EPA notifies

the Settling Defendants pursuant to Paragraph 42.b of Section XIII (Certification of

Completion). If requested by EPA, Settling Defendants shall also provide briefings for EPA to

discuss the progress of the Work.

　　　24.　　The Settling Defendants shall notify EPA of any change in the schedule described in

the monthly progress reports for the performance of any activity, including, but not limited to,

implementation of work plans, no later than seven (7) days prior to the performance of the

activity. Notwithstanding the foregoing, the Settling Defendants shall notify EPA of any change

in the schedule described in the monthly progress reports for the performance of data collection

no later than fifteen (15) days prior to the performance of such activity.

25.    Upon the occurrence of any event during performance of the Work that Settling

Defendants are required to report pursuant to Section 103 of CERCLA or Section 304 of the

Emergency Planning and Community Right-to-Know Act (EPCRA), Settling Defendants shall

within twenty-four (24) hours of the onset of such event orally notify the EPA Project

Coordinator or the Alternate EPA Project Coordinator (in the event of the unavailability of the

EPA Project Coordinator), or, in the event that neither the EPA Project Coordinator or Alternate

EPA Project Coordinator is available, the EPA Region III Hotline at (215) 814-3255. These

reporting requirements are in addition to the reporting required by CERCLA § 103 or EPCRA §

304.

26.    Within twenty (20) days of the onset of such an event, Settling Defendants shall

furnish to Plaintiff a written report, signed by the Settling Defendants' Project Coordinator,

setting forth the events which occurred and the measures taken, and to be taken, in response

thereto. Within thirty (30) days of the conclusion of such an event, Settling Defendants shall

submit a report setting forth all actions taken in response thereto.

27.    Settling Defendants shall submit two (2) hard copies and one (1) computer formatted

copy of all plans, reports, and data (other than progress reports) required by the Remedial Design

Work Plan, the Remedial Action Work Plan, or any other approved plans to EPA in accordance

with the schedules set forth in such plans. Settling Defendants shall simultaneously submit three

(3) copies of all such plans, reports, and data to the State.

28.    All reports and other documents submitted by Settling Defendants to EPA (other

than the monthly progress reports referred to above) which purport to document Settling

Defendants' compliance with the terms of this Consent Decree shall be signed by a Duly

Authorized Representative of the Settling Defendants.


## X. EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS

29.     After review of any plan, report or other item which is required to be submitted for

approval pursuant to this Consent Decree, EPA, after reasonable opportunity for review and

comment by the State, shall: (a) approve, in whole or in part, the submission; (b) approve the

submission upon specified conditions; (c) modify the submission to cure the deficiencies; (d)

disapprove, in whole or in part, the submission, directing that the Settling Defendants modify the

submission; or (e) any combination of the above.  However, EPA shall not modify a submission

without first providing Settling Defendants at least one notice of deficiency and an opportunity

to cure within fourteen (14) days, or such other time as specified by EPA in such notice, except

where to do so would cause serious disruption to the Work, or where previous submission(s)

have been disapproved due to material defects and the deficiencies in the submission under

consideration indicate to EPA a bad faith lack of effort to submit an acceptable deliverable.

EPA will provide a written explanation to the Settling Defendants' Project Coordinator

whenever EPA disapproves any submission, in whole or in part, and directs the Settling

Defendants to modify that submission pursuant to this Paragraph.

30.     In the event of approval, approval upon conditions, or modification by EPA,

pursuant to Paragraph 29(a), (b), or (c), Settling Defendants shall proceed to take any action

required by the plan, report, or other item, as approved or modified by EPA subject only to their

right to invoke the Dispute Resolution procedures set forth in Section XVIII (Dispute

Resolution) with respect to the modifications or conditions made by EPA. In the event that EPA modifies the submission to cure the deficiencies pursuant to Paragraph 29(c) and the submission has a material defect, EPA retains its right to seek stipulated penalties, as provided in Section XIX (Stipulated Penalties).

31.    a.    Upon receipt of a notice of disapproval pursuant to Paragraph 35(d), Settling Defendants shall, within fourteen (14) days, or such other time as specified by EPA in such notice, correct the deficiencies and resubmit the plan, report, or other item for approval. Any stipulated penalties applicable to the submission, as provided in Section XIX, shall accrue during the fourteen (14)-day period, or otherwise specified period, but shall not be payable unless the resubmission is disapproved or modified due to a material defect as provided in Paragraphs 32 and 33.

b.    Notwithstanding the receipt of a notice of disapproval pursuant to Paragraph 35(d), Settling Defendants shall proceed, at the direction of EPA, to take any action required by any non-deficient portion of the submission. Implementation of any non-deficient portion of a submission shall not relieve Settling Defendants of any liability for stipulated penalties under Section XIX (Stipulated Penalties).

