## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AGERE SYSTEMS, INC., CYTEC INDUSTRIES INC., FORD MOTOR COMPANY, SPS TECHNOLOGIES, LLC and TI GROUP AUTOMOTIVE SYSTEMS L.L.C., | : : : : : : | Civil Action No. 02-CV-3830 (LDD) |
| Plaintiffs, | : : | |
| v. | : : | |
| ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, et al., | : : : | |
| Defendants. | : | |

## ORDER

AND NOW, this _____ day of _____,

2008, upon consideration of Plaintiffs' Motion *in Limine* with respect to order of

presentation at trial, it is hereby ORDERED that the order of presentation of proofs at

trial shall proceed as follows:

      (1)    Plaintiffs shall proceed first by putting in their case with respect to

the nature and extent of Defendants' wastes disposed of at the Site, Plaintiffs' recoverable

costs, and any equitable factors, including whatever admissions they choose to make with

respect to Plaintiffs' wastes and Settled Parties' wastes.

      (2)    After Plaintiffs rest, each Defendant shall, in the order in which it

appears in the caption, put in its individual case with respect to its wastes, any other

Defendant's, Plaintiff's, or Settled Party's waste, and any equitable factors.

(3)     After all Defendants rest, each Defendant may in rebuttal present evidence with respect to its own wastes.

(4)     After the Defendants rest and any Defendant's rebuttal, Plaintiffs may in rebuttal present evidence with respect to any fact put into issue by any Defendant's evidence.

_____
Legrome D. Davis, J.

DMEAST #10042155 v3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AGERE SYSTEMS, INC., CYTEC
INDUSTRIES INC., FORD MOTOR
COMPANY, SPS TECHNOLOGIES,
LLC and TI GROUP AUTOMOTIVE
SYSTEMS L.L.C.,

                    Plaintiffs,

v.

ADVANCED ENVIRONMENTAL
TECHNOLOGY CORPORATION, et al.,

                    Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 02-CV-3830 (LDD)

## PLAINTIFFS' MOTION *IN LIMINE* WITH RESPECT TO ORDER OF PRESENTATION AT TRIAL

Plaintiffs Agere Systems, Inc., Cytec Industries, Inc., Ford Motor Company, SPS Technologies, LLC, and TI Group Automotive Systems L.L.C. ("Plaintiffs") move this Court to set a procedure that will order and streamline how each party may present evidence in support of its own claims and in opposition to the claims of the other parties for the reasons set forth in the accompanying memorandum of law.

Dated: May 22, 2008

                              Respectfully submitted,

                              Ballard Spahr Andrews & Ingersoll, LLP

By: _____
                              Glenn A. Harris, Esquire
                              Plaza 1000, Suite 500, Main Street
                              Voorhees, New Jersey 08043
                              E-mail: harrisg@ballardspahr.com
                              Phone: (856) 761-3400

                              Attorney for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| AGERE SYSTEMS, INC., CYTEC INDUSTRIES INC., FORD MOTOR COMPANY, SPS TECHNOLOGIES, LLC and TI GROUP AUTOMOTIVE SYSTEMS L.L.C., | : : : : : : | Civil Action No. 02-CV-3830 (LDD) |
| Plaintiffs, | : : | |
| v. | : : | |
| ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, et al., | : : : | |
| Defendants. | : | |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION *IN LIMINE* WITH RESPECT TO ORDER OF PRESENTATION AT TRIAL

Plaintiffs respectfully submit this motion *in limine* to set a procedure that will order and streamline how each party may present evidence in support of its own claims and in opposition to the claims of other parties. Plaintiffs' plan of proceeding is consistent with trial of traditional matters in which each party has claims with associated burdens of proof against the other parties. Plaintiffs move now, rather than raise this at the pretrial conference, for clarity as early as possible and because they don't want anyone to claim surprise at Plaintiffs' approach.

