## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AGERE SYSTEMS, INC., CYTEC INDUSTRIES, INC., FORD MOTOR COMPANY, SPS TECHNOLOGIES, LLC and TI GROUP AUTOMOTIVE SYSTEMS LLC, | Civil Action |
| Plaintiffs, | Case No. 02-cv-3830 |
| | Judge LeGrome D. Davis |
| v. | |
| ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION, et al., | |
| Defendants. | |

---

**DEFENDANTS' JOINT MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFFS' MOTION <u>IN
LIMINE</u> REGARDING THE TESTIMONY
OF JOSEPH J. HOCHREITER, JR.**

---

**WOLFF & SAMSON PC**
John A. McKinney, Jr.
Laurie J. Sands
One Boland Drive
West Orange, NJ 07052
(973) 325-1500
jmckinney@wolffsamson.com
lsands@wolffsamson.com
Attorneys for Defendant Advanced
Environmental Technology Corp.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. 1

INTRODUCTION ............................................................................................................... 2

ARGUMENT ...................................................................................................................... 3

      A.     In a Bench Trial, The Court's Gatekeeper Function Is
            Diminished. ............................................................................................... 3

      B.     Mr. Hochreiter Did Much More Than Simple Arithmetic. .......................... 5

            1.     Only a Person With Mr. Hochreiter's Expertise
                    Could Have Performed His Work. ................................................... 5

            2.     Mr. Hochreiter's Testimony Will Assist the Trier of
                    Fact With Respect to An Important Issue. ...................................... 8

      C.     Experts May Rely Upon Hearsay. ........................................................... 11

CONCLUSION ................................................................................................................. 12

## TABLE OF AUTHORITIES

**Page**

### FEDERAL CASES

*Action Manufacturing Co.*, 428 F. Supp. 2d at 329 (E.D. Pa. 2006) ..........................................7, 8

*Beech Aircraft Corp. v. United States*, 51 F.3d 834 (9th Cir. 1995)................................................3

*Breidor v Sears Roebuck & Co.*, 722 F.2d 1134 (3d Cir. 1983).......................................................3

*Compton v. Subaru of America, Inc.*, 82 F.3d 1513 (10th Cir. 1996)...............................................4

*Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).................................................2, 3

*Frase v. Henry*, 444 F.2d 1228 (10th Cir. 1971) ............................................................................9

*In re Japanese Electronic Products Antitrust Litigation*, 723 F.2d 238 (3d Cir. 1983), rev'd on other grounds, *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1985)........................................................................................................................3

*Kannankeril v. Teminix Intern., Inc.*, 128 F.3d 802 (3d Cir. 1997)................................................4

*Larabee v. M M & L International Corp.*, 896 F.2d 1116 (8th Cir. 1990)......................................3

*Pelster v. Ray*, 987 F.2d 514 (8th Cir. 1993) ..................................................................................3

*In re Salem*, 465 F.3d 767 (7th Cir. 2006) .....................................................................................2

*Seaboard Lumber Co. v U.S.*, 308 F.3d 1283 (Fed. Cir. 2002) ......................................................2

*State Office Systems, Inc. v. Olivetti Corp.*, 762 F.2d 843 (10th Cir. 1985)...................................9

*TFWS, Inc. v. Schaefer*, 325 F.3d 234 (4th Cir. 2003).....................................................................4

*Total Control, Inc. v. Danaher Corp.*, 338 F. Supp. 2d 566 (E.D. Pa. 2004)..................................8

*Trustees of Chicago Painters, et al v. Royal International Drywall and Decorating, Inc.*, 493 F.3d 782 (11th Cir. 2007) ........................................................................................................2

*United States v. West*, 58 F.3d 133 (5th Cir. 1995) .........................................................................9

*U.S. v. RSR Corp.*, 2005 WL. 5977799 (W.D. Wash. 2005) ...........................................................2

## INTRODUCTION

Joseph J. Hochreiter, Jr., an environmental consultant who has extensive experience with hazardous waste remediation, audits of industrial facilities, and hydrogeology, and offered as an expert witness by all Defendants in this action, should be permitted to testify at trial and the motion in limine filed by plaintiffs Agere Systems, Inc., Cytec Industries Inc., Ford Motor Company, SPS Technologies, LLC, and TI Group Automotive Systems, L.L.C. (collectively, "Plaintiffs") should be denied.  All Defendants join in this opposition.