32.    In the event that a resubmitted plan, report or other item, or portion thereof, is disapproved by EPA, EPA may again require the Settling Defendants to correct the deficiencies, in accordance with the preceding Paragraphs. EPA also retains the right to modify or develop the plan, report or other item. Settling Defendants shall implement any such plan, report, or item as modified or developed by EPA, subject only to their right to invoke the procedures set forth in Section XVIII (Dispute Resolution).

33.    If upon resubmission, a plan, report, or item is disapproved or modified by EPA due to a material defect, Settling Defendants shall be deemed to have failed to submit such plan, report, or item timely and adequately unless the Settling Defendants invoke the dispute resolution procedures set forth in Section XVIII (Dispute Resolution) and EPA's action is overturned pursuant to that Section. The provisions of Section XVIII (Dispute Resolution) and Section XIX (Stipulated Penalties) shall govern the implementation of the Work and accrual and payment of any stipulated penalties during Dispute Resolution. If EPA's disapproval or modification is upheld, stipulated penalties shall accrue for such violation from the date on which the initial submission was originally required, as provided in Section XIX.

34.    All plans, reports, and other items required to be submitted to EPA under this Consent Decree shall, upon approval or modification by EPA, be enforceable under this Consent Decree. In the event EPA approves or modifies a portion of a plan, report, or other item required to be submitted to EPA under this Consent Decree, the approved or modified portion shall be enforceable under this Consent Decree.

## XI. PROJECT COORDINATORS

35. The EPA Project Coordinator and Alternate Project Coordinator for this Site are:

EPA Project Coordinator:

**James P. Harper (3HS21)**
U.S. Environmental Protection Agency
1650 Arch Street
Philadelphia, PA 19103
(215) 814-3197 (phone)
(215) 814-3001 (telefax)
E-mail address: Harper.james@epamail.epa.gov

EPA Alternate Project Coordinator:

**Anthony Dappolone (3HS21)**
U.S. Environmental Protection Agency
1650 Arch Street
Philadelphia, PA 19103
(215) 814-3188 (phone)
(215) 814-3001 (telefax)

Within twenty (20) days of lodging this Consent Decree, Settling Defendants will notify EPA, in writing, of the name, address and telephone and facsimile numbers of their designated Project Coordinators and Alternate Project Coordinators. If a Project Coordinator or Alternate Project Coordinator initially designated is changed, the identity of the successor will be given to the other Parties at least five (5) working days before the changes occur, unless impracticable, but in no event later than the actual day the change is made. The Settling Defendants' Project Coordinator and Alternate Project Coordinator shall be subject to acceptance or disapproval by EPA and shall have the technical expertise sufficient to adequately oversee all aspects of the Work. The Settling Defendants' Project Coordinator and Alternate Project Coordinator shall not be an attorney for any of the Settling Defendants in this matter, but may be a representative or employee of the Supervising Contractor. The Settling Defendants' Project Coordinator and Alternate Project Coordinator may assign other representatives, including other contractors, to serve as a Site representative for oversight of performance of daily operations during remedial activities.

36.     Plaintiff may designate other representatives, including, but not limited to, EPA employees, and federal contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Decree. EPA's Project Coordinator and Alternate

Project Coordinator shall have the authority lawfully vested in a Remedial Project Manager

(RPM) and an On-Scene Coordinator (OSC) by the National Contingency Plan, 40 C.F.R. Part

300. In addition, EPA's Project Coordinator and Alternate Project Coordinator shall have

authority, consistent with the National Contingency Plan, to halt any Work required by this

Consent Decree and to take any necessary response action when s/he determines that conditions

at the Site constitute an emergency situation or may present an immediate threat to public health

or welfare or the environment due to release or threatened release of Waste Material.

37.    EPA's Project Coordinator and the Settling Defendants' Project Coordinator will

meet, at a minimum, on a monthly basis.