Plaintiffs believe that the most efficient manner in which this trial may proceed is for their case in chief to consist of whatever proofs they choose to offer concerning Defendants' liability, Plaintiffs' response costs, any other equitable factors they think this Court should consider, any admissions they choose to make concerning their wastes or the wastes of the parties with which they have settled ("the Settled Parties"), and any other evidence they think is relevant to issues in the action. Each

Defendant can then offer in its case in chief whatever evidence it thinks will defend against Plaintiffs claims by disputing the facts concerning the disposal of its own wastes at the Site, any evidence it thinks will support its own contribution claims, and any other evidence it thinks is relevant.  For example, each Defendant may offer evidence to prove the disposal of other Defendants' wastes, and, if it chooses to do so, that the volumes and waste types admitted by Plaintiffs as to Plaintiffs or any Settled Party are too low.  After all Defendants have rested, Plaintiffs may introduce any testimony or other evidence Plaintiffs believe supports their admissions or that responds to facts put into issue by any Defendant's evidence.

Plaintiffs admitted in their discovery responses that DeRewal Chemical Company ("DCC") picked up certain gallons of wastes from Ford, SPS, and American Cyanamid, and from all but two of the Settled Parties.[1]  Plaintiffs also stated in those responses, based on deposition testimony herein, that certain DCC drivers disposed of certain of those wastes at the Site.[2]  These admissions are reflected in Facts 364 through 405 attached to Plaintiffs' Pretrial Memorandum, the relevant portions of which are attached hereto and marked Exhibit A.

---

[1]     Plaintiffs' response to the Joint Contention Interrogatories set forth Plaintiffs' contentions that Agere, TI, Rohm and Haas, and Thomas & Betts each should be assigned a zero equitable share because no waste from those entities was disposed of at the Boarhead Site.

[2]     Plaintiffs acknowledged with respect to the other wastes of Plaintiffs and the Settled Parties hauled by DCC that, should this Court adopt Plaintiffs' proposed conclusions that specific percentages of all wastes handled by DCC in any given nexus period were disposed of at the Site, then the Plaintiffs expect that the Court would apply the same nexus percentages to the Plaintiffs' and Settled Parties' wastes. They did not otherwise state a view as to whether it could be proven that any Plaintiff or Settled Party wastes were disposed of at the Site.

2

Plaintiffs' approach to order of presentation at trial and its proposed admissions properly takes into account the many claims and associated burdens of proof that must be resolved at trial. Plaintiffs have claims under Section 107(a) of CERCLA for those response costs that they incurred "voluntarily," and under both 107(a) and 113(f) for those response costs that do not constitute "reimbursement" of EPA's costs. All Plaintiffs except Agere have 113(f) claims for the monies paid to EPA to reimburse EPA's past costs claim.[3] All Plaintiffs have HSCA claims for contribution.[4] Each Defendant is jointly and severally liable to Plaintiffs for all costs subject to the 107(a) claims. *E.I. DuPont de Nemours and Co. v. U.S.*, 460 F.3d 515, 521-22 (3d Cir. 2006 (reversed on other grounds). Each Defendant has a 113(f) counterclaim against Plaintiffs and 113(f) cross-claims against each other Defendant. Defendants thus have the burden of proving the equitable shares of each other Defendant and of each Plaintiff by, *inter alia*, proving the quantities of each party's wastes that were disposed of at the Site.

Plaintiffs are not obligated to offer admissions in their case-in-chief concerning their own wastes or the wastes of the Settled Parties. They could, instead, simply prove that at least some amount of each Defendant's wastes were disposed of at the Site, that Plaintiffs have incurred recoverable response costs, other equitable factors, etc., and rest. Plaintiffs thereby would have established, *inter alia*, that the Defendants are PRPs, that hazardous substances were disposed of at the facility, that there was a release or threatened release of a hazardous substance, and that the release or threatened

---

[3]    Agere has 107(a) claims for all of its costs, because it was not a party to either Consent Decree.