In their motion in limine, Plaintiffs attempt to down-grade the comprehensive report and deposition testimony offered by Mr. Hochreiter during discovery, write-off his extensive review and analysis of a vast volume of historical documentary evidence, and utterly ignore his decades of education, experience, and training in an attempt to portray his conclusions and findings as "simple arithmetic."  Contrary to Plaintiffs' protestations, however, Mr. Hochreiter did much more than simple arithmetic and his expertise and decades of experience in environmental matters make him fully qualified to offer assistance to the Court as trier of fact.  His work here required him to review, assess, analyze, and compile reams of data and documents, and then reach conclusions about the level of wastes generated by each of the then settled defendants and Plaintiffs in this action.  Only a person with his background could have performed his work in a way that assists the Court as trier of fact. In addition, given the volume of the material, there may be no doubt that Mr. Hochreiter's work and analysis will assist the trier of fact in reaching its decision in this action, if only to relieve the Court from having to review the documents at issue itself.  In any event, because this environmental action is a bench trial, any criticism of Mr. Hochreiter's work is best left for cross-examination and argument at trial regarding the weight to be afforded his testimony.

2

For the forgoing reasons, as set forth in greater detail below, the motion in limine filed by Plaintiffs to bar Mr. Hochreiter's testimony should be denied.

## ARGUMENT

**A.    In a Bench Trial, The Court's Gatekeeper Function Is Diminished.**

As the Court is well aware, this is a bench trial and there will be no jury. The purpose of the Supreme Court's decision in Daubert and its progeny has diminished import where, as here, there is no risk that a jury of lay persons will be unduly influenced by expert testimony that has no real evidentiary value, but has the implicit endorsement of the Court merely because it was admitted into evidence. Thus, courts across the country have repeatedly held that the best approach in a bench trial is for the Court to admit the evidence, and then decide if it has any value after being subject to cross-examination. See, e.g., Trustees of Chicago Painters, et al v. Royal International Drywall and Decorating, Inc., 493 F.3d 782, 788 (11th Cir. 2007) ("if the gatekeeper and the fact finder are one and the same-that is, the judge-the need to make such decisions prior to hearing the testimony is lessened") (quoting In re Salem, 465 F.3d 767, 777 (7th Cir. 2006)); Seaboard Lumber Co. v U.S., 308 F.3d 1283 (Fed. Cir. 2002) ("these concerns are of lesser import in a bench trial, where no screening of the fact finder can take place"); U.S. v. RSR Corp., 2005 WL 5977799 (W.D. Wash. 2005) ("In a bench trial, the gatekeeper and the trier of fact are the same, raising the metaphysical question of how a trial court can simultaneously perform its gate keeping function and keep unreliable expert testimony from itself").

In addition, the general standard for expert testimony is quite liberal. See, e.g., FRE 702; Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993). Contrary to Plaintiffs' moving brief, there is no requirement that the expert offer an expertise that is beyond the knowledge of

3

the trier of fact. (See Plaintiff's Brief at 5-6)[1]  Rather, the standard is whether the testimony will assist the trier of fact:

> Such a test is incompatible with the standard of helpfulness expressed in Rule 702.  First, it assumes wrongly that there is a bright line separating issues within the comprehension of jurors from those that are not.  Secondly, even when jurors are well equipped to make judgments on the basis of their common knowledge and experience, experts may have specialized knowledge to bring to bear on the same issue which would be helpful.

In re Japanese Electronic Prods. Antitrust Litig., 723 F.2d 238, 279 (3d Cir. 1983), rev'd on other grounds, Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1985); see also Breidor  v  Sears Roebuck & Co., 722 F.2d 1134, 1139 (3d Cir. 1983) ("helpfulness is the touchstone" of FRE 702).  Indeed, courts have repeatedly held that "'any doubts about whether an expert's testimony will be useful should be resolved in favor of admissibility.'"  Larabee v. M M & L Int'l Corp., 896 F.2d 1116, 1116 n.6 (8th Cir. 1990) (quoting 3 Weinstein's Evidence, ¶ 702[02] (1987)).