## XII. ASSURANCE OF ABILITY TO COMPLETE WORK

38.    Within thirty (30) days of entry of this Consent Decree, Settling Defendants shall

establish and maintain financial security in the amount of $5,000,000 ("the Financial Security

Amount"). The Financial Security Amount may be reduced, if approved by EPA in writing, in

the Agency's sole unreviewable discretion, and in accordance with Paragraph 40 of this Section

XII. The Financial Security Amount shall be maintained in one or more of the following forms:

    (a)    A surety bond guaranteeing performance of the Work;

    (b)    One or more irrevocable letters of credit equaling or exceeding the Financial

Security Amount;

    (c)    A trust fund;

    (d)    A guarantee to perform the Work by one or more parent corporations or

subsidiaries, or by one or more unrelated corporations that have a substantial business

relationship with at least one of the Settling Defendants; or

(e)    A demonstration that one or more of the Settling Defendants satisfy the requirements of 40 C.F.R. § 264.143(f) (for these purposes, (I) references in 40 C.F.R. § 264.143(f) to "the sum of the current closure and post-closure cost estimates and the current plugging and abandonment cost estimates" shall mean the Financial Security Amount required to be established and maintained pursuant to this Section, and (ii) the demonstration by one or more of the Settling Defendants, individually or collectively, that they meet this test, may be made by submission to EPA of one or more certified financial statements of one or more of the Settling Defendants); or

(f)    Through the use of any other means acceptable to EPA, and deemed so in writing by the Agency.

The Financial Security Amount required by this Paragraph shall be maintained by the Settling Defendants until EPA agrees that the Work has been completed and issues a Certification of Completion in accordance with Paragraph 42.b.

39.    If the Settling Defendants seek to demonstrate the ability to complete the Work through a guarantee by a third party pursuant to Paragraph 38(d) of this Consent Decree, Settling Defendants shall demonstrate that the guarantor satisfies the requirements of 40 C.F.R. § 264.143(f). If Settling Defendants seek to demonstrate their ability to complete the Work by means of the financial test or the corporate guarantee pursuant to Paragraph 38(d) or (e), they shall resubmit sworn statements conveying the information required by 40 C.F.R. Part 264.143(f), applied in accordance with Paragraph 38.e annually, on the anniversary of the effective date of this Consent Decree. In the event that EPA, after a reasonable opportunity for

review and comment by the Commonwealth, determines at any time that the financial assurances

provided pursuant to this Section are inadequate, Settling Defendants shall, within thirty (30)

days of receipt of notice of EPA's determination, obtain and present to EPA for approval one of

the other forms of financial assurance listed in Paragraph 38 of this Consent Decree. Settling

Defendants' inability to demonstrate financial ability to complete the Work shall not excuse

performance of any activities required under this Consent Decree.

40.    If Settling Defendants can show that the estimated cost to complete the remaining

Work has diminished below the amount set forth in Paragraph 38 above after entry of this

Consent Decree, Settling Defendants may, on any anniversary date of entry of this Consent

Decree, or at any other time agreed to by the Parties, reduce the Financial Security Amount

provided under this Section to the estimated cost of the remaining work to be performed.

Settling Defendants shall submit a proposal for such reduction to EPA, in accordance with the

requirements of this Section, and may reduce the amount of the security upon approval by EPA.

In the event of a dispute, Settling Defendants may reduce the amount of the security in

accordance with the final administrative or judicial decision resolving the dispute.

41.    Settling Defendants may change the form of financial assurance provided under this

Section at any time, upon notice to and approval by EPA, provided that the new form of

assurance meets the requirements of this Section. In the event of a dispute, Settling Defendants

may change the form of the financial assurance only in accordance with the final administrative

or judicial decision resolving the dispute.

## XIII. CERTIFICATION OF COMPLETION

42.    Completion of the Work

a.    Within ninety (90) days after Settling Defendants conclude that all phases of
the Work (including O & M), have been fully performed, Settling Defendants shall schedule and
conduct a pre-certification inspection to be attended by Settling Defendants and EPA. If, after
the pre-certification inspection, the Settling Defendants still believe that the Work has been fully
performed, Settling Defendants shall submit a written report by a registered professional
engineer (who may be the same person as Settling Defendants' Project Coordinator or
Supervising Contractor) stating that the Work has been completed in full satisfaction of the
requirements of this Consent Decree. The report shall contain the following statement, signed by
a Duly Authorized Representative of a Settling Defendant or the Settling Defendants' Project
Coordinator:

> "To the best of my knowledge, after thorough investigation, I certify that the
> information contained in or accompanying this submission is true, accurate and
> complete. I am aware that there are significant penalties for submitting false
> information, including the possibility of fine and imprisonment for knowing
> violations."

If, after review of the written report, EPA, after reasonable opportunity for review and comment
by the State, determines that any portion of the Work has not been completed in accordance with
this Consent Decree, EPA will notify Settling Defendants in writing of the activities that must be
undertaken by Settling Defendants pursuant to this Consent Decree to complete the Work.
Provided, however, that EPA may only require Settling Defendants to perform such activities
pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the
remedy selected in the ROD," as that term is defined in Paragraph 13.b. EPA will set forth in the