[4]    HSCA provides that, in a civil action in which a liable party seeks contribution, "The burden is on each party to show how liability should be allocated." 35 P.S. § 6020.705(b).

3

release required Plaintiffs to incur response costs. Plaintiffs would also have established each Defendant's equitable share of those costs, because the Court could find that specific volumes and types of Defendants' wastes were disposed of at the Site and could allocate shares based on those wastes (and any other equitable factors) among those Defendants. Plaintiffs would be entitled to recover 100% of their response costs, whether because Defendants are each jointly and severally liable, or because there would be, at that stage of the proceeding, no evidence that any other entity's wastes were disposed of at the Site.

Plaintiffs recognize, however, that there will likely be testimony and there are documents that Defendants might choose to offer into evidence in their cases in chief through either the DCC drivers or other witnesses to show that DCC handled wastes of some of the Plaintiffs and of some of the Settled Parties, and that some of those wastes were disposed of at the Site. Plaintiffs have chosen not to ignore these potential proofs because they seek equity from this Court and want to present what they believe would be reasonable findings of fact and conclusions of law if this Court adopts at trial Plaintiffs' proposed findings of fact concerning DCC's use of the Site in each of the four nexus periods. Plaintiffs set forth their views in that regard in their responses to Defendants' contention interrogatories. Plaintiffs do not intend, however, to offer into evidence the documents upon which they relied in those discovery responses to essentially prove the case against themselves and against the Settled Parties for whose equitable shares they are responsible.

Defendants may seek to meet their burdens of proof by presenting their own evidence at trial with respect to any Plaintiff or Settled Party if Defendants believe

the volumes of waste handled by DCC or deposited at the Site were greater than as set forth in Plaintiffs' admissions.[5]  However, Plaintiffs cannot in their case in chief anticipate proofs and arguments they have not yet seen or heard concerning the wastes of those entities and with respect to burdens of proof Plaintiffs do not have.  They are entitled to see at trial what proofs, if any, Defendants offer in their cases in chief with respect to Defendants' 113(f) claims and then to have the opportunity to respond to those proofs with contrary proofs of their own and to rebut any evidence Defendants offer with respect to Defendants' own wastes.

This approach has the benefit of limiting what is sure to be a lengthy trial. If Defendants choose not to contest Plaintiffs' admissions as to one or more of Plaintiffs or the Settled Parties, this approach will totally eliminate proofs concerning those wastes and the time it would take for anyone to offer them.[6]  It will further shorten the trial because Plaintiffs will have only to put on whatever evidence concerning themselves and the Settled Parties they believe is necessary to refute any evidence presented by Defendants after Defendants conclude their cases in chief.  The approach is fair to Defendants because it does not limit in any way their ability to prove whatever cases they think they have against Plaintiffs or the Settled Parties.  It is fair to Plaintiffs because it provides them an opportunity to respond to whatever such cases Defendants choose to make.

---

[5]       This is especially so with respect to Agere and TI and the two Settled Parties for which Plaintiffs have admitted no Site volumes, because unless Defendants prove those cases no shares will be allocated to those entities.

[6]       At least two Defendants have indicated thus far that they are willing to treat Plaintiffs' statements of facts concerning most of the Settled Parties as uncontested.

5

## CONCLUSION

For all the foregoing reasons, and in the interest of justice, Plaintiffs respectfully request that an Order be entered confirming Plaintiffs' proposed order of presentation at trial.