With these thoughts in mind, the Court should hear Mr. Hochreiter's testimony, any cross-examination offered by Plaintiffs, and then make a decision regarding what weight to give to the testimony.  Daubert, 509 U.S. at 596 ("[v]igorous cross-examination" and "presentation of contrary evidence" are "the traditional and appropriate means of attacking shaky but admissible evidence.").  Any criticisms of the testimony will then be fully vetted and the Court will be free

---

[1] On this point, Plaintiffs rely upon two cases that are clearly inapplicable.  In Pelster v. Ray, 987 F.2d 514 (8th Cir. 1993), the issue was the ability to read and compare odometer readings, and in Beech Aircraft Corp. v. United States, 51 F.3d 834 (9th Cir. 1995), the issue was the ability to hear what was said on a recording, both issues for which it is largely inconceivable that an expert would be needed.  Here, Mr. Hochreiter was called upon to review voluminous records about complicated industrial, commercial, and governmental activities, and make assessments about their meaning.  This is hardly the same as the type of expert testimony barred in the cases relied upon by Plaintiffs and Plaintiffs' reliance upon these decisions is wholly improper.

4

to make its decision with a full record. <u>Kannankeril v. Teminix Intern., Inc.</u>, 128 F.3d 802, 809-810 (3d Cir. 1997) (requiring trial courts to distinguish between questions of admissibility and the weight afforded to expert testimony); <u>see</u> <u>also</u> <u>Compton v. Subaru of Am., Inc.</u>, 82 F.3d 1513, 1518 (10th Cir. 1996) (if there is a logical basis for an expert's opinion, any weaknesses in the underpinnings of the opinion go to the weight and not the admissibility of the testimony); <u>TFWS, Inc. v. Schaefer</u>, 325 F.3d 234, 240 (4th Cir. 2003) (criticism of expert's conclusions go to weight, not admissibility, of evidence).

**B.**    **Mr. Hochreiter Did Much More Than Simple Arithmetic.**

Plaintiffs claim that Mr. Hochreiter's testimony did not require any expertise because, according to Plaintiffs, all Mr. Hochreiter did was perform "simple arithmetic" to calculate the level of waste generated by each of the then settled defendants and Plaintiffs in this action. What Plaintiffs ignore is that only a person with Mr. Hochreiter's experience and knowledge could perform that task in a way that will assist the Court. Mr. Hochreiter's work was not a simple matter of looking at a column of numbers and adding them up. He had to review years of historic data and documents, analyze the meaning of the information, and then compile all of that information into a form that will assist the trier of fact. The tables in his report may contain information culled from documents he reviewed, but only a person with Mr. Hochreiter's background could have completed the task assigned to him. This is the very essence of what experts do. As such, the motion should be denied.

**1.**    **Only a Person With Mr. Hochreiter's Expertise Could Have Performed His Work.**

In order to reach his conclusions, Mr. Hochreiter was required to review a wide variety of historical business, government, engineering, and scientific records, then compile that information into a useful form, and reach conclusions about the level of waste generated by

5

Plaintiffs and each of the then non-settled Defendants.  The information reviewed by Mr.

Hochreiter included:

- Shipping records;

- Bills of lading;

- Invoices;

- Deposition testimony and interview statements of persons describing manufacturing and waste disposal activities;

- Correspondence to and from the federal Environmental Protection Agency, the New Jersey DEP, and other government entities charged with waste disposal and environmental oversight, including (a) EPA requests for information and responses to same, (b) EPA investigation reports, (c) EPA site inspection reports, (d) EPA Records of Decision, and (e) other similar materials.

- Government applications relating to waste disposal, and documents relating to same;

- Registrations with government agencies relating to waste disposal, and documents relating to same; and,

- Discovery responses of parties, including other documents and data relating to the facts and issues described above.

(See Hochreiter Report at § 6) (submitted with Plaintiff's moving papers).  Mr. Hochreiter then

compiled all of this information into a series of tables that set forth the hazardous waste outputs

of each of the then settled defendants and Plaintiffs in a manner that will assist the Court as trier

of fact.