Dated:  May 22, 2008

Respectfully submitted,

Ballard Spahr Andrews & Ingersoll, LLP

By: _____

Glenn A. Harris, Esquire
Plaza 1000, Suite 500, Main Street
Voorhees, New Jersey  08043
E-mail:  harrisg@ballardspahr.com
Phone:  (856) 761-3400

Attorney for Plaintiffs

DMEAST #10042155 v3

# EXHIBIT "A"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| AGERE SYSTEMS, INC., CYTEC INDUSTRIES INC., FORD MOTOR COMPANY, SPS TECHNOLOGIES, LLC and TI GROUP AUTOMOTIVE SYSTEMS L.L.C., | : : : : : : | Civil Action No. 02-CV-3830 (LDD) |
| Plaintiffs, | : : | |
| v. | : : | |
| ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, et al., | : : : | **PLAINTIFFS' PRETRIAL MEMORANDUM** |
| Defendants. | : | |

1.    STATEMENT OF CASE AND ISSUES TO BE ADDRESSED

This is an action pursuant to CERCLA and HSCA wherein Plaintiffs seek recovery of Plaintiffs' past costs of response and interest thereon with respect to the Boarhead Farms Superfund Site (the "Site"). Those costs include monies paid to EPA through 2007 to resolve EPA's claims for its alleged past response costs and for EPA's oversight costs, and monies paid by Plaintiffs through 2007 to remediate the Site in accordance with two Consent Decrees. The legal issue presented is whether these monies are recoverable as a matter of law because they were paid and incurred pursuant to those Consent Decrees. Plaintiffs also seek a judgment that Defendants are liable for all future costs paid by Plaintiffs for work done (and EPA oversight costs) after 2007 in accordance with the two Consent Decrees.

This Court will also allocate response costs among Plaintiffs, Defendants, and Settled Defendants primarily based upon the equitable factor of volume of wastes relating to those entities that were disposed of at the Site. Plaintiffs will also ask the Court at trial to increase the allocation to any party that the Court finds knew or should have known that Manfred DeRewal had a history of pollution violations or that he intended to dispose of their waste at the Site. Plaintiffs will also ask the Court at trial to decrease Plaintiffs' share by 50% due to Plaintiffs' cooperation with EPA and the Commonwealth of Pennsylvania by, *inter alia*, settling EPA's past costs claim and conducting the response actions required by the 2000 and 2001 Consent Decrees, and because the Non-Settling Defendants did not do so. The legal issue presented is what equitable factors this Court should determine are appropriate to use in allocating response costs and how those factors should be applied here.

Other legal issues include: whether Plaintiff TI Group Automotive Systems L.L.C. may recover from Defendants monies paid on its behalf by Smiths entities; and how the Court should equitably allocate any orphan shares.

## STATEMENT OF DISPUTED FACTS

1.    The Boarhead Farms Superfund Site (the "Site") is located in Bridgeton Township, Pennsylvania on Lonely Cottage Road in Upper Black Eddy.

2.    The Site is a "facility" as that term is defined in 42 U.S.C. § 9601(9).

3.    The Site is a "site" as defined in Section 103 of the HSCA, 35 P.S. § 6020.103.

4.    "Hazardous substances" as defined in Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), were disposed of, placed on, or otherwise became located at the Site.

5.    There have been "releases" as that term is defined in Section 101(22) of CERCLA 42 U.S.C. § 9601(22), or threatened releases of hazardous substances into the environment at or from the Site.

6.    There have been "releases" or "substantial threats of releases" of "hazardous substances" and "contaminants" into the environment at or from the Site, as those terms are defined in Sections 101(22), 103, and 501(a) of HSCA, 35 P.S. §§ 6020.101(22), 6020.103 and 6020.501(a).

7.    The release or releases have caused the incurrence of "response" costs at the Site, as that term is defined in 42 U.S.C. § 9601(25).

8.    Advanced Environmental Technology Corp., Handy & Harman Tube Company, Carpenter Technology Corporation, Ashland, Inc., Agere Systems, Inc. ("Agere"), Cytec Industries Inc. ("Cytec"), Ford Motor Company ("Ford"), SPS Technologies, LLC

358.     Handy's solvent wastes consisted of, among other compounds, methyl ethyl ketone, acetone, and TCE.

359.     Handy's waste spent acids consisted of, among other compounds, hydrochloric acid, sulfuric acid, nitric acid, hydrofluoric acid, nickel, chromium, and TCE.