Mr. Hochreiter's years of experience with respect to environmental issues make him

particularly well-suited to perform this task.  Specifically, Mr. Hochreiter was a hydrogeologist

for the United States Geological Services for over fourteen years, during which time he regularly

studied and investigated groundwater-related issues, aquifers, surface waters.  (See, e.g.,

Hochreiter Dep. at 21:9-24:6) (submitted with Plaintiffs' moving papers) (describing his work at

USGS).  As part of his work while at USGS, Mr. Hochreiter regularly worked with the federal

6

EPA "to bring hydrologic expertise into their case teams on Superfund sites." (Hochreiter Dep. at 24:11-17; 25:7-23). All of this experience provided much of the background necessary for his assigned task here because it gave him the knowledge necessary to know what to look for among the reams of paper he was asked to assess, a fact he explained at his deposition:

> Q.    Did you do anything at the USGS while you were a hydrologist that provided any training or experience related to the preparations of your report in this case?
>
> A.    I believe so, yes.
>
> Q.    And what here those things?
>
> A.    The familiarity with disposal practices at contaminated sites; the familiarity with the types of chemicals that are typically deposited at these sites when they are used as disposal facilities; some of the investigative techniques that are used and that were used, for example, at Boarhead Farms in the RI; we were doing those types of investigations back from 1979 through the early and mid-1980s.

(Hochreiter Dep. at 30:6-17; see also Hochreiter Dep. at 30:21-35:20 (discussing same in greater detail)).

In addition to his work at USGS and with the EPA, Mr. Hochreiter thereafter worked an additional seventeen years as a "principal scientist" at two environmental consulting firms, where he again investigated sites and provided expertise as an environmental consultant. (See, e.g., Hochreiter Dep. at 35:21-36:2 (describing first consultant work after leaving USGS); Hochreiter Report at Exhibit A (Hochreiter CV)). Like his work for USGS and EPA, Mr. Hochreiter's consulting work provided additional background and expertise necessary for him to complete his work for this action. In that regard, Mr. Hochreiter testified as follows:

> Q.    And what did you do at ERM or what training or experience did you acquire from working at ERM that relates to the preparation of your expert report in this case?

A.    It gave me additional experience working in industrial plant settings. So I had a better understanding of plant processes and how waste is generated and how it is transported and disposed of, or at least it was in previous times.

I also had a hand through our management consulting practice in helping companies change those practices so that they were more compliant with current environmental regulations and laws.

The environmental construction practice gave me direct experience understanding how you build and construct environmental remedies, how you dig up drums from a site, how you dig up underground tanks.

I became, somewhere during that period of time, a licensed subsurface evaluator for the New Jersey DEP, because of the underground tank work that we were doing at that time.

(Hochreiter Dep. at 43:2-44:8; see also 44:15-45:18 (providing additional information regarding same).

In sum, Mr. Hochreiter's testimony demonstrates that he was more than a mere adding machine; he was called upon to use his years of experience to review voluminous material and then put that material into a form that will assist the Court as trier of fact. This is the province of any expert witness and, therefore, the Motion should be denied.

### 2.    Mr. Hochreiter's Testimony Will Assist the Trier of Fact With Respect to An Important Issue.

There may be no dispute that the volume of waste generated by each of the parties in this action is an equitable factor that may be considered by the Court. For example, at trial, the parties may introduce evidence of the so-called "Gore factors," named for a proposed amendment to CERCLA by then Representative Albert Gore in 1980, which, even though it was not adopted, is sometimes used by courts for guidance in Section 113 contribution allocations. See, e.g., Action Mfg. Co., 428 F. Supp.2d at 329 (E.D. Pa. 2006) (applying Gore factors and citing other Third Circuit decisions doing same). One of the Gore factors is "the amount of the hazardous waste involved," id., and as such, for this reason alone, the Court will need to hear the

8

information Mr. Hochreiter has assessed about the waste generated by the Plaintiffs and other parties.

The only sensible way for the Court to consider evidence of the volumes of waste generated by any of the parties, short of asking the Court to re-review the reams of material already reviewed by Mr. Hochreiter, is for an expert witness to provide an analysis of the documents, data, and other information relating to this issue. Not surprisingly, this approach is neither novel nor unexpected in a world in which commercial and government enterprises constantly generate voluminous paper records. For example, in Total Control, Inc. v. Danaher Corp., 338 F. Supp.2d 566 (E.D. Pa. 2004), the court permitted a financial analyst to testify as an expert regarding the plaintiff's damages. The defendant claimed, as Plaintiffs claim here, that all the expert did was perform simple calculations based upon records. Id. at 569. However, the court set a very liberal standard for the admissibility of such evidence, requiring merely that it be helpful to the trier of fact:

> However, while any individual calculation performed by Gordon may appear simple and straightforward, I find that, as a financial analyst, his ability to present a vast quantity of calculations derived from disparate sources in an understandable format will assist the jury. "[A]n expert can be employed if his testimony will be helpful to the trier of fact in understanding evidence that is simply difficult, [though] not beyond ordinary understanding."
>
> ***
>
> Moreover, "the courts have taken a liberal approach to the admissibility of expert testimony in instances when a party offers expert guidance to the finder of fact respecting factual issues that arguably fall within the competence of lay people."