360.     Handy received a Section 104(e) Request from EPA with respect to the Site.

361.     Handy was asked to join Cytec, Ford, and SPS in agreeing to do the OU-1 work, but declined to do so.

362.     Handy received a Special Notice Letter from EPA dated September 28, 2000.  The letter asked Handy to resolve its liability to the United States for the alleged past costs incurred, and to agree to do the work required by the ROD but not included in the 2000 Consent Decree.

363.     Handy was invited to and attended a meeting on October 24, 2000 in which Handy was asked to participate in conducting the OU-2 work and in settling EPA's demand for past response costs.  It declined to do so.

*Settled Party Wastes*

364.     DCC hauled 187,504 bulk gallons of waste pickle liquor and waste pickle liquor rinse water from Techalloy's Rahns, Pennsylvania facility between October, 1972 and May 1, 1973.

365.    DCC hauled 39,063 bulk gallons of waste pickle liquor from Techalloy's Rahns, Pennsylvania facility between May 1, 1973 and October 1, 1973.

366.    On or about October 10, 1972 DCC hauled 2,500 gallons of drummed waste oil from Techalloy's Rahns, Pennsylvania facility.

367.    DCC hauled 53,800 bulk gallons of nitric acid from Ciba-Geigy Corporation's Cranston, Rhode Island facility between July 1, 1976 and March 30, 1977.

368.    DCC hauled 7,125 bulk gallons of nitric acid from Bostik South Inc.'s Greenville, South Carolina facility and disposed of it at the Site between June 1, 1976 and March 30, 1977.

369.    On or about April 30, 1972, DCC hauled 3,465 drummed gallons of etchant from Sperry Corporation's Utica, New York facility.

370.    DCC hauled 3,025 gallons of waste in plastic drums from Simon Wrecking Company's Williamsport, Pennsylvania facility and disposed of it at the Site.

371.    DCC hauled 281 gallons of waste in small drums and carboys from the Navy's Willow Grove AFB and disposed of it at the Site.

372.    DCC hauled 525 drummed gallons of etchant from Quickline's Cherry Hill, New Jersey facility between January 1, 1972 and December 1, 1973.

373.    DCC hauled 2,261 drummed gallons of etchant from Quickline's Cherry Hill, New Jersey facility between December 1, 1973 and June 30, 1975.

374.    DCC hauled 10,604 gallons of bulk pickle liquor from Plymouth Tube's Horsham, Pennsylvania facility between January 1, 1972 and December 1, 1973.

375.    DCC hauled 11,667 gallons of bulk pickle liquor from Plymouth Tube's Horsham, Pennsylvania facility between December 1, 1973 and June 30, 1975.

376.    DCC hauled 4,465 gallons of bulk pickle liquor from Plymouth Tube's Horsham, Pennsylvania facility between July 1, 1975 and June 1, 1976.

377.    DCC hauled 1,165 gallons of bulk pickle liquor from Plymouth Tube's Horsham, Pennsylvania facility between June 1, 1976 and November 31, 1976.

378.    DCC hauled 96,951 gallons of bulk etchant from fcg's Warrington, Pennsylvania facility between December 1, 1973 and June 30, 1975.

379.    DCC hauled 15,792 gallons of bulk etchant from fcg's Warrington, Pennsylvania facility between July 1, 1975 and June 1, 1976.

380.    DCC hauled 8,458 gallons of bulk etchant from fcg's Warrington, Pennsylvania facility between June 1, 1976 and November 31, 1976.

381.    DCC hauled 33,798 gallons of drummed etchant from fcg's Warrington, Pennsylvania facility between January 1, 1972 and December, 1973.

382.    DCC hauled 3,105 gallons of drummed etchant from fcg's Warrington, Pennsylvania facility between December 1, 1973 and June 30, 1975.