Id. at 569-70 (citations omitted). The same is true here. Mr. Hochreiter took large amounts of data, compiled it, and put it into a form usable by the trier of fact. The expert in Total Control reviewed "financial and business records as well as correspondence from [the plaintiff's

president]" and performed the same task. As such, Hochreiter's testimony is proper and should be admitted.

Similarly, in <u>State Office Systems, Inc. v. Olivetti Corp.</u>, 762 F.2d 843 (10th Cir. 1985), the plaintiff in a business dispute introduced into evidence a chart which summarized voluminous business records, and then used the chart to support its claim for, and calculation of, damages. The Eleventh Circuit held that the summary of the information was admissible pursuant to FRE 1006, and that the damages calculation that was part of the chart was admissible under FRE 701 and 702 because it was introduced as the opinion of a witness qualified to testify as an expert. <u>Id.</u> at 845. Again, the same is true here. Mr. Hochreiter took the voluminous information and documents listed in his report, analyzed and summarized that information into tables, and then used that information to reach conclusion regarding the volume of hazardous wastes generated by each party.

Likewise, in <u>United States v. West</u>, 58 F.3d 133 (5th Cir. 1995), a government witness was offered to summarize business records that were used to prove the defendants' fraud. The Fifth Circuit held that the witness' extensive experience and education in accounting and training with the Internal Revenue Service gave her the qualifications to serve as an expert to summarize the records:

> She has specialized training and experience which made her adequately suited to assist the jury in understanding the large amount of documentary evidence presented by the government and the tax implications.

<u>Id.</u> at 140. Moreover, the Fifth Circuit further held that the expert was also permitted to summarize testimony by other witnesses in order to add context to her summaries of information. <u>Id.</u> at 141. The same is true here. Mr. Hochreiter will assist the Court as trier of fact because were it not for Mr. Hochreiter's testimony, the Court would be required to repeat the review of all of the documents Mr. Hochreiter reviewed, but will not have the benefit of Mr. Hochreiter's

10

expertise in doing so. See also Frase v. Henry, 444 F.2d 1228 (10th Cir. 1971) (indicating that expert can aid jury insofar as he synthesized the facts which the jurors unaided could not have synthesized for themselves).

## C.    Experts May Rely Upon Hearsay.

Finally, Plaintiffs' arguments regarding Mr. Hochreiter's reliance upon the various government and business records available to him is hardly worth a response. As set forth in FRE 703, an expert may rely upon any data ordinarily relied upon by a person in his field:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

FRE 703. Any analysis of the historical production of hazardous wastes by parties during a particular time period necessarily requires use of the very information upon which Mr. Hochreiter relied. Simply put, there is no means to determine how much hazardous waste each of the parties at issue generated other than to look at all of the parties historical records and any other documents that relate to that issue. As such, there is no basis for Plaintiffs' hearsay objection. Mr. Hochreiter had no choice but to rely upon the information which forms the basis for his report.

In any event, Mr. Hochreiter sets forth in Section 6 of his report the documents upon which he relied. Even a cursory review of this list reveals that almost all, if not all, of the information Mr. Hochreiter relied upon is either not hearsay as defined under the Federal Rules of Evidence, or meets an exception under the hearsay rule, including (a) admissions by one or more of Plaintiffs, which are not hearsay as defined under FRE 801(d)(2), (b) business records,

11

which are admissible under FRE 803(6), (c) government records, which are admissible under 803(8), and (d) statements in ancient documents, defined as a document over twenty years old, pursuant to FRE 803(16).  As such, Plaintiffs' argument in this regard is without merit.

## CONCLUSION

For the forgoing reasons, Plaintiffs' motion in limine regarding the expected trial testimony of Joseph J. Hochreiter, Jr. should be denied.

WOLFF & SAMSON PC
Attorneys for Defendant Advanced
Environmental Technology Corporation

By: _____
JOHN A. MCKINNEY, JR., ESQ.
jmckinney@wolffsamson.com

Dated:  June 6, 2008


Robert M. Morris, Esq.
Morris & Adelman
1920 Chestnut Street
Philadelphia, Pennsylvania

12

1133281.2