383.    DCC hauled 16,905 gallons of drummed etchant from Etched Circuits's Cherry Hill, New Jersey facility between January 1, 1972 and December, 1973.

384.    DCC hauled 23,213 gallons of drummed etchant from Etched Circuits's Cherry Hill, New Jersey facility between December 1, 1973 and June 30, 1975.

385.    DCC hauled 13,885 gallons of drummed etchant from Etched Circuits's Cherry Hill, New Jersey facility between July 1, 1975 and June 1, 1976.

386.    DCC hauled 14,268 gallons of drummed etchant from Etched Circuits's Cherry Hill, New Jersey facility between June 1, 1976 and March 30, 1977.

*Plaintiff Wastes*

387.    DCC hauled 429 55 gallon drums of waste finishing materials from Ford's Watsontown, Pennsylvania facility between March, 1972 and October, 1973.

388.    DCC hauled 32 55 gallon drums of industrial waste solution from Ford's Wissahockon, Pennsylvania facility in July 1972.

389.    DCC hauled 247 55 gallon drums of plastics from Ford's Watsontown, Pennsylvania facility in April 1973.

390.    DCC hauled 193,000 bulk gallons of ammonia waste water from American Cyanamid's Bound Brook, New Jersey facility between January 1, 1974 and December 31, 1974.

391.    DCC hauled 116,000 bulk gallons of ammonia waste water from American Cyanamid's Bound Brook, New Jersey facility between June 1, 1976 and September, 1976.

392.    DCC hauled 7,838 drummed gallons of chromic acid from SPS's Jenkintown, Pennsylvania facility between January 2, 1972 and November 2, 1973.

393.    DCC hauled 12,155 drummed gallons of chromic acid from SPS's Jenkintown, Pennsylvania facility between December 1, 1973 and June 30, 1975.

394.    DCC hauled 6,270 drummed gallons of chromic acid from SPS's Jenkintown, Pennsylvania facility between July 1, 1975 and May 25, 1976.

395.    DCC hauled 5,858 drummed gallons of chromic acid from SPS's Jenkintown, Pennsylvania facility between June 1, 1976 and February 1977.

396.    DCC hauled 8,388 drummed gallons of cyanide waste from SPS's Jenkintown, Pennsylvania facility between January 1, 1972 and November 2, 1973.

397.    DCC hauled 12,320 drummed gallons of cyanide waste from SPS's Jenkintown, Pennsylvania facility between December 1, 1973 and June 30, 1975.

398.    DCC hauled 6,270 drummed gallons of cyanide waste from SPS's Jenkintown, Pennsylvania facility between July 1, 1975 and May 25, 1976.

399.    DCC hauled 6,573 drummed gallons of cyanide waste from SPS's Jenkintown, Pennsylvania facility between August 4, 1976 and February 24, 1977.

400.    DCC hauled 990 drummed gallons of degreasing fluids from SPS's Jenkintown, Pennsylvania facility on June 6, 1973.

401.    DCC hauled 165 drummed gallons of acetone waste from SPS's Jenkintown, Pennsylvania facility on June 6, 1973.

402. DCC hauled 110 drummed gallons of nickel waste from SPS's Jenkintown, Pennsylvania facility on June 6, 1973.

403. DCC hauled 4,500 bulk gallons of cyanide waste from SPS's Jenkintown, Pennsylvania facility between January 1, 1972 and December 1, 1973.

404. No waste from any facility operated by an Agere predecessor was disposed of at the Site.

405. No waste from Bundy's Malvern, Pennsylvania facility was disposed of at the Site.

*Orphaned Parties*

406. Manfred T. DeRewal, Sr. has no assets which are available and would allow him to participate financially in the cleanup of the Site.

407. Boarhead Corporation has no assets which are available and would allow it to participate financially in the cleanup of the Site.

408. DeRewal Chemical Company has no assets which are available and would allow it to participate financially in the cleanup of the Site.

409. Environmental Chemical Control, Inc. has no assets which are available and would allow it to participate financially in the cleanup of the Site.

410. Diaz Chemical Corporation has no assets which are available and would allow it to participate financially in the cleanup of the Site.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| AGERE SYSTEMS, INC., CYTEC INDUSTRIES INC., FORD MOTOR COMPANY, SPS TECHNOLOGIES, LLC and TI GROUP AUTOMOTIVE SYSTEMS L.L.C., | : : : : : : | Civil Action No. 02-CV-3830 (LDD) |
| Plaintiffs, | : : | |
| v. | : : | |
| ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, et al., | : : : | |
| Defendants. | : | |

## CERTIFICATE OF SERVICE

DAWN M. NEUKIRCH, of full age, certifies as follows:

(1)     I am employed by the law firm of Ballard Spahr Andrews & Ingersoll, LLP, as a legal secretary.

(2)     On this date, I caused one copy of Plaintiffs' Motion *In Limine* with Respect to Order of Presentation at Trial; Memorandum of Law; Declaration of Glenn A. Harris, proposed form of Order and Certificate of Service to be served via electronic submission upon the following:

**ALL DEFENDANTS ON ATTACHED SERVICE LIST**

DMEAST #10042155 v3

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dawn M. Neukirch /s/ _____

Dated:  May 23, 2008

Boarhead Farm Defendant Service List

File No.  892241

Laurie J. Sands, Esquire
Wolff & Samson, PC
The Offices at Crystal Lake
One Boland Drive
West Orange, New Jersey  07052
Phone:  973-530-2098
Fax:  973-530-2298
e-mail:  lsands@wolffsamson.com

-and-

Robert M. Morris, Esquire
Morris & Adelman, P.C.
1920 Chestnut Street
P.O. Box 30477
Philadelphia, PA  19103
Phone:  215-568-5621
Fax:  215-568-3253
e-mail:  rmmorris@morrisadelman.com
*Advanced Environmental Technology Corp.*


Melissa Flax, Esquire
Carella, Byrne, Bain, Gilfillian, Cecchi,
        Stewart & Olstein, P.C.
5 Becker Farm Road
Roseland, New Jersey  07068-1739
Phone:  973-994-1700
Fax:  973-994-1744
e-mail:  mflax@carellabyrne.com
*Handy & Harman Tube Company*


Lynn Wright, Esquire
Edwards Angell Palmer & Dodge, LLP
750 Lexington Avenue
New York, New York  10022-1200
Phone:  212-308-4411
Fax:  212-308-4844
e-mail:  lwright@ealaw.com
*Carpenter Technology Corporation*

Christopher R. Booth, Jr., Esquire
Booth and Tucker
One Penn Center at Suburban Station
1617 JFK Boulevard, Suite 1700
Philadelphia, Pennsylvania  19103
Phone:  215-875-0609
Fax:  215-875-8143
e-mail:  cbooth@boothtucker.com
*Special Litigation Counsel for Carpenter Technology Corporation*

Seth v.d.H. Cooley, Esquire
Duane Morris LLP
United Plaza
30 South 17th Street
Philadelphia, PA  19103-4196
Phone:  215-979-1838
Fax:  215-979-1020
e-mail:  scooley@duanemorris.com
*Flexible Circuits*

Edward Fackenthal, Esquire
Law Office of Edward Fackenthal
One Montgomery Plaza
Suite 209
Norristown, PA  19401
Phone: (610) 279-3370
Fax:  (610) 279-0696
*NRM Investment Co.*
e-mail:  edwardfackenthal@cs.com

Richard C. Biedrzycki, Esquire
Phelan, Pettit & Biedrzycki
The North American Building
Suite 1600
121 South Broad Street
Philadelphia, PA  19107
Phone:  215-546-0500
Fax:  215-546-9444
e-mail:  rbiedrzycki@pp-b.com
*Ashland, Inc.*